```
1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA
2

3    United States of America,      ) Criminal Action
                                    ) No. 19-cr-125
4                    Plaintiff,     )
                                    ) TELEPHONE SCHEDULING
5    vs.                            ) CONFERENCE
                                    )
6    Gregory B. Craig,              ) Washington, DC
                                    ) April 17, 2019
7                    Defendant.     ) Time:  11:00 a.m.
     _____
8
            TRANSCRIPT OF TELEPHONE SCHEDULING CONFERENCE
9                        HELD BEFORE
            THE HONORABLE JUDGE AMY BERMAN JACKSON
10                 UNITED STATES DISTRICT JUDGE
     _____
11
                     A P P E A R A N C E S
12
     For the Plaintiff: Molly Gulland Gaston
13                      Fernando Campoamor-Sanchez
                        U.S. ATTORNEY'S OFFICE FOR THE
14                        DISTRICT OF COLUMBIA
                        555 Fourth Street, NW
15                      Washington, DC 20530
                        (202) 252-7698
16                      Email: Fernando.campoamor-sanchez@usdoj.gov
                        Email: Molly.gaston@usdoj.gov
17                      Jason Bradley Adam McCullough
                        U.S. DEPARTMENT OF JUSTICE
18                      950 Pennsylvania Avenue, NW
                        Washington, DC 20530
19                      (202) 233-0986
                        Email: Jason.mccullough@usdoj.gov
20
     For the Defendant: William James Murphy
21                      William W. Taylor, III
                        Adam B. Abelson
22                      ZUCKERMAN SPAEDER, LLP
                        100 East Pratt Street
23                      Suite 2440
                        Baltimore, MD 21202
24                      (410) 949-1146
                        Email: Wmurphy@zuckerman.com
25                      Email: Wtaylor@zuckerman.com
                        Email: AAbelson@zuckerman.com
```

1                                **Ezra B. Marcus**
                                 ZUCKERMAN SPAEDER, LLP
2                                1800 M Street, NW
                                 Suite 1000
3                                Washington, DC 20036
                                 (202) 778-1814
4                                Email: Emarcus@zuckerman.com

5        _____

6    Court Reporter:              Janice E. Dickman, RMR, CRR, CRC
                                  Official Court Reporter
7                                 United States Courthouse, Room 6523
                                  333 Constitution Avenue, NW
8                                 Washington, DC  20001
                                  202-354-3267

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURTROOM DEPUTY:  Good morning, Your Honor.

2    This morning we're having a telephone scheduling conference.

3    This is criminal case No. 19-125, the United States of America

4    versus Gregory B. Craig.

5          Will counsel for the government please identify

6    themselves for the record.

7          MS. GASTON:  Yes.  Good morning, Your Honor.  This is

8    Molly Gaston for the United States.  And also on the line is

9    Jason McCullough for the United States.

10         THE COURT:  All right.  Good morning.

11         THE COURTROOM DEPUTY:  Will counsel for the defendant

12   identify himself for the record, and his colleagues.

13         MR. MURPHY:  Yes, Your Honor.  It's Bill Murphy, and

14   with me is Ezra Marcus.  On the phone is William Taylor, and

15   Adam Abelson is also on the phone.  And Mr. Craig is present

16   with me.

17         THE COURT:  All right.  I appreciate everyone

18   gathering to talk about this this morning.  I thought that more

19   communications by email, that probably wasn't the best way to

20   communicate, and I wanted to talk about scheduling before

21   locking into a particular schedule.

22         Obviously, the defendant has a right to a speedy

23   trial.  And the schedule that I proposed, with your modest

24   proposed tweak to it, accommodates that request.  And when I

25   established it, I was also trying to take other matters of

1    equal significance on my calendar between now and the end of

2    the year into account, and I thought I could do that.

3            But I do have a number of concerns that I just wanted

4    to talk through with everyone before we put anything on the

5    docket as the final schedule in this case.  As important as the

6    right to a speedy trial is, is the right to be prepared for

7    that trial.  And clearly, both parties should have the time

8    they need to brief significant pretrial issues thoroughly.  I

9    want them to be comfortable, given the volume of discovery and

10   the time I was told it's going to take to produce it, that

11   they're going to have sufficient time in advance of the

12   pretrial conference to identify exhibits, object to those

13   exhibits, prepare directs and crosses of witnesses or motions

14   in limine related to areas of their testimony, and to brief and

15   respond to motions in limine.

16           I've never set a trial schedule before discovery had

17   actually been delivered before.  And I've often had the

18   situation where parties who stood up and said things like you

19   all said at the first hearing back down somewhat after they got

20   the volume of discovery that they got.  And I also think that

21   parties appropriately focus on the amount of time it's going to

22   take them to get everything filed, often without taking into

23   adequate consideration the amount of time it takes to read

24   everything you write and to rule on everything, especially if

25   it's going to be done as thoughtfully and thoroughly as the

1      briefing was done.

2              So, I hope -- and I hoped when I came up with it,

3      that the schedule would be doable, but I'm not entirely sure,

4      and I think you all actually have more information about that

5      than I do.  Certainly you have more knowledge than I do about

6      what the scope of discovery is likely to be.  You may already

7      be familiar with the key documents.  I don't know what's been

8      produced through your discussions over time, although I kind of

9      doubt that you've already gotten the 302s or the grand jury

10     testimony.

11             One thing I think you probably do know a lot more

12     than I know at this point is the nature and number of issues

13     that are likely to be in contention.  I understand that there

14     were some matters related to privilege -- but I don't know

15     anything about them -- that were briefed before the chief

16     judge, and it's certainly likely that the defense has already

17     raised a number of issues in white papers, if they prepared

18     any, to try to stave off this prosecution.  And I don't know

19     what's likely to be part of motions in limine and other motions

20     to dismiss.

21             But I was hoping that before I entered the schedule,

22     perhaps the defendant could give me a little bit more insight

23     into what is likely to have to be litigated over the time

24     period that we have.  Obviously, I'm not asking you to disclose

25     your entire defense at this time; you don't have to do that.

1   But, you already know a lot about each other's positions and

2   I'm hoping to be a little more confident that this schedule is

3   going to work.

4          You don't need to argue the motions, like you started

5   to do at the last status conference, but if you say we're going

6   to file a motion about this or that, that would be very

7   helpful.

8          MR. MURPHY:  Your Honor --

9          MR. TAYLOR:  Bill, do you want --

10         MR. MURPHY:  Yeah.

11         MR. TAYLOR:  Do you want to go ahead and do that?

12         MR. MURPHY:  I'll try to do that, Your Honor.  It's

13   Bill Murphy.

14         THE COURT:  Okay.

15         MR. MURPHY:  With respect to motions to dismiss the

16   indictment, we have a motion which Mr. Taylor described a

17   little bit the other day under the *Safavian* case, and that is

18   one motion or part of one motion that we're contemplating.  And

19   then there are additional issues that are related to the 1001

20   charge, which has to do with the allegation of the scheme in

21   this case and the impact of that allegation on the statute of

22   limitations.  Because the statute of limitations in this case

23   would have run, for all offenses, sometime in June of 2018, but

24   with certain exceptions.  And those exceptions were the

25   meetings that occurred -- the meeting that occurred in October

1    of '13 and the letter that followed up the next day, on October

2    the 10th.  I think the government received it on the 11th.

3    That we waived limitations, we tolled limitations when this

4    case was in the Southern District of New York, and then

5    subsequently extended that waiver five times, I think.  But the

6    purpose of that tolling agreement was to preserve for the

7    government the ability to make a charge based on the October

8    meeting and the October letter.

9         One of the positions that will be laid out in our

10   motions is that the other statements that the government is

11   relying upon are really barred by limitations, and that the

12   effort to use the scheme allegation to avoid the statute of

13   limitations is not appropriate.  And, so, that will tie into

14   the *Safavian* motion with respect to the first count of the

15   indictment.

16        Then on the second count of the indictment, as Mr.

17   Taylor I think mentioned, our view is that the FARA statute,

18   which contains a false statement provision of its own, is

19   limited in nature to what it applies to.  And it will be our

20   position that we will articulate that it applies to documents

21   that are filed by a registrant, both the initial registration,

22   the attachments thereto, and then supplemental registrations.

23   But it does not apply to an inquiry made by the FARA unit to a

24   potential registrant about whether or not he had to or it had

25   to register, and that the conversations and the meetings --

1   actually, the statute doesn't apply at all to oral -- the FARA

2   statue does not apply to oral statements at all, it only

3   applies to writings.

4          THE COURT:  Is Count 2 only brought under FARA or is

5   it bought under 1001 as well?

6          MR. MURPHY:  No, it's only brought under the FARA.

7   Count 2 is brought solely under FARA.

8          THE COURT:  All right.  I understand that.

9          MR. MURPHY:  So that count we think will go, if the

10  Court agrees with us that the statute just doesn't apply to a

11  letter sent in response to an inquiry from the FARA unit, which

12  is what the October 10th meeting -- I'm sorry, the October 10th

13  letter was all about.

14          There are a couple of other motions that we are, you

15  know, researching and thinking about that have to do with

16  potentially misleading the grand jury about the law.  And

17  something that Your Honor said this morning I think we should

18  just mention:  We have received from the government already, I

19  think, all of the 302s -- or all the witnesses, at least the

20  witnesses that I'm aware of.  We have not received any grand

21  jury testimony yet, and that's understandable.  I'm sure --

22          THE COURT:  When you say "the wall," you're talking

23  about a wall within Skadden?

24          MR. MURPHY:  No, the law.  I'm sorry.

25          THE COURT:  The law.

1          MR. MURPHY:  The L-A-W.

2          THE COURT:  The law.  Okay.  Got it.

3          MR. MURPHY:  One of the witnesses, I think -- well,

4     certainly one of the witnesses will be Heather Hunt, who was

5     the director or chief of the FARA unit, who met with Mr. Craig

6     and his colleagues at Skadden and who had the exchange of

7     correspondence with them.  Reading the 302s of Miss Hunt, who

8     was interviewed on several occasions by the government, it

9     appears, to me at least, that she may have misstated what the

10    law is.  And she was, we believe, a grand jury witness.  And if

11    she was presented as a grand jury witness who was stating what

12    the law was with respect to the obligations of a potential FARA

13    registrant, if she was presented in that way, we think that she

14    may have misstated the law.  We don't know that yet because we

15    do not have her grand jury testimony.

16         THE COURT:  All right.

17         MR. MURPHY:  But there will be some, I think, very

18    interesting legal issues about what a registrant is required to

19    do, as opposed -- or, a potential registrant is required to do,

20    as opposed to a registrant.  Because the indictment alleges

21    that there's a broad duty on the part of a person who's being

22    inquired of by the FARA unit to provide all relevant

23    information about what they did.  But there's nothing in the

24    statute that would suggest that there is such a duty.  And in

25    fact, Miss Hunt acknowledged in one of her interviews that when

1    she sends out a letter to someone, which she calls a potential

2    obligation letter, someone who has a potential obligation to

3    register, that person is not required to respond at all if he

4    or it chooses not to.

5            So there's no duty to respond to such a letter.  Now,

6    obviously Skadden did respond.  But our position is that, and

7    will be, that Skadden responded to the letter accurately in all

8    respects.  There are no -- in our view, no real false

9    statements contained in any written communication from Skadden

10   to the FARA unit.  The government may disagree with that.

11   But --

12           THE COURT:  Apparently they do.

13           MR. MURPHY:  We think, we think that the grand jury

14   may have been misinformed about the duty of a potential

15   registrant to tell the FARA unit everything that the FARA unit

16   wanted to know.  And that ties in to the *Safavian* decision and

17   whether there is some duty on the part of a potential

18   registrant to tell everything.  And I think that -- there's

19   other case law we'll be relying upon, including Judge

20   Sullivan's decision in *Bowser*.

21           So that's sort of the contours, I guess, of the

22   motions practice that we anticipate.

23           The other motion that we're thinking about, there may

24   be some other statute of limitations motions that might be

25   separate and apart from what I told you already.  There is also

1    the potential for us to move to strike some of the allegations

2    in the indictment as improper surplusage, particularly with

3    respect to the paragraph -- I think it's 65, maybe; the

4    paragraph that says that Mr. Craig also made misleading

5    statements to the Special Counsel's office when he was

6    interviewed by the Special Counsel in October of 2017.

7         I don't know why that's in the indictment.  I

8    understand that there's an allegation here of an ongoing

9    scheme.  But, his statements to the Special Counsel's office

10   three years after the fact have nothing to do with the

11   registration issues.  And the government threw that in and we

12   would like to throw it out.

13        THE COURT:  All right.  I just want to give you a

14   heads-up in connection with any motion to strike surplusage

15   from the indictment, that there is no circumstance under which

16   I would contemplate submitting the indictment to the jury.

17   They'll have a verdict form, but I don't send the indictment to

18   the jury room.  So you can think about that.

19        And also, while I didn't build this into the

20   schedule, in connection with the schedule there will be a

21   requirement for the government to file a notice of any 404(b)

22   evidence it intends to introduce, to flesh out whether they

23   think they get to bring these statements in for that reason.

24        MR. MURPHY:  Right.

25        THE COURT:  All right.  So --

1          MR. MURPHY:  Your Honor, if I could just continue a

2     little bit.

3          THE COURT:  Yes.

4          MR. MURPHY:  If it's okay, so you have a full

5     understanding of the scope of what we contemplate.

6          THE COURT:  Right.  Because we haven't even gotten

7     the motions in limine yet.  And I think you're starting to

8     prove my point, but go ahead.

9          MR. MURPHY:  With respect to motions in limine, which

10     is where I was headed.

11          THE COURT:  Okay.

12          MR. MURPHY:  But the one we are certain that will be

13     filed is a motion in limine with respect to the testimony of

14     witnesses from the Skadden firm who represented Mr. Craig in

15     this criminal investigation -- well, there's one in particular,

16     Mr. Spiegel, he represented Mr. Craig without any quarrel from

17     the government or from Skadden.

18          It's clear that between October of 2017 and March,

19     early March of 2018 Mr. Spiegel was Mr. Craig's lawyer in this

20     matter.  The issue that was in front of Judge Howell had to do

21     with the impact of that situation on Mr. Spiegel's ability to

22     testify before the grand jury.  There was a very, I think,

23     limited ruling by the judge that allowed Mr. Spiegel to testify

24     concerning what he remembered about a meeting that occurred

25     back in 2013, the meeting of October the 9th, 2013, which is

1    really a central meeting in this case, because she ruled that

2    at that time Mr. Spiegel did not represent Mr. Craig; rather,

3    both Mr. Craig and Mr. Spiegel appeared at the meeting

4    representing Skadden.

5          We disagreed with that result, but that was the

6    result that the judge reached.  And Mr. Spiegel, under those

7    circumstances, was permitted to testify in the grand jury.

8    Maybe I said some things that ought to be sealed, I don't know.

9    I'm hoping that, actually, Judge Howell will unseal at least

10   portions of her opinion shortly.  She's asked us all to get in

11   touch with her within 30 days of the indictment being returned

12   about whether or not her opinion ought to be released.

13         So anyway, I think that there will be some motions in

14   limine with respect to the scope of Mr. Spiegel's testimony,

15   but we don't know at this moment what exactly he said in the

16   grand jury.

17         So, but the three things that I think we would like

18   to see from the government quickly, so that we can have an

19   expeditious schedule with respect to grand jury testimony, is

20   the grand jury testimony of Mr. Spiegel, which I imagine was

21   fairly short.  The grand jury testimony of Miss Hunt with

22   respect to how she defined the duty issue, or if she defined

23   the duty issue for the grand jury.  And then, also, I think,

24   the testimony of Mr. Hawker.

25         Mr. Hawker was a consultant who did the public

1    relations work for the Ukraine Ministry of Justice.  We are

2    particularly interested in some statements that he made in his

3    last appearance.  He appeared three times for interviews and

4    the third time he made some statements which we think to be

5    absolutely incorrect.  And I don't know if the grand jury was

6    misled by them, but we would like very much to see whether the

7    grand jury process was perhaps infected by something which is

8    demonstrably untrue.

9            So we would like to see Mr. Hawker's grand jury

10   testimony as well.  And I don't even know if the government

11   intends to call Mr. Hawker.  He's a resident and citizen of the

12   United Kingdom.  But since he's appeared here three times, I

13   have a feeling the government will maybe have him come back

14   again.  And that's it.

15           THE COURT:  That's it?

16           MS. MARCUS:  In terms of what we anticipate.

17           MR. TAYLOR:  Judge Jackson, this is Bill, and I'm --

18   Bill Taylor.  And I'm very reluctant to, you know, to have two

19   lawyers speak.  There's one thing that I did want to point out

20   that I think will be part of the motions practice -- Bill

21   Murphy may have alluded to -- there's a vagueness to the

22   quality of this indictment in numerous respects.

23           In particular, in paragraph 61, which discusses the

24   October 9 meeting, there's no allegation of what Mr. Craig

25   actually said at that meeting.  The allegation is that he made

1    statements consistent with something else.  And we know now

2    that nobody has any notes of that meeting.  So, this

3    indictment, to the extent it relies upon the October 9 meeting,

4    is one that has no specificity as to a false statement, or even

5    anything else about what was said in that case.  And there's a

6    Russell issue lurking in this indictment.  I don't know whether

7    it gets picked up in the *Safavian* order or others.  But, I did

8    want to add that to what Bill said about the issues.

9           THE COURT:  All right.  And I realize that the

10   assistant United States attorneys are sitting there thinking,

11   well, there's a lot I could say about all of that.  But I

12   really was just trying to get my arms around the nature and

13   number and complexity of the issues and not the merits.  And so

14   I'm not necessarily going to give you the opportunity right now

15   to quite, quote, unquote, educate me, because you will have

16   sufficient opportunity to do that, everyone will.

17          I'm really just focusing right now on what it's going

18   to take to get this case to a position to try it.  And what I'm

19   hearing is that no matter how much work I do to get ready for

20   this hearing on these motions before we have it, you're going

21   to be required to be identifying your exhibits and drafting

22   your motions in limine before you even know if the trial is

23   going forward, if all the counts are going forward, what's in

24   and what's out, and that requires a lot of work on your part.

25   It may require unnecessary, expensive work on your part.  And

1    so there's that.

2          I can't imagine that with respect to the bulk of

3    these I would not want to rule in writing.  Whatever I do I

4    imagine is going to be appealed.  And so, people are entitled

5    to the benefit of my thinking in as much detail and clarity as

6    it deserves.  And so this is a very compressed schedule to

7    accomplish all that.  And even if I can do it before there is a

8    trial, I doubt seriously that I could do it before you have to

9    start drafting your pretrial statement.  And I certainly -- the

10   way we even have it, you've got motions in limine that start to

11   be due even before we've had our hearing.

12          So, I think this is an extraordinarily ambitious

13   schedule.  And so even if you all tell me, Well, that's fine

14   with us, we're perfectly happy to spend hours working on

15   motions in limine and objections to exhibits and voir dire and

16   jury instructions when we don't even know what the scope of the

17   trial is going to be or if there's going to be one, even if you

18   all feel that way, you would need to understand that this whole

19   thing will fall apart if anyone tries to tell me two weeks

20   before a motion is due or two days before a motion is due or

21   opposition is due, Oh, gosh, I need another week.  Or, Oh, gee,

22   we were really thinking about X and so we don't have our

23   objections to our exhibits; here's our joint pretrial

24   statement, exhibits list to follow -- which people seem free to

25   do with me all the time -- because in this instance you're not

1    going to give me sufficient time to deal with them.

2            So in other words, the usually-quite-liberal-with-

3    extensions Judge Jackson is not going to appear in this trial.

4    But if we're going to go to trial in August, I can't -- you're

5    not going to be able to get them.  And another concern I have

6    is that --

7            MR. MURPHY:  Your Honor --

8            THE COURT:  -- if everyone does come to the

9    conclusion that more time is needed to do everything with the

10   level of -- the level that both the U.S. Attorney's office in

11   this District and this law firm do things, I would hate to end

12   up in a situation where there's a reasonable and important

13   request for additional time and at that point December is

14   chock-full of all of my firearm cases that are just cascading

15   into the courthouse at this moment with incarcerated

16   defendants.

17           So, I want everyone to think really hard about

18   whether you want to insist on this compressed schedule at this

19   time because, number one, you're going to have to live with it

20   and, number two, it risks a continuance much later than the

21   certain trial date I could set right now, if we gave ourselves

22   a little more time.  So, I'm happy to hear if anybody has

23   anything to say about that.

24           MR. MURPHY:  Your Honor, this is Bill Murphy again

25   for Mr. Craig.  Let me just say that Mr. Craig has been living

1    with this cloud over his head since October of 2017.  In our

2    view, this case should be resolved as expeditiously as

3    possible.  And Mr. Taylor and I are experienced trial lawyers

4    who have tried complicated cases like this.  We know what's

5    required.  We have a team that's assembled to work to get it

6    done and we will do everything in our power to get this trial

7    done in August, as Your Honor indicated, because that's what

8    Mr. Craig is entitled to.  And I'm sure that the government

9    will work hard to get it don't as well.  But we want to move

10   forward in August.

11         THE COURT:  All right.  Well, you also need to

12   understand that everybody who has a case on my calendar feels

13   the same way.  There are people who have been in jeopardy

14   longer, people who are incarcerated, people whose cases are as

15   important to them as Mr. Craig's.  And that means if I

16   accommodate you with this schedule, I have -- I don't have

17   flexibility.  If you get to the point where you say, gee -- if

18   we can just go into September, we'll be fine.  September is

19   chock-full of matters related to another gentleman who feels

20   exactly the same way.  But let me hear from the United States

21   on this.

22         MS. GASTON:  Yes, Your Honor.  So, a few things.  And

23   we will certainly not address the merits of the motions that

24   the defense has described.  As to the grand jury testimony that

25   they think that they need for the purpose of their motions, we

1    can produce very promptly Mr. Spiegel's testimony and Miss

2    Hunt's testimony.  Mr. Hawker did not testify before the grand

3    jury.  So, to the extent that those materials are needed for

4    their motions, they will have them promptly.

5            One thing I will flag -- and first, let me say that

6    the government agrees that this is an aggressive schedule, but

7    we will be ready in August and we will work with the defense

8    over the summer to make sure that we are ready by August.

9            With respect to the one motion in limine that

10   Mr. Murphy described, that was the subject of some fairly

11   extensive briefing before the chief judge in advance of the

12   indictment.  And so I would just flag that, you know, it's

13   not -- it's not a normal, fairly simple motion in limine.  It's

14   a fairly complicated issue.

15           THE COURT:  Well, one thing the parties could

16   consider doing is providing me, before then, with the pleadings

17   that you provided to Judge Howell and then when you do your

18   motion in limine it only needs to be a very short statement

19   about why her opinion got it wrong, or didn't, without laying

20   it all out again.  I don't have any problem with that.  And

21   that might get things in my chambers and looked at sooner.

22           MR. MURPHY:  And, Your Honor -- this is Bill

23   Murphy -- it may not be that we'll be suggesting that she was

24   wrong about -- that Judge Howell was wrong about what she ruled

25   on.  It may be that we'll be asking for a different ruling,

1    depending on what it is exactly that Mr. Spiegel said and

2    testified to in the grand jury, about which we do not yet know

3    exactly.  So it may be that that motion in limine will be less

4    complicated than we anticipate that it might be.

5            THE COURT:  All right.  Well, if when you see it you

6    determine that it fell within boundaries that you think are

7    appropriate, given the attorney-client privilege, and it's not

8    an issue, if you can let everybody know, that would be helpful.

9    If you're still intending to file a motion, you have an

10   absolute right to do that.

11           MR. MURPHY:  We will do that, Your Honor.

12           THE COURT:  All right.  All right.  Does anybody have

13   anything else they want to say about the schedule?

14           MS. GASTON:  We -- for the government, Your Honor, we

15   just wanted to ask that there be, as you stated, a deadline

16   included for 404(b) notices, if any, and expert notice, if any.

17           THE COURT:  Is anybody anticipating at this point

18   that there's going to be experts?

19           MR. MURPHY:  For the defense, Your Honor, it's Bill

20   Murphy again.  We do anticipate the possibility of having one

21   or more experts.

22           THE COURT:  On what issue?  I don't believe that it's

23   appropriate to call an expert on a question of law.  I think

24   what is or isn't required under FARA should be a question of

25   law, it should be incorporated in my jury instructions.  So I

1    think experts may opine on questions of fact that are otherwise

2    beyond the ken of the average juror and they need some

3    expertise or background to understand.  So what would the

4    expert's expertise add?

5                 MR. MURPHY:  Well, Your Honor, we understand the

6    general principal that an expert is not to testify on an issue

7    of law.  We are looking at, really, a question of, kind of,

8    FARA practice and the -- kind of the expectations of people

9    that were practitioners in the area and how that might bear on

10   Mr. Craig's state of mind with respect to his positions as

11   articulated in the meeting with the FARA unit and in his

12   letters to help demonstrate that his positions were all quite

13   reasonable and consistent with commonly understood practice and

14   procedure among the FARA bar.

15                That's a little bit different than a pure question of

16   law.  But we would ask that you certainly wait until we are

17   prepared to offer the expert and to describe her testimony

18   before, at least, some sort of a ruling about it.  You know, we

19   understand the difference between expert testimony and a legal

20   issue.

21                THE COURT:  Well, I'm sure you do.  And it's come up

22   in so many cases before me where people proffer experts that

23   really are lecturing the jury on the law.  I wanted to let you

24   know that I had a point of view about it.  I'm not pre-ruling

25   on anything, but, obviously, this is another issue where there

1   might be some back and forth between the parties on the issue.

2   So, that and the 404(b) is going to have to be in the schedule.

3              Is the government anticipating calling any experts at

4   this point?

5              MS. GASTON:  We do not know at this point, Your

6   Honor.

7              THE COURT:  All right.  Okay.  Well, as I said,

8   there's going to be a lot to do.  And please --

9              MR. MURPHY:  Your Honor --

10             THE COURT:  You know, if everybody ultimately agrees

11  they need more time for the whole thing, they may be able to

12  get it.  But if we're not extending the trial, we're not

13  extending the dates that I set for submissions to me.  I just

14  can't.  So I hope everybody understand that.

15             MR. MURPHY:  Your Honor, could you give us, on our

16  side, a few hours to think about what you've said?

17             THE COURT:  Absolutely.  I'm happy to --

18             MR. MURPHY:  Since we're not in --

19             THE COURT:  We all know what we're talking about.

20  This doesn't need to be publicly determined at this moment.

21  So, if you want to let me know tomorrow, if you still want to

22  propose the same schedule that you proposed, with, you know,

23  the two-day difference based on what I've proposed, you can

24  have until tomorrow to let me know.  That's fine.

25             MR. MURPHY:  Yeah, just because we're not all at the

1    same place.

2             THE COURT:  Right.  Well, I think you should all talk

3    among yourselves about it and let me know.  At this point, as I

4    said, it sounds like a long time away, but maybe it really

5    isn't.  I could accommodate a trial the first week of December.

6    October and November are, for reasons unrelated to you all,

7    unavailable.

8             All right.  Well, I'll look forward -- you can just

9    let -- I would use the same methodology and let Mr. Haley know

10   with an email, with a copy to the U.S. attorney's office.  And

11   if you want to talk to them, you can talk to them, too.  And

12   everybody can let me know tomorrow what they think.

13            All right.  Thank you.

14            MS. GASTON:  Thank you, Your Honor.

15            THE COURT:  Thank you, everybody.

16            MR. MURPHY:  Thank you.

17                              *   *   *

18

19

20

21

22

23

24

25

1

2                    CERTIFICATE OF OFFICIAL COURT REPORTER

3

4

5              I, JANICE DICKMAN, do hereby certify that the above

6     and foregoing constitutes a true and accurate transcript of my

7     stenograph notes and is a full, true and complete transcript of

8     the proceedings to the best of my ability.

9                              Dated this 22nd day of April, 2019.

10

11

12                         /s/_____

13                         Janice E. Dickman, CRR, RMR, CRC
                           Official Court Reporter
14                         Room 6523
                           333 Constitution Avenue NW
15                         Washington, D.C. 20001

16

17

18

19

20

21

22

23

24

25