UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>*v.*<br><br>**GREGORY B. CRAIG**,<br><br>    *Defendant.* | Case No. 1:19-cr-0125 (ABJ) |

**DEFENDANT'S MOTION FOR BILL OF PARTICULARS**

Pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, defendant Gregory B. Craig moves for an order requiring the government to file a bill of particulars. As contemplated by the scheduling order in this case, Mr. Craig will soon file motions asking the Court to dismiss this indictment. This motion should not take precedence over those motions.[1]

**I.    INTRODUCTION**

The government's theory is that Mr. Craig wanted to avoid registration under the Foreign Agents Registrations Act (FARA), and that he made misstatements and omissions in order to persuade the FARA Unit that he and his law firm were not required to register.[2] Mr. Craig contends that neither he nor his law firm engaged in any conduct that required FARA registration, and that he did not mislead the FARA Unit in any way. In fact, Mr. Craig and his

---

[1] A bill of particulars does not cure a defective indictment. *Russell* v. *United States*, 369 U.S. 749, 770 (1962) ("it is a settled rule that a bill of particulars cannot save an invalid indictment"); *United States* v. *Thomas*, 444 F.2d 919, 922 (D.C. Cir. 1971) (explaining that allowing a bill of particulars to cure a defective indictment by identifying an omitted material fact would "allow the grand jury to indict with one crime in mind and to allow the U.S. Attorney to prosecute by producing evidence of a different crime"); *United States* v. *Hillie*, 227 F. Supp. 3d 57, 81 (D.D.C. 2017).

[2] It was no secret that the Ministry of Justice of Ukraine was the firm's client. The first sentence in the body of the report states: "Attorneys from the law firm Skadden, Arps, Slate, Meagher & Flom, LLP (Skadden) have been hired by the Ministry of Justice of the Government of Ukraine (the Ministry of Justice) to inquire into the evidence and the procedures used to prosecute Prime Minister Yulia Tymoshenko."

z

law firm did not register under FARA because they believed, after careful consideration of the issue, that the firm's work for Ukraine did not require registration.

In late December 2012 and during 2013, the Department of Justice's FARA Unit inquired about the firm's work for Ukraine and Mr. Craig, with the assistance of others at the firm, wrote three letters responding to the questions. Eventually, the FARA Unit focused its inquiry on Mr. Craig's interaction with the media in December, 2012, when the Tymoshenko report was released by Ukraine. Mr. Craig argued that his interactions with the media did not require registration because they were, among other things, intended to correct mischaracterizations about the report emanating from the Ukraine MOJ and were the antithesis of actions taken "for or in the interests of" a foreign principal. After a face-to-face meeting on October 9, 2013 (followed by a letter from Mr. Craig the next day), the Chief of the FARA Unit agreed with Mr. Craig's argument and informed Skadden it need not register. ECF 1, at ¶ 64.

Count One of the indictment alleges that Mr. Craig engaged in a "false statements scheme" in violation of 18 U.S.C. § 1001(a)(1). Count Two alleges that he made false and misleading statements in violation of the registration and enforcement provisions of FARA, 22 U.S.C. §§ 612 and 618. The allegations focus on two letters from Mr. Craig to the FARA Unit and the face-to-face meeting between Mr. Craig, law firm colleagues and members of the FARA Unit on October 9, 2013. With respect to that meeting, the government has no notes of what occurred and apparently no witness who recalls precisely what was said. There is no recording, no transcript, and no memorandum describing what occurred during the meeting. Grand jury testimony reveals that none of the participants at the meeting – either from the FARA Unit or Mr. Craig's colleagues from Skadden – have any specific recollection of what was said.

Confusion in the evidence as to what was said is replicated in the indictment. In its various allegations, the indictment jumbles allegations about written statements together with inferences about oral representations. There is no itemization of what statements are alleged to be false as opposed to those alleged to be misleading. There is a list of material facts that the indictment alleges should have been provided to the FARA Unit – ECF 1, at ¶ 63 – but no information as to the duty that required Mr. Craig to furnish that information and when he should have done so. With respect to written as well as oral communications alleged to be false, the indictment is vague, contradictory, and ambiguous.

Although a bill of particulars cannot remedy the grand jury's failure to find facts sufficient to state an offense, it can at least provide notice of the specific facts the government claims constitute the offense. If the Court concludes, following briefing and argument on the motions to dismiss, that this case can proceed to trial, it should order a bill of particulars concerning the allegations set forth below.

## II. ARGUMENT

### A. A bill of particulars under Rule 7(f) is often warranted in false statement cases

Rule 7(f) provides that "[t]he court may direct the government to file a bill of particulars." A district judge has discretion to "determine whether a bill of particulars should be provided, and the court should grant a motion for a bill of particulars to the extent it believes it is necessary to allow the defendants to adequately prepare for and avoid surprise at trial." *United States* v. *Bazezew*, 783 F. Supp. 2d 160, 167 (D.D.C. 2011). Producing information in discovery is not a substitute for a bill of particulars, because discovery does not commit the government to the particular facts it proposes to offer at trial to prove the charged offense. *See* 1 C. Wright et al., FEDERAL PRACTICE AND PROCEDURE § 130, at 656 (4th ed. 2008) (the function of a bill of

particulars is to "give the defendant notice of the essential facts supporting the crimes alleged in the indictment or information, and also to avoid prejudicial surprise to the defense at trial."). Courts in this district have not permitted the government to defeat a motion for a bill of particulars by pointing to discovery it has provided or to an open file policy. *United States* v. *Anderson*, 441 F. Supp. 2d 15, 19 (D.D.C. 2006); *see also United States* v. *Trie*, 21 F. Supp. 2d 7, 21 (D.D.C. 1998) (government could not avoid bill of particulars by pointing to list that included the false statements, but must identify the particular statements alleged to be false, and what about them was false).

In a false statements case, "it is insufficient for the government to tell defense counsel 'the substance' of what the false statements are or to offer to make a particular witness available for interview prior to trial." *Anderson*, 441 F. Supp. 2d at 19. Instead, courts have ordered the government to file a bill of particulars that details "precisely which allegedly false statements the government relies on in each paragraph, the way in which the government alleges them to be false, and when *approximately* they were allegedly made." *Id.* at 20; *see also United States* v. *Hsia*, 24 F. Supp. 2d 14, 32 (D.D.C. 1998) (after government clarified which statements were false, court still ordered bill of particulars as to how defendant "caused each of the false statements to be made"); *compare United States* v. *Manafort*, 2018 U.S. Dist. Lexis 105435, at *5-6 (D.D.C. June 12, 2018) (motion for a bill of particulars denied as moot when government stated "on the record at the hearing that the statements alleged in Counts IV and V of the indictment to be false and/or misleading are the sole statements or omissions on which Counts IV and V are based"). When the government alleges material omissions rather than false statements, it must identify the material omissions *and the duty that required defendant to make a disclosure*. *See United States* v. *Tam*, 2017 U.S. Dist. Lexis 141122, at *11-12 (N.D. Cal. Aug.

31, 2017) (granting motion where indictment did not identify omissions and disclosure obligation).

The defense acknowledges that the decision whether to grant a request for greater particularity is often driven by individual circumstances. The circumstances of this case support such relief. The indictment was prepared many years after the events in question, and memories have faded. The government has no written record to elucidate the allegations of false oral statements – or perhaps to dismantle them – and depends entirely upon the recollections of participants that are vague, incomplete and unreliable. Despite the self-evident risk of mistake and misremembering, the government pursues criminal charges alleging that Mr. Craig lied to the FARA Unit. In such a context, the Court should exercise its discretion and insist on clarity and particularity. To give the defendant a fair chance to know the charges, to meet the charges and to prepare his defense, the Court should require the government to be specific and precise in the details of its allegations.

### B. The lack of specificity in the indictment warrants a bill of particulars as to five paragraphs alleging false or misleading statements or material omissions

There is, to be sure, great particularity in some aspects of this indictment. Paragraph after paragraph provides detail about the law firm's work analyzing the Tymoshenko prosecution and the form and manner of payment for that work. *See* ECF 1, at ¶¶ 7-27. This level of detail does not describe any unlawful act, or even a reason why FARA registration was required.

The only conduct alleged to be unlawful involves statements and omissions allegedly made to the FARA Unit in 2013 about the media interaction that occurred in the fall of 2012 as the Tymoshenko report was issued. But when it comes time to identifying the actual false or misleading statements, the indictment is vague, cryptic, and confusing. The case law set forth above establishes that this is precisely the type of charging document that warrants a bill of

particulars. A defendant cannot adequately prepare a defense to a false statements indictment unless he knows precisely what statements are alleged to be false, or what facts he allegedly should have stated but did not disclose, and why he was required to disclose them.

The Court should order the government to provide a bill of particulars to clarify the following nonspecific allegations in the indictment.

1. **Allegation**. "CRAIG drafted false and misleading descriptions of his media contacts, in particular his contacts with Reporter 1 and Reporter 2, for distribution within the Law Firm and to the FARA Unit." ECF 1, at ¶ 50.b.

   **Deficiency**. Mr. Craig circulated two emails within the law firm that were never sent to FARA. ECF 1, at ¶ 59 (Sept. 19, 2013 e-mail sent to Skadden's general counsel); *id.* at ¶ 60 (draft response letter to the FARA Unit sent to Skadden's general counsel). Mr. Craig circulated two other draft letters to the FARA Unit that went first to other lawyers within the law firm and then were delivered in final form to the FARA Unit. *Id.* at ¶¶ 55-56 (describing drafting of June 3, 2013 letter sent to FARA Unit); *id.* at ¶ 62 (describing October 11, 2013 letter sent to FARA Unit). Does the government contend that statements circulated solely within the law firm are somehow unlawful under 18 U.S.C. § 1001(a)(1)? Does the government contend that the allegation in ¶50.b applies to all four written communications? Does the government distinguish between statements that are "false" and statements that are "misleading"? If so, which are which?

   **Particulars required**. The government should state precisely which written statements drafted by Mr. Craig were false and which were misleading in violation of 18 U.S.C. § 1001(a)(1).

2. **Allegation**. "Under FARA, when responding to the FARA Unit's inquiries, CRAIG had a duty to provide material information and not to willfully make misleading statements or omit material facts." ECF 1, at ¶ 52.

6

**Deficiency**. As Mr. Craig will explain in more detail in his motions to dismiss, a prosecution for material omissions under § 1001(a)(1) requires the government to prove a legal duty to disclose the information omitted. *E.g.*, *United States* v. *Safavian*, 528 F.3d 957, 964 (D.C. Cir. 2008). The duty must be based on "specific requirements for disclosure of specific information." *Id.* As the Court of Appeals explained in *Safavian*, "[t]here is good reason for demanding such specificity: to comply with Fifth Amendment due process, the defendant must have fair notice . . . of what conduct is forbidden. . . . [T]his fair warning requirement prohibits application of a criminal statute to a defendant unless it was reasonably clear at the time of the alleged action that defendants' actions were criminal." *Id.* (citations and internal quotations omitted).

This indictment does not identify any statute, regulation, publication or official pronouncement requiring Mr. Craig to provide *any* specific information to the FARA Unit, or to refrain from making material omissions when responding to a FARA Unit inquiry. If a specific provision of FARA obligated Mr. Craig to provide specific material information or to refrain from omitting material information in that context, Mr. Craig is entitled to know exactly what that provision says, so he can prepare his defense.

**Particulars required**. The government should identify each instance when Mr. Craig should have provided material information to the FARA Unit and failed to do so, what specific omitted material information should have been provided on that occasion, and what provision of law obligated him to provide that information.

3. **Allegation**. "On or about June 3, 2013, CRAIG sent his and the Law Firm's formal response to the FARA Unit. CRAIG's letter contained the following material false and misleading statements and omissions:

    - The letter stated that 'the law firm on December 12-13, 2012 provided a copy of the report to (1) [Tymoshenko's legal team]; (2) [a representative of the

    Private Ukrainian]; (3) [Reporter 1]' and the two publications with which the Law Firm had communicated after the Report's release.
- CRAIG claimed that '[t]he law firm viewed the distribution of the report as a matter that would be decided by the Ukraine Government in its sole discretion. The law firm did not advise the Ministry on that issue.
- The letter also stated that the Law Firm 'issued no statements and made no comments to the media, the public or government officials about the report. Gregory Craig provided brief clarifying statements about the report to [Reporter 1]' and the other reporters to whom the firm had responded after the report's public release. The letter continued, 'One purpose of the statements was to correct misinformation that the media had received – and was reporting – from the Ministry of Justice and from the Tymoshenko legal team in Ukraine.'" ECF 1, at ¶ 56.

**Deficiency**. Paragraph 56, read charitably, alleges each item in the bulleted subparagraphs qualifies as (1) a material false statement; (2) a material misleading statement; and/or (3) a material omission. But there is nothing to say which statement falls into which category. When it comes to the allegation of omissions, there is nothing other than a sweeping allegation that "CRAIG's letter contained . . . omissions." What material facts should have been included but were omitted? Similarly, it is impossible to discern what if any statement is allegedly false and what if any statement is alleged to be misleading, and whether there is a meaningful difference between the two.

**Particulars required**. The government should particularize which of these statements is alleged to be false, which is misleading, what if any material fact was omitted, and what duty required disclosure of that material fact.

4. **Allegation**. "On or about October 9, 2013, CRAIG, the Law Firm's General Counsel, and the partner with FARA experience met with the Chief of the FARA Unit and other FARA Unit staff. In that meeting, CRAIG made false and misleading statements to the FARA Unit that were consistent with the misleading statements he had made to the Law Firm's General Counsel orally and in writing on or about September 19 and 20, 2013. In particular, CRAIG claimed that his media contacts were solely reactive and for the purpose of correcting misinformation." ECF 1, at ¶ 61.

8

**Deficiency**. Paragraph 61 exemplifies the type of vague and confusing allegation that courts disfavor in false statement cases. Such vagueness may be understandable given the government's inability to prove what was said at a meeting that occurred over five years ago without the benefit of notes, recordings, or transcripts. But that does not make the allegation adequate for a criminal charge. The *sine qua non* of a false statement indictment has to be the text of the false statement or, under a material omissions theory, the precise information that was omitted along with the reason why its disclosure was required. If the government cannot allege that information, it may not pursue the charge.[3]

Paragraph 61 is internally inconsistent. It alleges that Mr. Craig "made false and misleading statements" to the FARA Unit that were "consistent with" the "misleading statements" he allegedly made to his law firm. So were the statements to the FARA Unit false or were they misleading? And if they were misleading, why?

Paragraph 61 is hopelessly vague. What does it mean for someone to make a statement that is "consistent with" another statement? For instance, the statement "*we did not disseminate the report to the news media*" is consistent with "*we did not disseminate the report to the news media but I did ask one reporter if he wanted a copy*." In each case, a government witness could truthfully say that "Mr. Craig told us he did not disseminate the report to the news media." The details matter here when the government's theory itself seems to hinge on details – that were likely unimportant at the time – about the precise circumstances in which a journalist obtained a copy of the report, and why, and what Mr. Craig said about those topics ten months later. The intended meaning of statements made during the October 9, 2013 meeting, and their truth or

---

[3] *See*, *e.g.*, D.C. R. Prof'l Cond. 3.8(b)-(c) (prosecutor shall not: file or maintain charge "that the prosecutor knows is not supported by probable cause," or "[p]rosecute to trial a charge that the prosecutor knows is not supported by evidence sufficient to establish a prima facie showing of guilt.").

falsity, will depend on the context in which a statement was made, including particularly whether the statement came in response to a question or questions from the FARA Unit.

Indeed, a key difference between the statements made to the law firm and those made to the FARA Unit is that the latter were made orally and were likely part of a colloquy. Mr. Craig's alleged false statements during the meeting were made in response to inquiries from the FARA Unit concerning his conduct and that of his firm. The questions asked, as well as the answers given, are critical to the false statement allegation. *See United States* v. *Subeh*, 2006 U.S. Dist. Lexis 2611, at *79 (W.D.N.Y. Jan. 24, 2006) (magistrate judge report ordering bill of particulars requiring government to set forth questions that elicited the allegedly false statements), *aff'd*, 2006 U.S. Dist. Lexis 45514 (W.D.N.Y. July 5, 2006).

Paragraph 61 does not indicate precisely which statements made to the FARA Unit were "consistent with" statements made to the law firm or which statements to the law firm they were "consistent with." The paragraph does allege that Mr. Craig claimed that his media contacts were solely reactive and for the purpose of correcting misinformation. ECF 1, at ¶ 61. But paragraphs 59 and 60 of the indictment contain other statements that the government alleges are "false and misleading," and paragraph 61 might or might not encompass them. Further, paragraph 61 alleges that Mr. Craig made misleading statements to the law firm's general counsel "orally and in writing on or about September 19 and 20, 2013," and that his false and misleading statements to the FARA Unit were consistent with these statements. But paragraphs 60 and 61 never identify any *oral* statement, false or true, that Mr. Craig made to Skadden's general counsel, so Mr. Craig has no idea what the government intends to prove that he said.

**Particulars required**. The government should identify each statement Mr. Craig made at the October 9 meeting that is alleged to have been false or misleading and, if the statement was in response to a question from the FARA Unit, the text of the question. For each statement alleged to be misleading, the government should explain why the statement was misleading.

5. **Allegation**. "On or about October 19, 2017, during an interview conducted by the Special Counsel's Office, CRAIG repeated certain of the false and misleading statements he had made to the FARA Unit concerning the timing and nature [of] his contacts with journalists about the Report." ECF 1, at ¶ 65.

    **Deficiency**. Because paragraph 65 is immaterial to the charge stated in Count One (false and misleading statements made to the FARA Unit in connection with a matter within its jurisdiction) and is prejudicial to the defendant, Mr. Craig intends to move to strike it as surplusage pursuant to Rule 7(d). If the Court declines to strike this paragraph (or to dismiss the indictment *in toto*), it should order the government to explain what statements are at issue. The government's reference to "certain" false and misleading statements is impossibly vague; indeed, one wonders how the grand jury could have understood what charge it was authorizing. For purposes of this motion for a bill of particulars, however, it is enough to point out that the government may not present a list of statements and require the defendant to guess which ones the government contends were false. *See Trie*, 21 F. Supp. 2d at 21. *A fortiori*, it cannot present a list of alleged false or misleading statements and require the defendant to guess which "certain" statements the government contends were actually repeated during an interview four years later. It is fantasy to suppose that the statements allegedly made in 2013 were repeated in precisely the same form in October 2017, and small differences in text can have major consequences in a false statements case. If the government really intends to pursue this skeletal allegation –

11

which seems doubtful given its irrelevance to the rest of the indictment – the government must provide enough detail to enable Mr. Craig to prepare his defense.

**Particulars required**. The government should identify each false and misleading statement Mr. Craig allegedly made to the Special Counsel's Office on October 19, 2017. For each statement alleged to be misleading, the government should explain why the statement was misleading.

## III. CONCLUSION

For the reasons stated, the Court should defer this motion until it rules on defendant's forthcoming motions to dismiss. If it denies those motions, the Court should order the government to provide defendant with a bill of particulars providing the necessary information described in Part II, B above.

Dated: April 30, 2019                     Respectfully submitted,


William W. Taylor, III (D.C. Bar No. 84194)
Ezra B. Marcus (D.C. Bar No. 252685)
ZUCKERMAN SPAEDER LLP
1800 M Street N.W. Suite 1000
Washington, D.C. 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
E-mail: wtaylor@zuckerman.com
           emarcus@zuckerman.com

By: /s/ *William J. Murphy*

William J. Murphy (D.C. Bar No. 350371)
Adam B. Abelson (D.C. Bar No. 1011291)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
Tel: (410) 332-0444
Fax: (410) 659-0436
E-mail: wmurphy@zuckerman.com
           aabelson@zuckerman.com

*Attorneys for Defendant Gregory B. Craig*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 30, 2019, the foregoing Defendant's Motion for a Bill of Particulars was served on counsel of record via the Court's CM/ECF service.

                                                             /s/ *Ezra B. Marcus*
                                                             Ezra B. Marcus