UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>               v.<br><br>GREGORY B. CRAIG,<br><br>               *Defendant.* | Case No. 1:19-cr-0125 (ABJ) |

## DEFENDANT'S MOTION TO DISMISS COUNT TWO

Defendant respectfully requests the Court to dismiss Count Two of the Indictment under Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure because it fails to state an offense. Count Two charges that Mr. Craig violated the special false statement provision of the Foreign Agents Registration Act ("FARA"), 22 U.S.C. § 618(a)(2), in a letter he sent to the Justice Department's "FARA Unit" on October 11, 2013. The evidence will show that the letter contains no material false statements or omissions, but Mr. Craig is not required to defend its truthfulness in this preliminary Motion to Dismiss. Count Two fails to state an offense because the letter at issue is not a document covered by the statute.

Section 618(a)(2) addresses material false statements and omissions in "any registration statement or supplement thereto or in any other document filed with or furnished to the Attorney General under the provisions of [FARA]." Section 618(a)(2) thus applies to statutorily required submissions by FARA registrants – "registration statement[s]," "supplement[s]," and other documents filed or furnished "under the provisions of [FARA]" – not voluntary letters to the FARA Unit about possible registration, such as the one specified in Count Two. Such letters, like communications to *any* federal agency on "any matter within [its] jurisdiction," are subject to the general prohibition against false statements contained in 18 U.S.C. § 1001. But FARA's

special false statement provision is limited to documents that are unique to FARA: statutorily required submissions by FARA registrants.

As we demonstrate more fully below, § 618(a)(2)'s plain language, the context of the false statement provision within FARA as a whole, FARA's legislative history, and its implementation by the Department of Justice readily establish that the false statement provision in FARA does not apply to Mr. Craig's letter. Instead, § 618(a)(2) addresses registration statements, supplements to those statements, and documents filed or furnished with them, because the purpose of the statute as a whole and of this provision in particular was to assure full disclosure of all material information by persons or entities required to register. Mr. Craig was not a FARA registrant and the letter was a voluntary response to questions, not a registration statement, supplement, or other document filed or furnished "under the provisions of [FARA]." If there is any doubt about the ambit of the false statement provision contained in this penal statute (and we submit there is none), under the rule of lenity all such doubts must be resolved in favor of Mr. Craig.

## THE FALSE STATEMENT CHARGE IN COUNT TWO

### A. History and Purpose of FARA and its False Statement Provision

Congress enacted FARA in 1938 on the recommendation of a congressional committee investigating the covert influence of Nazi propaganda within the United States. *See Viereck v. United States*, 318 U.S. 236, 244 (1943). The statute's express purpose is to

> requir[e] public disclosure by persons engaging in propaganda activities and other activities for or on behalf of . . . foreign principals so that the Government and the people of the United States may be informed of the identity of such persons and may appraise their statements and actions in the light of their associations and activities.

*Meese v. Keene*, 481 U.S. 465, 469 (1987) (quoting 56 Stat. 248–49 (1942)).

FARA requires foreign agents to file detailed registration statements listing their activities on behalf of a foreign principal. 22 U.S.C. § 612(a). A registration statement must be accompanied by numerous documents and pieces of information, including "[a] comprehensive statement of the nature of the registrant's business," *id.* § 612(a)(3), the amount of money received from the foreign principal, *id.* § 612(a)(5), and "[c]opies of each written agreement" that sets forth an agency relationship with a foreign principal or that contemplates registrable activities, *id.* § 612(a)(4), (9). Registered agents must file supplemental registration statements every six months to ensure that their disclosures remain "accurate, complete, and current." *Id.* § 612(b). The Attorney General must make all of these documents available to the public. *Id.* § 616(a).

From its inception in 1938, FARA set forth criminal penalties for material false statements or omissions of information required to be included in any statutory filing. *See* Pub. L. No. 75-583, § 5, 52 Stat. 631, 633 (1938) (penalizing "[a]ny person who . . . , *in complying with the provisions of this Act*, makes a false statement of material fact, or willfully omits to state any material fact required to be stated therein" (emphasis added)). In 1942, the false statement provision was expanded to include "misleading" omissions of material facts. Pub. L. No. 77-532, § 8, 56 Stat. 248, 257 (1942). Today, the provision punishes "[a]ny person who . . .

> in any registration statement or supplement thereto or in any other document filed with or furnished to the Attorney General under the provisions of this subchapter willfully makes a false statement of a material fact or willfully omits any material fact required to be stated therein or willfully omits a material fact or a copy of a material document necessary to make the statements therein and the copies of documents furnished therewith not misleading.

22 U.S.C. § 618(a)(2).

**B. The Letters at Issue in the Indictment**

The FARA Unit regularly issues letters seeking information from individuals and entities who are not registrants but about whom the Unit has questions.[1] Such letters are not referenced anywhere in the statute, and as the Chief of the FARA Unit explained to prosecutors in this case, "[n]othing in the FARA statute compels the potential registrant to respond." Ex. 2 at 2 (Form FD-302a, Interview of Heather Hunt (May 23, 2018)); *see also* OIG Audit at ii (noting that the FARA Unit "lack[s] authority to compel the production of information from persons who may be agents"). The Justice Department has repeatedly sought legislation that would authorize the FARA Unit to issue civil investigative demands to possible foreign agents so as to compel them to produce information, but all of those efforts have failed. *See* OIG Audit at 18–19.[2]

In late 2012, the FARA Unit sent a letter to Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") calling attention to an article that had recently appeared in *The Los Angeles Times*, indicating that Skadden and one or more of its attorneys might be required to register as foreign agents, and "requesting" certain information relevant to that determination. Indictment, ECF No.

---

[1] A 2016 report by the Office of Inspector General explained, "When a potential obligation to register is found, the unit issues a letter of inquiry to the potential registrant advising of FARA requirements, and requests additional information relevant to registration status. . . . The FARA Unit stated it has issued approximately 130 letters of inquiry over the past ten years. Thirty-eight of the recipients were found to have an obligation to register under FARA, and subsequently did so. The remaining recipients were found to either have no obligation to register, or the FARA Unit is continuing to seek additional information to make a determination." U.S. Dep't of Justice, Office of the Inspector General, *Audit of the National Security Division's Enforcement and Administration of the Foreign Agents Registration Act* 13 (Sept. 2016) ("OIG Audit"), https://oig.justice.gov/reports/2016/a1624.pdf (attached hereto as Ex. 1).

[2] *See also* Olivia N. Marshall *et al.*, *BLOG: Updates on Congressional Action on FARA Reform*, CAPLIN & DRYSDALE, (Feb. 20, 2019), http://www.caplindrysdale.com/blog-updates-on-congressional-action-on-fara-reform?utm_source=Mondaq&utm_medium=syndication&utm_campaign=View-Original (listing several bills that would authorize the FARA Unit to issue civil investigative demands but noting that, as of February 2019, "efforts to update FARA have stalled in Congress").

1, ¶ 51. An exchange of letters ensued between Mr. Craig, on behalf of himself and Skadden, and Heather Hunt, the Chief of the FARA Unit. *See id.* ¶¶ 53–58, 62, 64.[3] Although Count One of the Indictment is predicated on several of the letters that Mr. Craig sent to Ms. Hunt and statements he is alleged to have made during an in-person meeting, Count Two, charged under FARA's special false statement provision, 22 U.S.C. § 618(a)(2), is based solely upon Mr. Craig's final letter, dated October 10, 2013, which he sent to the FARA Unit on October 11, 2013. *See* Indictment ¶ 62 (referencing October 11, 2013 letter); *id.* ¶ 67 (charging false statements and omissions "[o]n or about October 11, 2013").[4]

## ARGUMENT

FARA requires that foreign agents submit certain items to the Attorney General, including registration statements, six-month supplements, and supporting documents showing their activities. *See* 22 U.S.C. § 612(a)–(b). FARA ensures that those required submissions are accurate and complete by penalizing false statements or material omissions "in any registration statement or supplement thereto or in any other document filed with or furnished to the Attorney General under the provisions of [FARA]." *Id.* § 618(a)(2).

FARA's false statement provision applies only to the documents for which it was intended: documents that FARA registrants are required to submit under specific provisions of the statute. This reading of the statute is required by the plain meaning of the words Congress chose in § 618(a)(2), by the structure of the statute and the relationship of this false statement provision to the filing provisions of FARA, by the statute's legislative history, and by the forms

---

[3] The letters are enclosed as Exhibits 3 through 10. The letters are incorporated by reference in the Indictment, *see* ¶¶ 51, 53–58, 62, 64, but the Court need not consult them to decide this Motion.

[4] Mr. Craig's final letter is dated October 10, 2013, *see* Ex. 9, but it was not actually sent to the government until October 11, 2013. *See* Indictment ¶ 62.

5

that the Department of Justice has prescribed to implement the statutory disclosure requirements. To the extent there is any doubt about the meaning of the statute and the types of documents it covers, such doubts must be resolved in favor of a criminal defendant under the rule of lenity.

### A. The plain text of § 618(a)(2) demonstrates that it applies only to documents expressly required to be filed or furnished under specific provisions of FARA.

Section 618(a)(2) penalizes false statements or material omissions "in any registration statement or supplement thereto or in any other document filed with or furnished to the Attorney General *under the provisions of [FARA]*." 22 U.S.C. § 618(a)(2) (emphasis added). In order for a document to be subject to § 618(a)(2), there must be some "provision" of FARA that requires the document to be submitted. *Id.* See *United States v. Wells*, 519 U.S. 482, 505 n.9 (1997) (Stevens, J., dissenting) (stating that § 618(a)(2) covers statements made "in registering"); *Meese*, 481 U.S. at 494 n.4 (Blackmun, J., dissenting) (stating that § 618(a)(2) covers willful violations of FARA's "filing requirements"); *United States v. Manafort*, 318 F. Supp. 3d 1, 3 (D.D.C. 2018) (stating that § 618(a)(2) covers statements and omissions in "a registration statement or supplement").

If there is any question about the meaning of the residual phrase "any other document filed with or furnished to the Attorney General under the provisions of [FARA]," § 618(a)(2), the meaning of that phrase is supplied by the two enumerated items that precede it – "any registration statement or supplement thereto," *id.* – making plain Congress's intent that only statutory submissions are covered. When Congress places a residual catchall phrase at the end of an enumerated list, the *ejusdem generis* canon requires interpreting the residual phrase by reference to the enumerated items in the list. *See* Antonin Scalia & Brian A. Garner, *Reading Law: The Interpretation of Legal Texts* 199–213 (2012); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114–15 (2001). Registration statements and six month supplements are documents

that FARA registrants must submit under provisions of the statute. *See* 22 U.S.C. § 612(a), (b). It follows that, when the residual clause uses the words "any other document filed with or furnished to the Attorney General under the provisions of [FARA]," *id.* § 618(a)(2), it is describing *other similar documents—i.e.*, those documents that the provisions of FARA require registrants to submit.

The Court in *Circuit City Stores* confronted a similar question about the scope of a residual clause which followed specific terms. The statute at issue in that case referred to "seamen, railroad employees, or *any other* class of workers engaged in foreign or interstate commerce." 532 U.S. at 109 (emphasis added) (quoting 9 U.S.C. § 1). The Court concluded that the phrase "any other class of workers" referred to *transportation* workers, not workers in general, because the meaning of such a residual clause must "be controlled and defined by reference to" the enumerated categories that precede it—in that case, "seamen" and "railroad employees." *Id.* at 115. *See also Johnson v. United States*, 135 S. Ct. 2551, 2558 (2015) ("By asking whether the crime '*otherwise* involves conduct that presents a serious potential risk,' . . . the residual clause forces courts to interpret 'serious potential risk' in light of the four enumerated crimes—burglary, arson, extortion, and crimes involving the use of explosives.") (quoting 18 U.S.C. § 924(e)(2)(B)(ii)).

The *ejusdem generis* canon applies here. The scope of the residual language – "*any other* document filed with or furnished to the Attorney General under the provisions of [FARA]" – must be defined with reference to the two enumerated types of documents that precede it: "any registration statement or supplement thereto." That is the only way to "give independent effect" to the enumerated items; otherwise, "there would be no need" for Congress to include the enumerated items at all, because they would be "subsumed within the meaning of" the residual

clause. *Circuit City Stores*, 532 U.S. at 114. Because registration statements and supplements are documents that specific provisions of FARA require registrants to submit, the "other document[s]" covered by the residual clause also must be defined as those registrants are required to submit.

The language of the residual clause itself confirms that it refers to statutory submissions by registrants. In referring to "other document[s] *filed with* or *furnished to* the Attorney General under the provisions of [FARA]," the residual clause excludes documents that were not "filed" or "furnished" pursuant to a statutory requirement. FARA requires registrants to "file" copies of political propaganda, *id.* § 614(a), as well as amended registration statements if an original statement is identified as deficient, *id.* § 618(g). Similarly, FARA describes the documents that must accompany a registration statement as being "furnished" to the Attorney General. *Id.* §§ 612(a)(11) & (d); *see also id.* § 612(a)(2) (copies of corporate documents); *id.* § 612(a)(4) (copies of agreements with foreign principals). Like registration statements or supplements, these other documents are expressly required to be "filed" or "furnished" "under the provisions of [FARA]," and as such are covered by the false statement provision in § 618(a)(2).

The criminal provision upon which Count Two purports to be based can only be interpreted to apply to those filings that FARA requires of a registrant. It criminalizes material misstatements or omissions in those filings. Those filings must include complete disclosure by agents of foreign governments, not only of their relationship with that government, but also of other important aspects of those relationships, including: the registrant's identifying information and business addresses, the citizenship and nationality of individual registrants, copies of organizational documents for business entities required to register, comprehensive statements of the registrants' business activities and the names and positions of their employees, copies of any

written agreements and summaries of oral agreements defining the agency relationship with a foreign principal, financial statements showing contributions and compensation received from a foreign principal, detailed statements of the activities undertaken by registrants on behalf of a foreign principal, the identities of other persons or entities acting for the foreign principal, detailed statements of the registrants' expenditures on behalf of a foreign principal, and such additional statements, information, or documents as the Attorney General "may from time to time require." *See generally* 22 U.S.C. § 612(a)(1)–(11). Congress intended to criminalize an intentional omission of any of the required data or of material facts specified in these detailed provisions of § 612. There is no indication that Congress intended to address in § 618(a)(2), or anywhere else in the FARA statute, voluntary answers to questions supplied to the FARA Unit by nonregistrants.

### B. The context of FARA, read as a whole, demonstrates that § 618(a)(2) criminalizes only false statements and omissions in statutory submissions by registrants.

The FARA false statement provision applies not only when a document required to be submitted is inaccurate, but also when it is *incomplete*: the provision penalizes "[a]ny person who," in a covered document,

> **[1]** willfully makes a false statement of a material fact or **[2]** willfully *omits* any material fact required to be stated therein or **[3]** willfully *omits* a material fact or a copy of a material document necessary to make the statements therein and the copies of documents furnished therewith not misleading.

22 U.S.C. § 618(a)(2) (emphasis and numbering added); *see also United States v. Manafort*, 313 F. Supp. 3d 311, 315 (D.D.C. 2018) (explaining that, unlike 18 U.S.C. § 1001, FARA's false statement statute prohibits "misleading" material omissions). Congress was demonstrably concerned about completeness in statutory submissions by FARA registrants. The attention to misleading omissions in § 618(a)(2) addresses that concern, providing further evidence that

Congress designed § 618(a)(2) to apply to documents that a registrant is required to file or furnish under the statute.

Congress could hardly have been clearer that it was concerned about the completeness of registration statements, six-month supplements, and accompanying documents—*i.e.*, documents that registrants are required to file. The statute provides that registration statements must be "true and complete," 18 U.S.C. § 612(a), and that supplements must contain such information as is necessary to make an existing registration statement "accurate, complete, and current," *id.* § 612(b). The statute states three times that various documents furnished along with a registration statement must be "complete," *id.* § 612(a)(2)–(3), two additional times that various such documents must be "comprehensive," *id.* § 612(a)(3)–(4), and many other times that a registrant must include "any," "all," "each," or "every" instance of various facts contained in a registration statement or in the documents and statements that must be submitted with the registration statement, *id.* § 612(a)(1)–(9).

Given Congress's obvious desire that statutory submissions by registrants be complete, it makes perfect sense that Congress would enact a penalty provision specifically targeted at misleading omissions contained *in those documents*. Indeed, just as FARA's false statement provision (§ 618(a)(2)) sets forth criminal penalties for misleading omissions in covered documents, a parallel provision prescribes an affirmative duty to avoid misleading omissions *in a registration statement*. *See* § 612(a)(11). And § 612, which requires the submission of registration statements, supplements, and the numerous supporting documents and underlying information that must be filed with them, explicitly cross-references § 618(a)(2), stating that the filing of a registration statement or a supplement is no safe harbor from prosecution for a willful false statement, material omission, or misleading omission *in any of those filed and furnished*

*documents*. 22 U.S.C. § 612(d).[5] The detailed filing provisions of § 612 thus elucidate the scope of § 618(a)(2), giving further evidence to Congress's purpose in enacting a criminal nondisclosure penalty to ensure accuracy and completeness in statutory submissions filed and furnished by registrants.

To be sure, Congress could have sought to punish omissions in responsive letters from nonregistrants to FARA Unit inquiries. But that is equally true of responses to *any* government agency's inquiries. Congress enacted FARA knowing that, just four years earlier, it had prohibited making false statements to any executive agency in 18 U.S.C. § 1001.[6] That statute did not, generally speaking, address incomplete statements or misleading omissions. In FARA, Congress was specifically focused on the accuracy and completeness of all required filings by registrants, and § 618(a)(2) should be read in light of that focus.

### C. FARA's legislative history confirms that its special false statement provision is directed at documents that registrants are required to submit.

FARA's false statement provision was enacted as part of the original statute in 1938 and was modified to almost exactly its current form in 1942. The provision's original 1938 text and its 1942 amendment confirm that it is limited to statements and omissions in statutorily required submissions, for two reasons.

**First**, the original 1938 version is *indisputably* limited to statutorily required submissions, and there is nothing in the text or legislative history of the 1942 amendment to

---

[5] Congress added these provisions about misleading omissions in registration statements and supplements *at the same time* that it added language about misleading omissions in § 618(a)(2). *See* H.R. Rep. No. 77-2038 at 8, 11 (Apr. 20, 1942) (Ex. 11) (identifying new language in italics).

[6] *See United States v. Bramblett*, 348 U.S. 503, 506–08 & n.4 (1955) (explaining that the 1934 false statement statute, whose language is nearly identical to current 18 U.S.C. § 1001, marked the first time that Congress prohibited false statements to the government irrespective of any connection to a claim for payment of money), *overruled on other grounds by United States v. Hubbard*, 514 U.S. 695 (1995).

suggest that Congress intended any change in that regard. As originally enacted in 1938, FARA's false statement provision penalized "[a]ny person who . . . , *in complying with the provisions of this Act*, makes a false statement of a material fact, or willfully omits to state any material fact required to be stated therein." Pub. L. No. 75-583, § 5, 52 Stat. 631, 633 (1938) (emphasis added) (Ex. 12). The statute was plainly limited to statements and omissions made "in complying with the provisions of this Act"—*i.e.*, in submitting the documents required to be filed and furnished under the statute's other provisions.

The 1942 amendment carried forward that limitation. In 1942, Congress amended much of FARA, including its false statement provision. Pub. L. No. 77-532, 56 Stat. 248 (1942) (Ex. 13); *see also* H.R. Rep. No. 77-2038 (Apr. 20, 1942) (Ex. 11) (identifying deleted text in brackets and new text in italics). Concurrent amendments to other sections of FARA required registrants to "furnish" additional supporting documents and detailed information, *see* H.R. Rep. No. 77-2038 at 6–10, and the updated false statement provision reflected those additions. Specifically, where the provision had previously referenced statements and omissions made "in complying with the provisions of this Act," as it was amended, § 618(a)(2) referenced statements and omissions "in any registration statement or supplement thereto or in any [statement about propaganda distribution] or in any other document filed with or furnished to the Attorney General under the provisions of this Act." Pub. L. No. 77-532 § 8(a)(2), 56 Stat. 248, 257 (Ex. 13).[7] But there is nothing in the text or legislative history of the 1942 amendment to suggest that Congress meant to expand the scope of the false statement provision *beyond* statutorily required

---

[7] As noted above, *see supra* at 8, the new reference to documents "furnished" under the provisions of FARA mirrors references specific documents that are required to be "furnished" along with a registration statement. *See* 22 U.S.C. § 612(a)(11), (d). Those references to "furnished" documents were all added in the same 1942 amendments. *See* H.R. Rep. No. 77-2038 at 7–8, 10 (identifying new language in italics).

submissions. And there is no indication that Congress meant anything different by "under the provisions of this Act" (1942 and current language) as opposed to "in complying with the provisions of this Act" (1938 language).

**Second**, the 1942 amendments to the false statement provision reflected Congress's view that FARA should mirror the "Voorhis Act," a parallel registration and disclosure statute that had been enacted in 1940, and which applies generally to organizations acting under foreign control and that seek to control or overthrow the government by force or violence. *See* 18 U.S.C. § 2386 (current codification). The Voorhis Act's false statement provision was indisputably limited to statutorily required submissions. Like FARA, the Voorhis Act contained separate registration and false statement provisions, and at the time, its false statement provision applied to "[w]hoever *in a statement filed pursuant to section 15* [the registration provision] willfully makes any false statement or willfully omits to state any fact which is required to be stated, or which is necessary to make the statements made not misleading." 18 U.S.C. § 17 (1940) (Ex. 14) (emphasis added). The Voorhis Act's false statement provision was thus plainly limited to statements and omissions in statutorily required submissions.[8]

The legislative history of the 1942 amendments to FARA makes clear that Congress understood the false statement prohibitions in the Voorhis Act and in FARA to be parallel in scope. The 1942 amendments enhanced FARA's criminal penalties, and in comparing these new penalties against those that existed for false registration statements under the Voorhis Act, the House Report noted that FARA's new maximum fines were higher "for false or incomplete registration statements." H.R. Rep. No. 77-1547 at 5 (Dec. 18, 1941) (Ex. 15). This comparison

---

[8] The Voorhis Act is now codified at 18 U.S.C. § 2386, and its false statement provision is in subsection (D).

suggests that Congress understood that the false statement provisions in both registration statutes covered *the same types of violations*: "false or incomplete registration statements." *Id.* Indeed, Congress expanded FARA's false statement provision in 1942 to cover misleading omissions (in addition to false statements and omissions of required information) using language that closely tracked the Voorhis Act.[9]  It makes sense that Congress understood the two false statement provisions to mirror each other, given that Congress viewed the disclosure and registration provisions of FARA to be comparable to those for organizations required to register with the Attorney General under the Voorhis Act. *See id.* at 4 ("This act and the Voorhis Act parallel each other closely in seeking to secure disclosure by registration by those who, under foreign control, act to influence the public.").

The 1942 version of FARA's false statement statute, which was nearly identical to current § 618(a)(2), was drawn from two sources—the pre-existing 1938 version of FARA and the Voorhis Act—both of which were indisputably limited to statements and omissions in statutorily required filings.  The legislative history of § 618(a)(2) thus reaffirms what its text and context already make clear: it applies only to those documents that registrants are required to file and furnish under specific provisions of FARA—not to voluntary letters like the one at issue in Count Two.

### D. The Justice Department has issued forms for required submissions by FARA registrants that demand complete disclosure and expressly invoke § 618(a)(2); it has not issued any such form for voluntary responses like the letter at issue here.

FARA authorizes the Attorney General to issue regulations and forms as necessary to carry out the statute's provisions, 22 U.S.C. § 620, and the Attorney General has delegated that

---

[9] *Compare* Pub. L. No. 77-532 § 8(a)(2), 56 Stat. 248, 257 (Ex. 13) ("willfully omits a material fact or a copy of a material document necessary to make the statements therein and the copies of documents furnished therewith not misleading"), *with* 18 U.S.C. § 17 (1940) (Ex. 14) ("willfully omits to state any fact . . . which is necessary to make the statements made not misleading").

authority to the Assistant Attorney General for National Security ("the AAG"), 28 C.F.R. § 5.1(a)–(b). For documents that registrants must submit under FARA, the AAG has prescribed forms demanding comprehensive disclosure and providing that any omission of required information is subject to penalties under § 618(a)(2). *See* U.S. Dep't of Justice, FARA Forms, https://www.justice.gov/nsd-fara/fara-forms, (updated Aug. 21, 2017).[10]

For example, the form for an amendment to a registration statement includes the following demand for complete disclosure, invoking 22 U.S.C. § 618 (*i.e.*, "Section 8 of the Act"):

> OMB No. 1124-0003; Expires May 31, 2020
>
> U.S. Department of Justice
> Washington, DC 20530
>
> **Amendment to Registration Statement Pursuant to the Foreign Agents Registration Act of 1938, as amended**
>
> INSTRUCTIONS. File this amendment form for any changes to a registration. Compliance is accomplished by filing an electronic amendment to registration statement and uploading any supporting documents at https://www.fara.gov.
>
> Privacy Act Statement. The filing of this document is required for the Foreign Agents Registration Act of 1938, as amended, 22 U.S.C. § 611 *et seq.*, for the purposes of registration under the Act and public disclosure. ==Provision of the information requested is mandatory, and failure to provide the information is subject to the penalty and enforcement provisions established in Section 8 of the Act.== Every registration statement, short form registration statement, supplemental statement, exhibit, amendment, copy of informational materials or other document or information filed with the Attorney General under this Act is a public record open to public examination, inspection and copying during the posted business hours of the Registration Unit in Washington, DC. Statements are also available online at the Registration Unit's webpage: https://www.fara.gov. One copy of every such document, other than informational materials, is automatically provided to the Secretary of State pursuant to Section 6(b) of the Act, and copies of any and all documents are routinely made available to other agencies, departments and Congress pursuant to Section 6(c) of the Act. The Attorney General also transmits a semi-annual report to Congress on the administration of the Act which lists the names of all agents registered under the Act and the foreign principals they represent. This report is available to the public in print and online at: https://www.fara.gov.

Ex. 16 (highlighting added). The highlighted sentence appears *verbatim* in each of the other forms that the AAG has issued for required submissions by FARA registrants.[11]

Tellingly, the AAG has *not* issued any requisite form for the type of submission at issue in this case: a responsive letter from a nonregistrant to questions from the FARA Unit about a potential obligation to register. That is likely because the AAG has no authority to require such

---

[10] This Court may take judicial notice of the contents of documents posted to the website of a government agency. *Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013).

[11] *See* Ex. 17 (registration statement); Ex. 18 (Exhibit A to registration statement); Ex. 19 (Exhibit B to registration statement); Ex 20 (supplemental registration statement); Ex. 21 (short-form registration statement).

responses *at all*. *See* OIG Audit at ii (noting "a lack of authority to compel the production of information from persons who may be agents"). The fact that the AAG has prescribed forms invoking § 618(a)(2) for statutory submissions by registrants—but *not* for the type of voluntary response at issue in this case—corroborates the conclusion that only statutory submissions are subject to § 618(a)(2).

### E. If there were any doubt about the scope of § 618(a)(2), the rule of lenity requires that such ambiguity in the meaning of a criminal penalty must be resolved in favor of a criminal defendant.

It has often been observed that "[i]n the criminal context, courts have traditionally required greater clarity in draftsmanship than in civil contexts, commensurate with the bedrock principle that in a free country citizens who are potentially subject to criminal sanctions should have clear notice of the behavior that may cause sanctions to be visited upon them." *United States v. McGoff,* 831 F.2d 1071, 1077 (D.C. Cir. 1987) (citing *Dowling v. United States*, 473 U.S. 207, 218, 228–29 (1985)). Based on the foregoing analysis of the text, structure and legislative history of FARA, there is no doubt that Congress did not intend, when it enacted and amended § 618(a)(2), to impose criminal sanctions on willfully false statements or misleading omissions of material fact contained in any documents other than those "filed with or furnished to the Attorney General under the provisions of this subchapter," and that the letter Mr. Craig sent to the FARA Unit, summarizing a meeting that occurred on October 9, 2013, is not such a document. But to the extent there is any doubt about the scope of this criminal statute, this Court must resolve that doubt in favor of Mr. Craig.

As the Supreme Court long has observed, "[t]he definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute." *Liparota v. United States*, 471 U.S. 419, 424 (1985) (citing *United States v.*

*Hudson*, 7 Cranch 32 (1812)). And where the language chosen by Congress is ambiguous, that language must be strictly construed in favor of a criminal defendant. Such an interpretation of an ambiguous penal statute "is in keeping with [the] longstanding recognition of the principle that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Id.* at 427 (collecting numerous authorities).

In *McGoff*, the court majority applied the rule of lenity to the question concerning how the statute of limitations should be interpreted in a then-rare criminal prosecution for an alleged failure to register under FARA.[12] The Court rejected the government's argument that the statute did not begin to run until a person required to register as a foreign agent had done so. Based on the language of § 612 and § 618(e) of FARA, the statute's structure, and its legislative history, the Court held instead that the five year statute of limitations applicable to federal criminal offenses "begins to run from the last day that an individual acts as an agent of a foreign principal.'" 831 F.2d at 1096. The Court affirmed the dismissal of the charges against defendant McGoff as time-barred, but also observed that even if its analysis of the statute "left us without a clear indication of Congressional intent, the rule of lenity would counsel strongly against the Government's interpretation." *Id.*

As summarized by the Supreme Court in *Liparota*, "[a]pplication of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and

---

[12] The court in *McGoff* observed that, in the 20 years since the enactment of a civil injunctive remedy for a FARA violation in 1966, "it appears that the Government has never, before the present case, sought criminally to prosecute anyone for a violation of FARA." 831 F.2d at 1075, n.12. Judge Starr ascribed that lack of criminal enforcement to a view, once shared by Congress and the Department of Justice, that "the pre-existing criminal sanctions were thought too harsh for the sort of activities that were prescribed by the statute." *Id.* (citing legislative history of the 1966 FARA amendments and quoting later Congressional testimony by Associate Deputy Attorney General Robert L. Keuch that using "the criminal penalties of [FARA] [is like] going after a fly with a Howitzer").

strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability." 471 U.S. at 427 (citing *United States v. Bass*, 404 U.S. 336, 348 (1971) ("[B]ecause of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity."). In this case, Count Two rests on a novel and broad interpretation of a criminal statute, enacted in 1938 and amended in 1942, that was never meant to apply – and that, until very recently, never *was* applied – to a letter sent to the FARA Unit in response to an inquiry about the potential for registration.[13] Because Count Two of the indictment is predicated on a document that is not within the substantive ambit of FARA's false statement provision, it must be dismissed.

---

[13] The only prior case in which the government sought to apply FARA's false statement provision to voluntary letters is *United States v. Manafort*, Case No. 1:17-cr-00201 (ABJ) (filed Oct. 27, 2017), and the defendant in that case apparently did not dispute that the letters were covered by the statute. It is worth noting that, besides *Manafort*, there is only one reported case under the special false statements provision of FARA. *See Viereck v. United States*, 318 U.S. 236 (1943). In that case, an alleged agent of Nazi Germany was indicted for failing to disclose in a supplemental registration statement filed under FARA all of the activities in which he had engaged promoting the publication of pro-German and anti-British propaganda. The Supreme Court reversed his conviction because at that time the statute did not clearly demand the disclosure of the information that Viereck had failed to include in a supplemental registration statement. Adopting an approach sounding in the rule of lenity, the Court held that "[o]ne may be subjected to punishment for crime in the federal courts only for the commission or omission of an act defined by statute, or by regulation having legislative authority, and then only if punishment is authorized by Congress." *Id.* at 241. This prosecution should fare no better, and for similar reasons. The government is seeking through Count Two of this Indictment to impose a penal sanction for conduct beyond the scope of what Congress has authorized.

## CONCLUSION

FARA's false statement provision covers only those documents that FARA registrants are required to submit under specific provisions of the statute—not voluntary letters like the one at issue in Count Two. Accordingly, Count Two fails to state an offense and must be dismissed under Rule 12(b)(3)(B)(v).

Dated: May 10, 2019                      Respectfully submitted,

*/s/ William W. Taylor, III*
William W. Taylor, III (D.C. Bar No. 84194)
Ezra B. Marcus (D.C. Bar No. 252685)
ZUCKERMAN SPAEDER LLP
1800 M Street N.W. Suite 1000
Washington, D.C. 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
Email: wtaylor@zuckerman.com
Email: emarcus@zuckerman.com

William J. Murphy (D.C. Bar No. 350371)
Adam B. Abelson (D.C. Bar No. 1011291)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
Tel: (410) 332-0444
Fax: (410) 659-0436
Email: wmurphy@zuckerman.com
Email: aabelson@zuckerman.com

*Attorneys for Defendant Gregory B. Craig*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on May 10, 2019, the foregoing was served on counsel of record via the Court's CM/ECF Service.

*/s/ Ezra B. Marcus*
Ezra B. Marcus