UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>                *v.*<br><br>GREGORY B. CRAIG,<br><br>            *Defendant.* | Case No. 1:19-cr-0125 (ABJ) |

**MOTION TO STRIKE PARAGRAPH 65
OF THE INDICTMENT AS SURPLUSAGE**

Pursuant to Rule 7(d) of the Federal Rules of Criminal Procedure, Defendant Gregory B. Craig moves to strike paragraph 65 of the Indictment as "surplusage." Paragraph 65 is the last paragraph in Count One of the Indictment. It alleges that Mr. Craig made "certain" false and misleading statements in an interview with the Special Counsel's Office ("SCO") on October 19, 2017. It has nothing to do with the offense charged in Count One, an alleged knowing and willful "scheme" by Mr. Craig to falsify, conceal or cover up a material fact about a "matter within the jurisdiction of" the FARA Unit of the Department of Justice, in violation of 18 U.S.C. § 1001(a)(1). That "matter" was the question whether Mr. Craig and his law firm had an obligation to register as agents of Ukraine based on a report they prepared and their client released in 2012, and which the FARA Unit reviewed between December, 2012 and January 16, 2014. On January 16, 2014, nearly four years prior to Mr. Craig's interview with the SCO, the FARA Unit determined that Mr. Craig and Skadden had no obligation to register under FARA. Indictment, ECF No. 1, ¶ 64. For the reasons stated herein, the inclusion of the extraneous

allegations in paragraph 65 is both irrelevant to the charge and prejudicial to Mr. Craig.[1] As a result, assuming that Count One is not dismissed in its entirety pursuant to Mr. Craig's Motion to Dismiss that count filed today, paragraph 65 should be stricken.

I. **MATERIAL ALLEGATIONS OF THE INDICTMENT**

Count One of the Indictment alleges that Mr. Craig engaged in a "False Statements Scheme" in violation of 18 U.S.C. § 1001(a)(1), *i.e.*, that Mr. Craig, in a "matter within the jurisdiction of the executive . . . branch of the Government of the United States knowingly and willfully . . . falsifie[d], conceal[ed], or cover[ed] up by any trick, scheme, or device a material fact." The alleged "purpose" of the scheme was to avoid registration under the Foreign Agents Registration Act (FARA) in connection with Mr. Craig's and his law firm's work on a report about how Ukraine's prosecution of Yulia Tymoshenko, its former prime minister, measured up to western concepts of fairness and due process of law. *See* Indictment ¶ 49. (The Skadden report on the Tymoshenko prosecution was highly critical of certain aspects of the prosecution.)

The "manner and means" of the scheme are alleged in three specific subparagraphs of the Indictment: that Mr. Craig withheld from some attorneys at Skadden information about his media contacts concerning the report; *id.* ¶ 50.a; that he drafted false and misleading descriptions of his media contacts for distribution within the law firm and to the FARA Unit of the Department of

---

[1] In a prior telephonic scheduling conference the Court informed counsel that it is not her practice to allow the jury to receive a copy of the Indictment, thereby minimizing the risk of prejudice that might otherwise be posed by the inclusion of "surplusage" within the charging document. Because this allegation might affect the evidence to be offered in this case, however, the potential for prejudice is real. And striking this extraneous allegation may also result in reducing the number of witnesses who are called to support (and refute) the allegations included in paragraph 65. Other judges in this district do provide indictments to jurors, *e.g.*, *United States v. Trie*, 21 F. Supp. 2d 7, 19 (D.D.C. 1998) (Judge Friedman), and that has been cited in some cases as a factor in granting a motion to strike surplusage. *See id.* In this case, however, withholding the Indictment from the jury is not a sufficient remedy. Paragraph 65 could have legal implications on the statute of limitations defense, and on the nature and scope of evidence that may be admissible at trial. *See infra* Part II.B.

Justice; *id.* ¶ 50.b; and that he omitted material facts about his media contacts in his communications with the FARA Unit. *Id.* ¶ 50.c. The alleged manner and means are limited to Mr. Craig's statements or omissions made (1) about his media contacts, (2) to colleagues within his law firm or to the FARA Unit.

As the "execution of the scheme" section of the Indictment makes clear, these alleged statements or material omissions all occurred in 2013, when Mr. Craig and his law firm were responding to inquiries from the FARA Unit. *See id*. ¶¶ 53–63. The FARA Unit first contacted the law firm in December 2012 about the possibility that the firm would be required to register in connection with its Ukraine work. *Id.* ¶ 51. Mr. Craig and other Skadden attorneys provided information to the FARA Unit in letters written in February, June, and October 2013, and during a meeting on October 9, 2013. The Indictment alleges that this information did not adequately disclose Mr. Craig's media contacts or misrepresented the nature and circumstances of those contacts. *Id.* ¶¶ 53–58, 61–62. In addition, according to the Indictment, Mr. Craig provided information to his law firm (in preparation for providing information to FARA) that allegedly contained similar omissions or misrepresentations. *Id.* ¶¶ 59–60. Finally, on January 16, 2014, "in reliance on [Mr. Craig's] representations, and having been misled by [Mr. Craig]," the FARA Unit "determined that the Law Firm and [Mr. Craig] did *not* need to register as agents of Ukraine." *Id.* ¶ 64 (emphasis added).

That seems like the termination of the "scheme" alleged in Count One. But the Indictment then jumps ahead nearly four years to add one more incongruous paragraph:

> On or about October 19, 2017, during an interview conducted by the Special Counsel's Office, [Mr. Craig] repeated certain of the false and misleading statements he had made to the FARA Unit concerning the timing and nature [of] his contacts with journalists about the Report.

*Id.* ¶ 65. This paragraph should be stricken as surplusage for the reasons set forth below.

3

## II. ARGUMENT

### A. Standard for motions under Rule 7(d)

Rule 7(d) provides that "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." The court has "sound discretion" to decide whether to grant a motion under Rule 7(d). *United States* v. *Jordan*, 626 F.2d 928, 930 n.1 (D.C. Cir. 1980). Motions may be granted when the material at issue is both irrelevant and prejudicial to the defendant. *United States* v. *Quinn*, 401 F. Supp. 2d 80, 97 (D.D.C. 2005). Although this standard is often described as "exacting," motions to strike surplusage have been granted with some frequency in this district. Courts often strike vague terms such as "among others," "including," "at least," "various" and the like. *See United States* v. *Poindexter*, 725 F. Supp. 13, 35 (D.D.C. 1989); *United States* v. *Whitehorn*, 710 F. Supp. 803, 819 (D.D.C. 1989), *rev'd on other grounds sub nom. United States* v. *Rosenberg*, 888 F.2d 1406 (D.C. Cir. 1989); *United States* v. *Hubbard*, 474 F. Supp. 64, 82 (D.D.C. 1979). In *Quinn*, the defendant was charged with violating the embargo on exporting goods to Iran. One of the chief purposes of the embargo is to sanction Iran for its support of international terrorism. Yet Judge Bates granted the defendant's motion to strike two sentences of the indictment that referred to Iran's support for international terrorism. The court explained that the reason for the embargo was not a necessary element of proof, and the gravity of the allegation could be misinterpreted if the jury saw the indictment. 410 F. Supp. 2d at 98-99. Presumably, the Court was also concerned that the government might inflame the jury by offering evidence to prove Iran's support for terrorism, including such matters as the 1983 attack on the Marine barracks in Beirut, Lebanon.

In addition, "[l]anguage that serves no purpose and encourages a jury to draw inferences that a defendant was involved in collateral activities irrelevant to the indictment may be stricken." *United States* v. *Weinberger*, Crim. No. 92-235, 1992 WL 294877, at *7 (D.D.C.

Sept. 29, 1992). Allegations relevant to one count but not another may be stricken from the latter. *United States* v. *Trie*, 21 F. Supp. 2d 7, 20–21 (D.D.C. 1998). And confusing and inflammatory terms may be stricken as well. *United States* v. *Singhal*, 876 F. Supp. 2d 82, 103 (D.D.C. 2012).

      **B.**      **Paragraph 65 is irrelevant to the alleged scheme and prejudicial to the defendant**

*Relevance*. Paragraph 65 appears to have been added to the indictment as an afterthought, perhaps in an effort to extend the duration of the alleged scheme and thereby thwart a defense of limitations. *See* Defendant's Motion to Dismiss Count One, filed today, at 27–34. But the Indictment describes the "scheme" as terminating on January 16, 2014. Indictment ¶ 48. It was on January 16, 2014 that the FARA Unit agreed that Mr. Craig and Skadden were not required to register under FARA. Paragraph 65, which describes an event that occurred 45 months later on October 19, 2017, is far outside the description of the scheme and its temporal limits and bears no relationship to it.

More importantly, the event described in paragraph 65 is not part of an alleged false statements scheme designed to influence the FARA Unit with respect to a matter within its jurisdiction, as required by § 1001(a)(1). It is explicitly not part of the alleged "manner and means" of the scheme, which focus on false or misleading statements made to Mr. Craig's law firm in connection with responding to the FARA Unit and material omissions in communications to the FARA Unit itself. Indictment ¶ 50. It is also not legitimately part of the alleged purpose of the scheme, which was "to avoid registration as an agent of Ukraine." *Id.* ¶ 49. That purpose terminated on January 16, 2014, when the FARA Unit agreed that Mr. Craig and Skadden were not required to register. And an alleged false statement to the SCO has not been charged as a crime.

As a matter of law and logic, Mr. Craig's response to the SCO's investigation of his interactions with the FARA Unit, conducted several years after the January 16, 2014 decision, was not part of a scheme to avoid FARA registration. To be sure, Mr. Craig made no false statements to the SCO in October, 2017, but even if he had, the purpose could not have been to avoid FARA registration, a matter within the jurisdiction of another federal agency.

The SCO was not a part of the National Security Division's FARA Unit and the two offices have entirely separate purviews. This distinction is critical because the government must prove that the false representations or material omissions made as part of a "scheme" under § 1001(a)(1) were *material to a matter within the jurisdiction of a federal agency within the executive branch,* meaning that they had a natural tendency to influence a determination to be made by the decision-making body to which they were addressed. *See Kungys* v. *United States*, 485 U.S. 759, 770 (1988). The SCO was given limited authority to investigate and prosecute certain crimes; *see* Office of the Deputy Attorney General, Order No. 3915-2017 (May 17, 2017). It had no authority to decide whether persons are required to register under FARA. A misrepresentation or omission made to the SCO therefore had no potential to influence registration decisions by the FARA Unit, which was the purpose of the "scheme" alleged in Count One.

*Prejudice*. Paragraph 65 is prejudicial to Mr. Craig for multiple reasons. **First**, it is fatally non-specific. It alleges that Mr. Craig "repeated *certain* of the false and misleading statements he had made to the FARA Unit," (emphasis added), but it does not identify which statements he allegedly repeated, or why they were false and misleading.[2] The grand jurors might have failed to reach consensus on any one statement, and the petit jurors will have the

---

[2] This flaw in paragraph 65 is further explicated in the Defendant's pending Motion for a Bill of Particulars, filed on April 30, 2019.

same problem.  And the vague term "certain of the false and misleading statements" is comparable to equally vague, and frequently stricken, terms such as "among other [events]" or "at least [the following events]."  Such terms invite jurors to speculate about exactly what acts constitute the charged crime.  *See Poindexter*, 725 F. Supp. at 35; *Whitehorn*, 710 F. Supp. at 819; *Hubbard*, 474 F. Supp. at 82.

**Second**, paragraph 65 cannot extend the statute of limitations beyond the time otherwise applicable to the offense charged in Count One.  Limitations is a significant defense in this case, and with good reason.  The core statements at issue were communicated orally, in a meeting that occurred on October 9, 2013, more than five years ago.[3]  Remarkably, the government has conceded that there are no notes available from this meeting, even though four members of the FARA Unit were present.[4]  None of the three Skadden attorneys who were present took notes of what was said at the meeting, essentially because the meeting was anticipated to be an informal

---

[3] The statute of limitations under 18 U.S.C. § 1001 is five years from the date of the alleged false statement.  The "scheme" allegation in this Indictment clearly was designed in part to extend the statute of limitations to a letter that Mr. Craig sent to the FARA Unit, on behalf of Skadden, on June 3, 2013.  Whether the government may proceed with respect to statements set forth in that letter is addressed in the Motion to Dismiss Count One, filed today. Mr. Craig contends that the statute of limitations bars prosecution with respect to any statements he made to the FARA Unit prior to October, 2013.  While the investigation of this matter was pending in the Southern District of New York, Mr. Craig agreed to enter into a tolling agreement, at the request of the United States Attorney, which was effective as of August 21, 2018.  The tolling agreement, which was extended on several occasions while this matter was being reviewed by senior officials of the Justice Department, effectively preserved limitations for the meeting with the FARA Unit on October 9, 2013, and the follow-up letter that Mr. Craig wrote the next day.

[4] To be more specific, there are no *surviving* notes of the meeting. In fact, government officials have admitted that a member of the FARA Unit did take notes of the meeting, but the government has not been able to locate those notes.  This is a prototypical illustration of why criminal statutes of limitation exist – the inequity of prosecuting someone for events that are so long ago, evidence has become stale or disappeared altogether.  The outcome of the government's investigation might have been very different if government personnel had thought to preserve their own notes of a critical meeting that would become central to an Indictment filed more than five years later.

exchange to reach a consensus on whether Skadden had a registration obligation or not, based on Mr. Craig's limited media contacts when the report on the Tymoshenko prosecution was released in December, 2012.  Government witness interviews reveal that no one has a specific recollection of the statements that were made at the meeting, or the questions that were asked. As a result, the Indictment is awkwardly worded to allege that Mr. Craig "made false and misleading statements to the FARA Unit that *were consistent with* the misleading statements" he previously made internally to certain members of his law firm.  Indictment ¶ 61 (emphasis added).  And the Indictment further alleges that Mr. Craig *omitted* material facts during the meeting – an astonishing allegation when the FARA Unit has *no record* of the discussion that occurred during the meeting of October 9, 2013, and when the government is incapable of quoting a single statement Mr. Craig made at that meeting.

Statutes of limitations have no greater purpose than to extinguish felony indictments that turn on such flimsy evidence, and the government should not be permitted to revive a stale claim by procedural artifice.  *Cf. United States* v. *Hitt*, 249 F.3d 1010, 1016–17 (D.C. Cir. 2001) ("The indictment's references to subsequent events do not point to acts in furtherance of the alleged conspirators' common goal and therefore may not be relied upon to extend the conspiracy to a period within the statute of limitations.").

**Third**, paragraph 65 makes the prosecutors or agents assigned to the SCO likely witnesses. If the government seeks to prove its allegation in paragraph 65 it will need to call as a witness either one of the SCO prosecutors who investigated Mr. Craig in this case, or a case agent who compiled the FBI's Form 302. Mr. Craig may need to counter by calling one of his own attorneys from the Skadden firm to contradict the testimony of the FBI agent, or he may call

one of the SCO prosecutors who was present.[5]  Testimony by prosecutors in a criminal case is not always forbidden, but it is undeniably prejudicial to the defendant.  "Essentially, the danger in having a prosecutor testify as a witness is that jurors will automatically presume the prosecutor to be credible and will not consider critically any evidence that may suggest otherwise."  *United States* v. *Edwards*, 154 F.3d 915, 921 (9th Cir. 1998); *see also United States* v. *McKoy*, 771 F.2d 1207 (9th Cir. 1985) (reversing conviction when former prosecutor testified about plea negotiations and strength of government's case); Criminal Justice Standards for the Prosecution Function, § 3-3.4(f) (Am. Bar Ass'n, 4th ed. 2015) ("A prosecutor should avoid the prospect of having to testify personally about the content of a witness interview.").  By including paragraph 65 in the Indictment, the government appears to have opened the door to extraneous testimony that could confuse the jurors about the nature of the "scheme" alleged in Count One and the evidence relevant to that alleged "scheme," and cloud their independent assessment of the facts.

**Fourth**, paragraph 65 covers a period in 2017 when one of the government's witnesses to the October 9, 2013 meeting with the FARA Unit, Skadden's General Counsel Lawrence Spiegel, also served as Mr. Craig's personal lawyer.  Indeed, Mr. Spiegel represented Mr. Craig during his October 19, 2017 interview with the SCO. The parties have reached a stipulation

---

[5] The FBI 302 of the meeting states that two prosecutors and one FBI agent attended for the government. Although the FBI agent presumably could testify for the government, the prosecutors' testimony might still be essential to corroborate or rebut the agent's testimony.  The defense notes that the FBI 302 is 16 pages long.  By contrast, one of the Skadden attorneys representing Mr. Craig during the interview prepared a more comprehensive memorandum of the questions asked and the answers given.  That memorandum is 18 pages long and differs in certain respects from the 302.  It is entirely possible that the vague reference in paragraph 65 of the Indictment to "certain" statements made by Mr. Craig as being false and misleading might be attributable to the failure of the agent to take comprehensive and accurate notes of what Mr. Craig was asked and what he said in response.

governing the permissible scope of Mr. Spiegel's testimony during this trial. That stipulation may be jeopardized if the government insists on offering evidence about alleged false or misleading statements made by Mr. Craig during the SCO interview in which Mr. Spiegel was present as his personal attorney. By alleging that Mr. Craig's October 19, 2017 interview with the SCO was part of the false statements scheme charged in Count One, the government runs the risk of confusing the jury as to Mr. Spiegel's role, and will needlessly threaten Mr. Craig's attorney-client privilege. *See supra* note 5.

### III. <u>CONCLUSION</u>

For all the reasons stated herein, the Court should strike paragraph 65 of the Indictment as irrelevant and prejudicial surplusage.

Dated: May 10, 2019

Respectfully submitted,

William W. Taylor, III (D.C. Bar No. 84194)
Ezra B. Marcus (D.C. Bar No. 252685)
ZUCKERMAN SPAEDER LLP
1800 M Street N.W. Suite 1000
Washington, D.C. 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
E-mail: wtaylor@zuckerman.com
       emarcus@zuckerman.com

/s/ *William J. Murphy*

William J. Murphy (D.C. Bar No. 350371)
Adam B. Abelson (D.C. Bar No. 1011291)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
Tel: (410) 332-0444
Fax: (410) 659-0436
E-mail: wmurphy@zuckerman.com
       aabelson@zuckerman.com

*Attorneys for Defendant Gregory B. Craig*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 10, 2019, the foregoing Motion to Strike was served on counsel of record via the Court's CM/ECF service.

                                                  /s/ *Ezra B. Marcus*
                                                  Ezra B. Marcus