UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL NO. 19-CR-00125 (ABJ) |
| v. : | |
| : | |
| GREGORY B. CRAIG : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE EVIDENCE
PURSUANT TO FED. R. EVID. 404(b)**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby gives notice of its intent to introduce evidence pursuant to Federal Rule of Evidence 404(b) regarding the defendant, Gregory B. Craig.

## I. Factual Background

On April 11, 2019, a federal grand jury in the District of Columbia returned an indictment against Craig charging him with one count of a false statements scheme in violation of 18 U.S.C. §1001(a)(1) and one count of false and misleading statements under the Foreign Agents Registration Act in violation of 22 U.S.C. §§ 612, 618.

The indictment alleges that in 2012, in connection with a report (the Report) that the Government of Ukraine commissioned from Craig's law firm evaluating the trial of Ukraine's former prime minister, Craig took various actions for which he was obligated to register as an agent of Ukraine under the Foreign Agents Registration Act, 22 U.S.C. § 611, *et seq*. (FARA). Craig did not register, however, and in response to repeated inquiries by the Department of Justice, National Security Division's Foreign Agents Registration Act Unit (FARA Unit), Craig made false statements and omitted material information in order to avoid registration.

The Court's scheduling order of April 19, 2019, provided that the government give notice by May 10, 2019, of its intention to introduce any evidence under FRE 404(b).

## II.     Planned Evidence

At trial, the government expects to admit evidence and elicit testimony consistent with the allegations set forth in the indictment.  In addition, the government hereby gives notice under Rule 404(b) of its intention to introduce evidence of Craig's successful efforts to convince others at his law firm, Skadden Arps, Meagher, Slate & Flom LLP (Skadden), to reconsider its decision not to hire Paul Manafort's immediate relative as an associate at Skadden in 2012.  The evidence demonstrates that Manafort was exceedingly upset when his relative was initially notified by Skadden that she would not be offered a position, and emailed Craig angrily, accusing Skadden of a failure to "show appreciation for a $4MILLION gift account."  In turn, Craig communicated with others at Skadden about the rejection of Manafort's relative and wrote in an internal email that it "could not have come at a worse time for our case."

Craig's efforts contributed to Skadden's decision to reconsider Manafort's relative.  On the same day that Manafort's relative interviewed at Skadden, Manafort was explicit in an email to Craig, writing, "[i]t goes without saying that I will push all future business to wherever [my relative] lands.  So, the four million dollar contract can be viewed as just the beginning."  Shortly thereafter, and after Manafort's relative had interviewed with attorneys at the firm, a senior Skadden partner emailed Craig and asked Craig what he wanted to do with respect to Manafort's relative, and Craig stated that he wanted the firm to make her an offer.  At the request of the same senior partner, Craig drafted a memorandum in support of hiring Manafort's relative for consideration by firm personnel in New York.  In the memorandum, after discussing Manafort's

relative's strengths and the positive feedback she received during her interviews, Craig wrote that the final factor in his recommendation of her, "but perhaps one of the most important" was the "potential for significant future business" with Paul Manafort; he added that Manafort was already likely, based on the firm's performance on the Report, to refer more business to Skadden, but that with the hiring of Manafort's relative, that likelihood would "become[] a certainty." Shortly thereafter, the firm offered her a position, and Manafort expressed profuse gratitude to Craig.

### III.   Legal Discussion

Craig's efforts in 2013 on behalf of Manafort's relative should properly be admitted under an analysis under Rule 404(b), which governs the admission of other crimes, wrongs, and acts of a defendant. Under the rule, "other acts" evidence is admissible if offered for any permissible purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See United States v. Pindell*, 336 F.3d 1049, 1056 (D.C. Cir. 2003), *cert. denied*, 540 U.S. 1200 (2004); *United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990), *cert. denied*, 498 U.S. 825 (1990).

In determining whether "other act" evidence is admissible, the Court applies a two-part analysis. First, the Court examines whether the evidence is "probative of some material issue other than character." *United States v. Clarke*, 24 F.3d 257, 264 (D.C. Cir. 1994). Because the federal rule is one of inclusion, not exclusion, evidence can properly be offered for any purpose other than solely to prove character. *See United States v. Crowder*, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (*en banc*); *United States v. Johnson*, 802 F.2d 1459 (D.C. Cir. 1986). Second, if the Court deems evidence to have met the first part of this analysis, the Court should exclude it only if its probative value is "substantially outweighed by the danger of unfair prejudice." Fed. R.

Evid. 403; *United States v. Day*, 591 F.2d 861, 878 (D.C. Cir. 1978); *Huddleston v. United States*, 485 U.S. 681, 686 (1988); *see also Johnson*, 802 F.2d at 1463-64 ("the balance should generally be struck in favor of admission when the evidence indicates a close relationship to the event charged") (quoting *Day*, 591 F.2d at 878).

The government's evidence regarding Craig's efforts on behalf of Manafort's relative is properly admitted under Rule 404(b) because it is particularly probative of Craig's motive to curry favor with Manafort, as well as his motive and intent in his dealings with the FARA Unit in 2013. At trial, the government will present evidence that Craig spoke to reporters about the Report in advance of its public release in December 2012—which obligated him to register under FARA—because Ukraine, through Manafort and Ukraine's public relations firm, asked him to do so. The government will further establish that Craig then concealed these and other material facts from the FARA Unit in 2013 to avoid registering under FARA. Craig, in contrast, is expected to claim that he undertook the December 2012 media contacts on his own initiative and for his own purposes.

The evidence of Craig's willingness to act at Manafort's request, and his desire to keep Manafort's business, is probative of Craig's motive and intent when he reached out to a reporter from the *New York Times* in December 2012, in advance of the Report's release. Just as Craig had a motive to persuade Skadden to hire Manafort's relative in order to satisfy Manafort and continue to bring in his high-paying business, Craig had a motive to curry Manafort's favor by reaching out to reporters as Manafort, Ukraine, and Ukraine's public relations firm had requested. Furthermore, because Craig is expected to claim that he had no obligation to register under FARA because his intent in reaching out to the *New York Times* was solely to defend himself and his law

firm, that intent is a central issue in this case. Craig's desire to satisfy Manafort is important evidence that is probative of Craig's intent as the Report was drafted and published in 2012.

Furthermore, evidence of Craig's desire to continue doing business with Manafort is probative of Craig's motive and intent to make false statements and material omissions to the FARA Unit in 2013. The government will present evidence at trial that Craig sought to avoid registering as an agent of Ukraine under FARA for multiple reasons, including that the substantial public disclosure required of FARA registrants would include exposing the private Ukrainian who had provided more than $4 million to Skadden for the Report, and would damage the perception that the Report was independent. Craig knew that the private Ukrainian wanted to remain anonymous and that the entire value of the Report to Ukraine was its perceived independence; Craig thus understood that Manafort and Ukraine would be unhappy and unlikely to do additional business with Skadden if the firm and Craig registered. Accordingly, Craig's desire to keep Manafort's business—as demonstrated in detail in his efforts on behalf of Manafort's relative—is probative of his motive and intent to mislead the FARA Unit and avoid registering under FARA.

The government is not planning to introduce evidence of Craig's efforts on behalf of Manafort's relative for the purpose of proving Craig's character, but for the purpose of establishing Craig's motive and intent as described above. *United States v. Loza*, 764 F. Supp. 2d 55, 57 (D.D.C. 2011) ("[A]ny purpose for which evidence is introduced is a proper purpose so long as the evidence is not offered solely to prove character or criminal propensity."). The next question, then, is whether the evidence should nevertheless be excluded because its probative value is substantially outweighed by the danger of unfair prejudice. But this evidence is highly probative of motive and intent while risking minimal prejudice. The government does not contend that in

helping Manafort's relative, Craig performed a criminal or even "bad" act, so there is little danger that the jury will be confused or consider the evidence for an improper purpose.

### IV.  Conclusion

Accordingly, the government hereby provides notice of its intent to introduce the foregoing evidence at trial, which it respectfully submits should properly be admitted under Rule 404(b).

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar Number 472845

By:  /s/ Molly Gaston
FERNANDO CAMPOAMOR-SANCHEZ (DC 451210)
MOLLY GASTON (VA 78506)
Assistant United States Attorneys
United States Attorney's Office
555 Fourth Street, N.W.
Washington, D.C.  20530
Telephone: 202-252-7698/202-252-7803
Fernando.Campoamor-Sanchez@usdoj.gov
Molly.Gaston@usdoj.gov


JOHN C. DEMERS
ASSISTANT ATTORNEY GENERAL

By:  /s/ Jason B.A. McCullough
JASON B.A. MCCULLOUGH (DC 998006; NY 4544953)
Trial Attorney
Department of Justice
National Security Division
950 Pennsylvania Ave NW
Washington, D.C.  20530
Telephone: 202-616-1051
Jason.McCullough@usdoj.gov

Dated:   May 10, 2019

**Certificate of Service**

      I certify that, by virtue of the Court's ECF system, a copy of the foregoing notice has been sent to counsel for the defendant on May 10, 2019.

                                        /s/ Fernando Campoamor-Sánchez
                                        Fernando Campoamor-Sánchez
                                        Assistant United States Attorney