UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | CRIMINAL NO. 19-CR-00125 (ABJ) |
| v. | : | |
| | : | |
| **GREGORY B. CRAIG** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S
## MOTION FOR BILL OF PARTICULARS

The United States of America opposes Defendant's motion for a bill of particulars (ECF No. 17), which contends that the 22-page, 67-paragraph indictment provides him insufficient notice of the charges and evidence against him.  Not only does the indictment outline in detail Defendant's false and misleading statements and omissions in support of the two charges, but the government has provided Defendant with all grand jury transcripts, witness interview summaries, and documentary evidence that detail and support those charges.  In short, Defendant has the necessary information to understand the charges and prepare his defenses, and there is no potential for unfair surprise at trial.  Upon close examination, Defendant's motion is simply an attack on the merits of the government's case, and an attempt to convince the Court to force the government to reveal and detail how it intends to prosecute and argue this case at trial.  But the law is clear that a bill of particulars is *not* a device to preview the government's case or theories.

Indeed, because an indictment serves only to provide notice of the charges, it need not provide every detail of the government's evidence.  *See* Fed. R. Crim. P. 7(c) (providing that an indictment is a "plain, concise, and definitive written statement of the essential facts constituting the offense charged.").  The indictment here is more than sufficient—particularly when viewed alongside the extensive discovery provided—and the Court should deny Defendant's motion.

**I.     Factual Background**

On April 11, 2019, a grand jury in the District of Columbia returned an indictment against Defendant. Count One charges Defendant with a false statements scheme in violation of 18 U.S.C. §1001(a)(1). Count Two charges Defendant with false and misleading statements under the Foreign Agents Registration Act in violation of 22 U.S.C. §§ 612, 618.

The first fourteen pages of the indictment describe in some detail Defendant's work for the Government of Ukraine during 2012. The indictment alleges, among other things, that the Government of Ukraine hired Defendant and his law firm to undertake two separate but related projects. First, Defendant had to prepare a Report evaluating the trial of Ukraine's former Prime Minister, Yulia Tymoshenko, which Ukraine planned to deploy as part of a public relations strategy headed by Paul Manafort to improve Ukraine's international image. Second, Defendant would consult with Ukraine on a then upcoming new trial against Tymoshenko, to "make it go better and look better vis a vis the West." For this work, Defendant's law firm would be paid over four million dollars. From the outset of this engagement, Defendant was aware of the registration requirements under the Foreign Agents Registration Act ("FARA"), and he also knew and understood how Manafort and Ukraine would use his Report for public relations purposes. Defendant was also specifically told by members of his law firm that if he performed public relations work aimed at the United States, he would be required to register under FARA. Nevertheless, Defendant did not want to register under FARA.

The indictment further alleges and describes how Defendant, while working on the Report, assisted Ukraine to select a public relations firm to help with the messaging about the Report, received copies of and inquired about Ukraine's media release plan for the Report and, despite

2

some initial misgivings—and contrary to the advice he had received—ultimately agreed to assist Ukraine with its public relations campaign in the United States for the Report's public release.

As part of this effort, the indictment further alleges and explains that in early October 2012, Defendant provided a copy of the Report to a former congressman—at a public strategy firm—and put that person in contact with a reporter known to the Defendant so that they could discuss the Report prior to its public release.   In addition, and in accordance with the media plan outlined by Ukraine's public relations firm, in December 2012 Defendant reached out to the same reporter he had contacted in October 2012, and offered to discuss the Report before its publication and personally delivered a copy of the Report to the reporter in preparation for the interview.   As Defendant communicated with the reporter, he also kept Ukraine's public relations firm apprised of his efforts concerning the media plan.   Defendant gave an exclusive interview to this reporter and his colleague, who published an article about the Report prior to the Report's release.   This pre-release reporting, and other similar efforts undertaken by Defendant, were seen by Ukraine as favorable to its position, and Manafort personally congratulated Defendant on the effectiveness of his "backgrounding" because of how the media was presenting the Report.

Following the publication of the Report and the ensuing media coverage, the FARA Unit, a section of the National Security Division of the United States Department of Justice, wrote to Defendant's law firm seeking information to determine whether the law firm would have to register under FARA as a result of the work performed on Ukraine's behalf.   It was in response to this, and subsequent information requests and a negative determination by the FARA Unit, that Defendant made a number of false or misleading statements and omitted material information in order to avoid registration under FARA.   This is the conduct at issue in the indictment.

The last eight pages of the indictment detail Defendant's false statement scheme as pled in Count One of the indictment, as well as Defendant's false and misleading FARA statements as pled in Count Two.  The charges incorporate by reference the previous paragraphs in the indictment that detail Defendant's actions during his work on Ukraine's behalf during 2012, which serve to provide additional context and detail for Count One and Count Two.

Count One, in nineteen paragraphs, provides Defendant extensive details regarding the false statement scheme.  Specifically, the indictment explains the purpose of the scheme (¶ 49), the manner and means (¶ 50), and details how Defendant executed the false statement scheme by: *(1)* listing material false and misleading statements and omissions in Defendant's June 3, 2013, letter to the FARA Unit (¶ 56); *(2)* identifying internal law firm documents Defendant sent to other partners, and quoting relevant parts, where he made false and misleading statements and omissions about his work on the Ukraine matter and his contacts with reporters in furtherance of Ukraine's media plan (¶¶ 59, 60); *(3)* listing and quoting false and misleading statements in Defendant's October 11, 2013, letter to the FARA Unit (¶ 62); and *(4)* listing ten material facts that Defendant omitted from his communications with the FARA Unit, and identifying Defendant's false statement to the FARA Unit during the October 9, 2013, meeting (¶¶ 61, 63). Count Two also provides Defendant with the necessary information about his false and misleading statements to the FARA Unit on or about October 11, 2013, by making reference to the listing (¶¶ 62, 63) of false and misleading statements, including omissions, previously identified in Count One.

Finally, Defendant has received early and extensive discovery in this case.  To date, the government has produced over one million pages of documents in this case, which includes the electronic data sets for large volumes of documents.  More importantly, the government has

4

already provided Defendant with all grand jury transcripts, witness interview summaries, and documentary evidence that detail his false statements and omissions. Defendant has even received the government's notice under Fed. R. Evid. 404(b) (ECF No. 22). In addition, defense and government counsel—since September 2018—have had three separate in-person meetings to discuss the evidence in this case, including a meeting in January 2019 where government counsel outlined for the defense the relevant documentary evidence and how the case could be prosecuted.

## II. Legal Standard for a Bill of Particulars

The purpose of a bill of particulars is "to ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges." *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. 1987). However, if an indictment "is sufficiently specific, or if the requested information is available in some other form, then a bill of particulars is not required." *Id.*; *see United States v. Lorenzana-Cordon*, 130 F. Supp. 3d 172, 179 (D.D.C. 2015) (denying motion for bill of particulars and noting that the government had provided extensive discovery that "allows Defendants to adequately prepare for trial").

A bill of particulars "is not a discovery tool or a device for allowing the defense to preview the government's theories or evidence." *United States v. Ramirez*, 54 F. Supp. 2d 25, 29 (D.D.C. 1999); *see also United States v. Brodie*, 326 F. Supp. 2d 83, 91 (D.D.C. 2004) (same). Rather, a bill of particulars "is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his *own* investigation and not to provide the defendant with the fruit of the government's investigation." *United States v. Sanford Ltd.*, 841 F. Supp. 2d 309, 316 (D.D.C. 2012) (internal quotation marks and citation omitted, emphasis in original).

Therefore, a bill of particulars "properly includes clarification of the indictment, not the government's proof of its case." *United States v. Martinez*, 764 F. Supp. 2d 166, 173 (D.D.C. 2011) (internal quotation marks and citation omitted); *United States v. Savoy*, 889 F. Supp. 2d 78, 115 (D.D.C. 2012) (same).

Contrary to Defendant's suggestion in his Motion (at 3), false statement cases are not special exceptions to the rule or treated and/or analyzed differently than other cases for purposes of a motion for a bill of particulars. *See* Fed. R. Crim. P. 7(f) (no distinction made between type of cases or allegations). The question for the Court to answer is always the same: does the indictment contain enough information to allow the defendant to understand the charges and prepare a defense without unfair surprise at trial? Therefore, as the D.C. Circuit explained in *Butler*, if an indictment is in fact "sufficiently specific, **_or_** if the requested information is available in some other form, then a bill of particulars is **_not_** required." 822 F.2d at 1193 (emphasis added).

The two main cases Defendant cites in support of his Motion—*United States v. Anderson*, 441 F. Supp. 2d 15 (D.D.C. 2006), and *United States v. Trie*, 21 F. Supp. 2d 7 (D.D.C. 1998)— are distinguishable from the facts here as demonstrated by the government in its Factual Background section, *supra*. In *Anderson* and *Trie*, the Court, in its discretion, held that the indictments in those cases did not provide the specificity necessary for the defendants to prepare for trial.[1] While Defendant emphasizes in his Motion (at 3-4) that the Court in *Anderson* and *Trie* did not believe that discovery provided by the government in those cases would obviate the need

---

[1] The Court in *Anderson* recognized the limited precedential value of its prior opinion in *Trie*, which the Court stated was a "unique" case due to the "convoluted theory" under which the indictment was returned, noting that "portions of the indictment [were] difficult to follow" and that the false statement counts were "particularly enigmatic." *Anderson*, 441 F. Supp. 2d at 19.

6

for a bill of particulars, he fails to acknowledge or cite to the controlling authority that a bill of particulars is not necessary "if the requested information is available in some other form." *Butler*, 822 F.2d at 1193.  On the other hand, forcing the government to provide a bill of particulars where it is not necessary, only serves to limit the government's proof at trial to the facts included in the bill of particulars.  *See Sanford*, 841 F. Supp. 2d at 316 (citations omitted); *Trie*, 21 F. Supp. 2d at 23 (citations omitted).  Otherwise, upon conviction, the government would risk an appeal based on any alleged variance between the proof at trial and the bill of particulars.  *Id.*

Courts have consistently denied motions for a bill of particulars where, as here, Defendant seeks details about the nature of the government's evidence or how the government intends to present its case.  For example, in *United States v. Han*, 280 F. Supp. 3d 144, 149 (D.D.C. 2017), the Court denied a motion for a bill of particulars requesting information about the basis for fraud and tax charges against the defendant, including the precise representations allegedly made by the defendant and the amount of taxes allegedly owed.  The Court explained that the requested information had already been provided to the defendant in discovery and elsewhere, and a "bill of particulars is meant to allow a defendant to properly prepare for trial, not provide a method to force the prosecution to connect every dot in its case." *Id.*  Similarly, in *Brodie*, the Court rejected a motion for a bill of particulars about "the circumstances surrounding the alleged acts" of fraud committed by the defendants as well as "other evidentiary details."  326 F. Supp. 2d at 92.  The Court reasoned that the charges in the indictment were "detailed and alleged with particularity" and "the discovery provided by the government has been voluminous," and therefore there was "no reason for any further particularization of the overt acts."  *Id.*

### III.     Argument

Defendant argues that Count One of the indictment—the false statements scheme—lacks the specificity required by the Federal Rules of Criminal Procedure, and asks the Court to enter an Order for a bill of particulars as to five paragraphs in Count One: 50.b., 52, 56, 61, and 65.  A review of the entirety of the indictment demonstrates that Defendant's assertion is wrong, which highlights the main problem with his argument: Defendant's Motion ignores the information and allegations contained in the rest of the indictment, which are incorporated by reference into Count One or are part of Count One.  When read together, the indictment as a whole provides the necessary context and detail for the allegations included in Count One—and the five paragraphs at issue.  Moreover, at times, Defendant's arguments appear to ignore the plain language of the respective paragraphs.  Finally, as discussed *supra*, Defendant also ignores that the grand jury transcripts, witness interview summaries, and other documentary evidence previously produced, have provided him with more than enough information to prepare his defense and avoid any unfair surprise.  There is no need for a bill of particulars, and the Court should deny Defendant's motion.

The government will briefly address Defendant's arguments as to the five paragraphs that are the subject of his Motion.

**1. Count One: Paragraph 50.b**

Paragraph 50 of the indictment generally describes the "manner and means" by which the Defendant carried out the false statements scheme, which, in addition to withholding or omitting information about his various contacts with Reporter 1 and Reporter 2 (¶¶ 50.a., 50.c.), included drafting false and misleading descriptions about his media contacts (¶50.b.).  While Defendant complains about the specificity of paragraph 50.b., the other paragraphs in the indictment provide

8

additional detail regarding Defendant's false and misleading written descriptions of his media contacts as generally described in the "manner and means" Paragraph 50.b.

For example: (1) paragraph 56 describes Defendant's letter sent to the FARA Unit on June 3, 2013, which includes a discussion of his media contacts; (2) paragraph 59 describes Defendant's email from September 19, 2013, to a partner at the firm about his media contacts; (3) paragraph 60 describes Defendant's additional email to a partner at the firm, which includes a proposed draft letter to the FARA Unit, where Defendant once again discussed his media contacts; and (4) paragraph 62 describes Defendant's letter to the FARA Unit dated October 11, 2013, which again discussed Defendant's media contacts. Despite Defendant's complaints and hypothetical questions (Motion at 6), the information included in the indictment is more than sufficient for Defendant to prepare his defenses and avoid an unfair surprise at trial. The rules do not require the government "to connect every dot in its case" for Defendant. *Han*, 280 F. Supp. 3d at 149.

### 2. Count One: Paragraph 52

Paragraph 52 simply describes Defendant's legal duty to provide information and not to willfully make false or misleading statements or omit material facts to the FARA Unit. Defendant incorrectly asserts (Motion at 7) that the indictment does not identify any statute that gives rise to this obligation. First, the language of the paragraph itself begins with the statement: "***Under FARA***, when responding to the FARA Unit's inquiries . . ." (¶ 52, emphasis added). Second, Count Two of the indictment includes a FARA false statement charge, which provides the citation to the FARA statute. When Defendant disputes the application of the statute, his remedy is to file a motion to dismiss—which Defendant has now done—but this is not the proper subject of a motion for a bill of particulars as the "particulars" related to paragraph 52 have been provided in

the indictment and are clearly known to the Defendant.

### 3. Count One: Paragraph 56

Paragraph 56 lists, specifically, false and misleading statements and omissions in Defendant's letter to the FARA Unit dated June 3, 2013, as follows:

- The letter stated that "the law firm on December 12-13, 2012 provided a copy of the report to (1) [Tymoshenko's legal team]; (2) [a representative of the Private Ukrainian]; (3) [Reporter 1]" and the two publications with which the Law Firm had communicated after the Report's release.

- CRAIG claimed that "[t]he law firm viewed the distribution of the report as a matter that would be decided by the Ukraine Government in its sole discretion. The law firm did not advise the Ministry on that issue."

- The letter also stated that the Law Firm "issued no statements and made no comments to the media, the public or government officials about the report. Gregory Craig provided brief clarifying statements about the report to [Reporter 1]" and the other reporters to whom the firm had responded after the report's public release. The letter continued, "One purpose of the statements was to correct misinformation that the media had received – and was reporting – from the Ministry of Justice and from the Tymoshenko legal team in Ukraine."

While Defendant claims that he is "charitably" reading this paragraph (Motion at 8), he argues that more specificity is needed claiming, without citing any legal support, that the government is required to label each statement as either false, misleading, or an omission of a material fact. In fact, the government exceeded its burden to simply plead that the Defendant made a materially

false statement or omission to the FARA Unit, explicitly identifying statements that are false, misleading or contain a material omission in Defendant's June 3, 2013, letter.

### 4. Count One: Paragraph 61

Paragraph 61 describes the meeting of October 9, 2013, that took place at the FARA Unit. According to Defendant, this paragraph is internally inconsistent and vague (Motion at 9), and the paragraph allegedly does not properly specify which false and misleading statements to the FARA Unit are consistent with his prior false and misleading statements to members of his law firm. Defendant's criticisms of paragraph 61 are based on his unwillingness to properly read the other paragraphs in the indictment together with this one, and his refusal to acknowledge that he has been provided with all available grand jury transcripts and witness interview summaries of the participants at this meeting. In short, Defendant knows exactly what the witnesses can and will say about this meeting, which is entirely consistent with how Paragraph 61 appears in the indictment. While Defendant can challenge the sufficiency of the evidence at trial, he certainly cannot credibly claim that he needs additional facts to prepare his defenses or avoid any unfair surprise at trial as to this issue. A bill of particulars is therefore unnecessary for this paragraph as well.

To evaluate this paragraph properly, the Court should first examine paragraphs 56, 59 and 60 of the indictment. These three paragraphs describe, in some detail, Defendant's previous false and misleading statements and omissions and provide important context. Paragraphs 59 and 60 describe Defendant's false and misleading statements to members of his own law firm, which themselves do not constitute crimes but which provide important background to the meeting with the FARA Unit on October 9, 2013. As Defendant knows, at least one witness can testify at trial

that Defendant's presentation to the FARA Unit was consistent with the false and misleading statements Defendant previously made on September 19 and 20, 2013, as described in paragraphs 59 and 60. In addition, as Defendant also knows, witnesses can testify that Defendant, during the meeting on October 9, 2013, claimed that his media contacts were solely reactive and for the purpose of correcting misinformation, as specifically stated in paragraph 61 of the indictment. For additional context, the Court should also review paragraphs 62 and 63, which further describe Defendant's false and misleading statements and omissions, including those from the meeting on October 9, 2013.

Contrary to Defendant's argument, there is nothing vague, confusing, or inconsistent about pleading that Defendant's presentation to the FARA Unit was generally consistent with the specifically detailed previous false and misleading statements and omissions (¶¶ 59, 60), and then identifying a specific false and misleading statement Defendant made during the meeting (¶ 61). While Defendant's arguments about paragraph 61 will certainly be made at trial to attack the government's case, they are not an appropriate basis for a motion for a bill of particulars under these circumstances.

5. **Count One: Paragraph 65**

Defendant argues that paragraph 65 is immaterial to Count One and should be stricken (Motion at 11), but then also claims that if it is not stricken a bill of particulars is necessary to explain exactly what statements to the Special Counsel's Office (SCO) are at issue. Defendant's argument ignores the language used in the indictment, as well as the fact that he has a copy of the FBI's report of his October 19, 2017, statement to the SCO.

The government will separately answer the arguments presented in Defendant's motion to strike (ECF No. 21). As it relates to the motion for a bill of particulars, Paragraph 65 specifies that the false and misleading statements Defendant repeated to the SCO concerned "the timing and nature his contacts with journalists about the Report." (¶ 65). As Defendant knows, the record of his interview with the SCO provides, in part:

> CRAIG was shown documents labeled "Media Plan" bates stamped SAU 006797-6801. CRAIG stated he was concerned about this plan because how they categorized certain aspects of the plan. CRAIG stated that Hawker asked if he could help CRAIG get the report to David Sanger at the New York Times and CRAIG told him yes. CRAIG stated that two media outlets were reporting erroneous facts about the Skadden reports findings. CRAIG stated the only thing he did was deliver the Skadden report to Sanger and that all the other things the "Media Plan" states CRAIG would do were never done by CRAIG.
>
> \*   \*   \*
>
> CRAIG stated that he responded to three different newspaper articles which inaccurately reported the results of the Skadden report. CRAIG spoke to the journalists to correct their inaccurate reporting. CRAIG stated that when he corrected some of the inaccurate press he did not view that as conducting press relations on behalf of a foreign government. CRAIG was correcting the journalists on behalf of Skadden and not the Ukrainian government.

Once again, there is no need for a bill of particulars related to paragraph 65 because the paragraph provided the necessary information and, through discovery, Defendant has all the information he may possibly need to prepare his defense and avoid unfair surprise at trial.

**IV.  Conclusion**

Defendant's motion seeks, in essence, to obtain a preview of the government's case and theories, and/or to tie the government's hands at trial in terms of its presentation of evidence. This is not an appropriate use of a motion for a bill of particulars. Because the indictment provides adequate notice as required by the Federal Rules of Criminal Procedure, and the

13

Defendant has already received the discovery that contains the information that he allegedly seeks through a bill of particulars, the Court should deny Defendant's motion.

        Respectfully submitted,

        JESSIE K. LIU
        UNITED STATES ATTORNEY
        D.C. Bar Number 472845


By:  /s/ Fernando Campoamor Sánchez
        FERNANDO CAMPOAMOR-SANCHEZ (DC 451210)
        MOLLY GASTON (VA 78506)
        Assistant United States Attorneys
        United States Attorney's Office
        555 Fourth Street, N.W.
        Washington, D.C.   20530
        Telephone: 202-252-7698/202-252-7803
        Fernando.Campoamor-Sanchez@usdoj.gov
        Molly.Gaston@usdoj.gov


JOHN C. DEMERS
ASSISTANT ATTORNEY GENERAL


By:  /s/ Jason B.A. McCullough
        JASON B.A. MCCULLOUGH (DC 998006; NY 4544953)
        Trial Attorney
        Department of Justice
        National Security Division
        950 Pennsylvania Ave NW
        Washington, D.C.   20530
        Telephone: 202-616-1051
        Jason.McCullough@usdoj.gov

Dated:    May 14, 2019

**Certificate of Service**

     I certify that, by virtue of the Court's ECF system, a copy of the foregoing opposition has been sent to counsel for the Defendant on May 14, 2019.

                                                /s/ Fernando Campoamor-Sánchez
                                                Fernando Campoamor-Sánchez
                                                Assistant United States Attorney