# Exhibit 16

**From:** Craig, Gregory B (WAS) [/O=SKADDEN/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=GCRAIG]
**Sent:** Monday, June 25, 2012 10:23 PM
**To:** Ettinger, Mitchell S (WAS) [Mitchell.Ettinger@skadden.com]
**Subject:** Andrea Manafort
**Attachments:** was1-1195424-1.doc

I leave for Ukraine tomorrow, but am available on email at any time.

MEMORANDUM

To:      Mitch Ettinger
From:    Greg Craig
Subject: Andrea Manafort
Date:    June 21, 2012

You have asked me to draft a memorandum setting forth the reasons why I recommend offering Andrea Manafort a position as Associate in the Litigation Group of the Washington, D.C. office. I myself would make her an offer for reasons that I outline below, but a group of six partners and associates also interviewed Andrea. Five of the six concluded that she should either "definitely receive an offer, or that she should be given "strong consideration."

Andrea just graduated from Georgetown Law School. Her transcript is attached. She is spending this summer preparing for and taking the D.C. Bar. She would be available to start work either in the Fall or in January 2013, after the results of the bar examination are known, if that is more convenient for the firm.

When it comes to the ordinary recruiting cycle, Andrea is out of step with others in her cohort. This is through no fault of her own. Last Summer, she worked for Dewey LeBeouf in New York City. Dewey was pleased with her performance and gave her an offer of employment -- to begin work as an Associate in Dewey's New York office this coming Fall. She accepted and made plans accordingly. Needless to say, Dewey's collapse has pulled the rug out from under her personally and professionally. She now wants to practice in DC, and she very much wants to work at Skadden.

How did Andrea Manafort come to my attention? In recent months, her father and I have been working very closely on a large matter that he helped bring to the firm. (His project has been keeping four partners and five associates busy for the past three months. The firm has been paid an advance retainer of $3 million for this project – against which we have already charged $1.6 million in time and expenses – and we will receive another $1 million on June 29, 2012, making the total enterprise a $4 million project over a four month period.) He explained Andrea's

1

Confidential Treatment Subject to Rule 6(e)

SAU 158273
USA-REL-0158477

situation to me and asked if his daughter could come to me for advice. It was a perfectly natural request, and I agreed to talk to her.

I did interview Andrea and came away thinking four things: (1) Andrea is very personable and engaging, an agreeable and charming young woman. She would be a strong member of any team. (2) Andrea is also very smart and, more than that, she has extraordinary people/communication skills. (All six of the Skadden interviewers gave her a grade of "Very Good" in the "Communication Skills" category.) (3) She is also one ambitious young lady. She will work hard to succeed here, and she has the potential – given her father's network – to bring in a lot of business. (4) If she had come to Skadden as a summer associate, I feel pretty confident that she would have been offered a job here.

It was my idea to bring her into the firm for interviews, and I cautioned her not to get her hopes up. The interviewers found her to be "an easy-going personality . . . very mature and capable . . . very motivated . . . a good fit . . . personable . . . and with good experience." Some of the interviewers worried about her grades being "a little lower than we like." One of her most enthusiastic supporters wrote, "[H]er transcript doesn't blow me away . . . That's my basis for 'strong consideration' rather than 'definite offer'."

My own thoughts on this point are these: (1) Her third year at Georgetown is what brings down her GPA; and (2) Andrea may have let down a bit in her final year thinking (understandably) that her near-term future was secure and she could take it easy.

I guess a final factor here – but perhaps one of the most important – is the potential for significant future business. Andrea's father is Paul Manafort, one of the top Republican lobbyists in Washington, D.C. He has been working in Republican politics for almost forty years. He has very close connections with Republican contributors arising from his own involvement in every presidential campaign since 1980. With that history and those connections, Paul built one of the most successful lobbying operations in D.C. history – Black, Manafort, Stone and Kelly – which merged with another firm in 1996. Paul has said that he would like to strengthen his relationship with Skadden, and he is likely to throw a lot of work our way if Andrea comes to

2

Skadden. (I honestly have no idea, concretely, what that work could amount to on an annual basis, but it has the potential to be significant.) Paul is thrilled with the firm's performance for him and his clients to date, and, as I say, he will likely refer significant business to us in the future. That likelihood becomes a certainty if we have Andrea working here. More than that, I think, is Andrea's own ability to generate business. She has real ambition herself, and because of her last name, she (by herself and through her father's network) will likely attract more significant new business for the firm than the ordinary first year associate.

In sum, I recommend that we give Andrea an offer. My prediction is that she will do very well here, that she will be a fast learner and that she will be well-liked. I think there is virtually no chance that she will disappoint, but if she does -- for whatever reason -- there is nothing to prevent us from giving her a very early warning.

Thank you for the chance to make the case.

3