## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NO. 19-CR-00125 (ABJ)** |
| **v.** | : | |
| | : | |
| **GREGORY B. CRAIG** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S BILL OF PARTICULARS

The United States of America hereby responds to the Court's Order of May 21, 2019, and provides the Defendant, Gregory B. Craig, with additional information regarding the allegations in paragraphs 61 and 65 of the indictment.

### A.  Paragraph 61

In addition to the other allegations contained in Paragraph 61, as well as the allegations contained or referenced in count one of the indictment, the government alleges that on or about October 9, 2013, Defendant made the following false and misleading statements during a meeting with the FARA Unit staff:

- That Defendant provided copies of the Report to the media only in response to requests made by the media.

- That Defendant's contacts with the media concerning the Report were made solely to correct mischaracterizations about the Report.

- That in his contacts with the media about the Report, Defendant did not act at the request or direction of Ukraine.

The government will establish these false and misleading statements through documentary evidence and witness testimony, the sum and substance of which has been provided to Defendant during discovery.   Although not required to itemize the evidence on which it may rely at trial, the government will identify below some of its expected proof at trial for paragraph 61:

The documentary evidence, all of which has been disclosed to the defense, includes: (a) Defendant's "Just for the record" email dated September 19, 2013, referenced in the indictment at ¶ 59 (GJ Ex. 48), attached hereto as Exhibit A; (b) Defendant's "First draft of response to FARA" email dated September 20, 2013, referenced in the indictment at ¶ 60 (GJ Ex. 49), attached hereto as Exhibit B; (c) Defendant's modified "draft" of a response to FARA, referenced in the indictment at ¶ 60 (GJ Ex. 49A), attached hereto as Exhibit C; (d) a copy of the Law Firm's document tracking system that shows when Defendant accessed and/or modified his draft response, referenced in the indictment at ¶ 60 (GJ Ex. 50), attached hereto as Exhibit D; (e) Defendant's email of October 10, 2013, with draft letter to FARA Unit after meeting of October 9, 2013 (GJ Ex. KG-02), attached hereto as Exhibit E; (f) Defendant's letter to the FARA Unit, dated October 10, 2013,[1] referenced in the indictment at ¶ 62 (GJ Ex. 52), attached hereto as Exhibit F; and (g) the FARA Unit's letter to Defendant, dated January 16, 2014, referenced in the indictment at ¶ 64 (GJ Ex. 53), attached hereto as Exhibit G.

In addition to the documentary evidence of Craig's false statements to the FARA Unit, the government expects to present testimony from witnesses present at the meeting on October 9, 2013, for which the government has disclosed grand jury transcripts and interview reports.   For example, as stated by Kenneth Gross in grand jury testimony disclosed to the defense:

> Yes, I have some recollection of what he said. [T]he thing that I remember from this meeting is that Craig explained to the FARA unit representatives [] that the information about this report that he and his people had written was – had mischaracterizations in it. Or there were things in it that were incorrect and Newspaper stories written about the report, and his, the point that he was making as best as I can recall it is that the only reason he had spoken to members of the press about the report was to correct these mischaracterizations in the news stories

---

[1]     While dated October 10, 2013, the letter was sent to the FARA Unit by electronic mail on October 11, 2013.

that either had been written or were going to be written, but he had known somehow that it was going to be printed in that fashion. That's what I remember from this whole thing, that he was there to sort of correct what he understood to be mischaracterizations or misstatements in news stories about the report and he and his team had offered.   Gross 2/28/2019 GJ Tr. at 15:24 – 16:16.

And as stated in grand jury testimony by Lawrence Spiegel, also disclosed to the defense:

I remember our themes for the meeting coming out in general terms, which were the idea that the press contact was, that Mr. Craig had was reactive, meaning that it was outreached to us, and corrective, meaning that it was to correct misstatements that were out there in order so that the report would be fairly reflected.   Spiegel 2/28/2019 GJ Tr. at 35:2-7.

Mr. Craig presented most of the information and I remember that. I believe I presented our themes, but I'm not certain of that. But I believe I did, this, the concept of reactive and corrective. *Id.* at 35:19-22.

Well, I don't remember what he said. I do know that I did not feel at any point that there was something that was said by him that I thought was inconsistent with what I knew.   *Id.* at 38:1-4.

Finally, as stated by Heather Hunt in grand jury testimony also disclosed to the defense:

The basic gist of the meeting and the purpose of the meeting was for Greg Craig to explain to us [] that [] we sort of got it wrong, that they don't have an obligation to register because really, they didn't act at the request or under the direction or control of the Ukrainian Government, that the – that Greg Craig had made some contacts to the media, but it was done independently on his own to correct mischaracterizations about the report, but that he is the one who initiated it. And that was the basis. He wanted to come and tell us that so he came, he basically told us that. He explained it. It wasn't too long of a meeting as I recall, you know, probably 30 minutes to 45 minutes. And where he went through all of that we said, "Thank you very much." If – and I do remember saying to them, you know, paraphrasing, but you know, if that's your story and you're sticking to it then go ahead and put it in writing.   Hunt 3/21/2019 GJ Tr. at 39:19 – 40:11

My understanding of what he said at the meeting was that he needed to correct mischaracterizations and so that the proactive part was that, and then provided a report in response to a – you know, the media request. Because it's like, okay, those are the mischaracterizations, can we have a copy of the report? That was my basic understanding of it.   *Id.* at 42:7-13.

3

The government may also introduce Defendant's admissions during his Special Counsel's Office interviews, as documented in interview reports prepared by the Federal Bureau of Investigation ("FBI") and disclosed to the defense, which are consistent with, and bear directly on, the false and misleading nature of his statements to the FARA Unit.   For example, on March 7, 2018, when confronted with his September 19, 2013, "for the record" email (*see* Ex. A), Defendant admitted that his first two points about his contacts with the *New York Times* were not accurate: "CRAIG stated he forgot about this email. CRAIG stated that when it comes to the NYT, his response to Spiegel in Item (1)[2] was not accurate. CRAIG stated his response in Item (2)[3] was true, except for the NYT."   3/7/2018 FBI-302 at 9.   When confronted with his September 2013 draft responses to the FARA Unit (*see* Ex. B and C), among other things, Defendant admitted that parts of those drafts were "inaccurate," including that "it was not accurate that the firm did not send this report to media outlets or journalists" and that it was not accurate that he "took no action to contact [media]."   3/7/2018 FBI-302 at 9.   These constitute some, but not all, of Defendant's admissions to the FBI that the government has provided in discovery and may seek to introduce at trial that also relate to his statements on October 9, 2013.

## B.  Paragraph 65

In addition to the other allegations contained or referenced in count one of the indictment, during an interview with the Special Counsel's Office on October 17, 2018, a report of which has

---

[2]      Craig wrote: "[The Law Firm] did not "disseminate the report to the news media." Three media outlets who were not able to obtain a copy of the report from the Ministry in Kiev, contacted us and asked us to provide them with a copy. The report was a public document."   Exhibit A (GJ Ex. 48).

[3]      Craig had written: "At no time did [the Law Firm] 'contact the media.' Quite to the contrary, we were approached by the media - asked for interviews, asked for background commentary, etc. - and we did not respond. The only time we responded was to correct misinformation."   *Id.*

been disclosed to the defense, Defendant repeated the following false and misleading statements

he had previously made to the FARA Unit:

- That Defendant spoke with journalists solely for the purpose of correcting their inaccurate reporting of the findings in the Report.

- That Defendant's contacts with the media were not on Ukraine's behalf.

- That Defendant did not have any knowledge or insight about how Ukraine would release or "roll out" the Report.

As set forth in detail above, the government can establish the falsity and misleading nature of these

statements through the same evidence described above for paragraph 61, as well as the rest of the

evidence to be introduced at trial to prove the charges in the indictment.   And, of course, the

government can establish that Defendant made these statements on October 17, 2017, through the

testimony of an FBI Special Agent who was present for this interview and, if necessary, with the

FBI-302 that was prepared to document the interview.[4]   This FBI-302 and the associated notes

have been provided to Defendant during discovery.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar Number 472845

By:   /s/ Fernando Campoamor Sánchez
FERNANDO CAMPOAMOR-SANCHEZ (DC 451210)
MOLLY GASTON (VA 78506)
Assistant United States Attorneys
United States Attorney's Office

---

[4]    Some of the sections from the FBI-302 were quoted previously in the Government's Opposition to Defendant's Motion for a Bill of Particulars (ECF No. 24), and are therefore not repeated here.   To be clear, the FBI-302s contain additional false and misleading statements made by Defendant to the Special Counsel's Office, that the government may offer at trial—even if not directly related to Paragraph 65. *See, e.g.*, 10/19/2017 FBI-302 at 12 (Defendant's false claim that former Congressman Weber never asked him about the report, even though Defendant provided Weber a copy of the report in October 2012 and put him in contact with a reporter to discuss the report.).

555 Fourth Street, N.W.
Washington, D.C.   20530
Telephone: 202-252-7698/202-252-7803
Fernando.Campoamor-Sanchez@usdoj.gov
Molly.Gaston@usdoj.gov

JOHN C. DEMERS
ASSISTANT ATTORNEY GENERAL


By:    /s/ Jason B.A. McCullough
       JASON B.A. MCCULLOUGH (DC 998006; NY 4544953)
       Trial Attorney
       Department of Justice
       National Security Division
       950 Pennsylvania Ave NW
       Washington, D.C.   20530
       Telephone: 202-616-1051
       Jason.McCullough@usdoj.gov


Dated:    May 28, 2019

**Certificate of Service**

I certify that, by virtue of the Court's ECF system, a copy of the foregoing Bill of Particulars has been sent to counsel for the Defendant on May 28, 2019.

/s/ Fernando Campoamor-Sánchez
Fernando Campoamor-Sánchez
Assistant United States Attorney

# EXHIBIT A



**From:** Craig, Gregory B (WAS)
**Sent:** Thursday, September 19, 2013 4:37 PM
**To:** Spiegel, Lawrence S (NYC)
**Subject:** FARA

Just for the record:

(1)  Skadden did not "disseminate the report to news media."  Three media outlets who were not able to obtain a copy of the report from the Ministry in Kiev, contacted us and asked us to provide them with a copy.  The report was a public document.

(2)  At no time did Skadden "contact the media."  Quite to the contrary, we were approached by the media – asked for interviews, asked for background commentary, etc. – and we did not respond.  The only time we responded was to correct misinformation.

(3)  To the best of my recollection, our statements to the press were not about Ukraine.  They were to correct misinformation.  The  statements were about our report and about us.

**Gregory B. Craig**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**1440 New York Avenue, N.W. | Washington | D.C. | 20005-2111**
**T: 202.371.7400 | F: 202.661.9100**
**gregory.craig@skadden.com**

Confidential Treatment Subject to Rule 6(e)

# EXHIBIT B



GRAND JURY EXHIBIT

**From:** Spiegel, Lawrence S (NYC) [/O=SKADDEN/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=LSPIEGEL]
**Sent:** Saturday, September 21, 2013 1:28 AM
**To:** Zornow, David M (NYC) [David.Zornow@skadden.com]
**Subject:** FW: First draft of a response to FARA
**Attachments:** WASSR01A-#1265005-v1-gbc_2_draft_fara_letter.DOCX

---

**From:** Craig, Gregory B (WAS)
**Sent:** Friday, September 20, 2013 1:12 PM
**To:** Spiegel, Lawrence S (NYC); Kedem, Allon (WAS)
**Subject:** First draft of a response to FARA

Here is a first shot at it. Perhaps we need to include some legal research?

**Gregory B. Craig**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**1440 New York Avenue, N.W. | Washington | D.C. | 20005-2111**
T: 202.371.7400 | F: 202.661.9100
gregory.craig@skadden.com

DRAFT OF LETTER TO FARA DIVISION IN THE DEPARTMENT OF JUSTICE
September 20, 2013

We are writing to respond to your letter of September 5, 2013. With respect, we disagree with your decision and respectfully request an opportunity to review it with the Attorney General.

It is true that Skadden agreed to write an independent report on the Tymoshenko trial to be paid for by Ukrainian entities and individuals. If that is the sole basis for concluding that Skadden should register as a foreign agent, we cannot dispute the factual basis for the conclusion, but we deeply dispute the legal conclusion. As a matter of law, we do not believe that FARA was intended to reach and require registration of an American citizen who engages in such an activity.

We assume then that your conclusion is based on certain factual findings relating to the release of this report in the United States that you have included in your letter. Your portrayal of the facts, however, is just not accurate. And you have relied upon slanted and inaccurate interpretations of what happened to reach a totally unjustified conclusion. Your conclusion that this firm served as 'public relations counsel, publicity agent and information-service employee" for the Ministry of Justice in Ukraine is indefensible on both the merits and the law.

It seems to us, reading your letter of September 5, 2013, that the critical issue for the Department is the firm's conduct relating to the release of the report. We think that a fair and accurate review of the record will establish that the firm did not cross the line and engage in "political activity" as defined in FARA, and that your portrayal of the facts is simply incorrect.

In your September 5, 2013 letter, you use inaccurate language to describe what we did. It gives an utterly false impression of what actually happened.

You wrote:

> "You indicate that your firm was paid by the Ukraine to produce an independent report on the Tymoshenko prosecution, and *that the report was disseminated to news media by your firm.*"

The word "disseminate" means "to spread abroad;" "to disperse throughout;" "to spread widely." We did no such thing, and we did not use the word "disseminate."

Your question to us was "To whom, if anyone, did your firm release or distribute the report and when." In our answer, we told you that the firm provided a copy of the report to a reporter from the New York Times, the National Law Journal and the Los Angeles Times. Ukrainian authorities had released the report to the general public much earlier in that day, but these three outlets – for some reason -- had not been able to obtain copies of the report. They approached the firm, asked us if we could provide them with a copy, and we did so.

The law firm did not "disseminate" this report. It did not "spread [this report] abroad." It did not "disperse [this report] throughout." It did not "spread [this report] widely." The firm did not send this report to media outlets or journalists. So let us agree that the word "disseminate" is not accurate.

You also wrote:

> "We have determined that your actions in *contacting the media* were actions *meant to influence the U.S. public with reference to the political or public interests, policies or relations of Ukraine.*"

To my knowledge, no one in this law firm initiated any contacts with the media. It is simply wrong to say that Skadden took "actions [to] contact the media." The law firm did not accept invitations from the media to appear or to be interviewed. The law firm declined the opportunity to communicate with journalists on background. The law firm declined to discuss the report with government officials -- from either the legislative or the executive branch -- or with experts from think tanks.

As I told you in my letter of June 3, 2013, I did communicate briefly with two print-media journalists. Even with them, I took no action to contact them. They initiated the contact.

As to the substance and the reason for my communications with these three journalists, my contact with them was for the sole purpose of defending my law firm and correcting misinformation. A fair-minded review of the record will establish that there is absolutely nothing to be found in my statements to suggest that I intended "to influence the U.S. public with reference to the political or public interest, policies or relations of Ukraine."

*The New York Times*

There is nothing in this article to suggest that Skadden --as the report was released to the public -- did anything or said anything intended to influence the U.S. public in its attitudes towards Ukraine.. It bears noting that the New York Times article was sharply critical of Ukraine, e.g., the headline for the story was "Failings Found in Trial of Ukrainian ex-Premier."[1] To be sure, there are references to me and to my participation in the project and there are many quotations *from the report.*

I am only quoted once very briefly:.

---

[1] The article characterized the results of the Skadden report as follows:

- "Tymoshekenko was denied legal counsel at critical stages of her trial . . .
- "[Tymonskenko's] lawyers were wrongly barred from calling relevant witnesses . . ."
- "Tymoshenko's ability to present a defense in her trial appears to have been compromised to a degree that is troubling under Western standards of due process and the rule of law."

2

"We leave to others whether this prosecution was politically motivated.  Our assignment was to look at the evidence in the record and determine whether the trial was fair."

The purpose of my statement was to defend the law firm's neutrality and to clarify our assignment.  There is nothing about Ukraine.

*The National Law Journal*

Without having access to the report or reading it, the National Law Journal published a totally erroneous article about what Skadden had done.  When the National Law Journal reporter asked us for a copy of the report, the law firm provided him a copy and urged him to make a correction.  He agreed to so, and the fact that he made such a correction appears in the sub-heading of the article.

My statement to the reporter was very brief, only intended to clarify what Skadden had done:

"As we say in the report, with regard to some of Tymoshenko's claims, we found very serious problems in the conduct of her trial.  With regard to other claims, we found insufficient evidence in the record to support the objections."

This neutral and totally accurate description of the report is unremarkable.  In the context of an article whose entire theme is captured with its headline, "Former Ukrainian leader's trial was flawed, Skadden says," it is difficult to defend the notion that, in correcting this journalist's initial report, Skadden intended to influence the public's opinion toward Ukraine.

Again, we respectfully request an opportunity to review your recommendation with the Attorney General of the United States.


the o (1)   I corrected misrepresentations about Skadden's assignment and its role in the project  As you can see from the news articles oframtion gthe public officals or iO n three occasions – identified in my letter to you of June 3, 2013 – I  and  Nor did the law firm issue statements or make commentsissr      not initiate contacts with the media.  distributing the report to anyone.

In the three instances that the report  tiUnlike press releases or  t poert  enko's legal team in the U.S. and a representative of o rht y of the

3

# EXHIBIT C



DRAFT OF LETTER TO FARA DIVISION IN THE DEPARTMENT OF JUSTICE
September 20, 2013

We are writing to respond to your letter of September 5, 2013. With respect, we disagree with your decision and respectfully request an opportunity to review it with the Attorney General.

It is true that Skadden agreed to write an independent report on the Tymoshenko trial to be paid for by Ukrainian entities and individuals. If that is the sole basis for concluding that Skadden should register as a foreign agent, we cannot dispute the factual basis for that conclusion, but we can and do dispute the legal conclusion itself. As a matter of law, we do not believe that FARA was intended to reach and require registration of an American citizen who engages in such an activity, or that such conduct, standing alone, is covered by FARA.

We assume then that your conclusion is based on certain factual findings relating to the *release* of this report in the United States that you have included in your letter. Your portrayal of the facts, however, is just not accurate. And you have relied upon slanted and inaccurate interpretations of what happened to reach a totally unjustified conclusion. Your conclusion that this firm served as 'public relations counsel, publicity agent and information-service employee" for the Ministry of Justice in Ukraine is indefensible on both the facts and the law.

To repeat, it seems to us, reading your letter of September 5, 2013, that the critical issue for the Department is the firm's conduct relating to the release of the report. We think that a fair and accurate review of the record, however, will establish that the firm did not cross the line and engage in "political activity" as defined in FARA, and that your portrayal of the facts is simply incorrect.

In your September 5, 2013 letter, you use inaccurate language to describe what we did. It gives an utterly false impression of what actually happened. You wrote:

> "You indicate that your firm was paid by the Ukraine to produce an independent report on the Tymoshenko prosecution, and *that the report was disseminated to news media by your firm."* (Emphasis added.)

The word "disseminate" means "to spread abroad;" "to disperse throughout;" "to spread widely." We did no such thing, and, in our communications with you, we did not "indicate" that the firm "disseminated" the report to news media. We did not use the word "disseminate."

Your question to us was "To whom, if anyone, did your firm release or distribute the report and when." In our answer, we told you that the firm provided a copy of the report to a reporter from the New York Times, the National Law Journal and the Los Angeles Times. Ukrainian authorities had released the report to the general public much earlier in that day, but these three media outlets – for some reason -- had not been able to obtain copies of the report. They approached the firm, asked us if we could provide them with a copy, and we did so. With respect, that limited and utterly neutral action does not make the law firm a "public relations counsel, publicity agent and information-service employee" for Ukraine.

Confidential Treatment Subject to Rule 6(e)

You also wrote:

> "We have determined that your actions in *contacting the media* were actions *meant to influence the U.S. public with reference to the political or public interests, policies or relations of Ukraine."* (Emphasis added.)

To our knowledge, no one in this law firm initiated any contacts with the media, and it is simply wrong to say that Skadden took "actions [to] contact the media." Quite to the contrary, the law firm avoided contacts with the media. The law firm did not accept invitations from the media to appear or to be interviewed. The law firm declined the opportunity to communicate with journalists on background. The law firm declined to discuss the report with government officials — from either the legislative or the executive branch — or with experts from think tanks.

As Mr. Craig told you in his letter of June 3, 2013, he did communicate briefly with two print-media journalists. Even with them, however, he took no action to contact them. They initiated the contact.

As to the substance and the reason for his communications with these two journalists, his contact with them was to defend the law firm and to correct misinformation. A fair-minded review of the record will establish that there is absolutely nothing to be found in Mr. Craig's statements to suggest that he intended "to influence the U.S. public with reference to the political or public interest, policies or relations of Ukraine." There is no evidence to support such a conclusion.

*The New York Times*

There is nothing in this article to suggest that Skadden –as the report was released to the public – did anything or said anything intended to influence the U.S. public in its attitudes towards the Government of Ukraine. It bears noting that the New York Times article was sharply critical of Ukraine, *e.g.*, the headline for the story was "Failings Found in Trial of Ukrainian ex-Premier."[1] To be sure, there are references to Mr. Craig and to his participation in the project and there are many quotations *from the report.*

Mr. Craig is quoted once very briefly:

---

[1]  The article characterized the results of the Skadden report as follows:

- "Tymoshekenko was denied legal counsel at critical stages of her trial . . .
- "[Tymonskenko's] lawyers were wrongly barred from calling relevant witnesses . . ."
- "Tymoshenko's ability to present a defense in her trial appears to have been compromised to a degree that is troubling under Western standards of due process and the rule of law."

2

> "We leave to others whether this prosecution was politically motivated. Our assignment was to look at the evidence in the record and determine whether the trial was fair."

To find in that statement evidence of an intention to influence U.S. public opinion toward Ukraine is a stretch. The purpose of Mr. Craig's statement was to defend the law firm's neutrality and independence and to clarify its assignment. There is nothing about Ukraine.

*The National Law Journal*

Without having access to the report or reading it, the National Law Journal published a totally erroneous article about what Skadden had done. When the National Law Journal reporter asked us for a copy of the report, the law firm provided him a copy and urged him to make a correction. He agreed to so, and the fact that he made such a correction appears in the sub-heading of the article.

Mr. Craig's statement to the reporter was very brief, intended to clarify — in the most general language possible — what the report had concluded:

> "As we say in the report, with regard to some of Tymoshenko's claims, we found very serious problems in the conduct of her trial. With regard to other claims, we found insufficient evidence in the record to support the objections."

This neutral and totally accurate description of the report is unremarkable. In the context of an article whose entire theme is captured with its headline, "Former Ukrainian leader's trial was flawed, Skadden says," it is unfair to conclude that, in correcting this journalist's initial erroneous report, Skadden intended to influence the American public's opinion toward Ukraine.

Finally, it is worth pointing out that Skadden affirmatively disclosed and made no effort to conceal the fact that it was being paid by Ukraine to conduct this investigation and write this report. That fact was and is well known to the public.

We respectfully request an opportunity to review your recommendation with the Attorney General of the United States.

Very truly yours,


Larry Spiegel


Gregory B. Craig

3

SAU 201124

# EXHIBIT D

| Library | Activity Date | Activity Time | Activity | Document Number | Version | Document Name | Client | Matter | Client Name | Matter Name | Author | Typist | application |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WASSR01A | 9/20/2013 | 5:11 PM | Create | 1265005 | 1 | gbc 2 draft fara letter | 999990 | 999 | Unassigned | Unassigned | Craig, Gregory B | GCRAIG | MS WORD |
| WASSR01A | 9/20/2013 | 5:11 PM | Check Out | 1265005 | | gbc 2 draft fara letter | 999990 | 999 | Unassigned | Unassigned | Craig, Gregory B | GCRAIG | MS WORD |
| WASSR01A | 9/20/2013 | 5:11 PM | Edit | 1265005 | 1 | gbc 2 draft fara letter | 999990 | 999 | Unassigned | Unassigned | Craig, Gregory B | GCRAIG | MS WORD |
| WASSR01A | 9/20/2013 | 5:11 PM | Check In | 1265005 | | gbc 2 draft fara letter | 999990 | 999 | Unassigned | Unassigned | Craig, Gregory B | GCRAIG | MS WORD |
| WASSR01A | 9/20/2013 | 5:11 PM | Email Document | 1265005 | 1 | gbc 2 draft fara letter | 999990 | 999 | Unassigned | Unassigned | Craig, Gregory B | GCRAIG | MS WORD |
| WASSR01A | 9/20/2013 | 5:11 PM | Access | 1265005 | 1 | gbc 2 draft fara letter | 999990 | 999 | Unassigned | Unassigned | Craig, Gregory B | GCRAIG | MS WORD |
| WASSR01A | 9/24/2013 | 1:30 PM | Check Out | 1265005 | | gbc 2 draft fara letter | 999990 | 999 | Unassigned | Unassigned | Craig, Gregory B | GCRAIG | MS WORD |
| WASSR01A | 9/24/2013 | 1:30 PM | Access | 1265005 | 1 | gbc 2 draft fara letter | 999990 | 999 | Unassigned | Unassigned | Craig, Gregory B | GCRAIG | MS WORD |
| WASSR01A | 9/24/2013 | 1:59 PM | Edit | 1265005 | 1 | gbc 2 draft fara letter | 999990 | 999 | Unassigned | Unassigned | Craig, Gregory B | GCRAIG | MS WORD |
| WASSR01A | 9/24/2013 | 1:59 PM | Check In | 1265005 | | gbc 2 draft fara letter | 999990 | 999 | Unassigned | Unassigned | Craig, Gregory B | GCRAIG | MS WORD |
| WASSR01A | 9/24/2013 | 2:32 PM | Check Out | 1265005 | | gbc 2 draft fara letter | 999990 | 999 | Unassigned | Unassigned | Craig, Gregory B | GCRAIG | MS WORD |
| WASSR01A | 9/24/2013 | 2:32 PM | Access | 1265005 | 1 | gbc 2 draft fara letter | 999990 | 999 | Unassigned | Unassigned | Craig, Gregory B | GCRAIG | MS WORD |
| WASSR01A | 9/24/2013 | 2:38 PM | Edit | 1265005 | 1 | gbc 2 draft fara letter | 999990 | 999 | Unassigned | Unassigned | Craig, Gregory B | GCRAIG | MS WORD |
| WASSR01A | 9/24/2013 | 2:38 PM | Check In | 1265005 | | gbc 2 draft fara letter | 999990 | 999 | Unassigned | Unassigned | Craig, Gregory B | GCRAIG | MS WORD |
| WASSR01A | 9/26/2013 | 6:19 PM | Check Out | 1265005 | | gbc 2 draft fara letter | 999990 | 999 | Unassigned | Unassigned | Craig, Gregory B | GCRAIG | MS WORD |
| WASSR01A | 9/26/2013 | 6:19 PM | Access | 1265005 | 1 | gbc 2 draft fara letter | 999990 | 999 | Unassigned | Unassigned | Craig, Gregory B | GCRAIG | MS WORD |
| WASSR01A | 9/26/2013 | 6:19 PM | Check In | 1265005 | | gbc 2 draft fara letter | 999990 | 999 | Unassigned | Unassigned | Craig, Gregory B | GCRAIG | MS WORD |
| WASSR01A | 10/4/2013 | 8:48 PM | Check Out | 1265005 | | gbc 2 draft fara letter | 999990 | 999 | Unassigned | Unassigned | Craig, Gregory B | GCRAIG | MS WORD |
| WASSR01A | 10/4/2013 | 8:48 PM | Access | 1265005 | 1 | gbc 2 draft fara letter | 999990 | 999 | Unassigned | Unassigned | Craig, Gregory B | GCRAIG | MS WORD |
| WASSR01A | 10/4/2013 | 9:03 PM | Check In | 1265005 | | gbc 2 draft fara letter | 999990 | 999 | Unassigned | Unassigned | Craig, Gregory B | GCRAIG | MS WORD |
| WASSR01A | 10/4/2013 | 9:32 PM | Check Out | 1265005 | | gbc 2 draft fara letter | 999990 | 999 | Unassigned | Unassigned | Craig, Gregory B | GCRAIG | MS WORD |
| WASSR01A | 10/4/2013 | 9:32 PM | Access | 1265005 | 1 | gbc 2 draft fara letter | 999990 | 999 | Unassigned | Unassigned | Craig, Gregory B | GCRAIG | MS WORD |
| WASSR01A | 10/9/2013 | 2:36 PM | Access | 1265005 | 1 | gbc 2 draft fara letter | 999990 | 999 | Unassigned | Unassigned | Craig, Gregory B | GCRAIG | MS WORD |
| WASSR01A | 10/9/2013 | 5:15 PM | Check In | 1265005 | | gbc 2 draft fara letter | 999990 | 999 | Unassigned | Unassigned | Craig, Gregory B | GCRAIG | MS WORD |

# Redacted



GRAND JURY
EXHIBIT

Confide   Treatment Subject to Rule 6(e)

S    37138

# EXHIBIT E

From: Gross, Kenneth A (WAS) [Kenneth.Gross@skadden.com]
Sent: Thursday, October 10, 2013 11:45 PM
To: Craig, Gregory B (WAS); Spiegel, Lawrence S (NYC)
Subject: RE: One page FARA letter

This looks good. What do you think about adding a sentence to the second paragraph saying? "Otherwise, the firm provided no copies of the report to any media."

From: Craig, Gregory B (WAS)
Sent: Thursday, October 10, 2013 6:24 PM
To: Spiegel, Lawrence S (NYC); Gross, Kenneth A (WAS)
Subject: One page FARA letter

is this okay?
Gregory B. Craig
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W. | Washington | D.C. | 20005-2111
T: 202.371.7400 | F: 202.661.9100
gregory.craig@skadden.com



GRAND JURY EXHIBIT KG - 02

GBC 001

Ms. Helen Hunt, Chief
Registration Unit, Counterespionage Section
National Security Division
United States Department of Justice
Washington, DC  20530

Re:          FARA Registration

Dear Ms. Hunt:

In further consideration of the issues raised in your letter of September 5, 2013, I would like to
make you aware of the following additional information:

With respect to this law firm's decision to provide a copy of the Tymoshenko Report ("the
Report") to U.S. media outlets, this was done in response to requests from the media.

With respect to statements appearing in the *National Law Journal* and the *New York Times*, those
statements were intended to correct mischaracterizations of the Report which were attributable to
·Ukraine.

The *Los Angeles Times* reported, for example:  "The Ukrainian Ministry of Justice praised the
report in a public statement . . . trumpeting that it found Tymoshenko's claims of political
persecution 'groundless.'"  That characterization of the Report is – and was – inaccurate.  The
firm's response was aimed at correcting this mischaracterization.[1]

In its initial online coverage of the Report, the *National Law Journal* said: "[T]he trial was not
politically motivated, and the problems weren't enough to undermine her conviction, the team
said."  That characterization of the Report is – and was – inaccurate.  The firm's response was
aimed at correcting this mischaracterization.[2]

In responding to inaccuracies in U.S. news reports – some of which were directly attributable to
Ukraine – the law firm did not consult with Ukraine, did not inform Ukraine, did not act under
instruction from Ukraine and was in no way serving as an agent for Ukraine.

Very truly yours,

Gregory B. Craig

---

[1]   "Mr. Craig . . . said his team was not able to judge the local politics that brought Ms. Tymoshenko to trial on
      charges of abusing her authority . . .  'We leave to others the question of whether this prosecution was politically
      motived,' he said. 'Our assignment was to look at the evidence in the record and determine whether the trial was
      fair.'"  *New York Times*, December 12, 2012.

[2]   "As we say in the report, with regard to some of Tymoshenko's claims, we found very serious problems in the
      conduct of her trial," Skadden partner Gregory Craig, one of the lead attorneys on the team, said. With regard to
      other claims, we found insufficient evidence in the record to support the objection."  *National Law Journal*,
      December 13, 2012.

**GBC 002**

# EXHIBIT F



23

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 NEW YORK AVENUE, N.W.
WASHINGTON, D.C.  20005-2111

TEL: (202) 371-7000
FAX: (202) 393-5760
www.skadden.com

DIRECT DIAL
202-371-7400
DIRECT FAX
202-661-9100
EMAIL ADDRESS
GCRAIG@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

October 10, 2013

Ms. Helen Hunt, Chief
Registration Unit, Counterespionage Section
National Security Division
United States Department of Justice
Washington, DC 20530

Re:       FARA Registration

Dear Ms. Hunt:

In further consideration of the issues raised in your letter of September 5, 2013, I would like to make you aware of the following additional information:

As reported in earlier correspondence, this law firm provided a copy of the Tymoshenko Report ("the Report") to certain U.S. media outlets. This was done in response to requests from the media. The firm did not provide copies of the Report to any other media outlets in the United States.

With respect to statements appearing in the *National Law Journal* and the *New York Times*, those statements were intended to correct mischaracterizations of the Report, some of which were attributable to Ukraine.

The *Los Angeles Times* reported, for example: "The Ukrainian Ministry of Justice praised the report in a public statement . . . trumpeting that it found Tymoshenko's claims of political persecution 'groundless.'" That characterization of the Report is   and was – inaccurate. The firm's response was aimed at correcting this mischaracterization.[1]

---

[1]  "Mr. Craig . . . said his team was not able to judge the local politics that brought Ms. Tymoshenko to trial on charges of abusing her authority . . . 'We leave to others the question of whether this prosecution was politically motived,' he said. 'Our assignment was to look at the evidence in the record and determine whether the trial was fair.'" *New York Times*, December 12, 2012.

In its initial online coverage of the Report, the *National Law Journal* said: "[T]he trial was not politically motivated, and the problems weren't enough to undermine her conviction, the team said." That characterization of the Report is – and was – inaccurate. The firm's response was aimed at correcting this mischaracterization.[2]

In responding to inaccuracies in U.S. news reports – some of which were directly attributable to Ukraine – the law firm did not consult with Ukraine, did not inform Ukraine, did not act under instruction from Ukraine and was in no way serving as an agent for Ukraine.

Very truly yours,

Gregory B. Craig

---

[2]   "As we say in the report, with regard to some of Tymoshenko's claims, we found very serious problems in the conduct of her trial," Skadden partner Gregory Craig, one of the lead attorneys on the team, said. With regard to other claims, we found insufficient evidence in the record to support the objection." *National Law Journal*, December 13, 2012.

2

# EXHIBIT G





**U.S. Department of Justice**

National Security Division

_Washington, DC 20530_

JAN 16 2014

Gregory B. Craig, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC 20005-2111

     Re:   Possible Obligation to Register Pursuant to the
            Foreign Agents Registration Act

Dear Mr. Craig:

     This is in reference to our meeting on October 9, 2013, and your letter of October 10, 2013, regarding your firm's possible obligation to register for the Ukrainian Ministry of Justice under the Foreign Agents Registration Act of 1938, as amended, 22 U.S.C. § 611 _et seq._ (FARA).   Present at the meeting were Ken Gross and Robert Spiegel of your firm and several members of my staff.

     You explained during the meeting and in your recent letter that your firm prepared the Tymoshenko Report for the Ukrainian Ministry of Justice and you indicated that your comments to the _National Law Journal, Los Angeles Times,_ and the _New York Times_ were not political activities, but were meant to correct mischaracterizations of the Report attributable to the Ukrainian Ministry of Justice and Tymoshenko's Ukrainian lawyers concerning whether the Tymoshenko prosecution was a political prosecution.  You informed the media of the inaccuracy indicating that the Report did not decide this issue.

     You conclude that your firm in response to U.S. news inquiries did not act as an agent of the Ukraine.  We agree and find based upon the information you brought to our attention that your firm has no present obligation to register under FARA.

     If you have any questions about this matter, please call me at (202) 233-0776.

                        Sincerely,

                        Heather H. Hunt, Chief
                        Registration Unit
                        Counterespionage Section
                        National Security Division

Confidential Treatment Subject to Rule 6(e)