**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | **CRIMINAL NO. 19-CR-00125 (ABJ)** |
| **v.** : | |
| : | |
| **GREGORY B. CRAIG** : | |
| : | |
| **Defendant.** : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**MOTION TO STRIKE PARAGRAPH 65 OF THE INDICTMENT**

The United States of America opposes Defendant's motion to strike paragraph 65 of the indictment (ECF No. 21). Despite knowing that the Court will not share the indictment with the jury (Def.'s Mot. at 2 n.1), Defendant nevertheless argues that paragraph 65 should be stricken as irrelevant and prejudicial. To the contrary, Defendant's false and misleading statements to the Special Counsel's Office in 2017, as detailed in paragraph 65 and in the government's bill of particulars (ECF No. 31), are relevant because they corroborate the evidence of Defendant's prior false and misleading statements. Moreover, they also help to prove the absence of a mistake or accident when Defendant made the false and misleading statements to the FARA Unit. In addition, the allegations at issue are not inflammatory or unduly prejudicial. For these reasons, Defendant cannot satisfy the exacting standard required under Rule 7(d) of the Federal Rules of Criminal Procedure to strike paragraph 65, and the Court should deny the motion.

**A. Legal Standard for a Motion to Strike Under Rule 7(d)**

"Motions to strike surplusage from an indictment are highly disfavored in this Circuit." *United States v. Watt*, 911 F. Supp. 538, 554 (D.D.C. 1995). "The scope of a district court's discretion to strike material from an indictment is narrow." *United States v. Oakar*, 111 F.3d 146, 157 (D.C. Cir. 1997) (reversing district court's decision to strike allegations from indictment)

(citations omitted).  A motion to strike surplusage "'should be granted *only* if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial.'"  *United States v. Rezaq*, 134 F.3d 1121, 1134 (D.C. Cir. 1998) (*quoting* 1 Charles Alan Wright, *Federal Practice and Procedure* § 127, at 426 (1982)) (emphasis added).

"The standard under Rule 7(d) has been strictly construed against striking surplusage." *United States v. Jordan*, 626 F.2d 928, 931 n.1 (D.C. Cir. 1980).  As Defendant acknowledges in his motion, the standard to strike an allegation in the indictment is an "exacting" standard.  Def.'s Mot. at 4.  "'[O]nly rarely has surplusage been ordered stricken.'" *Watt*, 911 F. Supp. at 554 (*quoting* Wright, *supra*, § 127).  Moreover, "[I]f the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant)." *United States v. Thomas*, 875 F.2d 559, 562 n.2 (6th Cir. 1989) (internal citation omitted).

### B.  Factual Background[1]

Count One of the indictment charges that from June 3, 2013, to January 16, 2014, Defendant "did unlawfully, knowingly and willfully falsify, conceal and cover up by trick, scheme and device material facts in a matter within the jurisdiction of the FARA Unit, a section of the National Security Division of the Department of Justice, an agency of the executive branch of the government of the United States," in violation of 18 U.S.C. § 1001(a)(1).  Indictment ¶ 48.

---

[1]   The government's Opposition to Defendant's Motion for a Bill of Particulars (ECF No. 24), as well as the Response in Opposition to Defendant's Motion to Dismiss Count One, also filed on this date (ECF No. 32), recount in some detail Defendant's conduct on behalf of Ukraine in 2012 and his extended correspondence with the FARA Unit throughout 2013.  These factual recitations are incorporated herein by reference.

Defendant did this by withholding information from others at Skadden, by drafting false and misleading descriptions of his media contacts within Skadden and to the FARA Unit, and by omitting material facts regarding his contacts with Sanger and Herszenhorn in his communications with the FARA Unit.  *Id.* ¶ 50.  The indictment then details Defendant's continuous and consistent false and misleading statements throughout the scheme, first to the FARA Unit in his June 2, 2013 letter (¶ 56), within Skadden in September 2013 (¶¶ 59, 60), during the FARA Unit meeting on October 9, 2013 (¶ 61); and in Defendant's October 11, 2013 letter to the FARA Unit (¶ 62).  The indictment describes the material information that Defendant intentionally concealed throughout his communications in response to the FARA Unit's inquiries—all focused on information responsive to the FARA Unit's questions regarding Defendant's knowledge of Ukraine's plans for the Report, his distribution of the Report, and his contacts with the media regarding it.  *Id.* ¶ 63.  Finally, paragraph 65 of count one alleges that:

> On or about October 19, 2017, during an interview conducted by the Special Counsel's Office, CRAIG repeated certain of the false and misleading statements he had made to the FARA Unit concerning the timing and nature of his contacts with journalists about the Report.

In addition, as specified in its Bill of Particulars (ECF No. 31 at 7), the government alleges that Defendant made the following false and misleading statements to the Special Counsel's Office in 2017 that he had previously made to the FARA Unit during 2013 while executing the false statement scheme identified and detailed in count one:

- That Defendant spoke with journalists solely for the purpose of correcting their inaccurate reporting of the findings in the Report.

- That Defendant's contacts with the media were not on Ukraine's behalf.

- That Defendant did not have any knowledge or insight about how Ukraine would release or "roll out" the Report.

### C. Argument

The defendant has not and cannot meet his burden of demonstrating that paragraph 65 of the indictment is irrelevant, prejudicial, and inflammatory. This paragraph is probative of Defendant's false and misleading statements as alleged in count one of the indictment. Although styled as a motion to strike, Defendant's motion appears to be an improper attempt, *in limine*, to exclude relevant evidence from trial that will help to establish his false and misleading statements to the FARA Unit in 2013. *See, e.g.,* Def.'s Mot. at 2 n.1 ("Because this allegation might affect the evidence to be offered in this case . . . striking this extraneous allegation may also result in reducing the number of witnesses who are called to support (and refute) the allegations included in paragraph 65."). The Court should decline Defendant's request to rule on the admissibility of evidence at trial through a motion to strike, and deny Defendant's motion.

#### 1. Paragraph 65 is Relevant to Defendant's False Statement Scheme

Defendant's complaints about paragraph 65 focus on the fact that Defendant's false and misleading statements to the Special Counsel's Office took place in 2017, while the false statement scheme alleged in count one covers a period between 2013 and 2014. There is no dispute about the timeframe of the false and misleading statements in count one and, contrary to Defendant's speculation (Def.'s Mot at 5), the government is not attempting to extend the duration of the false statement scheme as pled in count one of the indictment.

Simply put, Defendant's false and misleading statements to the Special Counsel's Office in 2017, as detailed in paragraph 65 and in the government's bill of particulars (ECF No. 31), are

relevant because they corroborate the evidence of Defendant's prior false and misleading statements to the FARA Unit in 2013. For example, the 2017 statements can help to corroborate the testimony of the witnesses who attended the October 9, 2013, meeting as to what Defendant said at that meeting—testimony that Defendant is already challenging (*see, e.g.*, Def.'s Mot. at 7; *see also*, Defendant's Motion for Bill of Particulars, ECF No. 17 at 9-10). Similarly, evidence of Defendant's 2017 statements can help to corroborate and/or provide additional context to the documentary evidence regarding Defendant's false and misleading statements in 2013. *See, e.g.*, ECF No. 31, Exhibits A through G. In addition, the fact that Defendant repeated the same false and misleading statements years later in 2017 can help the government establish the absence of a mistake, accident, or misunderstanding, when Defendant made the same statements to the FARA Unit in 2013. It bears noting that, as explained in the government's Bill of Particulars (ECF No. 31 at 4), in a subsequent interview with the Special Counsel's Office, Defendant has admitted that a number of his prior statements were not "accurate"—helping the government to establish that Defendant's statements in 2013 were in fact false and misleading.

### 2. Paragraph 65 is Not Inflammatory or Unduly Prejudicial

Paragraph 65, which simply states that Defendant repeated in 2017 certain of the false and misleading statements he had previously made to the FARA Unit in 2013, cannot be considered unduly prejudicial—much less inflammatory under Rule 7(d). While Defendant has creatively asserted four reasons that he claims support a finding of undue prejudice, these arguments do not withstand scrutiny. The government will briefly address each argument in turn.

Defendant claims that paragraph 65 is "fatally non-specific," and then refers the Court to his Motion for a Bill of Particulars. Def.'s Mot at 6. While the government disagrees with this

characterization (*see* Government's Opposition to Defendant's Motion for Bill of Particulars, ECF No. 24), the Court ultimately ordered the government to provide additional details regarding the allegations in paragraph 65, and the government has now filed a Bill of Particulars (ECF No. 31) with regards to paragraph 65.  Therefore, Defendant can no longer assert that he is unduly prejudiced by any alleged vagueness in paragraph 65.

Next, Defendant confusingly argues—without any basis—that paragraph 65 cannot extend the statute of limitations for the false statement scheme alleged in count one of the indictment. However, the government has not attempted to extend any statute of limitations and, as explained previously, paragraph 65 is relevant to this case for other reasons.[2]   Therefore, this argument does not provide a basis to conclude that paragraph 65 is inflammatory or prejudicial to the Defendant.

Defendant next argues that "paragraph 65 makes the prosecutors or agents assigned to the SCO likely witnesses" (Def.'s Mot. at 8-9), and then inexplicably jumps to the conclusion that the testimony of such prosecutors might be necessary at trial—which Defendant claims would be prejudicial to him.  First, to be clear, should the government elicit evidence at trial in support of paragraph 65, it would do so through an FBI agent that was present at the interview—not through a prosecutor.  Second, and as Defendant well knows, in every case where a prosecutor attends an

---

[2]   Defendant insinuates that the government included his statements to the Special Counsel's Office in paragraph 65 to address a statute of limitations problem with his false and misleading statements and material omissions to the FARA Unit in 2013.  Not so.  First, the indictment is clear that the false statement scheme pled spanned the period of June 3, 2013 to January 16, 2014. Indictment ¶ 48.  Second, there is no need to plead the statements in 2017 to avoid a statute of limitations issue because, as detailed in the government's opposition to Defendant's motion to dismiss count one (ECF No. 32 at 27-31), the law is clear that as long as one act in furtherance of the scheme offense occurs within the limitations period, the false statement scheme charge is timely.

interview, the prosecutor is at least a potential "witness" regarding that interview. However, that does not mean that the prosecutor is a trial witness. Indeed, Defendant's argument proves too much. To the contrary, an agent is always present for witness interviews precisely so that, if testimony is necessary, that agent can serve as the witness of what transpired at the interview. There is nothing unusual about how Defendant's voluntary interview with the Special Counsel's Office was conducted, and this argument fails to establish any credible basis for any prejudice as to Defendant regarding paragraph 65.

Finally, Defendant argues that the stipulation between the parties regarding the scope of Mr. Spiegel's testimony might be "jeopardized" if the government presents evidence of Defendant's statements to the Special Counsel's Office. Def.'s Mot. at 9-10. Of course, that is not a basis to strike an allegation under Rule 7(d), and it demonstrates that Defendant's objective with this motion is to prevent the government from introducing relevant evidence at trial—not to strike alleged "surplusage." Moreover, Defendant's assertion that the stipulation between the parties would be in "jeopardy" by introducing evidence of his statements to the Special Counsel's Office is incorrect. The government invites the Court to review the stipulation (ECF No. 16-1), which has nothing to do with Defendant's statements. Instead, the stipulation outlines, among other things, that the government will not ask Mr. Spiegel about his conversations with Defendant after January 16, 2014. If Defendant believes that he needs to call Mr. Spiegel as a witness regarding the meeting with the Special Counsel's Office, in rebuttal to any testimony by the FBI agent about Defendant's statements, he is free to do so without violating the stipulation.[3] There

---

[3] Although Defendant claims that "one of Skadden's attorneys representing Mr. Craig during the interview prepared a more comprehensive memorandum" of the interview (Def.'s Mot at 9

is absolutely no basis to conclude that the jury would be "confused" by Spiegel's role should he be needed to testify about his recollection of Defendant's interview with the Special Counsel's Office in October 2017. In short, there is no prejudice to the Defendant and no basis to strike paragraph 65.

### D. Conclusion

Because the allegations in paragraph 65 are relevant and not prejudicial, and therefore Defendant cannot satisfy his exacting burden under Rule 7(d), the Court should deny Defendant's motion to strike.

                      Respectfully submitted,

                      JESSIE K. LIU
                      UNITED STATES ATTORNEY
                      D.C. Bar Number 472845

By:   /s/ Fernando Campoamor Sánchez
       FERNANDO CAMPOAMOR-SANCHEZ (DC 451210)
       MOLLY GASTON (VA 78506)
       Assistant United States Attorneys
       United States Attorney's Office
       555 Fourth Street, N.W.
       Washington, D.C.  20530
       Telephone: 202-252-7698/202-252-7803
       Fernando.Campoamor-Sanchez@usdoj.gov
       Molly.Gaston@usdoj.gov

---

n.5)—which has not been provided to the government—Defendant does not claim that it was Spiegel who prepared that memorandum or even that Spiegel took any notes at all. Presumably, to challenge the agent's potential testimony, the lawyer who took the notes would be the best witness to testify about Defendant's statement at the meeting.

JOHN C. DEMERS
ASSISTANT ATTORNEY GENERAL


By:   /s/ Jason B.A. McCullough
     JASON B.A. MCCULLOUGH (DC 998006; NY 4544953)
     Trial Attorney
     Department of Justice
     National Security Division
     950 Pennsylvania Ave NW
     Washington, D.C.  20530
     Telephone: 202-616-1051
     Jason.McCullough@usdoj.gov

Dated:   May 31, 2019

**Certificate of Service**

      I certify that, by virtue of the Court's ECF system, a copy of the foregoing Opposition to Defendant's Motion to Strike Paragraph 65 has been sent to counsel for the Defendant on May 31, 2019.

                                   /s/ Fernando Campoamor-Sánchez
                                   Fernando Campoamor-Sánchez
                                   Assistant United States Attorney