UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:19-CR-00125 (ABJ) |
| GREGORY B CRAIG, | |
| Defendant. | |

**GOVERNMENT'S REPLY AND RESPONSE IN OPPOSITION TO DEFENDANT'S RESPONSE AND MOTION *IN LIMINE* TO EXCLUDE GOVERNMENT'S PROPOSED 404(b) EVIDENCE**

Defendant Gregory B. Craig's response and motion *in limine* to exclude the government's proposed evidence under Federal Rule of Evidence 404(b) argues at length that Defendant "crossed no lines" when he performed a favor for his client, Paul Manafort, Jr., by advocating that Defendant's law firm hire Manafort's daughter. The government agrees and never suggested otherwise. The proposed evidence is thus not unfairly inflammatory to Defendant. At the same time, the evidence is probative of Defendant's intent and motive, at Manafort's request, to act in furtherance of Ukraine's media plan regarding the release of Defendant's Tymoshenko Report (the Report) in 2012, as well as Defendant's motive when making false statements and concealing information about those very actions when questioned by the Department of Justice in 2013. Accordingly, under the balancing test set forth in Federal Rule of Evidence 403, the evidence should be admitted.

**I.      Background**

Consistent with the Court's scheduling order, on May 10, 2019, the government filed notice of its intent to introduce evidence pursuant to Federal Rule of Evidence 404(b). *See* Government's

Notice, ECF No. 22.  In particular, the government stated that it planned to admit evidence of Defendant's successful efforts to advocate that his law firm, Skadden, Arps, Meagher, Slate & Flom LLP (Skadden), hire the daughter of Defendant's client, Paul Manafort, Jr.  *Id*. at 2.  The notice explained that this evidence is probative of Defendant's motive and intent to curry favor with Manafort in 2012 when Defendant, at Manafort's request, took specific steps to distribute the Report and discuss it with reporters.  *Id*. at 4.  For these acts, Defendant should have registered as an agent under FARA, but did not.  *Id*.  The government's notice further stated that its proposed "other acts" evidence is probative of Defendant's motive in 2013, when he made false and misleading statements and material omissions about his 2012 activities to the Department of Justice, National Security Division's Foreign Agents Registration Act Unit (FARA Unit) in order to avoid registering as an agent of Ukraine.  *Id*. at 4-5.

Defendant responded on May 17, 2019, with a lengthy motion *in limine* that described in detail the circumstances under which Defendant assisted Manafort's daughter.  *See* Defendant's Motion, ECF No. 27.  This recitation confirmed the pertinent facts that are relevant and probative in the instant case, including that: (1) when Manafort's daughter was denied an interview at Skadden, Manafort angrily reported it to Defendant and linked the incident to Manafort's business with the firm (Defendant's Motion at 3 and Ex. 4); (2) Defendant relayed this to others at the firm, stating that it could adversely affect business with Manafort (Defendant's Motion at 3 and Ex. 5); and (3) Defendant ultimately drafted a memorandum in support of hiring Manafort's daughter, and cited potential future business with Manafort as a significant reason to do so (Defendant's Motion at 5-6 and Ex. 15-16).

**II.     Argument**

The government's proposed "other acts" evidence is relevant to and probative of important issues of intent and motive, but not of character, that will be in dispute at trial. *See United States v. Cassell*, 292 F.3d 788, 795 (D.C. Cir. 2002) (under Rule 404(b), "any purpose for which bad acts evidence is introduced is a proper purpose so long as the evidence is not offered solely to prove character.") (internal quotations omitted); *United States v. Bowie*, 232 F.3d 293, 929 (D.C. Cir. 2000) (Rule 404(b) is a rule of "inclusion rather than exclusion"). At the same time, the evidence's probative value far exceeds any danger of unfair prejudice, confusion, or delay. *See United States v. Pettiford*, 517 F.3d 584, 590 ("Rule 403 'does not bar powerful, or even 'prejudicial evidence. Instead, the Rule focuses on the 'danger of *unfair* prejudice,' and gives the court discretion to exclude evidence only if that danger '*substantially* outweigh[s]' the evidence's probative value.") (*citing United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998) (emphasis in original). The evidence should thus be admitted.

   a.   <u>**The evidence is relevant and probative other than to establish propensity.**</u>

Defendant's argument that the government's proposed 404(b) evidence is not relevant misstates the government's burden in proving relevance of "other acts" evidence and mischaracterizes the government's arguments. First, Defendant's argument (at 8) that the proposed "other acts" evidence is not relevant is premised on the incorrect contention that the government has to prove that the evidence is directly relevant to the central question before the jury: whether Defendant made material misrepresentations and omissions to the FARA Unit in 2013. But this is not so—evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. The government is entitled to introduce pieces of relevant evidence

3

as building blocks in its case, and to ask the jury to draw reasonable inferences from them. The government's proposed "other acts" evidence is relevant because it has a tendency to make the government's claims about Defendant's motive and intent when undertaking media contacts in December 2012 regarding the Report more probable than it would be without the evidence

Defendant's intent and motive to reach out to the *New York Times* on December 11-12, 2012, is central to the dispute in this case. *See, e.g.*, Defendant's Motion at 13 (stating that "it is not true" that Defendant spoke to reporters at the *New York Times* on December 12, 2012[1], because Manafort wanted him to). Accordingly, evidence of his intent and motive to do so is particularly relevant. The government's argument is not, as Defendant claims, that "one who does a benign and lawful favor for another betrays a willingness to commit a crime to benefit the other." Defendant's Motion in Limine at 9. Rather, the government's argument is that Defendant's agreement to assist Manafort with respect to his daughter (as well as Manafort's pressure on Defendant to do so) is probative of Defendant's intent and motive another context in which Manafort pressured Defendant and Defendant agreed: when Manafort asked Defendant to do media outreach regarding the Report in December 2012. The evidence shows that Defendant went to considerable lengths to assist Manafort's daughter—and stated explicitly within Skadden that he was motivated to do so by the potential for future lucrative business with Manafort. While evidence proffered to show intent must "meet a threshold level of similarity" it does not require "exact congruence." *United States v. Long*, 328 F.3d 655, 661 (D.C. Cir. 2003). Here, there is a

---

[1]  Notably, Defendant reached out to and spoke to David Sanger of the *New York Times* on December 11, 2012 (and hand-delivered a copy of the report to Sanger's home that night). It is not clear whether Defendant cites the December 12 contact because he is trying to draw some distinction between the motive and intent behind his contacts with *New York Times* on December 11, 2012, versus his motive and intent on December 12, 2012.

threshold level of similarity between Defendant's efforts on behalf of Manafort's daughter, on the one hand, and Defendant's communications with Manafort about contacts with reporters on the other.[2]  In addition, the "other act" the government is seeking to introduce for this purpose need not be bad or criminal; it can be "entirely lawful"—"[w]hat matters is that the evidence be relevant 'to show a pattern of operation that would suggest intent' and that tends to undermine the defendant's innocent explanation." *Id*. (internal citation omitted).  Defendant is wrong when he suggests that the government intends to show that he "crossed *some* line" when he assisted Manafort's daughter.  Defendant's Motion at 9 (emphasis in original).  Rather, Defendant's candid admissions within Skadden about the weight of potential future business from Manafort in the context of hiring Manfort's daughter tend to undermine Defendant's claim that, despite the fact that Manafort asked Defendant to provide the Report to the *New York Times* and speak with its reporter, Defendant then did so not because of that request, but only for his own reasons.

In turn, the evidence is also relevant and probative of Defendant's motive to provide false and misleading statements and omissions to the FARA Unit in 2013.  Defendant misunderstands the government's argument on this point; the government does not contend that in 2013, Manafort directed Defendant to mislead the FARA Unit.  Instead, the evidence at trial will show that Defendant had multiple reasons for wanting not to register as an agent of Ukraine, both personal and professional.  *See e.g.*, Indictment ¶ 8.  These included that doing so would require making public the true source of the funding of the Report, a private Ukrainian citizen who refused to be

---

[2]   For instance, Defendant is expected to argue at trial that after a meeting at the Harvard Club in New York on September 23, 2012, in which he agreed to certain media outreach, Defendant reversed this agreement. *See* Indictment ¶¶ 31-32.  The government will contend that despite this initial stated reversal—which Manafort immediately began to test—Defendant then carried out pieces of Ukraine's media plan.

5

identified (Id ¶¶ 26-27), and that it would undermine the Report's perception as independent, which was important to Defendant personally. Id ¶ 22. But Defendant also realized that the value of the Report to Manafort and Ukraine was its perception as independent (*Id.*), and that registration under FARA would compromise that appearance. Despite this desire not to register, however, Defendant then, at Manafort's request, engaged in registrable activity when he disseminated the Report and spoke to reporters about it. This is why the government's proposed 404(b) evidence is probative of Defendant's motive with the FARA Unit: the FARA Unit's inquiry put Defendant's desire to grant Manafort's request to carry out a portion of Ukraine's media plan (activity that is registrable under FARA) at odds with Defendant's desire not to register under FARA. Accordingly, Defendant's motive to curry favor with Manafort is relevant to Defendant's motive to make false statements and material omissions to the FARA Unit to cover up his media contacts.

      **b.  The evidence is not prejudicial.**

Defendant argues at length in his motion that Defendant's favor for Manafort and his daughter was "unremarkable and benign" and the "type of action that any partner at any law firm might have taken" on behalf of a client. Defendant's Motion at 9. He points out that his efforts to assist Manafort were done openly, in plain view of others at Skadden, and that no one at Skadden raised any concerns. *Id*. And at trial, the government will not state otherwise, because the government is not offering this "other acts" evidence for the improper purpose of suggesting that Defendant had a propensity to lie or do anything illegal. Indeed, Defendant's zealous arguments that there was nothing wrong with his actions on Manafort's daughter's behalf simply prove the government's point that there is no risk of unfair prejudice to the Defendant from the evidence of them. *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C.Cir.1998) (citing Fed.R.Evid. 403) (emphasis added) (Rule 403 balancing test "focuses on the danger of *unfair* prejudice."); *United*

*States v. Ring*, 706 F.3d 460, 472 (D.C. Cir. 2013) ("unfair prejudice [in Rule 403] context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one"). There is no risk that the jury will consider the evidence for an improper purpose, such as character evidence or a propensity for Defendant to lie or break the law, because the evidence does not show any such thing.

Defendant then raises the bogeyman of a distracting "mini-trial" in which he makes the extraordinary claim that he would need to call "six to ten live witnesses" from Skadden to provide the relevant context for his decision to advocate that the firm hire Manafort's daughter. Defendant's Motion at 12. This is claim is meritless. First, Defendant's argument that he will have to put on extensive evidence on the subject is premised on the misconception that the government intends to use the evidence for the improper purpose of smearing him. In addition, the government can introduce evidence of Defendant's favor to Manafort's daughter efficiently through a Skadden witness testifying for other purposes in the government's case in chief, or if Defendant chooses to testify in his own defense. In either event, in a case involving a large amount of documents and issues, a handful of additional emails and Defendant's memoranda will not lead to jury confusion. *See e.g., United States v. Bikundi*, No. 14-CR-030 (BAH), 2015 WL 591481, at \*6 (D.D.C. Oct. 7, 2015) (in Medicaid fraud case, "other crimes" evidence consisting of four additional documents would not cause confusion or prejudicial mini-trial). And while it is not clear under what Federal Rule(s) of Evidence Defendant proposes to call six to ten witnesses on the subject, he cannot threaten to create his own trial-within-a-trial and then use that threat as a basis for excluding discrete, probative, and non-prejudicial "other acts" evidence.

### III.     Conclusion

The government's proposed 404(b) evidence is probative of Defendant's motive and intent for his media contacts in 2012 regarding the Report and his motive to cover up those contacts when communicating with the FARA Unit in 2013.  Furthermore, the evidence is far more probative than unfairly prejudicial, and it should be admitted.

    Respectfully submitted,
    JESSIE K. LIU
    UNITED STATES ATTORNEY
    D.C. Bar Number 472845


By:  /s/ Molly Gaston
FERNANDO CAMPOAMOR-SANCHEZ (DC 451210)
MOLLY GASTON (VA 78506)
Assistant United States Attorneys
United States Attorney's Office
555 Fourth Street, N.W.
Washington, D.C.  20530
Telephone: 202-252-7698/202-252-7803
Fernando.Campoamor-Sanchez@usdoj.gov
Molly.Gaston@usdoj.gov

JOHN C. DEMERS
ASSISTANT ATTORNEY GENERAL


By:  /s/ Jason B.A. McCullough
JASON B.A. MCCULLOUGH (DC 998006; NY 4544953)
Trial Attorney
Department of Justice
National Security Division
950 Pennsylvania Ave NW
Washington, D.C.  20530
Telephone: 202-616-1051
Jason.McCullough@usdoj.gov

Dated:   May 31, 2019

**Certificate of Service**

      I certify that, by virtue of the Court's ECF system, a copy of the foregoing Government's Reply and Response in Opposition to Defendant's Response and Motion in Limine to Exclude Government's Proposed 404(b) Evidence has been sent to counsel for the defendant on May 31, 2019.

      /s/ Molly Gaston
      Molly Gaston
      Assistant United States Attorney