## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| **v.** : | **Case No. 1:19-CR-00125 (ABJ)** |
| : | |
| **GREGORY B. CRAIG,** : | |
| : | |
| **Defendant.** : | |
| : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS COUNT TWO

Defendant Gregory B. Craig has moved to dismiss Count Two of the Indictment, which charges him with violating the false statements provision, 22 U.S.C. § 618(a)(2), of the Foreign Agents Registration Act of 1938 (FARA or the Act), 22 U.S.C. § 611 *et seq.*  He claims that this provision—which, in broad terms, prohibits "any person" from willfully making any false statement or misleading omission of a material fact "in any registration statement or supplement thereto or in any other document filed with or furnished to the Attorney General under the provisions of [FARA]," 22 U.S.C. § 618(a2)—only applies to FARA registrants when they submit documents the Act requires them to file.  He further contends that the statutory interpretation canon of *ejusdem generis* compels this conclusion and that, if there is any ambiguity in the Act's otherwise plain terms, the rule of lenity requires his interpretation of the statute.

Defendant's arguments lack merit.  The language in § 618(a)(2) is broad and clear, and, under longstanding rules of statutory construction, the Court must give its terms their ordinary meanings.  FARA's false statement provision reaches beyond the narrow category of conduct

Defendant asserts.  Instead, its terms apply directly to Defendant and his submission of a false and misleading letter to the FARA Registration Unit (FARA Unit).  As for Defendant's attempt to invoke the canon of *ejusdem generis*, it must fail.  Resort to this canon is inappropriate when statutory language is plain and the context dictates a conclusion different from the one Defendant is advancing.  Nor is the language of § 618(a)(2) amenable to application of the canon.  The canon is only appropriate when the statutory provision consists of a list of specific items separated by commas and then followed by a general term.  That is not the structure of § 618(a)(2).  Last, this is not a case for resorting to the rule of lenity.  There is no ambiguity, let alone a grievous ambiguity, as the case law requires, in the provision.  Moreover, its willfulness requirement gave Defendant more than adequate notice that providing false and misleading information to the FARA Unit was illegal.

For these reasons, and as set forth in more detail below, the Court should deny Defendant's Motion to Dismiss Count Two.

## I.      Introduction

### A.      History and Purpose of FARA and Its False Statement Provision

FARA is a disclosure statute enacted in 1938 that aims "to identify agents of foreign principals who might engage in subversive acts or in spreading foreign propaganda, and to require them to make public record of the nature of their employment."  *Viereck v. United States*, 318 U.S. 236, 241 (1943).  The statute itself explains that it was enacted:

> [T]o protect the national defense, internal security, and foreign relations of the United States by requiring public disclosure by persons engaging in propaganda activities and other activities for or on behalf of foreign governments, foreign political parties, and other foreign principals so that the Government and the people of the United States may be informed of the identity of such persons and may appraise their statements and actions in the light of their associations and activities.

Pub. L. No. 77-532, Policy and Purpose, 56 Stat. 248, 248-49 (1942) (Exhibit 1); *see Meese v. Keene*, 481 U.S. 465, 470 (1987).  FARA requires all persons acting as agents of foreign principals in a political or quasi-political capacity to make public disclosure of their relationship with the foreign principal as well as their political activities on behalf of their foreign principal.  Disclosure of the required information facilitates evaluation by the Government and the American people of the statements and activities of such persons in light of their function as foreign agents.

The statute is administered by the Attorney General.  Congress gave the Attorney General broad latitude to carry out this mandate with the express authority to "make, prescribe, amend, and rescind such rules, regulations, and forms as he may deem necessary to carry out the provisions of [FARA]."  22 U.S.C. § 620.  In addition to criminal penalties provided at Section 618(a)(1)-(2) for willful violations of the Act, FARA provides the Attorney General with the ability to bring a civil action to enjoin persons from acting as agents of a foreign principal or to require compliance with FARA or the regulations promulgated thereunder.  *Id.* § 618(f).  Congress also authorized the Attorney General to disseminate information collected in its administration of FARA to other executive departments and agencies, as well as to Congress.  *Id.* § 616(c) (authorizing the Attorney General to provide Congress with "such information obtained by him in the administration of this subchapter," including any "other documents or information filed under [FARA], as may be appropriate in light of the purposes of [FARA].")

Congress included a false statement provision in FARA.  That provision states:

> Any person who … in any registration or supplement thereto or in any other document filed with or furnished to the Attorney General under the provisions of this Act willfully makes a false statement of a material fact or willfully omits any material fact required to be stated therein or willfully omits a material fact or a copy of a material document necessary to make the statements therein and the copies of documents furnished therewith not misleading, shall, upon conviction thereof, be punished by a fine of not more than $10,000 or by imprisonment for not more than five years, or both ….

3

*Id.* § 618(a)(2).

### B.    Defendant's Conduct

In or about early 2012, in the face of the international criticism regarding the trial of its former prime minister, Yulia Tymoshenko, the Government of Ukraine (Ukraine) engaged Defendant and his law firm (Law Firm) to conduct a purportedly independent inquiry into whether, under Western standards of justice, Tymoshenko had received a fair trial, and to prepare a report based on that inquiry (Report).  Indictment, ECF No. 1, ¶ 7.  Defendant had several meetings and received documents that reflected Ukraine's plan to use the Report as part of a public relations strategy headed by Paul Manafort, an American lobbyist whom Ukraine had hired to, among other things, improve Ukraine's public image in the United States and abroad.  *Id.* ¶¶ 30-33.  Ukraine had hired a public relations firm (PR Firm) Defendant recommended to carry out this campaign. *Id.* ¶ 18.

Defendant recognized the potential application of FARA to the work being conducted on behalf of Ukraine, including its application to the public relations work in promoting the Report. *Id.* ¶¶ 14-15.  However, Defendant did not want to register under FARA.  *Id.* ¶¶ 8, 9, 49. Registration under FARA would have undermined the appearance of the Report's independence and thus eroded its value.  *Id.*  Furthermore, registration under FARA would have forced the Law Firm to publicly reveal that a wealthy private Ukrainian had actually paid for the Report, and Defendant knew that the Ukrainian oligarch was determined to remain anonymous.  *Id.* ¶ 25.

Ukraine publicly released the Report on December 13, 2012.  *Id.* ¶ 43.  Before the public release of the Report, Defendant took a number of actions in accord with the PR Firm's media plan for the rollout of the Report.  *Id.* ¶¶ 36-41.  Among other things, before the public release of the Report and in coordination with the PR Firm, Defendant provided a pre-release interview to journalists at a major U.S. newspaper and a journalist at a major U.K. newspaper.  *Id.*

On December 18, 2012, less than one week later, the FARA Unit sent a letter to Defendant's Law Firm advising that the Law Firm's work on behalf of Ukraine may require it to register as an agent under FARA. *Id.* ¶ 51. The FARA Unit requested information from the Law Firm "in order that [the FARA Unit] may determine whether [the Law Firm was] required to register under FARA." Letter from H. Hunt to E. Yaffa, Dec. 18, 2012 (Exhibit 2). The letter indicated that a copy of the FARA statute was enclosed. Defendant provided a signed letter response on February 6, 2013 (Exhibit 3) and then, in response to additional questions from the FARA Unit (Exhibit 4), provided an additional signed letter on June 3, 2013 (Exhibit 5). These responses contained false and misleading statements.

On September 5, 2013, based in part on Defendant's two signed submissions to the FARA Unit, the FARA Unit issued a letter to Defendant setting forth the FARA Unit's conclusion that Defendant's firm "must register under FARA as an agent of [Ukraine]." Letter from H. Hunt to G. Craig, Sept. 5, 2013 (Exhibit 6). On or about October 9, 2013, Defendant and others from the Law Firm met with the FARA Unit in an effort to change the FARA Unit's determination that the Law Firm "must register under FARA." Indictment ¶ 61. After hearing the Law Firm's arguments, the FARA Unit directed the Law Firm to provide a written submission to confirm representations made during the meeting. *Id.* ¶ 62.

On or about October 11, 2013, Defendant sent the signed letter to the FARA Unit that it had requested during the October 9 meeting. Letter from G. Craig to H. Hunt (Exhibit 7).[1] Count Two of the Indictment is based on the material false and misleading statements and omissions in this letter.

---

[1]   The letter is dated October 10, 2013, but it was not sent to the Government until October 11, 2013. Indictment at ¶ 62.

II.     **Argument**

    A.     **By Its Plain Language, FARA's False Statement Provision Covers Defendant's Conduct**

Defendant argues that the reference to "other document[s]" in Section 618(a)(2) relates directly to registration statements and supplements and should be limited to those documents "required by" FARA.  *See, e.g.*, MTD Count Two at 2 (Section "618(a)(2) addresses registration statements, supplements to those statements, and documents filed or furnished with them.").  But the plain language of the statute is broad, and it indicates no such limitation.  By its terms, Section 618(a)(2) applies broadly to false statements or omissions of material fact made by "any person" in a registration statement or supplement thereto, or "in any other document filed with or furnished to the Attorney General under the provisions of [FARA]."  22 U.S.C. § 618(a)(2).  Contrary to Defendant's contention, there is no basis for the Court to deviate from the plain statutory language.  *See, e.g., Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) ("It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (citations and internal quotation marks omitted).

Section 618(a)(2) criminalizes willfully false statements and omissions of material fact made in either of two categories of submissions: (1) "in any registration statement or supplement thereto"; or (2) "in any other document filed with or furnished to the Attorney General under the provisions of [FARA]."  The October 11, 2013 letter signed by Defendant and submitted to the FARA unit falls within the second category.

As an initial matter, the letter unquestionably constitutes a "document" within the ordinary meaning of that term.  *See, e.g., Perrin v. United States*, 444 U.S. 37, 42 (1979) ("[U]nless they are otherwise defined, words will be interpreted as taking their ordinary, contemporary, common

meaning."). That conclusion is reinforced by Section 618(a)(2)'s broad reference to "*any* other document" filed by "*any* person." *See, e.g., Dep't of Housing and Urban Dev. v. Rucker*, 535 U.S. 125, 131 (2002) (explaining that "any" has "an expansive meaning," encompassing all types of the item to which the statute refers.); *accord Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219-20 (2008).

The October 11, 2013 letter also was "filed with or furnished to the Attorney General." "Filed" and "furnished" each have broad ordinary meanings. *See Kasten v. Saint Gobain Performance Plastics Corp.*, 563 U.S. 1, 6-16 (2011) (interpreting "filed" as used in the Fair Labor Standards Act of 1938 broadly to include oral complaints that serve to prohibit retaliation against employees that had "filed any complaint or instituted or caused to be instituted any proceeding under or related to [the Act]"); *Black's Law Dictionary* 675 (6th ed. 1990) (defining "furnish" as "to supply, provide or equip, for accomplishment of a particular purpose"). Their use together in the phrase "filed with or furnished to" reflects an intent to include documents provided through any means, formal or informal.[2]

And because Defendant's letter was submitted for the purpose of persuading the FARA Unit to change a determination that the Department of Justice (DOJ) has authority to make under FARA, it was submitted "under the provisions of [FARA]." *See, e.g., Blackman v. District of Columbia*, 456 F.3d 167, 176-77 (D.C. Cir. 2006) (noting that although the meaning of "under"

---

[2]     Contrary to Defendant's suggestion, *see* MTD Count Two at 8-9, FARA does not use the term "furnished" only to describe items that are *required* to be filed by the Act. Indeed, the term is used in at least one provision of FARA to refer to voluntary submissions to the United States government. *See, e.g.,* 22 U.S.C. § 614(e) (making it unlawful for any agent of a foreign government to "transmit, convey, or otherwise furnish to any agency or official of the Government" certain information without notifying the recipient that the person is registered as an agent of a foreign principal.).

can vary based on context, it generally means "subject to," "governed by," or "in accordance with")
(citing cases and dictionary definitions).

Given the breadth of the statutory language, it is hardly surprising that the only other court
to have addressed the question concluded, albeit as a preliminary matter, that Section 618(a)(2)'s
reference to "any other document filed or furnished to the Attorney General" includes signed
correspondence submitted to the FARA Unit in response to an inquiry.  *In re Grand Jury
Investigation*, No. MC 17-2336 (BAH), 2017 WL 4898143 (D.D.C. Oct. 2, 2017) (including
Section 618(a)(2) among the "federal criminal statutes that would be violated by submission of
false and fraudulent or misleading representations to DOJ's FARA unit in the course of its
investigation whether a FARA registration was required" because it is a "document filed with or
furnished to the Attorney General under FARA") (internal quotations excluded).[3]

### B.      Examination of the Relevant Statutory Context Confirms that Congress Did Not Intend to Limit the Reach of Section 618(a)(2) to Required Filings

Further examination of the text of Section 618(a)(2) in light of the relevant statutory
context confirms that Congress did not intend to limit the false statement provision only to those
documents required to be filed under FARA.  To begin, the term "registration statement" is broadly
defined in FARA to include "all documents and papers required to be filed therewith or
amendatory thereof or supplemental thereto, whether attached thereto or incorporated therein by
reference."  22 U.S.C. § 611(k).  Because Section 618(a)(2) expressly applies to registration
statements and supplements, it is clear that Congress intended the separate phrase "in any *other*

---

[3]      Defendant cites three cases—including two non-precedential dissenting opinions—that
make passing reference to Section 618(a)(2).  *See* MTD Count Two at 6.  But contrary to his
suggestion, those decisions fail to support his narrow reading of Section 618(a)(2), as none actually
addressed the scope of that provision.  *See United States v. Wells*, 519 U.S. 482, 505 n.9 (1997)
(Stevens, J., dissenting); *Meese*, 481 U.S. at 494 n.4 (Blackmun, J., dissenting);   *United States v.
Manafort*, 318 F. Supp.3d 1, 3 (D.D.C. 2018).

document filed with or furnished to the Attorney General" to establish a distinct category ("in any other document") that addressed documents other than those already included within the definition of "registration statement." *Id.* at §§ 618(a)(2) (emphasis added); 611(k). That conclusion is reinforced by the language of the phrase "in any other document," which connotes both expansiveness ("any") and separateness ("other"). *See, e.g., Rucker*, 535 U.S. at 131; *Ali*, 552 U.S. at 219-20.

Moreover, a comparison of the text of Section 618(a)(2) with the narrower language used by Congress in other provisions further undermines Defendant's cramped reading of the false statement provision. For example, a number of other provisions of FARA refer specifically to documents "required by" the Act or provisions thereof. *See, e.g.*, 22 U.S.C. at § 612(a)-(b) (discussing the filing of registration statements and supplements thereto "required by" those subsections); § 612(f)(1)-(2) (providing for special exemptions from registration or "furnishing any of the information required by this section"); § 614(c) (providing that "copies of informational materials required by this subchapter" shall be available for public inspection); § 618(e) (making "failure to file any such registration statement or supplements thereto as is required by either section 612(a) or section 612(b)" a continuing offense). One of those provisions was added to FARA in the same legislation that enacted Section 618(a)(2). *See* Pub. L. No. 77-532, § 2(a)-(b), 56 Stat. 248, 251-53 (1942) (Exhibit 1). In contrast to those provisions, Section 618(a)(2) refers more broadly to "any other documents filed with or furnished to the Attorney General under the provisions of [FARA]." Congress's use of a broader phrase—"under the provisions of [FARA]"— in Section 618(a)(2) must be presumed to have been intentional, and it must be given separate meaning from the distinct phrase "required by" FARA, which appears elsewhere in the statute. *See, e.g., Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular

language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion.") (citations and internal quotation marks omitted).

Likewise, some provisions of FARA, by their terms, apply only to "agent[s] of a foreign principal"—*i.e.*, persons who are *required* to file or furnish documents to the Attorney General under FARA.  *See* 22 U.S.C. § 611(c)-(d) (defining "agent of a foreign principal"); *see also*, *e.g.*, *id.* § 615 (requiring "[e]very agent of a foreign principal" to maintain books and records); *id.* § 612(b) (requiring "[e]very agent of a foreign principal" to file information to supplement the registration statement); *id.* § 614(a) (requiring "[e]very person within the United States who is an agent of a foreign principal" to provide copies of informational materials to the Attorney General); *id.* § 614(f) (requiring "any agent of a foreign principal" to provide Congress with a copy of the agent's most recent registration statement prior to testifying).  By contrast, Section 618(a)(2) applies more broadly to "any person" who furnishes a document to the Attorney General under FARA.  *Id.* § 618(a)(2); *see also id.* § 611(a) (defining "person").  Congress has demonstrated that it knows how to restrict the reach of particular provisions of the Act to persons who are required to file registration statement.  Accordingly, its decision to use the broader phrase "any person" in Section 618(a)(2) is yet another indication that the false statement provision should be understood to have substantially broader application than Defendant urges.

**C.    The Canon of *Ejusdem Generis* Does Not Apply to the False Statement Provision**

Against the strong textual and contextual evidence that "any other document filed with or furnished to the Attorney General under the provisions of [FARA]" includes a submission like his October 11, 2013 letter, Defendant invokes the canon of *ejusdem generis*.  *See* MTD Count 2 at 6-8.  That canon rests upon the proposition that when a general term follows specific terms, the

general term should be understood as referring to subjects akin to the specifically enumerated terms. *See Ali*, 552 U.S. at 225. Contrary to Defendant's argument, the canon of *ejusdem generis* fails to support his unduly narrow reading of Section 618(a)(2).

As an initial matter, resort to the *ejusdem generis* canon is unnecessary and inappropriate where, as here, the meaning of statutory language is plain, and the context dictates a different conclusion. *See Wallaesa v. Fed. Aviation Admin.*, 824 F.3d 1071, 1081 (D.C. Cir. 2016) (quoting *Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 129 (1991)). As demonstrated above, the plain language of Section 618(a)(2) applies, by its terms, to a document like Defendant's October 11, 2013 letter, and the relevant statutory context confirms as much.

Moreover, Defendant's proposed application of the *ejusdem generis* canon would be inappropriate here. The Supreme Court has made clear that the *ejusdem generis* canon applies when a statute sets forth "a list of specific items separated by commas and followed by a general or collective term." *Ali*, 552 U.S. at 225 (citing cases). By contrast, the Court has explained that "the absence of a list of specific items undercuts the inference embodied in *ejusdem generis* that Congress remained focused on the common attribute when it used the catchall phrase." *Id.* Applying that reasoning in *Ali*, the Court declined to apply the canon in interpreting the statutory phrase "any officer of customs or excise or any other law enforcement officer." *Id.* The Court explained that the structure of that phrase, which defines two categories in the disjunctive rather than listing specific items separated by commas, "does not lend itself to application of the canon." *Id.* at 225.

*Ali* is controlling here. Like the phrase at issue in *Ali*, the phrase at issue in this case—"in any registration statement or supplement thereto or in any other document," 22 U.S.C. 618(a)(2) — does not set out a list of specific items separated by commas and followed by a collective term.

11

Instead, it simply defines, using the disjunctive, one specific category and one general category: "in any registration statement or supplement thereto" and "in any other document." The two categories are not separated by commas. And each is introduced using the preposition "in." Under the circumstances, there is no basis for drawing the inference that Congress intended the relevant portion of Section 618(a)(2) to be viewed as a list. Here, as in *Ali*, there is no sound basis for drawing the inference embodied in *ejusdem generis—i.e.,* that Congress remained focused on the common attribute of specifically listed items when using an ensuing catchall phrase. *Ali*, 552 U.S. at 225; *accord Garcia v. United States*, 469 U.S. 70, 75 (1984) (*ejusdem generis* does not apply where "the terms in question are made separate and distinct from one another by Congress' use of the disjunctive"); *Patel v. Bureau of Prisons*, 125 F. Supp. 3d 44, 50 (D.D.C. 2015). By contrast, it was reasonable to draw such an inference in the principal decision cited by Defendant, which involved a statute that set forth a list of items sharing separated by commas. *Circuit City Stores v. Adams*, 532 U.S. 105, 109 (2001) (relying on *ejusdem generis* in interpreting the phrase "'seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce'").

Finally, the Supreme Court has emphasized that the canon of "*ejusdem generis* cannot be employed to 'obscure and defeat the intent and purpose of Congress' or 'render general words meaningless.'" *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 163 (2012) quoting *United States v. Alpers*, 338 U.S. 680, 682 (1950). Defendant's proposed application of the *ejusdem generis* canon to Section 618(a)(2) would have precisely that effect. As noted above, FARA broadly defines the term "registration statement" to include not only the registration statement itself, but also "any supplements thereto required to be filed under section 612(b)," as well as "all documents and papers required to be filed therewith or amendatory thereof or supplemental thereto, whether attached thereto or incorporated therein by reference." 22 U.S.C.

§ 611(k).   In light of that broad definition, interpreting the phrase "in any other document" in Section 618(a)(2) to refer only to statutorily-required submissions would make that phrase mere surplusage.  *United States v. Menasche*, 348 U.S. 528, 538–39 (1955) ("It is a cardinal principal of statutory construction [] to save and not to destroy[,] that is, to give effect, if possible, to every clause and word of a statute.").[4]   For this reason, and the other reasons stated above, Defendant's reliance on *esjusdem generis* is misplaced and must fail.

### D.     Defendant's Additional Arguments for Departing from the Plain Language of Section 618(a)(2) Are Unavailing

Defendant points to language in FARA that reflects Congress's interest in complete and accurate disclosure in registration statements filed with the Attorney General under FARA.  MTD Count Two at 9-11.  Defendant then asserts that Congress was *only* concerned with registration statements when enacting the false statement provision.  *Id.*  But no such limitation appears in the plain language of Section 618(a)(2), which, as discussed above, is broad.  And, consistent with that plain language, the relevant statutory context provides additional reason to believe that Congress's interest in complete and accurate information reaches beyond registration statements and other required filings.

The statutory context demonstrates Congress's understanding that FARA would be administered not merely through registration statements and other submissions that are expressly

---

[4]     Because FARA defines registration statement to include "any supplements" to a registration statement," Section 618(a)(2)'s separate reference to "supplements" appears to be redundant.  But several other provisions of the Act also refer separately to both registration statements and supplements.  *See, e.g.*, 22 U.S.C. §§ 612(a), (c)-(e), (g), 616(b), 617.  It seems reasonable to infer Congress elected to use the two terms together in certain provisions to emphasize the applicability of those provisions to supplements as well as registration statements. By contrast, no such inference can be drawn with respect to Section 618(a)(2)'s broad reference "to any other document filed with or furnished to the Attorney General under the provisions of [FARA]," which by its terms extends beyond the documents expressly covered by FARA's definition of registration statement.

referred to in the statutory text, but also through other documents and submissions. FARA provides broad authority to the Attorney General to administer the statute in a manner consistent with its purpose. *See, e.g.*, 22 U.S.C. §§ 615, 620 (authorizing the Attorney General to promulgate regulations); *id.* §§ 612(f), 613 (authorizing the Attorney General to promulgate and recognize exemptions); *id.* § 618(f) (authorizing the filing of civil actions for injunctive relief). FARA also gives the Attorney General broad authority to collect information necessary to carry out that authority. For example, it specifically authorizes the Attorney General to share with Congress "such information obtained . . . in the administration of [FARA], including registration statements, or parts thereof, or other documents or information filed under this subchapter, as may be appropriate in light of the purposes of [FARA]." 22 U.S.C. § 616(c); *see also id.* § 620. The plain language of Section 616(c) presupposes authority to acquire a broad range of information extending beyond registration statements and other documents that are expressly required to be filed by provisions of FARA.[5]

FARA also enumerates exemptions that relieve certain categories of "agents of foreign principals" of the registration obligations they otherwise would have under the Act. *Id.* at § 613. FARA does not specifically prescribe any particular submission for requesting such an exemption. Indeed, the Act does not address the mechanism by which the exemptions are to be administered, other than through the provision that generally authorizes the Attorney General to adopt implementing regulations. Nevertheless, Congress must have understood that the effective and proper administration of those statutory exemptions would depend on the ability of the Attorney

---

[5]     Notably, another provision of the Act separately requires the provision of only "registration statement[s]" to congressional committees in certain circumstances, *see id.* § 614(f), making clear that Congress knew how to limit the reach of particular provisions to such materials when it wanted to do so.

General to acquire reliable and accurate information.  It is no accident that Congress used language in Section 618(a)(2) that is broad enough to cover willful false and misleading statements and omissions of material fact made in documents furnished to DOJ for the purpose of requesting or obtaining an exemption.

Similarly, since shortly after FARA's enactment, the Act's implementing regulations have established a process by which persons may make inquiries regarding the application of the Act, including the applicability of any exemption.  28 C.F.R. § 5.2 (Inquiries concerning application of the Act).  Congress must have understood that determining whether particular activities trigger the registration requirements of the Act would also depend on the Attorney General's ability to obtain reliable and accurate information.  Again, the language of Section 618(a)(2) is broad enough to reach false and misleading statements in documents furnished to DOJ for the purpose of obtaining a determination concerning the applicability of FARA's registration requirement.

Accordingly, Congress understood that the effective implementation of FARA would depend on the Attorney General's ability to rely on the information provided to the Attorney General by or on behalf of potential registrants, not only in registration statements and other required filings, but also in other documents furnished under FARA.  There is every reason to believe that it chose the broad language of Section 618(a)(2) to ensure that the Attorney General would have that ability.

### E.     FARA's Legislative History and DOJ's Implementation Confirm That Congress Intended Section 618(a)(2) to Cover False and Misleading Documents Furnished to DOJ in a FARA Investigation

FARA's legislative history and DOJ's implementation demonstrate that Congress intended FARA's false statement provision to encompass any document furnished to DOJ in its administration of FARA, including in DOJ investigations under FARA.  Congress expected DOJ to investigate and identify unregistered agents, and it knew that DOJ would rely on documents

15

furnished in those investigations.   Defendant's arguments (MTD Count Two at 11-14) that
Congress nonetheless intended those documents to fall outside FARA's false statement provision
are wrong.

When FARA was enacted in 1938, "[t]he general purpose of the legislation was to identify
agents of foreign principals who might engage in subversive acts or in spreading foreign
propaganda, and to require them to make public record of the nature of their employment." *Viereck
v. United States*, 318 U.S. at 241.[6]  It was quickly apparent, however, that FARA had a significant
weakness in identifying foreign agents.   FARA had originally charged the Secretary of State with
its administration, *id.* at 237 (discussing 52 Stat. 631, 632 (1938)), but the State Department had
no effective means of investigating and thereby identifying agents who did not voluntarily register.
As the State Department reported to Congress:

> It is true, that if we run into an agent of a foreign princip[al] somewhere, or we
> happen to find out about it, we can send over to the Department of Justice and ask
> them to do something about it.   But we do not have any detective agency or any
> police force, or anything else, to find out.   So we have to rely upon the casual
> contacts that we have, plus whatever we can find out from overseas.   But that is not
> a very effective way of finding out whether a foreign propaganda office is secretly
> operating, or anything of the kind.

> We have done some things under the act, but I cannot honestly say that I think that
> any machinery we have is apposite to the size and scope of the problem.

> For that reason we should be glad to have that function taken out of our hands and
> have an agency, which has the machinery to enforce it, take over.

---

[6]   *See also Meese*, 481 U.S. at 469 (FARA "was enacted: '"[t]o protect the national defense, internal security, and foreign relations of the United States by requiring public disclosure by persons engaging in propaganda activities and other activities for or on behalf of foreign governments, foreign political parties, and other foreign principals so that the Government and the people of the United States may be informed of the identity of such persons and may appraise their statements and actions in the light of their associations and activities.'" (quoting 56 Stat. 248, 248-429 (1942))).

"Amending Act Requiring Registration of Foreign Agents," Hearings before the Subcommittee No. 4 of the Committee on the Judiciary on H.R. 6045, 77th Cong., 1st Sess. 28 (Nov. 28, 1941) (Exhibit 8) (statement of Hon. Adolf A. Berle, Jr., Ass't Sec'y of State).

Congress responded by amending FARA in 1942, transferring administration of the statute from the Secretary of State to the Attorney General, who had the machinery to investigate and identify secret foreign agents. *See* 56 Stat. 248, 258 (1942) (Exhibit 1); Executive Order 9176, 7 Fed. Reg. 4127 (1942) (Exhibit 9). Congress also enacted other statutory revisions "at the request of the Department of Justice in order to strengthen the Government's 'chief instrument … for controlling foreign agent activity in the theater of political propaganda'" and "to counter secret propaganda efforts." *Meese*, 481 U.S. at 487. One change was to revise FARA's false statement provision to the broad language essentially used today:

> Any person who … in any registration or supplement thereto or in any statement under section 4(a) hereof concerning the distribution of political propaganda or in any other document filed with or furnished to the Attorney General under the provisions of this Act willfully makes a false statement of a material fact or willfully omits any material fact required to be stated therein or willfully omits a material fact or a copy of a material document necessary to make the statements therein and the copies of documents furnished therewith not misleading ….

56 Stat. at 257 (codified as amended at 22 U.S.C. § 622(a)(2)).[7] Consistent with Congress's intent to enhance the Government's ability to investigate, gather information, and identify secret propaganda efforts, DOJ implemented its new statutory mandate by soliciting "other"

---

[7]    The 1942 language differs from the contemporary language in that it also encompassed "any statement under section 4(a) hereof concerning the distribution of political propaganda," language that Congress removed in 1995 when it simultaneously eliminated the Section 4(a) requirement that an agent file a statement concerning the distribution of political propaganda. *See* Lobbying Disclosure Act of 1995, Pub. L. No. 104-65, § 4, 109 Stat. 691, 700 (1995) (Exhibit 11). The inclusion of the Section 4(a) statement in the 1942 false statements provisions further illustrates that "any other document" was not intended to encompass documents that were already part of a registration statement or supplement thereto. The provision applied (i) to a registration statement or supplement thereto, (ii) to the separately filed Section 4(a) statements, and (iii) to any other document furnished with DOJ.

documentation—not expressly specified in FARA—from potential foreign agents to determine whether they were required to register.

First, less than two months after the FARA amendments were enacted, DOJ issued regulations that expressly invited potential registrants to submit other documentation to DOJ to determine their obligation to register.  Administration of FARA, 7 Fed. Reg. 4717 (June 25, 1942) (Exhibit 10) (codified at 5 C.F.R. pt. 5); *see also* 56 Stat. at 257 (Exhibit 1) (codified at 22 U.S.C. § 620) (authorizing regulations).  One regulation established the advisory opinion process in which potential registrations could inquire about their registration requirements if they submitted an accompanying statement of facts:

> *Inquiries concerning application of Act to be accompanied by statement of facts.*
> Inquiries concerning the application of the Act must be accompanied by a detailed statement of all facts necessary for a determination of the question submitted, including the identity of the agent, the nature of his activities on behalf of each foreign principal, any activities on his own behalf, and on behalf of some other person, by reason of which registration may be required, the identity of each foreign principal, and an outline of any agreement or agreements under which the agent is acting.

7 Fed. Reg. at 4719 (Exhibit 10) (codified as amended at 28 C.F.R. § 5.2).  Another regulation established criteria defining the statutory exemptions and a standard providing that "[i]n all matters pertaining to exemptions, the burden of establishing the availability of the exemption shall rest with the person for whose benefit the exemption is claimed."  *Id.* at 4720 (codified as amended at 28 C.F.R. § 5.300).  DOJ's regulations implementing the 1942 amendments thus depended on DOJ obtaining reliable documentation from potential registrants—not just registration documents filed by actual registrants.  Although such "other" documentation is not required in the statute, effective FARA enforcement required that, when furnished to DOJ, it too was accurate.

Second, DOJ expressly told Congress that its FARA enforcement depended on such voluntary correspondence with potential registrants.  One of the 1942 amendments required that

"[t]he Attorney General shall, from time to time, make a report to the Congress concerning the administration of this Act."  56 Stat. at 258 (Exhibit 1) (codified as amended at 22 U.S.C. § 621). In its first report, submitted in 1945, the Attorney General explained:

> Proceeding on the same policy of stimulating acquaintance and voluntary compliance with the Act, the Department makes liberal use of correspondence and conferences with particular individuals or organizations, as information becomes available to the Department from a wide variety of sources indicating the possible applicability of the Act in given instances.  In part as a result of this approach, the Department also receives a considerable volume of specific inquiries from such individuals or groups.  In both types of cases, the Department seeks to obtain all the pertinent facts and to impart such informal advice as each case may require.

Report of the Attorney General to the Congress of the United States on the Administration of The Foreign Agents Registration Act of 1938, as amended, for the period from June 28, 1942 to December 31, 1944, at 17 (June 1945) (Exhibit 12), *available at* https://www.justice.gov/nsd-fara/ page/file/991971/download.  Again, Congress's objective in strengthening FARA enforcement would have been frustrated if FARA's false statement provisions did not apply to such "other" documents.

Third, DOJ also told Congress that DOJ obtained data about foreign agents' informational activities from "information collected in independent investigations carried out, principally through the Federal Bureau of Investigations, relative to suspected violations of this Act."  *Id.* at 23.  Congress, after all, transferred FARA enforcement from the State Department to DOJ largely because of DOJ's investigative machinery.  Congress knew that a key part of DOJ's efforts to enforce the statute involved obtaining information furnished outside the scope of the registration filings.

Accordingly, there is every reason to believe that the false statement provision's broad language was intended to cover that "other" documentation—not merely the registration filings themselves.  That provision's criminal penalties for willful false statements and omissions provide

a mechanism for ensuring that any information furnished to DOJ in administering FARA is correct and complete. Placing certain documentation furnished to DOJ beyond the reach of Section 618(a)(2) would permit potential registrants to evade scrutiny, civil enforcement, and criminal prosecution (as Defendant and the Law Firm nearly did here) through carefully crafted submissions that willfully omit information material to the inquiry. Congress intended otherwise when enacting the false statement provision in FARA.

Defendant's contrary arguments are wrong. Defendant first asserts (MTD Count Two at 11-12) that "the original 1938 version" of FARA was "limited to statutorily required submissions, and there is nothing in the text or legislative history of the 1942 amendment to suggest that Congress intended any change in that regard." Defendant's premise about the 1938 language is incorrect but, in any event, Congress *amended* the 1938 language. "When Congress amends legislation, courts must 'presume it intends [the change] to have a real and substantial effect.'" *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016); *accord, e.g.*, *Husky Int'l Electronics, Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016); *United States v. Quality Stores, Inc.*, 572 U.S. 141, 148 (2014); *In re Grand Jury Investigation*, 315 F. Supp. 3d 602, 657 (D.D.C. 2018), *aff'd*, 916 F.3d 1047 (D.C. Cir. 2019). Defendant thus cannot rely on the 1938 language to negate the plain meaning of the 1942 (and still current) language. Moreover, the Supreme Court has explained that Congress amended FARA in 1942 "in order to strengthen" it. *Meese*, 481 U.S. at 487. The House report that Defendant cites (MTD Count Two at 12) confirms that the 1942 amendment "strengthens the original act," including by "[s]trengthening and clarifying enforcement provisions of the act through various technical changes in language." H.R. Rep. No. 77-2038, at 3-4 (Apr. 20, 1942) (Exhibit 13).

Defendant also attempts to construe FARA's amended language by relying on language that Congress used in enacting the Voorhis Act two years earlier. MTD Count Two at 13-14. But the Voorhis Act language was different, with its false statement provision applying only to "[w]hoever in a statement filed pursuant to section 2 [the registration provision] willfully makes any false statement or willfully omits to state any fact which is required to be stated, or which is necessary to make the statements made not misleading." Pub. L. No. 870, § 4, 54 Stat. 1201, 1204 (Oct. 17, 1940) (Exhibit 14). Even by 1942, it was long established that "a change in phraseology creates a presumption of a change in intent, and that Congress would not have used such different language [in two statutes] without thereby intending a change of meaning." *Crawford v. Burke*, 195 U.S. 176, 190 (1904); *accord, e.g.*, *Russello*, 464 U.S. at 23 ("We refrain from concluding … that the differing language in the two subsections has the same meaning in each."); *United States v. Delgado-Garcia*, 374 F.3d 1337, 1349 (D.C. Cir. 2004) ("[W]here Congress uses different language in otherwise similar provisions, it is wise to presume that Congress means different things …."); *Avco Corp. v. U.S. Dep't of Justice*, 884 F.2d 621, 625 (D.C. Cir. 1989) ("[W]e in the present inquiry cannot presume that Congress intended the same thing where it expressly used different language."). The language in FARA's false statement provision is far broader—applying to "any other document," not just "a statement filed pursuant to" the registration provision, and applying to "[a]ny person," not just whoever files a registration statement. "Had Congress intended the latter, it easily could have drafted language to that effect." *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 169 (2014); *accord, e.g.*, *State Farm Fire & Cas. Co. v. U.S ex rel. Rigsby*, 137 S. Ct. 436, 443-44 (2016) ("Congress knew how to draft the kind of statutory language that petitioner seeks to read into [the statute.]").

Nor does the legislative history suggest that Congress intended the two statutes' different language to have the same meaning. Defendant's excerpted quotation of the House report (MTD Count Two at 13) misreads the passage. The full quotation is:

> The [FARA] penalty provisions have been completely set out in section 8 and the original penalties for violations of the act increased from a maximum fine of $1,000 or imprisonment for not more than 2 years or both, to a maximum fine of $10,000 or imprisonment for not more than 5 years, or both. However, the new penalties are comparable to those fixed *under the Voorhis Act for violations thereof other than for false or incomplete registration statements.*

H.R. Rep. No. 77-1547, at 5 (Dec. 18, 1941) (Exhibit 15) (emphasis added). Contrary to Defendant's assertions, the passage does not suggest that FARA's penalty provisions are limited to "false or incomplete registration statements." Rather, the passage explains that FARA's penalties—for any FARA violation—are comparable in severity to penalties under the Voorhis Act for violations *of the Voorhis Act other than for false or incomplete Voorhis Act registration statements.* That is because the Voorhis Act then imposed a lower monetary penalty for false or incomplete Voorhis Act registration statements than for other violations. *See* 54 Stat. at 1204 (Exhibit 14) ($2,000 fine plus five years' imprisonment versus $10,000 fine plus five years' imprisonment). Congress's choice to increase the severity of FARA's penalties to equal those for violations of the Voorhis Act "other than for false or incomplete registration statements" does not suggest anything about FARA's scope. It certainly does not contradict FARA's plain language that unambiguously encompasses violations beyond just false or incomplete registration statements.[8]

---

[8]     Defendant also alludes to an argument that 18 U.S.C. § 1001 may limit Congress's intent in enacting FARA's false statement provision. MTD Count Two at 11. Not so. Congress has enacted numerous false statement provisions to address a variety of deceptive practices. *See Wells*, 519 U.S. at 505 n.9 (1997) (Stevens, J., dissenting). The law is clear that such statutes are to be applied according to their own terms, even if they overlap with 18 U.S.C. § 1001. *See, e.g., United States v. Bilzerian*, 926 F.2d 1285, 1300 (2d Cir. 1991) (citing cases). Neither FARA's language

**F.     FARA's False Statement Provision Is Not Limited to Documents Filed or Furnished on Particular Forms**

Defendant cites no authority for his argument that DOJ's prescription of specific forms for certain FARA documents limits the meaning of "any other document filed with or furnished to the Attorney General" in Section 618(a)(2). *See* MTD Count Two at 14-16. That argument is baseless. The Attorney General has the authority under FARA to "make, prescribe, amend, and rescind such rules, regulations, and forms as he may deem necessary to carry out the provisions" of FARA. 22 U.S.C. § 620. This provides the discretion to prescribe forms, or not to prescribe them. Consistent with that discretion, DOJ's regulations prescribe specific forms for certain documents, *e.g.*, 28 C.F.R. § 5.200(b), but also note that there is "no prescribed format" for other documents, *e.g.*, *id.* § 5.2(e) (inquiries concerning application of FARA). Nothing in Section 618(a)(2) or Section 620 requires the Attorney General to prescribe a form for a document before it is furnished to him under FARA. Nor does the prescription of forms for certain documents indicate that other documents are not furnished to him under FARA. In short, a document furnished to DOJ is not immunized from Section 618(a)(2) merely because there is no corresponding form. DOJ's administration and enforcement of FARA depend on DOJ's ability to rely on any documents submitted to it in connection with the enforcement of FARA, including documents from potential registrants responding to DOJ inquiries under FARA.

**G.     The Rule Of Lenity Does Not Apply**

Defendant's rule of lenity argument is also meritless. The rule of lenity is a canon of "last resort." *Guedes v. Bureau of Alcohol, Tobacco and Firearms*, 920 F.3d 1, 27-29 (D.C. Cir. 2019). It applies only if, "after considering text, structure, history, and purpose, there remains a grievous

---

nor its legislative history reflects an intent by Congress to rely on 18 U.S.C. § 1001 for the enforcement of deceitful conduct within the administration of FARA.

ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." *United States v. Castleman*, 527 U.S. 157, 172-73 (2014) (citation omitted). No grievous ambiguity exists here. Section 618(a)(2) has a plain and unambiguous meaning, which is fully aligned with the surrounding text, the purpose, and the legislative history of FARA.

Defendant invokes *United States v. McGoff*, 831 F.2d 1071 (D.C. 1987), in support of an argument for lenity, but *McGoff* did not interpret the language in Section 612(a)(2). It instead addressed the statute of limitations for the offense of failing to register under FARA, which it noted does not contain its own statute of limitations provision, *id.* at 1076, and it did not actually apply the rule of lenity. Heeding the Supreme Court's warning that courts must not "'manufacture ambiguity where none exists,'" *id.* at 1096 (quoting *United States v. Batchelder*, 442 U.S. 114, 121-22 (1979)), the court engaged in an extensive "review of the text of the relevant statutory provisions, the statute as a whole, and the legislative history" and concluded that FARA's statute of limitations is not ambiguous, *id.* Nor is FARA's false statement provision ambiguous.

Defendant also asserts that application of the rule of lenity is necessary to "'provide fair warning concerning conduct rendered illegal.'" MTD Count Two at 17-18 (quoting *Liparota v. United States*, 471 U.S. 419, 424 (1985)). FARA's false statement provision presents no such concern. Its willfulness requirement alleviates any concerns that a defendant will lack "clear notice" that furnishing misleading documents to the DOJ is unlawful. *Cf. United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517 (1992) (applying rule of lenity where statute has "criminal applications that carry no additional requirement of willfulness"). Its requirement that a false or misleading statement or willful omission be material also safeguards that FARA is not applied to trivial, unintentional misstatements that do not mislead DOJ. And its limitation only to written documents furnished to DOJ under FARA ensures that those who provide information

24

should reasonably understand when they are making a sufficiently serious representation to DOJ to fall within Section 618(a)(2).

There is no "fair notice" concern here.  From its initial inquiry to Defendant, Defendant was aware that the correspondence related to Defendant's "possible obligation to register under [FARA]."  Letter from H. Hunt to E. Yaffa, Dec. 18, 2012 (Exhibit 2).  The initial letter, and all ensuing letters issued by the FARA Unit, specifically referenced the statute, and the initial letter enclosed a copy of the current statute.  *See id.*  Moreover, the FARA Unit made clear that its questions were being posed for the purpose of analyzing the Law Firm's obligation to register under the Act.  *Id.* ("In order that [the FARA Unit] may determine whether [the Law Firm] is required to register under FARA[,] please provide this office with" answers to these questions.).

## CONCLUSION

Section 618(a)(2) makes it a crime for any person to willfully make a false statement or willfully omit a material fact "in any registration statement or supplement thereto or in any other document filed with or furnished to the Attorney General under the provisions of [FARA.]"  22 U.S.C. § 618(a)(2).  The October 11, 2013, letter that Defendant furnished to the FARA Unit for the purposes of changing its determination that he had an obligation to register under FARA, is clearly a "document filed with or furnished to the Attorney General under the provisions of [FARA]."  The Court should deny Defendant's motion to dismiss Count Two.

Dated: May 31, 2019                     Respectfully submitted,

                                        JESSIE K. LIU
                                        UNITED STATES ATTORNEY
                                        D.C. Bar Number 472845

                                        By:  /s/ Fernando Campoamor-Sanchez

FERNANDO CAMPOAMOR-SANCHEZ
  (DC 451210)
MOLLY GASTON
  (VA 78506)
Assistant United States Attorneys
United States Attorney's Office
555 Fourth Street, N.W.
Washington, D.C.  20530
Telephone: 202.252.7698 / 202.252.7803
Fernando.Campoamor-Sanchez@usdoj.gov
Molly.Gaston@usdoj.gov


JOHN C. DEMERS
ASSISTANT ATTORNEY GENERAL


By:  /s/ Jason McCullough
    JASON B.A. MCCULLOUGH
      (DC 998006; NY 4544953)
    Trial Attorney
    Department of Justice
    National Security Division
    950 Pennsylvania Ave NW
    Washington, D.C.  20530
    Telephone: 202-616-1051
    Jason.McCullough@usdoj.gov

**<u>Certificate of Service</u>**

I certify that, by virtue of the Court's ECF system, a copy of the foregoing Government's Opposition to Defendant's Motion to Dismiss Count One has been sent to counsel for the defendant on May 31, 2019.


/s/ Jason McCullough
Jason B.A. McCullough
Trial Attorney, National Security Division