**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| *v.* | **Case No. 1:19-cr-0125 (ABJ)** |
| **GREGORY B. CRAIG**, | |
| *Defendant.* | |

## REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COUNT ONE

Aside from declaring Mr. Craig guilty and accusing him of arguing that he had no duty to be truthful, neither of which is true, the government strains mightily to persuade the Court that *United States v Safavian,* 528 F.3d 957 (D.C. Cir. 2008), is "inapposite." Gov't Opp. to Def.'s Mot. to Dismiss Count One ("Opp."), ECF No. 32, at 2. In this pleading, we decline the government's invitation to debate the facts that a trial would involve. We demonstrate, rather, that Count One cannot survive *Safavian*. The Court of Appeals held in no uncertain terms that the government can prosecute a concealment scheme under 18 U.S.C. § 1001(a)(1) only where the defendant was subject to a clear and specific legal duty to disclose the allegedly concealed information.

The government cannot point to any provision in the statute that addresses disclosure of the specific information allegedly concealed, so instead it argues that, as a matter of law, "the statute itself and the FARA Unit's inquiry" created a general duty to disclose all material facts. Opp. at 17. The government wanders through various efforts to divine such a duty, including a bizarre argument that a duty arises from FARA's definitions section. 22 U.S.C. § 611. It also invokes FARA's false statement provision, 22 U.S.C. § 618(a)(2), but for the reasons set forth in our Motion to Dismiss Count Two, that provision does not apply to the letters at issue in this

case. And regardless, it does not contain the sort of *specific* disclosure duty that can satisfy *Safavian*. We demonstrate below that neither the statute, "the FARA Unit's inquiry," nor some amorphous combination of the two establishes a disclosure duty, and that as a result, Count One must be dismissed. *See United States v. Singhal*, 876 F. Supp. 2d 82, 93–96 (D.D.C. 2012) (dismissing § 1001(a)(1) charge for lack of a legal disclosure duty); *United States v. Crop Growers Corp.*, 954 F. Supp. 335, 344–48 (D.D.C. 1997) (same).

The government argues further that, if the Court concludes that the allegation of duty fails as a matter of law, it can amend Count One to charge false statements, as though Mr. Craig had been indicted under 18 U.S.C. § 1001(a)(2). The government thus invites the Court to change the offense for which Mr. Craig was indicted, a power no court has. There is no question that this indictment charges a *concealment scheme* under 18 U.S.C. § 1001(a)(1) and not willful false statements under subsection (a)(2). The government does not suggest otherwise. Indeed, it says that "the indictment clearly charges Defendant with a *concealment* scheme." Opp. at 31. (emphasis added); *see also id.* at 1 (arguing that Mr. Craig made false statements and material omissions in order "to *conceal* his registrable activity, under the FARA statute, from the FARA Unit" (emphasis added)). The fatal defects in the "concealment scheme" cannot be excised from the indictment in favor of mere false statements, because the grand jury charged a concealment offense under § 1001(a)(1), not false statements under § 1001(a)(2).

The government does not even attempt to argue that the grand jury's decision to indict was free from substantial influence by the erroneous omission instructions it received. In responding to Mr. Craig's claim of grand jury error, the government rests on the correctness of the instructions, an implicit concession that if the allegations of duty are wrong, the Indictment is not only insufficient but the grand jury was misled.

Finally, the government's effort to save the time-barred portion of Count One is also unavailing. It relies on a mistaken view of when an offense is "complete" for purposes of the statute of limitations so as to dodge the issue of whether § 1001(a)(1) is a "continuing offense." It is not a "continuing offense," and the pre-limitations conduct included in Count One is time-barred. *See Toussie v. United States*, 397 U.S. 112, 114–15 (1970).

The Court must dismiss Count One.

## ARGUMENT

### I.     Mr. Craig was not subject to a duty to volunteer all facts that might be relevant to the FARA Unit.

The government argues that Mr. Craig's "duty to provide material information when responding to the FARA Unit flowed from . . . [t]wo particular provisions of FARA": 22 U.S.C. § 611 (the definitions section) and 22 U.S.C. § 618(a)(2) (the false statement provision). Opp. at 17. Elsewhere the government argues that "Defendant's duty arose from the FARA Unit's inquiry pursuant to FARA's registration requirements." Opp. at 18. The government is wrong on all counts.

#### A.     No specific disclosure duty is imposed by either of the statutory provisions that the government invokes – 22 U.S.C. § 611 or § 618(a)(2).

A disclosure duty must arise from some fixed legal requirement in a "regulation or form or statute." *Safavian*, 528 F.3d at 965. Neither of the "[t]wo particular provisions of FARA" that the government invokes, Opp. at 17, creates a disclosure duty that could satisfy *Safavian*.

The government first cites 22 U.S.C. § 611. Opp. at 17–18. That provision is entirely comprised of definitions of terms used elsewhere in the statutory scheme; it says nothing about communications with the FARA Unit or any other government agency. The government's duty theory is not only untethered to the language or purpose of § 611; the idea that it creates some

duty to volunteer all facts that might be material to a registration decision is bizarre.  Section 611 imposes no legal duties *at all*.

Nor does § 618(a)(2) create such a duty.  As we explain in further detail in our Motion to Dismiss Count Two and the supporting Reply filed today, § 618(a)(2) applies only to documents filed or furnished pursuant to specific provisions of FARA – not to voluntary letters like the ones at issue in this Indictment.   We do not repeat those arguments in this pleading, but adopt and incorporate them.  Simply put, because § 618(a)(2) does not apply to the communications with the FARA Unit in this case, it does not create the specific duty necessary for the concealment scheme charged in Count One.  Count One fails for the same reason that Count Two does.

But even if the Court disagrees that § 618(a)(2) is limited to statutory submissions, that provision does not support the government's duty arguments.   First, even under the government's reading, § 618(a)(2) is limited to "documents," not oral submissions.   So § 618(a)(2) does not apply to  Skadden's in-person meeting with the FARA Unit on October 9, 2013.

Second, § 618(a)(2) does not contain the sort of specific disclosure requirement that *Safavian* contemplates.  *Safavian* demands a "specific requirement[] for disclosure of specific information."   528 F.3d at 964.   Such specific requirements exist where, for example, a regulation mandates disclosure of the true identity of political contributors, *see United States v. Kanchanalak*, 192 F.3d 1037, 1046 (D.C. Cir. 1999); where a financial interest form requires government employees to disclose corporate affiliations, *see United States v. Muntain*, 610 F.2d 964, 971 (D.C. Cir. 1979); and where Coast Guard regulations require that certain ships record discharges of oil residue.  *United States v. Sanford, Ltd.*, 859 F. Supp. 2d 102, 109–10 (D.D.C. 2012).

In contrast, there is no "specific requirement for disclosure of specific information" in § 618(a)(2).  Section 618(a)(2) penalizes the omission of "any material fact required to be stated" in a covered document or "a material fact or a copy of a material document necessary to make the statements therein and the copies of documents furnished therewith not misleading."  22 U.S.C. § 618(a)(2).[1]  The first clause does not impose any disclosure requirements in and of itself – it just attaches penalties to a failure to comply with requirements that originate elsewhere.  *See id.* (referencing "material fact[s] required to be stated therein").  And the second clause is too general to satisfy *Safavian*.  Indeed, in *Crop Growers Corp.*, Judge Kessler was faced with nearly identical language in an SEC regulation and declined to find a disclosure duty that could support a concealment prosecution under § 1001.  *See* 954 F. Supp. at 347 (discussing regulation that required disclosure of "such further information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not misleading").  She determined that that regulation, in conjunction with others, "d[id] not set forth the required disclosures in precise terms," so as to satisfy "[d]ue process concerns."  *Id.* at 346, 348; *see also United States v. White Eagle*, 721 F.3d 1108, 1118 (9th Cir. 2013) (reversing conviction under § 1001(a)(1) for lack of a duty to disclose because, "[a]lthough the regulation discusses reporting 'fraud' and 'corruption,' it does not provide specifics on what kind of information should be reported or to whom" (citation omitted)).

### B.   No specific disclosure duty is imposed by "the FARA Unit's inquiry pursuant to FARA's registration requirements."

According to the government, Mr. Craig had a duty to disclose all material facts to the FARA Unit "[b]ecause the FARA Unit made Defendant aware of his possible obligation to

---

[1] Section 618(a)(2) also penalizes "a false statement of a material fact," but we do not take the government to be arguing that that clause generates any affirmative disclosure duty.

register under the statute, cited and enclosed it, and then asked specific and targeted questions designed to determine [his] registration obligation." Opp. at 18–19.  The government claims that "[t]he fact that Defendant chose to engage with the FARA Unit – a U.S. Department of Justice law enforcement agency – on the question of whether he was obligated to register obligated him to . . . disclos[e] material facts responsive to the FARA [U]nit's inquiry." *Id.* at 18.

The court in *Safavian* made  clear that there is no general duty to "disclose all relevant facts" simply because "one begins speaking . . . in response to questioning" from a government official.  528 F.3d at 965.  The government asserts it is not arguing "that once an individual begins speaking voluntarily with the government, he cannot stop," Opp. at 23, but in fact that is exactly the government's position.  *See id.* at 16–19.

*Safavian* is on all fours, and the government's attempt to distinguish it is unavailing.  The government argues that *Safavian* is "inapposite" because "Defendant did not contact the FARA Unit for an opinion as to his registration obligation"; "[r]ather, the FARA Unit contacted Defendant." Opp. at 20–21.  Drawing that distinction ignores half of *Safavian*.  The defendant in *Safavian* was convicted of concealing material facts not only when he affirmatively sought an ethics opinion from a General Services Administration ("GSA") ethics officer (Count 2), but *also* when he responded to an agent of the GSA Office of Inspector General, which had launched an "investigation" of his conduct based on an anonymous tip (Count 3).  528 F.3d at 963; *see also id.* at 961.  The OIG investigation in *Safavian* was no different from the FARA Unit inquiry here.  In both cases, a government official "contacted [the defendant] to gather the information necessary to determine whether" the law had been violated, and the defendant "chose to respond." Opp. at 21.  The court in *Safavian* explained that there is no general duty to disclose

material facts simply because "one begins speaking when seeking government action *or in response to questioning*."  528 F.3d at 965 (emphasis added).

That rule is dispositive here.   When a government investigator asks an individual questions about a law she is charged with enforcing, the individual's choice to respond does not trigger a duty to volunteer all facts that might be material to the investigator's inquiry.   Such a duty of full disclosure must arise from somewhere else – a statute, regulation, or form.

The government's argument that the requisite disclosure duty need not "be explicit," Opp. at 19, is based on a misreading of *United States v. Moore*, 446 F.3d 671 (7th Cir. 2006). The government extensively discusses *Moore*, which involved a city contractor who failed to disclose that her mother was a city employee – a forbidden conflict of interest under Department of Housing and Urban Development ("HUD") regulations.   *See* Opp. at 19–20.   In the government's retelling, the defendant's duty in *Moore* "arose from the contracts incorporating HUD regulations and in the course of her communications with City officials who were investigating the conflict-of-interest problem."   *Id.* at 19 (citation omitted).   But critically, the city contract at issue not only incorporated HUD regulations governing conflicts of interest, it also *expressly required* that contractors *disclose* conflicts that violated those regulations.   *Moore*, 446 F.3d at 678.   The disclosure duty in *Moore* arose from that express provision in the contract, which the court described as "the functional equivalent of any other government form."   *Id.*[2]

Nor do the government's other cases support its position that, when one answers questions from a government official charged with enforcing some statute, there is a duty to

---

[2] The court in *Moore* did state in the alternative that inquiries from government officials "repeatedly triggered a duty to disclose."  446 F.3d at 678.  But as the Court of Appeals observed in *Safavian*, the conviction in *Moore* must have been based on a duty arising from the contract, not the government inquiry, because "the jury instructions in *Moore* stated" that a disclosure duty can "arise[] from requirements in federal statutes, regulations, or government forms." *Safavian*, 528 F.3d at 965 n.7 (quoting *Moore*, 446 F.3d at 680).

disclose all facts material to the government's inquiry.[3]  Several of the government's cases found

disclosure duties arising from government forms that either expressly demanded complete

responses or that contained affirmative certifications of completeness.  *See United States v.*

*Calhoon*, 97 F.3d 518, 526–27 (11th Cir. 1996) (Medicare reimbursement form expressly

required complete disclosure, as did a regulation); *United States v. Bowser*, 318 F. Supp. 3d 154,

169–70 (D.D.C. 2018) (form contained affirmative certification of completeness), *appeal filed*

No. 18-3062 (D.C. Cir. Aug. 30, 2018); *United States v. Cisneros*, 26 F. Supp. 2d 24, 32 (D.D.C.

1998) (questions posed to the defendant were rooted in a government form that the defendant

had completed).[4]

If the Justice Department wants to require that all responses to FARA Unit inquiries

contain a certification of completeness, it might prescribe a form or promulgate a regulation to

that effect.  Indeed, it has done just that for different communications with the FARA Unit.  *See*

28 C.F.R. § 5.2(f) (requiring that anyone who requests a FARA advisory opinion "must certify

that the review request contains a true, correct, and complete disclosure").  But for "potential

obligation letters" like the ones at issue in this case, there is no requirement that the response

contain any such certification.

Mr. Craig does not "contend[] that . . . he had no duty to be *truthful*" – no matter how

many times the government says it.  Opp. at 1 (emphasis added); *see also id.* at 15, 19.  All

communications with the government must be truthful, and Mr. Craig does not "contend"

otherwise, as the government well knows.  The government has created that straw man in order

---

[3] One of the government's out-of-circuit cases, decided before *Safavian*, might  support such a
disclosure duty – *United States v. Stewart*, 433 F.3d 273, 318 (2d Cir. 2006).  *But see White
Eagle*, 721 F.3d at 1117–18 (adopting *Safavian*'s analysis).  In any event, the government does
not dispute that *Safavian* is binding precedent in this Circuit.

[4] The court in *Safavian* distinguished *Cisneros* on this basis. *See* 528 F.3d at 965 n.7.

to frame its arguments around "a duty of *truthful* disclosure," *id.* at 15, 16, 17, 19 (emphasis added), diverting focus away from the real question: whether there is any duty *not to omit* potentially relevant facts in response to the FARA Unit's inquiry.

There is nothing wrong with truthful answers to government questions that do not include all of the facts the questioner might want to know. Although the government tries to resist that reality – a reality recognized by the court in *Safavian* – concealment of material facts in response to questions from a government official is only a crime under § 1001(a)(1) if there was a specific legal duty to disclose those facts arising from a statute, regulation, or form. There was no such duty here, and Count One must be dismissed as a result.

## II. The government cannot salvage Count One by pointing to allegations of isolated false statements.

The government argues that even if Mr. Craig did not have a duty to disclose material information to the FARA Unit, "Count One of the indictment stands because it includes Defendant's affirmative false statements as part of the § 1001(a)(1) scheme." Opp. at 27. But the allegations of affirmative false statements do not save Count One from dismissal either on its face, *see* Def.'s Mot. to Dismiss Count One ("Mot."), ECF No. 23, § I.A–B, or for grand jury error, *see id.* § I.C.

### A. The false statement allegations cannot cure the facial defect in the Indictment because Count One charges a concealment scheme only.

Section 1001(a)(1) encompasses both concealment schemes and falsification schemes, but Count One of the Indictment in this case alleges a *concealment* scheme only, as even the government acknowledges. *See* Opp. at 27 (stating that "Count One of the Indictment properly charges Defendant with a single scheme to conceal"); *id.* at 31 (stating that "the indictment clearly charges Defendant with a concealment scheme"); *id.* (referring to "the charged scheme to conceal material facts from the FARA Unit"). The crux of any scheme offense under

§ 1001(a)(1) is the "material fact" that was falsified or concealed, and the only "material facts" referenced in Count One are alleged to have been omitted or concealed, not falsified.  *See* Indictment ¶¶ 50.c, 63.

The government carefully and repeatedly states that "Defendant's scheme *included* affirmative false statements," *e.g.*, Opp. at 26 (emphasis added), but it characterizes the false statement allegations as part of a charged scheme *to conceal material facts* – not as a falsification scheme.  *See, e.g.*, *id.* at 27 ("Count One of the Indictment properly charges Defendant with a single scheme to conceal that involved Defendant's consistent false statements, omissions, and other acts . . . ."); *id.* at 1 (asserting that the alleged false statements and omissions were both "designed to conceal [Mr. Craig's] registrable activity").  We agree with the government about the structure of Count One.  *See* Mot. at 12 ("Although the Indictment alleges that certain false and misleading statements were included in some of Mr. Craig's written communications with the FARA Unit, those statements are encompassed within the charged 'concealment' of the material facts listed in Paragraph 63.").

If the Court agrees with Mr. Craig that there was no duty of full disclosure that could support a concealment scheme, the government is wrong to suggest that the Court can pluck out the false statement allegations and treat them as though they were charged as standalone offenses under 18 U.S.C. § 1001(a)(2).  Count One charges a scheme offense under § 1001(a)(1), *not* a false statements offense under § 1001(a)(2).  The government references the "false statement provision of § 1001(a)(1)," Opp. at 27, but there is no such thing.  Subsections (a)(1) and (a)(2) codify separate offenses with different elements.  S*ee United States v. Woodward*, 469 U.S. 105, 108 & n.4 (1985) (describing different elements under clauses of § 1001 that later became (a)(1) and (a)(2)).  In particular, a false statement is not sufficient to support a scheme conviction under

(a)(1). *Safavian*, 528 F.3d at 967 n.12 ("[U]nder § 1001(a)(1) a false statement alone cannot constitute a 'trick, scheme, or device.'"). Nor is a false statement *necessary* to a scheme offense: a scheme offense must include "acts of falsification [or] concealment," *United States v. Hubbell*, 177 F.3d 11, 13 (D.C. Cir. 1999), but those acts need not be false statements.

Accordingly, the grand jury that indicted Mr. Craig under § 1001(a)(1) did not need to find that he willfully made any specific "materially false" statement, as it would have needed to do to indict under § 1001(a)(2). *United States v. Verrusio*, 762 F.3d 1, 20 (D.C. Cir. 2014) ("An essential element of the false statement offense of 18 U.S.C. § 1001(a)(2) is that the statement be 'materially false.'" (citation omitted)). To allow the government to proceed on a false statements theory would subject Mr. Craig to a charge not found by the grand jury, in violation of his Fifth Amendment right not to be "convicted of an offense not charged in the indictment." *Stirone v. United States*, 361 U.S. 212, 213 (1960). The government may present "trial evidence that narrow[s] the indictment's charges without adding any new offenses," but the government may not rely on trial evidence that "*broaden[s]* the possible bases for conviction" relative to what is charged in the indictment. *United States v. Miller*, 471 U.S. 130, 138 (1985). The grand jury did not charge an offense under § 1001(a)(2), so recasting Count One as an (a)(2) offense would "broaden the possible bases for conviction," in violation of *Miller* and the Fifth Amendment.[5]

_____

[5] The government gets no mileage from the fact that the lack of a duty in *Safavian* led the court to reverse only the portions of the § 1001(a)(1) counts that rested on a concealment theory, leaving the portions that rested on false statements to be reversed on other grounds. *See* Opp. at 26–27. The defendant in *Safavian* did not argue that, in a § 1001(a)(1) case, it was improper for the district court to separate out an individual false statement on a special verdict form, allowing the jury to rely on that statement as a standalone basis for conviction. *See* 528 F.3d at 962–63 (listing defendant's arguments). The Court of Appeals thus had no occasion to decide that issue. After the court reversed the "false statement" portions of the § 1001(a)(1) counts on other grounds, *Safavian*, 528 F.3d at 966–69, the government obtained a new indictment under *both* § 1001(a)(1) *and* § 1001(a)(2). *See United States v. Safavian*, 644 F. Supp. 2d 1, 7 (D.D.C. 2009), *aff'd*, 649 F.3d 688 (D.C. Cir. 2011).

### B.       The false statement allegations cannot cure the grand jury error.

The government does not dispute that the grand jury was instructed that it could indict

Mr. Craig on an omission theory. *See* Opp. at 25–26. If that instruction was erroneous because

there is no disclosure duty, the government does not even attempt to salvage Count One from

dismissal. *See id.* It does not reference the "grave doubt" standard from *Bank of Nova Scotia v.*

*United States*, 487 U.S. 250 (1988), let alone attempt to argue that it is not satisfied here. Nor

does the government suggest that any such error was harmless because the false statement

allegations were the real basis for the grand jury's decision to indict Mr. Craig on Count One.

The government's silence on that point is a clear acknowledgement that the crux of the grand

jury's decision to charge Count One was its omissions theory. The government does complain

that we "cherry-picked" portions of the grand jury presentation that focused on omissions. Opp.

at 25. But if that were so, one would expect the government to fill in the gaps with transcript

citations of its own, showing that alleged false statements were actually front and center. But the

government does not cite a single page of grand jury testimony. The reality is that the

government presented a theory of omission to the grand jury, and there is grave doubt that the

grand jury would have indicted Mr. Craig if it had not been instructed that it could do so

pursuant to that theory.

Rather than argue that the false statement allegations can save Count One from dismissal

even if the omission instructions were erroneous, the government doubles down on its argument

that the instructions were *not* erroneous, reiterating its position that Mr. Craig was subject to a

disclosure duty. *See* Opp. at 25–26. The government has essentially conceded that if there was

no such duty, then the grand jury received erroneous instructions on the elements of the offense

charged in Count One, and Count One must be dismissed as a result.

III.   **Count One relies on conduct that could have been charged as a "completed" scheme before the limitations period, and that conduct is now time-barred.**

The government argues that "all of Count One is properly within the statute of limitations," because "when some of the acts taken in furtherance of [a] § 1001(a)(1) scheme fall within the applicable statute of limitations, the entire scheme is timely." Opp. at 28–29. In support, the government contends that "[a] 'scheme' is not complete for statute of limitations purposes until the last affirmative act in furtherance of the scheme is undertaken." *Id.* at 28.

The government is wrong: outside the narrow realm of continuing offenses, a criminal offense is "completed" for statute of limitations purposes "as soon as each element of the crime has occurred." *United States v. McGoff*, 831 F.2d 1071, 1078 (D.C. Cir. 1987). That moment triggers the running of the statute of limitations "regardless of whether the defendant continues to engage in criminal conduct" afterward that the government could permissibly charge as part of the same count. *United States v. Yashar*, 166 F.3d 873, 879–80 (7th Cir. 1999). For some schemes under § 1001(a)(1), the elements are not satisfied until the defendant's last affirmative act is undertaken. *See* Mot. at 31–32 (discussing *Bramblett v. United States*, 231 F.2d 489 (D.C. Cir. 1956)).[6]  But here, the government does not dispute that "the scheme charged in Count One could have been 'brought and proved' before the limitations date based only on conduct preceding that date." Mot. at 31 (citation omitted). Under those circumstances, the pre-limitations portion of Count One must be dismissed as time-barred because § 1001(a)(1) does not codify a continuing offense.

---

[6] *Bramblett* does not support the government's argument that "when some of the acts taken in furtherance of the § 1001(a)(1) scheme fall within the applicable statute of limitations, the entire scheme is timely." Opp. at 28. The elements of the charged scheme in *Bramblett* were not satisfied until a point in time within the limitations period. *See* Mot. at 31–32. Indeed, the indictment in *Bramblett* reveals that the *entire* charged scheme in each of the seven § 1001 counts was contained within the limitations period. *See id.* at 32; *see also* ECF No. 19-15 (*Bramblett* indictment).

The government tries to have it both ways by treating § 1001(a)(1) like a continuing offense while suggesting that "the Court need not tackle th[e] question" of whether it actually is one. Opp. at 29. According to the government, the "continuing offense doctrine does not apply 'where the charged criminal conduct itself extends over a period of time. The doctrine comes into play where it is contended the actual conduct of the defendant ended but the crime continued past that time.'" *Id.* at 29–30 (citation omitted). But the continuing offense doctrine is not limited "to offenses in which the defendant's affirmative actions cease and the offense continues." *Yashar*, 166 F.3d at 877 (rejecting government argument akin to the government's argument here). Rather, in a case where the charged criminal conduct extends over a period of time past the moment when the elements of the offense are first satisfied, the statute of limitations runs from the last charged act *only* if the offense is a continuing one. *See id.* at 876–77.

In a conspiracy, for example, all of the elements are satisfied as soon as any co-conspirator undertakes a single overt act in furtherance of the unlawful agreement. *Boyle v. United States*, 556 U.S. 938, 950 (2009). But because a conspiracy is a continuing offense, the statute of limitations for a conspiracy runs from the final overt act, not the first one. *Toussie*, 397 U.S. at 122. Similarly, the offense of failure to register under FARA is complete as soon as a defendant fails to register within ten days of first acting as an agent of a foreign principal. *See United States v. Manafort*, 318 F. Supp. 3d 1, 4 (D.D.C. 2018). But because failure to register is a continuing offense, the statute of limitations runs from the final act undertaken as an unregistered agent, not the first one. *McGoff*, 831 F.2d at 1071.

The government argues that "scheme" offenses under § 1001(a)(1) work the same way, with the statute of limitations running from the "last act of concealment in furtherance of" the

scheme. Opp. at 31. But a court may "extend[] the limitations period" in this manner "only in cases in which Congress explicitly defines an offense as continuing, or in which the crime by its nature is such that Congress must have intended it to be considered continuing." *Yashar*, 166 F.3d at 877 (discussing *Toussie*). The government makes no effort to show that § 1001(a)(1) is a continuing offense under the governing standard articulated in *Toussie* – an implicit concession that it is not. *See* Opp. at 29–31.

In *United States v. Sunia*, 643 F. Supp. 2d 51 (D.D.C. 2009), Judge Walton rejected the government's attempt to charge time-barred conduct as "part of a larger pattern or scheme that straddles the statutory deadline." *Id.* at 72. The government tries to distinguish *Sunia* because it involved multiple acts aggregated together in a single count under "a course of conduct" theory, not a scheme offense under § 1001(a)(1). Opp. at 30–31. But that is a distinction without a difference. A scheme offense under § 1001(a)(1), just like a "continuing course of conduct" offense, permits the government to charge multiple independently sufficient acts together in a single count. *See United States v. Hubbell*, 177 F.3d 11, 14 (D.C. Cir. 1999). Thus, in either context, if the government is allowed to charge completed conduct from before the limitations period by grouping it together with timely conduct, then "a prosecutorial decision regarding the scope of the charge would determine the running of the limitations period. In that manner, the statute of limitations, designed as a control on governmental action, would instead be defined by it." *Sunia*, 643 F. Supp. 2d at 71 (quoting *Yashar*, 166 F.3d at 878).

The statute of limitations begins to run the moment an "offense" has allegedly been "committed," 18 U.S.C. § 3282(a), which occurs as soon as each element is satisfied. *McGoff*, 831 F.2d at 1078. Because all the elements of the offense charged in Count One are alleged to have been completed before the limitations date (if at all), the pre-limitations conduct is now

time-barred, and Count One must be dismissed in part to ensure that the jury does not rest its

verdict on time-barred conduct.

## CONCLUSION

Count One must be dismissed pursuant to Rule 12 because it fails to state an offense and

because it was returned by a grand jury that was erroneously instructed on the elements of the

charged crime.

Dated: June 7, 2019                       Respectfully submitted,


*/s/ William W. Taylor, III*

William W. Taylor, III (D.C. Bar No. 84194)
Ezra B. Marcus (D.C. Bar No. 252685)
ZUCKERMAN SPAEDER LLP
1800 M Street N.W. Suite 1000
Washington, D.C. 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
Email: wtaylor@zuckerman.com
Email: emarcus@zuckerman.com

William J. Murphy (D.C. Bar No. 350371)
Adam B. Abelson (D.C. Bar No. 1011291)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
Tel: (410) 332-0444
Fax: (410) 659-0436
Email: wmurphy@zuckerman.com
Email: aabelson@zuckerman.com

*Attorneys for Defendant Gregory B. Craig*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on June 7, 2019, the foregoing was served on counsel of record via the Court's CM/ECF Service.

*/s/ Ezra B. Marcus*
Ezra B. Marcus