## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| *v.* | **Case No. 1:19-cr-0125 (ABJ)** |
| **GREGORY B. CRAIG**, | |
| *Defendant.* | |

### DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNT TWO

In an effort to salvage its novel interpretation of 22 U.S.C. § 618(a)(2), and have it applied to the letter Mr. Craig sent to the Chief of the FARA Unit on October 11, 2013, the government nibbles at particular words and phrases. But it fails to account for the language of this specialized false statements provision, read as a whole and within its statutory context.  As the Supreme Court reiterated just ten days ago: "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Home Depot U. S. A., Inc. v. Jackson*, No. 17-1471, 2019 WL 2257158, at *4 (U.S. May 28, 2019) (citation omitted).

Our Motion to Dismiss Count Two demonstrated that the plain meaning of the words Congress used in § 618(a)(2), when "read in their context" and "with a view to their place in the overall statutory scheme," make clear that this false statements provision does not apply generally to any documents submitted in connection with a FARA inquiry, as the government would have it, but only to documents filed with the Attorney General "under the provisions" of FARA—pointing to specific provisions requiring such filing.  The statute refers to "other document[s]" at the end of a list that originally included three other items and now includes two—all of which are documents that must be filed with the Attorney General under specific

provisions of FARA, driving home the kind of documents covered by § 618(a)(2). And the legislative history of this provision shows that Congress amended FARA to parallel the Voorhis Act, which imposed false statement prohibitions only on documents that were mandated to be filed by that statute.

The government claims that Congress intended to treat all written documents submitted to the FARA Unit as subject to potential criminal liability for misleading omissions when in 1942 it transferred administrative responsibility for FARA enforcement from the State Department to the Department of Justice, but it ignores the legislative history belying any such intent. And the government offers no explanation for why Congress would want to create such expanded criminal liability for all written communications sent to the FARA Unit, but not to any other investigative body within the Justice Department or elsewhere, and why—if Congress had such an intention —it would limit omissions liability to written documents, and not include within this expanded liability oral statements like those made during Skadden's meeting with the FARA Unit on October 9, 2013.

The letter upon which Count Two is based was not a document filed with or furnished to the Attorney General "*under the provisions of*" FARA, because nothing in the FARA statute, or even in its implementing regulations,[1] requires or governs the submission of such letters as part

---

[1] Section 618 refers in multiple places, but not in subsection (a)(2), to the regulations promulgated under FARA. *See* §§ 618 (a)(1), (c), (f) & (g). If the omission of reference to the regulations were construed as an oversight or drafting error, rather than an intentional omission, then the false statements provisions of § 618(a)(2) might apply to documents filed pursuant to the regulations, as well as documents required to be filed under the statute. We note, however, that willful violations of the regulations already are subject to criminal sanction under § 618(a)(1). Thus, if a party were to seek a formal determination from the FARA Unit regarding application of the statute to a contemplated course of conduct, or the applicability of a statutory exemption under § 613, and willfully falsify the requisite certification "that the review request contains a true, correct and complete disclosure with respect to the proposed conduct," 28 C.F.R. § 5.2(f), reliance on § 618(a)(2) to support a criminal charge would be unnecessary.

of the give and take the FARA Unit engages in with persons or entities whose activities invite scrutiny. Rather, § 618(a)(2) applies only to registration statements or supplements thereto, to statements and documents filed with registration statements, and to certain other documents filed pursuant to the specific requirements of the statute. Moreover, the statute plainly criminalizes omissions only in documents in which "material fact[s] [are] required to be stated," and the only documents in which any facts are "required to be stated" are documents required to be filed by registrants. This plain meaning of the statutory language, read in its proper context, is compelled further by canons of statutory construction, by the statute's legislative history, and by the rule of lenity, none of which the government effectively addresses.[2]

## ARGUMENT

### A.  The Statute's Plain Meaning and Context.

The government engages in linguistic gymnastics by seeking separately to define the words "document," "any," "filed," "furnished," and "under," *see* Gov't Opp. to Def.'s Mot. to Dismiss Count Two ("Opp."), ECF No. 35, at 6-8, but the Court is called upon to evaluate the meaning of the relevant statutory language viewed as a whole.   The statute covers false

---

Nonetheless, the contrast between the formality of these § 2 administrative filings, and the absence of *any* regulatory structure to the exchange of letters at issue in this matter, is striking.  It lends further support to our argument that Mr. Craig's letter of October 11, 2013 was not a document "filed with or furnished to the Attorney General under the provisions of [FARA]."

[2]This analysis applies as well to the government's effort to salvage Count One, which includes within its scope Mr. Craig's letter dated June 3, 2013, his letter of October 11, 2013, and  oral statements he allegedly made during the meeting of October 9, 2013. To the extent that the government relies on § 618(a)(2) as creating a duty of full disclosure in responding to a FARA inquiry, and thereby seeks to avoid the holding in *United States v. Safavian*, 528 F.3d 957 (D.C. Cir. 2008), our Reply to the government's Opposition to the Motion to Dismiss Count One adopts and incorporates the arguments and analysis in this Reply. The alleged false or misleading statements contained in the June 3, 2013 letter have not been charged in Count Two, presumably because they are barred by limitations; the alleged false or misleading statements made during the meeting between Skadden and the FARA Unit could not be charged in Count Two because oral statements are not documents.

3

statements or material omissions in "any registration statement or supplement thereto or in any other document filed with or furnished to the Attorney General *under the provisions of [FARA]*." 22 U.S.C. § 618(a)(2) (emphasis added).

FARA itself makes clear in § 612 what documents are filed with or furnished to the Attorney General "under the provisions of this subchapter." The documents are a "registration statement and supplements thereto" (22 U.S.C.§§ 612 (a) & (b)) and a large volume of "other document(s)" specified in subsections 612 (a)(1) through (a)(11). These provisions are flatly inconsistent with the notion that § 618(a)(2) applies to *any* written correspondence that a nonregistrant sends to anyone in the FARA Unit to provide answers to the Unit's questions.

In reviewing similar language in the attorney's fees provisions of the Equal Access to Justice Act, the Supreme Court held that the most natural reading of "an adjudication *under section 554*" of the Administrative Procedure Act was to apply it to "those proceedings [that were] 'subject to' or 'governed by' § 554." *Ardestani v. INS*, 502 U.S. 129, 135 (1991) (emphasis added). In *Blackman v. District of Columbia,* 456 F.3d 167 (D.C. Cir. 2006), a decision cited by the government, the Court of Appeals followed *Ardestani,* noting that although the word "under" has many dictionary definitions, "we draw its meaning from the context of the statute before us." *Id*. at 176. That context, when the word "under" appears next to a statutory reference, such as the "provisions of this subchapter," requires that "under" should be "defined as 'required by, in accordance with, or bound by.'" *Id*. at 177 (quoting *D.C. Hosp. Ass'n v. District of Columbia*, 224 F.3d 776, 779 (D.C. Cir. 2000) and Webster's Third New Int'l Dictionary 2487 (1981)).

There is no provision of FARA that required or bound Mr. Craig to comply with Ms. Hunt's request for a letter summarizing the October 9, 2013 meeting, and no provision of the

statute that governed the contents of his October 11, 2013 letter. *See* Def.'s Mot. to Dismiss Count Two ("Mot."), ECF No. 20, at 4 (quoting Department of Justice statements that letters of inquiry from the FARA Unit are not referenced in the statute and "nothing in the FARA statute compels the potential registrant to respond"). This is in stark contrast to the duty of a registrant to make fulsome disclosures. The plain meaning of § 618(a)(2) is that it applies to documents filed with or furnished to the Attorney General under specific provisions of the statute and that are governed by the statute's terms.

There is no question that § 618(a)(2) covers omissions only in documents required to be filed by registrants. Section 618(a)(2) punishes anyone who, in a covered document, "[1] willfully omits any material fact *required to be stated therein* or [2] willfully omits a material fact or a copy of a material document necessary to make the statements *therein* and the copies of documents furnished *therewith* not misleading." Congress could only have meant for the "required" clause to apply to statutorily required submissions, because those are the only documents in which any material facts are "required to be stated." And Congress meant *the same* documents when it wrote the "misleading" clause, because the references to statements "therein" and copies of documents furnished "therewith" refer back to the same documents at issue in the "required" clause. Thus, Congress imposed a duty of completeness for documents in which certain material facts are "required to be stated," and not for any others. The only documents in which certain facts are "required to be stated" are statutorily required submissions by registrants. If this is not the only sensible interpretation of Congress's words, then the statute is hopelessly vague and the rule of lenity requires that it be interpreted in the manner most favorable to the defendant.

The government makes three contextual arguments in opposition to the plain meaning of the words used by Congress. First, the government emphasizes that the statutory definition of "registration statement" in 22 U.S.C. § 611(k) "means the registration statement required to be filed with the Attorney General under section 612(a) of this title, and any supplements thereto required to be filed under section 612(b) of this title, and includes all documents and papers required to be filed therewith or amendatory thereof or supplemental thereto, whether attached thereto or incorporated therein by reference." *See* Opp. at 8. From this definitional provision, the government argues that "any other document" in § 618(a)(2) must be applied to something other than the documents that are required to be filed along with a registration statement or a supplement. *Id.* at 8-9. The government further implies that if Mr. Craig's interpretation of the statute were adopted, there would be no "other documents" to which § 618(a)(2) could apply, rendering the residual phrase as "mere surplusage." *Id.* at 12-13.

The government is wrong, for two reasons.  In the first place, throughout the statute, Congress made separate references to registration statements and supplements and amendments thereto, even though § 611(k) broadly defined a "registration statement" to include registration statements, supplements, amendments and documents incorporated therewith.  *See, e.g.*, 22 U.S.C. § 612(c) ("The registration statement and supplements thereto shall be executed under oath  . . . ."); § 612(d) (referring to both registration statements and supplements thereto); § 612(e) (same); § 616(b) (requiring Attorney General to furnish copies of registration statements, amendments and supplements to the Secretary of State for comment and use); § 617 (establishing liability of officers and directors of corporate agents for failing to file registration statements and supplements thereto); § 618(e) (making it a continuing offense for one to willfully fail to file a registration statement or supplement thereto).  And § 618(a)(2) itself refers

to "supplement[s]," which are included in the definition of "registration statement."  Section 618(a)(2) thus follows the pattern that appears throughout the statute of making separate references to registration statements, and  supplements, and amendments thereto – even though that may have been technically redundant given the broad definition of a "registration statement" contained in § 611(k). There is no reason to believe that Congress thought its definition of "registration statement" in § 611(k) rendered superfluous every other reference to supplements, amendments and incorporated documents throughout the rest of the statute, including in § 618(a)(2).

And even if the reference to "other document[s] filed with or furnished to the Attorney General under the provisions of this subchapter" was not intended to refer to the many additional documents that are required to be filed and furnished as part of a registration statement under the eleven subparts of § 612(a), *see* Mot. at 8-9, that does not exhaust the list of documents that are required to be filed under the statutory provisions.  For example, § 613 of the statute creates eight statutory exemptions from the filing and registration requirements of FARA.  For some of those exemptions to be applicable, statements must be filed with the Department of State and transmitted to the Attorney General.  *See* 22 U.S.C. § 613(b), (c) and (f). In addition, as the government has pointed out, since 1942, the regulations promulgated by the Department of Justice have provided for formal inquiries concerning the application of FARA's requirements to specific factual patterns.  *See* Opp. at Ex. 10 (28 C.F.R. Part 5 (Administration of the Foreign Agents Registration Act, June 23, 1942)); *see also* 22 U.S.C. § 620 (authorizing the Attorney General to issue regulations under FARA).  Then, as now, general inquiries about the application of the statute "must be accompanied by a detailed statement of all facts necessary for a determination of the question submitted."  28 C.F.R. § 5.2 (1942).  These statements concerning

the application of the statutory exemptions, and other formal inquiries concerning the application of FARA, were not, and are not, covered by § 611(k)'s broad definition of a registration statement. Even if such statements could be read to come within the scope of § 618(a)(2) as documents filed "under the provisions of [FARA]," Mr. Craig's letter to Ms. Hunt, written at her request, was not a document that was required to be sent, nor were its contents governed by any provision of FARA or its implementing regulations. *See* note 1, *supra*.

The government's second contextual argument focuses on the fact that the criminal enforcement provisions of FARA apply to "any person" who furnishes a document to the Attorney General, arguing that this broad phrase must mean that § 618(a)(2) applies not only to registrants – *i.e.*, persons who file registration statements – but also to other (non-registered) persons, like Mr. Craig.  *See* Opp. at 10. This argument also fails for two reasons.  In the first place, the government's use of an ellipsis when quoting § 618(a)(2) is misleading. That subsection does not begin with the words "Any person who," as the government suggests (*see* Opp. at 3). Rather, the criminal enforcement provisions of § 618**(a)** begin with the words "Any person who –" and then set forth two separate subsections, both of which apply to "Any person who --

> (1) willfully violates any provision of this subchapter or any regulation thereunder, or
>
> (2) in any registration statement or supplement thereto or in any other document filed with or furnished to the Attorney General under the provisions of this subchapter willfully makes a false statement of a material fact or willfully omits any material fact required to be stated therein or willfully omits a material fact or a copy of a material document necessary to make the statements therein and the copies of documents furnished therewith not misleading

22 U.S.C. § 618(a).

The "Any person who" formulation, derived from the original text of the 1938 statute, applies *both* to registrants who willfully file false or misleading registration statements, supplements and other documents required to be filed under FARA (subsection (2)), and to other persons who willfully engage in foreign agency activities *without* registering (subsection (1)). And as shown above, nonregistrants who seek a formal advisory opinion from the FARA Unit pursuant to 28 C.F.R. § 5.2, or who request an exemption, also are required to file formal statements that may be subject to the provisions of § 618(a)(2). The government's argument thus creates a false dichotomy between registrants under FARA and other persons who may or may not be subject to the requirements of the statute and implementing regulations.

Third and finally, the government argues that "[t]he statutory context demonstrates Congress's understanding that FARA would be administered not merely through registration statements and other submissions that are expressly referred to in the statutory text, but also through other submissions and documents." Opp. at 13–14 (discussing 22 U.S.C. §§ 612(f), 612, 613, 615, 618(f), 620). That is true enough, but it is equally true of *any* agency administering *any* statute: "Congress underst[ands] that the effective implementation of [any statute] would depend on [the agency]'s ability to rely on the information provided" to it. Opp. at 15. The fact that Congress understood that documents beyond the statutorily required ones would be involved in the general "implementation" of FARA does not mean that it meant to take the highly atypical step of *criminalizing omissions* in any FARA-related document sent to the Justice Department in any context.

Rather, taken in context, and read as a whole, the language of § 618(a)(2) has a plain and natural meaning: its scope is limited to those "other document[s]" that, like a "registration statement" or "supplement," are required to be filed by a registrant "under the provisions of

[FARA]." The statute does not apply by its terms or otherwise to a letter that Ms. Hunt asked Mr. Craig to send summarizing the discussions that were held at a just-completed meeting. The government concedes, as it must, that oral statements made during that meeting were not covered by FARA's false statement provision. Likewise, the letter was not required to be submitted to the agency, nor was it submitted under oath, like the registration statements and supplements required by § 612(c), nor was it "certified" as containing a "true, correct and complete disclosure of the requested information," as would be required in connection with a formal request for agency review under 28 C.F.R. § 5.2(f).

In short, the government is twisting the plain meaning of the words of the statute to justify a criminal charge based on a statute for which such a charge never was contemplated by Congress.[3]

### B.   The *Ejusdem Generis* Canon Applies.

The government attempts to draw from the Supreme Court's opinion in *Ali v. Federal Bureau of Prisons*, 552 U.S. 214 (2008), a general rule that the *ejusdem generis* canon of statutory construction only applies when a general or collective term follows a list of specific items "separated by commas." *See* Opp. at 11-12. It then argues that the text of § 618(a)(2) fails

---

[3] That is probably why, until the indictment of Mr. Manafort, no one had been prosecuted for a false statements offense under § 618(a)(2) since the reversal of the conviction by the Supreme Court in *Viereck v. United States*, 318 U.S. 236 (1943) – and that prosecution was predicated on the original 1938 version of the statute, and based on alleged false and incomplete statements the defendant made in a supplemental registration statement filed with the Attorney General. The government seeks to find comfort for the application of § 618(a)(2) to letters written by a nonregistrant in response to inquiries from the FARA Unit in Chief Judge Howell's opinion in *In re Grand Jury Investigation*, 2017 WL 4898143 (Oct. 2, 2017). But in her opinion in that case, Chief Judge Howell, acting as the Grand Jury judge, determined pre-indictment, that false statements made in such letters "*may* constitute violations of, *inter alia*, 22 U.S.C. § 618(a)(2) . . . ; [and] 18 U.S.C. § 1001(a)  . . . ; and 18 U.S.C. § 371 . . . ." (emphasis added). There is no indication that the parties in that grand jury matter had actually briefed the applicability of § 618(a)(2) to the letters submitted to the FARA Unit by the targets of the investigation or that Chief Judge Howell decided that question.

to satisfy this "comma" requirement. But there is no such requirement. In *Ali*, the Court actually held that *ejusdem generis* did not apply to the statutory phrase "any officer of customs or excise or any other law enforcement officer" because the phrase included only "one specific and one general category," 552 U.S. at 225 – not because it lacked commas. The Court read "any officer of customs or excise" as one specific category, and "any other law enforcement officer" as a separate general category not properly limited to common attributes shared with the first category. To be sure, the Court contrasted two prior cases that did involve statutory language that included "a list of specific items separated by commas and followed by a general or collective term," *id.*, but the Court certainly did not hold that a list of items separated by commas is required in order for *ejusdem generis* to apply. *See id.* at 225 (quoting Justice Scalia's concurring opinion in *United States v. Aguilar*, 515 U.S. 593, 615 (1995), for the proposition that *ejusdem generis* does not apply to a "an omnibus clause that was 'one of . . . several distinct and independent prohibitions' rather than 'a general or collective term following a list of specific items to which a particular statutory command is applicable.'").[4]

The list included in § 618(a)(2) amply satisfies the prerequisites for application of *ejusdem generis* based on the holding in *Circuit City Stores, Inc. v. Adams*, that "where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific

---

[4] In *Reading Law: The Interpretation of Legal Texts*, the late Justice Scalia and his co-author Professor Garner describe *Ali* as being predicated on the failure of the statutory language to meet the requirement of a list of at least two specific items, followed by a more general catchall phrase, because the Court construed the phrase "officer of customs or excise" as referring to one specific type of officer dealing with customs and excise taxes and duties. Scalia & Garner, at 207 (2012). (Justice Scalia joined in the majority opinion in the *Ali* decision.) Scalia and Garner include a lengthy discussion of the *ejusdem generis* canon in their textbook, and they provide historical commentary on the doctrine dating back to 1888. None of the seven commentators they quote indicates that the requisite list of two or more specific items must be set off by commas. Nor do Scalia and Garner. *See id.* at 202-03.

words." 532 U.S. 105, 114-15 (2001) (quoting 2A N. Singer, *Sutherland on Statutes and Statutory Construction* § 47.17 (1991)).   Under *Circuit City Stores*, a list of two specific items, followed by a general or collective term, will suffice.   *See* Scalia & Garner, *supra* at 212 ("Any lawyer or legislative drafter who writes two or more specifics followed by a general residual term without the intention that the residual term be limited may be guilty of malpractice.").   Moreover, when FARA was amended in 1942, Congress had included a list of *three* categories of statutorily required filings, followed by the catchall phrase "or any other document filed with or furnished to the Attorney General under the provisions of this Act."

The 1942 text is set forth in several of the exhibits attached to the Motion to Dismiss and the government's Opposition.   *See, e.g.*, Opp. Ex. 1 (Pub. L. No. 77-532, 56 Stat. 248 (1942)).   As amended in 1942, § 8(a)(2) of FARA, codified at 22 U.S.C. § 618(a)(2), applied to false or misleading statements or omissions contained "in [1] any registration statement or [2] supplement thereto or [3] in any statement under section 4(a) hereof concerning the distribution of political propaganda or [4] in any other document filed with or furnished to the Attorney General under the provisions of this Act . . . ."   56 Stat. 257.   The referenced statements concerning political propaganda were set forth in § 4(a) of FARA, 22 U.S.C. § 614(a), and required an agent of a foreign principal who was transmitting political propaganda to provide copies of the items, within 48 hours, to the Librarian of Congress and the Attorney General, along with "a statement, duly signed by or on behalf of such agent, setting forth full information as to the places, times, and extent of such transmittal."   56 Stat. 255.   Each of the three specific types of statements in § 618(a)(2) as enacted in 1942 – a "registration statement," a "supplement thereto," and a "statement . . . concerning the distribution of political propaganda" – was a statement ***required*** to be filed under specific provisions of the statute.   As a result, the catchall

phrase "any other document filed with or furnished to the Attorney General under the provisions of this Act" also must be confined to other documents that were ***required*** to be filed or furnished to the Attorney General.

When the specific statements to the Attorney General covered by § 614(a) were eliminated from FARA in 1995, as Congress modified the "propaganda" provisions and replaced the words "political propaganda" with "informational materials for or in the interests of such foreign principal," that amendment did not change Congress's obvious intent in 1942 to enact a false statements provision that covered only documents that were required to be filed under the statute.[5]

Given the government's refusal to recognize the application of the *ejusdem generis* canon to this statutory language, it is worth emphasizing that the canon is closely related to the more general rule that words or phrases grouped in a list "should be given related meanings," under the principle of *noscitur a sociis* – a word is known by its associates. *See* Scalia & Garner, *supra* at 195-98. Under this doctrine, a listing of specific items is not required; it is enough that words or phrases in a statute that are associated together should be given a similar meaning when there is some ambiguity about the meaning that Congress intended for one or more of those words or phrases. *See, e.g.*, *California Indep. Sys. Operator Corp. v. F.E.R.C.*, 372 F.3d 395, 400 (D.C.

---

[5] In *Meese v. Keene*, 481 U.S. 465 (1987), the Court grappled with the question whether FARA's required labeling of Canadian films involving the environmental impact of acid rain and the threat of nuclear war as "political propaganda" violated the First Amendment rights of those registered agents of the National Film Board of Canada seeking to distribute the films in this country. The text of § 614(a), as enacted in 1942, is set forth in footnote 5 of the Court's opinion. Congress later deleted all of the "political propaganda" language from the statute in 1995, and removed from § 614(a) the requirement that a foreign agent who transmits "information materials" for or in the interests of a foreign principal file a statement with the Attorney General "setting forth full information as to the places, times, and extent of such transmittal." That in turn necessitated an amendment to § 618(a)(2), eliminating the statutory reference to statements filed with the Attorney General concerning the distribution of "political propaganda." *See* Opp. Ex. 11 (Pub. L. No. 104-65, 109 Stat. 691, 699-700 (1995)).

Cir. 2004) ("The canon . . . is often wisely applied where a word is capable of many meanings in order to avoid giving unintended breadth to the Acts of Congress.") (citation and internal quotation marks omitted). Here, the fact that § 618(a)(2) plainly applied to three types of documents, all of which were required to be filed under the FARA statute as amended in 1942, confirms that the phrase "any other document filed with or furnished to the Attorney General under the provisions of [FARA]," must have a similar meaning, even if the *ejusdem generis* canon were not applicable.

In short, applicable canons of statutory construction buttress the plain meaning interpretation of § 618(a)(2) that it was not meant to apply to Mr. Craig's October 11, 2013 letter to Ms. Hunt. The letter was not required to be sent by any provision of FARA, and the content of the letter was not governed in any way by the statute or even by its implementing regulations.

### C. The Government Distorts The Legislative History of FARA.

When FARA was first enacted in 1938, the forerunner to § 618, set forth in § 5 of the Act, provided simply as follows:  "Any person who willfully fails to file any statement required to be filed under this Act, or in complying with the provisions of this Act, makes a false statement of a material fact, or willfully omits to state any material fact required to be stated therein shall, on conviction thereof, be punished by a fine of not more than $1,000 or imprisonment for not more than two years, or both." *See* Mot. Ex. 12 (Pub. L. No. 75-583, § 5, 52 Stat. 631, 633 (1938)).   The government inexplicably refuses to concede that the false statements provision of this criminal statute plainly applied only to statements that were made by registrants "in complying with the provisions of this Act." *See* Opp. at 20.   Instead, the government's principal argument is that Congress amended the statute in 1942, and "courts must 'presume [Congress] intends [the change] to have a real and substantial effect.'"   *Id.* (citing *Ross*

14

*v. Blake*, 136 S. Ct. 1850, 1858 (2016) and *Husky Int'l Electronics, Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016)). But that is merely a presumption; the controlling question is whether a given amendment reflects intent by Congress to change the preexisting statutory meaning. Courts routinely hold that some statutory amendments, given their context and the surrounding indicia of legislative intent, do not demonstrate Congress's purpose to effect a change in the meaning of a statute. *See, e.g.*, *United States v. Wilson*, 503 U.S. 329, 336 (1992); *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 317-18 (1985). Here the presumption should not be applied because the amendment in question merely changed the words "in complying with the provisions of this Act" (1938 version) to "under the provisions of this Act" (1942 version).

The government's reliance on *Ross* and *Husky*, and similar decisions, is misplaced. In both cases the Supreme Court was dealing with statutes that had been amended to achieve a particular substantive impact. In *Ross*, the Court was dealing with provisions of the Prison Litigation Reform Act of 1995 that were designed to change the exhaustion requirements under a prior statute from a "weak exhaustion provision" requiring exhaustion of state law remedies before bringing a federal claim only when "appropriate and in the interests of justice," to a mandatory requirement that would not leave exhaustion "to the discretion of the district court." *See* 136 S. Ct. at 1857–58. The Court therefore rejected a "special circumstances" exception to the mandatory exhaustion provisions of the statute as inconsistent with Congress's intent to *mandate* the exhaustion of state court remedies in all cases.

In *Husky*, the Court dealt with 1978 amendments to the Bankruptcy Code that were designed to expand the grounds for nondischargeability of debts to the extent those monetary obligations resulted from the debtor's having engaged in false pretenses or false representations, and to include as an additional ground "actual fraud." The Court decided that "actual fraud"

included fraudulent conveyances, whether or not accompanied by false statements, because the words "actual fraud" had been added to the statute by a substantive amendment. The Court determined that the amendment would be meaningless if fraudulent conveyances were only nondischargeable to the extent they involved false representations, because false representations already were covered by the prior version of the statute. *See* 136 S. Ct. at 1586–90.

By contrast, in this case, the government fails to recognize that we know precisely what Congress intended to achieve when it amended the false statement provisions of FARA, because Congress was clear about its purpose. To be sure, Congress noted that the bill enacted in 1942 "strengthens the original act," but there is nothing in the legislative history to suggest congressional intent to make any substantive change to the scope of the false statements provision. To the contrary, in the House Report accompanying the bill, the Committee on the Judiciary made clear that the amendments "do not change the fundamental approach of the statute, which is one not of suppression or of censorship, but of publicity and disclosure; *nor do they alter its scheme of administration*; nor are they designed to substantially broaden its coverage to include classes of persons who are not now required to register; nor do they greatly increase the size of the existing act and its regulations." *See* Mot. Ex. 15 at 3 (H.R. Rep. No. 77-1547, at 2 (1941)) (emphasis added).   Indeed, in the specific commentary about the transfer of responsibility for FARA registration from the State Department to the Department of Justice, which the government erroneously relies upon as envisioning some broader scope for the false statement provisions, Opp. at 16-17, the Committee explained its reasons for transferring FARA functions – none of them reflecting the government's imagined purpose:

> This transfer is dictated by several considerations. The administration of this act more appropriately fits in with the functions of the Department of Justice, where it will result in unified government supervision of the activities of aliens, agents of

> foreign principals, and certain organizational activity, which last is provided for in the so-called Voorhis Act. *This act and the Voorhis Act parallel each other closely in seeking to secure disclosure by registration from those who, under foreign control, act to influence the public. The administration and enforcement of the latter act have already been assigned to the Department of Justice. Therefore, there is considerable advantage in placing in the same hands the administration of both acts.*

H.R. Rep. No. 77-1547, at 4 (emphasis added). The government has conceded that the false statement provisions of the Voorhis Act apply only to false and incomplete Voorhis Act registration statements, Opp. at 22, but it fails to acknowledge this passage from the Committee Report stating that the registration and disclosure provisions of the two statutes were "parallel."

The House Committee also noted that § 8 of FARA, as amended, increased the penalties applicable to willful failures to register, and to the filing of documents containing false or misleading statements, from a maximum of $1,000/2 years to $10,000/5 years.  H.R. Rep. No. 77-1547, at 5. The Committee stated that these were the same penalties provided for a willful failure to register as those established by the Voorhis Act, but noted that the criminal penalties "for false and incomplete registration statements," were now more severe than those imposed under the Voorhis Act. *Id.* Nothing in the Committee Report suggested that Congress intended the amendments to § 8 of FARA to impose criminal penalties for false statements or omissions contained in any documents other than "false and incomplete registration statements." The two false statement provisions contained in the Voorhis Act, and in FARA, were considered by the Congress that enacted them to be identical in scope.[6]

---

[6]The legislative history of the 1942 amendments to FARA is somewhat complex.  The bill that accompanied H.R. Rep. No. 77-1547 was passed by the House and Senate, but was not signed by President Roosevelt following the bombing of Pearl Harbor and the declaration of war that followed, because of the President's concern that it would apply unnecessary and onerous requirements on agents of our allies "who are constantly coming to and from the United States to cooperate with us."  The President sought and Congress enacted additional exemption provisions from the requirements of FARA that would allow the Attorney General and Secretary of State to

The parallel scope of these provisions also is reflected in the additional legislative history assembled, but not fully addressed, by the government.  For example, during the hearings on H.R. 6045 shortly before the bombing of Pearl Harbor, the Justice Department official speaking in favor of the FARA amendments noted that "the penalties have been made comparable to the Voorhis Act, which is closely related to this."  Opp. Ex. 8 at 19 (Hearings on H.R. 6045, 77th Cong., 1st Sess. 15 (Nov. 28, 1941)).  He added that the transfer of responsibility from the State Department to Justice was recommended "in order to tie it in more closely with the administration of the Voorhis Act for the regulation of certain tyrannical organizations.  *These two acts dovetail one into the other very closely*." *Id*. (emphasis added).  The Justice Department official made no mention of an intended change in the scope of the false statements provision. *See also id*. at 17 (administration of FARA by Justice "will fit in like a glove with the administration of [the Voorhis] act.").

In short, the government's recitation of the legislative history of the FARA statute is incomplete, and misleading.  It fails to take into account (a) that there is no evidence that Congress intended in 1942 to broaden the scope of the false statements provision and (b) the substantial evidence that the administration of FARA was intended by Congress to be parallel with the Justice Department's administration of the Voorhis Act, a statute whose false statement provision plainly did *not* apply to documents that were not required to be filed by registrants.

---

exempt foreign agents of allied nations to the extent their actions were considered vital to the defense of the United States. With the exemption in place, a nearly identical bill was then passed by Congress and signed by the President. *See* Mot. Ex. 11 (H.R. Rep. No. 77-2038, at 1-3 (1942)).  *See also* 22 U.S.C. § 613(f) (setting out the special exemption provisions for allies essential to the national defense).

### D.  The Applicable Regulations and Forms.

The government pays scant attention to the argument that statements filed with the FARA Unit that are clearly covered by § 618(a)(2) say so, in plain language, on the forms that the Attorney General has prescribed for filing and furnishing those statements.  *See* Opp. at 23. These forms also are required to be filed under oath.  *See* 22 U.S.C. § 612(c); *see also* Mot. Exs. 16-21 (illustrating that all requisite forms for FARA registration statements and supplements contain a declaration that they are sworn to or affirmed under the penalty of perjury by the party executing the form).  And, as discussed above, when a nonregistrant requests from the FARA Unit a formal statement of the Justice Department's "present enforcement intentions," and specifically whether particular activity "requires registration and disclosure pursuant to the Act, or is excluded from coverage or exempted from registration and disclosure under any provision of the Act," 28 C.F.R. § 5.2(a), such a request must be certified by the applicant.  The "person signing the review request must certify that the review request contains a true, correct and complete disclosure with respect to the [applicant's] proposed conduct." *Id.* § 5.2(f).

The presence of these requirements gives fair notice to registrants filing FARA registration statements, supplements, amendments and incorporated ancillary documents, and to persons seeking formal statements of the Justice Department's "present enforcement intentions" about contemplated activities, that the documents presented for filing and review are subject to strict requirements of accuracy and completeness. By contrast, Mr. Craig was not required to send a letter to Ms. Hunt on October 11, 2013, and when he did so he was responding to her simple request for a written summary of the oral presentation Skadden made to the FARA Unit two days earlier.  He was not informed that four years later federal prosecutors would claim that

his letter "omitted material facts necessary to make the statements therein not misleading." *See* Indictment ¶ 67.[7]

We raise these forms and regulations primarily because they illustrate that for 80 years (ending in 2017), the Department of Justice behaved as though certain types of documents were covered by § 618(a)(2) and other documents – like Mr. Craig's letter – were not. The government's current position that § 618(a)(2) applies to a voluntary exchange of letters is a function of its newfound determination to invigorate FARA enforcement, including in ways that were not envisioned or authorized by Congress when it enacted the penal sanctions contained in FARA in 1938 and later clarified the text in 1942. But only Congress has the power to define crimes.

### E.  The Government Distorts the Rule of Lenity.

The government seeks to find comfort in the Court of Appeals' recent observation that "[t]he rule of lenity is a canon of 'last resort.'" Opp. at 23 (citing *Guedes v. Bureau of Alcohol, Tobacco and Firearms*, 920 F.3d 1, 27-29 (D.C. Cir. 2019)).  But in using the phrase "last

---

[7]The government lards its briefs in opposition to the legal issues raised by the defendant's motions with passages ascribing false motives and deception to the actions of Mr. Craig, *see, e.g.*, Opp. at 4-5.  Thus, it bears repeating here that the statements contained in Mr. Craig's letter of October 11, 2013, are completely accurate.  He is alleged to have made a false or misleading statement when he informed Ms. Hunt that Skadden provided a copy of the Tymoshenko Report to certain U.S. media outlets "in response to requests from the media," and "did not provide copies of the Report to any other media outlets in the United States." *See* Mot. Ex. 9. The evidence will show that this statement is true and complete.  Skadden did not provide a copy of the Report to any media outlet that did not request a copy.  The government also alleges to be false or misleading the statement that "[i]n responding to inaccuracies in U.S. news reports . . . the law firm did not consult with Ukraine, did not inform Ukraine, did not act under instruction from Ukraine and was in no way serving as an agent for Ukraine." *Id.* The evidence will show that Mr. Craig did not consult with representatives of Ukraine when he took steps to correct the false characterizations of his Report that were being promulgated by Ukraine and its agents, he did not inform them about what he would say to the media, he did not act under their instructions, and his conclusion that he "was in no way serving as an agent for Ukraine," when he corrected those false characterizations was factually accurate and on sound legal footing.

resort," the court meant only that the rule of lenity applies *after* other tools of statutory construction have failed to resolve an ambiguity.   *See Guedes*, 920 F.3d at 27 (rejecting argument that the court should invoke the rule of lenity *before* deferring to an agency's reasonable interpretation under *Chevron*).

Mr. Craig has no quarrel with this basic proposition.  In fact, we have argued that under ordinary principles of statutory construction, and the applicable canons, this Court should rule that § 618(a)(2) does not apply to Mr. Craig's letter.   To the extent, however, that the Court believes – at the end of the process – that the ambit of the statute remains ambiguous, then the rule of lenity dictates that the statute should not be applied to the letter that forms the sole predicate for Count Two.

The government also quotes *United States v. Castleman,* 572 U.S. 157, 172–73 (2014), for the proposition that the rule of lenity applies only to resolve "a grievous ambiguity or uncertainty in the statute."  In their treatise, Justice Scalia and Professor Garner note that the Supreme Court has used a wide range of language "for determining when the rule of lenity applies, ranging from when the court can make 'no more than a guess,' to when the court is 'left with an ambiguous statute,' to when there remains 'grievous ambiguity or uncertainty.'" Scalia & Garner, *supra* at 298-99 (footnotes and citations omitted).  They recommend the following criterion:  "whether, after all the legitimate tools of interpretation have been applied, 'a reasonable doubt persists.'"  *Id.* at 299 (citing *Moskal v. United States*, 498 U.S. 103, 108 (1990)).  That test honors the principle behind the rule:  "when the government means to punish, its commands must be reasonably clear." *Id.* at 299. And when they are not clear, "the consequences should be visited on the party more able to avoid and correct the effects of shoddy legislative drafting – namely, the federal Department of Justice or its state equivalent."  *Id.*

## CONCLUSION

Congress never intended the specialized false statement provision of FARA to apply to any documents other than those that, like registration statements and supplements, are required to be submitted "under the provisions of [FARA]."  22 U.S.C. § 618(a)(2).  This reading comports with a plain and natural interpretation of Congress's words; with the full context of the statutory language; with ordinary canons of statutory construction, including *ejusdem generis*; with the legislative history of the statute; and with the history of FARA's enforcement and the regulations the Justice Department has promulgated pursuant to the statute.  To the extent any doubt remains about Congress's meaning – whether viewed as a reasonable lingering question about Congress's intent, or a "grievous ambiguity or uncertainty" about the meaning of its words – that ambiguity should be resolved in favor of lenity.

For all the reasons set forth herein and in the Motion to Dismiss, the government's arguments to the contrary are not persuasive.  Count Two should be dismissed.

Dated: June 7, 2019

Respectfully submitted,

*/s/ William W. Taylor, III*

William W. Taylor, III (D.C. Bar No. 84194)
Ezra B. Marcus (D.C. Bar No. 252685)
ZUCKERMAN SPAEDER LLP
1800 M Street N.W. Suite 1000
Washington, D.C. 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
Email: wtaylor@zuckerman.com
Email: emarcus@zuckerman.com

William J. Murphy (D.C. Bar No. 350371)
Adam B. Abelson (D.C. Bar No. 1011291)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
Tel: (410) 332-0444

Fax: (410) 659-0436
Email: wmurphy@zuckerman.com
Email: aabelson@zuckerman.com

*Attorneys for Defendant Gregory B. Craig*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on June 7, 2019, the foregoing was served on counsel of record via the Court's CM/ECF Service.

*/s/ Ezra B. Marcus*

Ezra B. Marcus