**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 19-CR-125 (ABJ)** |
| | : | |
| **v.** | : | |
| | : | |
| **GREGORY B.  CRAIG,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' MOTION IN LIMINE TO EXCLUDE
DEFENDANT'S PROFFERED OPINION TESTIMONY**

The United States of America respectfully moves *in limine* to exclude the improper opinion testimony of Amy Jeffress, whom Defendant noticed as an expert witness. *See* ECF No. 40.  The issues to be decided in this case are straightforward: whether Defendant made false and misleading statements and omissions to the U.S. Department of Justice in 2013.  To confuse the issue, Defendant seeks to admit improper "state of mind" evidence through an expert witness, which could only result in distracting the jury from the actual record evidence of Defendant's knowledge of and state of mind for the offenses charged in the indictment.  The Court should not allow it.

*First*, the proposed expert testimony should be excluded because it is irrelevant to the charges in the indictment and risks confusing and misleading the jury.  Defendant is charged with making false statements and willful omissions, not with failing to register under the Foreign Agents Registration Act (FARA).  Ms. Jeffress' opinion that the facts of this case would not have led a reasonable practitioner to register under FARA in 2012 have no bearing on whether Defendant made false statements and omitted material facts in 2013 when the FARA Unit inquired about his activities.  Admitting Ms. Jeffress' opinion on that matter risks confusing the jury about the issue it will be charged to decide—whether Defendant made false statements and omissions—and

misleading it into believing that it must decide whether he had a registration obligation; indeed, Ms. Jeffress' testimony risks turning the case into a mini-trial on FARA registration obligations.

Moreover, Ms. Jeffress' testimony is irrelevant because she cannot speak to Defendant's actual state of mind about whether he had a registration obligation. To the extent that Defendant's state of mind on that point is relevant to the jury's decision on the charges here, Defendant cannot substitute Ms. Jeffress' opinion of what a "reasonable practitioner" might think for admissible evidence of what he actually thought. Substantial evidence exists that Defendant was told in 2012 that he would have to register under FARA if he participated in a public relations campaign on behalf of the Government of Ukraine. Admitting Ms. Jeffress' testimony risks confusing the jury.

The Court should also exclude the proffered testimony as irrelevant because Defendant is attempting to have Ms. Jeffress vouch for his alleged mental state, under the guise of a legal opinion. Only the jury can determine Defendant's mental state for the charges—and testimony by an expert as to this issue is inappropriate and inadmissible. If Defendant wants to present evidence of his mental state, he can call and/or cross examine the fact witnesses at trial and/or elect to testify.

*Second*, the Court should also exclude the testimony because Defendant's notice failed to comply with the requirements of Rule 16 of the Federal Rules of Criminal Procedure. Despite the government's request that Defendant supplement his disclosures, he failed to do so. Specifically, Defendant failed to describe the bases and reasons for the proffered opinions and testimony, and even failed to identify some of her other opinions by "reserving the right" to provide additional opinions at trial. In short, Defendant provided only two of Ms. Jeffress' opinions and none of the bases and reasons for them. The notice also failed to establish Ms. Jeffress' qualifications to opine as to what a reasonable practitioner would have done during 2012-2013—a time during which Ms. Jeffress was not a FARA practitioner and had no substantive FARA experience.

## I.     FACTUAL BACKGROUND

Before and during his representation of Ukraine in 2012, Defendant sought and received advice regarding his FARA registration obligations, which is evidence of his knowledge and state of mind.  *See*, *e.g.*, Indictment (ECF No. 1) ¶¶ 9, 14, 15, 20; *see also* email dated 2/13/2012 (Defendant states the he does not want to register under FARA for project; attached hereto as Exhibit (Ex.) A); additional email dated 2/13/2012 (Defendant receives initial FARA analysis from associate; attached as Ex. B); Email dated 4/16/2012 (Defendant repeats need for FARA advice as to implications of providing public relations advice to Ukraine from "someone from whom we can rely on with a straight face"; attached as Ex. C); Email dated 4/17/2012 (Defendant receives advice from FARA practitioner, Kenneth Gross, and his partner, Cliff Sloan, that if he were to "perform public relations aimed at the U.S." he would have to register under FARA; attached as Ex. D.).

On April 11, 2019, a federal grand jury in this district returned an indictment charging Defendant with one count of a false statements scheme in violation of 18 U.S.C. § 1001(a)(1), and one count of false and misleading statements under FARA in violation of 22 U.S.C. §§ 612, 618. The indictment does not include a charge for willful failure to register under FARA.

On April 17, 2019, the Court held a telephone scheduling conference with the parties, in which the government asked the Court to set a deadline for notice of proposed expert witnesses. Without ruling on the admissibility of any specific expert testimony, the Court cautioned the parties that it is not appropriate to call an expert witness at trial on a question of law, because the Court, with its jury instructions, would explain the law to the jurors.  *See* 4/17/19 Tr. at 20-22.

On April 19, 2019, the Court issued its Scheduling Order.  ECF No. 11.  Pursuant to this Order, the parties had until June 10, 2019, to submit expert disclosures.  Expert disclosures by the defense are governed by Rule 16(b)(1)(C) of the Federal Rules of Criminal Procedure, which state

that defendant must provide the government with "a written summary of any testimony that the defendant intends to use under Rules 702, 703 or 705 of the Federal Rules of Evidence." Fed. R. Crim. P. 16(b)(1)(C). The rule specifies that the written summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." *Id.*

On June 10, 2019, Defendant filed his expert witness disclosure, identifying attorney Amy Jeffress as an expert at trial. ECF No. 40. According to the notice, Ms. Jeffress would opine that:

> [I]t would have been reasonable for a knowledgeable practitioner in the field in or around 2012 and 2013 to believe that a lawyer or law firm engaged by a foreign government to perform an independent analysis and to complete a report on the procedures utilized in a criminal prosecution in that foreign country was not required to register as an agent of the foreign principal under the provisions of the Foreign Agents Registration Act, 22 U.S.C. § 611 *et seq.*, regardless of how the foreign entity intended to use the report or did in fact use it.

> [I]t would have been reasonable for a knowledgeable practitioner to believe that providing a copy of the report to a few media outlets and speaking about the conclusions contained in it, in order to ensure that those conclusions were accurately reported in the U.S. media, would not require registration as long as those contacts were not made under the direction and control of the foreign principal, even if the client had an interest in the report's getting public attention.

ECF No. 40 at 1. Defendant's notice did not describe the bases and reasons for these two opinions. Instead, Defendant stated that Ms. Jeffress could also respond to the testimony of witnesses at trial, offering "more detailed testimony" about these matters based on "hypothetical assumptions presented to her" about either the testimony or documents in evidence. *Id.* at 2. The notice does not describe the other opinions, or their bases and reasons. Defendant's notice did not include a *curriculum vitae* for Ms. Jeffress (but attached a printout from her firm's website (ECF No. 40-1)), and asserted that Ms. Jeffress is qualified to present her opinions based on her experience as a federal prosecutor and her work as a FARA advisor at her firm.

On June 11, 2019, the government asked defense counsel for supplemental disclosures for Ms. Jeffress' opinions by June 14, 2019, as well as additional information about Ms. Jeffress'

qualifications to offer those opinions. *See* Letter re Deficiencies in Expert Disclosure (attached as Ex. E). Defendant did not respond by June 14, 2019.

On June 17, 2019, defense counsel sent an email, with minimal additional information, that did not describe the bases and reasons for Ms. Jeffress' opinions, and failed to establish Ms. Jeffress' qualifications to opine about what a reasonable practitioner would have done in 2012 or 2013. *See* Supplemental Expert Witness Disclosure for Amy Jeffress (attached as Ex. F).

## II.     LEGAL FRAMEWORK

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony at trial, and it provides that an appropriately qualified witness may testify in the form of an opinion if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Rule 702 further requires that the testimony be: (1) based on sufficient facts or data; (2) the product of reliable principles and methods; and (3) that the proposed expert reliably applied the principles and methods to the facts of the case. *Id.*; *see also Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 589 (1993) (trial judge must ensure that expert testimony is not only relevant but also reliable); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (holding that *Daubert* covers all expert testimony, not just science-based testimony). The party proposing the expert testimony bears the burden of showing that the testimony satisfies Rule 702, and therefore its admissibility. *See Meister v. Med. Eng'g Corp.*, 267 F.3d 1123, 1127, 347 U.S. App. D.C. 361 (D.C. Cir. 2001) (proponent of expert testimony bears the burden of showing its admissibility).

In determining the admissibility of expert testimony, the Court must initially decide whether the proffered expert is qualified to offer an opinion on the pertinent issues of the case. *Ralston v. Smith & Nephew Richards Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). A qualified expert

must possess the necessary knowledge, skill, experience, training, or education relevant to the facts at issue.  *Id.*  The Court, serving as the "gatekeeper," must then conduct a two-pronged inquiry as to the reliability and relevance of the proffered testimony.  *Bitler v. A .0. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004).  When, as here, Defendant's notice provides no bases or reasons for the proffered opinions—*i.e.*, only conclusions without explanations—courts will generally exclude the testimony.  *Sacchetti v. Gallaudet Univ.*, 344 F. Supp. 3d 233, 250 (D.D.C. 2018) (precluding testimony where the witness "has not identified or explained his methods or how they were applied in this case"); *Chesapeake Climate Action Network v. Exp.-Imp. Bank of the U.S.*, 78 F. Supp. 3d 208, 219 (D.D.C. 2015) (excluding testimony as unreliable, in part because the expert "ha[d] not identified any [ ] principles or methodology"); *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("We've been presented with only the expert's qualifications, their conclusions, and their assurances of reliability.  Under <u>Daubert</u>, that's not enough.").

## III.   ARGUMENT

Defendant cannot meet his burden to show that Ms. Jeffress' proffered opinion testimony is admissible under Rule 702 of the Federal Rules of Evidence and applicable case law.  As demonstrated below, the Court should exclude Ms. Jeffress' proffered opinion testimony.

### A.  Proffered Testimony Is Irrelevant—Not Helpful to the Jury

The indictment did not charge Defendant with a failure to register under FARA for his work on Ukraine's behalf.  *See* ECF No. 1.  Instead, the indictment charged Defendant with his scheme to make false and misleading statements and omissions to the FARA Unit, in response to official inquiries about his work on Ukraine's behalf.  *Id.* at 15-22.  Irrespective of whether Defendant should have registered under FARA when he communicated with the *New York Times* at Ukraine's request, Defendant was not entitled to make false and misleading statements and omissions as to the underlying facts.  Ultimately, an "expert opinion" about what a "reasonable

practitioner" would have believed in 2012 regarding FARA registration obligations is wholly irrelevant to Defendant's reasons for making false and misleading statements and omitting material information when questioned about his activities by the FARA Unit.  Even if Defendant had truly believed that he did not have to register under FARA, it does not absolve him of his subsequent decision to lie and omit material facts from the FARA Unit in order to avoid registration.

As a result, Ms. Jeffress' opinion testimony as to whether a reasonable practitioner would have registered under FARA under similar circumstances to the facts of this case is not helpful to the jury because it is irrelevant to the charges.  When proffered expert testimony is irrelevant, it should be excluded.  *See, e.g., Keys v. Wash. Metro. Area Transit Auth.*, 577 F. Supp. 2d 283, 285 (D.D.C. 2008) (testimony should be precluded if "expert testimony is irrelevant").   Stated differently, because Ms. Jeffress' proffered opinion testimony will not aid the jury in resolving a relevant factual dispute, it cannot satisfy Rule 702 and should be excluded.  *See United States v. Bostick*, 416 U.S. App. D.C. 304, 328 (2015) (affirming the lower court's decision to exclude testimony because it was not "relevant to the charged" offenses); *see also Minebea Co. v. Papst*, 2005 U.S. Dist. LEXIS 11946, *7 (It is the Court's responsibility to make sure expert testimony "is relevant to the issues to be tried before the jury in this case").

To the extent Defendant's state of mind in 2012 regarding his obligation to register under FARA is relevant to his motive to make false statements to the FARA Unit in 2013, Ms. Jeffress' "expert opinion" is not the proper vehicle for proving it.  Indeed, Defendant sought and received advice from a FARA practitioner, Kenneth Gross, and others, which is admissible at trial.  *See*, *e.g.*, Ex. A through D.  If Defendant has other evidence that bears on his state of mind regarding FARA compliance in 2012—for instance, emails containing other advice he sought and received contemporaneous with his engagement by Ukraine—that too might constitute proper evidence

supporting Defendant's claims about his state of mind in 2012.[1]  Moreover, Defendant can testify about his state of mind.  But Ms. Jeffress cannot properly offer "expert testimony" about what Defendant's state of mind might have been.  *See United States v. Libby,* 475 F.Supp.2d 75, 89 (D.D.C. 2007) ("[T]he Court was cognizant of the potential for prejudice that would have arisen if the defendant had been permitted to portray his own state of mind [through the testimony of others] without allowing the government any effective means of challenging it through cross-examination.").

Related to these concerns, Defendant is attempting to misuse Ms. Jeffress' opinions to claim, or make the jury believe, that because a reasonable practitioner may have failed to register under FARA in 2012, Defendant must therefore have acted in good faith when he dealt with the FARA Unit during 2013.  In essence, Defendant is attempting to have Ms. Jeffress improperly vouch for his mental state when he made the false and misleading statements and omissions to the FARA Unit in 2013 that are at issue in this case.  Indeed, he is actually proposing that a professional defense attorney be qualified as an expert so as to admit into evidence the defense's arguments about Defendant's mental state.  This is exactly the kind of testimony explicitly barred by Rule 704, which provides that an "expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense.  Those matters are for the trier of fact alone."  Fed. R. Evid. 704.  Only the jury can determine whether, as charged, Defendant intended to make false and misleading statements and omissions to the FARA Unit during 2013.  The Court should also exclude Ms. Jeffress' testimony pursuant to Rule 704(b).

---

[1]      To date, however, Defendant has failed to produce any discovery to the government, despite repeated requests.  Therefore, the government assumes that Defendant does not have any other evidence as to his state of mind at the time, except perhaps for his testimony at trial.

### B. Proffered Testimony Will Confuse and/or Mislead the Jury--Unduly Prejudicial

Not only is the proffered testimony irrelevant, but the testimony is also unduly prejudicial in that it risks confusing and misleading the jury, and therefore does not survive a Federal Rule of Evidence 403 balancing test even if the Court were to find the testimony marginally relevant. Under Rule 403, a court may exclude otherwise relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  In *Daubert*, the Supreme Court made clear that courts assessing expert testimony should also consider the evidence's admissibility under Rule 403, and highlighted the particular risk of prejudice from expert testimony, as follows: "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." 509 U.S. at 595 (internal citations omitted); *see also United States v. Doe*, 903 F.2d 16, 19-20 (D.C. Cir. 1990) (inherent danger of expert testimony unduly biasing jury because of its "aura of special reliability.").

The proffered testimony provides a very real opportunity to confuse and mislead the jury because it improperly attempts to approximate Defendant's mental state.  "Expert" testimony about Defendant's alleged belief (as a "reasonable" practitioner) that he did not have to register under FARA for his Ukraine work in 2012 could lead some jurors to assume or believe that Defendant's mental state—for the offenses actually committed in 2013—is somehow determined by the mental state of a reasonable practitioner regarding FARA registration in 2012.  For the reasons discussed above, that impression or belief would not be correct, but the testimony threatens to confuse and mislead the jurors as they evaluate the elements of the charged offenses, including Defendant's mental state.  Moreover, Defendant undoubtedly hopes that by having a respected former prosecutor like Ms. Jeffress testify on his behalf—opining that he acted reasonably in 2012—he

can influence jurors to discount or ignore the evidence of his false and misleading statements and omissions to the FARA Unit.  The Court should exclude the testimony.

### C.  Defendant Failed to Provide Adequate Notice of Expert Testimony

The Court, in its Scheduling Order, set a clear deadline of June 10, 2019, for the parties to provide expert notice under Rule 16 of the Federal Rules of Criminal Procedure.  ECF No. 11. Defendant never requested an extension, but instead filed an incomplete and deficient expert notice on June 10, 2019, that does not comply with the requirements of Rule 16.  ECF No. 40.  Despite the government's request (Ex. E) that Defendant supplement his expert disclosure on or before June 14, 2019, Defendant refused to do so, and his disclosures remain inadequate under Rule 16 (Ex. F).  Accordingly, for this violation of the Court's Order and Rule 16, the Court should preclude Defendant from calling Ms. Jeffress as a witness at trial.  *See, e.g.*, *United States v. Day*, 381 U.S. App. D.C. 48, 59 (2008) (affirming the lower court's decision to exclude testimony as it failed to adhere to the Rule 16 standard).

### 1.  Defendant Failed to Describe Bases and Reasons for the Two Opinions

Defendant's notice, as discussed *supra*, included two specific opinions by Ms. Jeffress, listed on the first page.  Both of her opinions relate to what a reasonable and knowledgeable practitioner, standing in Defendant's shoes, would allegedly believe regarding an obligation to register under FARA during 2012 and 2013.[2]  Defendant's notice, however, fails to describe any of the bases and reasons for Ms. Jeffress' opinions.  In other words, there is no discussion about how and why Ms. Jeffress reached those opinions, or what evidence or documents support her legal conclusions.

---

[2]     The notice is not entirely clear as to what Ms. Jeffress means by the term "knowledgeable practitioner in the field."  For example, the term could refer to a FARA practitioner, or perhaps to a lawyer who represents foreign governments or international clients.

"The primary purpose of Rules 16(b)(1)(B) and (C) is to prevent unfair surprise at trial and to permit the government . . . to prepare rebuttal reports and to prepare for cross-examination at trial." *United States v. Naegele*, 468 F. Supp. 2d 175, 176 (D.D.C. 2007); *see also* Fed. R. Crim. P. 16, 1993 advisory committee's notes (Rule 16 is "intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination."). Where a party fails to comply with Rule 16's obligations, a trial court is within its discretion to exclude the proffered testimony. *See* Fed. R. Crim. P. 16(d) (noting that if a party fails to comply with Rule 16's disclosure requirements, the court may "prohibit that party from introducing the undisclosed evidence."); *see also United States v. Day*, 433 F. Supp. 2d 54, 57 (D.D.C. 2006). Under these circumstances, exclusion is the appropriate remedy.

## 2. Defendant Refused to Properly Identify Ms. Jeffress' Other Opinions

Defendant has refused to identify any of the other specific opinions that Ms. Jeffress may provide during her testimony. In addition to the two listed opinions, Defendant's notice states that he expects "Ms. Jeffress to respond to [testimony from government witnesses] consistent with her previously described opinions." ECF No. 40 at 2. The notice goes further, however, claiming that "Ms. Jeffress may also offer more detailed testimony about these matters based on hypothetical assumptions presented to her based on the documents to be offered in evidence or testimony by other witnesses." *Id*. But Defendant has been provided with extensive records of the government's witnesses' prior statements and potential trial exhibits, and he knows that the government does not plan to call any expert witnesses of its own. Yet he refuses to state, as required by Rule 16, what additional opinions Ms. Jeffress will offer based on hypotheticals or the expected testimony and evidence.

The government asked Defendant to supplement its notice identifying with specificity the additional opinions that Ms. Jeffress may offer at trial, and to provide the bases and reasons for each such additional opinion.  Ex. E at 2.  In his belated response, Defendant took the position that depending on the testimony offered at trial by the government, he reserved the right "to have Ms. Jeffress offer additional opinions about how a reasonable practitioner during the relevant time frame would have analyzed the First Amendment implications of FARA registration for persons who communicate with the media . . . ."  Ex. F at 2.[3]  Defendant then stated that Ms. Jeffress may discuss her interpretation of various FARA cases, and how FARA's definitional provisions must be interpreted narrowly.  *Id.*[4]  These vague and somewhat confusing statements do not qualify as a "written summary of any testimony" by Ms. Jeffress, and it certainly does not properly describe her opinions, the bases and reasons for those opinions, or Ms. Jeffress qualifications to provide those opinions.  *See* Fed. R. Crim. Pro. 16(b)(1)(C).

Neither the Court's Scheduling Order (ECF No. 11 at 2), nor Rule 16, permit the Defendant to "reserve the right" to offer "additional [undisclosed expert] opinions" at trial and surprise the government with these undisclosed or unspecified opinions.  Indeed, the very purpose of Rule 16, as discussed *supra*, is to minimize surprise and to allow the other party to properly prepare for trial and be ready to test the merit of the expert's testimony through focused cross-examination.  The Court should exclude Ms. Jeffress' entire testimony, but in particular these "other" opinions.

---

[3]      It is unclear how Ms. Jeffress would know—much less opine—why and if a reasonable practitioner would consider the First Amendment before determining whether to register under FARA.  It is also unclear how Ms. Jeffress is qualified to offer such an opinion—unless she is simply repeating what Defendant will now claim is the reason he did not register under FARA.

[4]      Although the statement is vague, it appears that Defendant intends to have Ms. Jeffress instruct the jury as to the "correct" interpretation of the FARA statute—which is the Court's role.

### 3.   Defendant Failed to Establish Ms. Jeffress' Qualifications

Defendant also failed to establish how Ms. Jeffress is qualified to offer her opinions, which focus on what a reasonable practitioner would have done during 2012 and 2013—a time during which Ms. Jeffress was not a FARA practitioner and had no substantive FARA experience.

Defendant proffered that Ms. Jeffress was qualified to offer her opinions based on two of her professional experiences: (1) Ms. Jeffress' experience as a federal prosecutor, with special emphasis on her role as Chief of the National Security Section of the U.S. Attorney's Office for the District of Columbia (NSS); and (2) Ms. Jeffress' experiences at Arnold & Porter, including her experience as the firm's FARA advisor and her experience as a FARA practitioner advising the firm's clients.  Defendant's proffer, however, is incorrect as to Ms. Jeffress' experiences as a prosecutor, and her substantive FARA experience was developed only in the last few years—well after the period of time (2012-2013) about which Defendant would like her to testify.

Concerned about the representations in Defendant's notice, government counsel undertook an inquiry about Ms. Jeffress' FARA experience at NSS, talking to a number of prosecutors who either worked with or for Ms. Jeffress.  In addition, the government sent a letter to defense counsel, asking that Defendant supplement its notice and provide detailed information about Ms. Jeffress' qualifications to offer opinions about what a reasonable practitioner would do in 2012 and 2013. *See* Ex. E at 2-3.  Based on the information received, Ms. Jeffress is not qualified to provide the proffered opinions—as to what a reasonable practitioner would have believed in 2012-2013.

### a.   Ms. Jeffress Never Supervised or Prosecuted a Case Under FARA, 18 U.S.C. § 611, et seq., while she was the Chief of NSS

Ms. Jeffress never supervised or prosecuted a case under FARA when she served as Chief of NSS.  Moreover, before Ms. Jeffress became Chief of NSS in the early part of 2007, she was a supervisor in the narcotics section.  To our knowledge, she neither prosecuted nor supervised a

national security case prior to becoming Chief of NSS.  Ms. Jeffress left the office and her position as Chief of NSS, in or about January 2009.  Therefore, the government does not believe that Ms. Jeffress had substantive or relevant FARA experience in her job as a federal prosecutor.

The government's inquiry with defense counsel as to Ms. Jeffress qualifications confirmed the government's understanding of her experience as Chief of NSS.  For example, the government asked Defendant to specify which investigation or prosecutions under FARA Ms. Jeffress had supervised or prosecuted, and if she had ever consulted about FARA enforcement with anyone at the U.S. Department of Justice.  *See* Ex. E at 3.  In response, Defendant was unable to identify a single FARA case that Ms. Jeffress supervised or prosecuted, or a single time that Ms. Jeffress consulted with anyone about FARA enforcement.  *See* Ex. F at 1.  Instead, Defendant attempted to assert as relevant experience the fact that Ms. Jeffress supervised for some time an investigation into Robert Cabelly, who was ultimately indicted on a number of non-FARA charges in October 2009—well after Ms. Jeffress had left this office.  The *Cabelly* matter, however, was not a FARA case.[5]  Attached as Exhibit G is a copy of the October 2009 indictment in *United States v. Cabelly*, 09-CR-278, which confirms the absence of any FARA charges.

### b.  Defendant Concedes that Ms. Jeffress was Not a FARA Practitioner During Relevant Time Period of 2012 to 2013

During the relevant time period of 2012 and 2013 for the proffered opinions, Ms. Jeffress resided in London, England, where she served as the U.S. Department of Justice Attaché at the

---

[5]    Defendant tries to make the *Cabelly* case relevant by asserting that Cabelly had previously registered under FARA.  While that assertion is factually correct, it has nothing to do with how that case was investigated or charged.  It certainly provides no basis to opine what a reasonable practitioner would have believed in 2012 or 2013 regarding FARA registration obligations.  Similarly, the fact that one of Cabelly's charges included a charge under 18 U.S.C. § 951, Agents of Foreign Government, is of no relevance.  The statute under 18 U.S.C. § 951 is a completely different statute from FARA.

14

American Embassy.  To our knowledge, this role does have any FARA responsibilities.  Indeed, Defendant admitted that "Ms. Jeffress was not involved in a private FARA practice during 2012-2013. . . ."  Ex. F at 2.  According to Defendant, Ms. Jeffress' earliest FARA work at Arnold & Porter began in December 2014.  *Id.* at 1.  It was not until January 2018, that Ms. Jeffress assumed the position of FARA advisor at her firm.  *Id.*  And despite Defendant's claims that Ms. Jeffress has been involved in numerous FARA filings, including "three disclosed foreign government clients of her law firm," the defense has not identified a single FARA filing or client of Ms. Jeffress.  Similarly, the defendant has made no attempt to show how Ms. Jeffress' experience is relevant to the proffered opinions and the issues to be decided in this case.

The fact that Ms. Jeffress was not a FARA practitioner during 2012 or 2013 should, by itself, preclude any possibility that Ms. Jeffress can testify about what a "reasonable practitioner" would have believed were the registration obligations under FARA back in 2012 or 2013.  Defendant, nevertheless, attempts to bypass this glaring deficiency by arguing that Ms. Jeffress can testify that she "**is unaware** of any significant developments during the period between 2012 and 2017 that would have changed the approach to FARA . . . ."  Ex. F at 2 (emphasis added).  Exactly—Ms. Jeffress is unaware and does not and cannot know because she was not a FARA practitioner during the relevant time period.  In short, whatever FARA knowledge Ms. Jeffress may have now, she acquired well after the events in this case.

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court grant the

government's Motion *in Limine* to preclude the testimony of Defendant's proposed expert witness.


Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar Number 472845


By:  /s/ Fernando Campoamor-Sánchez
FERNANDO CAMPOAMOR-SÁNCHEZ (DC 451210)
MOLLY GASTON (VA 78506)
Assistant United States Attorneys
United States Attorney's Office
555 Fourth Street, N.W.
Washington, D.C.  20530
Telephone: 202-252-7698/202-252-7803
Fernando.Campoamor-Sanchez@usdoj.gov
Molly.Gaston@usdoj.gov


JOHN C. DEMERS
ASSISTANT ATTORNEY GENERAL


By:  /s/ Jason B.A. McCullough
JASON B.A. MCCULLOUGH (DC 998006; NY 4544953)
Trial Attorney
Department of Justice
National Security Division
950 Pennsylvania Ave NW
Washington, D.C.  20530
Telephone: 202-616-1051
Jason.McCullough@usdoj.gov


Dated:   June 24, 2019

## **Certificate of Service**

I certify that, by virtue of the Court's ECF system, a copy of the foregoing motion has been sent to counsel for the defendant on June 24, 2019.

/s/ Fernando Campoamor
Fernando Campoamor
Assistant United States Attorney