## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

**UNITED STATES OF AMERICA**

*v.*

**GREGORY B. CRAIG**,

        *Defendant.*

</td><td>

**Case No. 1:19-cr-0125 (ABJ)**

</td></tr>
</table>

### MOTION IN LIMINE TO EXCLUDE EVIDENCE
### REGARDING SPECIAL COUNSEL'S OFFICE INTERVIEW

The charges in the Indictment include only communications by Defendant Gregory B. Craig to the FARA Unit in 2013: one letter in June 2013, and a meeting and follow-up letter in October 2013.   *See* Indictment, ECF No. 1 ¶¶ 48 (date range), 56–64.  The government apparently intends to seek to prove that Mr. Craig "repeated some of the false and misleading statements he made to the FARA Unit" four years later, "during an interview conducted by the Special Counsel's Office" ("SCO") on October 19, ***2017***.  *Id.* ¶ 65.  The Indictment does not charge that these were criminal false statements.  Equally significant, although Paragraph 65 appears in Count One, the government has conceded that statements in 2017 could not have been part of a charged offense that is alleged to have occurred between June 2013 and January 2014. Gov't Opp. to Mot. to Strike, ECF No. 33 at 4. It is therefore simply evidence of uncharged acts which the government contends were wrongful.

Alleged false statements to the SCO in 2017 have no legitimate place in a prosecution about alleged concealment of material facts from the FARA Unit in 2013.  As an initial matter, the government is wrong about what was said during the 2017 SCO interview.  If the government persists in its effort to try an uncharged false statement case in addition to the case

actually charged, there will be significant factual disputes about the 2017 statements.  Those disputes will confuse the jury, waste time, and unfairly prejudice Mr. Craig.

But even taking at face value Paragraph 65 of the Indictment as elaborated in the government's later pleadings, alleged false statements to the SCO in 2017 shed little if any light on what was said (or not said) at the FARA Unit meeting in 2013.  Mr. Craig's interview with the SCO in 2017 bore  no resemblance to his meeting with the FARA Unit in 2013, and the two meetings served very different purposes.  The FARA Unit meeting was informal, lasted an hour at most, and involved Mr. Craig's advocacy of his belief that his conduct did not require registration.  The SCO interview was formal, lasted a full day, resulted in a voluminous FBI-302, involved focused questions and answers tethered to documents that Skadden had produced, and touched on entities and individuals other than Skadden and Mr. Craig, several of which the SCO was also investigating.  Different questions were asked, and the supposed "false and misleading statements" that the government has identified from the SCO interview *are not the same* as the alleged false statements Mr. Craig is alleged to have made to the FARA Unit in 2013.  We hasten to add that none of the statements he made in either session was false.

The government claims that it seeks to introduce evidence of alleged false statements during the SCO interview to prove "what Defendant said" at the FARA Unit meeting in 2013, and to show "absence of a mistake."  Gov't Opp. to Mot. to Strike at 5.  But if the government is allowed to open this door, Mr. Craig will have to call other witnesses to the interview, and there is a grave risk that the jury will effectively render its verdict based on the SCO interview in 2017, rather than on the government's proof (or lack of it) as to the content of the FARA Unit meeting in 2013, even if the Court instructs otherwise.  At minimum, such a mini-trial would consume time, confuse the jury, and risk unfair prejudice to Mr. Craig.

The government may be uneasy relying only on "the testimony of the witnesses who attended the October 9, 2013, meeting as to what Defendant said at that meeting," Gov't Opp. to Mot. to Strike, ECF No. 33 at 5, but *that* is the case it chose to prosecute, and that is the case it must prove. The government has not charged Mr. Craig with making false statements to the SCO, and the dangers of allowing such alleged statements in through the side door outweigh what little probative value they may have about what Mr. Craig did or did not say at the FARA Unit meeting in 2013. Evidence of alleged false statements to the SCO should be excluded under Federal Rules of Evidence 403 and 404(b).

I.    **BACKGROUND**

On October 19, 2017, Mr. Craig appeared voluntarily for an interview by the SCO. *See* Ex. 1 (FD-302 of Interview with Greg Craig (Oct. 19, 2017)). Skadden was serving as counsel to Mr. Craig, and two other Skadden lawyers joined him at the interview. Skadden had already produced thousands of pages of documents to the government, and during the interview, Mr. Craig was asked about some of the same documents that are now featured in the Indictment. Mr. Craig freely acknowledged that Mr. Manafort had asked him to review media plan documents prepared by Ukraine's public relations firm, that he had been in contact with a representative of the public relations firm, and that he had provided a copy of the Skadden Report to David Sanger of *The New York Times*. FBI Supervisory Special Agent Omer Meisel took notes of the interview, but he did not complete and submit the FBI-302 until 48 days later.

Mr. Craig voluntarily appeared for another interview by the SCO on March 7, 2018, this time represented by his current counsel. By then Skadden had produced to the government virtually all of the documents referenced in the Indictment. All of the government attendees from the first SCO interview were also present at the second interview. At no point during the

second interview did anyone suggest that Mr. Craig had made any false or misleading statements during the first interview.

Nonetheless, Paragraph 65 of the Indictment alleges that, "[o]n or about October 19, 2017, during an interview conducted by the Special Counsel's Office, CRAIG repeated certain of the false and misleading statements he had made to the FARA Unit concerning the timing and nature [of] his contacts with journalists about the [Skadden] Report." The government has filed a Bill of Particulars in which it identifies three such supposed "false and misleading statements" from Mr. Craig's 2017 SCO interview:

- "That Defendant spoke with journalists solely for the purpose of correcting their inaccurate reporting of the findings in the Report"

- "That Defendant's contacts with the media were not on Ukraine's behalf"

- "That Defendant did not have any knowledge or insight about how Ukraine would release or 'roll out' the Report"[1]

Bill of Particulars, ECF No. 31 at 5; *see also* Gov't Opp. to Mot. to Strike at 3–4 (listing the same three alleged statements).

## II.    LEGAL STANDARD

Federal Rule of Evidence 404(b) applies to "evidence of a crime, wrong, or other act." Evidence of any act is subject to Rule 404(b) unless the act was "part of the charged offense" or was "performed contemporaneously with the charged crime" and "facilitate[d] [its]

---

[1] In a footnote, the government also reserves the right to offer evidence regarding "additional false and misleading statements made by Defendant to the Special Counsel's Office." Bill of Particulars at 5 n.4. The government does not limit itself to any specific statements, and it seeks to keep its options open to introduce statements "not directly related to Paragraph 65" of the Indictment, *id.*, and that may not even be limited to the first SCO interview. *See id.* (the "additional" statements are contained in "the FBI-302s," plural (emphasis added)). Such hedging has no place in a Bill of Particulars. *See* Order, ECF No. 30, at 4 (requiring that "the government must specify the statements referred to in [Paragraph 65]"). We take the government's proof of Paragraph 65 to be limited to the three statements that it actually specified in its Bill of Particulars, which are listed above.

commission." *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000).  Evidence subject to Rule 404(b) in inadmissible if it serves only "to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character."  Fed. R. Evid. 404(b)(1).  Even if other-act evidence is "relevant to something other than the defendant's character or propensity," it still may be "excluded under other rules of evidence such as Rule 403."  *Bowie*, 232 F.3d at 930.  Evidence is inadmissible under Rule 403 "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

## III.   ARGUMENT

### A.  The government is wrong about what was said to the SCO in 2017.

Before comparing the scant probative value of the alleged SCO statements against the obvious dangers of admitting them at trial, we are compelled to point out that Mr. Craig *did not* make any false or misleading statements to the SCO – whether the same statements he is alleged to have made in 2013 or any others.  The government is simply wrong about what was said.

For instance, one of Mr. Craig's alleged "false and misleading statements" during the 2017 SCO interview is that he "did not have any knowledge or insight about how Ukraine would release or 'roll out' the Report."  Bill of Particulars at 5.  But the full context of the interview, as recorded by the FBI, demonstrates that Mr. Craig's statement along these lines was not categorical in the way that the government now suggests.  *See* Ex. 1.  In the interview, Mr. Craig discussed at length his knowledge that Ukraine had engaged a public relations firm to craft a strategy for the roll-out of the report worldwide.  He even discussed a draft media plan that had been sent to him, and explained that he had been "concerned" when he saw it.  Ex. 1 at 13.  The full context of the 302 shows that Mr. Craig did not convey that he "did not have any knowledge

or insight about how Ukraine would release or 'roll out' the Report" – at least not in the categorical terms that the government has suggested.

Another of Mr. Craig's supposed false and misleading statements from the SCO interview is that he "spoke with journalists solely for the purpose of correcting their inaccurate reporting of the findings in the Report." Bill of Particulars at 5. That language does not appear in the FBI-302; the government has rephrased the FBI-302 in order to approximate the language in the Indictment regarding the meeting at the FARA Unit on October 9, 2013. *See* Indictment ¶ 61 (alleging that "CRAIG claimed that his media contacts were solely reactive and for the purpose of correcting misinformation").

Even what the FBI-302 *does* say is not a credible reflection of Mr. Craig's actual statements during the interview. According to the FBI-302, "CRAIG stated that he responded to three different newspaper articles which inaccurately reported the results of the Skadden report . . . to correct their inaccurate reporting." Ex. 1 at 14. In this exchange, Mr. Craig actually referred to correcting *Ukraine* – not specifically to correcting news articles that were already in print. Elsewhere in the interview, the FBI-302 reports that Mr. Craig stated that "*two* media outlets were reporting erroneous facts about the Skadden reports [sic] findings." *Id.* at 13 (emphasis added). There was no confusion about the fact that Mr. Craig spoke with the *New York Times* reporters before their article was released, not after the fact "to correct their inaccurate reporting." Mr. Craig was **quoted on the record** in the *Times* article.[2] Nor was there any confusion that Mr. Craig spoke with the *Times* before the Skadden report had been released to the public. The article was dated Wednesday, December 12, 2012, it contained quotes from

---

[2] *See* David M. Herszenhorn & David E. Sanger, *Failings Found in Trial of Ukrainian Ex-Premier*, THE NEW YORK TIMES (Dec. 12, 2012), https://www.nytimes.com/2012/12/13/world/europe/failings-found-in-trial-of-ukrainian-ex-premier.html

"an interview on Wednesday" with Mr. Craig, and it stated that the Skadden report "will be publicly released Thursday." *Id.*

In short, if the government persists in its efforts to introduce evidence of the SCO interview, we will demonstrate that Mr. Craig made no "false and misleading statements" during that interview.

**B. Alleged statements to the SCO in 2017 prove nothing about *different* alleged statements to the FARA Unit in 2013.**

Even if the government were to establish that Mr. Craig made exactly the statements that it alleges he made during the SCO interview, those statements would have no probative value to the issues that the jury will be called upon to decide. Mr. Craig's communications with the FARA Unit in 2013 are at issue in this case, not what he said or did not say to the SCO in 2017.

The government's principal theory of relevance is that statements to the SCO in 2017 can help establish "what Defendant said at th[e] meeting" with the FARA Unit on October 9, 2013. Gov't Opp. to Mot. to Strike at 5; *see also id.* (arguing that statements to the SCO "can help to corroborate and/or provide additional context to" documents that the government believes establish what was said at the 2013 FARA Unit meeting). The government hopes that statements from 2017 will "corroborate" the recollections of the attendees at the FARA Unit meeting in 2013 about what was said at that meeting. *Id.* This theory is dubious on its face given the obvious differences between the FARA Unit meeting and the SCO interview, not to mention the four-year gap between them. At minimum, evidence of alleged statements to the SCO in 2017 is relevant under the government's theory only if the statements are "the same" as alleged statements to the FARA Unit in 2013. *Id.*

But the alleged 2017 statements are *not* the same as any statements Mr. Craig is alleged to have made at the October 9, 2013 meeting and the questions he was asked are not the same.

Here are the alleged false statements that the government has identified from the October 9, 2013 meeting, in Paragraph 61 of the Indictment and in its Bill of Particulars:

- "his media contacts were solely reactive and for the purpose of correcting misinformation," Indictment ¶ 61;

- "[he] provided copies of the Report to the media only in response to requests made by the media," Bill of Particulars at 1;

- "[his] contacts with the media concerning the Report were made solely to correct mischaracterizations about the Report," *id.*;

- "in his contacts with the media about the Report, Defendant did not act at the request or direction of Ukraine," *id.*

None of these statements remotely resembles Mr. Craig's alleged statement to the SCO in 2017 that he "did not have any knowledge or insight about how Ukraine would release or 'roll out' the Report." Bill of Particulars at 5. Even if the government proves that Mr. Craig made that statement in 2017, it will not bear on whether Mr. Craig made any of the *different* alleged false statements actually at issue from 2013.

Nor is any of the alleged 2013 statements the same as Mr. Craig's alleged 2017 statement that he "spoke with journalists solely for the purpose of correcting their inaccurate reporting of the findings in the Report." Bill of Particulars at 5. In 2013 Mr. Craig is alleged to have said that his media contacts were "solely reactive and for the purpose of correcting misinformation," Indictment ¶ 61, and that they were "solely to correct mischaracterizations about the Report," Bill of Particulars at 1, but "correcting misinformation" and "correcting mischaracterizations" are not necessarily the same as "correcting inaccurate reporting." These may seem like small differences, but "what is *actually said* by a defendant becomes a critically important part of any prosecution under §1001." *United States v. Poutre,* 646 F.2d 685, 688 (1st Cir. 1980) (emphasis added). Specific words and their exact meanings are the stuff of § 1001 cases. *See, e.g., United*

*States v. Safavian*, 528 F.3d 957, 965–67 (D.C. Cir. 2008) (meaning of having "business" before a government agency); *United States v. Chapin*, 515 F.2d 1274 (D.C. Cir. 1974) (meaning of "familiar with"); *United States v. Milton*, 8 F.3d 39 (D.C. Cir. 1993) (meaning of "claim"); *Poutre*, 646 F.2d at 688  (meaning of "unfamiliar with" and "played no part"); *United States v. Lattimore*, 127 F. Supp. 405 (D.D.C. 1955) (meaning of  "follower of the Communist line" and "promoter of Communist interests"); *United States v. Cook*, 497 F.2d 753 (9th Cir. 1972) (meaning of "being paid").  The government cannot introduce 2017 statements to help show that the same things were said in 2013, when the statements alleged to have been made in 2013 and 2017 are not the same.

The government's second theory of relevance is that statements to the SCO "can help the government establish the absence of a mistake, accident, or misunderstanding" as to statements that Mr. Craig made in 2013.  Gov't Opp. to Mot. to Strike at 5.  But that theory likewise relies on the 2013 and 2017 statements being "the same."  *Id.*  And in any event, the government should not be able to introduce evidence in order to show absence of mistake without Mr. Craig first having raised a defense of mistake.  *See Ricketts v. City of Hartford*, 74 F.3d 1397, 1413–14 (2d Cir. 1996) (affirming exclusion of evidence offered under Rule 404(b) to show absence of mistake because "the defendants did not assert a defense of mistake").

Different words were uttered and different questions were asked by different persons at different times almost four years apart.  If Mr. Craig's alleged statements to the SCO in 2017 have *any* probative value as to the offenses actually charged, it is miniscule.

### C. Any negligible probative value that statements to the SCO may have is substantially outweighed by the risk of confusion and unfair prejudice.

Litigating an additional set of disputes about an additional set of alleged statements will be highly confusing for the jury.  It will be difficult enough for the jury to determine precisely

what questions were asked and exactly what answers were given at the FARA Unit meeting that is the subject of Count One.  Complicating that process by asking the jury to dissect another set of questions and answers from another meeting years later asks too much.

There is also a very real possibility that the jury will render its verdict on the statements allegedly made in 2017 rather than the statements from 2013, even if the Court gives a limiting instruction.  This risk is magnified because the 2017 statements were at least recorded in an agent's notes and FBI-302 (albeit that the two are not entirely consistent), whereas there is no contemporaneous record of what was asked or answered at the FARA Unit meeting in 2013. Attendees at the SCO interview, which occurred two years before the scheduled trial, are likely have much clearer recollections than attendees at the FARA Unit meeting, which occurred four years earlier.

Even if the jury remains properly focused on the communications from 2013, if the alleged false statements to the SCO in 2017 turn out not to be the same as the statements to the FARA Unit in 2013, and thus have no legitimate evidentiary purpose, there is an obvious risk that the jury would use them *only* as proof of a bad character trait – untruthfulness – in clear violation of Rule 404(b).

If nothing else, delving into Mr. Craig's statements during the 2017 SCO interview will occupy significant trial time given Supervisory Special Agent Meisel's unreliable account of what was said and the number of other people who were in the room and who would be potential trial witnesses.  Words are crucial in a § 1001 case, and extended exegesis of all of the 2017 statements would be unavoidable.  Exploring the 2017 SCO statements would be more than just a quick detour; it would approximate a full-on second trial for alleged false statements with which Mr. Craig is not criminally charged.

IV.     **CONCLUSION**

Pursuant to Federal Rules of Evidence 403 and 404(b), Mr. Craig respectfully moves for an order precluding the government from introducing evidence of alleged false or misleading statements from his interviews with the SCO.

Dated: June 24, 2019

Respectfully submitted,

*/s/ William W. Taylor, III*

William W. Taylor, III (D.C. Bar No. 84194)
Ezra B. Marcus (D.C. Bar No. 252685)
ZUCKERMAN SPAEDER LLP
1800 M Street N.W. Suite 1000
Washington, D.C. 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
Email: wtaylor@zuckerman.com
Email: emarcus@zuckerman.com

William J. Murphy (D.C. Bar No. 350371)
Adam B. Abelson (D.C. Bar No. 1011291)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
Tel: (410) 332-0444
Fax: (410) 659-0436
Email: wmurphy@zuckerman.com
Email: aabelson@zuckerman.com

*Attorneys for Defendant Gregory B. Craig*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on June 24, 2019, the foregoing was served on counsel of record via the Court's CM/ECF Service.

*/s/ Ezra B. Marcus*
Ezra B. Marcus