UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>　　　　　　v.<br><br>**GREGORY B. CRAIG**,<br><br>　　　　　　*Defendant.* | Case No. 1:19-cr-0125 (ABJ) |

**DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE OPINION AND
EXPERT TESTIMONY ON MEANING OF FARA OR OTHER LAW**

Defendant Gregory B. Craig, by his undersigned counsel, moves *in limine* to preclude government witnesses, in particular Heather Hunt, from offering opinion or expert testimony concerning the meaning of provisions of the Foreign Agents Registration Act (FARA), 22 U.S.C. § 611 *et seq*.

**I.　　INTRODUCTION**

This motion is prompted by the government's notice of filing "to inform the Court that the government will not call expert witnesses at trial during its case-in-chief." ECF 41. An exhibit to the notice explained, however, that the government does intend to elicit opinion testimony from Heather Hunt, the longtime chief of the FARA Unit at the Department of Justice. ECF 41-1. The government asserts that Ms. Hunt will testify as a fact witness, but the designated topics make clear that significant portions of her contemplated testimony will be opinions and legal conclusions based upon her special knowledge and experience so that she is offered as an expert. But whether she is an expert or lay witness, the opinions and conclusions the government seeks to elicit are inadmissible.

First, the government plans to ask Ms. Hunt "questions relevant to the materiality of Mr. Craig's statements and omissions—namely, whether she would have reversed her determination [made on September 5, 2013] that Skadden and Mr. Craig had acted as Ukraine's agents if she had been provided accurate, truthful, and complete information about Mr. Craig's dissemination of the report and his media contacts." ECF 41-1, at 1. Ms. Hunt cannot testify that Mr. Craig was required to register under FARA; that is a legal conclusion that no witness, fact or expert, may address at trial. *See infra* Part II.A. Nor should the government be permitted to offer the same legal conclusion through a side door; for instance, by asking Ms. Hunt whether she, as the director of the FARA Unit, would have required Mr. Craig to register had she known certain (alleged) facts. Such testimony would be a legal conclusion. It would also mislead the jury; the test of materiality is not what Ms. Hunt individually would have done, but what might have influenced a reasonable agency official responsible for making the decision. *See infra* Part II.B.

Second, the government proffers that Ms. Hunt will testify "consistent with" her grand jury testimony and her government interviews as reported in FBI-302s. ECF 41-1, at 1. While the government claims that none of her anticipated testimony on this or any other subject "constitutes expert testimony," *id.*, the grand jury transcripts and FBI-302s tell a different story. Ms. Hunt offered extensive opinions on the meaning of FARA – many of which are disputed by Mr. Craig and some of which are demonstrably erroneous. Ms. Hunt's interpretation of at least three key components of FARA will be at issue in this case: the legal meaning of "dissemination" of information to the public; the purpose a "person" must possess to trigger FARA registration; and the duty to disclose all relevant information, or to supplement information previously furnished to the FARA Unit, in response to the Unit's informal inquiries. Although the precise testimony the government intends to elicit on these topics is not clear, it is

2

clear that they are inadmissible legal conclusions or expert opinions that may not be addressed by Ms. Hunt. See *infra* Part II.C.

Mr. Craig made no false statements or material omissions to the FARA Unit, and he was not required to register under the statute. If the government is permitted to introduce evidence suggesting that he was required to register, Mr. Craig expects to contest that issue vigorously, with testimony and evidence from both expert and lay witnesses. This motion does not address or seek a ruling on whether Mr. Craig was legally required to register, only the admissibility of Ms. Hunt's proffered testimony on that and related questions.

## II.     ARGUMENT

### A.     Ms. Hunt may not testify that Mr. Craig was required to register under FARA

Although Mr. Craig has not been charged with a willful failure to register under FARA, the Indictment rests heavily on the government's contention that he was legally required to do so. *See* Indictment, ECF 1, at ¶ 42 ("As a result of these acts in furtherance of Ukraine's public relations strategy regarding the Report, CRAIG had an obligation under FARA to register as an agent of Ukraine."). Mr. Craig disputes this allegation, and we will if necessary demonstrate it is not so. But the fact that the legal question is disputed does not make it ripe for lay or expert testimony.

We anticipate that the government will ask Ms. Hunt whether under all the facts she now "knows" (or is presented by hypothetical questions), Mr. Craig had an obligation to register under FARA. The provisions of FARA that define who is a foreign agent are not a model of clarity. Nowhere is that difficulty more apparent than in attempting to apply the terms "publicity agent," "public relations counsel," "dissemination," and "for or in the interests of a foreign

principal." Ms. Hunt may work with and interpret those terms, but in this criminal case, her interpretation is not admissible.

Ms. Hunt's proposed testimony is of course an expert opinion. More important, it depends upon legal conclusions about the meaning of various FARA provisions and is plainly inadmissible even if Ms. Hunt were offered and qualified as an expert. "An expert witness may not deliver legal conclusions on domestic law, for legal principles are outside the witness' area of expertise under Federal Rule of Evidence 702." *Weston* v. *Washington Metro. Area Transit Auth.*, 78 F.3d 682, 684 n.4 (D.C. Cir. 1996). As the Court of Appeals has explained, "Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards." *Burkhart* v. *Washington Metro. Area Trans. Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) (citation omitted). In *Burkhart*, for example, the Court of Appeals held that the trial court erroneously permitted an expert witness to testify whether police procedures conformed to the Americans with Disabilities Act (ADA). Many other cases in this district and elsewhere prohibit testimony similar to the statements Ms. Hunt made to the grand jury and the FBI. *See National Ass'n of the Deaf* v. *District Hosp. Partners*, 2016 U.S. Dist. Lexis 13670 (D.D.C. Feb. 4, 2016) (granting motion to exclude expert's testimony that hospital complied with ADA); *United States ex rel. Mossey* v. *PaL-Tech, Inc.*, 231 F. Supp. 2d 94, 98-99 (D.D.C. 2002) (striking expert report that analyzed whether contract at issue constituted a "personal services contract" under Federal Acquisition Regulation); *Halcomb* v. *Washington Metro. Area Trans. Auth.*, 526 F. Supp. 2d 24, 27 (D.D.C. 2007) (expert "may not testify as to the intent required to violate … the statute which plaintiff allegedly violated, nor may he opine as to whether plaintiff actually did violate the statute"); *HAAC Chile, S.A.* v. *Bland Farms, LLC*, 2008 U.S. Dist. Lexis 81859, at *18 (S.D. Ga. Aug. 26, 2008) (where case involved

contractual compliance with Perishable Agricultural Commodities Act, proffered expert who worked for USDA's PACA branch for 30 years could not "discuss PACA regulations and essentially tell the jury what the law is in this area."); *Steele* v. *DC Tiger Market*, 854 A.2d 175, 184 (D.C. 2004) ("It is the responsibility of the judge alone to instruct the jury on the law and the responsibility of the jury alone to apply that law to the facts.").

Accordingly, the Court should rule *in limine* that neither Ms. Hunt nor any other government witness may offer factual or opinion testimony that Mr. Craig was required to register under FARA.

**B.   Ms. Hunt may not express an opinion about what she personally would have thought or done had Mr. Craig provided different or additional information to the FARA Unit**

The government apparently plans to ask Ms. Hunt what *she* would have thought or done as the Chief of the FARA Unit had she known certain (alleged) facts. As the government puts it: Ms. Hunt will testify whether "she" would have reversed "her" earlier determination that Skadden and Mr. Craig were agents of Ukraine (and therefore were required to register) if she had been provided with certain facts. ECF 41-1, at 1. The government sees this testimony as relevant to the materiality of the alleged false statements and omissions. On the contrary, it effectively introduces an inadmissible expert opinion on the legal obligation to register.

Materiality typically means that the false statement or omission has a natural tendency to influence, or is capable of influencing, the decision of the decision-making body to which it was addressed. *Kungys* v. *United States*, 485 U.S. 759, 770 (1998); *see also Weinstock* v. *United States*, 231 F.2d 699, 701 (D.C. Cir. 1956) ("reasonably likely to influence the tribunal in making a determination required to be made"). The relevant decision-making body in this case is the Department of Justice or, arguably, DOJ's FARA Unit. It is not the individual who serves as the head of the FARA Unit or any other individual within the Unit. Moreover, the standard for

materiality is objective, not subjective. *See Neder* v. *United States*, 527 U.S. 1, 22 n.5 (1999) (citing Restatement test that a matter is material if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action"); *United States* v. *Philip Morris USA, Inc.*, 566 F.3d 1095, 1122 (D.C. Cir. 2009) ("materiality requirement is met if the matter at issue is 'of importance to a reasonable person in making a decision about a particular matter or transaction.'"). Thus, materiality is not a question of what any specific person would have done, but whether a reasonable decision-maker might have been influenced by the omitted or false information. And under *United States* v. *Gaudin*, 515 U.S. 506 (1995), materiality must be decided by the jury.

The government is not electing to have Ms. Hunt testify as a fact witness about practices of her office; it intends to ask her to testify that *she* would have rendered a different decision on behalf of the FARA Unit if Mr. Craig had provided information that she now believes to be material.

That testimony should be excluded because it mixes the roles of fact and expert witnesses and it improperly places before the jury an inadmissible legal conclusion (that Mr. Craig was required to file) as though it were a straightforward factual issue (that the Chief of the FARA Unit believes he was required to file). If Ms. Hunt were to testify directly that Mr. Craig was required to register, she clearly would be offering an inadmissible legal conclusion. *See supra* Part II.A. She also would be offering an expert opinion because she would necessarily be explaining what a *reasonable* FARA Unit decision-maker would have done – a topic that requires "specialized knowledge." *See* Fed. R. Evid. 701 ("If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is … (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."); *Kumho Tire Co.* v.

*Carmichael*, 526 U.S. 137, 141 (1999) (district court's gatekeeping function on admissibility of expert testimony applies to testimony based on "other specialized" knowledge).[1]

The Court should not permit the government to evade these evidentiary restrictions by eliciting purported "fact" testimony that Ms. Hunt, as the head of the FARA Unit, would have told Mr. Craig that he was legally required to register. This is effectively opinion testimony about the legal obligation to register tendered by a lay witness. In addition, it would intrude on the province of the Court, which has sole authority to instruct the jury on the law. And if the obligation to register is a jury question, the issue is what a *reasonable* FARA Unit decision-maker would have considered in making its decision. Testimony from the head of the FARA Unit that "she" would have required registration is plainly improper and would lead to confusion in the jury's deliberations. *See* Fed. R. Evid. 403.

Therefore, the Court should rule *in limine* that Ms. Hunt may not testify that she personally, or the FARA Unit as an entity, would have required Mr. Craig to register had they become aware of certain facts.

### C. Ms. Hunt may not offer her opinion on the meaning of specific FARA provisions and terms

The government intends to have Ms. Hunt testify "consistent with" transcripts of her grand jury testimony and FBI-302s. These documents abound with inadmissible statements. We address below the three topics that appear most problematic, while reserving all rights to object at trial if the government selects some other, less foreseeable topics that were touched upon in Ms. Hunt's interviews or grand jury testimony.

---

[1] The government may contend that Ms. Hunt could qualify as an expert on what a reasonable decision-maker in the FARA Unit would find significant. Perhaps so, but the government has not offered Ms. Hunt as an expert, so the question is not ripe. Moreover, the Federal Rules include procedural protections when an opposing party proffers expert testimony, including notice, right to voir dire, advance determination of reliability, and so forth. If the government intends to elicit expert opinions from Ms. Hunt, it should have followed the rules, and the scheduling order, and provided a proper designation.

1. **The legal meaning of "dissemination"**

Under FARA § 611(c)(1), a person who engages within the United States as a "publicity agent" may be required to register (if acting for or in the interests of a foreign principal). A "publicity agent" includes "any person who engages directly or indirectly in the publication or dissemination of oral, visual, graphic, written, or pictorial information of any kind . . . ." 22 U.S.C. § 611(d). Mr. Craig has long maintained that his very limited provision of the Tymoshenko Report to three journalists does not, under the circumstances, qualify as "dissemination" under the statute. Ms. Hunt now apparently takes a different view, contrary to the determination she made on January 16, 2014. Ms. Hunt evidently now believes that any delivery of informational material to a journalist constitutes dissemination, as does "placing two or more copies of informational material into interstate commerce." Some of her grand jury testimony and interview statements to that effect are set forth in the table below.

| | **GRAND JURY (Ex. 1)** |
|---|---|
| **Cite** | **Hunt Testimony** |
| 23:16 | …. If, if, if they're disseminating the report to media, to you know, any sections of public in the United States; to Congress, to the Administration, we, we want to know. Because if they are and they're doing it at the request or under the direction or control of foreign government, then there would be an obligation to register. |
| 26:12 | If they were trying to get the message out to the media or to the public or government officials, that's all -- would be considered political activity under the statute. Going back to the definition where you're trying to influence government officials, you're trying to influence the section of the public of the United States, trying to -- political, public interest of the government -- foreign government. |
| | **FBI-302 of Hunt (2/21/2019) (Ex. 2)** |
| 2 of 5 | Hunt stated if Craig gave the Skadden Report to the media that would have been a dissemination, and the FARA Unit would not have changed its conclusion. |
| 3 of 5 | At the meeting the parties talked about dissemination of the report in the terms of FARA. Dissemination involved placing two or more copies of informational material into interstate commerce. Providing informational material to one journalist causes dissemination to more people. |

Ms. Hunt did not explain the basis for her opinion on the meaning of *disseminate* in this context. "Dissemination" is not defined in the statute or the FARA regulations. *See* 28 C.F.R.

§ 5.100. Ms. Hunt's opinion is contradicted by the plain meaning of the word. *See*, *e.g.*, Random House Dictionary of the English Language 569 (2d ed. 1987) ("to scatter or spread widely, as though sowing seed; promulgate extensively; broadcast; disperse"). To the extent "dissemination" is a legal term of art, it must be presented to the jury, if at all, as an instruction from the Court. The Court should rule *in limine* that testimony from Ms. Hunt about the meaning of "dissemination" under FARA § 611(c)(1) would be inadmissible as a legal conclusion or, alternatively, as an expert opinion requiring specialized knowledge and therefore not within the purview of a fact witness. *See supra* Part II.A.

2. **A potential registrant's purpose in engaging in conduct that provides an incidental benefit to a foreign principal**

Ms. Hunt also delivered detailed opinions concerning how a duty to register is affected when a potential registrant engages in activities that a foreign principal has requested, even if the potential registrant is acting solely or predominantly to advance his own interests or the interests of other domestic persons, or if the potential registrant has a motive to benefit himself (or other domestic persons) but the conduct incidentally benefits a foreign principal. Although her statements on these topics are not easy to decipher, Ms. Hunt apparently believes that engaging in conduct previously requested by a foreign principal requires registration, regardless of the potential registrant's purpose or motive in acting. Some excerpts of her statements on this topic are set forth below.

| **GRAND JURY (Ex. 1)** |
|---|---|
| **Cite** | **Hunt Testimony** |
| 28:15 | A Right. Well FARA does not have a de minimis standard, okay. You do anything -- you do anything, you can have, you know, 15 other reasons for doing it. But if the [foreign] government told you to do it and you do it, and it, you know, benefits the other 15 reasons as well, but you've triggered registration because you have acted in any way to try to influence, you know, a section of the public or whatever. |
| 46:15 | A Yes. Well, that's -- that really is the gist of it right there. I mean, if they're not doing it, if they didn't consult with Ukraine, they didn't even inform Ukraine of what they |

| | |
|---|---|
| | were doing -- okay, we did it—they didn't ask under the instructions, which would be the request, direction, order of the Ukraine and weren't acting as an agent, they wouldn't have an obligation to register.<br><br>But if it was all the opposite and they did consult with Ukraine, they did discuss it with the Ukraine, and they did act at the order, request, or direction or control to get this report in the hands of the media, then there would have been a registration obligation. |
| 47:16 | …. For example if they had consulted with Ukraine about their comments to the media, just by itself, would that perhaps be enough?<br><br>Q. Let's say consulted before, first.<br><br>A. If they're consulting before with the Ukraine and say, hey, and the Ukraine says, hey yeah, we want you to go contact the media and make sure they get this report, then that would be registrable.<br><br>Q. What if as the hypothetical we discussed previously Ukraine had said, hey, we would like you to provide this report to the media in the U.S.? Just that but not the other stuff, would you  --<br><br>A. Hey, we'd like you to do this?<br>…<br>A – then they do it, that would be enough to require a registration.… |
| **FBI-302 of Hunt (2/21/2019) (Ex. 2)** ||
| 4 of 5 | If Craig gave the Skadden report to media outlets prior to those outlets having reported on the Skadden Report, that activity would require FARA registration if done with an intent to disseminate the report under the direction or control of the Ukrainian government. |
| 4 of 5 | If Craig knew the government of Ukraine was going to mis-characterize the Skadden Report and, as a result, Craig gave the Skadden Report to the New York Times to get ahead of that mis-characterization, Hunt stated that activity may not require registration if it was not done under the direction or control of a foreign principal. The same would be true if Craig gave the Skadden Report to the New York Times and asked the New York Times to hold off on reporting on the Skadden Report until other coverage appeared in the media. |
| 4 of 5 | Hunt was asked if FARA registration would be required if Craig's media contacts were done in response to requests from the media. In reply, Hunt stated it did not matter who initiated the contact. What would be relevant is whether the purpose of the contact was to influence the public on behalf of a foreign principal. Hunt felt the decision to give the Skadden Report to the media was an independent decision and not done for a foreign principal. |
| 4 of 5 | If the government of Ukraine asked Craig to contact the New York Times via a public relations firm, but Craig contacted the New York Times to prevent the Ukrainian government from mis-characterizing the report that activity would require FARA registration if the government of Ukraine requested the contact. If Craig was asked by a foreign principal to give the Skadden Report to the New York Times, that activity |

| | |
|---|---|
| | would require FARA registration even if Craig had personal motivations for providing the Skadden Report to the New York Times. |
| 4 of 5 | If the government of Ukraine asked Craig to disseminate the Skadden Report and Craig stated he would not disseminate the Skadden Report, but then ultimately disseminates the report, that activity would not require FARA registration if done for Craig's own purpose. |
| 4 of 5 | If Craig provided a copy of the Skadden Report to the New York Times at the request of the government of Ukraine and was also asked to provide a pro-Ukrainian message along with providing the report to the New York Times, that activity would still require FARA registration if Craig provided the report and provided a less-positive modified version of the pro-Ukrainian message. |

Ms. Hunt's interpretations are not just inadmissible conclusions of law – they are in some cases erroneous.[2] If Mr. Craig's predominant purpose in communicating with the media was to promote his own or his law firm's interests, he was not required to register even if a foreign principal desired Mr. Craig to engage in those communications.

Congress amended FARA in 1966 to narrow the broad definition of "agent of a foreign principal"; in particular, Congress limited the prohibited registrable activities of agents to those that were performed "for or in the interests of such foreign principal." When this legislation was first proposed in 1963, Deputy Attorney General Katzenbach acknowledged in Senate testimony that the appropriate jury instruction under this provision would be, "You must believe beyond a reasonable doubt that this was done on behalf of the foreign principal and as part of that arrangement." [FARA] Amendments: Hearings before the Senate Foreign Relations Comm. on S. 2136, 88th Cong. at 11-12 (1963).

Despite Mr. Katzenbach's concern, the modifying language remained in the bill when it came up in the next congressional session, and Congress clearly understood it to require not just an actual benefit to a foreign principal, but a predominant motive to cause such a benefit:

---

[2] Mr. Craig is not suggesting that each of Ms. Hunt's legal interpretations quoted herein (or set forth in 302s and grand jury testimony) is erroneous as a matter of law or that he disagrees with everything quoted; rather, the excerpts are intended to show that Ms. Hunt provided opined on key legal topics about FARA. Mr. Craig believes that Ms. Hunt's commentary, taken as a whole, was frequently inconsistent and confusing, and amply demonstrates the imprudence of pursuing a criminal prosecution tied to the registration requirements of FARA.

11

> Under existing law it is possible because of the broad scope of the definitions contained in section 1(c) [FARA § 611(c)] to find an agency relationship (and thus the possibility of registration) of persons who are not, in fact, agents of foreign principals *but whose acts may incidentally be of benefit to foreign interests, even though such acts are part of the normal exercise of those persons' own rights of free speech, petition, or assembly*. This may have been desirable when the Foreign Agents Registration Act was amended in 1942, but does not appear warranted in present circumstances.

H.R. Rep. No. 1470, 89th Cong. 2d Sess., at 6 (May 3, 1966) (emphasis added); *see also Attorney General* v. *Irish People, Inc.*, 796 F.2d 520, 524 (D.C. Cir. 1986); *Attorney General* v. *Irish Northern Aid Comm.*, 668 F.2d 159, 161 & n.5 (2d Cir. 1982) (both citing the foregoing legislative history as evidence that Congress intended to limit the scope of the statute).

Moreover, this narrowing was consistent with how the 1966 amendments simultaneously expanded the exemption from registration in FARA § 613(d)(2), to its current version, which now exempts from registration "[a]ny person engaging or agreeing to engage only … in other activities not serving *predominantly* a foreign interest." (Emphasis added.) The Attorney General recognized in his 1966 report to Congress that "Section 3 [FARA § 613] was broadened to include activities that do not serve predominantly a foreign interest, even though they are political." Report of the Attorney General to the Congress of the U.S. on the Administration of FARA, as amended for the Calendar Year 1966, at 3.[3] The contemporaneous Report of the House Judiciary Committee, which drafted the key amendment to the exemption, explains its meaning:

> Committee Amendment No. 1 clarifies what is meant by the term "other (i.e., political) activities not serving predominantly a foreign interest," as contained in S. 693 as it passed the Senate. It states, in effect, that such activities will be exempt from registration provided they advance the commercial, industrial or financial interests of a domestic person engaged in substantial business in the United States. If the activities do serve the interests of such a

---

[3] Available at: https://www.justice.gov/nsd-fara/page/file/991881/download (last accessed June 16, 2019).

12

> domestic firm, however, the amendment clarifies the intent that the exemption shall not be lost merely because the activities also assist a foreign subsidiary or a foreign parent of the U.S. company.

H.R. Rep. No. 1470, 89th Cong. 2d Sess., at 11 (May 3, 1966).

In other words, the contemporaneous legislative history and contemporaneous interpretation by the Department of Justice of FARA § 611(c), as well as the plain text of the exemption under FARA § 613(d)(2), all indicate that Mr. Craig was required to register only if his *predominant* purpose in communicating with the media was to assist a foreign principal.[4] The rationale is that a person is not acting for, at the request of, or at the direction or control of a foreign principal when his sole or primary purpose is to advance his own interests or the interests of other domestic persons.

The evidence will establish that Mr. Craig's sole purpose in his communications with a few journalists was to advance the interests of domestic persons (himself and his law firm) by

---

[4] At the time, the § 613(d)(2) exemption was modified by § 611(q), which provided a specific application of the exemption in the context of U.S. companies with foreign subsidiaries or foreign companies with U.S. subsidiaries:

> For the purpose of section 613(d) of this title, activities in furtherance of the bona fide commercial, industrial or financial interests of a domestic person engaged in substantial commercial, industrial or financial operations in the United States shall not be deemed to serve predominantly a foreign interest because such activities also benefit the interests of a foreign person engaged in bona fide trade or commerce which is owned or controlled by, or which owns or controls, such domestic person: *Provided*, That (i) such foreign person is not, and such activities are not directly or indirectly supervised, directed, controlled, financed or subsidized in whole or in substantial part by, a government of a foreign country or a foreign political party, (ii) the identity of such foreign person is disclosed to the agency or official of the United States with whom such activities are conducted, and (iii) whenever such foreign person owns or controls such domestic person, such activities are substantially in furtherance of the bona fide commercial, industrial or financial interests of such domestic person.''

*See* 22 U.S.C. § 611(q) (1966). Thus, under § 611(q), if a domestic person's work on behalf of a U.S. subsidiary benefited a foreign parent, the person was only required to register if the work served predominantly a foreign interest. An exception to the exemption made clear that in this context of multinational companies, the exemption did not apply when the foreign person was a government of a foreign country or a foreign political party. But no such exception applied to § 613(d) generally and, moreover, § 611(q) was deleted in its entirety by the Lobbying Disclosure Act of 1995 (LDA). Pub. L. No. 104-65, § 9, 109 Stat. 700 (Dec. 19, 1995). The LDA did not change § 613(d)(2), which remains in its 1966 form.

correcting erroneous interpretations of the Tymoshenko Report that were being made by his client and others. The jury should consider that evidence after receiving accurate instructions on the law from the Court. Ms. Hunt should not be permitted to contradict those instructions by offering her opinion that FARA requires registration if a person acts consistently with the interests of a foreign principal, regardless of his purpose or motive.

        3.    **Duty to supplement**

In her grand jury testimony – albeit in response to a juror question – Ms. Hunt expressed an opinion that Mr. Craig had a duty to provide updated information to the FARA Unit after an initial meeting. And in one of her government interviews, she stated that persons responding to the FARA Unit's "possible obligation letters" (POLs) have a duty to disclose all relevant information.

| **GRAND JURY (Ex. 1)** ||
|---|---|
| **Cite** | **Hunt Testimony** |
| 55:16 | A JUROR: What -- how do I ask this? After this meeting, and you go back and make your -- so this is a hypothetical -- and you make your determination, or is there an expectation or do you ever say to the parties involved, okay, great, thank you for, you know, the next day they memorialize what their request is, you do the second determination, hey -- or is there a standard policy, if anything else comes up or if there is any other information about this, please continue to keep us informed or let us know?<br><br>Is there that kind of communication or expectation? Or is that -- has that happened before that if, whether it be Craig or Skadden later down the road, say Skadden independent down the road found out something, do they have a responsibility to come back to you and say, hey, by the way, we just found out blah, blah, blah?<br><br>THE WITNESS: Yes.<br><br>A JUROR: Okay.<br><br>THE WITNESS: Yes, they do. And that happens. It happens a lot, mm-hmm. Yeah, what they do, and they -- you know? Yeah, they have a responsibility. |
| **FBI-302 of Hunt (5/15/2018) (Ex. 3)** ||
| 5 of 9 | HUNT was asked whether it would affect her view on the question of independence if Skadden had disclosed that the firm was also assisting the Ukrainian Ministry of Justice with preparations for another trial of Tymoshenko. HUNT said that was |

14


|  | |
|---|---|
|  | something that should have been disclosed in response to the POL's question regarding "the activities the firm has engaged in or the services it has rendered" to Ukraine. The question was phrased in general terms for a reason; Skadden, however, limited its response specifically to the SA Report. |
| 7 of 9 | HUNT expects potential registrants to be truthful and complete in their responses to POLs[.] |

The government may claim that these excerpts allow Ms. Hunt to testify that Mr. Craig had a duty to disclose all potentially material information to the FARA Unit in addition to answering truthfully the specific questions the Unit posed. (Because the government has not furnished a formal expert disclosure, Mr. Craig cannot know the government's intention for sure.) The duty to disclose issue has been briefed extensively in the pending motions to dismiss, which could terminate this prosecution. Even if the motions are denied, however, the source and nature of the duty to disclose remains a legal issue that may not be addressed by a lay witness. At this stage, the Court should rule *in limine* that the matter is an issue of law that Ms. Hunt may not testify to at trial, regardless whether she is proffered as a fact or an expert witness.

## III. CONCLUSION

For the reasons stated, defendant Gregory B. Craig respectfully requests that his motion *in limine* be granted.

Dated: June 24, 2019                                   Respectfully submitted,

                                                       */s/ William W. Taylor, III*
                                                       _____
                                                       William W. Taylor, III (D.C. Bar No. 84194)
                                                       Ezra B. Marcus (D.C. Bar No. 252685)
                                                       ZUCKERMAN SPAEDER LLP
                                                       1800 M Street N.W. Suite 1000
                                                       Washington, D.C. 20036
                                                       Tel: (202) 778-1800
                                                       Fax: (202) 822-8106
                                                       Email: wtaylor@zuckerman.com
                                                       Email: emarcus@zuckerman.com

                                                       William J. Murphy (D.C. Bar No. 350371)
                                                       Adam B. Abelson (D.C. Bar No. 1011291)
                                                       ZUCKERMAN SPAEDER LLP
                                                       100 East Pratt Street, Suite 2440
                                                       Baltimore, MD 21202
                                                       Tel: (410) 332-0444
                                                       Fax: (410) 659-0436
                                                       Email: wmurphy@zuckerman.com
                                                       Email: aabelson@zuckerman.com

                                                       *Attorneys for Defendant Gregory B. Craig*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 24, 2019, the foregoing was served on counsel of record via the Court's CM/ECF service.

                                                  /s/ *Ezra B. Marcus*
                                                  Ezra B. Marcus