# Exhibit 2

FD-302 (Rev. 5-8-10)  -1 of 5-  

**UNCLASSIFIED//FOUO**

FEDERAL BUREAU OF INVESTIGATION

Date of entry  03/26/2019

**FEDERAL GRAND JURY INFORMATION**

This document contains information pertaining to a federal grand jury proceeding. The information may not be disseminated within or outside the FBI, except as provided for under Federal Rule of Criminal Procedure 6(e)(3), wherein disclosure may be made to: (1) an attorney for the government for use in performing that attorney's official duties; or (2) any government personnel that an attorney for the government considers necessary to assist in performing that attorney's official duties.

On February 21, 2019, Heather Hunt was interviewed at the offices of the U.S. Department of Justice, Foreign Agents Registration Act Unit ("FARA Unit") located at 175 N Street, NE, Constitution Square, Building 3, Washington, D.C. 20002. Present for the interview were Assistant United States Attorneys Fernando Campoamor-Sanchez, Molly Gaston, and Michael DiLorenzo from the United States Attorney's Office for the District of Columbia; U.S. Department of Justice Attorney Jason McCullough from the Counterintelligence and Export Control Section; and Special Agent Daniel Kegl from the New York Office of the Federal Bureau of Investigation.

At the beginning of the interview, Hunt was provided with a binder of tabbed exhibits prepared by United States Attorney's Office for the District of Columbia. The interviewers referenced the exhibits throughout the interview. The corresponding tab numbers are noted below where applicable. A copy of the binder is attached hereto as a physical 1A package.

After being advised of the identities of the interviewing parties and the nature of the interview, Hunt provided the following information:

Hunt was sure Kevin Connolly took notes during the October 9, 2013, meeting the FARA Unit had with Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"). However, Hunt could not find Connolly's notes after searching for them. If Hunt had found the notes, she would not have expected to find detailed notes. Hunt did not usually take notes at meetings such as the one on October 9, 2013, with Skadden because she would be talking. Hunt would take notes if someone else was running the meeting.

**UNCLASSIFIED//FOUO**

Investigation on  02/21/2019  at  Washington, D.C., District Of Columbia, United States (In Person)

File #  ███████████████████████████████                                    Date drafted  02/22/2019

by  KEGL DANIEL

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

USA-0008256

FD-302a (Rev. 05-08-10)

**UNCLASSIFIED//FOUO**

Continuation of FD-302 of (U//FOUO) Interview of Heather Hunt , On 02/21/2019 , Page 2 of 5

    Skadden's request to have an in-person meeting with the FARA Unit to discuss the FARA Unit's conclusion regarding Skadden's obligation to register under FARA was normal. The FARA Unit was willing to hear Skadden's position. The FARA Unit was receptive to making a change in its conclusion regarding registration. There was not an agenda on the FARA Unit's part heading into the meeting. However, going into the meeting Hunt needed to be convinced by Skadden for her to make a change in the FARA Unit's conclusion. In this case, Skadden's contacts with media outlets was an issue. If Skadden's contacts with the media were done for the purpose to influence the public the activity would require FARA registration. Craig was adamant the contacts were in response to the media.

    The purpose of the media contacts was something Hunt wanted to hear about at the meeting. At the meeting, the FARA Unit did not make a decision about Skadden's duty to register under FARA.

    Generally, the FARA Unit's interactions with Skadden were regular and routine.

    Prior to the meeting, Hunt had worked with Kenneth Gross. Hunt knew Gregory Craig's name because he had registered under FARA in the early 1990s. Hunt had not interacted with Lawrence Spiegel prior to the meeting. Hunt described Gross and Craig as having an "air about them."

    The meeting occurred at the FARA Unit's office in a conference room. Hunt did not remember the seating arrangement. Craig did a lot of talking. Craig was trying to convince the FARA Unit about the media contacts. Craig talked about the Los Angeles Times contact. Craig was adamant he did not disseminate the report Skadden wrote about the prosecution of Yulia Tymoshenko (the "Skadden Report"). Craig reached out to the Los Angeles Times to correct a mis-characterization. Craig described the contacts with the three media outlets named in Skadden's correspondence with the FARA Unit as being done to correct mis-characterizations.

    Hunt stated if Craig gave the Skadden Report to the media that would have been a dissemination, and the FARA Unit would not have changed its conclusion.

    Prior to the meeting with Skadden the FARA Unit would have gone over the correspondence with Skadden and the relevant news articles. The FARA Unit knew what the purpose of the meeting was. The FARA Unit expected to hear why Craig's media contacts were only to correct mis-characterizatons and not disseminations of the Skadden Report.

**UNCLASSIFIED//FOUO**

USA-0008257

FD-302a (Rev. 05-08-10)

**UNCLASSIFIED//FOUO**

Continuation of FD-302 of (U//FOUO) Interview of Heather Hunt , On 02/21/2019 , Page 3 of 5

    Hunt did not know why a person from the United States Department of State was an issue, but Hunt did know she did not want the person to attend the October 9, 2013, meeting. Hunt recalled the inquiry to have the Department of State person attend the meeting came from Skadden. Hunt told the acting Section Chief, Thomas Reilly, about the request. Hunt did not want someone from the Department of State convincing the FARA Unit that Skadden did not need to register. Having a person from the Department of State attend the meeting would have been odd.

    Hunt did not need to provide briefings to Reilly simply because the matter involved Skadden and Craig. Reilly knew the FARA Unit was going to have a meeting with Skadden.

    After the meeting Hunt did not report the results to her superiors because there was enough said in the meeting and in Skadden's October 10, 2013, letter documented behind Tab 17 of the binder for the FARA Unit to change its conclusion about Skadden's need to register under FARA. It was not a requirement that Hunt report to Reilly, or ask for his approval, to change the FARA Unit's conclusion. At the time, this was a routine registration matter. The FARA Unit's decision to change its initial determination did not need to go up the management chain. Hunt stated there was not a novel legal issue in this case. If the media contacts were done only to correct mis-characterizations, the contacts would not have triggered FARA registration.

    At the October 9, 2013, meeting Hunt remembered Craig discussing the nature of the media contacts. Hunt remembered Craig talking about the Los Angeles Times, but she did not remember the other media outlets being talked about. Hunt did not remember a publication not previously identified in the correspondence between the FARA Unit and Skadden being named in the meeting.

    Hunt did not remember discussing the manner in which the media obtained the Skadden Report at the meeting. The meeting lasted for less than one hour. After the meeting, the FARA Unit met to debrief. Hunt did not remember what they concluded or if they made conclusions at the debrief.

    At the meeting the parties talked about dissemination of the report in the terms of FARA. Dissemination involved placing two or more copies of informational material into interstate commerce. Providing informational material to one journalist causes dissemination to more people. Dissemination also involves being engaged in political activity with a purpose to influence.

**UNCLASSIFIED//FOUO**

FD-302a (Rev. 05-08-10)

**UNCLASSIFIED//FOUO**

Continuation of FD-302 of (U//FOUO) Interview of Heather Hunt ,On 02/21/2019 ,Page 4 of 5

At the October 9, 2013, meeting, Craig said he gave the Skadden Report to a reporter to correct a mis-characterization. Hunt thought Craig was talking about a mis-characterization that was already published.

Hunt told Craig he had to put his position in writing for the FARA Unit.

If Craig gave the Skadden Report to media outlets prior to those outlets having reported on the Skadden Report, that activity would require FARA registration if done with an intent to disseminate the report under the direction or control of the Ukrainian government.

If Craig knew the government of Ukraine was going to mis-characterize the Skadden Report and, as a result, Craig gave the Skadden Report to the New York Times to get ahead of that mis-characterization, Hunt stated that activity may not require registration if it was not done under the direction or control of a foreign principal. The same would be true if Craig gave the Skadden Report to the New York Times and asked the New York Times to hold off on reporting on the Skadden Report until other coverage appeared in the media.

Hunt was asked if FARA registration would be required if Craig's media contacts were done in response to requests from the media. In reply, Hunt stated it did not matter who initiated the contact. What would be relevant is whether the purpose of the contact was to influence the public on behalf of a foreign principal. Hunt felt the decision to give the Skadden Report to the media was an independent decision and not done for a foreign principal.

If the government of Ukraine asked Craig to contact the New York Times via a public relations firm, but Craig contacted the New York Times to prevent the Ukrainian government from mis-characterizing the report that activity would require FARA registration if the government of Ukraine requested the contact. If Craig was asked by a foreign principal to give the Skadden Report to the New York Times, that activity would require FARA registration even if Craig had personal motivations for providing the Skadden Report to the New York Times.

If the government of Ukraine asked Craig to disseminate the Skadden Report and Craig stated he would not disseminate the Skadden Report, but then ultimately disseminates the report, that activity would not require FARA registration if done for Craig's own purpose.

If Craig provided a copy of the Skadden Report to the New York Times at the request of the government of Ukraine and was also asked to provide a

**UNCLASSIFIED//FOUO**

USA-0008259

FD-302a (Rev. 05-08-10)

**UNCLASSIFIED//FOUO**

Continuation of FD-302 of (U//FOUO) Interview of Heather Hunt , On 02/21/2019 , Page 5 of 5

pro-Ukrainian message along with providing the report to the New York Times, that activity would still require FARA registration if Craig provided the report and provided a less-positive modified version of the pro-Ukrainian message.

### Tab 9

With respect to the response to question one in Document SDNY_00045, Craig gave the Skadden Report to the reporters to show them they made a mis-characterization of the report in their articles. Craig was making sure the FARA Unit knew he did not give the Skadden Report to the media for the purpose of getting the word out about the Skadden Report and for the media to write about the Skadden Report.

### Tab 11

Looking at the letter documented behind Tab 11 of the binder, Hunt stated based on what Skadden gave the FARA Unit, the FARA Unit thought the activity required registration under FARA.

### Tab 17

Hunt stated the October 10, 2013, letter from Craig to Hunt documented behind Tab 17 of the binder identified the general thing that was discussed at the October 9, 2013, meeting. The letter confirmed facts Hunt expected to see. The second paragraph of the letter was the gist of the meeting. Hunt did not remember media outside of the United States being a topic of discussion at the meeting. Hunt said the gist of the meeting was Craig's contacts with the media were done on his own and independent of the Ukrainian government.

Hunt felt Skadden did not need to register under FARA based on what she heard in the October 9, 2013, meeting and what she read in the October 10, 2013, letter.

**UNCLASSIFIED//FOUO**