UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>  *v.*<br><br>**GREGORY B. CRAIG**,<br><br>  *Defendant.* | Case No. 1:19-cr-0125 (ABJ) |

**OPPOSITION TO GOVERNMENT MOTION *IN LIMINE* TO
EXCLUDE DEFENDANT'S PROFFERED OPINION TESTIMONY**

The government has moved to exclude the testimony of defense expert Amy Jeffress. Mot. *In Limine* to Exclude Defendant's Proffered Opinion Testimony ("Mot."), ECF 42. Ms. Jeffress, an exceptionally well qualified lawyer, is expected to testify that reasonable persons in Mr. Craig's circumstances would have believed they were not required to register under the Foreign Agents Registration Act (FARA). This testimony is directly relevant to a key allegation in the indictment, and it is explicitly authorized by a controlling decision of the Court of Appeals. The government's attempt to exclude Ms. Jeffress's testimony is meritless.

**I.   BACKGROUND**

This Court's Scheduling Order included a single line stating that "Expert witness disclosures are due" on June 10, 2019. ECF 11. These disclosures, the government acknowledges, "are governed by Rule 16(b)(1)(C)," Mot. at 3, although the government does not acknowledge the Fifth and Sixth Amendment protections built into that rule. For a defendant in a criminal case, the obligation to disclose expert testimony is conditional and limited, and Mr. Craig's disclosure more than satisfied the applicable standard.

Mr. Craig filed a timely expert disclosure on June 10, 2019, stating that he expected to call Amy Jeffress. ECF 40 (the "June 10 Disclosure"). The June 10 Disclosure explained that Ms. Jeffress would opine that "it would have been reasonable for a knowledgeable practitioner in the field in or around 2012 and 2013 to believe that a lawyer or law firm engaged by a foreign government to perform an independent analysis and to complete a report on the procedures utilized in a criminal prosecution in that foreign country was not required to register as an agent of the foreign principal under the provisions of [FARA], regardless of how the foreign entity intended to use the report or did in fact use it." ECF 40 at 1. The June 10 Disclosure further explained that Ms. Jeffress would testify "that it would have been reasonable for a knowledgeable practitioner to believe that providing a copy of the report to a few media outlets and speaking about the conclusions contained in it, in order to ensure that those conclusions were accurately reported in the U.S. media, would not require registration as long as those contacts were not made under the direction and control of the foreign principal, even if the client had an interest in the report's getting public attention." *Id.* Finally, the June 10 Disclosure observed that Ms. Jeffress might respond to as-yet undisclosed government opinion testimony. *Id.* at 2.

The government, for the most part, does not dispute the sufficiency of the disclosure of Ms. Jeffress's opinions (it disputes their relevance, which is addressed below). Rather, the government objects to the disclosure of the bases and reasons for those opinions, as well as to Ms. Jeffress's qualifications to render them. As to the bases and reasons, the June 10 Disclosure stated:

> Ms. Jeffress will base her opinions on her experience as a federal prosecutor, including especially her role as Chief of the National Security Section of the United States Attorney's Office for the District of Columbia, from 2007 to 2009, during which time she supervised that Office's investigations and prosecutions related to FARA, and her knowledge of how the FARA Unit performed its

> functions. She will also base her opinions on her experience serving as the designated FARA advisor for Arnold & Porter with respect to her own law firm's FARA obligations. And she will base her opinions on her knowledge gained as a FARA practitioner who often advises clients (including lawyers and law firms, consulting firms, and some foreign companies) on their registration obligations under FARA. Ms. Jeffress's opinions will also be based on her review of documents produced by the government in discovery in this case, and her knowledge of the activities of lawyers and law firms representing foreign governments and foreign entities during the relevant time frame.

*Id.*

As to Ms. Jeffress's qualifications, the June 10 Disclosure attached Ms. Jeffress's biography, as maintained on her law firm's website. *See* ECF 40-1. The attachment summarized Ms. Jeffress's career highlights as a lawyer, including most prominently her focus in national security, white collar criminal defense, and export control and sanctions. It also outlined her experience, including her service as the Chief of the National Security Section of the U.S. Attorney's Office for the District of Columbia and as Counselor to the U.S. Attorney General for National Security and International Matters. In these capacities, Ms. Jeffress essentially served as a supervisor of government attorneys who would prosecute FARA violations, like the prosecutors in this case. Of course, there were exceedingly few FARA prosecutions during Ms. Jeffress's tenure (and for decades before she arrived), but this fact, coupled with the absence of civil enforcement actions, only reinforces Ms. Jeffress's opinions concerning why lawyers in Mr. Craig's position would not have believed FARA registration was required.

On June 11, 2019, the government sent a three-page letter to defense counsel requesting more information about Ms. Jeffress's opinions by Friday, June 14. ECF 42-5. "To assist" defense counsel, the government "identified . . . some of the more serious deficiencies in" the June 10 Disclosure. *Id.* at 1. These purported "deficiencies" in fact were demands for information far beyond the requirements of Rule 16. Nevertheless, on Monday, June 17, defense

counsel sent a detailed response to the government. This "Supplemental Disclosure" began by noting that the June 10 Disclosure was "adequate and consistent with Rule 16 and the Court's scheduling order." ECF 42-6, at 2. To avoid needless motions practice, however, Mr. Craig provided additional information. As to Ms. Jeffress's qualifications, the Supplemental Disclosure explained:

> Ms. Jeffress supervised the investigation of Robert J. Cabelly during her tenure as Chief of the National Security Section of the United States Attorney's Office for the District of Columbia. She was not involved in the actual charging decision in that matter because by the time the indictment was returned she had moved to a position at Main Justice. The charges in the Cabelly matter involved a defendant who had registered as a foreign agent under FARA, then announced to the FARA Unit that he was terminating his services as an agent, but he nonetheless continued to act as an unregistered agent for the Republic of the Sudan following the termination of his FARA registration. The indictment was unsealed in October, 2009 and the matter is Case no. CR-09-278, assigned to Judge Bates. Ms. Jeffress also had involvement as a prosecutor with at least two other cases involving charges based on 18 U.S.C. § 951 (acting as a foreign agent without disclosure to the Attorney General).
>
> We can also clarify that Ms. Jeffress joined Arnold & Porter in April, 2014 and began to work on FARA-related matters for the firm and for its clients by the fall of that year. Initially, she assisted another more senior attorney in advising on the firm's own FARA-related responsibilities, as well as advising clients regarding FARA registration issues during the period from December, 2014, through 2017. After the other attorney retired, Ms. Jeffress became the Firm's designated FARA advisor in January, 2018, a position she still holds. Over the last five years she has been involved in preparing, reviewing and filing over 50 FARA registration forms on behalf of Arnold & Porter, and she has provided FARA advice to more than a dozen firm clients, including consulting firms, corporate entities, nonprofit think tanks, law firms, and three disclosed foreign government clients of her law firm. Although Ms. Jeffress was not involved in a private FARA practice during 2012 and 2013, she will testify that she is unaware of any significant developments during the period between 2012 and 2017 that would have changed the approach of FARA practitioners with respect to their advice concerning the registration obligations created by the statute.

ECF 42-6, at 2-3. The Supplemental Disclosure then identified a number of written materials that Ms. Jeffress is expected to rely upon for her opinions, including the definitional provisions in the statutory text, the legislative history of those provisions, specific decisions interpreting the agency requirements of the statute, and a treatise that offers practical guidance on the statute's interpretation. *Id.* at 3.

## II.   ARGUMENT

### A.   Ms. Jeffress's proffered testimony is relevant and admissible.

The Indictment alleges that Mr. Craig committed two felony offenses by withholding or concealing information from the FARA unit. Each of those charges necessarily presents the jury with two questions that are likely to be central to the trial. First, if Mr. Craig concealed or withheld information he was obligated to provide, was that information "material" to a decision or action by the FARA Unit; *i.e.*, would it have tended to influence a reasonable agency decision-maker? Second, did Mr. Craig act willfully, meaning did he know he was acting unlawfully by withholding or concealing the information? Ms. Jeffress will aid the jury in answering these questions by explaining how FARA was reasonably and widely understood in 2012, prior to the Department of Justice's recent policy changes.

Expert testimony on materiality is admissible. In *United States* v. *Litvak*, 808 F.3d 160, 180-85 (2d Cir. 2015), for instance, the court reversed a securities fraud conviction because the district court would not allow expert testimony on how investment managers value mortgage securities, and "the likely impact on the final purchase price of a broker's statements to a counterparty during the course of negotiating a RMBS transaction." *Id.* at 182. Because materiality is an objective standard, the defendant could not be "left only with the 'victims' of his conduct as sources of potential testimony on this issue." *Id.* at 183-84. In *United States* v. *Barile*, 286 F.3d 749, 759-62 (4th Cir. 2002), the court ruled that the wholesale exclusion of

5

expert testimony on the materiality of false statements in submissions to the FDA was proper as a discovery sanction, but not on the merits, which it directed the district court to reconsider if a different error required a retrial. The expert would have testified about the practice in making such submissions to the FDA and whether the alleged false statement was material in light of that standard practice. *See also United States* v. *Lindsey*, 850 F.3d 1009, 1016 (9th Cir. 2017) ("it would be admissible for a defense expert to testify that, while mortgage applications usually ask about marital status, the general practice in the industry is to ignore marital status when making lending decisions"); *United States* v. *Wolf*, 860 F.3d 175, 193-94 (4th Cir. 2017) (affirming decision to admit government expert testimony on the materiality of representations concerning down payments in the mortgage industry).

Expert testimony on willfulness can also be admissible, particularly in the context of statutory requirements that are complex, ambiguous, or unsettled. *See*, *e.g.*, *United States* v. *Leo*, 941 F.2d 181, 196-97 (3d Cir. 1991); *United States* v. *Bradley*, 2006 WL 8429691 (S.D. Ga. Feb. 20, 2006);[1] *United States* v. *Banki*, 2010 WL 1875690 (S.D.N.Y. May 10, 2010).[2] In *Banki*, the court permitted a former director of the Office of Foreign Assets Control (OFAC) to testify regarding both materiality and willfulness in a case charging violations of Iranian sanctions and false statements in response to OFAC inquiries. The expert was allowed to testify about OFAC's policy not to regulate non-commercial family remittances, provided there was evidence in the record to link the policy to the defendant's state of mind with regard to what the law required. He

---

[1] *Bradley* relies on a body of cases dealing with expert testimony on willfulness in tax offenses. 2006 WL 8429691, *3 n.4.

[2] Courts also routinely allow similar expert testimony about the standard of reasonable corporate behavior when the issue is willful patent infringement. *See, e.g.*, *Abbott Biotechnology Ltd.* v. *Centocor Ortho Biotech, Inc.*, 2014 WL 7330777 (D. Mass. Dec. 19, 2014); *Oxford Gene Tech., Ltd.* v. *Mergen Ltd.*, 345 F. Supp. 2d 431, 442-43 (D. Del. 2004).

was also allowed to testify about the materiality of the allegedly false statement identifying the family member involved with the remittances. *See id.* at *3-4.

In this case, Ms. Jeffress's testimony goes to the heart of the willfulness and materiality elements at issue, as demonstrated by a controlling decision that the government fails to cite. In *United States* v. *Safavian*, 528 F.3d 957, 967 (D.C. Cir. 2008), defendant Safavian was convicted under 18 U.S.C. § 1001 for telling a government ethics officer that lobbyist Jack Abramoff had "no business" before the General Services Administration (GSA) when Safavian, a GSA employee, was planning to take an elaborate golfing vacation with Abramoff. Safavian claimed that he intended "no business" to mean that Abramoff did not have a contract with the GSA at the time, and he wanted to call an expert witness to offer favorable testimony "on how government contracting professionals view having business or working with GSA." *Id.* at 966. The district court excluded the expert from testifying and Safavian was convicted. The Court of Appeals reversed, holding that the district court abused its discretion by excluding Safavian's expert. As the Court of Appeals explained, the expert witness would have testified on "the common usage of the terms in the government contracts industry," and the jury could decide that Safavian intended that usage rather than a lay meaning that would be within the ken of jurors. *See id.* at 967. The exclusion of Safavian's expert was particularly harmful "in light of the fact that two government witnesses, though not appearing as experts, testified regarding their own interpretations of the phrase 'doing business.'" *Id.*

The *Safavian* decision is on all fours with Mr. Craig's position in this case. If reasonable practitioners would believe that dissuading journalists from accepting Ukraine's spin on the Skadden report did not require registration under FARA, it is more likely that Mr. Craig understood that it was *his* independent purpose in making those contacts that mattered, not the

information he is accused of concealing or withholding about what others were planning or doing. *See* ECF 48, at 11-13 (discussing predominant purpose).

Ms. Jeffress is not going to opine about Mr. Craig's own mental state. That is a straw man the government creates so it can argue that her testimony is barred by Rule 704(b). In *Safavian*, the expert's testimony was not barred by Rule 704(b) because it was not an opinion about Safavian's ultimate intent. Rather, it provided information beyond the ken of the jury that shed light on what Safavian may have been thinking, and the same is true here. The line between expert testimony that supports an inference of the defendant's ultimate intent (admissible) and expert testimony about the defendant's ultimate intent (inadmissible) is sometimes blurry, but the Court of Appeals for the District of Columbia Circuit leans toward admissibility. *United States* v. *Boney*, 977 F.2d 624, 630-31 (D.C. Cir. 1992) ("We accept the Fifth and Ninth Circuits' view that an expert may not testify on the ultimate question of guilt or innocence, but find no warrant in the Federal Rules to extend that prohibition."); *see also United States* v. *Dunn*, 846 F.2d 761 (D.C. Cir. 1988) (mere fact that expert's testimony supports an inference of defendant's ultimate intent does not mean it transgresses Rule 704(b), and thus government expert could testify that possession of drug paraphernalia was common among drug distributors when ultimate issue was defendant's intent to distribute); *United States* v. *Conyers*, 118 F.3d 755, 758 (D.C. Cir. 1997) (Rule 704(b) did not bar expert testimony that weapon recovered from the defendant "was further proof that he was an experienced drug dealer"); *Boney*, 977 F.2d at 631 (expert could testify that a defendant's actions, as described by prosecutor, suggested what role defendant played in criminal enterprise).

Because Ms. Jeffress's proffered testimony is relevant and admissible, the Court should deny the government's motion *in limine*.

**B.     Ms. Jeffress's proffered testimony will not confuse or mislead the jury.**

The government also claims Ms. Jeffress's testimony will "confuse and mislead the jury because it improperly attempts to approximate Defendant's mental state." ECF 42, at 9. As the government sees it: "'Expert' testimony about Defendant's alleged belief (as a 'reasonable' practitioner) that he did not have to register under FARA . . . could lead some jurors to assume or believe that Defendant's mental state . . . is somehow determined by the mental state of a reasonable practitioner regarding FARA registration in 2012." *Id.*

At the outset, the government mischaracterizes the proffered testimony. Ms. Jeffress will not be testifying "about Defendant's alleged belief . . . that he did not have to register under FARA." *Id.* She will be testifying about what reasonable practitioners would have thought in the same or similar circumstances. The jury can then decide whether Mr. Craig actually held that belief – in light of all the evidence, including Ms. Jeffress's testimony about what reasonable practitioners would have thought.

Substantively, the government cites no case in support of its position that the probative value of Ms. Jeffress's testimony is "substantially outweighed" by a danger that it would confuse or mislead the jury. *See* Fed. R. Evid. 403. Significantly, the government continues to ignore *Safavian*, which specifically rejected the district court's conclusion that the testimony would be confusing. *See* 528 F.3d at 966. If expert testimony about a reasonable practitioner's understanding of "doing business with the GSA" is not too confusing for a jury to process, then neither is expert testimony about a reasonable practitioner's understanding of FARA's registration obligation. Indeed, in *Safavian*, the Court of Appeals did not merely hold that defense expert testimony was admissible; it held that excluding the evidence was an abuse of discretion. In a criminal case, courts should be cautious about excluding relevant evidence for the defense. *See*, *e.g.*, *United States* v. *Scheffer*, 523 U.S. 303, 309 (1998) (exclusion of relevant

defense evidence can be a constitutional violation if disproportionate to the purpose of the rule and if it affects a weighty interest of the accused); *see also infra* Part II.C.4. Even if the probative value of the evidence is minimal, the court generally should exercise its discretion under Rule 403 by admitting the testimony. *See United States* v. *Moore*, 732 F.2d 983, 989 (D.C. Cir. 1984) (language of Rule 403 tilts toward the admission of evidence in close cases). In this case, Ms. Jeffress's testimony relates to a key defense, which is particularly critical in a case that presents a novel and untested interpretation of the criminal statutes at issue.

### C.   Mr. Craig provided proper notice of Ms. Jeffress's expert testimony.

Finally, the government complains that defendant's timely disclosure of Ms. Jeffress was inadequate and that his supplement to the disclosure was submitted one business day after the government's unilateral deadline. *See* Mot. at 4-5. At the outset, although it is not clear whether the government wants the Supplemental Disclosure stricken or ignored, the Court plainly should consider it together with the June 10 Disclosure. Defendant is aware of no criminal case that would preclude considering a supplemental disclosure that was prepared at the government's request, merely because the supplement was provided one business day after the government's arbitrary deadline, only one week after the original disclosure was served, and two months prior to trial.

#### 1.   Defendant adequately described the bases and reasons for Ms. Jeffress's opinions.

The government acknowledges that Mr. Craig timely disclosed "two specific opinions by Ms. Jeffress listed on the first page" of the June 10 Disclosure. Mot. at 10. But the government complains the Disclosure did not explain "how and why Ms. Jeffress reached those opinions, or what evidence or documents support her legal conclusions." *Id.* This argument is meritless. Unlike Federal Rule of Civil Procedure 26, which requires an expert report containing (among

many other things) "a complete statement of all opinions the witness will express and the basis and reasons for them," Criminal Rule 16 requires only a "written summary." Fed. R. Crim. P. 16(b)(C); *see United States* v. *Mehta*, 236 F. Supp. 2d 150, 155 (D. Mass. 2002) (criminal expert-disclosure requirement much less onerous than civil). Indeed, a criminal defendant has no obligation to disclose expert witnesses at all unless the defendant has requested disclosure of the government's experts "and the government complies." Fed. R. Crim. P. 16(b)(C)(i). When the government "complies" by stating that it does not intend to call an expert, as the government did here, courts are split as to whether a defendant must file *any* disclosure under Rule 16.[3]

In any event, under Rule 16, "A party sufficiently states an expert's basis for his testimony by noting the expert's education, training and experience and attaching a resume." *United States* v. *Rogers*, 2006 WL 5249745 (D.D.C. July 17, 2006), *appeal dismissed*, 2012 WL 4773803 (D.C. Cir. Oct. 4, 2012); *see also United States* v. *Hite*, 769 F.3d 1154, 1168 (D.C. Cir. 2014) (implicitly approving disclosure that opinions were based on expert's "'background and experience in the field of psychiatry, his academic and clinical study of sexual behaviors including his examination of hundreds of patients diagnosed with clinical pedophilia, a forensic analysis and diagnosis of [the defendant], and a review of the superseding indictment in this case and discovery provided by the government to [the defendant]'"). The Rule may require more when the expert is offering a medical diagnosis of the defendant or is proffering a scientific opinion after a technical analysis. But when the opinion derives from the witness's professional

---

[3] *Compare United States* v. *Finazzo*, 2013 WL 618425, at *2-3 (E.D.N.Y. Feb. 19, 2013) *and United States* v. *Raj Rajaratnam*, 2011 WL 723530, at *2 (S.D.N.Y. Feb. 25, 2011) (defendant must provide notice) *with United States* v. *Young*, 2010 WL 1418748 (D. Me. Apr. 6, 2010) (notice not required).

knowledge, education, and experience in a particular subject area, it is sufficient to outline her educational credentials and experience.

Mr. Craig's disclosures easily meet these standards. The disclosures set forth Ms. Jeffress's background, knowledge, credentials, and experience, and further cite ample written materials that support her opinions. The government's assertion that Mr. Craig failed to identify "what evidence or documents support her legal conclusions," Mot. at 10, is simply false. The Supplemental Disclosure identifies many such materials. ECF 42-6, at 3. And Rule 16 does not require a report explaining how each item of the expert's knowledge, education, or experience relates to the expected opinion, particularly when the basic opinion is the common understanding of certain practices in the expert's professional community. *See*, *e.g.*, *United States* v. *Hite*, 769 F.3d 1154, 1169 (D.C. Cir. 2014) ("To the extent that the District Court concluded that [defendant's] Rule 16 notice was deficient because it failed to set forth the relevance of each proposed opinion . . . we note that the District Court imposed a burden that goes beyond the scope of Rule 16.").

That the government has ample information and resources to prepare its cross-examination – the touchstone of Rule 16 – is proven by the government's motion itself. The government already has "under[taken] an inquiry about Ms. Jeffress' FARA experience at NSS" by "talking to a number of prosecutors who either worked with or for Ms. Jeffress." Mot. at 13. The government finds that experience wanting because Ms. Jeffress purportedly "never supervised or prosecuted a case under FARA when she served as Chief of NSS." *Id.* If the government wants to argue to the jury that its former Chief of the National Security Section has little experience with FARA prosecutions because the government almost never brought FARA prosecutions during her tenure (and for decades before), Mr. Craig will not stand in the way. Of

course, the government also will have to confront Ms. Jeffress's experience working for private FARA clients, and especially her work "preparing, reviewing and filing over 50 FARA registration forms on behalf of Arnold & Porter." ECF 42-6 at 1. It is difficult to imagine more relevant experience where the Indictment specifically alleges that Mr. Craig, while working at Skadden (a peer of Arnold & Porter), was required to register under FARA. The government's carping about Ms. Jeffress's background and experience may be material for cross-examination, but it does not render her unqualified to offer an opinion.

More important, these imagined deficiencies in Ms. Jeffress's knowledge and experience have nothing to do with the adequacy of the expert disclosure under Rule 16. The basis for Ms. Jeffress's opinion is her knowledge, education, and experience, coupled with her understanding of the statutory text, the legislative history of the key provisions, relevant interpretive decisions and the practical determinations that have guided FARA practitioners and the Department of Justice in applying the statute's terms to particular factual situations. Whether her credentials and practical experience make her opinion sound or unsound is not a *disclosure* issue under Rule 16. The government's contention that Mr. Craig did not adequately disclose the basis of Ms. Jeffress's opinion is meritless.

2. **Ms. Jeffress's opinion is reliable.**

To the extent the government is arguing that Ms. Jeffress's opinions are relevant but not reliable, that argument is misplaced (and should have been filed, if at all, in a proper *Daubert* motion). Mr. Craig recognizes, of course, that the Court serves a gatekeeping role to ensure that all expert testimony, even when it is not scientific or technical, is based on a reliable foundation. *E.g.*, *Kumho Tire Co.* v. *Carmichael*, 526 U.S. 137, 141 (1999). But the test of reliability is flexible, and a district court has "broad latitude when it decides *how* to determine reliability." *Id.* at 142. When the subject matter is nonscientific, "the relevant reliability concerns may focus

upon personal knowledge or experience." *Id.* at 150; *see also* Fed. R. Evid. 702 Advisory Committee's note, 2000 amendment ("In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."). In this case, the *Daubert* factors (testing, peer review, error rates, and acceptability in the relevant scientific community) are not apt, and the question turns on whether Ms. Jeffress's opinions are reliable in light of her knowledge, education, and experience.

The answer should be easy. Ms. Jeffress is one of the nation's pre-eminent national security lawyers. She advises companies and individuals on FARA matters. She has extensive, high-level experience as both a prosecutor and a defense lawyer in matters of national security, including dozens of matters involving FARA. She has appeared as a guest on national security matters on PBS NewsHour, *The National Security Law Podcast* (August 2018), and other media. She published an article on FARA that addresses the statute's history, analyzes recently released advisory opinions on the statute, and comments on enforcement trends. *See* A. Jeffress *et al.*, *INSIGHT*: *Clearing the Mist Surrounding The Foreign Agents Registration Act*, Bloomberg Law (July 13, 2018). She is a 1992 graduate of Yale Law School and served on the *Yale Law Journal*, and she clerked for Judge Gesell of this Court. Her educational and experiential foundation should satisfy any concerns about the reliability of her expected testimony. If the Court has any doubt about Ms. Jeffress's knowledge concerning the relevant issues, it can make a ruling at trial after *voir dire*, or conduct its own *voir dire* at the appropriate time.

      3.    **Defendant properly identified Ms. Jeffress's "other opinions."**

The government next complains that Mr. Craig did not "properly identify Ms. Jeffress's other opinions." Mot. at 11. These "other opinions," as the disclosure makes clear, would be responsive to testimony of government witnesses, and therefore cannot be set forth with specificity at this time. Nevertheless, Mr. Craig made a good faith effort to explain that he

expected "that the government will seek to obtain testimony from one or more lay or expert witnesses as to facts material to a determination of whether Mr. Craig and Skadden were required to register, and the significance of omitted facts to that question." ECF 40 at 2. If that occurs, "we expect Ms. Jeffress to respond to that testimony consistent with her previously described opinions." *Id.* In his Supplemental Disclosure Mr. Craig explained:

> Depending on the testimony offered by the government's witnesses at trial, we reserve the right to have Ms. Jeffress offer additional opinions about how a reasonable practitioner during the relevant time frame would have analyzed the First Amendment implications of FARA registration requirements for persons who communicate to the media for their own purposes, and while not acting under the direction or control of a foreign principal. She may also address the judicial opinions that have emphasized that FARA's definitional provisions must be interpreted narrowly in order to avoid the impairment of a citizen's rights to free speech, and to ensure that Congress's purpose in enacting the 1966 amendments to the statute are honored by ensuring that FARA registration is required only for persons acting "for or on behalf of" a foreign principal. These cases include [citations].

ECF 42-6, at 3.

The government can hardly assert "unfair surprise" over this disclosure. The only unfair surprise comes from the government's *non*disclosure, which claimed to designate no expert witnesses but then casually observed that two government witnesses would be testifying "consistent with" their grand jury testimony and government interviews, which contained extensive commentary that would clearly be considered within the purview of an expert. Mr. Craig could not know for sure whether the government would try to elicit this opinion testimony through its witnesses, and as a result he was impelled to file a motion *in limine* to exclude the most problematic topics. If that motion is denied and the government witnesses are permitted to testify on these topics, the government has ample notice, through both the Jeffress disclosures and Mr. Craig's motion *in limine*, what opinion testimony Ms. Jeffress might offer in response.

4. **Defendant established Ms. Jeffress's qualifications.**

Finally, the government claims that Mr. Craig "failed to establish Ms. Jeffress's qualifications." Mot. at 13. Again, this is not a Rule 16 issue. Rule 16 simply requires notice of the witness's qualifications, which Mr. Craig has provided. The government is wrongly trying to transform Rule 16 into a *Daubert* requirement. In any event, Ms. Jeffress is fully qualified to offer opinions about FARA based on her knowledge, education, and experience. The government does not really dispute that Ms. Jeffress's experience gives her ample foundation to explain what a reasonable practitioner would have understood FARA to mean, but it quibbles that she cannot testify about what FARA meant in 2012-13 because during those years she was working in a different capacity for the Department of Justice. This argument is classic example of trying to convert routine (and not very persuasive) cross-examination material into a *Daubert* motion. *See*, *e.g.*, *Daubert* v. *Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). The government cannot explain why the common understanding of FARA changed between 2013 and 2014, or why, even if it did, a person who currently focuses on FARA issues, and has reviewed and advised on FARA registration matters for her law firm and its clients since 2014 cannot be an expert on how the statute was understood in 2013. *Compare United States* v. *Mejia*, 448 F.3d 436, 448 (D.C. Cir. 2006) (law enforcement officer can testify based on experience as to the meaning of coded words and phrases in drug trafficking); *Exum* v. *General Elec. Co.*, 819 F.2d 1158, 1163-64 (D.C. Cir. 1987) (Rule 702 "does not require the expert to have personal familiarity with the subject of his testimony; 'experience' is only one among the five different ways to demonstrate an expert is qualified."); *Banki*, 2010 WL 1875690, at *3 (government could point out on cross-examination that defense expert did not work at OFAC during time

period charged in indictment). If that were the rule, no one would be qualified to testify about historical matters. *Compare Minnesota* v. *Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 181 (1999) (citing expert historian's testimony on federal efforts to displace Chippewa in mid 1800s). Here, of course, Ms. Jeffress's relevant experience straddles the 2012-13 period, and her knowledge of FARA practices includes that period.

### 5. Excluding Ms. Jeffress's testimony would be disproportionate to the (alleged) Rule 16 violation.

Even if Mr. Craig had not complied with Rule 16, it would not be appropriate to exclude Ms. Jeffress's testimony on that ground. The exclusion of a defense witness on account of a discovery violation raises constitutional concerns under the Sixth Amendment. *See Taylor* v. *Illinois*, 484 U.S. 400 (1988). "'[A]lthough Rule 16 gives trial judges the option of suppressing evidence as a result of discovery violations, such a severe sanction would seldom be appropriate where . . . the trial court finds that [the party's] violation did not result from its bad faith and that a less drastic remedy (such as a continuance) will mitigate any unfair prejudice.'" *United States* v. *Gray-Burriss*, 791 F.3d 50, 55-56 (quoting *United States* v. *Marshall*, 132 F.3d 63, 70 (D.C. Cir. 1998)). Bad faith is an "important factor" but not an absolute precondition; the threshold seems to be "willful" conduct "motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence." *United States* v. *Johnson*, 970 F.2d 907, 910 (D.C. Cir. 1992) (quoting *Taylor*, 484 U.S. at 415).[4]

---

[4] The one case cited by the government to support exclusion, *United States* v. *Day*, 524 F.3d 1361, 1372 (D.C. Cir. 2008), is not apposite. In *Day*, the defendant wanted to present an expert opinion that he did not have the mental capacity to form the *mens rea* necessary to commit a fraud offense – a facially dubious argument given the charges, which alleged a 10-year practice of stealing client money that was intended to purchase insurance for the clients. The defendant filed a notice of expert evidence of a mental condition under Rule 12.2(b), which permits the government to move for an examination of the defendant, Fed. R. Crim. P. 12.2(c)(1)(B), and also obligates the defendant to provide a written summary of the expert's opinions and bases and reasons therefor under Rule 16(b)(1)(C)(ii). The defendant filed untimely disclosures of three

17

The government has not remotely met these standards in this case. Defendant timely and adequately disclosed Ms. Jeffress's testimony; but even if everything in the government's motion were true, it would not amount to a willful or blatant violation of Rule 16. Moreover, the government has suffered no prejudice. The government has all the information it needs to prepare for the cross-examination of Ms. Jeffress long before trial. *Compare United States* v. *Slough*, 61 F. Supp. 3d 103, 106, 109 (D.D.C. 2014) (supplemental disclosure "some hours" before jury was sworn was satisfactory because it was "delivered *pretrial*—consistent with the timeliness expectation embedded within Rule 16"). For that additional reason, the government's motion to exclude Ms. Jeffress's testimony should be denied.

### III. CONCLUSION

For the reasons stated, defendant Gregory B. Craig respectfully requests that the government's motion *in limine* be denied.

---

experts, all of whom were excluded by the Court after a *Daubert* hearing. The defendant then retained a new expert, and the District Court excluded that expert both on *Daubert* grounds and for violating Rule 16 – in part because the District Court "did *not* believe that Day's counsel had acted in good faith." *Day*, 524 F.3d at 1371-72 (emphasis in original). The Court of Appeals held that the District Court did not abuse its discretion in excluding the expert under Rule 16, in light of the egregious circumstances at issue. These included the defendant's failure to disclose the expert's clinical diagnosis of the defendant and his failure to identify what conclusions he drew from tests and interviews of the defendant. As the Court noted, "'Upon receipt of Dr. Spodak's report, the government knew no more about appellant's alleged mental deficiencies than it did when appellant filed his Rule 12.2 notice four months earlier.'" *Id.* at 1372 (quoting government brief).

Dated: July 11, 2019	Respectfully submitted,

*/s/ William W. Taylor, III*
William W. Taylor, III (D.C. Bar No. 84194)
Paula M. Junghans (D.C. Bar No. 474419)
Ezra B. Marcus (D.C. Bar No. 252685)
ZUCKERMAN SPAEDER LLP
1800 M Street N.W. Suite 1000
Washington, D.C. 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
Email: wtaylor@zuckerman.com
Email: pjunghans@zuckerman.com
Email: emarcus@zuckerman.com

William J. Murphy (D.C. Bar No. 350371)
Adam B. Abelson (D.C. Bar No. 1011291)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
Tel: (410) 332-0444
Fax: (410) 659-0436
Email: wmurphy@zuckerman.com
Email: aabelson@zuckerman.com

*Attorneys for Defendant Gregory B. Craig*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 11, 2019, the foregoing was served on counsel of record via the Court's CM/ECF service.

                                                                 /s/ *Ezra B. Marcus*
                                                                 Ezra B. Marcus