## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 19-CR-00125 (ABJ) |
| v. | : | |
| | : | |
| GREGORY B. CRAIG | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
### NOTICE OF INTENT TO FILE MOTION IN LIMINE TO EXCLUDE HEARSAY

In his Notice of Intent to File Motion *in Limine* (ECF No. 45), Defendant identified nine statements by witnesses Richard Gates and Jonathan Hawker that he seeks to exclude. The United States of America, in accordance with the Court's Minute Order dated July 2, 2019, hereby responds in opposition to Defendant's Notice.

**I.     INTRODUCTION**

In this response, the government will address the admissibility of the nine specific statements that Defendant's Notice identified as objectionable from the interview reports of potential government witnesses Jonathan Hawker and Richard Gates.[1] Beyond these statements that Defendant specified, neither the government nor the Court are in a position to anticipate Defendant's unidentified potential objections. The Court should deny Defendant's motion and reserve its rulings as to the specific admissibility of testimony once and if it is offered at trial—and if Defendant raises an objection.

---

[1] Contrary to Defendant's assertion in its Motion (at 3) that "[w]e have asked the government to advise us whether it intends to elicit hearsay testimony along these lines," and despite the government's previous requests for specifics, Defendant never identified for the government, before his Notice, what testimony he considered to be inadmissible hearsay. *See* ECF 45-5 at 2-3. Defendant has yet to identify a single document that allegedly contains inadmissible hearsay.

**II.     ARGUMENT**

Pursuant to Rule 802 of the Federal Rules of Evidence, hearsay evidence is generally inadmissible at trial, absent an exception recognized by a federal statue, the Federal Rules of Evidence, or a rule prescribed by the Supreme Court.   In addition, a statement "means a person's oral assertion, written assertion or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a).   Finally, a statement is considered hearsay when two conditions are satisfied: (1) the statement is not made by the testifying witness at trial; and (2) the statement is offered to prove the truth of the matter asserted in the statement.   Fed. R. Evid. 801(c).

Conversely, if a statement is not offered to prove the truth of the matter asserted, it is not hearsay.   *See*, *e.g. United States v. Thompson*, 279 F.3d 1043, 1047 (D.C. Cir. 2002), *cert. denied* 537 U.S. 904 (2002) (Out of court statement offered to show its effect on the hearer's state of mind is not hearsay); *Moore v. City of Memphis*, 853 F.3d 866, 871 (6th Cir. 2017) (Out of court statement by a neighbor that resident had a gun, and that resident said he would shoot first and ask questions later, was not hearsay because it was offered not for the truth of the matter, but for its effect on the listeners—the police officers—who therefore reasonably believed that resident was a threat to their safety); *Schindler v. Seiler*, 474 F.3d 1008, 1010-11 (7th Cir. 2007) (Out of court statements that constitute verbal acts are not hearsay, as well as statements offered to show its effect on the person who heard the statement).

At the outset, the government notes that it expects both Mr. Gates and Mr. Hawker to be available to testify at trial.   To the extent that the government calls either of these witnesses and asks about statements made by others, the purpose behind those questions would simply be to help explain to the jury the effect that such statement had on the witness.   Additionally, that evidence

will help to explain why the witness took or failed to take a particular action, and place their actions in the appropriate context.   As to these questions, if necessary and requested by the Defendant, the Court can provide a limiting instruction to the jury as to the purpose of this evidence.

### A. Objections to Potential Testimony of Richard Gates

Defendant's motion identifies five specific statements from an interview conducted with Richard Gates on September 11, 2018, that he considers inadmissible hearsay. ECF No. 45 at 1-2. The government will address each of these statements in turn, and state its position.   Moreover, the government rejects Defendant's arguments and characterization of the evidence as to the nature or quantity of the evidence that Gates can provide at trial.   *See*, *id.* at 2.

*First*, Defendant objects to Gates testifying on direct examination to the fact that Paul Manafort told him that Defendant, prior to the release of the Skadden Report, had in fact contacted legislators in the United States to discuss the roll-out of the Report. *Id.* at 1.   If called to testify at trial, the government does not intend to ask Mr. Gates about this statement on direct examination. However, the government notes that depending on the questions asked on cross-examination, and/or how the Defendant conducts his defense, it is possible that Manafort's statement to Gates regarding Defendant's contacts with legislators will become relevant admissible testimony for non-hearsay purposes.[2]   For example, Gates assisted with an effort to contact legislators in the United States during 2012 about a resolution that was adverse to the Ukrainian government.   If Defendant asks Gates about this issue, depending on the question, Gates can testify that Defendant

---

[2]   Defendant's billing records for the work performed for the Report show at least three telephone contacts with Senator Durbin related to this project. *See, e.g.*, June 6, 2012, entry (SAU000034), July 31, 2012 entry (SAU000055), and August 1, 2012 entry (SAU000073).   *See also*, ECF No. 46-1 at 16-17, Defendant's interview of October 19, 2017, discussing these contacts.

3

told him that he had reached out to Senator Durbin as part of this effort.

*Second*, Defendant objects to Gates testifying on direct examination that Manafort told him that Skadden was going to look into whether they needed to file under FARA. *Id.* at 1. If called to testify at trial, the government does not intend to ask Mr. Gates about this statement on direct examination. However, as noted before, depending on the questions asked on cross-examination, and/or how the Defendant conducts his defense, it is possible that Manafort's statement to Gates may become relevant admissible testimony.

*Third*, Defendant objects to Gates testifying on direct examination that regarding the discussions as to what Defendant would be willing to do, or not do, regarding the Report's media plan, were conducted primarily between Manafort and Defendant, and that Manafort would then brief Gates about those conversations. *Id.* at 1-2. For context, Gates gave this answer when questioned about a specific memorandum sent to Manafort regarding the media plan for the rollout of the Report. ECF No. 45-1 at 3. On its face, as recorded in the FBI 302, this statement is not hearsay. Gates personally participated in at least one in-depth conversation with Defendant regarding Defendant's role in the media roll out plan for the Report. *See*, *e.g.*, *id.* at 4-5. Moreover, Gates can testify from personal knowledge that that the person from his firm who primarily dealt with Defendant was, in fact, Manafort, and that Manafort would brief him about those discussions. If called to testify at trial, the government does not intend to ask Mr. Gates about the content of the discussions between Manafort and Defendant that Manafort reported to Gates. However, Gates should be allowed to testify that he understood that, as part of a media roll out plan that Gates was helping to manage, Manafort and Defendant had ongoing conversations about which Gates was briefed.

4

*Fourth*, Defendant objects to Gates testifying on direct examination that Manafort told him that he had helped arrange meetings between Defendant and Ukrainian oligarchs for additional work opportunities in Ukraine. ECF No. 45 at 2. If called to testify at trial, the government does not intend to ask Mr. Gates about this specific statement on direct examination. However, for context, Gates stated during his interview that Defendant approached Manafort during the summer of 2012 to discuss additional work opportunities in Ukraine, and that those discussions continued into early 2013. ECF No. 45-1 at 10. The FBI 302 does not state whether Gates has personal knowledge about Defendant's request for business assistance, but if he does, he should be allowed to testify about it. In addition, as explained above, depending on the questions Defendant asks Gates on cross-examination, and/or how the Defendant conducts his defense, it is possible that Manafort's statement to Gates will become admissible testimony.

*Fifth*, Defendant objects to Gates testifying on direct examination that Alex Van Der Zwaan told him that the media plans were being shared with Defendant, or that in December 2012 Defendant had received the assignments in the media plan. ECF No. 45 at 2. The government intends to ask Gates whether his plan for executing the media strategy included Van Der Zwaan sending Defendant media plans and an assignment. Such testimony is not hearsay because it is not an out-of-court statement of someone other than Gates, nor is it being offered for the truth that Defendant did, in fact, receive the various media plans or received the assignments.[3] Rather, the testimony would be offered to explain Gates's responsibility and work regarding the media plan

---

[3] Before a meeting that took place at the Harvard Club in September 2012, a number of emails exist where Defendant directly received copies of the evolving media rollout plans. The testimony described above relates to subsequent media plans, which were not sent directly to Defendant, but that Gates and others understood were being provided by Van Der Zwaan.

rollout for the Report, and how he ensured that all participants were working together to accomplish the goal of executing the media plan on Ukraine's behalf.  Indeed, in his motion, Defendant does not provide accurate context for Gates' statement.  The FBI 302 reads:

> Gates was shown an email from Hawker to Gates with Bates stamps . . . December 6, 2012 with the subject "Docs." Hawker informed Gates that everything had gone to Alex's . . . gmail, but that he can't get a hold of Greg (Craig). Gates was unsure why Hawker was unable to get a hold of Craig. Gates said he can't say for sure that Craig saw the attached Master Control Grid; however, he recalled being told by Van Der Zwaan around this time that Craig received the assignments.

The statement itself makes it clear that Gates cannot and will not testify that he knows that Defendant saw or was provided with all media plans, but his testimony can help illuminate for the jury how Gates expected the media rollout plan to be carried out—and how he expected Defendant to participate.  Defendant, of course, will be entitled to cross-examine Gates as to his own direct contact with Defendant and whether Gates knows whether Defendant actually received the materials in question.  This testimony should be allowed by the Court.

### B.  Objections to Potential Testimony of Jonathan Hawker

Defendant's motion identifies two specific statements from an interview conducted with Mr. Jonathan Hawker on July 10, 2018, and two statements from an interview conducted on January 23, 2019, that he considers inadmissible hearsay.  The government will address each of these four statements in turn, and state its position.  However, the government takes exception with Defendant's inaccurate and unnecessary attacks regarding Hawker's recollection of events in this matter.  *See*, ECF No. 45 at 2.  Indeed, extensive documentary evidence, which the government will offer at trial, corroborates Hawker's recollection and expected testimony.

6

*First*, Defendant objects to Hawker testifying on direct examination that Gates informed him that Defendant had stated that he had a trusted relationship with *New York Times* reporter David Sanger and that Defendant would seed the Report with Sanger. *Id.* But this objection completely ignores the context of the statement, as well as the reasons why such testimony would be appropriate. Hawker provided this statement when discussing his own participation at a meeting with Defendant, where Defendant—in Hawker's presence—agreed that he would speak with journalists as part of the media rollout plan. ECF No. 45-2 at 8. Hawker was then asked about a subsequent change to the media plan, and why the change was made from "Project Team-Bloomberg CG/SKA" to a media plan that instead directed contact with David Sanger of the New York Times. *Id.* To explain why that change was made, Hawker explained that Gates told him that Defendant had a trusted relationship with Sanger at the *New York Times*. *Id.* In other words, the very reason for the change in the media plan was the information provided by Gates. As a result, Hawker's statement is not hearsay, because it would not be offered to prove that Defendant actually had a trusted relationship with Sanger, but simply to explain the reason for the change in the media plan. The Court should allow the testimony.

*Second*, Defendant objects to Hawker testifying on direct examination that from a conversation with Gates, Hawker understood that Gates believed that Defendant wanted to do the briefing with Sanger and that Defendant did not want Hawker to do it. ECF No. 45 at 2. If called to testify at trial, the government does not intend to ask Mr. Hawker what he thinks Gates believed regarding Defendant's intentions.[4] However, the government intends to ask Hawker to explain

---

[4] Although the Defendant objects to this evidence, this statement is arguably consistent with his argument that the only reason he spoke to Sanger was to neutralize the damage that Ukraine,

7

the reasons why he—as the public relations specialist on the project—did not brief Sanger. *See* ECF No. 45-2 at 9. Moreover, Defendant has again taken Sanger's statement out of its proper context. As reflected in the FBI 302, Hawker personally spoke with Defendant about briefing Sanger, and Defendant told Hawker that he [Defendant] would brief Sanger. *Id.*

*Third*, Defendant objects to Hawker testifying on direct examination that from a conversation with Gates, Hawker understood that Manafort had "sorted out Craig" because Craig ultimately agreed to have contact with journalists despite his prior refusal. As with the prior objection, the government does not intend to ask Hawker to testify about what he believed may have happened based on deductions. However, the government intends to ask Hawker to explain what changes, if any, he made to the media roll-out plan after Defendant reversed his prior commitment—made in Hawker's presence—to speak with journalists. Hawker is expected to testify and explain that while he worked on a potential backup plan, he did not abandon the idea of using the Defendant to speak with journalists despite Defendant's stated reversal of position because he was told that Manafort planned to speak to Defendant about this issue. Hawker is also expected to testify that, at a later stage, Defendant was once again willing to speak with journalists about the Report. As a result, Hawker's statement is not hearsay, because it would not be offered to prove that Manafort talked to Defendant about this issue, or even that Defendant changed his mind based on a conversation with Manafort. Rather, the statement is important to show why Hawker did not abandon the idea of using Defendant as part of the media roll out plan for the

---

through Hawker, would allegedly do with its media campaign: "Mr. Craig opted instead to effectively sabotage the media plan by speaking with the Times reporters himself and highlighting the very aspects of the Report that the MOJ and its media consultants were trying to falsify or bury." Defendant's Reply in Support of Motion *in Limine* to Exclude Evidence, ECF No. 39 at 8.

Report despite Defendant's alleged temporary "reversal."

*Fourth*, Defendant objects to Hawker testifying on direct examination that, as a result of Manafort's conversation with Defendant, the *New York Times* emerged as a leading candidate over Bloomberg for the media rollout plan. The government does not intend to ask Hawker to testify or opine that the *New York Times* was selected over Bloomberg based on what was said during a conversation between only Manafort and Defendant. However, as detailed above in response to Defendant's first objection to his testimony, Hawker is expected to testify that the reason the media rollout plan was changed from Bloomberg to the *Times* was because Gates told him that Defendant had a trusted relationship with Sanger at the *New York Times*.

## CONCLUSION

The government has answered every example provided by Defendant in his motion regarding the potential testimony of Richard Gates and Jonathan Hawker. For the foregoing reasons, the Court should deny Defendant's motion to exclude the testimony, and reserve its rulings as to the specific admissibility of testimony or evidence once and if it is offered at trial. With the benefit of the evidence at trial, the Court will have the best context available to properly rule on evidentiary objections.

    Respectfully submitted,

    JESSIE K. LIU
    UNITED STATES ATTORNEY
    D.C. Bar Number 472845

By:   /s/ Fernando Campoamor Sánchez
    FERNANDO CAMPOAMOR-SANCHEZ (DC 451210)
    MOLLY GASTON (VA 78506)
    Assistant United States Attorneys
    United States Attorney's Office

        555 Fourth Street, N.W.
        Washington, D.C.   20530
        Telephone: 202-252-7698/202-252-7803
        Fernando.Campoamor-Sanchez@usdoj.gov
        Molly.Gaston@usdoj.gov


JOHN C. DEMERS
ASSISTANT ATTORNEY GENERAL


By:   /s/ Jason B.A. McCullough
       JASON B.A. MCCULLOUGH (DC 998006; NY 4544953)
       Trial Attorney
       Department of Justice
       National Security Division
       950 Pennsylvania Ave NW
       Washington, D.C.   20530
       Telephone: 202-616-1051
       Jason.McCullough@usdoj.gov

Dated:   July 11, 2019

## **Certificate of Service**

I certify that, by virtue of the Court's ECF system, a copy of the foregoing Government's Response in Opposition to Defendant's Notice to File a Motion in Limine has been sent to counsel for the Defendant on July 11, 2019.

/s/ Fernando Campoamor-Sánchez
Fernando Campoamor-Sánchez
Assistant United States Attorney