UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 19-CR-00125 (ABJ) |
| v. | : | |
| | : | |
| GREGORY B. CRAIG | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE STATEMENTS TO SPECIAL COUNSEL'S OFFICE ABOUT THIS CASE**

Defendant's motion *in limine* (ECF No. 46) seeks to exclude his own voluntary statements to law enforcement about facts at issue in this case, which he provided while represented by and with the assistance of counsel. But, Defendant's statements to law enforcement about the work he did on Ukraine's behalf are not evidence of "*other*" crimes, wrongs, or acts. To the contrary, they are statements by a party opponent about the facts underlying the charges in *this* case. The fact that law enforcement interviewed Defendant years later, or that the government can prove that some of the statements were the same as the charged false statements, does not change the analysis. Admissibility of an opposing party's statements at trial is governed by Rule 801(d)(2) of the Federal Rules of Evidence, which classifies Defendant's statements as "not hearsay" and therefore admissible if offered by the government. Rule 801(d)(2) does not limit the admissibility of opposing statements by when or how they were made. The Court should deny the motion.

I.   **Relevant Factual Background**

On October 19, 2017, as part of the investigation into Russian interference of the 2016 Presidential Election, prosecutors and a Federal Bureau of Investigation (FBI) Special Agent from the Special Counsel's Office (SCO) interviewed Defendant. ECF No. 46-1. During this voluntary interview, Defendant was represented by counsel. *Id.* The purpose of the interview

was to understand the work that Defendant and his firm conducted on Ukraine's behalf, which led to the publication of the written report about Yulia Tymoshenko's trial in Ukraine.[1]

The interview generally covered Defendant's entire work on the project. For example, Defendant described how he became involved in the project, as well as what he understood the project to be. *Id.* at 1-2. Defendant explained who initially contacted him about the project, as well as subsequently meeting Paul Manafort to discuss the project, who he understood to be an advisor to Ukraine's President. *Id.* In addition to describing his knowledge of Manafort, as well as how much would be paid and who would pay for the project, Defendant stated that he did not want to perform any work that would require him to register under the Foreign Agents Registration Act (FARA)—which he allegedly told Manafort. *Id.* at 2-3. Defendant also stated that he did not want to register under FARA because it could prevent him from working for the U.S. government in the future, and that he did not believe his firm wanted him to register. *Id.* at 3. Defendant was asked about and described his knowledge regarding concerns expressed publicly in Ukraine about who was paying for the report and how much Defendant and his firm were being paid—and whether Ukrainian laws had been violated by contracting with Defendant's firm for this work. *Id.* at 5-6. Defendant also described during this interview the process of drafting the report and preparing for its public release, which included receiving multiple comments from the Ukrainian government on the drafts—and that the comments were usually communicated through Manafort. *Id.* at 7; *see also* 8-12.

---

[1] While it is accurate that Defendant's firm had produced a number of documents before the interview of October 19, 2017, a very large number of relevant documents had not been produced at this point in time. This is part of the reason that the SCO needed and sought a second interview with Defendant on March 7, 2018.

Particularly relevant to the charges in this case, the SCO also asked Defendant about his knowledge and/or participation in media plans for the report's release, and he discussed his contacts with the media. For example, Defendant stated that former Congressman Vin Weber never asked him about the report. *Id.* at 12. Moreover, Defendant discussed the alleged purpose for, and his recollection of, the Harvard Club meeting in September 2012, and denied that he engaged in or performed any of the assignments listed in the document from the media relations company that were circulated for that meeting. *Id.* at 12-13. Defendant admitted seeing the media plan, but claimed to be concerned about its contents. *Id.* at 13. Defendant admitted that he was asked to deliver the report to David Sanger at the *New York Times*, and that he agreed to do so. *Id.* Immediately after this admission, the FBI-302 recorded the following:

> [Defendant] stated that two media outlets were reporting erroneous facts about the Skadden report findings. [Defendant] stated the only thing he did was deliver the Skadden report to Sanger and that all the other things the "Media Plan" states [Defendant] would do were never done by [Defendant]. *Id.*
>
> Regarding the release of the report in Ukraine, [Defendant] stated he found out that there were erroneous press articles about the Skadden report. [Defendant] did not have any knowledge or insight into how the Skadden report was rolled out by the Ukrainian government or what FTI did with respect to the Ukrainian roll out. *Id.*
>
> [Defendant] was shown . . . . Manafort and Hawker asked [Defendant] if Skadden would be willing to provide one or two journalists with background on the Skadden report. Initially, [Defendant] told it may be possible but then reversed his decision and said he could not. Defendant also told them that Van Der Zwaan could not do it out of his Moscow office. *Id.*

Defendant subsequently stated that he:

> [R]esponded to three different newspaper articles which inaccurately reported the results of the Skadden report. [Defendant] spoke to the journalists to correct their inaccurate reporting. [Defendant] stated that when he corrected some of the inaccurate press he did not view that as conducting press relations on behalf of a

3

foreign government. [Defendant] was correcting the journalists on behalf of Skadden and not the Ukrainian government.  *Id.* at 14.

Other than a quick reference to the first letter Defendant sent to the FARA Unit (*Id.* at 8)—where an attachment to the letter was the focus of the questions—and Defendant's mention of his comment to Gates about the inquiry from the FARA Unit (*Id.* at 14), at this interview there were no detailed discussions of Defendant's communications with the FARA Unit.[2]

## II.     Applicable Legal Framework

Rule 802(d) of the Federal Rules of Evidence provides that a statement offered by an opposing party, against the party who made the statement, is not hearsay—and therefore admissible at trial.  *See* Fed. R. Evid. 802(d)(2)(A).   This is the relevant provision of the Federal Rules of Evidence that governs admissibility of relevant statements by defendants at a criminal trial when offered by the government.

The Supreme Court, in a case reversing a decision excluding a defendant's relevant out-of-court statement, explained: "[W]e fail to understand why, on any approach to the case, the out-of-court representations of respondent himself . . . were considered to be inadmissible against him." *United States v. Matlock*, 415 U.S. 164, 172 (1974) (citation omitted); *see also*, *United States v. Edwards*, 496 F.3d 677, 684 (D.C. Cir. 2007) (affirming admissibility of Defendant's own estimate for purposes of sentencing calculation, stating that under Rule 801(d)(2), admission of a party

---

[2]     Defendant was specifically questioned about his communications with the FARA Unit during his voluntary interview with the SCO on March 7, 2018, where he made a number of admissions related to this case, which the government may seek to introduce at trial.  *See*, *e.g.*, ECF No. 31, Bill of Particulars, at 4.   While the government does not understand the second SCO interview to be encompassed in Defendant's motion, at the Court's request, we can provide a copy of that FBI-302 if deemed necessary, and discuss its contents.

4

opponent is not hearsay); *United States v. Gilliam*, 167 F.3d 628, 636 (D.C. Cir. 1999) (co-defendant's letter could have also been admitted as an admission by a party opponent). None of Defendant's legal authority deals with the admissibility of a defendant's own statements about the facts of their case.

While the government does not believe that Rule 404(b) is the correct rule of evidence to analyze the admissibility of Defendant's statements, to the extent the Court disagrees, for purposes of this argument, the government respectfully incorporates by reference its prior briefs that discussed the legal standard under Rule 404(b). *See* ECF No. 22 at 3-6; ECF No. 34 at 3.

**III.     Argument**

Defendant's arguments misconstrue the applicable rules of evidence and the government's intentions at trial. Defendant's prior statements about this case will not be offered as evidence of "another crime" because they are evidence of what Defendant said he did in *this* case. No FBI special agent—or any other witness—will testify that Defendant "lied" or made "false statements" during his SCO interview on October 19, 2017. If the government calls a witness at trial to testify about Defendant's statements on October 19, 2017, that witness would simply recount some or all of what Defendant said during that voluntary interview. Based on this and other expected evidence at trial, the government may then argue to the jury what it understands the evidence and its reasonable inferences prove—that is, as alleged in the indictment, Defendant repeated the false and misleading statements that he made to the FARA Unit during his SCO interview in 2017.

Moreover, as the factual background *supra* demonstrates, Defendant's SCO interview on October 19, 2017, is also undoubtedly relevant to this case. The SCO interviewed Defendant about his work on the project, including his knowledge and participation in Ukraine's media roll

out plan and his media contacts.  Because the jury will have to learn and examine Defendant's work and actions in 2012—to evaluate Defendant's conduct in 2013 when he communicated with the FARA Unit—all of Defendant's statements in his SCO interview are relevant and admissible pursuant to Rule 801(d)(2) if offered by the government.  Simply put, Rule 801(d)(2)(A)—not Rule 404(b)—is the applicable Federal Rule of Evidence that governs the admissibility of Defendant's statements about this case.  The Court should deny Defendant's motion.

### A.  Defendant's Statements to the SCO Are Not "Other" Crimes Evidence

Defendant's instant motion, from the introductory paragraph, focuses again on his displeasure with Paragraph 65 of the indictment, which alleges that in his interview with the SCO on October 19, 2017, Defendant repeated some of the false and misleading statements he previously made to the FARA Unit.  In the prior motions practice about Paragraph 65, the government described the reasons why this allegation is relevant, and will not repeat those arguments here.[3]  Seizing on the government's allegation in the indictment that the statements to the SCO were also false, and the fact that Defendant was not charged with making a false statement to the SCO, Defendant concludes that his prior statements to the SCO are "therefore simply evidence of uncharged acts which the government contends were wrongful."  ECF No. 46 at 1.

Defendant's stated conclusion that his prior statements are "simply" uncharged acts is incorrect.  First, Defendant's argument ignores the fact that, as discussed previously, his statements qualify as the statements of an opposing party under Rule 801(d)(2)(A) of the Federal

---

[3] Defendant has previously filed two motions related to Paragraph 65: Defendant's motion for a bill of particulars (ECF No. 17); and Defendant's motion to strike (ECF No. 21).  The government's responses can be found at ECF Nos. 24, 31, and 33.  The Court has previously resolved these motions.  *See* ECF No. 30; Minute Entry dated July 10, 2019.

Rules of Evidence, which makes them admissible if offered by the government.  Second, as a practical matter, Defendant's argument is untenable.   It is not unusual to find a person who, after committing a crime, is subsequently interviewed by law enforcement and during the interview about his crime makes false statements.  According to Defendant's argument, unless a defendant is also charged with providing false statements about a crime during the interview with law enforcement, the government would not be able to introduce evidence of the defendant's statements about the crime unless the government first litigated a Rule 404(b) motion.[4]   Nothing in the Federal Rules of Evidence require or suggest such an outcome.   Third, Defendant's conclusion also ignores the fact that the SCO interview covered many topics about his work on Ukraine's behalf, which the government could also introduce as evidence.  In other words, Defendant's interview was far broader in scope than the few false and misleading statements identified in Paragraph 65 of the indictment.

     Defendant's initial argument in his motion—about two pages—focuses entirely on why he believes that the government is wrong about what he said during his interview with the SCO, as well as his renewed assertion that he made no false or misleading statements.  *See* ECF No. 46 at 5-7.  But Defendant's arguments about the facts, and his own interpretation of what he said during the interview, are immaterial to whether the government can elicit testimony regarding Defendant's statements.  Just as the case with any admission, if the government is permitted to

---

[4]    Defendant's contention also ignores that a key principle behind Rule 404(b) is the notion that the government should provide adequate notice to Defendant of the government's intention to introduce evidence of uncharged criminal conduct.  Here, Defendant has been on notice since the day that he was indicted that the government might introduce at trial his statements to the SCO because of Paragraph 65 in the indictment.

elicit this evidence, and it chooses to do so, Defendant will be free to challenge the evidence, introduce his own evidence, and make reasonable arguments to the jury that are supported by the evidence elicited at trial. In short, none of Defendant's arguments about the facts—with which the government disagrees—provide a basis to exclude the evidence.

### B. Defendant's Statements to SCO Are Relevant and Not Unfairly Prejudicial

Defendant's arguments regarding the alleged lack of relevance of his statements to the SCO also rely on his skewed interpretation of the facts and misapplication of principles of evidence. *See* ECF No. 46 at 7-9. According to Defendant, only if his statements to the SCO are identical to his statements to the FARA Unit, could there be some relevance to his statements. *Id.* at 7-8. As previously discussed, the entirety of Defendant's SCO interview—as the statement of a party opponent—is relevant to and admissible in this case because all of Defendant's statements relate to Defendant's acts in this case—his representation of Ukraine in 2012. While the government disagrees with Defendant's characterizations about his statements to the SCO, there is no requirement under Rule 801(d)(2) for a prior statement to be identical to any allegation or prior statement of Defendant offered by the government at trial in order to guarantee its admissibility. Relevance only requires that the proffered evidence have the tendency to make a fact more or less probable than it would be without the evidence, and that the fact be one of consequence in the action. *See* Fed. R. Evid. 401. Defendant's statements about the work he performed on Ukraine's behalf certainly satisfies this low threshold.

Despite creative arguments, Defendant's statements to the SCO are not unfairly prejudicial. At the outset, it is important to note that Defendant was interviewed while represented by and with the assistance of able counsel—in a voluntary interview. He chose to participate, and he elected

8

to answer the questions. He can hardly argue now that his own voluntary statements—provided after the benefit of consulting with his lawyers—are unduly or unfairly prejudicial. Indeed, should he elect to testify at trial in his defense, the government expects that at least many of his statements will mirror what he told SCO during his interviews. In other words, there is nothing unfairly prejudicial about the contents of his statements to the SCO.

Moreover, Defendant's statements to the SCO do not risk—much less "highly" risk— confusion to the jury in this case. ECF No. 46 at 9. Defendant argues that because the jury will have to determine what transpired during the meeting of October 9, 2013, that it will be asking "too much" of the jury to also resolve the factual disputes that Defendant alleges exist if his statements to the SCO are admitted. *Id.* at 10. But this is what juries do and are supposed to do—resolve conflicting factual testimony between witnesses. The jurors are certainly capable of deciding who they believe and what happened in this case, beyond a reasonable doubt.

Defendant also complains that because evidence of his own statements might corroborate the allegations about his false and misleading statements in 2013 that the jury would simply decide the case based on his 2017 statements instead of his 2013 statements. There is no reason to think, nor any legal authority known to the government to support the concern, that the jury will disregard the Court's instructions in this case that a guilty verdict must stem from Defendant's conduct in 2013, not his conduct in 2017. The government is entitled to present evidence corroborating the allegations in the indictment, which is exactly what these statements are.

Finally, Defendant needlessly attacks the agent who recorded the interview by claiming that he wrote an "unreliable account"—which the government disputes—and argues that if the evidence is admitted a "full-on second trial" would result. *Id.* at 10. This argument is meritless,

9

and in any event goes to the weight and not admissibility of the evidence.    If Defendant wants to challenge the agent's notes and recollection of the interview, he is free to cross-examine the agent, as well as to take the stand or call another witness who was present during the interview.    That is not a "full-on second trial" nor is one necessary.    Defendant is simply trying to limit the evidence available to the government to prove his crimes as charged in the indictment, and the Court should deny his attempt to exclude his own statements about this case as evidence in the trial.

### IV.    Conclusion

For the foregoing reasons, Defendant's motion to exclude his statements to the Special Counsel's Office should be denied.


        Respectfully submitted,

        JESSIE K. LIU
        UNITED STATES ATTORNEY
        D.C. Bar Number 472845


By:   /s/ Fernando Campoamor Sánchez
      FERNANDO CAMPOAMOR-SANCHEZ (DC 451210)
      MOLLY GASTON (VA 78506)
      Assistant United States Attorneys
      United States Attorney's Office
      555 Fourth Street, N.W.
      Washington, D.C.   20530
      Telephone: 202-252-7698/202-252-7803
      Fernando.Campoamor-Sanchez@usdoj.gov
      Molly.Gaston@usdoj.gov

JOHN C. DEMERS
ASSISTANT ATTORNEY GENERAL


By:   /s/ Jason B.A. McCullough
      JASON B.A. MCCULLOUGH (DC 998006; NY 4544953)
      Trial Attorney
      Department of Justice
      National Security Division
      950 Pennsylvania Ave NW
      Washington, D.C.   20530
      Telephone: 202-616-1051
      Jason.McCullough@usdoj.gov

Dated:   July 11, 2019

**Certificate of Service**

      I certify that, by virtue of the Court's ECF system, a copy of the foregoing Opposition to Defendant's Motion to Exclude His Statements to the Special Counsel's Office has been sent to counsel for the Defendant on July 11, 2019.

                                     /s/ Fernando Campoamor-Sánchez
                                     Fernando Campoamor-Sánchez
                                     Assistant United States Attorney