UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:19-CR-00125 (ABJ) |
| GREGORY B. CRAIG, | |
| Defendant. | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE OPINION AND EXPERT TESTIMONY ON MEANING OF FARA OR OTHER LAW**

Heather Hunt is the government official to whom the defendant made false statements and from whom he concealed material facts. Her testimony at trial will consist primarily of her description of her communications with the defendant, why she asked him the questions she asked, why she initially determined that he had to register as an agent of Ukraine, and why she ultimately changed her mind and made the determination in January 2014 that he did not need to register. In addition, the government will elicit her testimony about whether other facts would have made a difference in her decision-making. None of this testimony is expert testimony, and all of this testimony is proper. The defendant's motion *in limine* to restrict Hunt's testimony should be denied.

I.   INTRODUCTION

The defendant claims, incorrectly and without support, that "Ms. Hunt's proposed testimony is of course an expert opinion." Defendant's Motion at 4. To the contrary, Hunt's testimony is squarely based on her particularized knowledge from her personal experience—both in the Department of Justice for decades, and in her communications and interactions with the

1

defendant. As such, she is a fact witness and, to the extent that she offers an opinion, it would be a lay witness opinion on materiality consistent with Federal Rule of Evidence 701.

Most of Hunt's testimony will be factual. She will describe her decades-long employment by the Department of Justice, National Security Division's Foreign Agents Registration Act Unit (FARA Unit), as well as when FARA was enacted and its purpose. She will then recount her communications with the defendant in 2013, when Hunt was the Chief of the FARA Unit. As part of this testimony, the government will elicit testimony from Hunt about why she asked the defendant certain questions about his media contacts and dissemination of the report he had written for Ukraine. Similarly, Hunt will explain why, in a letter on September 5, 2013, Hunt concluded that the defendant's law firm was obligated to register as an agent of Ukraine, and why Hunt reversed that determination in a letter in January 2014. None of this testimony will require Hunt to offer any opinions, much less expert testimony.

The government does, as it already explained in its filing (Dkt. No. 41), intend to elicit Hunt's opinion, based on her particularized knowledge from her personal experience, of whether other hypothetical information might have been material to Hunt's analysis of FARA in the defendant's case. This testimony is relevant and necessary to prove an element of the 18 U.S.C. § 1001(a)(1) offense charged: that the responsive information the defendant concealed from the FARA Unit was material to its determination. Such testimony is common in cases in which the materiality of facts leading to a determination is an issue, constitutes lay witness testimony under Federal Rule of Evidence 701, and is entirely appropriate.

The defendant's motion *in limine* arbitrarily seeks to a restrict Hunt's legitimate testimony, and the government respectfully requests that the Court deny it.

II.  ARGUMENT

    a. **The government will not elicit Hunt's opinion on whether the defendant had an obligation to register under FARA**

At trial, the government will prove that the defendant recommended a specific public relations firm, FTI Consulting, to Ukraine, which Ukraine hired (Indictment, Dkt. No. 1 ¶ 18); that the defendant was informed of the public relations strategy for the release of his report (*Id.* ¶ 28, 30, 31); that the defendant recommended that the report be given to a specific *New York Times* reporter; that, consistent with FTI's media strategy, the defendant reached out to that *New York Times* reporter, hand-delivered to him an exclusive pre-publication copy of the report, and provided the *New York Times* with an interview about the report (*Id.* ¶ 31, 37-40); and that as he was doing so, the defendant reported back on these media contacts to an FTI employee who was in turn updating Ukraine (*Id.* ¶ 39). The government does not plan to inform Hunt of these facts at trial or to ask her whether, based on them, the defendant had an obligation to register as an agent of Ukraine.

    b. **It is entirely proper for Hunt to express an opinion about whether certain facts would have influenced her decision-making**

Contrary to the defendant's claim, it is entirely proper for Hunt to offer her lay opinion testimony on whether other facts—presented to her through hypotheticals—would have affected her decision-making regarding whether the defendant had acted as an agent of Ukraine.

Under Rule 701, a lay witness may offer an opinion if it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Such testimony can include responses to hypotheticals. *See United States v. Hill*, 643 F.3d 807, 840-842 (11th Cir. 2011) (lay witnesses, from victim

lending institutions, properly testified about whether disclosure of misrepresentations in fraudulent loan applications would have affected their decision to approve mortgage or loan).

Courts have routinely permitted lay testimony regarding whether alleged misrepresentations or omissions would have influenced decision-making.  For instance, in *United States v. Kingston*, 971 F.2d 481 (10th Cir. 1992), the Tenth Circuit determined that, in a case involving violations of 18 U.S.C. § 1001, it was appropriate for government witnesses to "testify as to whether certain truths, if known, would have influenced their decision-making for purposes of 18 U.S.C. § 1001."  *Id*. at 486.  The circuit court further explained that such testimony did not constitute testimony on a legal matter, but rather, was relevant to the materiality of the defendant's false statements.  *Id*. at 487*; see also United States v. Locke*, 643 F.3d 235, 240-241 (7th Cir. 2011) (loan officers properly offered lay opinion testimony about materiality of false information on loan applications); *United States v. Matsumaru*, 244 F.3d 1092, 1101-02 (9th Cir. 2001) (government witnesses were permitted to offer lay opinion testimony about whether certain facts would have affected decision to approve a visa).

In this case, Hunt's testimony about whether other facts would have affected her decision-making—if opinion testimony at all—falls squarely within the provisions of Rule 701.  Such testimony is rationally based not only on Hunt's perception from her extensive experience in the FARA Unit, but on her personal involvement in the determination at issue.  The testimony would be helpful to the jury in understanding Hunt's testimony and to determining a fact in issue: whether the defendant's false statements and omissions to Hunt—who was the Department's decision-maker—were material.  As in *Kingston*, Hunt will be "testifying as to the materiality of the false statements" made by the defendant, "not as to the law".  *Id*. at 487.  The Court should deny the defendant's efforts to prevent Hunt's testimony on this appropriate subject.

> **c. Hunt may testify about why she asked certain questions of the defendant, why she determined that his firm was obligated to register under FARA, and why she reversed that determination**

The government does not plan elicit generalized testimony from Hunt about FARA, other than a brief description of the statute and its purpose. But to the extent that Hunt discusses the statute when explaining why she asked the defendant certain questions or made certain determinations, such testimony is fact testimony that is entirely appropriate, and the defendant's efforts to preclude such testimony should fail.

### 1. Release or Distribution of the Report

An important component of the FARA Unit's inquiry into the defendant's and his law firm's obligations to register under FARA was whether the defendant or anyone else at the firm distributed or "disseminated" the report at Ukraine's request or direction. For instance, in her April 9, 2013, letter to the defendant regarding his possible obligation to register, Hunt specifically asked, "To whom, if anyone, did your firm release or distribute the report and when?" Indeed, it was in explaining why she posed this question in writing to the defendant that Hunt provided the testimony on dissemination to which the defendant objects in his motion (at 8). *See* Hunt 3/21/2019 GJ Tr. 23:9-11 ("So focusing for a second on Number 1, why was it important to you to know 'to whom and if anybody, did your firm release or distribute the report and when?'"). This context makes clear that Hunt's grand jury testimony on this point was not expert testimony or generalized discussion of the law—it was fact testimony in which Hunt explained why she asked the defendant a question. At trial, she should be permitted to provide the same factual testimony.

The defendant is of course entitled to cross-examine Hunt on the FARA Unit's practices and procedures, and her description of the reasons for the questions that she posed to the defendant. But the defendant is not entitled to artificially restrict Hunt's testimony because he does not like

the way the FARA Unit conducted its inquiry in 2013 or disagrees with her.[1]  Indeed, the defendant's true opportunity to challenge the way the FARA Unit reached determinations in 2013 would have been to be truthful and forthright in the face of the FARA Unit's inquiry, and then to challenge the FARA Unit's determination if he disagreed with it on the law.

### 2.  Potential Registrant's Motive

The defendant next objects (at 9-14) to Hunt's grand jury testimony that, if repeated at trial, would amount to lay opinion testimony as described in section II(b), *supra*—that is, Hunt's lay opinion that it would have made a difference in her determination of the defendant's obligation to register if she had known that Ukraine had asked the defendant to give his report to a *New York Times* reporter and provide the *New York Times* with an interview.  Such testimony is appropriate for the reasons described above.

The rest of the defendant's motion's section on this topic involves a legal analysis of FARA based on an alternative set of facts from those before the Court.[2]  The evidence at trial will show

---

[1] The defendant appears to suggest that Hunt's determination hinged on the legal meaning of "dissemination."  That is incorrect.  Hunt cited multiple bases for the determination in the September 5, 2013 letter.  The term dissemination is not relevant to some of those bases, including the definition of "political activities" or "public relations counsel."  *Id.* at §§ 611(g), 611(o).  The term "dissemination" appears only in the definition of the term "publicity agent" (*id.* at § 611(h)) and the term "information-service employee" (*id.* at § 611(i)) and, in both cases, it is used in connection with surrounding language that provides context as to its meaning.  *See id.* at § 611(h) ("The term 'publicity agent' includes any person who engages *directly or indirectly in the publication or dissemination* of oral, visual, graphic, written, or pictorial information or matter of any kind…") (emphasis added); *id.* at § 612(i) ("The term 'information-service employee' includes any person who is *engaged in furnishing, disseminating, or publishing* accounts, descriptions, information, or data with respect to . . .") (emphasis added).

[2] The defendant's motion incorrectly contends he would have been required to register only if the "predominant" purpose of his actions was to serve a foreign interest.  The "predominant" purpose language pertains to FARA's commercial exemption provision, 22 U.S.C. § 613(d), which does not apply when an agent is serving a foreign government, and does not apply generally to FARA's definition of an agent of a foreign principal, *id.* § 611(c)(1).  Determination as to whether a person must register under FARA involves two primary elements:  first, whether the person was

that when the defendant contacted the *New York Times* on December 11, 2012, and offered a trusted journalist an exclusive pre-publication copy of the report, the defendant was acting at Ukraine's request. He said so himself when he wrote to the journalist that "the Ukrainians have determined that you should be given first look" at the report. Indictment, ECF No. 1 ¶ 38. In any event, however, the defendant had the opportunity to provide Hunt with material information in 2013, and to argue that he still did not have to register under FARA. He chose instead to conceal these facts from her.

### 3. Duty to Supplement

The allegations against the defendant are not that after January 2014, the defendant failed to supplement the information he had previously provided the FARA Unit. Accordingly, the government does not plan to elicit Hunt's opinion at trial about whether a potential registrant has an ongoing duty to supplement his statements to the FARA Unit after the FARA Unit has made a determination.

### III. CONCLUSION

For the reasons described above, the defendant's motion *in limine* should be denied to the extent that it seeks to prevent Hunt from offering lay opinion testimony relevant to materiality, or

---

acting as an agent of a foreign principal—that is, a person acting "at the order, request, or under the direction or control, of a foreign principal," *id.*; and second, whether the person was engaged in one of the specified actions under FARA—that is, engaging in political activities or acting as a public relations counsel, publicity agent, or information-service employee for or in the interests of a foreign principal. *Id.* at § 611(c)(1)(i)-(ii). Determining the latter element is not a question of whether the person's predominant purpose was to benefit a foreign principal, but rather whether the person's actions were taken, at least in part, to benefit his foreign principal.

from offering factual testimony explaining why she asked certain questions or made certain determinations.

        Respectfully submitted,

        JESSIE K. LIU
        UNITED STATES ATTORNEY
        D.C. Bar Number 472845


By:  /s/ Molly Gaston
FERNANDO CAMPOAMOR-SÁNCHEZ (DC 451210)
MOLLY GASTON (VA 78506)
Assistant United States Attorneys
United States Attorney's Office
555 Fourth Street, N.W.
Washington, D.C.  20530
Telephone: 202-252-7698/202-252-7803
Fernando.Campoamor-Sanchez@usdoj.gov
Molly.Gaston@usdoj.gov


JOHN C. DEMERS
ASSISTANT ATTORNEY GENERAL


By:  /s/ Jason B.A. McCullough
JASON B.A. MCCULLOUGH (DC 998006; NY 4544953)
Trial Attorney
Department of Justice
National Security Division
950 Pennsylvania Ave NW
Washington, D.C.  20530
Telephone: 202-616-1051
Jason.McCullough@usdoj.gov

Dated:   July 11, 2019

## Certificate of Service

I certify that, by virtue of the Court's ECF system, a copy of the foregoing Response in Opposition to Defendant's Motion in Limine to Exclude Opinion and Expert Testimony on Meaning of FARA or Other Law has been sent to counsel for the defendant on July 11, 2019.

/s/ Molly Gaston
Molly Gaston
Assistant United States Attorney