## UNITED STATES DISTRICT COIURT
## FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**

*v.*

**GREGORY B. CRAIG**,

*Defendant.*

**Case No. 1:19-cr-0125 (ABJ)**

## DEFENDANT'S REPLY IN SUPPORT OF
## MOTION IN LIMINE TO EXCLUDE HEARSAY

The government seeks to establish facts that are pivotal to its theory of the case through hearsay statements, arguing that those statements are admissible because the government claims a non-hearsay purpose. *See* ECF 56. But the non-hearsay purposes that the government identifies for the statements are not relevant to the issues in this case, or only trivially so.  It is likely that the jury will use the statements for the truth, even if the Court instructs otherwise. This is exactly the side-stepping of the rule against hearsay that the Court of Appeals rejected in *United States v. Brown*, 490 F.2d 758 (D.C. Cir. 1973), and *United States v. Day*, 591 F.2d 861 (D.C. Cir. 1978).

## BACKGROUND

In our Notice, we identified "global" hearsay issues with the testimony of government witnesses Richard Gates and Jonathan Hawker.  ECF 45 at 3; *see also, e.g.*, *id.* at 1–2 (noting Mr. Gates's statement in an FBI interview "that, as for 'what or what not [Mr. Craig] would be willing to do[,] [t]hose discussions were primarily between Manafort and Craig and Gates would subsequently be briefed down by Manafort"). We highlighted certain "example" hearsay statements that appear from the discovery in this case.  *Id.* at 1–2.  We cannot know the universe of possible hearsay statements not identified to date, and this Reply is not intended to and does

not waive objections to them or any other inadmissible evidence. Defendant asks the Court to rule on the statements identified to date and, because the government's case rests heavily on conduct and statements by out-of-court declarants, to establish "ground rules" applicable to such testimony.

A pivotal factual issue in this case is whether Mr. Craig agreed to advance Ukraine's public relations agenda at Mr. Manafort's behest, despite Mr. Craig's oft-expressed reluctance to become involved in that effort.  *See* July 10, 2019 Hrg. Tr. at 104:18–20 (government counsel stating that this is "a central factual issue that we believe the jury is going to have to determine"). The government has represented that it will offer evidence to that effect.  *See id.* at 108:10–110:5.  That evidence will inevitably consist wholly or substantially of hearsay.  Neither Mr. Manafort nor any representative of the government of the Ukraine is expected to testify.  The expected witnesses, Mr. Hawker and Mr.  Gates, by their own admission, had almost no direct contact with Mr. Craig; their knowledge of interactions between Mr. Manafort and Mr. Craig comes from what they were told by Mr. Manafort or, in some cases others, including Alexander Van der Zwaan, a former Skadden associate who also will not appear at the trial.  Thus, the government will be relying on accounts by witnesses of questionable reliability (Gates and Hawker) about out-of-court statements by declarants of questionable reliability (Manafort and Van der Zwaan) as evidence of what the parties agree is "a central factual issue" in the case. July 10, 2019 Hrg. Tr. at 104:18–19.

In contrast to the admitted importance to the government's theory of establishing Mr. Manafort's communications with Mr. Craig and Manafort's asserted "influence" over him, the relevance of the propositions for which the government now purports to offer some of the hearsay statements is slender, indeed, elusive. For the most part, the government says it does not

intend to elicit hearsay in direct examination, but suggests that cross-examination or "how the Defendant conducts his defense" might open the door.   ECF 56 at 3 ("it is possible that Manafort's statements to Gates . . . will become relevant admissible testimony"); *id.* at 4; *id.* at 5.

In addition, the government takes the position that it should be able to introduce testimony by Mr. Hawker and Mr. Gates about statements by out-of-court declarants for the following purported non-hearsay purposes:

- "Gates should be allowed to testify that he understood that, as part of a media roll out plan that Gates was helping to manage, Manafort and [Mr. Craig] had ongoing discussions about which Gates was briefed." ECF 56 at 4.

- It "intends to ask Gates whether his plan for executing the media strategy included Van Der Zwaan sending [Mr. Craig] media plans and an assignment" to "illuminate for the jury how Gates expected the media rollout plan to be carried out—and how he expected [Mr. Craig] to participate." ECF 56 at 5-6.

- It plans to elicit from Hawker statements by Gates (relaying purported statements by Manafort) that Mr. Craig had a trusted relationship with David Sanger of The New York Times "to explain the reason for the change in the media plan." ECF 56 at 7; 9.

- It "intends to ask Hawker to explain the reasons why he—as the public relations specialist on the project—did not brief Sanger." ECF 56 at 7-8.

- "Hawker is also expected to testify that, at a later stage, [Mr. Craig] was once again willing to speak with journalists about the Report," "to show why Hawker did not abandon the idea of using [Mr. Craig] as part of the media roll out plan for the Report." ECF 56 at 8-9.

Mr. Hawker's and Mr. Gates's expectations and plans about their media activities in 2012 are irrelevant to Mr. Craig's guilt or innocence for allegedly misleading the FARA Unit in 2013.

In some instances the government essentially acknowledges that it hopes the jury will take these statements for the truth of what they convey about Mr. Craig – not (or not only) for their purported non-hearsay purpose. For example, the government quotes a statement by Mr. Gates during an FBI interview that "he recalled being told by Van Der Zwaan around this time that Craig received the assignments" in a media plan document. *Id.* at 6. The government states

that "Gates will not testify that he knows that Defendant saw or was provided with" the media plan documents at issue. *Id.* But then the government reassures that "Defendant, of course, will be entitled to cross-examine Gates as to . . . whether Gates knows whether Defendant actually received the materials in question." *Id.* (Mr. Craig did not receive the documents in question). The government's argument is effectively an acknowledgement that it hopes the jury will infer from Mr. Gates's direct testimony that Mr. Craig *did* receive the documents − *i.e.*, the government hopes to use Mr. Van Der Zwaan's out-of-court statement to Mr. Gates for the truth of the matter asserted.

## ARGUMENT

Even if an out-of-court statement could serve a non-hearsay purpose, such as the ones proffered by the government, it must be excluded when the non-hearsay purpose is trivial or incidental, and the principal significance of the statement to the issues in the trial is a prohibited hearsay purpose. *See Brown*, 490 F.2d at 763 (explaining "concept of 'relative relevance'" that governs admissibility of statements that could serve both a hearsay and non-hearsay purpose).

The government misconceives how easy it is to skirt the general prohibition against admitting hearsay by pointing to uses that could be made of the statements other than for the truth of the matter asserted.  See ECF 56 at 2.  It cites three cases in which statements by a non-testifying declarant were offered to show an effect on the state of mind of the hearer, but in two of those cases (the two that held the evidence admissible) the hearer's state of mind was an important issue in the trial.  *United States v. Thompson*, 279 F.3d 1043, 1047 (D.C. Cir. 2002), involved a statement *to the defendant* that someone he knew as a compulsive gambler had asked him to deliver a cup that contained money in support of his defense that he did not know the cup

4

contained cocaine.[1] *Moore v. City of Memphis*, 853 F.3d 866, 871 (6th Cir. 2017), involved the effect of out-of-court statements on police officers who were sued under 42 U.S.C. § 1983 for using constitutionally excessive force. The statements warned about the danger the officers faced in executing a warrant, and they were offered to show "that they made the officers believe that Moore had threatened their safety," whether that was true or not. Thus, in both cases, the statement concerned a central issue in the case – the effect of the statement on the defendant's state of mind – that could readily be separated from the truth of the matter asserted. The government's third case, *Schindler v. Seiler*, 474 F.3d 1008, 1010-11 (7th Cir. 2007), was a civil defamation action in which the court held *inadmissible* as hearsay the plaintiff's statement that a third person had reported the allegedly defamatory statement to him.

Closer to home than the government's cases are *United States v. Brown*, 490 F.2d 758 (D.C. Cir. 1973), and *United States v. Day*, 591 F.2d 861 (D.C. Cir. 1978).  In *Brown*, a murder case, the court admitted testimony from the victim's wife that her husband feared the defendant was going to kill him.  The court admitted the evidence with a limiting instruction that the jury should consider the statement only to evaluate the victim's state of mind.  490 F.2d at 762.  After an extended discussion of the category of evidence that may be admissible for one purpose but not for another, the Court of Appeals reversed the conviction, concluding that the serious risk that the jury would use the evidence as proof of the killer's identity was not cured by the limiting instruction, and that there was an "overwhelming deficiency" in the relevance of the statement to a non-hearsay purpose.  *Id.* at 779-782.  The court observed that, "[t]he quantum of prejudice…is

---

[1] A similar example is *United States v. Baird*, 29 F.3d 647, 653-54 (D.C. Cir. 1994), where, in light of the government having opened the door to evidence about the defendant's state of mind, the court held admissible third-party statements relayed to the defendant contradicting the government's evidence.

highest when the circumstantial facts in the statement are intimately related to the issue to be proved." *Id.*at 766.

In *Day*, the government appealed from district court orders excluding as hearsay statements made by the decedent in a murder case, ostensibly offered for non-hearsay purposes. The Court of Appeals affirmed the ruling, concluding that the risk that the jury would draw the more relevant inference about the killer's identity rather than the obscure non-hearsay meaning advocated by the government "had too great a potential for unfair prejudice" that could not be cured by a limiting instruction. 591 F.2d at 882-83 (emphasis in original).

One line of pertinent authority from other Circuits consists of cases rejecting the background of a police investigation as a rationale for admitting inculpatory hearsay. In *United States v. Lasley*, 917 F. 3d 661 (9th Cir. 2019), the court reversed a murder conviction, in part because the trial court erroneously admitted testimony to provide a reason for a witness's actions when its "only plausible purpose for introducing [it] was to prove the truth of the matter asserted." *Id.* at 665. The court pointed out that the prosecutor could have elicited testimony to explain the witness's actions without introducing the actual statements of the out-of-court witness. *Id.* In the same vein is *United States v. Nelson*, 725 F.3d 615, 618 (6th Cir. 2013), which reversed the defendant's conviction for being a felon in possession of a firearm because of the erroneous admission of hearsay, a recorded 911 call. The court rejected the government's argument that, notwithstanding the inculpatory description in the 911 call, the call was admissible to explain why the police stopped the defendant. *See also United States v. Sallins*, 993 F.2d 344, 345 (3d Cir. 1993); *United States v. Reyes*, 18 F.3d 65, 69-72 (2d Cir. 1994); *United States v. Silva*, 380 F.3d 1018, 1020 (7th Cir. 2004) (Easterbrook, J.) (rejecting the argument that statements directly inculpating the defendant were nonetheless admissible for the

non-hearsay purpose of showing "the actions taken by [each] witness": "Allowing agents to narrate the course of their investigations, and thus spread before juries damning information that is not subject to cross-examination, would go far to abrogating the defendant's rights under the sixth amendment and the hearsay rule.").

Like the investigation background rationales rejected in *Lasley, Nelson*, *Sallins*, *Silva* and *Reyes*, the non-hearsay purposes posited in the government's memorandum are inconsequential; if they are relevant at all, the hearsay use of the statements eclipses any non-hearsay significance that could be drawn from understanding Mr. Gates's expectations, or why Mr. Hawker did what he did with regard to a media plan.  And Mr. Gates's or Mr. Hawker's "understanding" about what Mr. Craig would or would not do is inadmissible because it is just another way of expressing, *for its truth*, what someone else told them.

## CONCLUSION

The motion *in limine* should be granted to the extent that the Court excludes all of the identified statements by Mr. Manafort or Mr. Van der Zwaan as inadmissible hearsay.   The Court should direct the government not to offer other out-of-court statements of Mr. Manafort, Mr. Van der Zwaan, or any other absent declarant without first addressing the admissibility of those statements with the Court.

Dated: July 18, 2019                                    Respectfully submitted,


                                                        */s/ William W. Taylor, III*
                                                        William W. Taylor, III (D.C. Bar No. 84194)
                                                        Paula M. Junghans (D.C. Bar No. 474419)
                                                        Ezra B. Marcus (D.C. Bar No. 252685)
                                                        ZUCKERMAN SPAEDER LLP
                                                        1800 M Street N.W. Suite 1000
                                                        Washington, D.C. 20036
                                                        Tel: (202) 778-1800
                                                        Fax: (202) 822-8106
                                                        Email: wtaylor@zuckerman.com
                                                        Email: pjunghans@zuckerman.com
                                                        Email: emarcus@zuckerman.com

                                                        William J. Murphy (D.C. Bar No. 350371)
                                                        Adam B. Abelson (D.C. Bar No. 1011291)
                                                        ZUCKERMAN SPAEDER LLP
                                                        100 East Pratt Street, Suite 2440
                                                        Baltimore, MD 21202
                                                        Tel: (410) 332-0444
                                                        Fax: (410) 659-0436
                                                        Email: wmurphy@zuckerman.com
                                                        Email: aabelson@zuckerman.com

                                                        *Attorneys for Defendant Gregory B. Craig*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 18, 2019, the foregoing was served on counsel of record via the Court's CM/ECF service.

_/s/ Ezra B. Marcus_
Ezra B. Marcus