UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>*v.*<br><br>**GREGORY B. CRAIG**,<br><br>*Defendant.* | **Case No. 1:19-cr-0125 (ABJ)** |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE OPINION AND EXPERT TESTIMONY ON MEANING OF FARA AND OTHER LAW**

On the surface, the government's opposition to Mr. Craig's motion *in limine* to exclude opinion and expert testimony appears to narrow the issues before the Court. The government represents that Heather Hunt will not offer an opinion on whether Mr. Craig had an obligation to register under FARA. ECF 59, at 3. Nor will she testify that Mr. Craig had a duty to supplement information previously provided to FARA. *Id.* at 7. And the parties are not in dispute to the extent Ms. Hunt's testimony is truly factual—e.g., her communications with Mr. Craig or her description of relevant practices and procedures of the FARA Unit.

But the government's opposition makes clear that Ms. Hunt will address two topics that are clearly inadmissible: why *she* concluded that Mr. Craig's law firm was obligated to register as an agent of Ukraine (and why she reversed that determination in January 2014); and, "based on her particularized knowledge from her personal experience," what "other hypothetical information might have been material to Hunt's analysis of FARA in the defendant's case." ECF 59, at 2. The government considers such testimony "common" when materiality is at issue. *Id.* But the government's opposition does not fairly engage defendant's arguments as to why such

testimony is inadmissible in this case, and the government's cases do not account for contrary authority in this circuit.

Finally, the government's opposition is not clear as to whether Ms. Hunt will testify about the meaning of legal terminology in FARA. The government represents that it "does not plan [to] elicit generalized testimony from Hunt about FARA, other than a brief description of the statute and its purpose," but adds that "to the extent that Hunt discusses the statute when explaining why she asked the defendant certain questions or made certain determinations, such testimony is fact testimony that is entirely appropriate." *Id.* at 5. Perhaps a final resolution on this point will require consideration of concrete questions offered at trial; for now, defendant continues to oppose Ms. Hunt's testimony on the meaning of FARA, which, as described, includes both expert opinion testimony and inadmissible legal conclusions.

I.  **ARGUMENT**

   A.  **Ms. Hunt should not be allowed to testify whether certain hypothetical facts would have influenced her decision-making.**

The government contends that Ms. Hunt may offer lay opinions under Rule 701 in response to hypothetical questions about what information "would have affected her decision-making." ECF 59, at 3. The government's argument misinterprets the interaction between Rules 701 and 702, especially after revisions to Rule 701 in 2000 intentionally pushed opinion testimony based on "specialized knowledge" into Rule 702 to ensure that parties did not evade the procedural protections of that Rule.

Under Rule 701, lay witnesses may not offer opinions that are "based on … *specialized* knowledge within the scope of Rule 702." Fed. R. Evid 701(c) (emphasis added). The government acknowledges that Ms. Hunt's lay opinions will be "based on her *particularized* knowledge from her personal experience," ECF 59, at 1 (emphasis added), but contends that

such testimony is nonetheless admissible under Rule 701 rather than Rule 702. The government is correct that experience can be a permissible basis for admitting opinion testimony, but when that experience emanates from transactions other than the one at issue at trial, the opinion testimony is admissible only from an expert qualified under Rule 702, not from a lay person offering opinions under Rule 701. In *United States* v. *Smith*, 640 F.3d 358, 365 (D.C. Cir. 2011), for instance, the Court of Appeals held that the district court erred by permitting an FBI agent to offer lay opinions concerning the meaning of slang terms in the drug business. As the Court explained, the agent's testimony was "gained from working on other drug investigations" rather than the one at issue, making it expert testimony that could only be admitted under Rule 702:

> An individual testifying about the operations of a drug conspiracy because of knowledge of that drug conspiracy ... should be admitted as a lay witness; an individual testifying about the operations of a drug conspiracy based on previous experiences with other drug conspiracies ... should be admitted as an expert. We have drawn that line because knowledge derived from previous professional experience falls squarely "within the scope of Rule 702" and thus by definition outside of Rule 701. *See* Fed. R. Evid. 701(c).

*Id.* at 365 (citations, footnote, and internal quotations omitted).

In *Smith*, the Court of Appeals held that the district court's error was harmless because the agent could have qualified as an expert, but that is not the test for the Court at this stage. Moreover, other precedent in this circuit recognizes the distinction between lay opinion testimony based on personal knowledge of the matter at issue and opinion testimony based on experience garnered from other matters. *See United States* v. *Hampton*, 718 F.3d 978, 984 (D.C. Cir. 2013) (error to admit agent's opinion testimony based on experience listening to wiretap interceptions; unnecessary to determine whether error was prejudicial because other errors required reversal of conviction); *United States* v. *Miller*, 738 F.3d 361, 372 (D.C. Cir. 2013) (plainly erroneous to admit FBI agent's lay opinion testimony about criminal enterprises and

3

investigative techniques "premised on his specialized knowledge as a criminal investigator, rather than his particularized knowledge of how the [defendants'] drug operation was investigated"); *United States* v. *Moore*, 651 F.3d 30, 59-61 (D.C. Cir. 2011) (improper to allow non-expert opinion testimony from FBI agent about charged conspiracy and defendants); *United States* v. *Wilson*, 605 F.3d 985, 1026 (D.C. Cir. 2010) (error to admit opinion testimony from drug dealer about terminology used in drug operations because it was "based entirely on [witness's] own experience elsewhere").

Ms. Hunt's grand jury testimony and witness interviews make clear that her "lay" opinions at trial will be based on her experience in "other investigations" or other matters handled by the FARA Unit. As outlined in defendant's initial memorandum, Ms. Hunt has developed a highly specialized view of FARA terminology.[1] This is, of course, based on "her decades-long employment by the Department of Justice, [FARA] Unit." ECF 59, at 2. Her opinions also will be informed by her own interpretation of a highly specialized statute, FARA, which is well beyond the ken of the average juror. Accordingly, Ms. Hunt's proffered opinion testimony is impermissible under the line of authority in this Circuit culminating in *Smith*.

The government's cases, all from other circuits, are not apposite. Two of them were decided (or effectively decided) before the key revision to Rule 701 effective December 1, 2000.[2] The 2000 amendment added subsection (c), which is the provision that prohibits lay

---

[1] Defendant contends that her view as to some of that terminology is erroneous, but given the government's apparent position that Ms. Hunt will not be offering her legal interpretation of these terms, the parties' dispute on this point is probably better addressed through jury instructions or other motions practice. If Ms. Hunt is permitted to offer her opinions at trial, however, defendant would intend to cross-examine her based on his own interpretations, and to introduce contrary evidence through his own expert witness.

[2] *See United States* v. *Kingston*, 971 F.2d 481 (10th Cir. 1992); *United States* v. *Matsumaru*, 244 F.3d 1092 (9th Cir. 2001). The *Matsumaru* decision was handed down after the rule change but

4

witnesses from offering opinions based on "other specialized knowledge within the scope of Rule 702." As the Advisory Committee explained the purpose of the change:

> Rule 701 has been amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing. Under the amendment, a witness' testimony must be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702…. By channeling testimony that is actually expert testimony to Rule 702, the amendment also ensures that a party will not evade the expert witness disclosure requirements set forth in Fed.R.Civ.P. 26 and Fed. R. Crim. P. 16 by simply calling an expert witness in the guise of a layperson.

Fed. R. Evid. 701, Advisory Comm. Notes (2000 amend.). Decisions from this court have cautioned against reliance on Rule 701 cases decided prior to the 2000 changes. *See United States* v. *Eiland*, 2006 WL 2844921, at *4 (D.D.C. Oct. 2, 2006), *aff'd on other grounds sub nom. United States* v. *Miller*, 738 F.3d 361 (D.C. Cir. 2013).

The government's other two cases are not on point. The defendant in *United States* v. *Locke*, 643 F.3d 235 (7th Cir. 2011), did not challenge the lay opinion testimony under Rule 701(c), *see id.* at 240 n.3, and therefore the court did not consider that provision. And in *United States* v. *Hill*, 643 F.3d 807, 842 (11th Cir. 2011), the court concluded that "it does not take any specialized or technical knowledge to realize that lending institutions would be reluctant to approve a loan application if they knew that it contained false statements about material facts." By contrast, jurors in this case will not have a baseline understanding of FARA registration or what would be significant to a government agency deciding whether registration is required;

---

was argued and submitted before, and the court cited only the older version of the rule (as well as *Kingston*). *See id.* at 1102.

such testimony is prototypical "specialized knowledge" that must be addressed through Rule 702.

The government may not evade the requirements of Rule 702 by contending that Ms. Hunt is merely testifying as to what *she* would have thought or done in response to hypothetical questions. To the extent her answer is based on "specialized knowledge within the scope of Rule 702," as it assuredly is, it still constitutes expert testimony that must conform to the requirements of that rule. *See*, *e.g.*, *United States* v. *Wilson*, 605 F.3d 985, 1025 (D.C. Cir. 2010) (Rules 701 and 702 ensure that lay testimony is "the product of reasoning processes familiar to the average person in everyday life," and party may not avoid reliability requirements of Rule 702 "through the simple expedient of proffering an expert in lay witness clothing") (citations and internal quotations omitted).

Moreover, as defendant explained in his opening memorandum, the test for materiality is objective, not subjective; *i.e.*, it focuses on what might have affected the decision-making of a reasonable agency, not what might have affected Ms. Hunt personally. In this case, at minimum, the jury will be confused if it is instructed that Ms. Hunt, the longtime director of the FARA Unit, is only offering an opinion concerning what would have affected her, but she is not qualified to offer an opinion on what would have affected a reasonable decision-maker within the FARA Unit. Such testimony should be excluded under Rule 403.[3]

---

[3] Defendant's opening memorandum argued that Rule 403 would prohibit Ms. Hunt from testifying that she would have told Mr. Craig that he was required to register if she had known certain hypothetical facts. *See* ECF 48, at 7. Although the government now says that it will not have Ms. Hunt offer that precise opinion, it nevertheless wants her to testify that certain hypothetical facts would have affected her decision-making—decision-making about whether Mr. Craig was required to register. This is a distinction without a difference.

Contrary to the government's suggestion, ECF 59, at 4, Ms. Hunt was not "the Department's decision-maker" on whether an individual is required to register. Doubtless she (on behalf of the FARA Unit) regularly expresses her views about the need for registration, but the statute gives her no authority to compel registration or to impose any punishment for failing to register. The most she can do is issue a letter concerning the FARA Unit's view that registration is required. The recipient of the letter is not obligated to follow the FARA Unit's view. The recipient's ongoing failure to register could in some circumstances lead to an injunctive action. If the Attorney General concludes that a person "*is engaged in or about to engage in* any acts which constitute or will constitute a violation" of FARA, "the Attorney General may make application to the appropriate United States district court for an order enjoining such acts …." 22 U.S.C. § 618(f). But even then, the Attorney General has no authority to seek an injunction for *completed* conduct that may have required registration. Thus, it is not at all clear how the government intends to prove through Ms. Hunt or any other evidence that the statements and alleged nondisclosures at issue here were material, given that Skadden's activities allegedly on behalf of Ukraine had ceased as of December 2012.

The Court may well wonder, as has defendant, why the government assiduously avoids designating Ms. Hunt as an expert witness. Defendant is concerned that the government is attempting to confine the evidence on materiality—which is unquestionably a decision for the jury—to the narrow "lay" opinion of a witness that the government controls. (Ms. Hunt declined a request to meet with defense counsel.) The bookend to this stratagem is the government's motion to exclude defendant's FARA expert from testifying at all. But if Ms. Hunt's contemplated opinion is admissible only as expert testimony under Rule 702, Mr. Craig could certainly rebut her testimony with expert testimony of his own. In addition, Mr. Craig would

have important procedural protections. He would be entitled to receive from the government a written summary of Ms. Hunt's testimony. Fed. R. Crim. P. 16(a)(1)(G). And he would be entitled to file an appropriate motion *in limine* challenging her qualifications; to conduct *voir dire* at trial; and to cross-examine her as an expert.

If the Court is inclined not to require the government to make an expert disclosure for Ms. Hunt, and to allow Ms. Hunt to offer lay opinions under Rule 701, defendant respectfully requests that the Court take note of the authority cited above and conclude that Ms. Hunt's testimony is effectively expert opinion whether offered under Rule 701 or Rule 702. Whatever the scope of Ms. Hunt's eventual testimony, fairness dictates that Mr. Craig be permitted to call his own expert to rebut Ms. Hunt's testimony on materiality and her opinions about the meaning of the statute and how it applies to the facts at issue.

### B. Ms. Hunt may not testify as a fact witness about the law.

The government contends that Ms. Hunt may testify about why she asked Mr. Craig certain questions, why "she determined that his firm was obligated to register under FARA," and why "she reversed that determination." ECF 59, at 5. Although the government's intentions are not entirely clear, the government appears to contend that this testimony can include Ms. Hunt's interpretations of FARA as detailed in her grand jury testimony and government interviews, and as summarized in defendant's opening memorandum. *See id.* (contending that *why* Ms. Hunt asked Mr. Craig a question is "fact testimony").

Mr. Craig acknowledges that Ms. Hunt can testify about purely factual matters without qualifying as an expert. Thus, she can testify what she said to Mr. Craig and what Mr. Craig said to her. She can also explain how the FARA Unit operates and what materials it usually requests and considers.

But when the government says that Ms. Hunt can explain (consistent with her grand jury testimony) why it was important to know to whom Skadden released the Tymoshenko Report, *see* ECF 59, at 5, the Court should be cognizant of the answer that Ms. Hunt gave in the grand jury:

> A [Ms. Hunt] Well this goes back to my questions to Alex. Did they disseminate the report?
>
> Q Mm-hmm.
>
> A I—it's—it goes to the heart of the statute. If, if, if they're disseminating the report to media, to you know, any sections of public in the United States; to Congress, to the Administration, we, we want to know. *Because if they are and they're doing it at the request or under the direction or control of foreign government, then there would be an obligation to register*.

Hunt GJ (3/21/2019), at 23 (emphasis added). That testimony does indeed go to the heart of the statute; it is a legal conclusion about what the statute requires, and one that the defendant disputes applies to his situation. As defendant argued in his initial memorandum, the Court should not permit the government to introduce through a side door what it cannot get into evidence through the front door—namely, a legal conclusion about domestic law. As far as defendant is aware, there is no such thing as a fact witness testifying to a legal conclusion. But if defendant is wrong and Ms. Hunt is permitted to testify about the meaning of the law because she is a "fact witness," she should be subject to robust cross-examination *about the law*,[4] and defendant should be permitted to call an expert witness (Ms. Jeffress) to explain why defendant contends Ms. Hunt's testimony about the application of the law to the facts of this case should not be accepted.

---

[4] Defendant acknowledges that the prospect of counsel and witness debating what the relevant law is or how it applies in certain factual situations is generally foreign to the way trials are expected to proceed. But that is the logical endpoint of the government's position.

9

## II.     CONCLUSION

For the reasons stated, Defendant Gregory B. Craig respectfully requests that his motion *in limine* be granted.

Dated: July 18, 2019                                         Respectfully submitted,

*/s/ William W. Taylor, III*
William W. Taylor, III (D.C. Bar No. 84194)
Paula M. Junghans (D.C. Bar No. 474419)
Ezra B. Marcus (D.C. Bar No. 252685)
ZUCKERMAN SPAEDER LLP
1800 M Street N.W. Suite 1000
Washington, D.C. 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
Email: wtaylor@zuckerman.com
Email: pjunghans@zuckerman.com
Email: emarcus@zuckerman.com

William J. Murphy (D.C. Bar No. 350371)
Adam B. Abelson (D.C. Bar No. 1011291)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
Tel: (410) 332-0444
Fax: (410) 659-0436
Email: wmurphy@zuckerman.com
Email: aabelson@zuckerman.com

*Attorneys for Defendant Gregory B. Craig*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 18, 2019, the foregoing was served on counsel of record via the Court's CM/ECF service.

                                                                            /s/ *Ezra B. Marcus*
                                                                            Ezra B. Marcus