**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 19-CR-125 (ABJ)** |
| | : | |
| **v.** | : | |
| | : | |
| **GREGORY B.  CRAIG,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' REPLY IN SUPPORT OF MOTION *IN LIMINE***
**TO EXCLUDE DEFENDANT'S PROFFERED OPINION TESTIMONY**

Defendant's opposition (ECF No. 53) to the exclusion of the proffered opinion testimony is premised on two incorrect propositions.  *First*, that opinion testimony related to his alleged mental state in 2012, when he contacted the *New York Times* (NYT), is relevant to prove the willfulness or materiality of his false and misleading statements and material omissions to the U.S. Department of Justice in 2013, in response to the Department's inquiry into whether Defendant had an obligation to register as an agent of Ukraine under the Foreign Agents Registration Act (FARA).  None of the cases cited by Defendant support this proposition.  *Second*, that because Ms. Jeffress is an "exceptionally well qualified lawyer," the Court should simply be satisfied that her opinions as to what a reasonable knowledgeable practitioner in 2012 would have *believed* about registration obligations under FARA are reliable.  Defendant does not contest that Ms. Jeffress had no substantive FARA experience until, at the earliest, December 2014—well after the events here.

Defendant has failed to carry his burden to prove admissibility of the proffered opinion testimony under Rule 702 of the Federal Rules of Evidence and applicable case law, and the Court—in its gatekeeper function—should exclude the testimony as irrelevant and unreliable. While the government agrees that Ms. Jeffress is "an exceptionally qualified lawyer," she is not

qualified to provide the proffered opinions that Defendant would like her to give, which are also irrelevant and unduly prejudicial.  Moreover, Defendant's disclosures under Rule 16 of the Federal Rules of Criminal Procedure remain deficient because, to date, Defendant refuses to provide the bases and reasons for the conclusions being offered as opinions, and even failed to identify all of the opinions.  These failures represent an additional reason to exclude the testimony.

### A.  Proffered Opinion Testimony is Irrelevant

Defendant's argument misconstrues the relevancy analysis the Court should undertake by confusing the willfulness and materiality elements of a failure to register—with which Defendant is not charged—with the willfulness and materiality of the false statements charges that the jury in this case will consider.  To evaluate the relevance of the testimony, the Court should examine whether the testimony is helpful to prove or disprove a fact that is of consequence in determining the action.  The question for the Court is whether the proffered testimony here—what a reasonable practitioner would have *believed* in 2012—is relevant, and the answer is *no*—not relevant.

### 1.  Even Assuming *Arguendo* that Defendant Believed in 2012 that He Did Not Have a Duty to Register Under FARA, that Fact Would Not Be Probative of the Willfulness or Materiality of His False and Misleading Statements and Omissions in 2013 Charged in the Indictment

Even if Defendant had truly believed that he did not have to register under FARA when he contacted the NYT in 2012, he could have—as the indictment alleges—decided to lie and omit material facts from the FARA Unit in order to avoid having to register.  One fact does not preclude the other.  As the government anticipated (ECF No. 42 at 8), Defendant is attempting to improperly suggest to the jury, under the guise of expert testimony, that because he allegedly acted in good faith in 2012, he must have also acted in good faith during his discussions with the FARA Unit in 2013.  *See* ECF No. 53 at 5.  Stated differently, Defendant will use this proffered testimony about what an alleged practitioner would have *believed* in 2012 to attempt to convince the jury of the

alleged lack of willfulness and materiality in his lies and omissions to the FARA Unit in 2013. The proffered testimony is therefore not only improper under Rule 704(b) of the Federal Rules of Evidence, but also irrelevant and, as previously argued in our opening brief, unduly prejudicial.

### 2.  Proffered Testimony Is Not Admissible Under *Safavian*

Defendant is mistaken when he argues that *United States v. Safavian*, 528 F.3d 957 (D.C. Cir. 2008), is not only supportive of the admissibility of the proffered testimony, but that the case is "on all fours" with his position in this case.  *See* ECF No. 53 at 7.  The defendant's proposed expert testimony in *Safavian* was directly relevant to the falsity of the specific false statements for which the defendant was charged, which is not the situation here.

In *Safavian*, one of the specific false statements charged, as reflected in multiple counts of the indictment, was his statement that Abramoff was not "doing business with GSA."  528 F.3d at 962-63.  In his defense, Safavian asserted, and testified at trial, that the phrase "doing business with GSA" was a term of art, common to government contracts professionals, whereas someone who does not have a formal contract with GSA is therefore not "doing business with GSA."  *Id.* at 965-66.  In support of his defense that his statement was true, Safavian wanted to call an expert witness to establish how government contracts professionals—like himself—viewed or understood the term having business with GSA or working with GSA.  *Id.* at 966.  Because the question for the jury was what Safavian meant when he told government officials that Abramoff was not "doing business with GSA," the Court held that expert testimony as to the "common usage of the terms in the government contracts industry" would have been helpful and relevant, and that its exclusion by the court was not harmless.  *Id.* at 967.

In contrast, the proffered opinion testimony here about reasonable *beliefs* regarding registration obligations has nothing to do with Defendant's subsequent charged false and

misleading statements and omissions to the FARA Unit in 2013.  *See* Defendant's Disclosure of Expert Witness, ECF No. 40.  For example, the proffered opinions do not address the language used in the letters from the FARA Unit, or the language Defendant used in his letters.  Similarly, the proffered opinions do not address what Defendant did not include in his letters—the omissions. Finally, there is no proffered opinion testimony as to what the FARA Unit—in this case Ms. Heather Hunt—considered to be material information in her determination of whether someone should register under FARA.  Instead, Defendant wants to elicit testimony about his alleged state of mind for a crime that he has not been accused of committing.  In short, *Safavian* does not support Defendant's argument that the proffered opinions are admissible.

Similarly, none of the other cases Defendant cites support his argument that expert testimony about what an allegedly reasonable practitioner *believed* in 2012, is somehow relevant to *subsequent* lies and omissions about the work actually performed.  Instead, the cases cited by Defendant deal with expert testimony that explains how an industry works, or what information is important to a decision maker in the industry.  None of these cases is therefore analogous to the proffered opinion testimony here.  *See*, *e.g.*, *United States v. Litvak*, 808 F.3d 160, 180-85 (2d Cir. 2015) (testimony about process used by investment managers in the industry to evaluate a security should have been admitted to determine whether defendant's statements would have been material to the investment managers as to their decision to buy a security); *United States v. Wolf*, 860 F.3d 175 (4th Cir. 2017) (expert testimony explaining the mortgage process industry, and what information is deemed important to a lender, was proper in a mortgage fraud conspiracy).

### B.  Proffered Testimony Will Confuse and Mislead the Jury

Defendant accuses the government of setting up a "straw man" argument that the purpose of the proffered testimony is to vouch for Defendant's mental state in this case, claiming that the

testimony simply supports an inference of his ultimate intent.  ECF No. 53 at 8.  Putting aside that

Defendant has failed to explain how and why Ms. Jeffress can opine as to what someone would

*believe* in 2012 if standing in Defendant's shoes, there is no other apparent purpose for the

testimony but to vouch for his mental state when he communicated with the FARA Unit.  Indeed,

the purpose of the testimony is to allow Defendant to argue that, as a reasonable practitioner, he

*believed* that he did not have to register despite his participation in the media roll out plan.  This

proffered "expert" testimony directly addresses Defendant's alleged state of mind.  The testimony

is therefore not only a violation of Rule 704(b), but it is also unduly prejudicial, likely to confuse

or mislead the jury, and subject to exclusion under Rule 403 of the Federal Rules of Evidence.

As detailed in the government's opening brief (at 9-10), simply based on Ms. Jeffress'

testimony as a well-qualified lawyer and former prosecutor, jurors might believe or be convinced

that Defendant acted in good faith when he dealt with the FARA Unit in 2013 because of Ms.

Jeffress' affirmation that he acted in good faith when he failed to register under FARA in 2012.

In response, Defendant refers the Court again to *Safavian*, warning the Court that excluding

relevant evidence for the defense could be an abuse of discretion.  But, as demonstrated above, the

proffered testimony is not only irrelevant, but also has the high likelihood to confuse and mislead

the jury, and *Safavian* is simply not applicable nor a bar to exclusion of the testimony.

### C.  Defendant Refuses to Provide Adequate Notice of Expert Testimony

#### 1.  Defendant Failed to Describe the Bases and Reasons for the Two Opinions

Defendant, citing *Rogers* and *Hite*, incorrectly argues that he met the requirement to offer

the "bases and reasons" for the proffered testimony by "noting the expert's education, training and

experience and attaching a resume."  ECF No. 53 at 11; *citing United States v. Hite*, 769 F.3d

1154, 1168 (D.C. Cir. 2014); *United States v. Rogers*, 2006 WL 5249745 (D.D.C. July 17, 2006).

Neither case relaxes the requirement of Rule 16 that Defendant provide the bases and reasons for the opinions. *See United States v. Naegele*, 468 F. Supp. 2d 175, 176 (D.D.C. 2007) (explaining the requirement for both the bases and reasons for the proffered opinions); *see also United States v. Barile*, 286 F.3d 749, 758 (4th Cir. 2002) (finding notice inadequate when it merely stated the conclusion reached without giving "the reasons for those opinions as required under" the Rule).

In fact, the D.C. Circuit in *Hite* is clear that Rule 16 "requires the defendant to 'describe the witness's opinions, the bases and reasons for these opinions, and the witness's qualifications.'" *Hite*, 769 F.3d at 1168 (quoting Rule 16(b)(1)(C)). *Hite* stands for the proposition that expert notice need not explain how the expert's opinion is relevant to the facts of the case, but that does not eliminate Defendant's requirement to provide a summary as to how the expert has reached her opinion—the bases and *reasons* for the opinion that is being offered. *Id.* Indeed, in *Hite*, the defendant submitted a six-page letter that detailed the bases and reasons for the opinions. *See* Defense expert disclosure letter in *United States v. Hite*, Cr. No. 12-65 (CKK), ECF No. 208. And, in *Rogers*, the Court explained that "Rule 16 does require a sufficient summary of the expert's testimony, and not simply a list of testimony topics." *Rogers*, 2006 WL 5249745, at *3.

Here, Defendant has set forth two conclusory opinions, followed by a list of legal materials and commentary that allegedly support the various opinions that Ms. Jeffress intends to provide. Glaringly absent from the original notice or its short supplement are any explanations or descriptions as to how Ms. Jeffress reached her conclusory opinions. It is possible that Ms. Jeffress' opinions will track the legal arguments in Defendant's motion *in limine* about Ms. Hunt's testimony (ECF No. 48), but at this point the government has been left guessing as to the basis and reasons Ms. Jeffress will offer for opining what a reasonable practitioner would have believed in 2012, or even how she interprets the FARA statute in a way that allows her to give and/or support

her opinions.  As such, the notice was deficient when given and remains deficient after Defendant's supplemental disclosure.

### 2.  Defendant Refuses to Identify Ms. Jeffress' Other Opinions

These deficiencies in defendant's notice are further exacerbated by Defendant's refusal to even identify the "other opinions" that Ms. Jeffress intends to offer.  Defendant claims to have satisfied the notice requirements by disclosing that Ms. Jeffress may offer "additional opinions about how a reasonable practitioner during the relevant time frame would have analyzed the First Amendment implications of FARA registration requirements…"  ECF No. 53.  Such a disclosure does not even establish an opinion, and it certainly does not provide the bases and reasons for such an opinion.  *See Naegele*, 468 F. Supp. 2d at 176; *see also Barile*, 286 F.3d at 758.

Indeed, Ms. Jeffress' opinion and the bases and reasons in support of that opinion continue to be a moving target.  Just days ago, Defendant explained that some newly reviewed evidence of what other law firms did in 2010 and 2011 "could be useful in both the cross examination of Heather Hunt, . . . and also in the opinion testimony that we plan to offer from Amy Jeffress." 7/16/19 Hrg. Tr. at 4:18-23.  The statement by defense counsel, which also fails to identify or specify how this information will affect or supplement the proffered testimony, highlights the importance of enforcement of the expert disclosure rules.  Defendant cannot simply wait until the beginning of trial to formulate the expert opinions to be offered by Ms. Jeffress.  Such an approach is a blatant violation of Rule 16 and runs counter to its very purpose, which is "to prevent unfair surprise at trial and to permit the government . . . to prepare rebuttal reports and to prepare for cross-examination at trial."  *Neagele*, 468 F. Supp. 2d at 176.

### 3.   Defendant Has Not Established the Reliability of Ms. Jeffress' Opinion

As discussed in the government's opening brief, the trial court's gatekeeping function applies to all expert testimony, not just that which is "scientific."  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).  An expert's opinions must have a "reliable basis in the knowledge and experience" of the expert's discipline.  *Id.*  "The trial court's gatekeeping function requires more than simply taking the expert's word for it."  *Sacchetti v. Gallaudet Univ.*, 344 F. Supp. 3d 233, 250 (D.D.C. 2018) (*quoting* Fed. R. Evid. 702 Advisory Committee Note (2000)).

Here again, the deficiency in Defendant's notice introduces manifest uncertainty into the reliability of the opinions to be offered.  If Defendant intends for Ms. Jeffress to explain "how FARA was reasonably and *widely* understood in 2012, prior to the Department of Justice's policy changes" (ECF No. 53 at 5 (emphasis added)), then he must explain how Ms. Jeffress, who had no involvement with FARA or the FARA legal community before or during 2012-2013, can reliably offer such an opinion.  Indeed, as Defendant's descriptions of her testimony reveal, Ms. Jeffress seeks to offer a legal opinion as to how she currently interprets the FARA statute disguised as "how the statute was understood [by others] in 2013."  *See* ECF No. 53 at 16 ("Ms. Jeffress's experience gives her ample foundation to explain what a reasonable practitioner would have understood FARA to mean" in 2012).

Defendant's reliance (at 16-17) on the *Banki* decision is also misguided, as Defendant argues that Ms. Jeffress' lack of experience with FARA before December 2014 is not a concern.  Unlike the expert in *Banki*, Ms. Jeffress acquired her knowledge of FARA much *after* the events have taken place.  In *Banki*, the expert had served as director of the Office of Foreign Asset Control (OFAC) from 1987 – 2004.  *United States v. Banki*, 2010 WL 1875690, at *2-3 (S.D.N.Y. May 10, 2010).  The court in *Banki* therefore allowed the expert to testify about OFAC's procedures

and evaluations, based on his extensive and substantive prior experience at OFAC as a decision maker, even though he was no longer the director of OFAC during the relevant time of the indictment and his testimony.  This is completely different from Ms. Jeffress' situation, who had no substantive FARA experience before December 2014.

Through its notice to the government and subsequent filings to the court, Defendant has failed to carry his burden to demonstrate that Ms. Jeffress' opinion of the law today can reliably approximate how the law was widely understood in 2012.  And remarkably, Defendant incorrectly suggests that it is the government's burden to disprove reliability rather than his burden to establish it.  *See* ECF No. 53 at 16 ("The government cannot explain why [sic] the common understanding of FARA changed between 2013 and 2014.").

### 4.   Exclusion of Ms. Jeffress' Testimony is the Appropriate Remedy

Rule 16 gives trial judges the option of suppressing evidence as a result of a party's discovery violations.   While the suppression of evidence in a criminal case implicates the constitutional rights of the defendant, the exclusion of evidence for violations of the discovery rules has been found to be proper even in the absence of a showing of bad faith.  *See Taylor v. Illinois*, 484 U.S. 400 (1988); *United States v. Nobles*, 422 U.S. 225, 240-41 (1975) (excluding witness testimony from defendant's investigator when investigator refused to turn over notes of the investigation).  In analyzing sanctions for a violation of the discovery rules, the D.C. Circuit considers multiple factors, noting in particular: the significance of the evidence and whether it is exculpatory, the prejudice suffered by the opposing party, and whether the violation was the result of bad faith.  *United States v. Gray-Burriss*, 791 F.3d 50 (D.C. Cir. 2015); *see also United States v. Day*, 524 F.3d 1361, 1372 (D.C. Cir. 2008).

Here, the factors weigh in favor of excluding the evidence. The evidence is not exculpatory, nor is it substantially probative (if it is even relevant and admissible) as to the issues to be presented to the jury.[1]  In light of the compressed scheduled demanded by Defendant (and agreed to by the government), Defendant's studied refusal to meet the requirements of Rule 16(b)(1)(C) places a significant burden on the government in its preparation of the case. There can be little doubt that delayed disclosure here deprives the government of a "fair opportunity to test the merit of the expert's testimony through focused cross-examination"—the very purpose for the disclosure rule at issue here. Fed. R. Crim. P. 16(b)(1)(C) (advisory committee's note to 1993 amendment). Defendant could have rectified the deficient notice in a matter of days, but has elected to withhold the required information. Accordingly, even in the absence of bad faith, the sanction of exclusion is appropriate here.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court grant the government's Motion *in Limine* to preclude the testimony of Defendant's proposed expert witness.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar Number 472845

By:  /s/ Fernando Campoamor-Sánchez
FERNANDO CAMPOAMOR-SÁNCHEZ (DC 451210)
MOLLY GASTON (VA 78506)
Assistant United States Attorneys
United States Attorney's Office
555 Fourth Street, N.W.
Washington, D.C.  20530
Telephone: 202-252-7698/202-252-7803

---

[1]    Of course, if the Court concludes, as the government demonstrates above, that the proposed expert testimony is neither relevant nor reliable, it does not have to weigh whether to impose a sanction on the defense for its discovery violation.

Fernando.Campoamor-Sanchez@usdoj.gov
Molly.Gaston@usdoj.gov


JOHN C. DEMERS
ASSISTANT ATTORNEY GENERAL


By:   /s/ Jason B.A. McCullough
JASON B.A. MCCULLOUGH (DC 998006; NY 4544953)
Trial Attorney
Department of Justice
National Security Division
950 Pennsylvania Ave NW
Washington, D.C.  20530
Telephone: 202-616-1051
Jason.McCullough@usdoj.gov

Dated:   July 18, 2019

## **Certificate of Service**

I certify that, by virtue of the Court's ECF system, a copy of the foregoing reply has been sent to counsel for the defendant on July 18, 2019.

/s/ Fernando Campoamor
Fernando Campoamor
Assistant United States Attorney