# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | : | |
| | : | |
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:19-CR-00125 (ABJ) |
| | : | |
| GREGORY B. CRAIG, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

## GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE CLAIMS OF SELECTIVE PROSECUTION

In his Response to the government's motion *in limine* to exclude arguments or evidence of selective prosecution (ECF No. 55), Defendant claims, without supporting case law or any specifics, that he should be permitted to introduce evidence of "the absence of criminal or civil enforcement actions" under FARA because it is relevant to "willfulness and materiality" regarding his FARA registration obligations (at 3). But this confuses the willfulness and materiality at issue in this case—Defendant's false statements and omissions to the Department of Justice in 2013— with his state of mind regarding his obligation to register under FARA in 2012. Defendant is not charged with willfully failing to register as an agent of Ukraine, and he should not be permitted to introduce irrelevant, confusing, and prejudicial evidence on that issue.

In addition, defendant's Response and an additional Notice (ECF No. 60) assert that he should be permitted to cross-examine a potential government witness, Jonathan Hawker, regarding his decision to retroactively register as a result of media activities surrounding the release of Defendant's Tymoshenko report. Not only is this issue irrelevant, but it conflicts with the agreement reached by the parties on April 25, 2019, not to elicit evidence regarding "the retroactive

Foreign Agents Registration Act filings related to the Skadden Report on the trial of Yulia Tymoshenko" (ECF No. 16, Ex. 1). If Defendant is permitted to elicit testimony from Hawker on this subject, the government may need to introduce evidence and elicit testimony from numerous witnesses that, as a result of Defendant's acts at Ukraine's request in 2012, they and Skadden retroactively registered under FARA.

**I.     Evidence of the absence of other FARA enforcement actions is not relevant or probative in this case**

In a single paragraph in his Response, Defendant asserts, without explanation or legal support, that he should be permitted to introduce material probative of "willfulness and materiality" regarding registration under FARA. In reality, this would be a backdoor for the same improper claims of selective enforcement that the government moved to preclude in its motion *in limine* (ECF No. 44 at 2-4). The government's motion should be granted.

a.     <u>The irrelevant evidence recently proffered by Defendant should be excluded</u>

Defendant's disclosure to the government on July 14, 2019, and to the Court on July 16, 2019, only proves this point. In those disclosures, Defendant suggested that he plans to cross-examine FARA Unit employee Heather Hunt,[1] and elicit affirmative testimony from the defense's proffered expert, Amy Jeffress, regarding other Ukraine-related reports prepared by U.S. law firms, one for Ukrainian Viktor Yanukovych in 2010 and another for Yulia Tymoshenko in 2011. This evidence would be irrelevant, confusing, and prejudicial, and should not be permitted.

---

[1]     Defendant cannot properly attempt to introduce evidence of the earlier Ukraine reports through cross-examination of Hunt. Any such questions will be outside of the scope of Hunt's direct examination, which will focus on Defendant's false and misleading statements and material omissions from 2012-2013. Furthermore, Defendant cannot attempt to "impeach" Hunt by asking her questions about these other reports as a vehicle for introducing extrinsic evidence. *See United States v. Tarantino*, 846 F.2d 1384, 1409 (D.C. Cir. 1988) (stating that rule providing that a witness cannot be impeached by extrinsic evidence on a collateral issue serves to avoid confusing the jury and wasting time).

As an initial matter, Defendant is not charged with willfully failing to register as an agent of Ukraine in 2012.  Rather, he is charged with scheming to make false statements and conceal material information from the FARA Unit in 2013 when asked about his 2012 activities.  Evidence of other reports regarding Ukraine conducted in 2010 and 2011—and whether the individuals who created them registered under FARA—has no bearing on the materiality and willfulness of Defendant's false statements and omissions in 2013.  The only purpose for which Defendant is seeking to admit such evidence is impermissible:  to insinuate that because other individuals and entities that worked on reports for Ukraine were not pursued by the FARA Unit, Defendant has been the subject of selective enforcement.  Even if the evidence is in some way minimally relevant, the Rule 403 balancing test weighs strongly in favor of excluding it because any probative value is substantially outweighed by the danger that the evidence of other reports will be confusing, mislead the jury, and waste time.  Fed. R. Evid. 403.

Furthermore, the proffered evidence is not even probative of Defendant's state of mind in 2012, as Defendant suggests, because there is no evidence (or even a proffer) that these reports informed Defendant's decision to make media contacts and disseminate the report at Ukraine's request.  When a defendant claims that otherwise irrelevant evidence is probative of his state of mind, courts have required proffers that the defendant knew of and considered the evidence.  *See United States v. Libby*, 475 F. Supp. 2d 73, 87-88 (D.D.C. 2007) (limiting defense evidence to establish defendant's state of mind absent defendant's testimony indicating that he was aware of the information and it was "in fact of concern to the defendant"); *United States v. Passaro*, 577 F.3d 207, 220 n.7 (4th Cir. 2009) (excluding defendant's use of DOJ memorandum because "the record lacks any evidence that Passaro read or knew of, let alone relied on, this memorandum").  But in this case, we know that these reports did not influence Defendant's decisions because

3

defense counsel already told the Court and the government otherwise; as described before the Court on July 17, 2019, the defense learned of, and ascribed significance to, other Ukraine reports only when reviewing discovery produced by the government. *See* 7/16/19 Hrg. Tr. at 4:24-25 (stating that "late in April, one of my colleagues discovered newspaper references to a report"); *id*. at 7:14-8:17 (stating that, when doing document review, defense counsel had "discovered" copies of the report and discussion of it in multiple government discovery productions). In so doing, defense counsel foreclosed the only way evidence of the Ukraine reports could be relevant in this case: if in 2012, when considering whether to contact the *New York Times* and deliver the report—as Paul Manafort and Ukraine had requested—Defendant looked at the other reports in question, knew of and considered the nature of the media contacts and dissemination of the report by the attorneys who had written them, and concluded that Defendant was similarly situated and thus was not required to register. But in this case, there is not only no such evidence in the record— defense counsel's representations are evidence to the contrary.[2]

To be clear, even if it were the case that Defendant knew all about the media contacts related to these other reports and decided he was not required to register, that is not probative of the willfulness or materiality of Defendant's decision in 2013 to lie to, mislead, and conceal his actions from the FARA Unit. Defendant's proffered evidence regarding other reports prepared for Yanukovych and Tymoshenko in 2010 and 2011 is not relevant, probative, or admissible, and should be excluded.

---

[2]    Indeed, if Defendant had been aware in 2012 of the details of other attorneys' media contacts regarding and dissemination of these other reports, he and his law firm certainly would have raised them in their discussions with the FARA Unit.

b.  <u>Broader concerns about the scope of Defendant's planned evidence</u>

Because of Defendant's Response's cursory assertion that he should be permitted to introduce evidence of "willfulness and materiality," and the subsequent erroneous claim that the example above falls into this category, the government has concerns about what other irrelevant evidence Defendant may seek to introduce beyond this most recent disclosure.  For the first time on June 28, 2019—after the deadline for motions *in limine*—Defendant produced reciprocal discovery to the government.[3]  This production consisted of plea documents of Alex Van Der Zwaan, a Skadden associate; congressional testimony of Adam Hickey, a National Security Division official, regarding the Foreign Agents Registration Act; an Office of Inspector General audit of the FARA Unit; and materials from 1963 congressional hearings regarding FARA.  This production did not include the two previous Ukraine reports from law firms that Defendant now claims are relevant for its proffered expert testimony or for cross examination of Hunt.  It is not clear whether Defendant will seek to introduce any of these materials at trial, but they are extraneous to the facts of this case and should be excluded absent a specific proffer as to their relevance and probative value to an issue the jury will be charged with deciding.

---

[3]      The government requested reciprocal discovery from Defendant repeatedly in advance of the Court's deadline for motions *in limine*, but received no response.  *See* Letter from Government to Defense Counsel (April 15, 2019) ("Because you have requested discovery in this matter, the United States hereby requests reciprocal discovery"); Letter from Government to Defense Counsel (June 4, 2019) ("we reiterate our request, initially made on April 15, 2019, for reciprocal discovery in accordance with the Rules of Criminal Procedure.  We note that, in light of the aggressive trial schedule that has been set—at your request—we need reciprocal discovery early enough to be able to review it and decide whether motions *in limine* related to your discovery are necessary in accordance with the schedule set by the Court—currently due June 14, 2019); Letter from Government to Defense Counsel (June 11, 2019) ("we remind you that you have not produced any reciprocal discovery despite our repeated requests that you do so fairly in advance of the approaching deadlines for motions *in limine*").

## II.      Testimony regarding retroactive FARA Registration

In his Response to the government's motion *in limine*, Defendant also states his intention to cross-examine potential government witness Jonathan Hawker about Hawker's ongoing discussions with the Department of Justice about retroactive registration related to his activities on Ukraine's behalf in 2012 (ECF No. 55 at 1-3).  On July 12, 2019, Hawker and his former public relations firm retroactively each registered as an agent of Ukraine as a result of Hawker's work with Defendant to disseminate the report to the media in the United States.[4]  Through a Notice (ECF No. 60) filed on July 15, 2019, Defendant advises that he plans to cross-examine Hawker about his decision to retroactively register.  Contrary to the suggestion in Defendant's Notice, he has long been aware of the ongoing discussions between the government and FTI regarding retroactive registration because of the discovery materials reflecting these discussions that the government provided him, and that Defendant attached to his Response (ECF No. 55, Ex. 1).  Defendant's filing indicates that he plans to cross-examine Hawker about any implicit or explicit agreements Hawker had with the government regarding retroactive registration (to be clear—there were and are no such implicit or explicit agreements).

Like the pre-2013 Ukrainian engagements by U.S. law firms the defense now seeks to present at trial, Hawker's retroactive registration is not relevant to any factual issue the jury will be charged with deciding because Defendant is not charged with willfully failing to register as an agent of Ukraine.  Nor does Hawker have any "explicit or implicit agreements" with the government (Defendant's Notice at 2) that would establish a motive on his part to curry favor with the government.  In addition, it is important to note that such cross-examination would vitiate the

---

[4]      Defendant's Response (at 2) criticized Hawker because he "personally contacted David Sanger of the *New York Times* about receiving an advance copy of the Report" without acknowledging that Defendant did the same.

agreement that the parties reached on April 25, 2019, not to introduce testimony or evidence regarding retroactive registrations related to the Report, which Defendant provided the Court (ECF No. 16, Ex. 1).  The government understood, from that agreement, that this trial would be properly focused on the charges in the indictment, which pertain to Defendant's communications with the FARA Unit in 2012-2013.  It now appears that Defendant seeks to dramatically expand the scope of the trial to encompass irrelevant events.  If Defendant is permitted to cross-examine Hawker about his retroactive registration, the government should then be permitted to elicit testimony and introduce evidence about others' retroactive registration related to the Report—including that of Skadden and the other attorneys, besides Defendant, who worked on it.

## III.     Conclusion

The evidence the defense seeks to admit is not relevant to any factual dispute with which the jury will be charged to decide.  Rather, the defense's alleged selective enforcement evidence will distract the jury from the charge to resolve whether Defendant made materially false statements and omissions and risks converting the case into a confusing and irrelevant mini-trial about whether other individuals should be required to retroactively register under FARA, and whether the FARA Unit should have pursued others doing work for Ukraine.  For the foregoing reasons, the government's Motion *in Limine* to Exclude Claims of Selective Prosecution or Enforcement, or Seeking Jury Nullification (ECF No. 44) should be granted in full.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar Number 472845


By:  /s/ Molly Gaston
FERNANDO CAMPOAMOR-SÁNCHEZ (DC 451210)
MOLLY GASTON (VA 78506)

7

Assistant United States Attorneys
United States Attorney's Office
555 Fourth Street, N.W.
Washington, D.C.  20530
Telephone: 202-252-7698/202-252-7803
Fernando.Campoamor-Sanchez@usdoj.gov
Molly.Gaston@usdoj.gov


JOHN C. DEMERS
ASSISTANT ATTORNEY GENERAL


By:  /s/ Jason B.A. McCullough
JASON B.A. MCCULLOUGH (DC 998006; NY 4544953)
Trial Attorney
Department of Justice
National Security Division
950 Pennsylvania Ave NW
Washington, D.C.  20530
Telephone: 202-616-1051
Jason.McCullough@usdoj.gov

Dated:   July 18, 2019

**<u>Certificate of Service</u>**

I certify that, by virtue of the Court's ECF system, a copy of the foregoing Reply has been sent to counsel for the defendant on July 18, 2019.

/s/ Molly Gaston
Molly Gaston
Assistant United States Attorney