# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| *v.* | **Case No. 1:19-cr-0125 (ABJ)** |
| **GREGORY B. CRAIG**, | |
| *Defendant.* | |

## DEFENDANT'S REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EVIDENCE RELATED TO MINISTRY OF JUSTICE PAYMENTS

The Skadden engagement cost $4.6 million, but only $4.15 million was covered by the funding provided at the outset by Victor Pinchuk. In this case, where the issue is whether Mr. Craig knowingly lied to the Department of Justice, or violated a legal duty to disclose certain facts, the government inserted allegations into its speaking indictment, and now seeks permission to submit evidence at trial (over thirty-five exhibits on its preliminary exhibit list disclosed earlier this week) about the Ukrainian budgeting process by which the Ministry of Justice procured additional funds, after Mr. Pinchuk declined to provide Skadden with an additional retainer (the "Ukraine Procurement Evidence").

The government does not allege, nor could it, that Mr. Craig or Skadden violated any law in providing documentation that the Ministry's representatives stated was necessary to comply with Ukrainian procurement laws. Yet it suggests that the drawn-out saga surrounding that procurement process is "highly probative" of Mr. Craig's "motive and intent" in making "statements to the FARA Unit in 2013," going so far as to call the procurement evidence "central to the government's burden." Gov't Opp. To Def.'s Mot. *In Limine* To Exclude Evidence Related To Payments to Skadden, ECF No. 57 (July 11, 2019) ("Opp.") 1, 2. The proffered

evidence has nothing to do with the government's burden. The government's arguments to admit the Ukraine Procurement Evidence fail because it cannot avoid its obligations under Rules 401, 403 and 404 by simply including allegations in the indictment; the evidence has no probative value; and at minimum, any probative value is substantially outweighed by dangers of confusion, undue prejudice, and wasteful delay.

## ARGUMENT

### I.      The government cannot avoid Rules 401, 403 and 404.

The government first offers two arguments in an effort to side-step the question whether the Ukraine Procurement Evidence is admissible under Rules 401, 403 and 404. The relevancy rules cannot be set aside in the way the government suggests.

**First**, the government contends that because Mr. Craig did not move to strike paragraphs 26-27 from the indictment as surplusage, the evidence is admissible as "intrinsic" evidence. Opp. 7. But the mere presence of an allegation in the Indictment does not determine whether related evidence is admissible under Rules 401-404. *Compare, e.g.*, *United States v. Watt*, 911 F. Supp. 538, 554 (D.D.C. 1995) (requiring that surplusage in an indictment be stricken only if it is "inflammatory and prejudicial"), *with* Fed. R. Evid. 403 (providing the evidence should be excluded whenever "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence").

**Second**, the government suggests that if evidence is "intrinsic to the charges" in the indictment, the court "should admit the evidence" – without even addressing the question whether its probative value is substantially outweighed by competing concerns under Rule 403. But even setting aside the "speaking" nature of the indictment here, *see* Tr. Mot. Hrg. (July 10,

2019) at 5:67, there is no exception rendering Rule 403 inapplicable to matters that are referenced in an indictment, and the government's cited cases are not to the contrary. Indeed, in *United States v. Bowie*, 232 F.3d 923 (D.C. Cir. 2000), the court essentially rejected the distinction, urged by the government in that case, that allegedly "intrinsic" or "inextricably intertwined" evidence is not subject to the strictures of Rule 404(b). The *Bowie* court explained that posing the question of admissibility as whether evidence of other acts is "inextricably intertwined" with charged conduct "not only bypasses Rule 404(b) and its attendant notice requirement, but also carries the implicit finding that the evidence is admissible for all purposes notwithstanding its bearing on character." *Id.* at 928.

The government cites *United States v. Khanu*, quoting that opinion as saying that evidence "closely related to the charged conduct and its goals" is admissible. 664 F. Supp. 2d 80, 83 (D.D.C. 2009). *See* Opp. 8. But the *Khanu* court never said that. What it actually said is that "where the crime charged is conspiracy, evidence closely related to the conspiracy alleged in the indictment is admissible as intrinsic evidence." 664 F. Supp. 2d at 83. And what the court held was that the evidence at issue was *not* "intrinsic." *Id.* at 84-85. *Khanu* was a tax evasion conspiracy case against a nightclub owner, and the government sought to avoid the limitations of Rule 404(b) by arguing that evidence that he paid contractors and employees in cash, and failed to pay D.C. taxes, was "intrinsic" to the charged offenses. The government suggested that the fact that the defendant "had a large source of cash at his disposal" was "integral to its theory of the case," and that his failure to pay D.C. taxes "is relevant to prove his intent to willfully file false tax returns." *Id.* Even though the evidence was closely related to the charged tax evasion, which was alleged to have been accomplished through cash transfers, the court held the evidence was "not intrinsic to the crime charged," and reserved ruling on the admissibility of the evidence

under Rule 404(b) until trial. *Id.* at 84. Unlike *Khanu,* this is not a conspiracy case. Moreover, the procurement evidence, as discussed below, has nothing to do with the charges that Mr. Craig lied to or willfully omitted material information from the FARA Unit. As in *Khanu*, if the government wishes to use the Ukraine Procurement Evidence at trial, it must show that the evidence has probative value for a relevant, non-character or propensity purpose, and that its probative value is not substantially outweighed by dangers of confusion, delay and waste of time.

## II.     The MOJ Procurement Evidence Has No Probative Value To The Charges; At Minimum, Any Probative Value Is Outweighed By Confusion, Delay, and Waste of Time.

In 2012-13, Ukraine had been independent of the Soviet Union for only two decades, and as a former Soviet republic, it had procedures for procuring funding for government agencies' activities that were convoluted and obscure from the perspective of a U.S. law firm seeking to be paid for its work. The government offers three theories for why the Ukraine Procurement Evidence is "highly probative" of Mr. Craig's "motive and intent" in making "statements to the FARA Unit in 2013." Opp. 7-11. None withstands scrutiny. And even if the evidence has some minimal probative value, it is substantially outweighed by dangers of confusion, delay, and waste of time.

**First**, the government argues that the Ukraine Procurement Evidence shows that Mr. Craig "creat[ed] a false invoice," which, the government suggests, is probative of Mr. Craig's "willingness to act in a way that would enhance the value of the Report." Opp. 9. *Mr. Craig did not create any "false invoice,"* and the government's suggestion that he did proves exactly why the jury should not be burdened with a trial-within-the-trial over the government's allegations about Ukrainian procurement practices. This is particularly so because the government concedes

that it "has not alleged or suggested . . . that Defendant's coordination with Manafort resulted in a violation of Ukrainian public tender laws." Opp. 11.

As discussed in Mr. Craig's motion *in limine*, after it became clear to Mr. Craig and Mr. Sloan in late July 2012 that the Pinchuk retainer would be exhausted before the Tymoshenko Report was completed, and after Mr. Pinchuk declined to advance an additional retainer, Mr. Manafort laid out in a series of detailed emails what the Ministry of Justice would need from Skadden to allocate funds in compliance with Ukrainian law. *See* Def.'s Mot. *In Limine* To Exclude Evidence Related To Payments To Skadden, ECF No. 47 (June 24, 2019) ("Mot."), 3-4. One of those required documents was a letter memorializing that the firm had underestimated the project's cost at the outset, and that there would be a shortfall. *See* ECF No. 47-6; ECF No. 57-17.[1] Mr. Craig's letter used the term "invoice," but the letter he prepared to comply with Mr. Manafort's instructions was obviously not an "invoice" in any literal sense – it was simply a letter stating that there would be a shortfall, which if conceived of as spread out over the course of the project was estimated at that time to be approximately $250,000 per month. *See* ECF No. 57-17.

That is why the government's concession that there was no "violation of Ukrainian public tender laws" defeats its Rule 403 argument. Its concession that there was no violation of Ukrainian law must necessarily include a concession that there was no "false invoice." If Mr. Craig is accused at trial of participating in some kind of fraud on the government of Ukraine – the obvious subtext of the allegation that he created a "false invoice" – he must be permitted to

---

[1] The evidence the government points to that in August 2012 Skadden had not yet run out of money is beside the point. By late July it had become clear to Mr. Craig that the Pinchuk retainer would be exhausted before the report was completed.

defend against any such implication. He should not be required to do so when the government is

not suggesting that there was a violation of any law.[2]

Moreover, this is not a matter of putting "a handful of additional emails" into evidence as

the government dismissively suggests, Opp. 10. As noted above, the government has designated

at least thirty-five exhibits related to the process for procuring Ukrainian government funds. And

defending against this issue will require the introduction of additional voluminous documentary

and testimonial evidence. Mr. Craig has conditionally designated several dozen additional

exhibits in the event the government's Ukraine Procurement Evidence is ruled admissible. That

is because explaining to the jury why there was nothing untoward about the documentation

generated in connection with the Ministry's procurement process would require walking the jury

through the extensive back-and-forth among Mr. Craig, Cliff Sloan, and Mr. Van Der Zwaan, on

behalf of Skadden, and Mr. Manafort, A.Y. Sedov, Vladyslav Gurtenko, and Serhiy Lyovochkin,

on behalf of Ukraine. Each time Ukrainian officials came back to Skadden with additional

requests for documentation, Mr. Craig and Mr. Van Der Zwaan took pains to understand the

requests, and to ensure that the supplemental contracts and related materials accurately reflected

the scope of Skadden's work and the terms of the engagement. *See, e.g.*, Ex. 1 (February 4, 2013

letter from Mr. Craig to A.Y. Sedov noting, "You have asked for this information in connection

with the Ministry's desire to reach a new and additional agreement with the Firm – consistent

with Ukraine's procurement requirements – that will cover the increase in the cost of services

and expenses associated with the Firms' work as special counsel to the Ministry on the rule of

---

[2] The government also ignores the inherent unfairness arising from the fact that Alexander Van Der Zwaan, the person who actually managed the procurement process for Skadden, including traveling to Kyiv to meet with government officials, resides outside the United States and cannot return given his status as a convicted felon. Mr. Van Der Zwaan had most of the contact with Skadden's Ukrainian client representatives concerning the details of the second contract and the accompanying procurement process. He will not be a witness at trial.

law."); Ex. 2 (February 28, 2013 email from Mr. Craig to Vladyslav Gurtenko noting "We want

to make it clear to everyone that the work that we did on the report was completed in 2012, and

that this contract is for payment for that report in 2013."); Ex. 3 (March 25, 2013 email from Mr.

Craig to Mr. Manafort noting, "You should know – and Ukraine should also know – that we are

taking pains NOT to double charge for time and expenses that others have already paid for.

Accordingly, I anticipate that, once Ukraine pays our invoice, we will be making reimbursement

to those who contributed to our fees and expenses in the past.").

**Second**, the government argues that the Ukraine Procurement Evidence "provides an

example of [Mr. Craig] agreeing to a request from Manafort to carry out Ukraine's request."

Opp. 9. Mr. Craig certainly did rely on representations from Mr. Manafort about what the

Ministry of Justice required to comply with Ukrainian law. *See, e.g.*, ECF No. 47-8 at 2 (August

15, 2012 email memorandum from Mr. Manafort regarding Ukraine's "Law On State

Purchases"). But that proves nothing, because it was Mr. Manafort's office that had the direct

contacts with the Ukrainian government personnel who understood what Ukrainian law required

and who were responsible for making the formal budgetary requests. Even the language the

government uses betrays the lack of probative value for this evidence: the entire scenario reflects

requests *by* Mr. Craig to Mr. Manafort to help Skadden obtain additional funding, not the other

way around. It was Skadden that was running out of money, and it was Mr. Craig, along with

Mr. Van Der Zwaan, who requested that Mr. Manafort determine what documentation the

Ministry required for its budgetary purposes.

It is telling that the government relies in its Opposition on exactly the same logic that it

used in its failed effort to seek admission of evidence related to Skadden's hiring of Mr.

Manafort's "relative." For both, the government points to actions by Mr. Craig that it concedes

were not improper or illegal, and yet it suggests that those actions show that Mr. Craig had a

"motive and intent" to deceive the FARA Unit. And for both categories of "other acts" evidence,

the mere fact that Mr. Manafort was a representative of a client proves the point. The Ukraine

Procurement Evidence is no more probative of a relevant motive by Mr. Craig than the hiring

evidence. To the extent the Ukraine Procurement Evidence relates to "a request from Manafort,"

it has no probative value.

**Third**, the government argues that the Ukraine Procurement Evidence tends to prove that

Mr. Craig's "motive" for allegedly lying to the FARA Unit, or violating a legal duty to disclose

certain facts, was to avoid disclosure of the amount of its fees and the identity of the third-party

payor. The government's theory is that Mr. Craig so fervently wanted to conceal Mr. Pinchuk's

identity and the total cost of the project that he was willing to lie to the federal government to do

so. *See* Opp. 1 (contending that "the challenged evidence shows Defendant's coordination with

Manafort and Ukraine to hide from the public the true facts as to who was really funding the

Report and how much was being paid"). But the Rules of Professional Conduct *required*

Skadden to maintain the confidentiality of client fee matters unless the client expressly

authorized such disclosure or disclosure were *required by law*. *See* D.C. R. Prof'l Conduct

1.6(e). And the evidence is overwhelming that in order to defend the integrity and credibility of

Skadden and the team against allegations in a Kyiv publication of "conflicts of interest, or worse

things" (*see* ECF No. 57-7), Mr. Craig and his colleagues *wanted* to disclose the information –

and they tried to obtain authorization from the Ministry and Mr. Pinchuk to do so, without

success.

The government does not even suggest that Mr. Craig could have disclosed the

information without such client authority. Mr. Craig, in consultation with his partner Cliff Sloan,

tried to persuade the Ministry to authorize disclosure, and Mr. Craig also went directly to Mr.

Pinchuk's representative, Doug Schoen, in an effort to obtain Mr. Pinchuk's cooperation in

urging the Ministry to authorize Skadden to disclose his name. *See, e.g.*, ECF 57-7 (email from

Mr. Craig to Mr. Sloan, explaining that he had "already told Manafort" that the Ministry needed

to authorize disclosure of Pinchuk's identity, "whether voluntarily or non voluntarily").

To be sure, Yulia Tymoshenko and her lawyers may have wanted to know who was

funding Skadden's report in order to advance their political and public relations agenda. *See,

e.g.*, ECF 57-2 at 2 (May 26, 2012 email from Ms. Tymoshenko's lawyer, Sergiy Vlasenko). Ms.

Tymoshenko's lawyer at one point threatened to withhold further "cooperation" with the

Skadden team if Skadden did not disclose who was funding the project. ECF No. 57-5 (June 22,

2012 email from Mr. Vlasenko). But that has nothing to do with FARA, or the FARA Unit's

inquiry. Skadden expressly disclosed to the FARA Unit that a portion of its fees had been paid

by a third party, and Mr. Craig explained that if the FARA Unit were to ultimately determine that

registration was required, that third party payor's identity and the amount of the payments would

be disclosed in its registration statement. *See* ECF No. 20-6 at 2-3 (June 3, 2013 letter to the

FARA Unit: "We do not believe that we engaged in conduct requiring us to register under FARA

and, respectfully, we therefore do not believe that you are entitled to such information. If you

conclude that we are required to register, or if, for some reason, you believe that such

information is material to your inquiry, please let us know so that we may consider and

understand your request in the context of your analysis of this issue."). Skadden disclosed in the

report itself, as well as to the FARA Unit, that it had been engaged by the government of

Ukraine. And Skadden further disclosed, in its February 6, 2013 response to the FARA Unit's

first letter, that Skadden was having "discussions with the Government of Ukraine about the

possibility of Skadden receiving additional compensation from the Government for the Firm's work." ECF No. 20-04 at 4. There is no reason for the trial to detour into side issues about Mr. Craig's obligations of confidentiality with respect to Mr. Pinchuk's identity or the convoluted nature of the Ukrainian procurement process that resulted in additional payments being made to Skadden for completion of its report.

## **CONCLUSION**

For these reasons and those previously stated, the Court should exclude the Ukraine Procurement Evidence, whether in the government's case in chief or otherwise.

Dated: July 18, 2019                                        Respectfully submitted,


                                                           */s/ William W. Taylor, III*
                                                           William W. Taylor, III (D.C. Bar No. 84194)
                                                           Paula M. Junghans (D.C. Bar No. 474419)
                                                           Ezra B. Marcus (D.C. Bar No. 252685)
                                                           ZUCKERMAN SPAEDER LLP
                                                           1800 M Street N.W. Suite 1000
                                                           Washington, D.C. 20036
                                                           Tel: (202) 778-1800
                                                           Fax: (202) 822-8106
                                                           Email: wtaylor@zuckerman.com
                                                           Email: pjunghans@zuckerman.com
                                                           Email: emarcus@zuckerman.com

                                                           William J. Murphy (D.C. Bar No. 350371)
                                                           Adam B. Abelson (D.C. Bar No. 1011291)
                                                           ZUCKERMAN SPAEDER LLP
                                                           100 East Pratt Street, Suite 2440
                                                           Baltimore, MD 21202
                                                           Tel: (410) 332-0444
                                                           Fax: (410) 659-0436
                                                           Email: wmurphy@zuckerman.com
                                                           Email: aabelson@zuckerman.com

                                                           *Attorneys for Defendant Gregory B. Craig*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 18, 2019, the foregoing was served on counsel of record via the Court's CM/ECF service.

/s/ *Adam B. Abelson*

Adam B. Abelson

# Exhibit 1

**From:** Craig, Gregory B (WAS)
**Sent:** Wednesday, February 06, 2013 3:17 PM
**To:** 'gurtenko@minjust.gov.ua'
**Subject:** Response to Ministry of Justice Inquiry
**Attachments:** Scanned-c.PDF

**Retention:**   Sent Item

Mr. Vladyslav Gurtenko
Assistant to the Minister
Ministry of Justice of Ukraine

Dear Vladyslav:

Following up on our conversation yesterday, here are the materials that the Ministry has requested.

Gregory Craig

Gregory B. Craig
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W. | Washington | D.C. | 20005-2111
T: 202.371.7400 | F: 202.661.9100
gregory.craig@skadden.com

USA-REL-0000058

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

1440 NEW YORK AVENUE, N.W.

WASHINGTON, D.C. 20005-2111

TEL: (202) 371-7000
FAX: (202) 393-5760
www.skadden.com

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

February 4, 2013

The Honorable A.Y. Sedov
Deputy Minister – Head of Personnel
Ministry of Justice of Ukraine
13 Horodetskogo Street
Kiev 01001, Ukraine

Dear Deputy Minister Sedov:

In your letter of 20 December 2012, you asked me, on behalf of Skadden, Arps, Slate, Meagher & Flom ("the Firm"), to provide the Ministry of Justice of Ukraine with certain information about the Firm's capacities, qualifications, record of performance in the past and financial standing.

You have asked for this information in connection with the Ministry's desire to reach a new and additional agreement with the Firm – consistent with Ukraine's procurement requirements – that will cover the increase in the cost of services and expenses associated with the Firm's work as special counsel to the Ministry on the rule of law.

You have asked for information about the following topics:

(1) Whether the lawyers working on this project are qualified and have adequate knowledge and experience;

(2) Whether the Firm has performed similar services for and signed similar agreements with other clients; and

(3) Whether the Firm is in good financial standing.

I am attaching materials to this letter that should address and answer each of these concerns.

As I understand it, the Ministry is not proposing any change in the Firm's assignment. To be even more specific, the Ministry understands and accepts that the Firm will not be required to – and will not – engage in any activities covered by the United States Foreign Agent Registration Act (FARA).

USA-REL-0000059

The Honorable A.Y. Sedov
February 4, 2013
Page Two

Thank you for the opportunity to be of service to the Ministry of Justice of Ukraine.

Very truly yours,

Gregory B. Craig

2

USA-REL-0000060

Attachment 1

Record of capacities and qualifications of Skadden
lawyers working on assignment for the Ministry of
Justice of Ukraine.

FOIA CONFIDENTIAL TREATMENT REQUESTED

S0035

USA-REL-0000061

# Biography



## Gregory B. Craig

*Partner*
*Skadden, Arps, Slate, Meagher & Flom LLP*
*Litigation*

A trial lawyer with extensive experience in a wide variety of cases, Greg Craig has successfully defended individuals and entities in a number of high-profile criminal and civil proceedings.

***Civil Litigation:*** Examples of Mr. Craig's civil litigation experience include the following:

In 2000, Mr. Craig successfully represented Elian Gonzalez's father, Juan Miguel Gonzalez, in administrative and court proceedings involving Mr. Gonzalez's effort to regain custody of his son. Also in 2000, Mr. Craig helped lead the trial team representing Warnaco in contract/license litigation with Calvin Klein and his company. In 1999, Mr. Craig represented a major corporation in a trial in which a senior executive brought suit against the company alleging age discrimination. Mr. Craig represented former U.N. Secretary General Kofi Annan in connection with the Volcker Commission's investigation of the Oil-for-Food Programme at the U.N.

During the last 15 years, Mr. Craig has represented a variety of foreign individuals and entities that have required advice and assistance with various U.S. government agencies, including the Consular Bureau in the State Department, the Immigration and Naturalization Service, the Office of Foreign Asset Control in the Treasury Department and the Securities and Exchange Commission. For example, Mr. Craig represented two Chicago policemen in extradition proceedings in federal court in Chicago and brought a declaratory judgment action on their behalf in federal court in Washington, D.C., which resulted in a federal judge finding the U.S. extradition statute of 1848 unconstitutional.

From 1978 to 1979, Mr. Craig represented Alexander Solzhenitsyn in a libel case in federal court in San Francisco and advised him on other matters up through 1983. In 1977, he brought suit on behalf of one of the first (and lead) plaintiffs in the swine flu litigation that was subsequently consolidated by the Judicial Panel on Multidistrict Litigation. From 1973 to 1975, working with Edward Bennett Williams, Mr. Craig represented the clubs of the National Hockey League in antitrust litigation involving the World Hockey Association. From 1972 to 1974, working with Joseph A. Califano, Jr., Mr. Craig represented the Washington Post Company and various reporters in connection with the Watergate scandal and the grand jury investigation of Vice President Spiro Agnew.

(continued)

---

Washington, D.C. Office

T: 202.371.7400
F: 202.661.9100

E: gregory.craig@skadden.com

### *Education*

J.D., Yale Law School, 1972

Diploma in Historical Studies, Cambridge University, 1968

The Lionel DeJersey Harvard Fellowship ("The John Harvard Fellow"), 1968

A.B., Harvard College, 1967 (*magna cum laude*; Phi Beta Kappa)

### *Bar Admissions*

District of Columbia

U.S. Supreme Court

U.S. Courts of Appeals for the District of Columbia, Second, Third, Fourth, Sixth, Seventh and Eleventh Circuits

U.S. District Courts for the District of Columbia, Central and Northern Districts of California, District of Connecticut, Southern District of New York, District of Maryland, Eastern District of Virginia, Central and Eastern Districts of Michigan, Southern District of Florida, and Central District of Alabama

### *Associations*

Member, Board of Trustees, German Marshall Fund of the United States

**WWW.SKADDEN.COM**

# Biography

## Gregory B. Craig

*Criminal Litigation:*  Examples of Mr. Craig's criminal litigation experience include the following:

Mr. Craig has been an active participant in the American criminal justice system for more than 35 years.  His career as a criminal defense lawyer began in 1974 when he became the assistant federal public defender for the District of Connecticut.  He served in that capacity until September of 1976.  Since then, Mr. Craig has represented numerous American corporations and corporate executives who have been the subjects of grand jury investigations and/or who also have  been charged with criminal offenses.

In 1975, he represented an individual charged with arson in a six-week trial in federal court in Connecticut.  In 1977, working with Edward Bennett Williams, Mr. Craig represented Mr. Richard Helms, a former director of Central Intelligence, who was under grand jury investigation for perjury.  That same year, he represented the first FBI agent ever to be indicted, who was accused of illegal wiretapping, breaking and entering, and mail opening in connection with the FBI investigation of the Weather Underground.  In 1978 to 1980, also with Edward Bennett Williams, Mr. Craig represented a prominent local businessman charged with bribing a D.C. government official.  In 1981 to 1982, working with Vince Fuller, Mr. Craig represented John Hinckley, who was charged with the attempted assassination of President Reagan.  In 1983 to 1984, working with Edward Bennett Williams, Mr. Craig represented a prominent businessman who was charged with tax evasion in federal court in Miami. In 1990, Mr. Craig represented Senator Edward M. Kennedy in connection with the trial of his nephew, William Kennedy Smith, in Palm Beach, Florida.

*Other Experience*:

For five years (1984-1988), he served as Senator Edward M. Kennedy's senior adviser on defense, foreign policy and national security issues.

In 1997, Secretary of State Madeleine Albright appointed Mr. Craig to be one of her senior advisers, and he served the Secretary as her Director of Policy Planning during the years 1997 to 1998.

In September 1998, President Clinton appointed Mr. Craig to be Assistant to the President and Special Counsel in the White House, where Mr. Craig led the team that was assembled to defend against impeachment.  Mr. Craig also was a member of President Clinton's trial team in the United States Senate and presented the defense with respect to Count One during that trial.

From January 2009 to January 2010, Mr. Craig served as President Obama's White House Counsel.

Mr. Craig also has taught trial practice at both Yale Law School (1975-1976) and Harvard Law School (1981-1984).

In addition, Mr. Craig has served on the boards of many non-governmental organizations and foundations, including The Carnegie Endowment for International Peace (vice chair); the International Human Rights Law Group (chair); the Robert F. Kennedy Memorial; and the American Security Project.  He repeatedly has been selected for inclusion in *The Best Lawyers in America*.

### Government Service

White House Counsel (2009-2010)

Assistant to the President and Special Counsel, The White House (1998-1999)

Director of Policy Planning, United States State Department (1997-1998)

Senior Adviser on Defense, Foreign Policy and National Security, Senator Edward Kennedy (1984-1988)

WWW.SKADDEN.COM

S0037

USA-REL-0000063



# Biography

## Cliff Sloan

*Partner*
*Skadden, Arps, Slate, Meagher & Flom LLP*
*Litigation, Intellectual Property, Media and Entertainment*

An experienced litigator, Mr. Sloan has litigated cases at all levels of federal and state courts, including six U.S. Supreme Court arguments, numerous arguments in the U.S. Courts of Appeals, and matters in trial and district courts across the country.

Mr. Sloan's practice focuses on a wide range of litigation and appeals, including cases involving intellectual property, administrative law, commercial disputes, securities law, tax controversies and constitutional issues. He also regularly advises clients on copyright, trademark, new media and First Amendment matters.

His litigation experience includes:

* a U.S. Supreme Court argument in February 2012, in a case about the scope of the Double Jeopardy Clause (*Blueford v. Arkansas*);

* a reversal of a summary judgment order dismissing Rosetta Stone's trademark infringement claims against Google, in a case he argued, in the U.S. Court of Appeals for the Fourth Circuit (*Rosetta Stone v. Google*);

* an *en banc* victory, in a case he argued, in the U.S. Court of Appeals for the First Circuit in an SEC case on the scope of Section 10b-5 liability (*SEC v. Tambone*);

* a victory in a music copyright infringement lawsuit in which he was lead counsel for the Bon Jovi band, as well as more than a dozen media and entertainment defendants, in the U.S. Court of Appeals for the First Circuit and the U.S. District Court for the District of Massachusetts (*Steele v. Turner Broadcasting*);

* a victory in a constitutional challenge to a Hawaii statute targeting an out-of-state company in which he was lead counsel for the company (*HRPT v. Lingle*); and

* a dismissal on sovereign immunity grounds for the Principality of Monaco in the U.S. District Court for the Central District of California (*Eringer v. Principality of Monaco*).

Mr. Sloan has served in high-ranking positions in all three branches of the federal government, including experience as Associate Counsel to the President and Assistant to the Solicitor General. He also has served on the U.S. Court of Appeals for the District of Columbia Circuit's Advisory Committee on Procedures.

(continued)

Washington, D.C. Office

T: 202.371.7040
F: 202.661.8340

E: cliff.sloan@skadden.com

*Education*

J.D., Harvard Law School (*magna cum laude*), 1984

B.A., Harvard College (*magna cum laude*), 1979

*Bar Admissions*

District of Columbia

Illinois

*Government Experience*

Associate Counsel to the President of the United States (1993-1995)

Assistant to the Solicitor General, United States Department of Justice (1989-1991)

Associate Counsel, Office of Independent Counsel, Iran-Contra (1987-1988)

Law Clerk to Justice John Paul Stevens, United States Supreme Court (1985-1986)

Law Clerk to Judge J. Skelly Wright, United States Court of Appeals for the District of Columbia (1984-1985)

Executive Assistant, Congressman Sidney R. Yates (1979-1981)

*Media and Internet Experience*

General Counsel, Washingtonpost.Newsweek Interactive (2000-2008)

Publisher, *Slate Magazine* (2005-2008)

Vice President, Business Development, Washingtonpost.Newsweek Interactive (2002-2005)

FOIA CONFIDENTIAL TREATMENT REQUESTED

# Biography

## Cliff Sloan

Among his other activities, Mr. Sloan has been a leader in Internet litigation. *The National Law Journal* has described him as "an expert on cyberspace," and *The New York Times* singled out his *amicus curiae* brief in a landmark Supreme Court Internet case as "very likely" having a significant impact on the Justices.

From 2000 to 2008, Mr. Sloan served as General Counsel of Washingtonpost.Newsweek Interactive, *The Washington Post Company*'s online subsidiary. He was active in the in-house bar, serving on the board of directors of the Association of Corporate Counsel and on the Advisory Board of *Corporate Pro Bono*. From 2005 to 2008, he also served as Publisher of *Slate Magazine*, which was acquired by The Washington Post Company in 2005. He has taught the law of cyberspace as an adjunct law professor at Georgetown University Law Center, George Washington University Law School and American University's Washington College of Law.

Mr. Sloan was selected for inclusion in *The Best Lawyers in America 2013*. He also has received numerous awards, including being named "Appellate Lawyer of the Week" by *The National Law Journal* in 2012 for his representation in a case before the U.S. Supreme Court; and one of *Min Magazine*'s "21 Most Intriguing People in Publishing" in 2007. He is a member of the Legal Services Corp.'s *Pro Bono* Task Force. Mr. Sloan is the co-author of *The Great Decision*, a book about the historic Supreme Court case *Marbury v. Madison* (Public Affairs, 2009), and comments regularly on Supreme Court developments.

### Selected Publications

"Second Circuit Reverses Troubling Federal District Court Decision Affecting the Rights of Copyright Owners to Combat Online Piracy," *Media Law Resource Center*, April 2012

"Supreme Court's *Mayo Foundation* Opinion Grants Chevron Deference to Treasury Regulations," *The Tax Executive*, Spring 2011

"Goodbye to the 'Rule of Law' Justice," *The Washington Post*, April 10, 2010

"Why Marbury v. Madison Still Matters" *Newsweek*, March 2, 2009

WWW.SKADDEN.COM

# ALLON KEDEM

## EDUCATION

| | | |
|---|---|---|
| 2002-2005 | **Yale Law School**, New Haven, CT | |
| | J.D., June 2005 | |
| | Honors: | Soros Fellowship for New Americans (2004) |
| | Publications: | *Commodification and Contract Formation*, 73 U. CHI. L. REV. 1299 (2006) (with David Gamage) |
| | | Comment, *Can Attorneys and Clients Conspire?*, 114 YALE L.J. 1819 (2005) |
| | Activities: | Articles Editor – *Yale Law Journal* |
| | | Harlan Fiske Stone Prize – Morris Tyler Moot Court of Appeals |

| | | |
|---|---|---|
| 1998-2002 | **Harvard College**, Cambridge, MA | |
| | A.B., *magna cum laude*, Social Studies, June 2002 | |
| | Honors: | Phi Beta Kappa, John Harvard Academic Scholarship |
| | | Greenman Debating Award, Coolidge Debating Prize |
| | Activities: | President – Harvard Speech and Parliamentary Debate Society |

## WORK EXPERIENCE

2011-Present **Skadden, Arps, Slate, Meagher & Flom**, Washington DC
*Associate*

2010-2011 **Hon. Elena Kagan, Associate Justice, U.S. Supreme Court**, Washington, DC
*Law Clerk*
Preparation of memoranda on petitions for certiorari, merits cases, and emergency motions; assistance with drafting of case opinions.

2009-2010 **Hon. Anthony M. Kennedy, Associate Justice, U.S. Supreme Court**, Washington, DC
*Law Clerk*
Prepared memoranda on petitions for certiorari, merits cases, and emergency motions; assisted with drafting of case opinions.

2007-2009 **Office of Legal Counsel, U.S. Department of Justice**, Washington, DC
*Attorney-Adviser*
Researched and drafted opinions on constitutional, statutory, and administrative law issues on behalf of the Attorney General.

2006-2007 **Hon. Pierre N. Leval, U.S. Court of Appeals for the Second Circuit**, New York, NY
*Law Clerk*
Drafted opinions, orders, and memoranda; edited articles and speeches.

2005-2006 **Hon. Mark R. Kravitz, U.S. District Court for the District of Connecticut**, New Haven, CT
*Law Clerk*
Provided legal research; drafted opinions and orders; managed court docket.

# ALEX T. HASKELL
REDACTED

## EDUCATION

**THE GEORGE WASHINGTON UNIVERSITY LAW SCHOOL**          Washington, DC
Juris Doctor; with honors                                May 2011
*Activities:*     Member, *The George Washington Law Review*
                  Member, Alternative Dispute Resolution Skills Board
                  Vice Magister, Phi Delta Phi International Legal Fraternity
                  Vice President, GW Law Democrats

**UNIVERSITY OF PENNSYLVANIA**                           Philadelphia, PA
Bachelor of Arts in International Relations, *cum laude*          May 2008
*Honors:*     Mortar Board Senior Honors Society, Pi Gamma Mu Honors Society in the Social Sciences
*Activities:* Theos Fraternity (Vice President), Kite and Key Society (Tour Guide and Ambassador)
*Thesis:*     "Of Markets and Humans: The Failure of Neo-Liberal Globalization in Latin America."

## EXPERIENCE

**SKADDEN, ARPS, SLATE MEAGHER & FLOM LLP**              Washington, DC
*Associate*                                             October 2011 – present

**SKADDEN, ARPS, SLATE MEAGHER & FLOM LLP**              Washington, DC
*Summer Associate*                                      May 2010 – July 2010

**WASHINGTON NATIONALS BASEBALL CLUB , OFFICE OF CLUB COUNSEL**   Washington, DC
*Legal Intern*                                          May 2009 – April 2010
- Drafted and reviewed sponsorship, employment, leasehold and other agreements entered into by the Club
- Conducted legal research and drafted memoranda regarding issues of compliance with State and Federal laws, along with the mandates and bylaws of Major League Baseball

**SCHNUR ASSOCIATES, INC.**                             New York, NY
*Political and Legislative Consulting Intern*           May 2007 – August 2007
- Researched and analyzed proposed New York City, New York State, and Federal Legislation to determine the affects of the potential laws on our client's constituents
- Produced memoranda and led presentations on legislative and campaign strategies for elected officials

**FOX SPORTS TELEVISION LATIN AMERICA – TORNEOS Y COMPETENCIAS**   Buenos Aires, Argentina
*Sports Television Intern and Translator*               2007 – December 2007
- Served as lead translator of programming, converting English programs into Spanish and vice versa

**PANISH, SHEA AND BOYLE LLP**                          Los Angeles, CA
*Legal Intern*                                          Summer 2005
- Researched case law, analyzed statutes, and drafted internal memoranda regarding issues related to personal injury and product liability law suits
- Analyzed depositions, reviewed documents, and catalogued exhibits in preparation for civil litigation cases

## BAR ADMISSION
- California State Bar (2011)

## LANGUAGE SKILLS & INTERESTS
- Spanish (fluent)
- Organized Voter Protection and canvassing efforts for several national and state political campaigns
- Traveled extensively and participated in community service efforts throughout Europe and Latin America

USA-REL-0000067

## Attachment 2

Confirmation of past performance and financial
standing of Skadden.

2

FOIA CONFIDENTIAL TREATMENT REQUESTED

S0042

USA-REL-0000068



# Overview

### The Skadden, Arps Philosophy

Skadden, Arps, Slate, Meagher & Flom LLP and affiliates ("Skadden, Arps" or
"Skadden") was founded in 1948 by Marshall H. Skadden, Leslie H. Arps and
John H. Slate. These three attorneys, quite different in personality and tempera-
ment, shared a vision of the firm that continues and thrives today — a commitment
to professionalism and excellence in an atmosphere emphasizing teamwork, flexi-
bility and responsiveness. Our primary goal is to provide high-quality and cost-effec-
tive legal service through careful attention to client relationships, practice diversity,
global resources and investment in people and technology. Client needs always come
first at Skadden. We work hard to instill this attitude in all of our attorneys and staff,
recognizing that capable and dedicated people are the firm's most valuable asset

USA-REL-0000069



Skadden, Arps, Slate, Meagher & Flom LLP
& Affiliates

Four Times Square
New York, New York 10036-6522
Tel 212.735.3000
Fax 212.735.2000

www.skadden.com

USA-REL-0000070



Corporate ......................... 2
Mergers and Acquisitions
Private Equity
Corporate Governance
Compliance and Ethics Programs

Litigation ......................... 3
Securities Litigation
Antitrust
Banking
Commercial Contracts
International Litigation
International Arbitration
Appellate Litigation
Complex Mass Torts and Insurance Litigation
Products Liability
Government Enforcement and
White Collar Litigation
Intellectual Property and Technology
Alternative Dispute Resolution
Consumer Financial Services
Enforcement and Litigation

Corporate Restructuring .... 5

Privatizations ................... 6

Finance ........................... 7
Corporate Finance
Structured Finance
Project Finance
Banking
Derivative Financial Products,
Commodities and Futures
Lease Financing
Investment Management
Private Investment Funds

International ..................... 9
Europe
Asia
Australia and New Zealand
Canada
Latin America
Israel

Regulatory/Legislative ....... 11
Financial Institutions Regulation and Enforcement
Tax
Financial Institutions
International Trade
International Banking
Political Law
Legislative

Industry-Related Practices .. 13
Communications
Energy
Environmental
Gaming
Health Care
Information Technology and E-Commerce
Insurance
Life Sciences
Real Estate
Sports
Utilities

Employment Issues and
Advice to Individuals ......... 15
Executive Compensation and Benefits
Labor and Employment Law
Trusts and Estates

*Pro Bono* Matters and
Fellowship Program ........... 16

USA-REL-0000071

# Skadden — A Diversified Practice

**Our U.S. and International Clientele**

Serving clients in every major international financial center, Skadden, Arps is one of the world's leading law firms, with 23 offices and approximately 1,800 attorneys. Our diversified practice enables us to offer solutions to the most challenging legal issues in virtually every area of corporate law, providing the specific legal advice clients need to compete most effectively in a global business environment. Skadden represents a broad spectrum of clients including approximately 50 percent of the *Fortune* 250 industrial and service corporations, as well as financial and governmental entities; small, entrepreneurial companies; and cultural, educational and charitable institutions. For more than 60 years, the firm has advised such entities in many of the most significant corporate and litigation matters worldwide.

**Productivity and Efficiency**

The firm is committed to delivering services to clients in the most timely and cost-efficient manner. Skadden's technology infrastructure facilitates the effective use and sharing of information. Connected via our firmwide network, attorneys in all of our offices, both U.S. and international, are able to quickly access documents and exchange information. The firm continuously implements technological advancements that enhance our ability to serve clients without sacrificing confidentiality and security of information. Other ways we help clients to contain legal costs include:

>       utilizing litigation support personnel and state-of-the-art technology
        to increase efficiency in handling and organizing litigation documents;

>       encouraging clients to employ various forms of alternative dispute resolution,
        when appropriate, to resolve matters and avoid potentially costly litigation; and

>       using nonlawyer professionals, such as economists and trade
        and energy specialists, when appropriate.

USA-REL-0000072

For 12 consecutive years, Skadden has been named the top corporate law firm in the United States in *Corporate Board Member* magazine's annual survey of "America's Best Corporate Law Firms" (May 10, 2012), which asked directors of publicly traded companies to identify the firms considered the best. Skadden also ranked first in a separate survey conducted by the magazine that asked general counsel which law firms they would most want to represent their companies on national matters. Skadden's reputation was originally built on our mergers and acquisitions work, yet today, with more than 40 distinct areas of practice, our attorneys provide a broad range of legal services across a spectrum of industries.

Mergers and Acquisitions  The foundation of the firm's growth and prestige resulted from its involvement in groundbreaking and extremely large merger and acquisition (M&A) transactions. In the 2012, for the third consecutive year, Skadden has been named one of the two most innovative law firms in the *Financial Times*' "US Innovative Lawyers" We also were awarded "M&A Team of the Year" in 2012 at both the IFLR Americas Awards and IFLR Europe Awards. The firm's M&A practice also encompasses many mid-market and smaller transactions, including those for middle-market and emerging technology companies. Our attorneys represent both U.S. and non-U.S. clients in negotiated transactions, including mergers, stock or asset purchases, leveraged buy-outs and post-buyout transactions, as well as contested matters such as tender offers, proxy fights and other transactions involving changes in corporate control. We handle recapitalizations and restructurings, including spin-offs, divestitures and other techniques for maximizing value. Skadden's attorneys also assist clients in acquisitions involving financially troubled companies. In addition, our attorneys handle M&A transactions involving a broad range of industries, including insurance, utilities, health care, technology and communications.

Skadden ranked first in M&A by dollar value of deals globally according to 2012 year-end rankings from Bloomberg, merger-market and Thomson Reuters; first in announced cross-border deals by value according to Bloomberg; and first in emerging markets and BRIC M&A categories by Thomson Reuters.

Private Equity  We represent private equity and merchant banking firms in connection with all aspects of their business, including structuring and organizing fund sponsors and their investment funds; executing acquisition, financing and exit transactions; and providing transactional and general corporate advice to portfolio companies. We serve these clients in all of our major offices in the United States, Europe and Asia, providing the same comprehensive range of services as we do in general representations of large public companies, but with a focus on the special issues aris-ing in the private equity business. Skadden was among *Law360*'s Private Equity Groups of 2011.

Corporate Governance  Skadden attorneys counsel clients on a full range of corporate governance and compliance matters under the Sarbanes-Oxley Act of 2002 and other applicable state and federal laws, as well as the regulatory requirements of the SEC, the New York Stock Exchange, the Nasdaq Stock Market and the American Stock Exchange. These matters include advising clients with respect to board of directors and committee composition, practices and procedures; development of board committee charters, governance guidelines, codes of conduct and other corporate programs and policies; directors' duties and responsibilities; and CEO/CFO certifica-tions. The firm ranked first in dealing with board-level M&A issues and among the top three firms in dealing with both corporate governance and director liability issues by *Directors & Boards*' (2011) survey of board members and senior management at leading businesses.

Compliance and Ethics Programs  We advise clients on the development and implementation of compliance and ethics programs — including management structures and control systems — to prevent and detect violations of law, regulations and company policies. We review and revise compli-ance and ethics policies, programs and procedures; draft codes of business conduct and ethics and related policies; and structure compliance reporting, investigating, auditing and monitoring procedures and training programs. We also provide guidance to clients on board and management oversight of compliance and ethics programs.

The depth and scope of Skadden's corporate practice stem from the diverse experience of our attorneys. The firm's capabilities in a wide range of corporate practices have been recognized over the years in numerous surveys of the legal profession.

Corporate

*2*

With approximately 500 litigation attorneys located throughout the firm's offices world-wide, Skadden represents clients in both trial and appellate courts at the federal and state level, before administrative tribunals, and in arbitrations and other dispute resolution proceedings.

**Securities Litigation**  The firm represents corporations and their officers and directors, as well as outside professionals, including accountants and attorneys, who have been sued in class action and derivative lawsuits. This includes defending clients against claims that a corporation has made false and misleading statements in violation of federal securities and/or state fraud laws. We frequently represent corporations, directors and officers in suits alleging violations of Section 10(b) of the U.S. Securities Exchange Act of 1934 (1934 Act). We counsel clients in "insider trading" cases under Sections 10(b) and 14(e) and in "short swing" profits cases under Section 16 of the 1934 Act. We also advise underwriters and issuers in litigation under the U.S. Securities Act of 1933. We are active in the legislative arena of securities litigation reform and offer our clients seminars on the latest developments. In addition, we appear regularly before the SEC, various securities exchanges and state securities commissions in connection with formal investigations, administrative proceedings and informal inquiries.

**Antitrust**  Skadden's U.S. and international antitrust practice encompasses many significant competition issues for businesses. The firm's antitrust attorneys handle civil and criminal cases in federal and state courts nationwide, as well as counsel clients and litigate matters relating to mergers, acquisitions and joint ventures. Our attorneys appear regularly before the U.S. Department of Justice, the Federal Trade Commission (FTC) and state attorneys general in connection with proposed business combinations. We also have experience in all forms of antitrust litigation in federal courts and before the FTC. In the European Union, our attorneys appear regularly before the EU Commission and foreign regulatory authorities.

**Banking**  The firm advises financial institutions in many different types of litigation, including challenges to regulatory actions, the validity of regulations, and litigation stemming from shareholder disputes and other internal corporate conflicts.

**Commercial Contracts**  Our attorneys represent corporate clients and individuals in a variety of commercial disputes, including contract litigation, shareholder disputes and a wide range of other corporate-related litigation and business disputes.

**International Litigation**  The firm handles commercial litigations, arbitrations and trade cases on behalf of and against U.S. and non-U.S. entities. Our international experience and numerous multilingual attorneys enable us to effectively represent non-U.S. plaintiffs and defendants in U.S. judicial proceedings. In the area of government enforcement litigation, the firm has represented defendants in cases of alleged fraud with international ramifications and matters with alleged international tax violations. The firm has also established a significant practice counseling domestic and foreign clients with respect to the U.S. Foreign Corrupt Practices Act.

**International Arbitration**  Our international arbitration practice offers clients a wide range of mechanisms to resolve disputes by consensual rules outside the courts, including arbitration, mediation, conciliation and mini-trials. Skadden has represented U.S. and non-U.S. clients in arbitrations under all major rules systems and before every major international arbitral institution, including, among others, the International Chamber of Commerce (ICC), the London Court of International Arbitration (LCIA), the International Centre for Settlement of Investment Disputes (ICSID), the Stockholm Chamber of Commerce (SCC), and the Rules of the United Nations Commission on International Trade Law (UNCITRAL). We have represented companies in various industries including, but not limited to, construction, manufacturing, metals and mining, oil and gas, and power and energy. Skadden attorneys also serve as arbitrators on international arbitration tribunals. Additionally, we advise clients with respect to the enforcement of foreign arbitral awards in the United States and on strategies for challenging such foreign awards.

**Appellate Litigation**  Skadden has handled many of the most important and precedent-setting business cases in the appellate courts. Our attorneys have argued significant cases before the United States Supreme Court, all 13 United States Courts of Appeal, and the state courts of last resort. The subject matter of these appeals is as diverse as the range of issues affecting business. Skadden's appellate lawyers study legal trends in federal and state appeals courts, as well as the inclinations of individual jurists, to enable us to advocate on behalf of our clients with respect to the appellate courts' evolving jurisprudence as a whole, and across a range of substantive law areas.

3



Litigation

Mass Torts and Insurance Litigation   Skadden, Arps has one of the premier complex litigation practices in the country and has been involved in most of the significant complex tort litigations in the past 20 years. We pioneered the "national counsel" model of handling mass tort litigation and have strong relationships with local defense lawyers in every state. The Group comprises experienced litigators who have defended cases on every level — from formulating and implementing national strategy in multijurisdictional litigation (MDL) to conducting Daubert hearings and trials, as well as pursuing significant appeals. We have been lead defense counsel in a number of MDL proceedings, developed experts and conducted expert discovery, mapped strategies to obtain important early victories on substantive motions in key jurisdictions, coordinated discovery in thousands of actions, and prepared for and conducted significant trials. Our attorneys also serve as appellate counsel in landmark cases in numerous state and federal appellate courts and file amicus briefs in appeals that raise significant class action and substantive law issues. The Group has successfully argued and won several U.S. Supreme Court victories, including one of the most important business cases heard by the Court, *State Farm Mutual Automobile Insurance Co. v. Campbell*, which set important constitutional limits on punitive damages awards.

Products Liability   Skadden defends substantial products liability cases at trial and on appeal and often serves as national counsel in multijurisdictional products liability litigation. Our experience involves a broad range of products, including: prescription and over-the-counter drugs; medical devices; biotechnology products; computers, mobile phones and consumer electronics; regulated chemicals, raw materials and substances; Health Maintenance Organizations; life insurance; food products and dietary supplements; beverage products; consumer products; building products; asbestos and silica; lead paint; and smokeless tobacco. For many years, our attorneys have served as adjunct professors for products liability and mass torts courses at law schools, written and lectured frequently on these issues, and participated in the American Law Institute's debates over new drafts of the *Restatement (Third) of Torts: Products Liability*. Skadden received the 2011 Chambers USA Award for Excellence for "Products Liability Team of the Year." We also were selected as a finalist by *The American Lawyer* in the products liability section of its Litigation Department of the Year contest (January 2012), and we were named as one of only three "powerhouses" in the Class Action and Tort category in a survey of corporate counsel conducted by BTI Consulting and published by *Law360* in 2012.

Government Enforcement and White Collar Litigation   Our attorneys defend corporations and their officers, directors and employees in complex criminal investigations and trials, civil and administrative proceedings, and congressional investigations. Skadden, Arps also defends current and former government officers and elected public figures in investigations being conducted by independent and special counsel, congressional committees and other authorities. We represent clients in related civil and administrative matters, including investigations by the SEC, the New York Stock Exchange, bank regulatory authorities, and other departments, commissions and agencies, as well as in *qui tam* claims and suspension/debarment actions. We also conduct internal investigations on behalf of boards of directors and special board committees.

Intellectual Property and Technology   Skadden offers clients a full range of legal services relating to the acquisition, enforcement and commercial exploitation of intellectual property assets. These services include litigation; counseling; technology transfer, outsourcing and licensing agreements, and other transaction-related services; patent and technology portfolio strategy analysis; and trademark and copyright registration.

Alternative Dispute Resolution   The firm assists clients in resolving disputes without litigation through various alternative dispute resolution (ADR) procedures, including binding and nonbinding arbitration, mediation, mini-trials, summary jury trials, expert fact-finding and early neutral evaluation. We help clients establish dispute handling systems for different categories of disputes. We also structure dispute resolution contract clauses for inclusion in client contracts, represent clients in individually tailored ADR proceedings, and serve as arbitrators, mediators and other neutrals in ADR proceedings.

Consumer Financial Services Enforcement and Litigation   Skadden represents many of the nation's leading banks, insurance companies, securities firms and other consumer financial services companies in a broad array of government investigations, enforcement actions and class action litigations focused on the sale of financial products to consumers. Our Washington, D.C.-based group comprises lawyers with extensive experience as federal prosecutors and financial services regulators and in defending corporations in civil and criminal governmental investigations.

*4*



Corporate
Restructuring

Our worldwide corporate restructuring practice serves corporations and their principal creditors and investors by providing "upper margin" value-added legal solutions in troubled company M&A, financing and restructuring situations. The firm represents companies, creditors, committees, acquirors, investors and others in nonjudicial debt restructurings, acquisitions, financings and related matters, and in Chapter 11 reorganization cases, including "prepackaged" and "prearranged" reorganizations. Our attorneys also counsel financially healthy companies on implementing changes to their capital or corporate structures designed to enhance enterprise value and in acquiring or making investments in financially troubled companies. We routinely advise on corporate transactions and corporate governance issues, negotiate with stakeholders and target companies, prepare out-of-court agreements with creditors, equity holders, prospective acquirors and investors, and handle refinancings, debtor in possession financing and bankruptcy-related litigation. We have acted as lead counsel in numerous transactional matters with sellers, purchasers and creditors across the Americas as well as throughout Asia, Australia, Europe and the Middle East. Skadden has two partners named among "The Decade's Most Influential Lawyers" by *The National Law Journal*. Our partners also have been recognized by *Chambers Global* and *Chambers USA* in their annual lists of the leading restructuring practices worldwide and in the United States; and *Global Counsel* in its annual list of the top 10 worldwide restructuring lawyers. We were recognized for DSW Group's restructuring as one of *Turnarounds & Workouts'* "Successful Restructurings of 2012." In addition, Skadden was named among *Law360's* Bankruptcy Groups of 2011. We have advised on some of the most widely publicized corporate restructurings, including:

**Acted as counsel in prepackaged reorganization cases on behalf of:**

| | | |
|---|---|---|
| The Antioch Company | Jackson Hewitt | The National Hockey League |
| Bluebird Corporation | Mark IV Industries | RCN |
| CIT Group | McLeodUSA | Russell-Stanley |
| Hayes Lemmerz | Metro-Goldwyn-Mayer | Verts Holdings |
| Herbst Gaming | Mrs. Fields Original Cookies | |

**Acted as counsel in traditional Chapter 11 reorganization cases on behalf of:**

| | | |
|---|---|---|
| Access Industries | Goody's Family Clothing | Silverpoint Capital |
| American Biltrite | Gordon Brothers Group | Spansion |
| Birch Telecom | Hartmarx | Spectrum Brands |
| Black Diamond Capital Management | Interstate Bakeries | The Sports' Authority |
| C&S Wholesale Grocers | Krispy Kreme Doughnut | Sportsman's Warehouse |
| Circuit City Stores | LyondellBasell | Syms |
| Citicorp North America | MF Global | Tweeter Home Entertainment Group |
| Citigroup | Neumann Homes | Ultimate Electronics |
| Credit Suisse | Oaktree Capital Management | United Refining Energy |
| Delphi | Plastech Engineered Products | VeraSun Energy |
| First Virtual Communications | Radnor | Wilmington Trust |
| Fortunoff | Refco | Winn-Dixie Stores |
| Friedman's | Shane | |

**Advised the following companies in their nonjudicial restructuring activities:**

| | | |
|---|---|---|
| Ainsworth Lumber | Offshore Logistics | Ziff Brothers |
| American National Power | The Portland Trailblazers | |
| America West Airlines | Realogy | |
| Amkor Technology | RREEF | |
| Centro Properties Group | Reliant Resources | |
| CIBC World Markets | Residential Capital | |
| Dune Real Estate Funds | Rite Aid | |
| Evergreen International Aviation | SCOR | |
| Freescale Semiconductor | Sprint Nexte. | |
| Harrah's | Star Gas Partners | |
| Hexcel | Tele Columbus Group | |
| Huntsman | Travelport | |
| Intrawest Resorts | Vita Group | |
| ION Media Networks | Vulcan | |
| Lamda Partners | Westwood One | |
| Marsico | The Williams Companies | |
| | Xerox | |

5

We have assisted in the development and implementation of privatization programs internation-
ally, while helping to reconcile the divergent business, political and social objectives inherent in the
commercialization process. Assisting with the conversion from a state-owned to a private-market
structure, we have helped draft the appropriate regulatory framework for the long-term operation of
various sectors, as well as regulations that take into account the unique problems created during the
transitional period when state-owned firms are privatized. Our global network of offices gives us a
distinct advantage in coordinating the cross-border elements of these transactions.

In particular, we have experience in the privatization of companies
in the petrochemical, telecommunications, energy, real estate,
utility, manufacturing, automotive, airline, retail, pharmaceutical
and food industries.

The firm has represented or is currently representing clients involved in the
privatization of companies owned by the governments of:



| | |
|---|---|
| Argentina | Mexico |
| Australia | Morocco |
| Austria | New Zealand |
| Belgium | Norway |
| Brazil | Peru |
| Bulgaria | Philippines |
| China | Poland |
| Colombia | Portugal |
| Czech Republic | Romania |
| Denmark | Russia |
| Finland | Slovakia |
| France | South Africa |
| Germany | South Korea |
| Greece | Spain |
| Hong Kong | Sweden |
| Hungary | Thailand |
| India | Trinidad and Tobago |
| Indonesia | United Kingdom |
| Ireland | United States |
| Israel | Venezuela |
| Italy | |
| Malaysia | |

Privatizations

5

USA-REL-0000077

Corporate Finance  Skadden attorneys advise underwriters, issuers, selling security holders and purchasers on public and private financings. Our experience extends to all types and combinations of debt and equity instruments and encompasses financings by U.S. and non-U.S. companies in financial markets worldwide. In a capital markets environment characterized by rapid change and innovation, our attorneys often structure new securities for clients in response to specific market needs. In 2012, the *Financial Times* ranked Skadden second in the country in its "US Innovative Lawyers" report, which recognized our representation of Barclays Bank in a $1.45 billion debt-or-in-possession credit facility in connection with ResCap's Chapter 11 bankruptcy filing.

Structured Finance  Our attorneys advise underwriters, issuers, credit enhancers and investors on the securitization of assets such as credit card receivables, home mortgages, automobile installment loan contracts, student loans, trade receivables, commercial mortgages and many others. Skadden also has assisted investment banking firms and U.S. and non-U.S. banks in establishing "conduit" companies to securitize trade receivables, commercial loans, credit card receivables and consumer debt obligations originated by numerous lenders.

Project Finance  With one of the world's largest international project finance practices, Skadden has assisted clients in more than 40 countries throughout Asia, the Americas, Europe, Africa and Australia. Our transactions involve the development, privatization, project financing and acquisition of many different types of infrastructure facilities, including, among others, those in the oil and gas, electric-generating and petroleum industries. Our U.S. project finance practice has been instrumental in several recent financings of sports stadiums and arenas.

**Skadden ranked first by number of issues in representing issuers, for both U.S. debt and globally, in equity or equity-related offerings (Thomson Reuters, January 2013).**

Banking  We represent commercial banks, insurance companies, pension funds, finance companies, investment and merchant banking firms, private investment funds and other corporate lenders, as well as borrowers and issuers of securities, in a wide range of domestic and cross-border financing transactions. These transactions involve secured and unsecured loan agreements, letters of credit and other credit enhancement devices, note purchase agreements, project financing agreements, structured receivables arrangements, aircraft and other manufacturer financings, leveraged lease financings, loan syndications, acquisition financing arrangements, equity participations in the form of common and preferred stock investments, and offerings of convertible securities, warrants and partnership interests.

Derivative Financial Products, Commodities and Futures  The firm represents a broad range of parties in transactions involving highly tailored "over-the-counter" derivative financial products. We advise commercial and investment banks and other dealers in the development of new products, as well as major corporations, insurance companies and other end-users of the products. Skadden also represents clients in traditional commodities transactions and in connection with exchange-listed futures and options. In this regard, we provide services internationally to major exchanges, commercial banks, insurance companies, portfolio managers, investment banks, traders and advisors.

7

FOIA CONFIDENTIAL TREATMENT REQUESTED



Finance

**Lease Financing** Our attorneys handle U.S. and cross-border financings, with particular emphasis on innovative structures providing greater economic benefits for both lessors and lessees. Our attorneys have represented lessors, lessees and lenders in highly sophisticated cross-border and domestic leasing transactions that involve the financing of all types of assets ranging from rail equipment and oil production and gas processing facilities to satellites and steel making equipment. Our Lease Financing Group has consistently been a leader in developing new structures and pricing techniques and our accomplishments include, among others, the creation of the lease-leaseback structure, the first use of a commission foreign sales corporation (FSC) warehousing structure, the design of the replacement lease structure and its first application to rail equipment, and the first use of an enhanced "turbo" FSC lease by a life insurance company.

**Investment Management** The firm's attorneys advise clients on the structuring, formation, offering, operation and regulation of a wide range of registered and private domestic and offshore investment pools as well as other investment products, including tax-advantaged structures. We also counsel investment advisers, broker-dealers and banks on a wide variety of securities-related regulatory matters and provide assistance in connection with SEC investigations and proceedings.

**Private Investment Fund** A team of attorneys at Skadden focuses on organizing private investment funds for a broad spectrum of clients. These attorneys represent sponsors, investors and placement agents in connection with the formation and operation of pooled investment vehicles or funds. Unlike conventional mutual funds, private investment funds are designed to be exempt from registration under the federal securities and commodities laws. Our attorneys have experience with the full range of private investment activity, such as merchant banking and leveraged buyout funds, venture capital funds, offshore structured high-yield and mortgage derivative funds, bridge funds, "vulture" funds and funds tailored for specific industries, such as oil and gas, savings banks and insurance.

Skadden, Arps was selected as one of the leading law firms in the areas of international debt and equity by *Chambers Global: The World's Leading Lawyers for Business 2012.* Our capital markets practice was also recognized by *Chambers USA: America's Leading Lawyers for Business 2012* in its listing of the leading practices in the United States.

*8*

USA-REL-0000079

Europe  With offices located in London, Paris, Brussels, Frankfurt, Munich, Vienna and Moscow, Skadden has handled substantial matters in nearly every country in the greater European region, and in Africa and the Middle East. Skadden's European practice focuses primarily on corporate transactions, including mergers, acquisitions, privatizations, private equity and venture capital matters, initial public offerings and other equity capital market matters, high-yield and other debt security offerings, European Union law and other competition issues, project finance, joint ventures and infrastructure development, corporate restructurings and workouts, and banking transactions, including acquisition finance and structured finance. The firm's European practice also represents clients in connection with international arbitration and English litigation and regulatory matters.

The firm advises on U.S., English, French, German, Russian and Austrian law, allowing us to address the multijurisdictional aspects of cross-border transactions, as well as specific domestic legal issues. Our European Union law practice advises on antitrust and competition law, intellectual property and international trade matters. We also advise government and private sector clients on rapidly evolving telecommunications laws and regulations in the European Union.

Serving clients in every major international financial center, the depth and breadth of Skadden's practice as well as our geographic reach enable us to offer the specific legal advice our clients need to compete most effectively in today's global business environment.

Asia  With offices in Beijing, Hong Kong, Shanghai, Singapore and Tokyo, the firm is strategically positioned to handle matters for our clients throughout Greater China, India, Japan, Pakistan, South East Asia and South Korea. Our Tokyo office operates as a *gaikokuho kyodo jigyo* (foreign law joint enterprise), with *bengoshi* who are licensed to practice law and appear in Japanese courts. Our Hong Kong law practice was established in October 2005 to complement our existing U.S. law practice in Asia.

The firm's work in Asia focuses primarily on capital markets and bank finance transactions, direct investments, joint ventures, asset and stock acquisitions, and project financing transactions, including power project development and other infrastructure work, and real estate investments. Our attorneys have handled many public offerings involving the privatization of national telecommunications, power and other companies.

In "trailblazing" matters, Skadden has represented clients in the largest offering to date by an Indonesian concern — a deal that was also among the largest global Asian equity offerings outside of Japan, the first private power project in Indonesia, the first privatization by the Indonesian government, the first U.S. shelf registration by the People's Republic of China (PRC), the first registered public offering in the United States by the PRC and the first global stock offering of a Chinese company.

Australia and New Zealand  With an office in Sydney, Skadden primarily represents Australian and New Zealand companies and their underwriters or financial advisors in U.S. and international capital markets transactions and cross-border mergers and acquisitions. We advise on U.S. law, international law and conflicts of law. Since the Sydney office opened in 1989, Skadden has participated in some of the largest debt and equity offerings, including U.S. stock exchange listings, and some of the most significant M&A transactions involving Australian and New Zealand companies.

9

Canada  Skadden represents issuers and underwriters in cross-border public and private debt and equity offerings by Canadian entities in the securities markets of the United States, Europe and other areas of the world. Skadden also represents Canadian clients in Rule 144A offerings and advises on issues relating to the Canada/U.S. Multijurisdictional Disclosure System. Skadden acts as U.S. acquisition counsel to various Canadian public companies and advises on both hostile and friendly cross-border transactions. We also represent Canadian clients in areas such as banking and financial services, joint ventures, real estate, international trade, telecommunications, intellectual property and litigation.

Latin America  The firm's practice in Latin America includes cross-border mergers and acquisitions, joint ventures, debt and equity financings, the privatization of government entities, trade regulation, private equity fund investments, telecommunications issues, tax matters and general business law advice. Skadden's experience involves industries ranging from telecommunications and energy to banking and insurance. Skadden was named Corporate/M&A Law Firm of the Year for International Counsel in Latin America at the Chambers Latin America Awards for Excellence 2011.

Israel  Skadden has a substantial practice involving the representation of Israeli companies engaged in M&A, financing and other activities in the United States, as well as investors in Israeli companies. We have acted as counsel to underwriters and issuers in many financings by Israeli companies or entities with relationships to Israel, established funds to invest in Israeli companies and represented clients in litigation involving Israeli companies. A number of our attorneys are thoroughly familiar with the legal structure, business environment and political system in Israel, and several have been admitted to the bars of both Israel and New York and are fluent in Hebrew and English.

Africa  We provide clients doing business in Africa with seamless legal services in more than 40 practice areas. While much of our experience has focused on the key markets of South Africa and Egypt, the firm has advised on transactions across the continent. We have lawyers who speak Arabic, Yoruba, Fula and Portuguese. We have worked with businesses and governments in Africa for more than 20 years and continue to be retained in high-profile matters, including our representing the world's newest country — South Sudan — in its oil sector negotiations with the Republic of Sudan and in production and transportation arrangements with the international oil companies operating there.



International

Beijing

Brussels

Frankfurt

Hong Kong

London

Moscow

Munich

Paris

São Paulo

Shanghai

Singapore

Sydney

Tokyo

Toronto

Vienna

*10*

S0055

USA-REL-0000081

Financial Institutions Regulation and Enforcement  The firm advises financial institutions and their investors on regulatory and antitrust considerations, and assists with applications in connection with mergers and acquisitions, joint ventures, and commercial and banking transactions. Skadden represents clients before the Federal Reserve Board, the Federal Deposit Insurance Corporation (FDIC), the Office of the Comptroller of the Currency, the Office of Thrift Supervision, and other federal and state agencies. In addition, we advise clients on electronic banking, insurance, mutual funds, securities and related financial services. In the enforcement area, the firm has represented institutions in connection with government investigations and enforcement actions and related private class actions concerning bank secrecy laws, fair lending and securities.

Tax  Skadden's Tax Group provides a wide array of services to a broad spectrum of clients. Our attorneys' primary areas of practice include counseling businesses and financial intermediaries in connection with domestic and international acquisitions, divestitures and reorganizations; financial products, including leasing, structured financings, hybrid entities and hybrid instruments; tax controversy matters, including audits, administrative appeals and litigation; international tax matters; and governmental and philanthropic organizations. Skadden was named North America Banking Tax Firm of the Year at the International Tax Review Americas Tax Awards, 2011.

Financial Institutions  The firm represents U.S. and non-U.S. banks, thrift institutions and investment banks in negotiated and contested mergers and acquisitions, thrift conversions, restructurings, joint ventures and other transactions. We also advise public companies and their boards of directors and investors with respect to proxy contests and acquisitions of controlling stock positions. In addition, we handle recapitalization transactions involving banks and thrifts and have assisted institutions and investors in acquiring depository institutions from the FDIC and the Resolution Trust Corporation.

In the United States, we actively have been involved in litigation to stop imports of unfairly priced or subsidized goods. We also have been actively involved in trade litigations brought by foreign manufacturers and governments.

International Trade  The firm advises U.S. and non-U.S. clients in international trade matters and litigation. In the United States, we represent major U.S. manufacturers as petitioners in litigation to stop imports of unfairly priced or subsidized goods. We also defend U.S. manufacturers in trade litigation brought by foreign manufacturers and governments in Mexico, Canada and other countries. Our attorneys in Washington, D.C., many of whom held positions in Congress and the executive branch, also represent U.S. clients in efforts to maintain fair trade laws and regulations domestically, and in negotiations and dispute-settlement proceedings under the North American Free Trade Agreement and before the World Trade Organization. In addition, we represent U.S. manufacturers and service providers seeking assistance to secure fair access to foreign markets.

International Banking  We assist clients with the acquisition of, or establishment by, non-U.S. banks of subsidiaries and joint ventures engaged in nonbanking activities in the United States; the acquisition or establishment by non-U.S. banks of banks, branches, agencies, New York investment companies, Edge corporations and representative offices in the United States; investments and acquisitions by U.S. banks outside the United States; and the ongoing operations of international banks.

Political Law  Our attorneys provide a wide range of legal services and advice, with particular emphasis on campaign finance, ethics and conflict of interest laws. Our work includes the representation of political committees and businesses involved in the political process, corporate political action committees, independent political committees and candidate committees. The firm has advised presidential campaigns and prominent federal, state and local candidates of both major parties. In addition, we have counseled clients before the Federal Election Commission and state election commissions.

Legislative  The firm's Washington, D.C.-based attorneys and legislative specialists monitor legislative developments and lobby on behalf of clients, as well as implement legislative strategies for corporations, investment banks and coalitions.

11

USA-REL-0000082

Many Skadden attorneys apply the knowledge and experience gained from prior government service to their current work. The following government positions are among those formerly held by our lawyers:

**U.S Federal Government**

**The White House**
> Assistant to the President and Special Counsel (Clinton)
> Associate Counsel to the President (Clinton)
> Counsel (Obama)
> Legal Adviser (George W. Bush)

**Commodity Futures Trading Commission**
> Assistant General Counsel
> Legal Counsel to the Commissioner

**Congress**
> Legislation Counsel, Joint Committee on Taxation
> Tax Counsel to a Member of the House Ways and Means Committee

**Department of Defense**
> Judge Advocate, U.S. Air Force

**Department of Energy**
> Assistant General Counsel
> Chief of Staff and Special Assistant to the Secretary
> Deputy Administrator, Economic Regulatory Administration

**Department of Justice**
> Acting Assistant Attorney General, Antitrust Division
> Assistant to the Solicitor General
> Associate Deputy Attorney General, Special Counsel for Health Care Fraud
> Chief, Environmental Defense Section, Land and Natural Resources Division
> Chief, General Litigation Section, Land and Natural Resources Division
> Chief, Securities and Commodities Fraud Task Force, Southern District of New York
> Deputy Assistant Attorney General, Antitrust Division
> Deputy Assistant Attorney General, Tax Division
> Deputy Chief, General Crimes Section, Central District of California
> Principal Deputy General Counsel and Special Assistant to the Director, FBI
> U.S. Attorney, Connecticut
> Acting U.S. Attorney, Massachusetts
> First Assistant U.S. Attorney, Massachusetts
> U.S. Attorney, New Jersey

**Department of the Treasury**
> Assistant Secretary for Tax Policy
> Chief Counsel, Office of Foreign Assets Control
> International Tax Counsel
> Assistant Chief Counsel (Income Tax & Accounting), IRS
> Associate Chief Counsel, IRS
> Commissioner, IRS
> Chief Counsel, IRS
> Director (International), IRS
> Director of Technical Service, Appeals Division, IRS
> National Chief of Appeals, IRS
> Special Assistant to the Chief Counsel, IRS

**Department of State**
> Director of Policy Planning

**Federal Election Commission**
> Associate General Counsel

**Federal Energy Regulatory Commission**
> Chief of Staff
> Commissioner
> Deputy Secretary
> General Counsel
> Senior Legal and Policy Adviser

**Federal Reserve System**
> Attorney, Board of Governors

**Food and Drug Administration**
> Associate Chief Counsel

**Office of the U.S. Trade Representative**
> Deputy U.S. Trade Representative

**Office of the Independent Counsel**
> Associate Independent Counsel, Iran-Contra Investigation

**Securities and Exchange Commission**
> Acting General Counsel
> Assistant Director, Division of Enforcement
> Deputy Director, Division of Enforcement
> Deputy Director, Division of Corporation Finance

**Senate**
> Chief Counsel (Majority Leader Trent Lott)
> Democratic Chief Counsel and Staff Director, Committee on Commerce, Science and Transportation
> Legislative Director (Sen. Lloyd Bentsen)
> Senior Adviser on Defense, Foreign Policy and National Security (Sen. Edward Kennedy)
> Senior Counsel, Committee on Commerce, Science and Transportation

**U.S. State Governments**
> Deputy Attorney General, Delaware
> Securities Commissioner, Delaware
> Chief of Trial Division, Public Defender Service, District of Columbia
> Assistant Attorney General and Chief, Special Litigation Bureau, Illinois
> Attorney General, New Jersey
> Assistant Attorney General, Virginia

**Judiciary**
> Chief Judge, New York Court of Appeals
> Judge, U.S. District Court for the Southern District of New York
> Judge, New York Supreme Court
> Judge, Appellate Division of the Supreme Court and the Court of Appeals
> Judge, U.S. Tax Court

**International Governments**
> Case Controller, Serious Fraud Office (U.K.)
> Deputy Director, International Markets, Ontario Securities Commission (Canada)
> Regulator, Financial Services Authority (U.K.)

Regulatory/
Legislative

*12*

Communications  Skadden advises licensees, investors, lenders, governments and customers in the areas of telecommunications services and equipment, mobile communications services, television and radio broadcasting, satellite services, cable television systems, and program production. In addition to traditional corporate and transactional advice, we analyze options and develop positions on issues for clients in regulatory policymaking and licensing proceedings before the Federal Communications Commission, state legislatures and agencies, the U.S. Congress and executive branch departments, and foreign governments. We also counsel governments, bidders and investment banks in the privatization of non-U.S. telecommunications systems and new licensings.

Energy  We represent energy producers, transporters, marketers, distributors and users worldwide. The firm has been particularly active in the development and financing of electric power projects throughout the world; complex oil and gas litigation; utility mergers, acquisitions and restructurings; pipeline certification and rate-making proceedings; and privatizations of major energy-related companies. Our attorneys provide clients with a full range of legal services — such as corporate, project finance, government regulatory, litigation and legislative — relating to oil, natural gas, electric power and other energy sources. Skadden received the Chambers USA Award for Excellence for "Energy/Projects: Power Team of the Year" for both 2012 and 2011. We also were named among *Law360*'s Energy Groups of 2012 and Project Finance Groups of 2011.

Environmental  Our practice involves litigation in federal and state courts and in administrative proceedings. Skadden attorneys have handled the defense of environmental civil penalty and criminal cases, lawsuits involving disputes over environmental contract terms, cost recovery actions under Superfund, natural resource damage, and other cases involving environmental statutes. We also provide regulatory counseling. Our attorneys negotiate environmental contract provisions and conduct due diligence audits in connection with mergers, acquisitions and project financings — both within and outside the United States. We also advise on international environmental and trade issues.

Gaming  Skadden represents companies and investment banks involved in the financing, acquisition, restructuring, development and management of some of the largest projects in the gaming industry. Our attorneys advise issuers, underwriters and investors in every variety of gaming financing, including public and private transactions, high-yield and investment-grade debt offerings, initial public offerings and secondary equity sales. The firm has handled numerous transactions involving land-based, riverboat and dockside casinos in established and emerging casino gaming markets within the United States and abroad.

Health Care  The attorneys in our Health Care Group represent hospitals and other health care ser-

**Skadden has been extensively involved in matters related to professional sports, representing the four major sports leagues — the National Football League, the National Basketball Association, the National Hockey League and Major League Baseball.**

vice providers, pharmaceutical and biotechnology firms, medical device and equipment manufacturers, and companies in related businesses in mergers and acquisitions, joint ventures, public and private offerings of debt and equity securities, and venture capital transactions. We also advise health care clients in the areas of licensing, intellectual property, products liability and tax, as well as on a broad range of general corporate, securities law and litigation matters.

Information Technology and E-Commerce  We handle a wide variety of matters that relate to the creation, use, licensing and transfer of information technologies, ranging from small one-time license agreements to technology joint ventures to multiparty global outsourcing deals. The cornerstone of our practice is that we understand the technical and business issues that arise in connection with such transactions. As a result, we work with chief technology officers to develop service level agreements for enterprise-wide systems; product managers to determine the appropriate pricing metrics for cross-license agreements; and in-house counsel to draft comprehensive strategic alliances. Our multifaceted approach to technical, business and legal issues allows us to be a value-add to any

*13*

transaction in which we are involved. Our client base is comprised of both the providers and users of information technology. On the provider side, we represent software developers, outsourcers, content providers, domain name registries and registrars, infrastructure and network providers, and application service providers. On the user side, we represent companies that utilize technology in a wide variety of industries, including financial services, transportation, manufacturing, publishing, entertainment and retail. Because of this diverse client base, we view the industry from varied perspectives and thereby help our clients understand the strategic interest of the other side during negotiations.

In addition to "traditional" outsourcing of information technology services, companies are outsourcing many of their internal functions and business processes. Skadden's Outsourcing Group, which is part of the information technology and e-commerce practice area, handles this wide variety of outsourcing transactions. We have represented both the customer and the vendor, and therefore understand the strategic issues that arise from both sides of a transaction.

Insurance  Skadden's Insurance Group represents insurance and reinsurance companies and their financial advisors and underwriters in a wide variety of corporate transactions, including mergers and acquisitions, public and private financings, restructurings and reorganizations. In the area of corporate finance, our Insurance Group has handled numerous transactions for life, health, disability, workers' compensation, property and casualty, and financial guaranty insurance companies. Such transactions have included some of the largest initial public offerings of insurance companies to date, as well as numerous other offerings, including surplus note offerings for a number of mutual life insurers.

Life Sciences  Skadden has extensive experience representing life sciences companies and the investment banks that finance and advise them. We have represented clients in biopharmaceuticals, biotechnology, medical devices, diagnostics, genomics, drug delivery, genetics and other areas in the life sciences industries. Our experience spans the industry from advising large international pharmaceutical companies looking to consolidate or expand in an increasingly globalized marketplace to assisting small biotechnology companies seeking to develop their first lead compounds.

Real Estate  The firm represents developers, lenders, investment banks, and U.S. and non-U.S. investors. Our activities include work on the purchase, sale, construction, financing and operation of commercial, industrial, residential and retail projects throughout the United States, Europe and Japan; the public and private offering of various types of real estate securities; leasing on behalf of landlords and major tenants; real estate-secured lending; land use and other regulatory matters; real estate litigation; and restructurings on behalf of lenders, borrowers and joint venturers. We received the 2012 Chambers USA Award for Excellence for "Real Estate Team of the Year."

Sports  Skadden has been extensively involved in matters related to the professional sports industry, representing the four major sports leagues — the National Football League, the National Basketball Association, the National Hockey League and Major League Baseball — as well as individual team franchises and related entities. The attorneys in our Sports Group have significant experience in sports-related matters involving litigation, antitrust, labor relations and intellectual property, and have participated in a number of landmark cases. We have also assisted clients involved in the purchase and sale of professional sports franchises and have had a prominent role in financing new stadiums and arenas for numerous sports teams.

Utilities  The firm's clients include electric and gas utilities, utility holding companies and investment banks. Our representations involve mergers, corporate reorganizations, proxy fights, acquisitions and dispositions, and derivative litigation and regulatory proceedings related to these transactions. We counsel clients with respect to general defensive advice, holding company reorganizations, restructurings and strategic evaluation of potential acquisitions in the utility industry. We also represent electric and gas utilities in regulatory proceedings and litigation dealing with a wide range of nonmerger-related issues.



Industry-Related Practices

*14*

USA-REL-0000085



**Executive Compensation and Benefits**  Skadden's attorneys advise corporate and individual clients on employee benefits, ERISA matters and executive compensation. The practice covers tax-qualified pension and profit sharing plans, stock option plans, employee stock ownership plans, executive and employee incentive arrangements, employment contracts and employee welfare benefit plans, as well as matters arising under ERISA, the federal securities laws and other related areas.

**Labor and Employment Law**  The firm represents and advises clients on labor and employment matters arising in representation proceedings, collective bargaining negotiations, arbitrations, litigation in federal and state courts, and administrative proceedings before such government agencies as the National Labor Relations Board, the Equal Employment Opportunity Commission, the U.S. Department of Labor, state human rights agencies, and state departments of labor. We also work on matters involving employment-at-will and claims of employment discrimination, including claims of sexual harassment and wrongful discharge. In addition, we advise on all labor and employment aspects of transactions, including the negotiation of new collective bargaining agreements or the assumption of existing agreements as well as the preparation of employment and severance agreements. We also have handled the labor aspects of bankruptcy proceedings, including the representation of companies before various state departments of labor.

**Trusts and Estates**  Our attorneys provide clients with in-depth planning, including the preparation of wills and trusts; the designation of beneficiaries of insurance and employee death benefits; and the analysis of the estate, gift and income tax consequences of an estate plan. Estate plans may also include the creation of insurance trusts, charitable dispositions, personal holding companies and family partnerships.

Employment Issues and Advice to Individuals

*15*

USA-REL-0000086

*Pro Bono* Matters   Skadden Arps strongly encourages its lawyers, legal assistants, and summer associates to assist, through *pro bono* work, those individuals and groups unable to afford legal services. The firm is a charter signatory to the Law Firm *Pro Bono* Challenge, pledging to commit time equivalent to at least three percent of our annual billable hours to work on *pro bono* matters. Skadden attorneys — both litigators and nonlitigators — represent individuals and organizations of limited means in matters including:

> not-for-profit incorporations and securing tax-exempt status

> Social Security disability claims

> housing issues;

> the preparation of wills and guardianship and adoption petitions

> civil rights claims;

   real estate projects involving ownership for low income tenants

   criminal appeals;

> battered women's issues

> unemployment cases;

> microentrepreneurs;

> political asylum and immigration matters;

> uncontested divorces;

> children's issues; and

> senior citizens' issues.

Externships are available in various offices. The New York office offers an externship program with the Legal Aid Society's Community Law Office as well as one with the Lawyers Alliance for New York. Externships are four-month rotations (*i.e.*, an associate works with one of the organizations full time for four months). Once the rotation concludes, the associate returns to the firm and is replaced by the next rotating attorney. The Washington, D.C. office has a six-month rotation with the local Legal Aid Society.

These externships are designed not only to help people with limited means and the work of not-for-profit groups during the actual externship period, but also to improve our ongoing *pro bono* program by providing us — following each extern's return to the firm — with more attorneys with hands-on experience in handling various types of *pro bono* matters. Moreover, it is anticipated that externs may receive assistance on some matters during their externships by other attorneys or legal assistants at the firm.

Our attorneys also counsel nonprofit charitable and cultural organizations, and handle post-conviction representations in death penalty cases. The firm's *pro bono* achievements have been nationally recognized and are reflected in the awards that we have received from various nonprofit organizations.

Fellowship Program   Since 1988, Skadden has annually awarded funds to a select group of the nation's most outstanding law school graduates and judicial clerks to practice public interest law for a two-year period through the Skadden Fellowship Foundation. The Fellowship Program, established to reaffirm the firm's commitment to public interest law, has received widespread praise and recognition. Approximately 90 percent of program graduates have continued in the public service sector, leading organizations devoted to providing equal access to the justice system. Many former Skadden Fellows are now teaching, or have taught, at the top law schools across the country, and several individuals have accepted positions as U.S. assistant attorneys general. In 2010, the *Financial Times* named Skadden the top law firm in its inaugural "U.S. Innovative Lawyers" report, where the firm placed in the top tier for Responsible Business in connection with the Skadden Fellowship Foundation.

Association of the Bar of the City of New York

Bet Tzedek (House of Justice)

Community Legal Aid Society of Wilmington

D.C. Coalition Against Domestic Violence

The Gay and Lesbian Alliance Against Defamation

LAMBDA Legal Defense and Education Fund

Lawyers Alliance for New York

The Lawyers Division of the Judges and Lawyers Breast Cancer Alert

Legal Aid Society of New York

Legal Aid Society of San Francisco

Legal Clinic for the Disabled in Chicago

NAACP Legal Defense and Educational Fund, Inc.

# Pro Bono Matters and Fellowship Program

New York State Bar Association

New York University Public Interest Law Fellowship

Pro Bono Advocates

Public Counsel

South Chicago Legal Clinic

Washington Lawyers' Committee for Civil Rights

Western Center on Law and Poverty

Whitman-Walker Legal Services Program

Volunteer Lawyers for the Arts

Volunteers of Legal Service

15

S0061

USA-REL-0000087

**Firm/Affiliate Offices**

New York
Four Times Square
New York, New York 10036
Telephone: 212.735.3000
Fax: 212.735.2000
Contact: Eileen T. Nugent

Boston
One Beacon Street
Boston, Massachusetts 02108
Telephone: 617.573.4800
Fax: 617.573.4822
Contact: Margaret A. Brown

Chicago
155 North Wacker Drive
Chicago, Illinois 60606
Telephone: 312.407.0700
Fax: 312.407.0411
Contact: Brian W. Duwe

Houston
1000 Louisiana
Suite 6800
Houston, Texas 77002
Telephone: 713.655.5100
Fax: 713.655.5200
Contact: Charles W. Schwartz

Los Angeles
300 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.687.5000
Fax: 213.687.5600
Contact: Brian J. McCarthy

Palo Alto
525 University Avenue
Palo Alto, California 94301
Telephone: 650.470.4500
Fax: 650.470.4570
Contact: Ken J. King

Washington, D.C.
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: 202.371.7000
Fax: 202.393.5760
Contact: Clifford (Mike) M. Naeve

Wilmington
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: 302.651.3000
Fax: 302.651.3001
Contact: Edward P. Welch

Beijing
30/F, China World Office 2
No. 1, Jian Guo Men Wai Avenue
Beijing 100004 China
Telephone: 86.10.6535.5500
Fax: 86.10.6535.5577
Contact: Peter X. Huang

Brussels
523 avenue Louise
Box 30
1050 Brussels, Belgium
Telephone: 322.639.0300
Fax: 322.639.0339
Contact: James S. Venit

Frankfurt
An der Welle 3
60322 Frankfurt am Main
Germany
Telephone: 49.69.742200
Fax: 49.69.74220300
Contact: Bernd R. Mayer

Hong Kong
42nd Floor, Edinburgh Tower
The Landmark
15 Queen's Road Central
Hong Kong
Telephone: 852.3740.4700
Fax: 852.3740.4727
Contacts: Alan G. Schiffman
          Jonathan B. Stone

London
40 Bank Street
Canary Wharf
London, E14 5DS, England
Telephone: 44.20.7519.7000
Fax: 44.20.7519.7070
Contact: Bruce M. Buck

Moscow
Ducat Place III
6 Gasheka Street, 11th Floor
Moscow, Russia 125047
Telephone: 7.495.797.4600
Fax: 7.495.797.4601
Contacts: Bruce M. Buck
          Pranav L. Trivedi

Munich
Karl-Scharnagl-Ring 7
80539 Munich
Germany
Telephone: 49.89.2444950
Fax: 49.89.244495300
Contact: Walter R. Henle

68, rue du Faubourg Saint-Honoré
75008 Paris, France
Telephone: 331.55.27.11.00
Fax: 331.55.27.11.99
Contact: Pierre Servan-Schreiber

São Paulo
Av. Brigadeiro Faria Lima, 3311 - 7º andar
Itaim Bibi - CEP 04538-133
São Paulo , SP
Brazil
Telephone: 55.11.3708.1820
Fax: 55.11.3708.1845
Contacts: Richard S. Aldrich Jr.
          Paul T. Schnell

Shanghai
Plaza 66, Tower 1
36th Floor
1266 Nanjing West Road
Shanghai 200040, China
Telephone: 86.21.6193.8200
Fax: 86.21.6193.8299
Contact: Gregory G.H. Miao

Singapore
6 Battery Road
Suite 23-02
Singapore 049909
Telephone: 65.6434.2900
Fax: 65.6434.2988
Contact: Rajeev P. Duggal

Sydney
Level 13, 131 Macquarie Street
Sydney, NSW 2000, Australia
Telephone: 61.2.9253.6000
Fax: 61.2.9253.6044
Contact: Adrian J. S. Deitz

Tokyo
Izumi Garden Tower
21st Floor
1-6-1 Roppongi
Minato-ku, Tokyo 106-6021
Japan
Telephone: 813.3568.2600
Fax: 813.3568.2626
Contacts: Nobuhisa Ishizuka

          Skadden Arps Law Office
          Mitsuhiro Kamiya

Toronto
222 Bay Street
Suite 1750, P.O. Box 258
Toronto, Ontario
Canada M5K 1J5
Telephone: 416.777.4700
Fax: 416.777.4747
Contact: Christopher W. Morgan

Vienna
Schwarzenbergplatz 6
A-1030 Vienna, Austria
Telephone: 43.1.710.77.300
Fax: 43.1.710.77.303
Contact: Rainer K. Wachter

**WWW.SKADDEN.COM**

FOIA CONFIDENTIAL TREATMENT REQUESTED                S0062

USA-REL-0000088

# Exhibit 2

**From:** Craig, Gregory B (WAS) [Gregory.Craig@skadden.com]
**Sent:** Friday, March 01, 2013 3:11 PM
**To:** Sloan, Cliff (WAS)
**Subject:** FW: New version
**Attachments:** LONSR01A-_1085917-v1-Moj_EL.DOC; Appendix to Contract.doc

**Importance:** High

Are we there yet?  This makes it clear – there is no covering up the fact -- that we are being paid for the report we wrote in 2012.  And we can send a cover letter with the contract.

**Gregory B. Craig**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**1440 New York Avenue, N.W. | Washington | D.C. | 20005-2111**
**T: 202.371.7400 | F: 202.661.9100**
**gregory.craig@skadden.com**
_____
**From:** gurtenko@minjust.gov.ua [mailto:gurtenko@minjust.gov.ua]
**Sent:** Friday, March 01, 2013 10:07 AM
**To:** Craig, Gregory B (WAS)
**Cc:** Van Der Zwaan, Alex (LON)
**Subject:** FW: New version
**Importance:** High


Dear Mr Craig,

Having discussed your proposition we suggest to incorporate the mentioned wording in paragraph 5.3 which already contains the information about the report.

Furthermore, I would like you to refer to the paragraph 4.2. according to which «Payment for services shall be made after signing the statement of transfer (acceptance certificate for services rendered). A draft of this document is attached to my message. We are going to write in this document that the report described in Paragraph 5.3. of the Contract was completed in 2012. This is one more document which will prove that Skadden's work had been completed in 2012.

If these two suggestions are acceptable for you please send us the final variant of the Contract for an approval and let's move for its signature.

Best regards,

Vladyslav Gurtenko
Assistant to the Minister
Ministry of Justice of Ukraine
Tel. (+38044) 271.17.56
E-mail: gurtenko@minjust.gov.ua
_____
**From:** Craig, Gregory B [mailto:Gregory.Craig@skadden.com]
**Sent:** Thursday, February 28, 2013 10:44 PM
**To:** 'gurtenko@minjust.gov.ua'
**Cc:** Van Der Zwaan, Alex; Sloan, Cliff
**Subject:** RE: New version

Vlad:   We are making progress but we are not quite there.   We want to make it clear to everyone that the work that we did on the report was completed in 2012, and that this contract is for payment for that report in 2013.  I would ask that the following words be added in paragraph 1.1:  "The parties understand that the work on the report described in Paragraph 5.3 was completed in 2012."  If that additional wording is acceptable to you, we will confirm with our own

ethics counsel that the contract is fully transparent.   And if he concurs, we will sign it.  Greg Craig

**Gregory B. Craig**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**1440 New York Avenue, N.W. | Washington | D.C. | 20005-2111**
**T: 202.371.7400 | F: 202.661.9100**
**gregory.craig@skadden.com**

**From:** gurtenko@minjust.gov.ua [mailto:gurtenko@minjust.gov.ua]
**Sent:** Thursday, February 28, 2013 11:35 AM
**To:** Craig, Gregory B (WAS)
**Cc:** Министр
**Subject:** New version
**Importance:** High

Dear Mr Craig,

Following to my correspondence during these days with Mr Alex Van Der Zwaan please find attached a new version of the problematic point 1.1 of the draft document. I would be very grateful if you could inform me whether this new wording is suitable for you.

We are trying to do our best for this document  being signed by both parties as soon as possible. Thank you for your understanding.

Best regards

Vladyslav Gurtenko
Assistant to the Minister
Ministry of Justice of Ukraine
Tel. (+38044) 271.17.56
E-mail: gurtenko@minjust.gov.ua

| ДОГОВІР | CONTRACT |
|---|---|

**м. Київ**

«_____» _____ 2013р.

**Kyiv**

«_____» _____ 2013р.

**Міністерство юстиції України** в особі заступника Міністра юстиції – керівника апарату Сєдова Андрія Юрійовича, що діє на підставі Положення про Міністерство юстиції України, затвердженого Указом Президента України від 6 квітня 2011 року № 395/2011 (далі – Замовник), з однієї сторони,

та

**Skadden, Arps, Slate, Meagher & Flom LLP and Affiliates** (далі – Виконавець), з іншої сторони, разом – Сторони,

уклали цей договір про таке (далі – Договір):

**The Ministry of Justice of Ukraine** acting on the basis of the Regulation on the Ministry of Justice of Ukraine approved by the Decree of the President of Ukraine of April 6, 2011 No 396/2011, represented by Andriy Yuriyovych Sedov (hereinafter referred to as **the Employer**), on one hand

and

**Skadden, Arps, Slate, Meagher & Flom LLP and Affiliates** (hereinafter referred to as **the Executor**), on the other hand,

hereinafter jointly referred to as **the Parties**,

have concluded the following Contract (hereinafter referred to as **the Contract**):

### 1. Предмет Договору

1.1. Виконавець зобов'язується передати Замовникові послуги з дослідження у галузі права (ДК 016-2010 - 72.20.10), а саме послуги щодо наукового дослідження та експериментального розроблення у сфері суспільних наук щодо дотримання принципу верховенства права (далі – Послуги), а також звіт, який описаний в п.5.3. а Замовник - прийняти і оплатити такі Послуги. 1.2. Обсяги закупівлі послуг здійснюються залежно від реального фінансування видатків та потреб замовника.

### 1. Subject of the Contract

1.1. The Executor shall deliver services on legal studies (ДК 016-2010 - 72.20.10) to the Employer that include services on scientific studies and experimental elaboration in the field of social science on the rule of law (hereinafter referred to as **the Services**), as well as a report which is described below in clause 5.3 to and the Employer shall accept and pay for such Services.

1.2. The scope of procurement of the Services shall be made depending on actual funding of the Employer's expenses and needs.

### 2. Якість послуг

2.1. Виконавець повинен надати Замовнику послуги, якість яких відповідає умовам:

- результат дослідження повинен у повному обсязі незалежно та об'єктивно відображати Європейські та Американські стандарти та практику щодо дотримання принципу Верховенства права.

### 2. Quality of the Services

2.1. The Executor shall provide the Employer with the Services whose quality is to meet the following condition:

- findings of the study must fully and independently and objectively reflect European and American standards and practice with respect to rule of law.

### 3. Ціна Договору

3.1. Ціна цього Договору становить 10 200 **000,00 грн.** (Десять мільйонів двісті

### 3. Price of the Contract

3.1. The price of the present Contract shall be 10 200 000, 00 (ten million two hundred

SAU 245525
USA-REL-0245759

тисяч грн. 00 коп.) без ПДВ.

3.2. Кінцева вартість послуг буде визначена виходячи з кількості витрачених годин та вартості однієї години, яка розраховується на підставі стандартних тарифів Виконавця.

3.3. Виконавець веде облік витраченого часу для здійснення дослідження. На основі цих даних Виконавець складає Звіт та направляє його Замовнику. Звіт має містити детальний опис послуг, на які витрачено час.

3.4. Ціна цього Договору може бути зменшена за взаємною згодою Сторін.

### 4. Порядок здійснення оплати

4.1. Розрахунки проводяться шляхом перерахування Замовником коштів на розрахунковий рахунок Виконавця після пред'явлення Виконавцем рахунка на оплату послуг (далі – рахунок) за наявності коштів на розрахунковому рахунку Замовника.

4.2. Оплата за виконані послуги здійснюється після підписання акта прийому-передачі наданих послуг..

### 5. Надання послуг

5.1. Офіційний строк  передачі звіту за цим Договором починається з 01 березня 2013 року і має бути завершено до 31 грудня 2013 року згідно з порядком, наведеним нижче.

5.2. Замовник передає Виконавцеві копії матеріалів справи стосовно якої необхідно провести дослідження та яка знаходить на розгляді Європейського суду із переліком питань, які підлягають дослідженню.

5.3. Виконавець передає незалежний звіт , який ґрунтується на аналізі фактів та обставин, пов'язаних з обвинуваченням та судовим розглядом справи колишнього прем'єр-міністра Юлії Тимошенко в контексті Західних стандартів дотримання принципу верховенства права. .

Сторони розуміють, що звіт було підготовлено в 2012 році.

5.8. Місце надання послуг: Міністерство юстиції України, м. Київ, вул.

thousand) Ukrainian hryvnyas, VAT excluded.

3.2. The final price of the Services shall **be determined in accordance with the number of hours worked and the hourly rate which is calculated according to the basic rates of the Executor.**

3.3. The Executor shall keep accounting of hours expended to carry out the study. Based on those data, the Executor shall draw up the Report and submit it to the Employer. The Report shall contain the detailed description of the services time had been expended in.

3.4. The price of the present Contract may be reduced by mutual consent of the Parties.

### 4. Payment procedure

4.1. The payment shall be made by the Employer by way of bank transfer to the bank account of the Executor upon presentation by the Executor of the bill for services (hereinafter referred to as  **the bill**) subject to availability of the funds on the bank account of the Employer.

4.2. Payment for services shall be made after signing the statement of transfer and acceptance of the services delivered.

### 5. Provision of services

5.1. The official delivery of the report under the present contract shall occur between 1st March 2013 and    31 December 2013, in accordance with the procedure set out below.

5.2. The Employer shall submit to the Executor the copy of the case-file which is to be analysed and which is being considered before the European Court of Human Rights, together with the list of questions to be studied.

5.3. The Executor shall   deliver an independent report on the evidence and procedures used during the prosecution and trial of former Prime Minister Yuliya Tymoshenko, applying Western standards of due process and rule of law

The Parties understand that the work on the report was completed in 2012 5.3. The Service location shall be the Ministry of Justice of Ukraine, City of Kyiv, 13 Horodetskogo St.

### 6. Rights and obligations of the Parties

6.1. The Employer shall:

Городецького, 13.

**6. Права та обов'язки сторін**

6.1. Замовник зобов'язаний:

6.1.1. Надати Виконавцеві копії матеріалів справи, а також перелік питань, які необхідно дослідити.

6.1.2. Приймати надані послуги згідно з актом прийому-передачі наданих послуг (якщо надані послуги відповідають умовам цього Договору).

6.1.3. Своєчасно та в повному обсязі сплачувати за надані послуги;

6.2. Замовник має право:

6.2.1. Контролювати надання послуг у строки, встановлені цим Договором. Здійснювати перевірку якості дослідження та відповідності дослідження вимогам, встановленим у п. 2.1.

6.2.2. Достроково розірвати Договір та вимагати відшкодування збитків у разі, якщо надання Виконавцем послуг у строк, передбачений цим договором, стає явно неможливим, або ж якщо під час надання послуг стане очевидним, що вони не будуть надані належним чином або на відповідному рівні.

6.2.3. Зменшувати обсяг закупівлі надання послуг та загальну вартість цього Договору залежно від реального фінансування видатків. У такому разі Сторони вносять відповідні зміни до цього Договору;

6.2.4. Повернути рахунок Виконавцю без здійснення оплати в разі неналежного оформлення документів (відсутність печатки, підписів тощо).

6.3. Виконавець зобов'язаний:

6.3.1. Забезпечити надання послуг у строки, встановлені цим Договором;

6.3.2. Забезпечити надання послуг, якість яких відповідає умовам, встановленим розділом 2 цього Договору.

6.3.3. Надати Замовнику результат дослідження в електронному та друкованому вигляді, а також повернути копії матеріалів справи.

6.3.4. Не розголошувати відомості, що містяться у матеріалах справи, які йому було передано для здійснення дослідження.

6.3.5. Дотримуватися умов цього Договору і нести відповідальність за їх невиконання.

6.1.1. Submit copies of case-files together with the list of questions to be studied to the Executor.

6.1.2. Accept the services made according to the statement of transfer and acceptance of the services delivered (if the services delivered comply with the conditions of the present Contract).

6.1.3. Pay for services delivered timely and in full.

6.2. The Employer shall have the right to:

6.2.1. Check that the services are provided within the time-limits established by the present Contract, verify the quality of the study and its compliance with the requirements set out in § 2.1.

6.2.2. Terminate ahead of schedule the present Contract and require payment of damage in the case if provision of services by the Executor within the time-limits established by the present Contract becomes clearly impossible or if during provision of the services it becomes quite clear that they are not going to be provided properly or at the adequate level.

6.2.3. Reduce the scope of procurement of services and the price of the present Contract depending on actual funding of the expenses. In such an event the Parties shall make relevant amendments to the Contract;

6.2.4. Return the bill to the Executor without making payment in the case of improper drawing up of documents (absence of the seal, signatures etc.).

6.3. The Executor shall:

6.3.1. Provide services within the time-limits established by the present Contract;

6.3.2. Provide services whose quality complies with the requirements set out in Section 2 of the present Contract.

6.3.3. Provide the Employer with the findings of the study both in electronic and printed form and return the copies of the case-files.

6.3.4. Not make public information contained in the case-file submitted for the study.

6.3.5. Comply with the provisions of the present Contract and bear responsibility for failure to comply with them.

6.4. The Executor shall have the right to:

6.4.1. Receive payment for the services provided timely and in full;

6.4.2. Provide services ahead of time,

6.4. Виконавець має право:

6.4.1. Своєчасно та в повному обсязі отримувати плату за надані послуги;

6.4.2. На дострокове надання послуг за письмовим погодженням Замовника.

**7. Відповідальність сторін**

7.1. У разі невиконання або неналежного виконання своїх зобов'язань за Договором Сторони несуть відповідальність, передбачену цим Договором та чинним законодавством України.

**8. Обставини непереборної сили**

8.1. Сторони звільняються від відповідальності за невиконання або неналежне виконання зобов'язань за цим Договором у разі виникнення обставин непереборної сили, які не існували під час укладання Договору та виникли поза волею Сторін (аварія, катастрофа, стихійне лихо, епідемія, епізоотія, війна тощо).

8.2. Сторона, що не може виконувати зобов'язання за цим Договором внаслідок дії обставин непереборної сили, повинна не пізніше ніж протягом семи днів з моменту їх виникнення повідомити про це іншу Сторону у письмовій формі.

8.3. Доказом виникнення обставин непереборної сили та строку їх дії є відповідні документи, що видані ТПП України, а також іншими уповноваженими державними органами.

8.4. У разі коли строк дії обставин непереборної сили продовжується більше ніж тридцять днів, кожна із Сторін в установленому порядку має право розірвати цей Договір.

**9. Вирішення спорів**

9.1. У випадку виникнення спорів або розбіжностей Сторони зобов'язуються вирішувати їх шляхом взаємних переговорів та консультацій.

**10. Строк дії Договору**

10.1. Цей Договір набирає чинності з моменту його підписання і скріплення печатками Сторін та діє до повного виконання Сторонами своїх зобов'язань, але не пізніше 31 грудня 2013 року.

upon the written consent of the Employer.

**7. Responsibility of the Parties**

7.1. In the case of failure to meet their obligations or in case of improper execution of their obligations under the present Contract, the Parties shall be held liable as provided for by the present Contract and by the Ukrainian legislation in force.

**8. Force majeure**

8.1. The Parties shall not be held liable for failure to meet their obligations or in the case of improper execution of their obligations under the present Contract in the case of emergence of force majeure circumstances that did not exist at the time of conclusion of the present Contract and have arisen beyond the control of the Parties (accident, crash, natural disaster, epidemics, epizootic outbreak, war etc.).

8.2. The Party that is unable to meet its obligations under the present Contract as result of force majeure circumstances, shall, no later than within seven days from the moment of emergence thereof, notify the other Party in written form.

8.3. Relevant documents issued by the Ukrainian Chamber of Commerce and by the other competent bodies shall be the proof of force majeure circumstances and of the period they would persist.

8.4. In the case when force majeure circumstances continue over thirty days, any of the Parties may terminate the present Contract in accordance with the established procedure.

**9. Dispute settlement**

9.1. In the case of disputes or clash of opinions, the Parties shall undertake to resolve them by way of negotiations and consultations.

**10. Duration of the Contract**

10.1. The present Contract shall come into effect from the moment of its signature and sealing by the Parties and shall remain in effect until full execution by the Parties of their obligations but not later than 31 December 2013.

10.2. The expiry of Contract's duration shall not spare the Parties of responsibility for its violation that took place during the period of its being in effect.

SAU 245528
USA-REL-0245762

10.2. Закінчення строку Договору не звільняє Сторони від відповідальності за його порушення, яке мало місце під час дії Договору.

### 11. Інші умови Договору

11.1. Будь-які зміни та доповнення до цього Договору набирають чинності з моменту належного оформлення Сторонами відповідної Додаткової угоди до цього Договору.

11.2. Одностороння відмова від виконання Сторонами своїх зобов'язань, які передбачені цим Договором, не допускається, крім випадків, передбачених цим Договором та чинним законодавством України.

11.3. У випадках, не передбачених цим Договором, Сторони керуються чинним законодавством України.

11.4. Цей Договір укладається у двох примірниках, що мають однакову юридичну силу, по одному для кожної Сторони.

### 11. Other provisions

11.1. Any amendments or supplements to the present Contract shall come into effect from the moment of proper formalisation by the Parties of any additional Agreement to the present Contract.

11.2. Unilateral refusal by any of the Parties to execute its obligations provided for in the present Contract shall not be allowed unless in case provided for in the present Contract or in the Ukrainian legislation in force.

11.3. In the cases not provided for in the present Contract, the Parties shall act pursuant to the Ukrainian legislation in force.

11.4. The present Contract is drawn up in two copies, each copy for each Party, that have equal legal force.

### 12. Місцезнаходження та банківські реквізити сторін
**ЗАМОВНИК:**

Міністерство юстиції України
Юридична адреса: 01001, м. Київ,
вул. Городецького, 13
Фізична адреса: м. Київ,
пров. Рильський, 10
Тел.: 380-44-271-15-68
Тел.: 380-44-271-16-67
код за ЄДРПОУ 00015622
Р/рахунок 35213036000030
в Державному Казначействі України
МФО 820172

**Заступник Міністра юстиції – керівник апарату**

_____А.Ю.Сєдов

М.П.
**ВИКОНАВЕЦЬ:**

**Skadden, Arps, Slate, Meagher & Flom LLP**

### 12. Legal addresses and bank data of the Parties

**THE EMPLOYER:**

Ministry of Justice of Ukraine
Legal address: 13, Horodetskogo St., Kyiv,
01001, Ukraine
Physical address: 10, Rylskiy Lane, Kyiv
Tel.: 380-44-271-15-68
Tel.: 380-44-271-16-67
Identification code 00015622
C/a 35213036000030
in the DKU
MFO 820172

**Deputy Minister  - Head of Apparat of the Ministry of Justice**

_____ Mr. Sedov A.Y.

**Seal**
**THE EXECUTOR:**

**Skadden, Arps, Slate, Meagher & Flom LLP and Affiliates**

SAU 245529
USA-REL-0245763

**and Affiliates**
68, rue du Faubourg Saint-Honoré
75008 Paris, France
T: 331.55.27.11.00
F: 331.55.27.21.99
**Partner**

_____ **Gregory B. Craig**
**Seal**

68, rue du Faubourg Saint-Honoré
75008 Paris, France
T: 331.55.27.11.00
F: 331.55.27.21.99
**Partner**

_____ **Gregory B. Craig**
**Seal**

1085917-LONSR01A - MSW

Confidential Treatment Subject to Rule 6(e)

SAU 245530
USA-REL-0245764

Appendix to Contract № _____
dated «_____» _____2013

### Statement of transfer

Kiev, Ukraine                                    «\_\_\_»_____2013

We, the undersigned
    Ministry of Justice of Ukraine, represented by Andrey Yurievich Sedov, Deputy Minister of Justice of Ukraine, the chief of staff, hereinafter referred to as the Employer, on one side, and Skadden Arps, represented by Gregory B.Craig, hereinafter referred to as the Executor, on the other side, hereinafter altogether referred to as Parties, executed this Statement of transfer confirming that the Executor delivered the services and independent report, the work on which was completed in 2012, as defined in Contract № \_ dated «_____» _____2013.
    The total cost of services rendered (excluding VAT)_____, VAT_____, the total cost of services rendered including VAT_____
    The Parties hereby confirm that the services were rendered in full, duly executed and accepted by the Client.

| THE EMPLOYER: | THE EXECUTOR: |
|---|---|
| Ministry of Justice of Ukraine<br><br>**Deputy Minister  - Head of Apparat of the Ministry of Justice**<br><br>_____ **Mr. Sedov A.Y.**<br><br>**Seal** | **Skadden, Arps, Slate, Meagher & Flom LLP and Affiliates**<br><br>**Partner**<br><br>_____ **Gregory B. Craig**<br>       **Seal** |

# Exhibit 3

**From:** Paul Manafort [pmanafort@dmpint.com]
**Sent:** Wednesday, March 27, 2013 8:19 PM
**To:** Craig, Gregory B (WAS)
**Subject:** Re: final bill to Ukraine

I understand.
P

---

**From:** <Craig>, Gregory B <Gregory.Craig@skadden.com>
**Date:** Monday, March 25, 2013 6:35 PM
**To:** Paul manafort <pmanafort@dmpint.com>
**Subject:** final bill to Ukraine

Paul:

I will be sending – through Alex – a final bill to the Ministry of Justice which will reflect our fees and expenses for the time frame July 2012 through March 2013. You should know – and Ukraine should also know – that we are taking pains NOT to double charge for time and expenses that others have already paid for. Accordingly, I anticipate that, once Ukraine pays our invoice, we will be making reimbursement to those who contributed to our fees and expenses in the past.

All the best,

Greg

**Gregory B. Craig**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**1440 New York Avenue, N.W. | Washington | D.C. | 20005-2111**
**T: 202.371.7400 | F: 202.661.9100**
**gregory.craig@skadden.com**

SAU 007796
USA-REL-0008060