UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br><br> *v.* <br><br> **GREGORY B. CRAIG**, <br><br> *Defendant.* | **Case No. 1:19-cr-0125 (ABJ)** |

**<u>DEFENDANT'S MOTION *IN LIMINE* TO PERMIT NON-REGISTRATION EVIDENCE</u>**

The Court has requested briefing on whether defendant Gregory B. Craig may refer at trial to instances where persons and entities engaged in conduct similar to the alleged activities of Skadden, as described in the Indictment, without registering under FARA. Mr. Craig has no intent to use these instances (referred to herein as "nonregistration evidence") to assert selective prosecution. Rather, the nonregistration evidence is directly relevant to the government's obligation to prove the essential elements of willfulness and materiality and to refute the government's theory that Mr. Craig engaged in an alleged concealment scheme to avoid a known duty to register under FARA.

**I.     INTRODUCTION**

Count One of the Indictment charges Mr. Craig with knowingly and willfully falsifying and concealing, by a scheme, material facts in a matter within the jurisdiction of the Department of Justice's FARA Unit. ECF 1 (Indictment), at ¶ 48. The alleged purpose of the scheme was "to avoid registration [under the Foreign Agents Registration Act] as an agent of Ukraine" for work Mr. Craig did for Ukraine's Ministry of Justice. *Id.* at ¶ 49. The Indictment expressly alleges that Mr. Craig "had an obligation under FARA to register as an agent of Ukraine." *Id.* at ¶ 42. Mr. Craig is entitled to counter any evidence that he engaged in the alleged scheme to avoid

registering with evidence that the common understanding at the time was that none of his activities would have required registration under FARA.

Mr. Craig intends to show (among other things) that he did not participate in a scheme to avoid registration because he honestly believed that he had no obligation to register and, further, that the allegedly undisclosed facts would not have led to an obligation to register. The nonregistration evidence bolsters this defense by tending to show that Mr. Craig's understanding about what conduct required registration was widely shared at the time and reasonable. For example, in 2011, Covington & Burling LLP and accounting firm BDO USA prepared an independent report on the Ukrainian government's allegations of financial misconduct against former Prime Minister Yulia Tymoshenko. On June 17, 2011, Covington and BDO held a press conference at the National Press Club in Washington, D.C. to discuss the report.[1] Both firms were acting on behalf of foreign principals – Tymoshenko and her political party. Covington is one of the nation's leading FARA firms. Yet neither Covington nor BDO ever registered under FARA. Moreover, the Covington-BDO report and press conference garnered substantial media attention in the United States. Covington's apparent belief that producing such a report and discussing it with news media located in the United States did not require registration is powerful evidence that Mr. Craig would have had no reason to engage in a criminal scheme to avoid a registration obligation based on similar activities, especially when his very limited media contacts were motivated by his desire to protect his own reputation and that of his law firm, as well as defending the integrity of the Skadden report.

Mr. Craig further intends to show that the alleged falsifications and nondisclosures were not material because they would not have affected a reasonable government decision-maker who

---

[1] A video of the press conference is still available at https://www.youtube.com/watch?v=pVgAf5qjIkQ.

was considering whether Mr. Craig had to register. The nonregistration evidence is probative of whether a reasonable government decision-maker would have considered Mr. Craig's conduct registrable and therefore is a fair subject for cross-examination of government witnesses on materiality. Finally, Mr. Craig intends to show that he did not knowingly and willfully falsify or conceal any material fact because he did not believe any of the information at issue was material to the FARA Unit.

## II.     ARGUMENT

Mr. Craig understands that the government objects to the nonregistration evidence on relevance grounds. In a criminal case, the government's projection of what evidence is relevant to the defense should be viewed skeptically. The defendant has no burden of proof and defense tactics often change during trial. The arguments set forth below do not confirm that Mr. Craig will offer the nonregistration evidence in exactly these ways, or even at all. They are simply a good faith explanation of how such evidence could be admissible depending on how the trial unfolds.

### A.     The nonregistration evidence tends to disprove the existence of a scheme to falsify or conceal material facts

Count One of the Indictment charges falsification or concealment of a material fact *by scheme* under 18 U.S.C. § 1001(a)(1). *See* ECF 1, at ¶¶ 48-49. Schemes have purposes, and the alleged purpose of this one was for Mr. Craig "to avoid registration as an agent of Ukraine." *Id.* at ¶ 49. The fundamental theory of Count One is that Mr. Craig knew he was required to register under FARA and that he falsified or covered up material facts by scheme to avoid registration. *A fortiori*, evidence that Mr. Craig did *not* believe he had to register under FARA tends to refute the purpose of the alleged scheme, which refutes the existence of a scheme to falsify or conceal, which refutes a criminal charge under § 1001(a)(1).

Under Rule 401, evidence is relevant if "it has *any tendency* to make a fact more or less probable than it would be without the evidence" and the fact is of consequence. Fed. R. Evid. 401 (emphasis added). When the fact of consequence is a criminal defendant's intent, the jury cannot look inside the defendant's mind, so circumstantial evidence supporting or refuting the defendant's claimed or alleged intent is unquestionably relevant and often decisive. *See*, *e.g.*, *United States* v. *Hurt*, 527 F.3d 1347, 1351 (D.C. Cir. 2008) (defendant could show lack of specific intent by reference to extrinsic evidence).

The decision in *United States* v. *Safavian*, 528 F.3d 957 (D.C. Cir. 2008), is dispositive. In that case, which also charged a false-statement scheme under § 1001(a)(1), the Court of Appeals vacated a conviction because the district court excluded Safavian's proffered expert testimony concerning how persons in Safavian's position would understand the meaning of "doing business" with the federal General Services Administration. Safavian offered the expert testimony to show that his personal interpretation was not "'made up out of whole cloth.'" *Id.* at 966. The Court of Appeals agreed that the expert's testimony would have bolstered the defendant's "contention that, as a government contracts professional himself, he had this meaning in mind" when he made the statements the government alleged to be false. *Id.* at 966.

Like Safavian, Mr. Craig has designated an expert (Amy Jeffress) to testify about the common understanding of professionals in his circumstances regarding the obligation to register. *See* ECF 40, at 1 (designating Ms. Jeffress to testify that "it would have been reasonable for a knowledgeable practitioner in the field in or around 2012 and 2013 to believe that a lawyer or law firm engaged by a foreign government to perform an independent analysis and to complete a report … was not required to register as an agent" under FARA). Ms. Jeffress's opinion is based in part on nonregistration evidence like the Covington & Burling incident summarized above. It

4

is also based on the practices of think tanks at the time, as described in a lengthy 2014 New York Times article. *See* Eric Lipton et al., *Foreign Powers Buy Influence at Think Tanks* (Sep. 7, 2014). The article reported that these institutions seldom registered under FARA, and it quoted experienced lawyers who debated whether registration was required. From the think-tank perspective, registration was not required because the think tanks wrote independent reports for their own purposes, not for the purposes of the foreign principals who financed the reports. *See id.* at 8 ("The scholars are their own agents …. They are not agents of these foreign governments."). The article shows that as late as 2014, many sophisticated professionals in the Washington community believed that FARA registration was not required when the report-drafters were plausibly acting in their own interests rather than at the direction or under the control of foreign principals, even though the foreign principals were funding the drafters' activities.

It is beyond question that an expert witness may cite specific incidents that she reasonably relies upon to support her opinion. *See* Fed. R. Evid. 703. Ms. Jeffress's testimony, and the nonregistration evidence she will rely on, shows that Mr. Craig's understanding was not "made up out of whole cloth" and in fact was the common understanding among competent professionals at the time.

> **B.    The nonregistration evidence tends to disprove the materiality of the alleged statements and omissions**

The government has the burden to show that the allegedly falsified or concealed facts were material, meaning that they had a natural tendency to influence or were capable of influencing the decision of the decision-making body to which they were addressed. The government has indicated that it intends to call Heather Hunt, the director of the FARA Unit, to

offer testimony in support of the proposition "that the responsive information the defendant concealed from the FARA Unit was material to its determination." ECF 59, at 2.

As Mr. Craig has previously argued (in connection with his motion *in limine* to preclude Ms. Hunt's opinion testimony), the test for materiality is objective; *i.e.*, whether a reasonable decision-maker would have been influenced by the omitted or false information. *See* ECF 48, at 6. Moreover, materiality is unquestionably an element of proof that must be decided by the jury. *See United States* v. *Gaudin*, 515 U.S. 506 (1995). Thus, Mr. Craig must have a fair opportunity to cross-examine Ms. Hunt or other government witnesses who will claim that the alleged statements and omissions could have affected the FARA Unit's decision-making. If Ms. Hunt is permitted to testify that she would have concluded that Mr. Craig was required to register had she been aware of certain hypothetical facts, Mr. Craig is entitled to ask her why she did not conclude that Covington & Burling, for instance, was required to register when Covington lawyers held a televised press conference in Washington D.C. to promote the cause of Yulia Tymoshenko and her political party, who paid for Covington's work.

A criminal defendant's right to cross-examine government witnesses, particularly the principal government witness, is exceptionally broad. *E.g.*, *United States* v. *Dorman*, 860 F.3d 675, 686 (D.C. Cir. 2017) ("there should be great latitude for cross-examination on issues raised in direct testimony") (citations and quotations omitted); *United States* v. *Fowler*, 465 F.2d 664, 666 (D.C. Cir. 1972) ("a very wide latitude should be allowed" in cross-examination of the "principal prosecution witness"). Failure to permit broad cross-examination, particularly in areas that challenge the credibility of government witnesses, can constitute a Sixth Amendment violation. *See*, *e.g.*, *Smith* v. *United States*, 390 U.S. 129 (1968); *see also Alford* v. *United States*, 282 U.S. 687, 692 (1931) ("Prejudice ensues from a denial of the opportunity to place the

witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them.").

Perhaps Ms. Hunt will have a satisfactory explanation concerning why she distinguishes Mr. Craig's circumstances from those of others. Perhaps she will not. But that decision is for the jury, and the nonregistration evidence clearly may be used for impeachment.

    C.    **The nonregistration evidence tends to disprove that Mr. Craig intended to falsify or conceal a material fact**

Another key issue at trial will be whether the government can prove that Mr. Craig "knowingly and willfully" falsified or concealed a "material fact." *See* 18 U.S.C. § 1001(a)(1). Willfulness requires knowledge that the conduct is unlawful. In this context, therefore, the government must prove that the allegedly concealed facts were material, because withholding immaterial information is not unlawful, even when there is a legally enforceable duty to disclose. In other words, the government must prove beyond a reasonable doubt that Mr. Craig knew that the facts at issue were material; *i.e.*, that Mr. Craig knew that the allegedly falsified or concealed information might have made a difference to the FARA Unit. *Cf. United States* v. *Science Applications Int'l Corp.*, 626 F.3d 1257, 1271 (D.C. Cir. 2010) (under False Claims Act provision imposing liability on a person who "knowingly presents … a false or fraudulent claim" to the government, plaintiff must establish that defendant knows that its compliance with contractual obligation was material to the government's decision to pay); *see also Universal Health Servs.* v. *United States ex rel. Escobar*, 136 S. Ct. 1989, 2002-03 (2016) (appearing to endorse *SAIC* holding on knowledge of materiality).

Mr. Craig expects to show that he did not willfully mislead the FARA Unit because he honestly thought his conduct did not require registration. A corollary to that belief is that Mr. Craig did not believe that the information at issue would have been material to the FARA Unit

because it should not have affected the Unit's decision-making on whether he was required to register. If other professionals were holding press conferences in the United States on behalf of foreign principals without registering under FARA – and the FARA Unit was taking no action in response – that evidence tends to bolster Mr. Craig's honest belief that the FARA Unit would not have been influenced in its decision on registration even if Mr. Craig discussed the specific facts the government now claims he concealed.

The jury cannot see inside Mr. Craig's mind to know if his belief was honest. But the jury can draw inferences about Mr. Craig's belief from evidence that other professionals in similar circumstances did not register, particularly when their conduct was open and notorious. If others in the same community did not register in comparable circumstances, it tends to support Mr. Craig's contention that he believed the allegedly falsified or concealed information was not material to FARA. On that additional ground, the nonregistration evidence is relevant and should be admitted.

### III.   CONCLUSION

For the reasons stated, defendant Gregory B. Craig respectfully requests that the Court permit introduction of evidence of other instances of nonregistration under FARA.

Dated: July 24, 2019                        Respectfully submitted,

*/s/ William W. Taylor, III*
William W. Taylor, III (D.C. Bar No. 84194)
Paula M. Junghans (D.C. Bar No. 474419)
Ezra B. Marcus (D.C. Bar No. 252685)
ZUCKERMAN SPAEDER LLP
1800 M Street N.W. Suite 1000
Washington, D.C. 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
Email: wtaylor@zuckerman.com
Email: pjunghans@zuckerman.com
Email: emarcus@zuckerman.com

William J. Murphy (D.C. Bar No. 350371)
Adam B. Abelson (D.C. Bar No. 1011291)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
Tel: (410) 332-0444
Fax: (410) 659-0436
Email: wmurphy@zuckerman.com
Email: aabelson@zuckerman.com

*Attorneys for Defendant Gregory B. Craig*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 24, 2019, the foregoing was served on counsel of record via the Court's CM/ECF service.

                                              /s/ *Ezra B. Marcus*
                                              Ezra B. Marcus