```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA
 2

 3   United States of America,      ) Criminal Action
                                    ) No. 19-cr-125
 4                  Plaintiff,      )
                                    ) MOTIONS HEARING
 5   vs.                            )
                                    ) Washington, DC
 6   Gregory B. Craig,              ) July 10, 2019
                                    ) Time:  11:00 a.m.
 7                  Defendant.      )
     _____
 8
            TRANSCRIPT OF TELEPHONE SCHEDULING CONFERENCE
 9                       HELD BEFORE
           THE HONORABLE JUDGE AMY BERMAN JACKSON
10                UNITED STATES DISTRICT JUDGE
     _____
11
                    A P P E A R A N C E S
12
13   For the Plaintiff: **Fernando Campoamor-Sanchez**
                        **Molly Gulland Gaston**
14                      U.S. ATTORNEY'S OFFICE FOR THE
                         DISTRICT OF COLUMBIA
15                      555 Fourth Street, NW
                        Washington, DC 20530
16                      (202) 252-7698
                        Email: Fernando.campoamor-sanchez@usdoj.gov
17                      Email: Molly.gaston@usdoj.gov
                        **Jason Bradley Adam McCullough**
18                      U.S. Department of Justice
                        950 Pennsylvania Avenue, NW
19                      Washington, DC 20530
                        (202) 233-0986
20                      Email: Jason.mccullough@usdoj.gov

21   For the Defendant: **William James Murphy**
                        **William W. Taylor, III**
22                      **Adam B. Abelson**
                        ZUCKERMAN SPAEDER, LLP
23                      100 East Pratt Street
                        Suite 2440
24                      Baltimore, MD 21202
                        (410) 949-1146
25                      Email: Wmurphy@zuckerman.com
                        Email: Wtaylor@zuckerman.com
                        Email: AAbelson@zuckerman.com
```

**Ezra B. Marcus**
**Paula M. Junghans**
ZUCKERMAN SPAEDER, LLP
1800 M Street, NW
Suite 1000
Washington, DC 20036
(202) 778-1814
Email: Emarcus@zuckerman.com
Email: Pjunghans@zuckerman.com

_____

Court Reporter:          Janice E. Dickman, RMR, CRR, CRC
                         Official Court Reporter
                         United States Courthouse, Room 6523
                         333 Constitution Avenue, NW
                         Washington, DC  20001
                         202-354-3267

1            THE COURTROOM DEPUTY:  Your Honor, this morning we

2     have Criminal Case Number 19-125, the *United States of America*

3     *v. Gregory B. Craig.*  Mr. Craig is present in the courtroom,

4     Your Honor.

5            Will counsel for the parties please approach the

6     lectern, identify yourself for the record.

7            MR. CAMPOAMOR-SANCHEZ:  Good morning, Your Honor.

8            Molly Gaston, Jason McCullough, and

9     Fernando Campoamor-Sanchez for the United States.

10           THE COURT:  Good morning.

11           MR. TAYLOR:  Good morning, Your Honor.

12           I'm Bill Taylor.  With me is my partner, Bill Murphy,

13     Adam Abelson, Ezra Marcus, Paula Junghans.

14           THE COURT:  All right.  Good morning.

15           MR. TAYLOR:  Good morning.

16           THE COURT:  Can I just have some small representative

17     group of counsel from both sides at the bench very quickly.  Or

18     you can all come, if you want, but it will be crowded.

19           (Bench conference:)

20           THE COURT:  I just wanted to put on --

21           THE COURTROOM DEPUTY:  One second, Your Honor.

22           THE COURT:  All right.

23           I just want to put on the record, since now that a

24     new attorney has been added to the Zuckerman team, that there

25     was a point when Ms. Junghans and I were at Venable together.

```
 1              THE COURTROOM DEPUTY:  Judge --
 2              THE COURT:  All right.  Okay.  I don't know what's
 3    going on.  Am I turned off?
 4              I don't think there's any big secret, but I just
 5    wanted to put on the record that I previously worked with
 6    Ms. Junghans.  It was a long time ago.  We weren't social
 7    friends.  I don't think we've ever been to each others' homes.
 8    But I thought you should be aware of that affiliation.
 9              I'm just trying to put it on the record.  I don't
10    think it requires recusal on my part, but I wanted everybody to
11    know.
12              MR. CAMPOAMOR-SANCHEZ:  We agree.
13              THE COURT:  Okay.  Thank you.
14              (Open court:)
15              THE COURT:  All right, we have a number of issues to
16    resolve this morning.  I plan to proceed by -- issue by issue,
17    hearing from the defense and then the government.  If there are
18    different lawyers assigned to different issues, I have no
19    problem with people taking turns taking the lead on those
20    matters.
21              Before we start, I do want to underscore that what we
22    have to do today is to hear argument to enable me to make a
23    decision on the motion to dismiss the indictment, which is
24    based on the face of the indictment.  I understand that the
25    defense may have fairly bristled at what it felt was the
```

1    government's attempt to argue the merits and prove him guilty

2    in its pleadings.

3           And I think it's fair to say that this sort of

4    expansive presentation, either to educate me or to educate the

5    public, didn't just start in the opposition to the motion to

6    dismiss.  The government filed what can be described as a

7    speaking indictment.  The defense engaged in a lot of

8    speechifying at the arraignment, and we've had a lot of

9    pleadings that have had a lot of exhibits that establish the

10   underlying facts.

11          But today we have a number of narrow legal issues to

12   decide and plenty to talk about.  We're going to start from the

13   unshakeable proposition that this defendant is presumed to be

14   innocent.

15          But once he files a motion to dismiss, I hope

16   everyone understands that the law requires us, for purposes of

17   this hearing, to start from the proposition that the

18   allegations are true.  So this hearing is about the sufficiency

19   of what was alleged, and not whether it's going to be proved

20   beyond a reasonable doubt.

21          Also, I can say that I have probably had my fill of

22   colorful verbs and adjectives and adverbs, all of which have

23   been employed in some sharp pleadings.  The defense, in

24   particular, has laid out a hefty dearth of condescension over

25   everything and I don't think we need to hear any of that tone

```
1    today.
2              I am privileged this morning to have two teams of
3    really smart, really experienced attorneys in front of me, and
4    that is a privilege and a pleasure.  It doesn't happen every
5    day.  But I know you can both say what you need to say
6    directly, without casting aspersions on the other side.  And I
7    can tell you that it's usually more persuasive that way anyway.
8              So I want to start with the defense and the first
9    motion to dismiss, Docket 19, on the Safavian issue.  So
10   whoever is going to handle that.
11             MR. TAYLOR:  May it please the Court.  Bill Taylor
12   for Mr. Craig.
13             The way Mr. Murphy and I have divided this is that I
14   would address Count 1 and he would address Count 2, if that's
15   permissible.
16             THE COURT:  That's fine by me.  As I said at the
17   beginning, there's a lot of issues.
18             MR. TAYLOR:  We'll try not to overlap.
19             THE COURT:  All right.  Well --
20             MR. TAYLOR:  There are some issues which relate to
21   both counts.
22             THE COURT:  I understand that.
23             MR. TAYLOR:  And that it's probably inevitable that I
24   will talk about Section 618, in some respect, as will he.
25             THE COURT:  All right.
```

1          MR. TAYLOR:  But we will try not to do it and press

2     the Court's -- press the Court's patience.

3          THE COURT:  All right.  Well, Mr. Taylor, I believe

4     it's fair to say there's no dispute concerning the legal

5     proposition that the government cannot predicate a violation of

6     18 U.S. Code Section 1001 on concealment alone, if there was no

7     duty to disclose.  So I think we're all agreed that that's

8     where we're starting.

9          And do you agree that for purposes of this motion, I

10    have to look at the indictment on its face, as a whole, and

11    assume the truth of the allegations?

12         MR. TAYLOR:  We do.

13         THE COURT:  And with respect to a motion to dismiss,

14    is it fair to say that the case law generally calls for

15    resolution of issues of proof later, and I'm not supposed to

16    dismiss the indictment as long as the elements are included and

17    the defendant has been put on notice of the charges?

18         MR. TAYLOR:  I agree with almost everything you said.

19         THE COURT:  All right.

20         MR. TAYLOR:  The allegation in Paragraph 52 of the

21    indictment, which purports to be an allegation of fact, that is

22    the allegation which asserts that there was a duty.  That

23    raises a question of law on which the entire indictment turns.

24    So I don't think you are obliged to assume that to be true.

25         THE COURT:  All right.  Well, there's -- that's a

1    question I have, is the existence of the duty a question of law

2    or a question of fact?

3              MR. TAYLOR:  It is clearly a question of law.

4              THE COURT:  So even if this case were to proceed to a

5    jury, it would be up to me to decide?

6              MR. TAYLOR:  Yes.

7              THE COURT:  And is there a case that says that it's a

8    question of law?

9              MR. TAYLOR:  *Crop Growers*.

10             THE COURT:  Okay.

11             MR. TAYLOR:  I think in passing, Judge Kessler made

12   that observation.

13             THE COURT:  Judge Kessler?

14             MR. TAYLOR:  Yes.

15             THE COURT:  Is there anything that's binding on me

16   that says it's a question of law?

17             MR. TAYLOR:  Well, I think *United States v. Safavian*

18   makes it very clear that the decision in that case is based

19   upon a principle of law.  The principle of law is that

20   there must be a specific duty to disclose specific facts.  And

21   those are legal requirements for an indictment of this sort,

22   which is based on a concealment theme.

23             So, yes, it is a question of law; just as it was in

24   *Crop Growers* and *Singhal*, where both Judge Lamberth and

25   Judge Kessler looked at the face of the indictment, just the

1    face of the indictment, and said, "Based upon the allegations

2    of this indictment, I do not find, as a legal matter, that

3    there is a duty to disclose what is alleged to have not been

4    disclosed."

5         THE COURT:  All right.  And while we're talking about

6    questions of law and questions of fact, materiality, is that a

7    question of law is or is that a question of fact for the jury?

8         MR. TAYLOR:  That's a question for the jury.

9         THE COURT:  All right.

10        MR. TAYLOR:  But I think it has to meet a certain

11   threshold for the Court to let it go to the jury.

12        THE COURT:  All right.

13        MR. TAYLOR:  Like every other thing that -- whether

14   something goes to the jury depends upon whether the Court

15   decides it's sufficient to go to the jury.  But, ultimately,

16   materiality is a question of fact.

17        THE COURT:  So it's your position that even though

18   the indictment alleges he lied and concealed, and Paragraph 52

19   specifically alleges that he had a duty to disclose, that it

20   doesn't state an offense on its face?

21        MR. TAYLOR:  Correct.

22        THE COURT:  All right.  Now, one problem you

23   indicated is that you say the government charged a concealment

24   scheme without a duty to disclose.  And you put in your reply,

25   and this was in the motion for a bill of particulars, "The

1    government chose to prosecute a concealment scheme under 18

2    U.S. Code Section 1001(a)(1), rather than a false statement

3    case under (a)(2)."

4         And while it's true that (a)(2) prohibits the making

5    of any materially false, fictitious, or fraudulent statement,

6    where is it written that (a)(1) is only about concealment?

7    Doesn't that section of the statute impose sanctions on someone

8    who knowingly or willfully falsifies, conceals, or covers up by

9    any scheme?

10        So -- and doesn't this indictment allege all those

11   things?

12        MR. TAYLOR:  This indictment alleges a concealment

13   scheme.  It's unmistakable, both from the face of the

14   indictment and from the government's description of it.  The

15   boilerplate language that you referred to appears in virtually

16   every (a)(1) indictment which is before the Court.

17        If I might refer you to a case which is cited in

18   Footnote 12 of *Safavian*.  It's called *United States v.*

19   *St. Michael's Credit Union*.  That was -- it's a 1989 case.

20        But they look at this very question and they say,

21   "The case law affirms that 1001 incorporates two separate and

22   distinct offenses, concealing material -- one, concealing

23   material facts from a federal agency by trick, scheme, or

24   device; or, two, making false or fraudulent statements to the

25   government."

1              That's the consistent view taken by district courts

2     and courts of appeals in cases where the allegations are

3     exactly the same or closely allied to the allegations in this

4     case, and in which --

5              THE COURT:  But can't you commit the concealment

6     scheme by making a false statement?  *Safavian* gave the jury

7     specifications and said:  You find him guilty because he, A,

8     lied about this; B, omitted that.  And the jury had to decide.

9              And this indictment alleges, in Paragraph 56 and 62,

10    that the defendant made specific statements that were false and

11    misleading.  Couldn't those violate 1001, if the -- (a)(1), if

12    the purpose of those false statements was to conceal or

13    cover-up the true facts as alleged?

14             MR. TAYLOR:  Not if there is no duty to disclose what

15    is concealed.

16             THE COURT:  All right.

17             MR. TAYLOR:  That's -- that's -- an indictment for a

18    concealment scheme such as this one, if there is no duty, then

19    the Court -- and the Court agrees there is no duty, then it's

20    the government's view that you could strike the allegations of

21    concealment and duty, and simply, somehow, turn this indictment

22    into a false statements indictment.  That would --

23             THE COURT:  I think they're saying that there is a

24    duty.  I don't think they're saying you can skip that.  I don't

25    believe the government --

1              MR. TAYLOR:  So if there's no duty, then the portions

2     of the indictment, even in the government's view, that depend

3     upon duty would have to be stricken.  Then the question is:

4     What's left?  They don't -- how would you possibly reconstruct

5     this indictment when we know that the grand jury was told it is

6     a concealment scheme?  The grand jury was erroneously told that

7     there was a duty.

8              And as we point out, several times in our pleadings,

9     you cannot escape the notion that there is grave doubt that the

10    grand jury would have indicted this case at all if they hadn't

11    been given erroneous -- an erroneous version of the duty

12    question.  But --

13             THE COURT:  All right.  There seems to me, as they

14    argue it, there's two sources -- at least two sources of the

15    duty.  The primary one is Section 618 -- and we'll figure out

16    whether you or Mr. Murphy should be the one who talks about

17    that.

18             But, is *Safavian* distinguishable?  Because in that

19    case the defendant initiated the inquiry, and all the

20    government alleged there was a broad duty to act ethically, as

21    opposed to responding to an administrative inquiry.

22             If here a defendant chooses to attend a meeting and

23    answer questions, does he have a duty at that point not to omit

24    material facts?

25             MR. TAYLOR:  No.

1          THE COURT:  What's the best case that says he does?

2          MR. TAYLOR:  *Safavian*.

3          THE COURT:  Well, *Safavian*, it is true, struck down

4     not only the conviction for the meetings with the ethics

5     official that he initiated, they say he didn't have a duty to

6     do that, but they also say you can't convict him for his

7     meeting with the IG.

8          MR. TAYLOR:  Right.

9          THE COURT:  I have read this part of the opinion at

10    least 20 times.  Can you tell me why -- what the reasoning is

11    in *Safavian* for that finding?  The only part of the opinion

12    where they talk about that is, they reject the government's

13    proffered theory, which is once you start to talk, you have to

14    say everything.  The Court said that alone is not enough.

15          But, does that mean that if you are being interviewed

16    by the government, you can -- I mean, you would agree that a --

17    an omission could violate -- an omission can be a false

18    statement, correct?

19          MR. TAYLOR:  Not in the case of a concealment scheme

20    under (a)(1).

21          THE COURT:  Right.  If you're under (a)(2), a pure

22    omission could be, essentially, the --

23          MR. TAYLOR:  I don't think it can be under (a)(2),

24    but that's a different question.  (A)(2) requires an

25    affirmative lie.

1    THE COURT:  All right.  Well, but don't they -- they

2    allege more in this case than just he didn't tell everything,

3    and once he started talking he was supposed to tell everything.

4    In Paragraph 56, the indictment alleges he made a false

5    statement when he said he only met with the press after the

6    report was made public.

7    In Paragraph 61, they said he made a false statement

8    when he said his media contacts were solely reactive, to

9    correct misinformation.

10    And in Paragraph 62, they allege that he made a false

11    statement when he said he provided a copy of the report in

12    response to request.

13    And then Paragraph 63 alleges he didn't say he met

14    with reporters and he delivered the report before it was

15    public.

16    Is that just an allegation that he didn't go on to

17    say everything he knew, or is that basically a paragraph

18    alleging why what he did say was false and misleading and

19    concealing?

20    MR. TAYLOR:  I think I got the gist of the question.

21    THE COURT:  I mean, I'm wondering, is this different

22    than *Safavian*?

23    MR. TAYLOR:  (A)(1) and (a)(2) are different

24    offenses.  We all agree with that.  Our view is that (a)(1)

25    prohibits schemes, principally concealment schemes which are

1    accomplished by trick, device, or scheme.  Right?  Concealment

2    by trick, device, or scheme.

3              A mere false statement, a false statement is not a

4    violation of (a)(1).  A false statement, a knowing and willful

5    false statement may be a violation of (a)(2).

6              But you raised an interesting question that I would

7    like to address.  You referred to Paragraphs 56, 61, and 62.

8    If you would permit me, I would like to put the *Safavian*

9    indictment before you.

10             If you would look at page 7, Count 2, you will see

11   that the allegations of violation of (a)(1) include a

12   concealment and a false statement.  And the false statement is

13   specifically identified, and it is said to be knowing, when he

14   knew in truth and in fact that it was false.

15             Now, take Paragraph 56 of this indictment.  That

16   refers to the June 3rd letter.  All it says is:  The letter

17   contained the following material false and misleading

18   statements and omissions.

19             The grand jury did not find and did not allege that

20   Mr. Craig knowingly made a false statement in that letter.  And

21   the very same thing is true in Paragraph 61, which, by the way

22   says:  He made false and misleading -- this is the oral, the

23   meeting -- made false and misleading statements to the FARA

24   unit which were consistent with something else.

25             It does not charge that he knowingly lied in that

1      meeting, and it does not even say what statement is false and

2      what is misleading, nor that what he said or didn't say was

3      material.

4              The same is true with Paragraph 62, which is the

5      letter that follows the oral meeting.  Which, by the way, the

6      oral meeting, even the government concedes, there's no --

7      there's no obligation to volunteer because the Section 618

8      statute only refers to documents.

9              THE COURT:  Well, I'm not sure that we have a motion

10     to dismiss the indictment for an absence of an allegation that

11     the falsehoods were knowing.  I guess I'm still asking -- first

12     of all, what principle can I derive from *Safavian* about the

13     fact that they struck down not only the conviction for making

14     false statements and concealing with respect to the ethics

15     officer, but also the IG?  Do you understand why?

16             MR. TAYLOR:  Yes, I think so.

17             THE COURT:  Okay.

18             MR. TAYLOR:  I think what they said was that when you

19     are being interviewed by -- when you are -- let's put it this

20     way:  When you are speaking to a government agent -- so the

21     context is in 1001, you're speaking to someone within the

22     context of 1001 -- and you are alleged to have failed to say

23     things in that conversation, things which you were not asked to

24     say, but which you were supposed to guess at because they were

25     later determined to be material or relevant or interesting.

1    You're supposed -- you cannot be prosecuted for not saying

2    those things, unless there is a specific duty to say specific

3    things.

4            THE COURT:  But if you are specifically told:  We

5    want to talk to you about X, and these are the particular facts

6    that are important to us, are you then on notice that you have

7    to be truthful and --

8            MR. TAYLOR:  That would be a different case from this

9    one.  The seven specific questions which appear in the April

10   letter, which are answered in the June letter, they are

11   specific questions.  Every one of them is answered truthfully.

12   It says:  What did you do?  What did you know?  What did --

13   what was your understanding?

14           There's no question asked of him about the role of

15   anybody else in this so-called media rollout.  This is a case

16   just like *Safavian*, in which he is asked questions -- and put

17   aside the ethics officer -- he's asked questions by a law

18   enforcement officer.  Let's just assume for the moment that

19   FARA is a law enforcement agency.  He's asked questions, he

20   answers the questions.  He doesn't volunteer what's in

21   Paragraph 63 of the indictment.  And what *Safavian* says is that

22   that's not a crime.

23           THE COURT:  All right.  Well, in the *United States v.*

24   *Dale*, a district court judge distinguished between an

25   affirmative act, a person's deliberate failure to disclose to

1    the government material facts in the face of the duty to

2    disclose them, and a passive failure to disclose, a mere

3    silence in the face of unasked questions.

4            Was that case wrongly decided?  Was that contrary to

5    *Safavian*?

6            MR. TAYLOR:  I don't -- I don't think so.  I mean, I

7    think, if I remember the facts in *Dale*, there is the mere

8    silence, which under some circumstances could be taken as a

9    misrepresentation -- *Bramblett*, for example.

10           But when you have mere silence in response to a

11   question, unless there is, like in *Moore*, a duty which arise

12   from some other source -- the government likes *Moore*, which, of

13   course, is decided before *Safavian*.  But *Moore* is easy.  The

14   duty of *Moore* to disclose her relationship with her relative

15   is -- comes right out of the regulations and the contracts

16   themselves.

17           Unless there is some -- this is -- this is what

18   *Safavian* is all about:  You can't prosecute somebody for not

19   saying something they're not asked, unless they're in a

20   situation in which there is --

21           THE COURT:  Is that what is alleged here?  I mean --

22           MR. TAYLOR:  Yes, absolutely.

23           THE COURT:  -- they allege that they sent letters

24   saying:  In connection with our making a determination about

25   whether or not you need to register, we want to know the -- the

1    first letter was very broad, tell us everything you did during

2    the -- you know, tell us what you did in this representation.

3              MR. TAYLOR:  Right.

4              THE COURT:  The second letter is more specific.  We

5    want to know who did you give the report to and when?  And we

6    want to know all the media -- they ask a specific question

7    about the media.

8              At that point, where they say:  Acting in our

9    capacity as enforcing this statute, in order to make our

10   determination, we want to know about these specific underlying

11   facts, and he's in a meeting.  You're saying at that point he's

12   not on notice that he needs to provide information that answers

13   those questions fully?  He can answer them halfway but not all

14   the way?

15             MR. TAYLOR:  That wasn't what the meeting was about,

16   and the government doesn't contend that it was.  The -- what's

17   in Paragraph 63, which says -- and it says:  At no time.  It

18   doesn't tie it to a specific:  At no time did he disclose --

19             THE COURT:  But you're also arguing that the

20   written -- the allegations about the written statements also

21   fall under this theory.  Or are you only talking about the oral

22   meeting?

23             MR. TAYLOR:  Both.  Both.

24             THE COURT:  Okay.  All right.

25             MR. TAYLOR:  Both.  But, the IG agent, there's no way

1    to distinguish the IG agent asking Safavian, tell me what your

2    business was with Abramoff, and he doesn't say Abramoff had

3    business with the GSA.  You can't get closer than that.

4           You know, the circuit sometimes leaves a little to be

5    desired in terms of interpreting its decisions, but there's no

6    question about what the circuit means to say in *Safavian*.

7           THE COURT:  Well, it seemed like the circuit said the

8    government just didn't come forward with anything other than

9    people generally have a duty to act generally ethically, and

10   that that wasn't good enough.

11          Here, the government is saying this -- there's

12   statutory structure, which we'll get to.

13          Now, the government has pointed to the *White Eagle*

14   case out of the Ninth Circuit, and the *Stewart* case out of the

15   Second Circuit.

16          Is that all just contrary to the law of this circuit,

17   where they say -- in *White Eagle*, the circuit said, "As other

18   circuits have recognized, a condition under 1001(a)(1) is

19   proper where a statute or government regulation requires a

20   defendant to disclose specific information.  The same holds

21   true when a defendant responds to specific questions on a

22   particular topic.  See *United States v. Stewart*."

23          Again, that was somebody responding to specific

24   questions regarding a specific topic.

25          Did *Safavian* really mean to set up a principle and a

1    difference between the law in this circuit about what your

2    duties and responsibilities are when you're sitting down with

3    an agent who's asking you about something specific?  You would

4    agree, you can't lie to the agent, correct?

5              MR. TAYLOR:  We're not even discussing that.

6              THE COURT:  Okay.  So -- but, you're saying that

7    they've carved out -- if you say (a) and (b) but you don't say

8    (c) and (d), and (c) and (d) are responsive to the question you

9    were asked, you don't have to do that?

10             MR. TAYLOR:  That's different.  That's different.

11   That's different.  What the government contends is not that

12   what is omitted was responsive, but what was omitted was

13   omitted and it was material.  It wasn't -- the government

14   doesn't say:  You were asked, Mr. Craig, to say what is in

15   Paragraph 63.  You were asked and you lied about it.

16             What the government says is at no time did you

17   volunteer what is in Paragraph 63.

18             *White Eagle*, Your Honor, is one of our favorite

19   cases.  *White Eagle* is a defense case and it -- oh, yes.  It

20   reverses a conviction.  It's a -- and it cites *Safavian* as

21   authority for the proposition that in the absence of a statute

22   which imposes a specific duty to make specific disclosures, a

23   nondisclosure is not criminal.

24             And *White Eagle* is a case about embezzlement on an

25   Indian reservation in which the defendant did not disclose his

1      relationship with one or more of the other people in the credit

2      union.

3              THE COURT:  You don't disagree that when they -- that

4      the second letter sent from the FARA unit asked the specific

5      question:  To whom, if anyone, did your firm release or

6      distribute the report and when?  And:  Did you or anyone in

7      your firm have any media interviews or comments to the media,

8      public, or government officials about the report and the

9      findings of your firm?"

10             That he was specifically asked --

11             MR. TAYLOR:  Those questions?

12             THE COURT:  -- that.  Yes.

13             MR. TAYLOR:  And he answered those questions.

14             THE COURT:  All right.

15             MR. TAYLOR:  Yeah.  And what they claim is --

16             THE COURT:  So they've alleged that he omitted

17     material facts that would be responsive to those questions.

18     They're going to have to prove it.

19             MR. TAYLOR:  No, I don't think that they say he

20     omitted material facts that would be responsive to those

21     questions.  They say he omitted material facts -- he omitted

22     facts that would be material to the decision-maker.  That's

23     different.

24             THE COURT:  But the decision-maker in this letter had

25     said what they were interested in; is that fair to say?

1          MR. TAYLOR:  The OIG agent in *Safavian* made no bones

2     about what he was interested in.  He was interested in

3     investigating whether Mr. Safavian and Mr. Abramoff had an

4     improper relationship.  You really cannot distinguish -- with

5     respect, one cannot distinguish the role of the OIG agent in

6     *Safavian* and his specific questions and what is omitted from

7     those -- from what's -- and what Safavian is accused criminally

8     of omitting from what happened in this case.

9          THE COURT:  Well, what we do have is a situation

10    where *Safavian*, as you know, is a postconviction ruling.

11    There's a full factual record.  Whatever the government was

12    going to establish about the existence of the duty and what

13    questions were asked and what answers were given was all a

14    matter of the record.  And there were verdict forms, there were

15    specific interrogatories that guided the determination.

16          So, isn't some of what you're arguing something that

17    can be handled through the verdict form, jury instructions?

18    You may not find that someone is guilty for making omission if

19    there was no duty.  And you're saying the duty would be

20    presented to me at the close of the evidence anyway.

21          So, is it premature to deal with this now, as opposed

22    to on a full factual record?

23          MR. TAYLOR:  Respectfully, no.  It's no more

24    premature here than it was for Judge Kessler or Judge Lamberth

25    in those two cases, looking.

1          When an indictment presents a controlling legal

2    question, you're not being asked to adjudicate the merits.

3    You're being asked to decide whether there is a specific

4    statute or specific duty requiring disclosure of this specific

5    information.

6          And if the answer to that question is no, under

7    *Safavian*, *Crop Growers*, *Singhal*, if the answer to that question

8    is no, then, respectfully, you have to dismiss the allegations

9    in this Count 1 because they're based upon a legal principle

10   which is defective, if there's no crime alleged in this

11   indictment.

12         THE COURT:  If I disagree with your interpretation of

13   the statute for purposes of your motion to dismiss Count 2, is

14   that the end of your argument of the motion to dismiss Count 1?

15         MR. TAYLOR:  No, not at all.

16         THE COURT:  So, if I read the statute the way the

17   government does, that 618 applies to these letters, then why

18   would there be no duty?

19         MR. TAYLOR:  Well, as you said, everybody agrees that

20   this is a concealment scheme and that duty is --

21         THE COURT:  That's what you said.

22         MR. TAYLOR:  Well, I said what the government said.

23   And the government put Paragraph 52 in the indictment for a

24   reason, and it spends two-thirds of its legal argument in

25   opposition to this motion to dismiss trying to come up with a

1    source of the duty that *Safavian* says must exist.

2              THE COURT:  Right.  But I don't think the government

3    has conceded that it's just a concealment scheme.  I think they

4    have emphasized that it is a scheme that involves affirmative

5    false statements, misleading statements, as well as omissions,

6    all designed to obscure what they allege are material facts.

7              MR. TAYLOR:  Let's assume that's true.  But it is, at

8    least, a concealment scheme.

9              THE COURT:  All right.

10             MR. TAYLOR:  And if it's at least a concealment

11   scheme, and the part of the count that charges a concealment

12   scheme must be dismissed, must be struck because as a legal

13   matter, it is insufficient under *Safavian*.  And if that's the

14   case -- and we know, of course, the grand jury was told about a

15   legal duty which doesn't exist, and so the entire indictment

16   has to go because of the erroneous instruction.

17             If you agree with us that the Section 618(a)(2) does

18   not provide the duty to disclose that *Safavian* requires -- and

19   I'm happy to get to that in a second -- then that portion, at

20   least I'm assuming, generous --

21             THE COURT:  Right.  My --

22             MR. TAYLOR:  -- generously, that there's something

23   else that they want to try to prosecute.

24             THE COURT:  My question was, if I disagree with you

25   about that, is there -- do the two counts rise and fall

1  together?  Or is there some other reason, if I disagree with

2  you about 618, that Count 1 would be deficient?

3                  MR. TAYLOR:  Yes.

4                  THE COURT:  Okay.  And what would that be?

5                  MR. TAYLOR:  The count refers to -- can we put the

6  board up?  I know you've read the statute, but I would -- it

7  would be useful if we could.

8                  THE COURT:  That's fine.  I'm probably going to be

9  looking at the paper version anyway.

10                 MR. TAYLOR:  All right.

11                 THE COURT:  Because where are you putting it?

12                 MR. TAYLOR:  Well, I'll --

13                 THE COURT:  Well, I can't even see that.

14                 MR. TAYLOR:  Well, I told them that yesterday, Your

15 Honor, I said it's got to be bigger.

16                 THE COURT:  It's not that.

17                 MR. TAYLOR:  Judge Jackson and I don't see --

18                 THE COURT:  It's blocked by four things.

19                 MR. TAYLOR:  Somebody is not going to be able to see.

20                 THE COURT:  Mr. Taylor, I've got it.

21                 MR. TAYLOR:  All right.

22                 THE COURT:  Okay?  Let's just look at it together.

23 And it's not your fault.

24                 MR. TAYLOR:  Let me back up for just a moment, if I

25 may.

1          THE COURT:  All right.

2          MR. TAYLOR:  We're not having this discussion by

3    accident.  The government knew, when it presented the case to

4    the grand jury, that it was presenting --

5          THE COURT:  I don't want to have this discussion.

6    This is exactly what I don't want to hear.  I want to talk

7    about the statute.  I want to talk about the legal issue.

8          MR. TAYLOR:  Okay.  The government contends the

9    statute creates a duty because it prohibits nondisclosure of

10   material facts in writings.

11         THE COURT:  All right.

12         MR. TAYLOR:  The government contends that the

13   *Safavian* requirement for a specific duty to disclose specific

14   facts appears in Section 618.

15         THE COURT:  All right.  You argue that the FARA false

16   statement provision doesn't apply because it's not alleged that

17   he made a false statement in any registration statement or

18   supplement thereto, or in any other document filed with or

19   furnished to the attorney general under the provisions of this

20   subchapter.  And you say this provision refers to registration

21   statements and supplements, things you have to file.

22              But, why weren't the letters that he filed -- let's

23   talk about the letters first, then we can talk about the

24   interview -- any other document furnished to the attorney

25   general under the provisions of this subchapter?  Why aren't

1    you just reading that language right out of the statute?

2              MR. TAYLOR:  Not at all.  The word that strikes me as

3    the most critical word in the section is the word "therein."

4              THE COURT:  But that's only in a subclause of three

5    things that come later.  It says:  If you make a false

6    statement in any registration statement or supplement or any

7    other document filed with or furnished to.

8              And then it gives you three options:  Did you

9    willfully make a false statement of material fact -- in and of

10   itself -- says nothing about required to be stated therein --

11   or --

12             MR. TAYLOR:  But it --

13             THE COURT:  -- willfully omit any material fact

14   required to be stated therein, or willfully omit a material

15   fact or a copy of a material document necessary to make the

16   statements not misleading.

17             So the "required to be stated therein" only modifies

18   the material facts omitted for the second prong...

19             MR. TAYLOR:  Well, I confess to having a technical

20   argument.  This statute says:  Any person who in any

21   registration statement or supplement thereto, or in any other

22   document filed with or furnished to the attorney general under

23   the provisions of this subchapter, willfully makes a false

24   statement of a material fact.  Okay?

25             Or -- and this is where they get the omission duty.

1    This is why this statute is relevant to both counts:   Or

2    willfully omits any material fact required to be stated

3    therein.

4         It's what is required to be stated therein.   The only

5    documents in which something is required to be stated are

6    registrations, statements, supplements, and other documents --

7         THE COURT:   What about "or"?   Or what about the next

8    "or"?

9         MR. TAYLOR:   Or willfully omits a material fact or a

10   copy of a material document necessary to make the statements

11   therein.

12        THE COURT:   Not misleading.

13        MR. TAYLOR:   Therein.   But the "therein" refers to

14   documents in which certain facts are required to be stated.

15        THE COURT:   No, it doesn't.   It refers to any

16   registration supplement thereto, or in any other document filed

17   with or furnished to.   And your first argument is that the only

18   documents those apply to are registrations, statements or

19   supplements.   It has to be one of those.   But the statute

20   doesn't say that.   It also says any other document filed with

21   or furnished to.

22        So let's talk about that portion of your argument

23   first.   So, how do I square your interpretation that they're

24   only talking about registration statement or supplements with

25   the breadth of or any other document -- and they don't just say

1    filed.  I agree with you, the registration statements have to

2    be filed; these letters didn't have to be filed.

3            But "furnished to," why aren't the letters any other

4    document furnished to?  And you say, Well, it's not furnished

5    under the provisions of this subchapter.

6            That's your argument, I believe, correct?

7            MR. TAYLOR:  No.  That's Mr. Murphy's argument.

8            THE COURT:  Okay.

9            MR. TAYLOR:  My -- the point here is that the

10   omission -- the omission duty, which they posit flowing from

11   this statute, and the argument has to be that the omission duty

12   covers both the writings, the letters, and -- but -- and I'm

13   not quite sure about this, the oral meeting; the meeting.

14   Although, the statute doesn't say anything about oral meeting.

15           THE COURT:  I understand that.

16           MR. TAYLOR:  Okay.  So got some curious --

17           THE COURT:  And I have questions about them, too.

18   But I'm asking you now about the letters.  You have moved to

19   dismiss Count 2 on the basis that this statute does not cover

20   the letters.

21           MR. TAYLOR:  Right.

22           THE COURT:  And you've said that the absence of that

23   duty also infects Count 1.

24           MR. TAYLOR:  It does.

25           THE COURT:  And I'm asking you -- and if you want me

1   to wait until Mr. Murphy comes up, I will do that.  But, I

2   don't understand how, commas or no commas, we can square your

3   interpretation of 618 with the language of 618.

4          MR. TAYLOR:  Well, the words "required to be stated

5   therein" refer -- modify a material fact or omission of a

6   material fact.  Required to be stated therein.  It doesn't --

7   and that -- the only documents in which facts are required to

8   be stated are the ones which are the -- which are the forms and

9   the provisions that Congress instructed registrants to file and

10  which the agency has dictated the contents of.

11         The only way to read this is that what's required to

12  be stated modifies and controls the universe of documents that

13  are covered by this duty.  And these letters --

14         THE COURT:  Well, what do you do with the word "or"

15  that comes after the "required to be stated therein" that you

16  underlined?

17         MR. TAYLOR:  It refers to the same word, "therein."

18  Refers to the same thing.

19         THE COURT:  Right.  "Therein" refers to the

20  statement, supplement, or any other document.

21         MR. TAYLOR:  Made the -- any material document

22  necessary to make the statements therein.  The "therein" refers

23  to documents which -- in which the material facts are required

24  to be stated.  Respectfully, both of us think -- think we know

25  what the English language says.

1           But I don't see how you read this to create a duty to

2      disclose in documents which don't -- which do not have material

3      facts required to be stated therein.  This is --

4           THE COURT:  I agree with you with respect to the

5      clause that begins, "or willfully omits any material fact

6      required to be stated therein."  Correct.

7           But, then there's a third option for how you could be

8      making a false statement or willful omission in any

9      registration statement, supplement, or any other document filed

10     or furnished.  And that is, if you willfully omit a material

11     fact necessary to make the statements therein, i.e., in your

12     registration statement, supplement thereto, or any other

13     document filed or furnished, not misleading.  That's broader.

14          MR. TAYLOR:  Right.  It's a 10(b)(5) duty, though.

15     It's -- when you cannot make a disclosure under this -- that

16     you're required to make if you're a foreign agent, and not

17     include documents necessary to make the documents that you --

18     or, the statements that you filed not misleading.  It's the

19     same duty that one has when one is being required to make

20     disclosures provided for by law.  10(b)(5) securities filings

21     are a good example.

22          But it doesn't say:  And in any other documents.  It

23     is limited to documents which are defined in this section as

24     documents in which a material fact is required to be stated.

25          THE COURT:  All right.  I understand your argument.

1    I guess the questions about whether the first part of the

2    sentence only refers to registration statement or supplements,

3    and whether the letters that were submitted were submitted,

4    quote, under the provisions of this chapter.

5            But that's Mr. Murphy problem, and I should talk to

6    him about it?

7            MR. TAYLOR:  Not entirely his problem, but I'm going

8    to let him handle it.

9            THE COURT:  All right.  So I'm going to put the

10   statutory conversation aside for a minute because I think those

11   things are all bound up together.  And the rule of lenity and

12   all that, that's part of his Count 2 discussion.

13           I mean, obviously, if I end up agreeing with him at

14   the end of the day, I'll have to -- that brings us back to a

15   serious reconsideration of Count 1.  If I disagree with him at

16   the end of the day, I'm not sure there's much left to your

17   argument of Count 1, other than what was the duty transpiring

18   at the meeting.

19           MR. TAYLOR:  Although, if you agree with me, that

20   duty would not address or control the contents of letters.  It

21   would still be 1001(a)(2), if there's a false statement in

22   them.  But, this is -- they didn't charge (a)(2) here, Your

23   Honor.

24           THE COURT:  I understand that.

25           MR. TAYLOR:  And, you know, they could have.  It's a

1      really good question, how we end up in this kind of confused

2      mess when the -- it wasn't until we raised the issue in our

3      motion of the absence of a duty that they came up with the

4      argument that, well, this is -- this is really -- there are

5      false statements in this indictment and, therefore, it saves

6      it.

7               And what we're saying to you is, you cannot strike

8      the portions of the indictment which must be struck under

9      *Safavian* and permit the remnants of it, whatever they are.

10              THE COURT:  I don't think they're asking for that.

11              MR. TAYLOR:  I know they're not.  But, I'm sure

12     they'd like the whole thing to remain with the concealment

13     obligation in it or with the disclosure obligation in it, even

14     though we're right in the middle of *Safavian*, insofar as

15     Paragraph 63 is concerned.

16              You really can't -- if you agree with us, that this

17     statute doesn't impose a duty of disclosure of facts not asked

18     for -- in other words, the affirmative duty to disclose

19     material facts -- if you agree with us that there is no such

20     duty, then Paragraph 63 has to go.  And --

21              THE COURT:  Well, what do you do -- what am I

22     supposed to do about the fact that every letter that was

23     written was written in response to a letter from the Department

24     of Justice saying, We're acting under FARA.  We are trying to

25     make a FARA decision.  These are the facts that are important

1        to us to make this determination.  Please tell us X?

2              Under that circumstance, when you reply, what's your

3        duty, in your point of view?

4              MR. TAYLOR:  Well, the question is, what did they not

5        ask?  They could have asked questions which would have elicited

6        any of this material that's in Paragraph 63.  They didn't ask

7        the question.  In fact, as you know, there's -- there's no --

8        there's no testimony -- apologize.  That's getting to the

9        merits.

10             We know that the so-called meeting on October the

11       9th -- which is oral and, therefore, not bound by anybody's

12       version of a duty -- is a meeting in which the -- Mr. Craig,

13       according to the indictment, makes the case that he's not

14       required to register because his motivation was to protect

15       himself and prevent mischaracterizations.

16             And the letter, the indictment says, as requested by

17       Ms. Hunt, is:  Please summarize what you said in our meeting so

18       we can -- so we can take action on it.

19             You can't -- if they had asked, if anybody at that

20       meeting or anywhere along the line had asked, Well, you know,

21       who else was involved here?  Did the government of the Ukraine

22       have a public relations firm?  Did it, you know --

23             THE COURT:  Aren't the allegations of the false

24       statements of the omissions about -- supposed to be about his

25       conversations?

1              MR. TAYLOR:  Correct.

2              THE COURT:  Right.

3              MR. TAYLOR:  Right.

4              THE COURT:  I'm not supposed to be in that -- that's

5      all it should be.  Aren't they -- aren't they saying he wasn't

6      truthful about his meeting with that media person or that media

7      person and whether it happened before the report was issued or

8      after the report was issued --

9              MR. TAYLOR:  Right.

10             THE COURT:  -- and whether it was in response to

11     questions or whether it was before?  That's what they've

12     alleged, correct?

13             MR. TAYLOR:  It's sort of hard to say, but we can ask

14     them that question.

15             But, what we know is that the allegation that -- as

16     the government says, this concealment scheme is -- they say, at

17     page 24, "The scheme involved a series of carefully crafted,

18     highly misleading statements and material omissions designed to

19     conceal certain things."

20             It is, at its core, a concealment scheme and --

21             THE COURT:  All right.  If you allege a concealment

22     scheme the way they have, do you have to, as the government and

23     the defense and the Court, do what they did in *Safavian*, and

24     give the jury specific specifications -- was it this letter,

25     was it this meeting, was it this statement, was it that

1    statement -- so you can tell what exactly we have a unanimous

2    verdict about?

3              MR. TAYLOR:  I don't endorse and would never argue,

4    probably object to, a verdict form like the one that went in in

5    *Safavian*.

6              THE COURT:  But I thought you loved *Safavian*.

7              MR. TAYLOR:  I like *Safavian* because when the

8    government says we have allegations of false statement that can

9    independently protect this indictment, can sustain this --

10             THE COURT:  I'm certain the *Safavian* opinion suggests

11   that could be true.  It strikes down the ones based on

12   omissions.  The ones on false statement fell for other reasons.

13   But it never indicates that a false statement alone would not

14   have been sufficient to uphold.

15             MR. TAYLOR:  Oh, but it does.

16             THE COURT:  I don't think so.

17             MR. TAYLOR:  Footnote 12 in *Safavian* says:  Not until

18   his reply brief did *Safavian* argue that under 1001(a)(1) a

19   false statement alone cannot -- a false statement alone cannot

20   constitute a trick, scheme, or device.  While he is doubtless

21   correct -- see *Woodward* -- his argument comes too late and was

22   apparently not made in his motion in the district court."

23             THE COURT:  Well, that's --

24             MR. TAYLOR:  And what -- we know what happens -- I'm

25   sorry.  I didn't mean to interrupt.

1          THE COURT:  All right.  Well, without that then, how

2    would we be able to answer the questions that you're asking me?

3    What you're saying to me right now is, the evidence of the

4    meeting will not prove either a false statement or an omission

5    or a duty; that if you base a conviction on the meeting, it

6    would not comport with the law.

7          How could we find out what the jury's theory is

8    without breaking it out?  And couldn't jury instructions and a

9    verdict form, if they convicted on that count, allow me to test

10   the sufficiency of the evidence?  Or even before they

11   convicted, at the close of the government's case, wouldn't that

12   be the time to say, Judge, if they want to base this on the

13   meeting, you got to take the meeting away from the jury?  If

14   they want to base it on a statement in a letter, that's a

15   different issue.

16          MR. TAYLOR:  I don't want to just --

17          THE COURT:  I mean, I'm just trying to figure out --

18   I'm not saying --

19          MR. TAYLOR:  I don't want to distract the Court by

20   the curious inconsistency between the obligation about a

21   meeting and in a writing.  It's a curious aspect of the

22   government's theory.

23          What I want to stay on theme with is that on its face

24   this indictment alleges a concealment scheme and a non -- and a

25   duty which is insufficient as a matter of law.  It is -- on the

1    face of this indictment there is no such duty, as the

2    government resourcefully tries to extract, either from this

3    statute or from Section 11 or from the nature of the inquiry.

4         I mean, it's no accident.  We're having this

5    conversation here because the government does know.  It spends

6    two-thirds of its argument trying to sustain the notion of the

7    duty.  And so if there is no duty, this indictment is legally

8    defective.

9         THE COURT:  All right.  You've said that.  I hear it.

10   I read it.

11        Is there anything else you want to add to that

12   particular argument right now, or can I hear from the

13   government on that argument?  And we will take up the statute

14   again --

15        MR. TAYLOR:  I do want to talk about the statute of

16   limitations, but you --

17        THE COURT:  I want to hear about this, and then we'll

18   go to statute of limitations.

19        All right.  Who from the government is going to

20   address Count 1?

21        MS. GASTON:  I am, Your Honor.  Good morning.

22        THE COURT:  All right.  So -- my pages got all mixed

23   up -- what is your point of view about whether the existence of

24   the duty is a question of law or a question of fact?

25        MS. GASTON:  Your Honor, it's a question of both.

1    So, it is a question to be decided both by you at this point,

2    but the jury would also need -- it is an element of the

3    offense, and the jury would also need no find that there is a

4    duty when they reach a verdict.

5         THE COURT:  Well, when you say it's both, if I find

6    there is no duty, then I have to dismiss the count?  Or --

7         MS. GASTON:  No, Your Honor.  If you find that there

8    is no duty that the defendant had to provide the material that

9    he concealed, then the case would go forward based on the

10   defendant's false statements.

11        Let me first begin, Your Honor, please, by

12   distinguishing *Safavian* from this case.  I, like you, have read

13   the portion regarding the OIG agent many, many times, trying to

14   understand the difference.  And the difference, really, is

15   this:  The government, in that case, was not able to articulate

16   any statute, form, or regulation from which the duty flowed.

17   They talked about these general principles of ethics for

18   government officials.

19        But, when the OIG agent or the ethics official were

20   talking with Mr. *Safavian*, they were not enforcing any law.

21   There was no law that created this duty.  Unlike in the current

22   case, in which the defendant was repeatedly advised of his

23   obligations under the FARA statute.

24        So this was a law enforcement inquiry by the FARA

25   unit.  It began with a letter on December 18th, 2012, in which

1        the FARA unit said, "We are determining whether you are

2        obligated to register under this statute.  Here, we are

3        attaching the statute so that you can look at it."

4              Then, after the defendant answered a set of specific

5        questions, the FARA unit wrote back, on April 9th, 2012, and it

6        asked targeted questions about what he had done that are a part

7        of the statute.

8              So, the obligation under 612, for anyone who has

9        acted as an agent of a foreign government, is to provide the

10       FARA unit with specific information about his activities.  That

11       includes media contacts.  It includes dissemination of the

12       report.  The form that one has to fill out even includes

13       whether a public relations firm has been involved in the media

14       contacts.

15             And so, the FARA unit was advising the defendant of

16       the specific questions that it had for him based on his

17       possible obligation to register under the statute.

18             He responded to those specific questions.  And his

19       answers were not only misleading, but they omitted material

20       that was specifically responsive to the FARA unit's targeted

21       questions.

22             THE COURT:  Now, how do we get to the meeting?

23             MS. GASTON:  So the meeting, Your Honor, is even more

24       significant.  Because in a letter on September 5th, 2013, the

25       FARA unit wrote, again, to the defendant that said:  Actually,

1    you're obligated to register.  Based on the information you

2    have provided us and the information that we have seen, you are

3    obligated to register as an agent of Ukraine.

4         And the meeting was the defendant's attempt to

5    convince the FARA unit otherwise.

6         I can't think of a situation more different from

7    *Safavian* in which the FARA has said:  This is a statute, and

8    under the provisions of this statute, you must provide the

9    following information to the attorney general.  You have to

10   tell the attorney general all of the things you did for

11   Ukraine.  You have to tell us about your media contacts.  You

12   have to tell us when.  You have to tell us how much you were

13   paid and who paid you.

14        There's a whole set of things that FARA requires

15   registrants to provide to the attorney through the FARA unit.

16   And in this case, the meeting was the defendant's attempt,

17   again, to provide misleading information and to omit material

18   facts to get the FARA unit to change its determination under

19   the statute.

20        THE COURT:  Well, but does that meeting -- you're

21   essentially saying it's at his behest and he's coming forward.

22   Does that meeting start to seem more like the first meeting in

23   the *Safavian* situation?  It's a meeting that didn't have to

24   happen, he's already responded to their questions, and he's

25   coming in and saying:  But I want to tell you this.  And

1    *Safavian* specifically says just because you're talking doesn't

2    mean you have to say everything.  That's what they said and

3    that's what I'm bound to follow.

4              Does that cover that meeting?

5              MS. GASTON:  It doesn't, Your Honor, for the

6    following reason:  *Safavian*, in Footnote 7, says when there is

7    a duty, then this concern about saying nothing versus saying

8    something does not exist.

9              In this case, the defendant had a duty because he had

10   been advised by the FARA unit, You must register under FARA,

11   and part of registration is providing the following

12   information.

13             And instead, the defendant walked into that meeting

14   in an attempt to get the FARA unit to change its determination

15   based on misleading information and because he was hiding other

16   information.

17             This is a case analogous to the *Moore* case or the

18   *Calhoun* case.  The *Calhoun* case talks about this cat-and-mouse

19   game where it's not permissible to -- if a duty flows from a

20   statute, form, or regulation, it's not permissible to engage in

21   this sort of cute cat-and-mouse game in which one provides some

22   information but not other information in an effort to mislead

23   the government.

24             THE COURT:  Well, you cite the cases I was asking the

25   defendant about, *White Eagle* and *Stewart*, for the proposition,

1      putting aside the statutory duty, that a duty can arise when a

2      defendant is responding to particular questions on a particular

3      topic and a law enforcement inquiry.

4              Is that the law in this circuit?

5              MS. GASTON:  Your Honor, the -- I think it's sort of

6      similar to what I just said about *Safavian* citing if a duty

7      first flows from the statute, the regulation, or the form, then

8      this targeted inquiry along the lines of the *Stewart* case or

9      the -- as *White Eagle* cited *Stewart*, this targeted advice --

10     or, this targeted inquiry can trigger the duty.  The whole idea

11     of --

12             THE COURT:  So if you're -- you're not saying that

13     the statute has to specify you have a duty to say this, this,

14     and this, and if this or this is omitted, then there's a duty.

15     You're saying that there's a statutory scheme that requires you

16     to, basically, answer questions and disclose information and

17     the government to make a regulatory decision based on that

18     information, that that's enough for the duty?

19             MS. GASTON:  Yes, Your Honor.  Because the duty is a

20     due process concern.  It's a concern about whether somebody

21     understands --

22             THE COURT:  Is on notice.

23             MS. GASTON:  -- is on notice and understands what

24     they're being asked.  It's a concern that, basically, if I tell

25     the government something and I don't realize that they're

1    asking me for certain information, then that conduct could be

2    criminalized.

3              That is not what is happening here.  The FARA unit

4    was very specific about the information it was requesting.  It

5    cited the statute and explained to the defendant why that

6    information was being requested.

7              And the defendant knew what -- the record basically

8    shows that the defendant's representations to the FARA unit and

9    his material omissions did not change over the course of time

10   as the FARA unit became more and more specific and was very

11   clear to him about the information that they think needed to

12   determine his compliance with the statute, which is a

13   disclosure statute.

14             It's a statute that required the defendant to provide

15   the attorney general, through the FARA unit, this specific

16   information that the FARA unit was requesting.

17             THE COURT:  If I ultimately agree with the

18   defendant's reading of 618, that it doesn't cover this

19   correspondence, is the statute still your source of duty to

20   disclose?

21             MS. GASTON:  Yes, Your Honor.  It's the statute as

22   well as the targeted inquiry.  So the statute provides that

23   registrants have to provide specific information.  In 612, the

24   statute provides a list of the things that someone has to

25   provide, which is a detailed description of one's activities on

1    behalf of the foreign principle.

2            612 also implicates 611, which is the definition

3    section that describes when one has acted as an agent of a

4    foreign principal.  And it also implicates another portion of

5    618, which criminalizes wilfully failing to register.  And the

6    duty flows from 612, which required defendant and any American

7    or any person acting on behalf of a foreign principal in the

8    United States to provide the FARA unit with specific

9    information.

10           And to the extent that there is any concern -- any

11   due process concern, the targeted inquiry by the FARA unit

12   should assuage that concern; in that its targeted questions

13   were asking for the specific information that the statute

14   required the defendant to give.

15           And, in fact, in the September 5th, 2013, letter, the

16   FARA unit advised him:  You are obligated to register under

17   this statute, which would require him to provide all of this

18   same information that they were asking him about.

19           THE COURT:  Well, what's your point of view about

20   whether this case has to be presented to the jury the way the

21   *Safavian* case was presented to the jury, with specifications

22   and special interrogatories and a verdict form, or whether you

23   just give them Count 1?

24           MS. GASTON:  I believe, Your Honor, that the jury

25   does need to be advised, as I said at the outset, that in order

1    to find material omissions, in order to find a concealment

2    scheme, that they have to find a -- that the -- that there was

3    a duty to provide that information.

4          THE COURT:  My question is, would they be asked:  Do

5    you find that he made a false statement in this letter, or do

6    you find that he omitted material facts from this letter?  Do

7    you find at the meeting he made a false statement, just like

8    they did in *Safavian*?

9          And let's say they only find false statements and no

10   omissions, do you have a violation -- do you have a scheme

11   violation?

12         MS. GASTON:  No, Your Honor.  The law is clear that

13   there can be a false statement scheme under 1001(a)(1).  That

14   is clear from the circuit's case -- apologies.  One moment --

15   from the *Hubbell* case, in which it was both a false statement

16   scheme and a material omissions scheme.  There is a case from

17   the Eighth Circuit that was only an affirmative false statement

18   scheme.

19         The difference between (a)(1) and (a)(2) is not

20   whether it's a false statement or an omission.  It's the

21   difference between a standalone false statement in (a)(2) and a

22   scheme in (a)(1).  And the scheme can be a scheme to conceal

23   information, a scheme to make false statements, a scheme

24   combining the two.

25         THE COURT:  Well, what would be the source of the

1    duty -- tell me, again -- not to omit things at the meeting

2    that he called, that he requested, according to your

3    description of the facts?

4         MS. GASTON:  The duty, Your Honor, would come from

5    22 U.S.C. 612, which is the information that one is required to

6    provide to the National Security Division when one has acted as

7    an agent of a foreign principal.

8         And at the point of the meeting -- this is very

9    important -- the FARA unit had advised the defendant by letter

10   on September 5th, 2013, that he was obligated to register under

11   the statute.  And the meeting was requested by the defendant's

12   firm to convince the FARA unit that that was not the case.

13        THE COURT:  Is there anything else?  I don't think I

14   have any more questions for you.  Is there anything else that

15   you wanted to emphasize?  On this issue, I don't have any other

16   questions for you.

17        MS. GASTON:  Very briefly, Your Honor, I just want to

18   distinguish *Crop Growers*.  Because that is a case the defendant

19   uses for the premise that even if the false statements

20   provision of 618 provides the duty, that that is not specific

21   enough.

22        And I would just distinguish *Crop Growers* by saying

23   that that was a case in which a defendant filled out SEC forms

24   and did not disclose other violations of law that he -- or,

25   that the company had committed that were from a completely

1    different statute.  They were can campaign finance crimes.  And

2    so that -- that is a case that is very distinguishable from

3    this one, in that the defendant was being asked targeted

4    questions based on FARA, which is a disclosure statute.

5          So it's sort of apples and oranges to suggest that

6    there is a due process concern here like there was in *Crop

7    Growers,* where when the defendant company was filling out SEC

8    forms, he couldn't understand that he was being asked about

9    uncharged criminal conduct in a completely different --

10   different sort of category.

11         THE COURT:  All right.  Thank you.

12         All right.  Mr. Taylor, since you've already risen to

13   do it, I will give you the opportunity to tell me why she's

14   wrong, but then I do want to go on to the statute of

15   limitations issue.

16         MR. TAYLOR:  I have, I think, three, maybe four

17   points.

18         THE COURT:  All right.

19         MR. TAYLOR:  *Crop Growers*, the material that is not

20   disclosed is material -- is information that he committed a

21   crime.  Isn't that the same allegation in this case, the

22   information not disclosed is that facts existed which would

23   require him to register?

24         Ms. Gaston refers to 612 as imposing a duty.  And she

25   then discusses, at some length, what would be required -- would

1    be required to be disclosed under 612, all the required

2    disclosures in the forms that would need to be filled out.

3            That makes our point.  The requirements for

4    disclosure apply to a registrant.  She -- the government's

5    theory now is that even though he was not a registrant, he had

6    the same obligation to make -- to provide all the information

7    as if he was.  That's -- that doesn't make any sense at all.

8            THE COURT:  If the government is saying I want you to

9    answer my questions because I'm trying to determine if you fall

10   in this category or if you don't, and this is the kind of

11   information I need to know, doesn't 612 provide the structure

12   for that conversation to understand which facts are material

13   and which facts aren't material?

14           MR. TAYLOR:  612 says if you are acting for and on

15   behalf of a foreign principal, then you are obliged to fill out

16   these forms, which were onerous.  It doesn't say that if you

17   disagree that you are required to register, you must also fill

18   out these forms.  And that's why the statute is very -- is so

19   clear about what is required --

20           THE COURT:  I think her point is a little different

21   than that, which is that the problem with *Safavian*, the source

22   of the obligation of the duty is that people shouldn't be

23   prosecuted for not telling the government things that they had

24   no idea whether the government was interested in or not.

25           But here, the government was operating under the

1    umbrella of a specific statute that says if you do X, then you

2    have to register.  And they said to him, We're not sure.  We're

3    on the fence about whether you have to register or not.  Can

4    you tell us about your media contacts?  Can you tell us when

5    they happened?

6            At that point, understanding that they are operating

7    within a specific statutory regime and they're particular

8    matters of interest to the decision-maker, aren't we in a world

9    where there is considerably more specificity and notice than

10   what *Safavian* was concerned about?

11           MR. TAYLOR:  You're correct to look at the questions

12   that were asked.  But, none of the questions asked would have

13   required the disclosure of what I've -- what is alleged to be

14   not disclosed in Paragraph 63.

15           The allegation is that notwithstanding that the -- he

16   was responding to targeted questions and that he did so, he

17   failed -- at no time did he inform the unit of various facts

18   material to the FARA unit's inquiry, including -- there is a

19   bald allegation --

20           THE COURT:  Well, I will compare Paragraph 63 to the

21   letter, carefully.  Do you agree with the proposition, though,

22   that the subject matter that was specifically asked about in

23   the letter is something about which he had to be forthcoming?

24           MR. TAYLOR:  Subject matter of the OIG agent's

25   questions to *Safavian*.

1          THE COURT:  I didn't ask you that.

2          MR. TAYLOR:  I know that.

3          THE COURT:  I asked you, they sent him a letter in

4    advance.  They said:  We are operating under the umbrella of a

5    particular statutory regime, and there are particular facts

6    that we are particularly interested in.  Tell us about those.

7          If it is those things that are alleged to have been

8    omitted, are you saying that the letter gave rise to a duty, or

9    not?

10         MR. TAYLOR:  It gave rise to a duty to be truthful in

11   responding to the letter.  That's the duty.

12         THE COURT:  All right.  So, if they say -- all right.

13         MR. TAYLOR:  That's the difference.

14         THE COURT:  Well, I thought just now, earlier, you

15   said, Well, the letter is a different story.  But if you look

16   at Paragraph 63, it -- it's not responsive to the questions in

17   the letter.

18         I'm asking you, with respect to the questions in the

19   letter, are we in a different position?

20         MR. TAYLOR:  Well, Your Honor, respectfully --

21         THE COURT:  Isn't he on notice at that point?  Aren't

22   we outside of the due process problem?

23         MR. TAYLOR:  Respectfully, he's not on notice of

24   anything other than what they ask him.  And that's what

25   *Safavian* stands for.  And the reason for it is that if you

1    criminalize nondisclosure to an agency which is asking you

2    questions, if you don't disclose everything the agency might

3    want to know, the DOE, the Department of Commerce, any one of

4    these agencies which is -- wants to get questions answered, and

5    if you fail --

6             THE COURT:  I agree.  Is there a difference if the

7    agency says:  This is what I want to know in connection with

8    carrying out the determination that I'm supposed to be making

9    under the statute?

10            Is that different from sitting down with an agent,

11   having an interview, and the agent later saying, Well, I would

12   have wanted to know that, so I'm going to hold him criminally

13   responsible for not telling me that?  Are they different?

14            MR. TAYLOR:  Yes.

15            THE COURT:  All right.

16            MR. TAYLOR:  I think I've --

17            THE COURT:  Okay.

18            MR. TAYLOR:  Yes.

19            THE COURT:  So --

20            MR. TAYLOR:  If you lie -- if you lie in the

21   response, that's 1001(a)(2).  Put aside the question of whether

22   it can also can be part of an (a)(1) scheme.  But the lie, the

23   lie is in no -- neither Mr. Craig nor anybody on our side is --

24            THE COURT:  But, do you have a duty not to make

25   omissions once you know exactly what it is that they want to

1    talk to you about?

2              MR. TAYLOR:  No.  No.  And that is exactly what's

3    *Safavian* says.  You have no such duty --

4              THE COURT:  Well, *Safavian* says it's not a lie to

5    omit things when you haven't been put on notice of what you're

6    supposed to talk about.

7              MR. TAYLOR:  But *Safavian* was put on notice.  He was

8    asked about his relationship with Abramoff.  That's what the

9    OIG agent was specifically talking to him about.  Whether, in

10   fact, he had Mr. -- he had helped Mr. Abramoff or whether

11   Mr. Abramoff had business before the GSA.  He knew exactly what

12   the agent was asking him about, as did the defendant in *White*

13   *Eagle,* and did not volunteer information.

14             We're not anywhere close to that.  But what the Court

15   says in those cases is, if you -- unless you have a specific

16   duty to disclose specific things as, for example, you would if

17   you were filing a registration form.  But unless you have that

18   kind of specific duty, a failure to disclose it not criminal.

19             THE COURT:  All right.  Let's talk about the statute

20   of limitations.

21             MR. TAYLOR:  Okay.

22             THE COURT:  Since it's now clear that the government

23   is not relying on the interview with the Special Counsel's

24   Office to extend the statute, and it doesn't seem to even be

25   relying on the January decision as part of its calculation,

1    they basically are alleging that the scheme began with the

2    receipt of the request for information in December 2012.  And

3    the last act they're pointing to is the October 11 letter

4    written in the wake of the October 9 meeting.

5              Do you agree that some of the alleged conduct falls

6    within the statute of limitations?  Notably, the meeting and

7    the October 11 letter?

8              MR. TAYLOR:  Those are the only two actual events

9    which occur after the statute of limitations has run.  I don't

10   agree with the government's notion that that means the statute

11   of limitations didn't start to run until -- until those events

12   occurred.

13             THE COURT:  Well, do you agree that Count 1 --

14   whether you agree that they can prove it, and putting aside the

15   duty issue, do you agree that Count 1 alleges a single scheme

16   in violation of 1001, as opposed to multiple schemes?

17             MR. TAYLOR:  I agree that the government has chosen

18   to charge a course of conduct.  That is very different from

19   this being a continuing offense.  Those are the distinctions

20   that *Toussie* makes and that Judge Walton made in *Sunia* and the

21   Seventh Circuit made in *Yashar*.

22             THE COURT:  Right.  But I've got the D.C. Circuit

23   saying, in *Bramblett* and *Hubbell,* that if you have an (a)(1)

24   scheme, a single scheme, that the statute of limitations ends

25   when the scheme ends.  So why am I not bound to follow that

1    precedent?

2          MR. TAYLOR:  Well, that's with -- respectfully,

3    *Bramblett*, the interesting thing about *Bramblett* is, they don't

4    charge the scheme to have existed before the statute of

5    limitations.  The relevant criminal -- the relevant 1001(a)(1)

6    offenses occur within the statute.  There is an event, that is,

7    the filing of the certification, which occurs before the

8    statute.  But, the things for which *Bramblett* was charged and

9    convicted all appear after the statute.

10          This case, you have the -- the indictment says

11   beginning in June of 2013.  The only event that occurs in June

12   is the letter, the Skadden letter to FARA.  The government's

13   position that it contains falsehoods, they're barred by the

14   statute.  If the government contends that it contains

15   concealments, they're barred by the statute.

16          What the law is, is that the government's selection

17   of a time period for continuing conduct or recurring conduct

18   doesn't control when the offense is committed.  The offense is

19   committed when the elements occur.

20          And according to the government, the element of using

21   a scheme occurred on June the 5th.  That, by their very own

22   argument and their own characterization, that was a completed

23   offence.  That was a time at which this crime could have been

24   charged and wasn't.  So --

25          THE COURT:  But the --

1              MR. TAYLOR:  And the only thing that you have left

2     is -- now, if we're going to have a discussion about verdict

3     forms and charging false statements and so forth, obviously

4     none of that can involve conduct before October the 3rd.

5              THE COURT:  If the government charged individual

6     false statements, this one occurred this point, this one

7     occurred that point, isn't that different from charging a false

8     statement, concealment, cover-up, scheme, that occurred over a

9     period of time?  They allege there's one scheme, and it

10    occurred over a period of time.  And the last alleged act is

11    not barred by the statute of limitations.

12             MR. TAYLOR:  Well, the --

13             THE COURT:  The legal principle articulated in

14    *Bramblett* and *Hubbell* says I can't dismiss it on statute of

15    limitations grounds.  You're trying to break it apart, but they

16    don't allege what you're saying they allege.

17             MR. TAYLOR:  What the Court says in *Yashar* and *Sunia*,

18    it's not the government's --

19             THE COURT:  What court?

20             MR. TAYLOR:  *Yashar* is the Seventh Circuit.

21             THE COURT:  Okay.  I'm looking at my D.C. Circuit --

22             MR. TAYLOR:  Right.

23             THE COURT:  -- precedent that I have to follow.

24             MR. TAYLOR:  I understand.

25             THE COURT:  Can you explain to me how this case falls

1    outside what seems to be clear D.C. Circuit precedent for an

2    (a)(1) scheme?  If it's a single scheme, the statute starts to

3    run when the scheme ends.

4            MR. TAYLOR:  Well, *Sunia* is in this circuit.  It's

5    Judge Walton's decision.

6            THE COURT:  Right.  That's a district court opinion.

7            MR. TAYLOR:  It's a district court opinion.

8            THE COURT:  But does he differentiate the facts from

9    that, or does differentiate --

10           MR. TAYLOR:  He does.

11           THE COURT:  -- the legal proposition?

12           MR. TAYLOR:  He does.  He discusses the notion

13   that -- and he embraces *Yashar*.  And he says:  The government

14   can't pick the date on which the statute of limitations starts

15   to run by saying there is a scheme on which -- and the statute

16   starts to run from the last day.

17           That's why *Toussie* has to be read into this.  If this

18   is a continuing crime, if 1001(a)(1) is a continuing crime,

19   that is, it continues to occur notwithstanding the absence of

20   any conduct, like a conspiracy, then we wouldn't be having this

21   conversation.  But, 1001(a)(1) is not a continuing crime.  It

22   occurs when the defendant conceals by scheme.  And that,

23   according to the government, is exactly what happened on June

24   the 5th.

25           And if that's the case, then you have to dismiss -- I

1    think you should dismiss the entire indictment because it's too

2    complicated.  But you have to dismiss the portions of the

3    allegations of a violation of 1001(a)(1) which occur before

4    October 3rd, and that is the June letter.  The June letter is a

5    complete offense and, therefore, the statute was run on it.

6              And, for example, you asked, Well, don't they

7    allege --

8              THE COURT:  Complete offense of what?  Of scheme?

9    You're saying not just a false statement, but the -- the --

10             MR. TAYLOR:  Trick.  1001(a)(1) doesn't say scheme by

11   false statement.  It says false statement by scheme.  It has to

12   be by trick, device, artifice; otherwise, it's just a false

13   statement.

14             THE COURT:  Right.  So they allege that.

15             MR. TAYLOR:  They do.  But, the elements of the crime

16   are satisfied when an act -- when it's complete.  And it's

17   complete -- this is *Toussie* -- it's complete when the elements

18   occur or when the crime is committed.  And the crime is

19   committed when the defendant commits an act which satisfies all

20   of the elements in the offense.

21             And since, in this case, the government chose to say

22   this is ongoing conduct, that's not the test.  The test is what

23   the statute prohibits.  In determining what's barred by the

24   statute, you have to look at the elements of the crime, not how

25   the government chooses to charge an ongoing pattern of conduct,

1    if you will.  They could have said, you know, into January,

2    whatever.

3              The question is, for statute of limitations

4    purposes -- and this is exactly what Judge Walton looked at and

5    did this very sensible analysis -- you cannot -- you cannot

6    prosecute for conduct which is barred by the statute if, in

7    fact, it constitutes a completed offense by the time the

8    statute -- the statute starts to run.

9              THE COURT:  All right.

10             MR. TAYLOR:  By the way, they don't -- this

11   indictment, Your Honor, does not charge false statements.

12   The --

13             THE COURT:  Well --

14             MR. TAYLOR:  It does not -- when you talk about a

15   special verdict, and think about looking at these -- at

16   Paragraphs 56, 61, and 62, how can you possibly tell what the

17   grand jury said was false or knowingly false or material?

18   That's why I showed you the *Safavian* indictment.  In permitting

19   the false statements charges to go back, the Court was looking

20   at a very specific allegation of a false statement on a --

21             THE COURT:  All right.  We're arguing something now

22   that isn't in one of these motions, so I think we can take that

23   up at another time.  I got plenty to worry about at the moment.

24             MR. TAYLOR:  Well, respectfully, I would urge you to

25   consider that it is very much a part of what's before you.

1           THE COURT:  All right.  Well, I don't think that's an

2     argument that you've made in the pleadings.  I'm looking at

3     *Safavian*.  I'm looking at the motions to dismiss.  I'm looking

4     at 618.  I'm looking at 404(b).  I'm looking at striking

5     surplusage from the indictment.

6           So, I realize you have a lot of reasons, a lot of

7     reasons why you believe the indictment and the case are

8     deficient on the law and the facts, and I'm not precluding you

9     from marking those arguments at any point; I'm just not sure

10    that I need to hear them at this point.

11          MR. TAYLOR:  Well, I'm always guided by what the

12    Court wants to hear.

13          THE COURT:  All right.

14          MR. TAYLOR:  So that's -- I will be guided and sit

15    down.

16          THE COURT:  Well, let me hear the government on the

17    statute of limitations, and then we've got more to discuss.

18          MS. GASTON:  Thank you, Your Honor.

19          Under *Bramblett* and *Hubbell,* the statute of

20    limitations for a 1001(a)(1) scheme begins to run at the last

21    act of concealment or the last false statement in furtherance

22    of the scheme.

23          THE COURT:  So what is the differentiation between

24    Judge Walton's case and those principles?

25          MS. GASTON:  Yes, Your Honor.

1              In the *Sunia* case, Judge Walton was looking at a case

2       in which the government had charged 18 U.S.C. 666, a federal

3       programs bribery case, and had aggregated counts into one count

4       of 666.  And, as Your Honor knows, aggregation in 666 is

5       sometimes required to reach the $5,000 threshold in that law,

6       and there are other requirements in that law about that all

7       happening within a 12-month period.  This -- that was not a

8       1001(a)(1) case.

9              In this case, we are looking at a case very similar

10      to the *United States v. Menendez* case, in which the district

11      court in New Jersey looked at this exact same issue and found

12      that because *Menendez* had been charged with a single and

13      directed concealment scheme, it did not end, at the earliest,

14      until the last act of concealment, which swept in earlier

15      financial disclosure forms that had occurred outside of the

16      statute of limitations period, just like in this case.

17              The last thing --

18              THE COURT:  What's wrong with the defendant's

19      argument under *Toussie*, that once the crime has been committed,

20      once you've alleged all the elements, it's been committed, that

21      that's when the statute runs on that portion of the offense?

22              MS. GASTON:  Because in this case the defendant is

23      charge with an (a)(1) scheme, just like in *Bramblett* and in

24      *Hubbell.*  And so the statute begins to run at the last act of

25      concealment or the last false statement.

1          And, Your Honor, we fully expect and will propose

2     that the jury be instructed that they have to find an act of

3     concealment or a false statement within the statute of

4     limitations period -- that the scheme continued into the

5     statute of limitations period.

6          THE COURT:  And that's why I think we may have to

7     break these counts up, not so much just telling them that, but

8     to ensure it with specifics in a special verdict form or a

9     verdict form, if this case goes to the jury.

10          All right.  Is there anything else you want to say

11     about the statute of limitations?

12          MS. GASTON:  No, Your Honor.

13          THE COURT:  All right.  I did have another -- just a

14     question on another matter after upbraiding Mr. Taylor about

15     bringing up other matters.

16          I do want to say that I want to talk about the bill

17     of particulars for a second, which is -- I don't quite

18     understand the way the government handled it.  I issued an

19     order calling for the particularization of the charges.  I

20     didn't call for you to docket the evidence in support of those

21     charges.  So I didn't understand why you did that.

22          MR. CAMPOAMOR-SANCHEZ:  I'll address that question.

23          THE COURT:  All right.

24          MR. CAMPOAMOR-SANCHEZ:  You know, the concern was

25     that by issuing a bill of particulars, there was a concern that

1   there would be an argument later on that if it was -- not been

2   specifically stated, that somehow it fell outside.  And because

3   of that concern, we wanted to make sure to create the broadest

4   record possible as to what the issue related to.  That was the

5   only reason.

6            In fact, that was one of the arguments that we had

7   made that had been -- I think, Judge Friedman, in one of his

8   opinions, had issue with the fact -- or, had spoken about the

9   fact that when you have a bill of particulars, if there's

10  anything outside that could potentially be a variance.  And we

11  wanted to be as expansive as we could so that there was not an

12  argument later on that it was a variance.  That was the concern

13  that we were trying to address.

14            THE COURT:  All right.  Okay.  Thank you.

15            I mean, I am concerned.  Also, Rule 16 requires the

16  defendant to give the government a summary of expert testimony,

17  not to docket it and detail it.  I just feel like there's been

18  a lot of using the docket to say, This is my case.  I'm going

19  to win it.  And the other side, No.  This is our case, and

20  we're going to win it.

21            And I'm just not sure that's what the docket is for.

22            MR. CAMPOAMOR-SANCHEZ:  Understood.  And that was the

23  specific concern in that instance.

24            THE COURT:  All right.  Let's talk about Count 2,

25  which has significant bearing on Count 1.

1              All right.  Mr. Murphy.

2              MR. MURPHY:  Good morning, Your Honor.

3              THE COURT:  Good morning.

4              MR. MURPHY:  Let me start at the beginning, with

5     Count 2.

6              THE COURT:  All right.

7              MR. MURPHY:  Count 2 charges an offense under a

8     specialized false statement provision that is unique to the

9     FARA statute.  The statute was enacted in 1938 and was amended

10    to, substantially, its present form in 1942.  We are aware of

11    no litigated cases since 1942 that have involved this statute.

12    None.  We have a basic dispute with the government about the

13    meaning of the statute and what documents the statute applies

14    to.

15             This is a straightforward case of statutory

16    construction.  As in all such cases, the Supreme Court has

17    admonished courts and lawyers to start with the words of the

18    statute, as Congress wrote them and in full context, so that we

19    can understand how the statute works.  Now, we contend that

20    when you read this statute in full context, it has a plain and

21    natural meaning.

22             First, it clearly applies only to documents.  There

23    is no contention and there can be no contention that it applies

24    to oral statements made at a meeting.

25             Second, in this case, Count 2 is predicated only on

1    one letter.  That's because of the statute of limitations

2    issues, I take it.  But it's only the October 11th, 2013,

3    letter.

4            What was that letter?  The letter was requested by

5    the head of the FARA unit.  She asked Mr. Craig, during the

6    meeting:  Please provide us with a summary of the presentation

7    that was made by Skadden during this meeting.

8            Mr. Craig complied with that request and sent the

9    letter on October the 11th, 2013.  The letter is attached as

10   Exhibit 9 to our motion.  I'm not going to contend here today,

11   because of Your Honor's admonitions, to say that that letter

12   was truthful.  But, that's our position, that it was a truthful

13   letter.

14           Now, let's look at the language of the statute.  Was

15   this letter within the meaning of the term "any other document

16   filed with or furnished to the attorney general under the

17   provisions of this subchapter"?

18           That's the definitional prohibition that is key, in

19   part.  But we're going to get to the context later.

20           The question naturally arises:  Is there a provision

21   of FARA that refers, first, to such letters or that governs

22   such letters?  The answer is, no.

23           THE COURT:  Well, does that -- are you giving the

24   language its ordinary meaning at this point?

25           MR. MURPHY:  Yes.

```
 1              THE COURT:  They have been having a correspondence

 2      for months.

 3              MR. MURPHY:  Uh-huh.

 4              THE COURT:  We are the FARA people.  We're writing

 5      you in accordance with our duties under FARA.  We're trying to

 6      figure out how to exercise our duties under FARA.  Can you

 7      please, under FARA, give us this specific information?

 8              And the defendant writes back and says, In response

 9      to your letter, I'm doing this.

10              And then they say, Okay.  We have more questions

11      about FARA.  Tell us that.

12              And he writes back, In response to your questions,

13      I'm telling you this."

14              The whole conversation is happening pursuant to the

15      government's obligations to enforce FARA.

16              MR. MURPHY:  No.

17              THE COURT:  Why does -- under the provisions of this

18      subchapter, mean it has to have been required to be filed under

19      the provisions of this subchapter?

20              MR. MURPHY:  Because that's what these words mean in

21      context.  That's what these words mean when there's a reference

22      to a statute --

23              THE COURT:  But what other documents, other than

24      registrations statements or supplements, are required under the

25      provisions of the statute?
```

1          MR. MURPHY:  A raft of documents, Your Honor.  Under

2     612(a) there are subparts 1 through 11.  And subparts 1 through

3     11 state that when you register, you must provide, for example,

4     a list of every employee who works for your agency.  There must

5     be an attachment, every contract that you have with the foreign

6     principal.  There must be a statement of all the funds that

7     you've received.  There must be a statement of every

8     expenditure you've made on behalf of a foreign principal.

9          All of these documents and attachments are outlined

10    in exhibit -- I'm sorry, in statute (a)(1) through (a)(11).

11          THE COURT:  And they have to be filed?

12          MR. MURPHY:  They have to be filed.

13          THE COURT:  Then what is --

14          MR. MURPHY:  They have to be furnished.

15          THE COURT:  Well --

16          MR. MURPHY:  And they have to be complete.

17          THE COURT:  -- did they say -- what does "furnished"

18    mean here?  Are they required under 612 to be filed or

19    furnished?

20          MR. MURPHY:  Both.

21          THE COURT:  It seems to me that that's -- when you

22    use "any" and "furnished," this opens out.

23          MR. MURPHY:  Well, Your Honor, I disagree.  Some of

24    the provisions, (a)(1) through (11), use the word "furnished"

25    and the others use the word "file."  And in 618(a)(2), Congress

1    covered both bases by saying "filed with" or "furnished to."

2          What do the words "under the provisions of this

3    subchapter" mean?  The Supreme Court has told us how to

4    interpret that phrase, "under the provisions of a statute," in

5    the *Ardestani v. INS* case, where the question was, Does someone

6    get attorney's fees under the Equal Access to Justice Act when

7    they bring a procedure and prevail in a deportation matter?

8          And the question was whether that deportation matter

9    was one that was filed pursuant to -- and, actually, the words

10   were, "under Section 554 of the Administrative Procedure Act."

11   The Supreme Court says, Well, "under" has a lot of meanings.

12         If you look in the dictionary, "under" can be a lot

13   of things.  But when you say "under the provisions of Section

14   554," that means it must be governed by, it must be done in

15   accordance with, it is structured by Section 554.

16         And the Court found that this particular provision,

17   this deportation proceeding did not fit within that rubric of

18   under 554, although it bore similar resemblances to other

19   things that were covered by 554.  The D.C. Circuit, in both the

20   *Blackman* case and in the *D.C. Hospital Association* case, had

21   similar provisions.  Under the provisions of the Federal

22   Medicaid Act, what does that mean?  It has to be governed by

23   the Medicaid Act.

24         Under the provisions of the Individuals With

25   Disabilities Employment Act, that's the *Blackman* decision, what

1    does that mean?  It means it has to be under that Act, guided

2    by that Act, structured by that Act.

3              This letter, this letter that Mr. Craig sent on

4    October the 11th, is not defined by anything in the FARA

5    statute.  It's not governed by anything in the FARA statute.

6    It doesn't say how such letters must be structured.  There's no

7    regulation that defines these letters.

8              And remember, what we're dealing with here, as

9    Ms. Hunt testified -- or, provided information that's in her

10   302, when -- what the agency refers to as a potential

11   obligation letter is sent to someone that they think might have

12   an obligation to register.  That person has no obligation

13   whatsoever to respond.  They don't have to respond at all.

14   There's certainly nothing under the provisions of FARA that

15   have anything to do with the letter, if they choose to respond.

16             Look at the regulations that the agency has issued.

17   The regulations define various forms of statutory required

18   filings.  Each and every one of them -- and we attach them as

19   Exhibits 15 to 21 to our motion -- each of those forms, the

20   registration statement, the supplemental registration

21   statement, the amendment to the registration statement,

22   Exhibits A and Exhibits B to the registration statement, and

23   even the finalization, determination of the registration

24   statement, all of them explicitly make reference to Section 8

25   (a)(2) of the Act, which is 22 U.S.C. Section 618(a)(2).

1        And they say they must be filed and they must be

2    complete and they must be sworn to under oath by an authorized

3    representative of the agent.  That degree of formality is

4    totally absent from this letter.

5        THE COURT:  Well, you differentiate -- you're talking

6    about this letter because this letter is the only predicate for

7    Count 2.  Count 1 embraces the earlier correspondence as well.

8        MR. MURPHY:  It does.

9        THE COURT:  For purposes of Count 1 --

10       MR. MURPHY:  I would make the same argument.

11       THE COURT:  -- are those letters different because

12   they're not just, Summarize what you told me at the meeting,

13   but they're asking specific questions related to their

14   statutory duty to enforce the statutory scheme?

15       MR. MURPHY:  There's really no difference, I don't

16   think, Your Honor, under the statute.  And the reason I say

17   that is this:  There is no provision of FARA that dictates or

18   governs what must be said in a responsive letter.  To be sure,

19   18 U.S.C. Section 1001 applies to any statement that Mr. Craig

20   or anyone else makes to a government agency, including the FARA

21   unit.  That clearly applies.

22       This is a specialized statute which Congress had in

23   mind to make sure that everything that was required to be filed

24   was complete, fulsome, totally accurate, and nothing was

25   withheld.

1        And the language that Mr. Taylor was focusing the

2   Court on earlier this morning bears that out.  Because the

3   "required to be stated therein" clause and the "statements

4   therein" and the reference to "documents furnished therewith,"

5   those positions make no sense at all if you divorce them from

6   the registration statements, the supplements, the amendments,

7   and the various documents that are required to be filed with

8   the agency.

9        THE COURT:  Well, why -- the word "required" isn't in

10   the beginning.  It says, "In any registration statement or

11   supplement thereto, or in any other document filed or

12   furnished."

13        Doesn't say, required to be filed or furnished.  It

14   just says, "filed or furnished under the provisions of the

15   subchapter."

16        Now you're saying "under the provisions" has to be

17   interpreted in connection with those cases, which I'll look at

18   again.

19        MR. MURPHY:  Okay.

20        THE COURT:  But, if they were only talking about

21   documents that you are required to file, they do that quite

22   easily later.  Why isn't it telling that they don't say that at

23   the beginning, when they just say, "any other document

24   furnished"?  Aren't they saying, If you're going to deal with

25   us, you have to be truthful?

1          MR. MURPHY:  No.  And it would make no sense for

2     Congress to have passed that statute and to exclude from it

3     oral statements, if that's what Congress had in mind, and it

4     would make no sense to have structured it the way they did.

5     Because they had in mind, in 1942 -- recall, Your Honor, that

6     that's when (a)(2), subparagraph 1 through 11, they were all

7     enacted in the same time.  All of those detailed provisions

8     were placed into the statute in 1942.

9          The 1938 version of the statute, which we've attached

10    to our appendix to the motion, was a very simple statute.  It

11    did not contain these elaborate detailed requirements about

12    what had to be required and filed with a registration

13    statement.

14          When Congress amended it in 1942, they expanded and

15    defined, with particularity, what had to be required to be

16    stated, and they added this provision to make sure that those

17    statements were complete, that nothing was omitted that was

18    material.

19          And we rely, as well, on the *ejusdem generis*

20    doctrine, the tenant of statutory construction.

21          THE COURT:  Well, I don't see how that one fits in.

22    Because putting aside the commas or lack of commas or whether

23    comas are essential to the application of a Latin doctrine, it

24    doesn't say, in A, B, or C, or even in A or B or C.  But it

25    says:  In any registration supplement or -- any registration

 1    statement or supplement, or in any other document.

 2                So, it's not a series.  It's kind of two chunks.  I

 3    think registration statement or supplement is one concept,

 4    and -- but the repetition of the word "in" starts all over

 5    again.  I don't think it fits.

 6                MR. MURPHY:  Your Honor, I hear you, and I'm going to

 7    tell you why I think you're wrong.

 8                THE COURT:  Okay.

 9                MR. MURPHY:  Because in 1942, when Congress enacted

10    this statute, it was a little different because it contained

11    three items specifically in (a)(2), followed by the same

12    phrase, "or any other document filed with or furnished to the

13    attorney general."

14                What it said then --

15                THE COURT:  "Or any other document, or in."  Because

16    now, you're not --

17                MR. MURPHY:  Or in.

18                THE COURT:  -- part of the series anymore --

19                MR. MURPHY:  No.  It's --

20                THE COURT:  -- when you get to the new "in."

21                MR. MURPHY:  It's part of the series, Your Honor.

22                The statute referred to, originally, "in any

23    registration statement or supplement thereto, or in any

24    statement filed by the registrant under Section 614 of the

25    Act," which was a specialized provision that then existed.

1          If someone issued what was called propaganda

2     materials, they had to file those materials with the Library of

3     Congress within 48 hours.  And in addition, they had to provide

4     a statement with -- to the attorney general that would describe

5     exactly how, when, and where those propaganda materials were

6     issued.

7          So that statement was no -- is no longer required.

8     That was removed from the statute in 1995.  But when this

9     statute was enacted, it had those three things:  A registration

10    statement or supplement thereto, or any statement filed under

11    Section 614, or in any other document filed or furnished to the

12    attorney general.

13         That is a -- clearly was a list of three specific

14    items followed by --

15         THE COURT:  And then a catchall.

16         MR. MURPHY:  -- followed by a catchall phrase.  The

17    catchall phrase -- I mean, whole purpose of this doctrine is to

18    say, why would Congress say:  In a registration statement or a

19    supplement thereto, or in a statement filed under 614, or in

20    any other document, when if they -- all they meant to say was,

21    anything filed with the attorney general having to do with

22    FARA?

23         That's all they had to say.  Registration statement

24    becomes a surplusage.  Supplement thereto becomes a surplusage.

25         THE COURT:  See, I think you're making "or in any

1    other document," you're reading it out of the statute by saying

2    the only thing it could be is a registration statement or

3    supplement.

4            MR. MURPHY:  No.

5            THE COURT:  Now you're saying, no, it could actually

6    be a whole raft of other documents.  But in your brief --

7            MR. MURPHY:  That's what we've been saying all along.

8            THE COURT:  -- you made the argument that any other

9    document could only be a registration statement or supplement.

10           MR. MURPHY:  No, Your Honor.  If you read that, you

11   misunderstood our argument.  Our argument is, it's a

12   registration statement or a supplement, or things like them,

13   that are required to be filed, including the amendments

14   thereto, including all the specific items that are required by

15   Section 612, the 11 subparts, or as it then existed, Section

16   614 and the statement that was required.

17           Or there's a provision in Section 613(f) of the

18   statute that says that in order for a certain exemption to

19   apply, a statement must be filed with the secretary of state

20   and the attorney general.  That would also be covered by this

21   statute.  So, it's not -- it's a meaningless statute.  The

22   phrase "any other document filed, whether furnished to the

23   attorney general," applies to a lot of different documents.

24           But it doesn't apply to a letter that's not defined

25   by the statute, that's not contemplated by the statute, that's

1    not covered in the regulations, and that in no way, shape, or

2    form was in Congress's mind in 1942 when they passed this

3    statute.

4         Because in 1942 there was no such thing as a

5    potential obligation letter.  That's a construct that the

6    agency has developed over time informally.  It's informal, and

7    we know it's informal because, as Ms. Hunt said, they don't

8    have to respond to it.

9         And, Your Honor, the other reason, the other reason

10   why we suggest that you have to read Section 618(a)(2) narrowly

11   is because the Department of Justice has read it narrowly at

12   all times since 1942 up until the present case.

13        And the reason I say that is because Exhibit 1 to our

14   motion is the report of the inspector general that reviewed the

15   FARA department in 2016.  And what did they say about FARA

16   enforcement in that document?  They say that the major problem

17   that the agency says they have is obtaining detailed

18   information that's truthful and accurate from potential

19   registrants.

20        They say, We do not have the authority to obtain that

21   information, and it hampers our enforcement abilities.  And

22   they said, What we would like and what we've asked Congress to

23   do is to give the FARA unit civil investigative demand

24   authority.  We want the ability to send a letter to somebody

25   and say, provide us all your documents.  We want the ability to

1    send interrogatories and require them to be filed and served

2    under oath, because absent that, we do not have the ability to

3    obtain information from non-registrants.

4         THE COURT:  Well, that's obtain information; that's

5    not enforce.

6         MR. MURPHY:  Your Honor, they say that that's their

7    major enforcement flaw.  All of those bills -- and these bills

8    have been proposed in Congress since 1991 -- it wasn't passed.

9    In 1998, it wasn't passed.  In 2008, it wasn't passed.  And

10   there are presently pending in the Congress six separate bills

11   by senators and congressmen asking -- where the FARA unit has

12   asked, Give us civil investigative demand authority.

13        Now, if it were the case that they could just send a

14   letter and the response was required to be a full response to

15   whatever they wanted to know, and not only a full response, but

16   would have to provide every single document that might be

17   material to the decision that we're making, and we have a

18   criminal enforcement provision that applies to all those

19   documents, then they wouldn't be asking for the civil

20   investigative demand authority.

21        THE COURT:  All right.

22        MR. MURPHY:  And they wouldn't be saying we can't

23   enforce the statute without it.

24        I'm sorry, Your Honor.

25        THE COURT:  You've emphasized the rule of lenity,

1     which the Supreme Court has emphasized as well, and it applies

2     in situations where the language is ambiguous, which means more

3     than can someone come up with an alternative reading?

4              So what is the standard, what is the test for when

5     the rule of lenity kicks in?  What do they mean by "ambiguous"?

6     It seemed like in the *Santos* case they went through a pretty

7     detailed determination of this word is capable of two meanings;

8     if you use these meanings every time the provision applies,

9     etcetera, etcetera.

10             So what exactly do -- first of all, do I even need to

11    get to the rule of lenity here?  You're saying on its face it

12    goes your way.

13             MR. MURPHY:  I do.

14             THE COURT:  But second off, if I do, what does it

15    have to be for that to come into play?

16             MR. MURPHY:  So here's how the rule of lenity works,

17    and the Supreme Court made this exceedingly clear in the *Davis*

18    decision decided just two weeks ago.

19             THE COURT:  Well, they were kind of having a debate

20    about -- I think *Santos* is a little -- goes into more details

21    about the rule of lenity.  *Davis* was really debating about

22    whether you get to it before or after constitutional avoidance.

23    And it says it, but it doesn't say what the -- what's the

24    threshold for when it kicks in?  That's what I want to know.  I

25    didn't see it in either one of these.

1           MR. MURPHY:  The threshold it -- here's the way it

2    works:  It's referred to as a doctrine of last resort.  That

3    doesn't mean it's a Hail Mary pass, or it's the last thing that

4    you can possibly think of.  It just means that you apply it

5    last.

6           THE COURT:  You have to construe the statute, use all

7    your other tools first.

8           MR. MURPHY:  Right, use your tools.  Read the words.

9    Put the words in context.  See if you have some doubt about the

10   meaning.  Then, let's look at cannons of construction.  Let's

11   apply *ejusdem generis*.  Apply *noscitur a sociis*, which means a

12   word is known by its associates.  In this case, the associates

13   are the registration statements and the supplement thereto.

14   And when this statute was enacted, Section 614(a)(2)

15   statements, are they like this letter, or are they more like

16   the things that are required to be filed?  Apply that doctrine.

17   See where you come out.

18          Look at the legislative history.  I passed over this,

19   but in 1938, there is no doubt that this letter would not have

20   been covered by the statute as it then existed.  In 1938, it

21   said, Whoever, in complying with the provisions of the statute,

22   makes a false statement, etcetera, etcetera, etcetera.

23          It was clearly "in complying with," in filing the

24   registration documents.  There is not a single breath of

25   intention by any member of Congress in 1942 that they meant to

1        change the scope of the statute.  In fact, they said --

2                  THE COURT:  Well, does that make the legislative

3        history tell me something or just not tell me anything?

4                  MR. MURPHY:  No, it does tell you something.  Because

5        they said, We are strengthening the enforcement provisions, and

6        here's how we're doing it.  We're moving from the Secretary of

7        State to the Department of Justice."

8                  And they say why, because the Department of Justice

9        was already implementing and administering what was known as

10       the Voorhis Act.  It's still on the books.  Jerry Voorhis was

11       the congressman that Richard Nixon defeated in 1948.

12                 But in 1940 he promulgated this statute, which is a

13       restoration and disclosure statute, like FARA, but it applies

14       to entities that are engaged in efforts to overthrow the

15       government of the United States while acting under the control

16       of a foreign entity.

17                 And what Congress said is, Justice will now be given

18       supervisory authority, administrative enforcement over all of

19       these foreign entities that might be trying to influence U.S.

20       policy, or even going to the extent of attempting to overthrow

21       the government.

22                 Justice should have both of them, because these

23       statutes are parallel.  The Voorhis Act, which is still on the

24       books, cannot be read, because it just says if you file a false

25       statement in your registration statement, under the Voorhis

1    Act, that's a crime.

2              Congress, in 1942, said, We want these statutes to be

3    administered.  They're parallel in scope.  It's pretty clear

4    what Congress thought.  We're talking about registration

5    statements and statements required to be filed under these

6    statutes, not letters that were totally outside the purview of

7    the statutory structure.

8              Okay.  So you look at the legislative history.  And

9    then, if you still have lingering doubts, look at the

10   administrative interpretation.  Look at the fact that the

11   Department of Justice has no regulations that cover these

12   letters.  None.  There is no regulation that talks about these.

13   There's certainly no required form, like there is with the

14   other registration documents.  There is no requirement of an

15   oath.

16             There's no certification, as there exists under

17   certain provisions of the statute, when you seek an affirmative

18   determination from the agency about whether or not a

19   contemplated course of action might be or might not be covered

20   by the statute.  You must certify that everything you've said

21   is complete.  You must have someone sign it and verify that

22   it's a complete, full document.

23             THE COURT:  All right.

24             MR. MURPHY:  Nothing like that.

25             THE COURT:  Let's say you're right --

1            MR. MURPHY:  Then -- I'm sorry -- I'm sorry, Your

2     Honor.

3            THE COURT:  Okay.  Let's say you're right, that

4     writing a letter after meeting cannot, either by applying the

5     rule of lenity or the plain terms of the statute, be a document

6     filed under the provisions of this subchapter.

7            MR. MURPHY:  Right.

8            THE COURT:  So even if they are correct in their

9     allegation, even if the October letter was rife with false

10    statements, 1001 is your only option, and this is not your

11    option.  Let's say you're right about that.

12           MR. MURPHY:  Yes.

13           THE COURT:  And maybe this is a question for

14    Mr. Taylor:  Why doesn't the FARA statutory scheme, the

15    obligation of the Department of Justice to enforce it, to get

16    information, to do the best it can to -- when they are in the

17    midst of saying to someone, Please tell us which way to go here

18    based on these particular facts, why doesn't that support the

19    duty for 1, Count 1, even if Count 2 has to go?

20           MR. MURPHY:  But, where does the duty come from in

21    Count 1?  If they say the duty comes from this statute, the

22    answer is, this statute doesn't apply at all to that letter.

23    That's the argument I've just made, and I'm --

24           THE COURT:  I think the statutory structure of FARA,

25    in its entirety, that there is a statute about who has to

1     register and what kinds of activities could require it.  That

2     there were government officials whose job it was to make a

3     determination under the statute about whether the statute

4     applied, and they said, We need X, Y, Z factual information.

5              At that point you're outside of what *Safavian*

6     rejected, which is a wishy-washy, kind of, you have a general

7     duty to be ethical generally.  That's not enough to make

8     omissions actionable.

9              Why wouldn't omissions still be actionable even if

10    you're right about Count 2?

11             MR. MURPHY:  No.  *Crop Growers* is a good example.

12    *Crop Growers* is a securities case.  There are all sorts of

13    specific requirements under the securities laws.  If those

14    specific requirements don't apply, they don't create this

15    general -- what I would refer to as a duty in the air.  You've

16    got to give them an agency.  Every government agency is

17    enforcing some statutory scheme.

18             The person that was dealing with Mr. Safavian, the

19    inspector general, he was enforcing the Ethics in Government

20    Act.  It wasn't, you know, something that he just made up:  I

21    would like to know what your relationship is with Abramoff, and

22    I would like to know about the details of your trip to

23    Scotland.  I mean, it was for a specific statutory purpose:

24    Are you permitted to make this trip, or would it violate the

25    Ethics in Government Act?

1          THE COURT:  It doesn't point to the Ethics in

2     Government Act.  The only thing it says in the opinion the

3     government relied on was a general obligation of government

4     employees to act ethically, and the D.C. Circuit found that to

5     be insufficient.

6          Do we know if it relied specifically on the Ethics in

7     Government Act?

8          MR. MURPHY:  Since the person that he went to was the

9     government ethics officer and his agency, I'm assuming that

10    that's why he went there.  And I'm assuming that's what the

11    inspector general was looking at in *Crop Growers*.  I mean, the

12    SEC has a broad enforcement authority.  In every case, in every

13    case where a federal government agency is asking questions of a

14    person, they're implementing or enforcing some statute.

15         The *Safavian* issue is, is there something specific in

16    that statute that requires a duty of full disclosure?  That's

17    the question.  And the answer in *Safavian* was no.  And the

18    answer in our case is no.

19         And the reason that the answer is no, because this

20    statute doesn't apply to that letter or any other letter that

21    any registrant or potential registrant might exchange with the

22    FARA unit.  It applies to the documents that must be filed

23    under FARA, under the provisions of FARA, that are regulated by

24    FARA.

25         Your Honor, on the rule of lenity, I got sidetracked,

1    and I apologize.

2              THE COURT:  I interrupted you.  You didn't get

3    sidetracked.

4              MR. MURPHY:  When you get to the last step, if you

5    have some lingering doubt about the meaning of Congress's

6    words, then you apply the rule of lenity, and you must, in a

7    criminal case, do that.

8              Why?  Because I think as Justice Gorsuch said just

9    the other day, A vague statute that's a criminal statute is no

10   statute at all.

11             And if there's a vagueness in the statute or an

12   ambiguity in the statute and you're trying to impose a penal

13   sanction on a citizen of this country, the answer is, send that

14   statute back to Congress.  Congress passed this statute in

15   1942.  It has never been used in those years.

16             THE COURT:  All right.  All right.

17             MR. MURPHY:  Never.

18             THE COURT:  All right.  I understand your argument.

19   Let me talk to the government about this statute.

20             MR. MURPHY:  Thank you, Your Honor.

21             THE COURT:  Thank you.

22             MR. McCULLOUGH:  Good afternoon, Your Honor.

23             THE COURT:  Good morning -- afternoon, whatever it is.

24             MR. McCULLOUGH:  I want to get it right.

25             THE COURT:  Does the court reporter need to take a

 1      break?

 2                 THE COURT REPORTER:  Yes.

 3                 THE COURT:  All right.  Why don't we do that, now

 4      that we've been reminded that it is the afternoon.  So we're

 5      going to take a ten-minute break and come back 15 minutes after

 6      12.

 7                 Thank you.

 8                 (Recess.)

 9                 THE COURT:  All right.  You're back up.

10                 THE COURTROOM DEPUTY:  Your Honor, recalling Criminal

11      Case Number 19-125, the *United States of America v. Gregory B.*

12      *Craig*.

13                 THE COURT:  All right.  You can talk about anything

14      you want, but I would specifically like you to focus first on

15      the case law related to "under the provisions of."

16                 I understand that it is a -- clearly, those words

17      are -- place some limits on any other document filed or

18      furnished to the attorney general.  And the question is, is it

19      just -- was it broadly submitted in relationship to a FARA

20      inquiry, or does it have to be, in accordance with those cases,

21      something that was submitted pursuant to, essentially, required

22      by the statute?

23                 MR. McCULLOUGH:  Thank you, Your Honor.

24                 It does not need to be required by the statute, and

25      we know this for several reasons.  And I'll turn immediately to

1    the case law.  But Congress did not say, required to be filed

2    under the provisions of FARA.  It said, filed with or furnished

3    to the attorney general under the provisions of FARA.

4            And the case law does not require such a narrow

5    reading.  In fact, the meaning that's been given to it through

6    the case law, through *Ardestani*, through *Blackman*, through the

7    *D.C. Hospitals* case, all of those stand for the proposition

8    that "under" has many meanings, and it takes its meaning from

9    the context.  And in all of those cases, Congress, in fact, was

10   willing to go beyond the specific statutory provision.  It's

11   willing to go beyond the language there in the statute.  And

12   its asking itself whether it's being done pursuant to the

13   scheme.

14           And so, for instance, in *Ardestani*, the question is

15   whether something was arising under 554 of the Administrative

16   Procedures Act.  And what the Supreme Court did there, they

17   said, Well, we know it could mean governed by, subject to, or

18   the authority of.  And it looked to *D.C. Hospitals*, and kind of

19   looked at this broad meaning of "under."

20           And it said -- unfortunately, the immigration

21   proceedings at issue there were outside of the Administrative

22   Procedures Act altogether.  They talk about a case, the

23   *Marcello* case, where they decided it was outside of the

24   Administrative Procedures Act.  They were willing to give it a

25   broader meaning than the narrow one that was at issue there.

1          *Blackman,* the same issue, it was a question of

2      whether a matter was filed under the Individuals With

3      Disabilities Act.  And there, the Court said:  Well, something

4      that's filed under the Individuals With Disabilities Act and

5      Education Act doesn't need to be filed pursuant to the

6      procedural provisions within the idea.  It can be filed outside

7      of those provisions, if it is enforcing the fundamental

8      statutory rubric, the purpose of the idea.

9          And, in fact, the Supreme Court, when they've talked

10      about the meaning of "under," they've talked about the idea

11      that they have given it broad meaning.  It can refer to the

12      entire comprehensive scheme of regulation.

13          THE COURT:  Were those civil or criminal cases?

14          MR. McCULLOUGH:  Those were civil cases, Your Honor.

15          THE COURT:  So, if they talk about the fact that

16      "under" can have more than one meaning, does that drive you

17      right into the rule of lenity?

18          MR. McCULLOUGH:  Your Honor, it does not.  Because

19      here we are clearly talking about something that is -- that is

20      clearly prescribed as any other document that is filed with --

21      filed with or furnished to the attorney general under the

22      provisions of FARA.

23          From the beginning, Mr. Craig was made aware that the

24      FARA unit was looking at whether he had an obligation to

25      register.  That is front and center from the initial inquiry to

1    Mr. Craig, and that is the entire context of the conversation.

2          And the letter that we're talking about here is a

3    letter that was filed in response to a determination that the

4    FARA unit had reached, that Mr. Craig did have an obligation to

5    register, and they are citing specific provision that they

6    believe that Mr. Craig had an obligation to register, pursuant

7    to the provision of FARA.

8          And the letter filed in response to that falls

9    squarely within the meaning of this statute.  It is a document

10   filed or furnished in response to an inquiry that the FARA unit

11   is making.

12         And so I can -- I would like to talk, briefly, about

13   how we know that "any other document" is not a document that is

14   filed with a registration statement or supplement thereto.  We

15   know that just from the plain language of the statute.  We know

16   that Congress was talking about something other than

17   registration statements and supplements thereto.  It says, "any

18   other document filed with or furnished to."

19         And we know beyond that, that Congress did nothing to

20   tie it back to registration statement or supplement thereto.

21   It's saying, "any other document filed with or furnished."

22   They don't use the terms "thereto" or "therewith" as they use

23   elsewhere in the statute.

24         And, in fact, as we talked about, it was a

25   separate -- it was an entirely separate third category under

1    the 1942 amendment.  And so, we know that Congress was talking

2    about something entirely divorced from the registration --

3    whether it was a registration statement or supplement thereto.

4         THE COURT:  I think the plain language supports that.

5    I don't think that's ambiguous.  I think the question is, how

6    limiting a provision is under the provisions of this

7    subchapter, which you addressed.  And then this particular

8    letter, the other sorts of letters you had, the government

9    saying:  Hi.  We're doing our FARA due diligence.  Answer this

10   question.

11        And he says, Okay, in reply to your question, I'm

12   going to tell you X.

13        This is a different letter.  This is after the

14   meeting where he's just -- it's like a white paper, he's

15   summarizing his point of view.  And so the question is, even if

16   you could argue, perhaps, that the others were filed under the

17   subchapter, how this one -- is this different?

18        MR. McCULLOUGH:  This letter is no different.  This

19   letter comes following the receipt of a determination letter

20   from the FARA unit that Mr. Craig -- that the FARA unit

21   believed that Mr. Craig had an obligation to register under

22   FARA.  And the letter was submitted as part of a process by

23   Mr. Craig to change the FARA unit's determination, a

24   determination that FARA unit was entitled to make and could

25   enforce under 618(f), if Mr. Craig chose not to register and

1      the FARA unit believed he had an obligation to register.

2                  THE COURT:  Well, if you could read "under the

3      provisions of this subchapter" either way, why am I not bound

4      then by the rule of lenity here?

5                  MR. McCULLOUGH:  Your Honor, I think that here, you

6      cannot read "under the provisions of this subchapter" either

7      way.  If we read "under the provisions of this subchapter" to

8      mean only those documents that are required to be filed under

9      the provisions of FARA, there are no other documents that are

10     present in the statute.  And we see the way that defense then

11     has to breathe life into it by pointing to --

12                 THE COURT:  Well, what about their argument that

13     Well, no, 612 says give us this, give us this, give us that?

14     Those are other documents required under the subchapter,

15     correct?

16                 MR. McCULLOUGH:  Your Honor, those are other

17     documents that are required to be filed as part of the

18     registration statement, and those documents are covered as part

19     of the phrase "any other" -- "any registration statement or

20     supplement thereto."

21                 When Congress was talking about any other document

22     filed with or furnished to the attorney general under the

23     provisions of FARA, it was not talking about documents filed

24     with the registration statement.

25                 And we can actually -- we can kind of further tease

1    this out by comparing the structure of the statute to the

2    Voorhis Act.  The Voorhis Act doesn't have that language, "any

3    other document filed" -- in the false statement provision, the

4    Voorhis Act doesn't have that language, "any other document

5    filed with or furnished to the attorney general under the

6    provisions of FARA."

7            In fact, in the Voorhis Act, which also had a

8    registration requirement, there were other documents to be

9    filed with the registration statement.  So Congress knew, when

10   it was passing the Voorhis Act, that a statement that included

11   other documents that were required to be filed with it, that

12   was fully covered when Congress said, Making a false statement

13   in the registration statement includes the documents to be

14   filed with it.

15           And one thing I would like to point out is that, as

16   we talked about, the term "required," it appears in the

17   prohibited activities.  It doesn't appear in the scope of the

18   provision, and that gives us a further indication that Congress

19   understood how to use the term "required by."

20           But it didn't use it here.  It used a broader

21   provision.  It said, "filed or furnished to the attorney

22   general under the provisions of FARA."

23           And further -- further indication that they weren't

24   talking about a specific provision, we can get that by

25   comparing the language in 618(a)(1) against the language in

1    618(a)(2).  In 618(a)(1) we talk about that Congress passed the

2    provisions -- the substantive provision that "someone who

3    willfully violates any provision of this subchapter or any

4    regulation thereunder."

5           Congress doesn't say that in 618(a)(2), even though

6    it clearly understood how to say that.  Congress said, "under

7    the provisions of FARA."  It is breathing full life into

8    whether the attorney general was exercising the authorities

9    given to it and the fundamental purpose of FARA, which was to

10   identify individuals who may be required to register and secure

11   their registration under the statute.

12          And Congress would have wanted it, the attorney

13   general to be armed with a false statement provision that

14   ensured that the attorney general couldn't be misled in that

15   endeavor, and that was why this false statement provision reads

16   the way it does.

17          And it ensures that when the attorney general is

18   enforcing the FARA statute and identifying people and --

19   identifying people that are engaged in political activities

20   under 611(o), or they're required to file a registration

21   statement under 612(a), that those people are either providing

22   accurate information back, so that the attorney general can

23   make a determination as to whether those people are required to

24   file, or the attorney general can choose to pursue other

25   actions, such as 618(f), as filing an injunctive action.

1          THE COURT:  Okay.  If I now have some more questions

2     about Count 1, should that be your colleague or -- I guess, my

3     question is --

4          MR. McCULLOUGH:  I would certainly defer to my

5     colleague on Count 1.  So if you want to dive into Count 1, I'm

6     happy to cede to Ms. Gaston.

7          THE COURT:  All right.  My question for you is,

8     you've talked about the how the entire statutory scheme of FARA

9     and the government's obligations to enforce it, including this

10    provision, give rise to the duty that was missing in *Safavian*,

11    to be fulsome and not just -- not lie, but -- to not omit.

12         If the defense is right, that this particular false

13    statement provision is more narrow than the general false

14    statement provision in 1001, and it really is about only

15    documents filed pursuant to, i.e., required by the provisions

16    of the subchapter, so the last letter isn't covered, does that

17    change -- if I agree with them, does that change your argument

18    for Count 1?  Do I have to find that some of these statements

19    would have violated this statute to find the existence of a

20    duty to support 1001 prosecution?

21         MS. GASTON:  No, Your Honor.  The duty for Count 1

22    exists independent of 22 U.S.C. Section 618, for the reasons

23    that we described earlier, in that the FARA unit was enforcing

24    FARA generally, and, in particular, Section 612, which are the

25    registration obligations which impose a duty to disclose

1      specific information, including the specific information that

2      the FARA unit was asking the defendant for through these

3      extended questions in the letter writing, as well as in the

4      meeting.

5              THE COURT:  What was the purpose of Paragraph 63 in

6      the indictment, where you list things he didn't say?  Are you

7      saying that those omissions are violations of 1001 themselves,

8      or are you listing the facts that, in your view, demonstrate

9      the falsity of the statements that are alleged to be false in

10     Paragraph 62?

11             MS. GASTON:  It's both, Your Honor.  The indictment,

12     so the substantive count, which appears in Paragraph 48,

13     alleges between June 3rd, 2013, and January 16, 2014, a scheme

14     to make false statements and conceal material information.  And

15     incorporates by reference the false statements that the

16     defendant made in Paragraph 56, the false statements that the

17     defendant made in Paragraph 60 -- sorry -- in Paragraph 61, the

18     false statements in Paragraph 62, and the material omissions in

19     Paragraph 63.

20             THE COURT:  You agree that Section 618 only covers

21     written submissions?

22             MS. GASTON:  Yes, Your Honor.

23             THE COURT:  So, your argument for why he could be

24     prosecuted for a concealment scheme in his oral statements is

25     the same as what you just described, the broader duty that

1    arises out of the FARA statute as a whole, and the government's

2    obligation to enforce it as a whole, not the specific statutory

3    provision.  When he talked to us, he violated 618.

4              MS. GASTON:  Yes, Your Honor.

5              THE COURT:  All right.  I think I understand all of

6    that at this point.  Unless you have anything to -- you don't

7    think you've said yet on this issue, Mr. Murphy.  I would like

8    to go on to the next couple of issues.  All right.  Go ahead.

9              MR. MURPHY:  Your Honor --

10             THE COURT:  I don't want you to go home feeling like

11   you didn't get to say what you wanted to say.

12             MR. MURPHY:  There's always something more to be

13   said.

14             THE COURT:  I know.

15             MR. MURPHY:  Let me just try to give you an example

16   of a situation that, I think, helps illustrate this issue under

17   this statute.

18             Let's suppose that you're a taxpayer and you filed

19   your returns, and you know that there's something you left out

20   in terms of income.  And you get a call from the Internal

21   Revenue Service, and they say, Come on down.  We want to talk

22   to you about your tax return.  They send you a letter saying,

23   you know, Come on down.

24             You go down, and they ask you a lot of questions

25   about different things that are on your return, but they never

1   ask you about the one thing that you omitted from your return.

2   They never ask you and you didn't tell them.

3           Now, were you under a duty to make full disclosure

4   because you know that the statute requires that you put

5   everything down?  There's a statute --

6           THE COURT:  Well, that's a good analogy, but I don't

7   think that's an analogy that marries up with what we have

8   here --

9           MR. MURPHY:  I think it does.

10          THE COURT:  -- where they said, We want to talk to

11  you about media contacts.  That is the specific thing we want

12  to talk to you about.  With whom?  When?  Why?

13          So it's very different than saying, Come down because

14  I want to talk to you about your home office and how you use

15  it.

16          MR. MURPHY:  But they asked Mr. Craig -- and we don't

17  want to get into the merits, but they asked him about, What

18  contacts did you have with the media?  And he told them what

19  contacts he had with the media.

20          What they're saying he didn't tell them was, Well,

21  there were some other folks out there that were also doing a

22  media rollout that you had some, perhaps, knowledge of and you

23  didn't tell us that.

24          It's completely, I think, an apt analogy to my tax

25  analogy.

1          Your Honor, with respect to the "under the provisions

2     of," if you read *Ardestani* --

3          THE COURT:  I will.

4          MS. MARCUS:  -- Justice O'Connor's opinion in that

5     case, she is very specific about how you might have a broad

6     reading that says that this particular deportation proceeding

7     was similar to or analogous to or followed principles like

8     those sections in 554.

9          But she says, But they were not under 554 because

10    they were not governed by Section 554, in the same way we say

11    that this letter that Mr. Craig sent was not under the

12    provisions of Section 618(a)(2) because you cannot point to a

13    specific provision of this subchapter that defines the

14    obligation to send that letter, or says what the letter should

15    say or shouldn't say.

16          I'm going to get back to the rule of lenity.

17          Part of the rule of lenity is notice.  As

18    Justice Gorsuch decided the other day in *Davis*, not only --

19          THE COURT:  All right.  You actually are repeating

20    yourself, and I really did hear you the first time.  I've been

21    listening very carefully, and I just don't want to hear it a

22    second time.

23          MR. MURPHY:  Okay.  But what notice does Mr. Craig

24    have that he was under an obligation to provide every jot or

25    tittle of everything that the government agents at the FARA

1     unit might want to know?  What notice did he have of that?

2              And so he writes some letters, answers truthfully,

3     has a meeting, summarizes what was said.  And then six years

4     later a prosecutor says, Oh, well, you didn't state everything

5     that we might have wanted to know.

6              THE COURT:  All right.  I feel like when I read the

7     indictment, the things that they're saying he was misleading or

8     incomplete about are the things in the letter that they asked

9     about.  I'll look back at it again, but that seems to be what

10    Paragraph 56 is all about, his personal communications with the

11    media, which, clearly, he was on notice before he responded to

12    a letter asking him about them, that that's what they were

13    asking about.

14             MR. MURPHY:  He answered the questions about his

15    contacts with the media.

16             THE COURT:  Okay.  And that's the merits question.

17    I'm not saying that they can prove that he lied, but I do think

18    that they are alleging that he lied about things that's exactly

19    what they told him they wanted to talk about, not other things.

20             MR. MURPHY:  What they're holding him to account for,

21    apparently, is an allegation that when he had a contact with

22    the media, it was consistent with a plan that someone else had

23    developed, and he didn't tell them about the fact that there

24    was someone else who was developing a plan.  They never asked

25    about that.

 1              Thank you.

 2              THE COURT:  All right.  Who's handling the Rule

 3     404 --

 4              MR. McCULLOUGH:  Your Honor, if I could add one

 5     thing --

 6              THE COURT:  Yes.

 7              MR. McCULLOUGH:  -- I didn't have an opportunity to

 8     say.

 9              THE COURT:  All right.

10              MR. McCULLOUGH:  But, just one thing on the point

11     that defense raises about whether there is an oath requirement

12     that attaches to any other document that's filed with or

13     furnished to the attorney general under the provisions of FARA.

14              And there is no oath requirement.  We know that from

15     the fact that when the FARA section was amended and the false

16     statement was expanded in 1942, it included, as counsel has

17     noted, the filing of a statement concerning the time, place,

18     and manner of the dissemination of propaganda -- those are the

19     statements under 614(a) that were referred to in the 1942

20     amendment -- those did not require an oath.  Those required the

21     same thing here, just a signed statement.

22              And so Congress was envisioning "any other document"

23     to refer broadly to those things that would influence a

24     decision of the attorney general when the attorney general was

25     engaging in the conduct under the Act.

1          THE COURT:  Okay.  Thank you.

2          I don't have very many questions about the Rule

3     404(b) question, but who on the defense team is assigned to

4     that?

5          MR. ABELSON:  I am, Your Honor.

6          THE COURT:  Okay.  One question I have, it doesn't

7     really relate to the merits, which is, what was the point of

8     Footnote 1 in your pleading, naming the relative the government

9     did not choose to name in its pleading?

10          Just because it had already been publicized on the

11    internet, what purpose or interest did it serve for you to

12    announce it in the pleading and on the court docket, who it is?

13          MR. ABELSON:  I suppose, from the defense

14    perspective, we saw no purpose in not saying the name because

15    it was public, and we understood the public and the government

16    and anyone reading the papers to understand the first name.

17          That was the explanation.

18          THE COURT:  I mean, you made a point of saying, We're

19    going to say who it is.  They didn't say who it is.  We're

20    going to say who it is, and I really wonder what's that all

21    about?

22          MR. ABELSON:  There was nothing that that was about.

23    It was, we saw the pseudonym, or that wouldn't have served a

24    purpose.  That's it.

25          THE COURT:  All right.  Well, what is your response

1   to the government's argument that you can't have it both ways?

2   If your position is that there's nothing wrong with what the

3   defendant did, then you can't invoke Rule 404(b) to keep it

4   out.

5          MR. ABELSON:  So, I actually see it the other way

6   around.  I think the government's concession that there was

7   nothing wrong with what Mr. Craig did to help out this young

8   lawyer who'd just lost her job when Dewey collapsed, it's fatal

9   to their position.  If the only reason this evidence would be

10  relevant is if it is relevant to -- if it is probative of the

11  question of whether Mr. Craig would have been so beholden to

12  Mr. Manafort that he would have committed a crime.

13          It did not.  He -- we lay out in our papers why, I

14  think, that the evidence has no probative value, but that -- on

15  that specific point.  It only has probative value if it tends

16  to prove that Mr. Craig, 18 months later, lied to the

17  Department of Justice.  And the fact that they say it -- there

18  was nothing wrong with what he did, cuts that logical point off

19  at the outset, I think.

20          And there are a number of other reasons why the

21  evidence has, essentially, no probative value.  But, I'd just

22  like to highlight a couple of the reasons why --

23          THE COURT:  I --

24          MR. ABELSON:  Sure.

25          THE COURT:  Given the fact it's quarter of 1:00, and

1    I've read your pleading, I actually don't think you need to do

2    that right now.

3              MR. ABELSON:  Okay.

4              THE COURT:  And so I'm going to ask the government a

5    couple of questions, and I'm going to rule on this issue.

6              MR. ABELSON:  Okay.

7              THE COURT:  All right.  And perhaps you can tell me

8    what fact or consequence to the termination of this case is

9    made more or less probable with the admission of this evidence?

10             MR. CAMPOAMOR-SANCHEZ:  Absolutely, Your Honor.

11             So, as the Court may have seen from the pleadings, a

12   big part of what the defense in this case is going to be is

13   Mr. Craig's intent when he had the contact with the *New York*

14   *Times* in December of 2012.  And the claim by the defense is

15   that he had that contact for his own reasons, not for -- not

16   because, as we allege, Ukraine and Mr. Manafort had asked him

17   to participate in the media plan.

18             So the reason for his contact, it is, indeed, a

19   central factual issue that we believe the jury is going to have

20   to determine.  And so his motives as to why he would have

21   actually -- even though he knew from the beginning and stated

22   he did not want to register under FARA, why would he be

23   convinced to actually take that step and do that at the

24   request, as we allege, of Ukraine and Mr. Manafort?

25             So, that is why it's relevant.

 1            THE COURT:  I'm still not getting why we get to the

 2     next step.  I can understand that there might be some relevance

 3     to the fact that he was hoping to get more business from

 4     Mr. Manafort, and Manafort had made sure that he had made a lot

 5     on this assignment; but, where does the involvement in terms of

 6     the family member --

 7            MR. CAMPOAMOR-SANCHEZ:  It's not that there's the

 8     involvement of the family member itself.  It's the fact that

 9     there is a request made by Mr. Manafort to Mr. Craig to take an

10     action.  So its really not about, really -- and that's why

11     we're saying there's nothing -- there was no illegality in what

12     Mr. Craig did.  It's what is probative of and what is relevant

13     of is that he is willing to act at Mr. Manafort's behest and at

14     his request.

15            And once he did that, we argue, and we'll try to

16     argue at trial, in December of 2012 he was committed.  And

17     having done that, still not wanting to register -- and as we

18     allege in the indictment, there's many reasons why he did not

19     want to register -- he is now stuck in this position where the

20     FARA unit is asking him information, and as we allege in the

21     indictment, he is not providing that information.

22            Why?  Because if he reveals, for example, who is

23     paying for the report, if he reveals that he was part of the

24     media plan, then not only is he going to face personal

25     consequences in terms of reputational -- a hit, but the report

1      itself, the thing that was of value to Ukraine and to

2      Mr. Manafort, it is going to loose that value.  That's what the

3      argument is about.

4              THE COURT:  But you don't -- you want to make the

5      point that he wanted to keep Mr. Manafort happy.

6              MR. CAMPOAMOR-SANCHEZ:  Yes.

7              THE COURT:  But, it seems to me that you have other

8      evidence that you can rely on to make the point that he wanted

9      to keep Mr. Manafort happy, and that once he had done Step A,

10     he had to continue to cover up -- the whole theory, it seems to

11     me, this business with the daughter is a sideshow to that

12     theory.

13             MR. CAMPOAMOR-SANCHEZ:  Well, I understand why, and

14     that's one of the reasons we really did not care about naming

15     who it was, right?  But, the value is in the fact that he seems

16     to have a motive to curry favor with Mr. Manafort.

17     Mr. Manafort is willing to ask him to do things and he's

18     willing to do them, and why he's willing to do them.

19             So the fact is -- so one thing that is in the papers,

20     or in the documents that were submitted, particularly by the

21     defense, but it's, perhaps, not apparent to the Court, is that

22     the conversation that is happening about the hiring of the

23     relative is happening at the same time that they're talking

24     about the funds being delivered to Skadden.

25             So in the emails that the defense attached to their

1    initial opposition, there's all this talk about the package is

2    coming, and it's coming to your account.  And the timing of

3    when that happens is, frankly, quite revealing.

4           So at the time that Mr. Manafort sends that original

5    email where he's upset about the fact that the rejection letter

6    was sent, $2 million were still owed to Skadden under the

7    agreement.  After Mr. Craig actually gets the interview

8    restarted, then the payment gets made of another million

9    dollars on or about June 7th.

10          And then in the reasons why Mr. Craig advocates --

11   and it is his decision, by the way -- he is asked, What do you

12   want us to do?

13          He says, I want her hired.

14          He says in that memo, that the last payment is coming

15   on June 29th of 2012.  And when does he arrange for the call to

16   be made to the relative that's hired?  June 28th.  So, in --

17   and if the Court looks at those emails, even though they're

18   talking in part about --

19          THE COURT:  Yes.  I understand that that may have

20   motivated his desire to press for the hiring, but why does that

21   shed light on whether he was telling the truth or not in

22   October of 2012?

23          MR. CAMPOAMOR-SANCHEZ:  Because the reason for why he

24   contacted the press in December is, really, his only defense to

25   why he was not lying to the FARA unit.  I mean, the case -- let

1    me try to explain that, because that is really important.

2          So, the case, a lot of it, of course, will be

3    witnesses, they'll explain what's going on, but it is in black

4    and white.  He was participating in the media plans, as alleged

5    in the indictment.  There's emails about it.  There's emails

6    about his reversal.  There's emails about what the FARA advice

7    was that he was supposed to have received.  And there's emails

8    about the media plan.  And, in fact, we have the emails of him

9    contacting the *New York Times*.

10          So, the defense to why, in response to the FARA

11   questions, is, I did not -- I did not lie.  I did not mislead,

12   is because he says now, I did it for my own purposes.  Yes.

13   Okay.  So maybe I talked before the report was out, but it

14   wasn't because I was asked.  I wasn't doing media relations

15   work.  I was doing it for my own purposes."

16          But, if we can prove that the reason he was doing it

17   was not for his own purposes, then we are really showing that

18   when he is making those misleading or false statements to the

19   FARA unit, he was doing it on purpose.  Because otherwise, the

20   jury is going to be thinking, So, why would a person that

21   initially said they did not want to register for the FARA unit

22   still contact the media, as I see in the emails?  Because the

23   emails, hopefully, will be in evidence, and they can see it in

24   writing.

25          Why he do that?  Well, he did that because he had a

1    motive to curry favor with Mr. Manafort.  So, to prove what his

2    intention was and his motive --

3            THE COURT:  Because the money still hadn't all

4    landed?  Is that your point?  I mean, you can prove all that,

5    the timing of the money, the timing of contacts with Manafort.

6            MR. CAMPOAMOR-SANCHEZ:  Right.  But, there's -- I

7    mean, I have to say, there's a -- there's quite a similarity

8    between both things.  So, in the one hand, Mr. Manafort is

9    distressed about the relative not being hired and he jumps into

10    action angrily.  And then Mr. Craig ultimately follows along

11    and makes that happen.  With the fact that he receives --

12    Mr. Craig, the evidence will be, received some pressure around

13    September not to do the backgrounding of the journalist.  And

14    he sends a reversal email to Mr. Manafort and others saying,

15    You know what?  I can't do it.  I'm not supposedly allowed by

16    the firm to do it, and yet he goes ahead and does it.

17            And we will argue, based upon the evidence, that we

18    believe that is because he was being pressured by Mr. Manafort

19    on Ukraine's behalf.  And as pled in the indictment -- and I

20    forget the paragraph number --

21            THE COURT:  And you're going have some evidence to

22    establish that?

23            MR. CAMPOAMOR-SANCHEZ:  Yes.

24            THE COURT:  Some testimony, some documents --

25            MR. CAMPOAMOR-SANCHEZ:  Yes.

1        THE COURT:  -- that he was getting pressure from

2   Manafort to do that that would undercut what you think his

3   anticipated testimony is?  That's not why?

4        MR. CAMPOAMOR-SANCHEZ:  Correct.

5        THE COURT:  All right.

6        MR. CAMPOAMOR-SANCHEZ:  I do.  But, that shouldn't

7   take away from the fact that we --

8        THE COURT:  He did something else to curry favor.

9        MR. CAMPOAMOR-SANCHEZ:  Yeah, that he did something

10  else to curry favor.  It establishes, from our perspective, a

11  pattern on his behalf, in some ways -- although, again, it's

12  not propensity evidence, it's not for his character.

13       But, it establishes the fact that Mr. Manafort asked

14  him to do something, he did it, and now, again, Mr. Manafort

15  will be asking him to do something, and he did it not for his

16  own reasons, but because he was being asked to do.  And that's

17  where the -- there's even a parallel.

18       When the relative is hired, what does Mr. Manafort

19  say in the email?  "You're the man," right?  "You did what I

20  wanted you to do."

21       When the publication comes out, what emails does he

22  receive?  Exactly the same as alleged in them.  "You are the

23  man.  Your backgrounding," he says, Mr. Manafort does to

24  Mr. Craig, "was key to it all."

25       And that is the parallel.

1          THE COURT:  All right.  I think I'm ready to rule on

2     this.

3          MR. CAMPOAMOR-SANCHEZ:  Okay.

4          THE COURT:  I don't think I have to wait until the

5     sticky question of whether this was improper or even tawdry, as

6     the defense has called it, or whether it was, as the defense

7     contends, appropriate, well-intentioned, and accepted in law

8     firm culture, given how widely law firm culture and internal

9     policies on just these sorts of issues vary from firm to firm.

10          In either event, I find the probative value of the

11     evidence to be quite minimal.  It's hard to characterize it as

12     much more than an effort to go after the defendant's character,

13     in general, with evidence concerning a collateral matter that

14     has more potential to be prejudicial, confusing, and a waste of

15     time than to be probative of anything.

16          Therefore, under Rule 402 and 403, in my discretion,

17     I think it is excludable.  And I will exclude the testimony as

18     evidence in the government's case-in-chief, and grant the

19     motion in limine, which is Docket 27.

20          That doesn't mean that once the defendant has

21     testified, if we have now heard testimony that you believe now

22     has put this in issue and enhanced its relevance in some way,

23     you can raise it with me.  You have to raise it with me before

24     you ask him about it.  But, I don't see how it's admissible in

25     your case-in-chief.  That's that motion.

1              Now, I've got --

2              MR. CAMPOAMOR-SANCHEZ:  Can I ask a question?

3              THE COURT:  Yes.

4              MR. CAMPOAMOR-SANCHEZ:  So, for the documents that

5    relate to the payments from Mr. Manafort, do you want us to

6    redact the -- so, as I was saying, some of these emails talk

7    about that, but in addition, they're talking about the

8    payments --

9              THE COURT:  I think if he's waiting for the payments

10   and you think that's all relevant to why he did what he did in

11   terms of his meeting with the government, that's fine.  I'm not

12   excluding evidence about the payment scheme, Mr. Manafort [sic]

13   wanted to curry favor with Mr. Manafort.  I'm talking about

14   this other way in which you believe he did, in fact,

15   demonstrate that.

16             MR. CAMPOAMOR-SANCHEZ:  Very well.  Thank you.

17             THE COURT:  All right.  So I think you can redact

18   things, and we can have an instruction about people not

19   worrying about things that have been redacted.

20             Docket 21, the motion to strike the surplusage, who's

21   handling that on behalf of the defense?

22             MR. MURPHY:  Your Honor, I'll handle it.

23             THE COURT:  All right.

24             MR. MURPHY:  Obviously, if you dismiss Count 1 in its

25   entirety, which we think the Court ought to do, then you don't

1     need to rule on this at all.

2             This is, in our view, a stray paragraph which relates

3     to alleged false and misleading statements made by Mr. Craig

4     during an October 2017 interview with the Special Counsel's

5     Office, at which he was represented by counsel from his

6     then-current law firm, the Skadden firm.

7             The questions that were asked of him that day were

8     not the same questions that were asked by the FARA unit back in

9     October of 2013, four years earlier.  The answers that he gave

10    were responsive to the questions that he was asked in October

11    of 2017.

12            The government, the Special Counsel's Office, had

13    received from Skadden hundreds and hundreds of documents by

14    that time relating to the media plan, the role of FTI

15    Consulting, the role Mr. Manafort and Mr. Gates.  Mr. Craig

16    answered all those questions about his understanding of a media

17    plan, what he did and didn't do, what he refused to do.  That's

18    what that was all about.  That's what that interview was all

19    about.  It focused on Mr. Craig's interactions with

20    Mr. Manafort and with the media plan.

21            It's really impossible to accept the notion that the

22    statements that Mr. Craig made during that meeting with the

23    Special Counsel's Office were, somehow, the same as, similar

24    to, analogous to the statements that he's alleged to have made

25    to the FARA unit way back in 2013.  After all, the allegation

1    about the FARA unit is that the FARA unit wasn't aware of

2    Mr. Manafort's role.  The FARA unit wasn't aware of FTI.  The

3    FARA unit wasn't aware of the media plan.  Those are all the

4    allegations in the indictment.

5           THE COURT:  Well, is the motion to strike the way to

6    get at this issue?  You filed a motion in limine, which is

7    Docket 46, which talks about whether it's relevant or not.

8           MR. MURPHY:  Yes.

9           THE COURT:  And that's going to be ruled on separate

10   and apart from whether this meets the test of what needs to be

11   stricken from an indictment because it's so inflammatory and

12   prejudicial and plainly irrelevant.

13          So, since they're not saying we're relying on those

14   facts to get over the statute of limitations, does it really

15   matter -- and the indictment is not going back into the jury

16   room, does it matter if we strike it from the indictment or

17   not?  Isn't the real battleground the motion in limine?

18          MR. MURPHY:  Our position is that the evidence should

19   not be offered, clearly, during the trial, and we can handle

20   that in connection with the motion in limine.  But I think

21   that, you know, this is classic, I think, surplusage, to the

22   extent that it relates to a different government agency, a

23   different set of questions, an event that occurred four years

24   after the facts that are alleged in the indictment.

25          What's it doing there?  I mean, it really seems to

1      have no function other than, possibly, to permit the government

2      to offer testimony about the interview with the Special

3      Counsel's Office.

4            THE COURT:  Well, doesn't it, arguably, reinforce

5      their arguments that what he said was knowing and intentional

6      the first time, and four years later, with a new audience, he's

7      saying the same thing?

8            MR. MURPHY:  But the question --

9            THE COURT:  I mean, for you, that might be proof that

10     that's why it was true, he kept saying the same thing.  But,

11     why is it irrelevant that he's repeating the allegedly false

12     information?

13           MR. MURPHY:  If it were the same set of questions and

14     the same set of answers, I would probably agree with you, Your

15     Honor.  But, the logical and historical backdrop --

16           THE COURT:  I'm looking at the face of the

17     indictment, which doesn't have, as you've argued, the questions

18     and the answers.  That's something that people will flesh out

19     for me, I hope, with respect to the motion in limine.  I've

20     only gotten half the briefing on it.

21           But, I don't see why that goes to just -- as you

22     know, it's a pretty high standard to strike something out of an

23     indictment.

24           MR. MURPHY:  This is an allegation that Mr. Craig

25     falsified information to the FARA unit in 2013.  That's what's

1    in the indictment.  That's what it's about.  This allegation in

2    Paragraph 55 is not about that.  It's about an interview

3    conducted four years later with a different government agency,

4    with a different set of questions.

5              And it's obvious, I think, that there will be a mini

6    trial, if you will, if this comes into evidence, about exactly

7    what the questions were, exactly what the answers were.

8    Multiple witnesses will testify.  And I think it just doesn't

9    belong in the indictment.

10              THE COURT:  All right.  Thank you.

11              MR. MURPHY:  Thank you.

12              THE COURT:  All right.  The evidence of alleged false

13   statements made to the Special Counsel's Office wasn't

14   identified in your notices, 404(b) evidence.  So, what exactly

15   is the basis for its admissibility?

16              MR. CAMPOAMOR-SANCHEZ:  I think it's partly exactly

17   as we stated -- well, not partly.  It's as we stated in our

18   motion.  And as the Court was just referring to in its colloquy

19   with defense counsel, it is relevant because it shows what he

20   said in 2013 is, indeed, as we allege, false and misleading.

21   He repeated, from our perspective, the same false statements to

22   the Special Counsel Office interview.

23              And, obviously, we'll respond to the motion in limine

24   that's been filed.  That's our responsibility.  I believe it's

25   due tomorrow.  But the -- there is now two different things

1    that he was interviewed about.  He was interviewed in 2017

2    precisely about his work on the report.

3            THE COURT:  You're not arguing that the Special

4    Counsel interview is part of the scheme that was in the

5    January --

6            MR. CAMPOAMOR-SANCHEZ:  No.  No, no, no.  We're not.

7    We're not.

8            THE COURT:  Okay.

9            MR. CAMPOAMOR-SANCHEZ:  And hopefully our papers made

10   that clear, that we're not arguing that.  We're arguing that it

11   is relevant.  And, in fact, I think part of the big

12   disagreement between the parties is, well, how can somebody's

13   recollection now, without notes from 2013, how can they really

14   remember what Mr. Craig said?

15           And so part of our proof, potentially, to meet that

16   is saying, look, we believe he said this.  The witness will say

17   this.  There's a letter subsequent that says, essentially,

18   that.  But he repeated those things, even years later.  He

19   knows what he's doing, is how we would argue it.  So, that's

20   why it's relevant.

21           THE COURT:  All right.  I don't think I need to hear

22   anything further.

23           Rule 7(d) motions to strike surplusage from an

24   indictment or address at the discretion of the Court, as the

25   D.C. Circuit said in *United States v. Rezaq*, R-E-Z-A-Q, 134

1    F.3d 1121 at 1134.  That's a 1998 case.

2           But the scope of that discretion is narrow.  That's

3    from *United States v. Oaker*, O-A-K-A-R, 111 F.3d 146 at 157,

4    from the D.C. Circuit in 1997.

5           The circuit has held that, in order to strike claims

6    from an indictment, they must be irrelevant, inflammatory, and

7    prejudicial."  It's the *United States v. Fornah*, 124 F.Appx. 4.

8    At page 5, D.C. Circuit 2005, quoting the *Rezaq* case, again, at

9    1134.

10          Rule(7)(d) has been "strictly construed against

11   striking surplusage," so the Court "should not excise part of

12   an indictment lightly," said the circuit in *United States v.*

13   *Hitt,* H-I-T-T, 249 F.3rd 1010 at 1031.

14          So, I believe, really, this dispute is about the

15   admissibility of the evidence, which is going to be addressed

16   in a pending and currently-being-briefed motion in limine.

17          For purposes of this motion, then, I think the

18   government has supplied sufficient colorable grounds for the

19   relevance of the allegation, and I certainly don't find it to

20   be so inflammatory or prejudicial to warrant the extraordinary

21   relief sought.  Moreover, the surplusage raises few concerns to

22   me since the indictment will not go back to the jury room.

23          Therefore, without prejudice to the defendant's

24   motion in limine, the motion to strike Docket 21 will be

25   denied.

1          All the other motions that we spoke about this

2     morning will be taken under advisement so I can think about all

3     of the arguments and the authorities that you've pointed me to

4     that I need to look at again.  I very much appreciate the

5     quality of all the argument and all the hard work that everyone

6     is doing in this case on a very expedited schedule.

7          I think the next time I'm supposed to see you is the

8     pretrial conference, at which I ordinarily rule on motions in

9     limine.

10         If I determine that it would be more helpful to hear

11    argument in advance of that date, so that we can deal with

12    exhibits and other issues at the pretrial conference, I will

13    let you know, and we will try to schedule something.  But, I

14    think the motions in limine are pretty straightforward, and

15    there may only be one or two for which argument is required.

16         So thank you very much, everyone.

17                         *   *   *

18

19

20

21

22

23

24

25

1

2                  CERTIFICATE OF OFFICIAL COURT REPORTER

3

4

5            I, JANICE DICKMAN, do hereby certify that the above

6      and foregoing constitutes a true and accurate transcript of my

7      stenograph notes and is a full, true and complete transcript of

8      the proceedings to the best of my ability.

9                         Dated this 12th day of July, 2018.

10

11

12                        /s/_____

13                        Janice E. Dickman, CRR, RMR
                          Official Court Reporter
14                        Room 6523
                          333 Constitution Avenue NW
15                        Washington, D.C. 20001

16

17

18

19

20

21

22

23

24

25

## $

**$5,000** [1] - 62:5

## /

**/s** [1] - 120:12

## 1

**1** [28] - 6:14, 24:9, 24:14, 26:2, 30:23, 33:15, 33:17, 39:20, 46:23, 55:13, 55:15, 64:25, 68:2, 71:7, 71:9, 73:6, 77:13, 83:19, 83:21, 95:2, 95:5, 95:18, 95:21, 102:8, 112:24
**10** [1] - 1:6
**10(b)(5** [2] - 32:14, 32:20
**100** [1] - 1:22
**1000** [1] - 2:3
**1001** [11] - 7:6, 10:21, 11:11, 16:21, 16:22, 55:16, 71:19, 83:10, 95:14, 95:20, 96:7
**1001(a)(1** [10] - 10:2, 20:18, 37:18, 56:5, 58:18, 58:21, 59:3, 59:10, 61:20, 62:8
**1001(a)(1)** [1] - 47:13
**1001(a)(2** [1] - 33:21
**1001(a)(2)** [1] - 53:21
**1010** [1] - 118:13
**1031** [1] - 118:13
**11** [8] - 39:3, 55:3, 55:7, 68:2, 68:3, 68:24, 73:6, 76:15
**111** [1] - 118:3
**1121** [1] - 118:1
**1134** [2] - 118:1, 118:9
**11:00** [1] - 1:7
**11th** [3] - 66:2, 66:9, 70:4
**12** [3] - 10:18, 37:17, 87:6
**12-month** [1] - 62:7
**124** [1] - 118:7
**12th** [1] - 120:9
**134** [1] - 117:25
**146** [1] - 118:3
**15** [2] - 70:19, 87:5
**157** [1] - 118:3
**16** [2] - 64:15, 96:13
**18** [5] - 7:6, 10:1, 62:2, 71:19, 103:16
**1800** [1] - 2:2
**18th** [1] - 40:25

## 2

**2** [13] - 6:14, 15:10, 24:13, 30:19, 33:12, 64:24, 65:5, 65:7, 65:25, 71:7, 83:19, 84:10, 107:6
**20** [1] - 13:10
**20001** [2] - 2:9, 120:15
**20036** [1] - 2:3
**2005** [1] - 118:8
**2008** [1] - 78:9
**2012** [7] - 40:25, 41:5, 55:2, 104:14, 105:16, 107:15, 107:22
**2013** [12] - 41:24, 46:15, 48:10, 56:11, 66:2, 66:9, 96:13, 113:9, 113:25, 115:25, 116:20, 117:13
**2014** [1] - 96:13
**2016** [1] - 77:15
**2017** [3] - 113:4, 113:11, 117:1
**2018** [1] - 120:9
**2019** [1] - 1:6
**202** [3] - 1:15, 1:19, 2:4
**202-354-3267** [1] - 2:9
**20530** [2] - 1:15, 1:18
**21** [3] - 70:19, 112:20, 118:24
**21202** [1] - 1:23
**22** [3] - 48:5, 70:25, 95:22
**233-0986** [1] - 1:19
**24** [1] - 36:17
**2440** [1] - 1:23

## 19

**19** [1] - 6:9
**19-125** [2] - 3:2, 87:11
**19-cr-125** [1] - 1:3
**1938** [4] - 65:9, 73:9, 80:19, 80:20
**1940** [1] - 81:12
**1942** [15] - 65:10, 65:11, 73:5, 73:8, 73:14, 74:9, 77:2, 77:4, 77:12, 80:25, 82:2, 86:15, 91:1, 101:16, 101:19
**1948** [1] - 81:11
**1989** [1] - 10:19
**1991** [1] - 78:8
**1995** [1] - 75:8
**1997** [1] - 118:4
**1998** [2] - 78:9, 118:1
**1:00** [1] - 103:25

## 249

**249** [1] - 118:13
**252-7698** [1] - 1:15
**27** [1] - 111:19
**28th** [1] - 107:16
**29th** [1] - 107:15

## 3

**302** [1] - 70:10
**333** [2] - 2:8, 120:14
**3rd** [4] - 15:16, 57:4, 59:4, 96:13

## 4

**4** [1] - 118:7
**402** [1] - 111:16
**403** [1] - 111:16
**404** [1] - 101:3
**404(b** [3] - 102:3, 103:3, 116:14
**404(b)** [1] - 61:4
**410** [1] - 1:24
**46** [1] - 114:7
**48** [2] - 75:3, 96:12

## 5

**5** [1] - 118:8
**52** [3] - 7:20, 9:18, 24:23
**55** [1] - 116:2
**554** [9] - 69:10, 69:14, 69:15, 69:18, 69:19, 88:15, 99:8, 99:9, 99:10
**555** [1] - 1:14
**56** [7] - 11:9, 14:4, 15:7, 15:15, 60:16, 96:16, 100:10
**5th** [5] - 41:24, 46:15, 48:10, 56:21, 58:24

## 6

**60** [1] - 96:17
**61** [5] - 14:7, 15:7, 15:21, 60:16, 96:17
**611** [1] - 46:2
**611(o** [1] - 94:20
**612** [13] - 41:8, 45:23, 46:2, 46:6, 48:5, 49:24, 50:1, 50:11, 50:14, 68:18, 76:15, 92:13, 95:24
**612(a** [2] - 68:2, 94:21
**613(f** [1] - 76:17
**614** [1] - 74:24, 75:11, 75:19, 76:16
**614(a** [1] - 101:19

## 614(a)(2

**614(a)(2** [1] - 80:14
**618** [15] - 6:24, 12:15, 16:7, 24:17, 26:2, 27:14, 31:3, 45:18, 46:5, 48:20, 61:4, 95:22, 96:20, 97:3
**618(a)(1** [2] - 93:25, 94:1
**618(a)(2** [5] - 25:17, 68:25, 77:10, 94:5, 99:12
**618(a)(2)** [2] - 70:25, 94:1
**618(f** [2] - 91:25, 94:25
**62** [7] - 11:9, 14:10, 15:7, 16:4, 60:16, 96:10, 96:18
**63** [13] - 14:13, 17:21, 19:17, 21:15, 21:17, 34:15, 34:20, 35:6, 51:14, 51:20, 52:16, 96:5, 96:19
**6523** [2] - 2:8, 120:14
**666** [3] - 62:2, 62:4

## 7

**7** [2] - 15:10, 43:6
**7(d** [1] - 117:23
**778-1814** [1] - 2:4
**7th** [1] - 107:9

## 8

**8** [1] - 70:24

## 9

**9** [2] - 55:4, 66:10
**949-1146** [1] - 1:24
**950** [1] - 1:18
**9th** [2] - 35:11, 41:5

## A

**a)(1** [13] - 10:6, 10:16, 11:11, 14:23, 14:24, 15:11, 47:19, 53:22, 55:23, 58:2, 62:23, 68:10, 68:24
**a)(1)** [3] - 13:20, 15:4, 47:22
**a)(11)** [1] - 68:10
**a)(2** [11] - 10:4, 13:21, 13:23, 13:24, 14:23, 33:22, 47:19, 47:21, 70:25, 73:6, 74:11
**a)(2)** [2] - 10:3, 15:5
**a.m** [1] - 1:7
**AAbelson@**

## zuckerman.com

**zuckerman.com** [1] - 1:25
**ABELSON** [7] - 102:5, 102:13, 102:22, 103:5, 103:24, 104:3, 104:6
**Abelson** [2] - 1:21, 3:13
**abilities** [1] - 77:21
**ability** [4] - 77:24, 77:25, 78:2, 120:8
**able** [3] - 26:19, 38:2, 40:15
**Abramoff** [4] - 20:2, 54:8, 84:21
**abramoff** [3] - 23:3, 54:10, 54:11
**absence** [5] - 16:10, 21:21, 30:22, 34:3, 58:19
**absent** [2] - 71:4, 78:2
**absolutely** [2] - 18:22, 104:10
**accept** [1] - 113:21
**accepted** [1] - 111:7
**Access** [1] - 69:6
**accident** [2] - 27:3, 39:4
**accomplished** [1] - 15:1
**accordance** [3] - 67:5, 69:15, 87:20
**according** [4] - 35:13, 48:2, 56:20, 58:23
**account** [2] - 100:20, 107:2
**accurate** [4] - 71:24, 77:18, 94:22, 120:6
**accused** [1] - 23:7
**act** [13] - 12:20, 17:25, 20:9, 55:3, 57:10, 59:16, 59:19, 61:21, 62:14, 62:24, 63:2, 85:4, 105:13
**Act** [29] - 69:6, 69:10, 69:22, 69:23, 69:25, 70:1, 70:2, 70:25, 74:25, 81:10, 81:23, 82:1, 84:20, 84:25, 85:2, 85:7, 88:16, 88:22, 88:24, 89:3, 89:4, 89:5, 93:2, 93:4, 93:7, 93:10, 101:25
**acted** [2] - 41:9, 46:3, 48:6
**acting** [4] - 34:24, 46:7, 50:14, 81:15
**Acting** [1] - 19:8
**Action** [1] - 1:3

**action** [5] - 35:18, 82:19, 94:25, 105:10, 109:10
**actionable** [2] - 84:8, 84:9
**actions** [1] - 94:25
**activities** [5] - 41:10, 45:25, 84:1, 93:17, 94:19
**actual** [1] - 55:8
**Adam** [3] - 1:17, 1:21, 3:13
**add** [2] - 39:11, 101:4
**added** [2] - 3:24, 73:16
**addition** [2] - 75:3, 112:7
**address** [8] - 6:14, 15:7, 33:20, 39:20, 63:22, 64:13, 117:24
**addressed** [2] - 91:7, 118:15
**adjectives** [1] - 5:22
**adjudicate** [1] - 24:2
**administered** [1] - 82:3
**administering** [1] - 81:9
**administrative** [3] - 12:21, 81:18, 82:10
**Administrative** [4] - 69:10, 88:15, 88:21, 88:24
**admissibility** [2] - 116:15, 118:15
**admissible** [1] - 111:24
**admission** [1] - 104:9
**admonished** [1] - 65:17
**admonitions** [1] - 66:11
**advance** [2] - 52:4, 119:11
**adverbs** [1] - 5:22
**advice** [2] - 44:9, 108:6
**advised** [5] - 40:22, 43:10, 46:16, 46:25, 48:9
**advisement** [1] - 119:2
**advising** [1] - 41:15
**advocates** [1] - 107:10
**affiliation** [1] - 4:8
**affirms** [1] - 10:21
**afternoon** [3] - 86:22, 86:23, 87:4
**agencies** [1] - 53:4
**agency** [20] - 10:23,

17:19, 31:10, 53:1, 53:2, 53:7, 68:4, 70:10, 70:16, 71:20, 72:8, 77:6, 77:17, 82:18, 84:16, 85:9, 85:13, 114:22, 116:3
**agent** [19] - 16:20, 19:25, 20:1, 21:3, 21:4, 23:1, 23:5, 32:16, 40:13, 40:19, 41:9, 42:3, 46:3, 48:7, 53:10, 53:11, 54:9, 54:12, 71:3
**agent's** [1] - 51:24
**agents** [1] - 99:25
**aggregated** [1] - 62:3
**aggregation** [1] - 62:4
**ago** [2] - 4:6, 79:18
**agree** [24] - 4:12, 7:9, 7:18, 13:16, 14:24, 21:4, 25:17, 30:1, 32:4, 33:19, 34:16, 34:19, 45:17, 51:21, 53:6, 55:5, 55:10, 55:13, 55:14, 55:15, 55:17, 95:17, 96:20, 115:14
**agreed** [1] - 7:7
**agreeing** [1] - 33:13
**agreement** [1] - 107:7
**agrees** [2] - 11:19, 24:19
**ahead** [2] - 97:8, 109:16
**air** [1] - 84:15
**allegation** [16] - 7:20, 7:21, 7:22, 14:16, 16:10, 36:15, 49:21, 51:15, 51:19, 60:20, 83:9, 100:21, 113:25, 115:24, 116:1, 118:19
**allegations** [13] - 5:18, 7:11, 9:1, 11:2, 11:3, 11:20, 15:11, 19:20, 24:8, 35:23, 37:8, 59:3, 114:4
**allege** [17] - 10:10, 14:2, 14:10, 15:19, 18:23, 25:6, 36:21, 57:9, 57:16, 59:7, 59:14, 104:16, 104:24, 105:18, 105:20, 116:20
**alleged** [22] - 5:19, 9:3, 11:13, 12:20, 16:22, 18:21, 22:16, 24:10, 27:16, 36:12, 51:13, 52:7, 55:5, 57:10, 62:20, 96:9,

108:4, 110:22, 113:3, 113:24, 114:24, 116:12
**allegedly** [1] - 115:11
**alleges** [9] - 9:18, 9:19, 10:12, 11:9, 14:4, 14:13, 38:24, 55:15, 96:13
**alleging** [3] - 14:18, 55:1, 100:18
**allied** [1] - 11:3
**allow** [1] - 38:9
**allowed** [1] - 109:15
**almost** [1] - 7:18
**alone** [5] - 7:6, 13:14, 37:13, 37:19
**alternative** [1] - 79:3
**altogether** [1] - 88:22
**ambiguity** [1] - 86:12
**ambiguous** [3] - 79:2, 79:5, 91:5
**amended** [2] - 65:9, 73:14, 101:15
**amendment** [3] - 70:21, 91:1, 101:20
**amendments** [2] - 72:6, 76:13
**America** [3] - 1:3, 3:2, 87:11
**American** [1] - 46:6
**AMY** [1] - 1:9
**analogous** [3] - 43:17, 99:7, 113:24
**analogy** [4] - 98:6, 98:7, 98:24, 98:25
**analysis** [1] - 60:5
**angrily** [1] - 109:10
**announce** [1] - 102:12
**answer** [14] - 12:23, 19:13, 24:6, 24:7, 38:2, 44:16, 50:9, 66:22, 83:22, 85:17, 85:18, 85:19, 86:13, 91:9
**answered** [7] - 17:10, 17:11, 22:13, 41:4, 53:4, 100:14, 113:16
**answers** [7] - 17:20, 19:12, 23:13, 41:19, 100:2, 113:9, 115:14, 115:18, 116:7
**anticipated** [1] - 110:3
**anyway** [3] - 6:7, 23:20, 26:9
**apart** [2] - 57:15, 114:10
**apologies** [1] - 47:14
**apologize** [2] - 35:8, 86:1

**apparent** [1] - 106:21
**appeals** [1] - 11:2
**appear** [3] - 17:9, 56:9, 93:17
**appendix** [1] - 73:10
**apples** [1] - 49:5
**application** [1] - 73:23
**applied** [1] - 84:4
**applies** [12] - 24:17, 65:13, 65:22, 65:23, 71:19, 71:21, 76:23, 78:18, 79:1, 79:8, 81:13, 85:22
**apply** [13] - 27:16, 29:18, 50:4, 76:19, 76:24, 80:4, 80:11, 80:16, 83:22, 84:14, 85:20, 86:6
**applying** [1] - 83:4
**appreciate** [1] - 119:4
**approach** [1] - 3:5
**appropriate** [1] - 111:7
**April** [2] - 17:9, 41:5
**apt** [1] - 98:24
**Ardestani** [4] - 69:5, 88:6, 88:14, 99:2
**arguably** [1] - 115:4
**argue** [10] - 5:1, 12:14, 27:15, 37:3, 37:18, 91:16, 105:15, 105:16, 109:17, 117:19
**argued** [1] - 115:17
**arguing** [6] - 19:19, 23:16, 60:21, 117:3, 117:10
**argument** [35] - 4:22, 24:14, 24:24, 28:20, 29:17, 29:22, 30:6, 30:7, 30:11, 32:25, 33:17, 34:4, 37:21, 39:6, 39:12, 39:13, 56:22, 61:2, 62:19, 64:1, 64:12, 71:10, 76:8, 76:11, 83:23, 86:18, 92:12, 95:17, 96:23, 103:1, 106:3, 119:5, 119:11, 119:15
**arguments** [4] - 61:9, 64:6, 115:5, 119:3
**arise** [2] - 18:11, 44:1
**arises** [2] - 66:20, 97:1
**arising** [1] - 88:15
**armed** [1] - 94:13
**arraignment** [1] - 5:8
**arrange** [1] - 107:15
**articulate** [1] - 40:15
**articulated** [1] - 57:13

**artifice** [1] - 59:12
**aside** [6] - 17:17, 33:10, 44:1, 53:21, 55:14, 73:22
**aspect** [1] - 38:21
**aspersions** [1] - 6:6
**asserts** [1] - 7:22
**assigned** [2] - 4:18, 102:3
**assignment** [1] - 105:5
**associates** [2] - 80:12
**Association** [1] - 69:20
**assuage** [1] - 46:12
**assume** [4] - 7:11, 7:24, 17:18, 25:7
**assuming** [3] - 25:20, 85:9, 85:10
**attach** [1] - 70:18
**attached** [3] - 66:9, 73:9, 106:25
**attaches** [1] - 101:12
**attaching** [1] - 41:3
**attachment** [1] - 68:5
**attachments** [1] - 68:9
**attempt** [4] - 5:1, 42:4, 42:16, 43:14
**attempting** [1] - 81:20
**attend** [1] - 12:22
**attorney** [30] - 3:24, 27:19, 27:24, 28:22, 42:9, 42:10, 42:15, 45:15, 66:16, 74:13, 75:4, 75:12, 75:21, 76:20, 76:23, 87:18, 88:3, 89:21, 92:22, 93:5, 93:21, 94:8, 94:12, 94:14, 94:17, 94:22, 94:24, 101:13, 101:24
**attorney's** [1] - 69:6
**ATTORNEY'S** [1] - 1:13
**attorneys** [1] - 6:3
**audience** [1] - 115:6
**authorities** [2] - 94:8, 119:3
**authority** [8] - 21:21, 77:20, 77:24, 78:12, 78:20, 81:18, 85:12, 88:18
**authorized** [1] - 71:2
**Avenue** [3] - 1:18, 2:8, 120:14
**avoidance** [1] - 79:22
**aware** [6] - 4:8, 65:10, 89:23, 114:1, 114:2, 114:3

## B

backdrop [1] - 115:15
backgrounding [2] -
109:13, 110:23
bald [1] - 51:19
Baltimore [1] - 1:23
barred [5] - 56:13,
56:15, 57:11, 59:23,
60:6
base [3] - 38:5, 38:12,
38:14
based [13] - 4:24,
8:18, 8:22, 24:9,
37:11, 40:9, 41:16,
42:1, 43:15, 44:17,
49:4, 83:18, 109:17
Based [1] - 9:1
bases [1] - 69:1
basic [1] - 65:12
basis [2] - 30:19,
116:15
battleground [1] -
114:17
bearing [1] - 64:25
bears [1] - 72:2
became [1] - 45:10
becomes [1] - 75:24
BEFORE [1] - 1:9
began [2] - 40:25,
55:1
begin [1] - 40:11
beginning [7] - 6:17,
56:11, 65:4, 72:10,
72:23, 89:23, 104:21
begins [3] - 32:5,
61:20, 62:24
behalf [7] - 46:1, 46:7,
50:15, 68:8, 109:19,
110:11, 112:21
behest [2] - 42:21,
105:13
beholden [1] - 103:11
belong [1] - 116:9
bench [2] - 3:17, 3:19
BERMAN [1] - 1:9
best [3] - 13:1, 83:16,
120:8
between [9] - 17:24,
21:1, 38:20, 47:19,
47:21, 61:23, 96:13,
109:8, 117:12
beyond [4] - 5:20,
88:10, 88:11, 90:19
big [3] - 4:4, 104:12,
117:11
bigger [1] - 26:15
bill [5] - 6:11, 9:25,
63:16, 63:25, 64:9
Bill [2] - 3:12

bills [3] - 78:7, 78:10
binding [1] - 8:15
black [1] - 108:3
Blackman [4] - 69:20,
69:25, 88:6, 89:1
blocked [1] - 26:18
board [1] - 26:6
boilerplate [1] - 10:15
bones [1] - 23:1
books [2] - 81:10,
81:24
bore [1] - 69:18
bound [5] - 33:11,
35:11, 43:3, 55:25,
92:3
Bradley [1] - 1:17
Bramblett [8] - 18:9,
55:23, 56:3, 56:8,
57:14, 61:19, 62:23
breadth [1] - 29:25
break [4] - 57:15,
63:7, 87:1, 87:5
breaking [1] - 38:8
breath [1] - 80:24
breathe [1] - 92:11
breathing [1] - 94:7
bribery [1] - 62:3
brief [2] - 37:18, 76:6
briefed [1] - 118:16
briefing [1] - 115:20
briefly [2] - 48:17,
90:12
bring [1] - 69:7
bringing [1] - 63:15
brings [1] - 33:14
bristled [1] - 4:25
broad [6] - 12:20,
19:1, 85:12, 88:19,
89:11, 99:5
broader [4] - 32:13,
88:25, 93:20, 96:25
broadest [1] - 64:3
broadly [2] - 87:19,
101:23
business [5] - 20:2,
20:3, 54:11, 105:3,
106:11

## C

calculation [1] - 54:25
Calhoun [2] - 43:18
campaign [1] - 49:1
Campoamor [2] -
1:12, 3:9
CAMPOAMOR [23] -
3:7, 4:12, 63:22,
63:24, 64:22,
104:10, 105:7,
106:6, 106:13,

107:23, 109:6,
109:23, 109:25,
110:4, 110:6, 110:9,
111:3, 112:2, 112:4,
112:16, 116:16,
117:6, 117:9
Campoamor-
Sanchez [2] - 1:12,
3:9
CAMPOAMOR-
SANCHEZ [23] - 3:7,
4:12, 63:22, 63:24,
64:22, 104:10,
105:7, 106:6,
106:13, 107:23,
109:6, 109:23,
109:25, 110:4,
110:6, 110:9, 111:3,
112:2, 112:4,
112:16, 116:16,
117:6, 117:9
cannons [1] - 80:10
cannot [15] - 7:5, 12:9,
17:1, 23:4, 23:5,
32:15, 34:7, 37:19,
60:5, 81:24, 83:4,
92:6, 99:12
capable [1] - 79:7
capacity [1] - 19:9
care [1] - 106:14
carefully [3] - 36:17,
51:21, 99:21
carrying [1] - 53:8
carved [1] - 21:7
Case [2] - 3:2, 87:11
case [96] - 7:14, 8:4,
8:7, 8:18, 10:3,
10:17, 10:19, 10:21,
11:4, 12:10, 12:19,
13:1, 13:19, 14:2,
17:8, 17:15, 18:4,
20:14, 21:19, 21:24,
23:8, 25:14, 27:3,
35:13, 38:11, 40:9,
40:12, 40:15, 40:22,
42:16, 43:9, 43:17,
43:18, 44:8, 46:20,
46:21, 47:14, 47:15,
47:16, 48:12, 48:18,
48:23, 49:2, 49:21,
56:10, 57:25, 58:25,
59:21, 61:7, 61:24,
62:1, 62:3, 62:8,
62:9, 62:10, 62:16,
62:22, 63:9, 64:18,
64:19, 65:15, 65:25,
69:5, 69:20, 77:12,
78:13, 79:6, 80:12,
84:12, 85:12, 85:13,
85:18, 86:7, 87:15,

88:1, 88:4, 88:6,
88:7, 88:22, 88:23,
99:5, 104:8, 104:12,
107:25, 108:2,
111:18, 111:25,
118:1, 118:8, 119:6
case-in-chief [2] -
111:18, 111:25
cases [12] - 11:2,
21:19, 23:25, 43:24,
54:15, 65:11, 65:16,
72:17, 87:20, 88:9,
89:13, 89:14
casting [1] - 6:6
cat [2] - 43:18, 43:21
cat-and-mouse [2] -
43:18, 43:21
catchall [3] - 75:15,
75:16, 75:17
category [3] - 49:10,
50:10, 90:25
cede [1] - 95:6
center [1] - 89:25
central [1] - 104:19
certain [7] - 9:10,
29:14, 36:19, 37:10,
45:1, 76:18, 82:17
certainly [4] - 70:14,
82:13, 95:4, 118:19
CERTIFICATE [1] -
120:2
certification [2] - 56:7,
82:16
certify [2] - 82:20,
120:5
change [7] - 42:18,
43:14, 45:9, 81:1,
91:23, 95:17
chapter [1] - 33:4
character [2] - 110:12,
111:12
characterization [1] -
56:22
characterize [1] -
111:11
charge [7] - 15:25,
33:22, 55:18, 56:4,
59:25, 60:11, 62:23
charged [6] - 9:23,
56:8, 56:24, 57:5,
62:2, 62:12
charges [6] - 7:17,
25:11, 60:19, 63:19,
63:21, 65:7
charging [2] - 57:3,
57:7
chief [2] - 111:18,
111:25
choose [3] - 70:15,
94:24, 102:9

chooses [2] - 12:22,
59:25
chose [3] - 10:1,
59:21, 91:25
chosen [1] - 55:17
chunks [1] - 74:2
circuit [10] - 20:4,
20:6, 20:7, 20:16,
20:17, 21:1, 44:4,
58:4, 118:5, 118:12
Circuit [13] - 20:14,
20:15, 47:17, 55:21,
55:22, 57:20, 57:21,
58:1, 69:19, 85:4,
117:25, 118:4, 118:8
circuit's [1] - 47:14
circuits [1] - 20:18
circumstance [1] -
35:2
circumstances [1] -
18:8
cite [1] - 43:24
cited [3] - 10:17, 44:9,
45:5
cites [1] - 21:20
citing [2] - 44:6, 90:5
citizen [1] - 86:13
civil [5] - 77:23, 78:12,
78:19, 89:13, 89:14
claim [2] - 22:15,
104:14
claims [1] - 118:5
classic [1] - 114:21
clause [2] - 32:5, 72:3
clear [10] - 8:18,
45:11, 47:12, 47:14,
50:19, 54:22, 58:1,
79:17, 82:3, 117:10
clearly [11] - 8:3,
65:22, 71:21, 75:13,
80:23, 87:16, 89:19,
89:20, 94:6, 100:11,
114:19
close [3] - 23:20,
38:11, 54:14
closely [1] - 11:3
closer [1] - 20:3
Code [2] - 7:6, 10:2
collapsed [1] - 103:8
collateral [1] - 111:13
colleague [2] - 95:2,
95:5
colloquy [1] - 116:18
colorable [1] - 118:18
colorful [1] - 5:22
COLUMBIA [2] - 1:1,
1:14
comas [1] - 73:23
combining [1] - 47:24
coming [5] - 42:21,

42:25, 107:2, 107:14
**commas** [4] - 31:2, 73:22
**comments** [1] - 22:7
**Commerce** [1] - 53:3
**commit** [1] - 11:5
**commits** [1] - 59:19
**committed** [10] - 48:25, 49:20, 56:18, 56:19, 59:18, 59:19, 62:19, 62:20, 103:12, 105:16
**communications** [1] - 100:10
**company** [2] - 48:25, 49:7
**compare** [1] - 51:20
**comparing** [2] - 93:1, 93:25
**complete** [12] - 59:5, 59:8, 59:16, 59:17, 68:16, 71:2, 71:24, 73:17, 82:21, 82:22, 120:7
**completed** [2] - 56:22, 60:7
**completely** [3] - 48:25, 49:9, 98:24
**compliance** [1] - 45:12
**complicated** [1] - 59:2
**complied** [1] - 66:8
**complying** [2] - 80:21, 80:23
**comport** [1] - 38:6
**comprehensive** [1] - 89:12
**conceal** [4] - 11:12, 36:19, 47:22, 96:14
**concealed** [3] - 9:18, 11:15, 40:9
**concealing** [4] - 10:22, 14:19, 16:14
**concealment** [32] - 7:6, 8:22, 9:23, 10:1, 10:6, 10:12, 11:5, 11:18, 11:21, 12:6, 13:19, 14:25, 15:1, 15:12, 24:20, 25:3, 25:8, 25:10, 25:11, 34:12, 36:16, 36:20, 36:21, 38:24, 47:1, 57:8, 61:21, 62:13, 62:14, 62:25, 63:3, 96:24
**concealments** [1] - 56:15
**conceals** [2] - 10:8, 58:22
**conceded** [1] - 25:3

**concedes** [1] - 16:6
**concept** [1] - 74:3
**concern** [13] - 43:7, 44:20, 44:24, 46:10, 46:11, 46:12, 49:6, 63:24, 63:25, 64:3, 64:12, 64:23
**concerned** [3] - 34:15, 51:10, 64:15
**concerning** [3] - 7:4, 101:17, 111:13
**concerns** [1] - 118:21
**concession** [1] - 103:6
**condescension** [1] - 5:24
**condition** [1] - 20:18
**conduct** [12] - 45:1, 49:9, 55:5, 55:18, 56:17, 57:4, 58:20, 59:22, 59:25, 60:6, 101:25
**conducted** [1] - 116:3
**conference** [3] - 3:19, 119:8, 119:12
**CONFERENCE** [2] - 1:5, 1:8
**confess** [1] - 28:19
**confused** [1] - 34:1
**confusing** [1] - 111:14
**Congress** [33] - 31:9, 65:18, 68:25, 71:22, 73:2, 73:3, 73:14, 74:9, 75:3, 75:18, 77:22, 78:8, 78:10, 80:25, 81:17, 82:2, 82:4, 86:14, 88:1, 88:9, 90:16, 90:19, 91:1, 92:21, 93:9, 93:12, 93:18, 94:1, 94:5, 94:6, 94:12, 101:22
**Congress's** [2] - 77:2, 86:5
**congressman** [1] - 81:11
**congressmen** [1] - 78:11
**connection** [4] - 18:24, 53:7, 72:17, 114:20
**consequence** [1] - 104:8
**consequences** [1] - 105:25
**consider** [1] - 60:25
**considerably** [1] - 51:9
**consistent** [3] - 11:1, 15:24, 100:22

**conspiracy** [1] - 58:20
**constitute** [1] - 37:20
**constitutes** [2] - 60:7, 120:6
**Constitution** [2] - 2:8, 120:14
**constitutional** [1] - 79:22
**construct** [1] - 77:5
**construction** [3] - 65:16, 73:20, 80:10
**construe** [1] - 80:6
**construed** [1] - 118:10
**Consulting** [1] - 113:15
**contact** [5] - 100:21, 104:13, 104:15, 104:18, 108:22
**contacted** [1] - 107:24
**contacting** [1] - 108:9
**contacts** [10] - 14:8, 41:11, 41:14, 42:11, 51:4, 98:11, 98:18, 98:19, 100:15, 109:5
**contain** [1] - 73:11
**contained** [2] - 15:17, 74:10
**contains** [2] - 56:13, 56:14
**contemplated** [2] - 76:25, 82:19
**contend** [3] - 19:16, 65:19, 66:10
**contends** [5] - 21:11, 27:8, 27:12, 56:14, 111:7
**contention** [2] - 65:23
**contents** [2] - 31:10, 33:20
**context** [9] - 16:21, 16:22, 65:18, 65:20, 66:19, 67:21, 80:9, 88:9, 90:1
**continue** [1] - 106:10
**continued** [1] - 63:4
**continues** [1] - 58:19
**continuing** [5] - 55:19, 56:17, 58:18, 58:21
**contract** [1] - 68:5
**contracts** [1] - 18:15
**contrary** [2] - 18:4, 20:16
**control** [3] - 33:20, 56:18, 81:15
**controlling** [1] - 24:1
**controls** [1] - 31:12
**conversation** [8] - 16:23, 33:10, 39:5, 50:12, 58:21, 67:14, 90:1, 106:22

**conversations** [1] - 35:25
**convict** [1] - 13:6
**convicted** [3] - 38:9, 38:11, 56:9
**conviction** [4] - 13:4, 16:13, 21:20, 38:5
**convince** [2] - 42:5, 48:12
**convinced** [1] - 104:23
**copy** [3] - 14:11, 28:15, 29:10
**core** [1] - 36:20
**correct** [13] - 9:21, 13:18, 14:9, 21:4, 30:6, 32:6, 36:1, 36:12, 37:21, 51:11, 83:8, 92:15, 110:4
**correspondence** [3] - 45:19, 67:1, 71:7
**Counsel** [2] - 116:22, 117:4
**counsel** [5] - 3:5, 3:17, 101:16, 113:5, 116:19
**Counsel's** [6] - 54:23, 113:4, 113:12, 113:23, 115:3, 116:13
**Count** [33] - 6:14, 15:10, 24:9, 24:13, 24:14, 26:2, 30:19, 30:23, 33:12, 33:15, 33:17, 39:20, 46:23, 55:13, 55:15, 64:24, 64:25, 65:5, 65:7, 65:25, 71:7, 71:9, 83:19, 83:21, 84:10, 95:2, 95:5, 95:18, 95:21, 112:24
**count** [7] - 25:11, 26:5, 38:9, 40:6, 62:3, 71:7, 96:12
**country** [1] - 86:13
**counts** [5] - 6:21, 25:25, 29:1, 62:3, 63:7
**couple** [3] - 97:8, 103:22, 104:5
**course** [6] - 18:13, 25:14, 45:9, 55:18, 82:19, 108:2
**Court** [33] - 2:7, 2:7, 6:11, 9:11, 9:14, 10:16, 11:19, 13:14, 36:23, 38:19, 54:14, 57:17, 60:19, 61:12, 65:16, 69:3, 69:11, 69:16, 72:2, 79:1,

79:17, 88:16, 89:3, 89:9, 104:11, 106:21, 107:17, 112:25, 116:18, 117:24, 118:11, 120:13
**court** [9] - 4:14, 17:24, 37:22, 57:19, 58:6, 58:7, 62:11, 86:25, 102:12
**COURT** [268] - 1:1, 3:10, 3:14, 3:16, 3:20, 3:22, 4:2, 4:13, 4:15, 6:16, 6:19, 6:22, 6:25, 7:3, 7:13, 7:19, 7:25, 8:4, 8:7, 8:10, 8:13, 8:15, 9:5, 9:9, 9:12, 9:17, 9:22, 11:5, 11:16, 11:23, 12:13, 13:1, 13:3, 13:9, 13:21, 14:1, 14:21, 16:9, 16:17, 17:4, 17:23, 18:21, 18:23, 19:4, 19:19, 19:24, 20:7, 21:6, 22:3, 22:12, 22:14, 22:16, 22:24, 23:9, 24:12, 24:16, 24:21, 25:2, 25:9, 25:21, 25:24, 26:4, 26:8, 26:11, 26:13, 26:16, 26:18, 26:20, 26:22, 27:1, 27:5, 27:11, 27:15, 28:4, 28:13, 29:7, 29:12, 29:15, 30:8, 30:15, 30:17, 30:22, 30:25, 31:14, 31:19, 32:4, 32:25, 33:9, 33:24, 34:10, 34:21, 35:23, 36:2, 36:4, 36:10, 36:21, 37:6, 37:10, 37:16, 37:23, 38:1, 38:17, 39:9, 39:17, 39:22, 40:5, 41:22, 42:20, 43:24, 44:12, 44:22, 45:17, 46:19, 47:4, 47:25, 48:13, 49:11, 49:18, 50:8, 50:20, 51:20, 52:1, 52:3, 52:12, 52:14, 52:21, 53:6, 53:15, 53:17, 53:19, 53:24, 54:4, 54:19, 54:22, 55:13, 55:22, 56:25, 57:5, 57:13, 57:19, 57:21, 57:23, 57:25, 58:6, 58:8, 58:11, 59:8, 59:14, 60:9, 60:13, 60:21, 61:1, 61:13, 61:16, 61:23, 62:18,

63:6, 63:13, 63:23, 64:14, 64:24, 65:3, 65:6, 66:23, 67:1, 67:4, 67:17, 67:23, 68:11, 68:13, 68:15, 68:17, 68:21, 71:5, 71:9, 71:11, 72:9, 72:20, 73:21, 74:8, 74:15, 74:18, 74:20, 75:15, 75:25, 76:5, 76:8, 78:4, 78:21, 78:25, 79:14, 79:19, 80:6, 81:2, 82:23, 82:25, 83:3, 83:8, 83:13, 83:24, 85:1, 86:2, 86:16, 86:18, 86:21, 86:23, 86:25, 87:2, 87:3, 87:9, 87:13, 89:13, 89:15, 91:4, 92:2, 92:12, 95:1, 95:7, 96:5, 96:20, 96:23, 97:5, 97:10, 97:14, 98:6, 98:10, 99:3, 99:19, 100:6, 100:16, 101:2, 101:6, 101:9, 102:1, 102:6, 102:18, 102:25, 103:23, 103:25, 104:4, 104:7, 105:1, 106:4, 106:7, 107:19, 109:3, 109:21, 109:24, 110:1, 110:5, 110:8, 111:1, 111:4, 112:3, 112:9, 112:17, 112:23, 114:5, 114:9, 115:4, 115:9, 115:16, 116:10, 116:12, 117:3, 117:8, 117:21, 120:2
**Court's** [2] - 7:2
**Courthouse** [1] - 2:8
**COURTROOM** [4] - 3:1, 3:21, 4:1, 87:10
**courtroom** [1] - 3:3
**courts** [3] - 11:1, 11:2, 65:17
**cover** [7] - 11:13, 30:19, 43:4, 45:18, 57:8, 82:11, 106:10
**cover-up** [2] - 11:13, 57:8
**covered** [10] - 31:13, 69:1, 69:19, 76:20, 77:1, 80:20, 82:19, 92:18, 93:12, 95:16
**covers** [3] - 10:8, 30:12, 96:20
**crafted** [1] - 36:17

**craig** [4] - 3:3, 91:25, 98:16, 105:12
**Craig** [35] - 1:6, 3:3, 6:12, 15:20, 21:14, 35:12, 53:23, 66:5, 66:8, 70:3, 71:19, 87:12, 89:23, 90:1, 90:4, 90:6, 91:20, 91:21, 91:23, 99:11, 99:23, 103:7, 103:11, 103:16, 105:9, 107:7, 107:10, 109:10, 109:12, 110:24, 113:3, 113:15, 113:22, 115:24, 117:14
**Craig's** [1] - 104:13
**craig's** [1] - 113:19
**CRC** [1] - 2:7
**create** [3] - 32:1, 64:3, 84:14
**created** [1] - 40:21
**creates** [1] - 27:9
**credit** [1] - 22:1
**Credit** [1] - 10:19
**crime** [14] - 17:22, 24:10, 49:21, 56:23, 58:18, 58:21, 59:15, 59:18, 59:24, 62:19, 82:1, 103:12
**crimes** [1] - 49:1
**Criminal** [3] - 1:3, 3:2, 87:10
**criminal** [8] - 21:23, 49:9, 54:18, 56:5, 78:18, 86:7, 86:9, 89:13
**criminalize** [1] - 53:1
**criminalized** [1] - 45:2
**criminalizes** [1] - 46:5
**criminally** [2] - 23:7, 53:12
**critical** [1] - 28:3
**Crop** [10] - 8:9, 8:24, 24:7, 48:18, 48:22, 49:6, 49:19, 84:11, 84:12, 85:11
**crowded** [1] - 3:18
**CRR** [2] - 2:7, 120:13
**culture** [2] - 111:8
**curious** [3] - 30:16, 38:20, 38:21
**current** [2] - 40:21, 113:6
**currently-being-briefed** [1] - 118:16
**curry** [5] - 106:16, 109:1, 110:8, 110:10, 112:13

**cute** [1] - 43:21
**cuts** [1] - 103:18

## D

**D.C** [12] - 55:22, 57:21, 58:1, 69:19, 69:20, 85:4, 88:7, 88:18, 117:25, 118:4, 118:8, 120:15
**Dale** [2] - 17:24, 18:7
**date** [2] - 58:14, 119:11
**Dated** [1] - 120:9
**daughter** [1] - 106:11
**Davis** [3] - 79:17, 79:21, 99:18
**DC** [5] - 1:6, 1:15, 1:18, 2:3, 2:9
**deal** [3] - 23:21, 72:24, 119:11
**dealing** [2] - 70:8, 84:18
**dearth** [1] - 5:24
**debate** [1] - 79:19
**debating** [1] - 79:21
**December** [5] - 40:25, 55:2, 104:14, 105:16, 107:24
**decide** [4] - 5:12, 8:5, 11:8, 24:3
**decided** [6] - 18:4, 18:13, 40:1, 79:18, 88:23, 99:18
**decides** [1] - 9:15
**decision** [14] - 4:23, 8:18, 22:22, 22:24, 34:25, 44:17, 51:8, 54:25, 58:5, 69:25, 78:17, 79:18, 101:24, 107:11
**decision-maker** [3] - 22:22, 22:24, 51:8
**decisions** [1] - 20:5
**defeated** [1] - 81:11
**defective** [2] - 24:10, 39:8
**Defendant** [2] - 1:7, 1:20
**defendant** [38] - 5:13, 7:17, 11:10, 12:19, 12:22, 20:20, 20:21, 21:25, 40:8, 40:22, 41:4, 41:15, 41:25, 43:9, 43:13, 43:25, 44:2, 45:5, 45:7, 45:14, 46:6, 46:14, 48:9, 48:18, 48:23, 49:3, 49:7, 54:12, 58:22, 59:19, 62:22,

64:16, 67:8, 96:2, 96:16, 96:17, 103:3, 111:20
**defendant's** [9] - 40:10, 42:4, 42:16, 45:8, 45:18, 48:11, 62:18, 111:12, 118:23
**defense** [22] - 4:17, 4:25, 5:7, 5:23, 6:8, 21:19, 36:23, 92:10, 95:12, 101:11, 102:3, 102:13, 104:12, 104:14, 106:21, 106:25, 107:24, 108:10, 111:6, 112:21, 116:19
**defer** [1] - 95:4
**deficient** [2] - 26:2, 61:8
**define** [1] - 70:17
**defined** [4] - 32:23, 70:4, 73:15, 76:24
**defines** [2] - 70:7, 99:13
**definition** [1] - 46:2
**definitional** [1] - 66:18
**degree** [1] - 71:3
**deliberate** [1] - 17:25
**delivered** [2] - 14:14, 106:24
**demand** [2] - 77:23, 78:12, 78:20
**demonstrate** [2] - 96:8, 112:15
**denied** [1] - 118:25
**department** [1] - 77:15
**Department** [9] - 1:17, 34:23, 53:3, 77:11, 81:7, 81:8, 82:11, 83:15, 103:17
**deportation** [4] - 69:7, 69:8, 69:17, 99:6
**DEPUTY** [4] - 3:1, 3:21, 4:1, 87:10
**derive** [1] - 16:12
**describe** [1] - 75:4
**described** [5] - 5:6, 95:23, 96:25
**describes** [1] - 46:3
**description** [3] - 10:14, 45:25, 48:3
**designed** [2] - 25:6, 36:18
**desire** [1] - 107:20
**desired** [1] - 20:5
**detail** [1] - 64:17
**detailed** [5] - 45:25, 73:7, 73:11, 77:17,

79:7
**details** [2] - 79:20, 84:22
**determination** [16] - 18:24, 19:10, 23:15, 35:1, 42:18, 43:14, 53:8, 70:23, 79:7, 82:18, 84:3, 90:3, 91:19, 91:23, 91:24, 94:23
**determine** [4] - 45:12, 50:9, 104:20, 119:10
**determined** [1] - 16:25
**determining** [2] - 41:1, 59:23
**developed** [2] - 77:6, 100:23
**developing** [1] - 100:24
**device** [5] - 10:24, 15:1, 15:2, 37:20, 59:12
**Dewey** [1] - 103:8
**Dickman** [2] - 2:7, 120:13
**DICKMAN** [1] - 120:5
**dictated** [1] - 31:10
**dictates** [1] - 71:17
**dictionary** [1] - 69:12
**difference** [8] - 21:1, 40:14, 47:19, 47:21, 52:13, 53:6, 71:15
**different** [35] - 4:18, 13:24, 14:21, 14:23, 17:8, 21:10, 21:11, 22:23, 38:15, 42:6, 49:1, 49:9, 49:10, 50:20, 52:15, 52:19, 53:10, 53:13, 55:18, 57:7, 71:11, 74:10, 76:23, 91:13, 91:17, 91:18, 97:25, 98:13, 114:22, 114:23, 116:3, 116:4, 116:25
**differentiate** [3] - 58:8, 58:9, 71:5
**differentiation** [1] - 61:23
**diligence** [1] - 91:9
**directed** [1] - 62:13
**directly** [1] - 6:6
**Disabilities** [3] - 69:25, 89:3, 89:4
**disagree** [7] - 22:3, 24:12, 25:24, 26:1, 33:15, 50:17, 68:23
**disagreement** [1] - 117:12
**disclose** [24] - 7:7, 8:20, 9:3, 9:19, 9:24,

11:14, 17:25, 18:2, 18:14, 19:18, 20:20, 21:25, 25:18, 27:13, 32:2, 34:18, 44:16, 45:20, 48:24, 53:2, 54:16, 54:18, 95:25
**disclosed** [5] - 9:4, 49:20, 49:22, 50:1, 51:14
**disclosure** [12] - 24:4, 32:15, 34:13, 34:17, 45:13, 49:4, 50:4, 51:13, 62:15, 81:13, 85:16, 98:3
**disclosures** [3] - 21:22, 32:20, 50:2
**discretion** [3] - 111:16, 117:24, 118:2
**discuss** [1] - 61:17
**discusses** [2] - 49:25, 58:12
**discussing** [1] - 21:5
**discussion** [4] - 27:2, 27:5, 33:12, 57:2
**dismiss** [19] - 4:23, 5:6, 5:15, 6:9, 7:13, 7:16, 16:10, 24:8, 24:13, 24:14, 24:25, 30:19, 40:6, 57:14, 58:25, 59:1, 59:2, 61:3, 112:24
**dismissed** [1] - 25:12
**dispute** [3] - 7:4, 65:12, 118:14
**dissemination** [2] - 41:11, 101:18
**distinct** [1] - 10:22
**distinctions** [1] - 55:19
**distinguish** [5] - 20:1, 23:4, 23:5, 48:18, 48:22
**distinguishable** [2] - 12:18, 49:2
**distinguished** [1] - 17:24
**distinguishing** [1] - 40:12
**distract** [1] - 38:19
**distressed** [1] - 109:9
**distribute** [1] - 22:6
**DISTRICT** [4] - 1:1, 1:1, 1:10, 1:14
**district** [6] - 11:1, 17:24, 37:22, 58:6, 58:7, 62:10
**dive** [1] - 95:5
**divided** [1] - 6:13
**Division** [1] - 48:6

**divorce** [1] - 72:5
**divorced** [1] - 91:2
**docket** [6] - 63:20, 64:17, 64:18, 64:21, 102:12, 112:20
**Docket** [4] - 6:9, 111:19, 114:7, 118:24
**doctrine** [5] - 73:20, 73:23, 75:17, 80:2, 80:16
**document** [41] - 27:18, 27:24, 28:7, 28:15, 28:22, 29:10, 29:16, 29:20, 29:25, 30:4, 31:20, 31:21, 32:9, 32:13, 66:15, 72:11, 72:23, 74:1, 74:12, 74:15, 75:11, 75:20, 76:1, 76:9, 76:22, 77:16, 78:16, 82:22, 83:5, 87:17, 89:20, 90:9, 90:13, 90:18, 90:21, 92:21, 93:3, 93:4, 101:12, 101:22
**documents** [43] - 16:8, 29:5, 29:6, 29:14, 29:18, 31:7, 31:12, 31:23, 32:2, 32:17, 32:22, 32:23, 32:24, 65:13, 65:22, 67:23, 68:1, 68:9, 72:4, 72:7, 72:21, 76:6, 76:23, 77:25, 78:19, 80:24, 82:14, 85:22, 92:8, 92:9, 92:14, 92:17, 92:18, 92:23, 93:8, 93:11, 93:13, 95:15, 106:20, 109:24, 112:4, 113:13
**DOE** [1] - 53:3
**dollars** [1] - 107:9
**done** [5] - 41:6, 69:14, 88:12, 105:17, 106:9
**doubt** [5] - 5:20, 12:9, 80:9, 80:19, 86:5
**doubtless** [1] - 37:20
**doubts** [1] - 82:9
**down** [11] - 13:3, 16:13, 21:2, 37:11, 53:10, 61:15, 97:21, 97:23, 97:24, 98:5, 98:13
**drive** [1] - 89:16
**due** [6] - 44:20, 46:11, 49:6, 52:22, 91:9, 116:25
**during** [6] - 19:1, 66:5,

66:7, 113:4, 113:22, 114:19
**duties** [3] - 21:2, 67:5, 67:6
**duty** [104] - 7:7, 7:22, 8:1, 8:20, 9:3, 9:19, 9:24, 11:14, 11:18, 11:19, 11:21, 11:24, 12:1, 12:3, 12:7, 12:11, 12:15, 12:20, 12:23, 13:5, 17:2, 18:1, 18:11, 18:14, 20:9, 21:22, 23:12, 23:19, 24:4, 24:18, 24:20, 25:1, 25:15, 25:18, 27:9, 27:13, 28:25, 30:10, 30:11, 30:23, 31:13, 32:1, 32:14, 32:19, 33:17, 33:20, 34:3, 34:17, 34:18, 34:20, 35:3, 35:12, 38:5, 38:25, 39:1, 39:7, 39:24, 40:4, 40:6, 40:8, 40:16, 40:21, 43:7, 43:9, 43:19, 44:1, 44:6, 44:10, 44:13, 44:14, 44:18, 44:19, 45:19, 46:6, 47:3, 48:1, 48:4, 48:20, 49:24, 50:22, 52:8, 52:10, 52:11, 53:24, 54:3, 54:16, 54:18, 55:15, 71:14, 83:19, 83:20, 83:21, 84:7, 84:15, 85:16, 95:10, 95:20, 95:21, 95:25, 96:25, 98:3

**E**

**Eagle** [8] - 20:13, 20:17, 21:18, 21:19, 21:24, 43:25, 44:9, 54:13
**earliest** [1] - 62:13
**easily** [1] - 72:22
**East** [1] - 1:22
**easy** [1] - 18:13
**educate** [2] - 5:4
**Education** [1] - 89:5
**effort** [2] - 43:22, 111:12
**efforts** [1] - 81:14
**Eighth** [1] - 47:17
**either** [9] - 5:4, 38:4, 39:2, 79:25, 83:4, 92:3, 92:6, 94:21, 111:10
**ejusdem** [2] - 73:19,

80:11
**elaborate** [1] - 73:11
**element** [2] - 40:2, 56:20
**elements** [7] - 7:16, 56:19, 59:15, 59:17, 59:20, 59:24, 62:20
**elicited** [1] - 35:5
**elsewhere** [1] - 90:23
**email** [3] - 107:5, 109:14, 110:19
**Email** [8] - 1:16, 1:16, 1:19, 1:24, 1:25, 1:25, 2:4, 2:5
**emails** [11] - 106:25, 107:17, 108:5, 108:6, 108:7, 108:8, 108:22, 108:23, 110:21, 112:6
**emarcus@ zuckerman.com** [1] - 2:4
**embezzlement** [1] - 21:24
**embraces** [2] - 58:13, 71:7
**emphasize** [1] - 48:15
**emphasized** [3] - 25:4, 78:25, 79:1
**employed** [1] - 5:23
**employee** [1] - 68:4
**employees** [1] - 85:4
**Employment** [1] - 69:25
**enable** [1] - 4:22
**enacted** [5] - 65:9, 73:7, 74:9, 75:9, 80:14
**end** [6] - 24:14, 33:13, 33:14, 33:16, 34:1, 62:13
**endeavor** [1] - 94:15
**endorse** [1] - 37:3
**ends** [3] - 55:24, 55:25, 58:3
**enforce** [8] - 67:15, 71:14, 78:5, 78:23, 83:15, 91:25, 95:9, 97:2
**enforcement** [11] - 17:18, 17:19, 40:24, 44:3, 77:16, 77:21, 78:7, 78:18, 81:5, 81:18, 85:12
**enforcing** [8] - 19:9, 40:20, 84:17, 84:19, 85:14, 89:7, 94:18, 95:23
**engage** [1] - 43:20
**engaged** [3] - 5:7,

81:14, 94:19
**engaging** [1] - 101:25
**English** [1] - 31:25
**enhanced** [1] - 111:22
**ensure** [1] - 63:8
**ensured** [1] - 94:14
**ensures** [1] - 94:17
**entire** [6] - 7:23, 25:15, 59:1, 89:12, 90:1, 95:8
**entirely** [3] - 33:7, 90:25, 91:2
**entirety** [2] - 83:25, 112:25
**entities** [2] - 81:14, 81:19
**entitled** [1] - 91:24
**entity** [1] - 81:16
**envisioning** [1] - 101:22
**Equal** [1] - 69:6
**erroneous** [3] - 12:11, 25:16
**erroneously** [1] - 12:6
**escape** [1] - 12:9
**essential** [1] - 73:23
**essentially** [5] - 13:22, 42:21, 87:21, 103:21, 117:17
**establish** [3] - 5:9, 23:12, 109:22
**establishes** [2] - 110:10, 110:13
**etcetera** [5] - 79:9, 80:22
**ethical** [1] - 84:7
**ethically** [3] - 12:20, 20:9, 85:4
**ethics** [6] - 13:4, 16:14, 17:17, 40:17, 40:19, 85:9
**Ethics** [4] - 84:19, 84:25, 85:1, 85:6
**event** [4] - 56:6, 56:11, 111:10, 114:23
**events** [2] - 55:8, 55:11
**evidence** [23] - 23:20, 38:3, 38:10, 63:20, 103:9, 103:14, 103:21, 104:9, 106:8, 108:23, 109:12, 109:17, 109:21, 110:12, 111:11, 111:13, 111:18, 112:12, 114:18, 116:6, 116:12, 116:14, 118:15
**exact** [1] - 62:11

**exactly** [16] - 11:3, 27:6, 37:1, 53:25, 54:2, 54:11, 58:23, 60:4, 75:5, 79:10, 100:18, 110:22, 116:6, 116:7, 116:14, 116:16
**example** [8] - 18:9, 32:21, 54:16, 59:6, 68:3, 84:11, 97:15, 105:22
**exceedingly** [1] - 79:17
**exchange** [1] - 85:21
**excise** [1] - 118:11
**excludable** [1] - 111:17
**exclude** [2] - 73:2, 111:17
**excluding** [1] - 112:12
**exemption** [1] - 76:18
**exercise** [1] - 67:6
**exercising** [1] - 94:8
**exhibit** [1] - 68:10
**Exhibit** [2] - 66:10, 77:13
**exhibits** [2] - 5:9, 119:12
**Exhibits** [3] - 70:19, 70:22
**exist** [3] - 25:1, 25:15, 43:8
**existed** [5] - 49:22, 56:4, 74:25, 76:15, 80:20
**existence** [4] - 8:1, 23:12, 39:23, 95:19
**exists** [2] - 82:16, 95:22
**expanded** [2] - 73:14, 101:16
**expansive** [2] - 5:4, 64:11
**expect** [1] - 63:1
**expedited** [1] - 119:6
**expenditure** [1] - 68:8
**experienced** [1] - 6:3
**expert** [1] - 64:16
**explain** [3] - 57:25, 108:1, 108:3
**explained** [1] - 45:5
**explanation** [1] - 102:17
**explicitly** [1] - 70:24
**extend** [1] - 54:24
**extended** [1] - 96:3
**extent** [3] - 46:10, 81:20, 114:22
**extract** [1] - 39:2
**extraordinary** [1] -

118:20
**Ezra** [2] - 2:1, 3:13

# F

**F.3d** [2] - 118:1, 118:3
**F.3rd** [1] - 118:13
**F.Appx** [1] - 118:7
**face** [13] - 4:24, 7:10, 8:25, 9:1, 9:20, 10:13, 18:1, 18:3, 38:23, 39:1, 79:11, 105:24, 115:16
**fact** [51] - 7:21, 8:2, 9:6, 9:7, 9:16, 15:14, 16:13, 28:9, 28:13, 28:15, 28:24, 29:2, 29:9, 31:5, 31:6, 32:5, 32:11, 32:24, 34:22, 35:7, 39:24, 46:15, 54:10, 60:7, 64:6, 64:8, 64:9, 81:1, 82:10, 88:5, 88:9, 89:9, 89:15, 90:24, 93:7, 100:23, 101:15, 103:17, 103:25, 104:8, 105:3, 105:8, 106:15, 106:19, 107:5, 108:8, 109:11, 110:7, 110:13, 112:14, 117:11
**facts** [38] - 5:10, 8:20, 10:23, 11:13, 12:24, 17:5, 18:1, 18:7, 19:11, 22:17, 22:20, 22:21, 22:22, 25:6, 27:10, 27:14, 28:18, 29:14, 31:7, 31:23, 32:3, 34:17, 34:19, 34:25, 42:18, 47:6, 48:3, 49:22, 50:12, 50:13, 51:17, 52:5, 58:8, 61:8, 83:18, 96:8, 114:14, 114:24
**factual** [4] - 23:11, 23:22, 84:4, 104:19
**fail** [1] - 53:5
**failed** [2] - 16:22, 51:17
**failing** [1] - 46:5
**failure** [3] - 17:25, 18:2, 54:18
**fair** [4] - 5:3, 7:4, 7:14, 22:25
**fairly** [1] - 4:25
**fall** [3] - 19:21, 25:25, 50:9
**falls** [3] - 55:5, 57:25,

90:8
**false** [89] - 10:2, 10:5, 10:24, 11:6, 11:10, 11:12, 11:22, 13:17, 14:4, 14:7, 14:10, 14:18, 15:3, 15:4, 15:5, 15:12, 15:14, 15:17, 15:20, 15:22, 15:23, 16:1, 16:14, 25:5, 27:15, 27:17, 28:5, 28:9, 28:23, 32:8, 33:21, 34:5, 35:23, 37:8, 37:12, 37:13, 37:19, 38:4, 40:10, 47:5, 47:7, 47:9, 47:13, 47:15, 47:17, 47:20, 47:21, 47:23, 48:19, 57:3, 57:6, 57:7, 59:9, 59:11, 59:12, 60:11, 60:17, 60:19, 60:20, 61:21, 62:25, 63:3, 65:8, 80:22, 81:24, 83:9, 93:3, 93:12, 94:13, 94:15, 95:12, 95:13, 96:9, 96:14, 96:15, 96:16, 96:18, 101:15, 108:18, 113:3, 115:11, 116:12, 116:20, 116:21
**falsehoods** [2] - 16:11, 56:13
**falsified** [1] - 115:25
**falsifies** [1] - 10:8
**falsity** [1] - 96:9
**family** [1] - 105:6, 105:8
**FARA** [105] - 15:23, 17:19, 22:4, 27:15, 34:24, 34:25, 40:23, 40:24, 41:1, 41:5, 41:10, 41:15, 41:20, 41:25, 42:5, 42:7, 42:14, 42:15, 42:18, 43:10, 43:14, 45:3, 45:8, 45:10, 45:15, 45:16, 46:8, 46:11, 46:16, 48:9, 48:12, 49:4, 51:18, 56:12, 65:9, 66:5, 66:21, 67:4, 67:5, 67:6, 67:7, 67:11, 67:15, 70:4, 70:5, 70:14, 71:17, 71:20, 75:22, 77:15, 77:23, 78:11, 81:13, 83:14, 83:24, 85:22, 85:23, 85:24, 87:19, 88:2, 88:3, 89:22, 89:24, 90:4,

90:7, 90:10, 91:9, 91:20, 91:22, 91:23, 91:24, 92:1, 92:9, 92:23, 93:6, 93:22, 94:7, 94:9, 94:18, 95:8, 95:23, 95:24, 96:2, 97:1, 99:25, 101:13, 101:15, 104:22, 105:20, 107:25, 108:6, 108:10, 108:19, 108:21, 113:8, 113:25, 114:1, 114:2, 114:3, 115:25
**fatal** [1] - 103:8
**fault** [1] - 26:23
**favor** [5] - 106:16, 109:1, 110:8, 110:10, 112:13
**favorite** [1] - 21:18
**Federal** [1] - 69:21
**federal** [3] - 10:23, 62:2, 85:13
**fees** [1] - 69:6
**fell** [2] - 37:12, 64:2
**felt** [1] - 4:25
**fence** [1] - 51:3
**Fernando** [2] - 1:12, 3:9
**fernando.**
**campoamor** [1] - 1:16
**fernando.**
**campoamor-**
**sanchez@usdoj.**
**gov** [1] - 1:16
**few** [1] - 118:21
**fictitious** [1] - 10:5
**figure** [3] - 12:15, 38:17, 67:6
**file** [8] - 27:21, 31:9, 68:25, 72:21, 75:2, 81:24, 94:20, 94:24
**filed** [72] - 5:6, 27:18, 27:22, 28:7, 28:22, 29:16, 29:20, 30:1, 30:2, 32:9, 32:13, 32:18, 66:16, 67:18, 68:11, 68:12, 68:18, 69:1, 69:9, 71:1, 71:23, 72:7, 72:11, 72:13, 72:14, 73:12, 74:12, 74:24, 75:10, 75:11, 75:19, 75:21, 76:13, 76:19, 76:22, 78:1, 80:16, 82:5, 83:6, 85:22, 87:17, 88:1, 88:2, 89:2, 89:4, 89:5, 89:6, 89:20, 89:21, 90:3,

90:8, 90:10, 90:14, 90:18, 90:21, 91:16, 92:8, 92:17, 92:22, 92:23, 93:3, 93:5, 93:9, 93:11, 93:14, 93:21, 95:15, 97:18, 101:12, 114:6, 116:24
**files** [1] - 5:15
**filing** [5] - 54:17, 56:7, 80:23, 94:25, 101:17
**filings** [2] - 32:20, 70:18
**fill** [4] - 5:21, 41:12, 50:15, 50:17
**filled** [2] - 48:23, 50:2
**filling** [1] - 49:7
**finalization** [1] - 70:23
**finance** [1] - 49:1
**financial** [1] - 62:15
**findings** [1] - 22:9
**fine** [3] - 6:16, 26:8, 112:11
**firm** [13] - 22:5, 22:7, 22:9, 35:22, 41:13, 48:12, 109:16, 111:8, 111:9, 113:6
**first** [18] - 6:8, 16:11, 19:1, 27:23, 29:17, 29:23, 33:1, 40:11, 42:22, 44:7, 65:22, 66:21, 79:10, 80:7, 87:14, 99:20, 102:16, 115:6
**fit** [1] - 69:17
**fits** [2] - 73:21, 74:5
**flaw** [1] - 78:7
**flesh** [1] - 115:18
**flowed** [1] - 40:16
**flowing** [1] - 30:10
**flows** [3] - 43:19, 44:7, 46:6
**focus** [1] - 87:14
**focused** [1] - 113:19
**focusing** [1] - 72:1
**folks** [1] - 98:21
**follow** [3] - 43:3, 55:25, 57:23
**followed** [4] - 74:11, 75:14, 75:16, 99:7
**following** [5] - 15:17, 42:9, 43:6, 43:11, 91:19
**follows** [2] - 16:5, 109:10
**Footnote** [3] - 10:18, 43:6, 102:8
**footnote** [1] - 37:17
**FOR** [2] - 1:1, 1:13
**foregoing** [1] - 120:6

foreign [11] - 32:16, 41:9, 46:1, 46:4, 46:7, 48:7, 50:15, 68:5, 68:8, 81:16, 81:19
forget [1] - 109:20
form [14] - 23:17, 37:4, 38:9, 40:16, 41:12, 43:20, 44:7, 46:22, 54:17, 63:8, 63:9, 65:10, 77:2, 82:13
formality [1] - 71:3
forms [11] - 23:14, 31:8, 48:23, 49:8, 50:2, 50:16, 50:18, 57:3, 62:15, 70:17, 70:19
Fornah [1] - 118:7
forth [1] - 57:3
forthcoming [1] - 51:23
forward [3] - 20:8, 40:9, 42:21
four [6] - 26:18, 49:16, 113:9, 114:23, 115:6, 116:3
Fourth [1] - 1:14
frankly [1] - 107:3
fraudulent [2] - 10:5, 10:24
Friedman [1] - 64:7
friends [1] - 4:7
front [2] - 6:3, 89:25
FTI [2] - 113:14, 114:2
full [11] - 23:11, 23:22, 65:18, 65:20, 78:14, 78:15, 82:22, 85:16, 94:7, 98:3, 120:7
fully [3] - 19:13, 63:1, 93:12
fulsome [2] - 71:24, 95:11
function [1] - 115:1
fundamental [2] - 89:7, 94:9
funds [2] - 68:6, 106:24
furnished [36] - 27:19, 27:24, 28:7, 28:22, 29:17, 29:21, 30:3, 30:4, 32:10, 32:13, 66:16, 68:14, 68:17, 68:19, 68:22, 68:24, 69:1, 72:4, 72:12, 72:13, 72:14, 72:24, 74:12, 75:11, 76:22, 87:18, 88:2, 89:21, 90:10, 90:18, 90:21, 92:22, 93:5, 93:21, 101:13

furtherance [1] - 61:21

## G

game [2] - 43:19, 43:21
GASTON [21] - 39:21, 39:25, 40:7, 41:23, 43:5, 44:5, 44:19, 44:23, 45:21, 46:24, 47:12, 48:4, 48:17, 61:18, 61:25, 62:22, 63:12, 95:21, 96:11, 96:22, 97:4
Gaston [3] - 1:13, 3:8, 49:24
gaston [1] - 95:6
gates [1] - 113:15
general [37] - 27:19, 27:25, 28:22, 40:17, 42:9, 42:10, 45:15, 66:16, 74:13, 75:4, 75:12, 75:21, 76:20, 76:23, 77:14, 84:6, 84:15, 84:19, 85:3, 85:11, 87:18, 88:3, 89:21, 92:22, 93:5, 93:22, 94:8, 94:13, 94:14, 94:17, 94:22, 94:24, 95:13, 101:13, 101:24, 111:13
generally [5] - 7:14, 20:9, 84:7, 95:24
generis [2] - 73:19, 80:11
generous [1] - 25:20
generously [1] - 25:22
gist [1] - 14:20
given [8] - 12:11, 23:13, 81:17, 88:5, 89:11, 94:9, 103:25, 111:8
Gorsuch [2] - 86:8, 99:18
governed [5] - 69:14, 69:22, 70:5, 88:17, 99:10
government [83] - 4:17, 5:6, 7:5, 9:23, 10:1, 10:25, 11:25, 12:20, 13:16, 16:6, 16:20, 18:1, 18:12, 19:16, 20:8, 20:11, 20:13, 20:19, 21:11, 21:13, 21:16, 22:8, 23:11, 24:17, 24:22, 24:23, 25:2, 27:3, 27:8, 27:12, 35:21,

36:16, 36:22, 37:8, 39:2, 39:5, 39:13, 39:19, 40:15, 40:18, 41:9, 43:23, 44:17, 44:25, 50:8, 50:23, 50:24, 50:25, 54:22, 55:17, 56:14, 56:20, 57:5, 58:13, 58:23, 59:21, 59:25, 61:16, 62:2, 63:18, 64:16, 65:12, 71:20, 81:15, 81:21, 84:2, 84:16, 85:3, 85:9, 85:13, 86:19, 91:8, 99:25, 102:8, 102:15, 104:4, 112:11, 113:12, 114:22, 115:1, 116:3, 118:18
Government [4] - 84:19, 84:25, 85:2, 85:7
government's [18] - 5:1, 10:14, 11:20, 12:2, 13:12, 38:11, 38:22, 50:4, 55:10, 56:12, 56:16, 57:18, 67:15, 95:9, 97:1, 103:1, 103:6, 111:18
governs [2] - 66:21, 71:18
grand [7] - 12:5, 12:6, 12:10, 15:19, 25:14, 27:4, 60:17
grant [1] - 111:18
grave [1] - 12:9
Gregory [3] - 1:6, 3:3, 87:11
grounds [2] - 57:15, 118:18
group [1] - 3:17
Growers [10] - 8:9, 8:24, 24:7, 48:18, 48:22, 49:7, 49:19, 84:11, 84:12, 85:11
GSA [2] - 20:3, 54:11
guess [4] - 16:11, 16:24, 33:1, 95:2
guided [4] - 23:15, 61:11, 61:14, 70:1
guilty [3] - 5:1, 11:7, 23:18
Gulland [1] - 1:13

## H

Hail [1] - 80:3
half [1] - 115:20
halfway [1] - 19:13
hampers [1] - 77:21
hand [1] - 109:8

handle [4] - 6:10, 33:8, 112:22, 114:19
handled [2] - 23:17, 63:18
handling [2] - 101:2, 112:21
happy [4] - 25:19, 95:6, 106:5, 106:9
hard [3] - 36:13, 111:11, 119:5
head [1] - 66:5
hear [14] - 4:22, 5:25, 27:6, 39:9, 39:12, 39:17, 61:10, 61:12, 61:16, 74:6, 99:20, 99:21, 117:21, 119:10
heard [1] - 111:21
hearing [4] - 4:17, 5:17, 5:18
hefty [1] - 5:24
HELD [1] - 1:9
held [1] - 118:5
help [1] - 103:7
helped [1] - 54:10
helpful [1] - 119:10
helps [1] - 97:16
hereby [1] - 120:5
hi [1] - 91:9
hiding [1] - 43:15
high [1] - 115:22
highlight [1] - 103:22
highly [1] - 36:18
himself [1] - 35:15
hired [4] - 107:13, 107:16, 109:9, 110:18
hiring [2] - 106:22, 107:20
historical [1] - 115:15
history [3] - 80:18, 81:3, 82:8
hit [1] - 105:25
hitt [1] - 118:13
HITT [1] - 118:13
hold [1] - 53:12
holding [1] - 100:20
holds [1] - 20:20
home [2] - 97:10, 98:14
homes [1] - 4:7
Honor [60] - 3:1, 3:4, 3:7, 3:11, 3:21, 21:18, 26:15, 33:23, 39:21, 39:25, 40:7, 40:11, 41:23, 43:5, 44:5, 44:19, 45:21, 46:24, 47:12, 48:4, 48:17, 52:20, 60:11, 61:18, 61:25, 62:4,

63:1, 63:12, 65:2, 68:1, 68:23, 71:16, 73:5, 74:6, 74:21, 76:10, 77:9, 78:6, 78:24, 83:2, 85:25, 86:20, 86:22, 87:10, 87:23, 89:14, 89:18, 92:5, 92:16, 95:21, 96:11, 96:22, 97:4, 97:9, 99:1, 101:4, 102:5, 104:10, 112:22, 115:15
Honor's [1] - 66:11
HONORABLE [1] - 1:9
hope [2] - 5:15, 115:19
hopefully [2] - 108:23, 117:9
hoping [1] - 105:3
Hospital [1] - 69:20
Hospitals [2] - 88:7, 88:18
hours [1] - 75:3
Hubbell [5] - 47:15, 55:23, 57:14, 61:19, 62:24
hundreds [2] - 113:13
Hunt [3] - 35:17, 70:9, 77:7

## I

i.e [2] - 32:11, 95:15
idea [5] - 44:10, 50:24, 89:6, 89:8, 89:10
identified [2] - 15:13, 116:14
identify [2] - 3:6, 94:10
identifying [2] - 94:18, 94:19
IG [4] - 13:7, 16:15, 19:25, 20:1
Ill [1] - 1:21
illegality [2] - 105:11
illustrate [1] - 97:16
immediately [1] - 87:25
immigration [1] - 88:20
implementing [2] - 81:9, 85:14
implicates [2] - 46:2, 46:4
important [4] - 17:6, 34:25, 48:9, 108:1
impose [4] - 10:7, 34:17, 86:12, 95:25
imposes [1] - 21:22
imposing [1] - 49:24

**impossible** [1] - 113:21
**improper** [2] - 23:4, 111:5
**IN** [1] - 1:1
**include** [2] - 15:11, 32:17
**included** [3] - 7:16, 93:10, 101:16
**includes** [4] - 41:11, 41:12, 93:13
**including** [6] - 51:18, 71:20, 76:13, 76:14, 95:9, 96:1
**income** [1] - 97:20
**incomplete** [1] - 100:8
**inconsistency** [1] - 38:20
**incorporates** [2] - 10:21, 96:15
**indeed** [2] - 104:18, 116:20
**independent** [1] - 95:22
**independently** [1] - 37:9
**Indian** [1] - 21:25
**indicated** [1] - 9:23
**indicates** [1] - 37:13
**indication** [2] - 93:18, 93:23
**indicted** [1] - 12:10
**indictment** [65] - 4:23, 4:24, 5:7, 7:10, 7:16, 7:21, 7:23, 8:21, 8:25, 9:1, 9:2, 9:18, 10:10, 10:12, 10:14, 10:16, 11:9, 11:17, 11:21, 11:22, 12:2, 12:5, 14:4, 15:9, 15:15, 16:10, 17:21, 24:1, 24:11, 24:23, 25:15, 34:5, 34:8, 35:13, 35:16, 37:9, 38:24, 39:1, 39:7, 56:10, 59:1, 60:11, 60:18, 61:5, 61:7, 96:6, 96:11, 100:7, 105:18, 105:21, 108:5, 109:19, 114:4, 114:11, 114:15, 114:16, 114:24, 115:17, 115:23, 116:1, 116:9, 117:24, 118:6, 118:12, 118:22
**individual** [1] - 57:5
**Individuals** [3] - 69:24, 89:2, 89:4

**individuals** [1] - 94:10
**inevitable** [1] - 6:23
**infects** [1] - 30:23
**inflammatory** [3] - 114:11, 118:6, 118:20
**influence** [2] - 81:19, 101:23
**inform** [1] - 51:17
**informal** [2] - 77:6, 77:7
**informally** [1] - 77:6
**information** [49] - 19:12, 20:20, 24:5, 41:10, 42:1, 42:2, 42:9, 42:17, 43:12, 43:15, 43:16, 43:22, 44:16, 44:18, 45:1, 45:4, 45:6, 45:11, 45:16, 45:23, 46:9, 46:13, 46:18, 47:3, 47:23, 48:5, 49:20, 49:22, 50:6, 50:11, 54:13, 55:2, 67:7, 70:9, 77:18, 77:21, 78:3, 78:4, 83:16, 84:4, 94:22, 96:1, 96:14, 105:20, 105:21, 115:12, 115:25
**initial** [2] - 89:25, 107:1
**initiated** [2] - 12:19, 13:5
**injunctive** [1] - 94:25
**innocent** [1] - 5:14
**inquiry** [13] - 12:19, 12:21, 39:3, 40:24, 44:3, 44:8, 44:10, 45:22, 46:11, 51:18, 87:20, 89:25, 90:10
**INS** [1] - 69:5
**insofar** [1] - 34:14
**inspector** [3] - 77:14, 84:19, 85:11
**instance** [2] - 64:23, 88:14
**instead** [1] - 43:13
**instructed** [2] - 31:9, 63:2
**instruction** [2] - 25:16, 112:18
**instructions** [2] - 23:17, 38:8
**insufficient** [3] - 25:13, 38:25, 85:5
**intent** [1] - 104:13
**intention** [2] - 80:25, 109:2
**intentional** [1] - 115:5

**intentioned** [1] - 111:7
**interactions** [1] - 113:19
**interest** [2] - 51:8, 102:11
**interested** [5] - 22:25, 23:2, 50:24, 52:6
**interesting** [3] - 15:6, 16:25, 56:3
**Internal** [1] - 97:20
**internal** [1] - 111:8
**internet** [1] - 102:11
**interpret** [1] - 69:4
**interpretation** [4] - 24:12, 29:23, 31:3, 82:10
**interpreted** [1] - 72:17
**interpreting** [1] - 20:5
**interrogatories** [3] - 23:15, 46:22, 78:1
**interrupt** [1] - 37:25
**interrupted** [1] - 86:2
**interview** [10] - 27:24, 53:11, 54:23, 107:7, 113:4, 113:18, 115:2, 116:2, 116:22, 117:4
**interviewed** [4] - 13:15, 16:19, 117:1
**interviews** [1] - 22:7
**investigating** [1] - 23:3
**investigative** [3] - 77:23, 78:12, 78:20
**invoke** [1] - 103:3
**involve** [1] - 57:4
**involved** [4] - 35:21, 36:17, 41:13, 65:11
**involvement** [2] - 105:5, 105:8
**involves** [1] - 25:4
**irrelevant** [3] - 114:12, 115:11, 118:6
**issue** [22] - 4:16, 6:9, 27:7, 34:2, 38:15, 48:15, 49:15, 55:15, 62:11, 64:4, 64:8, 85:15, 88:21, 88:25, 89:1, 97:7, 97:16, 104:5, 104:19, 111:22, 114:6
**issued** [6] - 36:7, 36:8, 63:18, 70:16, 75:1, 75:6
**issues** [10] - 4:15, 4:18, 5:11, 6:17, 6:20, 7:15, 66:2, 97:8, 111:9, 119:12
**issuing** [1] - 63:25
**items** [3] - 74:11,

75:14, 76:14
**itself** [4] - 28:10, 88:12, 105:8, 106:1

**J**

**JACKSON** [1] - 1:9
**Jackson** [2] - 26:17
**James** [1] - 1:20
**JANICE** [1] - 120:5
**Janice** [2] - 2:7, 120:13
**January** [4] - 54:25, 60:1, 96:13, 117:5
**Jason** [2] - 1:17, 3:8
**jason.mccullough@usdoj.gov** [1] - 1:19
**Jerry** [1] - 81:10
**Jersey** [1] - 62:11
**job** [2] - 84:2, 103:8
**jot** [1] - 99:24
**journalist** [1] - 109:13
**judge** [2] - 4:1, 17:24
**Judge** [14] - 8:11, 8:13, 8:24, 8:25, 23:24, 26:17, 38:12, 55:20, 58:5, 60:4, 61:24, 62:1, 64:7
**JUDGE** [2] - 1:9, 1:10
**July** [2] - 1:6, 120:9
**jumps** [1] - 109:9
**June** [12] - 15:16, 17:10, 56:11, 56:21, 58:23, 59:4, 96:13, 107:9, 107:15, 107:16
**Junghans** [4] - 2:1, 3:13, 3:25, 4:6
**jury** [30] - 8:5, 9:7, 9:8, 9:11, 9:14, 9:15, 11:6, 11:8, 12:5, 12:6, 12:10, 15:19, 23:17, 25:14, 27:4, 36:24, 38:8, 38:13, 40:2, 40:3, 46:20, 46:21, 46:24, 60:17, 63:2, 63:9, 104:19, 108:20, 114:15, 118:22
**jury's** [1] - 38:7
**justice** [1] - 81:22
**Justice** [13] - 1:17, 34:24, 69:6, 77:11, 81:7, 81:8, 81:17, 82:11, 83:15, 86:8, 99:4, 99:18, 103:17

**K**

**keep** [3] - 103:3,

106:5, 106:9
**kept** [1] - 115:10
**Kessler** [4] - 8:11, 8:13, 8:25, 23:24
**key** [2] - 66:18, 110:24
**kicks** [2] - 79:5, 79:24
**kind** [8] - 34:1, 50:10, 54:18, 74:2, 79:19, 84:6, 88:18, 92:25
**kinds** [1] - 84:1
**knowing** [4] - 15:4, 15:13, 16:11, 115:5
**knowingly** [4] - 10:8, 15:20, 15:25, 60:17
**knowledge** [1] - 98:22
**known** [2] - 80:12, 81:9
**knows** [2] - 62:4, 117:19

**L**

**lack** [1] - 73:22
**laid** [1] - 5:24
**Lamberth** [2] - 8:24, 23:24
**landed** [1] - 109:4
**language** [15] - 10:15, 28:1, 31:3, 31:25, 66:14, 66:24, 72:1, 79:2, 88:11, 90:15, 91:4, 93:2, 93:4, 93:25
**last** [15] - 55:3, 57:10, 58:16, 61:20, 61:21, 62:14, 62:17, 62:24, 62:25, 80:2, 80:3, 80:5, 86:4, 95:16, 107:14
**late** [1] - 37:21
**Latin** [1] - 73:23
**law** [39] - 5:16, 7:14, 7:23, 8:1, 8:3, 8:8, 8:16, 8:19, 8:23, 9:6, 9:7, 10:21, 17:17, 17:19, 20:16, 21:1, 32:20, 38:6, 38:25, 39:24, 40:20, 40:21, 40:24, 44:3, 44:4, 47:12, 48:24, 56:16, 61:8, 62:5, 62:6, 87:15, 88:1, 88:4, 88:6, 111:7, 111:8, 113:6
**laws** [1] - 84:13
**lawyer** [1] - 103:8
**lawyers** [2] - 4:18, 65:17
**lay** [1] - 103:13
**lead** [1] - 4:19

**least** [5] - 12:14, 13:10, 25:8, 25:10, 25:20
**leaves** [1] - 20:4
**lectern** [1] - 3:6
**left** [4] - 12:4, 33:16, 57:1, 97:19
**legal** [12] - 5:11, 7:4, 8:21, 9:2, 24:1, 24:9, 24:24, 25:12, 25:15, 27:7, 57:13, 58:11
**legally** [1] - 39:7
**legislative** [3] - 80:18, 81:2, 82:8
**length** [1] - 49:25
**lenity** [13] - 33:11, 78:25, 79:5, 79:11, 79:16, 79:21, 83:5, 85:25, 86:6, 89:17, 92:4, 99:16, 99:17
**less** [1] - 104:9
**letter** [83] - 15:16, 15:20, 16:5, 17:10, 19:1, 19:4, 22:4, 22:24, 34:22, 34:23, 35:16, 36:24, 38:14, 40:25, 41:24, 46:15, 47:5, 47:6, 48:9, 51:21, 51:23, 52:3, 52:8, 52:11, 52:15, 52:17, 52:19, 55:3, 55:7, 56:12, 59:4, 66:1, 66:3, 66:4, 66:9, 66:11, 66:13, 66:15, 67:9, 70:3, 70:11, 70:15, 71:4, 71:6, 71:18, 76:24, 77:5, 77:24, 78:14, 80:15, 80:19, 83:4, 83:9, 83:22, 85:20, 90:2, 90:3, 90:8, 91:8, 91:13, 91:18, 91:19, 91:22, 95:16, 96:3, 97:22, 99:11, 99:14, 100:8, 100:12, 107:5, 117:17
**letters** [21] - 18:23, 24:17, 27:22, 27:23, 30:2, 30:3, 30:12, 30:18, 30:20, 31:13, 33:3, 33:20, 66:21, 66:22, 70:6, 70:7, 71:11, 82:6, 82:12, 91:8, 100:2
**Library** [1] - 75:2
**lie** [9] - 13:25, 21:4, 53:20, 53:22, 53:23, 54:4, 95:11, 108:11
**lied** [7] - 9:18, 11:8,

15:25, 21:15, 100:17, 100:18, 103:16
**life** [2] - 92:11, 94:7
**light** [1] - 107:21
**lightly** [1] - 118:12
**limine** [10] - 111:19, 114:6, 114:17, 114:20, 115:19, 116:23, 118:16, 118:24, 119:9, 119:14
**limitations** [21] - 39:16, 39:18, 49:15, 54:20, 55:6, 55:9, 55:11, 55:24, 56:5, 57:11, 57:15, 58:14, 60:3, 61:17, 61:20, 62:16, 63:4, 63:5, 63:11, 66:1, 114:14
**limited** [1] - 32:23
**limiting** [1] - 91:6
**limits** [1] - 87:17
**line** [1] - 35:20
**lines** [1] - 44:8
**lingering** [2] - 82:9, 86:5
**list** [4] - 45:24, 68:4, 75:13, 96:6
**listening** [1] - 99:21
**listing** [1] - 96:8
**litigated** [1] - 65:11
**LLP** [2] - 1:22, 2:2
**logical** [2] - 103:18, 115:15
**look** [20] - 7:10, 10:20, 15:10, 26:22, 41:3, 51:11, 52:15, 59:24, 66:14, 69:12, 70:16, 72:17, 80:10, 80:18, 82:8, 82:9, 82:10, 100:9, 117:16, 119:4
**looked** [5] - 8:25, 60:4, 62:11, 88:18, 88:19
**looking** [15] - 23:25, 26:9, 57:21, 60:15, 60:19, 61:2, 61:3, 61:4, 62:1, 62:9, 85:11, 89:24, 115:16
**looks** [1] - 107:17
**loose** [1] - 106:2
**lost** [1] - 103:8
**loved** [1] - 37:6
**lying** [1] - 107:25

---

**M**

---

**major** [2] - 77:16, 78:7
**maker** [3] - 22:22,

22:24, 51:8
**man** [2] - 110:19, 110:23
**manafort** [3] - 103:12, 104:16, 109:14
**Manafort** [24] - 104:24, 105:4, 105:9, 106:2, 106:5, 106:9, 106:16, 106:17, 107:4, 109:1, 109:5, 109:8, 109:18, 110:2, 110:13, 110:14, 110:18, 110:23, 112:5, 112:12, 112:13, 113:15, 113:20
**Manafort's** [2] - 105:13, 114:2
**manner** [1] - 101:18
**Marcello** [1] - 88:23
**MARCUS** [1] - 99:4
**Marcus** [2] - 2:1, 3:13
**marking** [1] - 61:9
**marries** [1] - 98:7
**Mary** [1] - 80:3
**material** [51] - 10:22, 10:23, 12:24, 15:17, 16:3, 16:25, 18:1, 21:13, 22:17, 22:20, 22:21, 22:22, 25:6, 27:10, 28:9, 28:13, 28:14, 28:15, 28:18, 28:24, 29:2, 29:9, 29:10, 31:5, 31:6, 31:21, 31:23, 32:2, 32:5, 32:10, 32:24, 34:19, 35:6, 36:18, 40:8, 41:19, 42:17, 45:9, 47:1, 47:6, 47:16, 49:19, 49:20, 50:12, 50:13, 51:18, 60:17, 73:18, 78:17, 96:14, 96:18
**materiality** [2] - 9:6, 9:16
**materially** [1] - 10:5
**materials** [3] - 75:2, 75:5
**matter** [13] - 9:2, 23:14, 25:13, 38:25, 51:22, 51:24, 63:14, 69:7, 69:8, 89:2, 111:13, 114:15, 114:16
**matters** [3] - 4:20, 51:8, 63:15
**McCullough** [14] - 1:17, 3:8, 86:22, 86:24, 87:23, 89:14,

89:18, 91:18, 92:5, 92:16, 95:4, 101:4, 101:7, 101:10
**MD** [1] - 1:23
**mean** [33] - 13:15, 13:16, 14:21, 18:6, 18:21, 20:25, 33:13, 37:25, 38:17, 39:4, 43:2, 64:15, 67:18, 67:20, 67:21, 68:18, 69:3, 69:22, 70:1, 75:17, 79:5, 80:3, 84:23, 85:11, 88:17, 92:8, 102:18, 107:25, 109:4, 109:7, 111:20, 114:25, 115:9
**meaning** [14] - 65:13, 65:21, 66:15, 66:24, 80:10, 86:5, 88:5, 88:8, 88:19, 88:25, 89:10, 89:11, 89:16, 90:9
**meaningless** [1] - 76:21
**meanings** [4] - 69:11, 79:7, 79:8, 88:8
**means** [7] - 20:6, 55:10, 69:14, 70:1, 79:2, 80:4, 80:11
**meant** [2] - 75:20, 80:25
**media** [29] - 14:8, 17:15, 19:6, 19:7, 22:7, 36:6, 41:11, 41:13, 42:11, 51:4, 98:11, 98:18, 98:19, 98:22, 100:11, 100:15, 100:22, 104:17, 105:24, 108:4, 108:8, 108:14, 108:22, 113:14, 113:16, 113:20, 114:3
**Medicaid** [2] - 69:22, 69:23
**meet** [2] - 9:10, 117:15
**meeting** [50] - 12:22, 13:7, 15:23, 16:1, 16:5, 16:6, 19:11, 19:15, 19:22, 30:13, 30:14, 33:18, 35:10, 35:12, 35:17, 35:20, 36:6, 36:25, 38:4, 38:5, 38:13, 38:21, 41:22, 41:23, 42:4, 42:16, 42:20, 42:22, 42:23, 43:4, 43:13, 47:7, 48:1, 48:8, 48:11, 55:4, 55:6,

65:24, 66:6, 66:7, 71:12, 83:4, 91:14, 96:4, 100:3, 112:11, 113:22
**meetings** [1] - 13:4
**meets** [1] - 114:10
**member** [3] - 80:25, 105:6, 105:8
**memo** [1] - 107:14
**Menendez** [2] - 62:10, 62:12
**mere** [4] - 15:3, 18:2, 18:7, 18:10
**merits** [6] - 5:1, 24:2, 35:9, 98:17, 100:16, 102:7
**mess** [1] - 34:2
**met** [2] - 14:5, 14:13
**Michael's** [1] - 10:19
**middle** [1] - 34:14
**midst** [1] - 83:17
**might** [13] - 10:17, 53:2, 70:11, 78:16, 81:19, 82:19, 85:21, 99:5, 100:1, 100:5, 105:2, 115:9
**million** [2] - 107:6, 107:8
**mind** [4] - 71:23, 73:3, 73:5, 77:2
**mini** [1] - 116:5
**minimal** [1] - 111:11
**minute** [1] - 33:10, 87:5
**minutes** [1] - 87:5
**mischaracterization
s** [1] - 35:15
**misinformation** [1] - 14:9
**mislead** [2] - 43:22, 108:11
**misleading** [19] - 11:11, 14:18, 15:17, 15:22, 15:23, 16:2, 25:5, 28:16, 29:12, 32:13, 32:18, 36:18, 41:19, 42:17, 43:15, 100:7, 108:18, 113:3, 116:20
**misled** [1] - 94:14
**misrepresentation** [1] - 18:9
**missing** [1] - 95:10
**misunderstood** [1] - 76:11
**mixed** [1] - 39:22
**modifies** [2] - 28:17, 31:12
**modify** [1] - 31:5
**molly** [1] - 3:8

**Molly** [1] - 1:13
**molly.gaston@usdoj
.gov** [1] - 1:16
**moment** [4] - 17:18,
26:24, 47:14, 60:23
**money** [2] - 109:3,
109:5
**months** [2] - 67:2,
103:16
**Moore** [5] - 18:11,
18:12, 18:13, 18:14,
43:17
**moreover** [1] - 118:21
**morning** [14] - 3:1,
3:7, 3:10, 3:11, 3:14,
3:15, 4:16, 6:2,
39:21, 65:2, 65:3,
72:2, 86:23, 119:2
**most** [1] - 28:3
**motion** [31] - 4:23,
5:5, 5:15, 6:9, 7:9,
7:13, 9:25, 16:9,
24:13, 24:14, 24:25,
34:3, 37:22, 66:10,
70:19, 73:10, 77:14,
111:19, 111:25,
112:20, 114:5,
114:6, 114:17,
114:20, 115:19,
116:18, 116:23,
118:16, 118:17,
118:24
**motions** [6] - 60:22,
61:3, 117:23, 119:1,
119:8, 119:14
**motivated** [1] - 107:20
**motivation** [1] - 35:14
**motive** [3] - 106:16,
109:1, 109:2
**motives** [1] - 104:20
**mouse** [2] - 43:18,
43:21
**moved** [1] - 30:18
**moving** [1] - 81:6
**MR** [236] - 3:7, 3:11,
3:15, 4:12, 6:11,
6:18, 6:20, 6:23, 7:1,
7:12, 7:18, 7:20, 8:3,
8:6, 8:9, 8:11, 8:14,
8:17, 9:8, 9:10, 9:13,
9:21, 10:12, 11:14,
11:17, 12:1, 12:25,
13:2, 13:8, 13:19,
13:23, 14:20, 14:23,
16:16, 16:18, 17:8,
18:6, 18:22, 19:3,
19:15, 19:23, 19:25,
21:5, 21:10, 22:11,
22:13, 22:15, 22:19,
23:1, 23:23, 24:15,

24:19, 24:22, 25:7,
25:10, 25:22, 26:3,
26:5, 26:10, 26:12,
26:14, 26:17, 26:19,
26:21, 26:24, 27:2,
27:8, 27:12, 28:2,
28:12, 28:19, 29:9,
29:13, 30:7, 30:9,
30:16, 30:21, 30:24,
31:4, 31:17, 31:21,
32:14, 33:7, 33:19,
33:25, 34:11, 35:4,
36:1, 36:3, 36:9,
36:13, 37:3, 37:7,
37:15, 37:17, 37:24,
38:16, 38:19, 39:15,
49:16, 49:19, 50:14,
51:11, 51:24, 52:2,
52:10, 52:13, 52:20,
52:23, 53:14, 53:16,
53:18, 53:20, 54:2,
54:7, 54:21, 55:8,
55:17, 56:2, 57:1,
57:12, 57:17, 57:20,
57:22, 57:24, 58:4,
58:7, 58:10, 58:12,
59:10, 59:15, 60:10,
60:14, 60:24, 61:11,
61:14, 63:22, 63:24,
64:22, 65:2, 65:4,
65:7, 66:25, 67:3,
67:16, 67:20, 68:1,
68:12, 68:14, 68:16,
68:20, 68:23, 71:8,
71:10, 71:15, 72:19,
73:1, 74:6, 74:9,
74:17, 74:19, 74:21,
75:16, 76:4, 76:7,
76:10, 78:6, 78:22,
79:13, 79:16, 80:1,
80:8, 81:4, 82:24,
83:1, 83:7, 83:12,
83:20, 84:11, 85:8,
86:4, 86:17, 86:20,
86:22, 86:24, 87:23,
89:14, 89:18, 91:18,
92:5, 92:16, 95:4,
97:9, 97:12, 97:15,
98:9, 98:16, 99:23,
100:14, 100:20,
101:4, 101:7,
101:10, 102:5,
102:13, 102:22,
103:5, 103:24,
104:3, 104:6,
104:10, 105:7,
106:6, 106:13,
107:23, 109:6,
109:23, 109:25,
110:4, 110:6, 110:9,
111:3, 112:2, 112:4,

112:16, 112:22,
112:24, 114:8,
114:18, 115:8,
115:13, 115:24,
116:11, 116:16,
117:6, 117:9
**MS** [22] - 39:21, 39:25,
40:7, 41:23, 43:5,
44:5, 44:19, 44:23,
45:21, 46:24, 47:12,
48:4, 48:17, 61:18,
61:25, 62:22, 63:12,
95:21, 96:11, 96:22,
97:4, 99:4
**multiple** [2] - 55:16,
116:8
**MURPHY** [60] - 65:2,
65:4, 65:7, 66:25,
67:3, 67:16, 67:20,
68:1, 68:12, 68:14,
68:16, 68:20, 68:23,
71:8, 71:10, 71:15,
72:19, 73:1, 74:6,
74:9, 74:17, 74:19,
74:21, 75:16, 76:4,
76:7, 76:10, 78:6,
78:22, 79:13, 79:16,
80:1, 80:8, 81:4,
82:24, 83:1, 83:7,
83:12, 83:20, 84:11,
85:8, 86:4, 86:17,
86:20, 87:9, 97:12,
97:15, 98:9, 98:16,
99:23, 100:14,
100:20, 112:22,
112:24, 114:8,
114:18, 115:8,
115:13, 115:24,
116:11
**Murphy** [8] - 1:20,
3:12, 6:13, 12:16,
31:1, 33:5, 65:1,
97:7
**Murphy's** [1] - 30:7
**must** [25] - 8:20, 25:1,
25:12, 34:8, 42:8,
43:10, 50:17, 68:3,
68:4, 68:6, 68:7,
69:14, 70:6, 71:1,
71:2, 71:18, 76:19,
82:20, 82:21, 85:22,
86:6, 118:6

**N**

**name** [3] - 102:9,
102:14, 102:16
**naming** [2] - 102:8,
106:14
**narrow** [5] - 5:11,

88:4, 88:25, 95:13,
118:2
**narrowly** [2] - 77:10,
77:11
**National** [1] - 48:6
**natural** [1] - 65:21
**naturally** [1] - 66:20
**nature** [1] - 39:3
**necessary** [5] - 28:15,
29:10, 31:22, 32:11,
32:17
**need** [18] - 5:25, 6:5,
18:25, 40:2, 40:3,
46:25, 50:2, 50:11,
61:10, 79:10, 84:4,
86:25, 87:24, 89:5,
104:1, 113:1,
117:21, 119:4
**needed** [1] - 45:11
**needs** [2] - 19:12,
114:10
**never** [7] - 37:3, 37:13,
86:15, 86:17, 97:25,
98:2, 100:24
**new** [3] - 3:24, 74:20,
115:6
**New** [3] - 62:11,
104:13, 108:9
**next** [4] - 29:7, 97:8,
105:2, 119:7
**Ninth** [1] - 20:14
**Nixon** [1] - 81:11
**non** [2] - 38:24, 78:3
**non-registrants** [1] -
78:3
**nondisclosure** [3] -
21:23, 27:9, 53:1
**none** [4] - 51:12, 57:4,
65:12, 82:12
**noscitur** [1] - 80:11
**notably** [1] - 55:6
**noted** [1] - 101:17
**notes** [2] - 117:13,
120:7
**nothing** [12] - 28:10,
43:7, 70:14, 71:24,
73:17, 82:24, 90:19,
102:22, 103:2,
103:7, 103:18,
105:11
**notice** [14] - 7:17,
17:6, 19:12, 44:22,
44:23, 51:9, 52:21,
52:23, 54:5, 54:7,
99:17, 99:23, 100:1,
100:11
**notices** [1] - 116:14
**notion** [5] - 12:9, 39:6,
55:10, 58:12, 113:21
**notwithstanding** [2] -

51:15, 58:19
**Number** [2] - 3:2,
87:11
**number** [4] - 4:15,
5:11, 103:20, 109:20
**NW** [5] - 1:14, 1:18,
2:2, 2:8, 120:14

**O**

**O'Connor's** [1] - 99:4
**OAKAR** [1] - 118:3
**Oaker** [1] - 118:3
**oath** [6] - 71:2, 78:2,
82:15, 101:11,
101:14, 101:20
**object** [1] - 37:4
**obligated** [5] - 41:2,
42:1, 42:3, 46:16,
48:10
**obligation** [22] - 16:7,
34:13, 38:20, 41:8,
41:17, 50:6, 50:22,
70:11, 70:12, 77:5,
83:15, 85:3, 89:24,
90:4, 90:6, 91:21,
92:1, 97:2, 99:14,
99:24
**obligations** [4] -
40:23, 67:15, 95:9,
95:25
**obliged** [2] - 7:24,
50:15
**obscure** [1] - 25:6
**observation** [1] - 8:12
**obtain** [3] - 77:20,
78:3, 78:4
**obtaining** [1] - 77:17
**obvious** [1] - 116:5
**obviously** [4] - 33:13,
57:3, 112:24, 116:23
**occur** [6] - 55:9, 56:6,
56:19, 58:19, 59:3,
59:18
**occurred** [5] - 55:12,
56:21, 57:6, 57:7,
57:8, 57:10, 62:15,
114:23
**occurs** [3] - 56:7,
56:11, 58:22
**October** [14] - 35:10,
55:3, 55:4, 55:7,
57:4, 59:4, 66:2,
66:9, 70:4, 83:9,
107:22, 113:4,
113:9, 113:10
**OF** [4] - 1:1, 1:8, 1:14,
120:2
**offence** [1] - 56:23
**offense** [11] - 9:20,

40:3, 55:19, 56:18, 59:5, 59:8, 59:20, 60:7, 62:21, 65:7
**offenses** [3] - 10:22, 14:24, 56:6
**offer** [1] - 115:2
**offered** [1] - 114:19
**office** [1] - 98:14
**OFFICE** [1] - 1:13
**Office** [7] - 54:24, 113:5, 113:12, 113:23, 115:3, 116:13, 116:22
**officer** [4] - 16:15, 17:17, 17:18, 85:9
**official** [2] - 13:5, 40:19
**Official** [2] - 2:7, 120:13
**OFFICIAL** [1] - 120:2
**officials** [3] - 22:8, 40:18, 84:2
**OIG** [6] - 23:1, 23:5, 40:13, 40:19, 51:24, 54:9
**omission** [12] - 13:17, 13:22, 23:18, 28:25, 30:10, 30:11, 31:5, 32:8, 38:4, 47:20
**omissions** [14] - 15:18, 25:5, 35:24, 36:18, 37:12, 45:9, 47:1, 47:10, 47:16, 53:25, 84:8, 84:9, 96:7, 96:18
**omit** [8] - 12:23, 28:13, 28:14, 32:10, 42:17, 48:1, 54:5, 95:11
**omits** [3] - 29:2, 29:9, 32:5
**omitted** [16] - 11:8, 21:12, 21:13, 22:16, 22:20, 22:21, 23:6, 28:18, 41:19, 44:14, 47:6, 52:8, 73:17, 98:1
**omitting** [1] - 23:8
**once** [9] - 5:15, 13:13, 14:3, 53:25, 62:19, 62:20, 105:15, 106:9, 111:20
**one** [48] - 3:21, 9:22, 10:22, 11:18, 12:15, 12:16, 17:9, 17:11, 21:18, 22:1, 23:5, 29:19, 32:19, 37:4, 41:12, 43:21, 46:3, 47:14, 48:5, 48:6, 49:3, 53:3, 57:6,

57:9, 60:22, 62:3, 64:6, 64:7, 66:1, 69:9, 70:18, 73:21, 74:3, 79:25, 88:25, 89:16, 91:17, 93:15, 98:1, 101:4, 101:10, 102:6, 106:14, 106:19, 109:8, 119:15
**one's** [1] - 45:25
**onerous** [1] - 50:16
**ones** [3] - 31:8, 37:11, 37:12
**ongoing** [2] - 59:22, 59:25
**open** [1] - 4:14
**opens** [1] - 68:22
**operating** [3] - 50:25, 51:6, 52:4
**opinion** [7] - 13:9, 13:11, 37:10, 58:6, 58:7, 85:2, 99:4
**opinions** [1] - 64:8
**opportunity** [2] - 49:13, 101:7
**opposed** [3] - 12:21, 23:21, 55:16
**opposition** [3] - 5:5, 24:25, 107:1
**option** [3] - 32:7, 83:10, 83:11
**options** [1] - 28:8
**oral** [10] - 15:22, 16:5, 16:6, 19:21, 30:13, 30:14, 35:11, 65:24, 73:3, 96:24
**oranges** [1] - 49:5
**order** [6] - 19:9, 46:25, 47:1, 63:19, 76:18, 118:5
**ordinarily** [1] - 119:8
**ordinary** [1] - 66:24
**original** [1] - 107:4
**originally** [1] - 74:22
**others'** [1] - 4:7
**otherwise** [3] - 42:5, 59:12, 108:19
**ought** [1] - 112:25
**outlined** [1] - 68:9
**outset** [2] - 46:25, 103:19
**outside** [10] - 52:22, 58:1, 62:15, 64:2, 64:10, 82:6, 84:5, 88:21, 88:23, 89:6
**overlap** [1] - 6:18
**overthrow** [2] - 81:14, 81:20
**owed** [1] - 107:6
**own** [7] - 56:21, 56:22,

104:15, 108:12, 108:15, 108:17, 110:16

## P

**package** [1] - 107:1
**page** [3] - 15:10, 36:17, 118:8
**pages** [1] - 39:22
**paid** [2] - 42:13
**paper** [2] - 26:9, 91:14
**papers** [4] - 102:16, 103:13, 106:19, 117:9
**paragraph** [3] - 14:17, 109:20, 113:2
**Paragraph** [31] - 7:20, 9:18, 11:9, 14:4, 14:7, 14:10, 14:13, 15:15, 15:21, 16:4, 17:21, 19:17, 21:15, 21:17, 24:23, 34:15, 34:20, 35:6, 51:14, 51:20, 52:16, 96:5, 96:10, 96:12, 96:16, 96:17, 96:18, 96:19, 100:10, 116:2
**Paragraphs** [2] - 15:7, 60:16
**parallel** [4] - 81:23, 82:3, 110:17, 110:25
**part** [25] - 4:10, 13:9, 13:11, 25:11, 33:1, 33:12, 41:6, 43:11, 53:22, 54:25, 60:25, 66:19, 74:18, 74:21, 91:22, 92:17, 92:18, 99:17, 104:12, 105:23, 107:18, 117:4, 117:11, 117:15, 118:11
**participate** [1] - 104:17
**participating** [1] - 108:4
**particular** [15] - 5:24, 17:5, 20:22, 39:12, 44:2, 51:7, 52:5, 69:16, 83:18, 91:7, 95:12, 95:24, 99:6
**particularity** [1] - 73:15
**particularization** [1] - 63:19
**particularly** [2] - 52:6, 106:20
**particulars** [4] - 9:25, 63:17, 63:25, 64:9
**parties** [2] - 3:5,

117:12
**partly** [2] - 116:16, 116:17
**partner** [1] - 3:12
**pass** [1] - 80:3
**passed** [6] - 73:2, 77:2, 78:8, 78:9, 80:18, 86:14, 94:1
**passing** [2] - 8:11, 93:10
**passive** [1] - 18:2
**patience** [1] - 7:2
**pattern** [2] - 59:25, 110:11
**Paula** [2] - 2:1, 3:13
**paying** [1] - 105:23
**payment** [3] - 107:8, 107:14, 112:12
**payments** [3] - 112:5, 112:8, 112:9
**penal** [1] - 86:12
**pending** [2] - 78:10, 118:16
**Pennsylvania** [1] - 1:18
**people** [11] - 4:19, 20:9, 22:1, 50:22, 67:4, 94:18, 94:19, 94:21, 94:23, 112:18, 115:18
**perhaps** [4] - 91:16, 98:22, 104:7, 106:21
**period** [7] - 56:17, 57:9, 57:10, 62:7, 62:16, 63:4, 63:5
**permissible** [3] - 6:15, 43:19, 43:20
**permit** [3] - 15:8, 34:9, 115:1
**permitted** [1] - 84:24
**permitting** [1] - 60:18
**person** [9] - 28:20, 36:6, 36:7, 46:7, 70:12, 84:18, 85:8, 85:14, 108:20
**person's** [1] - 17:25
**personal** [2] - 100:10, 105:24
**perspective** [3] - 102:14, 110:10, 116:21
**persuasive** [1] - 6:7
**phrase** [6] - 69:4, 74:12, 75:16, 75:17, 76:22, 92:19
**pick** [1] - 58:14
**pjunghans@ zuckerman.com** [1] - 2:5
**place** [2] - 87:17,

101:17
**placed** [1] - 73:8
**plain** [4] - 65:20, 83:5, 90:15, 91:4
**plainly** [1] - 114:12
**Plaintiff** [2] - 1:4, 1:12
**plan** [10] - 4:16, 100:22, 100:24, 104:17, 105:24, 108:8, 113:14, 113:17, 113:20, 114:3
**plans** [1] - 108:4
**play** [1] - 79:15
**pleading** [4] - 102:8, 102:9, 102:12, 104:1
**pleadings** [6] - 5:2, 5:9, 5:23, 12:8, 61:2, 104:11
**pleasure** [1] - 6:4
**pled** [1] - 109:19
**plenty** [2] - 5:12, 60:23
**point** [34] - 3:25, 12:8, 12:23, 19:8, 19:11, 30:9, 35:3, 39:23, 40:1, 46:19, 48:8, 50:3, 50:20, 51:6, 52:21, 57:6, 57:7, 61:9, 61:10, 66:24, 84:5, 85:1, 91:15, 93:15, 97:6, 99:12, 101:10, 102:7, 102:18, 103:15, 103:18, 106:5, 106:8, 109:4
**pointed** [2] - 20:13, 119:3
**pointing** [2] - 55:3, 92:11
**points** [1] - 49:17
**policies** [1] - 111:9
**policy** [1] - 81:20
**political** [1] - 94:19
**portion** [5] - 25:19, 29:22, 40:13, 46:4, 62:21
**portions** [3] - 12:1, 34:8, 59:2
**posit** [1] - 30:10
**position** [8] - 9:17, 52:19, 56:13, 66:12, 103:2, 103:9, 105:19, 114:18
**positions** [1] - 72:5
**possible** [2] - 41:17, 64:4
**possibly** [4] - 12:4, 60:16, 80:4, 115:1
**postconviction** [1] - 23:10

**potential** [5] - 70:10, 77:5, 77:18, 85:21, 111:14
**potentially** [2] - 64:10, 117:15
**Pratt** [1] - 1:22
**precedent** [3] - 56:1, 57:23, 58:1
**precisely** [1] - 117:2
**precluding** [1] - 61:8
**predicate** [2] - 7:5, 71:6
**predicated** [1] - 65:25
**prejudice** [1] - 118:23
**prejudicial** [4] - 111:14, 114:12, 118:7, 118:20
**premature** [2] - 23:21, 23:24
**premise** [1] - 48:19
**prescribed** [1] - 89:20
**present** [4] - 3:3, 65:10, 77:12, 92:10
**presentation** [2] - 5:4, 66:6
**presented** [4] - 23:20, 27:3, 46:20, 46:21
**presenting** [1] - 27:4
**presently** [1] - 78:10
**presents** [1] - 24:1
**press** [5] - 7:1, 7:2, 14:5, 107:20, 107:24
**pressure** [2] - 109:12, 110:1
**pressured** [1] - 109:18
**presumed** [1] - 5:13
**pretrial** [2] - 119:8, 119:12
**pretty** [4] - 79:6, 82:3, 115:22, 119:14
**prevail** [1] - 69:7
**prevent** [1] - 35:15
**previously** [1] - 4:5
**primary** [1] - 12:15
**principal** [6] - 46:4, 46:7, 48:7, 50:15, 68:6, 68:8
**principally** [1] - 14:25
**principle** [7] - 8:19, 16:12, 20:25, 24:9, 46:1, 57:13
**principles** [3] - 40:17, 61:24, 99:7
**privilege** [1] - 6:4
**privileged** [1] - 6:2
**probable** [1] - 104:9
**probative** [7] - 103:10, 103:14, 103:15, 103:21, 105:12, 111:10, 111:15

**problem** [7] - 4:19, 9:22, 33:5, 33:7, 50:21, 52:22, 77:16
**procedural** [1] - 89:6
**procedure** [1] - 69:7
**Procedure** [1] - 69:10
**Procedures** [3] - 88:16, 88:22, 88:24
**proceed** [2] - 4:16, 8:4
**proceeding** [2] - 69:17, 99:6
**proceedings** [2] - 88:21, 120:8
**process** [5] - 44:20, 46:11, 49:6, 52:22, 91:22
**proffered** [1] - 13:13
**programs** [1] - 62:3
**prohibited** [1] - 93:17
**prohibition** [1] - 66:18
**prohibits** [4] - 10:4, 14:25, 27:9, 59:23
**promulgated** [1] - 81:12
**prong..** [1] - 28:18
**proof** [3] - 7:15, 115:9, 117:15
**propaganda** [3] - 75:1, 75:5, 101:18
**propensity** [1] - 110:12
**proper** [1] - 20:19
**propose** [1] - 63:1
**proposed** [1] - 78:8
**proposition** [8] - 5:13, 5:17, 7:5, 21:21, 43:25, 51:21, 58:11, 88:7
**prosecute** [4] - 10:1, 18:18, 25:23, 60:6
**prosecuted** [3] - 17:1, 50:23, 96:24
**prosecution** [1] - 95:20
**prosecutor** [1] - 100:4
**protect** [2] - 35:14, 37:9
**prove** [9] - 5:1, 22:18, 38:4, 55:14, 100:17, 103:16, 108:16, 109:1, 109:4
**proved** [1] - 5:19
**provide** [22] - 19:12, 25:18, 40:8, 41:9, 42:8, 42:15, 42:17, 45:14, 45:23, 45:25, 46:8, 46:17, 47:3, 48:6, 50:6, 50:11, 66:6, 68:3, 75:3, 77:25, 78:16, 99:24

**provided** [4] - 14:11, 32:20, 42:2, 70:9
**provides** [4] - 43:21, 45:22, 45:24, 48:20
**providing** [3] - 43:11, 94:21, 105:21
**provision** [29] - 27:16, 27:20, 48:20, 65:8, 66:20, 69:16, 71:17, 73:16, 74:25, 76:17, 78:18, 79:8, 88:10, 90:5, 90:7, 91:6, 93:3, 93:18, 93:21, 93:24, 94:2, 94:3, 94:13, 94:15, 95:10, 95:13, 95:14, 97:3, 99:13
**provisions** [47] - 27:19, 27:25, 28:23, 30:5, 31:9, 33:4, 42:8, 66:17, 67:17, 67:19, 67:25, 68:24, 69:2, 69:4, 69:13, 69:21, 69:24, 70:14, 72:14, 72:16, 73:7, 80:21, 81:5, 82:17, 83:6, 85:23, 87:15, 88:2, 88:3, 89:6, 89:7, 89:22, 91:6, 92:3, 92:6, 92:7, 92:9, 92:23, 93:6, 93:22, 94:2, 94:7, 95:15, 99:1, 99:12, 101:13
**pseudonym** [1] - 102:23
**public** [8] - 5:5, 14:6, 14:15, 22:8, 35:22, 41:13, 102:15
**publication** [1] - 110:21
**publicized** [1] - 102:10
**pure** [1] - 13:21
**purports** [1] - 7:21
**purpose** [10] - 11:12, 75:17, 84:23, 89:8, 94:9, 96:5, 102:11, 102:14, 102:24, 108:19
**purposes** [9] - 5:16, 7:9, 24:13, 60:4, 71:9, 108:12, 108:15, 108:17, 118:17
**pursuant** [7] - 67:14, 69:9, 87:21, 88:12, 89:5, 90:6, 95:15
**pursue** [1] - 94:24
**purview** [1] - 82:6

**put** [18] - 3:20, 3:23, 4:5, 4:9, 7:17, 9:24, 15:8, 16:19, 17:16, 24:23, 26:5, 33:9, 53:21, 54:5, 54:7, 80:9, 98:4, 111:22
**putting** [4] - 26:11, 44:1, 55:14, 73:22

**Q**

**quality** [1] - 119:5
**quarter** [1] - 103:25
**questions** [65] - 9:6, 12:23, 17:9, 17:11, 17:16, 17:17, 17:19, 17:20, 18:3, 19:13, 20:21, 20:24, 22:11, 22:13, 22:17, 22:21, 23:6, 23:13, 30:17, 33:1, 35:5, 36:11, 38:2, 41:5, 41:6, 41:16, 41:18, 41:21, 42:24, 44:2, 44:16, 46:12, 48:14, 48:16, 49:4, 50:9, 51:11, 51:12, 51:16, 51:25, 52:16, 52:18, 53:2, 53:4, 67:10, 67:12, 71:13, 85:13, 95:1, 96:3, 97:24, 100:14, 102:2, 104:5, 108:11, 113:7, 113:8, 113:10, 113:16, 114:23, 115:13, 115:17, 116:4, 116:7
**quickly** [1] - 3:17
**quite** [6] - 30:13, 63:17, 72:21, 107:3, 109:7, 111:11
**quote** [1] - 33:4
**quoting** [1] - 118:8

**R**

**raft** [2] - 68:1, 76:6
**raise** [2] - 111:23
**raised** [2] - 15:6, 34:2
**raises** [3] - 7:23, 101:11, 118:21
**rather** [1] - 10:2
**reach** [2] - 40:4, 62:5
**reached** [1] - 90:4
**reactive** [1] - 14:8
**read** [20] - 13:9, 24:16, 26:6, 31:11, 32:1, 39:10, 40:12, 58:17, 65:20, 76:10, 77:10, 77:11, 80:8, 81:24,

92:2, 92:6, 92:7, 99:2, 100:6, 104:1
**reading** [7] - 28:1, 45:18, 76:1, 79:3, 88:5, 99:6, 102:16
**reads** [1] - 94:15
**ready** [1] - 111:1
**real** [1] - 114:17
**realize** [2] - 44:25, 61:6
**really** [25] - 6:3, 20:25, 23:4, 34:1, 34:4, 34:16, 40:14, 71:15, 79:21, 95:14, 99:20, 102:7, 102:20, 105:10, 106:14, 107:24, 108:1, 108:17, 113:21, 114:14, 114:25, 117:13, 118:14
**reason** [14] - 24:24, 26:1, 43:6, 52:25, 64:5, 71:16, 77:9, 77:13, 85:19, 103:9, 104:18, 107:23, 108:16
**reasonable** [1] - 5:20
**reasoning** [1] - 13:10
**reasons** [12] - 37:12, 61:6, 61:7, 87:25, 95:22, 103:20, 103:22, 104:15, 105:18, 106:14, 107:10, 110:16
**recalling** [1] - 87:10
**receipt** [2] - 55:2, 91:19
**receive** [1] - 110:22
**received** [4] - 68:7, 108:7, 109:12, 113:13
**receives** [1] - 109:11
**recess** [1] - 87:8
**recognized** [1] - 20:18
**recollection** [1] - 117:13
**reconsideration** [1] - 33:15
**reconstruct** [1] - 12:4
**record** [9] - 3:6, 3:23, 4:5, 4:9, 23:11, 23:14, 23:22, 45:7, 64:4
**recurring** [1] - 56:17
**recusal** [1] - 4:10
**redact** [2] - 112:6, 112:17
**redacted** [1] - 112:19
**refer** [5] - 10:17, 31:5, 84:15, 89:11, 101:23

**reference** [4] - 67:21, 70:24, 72:4, 96:15
**referred** [5] - 10:15, 15:7, 74:22, 80:2, 101:19
**referring** [1] - 116:19
**refers** [14] - 15:16, 16:8, 26:5, 27:20, 29:13, 29:15, 31:17, 31:18, 31:19, 31:22, 33:2, 49:24, 66:21, 70:10
**refused** [1] - 113:17
**regarding** [2] - 20:24, 40:13
**regime** [2] - 51:7, 52:5
**register** [28] - 18:25, 35:14, 41:2, 41:17, 42:1, 42:3, 43:10, 46:5, 46:16, 48:10, 49:23, 50:17, 51:2, 51:3, 68:3, 70:12, 84:1, 89:25, 90:5, 90:6, 91:21, 91:25, 92:1, 94:10, 104:22, 105:17, 105:19, 108:21
**registrant** [5] - 50:4, 50:5, 74:24, 85:21
**registrants** [5] - 31:9, 42:15, 45:23, 77:19, 78:3
**registration** [49] - 27:17, 27:20, 28:6, 28:21, 29:16, 29:24, 30:1, 32:9, 32:12, 33:2, 43:11, 54:17, 70:20, 70:21, 70:22, 70:23, 72:6, 72:10, 73:12, 73:25, 74:3, 74:23, 75:9, 75:18, 75:23, 76:2, 76:9, 76:12, 80:13, 80:24, 81:25, 82:4, 82:14, 90:14, 90:17, 90:20, 91:2, 91:3, 92:18, 92:19, 92:24, 93:8, 93:9, 93:13, 94:11, 94:20, 95:25
**registrations** [3] - 29:6, 29:18, 67:24
**regulated** [1] - 85:23
**regulation** [8] - 20:19, 40:16, 43:20, 44:7, 70:7, 82:12, 89:12, 94:4
**regulations** [5] - 18:15, 70:16, 70:17, 77:1, 82:11
**regulatory** [1] - 44:17

**reinforce** [1] - 115:4
**reject** [1] - 13:12
**rejected** [1] - 84:6
**rejection** [1] - 107:5
**relate** [3] - 6:20, 102:7, 112:5
**related** [3] - 64:4, 71:13, 87:15
**relates** [2] - 113:2, 114:22
**relating** [1] - 113:14
**relations** [3] - 35:22, 41:13, 108:14
**relationship** [6] - 18:14, 22:1, 23:4, 54:8, 84:21, 87:19
**relative** [6] - 18:14, 102:8, 106:23, 107:16, 109:9, 110:18
**release** [1] - 22:5
**relevance** [3] - 105:2, 111:22, 118:19
**relevant** [13] - 16:25, 29:1, 56:5, 103:10, 104:25, 105:12, 112:10, 114:7, 116:19, 117:11, 117:20
**relied** [2] - 85:3, 85:6
**relief** [1] - 118:21
**rely** [2] - 73:19, 106:8
**relying** [3] - 54:23, 54:25, 114:13
**remain** [1] - 34:12
**remember** [3] - 18:7, 70:8, 117:14
**reminded** [1] - 87:4
**remnants** [1] - 34:9
**removed** [1] - 75:8
**repeated** [2] - 116:21, 117:18
**repeatedly** [1] - 40:22
**repeating** [2] - 99:19, 115:11
**repetition** [1] - 74:4
**reply** [4] - 9:24, 35:2, 37:18, 91:11
**report** [14] - 14:6, 14:11, 14:14, 19:5, 22:6, 22:8, 36:7, 36:8, 41:12, 77:14, 105:23, 105:25, 108:13, 117:2
**Reporter** [3] - 2:7, 2:7, 120:13
**reporter** [1] - 86:25
**REPORTER** [2] - 87:2, 120:2
**reporters** [1] - 14:14

**representation** [1] - 19:2
**representations** [1] - 45:8
**representative** [2] - 3:16, 71:3
**represented** [1] - 113:5
**reputational** [1] - 105:25
**request** [6] - 14:12, 55:2, 66:8, 104:24, 105:9, 105:14
**requested** [5] - 35:16, 45:6, 48:2, 48:11, 66:4
**requesting** [2] - 45:4, 45:16
**require** [6] - 46:17, 49:23, 78:1, 84:1, 88:4, 101:20
**required** [65] - 28:10, 28:14, 28:17, 29:2, 29:4, 29:5, 29:14, 31:4, 31:6, 31:7, 31:11, 31:15, 31:23, 32:3, 32:6, 32:16, 32:19, 32:24, 35:14, 45:14, 46:6, 46:14, 48:5, 49:25, 50:1, 50:17, 50:19, 51:13, 62:5, 67:18, 67:24, 68:18, 70:17, 71:23, 72:3, 72:7, 72:9, 72:13, 72:21, 73:12, 73:15, 75:7, 76:13, 76:14, 76:16, 78:14, 80:16, 82:5, 82:13, 87:21, 87:24, 88:1, 92:8, 92:14, 92:17, 93:11, 93:16, 93:19, 94:10, 94:20, 94:23, 95:15, 101:20, 119:15
**requirement** [5] - 27:13, 82:14, 93:8, 101:11, 101:14
**requirements** [6] - 8:21, 50:3, 62:6, 73:11, 84:13, 84:14
**requires** [10] - 4:10, 5:16, 13:24, 20:19, 25:18, 42:14, 44:15, 64:15, 85:16, 98:4
**requiring** [1] - 24:4
**resemblances** [1] - 69:18
**reservation** [1] - 21:25
**resolution** [1] - 7:15
**resolve** [1] - 4:16

**resort** [1] - 80:2
**resourcefully** [1] - 39:2
**respect** [8] - 6:24, 7:13, 16:14, 23:5, 32:4, 52:18, 99:1, 115:19
**respectfully** [7] - 23:23, 24:8, 31:24, 52:20, 52:23, 56:2, 60:24
**respond** [5] - 70:13, 70:15, 77:8, 116:23
**responded** [3] - 41:18, 42:24, 100:11
**responding** [5] - 12:21, 20:23, 44:2, 51:16, 52:11
**responds** [1] - 20:21
**response** [15] - 14:12, 18:10, 34:23, 36:10, 53:21, 67:8, 67:12, 78:14, 78:15, 90:3, 90:8, 90:10, 102:25, 108:10
**responsibilities** [1] - 21:2
**responsibility** [1] - 116:24
**responsible** [1] - 53:13
**responsive** [8] - 21:8, 21:12, 22:17, 22:20, 41:20, 52:16, 71:18, 113:10
**restarted** [1] - 107:8
**restoration** [1] - 81:13
**return** [3] - 97:22, 97:25, 98:1
**returns** [1] - 97:19
**revealing** [1] - 107:3
**reveals** [2] - 105:22, 105:23
**Revenue** [1] - 97:21
**reversal** [2] - 108:6, 109:14
**reverses** [1] - 21:20
**reviewed** [1] - 77:14
**Rezaq** [2] - 117:25, 118:8
**REZAQ** [1] - 117:25
**Richard** [1] - 81:11
**rife** [1] - 83:9
**rise** [4] - 25:25, 52:8, 52:10, 95:10
**risen** [1] - 49:12
**RMR** [2] - 2:7, 120:13
**role** [5] - 17:14, 23:5, 113:14, 113:15, 114:2

**rollout** [2] - 17:15, 98:22
**Room** [2] - 2:8, 120:14
**room** [2] - 114:16, 118:22
**rubric** [2] - 69:17, 89:8
**rule** [18] - 33:11, 78:25, 79:5, 79:11, 79:16, 79:21, 83:5, 85:25, 86:6, 89:17, 92:4, 99:16, 99:17, 104:5, 111:1, 113:1, 117:23, 119:8
**Rule** [5] - 64:15, 101:2, 102:2, 103:3, 111:16
**rule(7)(d** [1] - 118:10
**ruled** [1] - 114:9
**ruling** [1] - 23:10
**run** [9] - 55:9, 55:11, 58:3, 58:15, 58:16, 59:5, 60:8, 61:20, 62:24
**runs** [1] - 62:21

## S

**safavian** [1] - 23:3
**Safavian** [61] - 6:9, 8:17, 10:18, 11:6, 12:18, 13:2, 13:3, 13:11, 14:22, 15:8, 16:12, 17:16, 17:21, 18:5, 18:13, 18:18, 20:1, 20:6, 20:25, 21:20, 23:1, 23:6, 23:7, 23:10, 24:7, 25:1, 25:13, 25:18, 27:13, 34:9, 34:14, 36:23, 37:5, 37:6, 37:7, 37:10, 37:17, 37:18, 40:12, 40:20, 42:7, 42:23, 43:1, 43:6, 44:6, 46:21, 47:8, 50:21, 51:10, 51:25, 52:25, 54:3, 54:4, 54:7, 60:18, 61:3, 84:5, 84:18, 85:15, 85:17, 95:10
**SANCHEZ** [23] - 3:7, 4:12, 63:22, 63:24, 64:22, 104:10, 105:7, 106:6, 106:13, 107:23, 109:6, 109:23, 109:25, 110:4, 110:6, 110:9, 111:3, 112:2, 112:4, 112:16, 116:16, 117:6, 117:9

**Sanchez** [2] - 1:12, 3:9

**sanchez@usdoj.gov** [1] - 1:16

**sanction** [1] - 86:13

**sanctions** [1] - 10:7

**Santos** [2] - 79:6, 79:20

**satisfied** [1] - 59:16

**satisfies** [1] - 59:19

**saves** [1] - 34:5

**saw** [2] - 102:14, 102:23

**schedule** [2] - 119:6, 119:13

**SCHEDULING** [2] - 1:4, 1:8

**scheme** [68] - 9:24, 10:1, 10:9, 10:13, 10:23, 11:6, 11:18, 12:6, 13:19, 15:1, 15:2, 24:20, 25:3, 25:4, 25:8, 25:11, 25:12, 36:16, 36:17, 36:20, 36:22, 37:20, 38:24, 44:15, 47:2, 47:10, 47:13, 47:16, 47:18, 47:22, 47:23, 53:22, 55:1, 55:15, 55:24, 55:25, 56:4, 56:21, 57:8, 57:9, 58:2, 58:3, 58:15, 58:22, 59:8, 59:10, 59:11, 61:20, 61:22, 62:13, 62:23, 63:4, 71:14, 83:14, 84:17, 88:13, 89:12, 95:8, 96:13, 96:24, 112:12, 117:4

**schemes** [3] - 14:25, 55:16

**scope** [4] - 81:1, 82:3, 93:17, 118:2

**Scotland** [1] - 84:23

**SEC** [3] - 48:23, 49:7, 85:12

**Second** [1] - 20:15

**second** [9] - 3:21, 19:4, 22:4, 25:19, 28:18, 63:17, 65:25, 79:14, 99:22

**secret** [1] - 4:4

**secretary** [1] - 76:19

**Secretary** [1] - 81:6

**Section** [26] - 6:24, 7:6, 10:2, 12:15, 16:7, 25:17, 27:14, 39:3, 69:10, 69:13, 69:15, 70:24, 70:25, 71:19, 74:24, 75:11,

76:15, 76:17, 77:10, 80:14, 95:22, 95:24, 96:20, 99:10, 99:12

**section** [5] - 10:7, 28:3, 32:23, 46:3, 101:15

**sections** [1] - 99:8

**secure** [1] - 94:10

**securities** [3] - 32:20, 84:12, 84:13

**Security** [1] - 48:6

**see** [19] - 15:10, 20:22, 26:13, 26:17, 26:19, 32:1, 37:21, 73:21, 75:25, 79:25, 80:9, 80:17, 92:10, 103:5, 108:22, 108:23, 111:24, 115:21, 119:7

**seek** [1] - 82:17

**seem** [2] - 42:22, 54:24

**selection** [1] - 56:16

**senators** [1] - 78:11

**send** [6] - 77:24, 78:1, 78:13, 86:13, 97:22, 99:14

**sends** [2] - 107:4, 109:14

**sense** [4] - 50:7, 72:5, 73:1, 73:4

**sensible** [1] - 60:5

**sent** [8] - 18:23, 22:4, 52:3, 66:8, 70:3, 70:11, 99:11, 107:6

**sentence** [1] - 33:2

**separate** [5] - 10:21, 78:10, 90:25, 114:9

**September** [4] - 41:24, 46:15, 48:10, 109:13

**series** [4] - 36:17, 74:2, 74:18, 74:21

**serious** [1] - 33:15

**serve** [1] - 102:11

**served** [2] - 78:1, 102:23

**Service** [1] - 97:21

**set** [7] - 20:25, 41:4, 42:14, 114:23, 115:13, 115:14, 116:4

**seven** [1] - 17:9

**Seventh** [2] - 55:21, 57:20

**several** [2] - 12:8, 87:25

**shape** [1] - 77:1

**sharp** [1] - 5:23

**shed** [1] - 107:21

**showed** [1] - 60:18

**showing** [1] - 108:17

**shows** [2] - 45:8, 116:19

**sic** [1] - 112:12

**side** [3] - 6:6, 53:23, 64:19

**sides** [1] - 3:17

**sideshow** [1] - 106:11

**sidetracked** [2] - 85:25, 86:3

**sign** [1] - 82:21

**signed** [1] - 101:21

**significant** [2] - 41:24, 64:25

**silence** [3] - 18:3, 18:8, 18:10

**similar** [6] - 44:6, 62:9, 69:18, 69:21, 99:7, 113:23

**similarity** [1] - 109:7

**simple** [1] - 73:10

**simply** [1] - 11:21

**Singhal** [2] - 8:24, 24:7

**single** [6] - 55:15, 55:24, 58:2, 62:12, 78:16, 80:24

**sit** [1] - 61:14

**sitting** [2] - 21:2, 53:10

**situation** [5] - 18:20, 23:9, 42:6, 42:23, 97:16

**situations** [1] - 79:2

**six** [2] - 78:10, 100:3

**Skadden** [6] - 56:12, 66:7, 106:24, 107:6, 113:6, 113:13

**skip** [1] - 11:24

**small** [1] - 3:16

**smart** [1] - 6:3

**so-called** [2] - 17:15, 35:10

**social** [1] - 4:6

**sociis** [1] - 80:11

**solely** [1] - 14:8

**someone** [13] - 10:7, 16:21, 23:18, 45:24, 69:5, 70:11, 75:1, 79:3, 82:21, 83:17, 94:2, 100:22, 100:24

**sometimes** [2] - 20:4, 62:5

**sorry** [6] - 37:25, 68:10, 78:24, 83:1, 96:17

**sort** [7] - 5:3, 8:21, 36:13, 43:21, 44:5, 49:5, 49:10

**sorts** [3] - 84:12, 91:8,

111:9

**sought** [1] - 118:21

**source** [5] - 18:12, 25:1, 45:19, 47:25, 50:21

**sources** [2] - 12:14

**SPAEDER** [2] - 1:22, 2:2

**speaking** [3] - 5:7, 16:20, 16:21

**Special** [8] - 54:23, 113:4, 113:12, 113:23, 115:2, 116:13, 116:22, 117:3

**special** [3] - 46:22, 60:15, 63:8

**specialized** [3] - 65:8, 71:22, 74:25

**specific** [63] - 8:20, 11:10, 17:2, 17:9, 17:11, 19:4, 19:6, 19:10, 19:18, 20:20, 20:21, 20:23, 20:24, 21:3, 21:22, 22:4, 23:6, 23:15, 24:3, 24:4, 27:13, 36:24, 41:4, 41:10, 41:16, 41:18, 45:4, 45:10, 45:15, 45:23, 46:8, 46:13, 48:20, 51:1, 51:7, 54:15, 54:16, 54:18, 60:20, 64:23, 67:7, 71:13, 75:13, 76:14, 84:13, 84:14, 84:23, 85:15, 88:10, 90:5, 93:24, 96:1, 97:2, 98:11, 99:5, 99:13, 103:15

**specifically** [12] - 9:19, 15:13, 17:4, 22:10, 41:20, 43:1, 51:22, 54:9, 64:2, 74:11, 85:6, 87:14

**specifications** [3] - 11:7, 36:24, 46:21

**specificity** [1] - 51:9

**specifics** [1] - 63:8

**specify** [1] - 44:13

**speechifying** [1] - 5:8

**spends** [2] - 24:24, 39:5

**spoken** [1] - 64:8

**square** [2] - 29:23, 31:2

**squarely** [1] - 90:9

**St** [1] - 10:19

**stand** [1] - 88:7

**standalone** [1] - 47:21

**standard** [2] - 79:4,

115:22

**stands** [1] - 52:25

**start** [10] - 4:21, 5:5, 5:12, 5:17, 6:8, 13:13, 42:22, 55:11, 65:4, 65:17

**started** [1] - 14:3

**starting** [1] - 7:8

**starts** [5] - 58:2, 58:14, 58:16, 60:8, 74:4

**State** [1] - 81:7

**state** [4] - 9:20, 68:3, 76:19, 100:4

**statement** [104] - 10:2, 10:5, 11:6, 13:18, 14:5, 14:7, 14:11, 15:3, 15:4, 15:5, 15:12, 15:20, 16:1, 27:16, 27:17, 28:6, 28:9, 28:21, 28:24, 29:24, 31:20, 32:8, 32:9, 32:12, 33:2, 33:21, 36:25, 37:1, 37:8, 37:12, 37:13, 37:19, 38:4, 38:14, 47:5, 47:7, 47:13, 47:15, 47:17, 47:20, 47:21, 57:8, 59:9, 59:11, 59:13, 60:20, 61:21, 62:25, 63:3, 65:8, 68:6, 68:7, 70:20, 70:21, 70:22, 70:24, 71:19, 72:10, 73:13, 74:1, 74:3, 74:23, 74:24, 75:4, 75:7, 75:10, 75:18, 75:19, 75:23, 76:2, 76:9, 76:12, 76:16, 76:19, 80:22, 81:25, 90:14, 90:20, 91:3, 92:18, 92:19, 92:24, 93:3, 93:9, 93:10, 93:12, 93:13, 94:13, 94:15, 94:21, 95:13, 95:14, 101:16, 101:17, 101:21

**statements** [56] - 10:24, 11:10, 11:12, 11:22, 15:18, 15:23, 16:14, 19:20, 25:5, 27:21, 28:16, 29:6, 29:10, 29:18, 30:1, 31:22, 32:11, 32:18, 34:5, 35:24, 36:18, 40:10, 47:9, 47:23, 48:19, 57:3, 57:6, 60:11, 60:19, 65:24, 67:24, 72:3, 72:6, 73:3, 73:17, 80:13,

80:15, 82:5, 83:10,
90:17, 95:18, 96:9,
96:14, 96:15, 96:16,
96:18, 96:24,
101:19, 108:18,
113:3, 113:22,
113:24, 116:13,
116:21
**STATES** [2] - 1:1, 1:10
**States** [16] - 1:3, 2:8,
3:2, 3:9, 8:17, 10:18,
17:23, 20:22, 46:8,
62:10, 81:15, 87:11,
117:25, 118:3,
118:7, 118:12
**statute** [160] - 10:7,
16:8, 19:9, 20:19,
21:21, 24:4, 24:13,
24:16, 26:6, 27:7,
27:9, 28:1, 28:20,
29:1, 29:19, 30:11,
30:14, 30:19, 34:17,
39:3, 39:13, 39:15,
39:18, 40:16, 40:23,
41:2, 41:3, 41:7,
41:17, 42:7, 42:8,
42:19, 43:20, 44:7,
44:13, 45:5, 45:12,
45:13, 45:14, 45:19,
45:21, 45:22, 45:24,
46:13, 46:17, 48:11,
49:1, 49:4, 49:14,
50:18, 51:1, 53:9,
54:19, 54:24, 55:6,
55:9, 55:10, 55:24,
56:4, 56:6, 56:8,
56:9, 56:14, 56:15,
57:11, 57:14, 58:2,
58:14, 58:15, 59:5,
59:23, 59:24, 60:3,
60:6, 60:8, 61:17,
61:19, 62:16, 62:21,
62:24, 63:3, 63:5,
63:11, 65:9, 65:11,
65:13, 65:18, 65:19,
65:20, 66:1, 66:14,
67:22, 67:25, 68:10,
69:4, 70:5, 71:16,
71:22, 73:2, 73:8,
73:9, 73:10, 74:10,
74:22, 75:8, 75:9,
76:1, 76:18, 76:21,
76:25, 77:3, 78:23,
80:6, 80:14, 80:20,
80:21, 81:1, 81:12,
81:13, 82:17, 82:20,
83:5, 83:21, 83:22,
83:25, 84:3, 85:14,
85:16, 85:20, 86:9,
86:10, 86:11, 86:12,
86:14, 86:19, 87:22,

87:24, 88:11, 90:9,
90:15, 90:23, 92:10,
93:1, 94:11, 94:18,
95:19, 97:1, 97:17,
98:4, 98:5, 114:14
**statutes** [3] - 81:23,
82:2, 82:6
**statutory** [20] - 20:12,
33:10, 44:1, 44:15,
51:7, 52:5, 65:15,
70:17, 71:14, 73:20,
82:7, 83:14, 83:24,
84:17, 84:23, 88:10,
89:8, 95:8, 97:2
**stay** [1] - 38:23
**stenograph** [1] -
120:7
**Step** [1] - 106:9
**step** [3] - 86:4, 104:23,
105:2
**Stewart** [5] - 20:14,
20:22, 43:25, 44:8,
44:9
**sticky** [1] - 111:5
**still** [12] - 16:11,
33:21, 45:19, 81:10,
81:23, 82:9, 84:9,
105:1, 105:17,
107:6, 108:22, 109:3
**story** [1] - 52:15
**straightforward** [2] -
65:15, 119:14
**stray** [1] - 113:2
**Street** [3] - 1:14, 1:22,
2:2
**strengthening** [1] -
81:5
**stricken** [2] - 12:3,
114:11
**strictly** [1] - 118:10
**strike** [9] - 11:20,
34:7, 112:20, 114:5,
114:16, 115:22,
117:23, 118:5,
118:24
**strikes** [2] - 28:2,
37:11
**striking** [2] - 61:4,
118:11
**struck** [4] - 13:3,
16:13, 25:12, 34:8
**structure** [5] - 20:12,
50:11, 82:7, 83:24,
93:1
**structured** [4] - 69:15,
70:2, 70:6, 73:4
**stuck** [1] - 105:19
**subchapter** [19] -
27:20, 27:25, 28:23,
30:5, 66:17, 67:18,

67:19, 69:3, 72:15,
83:6, 91:7, 91:17,
92:3, 92:6, 92:7,
92:14, 94:3, 95:16,
99:13
**subclause** [1] - 28:4
**subject** [3] - 51:22,
51:24, 88:17
**submissions** [1] -
96:21
**submitted** [6] - 33:3,
87:19, 87:21, 91:22,
106:20
**subparagraph** [1] -
73:6
**subparts** [3] - 68:2,
76:15
**subsequent** [1] -
117:17
**substantially** [1] -
65:10
**substantive** [2] - 94:2,
96:12
**sufficiency** [2] - 5:18,
38:10
**sufficient** [3] - 9:15,
37:14, 118:18
**suggest** [2] - 49:5,
77:10
**suggests** [1] - 37:10
**Suite** [2] - 1:23, 2:3
**Summarize** [1] - 71:12
**summarize** [1] - 35:17
**summarizes** [1] -
100:3
**summarizing** [1] -
91:15
**summary** [2] - 64:16,
66:6
**Sunia** [4] - 55:20,
57:17, 58:4, 62:1
**supervisory** [1] -
81:18
**supplement** [23] -
27:18, 28:6, 28:21,
29:16, 31:20, 32:9,
32:12, 72:11, 73:25,
74:1, 74:3, 74:23,
75:10, 75:19, 75:24,
76:3, 76:9, 76:12,
80:13, 90:14, 90:20,
91:3, 92:20
**supplemental** [1] -
70:20
**supplements** [8] -
27:21, 29:6, 29:19,
29:24, 33:2, 67:24,
72:6, 90:17
**supplied** [1] - 118:18
**support** [3] - 63:20,

83:18, 95:20
**supports** [1] - 91:4
**suppose** [2] - 97:18,
102:13
**supposed** [11] - 7:15,
14:3, 16:24, 17:1,
34:22, 35:24, 36:4,
53:8, 54:6, 108:7,
119:7
**supposedly** [1] -
109:15
**Supreme** [7] - 65:16,
69:3, 69:11, 79:1,
79:17, 88:16, 89:9
**surplusage** [8] - 61:5,
75:24, 112:20,
114:21, 117:23,
118:11, 118:21
**sustain** [2] - 37:9,
39:6
**swept** [1] - 62:14
**sworn** [1] - 71:2

**T**

**talks** [4] - 12:16,
43:18, 82:12, 114:7
**targeted** [10] - 41:6,
41:20, 44:8, 44:9,
44:10, 45:22, 46:11,
46:12, 49:3, 51:16
**tawdry** [1] - 111:5
**tax** [2] - 97:22, 98:24
**taxpayer** [1] - 97:18
**TAYLOR** [134] - 3:11,
3:15, 6:11, 6:18,
6:20, 6:23, 7:1, 7:12,
7:18, 7:20, 8:3, 8:6,
8:9, 8:11, 8:14, 8:17,
9:8, 9:10, 9:13, 9:21,
10:12, 11:14, 11:17,
12:1, 12:25, 13:2,
13:8, 13:19, 13:23,
14:20, 14:23, 16:16,
16:18, 17:8, 18:6,
18:22, 19:3, 19:15,
19:23, 19:25, 21:5,
21:10, 22:11, 22:13,
22:15, 22:19, 23:1,
23:23, 24:15, 24:19,
24:22, 25:7, 25:10,
25:22, 26:3, 26:5,
26:10, 26:12, 26:14,
26:17, 26:19, 26:21,
26:24, 27:2, 27:8,
27:12, 28:2, 28:12,
28:19, 29:9, 29:13,
30:7, 30:9, 30:16,
30:21, 30:24, 31:4,
31:17, 31:21, 32:14,

33:7, 33:19, 33:25,
34:11, 35:4, 36:1,
36:3, 36:9, 36:13,
37:3, 37:7, 37:15,
37:17, 37:24, 38:16,
38:19, 39:15, 49:16,
49:19, 50:14, 51:11,
51:24, 52:2, 52:10,
52:13, 52:20, 52:23,
53:14, 53:16, 53:18,
53:20, 54:2, 54:7,
54:21, 55:8, 55:17,
56:2, 57:1, 57:12,
57:17, 57:20, 57:22,
57:24, 58:4, 58:7,
58:10, 58:12, 59:10,
59:15, 60:10, 60:14,
60:24, 61:11, 61:14
**Taylor** [8] - 1:21, 3:12,
6:11, 7:3, 49:12,
63:14, 72:1, 83:14
**taylor** [1] - 26:20
**team** [2] - 3:24, 102:3
**teams** [1] - 6:2
**tease** [1] - 92:25
**technical** [1] - 28:19
**TELEPHONE** [2] - 1:4,
1:8
**ten** [1] - 87:5
**ten-minute** [1] - 87:5
**tenant** [1] - 73:20
**tends** [1] - 103:15
**term** [2] - 66:15,
93:16, 93:19
**termination** [1] -
104:8
**terms** [7] - 20:5, 83:5,
90:22, 97:20, 105:5,
105:25, 112:11
**test** [5] - 38:9, 59:22,
79:4, 114:10
**testified** [2] - 70:9,
111:21
**testify** [1] - 116:8
**testimony** [7] - 35:8,
64:16, 109:24,
110:3, 111:17,
111:21, 115:2
**THE** [274] - 1:1, 1:1,
1:9, 1:13, 3:1, 3:10,
3:14, 3:16, 3:20,
3:21, 3:22, 4:1, 4:2,
4:13, 4:15, 6:16,
6:19, 6:22, 6:25, 7:3,
7:13, 7:19, 7:25, 8:4,
8:7, 8:10, 8:13, 8:15,
9:5, 9:9, 9:12, 9:17,
9:22, 11:5, 11:16,
11:23, 12:13, 13:1,
13:3, 13:9, 13:21,

14:1, 14:21, 16:9, 16:17, 17:4, 17:23, 18:21, 18:23, 19:4, 19:19, 19:24, 20:7, 21:6, 22:3, 22:12, 22:14, 22:16, 22:24, 23:9, 24:12, 24:16, 24:21, 25:2, 25:9, 25:21, 25:24, 26:4, 26:8, 26:11, 26:13, 26:16, 26:18, 26:20, 26:22, 27:1, 27:5, 27:11, 27:15, 28:4, 28:13, 29:7, 29:12, 29:15, 30:8, 30:15, 30:17, 30:22, 30:25, 31:14, 31:19, 32:4, 32:25, 33:9, 33:24, 34:10, 34:21, 35:23, 36:2, 36:4, 36:10, 36:21, 37:6, 37:10, 37:16, 37:23, 38:1, 38:17, 39:9, 39:17, 39:22, 40:5, 41:22, 42:20, 43:24, 44:12, 44:22, 45:17, 46:19, 47:4, 47:25, 48:13, 49:11, 49:18, 50:8, 50:20, 51:20, 52:1, 52:3, 52:12, 52:14, 52:21, 53:6, 53:15, 53:17, 53:19, 53:24, 54:4, 54:19, 54:22, 55:13, 55:22, 56:25, 57:5, 57:13, 57:19, 57:21, 57:23, 57:25, 58:6, 58:8, 58:11, 59:8, 59:14, 60:9, 60:13, 60:21, 61:1, 61:13, 61:16, 61:23, 62:18, 63:6, 63:13, 63:23, 64:14, 64:24, 65:3, 65:6, 66:23, 67:1, 67:4, 67:17, 67:23, 68:11, 68:13, 68:15, 68:17, 68:21, 71:5, 71:9, 71:11, 72:9, 72:20, 73:21, 74:8, 74:15, 74:18, 74:20, 75:15, 75:25, 76:5, 76:8, 78:4, 78:21, 78:25, 79:14, 79:19, 80:6, 81:2, 82:23, 82:25, 83:3, 83:8, 83:13, 83:24, 85:1, 86:2, 86:16, 86:18, 86:21, 86:23, 86:25, 87:2, 87:3, 87:9, 87:10, 87:13, 89:13, 89:15, 91:4, 92:2, 92:12, 95:1,

95:7, 96:5, 96:20, 96:23, 97:5, 97:10, 97:14, 98:6, 98:10, 99:3, 99:19, 100:6, 100:16, 101:2, 101:6, 101:9, 102:1, 102:6, 102:18, 102:25, 103:23, 103:25, 104:4, 104:7, 105:1, 106:4, 106:7, 107:19, 109:3, 109:21, 109:24, 110:1, 110:5, 110:8, 111:1, 111:4, 112:3, 112:9, 112:17, 112:23, 114:5, 114:9, 115:4, 115:9, 115:16, 116:10, 116:12, 117:3, 117:8, 117:21
**theme** [2] - 8:22, 38:23
**themselves** [2] - 18:16, 96:7
**then-current** [1] - 113:6
**theory** [7] - 13:13, 19:21, 38:7, 38:22, 50:5, 106:10, 106:12
**therefore** [5] - 34:5, 35:11, 59:5, 111:16, 118:23
**therein** [21] - 28:3, 28:10, 28:14, 28:17, 29:3, 29:4, 29:11, 29:13, 31:5, 31:6, 31:15, 31:17, 31:19, 31:22, 32:3, 32:6, 32:11, 72:3, 72:4
**thereto** [17] - 27:18, 28:21, 29:16, 32:12, 72:11, 74:23, 75:10, 75:19, 75:24, 76:14, 80:13, 90:14, 90:17, 90:20, 90:22, 91:3, 92:20
**thereunder** [1] - 94:4
**therewith** [2] - 72:4, 90:22
**they've** [5] - 21:7, 22:16, 36:11, 89:9, 89:10
**thinking** [1] - 108:20
**third** [2] - 32:7, 90:25
**thirds** [2] - 24:24, 39:6
**three** [6] - 28:4, 28:8, 49:16, 74:11, 75:9, 75:13
**threshold** [4] - 9:11, 62:5, 79:24, 80:1

**tie** [2] - 19:18, 90:20
**timing** [3] - 107:2, 109:5
**tittle** [1] - 99:25
**today** [4] - 4:22, 5:11, 6:1, 66:10
**together** [4] - 3:25, 26:1, 26:22, 33:11
**tomorrow** [1] - 116:25
**tone** [1] - 5:25
**tools** [2] - 80:7, 80:8
**topic** [3] - 20:22, 20:24, 44:3
**totally** [3] - 71:4, 71:24, 82:6
**Toussie** [4] - 55:20, 58:17, 59:17, 62:19
**transcript** [2] - 120:6, 120:7
**TRANSCRIPT** [1] - 1:8
**transpiring** [1] - 33:17
**trial** [3] - 105:16, 114:19, 116:6
**trick** [6] - 10:23, 15:1, 15:2, 37:20, 59:10, 59:12
**tries** [1] - 39:2
**trigger** [1] - 44:10
**trip** [2] - 84:22, 84:24
**true** [13] - 5:18, 7:24, 10:4, 11:13, 13:3, 15:21, 16:4, 20:21, 25:7, 37:11, 115:10, 120:6, 120:7
**truth** [3] - 7:11, 15:14, 107:21
**truthful** [7] - 17:7, 36:6, 52:10, 66:12, 72:25, 77:18
**truthfully** [2] - 17:11, 100:2
**try** [7] - 6:18, 7:1, 25:23, 97:15, 105:15, 108:1, 119:13
**trying** [12] - 4:9, 24:25, 34:24, 38:17, 39:6, 40:13, 50:9, 57:15, 64:13, 67:5, 81:19, 86:12
**turn** [2] - 11:21, 87:25
**turned** [1] - 4:3
**turns** [2] - 4:19, 7:23
**two** [16] - 6:2, 10:21, 10:24, 12:14, 23:25, 24:24, 25:25, 39:6, 47:24, 55:8, 74:2, 79:7, 79:18, 116:25, 119:15
**two-thirds** [2] - 24:24,

39:6

# U

**U.S** [5] - 1:13, 1:17, 7:6, 10:2, 81:19
**U.S.C** [5] - 48:5, 62:2, 70:25, 71:19, 95:22
**Ukraine** [6] - 35:21, 42:3, 42:11, 104:16, 104:24, 106:1
**Ukraine's** [1] - 109:19
**ultimately** [3] - 9:15, 45:17, 109:10
**umbrella** [2] - 51:1, 52:4
**unanimous** [1] - 37:1
**unasked** [1] - 18:3
**uncharged** [1] - 49:9
**under** [116] - 10:1, 10:3, 13:20, 13:21, 13:23, 18:8, 19:21, 20:18, 24:6, 25:13, 27:19, 27:25, 28:22, 30:5, 32:15, 33:4, 34:8, 34:24, 35:2, 37:18, 40:23, 41:2, 41:8, 41:17, 42:8, 42:18, 43:10, 46:16, 47:13, 48:10, 50:1, 50:25, 52:4, 53:9, 61:19, 62:19, 65:7, 66:16, 67:5, 67:6, 67:7, 67:17, 67:18, 67:24, 68:1, 68:18, 69:2, 69:4, 69:6, 69:10, 69:11, 69:12, 69:13, 69:18, 69:21, 69:24, 70:1, 70:14, 71:2, 71:16, 72:14, 72:16, 74:24, 75:10, 75:19, 78:2, 81:15, 81:25, 82:5, 82:16, 83:6, 84:3, 84:13, 85:23, 87:15, 88:2, 88:3, 88:8, 88:15, 88:19, 89:2, 89:4, 89:10, 89:16, 89:21, 90:25, 91:6, 91:16, 91:21, 91:25, 92:2, 92:6, 92:7, 92:8, 92:14, 92:22, 93:5, 93:22, 94:6, 94:11, 94:20, 94:21, 97:16, 98:3, 99:1, 99:9, 99:11, 99:24, 101:13, 101:19, 101:25, 104:22, 107:6, 111:16, 119:2
**undercut** [1] - 110:2

**underlined** [1] - 31:16
**underlying** [2] - 5:10, 19:10
**underscore** [1] - 4:21
**understood** [4] - 64:22, 93:19, 94:6, 102:15
**unfortunately** [1] - 88:20
**Union** [1] - 10:19
**union** [1] - 22:2
**unique** [1] - 65:8
**unit** [50] - 15:24, 22:4, 40:25, 41:1, 41:5, 41:10, 41:15, 41:25, 42:5, 42:15, 42:18, 43:10, 43:14, 45:3, 45:8, 45:10, 45:15, 45:16, 46:8, 46:11, 46:16, 48:9, 48:12, 51:17, 66:5, 71:21, 77:23, 78:11, 85:22, 89:24, 90:4, 90:10, 91:20, 91:24, 92:1, 95:23, 96:2, 100:1, 105:20, 107:25, 108:19, 108:21, 113:8, 113:25, 114:1, 114:2, 114:3, 115:25
**unit's** [3] - 41:20, 51:18, 91:23
**UNITED** [2] - 1:1, 1:10
**United** [16] - 1:3, 2:8, 3:2, 3:9, 8:17, 10:18, 17:23, 20:22, 46:8, 62:10, 81:15, 87:11, 117:25, 118:3, 118:7, 118:12
**universe** [1] - 31:12
**unless** [7] - 17:2, 18:11, 18:17, 18:19, 54:15, 54:17, 97:6
**unlike** [1] - 40:21
**unmistakable** [1] - 10:13
**unshakeable** [1] - 5:13
**up** [24] - 8:5, 10:8, 11:13, 20:25, 24:25, 26:6, 26:24, 31:1, 33:11, 33:13, 34:1, 34:3, 39:13, 39:23, 57:8, 60:23, 63:7, 63:15, 77:12, 79:3, 84:20, 87:9, 98:7, 106:10
**upbraiding** [1] - 63:14
**uphold** [1] - 37:14
**upset** [1] - 107:5

urge [1] - 60:24
useful [1] - 26:7
uses [1] - 48:19

**V**

vague [1] - 86:9
vagueness [1] - 86:11
value [7] - 103:14, 103:15, 103:21, 106:1, 106:2, 106:15, 111:10
variance [2] - 64:10, 64:12
various [3] - 51:17, 70:17, 72:7
vary [1] - 111:9
Venable [1] - 3:25
verbs [1] - 5:22
verdict [11] - 23:14, 23:17, 37:2, 37:4, 38:9, 40:4, 46:22, 57:2, 60:15, 63:8, 63:9
verify [1] - 82:21
version [4] - 12:11, 26:9, 35:12, 73:9
versus [1] - 43:7
view [10] - 11:1, 11:20, 12:2, 14:24, 35:3, 39:23, 46:19, 91:15, 96:8, 113:2
violate [3] - 11:11, 13:17, 84:24
violated [2] - 95:19, 97:3
violates [1] - 94:3
violation [8] - 7:5, 15:4, 15:5, 15:11, 47:10, 47:11, 55:16, 59:3
violations [2] - 48:24, 96:7
virtually [1] - 10:15
volunteer [4] - 16:7, 17:20, 21:17, 54:13
Voorhis [9] - 81:10, 81:23, 81:25, 93:2, 93:4, 93:7, 93:10
vs [1] - 1:5

**W**

wait [2] - 31:1, 111:4
waiting [1] - 112:9
wake [1] - 55:4
walked [1] - 43:13
Walton [3] - 55:20, 60:4, 62:1
Walton's [2] - 58:5,
61:24
wants [2] - 53:4, 61:12
warrant [1] - 118:20
Washington [8] - 1:6, 1:15, 1:18, 2:3, 2:9, 120:15
washy [1] - 84:6
waste [1] - 111:14
ways [2] - 103:1, 110:11
weeks [1] - 79:18
well-intentioned [1] - 111:7
whatsoever [1] - 70:13
White [8] - 20:13, 20:17, 21:18, 21:19, 21:24, 43:25, 44:9, 54:12
white [1] - 91:14, 108:4
who'd [1] - 103:8
whole [10] - 7:10, 34:12, 42:14, 44:10, 67:14, 75:17, 76:6, 97:1, 97:2, 106:10
widely [1] - 111:8
wilfully [1] - 46:5
willful [2] - 15:4, 32:8
willfully [10] - 10:8, 28:9, 28:13, 28:14, 28:23, 29:2, 29:9, 32:5, 32:10, 94:3
William [2] - 1:20, 1:21
willing [7] - 88:10, 88:11, 88:24, 105:13, 106:17, 106:18
win [2] - 64:19, 64:20
wishy [1] - 84:6
wishy-washy [1] - 84:6
withheld [1] - 71:25
witness [1] - 117:16
witnesses [2] - 108:3, 116:8
wmurphy@zuckerman.com [1] - 1:24
wonder [1] - 102:20
wondering [1] - 14:21
Woodward [1] - 37:21
word [11] - 28:2, 28:3, 31:14, 31:17, 68:24, 68:25, 72:9, 74:4, 79:7, 80:12
words [11] - 31:4, 34:18, 65:17, 67:20, 67:21, 69:2, 69:9,
80:8, 80:9, 86:6, 87:16
works [4] - 65:19, 68:4, 79:16, 80:2
world [1] - 51:8
worry [1] - 60:23
worrying [1] - 112:19
writes [3] - 67:8, 67:12, 100:2
writing [5] - 38:21, 67:4, 83:4, 96:3, 108:24
writings [2] - 27:10, 30:12
written [7] - 10:6, 19:20, 34:23, 55:4, 96:21
wrongly [1] - 18:4
wrote [3] - 41:5, 41:25, 65:18
wtaylor@zuckerman.com [1] - 1:25

**Y**

Yashar [4] - 55:21, 57:17, 57:20, 58:13
years [7] - 86:15, 100:3, 113:9, 114:23, 115:6, 116:3, 117:18
yesterday [1] - 26:14
York [2] - 104:13, 108:9
young [1] - 103:7
yourself [2] - 3:6, 99:20

**Z**

ZUCKERMAN [2] - 1:22, 2:2
Zuckerman [1] - 3:24