```
 1              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
 2

 3   United States of America,      ) Criminal Action
                                    ) No. 19-CR-125
 4                    Plaintiff,    )
                                    ) JURY TRIAL - DAY 1
 5   vs.                            ) Morning Session
                                    )
 6   Gregory B. Craig,              ) Washington, DC
                                    ) August 12, 2019
 7                    Defendant.    ) Time:  9:30 a.m.
     _____
 8
            TRANSCRIPT OF JURY TRIAL - MORNING SESSION
 9                       HELD BEFORE
          THE HONORABLE JUDGE AMY BERMAN JACKSON
10                UNITED STATES DISTRICT JUDGE
     _____
11
                   A P P E A R A N C E S
12
     For Plaintiff:     Fernando Campoamor-Sanchez
13                      Molly Gulland Gaston
                        U.S. Attorney's Office FOR THE
14                        DISTRICT OF COLUMBIA
                        555 Fourth Street, NW
15                      Washington, DC 20530
                        (202) 252-7698
16                      Email: Fernando.campoamor-sanchez@usdoj.gov
                        Email: Molly.gaston@usdoj.gov
17                      Jason Bradley Adam McCullough
                        U.S. Department of Justice
18                      950 Pennsylvania Avenue, NW
                        Washington, DC 20530
19                      (202) 233-0986
                        Email: Jason.mccullough@usdoj.gov
20
     For Defendant:     William James Murphy
21                      William W. Taylor, III
                        Adam B. Abelson
22                      ZUCKERMAN SPAEDER, LLP
                        100 East Pratt Street
23                      Suite 2440
                        Baltimore, MD 21202
24                      (410) 949-1146
                        Email: Wmurphy@zuckerman.com
25                      Email: Wtaylor@zuckerman.com
                        Email: Aabelson@zuckerman.com
```

**Paula M. Junghans**
**Ezra B. Marcus**
ZUCKERMAN SPAEDER, LLP
1800 M Street, NW
Suite 1000
Washington, DC 20036
(202) 778-1814
Email: Pjunghans@zuckerman.com
Email: Emarcus@zuckerman.com

_____

Court Reporter:     Janice E. Dickman, RMR, CRR, CRC
                    Official Court Reporter
                    United States Courthouse, Room 6523
                    333 Constitution Avenue, NW
                    Washington, DC  20001
                    202-354-3267

```
 1            THE COURTROOM DEPUTY:  Your Honor, this morning we
 2     have Case Number 19-125, the United States of America v.
 3     Gregory B. Craig.  Mr. Craig is present and in the courtroom,
 4     Your Honor.
 5            Will counsel for the parties please approach the
 6     lectern and identify yourself for the record.
 7            MR. CAMPOAMOR-SANCHEZ:  Good morning, Your Honor.
 8            Molly Gaston, Jason McCullough, and Fernando
 9     Campoamor for the United States.  And also with us is our legal
10     specialist, Amanda Rohde.
11            THE COURT:  All right.  I will just say that you were
12     sufficiently far from the microphone, because that was hard to
13     hear.  So you're going to have to do better the next time you
14     speak in the microphone.
15            MR. CAMPOAMOR-SANCHEZ:  My apologies.
16            THE COURT:  All right.  Thank you.
17            MS. JUNGHANS:  Good morning, Your Honor.
18            Paula Junghans for the defendant, along with Bill
19     Taylor, Bill Murphy, Adam Abelson.  And, Your Honor, also
20     seated at counsel table, if the Court pleases, is Paul Jepsen,
21     who's going to assist us with jury selection.
22            THE COURT:  All right.
23            MS. JUNGHANS:  And I think Your Honor has been told
24     that Mr. Craig's family is the courtroom.
25            THE COURT:  All right.
```

1              MS. JUNGHANS:  And they are, from the far the right,

2     Will Craig; James Craig; Mrs. Craig, Derry Craig; and Margaret

3     Craig.

4              THE COURT:  All right.  During the trial, as I'm sure

5     Mr. Haley told you, you'll be seated inside the rows outside of

6     the well of the courtroom.  But we're going to have enough

7     jurors in here that there are not going to be any seats once

8     they get here.  So, if you want to watch jury selection, I've

9     put you there.

10             I'm going to get to bringing the jury in very

11    quickly.  I received the information I'd asked for about the

12    exhibits at a time that did not give me the opportunity to deal

13    with it.  I'm not chastising anybody for that.  I know you've

14    all been busy.  But the simple fact is, I haven't.  So I'm

15    going to have to provide you with the final list of which

16    exhibits are in and out later.

17             With respect to the -- how we're going to proceed

18    this morning, very shortly we will have all of the potential

19    members of the jury in the courtroom.  They will fill up the

20    entire courtroom.  It is for that reason that I will probably

21    need to exclude most of the people in the audience.  I will

22    read the instructions for how voir dire is going to proceed and

23    the voir dire questions to the entire panel.  And I've asked

24    that we have at least a few members of the press have some

25    seats, so that that which is a public matter can be heard

1    publicly, and there is a transcript being created.

2                    When we get to asking the jurors the individual

3    follow-up, which is ordinarily handled at the bench with the

4    husher on so that the public cannot hear it, instead of doing

5    that, we're going to have the jurors brought in individually,

6    sit in the witness chair, and just have the courtroom closed.

7    Because there's just too many of us who have to hear it to

8    stand up at the bench and hear it, and the husher is annoying

9    to everyone, including the jurors.

10                    So we'll be doing that, but that part of the trial

11   will not be public because it will, essentially, be a

12   substitute for individual bench conferences with up to 70-some

13   people.

14                    However, all of it will be transcribed, but we're not

15   going to have anyone watching to see which juror it is gave

16   which answer; it's just going to be by jury number in the

17   transcript.

18                    When they come in individually, I'm going to ask them

19   which questions they had an answer to, and then I will conduct

20   the initial follow-up.  I will then turn to each side and ask

21   if one lawyer from each side has any additional questions they

22   want to ask.  I am assuming that that is because you can be

23   focused and targeted and ask your questions about -- the voir

24   dire questions about which the jurors indicated they had a

25   positive answer.

1          To the extent these turn into argumentative,

2    conclusory, introductory, little opening statements or closing

3    arguments, then I will just take over and do it by myself.  But

4    I'm assuming it will be fine.

5          After the juror has been asked their questions, they

6    will be escorted out of the courtroom.  It is at that point,

7    between jurors, when they're not in here, that anyone who wants

8    to make a motion to strike for cause should make it.  Don't hop

9    up and do it while they're still in the box.  Sometimes I may

10   already know that it's about to be made, and I may make it

11   before you have to put it on the record yourself.  So -- but I

12   will wait to make sure that nobody has any objections for cause

13   before we bring in the next juror.

14         And that's how we're going to proceed.

15         Does anybody have anything else preliminary that they

16   need to bring up before we bring in the jury and get started?

17         MS. JUNGHANS:  I do, if I the Court please.

18         THE COURT:  All right.  And if you're holding a

19   newspaper, I'm aware that there have been articles over the

20   weekend --

21         MS. JUNGHANS:  Okay.

22         THE COURT:  -- and I'm going to make sure -- when we

23   ask if they have seen anything, I'm going to say, including

24   today.  And I'm also going to instruct the jurors not to read

25   anything today.

1          MS. JUNGHANS:  Okay.  All right.  Well, we just

2    wanted to draw your attention, and this is probably what you're

3    referring to, to a very prominent article in the *New York Times*

4    online addition yesterday, and then a somewhat marginally less

5    prominent repeat of the same article in the print edition this

6    morning, both of which mention several items of evidence have

7    been excluded from the trial.

8          So -- and I'm not suggesting that you ask a juror

9    specifically, have you read those articles?  I don't think

10   that's helpful.  But if a juror were to say he or she had read

11   press, I think it would be appropriate to go further and have

12   you ask, have you seen it recently, what have you seen,

13   etcetera.

14         THE COURT:  There will definitely be follow-up.  If

15   anyone says they've read or heard anything about the case,

16   we're going to ask them what they've read and heard.

17         MS. JUNGHANS:  Thank you, Your Honor.

18         THE COURT:  All right.  All right.

19         Mr. Haley, I think we should get the jurors.

20         (Pause.)

21         THE COURTROOM DEPUTY:  Ladies and gentlemen, if you

22   could leave the courtroom, please, and if you go towards the

23   elevators, because I need 50 feet to let them in.

24         THE COURT:  All right.  How many more members of the

25   press do we have back there?  Okay.  Why don't you sit up here.

```
 1    All right.  All right.  We can have as many in the front row --
 2              You're still going to leave when we do the individual
 3    voir dire.  But if you want to take -- all right.  That's --
 4    okay.  One more.  That's it.
 5              We had tried to get the media room working this
 6    morning, but there seems to be somebody necessary for that
 7    process who's not available.
 8              I think we have as much coverage as we can have.
 9              All right.  Now, I'm going to ask everybody, if
10    you're here, you're here.  Nobody jumps up and runs out.  No
11    comments.  No facial expressions.  No reactions.
12              Thank you.
13              (Pause.)
14              THE COURT:  Can I have one lawyer from each side just
15    come to the bench briefly.
16              (Bench discussion:)
17              THE COURT:  I've just been informed by Mr. Haley
18    that -- I think it's the fourth or fifth juror down, Juror
19    Number 0992 --
20              THE COURTROOM DEPUTY:  -92.
21              THE COURT:  -- indicated that she is breast feeding
22    and pumping and needs to take a break at 10:30 to do that.
23    Presumably, it's going to be an issue for tomorrow.
24              MS. JUNGHANS:  And the next day.
25              THE COURT:  Therefore, I would suggest that we either
```

1    just release her at this point or move her name to the bottom

2    of the list so that we may never reach her.

3              MS. JUNGHANS:  That's fine with us, Your Honor.

4              THE COURT:  Do you have a preference for which

5    approach to take?

6              MS. JUNGHANS:  I'm happy with releasing her.

7              MR. CAMPOAMOR-SANCHEZ:  Same here.  That's fine, Your

8    Honor.

9              THE COURT:  All right.  Yeah.

10             Mr. Haley, you don't have to bring her in.

11             THE COURTROOM DEPUTY:  I'll tell her she's released.

12             THE COURT:  Thank you, everybody.

13             (Open court:)

14             (Pause.)

15             THE COURT:  If a person puts down no numbers on their

16   index cards, to indicate that they have no affirmative answers

17   to any of the questions, I usually bring them in anyway, just

18   to make sure that that is because they had no affirmative

19   answers to the questions and not because they didn't understand

20   the exercise.  So I ask them that.

21             If either one of those people or one of the other

22   people comes in and they are someone who listed no occupation,

23   if you want to ask, Can you tell us where you're employed? you

24   can ask that question, even if it's not directly responsive to

25   one of the numbers that they wrote or didn't write.

```
1              (Pause.)

2              (Whereupon the prospective jurors enter the

3      courtroom.)

4              THE COURTROOM DEPUTY:  Ladies and gentlemen, as your

5      juror number is called, please stand and say, Here or Present,

6      so that the parties may see who you are.

7              Juror Number 0256.

8              PROSPECTIVE JUROR:  Here.

9              THE COURTROOM DEPUTY:  Thank you.

10             Juror Number 1127.

11             PROSPECTIVE JUROR:  Here.

12             THE COURTROOM DEPUTY:  Juror Number 0233.

13             PROSPECTIVE JUROR:  Here.

14             THE COURTROOM DEPUTY:  Juror Number 1014.

15             PROSPECTIVE JUROR:  Here.

16             THE COURTROOM DEPUTY:  Juror Number 0992.

17             (No response.)

18             THE COURTROOM DEPUTY:  Juror Number -- I'm sorry.

19     Juror Number 0112.

20             PROSPECTIVE JUROR:  Here.

21             THE COURTROOM DEPUTY:  Thank you, sir.

22             Juror Number 0557.

23             PROSPECTIVE JUROR:  Here.

24             THE COURTROOM DEPUTY:  Thank you.

25             Juror Number 0967.
```

```
 1                    PROSPECTIVE JUROR:  Here.
 2                    THE COURTROOM DEPUTY:  Juror Number 0997.
 3                    PROSPECTIVE JUROR:  Here.
 4                    THE COURTROOM DEPUTY:  Is there someone sitting next
 5        to you?
 6                    PROSPECTIVE JUROR:  Yes.
 7                    THE COURTROOM DEPUTY:  0109.
 8                    PROSPECTIVE JUROR:  Yes.
 9                    THE COURTROOM DEPUTY:  Just stand for a second.
10                    PROSPECTIVE JUROR:  Here.
11                    THE COURTROOM DEPUTY:  Line 8, Counsel.
12                    0658.
13                    PROSPECTIVE JUROR:  Here.
14                    THE COURTROOM DEPUTY:  0213.
15                    PROSPECTIVE JUROR:  Here.
16                    THE COURTROOM DEPUTY:  Juror Number 0385.
17                    PROSPECTIVE JUROR:  Here.
18                    THE COURTROOM DEPUTY:  Juror Number 0623.
19                    PROSPECTIVE JUROR:  Here.
20                    THE COURTROOM DEPUTY:  Juror Number 1286.
21                    PROSPECTIVE JUROR:  Here.
22                    THE COURTROOM DEPUTY:  Juror Number 0914.
23                    PROSPECTIVE JUROR:  Here.
24                    THE COURTROOM DEPUTY:  Juror Number 0113.
25                    PROSPECTIVE JUROR:  Here.
```

```
 1                    THE COURTROOM DEPUTY:  Juror Number 0727.
 2                    PROSPECTIVE JUROR:  Here.
 3                    THE COURTROOM DEPUTY:  Juror Number 0084.
 4                    PROSPECTIVE JUROR:  Here.
 5                    THE COURTROOM DEPUTY:  Juror Number 0345.
 6                    PROSPECTIVE JUROR:  Here.
 7                    THE COURTROOM DEPUTY:  Juror Number 1128.
 8                    PROSPECTIVE JUROR:  Here.
 9                    THE COURTROOM DEPUTY:  Juror Number 0157.
10                    PROSPECTIVE JUROR:  Here.
11                    THE COURTROOM DEPUTY:  Juror Number 0851?
12                    PROSPECTIVE JUROR:  Here.
13                    THE COURTROOM DEPUTY:  Juror Number 1227.
14                    PROSPECTIVE JUROR:  Here.
15                    THE COURTROOM DEPUTY:  Juror Number 0590.
16                    PROSPECTIVE JUROR:  Here.
17                    THE COURTROOM DEPUTY:  Juror Number 0817.
18                    PROSPECTIVE JUROR:  Here.
19                    THE COURTROOM DEPUTY:  Juror Number 0279.
20                    PROSPECTIVE JUROR:  Here.
21                    THE COURTROOM DEPUTY:  Juror Number 0517.
22                    PROSPECTIVE JUROR:  Here.
23                    THE COURTROOM DEPUTY:  Juror Number 0869.
24                    PROSPECTIVE JUROR:  Here.
25                    THE COURTROOM DEPUTY:  Juror Number 1266.
```

```
 1                    PROSPECTIVE JUROR:  Here.

 2                    THE COURTROOM DEPUTY:  Juror Number 0605.

 3                    PROSPECTIVE JUROR:  Here.

 4                    THE COURTROOM DEPUTY:  Juror Number 0077.

 5                    PROSPECTIVE JUROR:  Here.

 6                    THE COURTROOM DEPUTY:  Juror Number 0628.

 7                    PROSPECTIVE JUROR:  Here.

 8                    THE COURTROOM DEPUTY:  Juror Number 0145.

 9                    PROSPECTIVE JUROR:  Here.

10                    THE COURTROOM DEPUTY:  Juror Number 1142.

11                    PROSPECTIVE JUROR:  Here.

12                    THE COURTROOM DEPUTY:  On the other side, Juror

13     Number 0046.

14                    PROSPECTIVE JUROR:  Here.

15                    THE COURTROOM DEPUTY:  Juror Number 0936.

16                    PROSPECTIVE JUROR:  Here.

17                    THE COURTROOM DEPUTY:  Juror Number 0768.

18                    PROSPECTIVE JUROR:  Here.

19                    THE COURTROOM DEPUTY:  Juror Number 0905.

20                    PROSPECTIVE JUROR:  Here.

21                    THE COURTROOM DEPUTY:  Juror Number 0453.

22                    PROSPECTIVE JUROR:  Here.

23                    THE COURTROOM DEPUTY:  Juror Number 0419.

24                    PROSPECTIVE JUROR:  Here.

25                    THE COURTROOM DEPUTY:  Juror Number 0563.
```

```
 1                    PROSPECTIVE JUROR:  Here.

 2                    THE COURTROOM DEPUTY:  Juror Number 0843.

 3                    PROSPECTIVE JUROR:  Here.

 4                    THE COURTROOM DEPUTY:  Juror Number 0017.

 5                    PROSPECTIVE JUROR:  Here.

 6                    THE COURTROOM DEPUTY:  Juror Number 0952.

 7                    PROSPECTIVE JUROR:  Here.

 8                    THE COURTROOM DEPUTY:  Juror Number 1049.

 9                    PROSPECTIVE JUROR:  Here.

10                    THE COURTROOM DEPUTY:  Juror Number 0510.

11                    PROSPECTIVE JUROR:  Here.

12                    THE COURTROOM DEPUTY:  Juror Number 0347.

13                    PROSPECTIVE JUROR:  Here.

14                    THE COURTROOM DEPUTY:  Juror Number 0393.

15                    PROSPECTIVE JUROR:  Here.

16                    THE COURTROOM DEPUTY:  Juror Number 0706.

17                    PROSPECTIVE JUROR:  Here.

18                    THE COURTROOM DEPUTY:  Juror Number 0776.

19                    PROSPECTIVE JUROR:  Here.

20                    THE COURTROOM DEPUTY:  Juror Number 0151.

21                    PROSPECTIVE JUROR:  Here.

22                    THE COURTROOM DEPUTY:  Juror Number 0747.

23                    PROSPECTIVE JUROR:  Here.

24                    THE COURTROOM DEPUTY:  Juror Number 0064.

25                    PROSPECTIVE JUROR:  Here.
```

```
 1              THE COURTROOM DEPUTY:  Juror Number 0060.

 2              PROSPECTIVE JUROR:  Here.

 3              THE COURTROOM DEPUTY:  Juror Number 1235.

 4              PROSPECTIVE JUROR:  Here.

 5              THE COURTROOM DEPUTY:  Juror Number 0462.

 6              PROSPECTIVE JUROR:  Here.

 7              THE COURTROOM DEPUTY:  Juror Number 0898.

 8              PROSPECTIVE JUROR:  Here.

 9              THE COURTROOM DEPUTY:  Juror Number 0191.

10              PROSPECTIVE JUROR:  Here.

11              THE COURTROOM DEPUTY:  Juror Number 0664.

12              PROSPECTIVE JUROR:  Here.

13              THE COURTROOM DEPUTY:  Juror Number 1162.

14              PROSPECTIVE JUROR:  Here.

15              THE COURTROOM DEPUTY:  Juror Number 0316.

16              PROSPECTIVE JUROR:  Here.

17              THE COURTROOM DEPUTY:  Juror Number 0837.

18              PROSPECTIVE JUROR:  Here.

19              THE COURTROOM DEPUTY:  Juror Number 0216.

20              PROSPECTIVE JUROR:  Here.

21              THE COURTROOM DEPUTY:  Juror Number 0603.

22              PROSPECTIVE JUROR:  Here.

23              THE COURTROOM DEPUTY:  Juror Number 0100.

24              PROSPECTIVE JUROR:  Here.

25              THE COURTROOM DEPUTY:  Juror Number 0266.
```

1          PROSPECTIVE JUROR:  Here.

2          THE COURTROOM DEPUTY:  Juror Number 0126.

3          PROSPECTIVE JUROR:  Here.

4          THE COURTROOM DEPUTY:  Juror Number 0907.

5          PROSPECTIVE JUROR:  Here.

6          THE COURTROOM DEPUTY:  Juror Number 0290.

7          PROSPECTIVE JUROR:  Here.

8          THE COURT:  Thank you.

9          All right.  Good morning.

10         PROSPECTIVE JURORS:  Good morning.

11         THE COURT:  Oh, you can do better than that.  Good

12    morning.

13         PROSPECTIVE JUROR:  Good morning.

14         THE COURT:  Okay.  My name is Judge Amy Jackson, and

15    I would like to welcome you to the United States District Court

16    for the District of Columbia and to my courtroom.

17         I want to thank you very much for taking time out of

18    your busy lives to assist the Court and our entire system of

19    justice by coming here today to participate in this process.

20         We have a system in this country, in both civil and

21    criminal cases, that entitles people to have their claims tried

22    by juries.  And that simply wouldn't work if we didn't have

23    people who showed up to serve on those juries.  So you've

24    already performed an important public service, and I want to

25    thank you for being a part of the selection process, even if

1     you don't ultimately get selected.

2              When we pick a jury, our goal is to make sure that

3     we're picking a group of people who don't already know anything

4     about the case or about the people involved in the case.  And

5     we're trying to pick people who can be completely open and fair

6     to both sides and base their verdict just on the evidence and

7     on the law that I will tell you applies, and not on any

8     information, expertise, or opinions that they've obtained

9     before they ever got to the courtroom.

10             To do that, we have a system where we ask potential

11    jurors a series of questions.  Some of the questions may seem

12    personal, but I want to assure you that you're not going to

13    have to give your answers in front of everyone else.  We're

14    going to let you come into the courtroom one at a time, and to

15    speak to the people involved in the trial privately.  It's the

16    same reason why we're calling you by your numbers and not your

17    names.  It's not because we don't care about you as individual

18    people, and we don't think you're important, but your name

19    isn't necessarily everybody's business.

20             And it may turn out that we don't need to hear from

21    all of you.  Or we may end up excusing someone we did talk to.

22    If that happens to you, it's not because we don't like you or

23    because we think you said something inappropriate or improper.

24    We have more of you than we need, as you can tell.  And there

25    may be a reason why you're not one of the people who should be

1    selected for this case, or it may simply be that we didn't need

2    you.

3            Another way that we make sure that the decision is

4    based only on what happens in the record in the courtroom is,

5    the jurors will be told that they can't talk about the case or

6    any issues related to the case among themselves or with anyone

7    else until the case is over and the case has been submitted to

8    them.  And that rule goes into effect right now.

9            There will be periods when you're seated together

10   waiting for the next stage of the proceedings to happen, either

11   in this courtroom or somewhere else.  And you may talk among

12   yourselves about pretty much any topic, but you should not talk

13   about what you're about to hear about the case or about the

14   issues raised in the questions you're asked as a part of the

15   jury selection process.  And you may not use your phones to go

16   online and look for information about this case, from this

17   moment forward until you've been excused.

18           And that also means, if you think you know someone

19   involved in the case or something about the case or the legal

20   issues involved in the case or you've read about the case, you

21   should tell us that when we ask you for that information

22   individually.  But please keep it to yourselves other than

23   that, and don't share what you know with your follow jurors

24   while you're waiting for your turn.  If they don't know

25   anything about the case, we don't want them to learn it from

 1    you.

 2             So the first thing I need to ask you to do, if you

 3    haven't done it already, is to turn off your cell phones.  And

 4    I mean off.  They shouldn't vibrate, they shouldn't hum, and

 5    you should not be consulting them in the courtroom.  I would

 6    like very much for you to be able to have access to your phones

 7    during breaks and when you're outside waiting for your turns to

 8    come in, but you'll lose that privilege very quickly if we're

 9    interrupted here by the sound of your phones.

10             The second thing I'm going to do is explain how we're

11    going to proceed.  Every one of you should have been provided

12    with an index card and a pen.

13             Does everybody have one?

14             PROSPECTIVE JURORS:  Yes.

15             THE COURT:  Okay.  If you haven't done so already,

16    please write your juror number clearly and legibly on one side

17    of the card.  So, everybody write your juror number on one side

18    of the card.

19             All right.  Has everybody done that?

20             PROSPECTIVE JURORS:  Yes.

21             THE COURT:  Okay.  Now you're going to turn it over,

22    and you're not going to write anything else on that side of the

23    card.

24             After you are sworn, I'm going to ask you a series of

25    questions.  Each question will have a number, and I will say

1    something like this:  Question Number 1, are any of you lawyers

2    or are your close friends or family members lawyers?

3            If the answer to that question is yes, and it's

4    Question Number 1, then you'll write a number 1 on the side of

5    your card that's now blank.  Don't do that now.  That was just

6    an example.  But we're going to continue that process for every

7    question.  Every time your answer to a question is yes, you're

8    going to write that number on the other side of your card as

9    well.

10            So, when I'm done asking all my questions -- and

11   there is about 25, a few more of them -- you'll have an index

12   card with your juror number on one side and a series of numbers

13   or maybe only one number or maybe no numbers on the other side

14   of the card, if you didn't have an answer to any of the

15   questions.

16            Does everybody understand those instructions?

17            PROSPECTIVE JURORS:  Yes.

18            THE COURT:  Does anybody have any questions about

19   those instructions?

20            PROSPECTIVE JURORS:  No.

21            THE COURT:  All right.  This is our deputy court

22   clerk, Mr. Haley.  He's going to administer the oath, and you

23   may swear, or affirm, if you choose to do so.  And he's going

24   to do that so we can begin.

25            THE COURTROOM DEPUTY:  Will the prospective jurors

1       please rise.

2                 (Whereupon the prospective jurors were duly sworn.)

3                 THE COURT:  All right.  The case that is going to be

4       tried is a criminal case that relates to events that took place

5       in 2012 and 2013.  At that time, Gregory B. Craig was a partner

6       at the law firm of Skadden, Arps, Slate, Meagher & Flom --

7       which we'll be calling Skadden from here forward -- in

8       Washington, D.C.

9                 In early 2012, the government of the country of

10      Ukraine retained Mr. Craig and Skadden to serve as rule of law

11      consultants.  As part of the services provided to Ukraine,

12      Mr. Craig led a team of lawyers from his firm who prepared a

13      written report entitled the Tymoshenko Case, or the Report.

14      The Report analyzed the trial of a former Ukrainian prime

15      minister, Yulia Tymoshenko, who had previously been convicted

16      and incarcerated in Ukraine in 2011 for allegedly abusing her

17      official powers while in office.

18                Ukraine publicly released Skadden's report at the end

19      of 2012.  The Report attracted some media attention in the

20      United States and internationally.

21                There is a statute in this country called the Foreign

22      Agents Registration Act, or FARA.  The FARA statute requires

23      certain U.S. agents of foreign principals, including foreign

24      governments, to register with the Department of Justice when

25      they engage in certain activities for or on behalf of a foreign

1    principal, and to disclose certain information regarding their

2    activities on behalf of the foreign principal.

3           There is an office within the National Security

4    Division at the United States Department of Justice, or DoJ,

5    charged with administering or enforcing FARA, and it's called

6    the FARA Unit.  After the public release of the Report, the

7    FARA Unit contacted Skadden to obtain information regarding the

8    firm's work on Ukraine's behalf.

9           During the period covered by the indictment, the FARA

10   Unit exchanged letters with Skadden and with Mr. Craig, and had

11   one meeting in person with Mr. Craig and Skadden.  The FARA

12   Unit engaged in these communications to obtain information in

13   order to determine whether Mr. Craig and Skadden were required

14   to register under FARA.

15          The grand jury has charged Mr. Craig in an

16   indictment.  Count 1 alleges that from about June 3rd, 2013

17   through January 16, 2014, Mr. Craig knowingly and willfully

18   engaged in a scheme to falsify, conceal, or cover up material

19   facts from the FARA Unit.

20          The indictment returned by the grand jury is not

21   evidence, but it's merely the way a person is charged with a

22   crime in order to bring him to trial.  Mr. Craig has pleaded

23   not guilty, and he denies the allegation.  Mr. Craig is

24   presumed to be innocent of the charges filed against him.  And

25   throughout his trial it is the government that is required to

1   prove that Mr. Craig committed the crime with which he is

2   charged beyond a reasonable doubt.  If it does not do so, he

3   cannot be convicted.

4        So now I'm going to start reading the questions that

5   I told you I was going to be asking.

6        Question Number 1.  As I told you earlier, my name is

7   Amy Berman Jackson, and I will preside over this trial.  I will

8   be assisted by my courtroom deputy, John Haley, who is the most

9   important and helpful person here, and who you'll come to know

10  quite well as we move forward.

11        So Question Number 1 is:  Do any of you believe that

12  you know or have any connection to or association with me or

13  with my courtroom staff?  If the answer to that question is

14  yes, please write a 1 on the back of your card.  If it's no,

15  you don't write anything at all.

16        Okay.  Question number 2.  The lawyers representing

17  the United States in this trial will be -- and I would ask you

18  to please stand when I say your name -- assistant United States

19  attorneys Fernando Campoamor-Sanchez, Molly Gaston, and

20  Jason McCullough.  Assisting them at trial will be

21  Amanda Rohde.  These lawyers and Ms. Rohde are employees of the

22  U.S. Attorney's Office for the District of Columbia and the

23  National Security Division of the Department of Justice.

24        Question number 2 is:  Do any of you believe that you

25  know or have any connection to or association with these

1    lawyers or individuals, or have you had any dealings or

2    association with the U.S. Attorney's Office of the District of

3    Columbia or the Department of Justice?

4            If your answer to that question is yes, please write

5    a 2 on that side of your card.

6            You all can be seated.  Thank you.

7            Question Number 3:  The lawyers representing the

8    defendant during this trial, all from the law firm of Zuckerman

9    Spaeder, will be -- and please stand when I say your names --

10   William W. Taylor, William J. Murphy, Paula M. Junghans,

11   Adam Abelson, and Ezra Marcus.

12           Do any of you believe that you know or have any

13   connection to or association with any of them or with the law

14   firm of Zuckerman Spaeder?

15           If your answer to that question is yes, please write

16   a 3 on the back of your card.

17           Thank you.  You all can be seated.

18           The defendant in this case is Mr. Gregory B. Craig.

19           Mr. Craig, can you please stand.

20           All right.  Thank you, sir.  You can be seated.

21           Mr. Craig is a lawyer who lives in the District of

22   Columbia.  At various times during his career, he's worked at

23   the law firms of Williams & Connolly and Skadden, Arps, Slate,

24   Meagher & Flom.  He's also served as a lawyer for government

25   agencies or officials, working with, among others, Presidents

1      William Clinton and Barack Obama and Secretary of State

2      Madeleine Albright.

3                Question Number 4 is:  Do any of you believe that you

4      know or have any personal connection to or association with

5      Mr. Craig or that you know anything about Mr. Craig?

6                If the answer to that question is yes, please put a 4

7      on the back of your card.

8                Question number 5:  Do any of you believe that you

9      have seen, read, or heard anything at all about this case from

10     any source, including word of mouth, newspapers, magazines,

11     television, radio, the internet, or on social media, such as

12     Facebook or YouTube?  If anyone has read or heard anything at

13     all about this case, either recently or some time ago, please

14     put a number 5 on your card.

15               Question Number 6:  I'm about to read a very long

16     list of names.  It is a list of individuals, firms, and

17     companies whose names may come up in connection with this case,

18     some of whom may be called to testify as witnesses in this

19     case, some of whom are -- just might be mentioned in the

20     testimony.  So please listen to the list, because at the end,

21     Question Number 6 is going to be:  Do you know anybody whose

22     name I just read to you?

23               The list of names is, with respect to Skadden --

24     first of all, Skadden, as a law firm, and then Bruce Buck,

25     Matthew Cowie, Eric Friedman, Kenneth Gross, Alex Haskell, Alon

```
 1    Kedem, Paul Kerlin, Margaret -- how do you pronounce that?
 2              MR. TAYLOR:  Krawiec.
 3              THE COURT:  Krawiec?
 4              MR. TAYLOR:  Krawiec.
 5              THE COURT:  -- Krawiec, Peter Lesser, Michael Louks,
 6    Lauren Weiss-Malet, Melissa Porter, Noah Puntus, Kara Roseen,
 7    Lillian Singer, Cliff Sloan, Lawrence -- Larry Spiegel, Julie
 8    Turner, Alex van der Zwaan, Catherine Whitney, Earl Yaffa,
 9    David Zornow.
10              From the Special Counsel's Office or the FBI, Russ
11    Beverly, Kevin Constantine, Michael Dreeben, Brock Domin,
12    Michael Ficht, Daniel Kegl, Spencer Lucas, Omer Meisel, Robert
13    Mueller, III, Brian Richardson, Andrew Weismann.
14              A firm called FTI Consulting, and the individuals Jon
15    Aarons, Jonathan Hawker, Mark Malloch-Brown, and Edward Riley.
16              The Department of Justice FARA Unit, including Kevin
17    Connolly, Heather Hunt, Alex Mudd, Timothy Pugh.
18              A firm called DMP International, including Richard
19    Gates, Konstantin Kilimnick, Paul Manafort.
20              Ukrainian public officials and citizens, including
21    Oleksandr Lavrynovych, Serhiy Lyovochkin, Victor Pinchuk,
22    Victor Pshonka, Yulia Tymoshenko, Serhiy Vlasenko, and Viktor
23    Yanukovych.
24              A firm called Mercury Public Affairs.  Individuals
25    Lucy-Claire Saunders, John Vincent, or Vin, Weber, Andrew
```

```
 1    Wright.

 2               An organization called the Podesta Group, including

 3    Ben Chang, Kevin Griffis, Andrew Kauders, Anthony Podesta, and

 4    Mark Tavlarides.

 5               Other entities could include Arnold & Porter Kaye

 6    Scholer, LLP, Burson-Marsteller, Covington & Burling, LLP,

 7    FleishmanHillard, FTI Consulting; Mercury, Clark & Weinstock,

 8    Mercury Public Affairs, the Podesta Group, Williams & Connolly,

 9    LLP.

10               And other individuals you may hear from or you may

11    hear about include David Herszenhorn, Al Hunt, Tom Parfitt,

12    David Sanger, Douglas Schoen, Jim Slattery, Emily Alpert, Gay

13    Gioffi, Judge Clinton Deveaux, Alan Friedman, Matthew Huisman,

14    Amy Jeffress, Victoria Reggie Kennedy, Jessica Tuchman

15    Matthews -- Jessica Tuckman Matthews.  I'm sorry -- Cheryl

16    Mills, Derek Mitchell, Eckhart Sager, Timothy Shriver, and

17    Brandon Sullivan.

18               So Question Number 6 is:  Do any of you believe that

19    you know or have any personal, family, or business connection

20    of any sort with any of these individuals or organizations?

21               If the answer to that question is yes, please put a

22    number 6 on the back of your card.

23               Question Number 7:  Have you or any close members of

24    your family been employed by any federal, state, or local law

25    enforcement agency?
```

1      If you've been employed by a law enforcement agency,

2  put a 7 on the back of your card.

3      Question Number 8:  Have you or any close members of

4  your family worked for the federal government in any capacity?

5      So if you've been a federal employee or a close

6  friend or family member has, please put an 8 on the back of

7  your card.

8      Question Number 9:  Have you or any close friends or

9  family members worked in the legal profession in any way,

10  including as a lawyer, paralegal, or administrative person in

11  any law office?  Including not just a private law firm, but

12  also a prosecutor's office or a public defender's office.

13      If you've worked in the legal profession or a close

14  friend or family member has, please put a 9 on the back of your

15  card.

16      Question Number 10:  Have you or any close friends or

17  family members worked in a firm engaged in lobbying?

18      If the answer to that is yes, put a 10 on the back of

19  your card.

20      Question Number 11:  Have you or any close friends or

21  family members worked in a firm engaged in public relations

22  work or media consulting business?

23      That's 11.

24      Question Number 12:  Have any of you served as a

25  juror within the past ten years, either on a grand jury or a

1    petit jury in any court?

2              If you've been a juror, please put a 12 on your card.

3              Question Number 13:  Have you or a close friend or

4    family member, within the past ten years, been accused of, the

5    victim of, or a witness to a crime, regardless of whether that

6    crime was reported to law enforcement?

7              If you or a close friend or family member have been a

8    victim of, accused of, or a witness to a crime within the past

9    10 years, please put a 13 on the back of your card.

10             And as I've said, we're going to be taking your

11   answers to these questions individually.

12             Question Number 14:  You will hear, as I've already

13   indicated, testimony in this case about work performed for the

14   government of Ukraine.  Do you or any close friend or family

15   member have any connection to or involvement with the country

16   or government of Ukraine?  Or do you have any strong feelings

17   about the government of Ukraine or any current or former

18   government officials in Ukraine?

19             That's Question 14.

20             Question Number 15:  This indictment involves charges

21   of false statements and concealing information.  Is there

22   anything else about the nature of those charges alone, just

23   hearing that much, that would make it difficult for you to be a

24   fair and impartial juror in this case?

25             If your answer is yes, please write a 15 on your

1    card.

2              Question Number 16:  During this trial, one or more

3    law enforcement officers may testify as a witness.  I will

4    instruct you that you must not give either greater or lesser

5    weight to the testimony of law enforcement witnesses, and that

6    you must treat them and evaluate their credibility as you would

7    any other witness.

8              Question Number 16 is:  Is there anyone who believes

9    they would have difficulty following that instruction?

10             If your answer is yes, put a 16 on the back of the

11   card.

12             Question Number 17:  Some of the investigation

13   leading to this trial was conducted by Special Counsel

14   Robert S. Mueller, III, and his office.  Is there anything

15   about that circumstance that would prevent you or hinder you in

16   any way from rendering a fair and impartial verdict in this

17   case, based solely on the evidence presented and my

18   instructions on the law?

19             If your answer to that question is yes, put a 17 on

20   your card.

21             I saw somebody's hand up.  Were just scratching your

22   head?

23             PROSPECTIVE JUROR:  (Nods head.)

24             THE COURT:  Okay.  Thank you.

25             Question Number 18:  There may be some testimony in

1    this case about work performed by the defendant and others in

2    connection with a project involving Paul Manafort and

3    Richard Gates.  Is there anything about that fact alone that

4    could make it difficult for you to be fair and impartial and

5    reach a verdict based solely on the evidence in this case?

6            If the answer to that question is yes, write an 18 on

7    your card.

8            Question Number 19:  Some of the witnesses in this

9    case may be people who are testifying as part of an -- a guilty

10   plea and an agreement to cooperate with the government.  Is

11   there anything about that circumstance in particular that will

12   make it difficult for you to evaluate their testimony fairly

13   and impartially, in accordance with my instructions?

14           If your answer is yes, write a 19 on your card.

15           Question Number 20:  As I already told you, one of

16   the instructions you're going to receive during the pendency of

17   this trial is that you may not watch, read, or listen to any

18   news or online postings related to this case, including in

19   newspapers, television, radio, or internet, and that you will

20   be instructed that you may not blog or post or engage in any

21   social media communications or even personal conversations

22   about the case.  Would any of you have any difficulty following

23   that instruction?

24           If you think that instruction is going to be a

25   problem for you, please write a 20 on your card.

1          Question Number 21:  In every criminal case, the

2     defendant is presumed to be innocent throughout the trial, and

3     he cannot be found guilty of an offense unless and until the

4     government has proved each element of that offense beyond a

5     reasonable doubt.

6          Question Number 21 is:  Would any of you find it

7     difficult, for any reason, for you to obey that instruction?

8          If the answer is yes, put a 21 on your card.

9          Question 22:  At the end of the trial, I will be

10    instructing you about the law to be applied to the case when

11    you make your decisions.  Do any of you believe that if you

12    were selected as a juror in this case, it would be difficult

13    for you to set aside and to disregard any ideas, notions, or

14    knowledge, or beliefs about the law that you may hold, or put

15    aside what you may understand the law to be, and render a fair

16    and impartial verdict based solely on the evidence presented

17    and my instructions on the law?

18          If any of that would be a problem for you, please put

19    a 22 on the back of your card.

20          Question Number 23:  This trial is expected to last

21    for at least two weeks.  It may go a little longer.  We will

22    generally start at 9:30 in the morning, take a midmorning

23    break, take an hour break for lunch, take a midafternoon break,

24    and break for the evening at about 4:30 or 5:00 in the

25    afternoon.  Is there anyone who is taking any medication or has

1    a physical condition or some other condition that could make it

2    difficult for you to sit as a juror with that kind of schedule,

3    and give your full attention to the trial and the evidence in

4    this case?

5            If your answer to that question is yes, please put a

6    23 on the back of your card.

7            And, again, you'll be telling us your answers

8    individually.

9            Question Number 24:  Do any of you have any

10    difficulty seeing or hearing or any difficulty speaking,

11    understanding, reading, or writing the English language that

12    would make it difficult for you to follow or receive the

13    evidence presented in this case?

14            If the answer to that question is yes, please place a

15    24 on your card.

16            Question Number 25:  Do any of you have any moral,

17    religious, or ethical beliefs that would prevent you from

18    sitting in judgment of another person in a criminal trial?

19            If the answer to that question is yes, please put 25

20    on the back of your card.

21            Question Number 26:  Finally, do you know of any

22    reason, even if I haven't specifically mentioned it today, why

23    you could not sit as a juror in this case and judge the

24    evidence presented fairly and impartially and apply the law

25    that I will give you in my instructions?

1          If your answer to that question is yes, even if it

2    relates to something I haven't talked about yet this morning,

3    please put a number 26 on the back of your card.

4          All right.  So, now everyone should have a card that

5    has their juror number on one side and any numbers of questions

6    that they had a yes answer to on the other side.

7          PROSPECTIVE JUROR:  Could you read Question 15 again,

8    please?

9          THE COURT:  I could.

10          Question Number 15 was:  The indictment involved

11    charges of false statements and concealing information.  Is

12    there anything about the nature of those charges alone that

13    would make it difficult for you to be a fair and impartial

14    juror in this case?

15          What we're going to do now is, Mr. Haley is going to

16    put a group of you in my jury room here, so that we can bring

17    you in one at a time to talk about the numbers on the back of

18    your cards.  And he's going to take the rest of you and let you

19    sit in another courtroom.  While you're in that courtroom

20    you'll be able to talk, you'll be able to turn on your phones,

21    you'll be able to read whatever books you brought with you.

22          But you may not look up information on your phones,

23    on the internet about the case, and you may not talk about the

24    case or any of the issues or legal issues related in the case.

25          Some of you are smiling and chuckling, and I

1    appreciate that.  But I have to tell you, this has happened to

2    me before, and so that is why I have to warn everybody not to

3    do it.

4              And so, Mr. Haley is now going to rearrange you, and

5    then we'll start talking to you one at a time.

6              Thank you.

7              And also, please don't talk to anyone in the hall

8    while you're walking from one courtroom to the next.

9              Thank you.

10             THE COURTROOM DEPUTY:  Would everybody from the end

11   of the aisle please pass over your pencils and your

12   three-by-five cards.

13             THE COURT:  Nobody had to fill out any bubble, so

14   it's not so bad.

15             THE COURTROOM DEPUTY:  At some point, everybody is

16   going to come back in the courtroom.  So please remember where

17   you're at.  I'm going to line you up.

18             Everybody, if you'll just stand.  We're going to go

19   out, and we're going to go one courtroom this way (indicating).

20             (Prospective jurors leave the courtroom.)

21             THE COURT:  When he has gotten them out of the

22   immediate vicinity of the door, I'm going to take a break and

23   excuse everyone for ten minutes so that when we come back in,

24   we can jump right into the voir dire process.

25             For that process, the members of the media who have

1    been here so far are going to have to step out.  And I
2    appreciate everybody's cooperation with that.  But I'll give
3    you a minute before we go out because they're still gathering.
4              (Pause.)
5              THE COURT:  They're either very short or they're
6    gone.
7              All right.  You don't need to stand.  I'll see you
8    back here in ten minutes.
9              Thank you.
10             (Recess.)
11             THE COURTROOM DEPUTY:  Your Honor, recalling Case
12   Number 19-125, United States of America v. Gregory B. Craig.
13             THE COURT:  Okay.  Are we ready to proceed?  Okay.
14             MS. JUNGHANS:  Mr. Craig just stepped into the
15   restroom.
16             THE COURT:  All right.  We'll wait.
17             MR. CAMPOAMOR-SANCHEZ:  Just a quick question, Your
18   Honor.
19             THE COURT:  Yes, sir.
20             (Defendant enters courtroom.)
21             MR. CAMPOAMOR-SANCHEZ:  For purposes of if we're
22   going to be asking questions, will we be coming up to the
23   podium to do that?
24             THE COURT:  Yes.
25             (Prospective juror enters courtroom.)

1             THE COURTROOM DEPUTY:  Your Honor, we have Juror

2     Number 0256.

3             THE COURT:  All right.  Good morning.

4             PROSPECTIVE JUROR:  Good morning.

5             THE COURT:  I noticed that on the back of your card

6     there aren't any numbers.  So I just wanted to make sure that

7     you understood the questions and the exercise, and that you

8     didn't write down any numbers because you didn't have an answer

9     yes to any of the questions.

10            PROSPECTIVE JUROR:  Correct.

11            THE COURT:  Okay.  And, on the list of information we

12    have, there is an indication, I think, that you work for the

13    postal service; is that correct?

14            PROSPECTIVE JUROR:  Not no more.

15            THE COURT:  Okay.  Let me -- so can -- oh, that might

16    be the next person.

17            Can you tell me where you're employed, if you are?

18            PROSPECTIVE JUROR:  Securities America.

19            THE COURT:  I'm sorry?

20            PROSPECTIVE JUROR:  Securities America.

21            THE COURT:  Okay.  And what do you do there?

22            PROSPECTIVE JUROR:  Concierge.  Security concierge.

23            MS. JUNGHANS:  Your Honor, I apologize.  I cannot

24    hear the juror.

25            THE COURT:  Okay.  Tell us, again, the name of

1    your --

2              PROSPECTIVE JUROR:  I work for Securities America.

3    I'm a security officer, but I do concierge.

4              THE COURT:  Okay.  And a security officer means --

5    what do you do there?

6              PROSPECTIVE JUROR:  I just greet the customers, scan

7    packages, and check the IDs.

8              THE COURT:  Okay.  All right.

9              Does anybody have any further questions for this

10   juror?

11             MR. CAMPOAMOR-SANCHEZ:  No, Your Honor.

12             THE COURT:  All right.

13             MS. JUNGHANS:  Thank you.

14             THE COURT:  Thank you.  You may be excused back into

15   the jury room.

16             (Prospective juror exits courtroom.)

17             (Prospective juror enters courtroom.)

18             THE COURTROOM DEPUTY:  Your Honor, we have Juror

19   Number 0223 -- I'm sorry.  I'm sorry -- 1127.

20             THE COURT:  1127.  All right.  Thank you.

21             Good morning.  You answered Question 3, whether you

22   knew the defense counsel.

23             PROSPECTIVE JUROR:  Well, I don't know the defense

24   counsel, but I know the firm Zuckerman Spaeder.

25             THE COURT:  And in what capacity do you know them?

1          PROSPECTIVE JUROR:  So, I'm a lawyer, and I have

2     worked on cases with and, I think, also against Zuckerman

3     Spaeder.

4          THE COURT:  Okay.  Have you worked on any cases with

5     or against any of the particular lawyers who are here?

6          PROSPECTIVE JUROR:  No.  No.

7          THE COURT:  Is there anything -- and what kind of law

8     do you practice?

9          PROSPECTIVE JUROR:  Antitrust.

10          THE COURT:  Okay.  And where do you do that?  Are you

11     at a private law firm?

12          PROSPECTIVE JUROR:  Yeah.  A small, private boutique

13     firm.

14          THE COURT:  And have you worked with them on criminal

15     antitrust cases or civil?

16          PROSPECTIVE JUROR:  No, all civil.

17          THE COURT:  Is there anything about the fact that

18     you're familiar with the firm and you've worked with those

19     lawyers that would lead you to favor one side over the other in

20     this case?

21          PROSPECTIVE JUROR:  No.

22          THE COURT:  All right.  Question Number 5 was whether

23     you'd heard or read anything about this case.  Can you tell me

24     about that?

25          PROSPECTIVE JUROR:  Yeah.  Well, I'm a lawyer, so, I

1    remember reading about Skadden being in the news back when the

2    original thing came out.  But that's really all I knew about at

3    the time.

4            THE COURT:  Okay.  Well, when you say the "thing,"

5    what is it that you heard about Skadden, if you recall?

6            PROSPECTIVE JUROR:  Sure.  I remember reading in, I

7    think, like, *Law360* or something, that Skadden had gotten

8    caught up in the Special Counsel investigation.  And I --

9    that's really the only thing I had read about at the time.

10           THE COURT:  All right.  Do you have any thoughts,

11   sitting here right now, about whether Skadden should have

12   registered or shouldn't have registered or whether Mr. Craig

13   did anything or didn't do anything that he was supposed to do?

14           PROSPECTIVE JUROR:  I don't.

15           THE COURT:  All right.  If I tell you you can't read

16   *Law360* today or for the rest of this case --

17           PROSPECTIVE JUROR:  I would be happy not to.

18           THE COURT:  All right.  You answered, also, Questions

19   8 and 9.  Eight was working for the federal government.  What

20   did you do there?

21           PROSPECTIVE JUROR:  Well, I worked in the Senate,

22   which I don't know that I'm -- I should know, but is that part

23   of the federal government?

24           THE COURT:  So far.

25           PROSPECTIVE JUROR:  Yes.  Okay.

```
1              THE COURT:  What did you do there?

2              PROSPECTIVE JUROR:  I -- after -- before I went to

3      law school, I worked for Senator Clinton, who is my senator

4      from New York, Hillary Clinton.  And then when I was in law

5      school, I worked on the Judiciary Committee for

6      Senator Feinstein.

7              THE COURT:  All right.  Is there anything about any

8      of that that leads you to feel more strongly in favor of the

9      prosecution in this case or the defense in this case?

10             PROSPECTIVE JUROR:  No.

11             THE COURT:  Question Number 9 was working in the

12     legal profession.  I think we've talked about that a little

13     bit.

14             Have you worked anywhere -- before you worked at the

15     law firm where you're working, have you worked in another law

16     firm?

17             PROSPECTIVE JUROR:  No, that's the only law firm I

18     worked at.

19             THE COURT:  All right.  And all your antitrust work

20     has been on the civil side?

21             PROSPECTIVE JUROR:  All my antitrust work has been on

22     the civil side, yes.

23             THE COURT:  Have any of those cases involved the

24     government on the other side, or have they tended to be private

25     cases?
```

```
1              PROSPECTIVE JUROR:  No.  No.  They're all private

2    actions.  And I'm usually on the plaintiff's side, so we're

3    never against the government.

4              THE COURT:  Okay.  All right.

5              Does the government have any follow-up questions for

6    this juror?

7              MR. CAMPOAMOR-SANCHEZ:  No, Your Honor.

8              THE COURT:  Any for the defense?

9              MS. JUNGHANS:  No, Your Honor.

10             THE COURT:  Okay.  Thank you very much.  You can step

11   back out into the jury room.

12             (Prospective juror exits courtroom.)

13             THE COURT:  Are there any motion was respect to this

14   juror?

15             MS. JUNGHANS:  No, Your Honor.

16             MR. CAMPOAMOR-SANCHEZ:  No, Your Honor.

17             THE COURT:  All right.  Let's bring out the next

18   juror.

19             (Prospective juror enters courtroom.)

20             THE COURTROOM DEPUTY:  Your Honor, we have

21   Juror 0233.

22             THE COURT:  Good morning, sir -- I think it's still

23   morning.

24             I notice on the back of your card you wrote Number 7,

25   8, 9, and 17.  Question Number 7 was law enforcement
```

1    experience.

2              Can you tell me about that?

3              PROSPECTIVE JUROR:  I work with the U.S. Secret

4    Service.  It's mostly administrative work.  I have worked with

5    the agents, with helping them process the criminal cases.

6              THE COURT:  Okay.  I think we need to get you a

7    little closer to the microphone.

8              And --

9              MR. TAYLOR:  Your Honor, I could not hear him.

10             THE COURT:  Okay.  Could you tell us again what you

11   just said?

12             PROSPECTIVE JUROR:  I work with the U.S. Secret

13   Service.  I work administrative work right now.  I'm a records

14   analyst.  But I've been there 20 years.  I work with processing

15   criminal cases, case files and the like.

16             THE COURT:  So have you ever been an agent yourself?

17             PROSPECTIVE JUROR:  No, Your Honor.

18             THE COURT:  And then Question Number 8 was work for

19   the federal government.  Is that answer the same as your answer

20   to Question 7, you work for the Secret Service?

21             PROSPECTIVE JUROR:  Yes, Your Honor.

22             THE COURT:  Is there anything about the fact that

23   you've worked for a law enforcement agency that would make you

24   favor the prosecution side over the defense side in this case,

25   or vice versa?

 1          PROSPECTIVE JUROR:  No, Your Honor.

 2          THE COURT:  Question Number 9 was whether you or a

 3     close friend or family member worked in the legal profession.

 4          Is there something other than what you've just told

 5     me about the Secret Service?

 6          PROSPECTIVE JUROR:  I just have a personal friend of

 7     mine who is an attorney.  First met him when I was working with

 8     the Secret Service, and we got to know each other personally by

 9     taking the same Taekwondo class.  And so occasionally I

10     would -- it's very rarely, but I would occasionally ask him for

11     legal advice and stuff.

12          THE COURT:  Okay.  Does that lawyer, to your

13     knowledge, do criminal work?

14          PROSPECTIVE JUROR:  Yes, he does.

15          THE COURT:  Do you know if he's on the prosecution

16     side or the defense side?

17          PROSPECTIVE JUROR:  He's on the defense side.

18          THE COURT:  Okay.  And do you know where he works, by

19     any chance?

20          PROSPECTIVE JUROR:  He works in his own law firm in

21     College Park.

22          THE COURT:  All right.  Is there anything about the

23     fact that you have a friend who's a defense attorney that would

24     lead you to be partial to one side or the other in this case?

25          PROSPECTIVE JUROR:  No, Your Honor.

1          THE COURT:  Question Number 17, I asked if you heard

2     that this case started with the Special Counsel, would it be

3     difficult for you to be fair and impartial?  And I think you

4     wrote a 17 on the back of your card, or is it a 12?

5          PROSPECTIVE JUROR:  No.  I think it was 12.

6          THE COURT:  Okay.

7          PROSPECTIVE JUROR:  I'm sorry about that.

8          THE COURT:  All right.  That's all right.  No.  Some

9     people cross their sevens.

10         Okay.  Question Number 12 was whether you'd ever

11    served as a juror.  Tell me about that.

12         PROSPECTIVE JUROR:  I served as a juror back in 2002.

13    It was a petit jury, and it involved the sale of marijuana.

14         THE COURT:  Was it in this court or across the

15    street, over in Superior Court?

16         PROSPECTIVE JUROR:  No.  It was in Superior Court.

17         THE COURT:  Okay.  And do you remember if the jury

18    reached a verdict in that case?

19         PROSPECTIVE JUROR:  No.  We reached -- it was two

20    defendants; one we reached a verdict of not guilty, and the

21    other defendant we found guilty.

22         THE COURT:  Okay.  Is there anything about that

23    experience that you bring with you to the courtroom today that

24    makes you feel you can't be fair and impartial in this court?

25         PROSPECTIVE JUROR:  No, Your Honor.

```
 1              THE COURT:  All right.  The government?

 2              MR. CAMPOAMOR-SANCHEZ:  No questions.

 3              THE COURT:  Anything for the defense?

 4              MS. JUNGHANS:  No, Your Honor.

 5              THE COURT:  Okay.  Thank you very much, sir.  You can

 6     step back out.

 7              (Prospective juror exits courtroom.)

 8              THE COURT:  All right.  Let's have the next juror.

 9              (Prospective juror enters courtroom.)

10              THE COURTROOM DEPUTY:  Your Honor, we have Juror

11     Number 1014.

12              THE COURT:  All right.  Good morning.

13              PROSPECTIVE JUROR:  Good morning.

14              THE COURT:  On the back of your card, you wrote

15     Number 5, 8, 9, 10, and 26 with a question mark.  So maybe we

16     should start with 26.

17              PROSPECTIVE JUROR:  Okay.  So that was the only area

18     where I felt like there was an other.  So, my husband works in

19     the political arena.  And it might be irrelevant, but I just

20     wanted to make sure that I was being transparent.

21              THE COURT:  All right.  Well, in what capacity does

22     he work in the political arena?

23              PROSPECTIVE JUROR:  He's chief of staff for a U.S.

24     senator.

25              THE COURT:  And in connection with that role, have
```

1    you ever discussed this case or this matter or anything about

2    this case?

3              PROSPECTIVE JUROR:  No, Your Honor.

4              THE COURT:  Okay.  Question Number 5, I asked if

5    you'd read or heard anything about the case.  So tell me what

6    you've heard or read.

7              PROSPECTIVE JUROR:  Just the Wikipedia page for the

8    defendant.  So I went on the court docket to see what the case

9    would be, so I could get a sense of timeline, and saw the case

10   and went onto Wikipedia to read it.

11             THE COURT:  All right.  And when was that?  When you

12   got your summons?

13             PROSPECTIVE JUROR:  No.  Yesterday.

14             THE COURT:  Okay.  And did the Wikipedia page talk

15   about his biography, or did it also talk about the allegations

16   in this case?

17             PROSPECTIVE JUROR:  It talked about the biography

18   and -- I'm trying to run through the page.  I'm not sure.

19             THE COURT:  Do you know anything about the charges

20   against him or what his position is, other than the fact that

21   he's asserting his innocence and he has to be tried?

22             PROSPECTIVE JUROR:  I can recall there was mention

23   that a trial was taking place, and I can recall that it

24   mentioned a connection to Paul Manafort.

25             THE COURT:  All right.  Is there anything that you

1     read that leads you to have an opinion, one way or the other,

2     about this case right now, sitting here today?

3                 PROSPECTIVE JUROR:  No, Your Honor.

4                 THE COURT:  If I tell you no more Wikipedia, no more

5     Google, do not do exactly what you did from this point forward,

6     can you stick with that instruction?

7                 PROSPECTIVE JUROR:  Yes, Your Honor.

8                 THE COURT:  And can you refrain from sharing anything

9     you may have learned with anyone else?

10                PROSPECTIVE JUROR:  Yes, Your Honor.

11                THE COURT:  Can you also put it aside and understand

12    that what you're going to hear about this defendant and what

13    you're going to hear about this case is going to be evidence in

14    this courtroom that everybody gets to hear, and you can't bring

15    in anything that you think you've learned from Wikipedia?

16                PROSPECTIVE JUROR:  Sure.

17                THE COURT:  All right.  Question Number 8, have you

18    worked for the federal government, or close friend or family

19    member.

20                PROSPECTIVE JUROR:  My -- yes.  So, not myself,

21    but --

22                THE COURT:  Okay.  Tell me about that.

23                PROSPECTIVE JUROR:  My husband working on the Hill.

24                THE COURT:  And who does he work for on the Hill?

25                PROSPECTIVE JUROR:  A U.S. senator.

1           THE COURT:  Can you tell us the name?

2           PROSPECTIVE JUROR:  Sure.  Bill Cassidy.

3           THE COURT:  And what does he do for Mr. Cassidy?

4           PROSPECTIVE JUROR:  He's chief of staff.

5           THE COURT:  All right.  And how long has he been

6    there?

7           PROSPECTIVE JUROR:  Ten years.

8           THE COURT:  In connection with that, have you ever

9    had any conversations about Foreign Agent Registrations Act or

10   anything other --

11          PROSPECTIVE JUROR:  No, I have not.

12          THE COURT:  Question Number 9 was working in the

13   legal profession, you or someone close to you.

14          PROSPECTIVE JUROR:  So, my husband has a legal

15   background, but not practicing.

16          THE COURT:  He's pretty much worked on the Hill his

17   whole career?

18          PROSPECTIVE JUROR:  Mostly, yes.

19          THE COURT:  Has he ever practiced in --

20          PROSPECTIVE JUROR:  No.

21          THE COURT:  And Question Number 10 was about

22   lobbying.  Do you have personal experience in lobbying or are

23   you talking about your husband?

24          PROSPECTIVE JUROR:  Yes, exactly, just my husband.

25          THE COURT:  Okay.

```
1              PROSPECTIVE JUROR:  And friends, obviously.

2              THE COURT:  So what organization was he with that did

3      lobbying, if any?

4              PROSPECTIVE JUROR:  Who have lobbied him?

5              THE COURT:  Well, I asked if you or a close friend or

6      family member had worked in the lobbying area.  So, clearly, as

7      chief of staff, he gets lobbied.

8              PROSPECTIVE JUROR:  Exactly, yes.

9              THE COURT:  Has he ever been on the other side, where

10     he was lobbying?

11             PROSPECTIVE JUROR:  No.  No, Your Honor.

12             THE COURT:  Do you know, have you ever discussed any

13     of the organizations with him that I mentioned here today?

14             PROSPECTIVE JUROR:  No, Your Honor.

15             THE COURT:  And sitting right here today, is there

16     anything about any of these associations that we discussed that

17     gives you a thought or opinion, one way or the other, about

18     this case?

19             PROSPECTIVE JUROR:  No, Your Honor.

20             THE COURT:  Anything from the government?

21             MR. CAMPOAMOR-SANCHEZ:  No, Your Honor.

22             THE COURT:  Defense?

23             MS. JUNGHANS:  Yes, Your Honor.

24             Could we inquire whether the juror looked at anything

25     else on the docket yesterday when looking at -- or, whenever it
```

 1    was that she looked up the case?

 2                THE COURT:  All right.

 3                Did you look at anything other than what you've told

 4    us about?

 5                PROSPECTIVE JUROR:  No.  Because I specifically

 6    looked for who had a jury trial, and that was the only thing

 7    that was there.

 8                THE COURT:  So you looked on the court docket.

 9                PROSPECTIVE JUROR:  Right.

10                THE COURT:  But you haven't looked at the docket of

11    this case and pleadings?

12                PROSPECTIVE JUROR:  No.  No.  I just literally was

13    trying to get a sense for -- I'm a schoolteacher, so I was just

14    trying to get a sense for how long this would take.

15                THE COURT:  Okay.

16                MS. JUNGHANS:  And could we inquire what you teach?

17                PROSPECTIVE JUROR:  Sure.  I'm at a Title 1 public

18    school in Arlington, Virginia.  For many years it was first

19    grade, but now I am the International Baccalaureate

20    Coordinator.  I'm out of the classroom.  And also the

21    Instructional Lead Teacher.

22                MS. JUNGHANS:  Thank you.

23                THE COURT:  Is it elementary school?  High school?

24                PROSPECTIVE JUROR:  It is elementary.

25                THE COURT:  Okay.  All right.  Thank you very much.

1    You can step back in the jury room.

2              PROSPECTIVE JUROR:  Thank you.

3              (Prospective juror exits courtroom.)

4              THE COURT:  Any motions with respect to this juror?

5              MS. JUNGHANS:  May we have a moment, Your Honor?

6              THE COURT:  Yes.

7              (Pause).

8              MS. JUNGHANS:  No, Your Honor.

9              THE COURT:  All right.  Let's bring in the next

10   juror.

11             (Prospective juror enters courtroom.)

12             THE COURTROOM DEPUTY:  Your Honor, this is Juror

13   Number 0112.

14             THE COURT:  All right.  Good morning, sir.

15             PROSPECTIVE JUROR:  Good morning.

16             THE COURT:  You wrote down on the back of your card

17   numbers 7, 13, and 23.  And let me just start with 23.  And

18   that was the one about the schedule of the trial and your

19   ability to sit.

20             PROSPECTIVE JUROR:  Yes, ma'am.  It's not me, per se.

21   Actually, it's more my wife just had surgery Friday, so I just

22   had concerns about being gone for that period of time.  So I'm

23   physically able to do it, but just concerns for her.

24             THE COURT:  So what's her status right now?  Is she

25   at home or is she in the hospital?

1          PROSPECTIVE JUROR:  She's at home.  She just had a
2     double mastectomy on Friday.
3          THE COURT:  And is there anybody else in the house
4     taking care of her?
5          PROSPECTIVE JUROR:  I have three granddaughters,
6     they're 15, 11, and 7, and a neighbor that's up the street.
7          THE COURT:  Okay.  If you had -- if you were summoned
8     as a juror and you had to be here, basically for the working
9     day, every day, would that be a hardship for you and your wife?
10          PROSPECTIVE JUROR:  Just concern.  I mean, so far
11     everything has been good.  Just if anything was to happen, then
12     obviously, you know, I would have to, you know, tend to her.
13     And so far everything has been okay.  She has, like, the little
14     tubes where I have to, like, drain the blood and all that or
15     whatever from her.  So far everything has been going okay.
16          THE COURT:  I guess my question is, are you playing a
17     role in that care?
18          PROSPECTIVE JUROR:  Yes, ma'am.
19          THE COURT:  And so, if you had to sit here, would you
20     kind of, in the back of your head, be thinking --
21          PROSPECTIVE JUROR:  Yes, ma'am.
22          THE COURT:  -- I should be home with my wife?
23          PROSPECTIVE JUROR:  Yes, ma'am.
24          THE COURT:  All right.  Does anybody else want to
25     ask -- do you want to hear the other questions, as well?

1          MS. JUNGHANS:  Yes, Your Honor.

2          THE COURT:  All right.

3          MS. JUNGHANS:  There was no occupation listed for the

4     juror on the -- on the list.

5          THE COURT:  All right.  Sir, can you tell us --

6          PROSPECTIVE JUROR:  Yes.  I'm retired Navy.  And then

7     on occasion, I drive with Uber.  But I get a pension from

8     retirement.

9          THE COURT:  Okay.  Well, I might as well just -- in

10    terms of work in law enforcement, Question Number 7, was that

11    you or --

12         PROSPECTIVE JUROR:  No, ma'am.  I have a nephew

13    that's a park police, I have a sister that was with FBI, and

14    currently have a brother-in-law that's currently with the FBI.

15         THE COURT:  Okay.  So the fact that you have close

16    relatives who have been involved in the law enforcement side of

17    things, if you did have to serve as a juror in this case, would

18    you be able to be fair to both sides or would you tend to favor

19    the government's side?

20         PROSPECTIVE JUROR:  No, I believe I would be fair.

21         THE COURT:  Question Number 13 was whether you'd been

22    ever accused of, a victim of, or a witness of a crime, you or a

23    close friend or family member.

24         PROSPECTIVE JUROR:  Yes, ma'am.  Currently, my

25    granddaughters at home.  We have custody of them, and we're

```
 1    going through a custody battle.  So there was accusations
 2    against my wife over one of my grandchildren by my son-in-law.
 3              THE COURT:  And that's still in litigation at this
 4    point?
 5              PROSPECTIVE JUROR:  Not that incident, but just the
 6    custody incident.
 7              THE COURT:  Okay.  But did any kind of criminal
 8    charges --
 9              PROSPECTIVE JUROR:  No, ma'am.
10              THE COURT:  Is the fact that you've been on the side
11    of feeling falsely accused, does that lead you to tend to favor
12    one side more than the other in this case?
13              PROSPECTIVE JUROR:  No, ma'am.  Always -- my
14    thoughts, always being fair to everyone.
15              THE COURT:  Okay.  Okay.
16              Do you have any further questions for this gentleman?
17              MR. CAMPOAMOR-SANCHEZ:  No.
18              THE COURT:  Does the defense?
19              MS. JUNGHANS:  Nothing further.
20              THE COURT:  Okay.  Thank you.  You can step back out.
21              PROSPECTIVE JUROR:  Okay.  Thank you.
22              (Prospective juror exits courtroom.)
23              MR. CAMPOAMOR-SANCHEZ:  Your Honor, the answer to the
24    first question, about his ability to focus, is one thing that
25    concerns the government in light of his --
```

```
1            MS. JUNGHANS:  We can't hear.

2            MR. TAYLOR:  We can't hear.

3            MR. CAMPOAMOR-SANCHEZ:  What I was saying was, his

4     answer to the Judge's first question about not being able to

5     focus because he has responsibilities for taking care of his

6     wife, seemed of concern, I think, at least to the government.

7     I'm not sure we should be requiring him to serve.

8            THE COURT:  All right.  What is the defense point of

9     view?

10           MS. JUNGHANS:  Your Honor, I don't know.  I think --

11           THE COURT:  You need to come to the microphone for

12    the same reason.

13           MS. JUNGHANS:  If he were -- I think it's admirable

14    that he's willing to be here.  And I think if he were that

15    concerned, he seems like a fellow who is capable of saying so.

16    So I would not strike -- our position is, he should not be

17    stricken for cause.

18           THE COURT:  I was a little torn.  He does seem

19    otherwise to be a very straightforward juror.  And also seemed

20    to be trying not to say, Please excuse me; while I felt, about

21    the second or third question in, he was kind of saying that.

22           And so something I've done, and what I would like to

23    do, is just move him to the bottom of the list.  I don't want

24    to let go someone who could qualify at this time, since we

25    don't know how lucky we're going to be or not be qualifying
```

```
1    jurors.  So I would not excuse him at this time, but I'm going

2    to move him down in the hope that maybe we don't reach him.

3               Does anybody have any objection to that?

4               MR. CAMPOAMOR-SANCHEZ:  No, Your Honor.

5               THE COURT:  All right.  That's what I'm going to do

6    with him.

7               All right.  Let's have the next.

8               (Prospective juror enters courtroom.)

9               THE COURTROOM DEPUTY:  Your Honor, we have Juror

10   Number 0557.

11              Speak into the microphone.

12              THE COURT:  Good afternoon, sir.

13              PROSPECTIVE JUROR:  How you doing?

14              THE COURT:  On the back of your card, I see numbers

15   7, 8, 9, and 12.

16              PROSPECTIVE JUROR:  That's correct.

17              THE COURT:  Number 7 was previous experience, you or

18   a close friend or family member, in law enforcement.  Can you

19   tell me about that?

20              PROSPECTIVE JUROR:  I have family members that are

21   officers, you know, in D.C., in Maryland.

22              THE COURT:  In Metropolitan Police Department?

23              PROSPECTIVE JUROR:  Yes.

24              THE COURT:  And do you ever talk to them about their

25   work?
```

```
1          PROSPECTIVE JUROR:  Off and on.  You know, when we

2     see each other, we might say something.

3          THE COURT:  So, is there anything about that

4     connection that leads you to favor one side or the other in

5     this case?

6          PROSPECTIVE JUROR:  No.

7          THE COURT:  Question Number 8 was working for the

8     federal government.  Is that you or a close friend or family

9     member?

10          PROSPECTIVE JUROR:  Oh, family members and friends.

11          THE COURT:  Okay.  And do you know where they work?

12          PROSPECTIVE JUROR:  Not right offhand.  Like,

13     government -- you know, like, GAO, other offices in the

14     District.

15          THE COURT:  Do you know if anybody works with the

16     Department of Justice, in particular?

17          PROSPECTIVE JUROR:  No.  Not in particular, no.

18          THE COURT:  Is there anything about that you have

19     friends or family that works for the federal government that

20     leads you to tend to favor one side or the other in this case?

21          PROSPECTIVE JUROR:  No.

22          THE COURT:  Question 9 is about work in the legal

23     profession.  You've got some lawyers in your family, too?

24          PROSPECTIVE JUROR:  Well, I work for a law firm.

25          THE COURT:  Okay.
```

```
 1                    PROSPECTIVE JUROR:  Yeah.

 2                    THE COURT:  Where do you work, sir?

 3                    PROSPECTIVE JUROR:  I work for King & Spalding.

 4                    THE COURT:  Okay.  And what kind of work do you do

 5       for them?

 6                    PROSPECTIVE JUROR:  Office services.

 7                    THE COURT:  Do they handle criminal cases, to your

 8       knowledge?

 9                    PROSPECTIVE JUROR:  I believe so.  I'm not really

10       sure.  They cover a wide range of different, you know,

11       categories, like business and, you know, social.

12                    THE COURT:  In connection with your work for the law

13       firm, have you ever had the occasion to deal with anybody from

14       the law firm of Skadden, or deal with Mr. Craig, in particular?

15                    PROSPECTIVE JUROR:  No.  I've known some people from

16       Skadden, back in the day.  I haven't known anybody recently

17       from Skadden.

18                    THE COURT:  Is there anything about your job or

19       working for lawyers -- this case is kind of the government

20       suing a lawyer -- is there anything about that that makes you

21       feel that you would favor one side or the other in this case?

22                    PROSPECTIVE JUROR:  No.  They're about even scale for

23       me, you know.

24                    THE COURT:  Okay.  Question Number 12.  You've been a

25       juror before, I take it?
```

1           PROSPECTIVE JUROR:  Yes.  Yes.

2           THE COURT:  Where did that happen?

3           PROSPECTIVE JUROR:  Here, as a matter of fact.  Not

4     in this particular courtroom, but, yeah, here.

5           THE COURT:  All right.  Do you remember what the case

6     was about?

7           PROSPECTIVE JUROR:  Yeah.  I was an international

8     gun -- I guess you wouldn't call it smuggling, but they were

9     selling guns to another country -- well, it was a -- not

10    entrapment.  What do you call it?  A sting operation on gun

11    owners that were selling guns to an African nation.  You know,

12    they was acting like they was selling guns to an African nation

13    and entrap some gun owners -- you know, gun shop owners as to,

14    you know, their illegal activities.

15          THE COURT:  So this was a criminal case?

16          PROSPECTIVE JUROR:  I guess, yes.

17          THE COURT:  Do you remember if you all reached a

18    verdict in that case?

19          PROSPECTIVE JUROR:  It was a hung jury.

20          THE COURT:  Okay.  All right.  Is there anything

21    about that experience that makes you feel that you have an

22    opinion, one way or the other, about this case?

23          PROSPECTIVE JUROR:  No.

24          THE COURT:  And you understand that that case turned

25    strictly on the evidence and the instructions you got in that

1    case, but this case is going to turn strictly on the evidence

2    and the instructions you hear in this case.  So can you put

3    that one aside and just look into this one?

4              PROSPECTIVE JUROR:  Oh, yeah.

5              THE COURT:  All right.

6              Any questions from the government?

7              MR. CAMPOAMOR-SANCHEZ:  We wanted to inquire, if you

8    could describe for us, what do you do at King & Spalding?

9              PROSPECTIVE JUROR:  Office services.  I run, like,

10   copy machines, mailroom, stuff like that.

11             MR. CAMPOAMOR-SANCHEZ:  Thank you, sir.

12             PROSPECTIVE JUROR:  You're welcome.

13             THE COURT:  Anything from the defense?

14             MS. JUNGHANS:  Yes, Your Honor.  Two questions, if

15   you will.

16             Could we learn when the jury service that was just

17   described was, and which family member --

18             THE COURT:  Let's do one at a time.

19             MS. JUNGHANS:  Okay.

20             THE COURT:  Do you remember when you served on a

21   jury?

22             PROSPECTIVE JUROR:  It was about a couple of three

23   years ago, something like that.

24             MS. JUNGHANS:  Okay.  And could we learn which of

25   your family members are police officers?

```
1                    PROSPECTIVE JUROR:  Cousins.

2                    MS. JUNGHANS:  Okay.  Thank you.

3                    PROSPECTIVE JUROR:  You're welcome.

4                    THE COURT:  Thank you very much, sir.

5                    PROSPECTIVE JUROR:  Thank you.

6                    THE COURT:  You can step back out.

7                    PROSPECTIVE JUROR:  Um-hum.

8                    (Prospective juror exits courtroom.)

9                    THE COURT:  All right.  Let's go on to the next

10       juror.

11                   (Prospective juror enters courtroom.)

12                   THE COURTROOM DEPUTY:  Your Honor, we have Juror

13       Number 0109.

14                   THE COURT:  All right.  I guess you're the first

15       person I say good afternoon to.

16                   PROSPECTIVE JUROR:  Good afternoon.

17                   THE COURT:  You've written numbers 8 and 9 on the

18       back of your card involving -- the first is, you have a close

19       friend or family member or you who work for the federal

20       government.

21                   PROSPECTIVE JUROR:  It's me, and my husband.

22                   THE COURT:  Okay.  And where do you -- tell me about

23       you, first, and then him.

24                   PROSPECTIVE JUROR:  Department of Treasury and

25       Internal Revenue Service, both of us.
```

```
1              THE COURT:  Okay.  And what do you do there?

2              PROSPECTIVE JUROR:  Now, I'm a staff assistant.

3              THE COURT:  What does that mean?

4              PROSPECTIVE JUROR:  Secretary, HR.

5              THE COURT:  And where does he work?

6              PROSPECTIVE JUROR:  Same place -- well, he's retired

7      now, but the same place.

8              THE COURT:  Okay.  So he was in the HR part of the --

9              PROSPECTIVE JUROR:  He was in the IT part.

10             THE COURT:  Okay.  So have either one of you been

11     involved in the prosecution of criminal cases?

12             PROSPECTIVE JUROR:  No.

13             THE COURT:  And so is there anything about the fact

14     that you've been on the federal law enforcement side, and your

15     husband has as well, that makes you feel that you'd favor one

16     side or the other in this case?

17             PROSPECTIVE JUROR:  Neither.

18             THE COURT:  Any questions?

19             MR. CAMPOAMOR-SANCHEZ:  No, Your Honor.

20             THE COURT:  Anything for the defense?

21             MS. JUNGHANS:  No, Your Honor.

22             THE COURT:  Thank you very much.  You can step back

23     out into the jury room.

24             (Prospective juror exits courtroom.)

25             (Prospective juror enters courtroom.)
```

```
 1              THE COURTROOM DEPUTY:  Your Honor, we have
 2    Juror 0967.
 3              THE COURT:  Good afternoon.  You wrote numbers 6, 8,
 4    and 12 in parenthesis, on the back of your card.  So let me
 5    start with 6, which was whether you knew any individual or
 6    entity that I named in that long list.
 7              PROSPECTIVE JUROR:  I'm familiar with Skadden.  I
 8    know someone who worked there.
 9              MS. JUNGHANS:  I apologize.  I can't hear.
10              THE COURT:  Okay.  We need to get the microphone a
11    little bit closer to you.  There you go.
12              PROSPECTIVE JUROR:  Okay.  I am familiar with Skadden
13    and know someone who worked there and has since retired.
14              THE COURT:  And who is the person you knew at
15    Skadden?
16              PROSPECTIVE JUROR:  Her name is Judy.  I don't
17    remember her last name.
18              THE COURT:  And how do you know them?
19              PROSPECTIVE JUROR:  She is my boyfriend's good
20    friend's mother.  It's not a close relationship, but I'm
21    familiar with her and met some of her colleagues at a wedding
22    in March.
23              THE COURT:  Okay.
24              PROSPECTIVE JUROR:  So I've met several people from
25    the firm.
```

```
 1                    THE COURT:  Okay.  To your knowledge, have you ever
 2        met Mr. Craig?
 3                    PROSPECTIVE JUROR:  No.
 4                    THE COURT:  Has anybody ever talked to you about
 5        Mr. Craig?
 6                    PROSPECTIVE JUROR:  No.
 7                    THE COURT:  Do you have any feelings, one way or
 8        another, about this case, knowing that Skadden is involved and
 9        your connection to it?
10                    PROSPECTIVE JUROR:  I don't.
11                    THE COURT:  Question Number 8 was whether you or any
12        close friend or family member worked for the federal
13        government.
14                    PROSPECTIVE JUROR:  I do.
15                    THE COURT:  Where do you work?
16                    PROSPECTIVE JUROR:  The Bureau of the Fiscal Service,
17        under Treasury.
18                    THE COURT:  I'm sorry?
19                    PROSPECTIVE JUROR:  The Fiscal Service.
20                    THE COURT:  And what do you do there?
21                    PROSPECTIVE JUROR:  I work in IT.
22                    THE COURT:  And any other close friends or family
23        members in federal government?
24                    PROSPECTIVE JUROR:  Just coworkers who are friends.
25                    THE COURT:  Is there anything about your affiliation
```

1    with the Department of Treasury that makes you feel that you

2    would favor the government over the defendant, or vice versa,

3    in this case?

4              PROSPECTIVE JUROR:  No.

5              THE COURT:  And so, Question Number 12, you've had

6    some involvement with being on a jury before?

7              PROSPECTIVE JUROR:  I was a juror.  It might have

8    been 11 years ago.  So, I know the question was ten years.  So,

9    that's why the parenthesis.

10             THE COURT:  What court were you a juror?

11             PROSPECTIVE JUROR:  That was in Pennsylvania, in

12   Norristown, a county court.

13             THE COURT:  Okay.  And was it a criminal case or a

14   civil case?

15             PROSPECTIVE JUROR:  Criminal.

16             THE COURT:  Do you remember if you all reached a

17   verdict in that case?

18             PROSPECTIVE JUROR:  We did.

19             THE COURT:  What was the verdict?

20             PROSPECTIVE JUROR:  Guilty.

21             THE COURT:  Do you remember what kind of case it was?

22             PROSPECTIVE JUROR:  A robbery.

23             THE COURT:  Now, in this case, you're going to hear

24   my instructions and the evidence in this case, and you're going

25   to have to apply all of that completely fresh.

1              Is there anything about that experience that would

2      affect your ability to be fair and impartial in this case?

3              PROSPECTIVE JUROR:  No.

4              THE COURT:  Anything?

5              MR. CAMPOAMOR-SANCHEZ:  No, Your Honor.

6              MS. JUNGHANS:  No, Your Honor.

7              THE COURT:  Okay.  Thank you very much.  You can step

8      back into the jury room.

9              (Prospective juror exits courtroom.)

10             (Prospective juror enters courtroom.)

11             THE COURTROOM DEPUTY:  Your Honor, we have Juror

12     Number 0997.

13             THE COURT:  All right.  Good afternoon, sir.

14             PROSPECTIVE JUROR:  Good afternoon.

15             THE COURT:  Just for the record, I'm going to say,

16     the back of your card has the numbers 5, 8, 9, 12, 13, and 21.

17     So let me start with Question Number 5, which was whether you'd

18     read or heard anything about this case in particular.

19             PROSPECTIVE JUROR:  Yes, ma'am, I have.

20             THE COURT:  Okay.  Can you fell me a little bit about

21     that.

22             PROSPECTIVE JUROR:  I follow the news fairly

23     regularly.  So, I've read the *Post*, the *Times*.  Even *Politico,*

24     this morning, had another article about it.

25             THE COURT:  And based on all of that, have you formed

1   any thoughts or opinions about this case?

2           PROSPECTIVE JUROR:  Yes, ma'am, I think I have.

3           THE COURT:  Can you tell me about that?

4           And your candor is appreciated.  That's really what

5   we need to know.  I know you feel awkward.

6           PROSPECTIVE JUROR:  I'm from Washington.  I have a

7   lot of friends who are attorneys.  I've been in marketing.  And

8   it does seem, to me, that it was a backroom spin, and that

9   working with a -- working on a contract for the Ukrainian

10  government, letting that information get out, moving it around,

11  it seemed like a marketing ploy and a spin, to me.

12          THE COURT:  All right.  If I told you that you would

13  have to put aside what you've read and you couldn't read any

14  more and you'd have to put aside any judgments you've formed,

15  do you think you would be able to do that, or are you concerned

16  about your ability to be fair and impartial in this case?

17          PROSPECTIVE JUROR:  I would try very hard, but I

18  think my attitude would still be that it was a great backroom

19  spin, that handing out information like that.  That would be

20  something I would be inclined to believe happened.

21          THE COURT:  All right.  I'm going to ask you to step

22  out for a moment.

23          PROSPECTIVE JUROR:  Okay.

24          THE COURT:  And I'll -- we may or may not need to

25  bring you back in.

```
 1                    PROSPECTIVE JUROR:  Thank you.

 2                    (Prospective juror exits courtroom.)

 3                    THE COURT:  I think we should strike this juror for

 4        cause.  Does anybody disagree with me?

 5                    MR. CAMPOAMOR-SANCHEZ:  Nope.

 6                    MS. JUNGHANS:  No, Your Honor.

 7                    THE COURT:  All right.

 8                    (Prospective juror enters courtroom.)

 9                    THE COURTROOM DEPUTY:  Your Honor, this is Juror

10        Number 0658.

11                    THE COURT:  All right.  Good afternoon.  Your card

12        says numbers 8 and 13.  Question Number 8 was whether you or a

13        close friend or family member had worked for the federal

14        government.

15                    PROSPECTIVE JUROR:  My uncle worked for Treasury.

16                    THE COURT:  Okay.

17                    PROSPECTIVE JUROR:  He's long since retired, though.

18                    THE COURT:  I need you to lean a little closer to the

19        microphone and say that again.

20                    PROSPECTIVE JUROR:  My uncle worked for Treasury, but

21        he's long since retired.

22                    THE COURT:  Do you know what he did there?

23                    PROSPECTIVE JUROR:  No.

24                    THE COURT:  So is there anything about the fact that

25        you had a family member who worked for the federal government
```

1          that leads you to favor one side or the other in this case?

2                    PROSPECTIVE JUROR:  No.

3                    THE COURT:  Question Number 13 was whether you'd ever

4          been accused of, the victim of, or a witness to a crime.

5                    PROSPECTIVE JUROR:  My husband's car was broken into

6          twice three years ago.

7                    THE COURT:  Okay.  And was that in the District of

8          Columbia?

9                    PROSPECTIVE JUROR:  Um-hum.

10                   THE COURT:  You need to say yes or no for the record.

11                   PROSPECTIVE JUROR:  Yes.

12                   THE COURT:  And did the police investigate?

13                   PROSPECTIVE JUROR:  Yes.  And the car was recovered,

14         but we never figured out who did it.  It was just found a

15         couple blocks away.

16                   THE COURT:  Did that leave you with any feelings, one

17         way or the other, about the criminal justice system or the

18         police?

19                   PROSPECTIVE JUROR:  No.

20                   THE COURT:  Is there anything about that experience

21         that makes you feel you couldn't be fair and impartial in this

22         case?

23                   PROSPECTIVE JUROR:  No.

24                   THE COURT:  Any questions from the government?

25                   MR. CAMPOAMOR-SANCHEZ:  Wondering if she could

1    explain to us what she does at the National Academy of Science.

2          PROSPECTIVE JUROR:  I'm a project manager for the

3    health and medicine division.  So, I essentially oversee

4    production of the -- or, the health and medicine division's

5    final reports and proceedings.

6          THE COURT:  Okay.  Anything further from the defense?

7          MS. JUNGHANS:  No, Your Honor.

8          THE COURT:  Okay.  Thank you very much.  You can step

9    out.

10          (Prospective juror exits courtroom.)

11          (Prospective juror enters courtroom.)

12          THE COURTROOM DEPUTY:  Your Honor, we have Juror

13    0213.

14          THE COURT:  All right.  Good morning -- or, I guess

15    it's good afternoon.  You have no numbers written on the back

16    of your card; is that correct?

17          PROSPECTIVE JUROR:  Yeah.

18          THE COURT:  You're Juror 213.

19          PROSPECTIVE JUROR:  (Nods head.)

20          THE COURT:  Okay.  And I just want to make sure that

21    that's because you didn't have any questions that you had an

22    answer yes to, and not because we didn't give you a pencil or

23    you got confused.

24          PROSPECTIVE JUROR:  Oh, no.  This is my first time,

25    so...

```
1            THE COURT:  Okay.  I need you to speak into the
2       microphone.
3            PROSPECTIVE JUROR:  Oh, I'm sorry.
4            This is my first time, so...
5            THE COURT:  That's fine.  You don't have to have
6       yes or no answers.  I have -- can you tell us where you work
7       right now?
8            PROSPECTIVE JUROR:  Starbucks.
9            THE COURT:  What do you do there?
10           PROSPECTIVE JUROR:  I'm a shift manager.
11           THE COURT:  Okay.  And is there anything about
12      anything you've heard so far that makes you feel that you
13      couldn't be a fair and impartial juror in this case?
14           PROSPECTIVE JUROR:  No, ma'am.
15           THE COURT:  Okay.  All right.
16           Any questions?
17           MR. CAMPOAMOR-SANCHEZ:  No, Your Honor.
18           THE COURT:  Anything from the defense?
19           MS. JUNGHANS:  No.  No, Your Honor.  Thank you.
20           THE COURT:  Okay.  Thank you.  You can step back into
21      the jury room.
22           PROSPECTIVE JUROR:  Thank you.
23           (Prospective juror exits courtroom.)
24           THE COURTROOM DEPUTY:  Next?
25           THE COURT:  All right.  Let's have the next juror.
```

1              (Prospective juror enters courtroom.)

2              THE COURTROOM DEPUTY:  Your Honor, this is Juror

3    0385.

4              THE COURT:  All right.  Ma'am, there's only one

5    number on the back of your card, and that was Number 7.

6              PROSPECTIVE JUROR:  Yes.

7              THE COURT:  And that was my question about whether

8    you or a family member worked in law enforcement.

9              PROSPECTIVE JUROR:  Sure.  So, not a family member

10   and not even a close friend.  However, two years ago, for a

11   year and a half, my former roommate was a federal probationary

12   officer here.

13             THE COURT:  Here in the District of Columbia, in this

14   courthouse?

15             PROSPECTIVE JUROR:  Here in this courthouse, I

16   believe, yes.

17             THE COURT:  And did that person talk about their work

18   and their cases with you?

19             PROSPECTIVE JUROR:  Never.  It really -- it never

20   really came up, and I haven't spoken to her since.  We were

21   just cordial roommates.

22             THE COURT:  Okay.  Is there anything about that

23   experience that makes you favor the defense or the government

24   in this case or gives you any concerns about being impartial in

25   this case?

```
 1              PROSPECTIVE JUROR:  Certainly not.  I just wanted

 2      full disclosure, just in case, because I don't know how the

 3      process works.

 4              THE COURT:  All right.  Well, we appreciate your

 5      candor.  That's the whole point of this exercise.

 6              Any questions from the government?

 7              MR. CAMPOAMOR-SANCHEZ:  Just very briefly.  Can you

 8      tell us what you do for work?  All we have listed is

 9      International Student House.

10              PROSPECTIVE JUROR:  Yes.  So it's a residential

11      facility in Dupont area for graduate students coming from

12      around the world, about 100 at any time, from about 35

13      different countries.  They simply live there and I help engage

14      in the community activities, as well as with our board of

15      directors, who come from, obviously, the Washington community.

16              MR. CAMPOAMOR-SANCHEZ:  Thank you.

17              THE COURT:  Anything further?

18              MS. JUNGHANS:  Nothing.

19              THE COURT:  All right.  Okay.  Thank you for clearing

20      that up.  And you can step out.  And thank you.

21              PROSPECTIVE JUROR:  Thank you.

22              (Prospective juror exits courtroom.)

23              THE COURT:  All right.  Yes.

24              (Prospective juror enters courtroom.)

25              THE COURTROOM DEPUTY:  Your Honor, this is
```

1   Juror 0623.

2            THE COURT:  All right.  Good afternoon.

3            PROSPECTIVE JUROR:  Good afternoon.

4            THE COURT:  You've got Number 12 on the back of your

5   card, so you've been through this before.  Can you tell us

6   about your prior jury experience?

7            PROSPECTIVE JUROR:  During any entire life, I've

8   probably served on about 12 juries, maybe.

9            THE COURT:  You must like --

10           PROSPECTIVE JUROR:  I want to be a retired juror, I

11   guess.  Yes.  Yes.

12           THE COURT:  All right.  Well, tell us about the most

13   recent go-rounds.  Have you ever been a juror in this building?

14           PROSPECTIVE JUROR:  No, I have not.

15           THE COURT:  And so, you've been a juror over in

16   Superior Court?

17           PROSPECTIVE JUROR:  Correct.

18           THE COURT:  Would you say -- how does that break down

19   between civil cases and criminal cases?

20           PROSPECTIVE JUROR:  Actually, they were both.  One

21   was a criminal case with the District of Columbia prosecuting a

22   drug case, and the other was a civil case with a dog bite.

23           THE COURT:  And in the criminal case, was the jury

24   able to reach a verdict?

25           PROSPECTIVE JUROR:  Yes.

1          THE COURT:  Do you remember what it was?

2          PROSPECTIVE JUROR:  Yeah.  Both cases were around

3   eight to ten years back, both.  On the dog bite case, we did

4   award the victim a settlement.  I don't remember the exact

5   dollar amount, though.

6          THE COURT:  Okay.  And the criminal case?

7          PROSPECTIVE JUROR:  Criminal case, that was -- that

8   was -- we gave the prosecutor the --

9          THE COURT:  You found the person guilty?

10          PROSPECTIVE JUROR:  Yes.  Yes.

11          THE COURT:  Okay.  So have there been any other

12   criminal cases where you've been on a jury?

13          PROSPECTIVE JUROR:  No, Your Honor.

14          THE COURT:  So when you've mentioned the many times,

15   you've been summoned many times, but those are the only ones --

16          PROSPECTIVE JUROR:  No.  I've actually served, in my

17   life, about 12 times.

18          THE COURT:  In your lifetime?

19          PROSPECTIVE JUROR:  Yeah.

20          THE COURT:  Okay.  And were the other times also in

21   D.C., or were they other places?

22          PROSPECTIVE JUROR:  In Florida.

23          THE COURT:  And in Florida did you sit on any

24   criminal cases?

25          PROSPECTIVE JUROR:  They were mostly civil.  But it

1    was, like, many, many years back.  I don't remember the

2    whole...

3              THE COURT:  Is there anything about any of that jury

4    service that makes you feel that you couldn't be fair and

5    impartial in this case?

6              PROSPECTIVE JUROR:  No.

7              THE COURT:  And you understand, obviously, that those

8    cases turned upon the evidence and the jury instructions in

9    those cases, and you have to wipe the slate clean and just

10   decide this case based on the evidence and jury instructions in

11   this case?

12             PROSPECTIVE JUROR:  Correct.

13             THE COURT:  Okay.

14             Are there any questions from the government?

15             MR. CAMPOAMOR-SANCHEZ:  No, Your Honor.

16             THE COURT:  Any questions from the defense?

17             MS. JUNGHANS:  Can we understand a little bit more

18   about what you do at the Smithsonian?

19             PROSPECTIVE JUROR:  I work as a sales associate for

20   the Smithsonian.

21             MS. JUNGHANS:  Well, I --

22             THE COURT:  So what do people sell?  What would that

23   be?

24             PROSPECTIVE JUROR:  Work in the retail division.

25             THE COURT:  I'm sorry.  The what?

```
 1                    PROSPECTIVE JUROR:  Retail division.

 2                    THE COURT:  Okay.  All right.

 3                    MS. JUNGHANS:  Thank you.

 4                    THE COURT:  They sell lots of interesting things.

 5                    All right.  Okay.  Sir, you can step back into the

 6       jury room.

 7                    PROSPECTIVE JUROR:  Okay.

 8                    (Prospective juror exits courtroom.)

 9                    THE COURT:  That's everyone we have back there; is

10       that correct?

11                    THE COURTROOM DEPUTY:  Yes.

12                    THE COURT:  All right.  I think those individuals can

13       be released to go to lunch and come back next door, let's say,

14       1:30?  And then I feel like we should go through another stack,

15       it's been going so well; we usually do about an hour.

16                    And so, why don't I bring one row back?

17                    (Off-the-record discussion between courtroom deputy

18       and Court.)

19                    THE COURT:  Okay.  So let's hear from one more row.

20       And so the other jurors we just heard from and all the other

21       jurors can be released and return next door at two, and then

22       you'll put the next group in here.

23                    How is that?

24                    THE COURTROOM DEPUTY:  That's fine.

25                    THE COURT:  Okay.  Does that work for everybody?
```

1           MS. JUNGHANS:  Yes.

2           MR. CAMPOAMOR-SANCHEZ:  Yes.

3           THE COURT:  All right.  Okay.  Let's go.

4           (Pause.)

5           THE COURTROOM DEPUTY:  Your Honor, we have Juror

6     Number 1286.

7           THE COURT:  All right.  Good afternoon.

8           PROSPECTIVE JUROR:  Hello.

9           THE COURT:  You have answered questions number 4, 6,

10    7, 8, 9, 13, and 26 with a yes.

11          PROSPECTIVE JUROR:  Yes.

12          THE COURT:  Let me start with Question Number 4,

13    which is whether you know the defendant.

14          PROSPECTIVE JUROR:  I worked at Skadden Arps from

15    1992 until 2002.  So, when I heard -- but I don't overlap with

16    the date of this case.  But when I heard the name, it sounded

17    familiar.  And then when you said Skadden, I was, like, no

18    wonder it sounds familiar.  I don't know if he worked there

19    then.

20          But since I still have friends that work there, and I

21    keep up with it because I worked there for so long, I probably

22    just, like, have seen or heard his name in the course of

23    following Skadden Arps news as an interested party.

24          THE COURT:  When I mentioned names of people from

25    Skadden who might testify --

```
 1              PROSPECTIVE JUROR:  Yes.

 2              THE COURT:  -- do you recognize --

 3              PROSPECTIVE JUROR:  Ken Gross is one name.  He's

 4      someone I worked with when I was there.

 5              THE COURT:  I'm sorry.  What's the name?

 6              PROSPECTIVE JUROR:  Ken Gross.

 7              THE COURT:  Okay.  So if Ken Gross were a witness in

 8      this case, do you already bring some thoughts to the courtroom

 9      about his credibility, whether you would believe his testimony?

10              PROSPECTIVE JUROR:  I would assume him to be

11      credible.  I know nothing else.  I have great respect for when

12      I worked there and all the people I worked with.  So I would

13      come in erring on the side of, I trust him, yes.

14              THE COURT:  One of the questions I had asked was

15      whether you'd heard or read anything about the case.  And as

16      someone who keeps up with Skadden --

17              PROSPECTIVE JUROR:  Yes.

18              THE COURT:  -- you didn't put that as a yes here, but

19      have you heard or read about this case?

20              PROSPECTIVE JUROR:  This case, being that it was from

21      so many years ago, I can't say definitively, yes, this case,

22      and give you facts about it.  But I'm someone who follows the

23      news greatly.  I'm a painter.  I paint about politics all the

24      time.  Part of my job is to follow the news and paint my

25      opinions and paint about the news.
```

1          So I can't say I haven't, but I couldn't sit here and

2     give you facts about the case.

3          THE COURT:   Okay.   But are you -- do you think --

4     putting aside whether you've heard anything about the events

5     when they were taking place, since this case has been in this

6     courthouse, have you heard anything about the government's case

7     or the defense to the case or anything like that?

8          PROSPECTIVE JUROR:   Not knowing the details of the

9     specifics of this case, but I certainly do -- I have the news

10    on all day, every day.   My husband is also in the same field as

11    I do.   We have either Fox News on or CNN on, or we watch

12    Democracy Now.   He's a big InfoWars watcher.   So even when the

13    news isn't on, I'm hearing about it from him.   So, again, I

14    don't want to say anything that's not 100 percent.

15         I can't say specifically to this case, but in -- in

16    the larger story of Ukraine and Paul Manafort and all of that,

17    yes, it's something I followed pretty closely.   So I don't know

18    how this case fits into the bigger story.

19         THE COURT:   But -- and I know you can't say what you

20    may have heard that you don't remember.

21         PROSPECTIVE JUROR:   Right.   Right.

22         THE COURT:   But I guess I want to know, have you

23    heard anything about Skadden's work with Mr. Manafort or

24    Skadden and registering as a foreign agent or Mr. Craig and any

25    of that?

1      Does any of that ring a bell for you?

2      PROSPECTIVE JUROR:  Yes.  Yes.

3      THE COURT:  Tell me what you've heard.

4      PROSPECTIVE JUROR:  I just know I -- you know,

5  nervousness being put on the spot of giving facts.

6      THE COURT:  And I'm not saying they're facts.  I just

7  want to know what you've heard.

8      PROSPECTIVE JUROR:  Okay.  Good point.

9      I just know all of the elements of the case that you

10  put forth ring bells.  I can't say, in good faith, no, I don't

11  know anything about this.  Just following the news close, like

12  I say, all the names are familiar.  All the vague details of

13  the case are things I have followed, read about, taken an

14  interest in, and probably painted about, either specifically or

15  on the periphery, in my past several years.

16      THE COURT:  Did you paint about Paul Manafort?

17      PROSPECTIVE JUROR:  Paul Manafort specifically, no.

18      I've painted a lot about -- during this

19  administration, I've painted a lot about collusion and foreign

20  agents and whatnot.  I wouldn't say their likenesses are not in

21  my paintings.

22      THE COURT:  Right.  So does any of that, being

23  informed and active and concerned, bring you to this courtroom

24  with an opinion, one way or the other, for either side in this

25  case?

1      PROSPECTIVE JUROR:  I would have to honestly say yes,

2      in some respects.  I would have to say, I -- I'm not coming in

3      with a clear, unbiased -- I can't say I'm unbiased.  I have

4      lost a bit of confidence in, I think, the entire system.  With

5      as much news as I've watched, I have very good faith -- I'd

6      like to say I'm very good faith.  I really -- I try really hard

7      to hear both sides and find the truth with all the news we have

8      right now.  And I have a bit of a crisis of believing anyone, I

9      have to say.

10      THE COURT:  So how does that cut in this case?  Do

11      you have problems with both sides, or do you think it would

12      tend for you to be more skeptical of one than the other?

13      PROSPECTIVE JUROR:  It would honestly depend partly

14      on, perhaps, what administration some of the district attorneys

15      were appointed under.  I just feel everyone is out to get

16      everyone else right now.  And I hate to say that in a court of

17      law, as an American, honestly.  But I worry that everyone is so

18      dead set on proving their side, I have a hard time believing

19      anyone.  Maybe that makes me unbiased instead of biased.  But

20      that's my honest feeling on that.

21      THE COURT:  All right.  Well, let me go through just

22      the questions you answered yes, so I can make sure I have

23      elicited everything that you wanted to tell us.

24      PROSPECTIVE JUROR:  Yes.

25      THE COURT:  So Number 26, I'm going to jump ahead to

1    where I said, Is there anything that I haven't asked about?  So

2    what is that?

3              PROSPECTIVE JUROR:  I feel like that's the last thing

4    I said, which is kind of the crisis of not knowing who to

5    believe, believing no one, and believing everyone is just

6    trying too hard to condemn the other side with a political

7    motivation.

8              THE COURT:  All right.  That's a little exhausting,

9    also.

10             PROSPECTIVE JUROR:  It is.  And, no, I -- it does

11   exhaust me and upsets me.  I don't like that I feel that way.

12   And I have been brought to feel that way in the past few years.

13             THE COURT:  Question Number 7, I asked if you or a

14   close friend or family member had ever worked in law

15   enforcement.

16             PROSPECTIVE JUROR:  Yes.  My brother-in-law is

17   ex-police.  And he just retired from the FBI, both -- first as

18   an agent, and then as an attorney for the FBI in the Boston

19   office.

20             THE COURT:  In which office?

21             PROSPECTIVE JUROR:  Well, first, D.C., and then most

22   recent -- he refired from Boston, but he was in D.C. for a

23   number of years before that.

24             THE COURT:  Now, I know you've generally talked about

25   skepticism about both sides.  But is there anything about

1    having a relative who worked for the FBI that would tend --

2    make you tend to favor law enforcement or to believe law

3    enforcement just for that reason?

4              PROSPECTIVE JUROR:  I have great faith in law

5    enforcement.  I've lived in the city for 30 years.  I've seen a

6    lot.  I've been, thankfully, not a victim of any violent crime.

7    I've seen a lot of crime.  In my last two places of residence,

8    I've lived with a view out to an alley side of a building.  So

9    I've seen a lot more than I care to see, as far as crime goes

10   that goes on in the dark.

11             And on the flip side, I've seen a lot of police

12   activity from that, and I have great respect for the kind of

13   bad things I've seen and how the police have handled it.  And

14   they've been -- in a way that I'm, like, just so happy to say I

15   have personal experience seeing police deal in such upstanding

16   ways with people.

17             So I -- I forgot where the question led, but I would

18   say I have great respect for the police.

19             THE COURT:  Okay.  Does it lead you to favor the

20   government's case over the defense case in this instance?

21             PROSPECTIVE JUROR:  In this instance, I don't know,

22   when it comes to it, because that's not a police situation;

23   it's the government.  But, you were asking that as a segue to

24   my brother-in-law being in law enforcement and the FBI.  I

25   respect him, I've respected his opinions.

1          But going back to the bigger case of everyone being a

2     little bit crazy these days pushing their agenda, as a member

3     of my family and someone I respect, it does worry me that he

4     has kind of gone a bit off -- in the past couple of years,

5     since -- this has nothing to do with the Trump presidency --

6     but since Trump has become elected, he has become a vocal Trump

7     derangement-type individual.

8          Which upsets me, knowing that he worked for the

9     police -- I mean, for the FBI during the election.  And he is,

10     therefore, one of the FBI agents who I know worked for the FBI

11     and is so hugely biased.  That does jade me a little bit, that

12     he's not the only one in the FBI that could be quite jaded and

13     pushing an agenda.

14          THE COURT:  Do you think you're going to be sitting

15     here trying to figure out what agenda, if any, is being

16     advanced by either side in this case?

17          PROSPECTIVE JUROR:  Honestly, yes.

18          THE COURT:  Question Number 8 was whether you knew

19     anyone who worked in the federal government.

20          Is that the same relative who worked in law

21     enforcement?

22          PROSPECTIVE JUROR:  No.  One of my close girlfriends

23     worked for FEMA and was working for Homeland Security before

24     that, as an attorney.  An attorney in both -- for both -- not

25     organizations -- for both FEMA and Homeland Security.  She was

1    an attorney.

2              THE COURT:  Okay.  And is that -- I asked if you or a

3    close friend or family worked in the legal profession.

4              Is that the same person, or do you have more --

5              PROSPECTIVE JUROR:  Other girlfriends.  That's pretty

6    much -- yeah.

7              THE COURT:  You've met a few lawyers?

8              PROSPECTIVE JUROR:  I've known a few lawyers.  In

9    working at Skadden for ten years, of course, I know a lot of

10   lawyers.

11             THE COURT:  Okay.  All right.  Question Number 13 was

12   whether you personally or a close friend or family member had

13   ever been accused of, a victim of, or a witness to a crime.

14             PROSPECTIVE JUROR:  Witness to a crime, you said you

15   didn't have to be personally involved.  So that one, I answered

16   yes because of all the crime I've witnessed in the 30 years of

17   living in D.C.  A neighbor of mine in the building we're living

18   in now walked outside our front door a couple of years ago, and

19   just got, you know, hit by a homeless man for no reason, other

20   than he thought she was evil, or whatever his story at the

21   time.  And seeing a lot of crime, just out my window, out my

22   front door in the course of doing business and living in D.C.

23   for 30 years in several different neighborhoods.

24             THE COURT:  All right.  We may have some more

25   questions for you; we may.

1          PROSPECTIVE JUROR:  Okay.

2          THE COURT:  I'm going to ask you to step out for a

3     moment with Mr. Haley, and I'll consult with the group.

4          PROSPECTIVE JUROR:  Okay.

5          (Prospective juror exits courtroom.)

6          MR. CAMPOAMOR-SANCHEZ:  Your Honor, we think it's

7     appropriate to excuse this juror for cause.

8          THE COURT:  Okay.  I -- you've got to learn to -- you

9     have a very soft -- not a soft voice, but you kind of speak --

10    it's a low voice, and so you have to make sure you are

11    somewhere in the vicinity of the microphone when you speak.

12         MR. CAMPOAMOR-SANCHEZ:  Will do, Your Honor.  And we

13    believe she should be excused for cause.

14         THE COURT:  All right.  What's the defendant's point

15    of view?

16         MS. JUNGHANS:  Your Honor, I think we need to know

17    more.  I mean, she says, "I don't trust people."  But

18    evidently, she doesn't trust anybody.  And I would really like

19    to understand whether she believes she could be fair.  I would

20    like to understand, when she says she has painted about

21    collusion and foreign agents.  What does that mean?  I don't

22    know whether she's, like, a caricaturist or what.

23         THE COURT:  She's an artist.  I am very concerned.  I

24    mean, she worked at Skadden for ten years.  There's someone who

25    is a witness who she knows personally, who she believes in his

1    credibility.  And then she is deeply -- she's concerned about

2    Manafort and collusion and foreign agents.  And she's going to

3    be sitting here trying to figure out who's advancing whose

4    agenda.

5            And I certainly got the feeling that if anybody had a

6    Trump association, the Manafort association, that she's going

7    to bring all kinds of problematical opinions to bear.  She

8    hasn't quite figured out yet which way it cuts in this case,

9    but she's going to be trying to figure out, which way it cuts

10   in this case.  And, therefore, I believe, in an abundance of

11   caution, that she should be excused for cause.

12           Do you object to that?

13           MS. JUNGHANS:  May I consult with my colleagues?

14           THE COURT:  Yes.

15           (Pause.)

16           MS. JUNGHANS:  Your Honor, we would ask that the

17   Court ask the juror whether, in spite of all these concerns she

18   has, she has the ability to set aside whatever opinions she has

19   and whether she has the ability to be fair.

20           THE COURT:  I'll ask her.  I have to say, at this

21   point, I'm inclined to grant the government's motions.  I'm

22   concerned that she has a host of opinions that she could bring

23   to bear on both sides.  But I think we should ask her that

24   question.

25           MS. JUNGHANS:  Thank you, Your Honor.

1    THE COURT:  All right.  Let's bring her back in.

2    (Prospective juror returns to courtroom.)

3    THE COURTROOM DEPUTY:  Your Honor, again, Juror 1286.

4    THE COURT:  All right.  I'm going to say, I have one

5    more question for you.  That doesn't mean that might not prompt

6    follow-up questions.

7    PROSPECTIVE JUROR:  Okay.

8    THE COURT:  But I do have one question for you.  And

9    that is:  You've detailed a lot of experience and thoughts and

10   opinions you've had on a lot of different things.  And I want

11   to know if, given all of that, you feel, sitting here today,

12   that you could sit in this jury box and be fair and impartial

13   to both sides and base your case on the evidence in this

14   courtroom and the law that I instruct you, without any favor of

15   one side or the other?

16   PROSPECTIVE JUROR:  I can honestly say I -- I fancy

17   myself a very intelligent and rational human being who spends a

18   lot of time, like I said, listening to the news and listening

19   to both sides, trying to unearth the truth on a daily basis.

20   And I have found that I don't know who to believe anymore.

21   So I can say, my answer is, I can sit here in very

22   good faith and listen to both sides and be impartial in

23   listening.  I just -- I mean, I'm upset to say it, even about

24   myself, emotionally.  Like, I'm upset to say, I don't know how

25   to believe people anymore.

```
1              THE COURT:  Do you have any follow-up questions you
2     would like to ask?
3              MR. CAMPOAMOR-SANCHEZ:  No, Your Honor.
4              THE COURT:  Anything from the defense?
5              MS. JUNGHANS:  Your Honor, I guess -- I don't want to
6     belabor this, but I guess we'd just sort of like to get --
7              THE COURT:  Just ask the question.  You don't have to
8     ask me to ask it.
9              MS. JUNGHANS:  -- to the bottom line.
10             THE COURT:  Just ask the question.
11             MS. JUNGHANS:  Which is, can she be fair?
12             THE COURT:  Would you ask her the question that you
13    would like her to answer?
14             MS. JUNGHANS:  Oh, sure.  Sorry.
15             THE COURT:  Yes.
16             MS. JUNGHANS:  Ma'am, what we're trying to -- well,
17    you've said you can't -- you know, you're worried about the
18    ability to believe people.  But is that sort of an equal
19    opportunity concern?  Could you take the issues in this case
20    and listen to both sides and then try to sort through the
21    evidence in an evenhanded way?  That's the question.
22             PROSPECTIVE JUROR:  With all the direction, of
23    course, we are supposed to only come into this with the facts
24    that I hear.  And, like I said, I'm rational and I can listen
25    to facts on both sides.  As a human being, I don't know how any
```

1    of us can promise that we're not going to bring our biases in,

2    and bring more in than I heard.  I can try to do that, but I

3    will wonder.

4           I don't know enough about this level of the court

5    system to know about the U.S. district attorneys, the assistant

6    U.S. district attorneys, and who -- which administration they

7    came in under and what their biases might be and what case

8    they're trying to plead and if it has any political leanings.

9           And I hate to say that.  I hate -- and I don't mean

10   any disrespect to anyone, but I'm here to be honest on my

11   feelings, and that is my feelings.  And that's why I get upset

12   about it.  I hate being untrusting of our country and my

13   government and people as -- what you all are coming in and

14   trying to prove.  But that is my honest answer.

15           MS. JUNGHANS:  I think I understand.  Thank you.

16           THE COURT:  All right.  Thank you.

17           Any further questions?

18           MR. CAMPOAMOR-SANCHEZ:  No Your Honor.

19           THE COURT:  Thank you.  And we appreciate your

20   candor.  That's why you're here.

21           PROSPECTIVE JUROR:  Yes.  I appreciate being asked.

22           Thank you.

23           THE COURT:  All right.  You all -- okay.

24           (Prospective juror exits courtroom.)

25           THE COURT:  I would just ask you to save your

1    internal communications until after they leave.  I could almost

2    hear you, and I don't want the witnesses -- the jurors to hear

3    you.

4                MS. JUNGHANS:  Thank you, Your Honor.

5                THE COURT:  What's the defense position right now?

6                MS. JUNGHANS:  She had an opportunity to say she

7    could be fair and she didn't say it, so we would agree.

8                THE COURT:  All right.  That's what we're going to

9    do.

10                Let's have the next juror.

11                (Prospective juror enters courtroom.)

12                THE COURTROOM DEPUTY:  Your Honor, this is Juror

13    Number 0914.

14                THE COURT:  All right.  Sir, I just brought you in, I

15    notice that there are no numbers on the back of your card, and

16    I want to make sure that that's because you didn't have a yes

17    answer to any questions, and not because we forgot to give you

18    a pencil or you didn't understand the question.

19                PROSPECTIVE JUROR:  No.  That's correct, there was no

20    yes answers.

21                THE COURT:  Okay.  And does the government have any

22    questions for this juror?

23                MR. CAMPOAMOR-SANCHEZ:  Would you mind telling us a

24    little bit about what you do at PWC?

25                PROSPECTIVE JUROR:  Sure.  I am an accountant over

```
 1        structured finance.
 2                     MS. JUNGHANS:  I'm sorry?
 3                     THE COURT:  Can you -- yeah, there you go.
 4                     PROSPECTIVE JUROR:  Oh, sure.
 5              I'm an accountant working in structured finance,
 6        working on transactions and other advisory matters.
 7                     MR. CAMPOAMOR-SANCHEZ:  Thank you.
 8                     THE COURT:  Anything from the defense?
 9                     MS. JUNGHANS:  No, Your Honor.  Thank you.
10                     THE COURT:  Thank you very much, sir.  You can step
11        back out.
12                     (Prospective juror exits courtroom.)
13                     THE COURT:  All right.  Let's bring the next juror.
14                     (Prospective juror enters courtroom.)
15                     THE COURTROOM DEPUTY:  Your Honor, this is Juror
16        Number 0113.
17                     THE COURT:  All right.  Good afternoon, sir.
18                     PROSPECTIVE JUROR:  Hi.  How are you?
19                     THE COURT:  Good.  How are you?
20                     PROSPECTIVE JUROR:  Good.  Thank you.
21                     THE COURT:  All right.  We've got one number on the
22        back of your card, number 9, which is working -- either you or
23        a close friend or family member in the legal profession.
24                     PROSPECTIVE JUROR:  Um-hum.
25                     THE COURT:  Can you tell us about that?
```

```
1              PROSPECTIVE JUROR:  So, my friend is a lawyer.  He's

2     actually running for Baltimore City Council.  He was at my

3     house this weekend.

4              THE COURT:  Okay.

5              PROSPECTIVE JUROR:  Yeah.

6              THE COURT:  Do you know what kind of law he

7     practices?

8              PROSPECTIVE JUROR:  Housing.

9              THE COURT:  Okay.  Is there anything about the fact

10    that you have a close friend who's a lawyer -- has he ever done

11    criminal work, to your knowledge?

12             PROSPECTIVE JUROR:  I think he's doing some now.  I

13    think he's in Howard County waiting for people to get arrested

14    so he can post bail for them.  I think that's what he said, I'm

15    pretty sure.

16             THE COURT:  Okay.

17             PROSPECTIVE JUROR:  Yeah.

18             THE COURT:  Well, is there anything about that that

19    makes you favor one side against the other in this case?

20             PROSPECTIVE JUROR:  No.

21             THE COURT:  Okay.  Any questions from the government?

22             MR. CAMPOAMOR-SANCHEZ:  Can you tell us what you

23    do -- a little bit about what you do for work?

24             PROSPECTIVE JUROR:  What do I do?

25             MR. CAMPOAMOR-SANCHEZ:  Yes.
```

 1              PROSPECTIVE JUROR:  I work with L'Oréal USA.  So I'm

 2      one of the educators for one of their beauty brands.

 3              MR. CAMPOAMOR-SANCHEZ:  Okay.

 4              PROSPECTIVE JUROR:  Yeah.

 5              MR. CAMPOAMOR-SANCHEZ:  Thank you.

 6              PROSPECTIVE JUROR:  Thank you.

 7              THE COURT:  Anything from the defense?

 8              MS. JUNGHANS:  No, Your Honor.  Thank you.

 9              THE COURT:  Okay.  Thank you very much, sir.

10              (Prospective juror exits courtroom.)

11              THE COURTROOM DEPUTY:  Your Honor, this is Juror

12      Number 0727.

13              THE COURT:  All right.  Good afternoon, sir.  And you

14      have greater faith in my eyesight than I do, but I'm going to

15      do the best that I can.

16              It seems to me that you have numbers 5, 6, 7, 8, and

17      9 on the back of your card, 10 and 11 are circled, and then

18      there's 12 and 13.

19              Does the circle mean anything in particular?

20              PROSPECTIVE JUROR:  The way the question was phrased,

21      one is regarding lobbying, one is regarding public affairs.

22      And as exactly asked, I would not have written them, but I

23      didn't know what the point of the question was.

24              THE COURT:  Okay.  You did or did not know what the

25      point of the question was?

1          PROSPECTIVE JUROR:  I do not know what the point of

2     the question is.

3          THE COURT:  Well, with respect to both of those, what

4     we're trying to figure out is whether you or a close friend or

5     family member work in the field of lobbying or public relations

6     or media relations or anything like that.

7          Is there anything about those that you have a

8     connection to?

9          PROSPECTIVE JUROR:  I am a lobbyist.

10         THE COURT:  Okay.  And where do you work right now?

11         PROSPECTIVE JUROR:  I work for a nonprofit called the

12    Appalachian Trail Conservancy.

13         THE COURT:  And so is your lobbying in the field of

14    environmental issues?

15         PROSPECTIVE JUROR:  Mostly.

16         THE COURT:  Does that -- this case may involve

17    lobbying and lobbyists.  Is there anything about the fact that

18    you do that kind of work or you know people who do that kind of

19    work that makes you feel that you couldn't be fair and

20    impartial to both sides at this point?

21         PROSPECTIVE JUROR:  No.

22         THE COURT:  In connection with your activities, have

23    you also worked with PR or media people to advance your

24    positions?

25         PROSPECTIVE JUROR:  Yes.

1          THE COURT:  And if this case involves that, is there

2     anything about that that would make you feel like you just,

3     Well, I know how that works, as opposed to just listening to

4     what the witnesses here say about what they did?

5          PROSPECTIVE JUROR:  I don't think so.

6          THE COURT:  Let me go back up, then, to Question

7     Number 5, which was whether you'd read or heard anything about

8     this case.

9          PROSPECTIVE JUROR:  Yes.

10          THE COURT:  Tell me about that.

11          PROSPECTIVE JUROR:  Well, I remember reading about,

12     pretty much, the -- the prosecution of and imprisonment of the

13     former Ukrainian prime minister.  And then I have followed this

14     case -- well, not this specific case, but everything about the

15     Special Counsel's investigation.

16          THE COURT:  Are you familiar with the report that was

17     done into the prosecution of the Ukrainian prime minister?

18          PROSPECTIVE JUROR:  I do not have a specific

19     recollection of that report.

20          THE COURT:  Okay.  And in terms of the Office of

21     Special Counsel and their work, do you know anything about this

22     case and how it came to be, or the facts about Skadden or

23     Mr. Craig and registering?  Any of that?

24          PROSPECTIVE JUROR:  Not specifically.

25          THE COURT:  Question number 6 was whether you knew

1  any of the people who I named or the entities that I named.

2  PROSPECTIVE JUROR:  I do not.  But my parents went to

3  law school with the special counsel.

4  THE COURT:  Mr. Mueller?

5  PROSPECTIVE JUROR:  Yes.

6  THE COURT:  Okay.  And so based on their knowledge of

7  him, do you have an opinion about his integrity or his work or

8  anything that you bring to this courtroom today?

9  PROSPECTIVE JUROR:  Yes.

10  THE COURT:  Tell me about that.

11  PROSPECTIVE JUROR:  I have a very high opinion of him

12  and his work.

13  THE COURT:  And do you think that you could set that

14  aside and be fair to both sides in this case and just base your

15  case on just the evidence that you hear in this courtroom?

16  PROSPECTIVE JUROR:  Yes.

17  THE COURT:  Question Number 7 is, work in law

18  enforcement.  Someone, a close friend or family member, has

19  worked in law enforcement?

20  PROSPECTIVE JUROR:  I used to work in police

21  oversight.  My bother is an assistant United States attorney.

22  My mother is a former regulator.

23  THE COURT:  So, do those affiliations make you feel

24  that you would favor the government in this case, as opposed to

25  the defense?

1              PROSPECTIVE JUROR:  No.

2              THE COURT:  Question Number 8 was, work for the

3      federal government.  Is that the same associations that we just

4      talked about?

5              PROSPECTIVE JUROR:  And I used to work in the U.S.

6      Senate.

7              THE COURT:  Okay.  And where did you work for the

8      Senate?

9              PROSPECTIVE JUROR:  I worked for the Committee on

10     Indian Affairs.

11             THE COURT:  On the Hill?

12             PROSPECTIVE JUROR:  Yes.

13             THE COURT:  And Question 9 was, work in the legal

14     profession.

15             PROSPECTIVE JUROR:  I'm a lawyer.  And then all of

16     these other people, and others I have not mentioned in my

17     family are lawyers.

18             THE COURT:  That's right.

19             Anybody, either you or any of those people, been

20     involved -- I guess you mentioned an assistant U.S. attorney --

21     been involved in criminal work?

22             PROSPECTIVE JUROR:  (Nods head.)

23             THE COURT:  That was a yes?

24             PROSPECTIVE JUROR:  Yes.  Sorry.  Yes.

25             THE COURT:  Okay.  So the person who was an AUSA.

1        What about anybody else?

2        PROSPECTIVE JUROR:  I don't think anyone else.

3        THE COURT:  The person who was an assistant

4   United States attorney, do you know where they worked or what

5   kind of cases they handled?

6        PROSPECTIVE JUROR:  He works in the District of New

7   Mexico and has previously handled drug cases.  I don't know all

8   of the kinds of cases he prosecutes.

9        THE COURT:  Okay.  Now, I -- another question you

10  answered yes to is whether you'd ever served as a juror?

11       PROSPECTIVE JUROR:  Yes.

12       THE COURT:  Tell me about that.

13       PROSPECTIVE JUROR:  I just completed grand jury

14  service in the Superior Court in January.

15       THE COURT:  Okay.  And so how long were you doing

16  that?

17       PROSPECTIVE JUROR:  Three days a week for

18  approximately eight weeks.

19       THE COURT:  And so do you understand that in a grand

20  jury, you only hear one side of the case?  You hear the

21  government's side of the case, and you're asked to vote to

22  indict someone just based on whether there's probable cause to

23  believe that a crime was committed and that person committed

24  it.  In this case, it's going to be the government's burden to

25  prove that the defendant is guilty beyond a reasonable doubt.

1          Do you think you can set aside the experience you had

2     and the standards you were supposed to apply there, and apply

3     the standards that I'm going to give you here?

4          PROSPECTIVE JUROR:  Yes.

5          THE COURT:  And question Number 13 was whether you'd

6     been accused of, a victim of, or a witness to a crime, or a

7     close friend or family has.  Tell me about that.

8          PROSPECTIVE JUROR:  I was mugged at gunpoint about

9     five years ago.

10          THE COURT:  And did anybody get arrested as a result

11     of that?

12          PROSPECTIVE JUROR:  No.

13          THE COURT:  Did that leave you with any feelings

14     about how police or law enforcement handled the matter?

15          PROSPECTIVE JUROR:  That particular matter or --

16          THE COURT:  Yes, the one with you.  Did you feel like

17     they did what they could to find the person or...

18          PROSPECTIVE JUROR:  I can't answer that question.  I

19     have no idea.

20          THE COURT:  Well, do you have any feelings about law

21     enforcement or about people that are accused of crimes, one way

22     or the other, having been a victim of a crime that didn't get

23     solved?

24          PROSPECTIVE JUROR:  I don't think so.

25          THE COURT:  All right.  Any questions from the

```
1    government?

2               MR. CAMPOAMOR-SANCHEZ:  No, Your Honor.

3               MS. JUNGHANS:  Given that you've said that you

4    followed Special Counsel's investigations closely, could you

5    tell us whether you've formed -- and that you know something

6    about the Tymoshenko matter, could you tell us whether you

7    formed any opinions about those matters, starting with -- let's

8    start with the Ukraine.

9               PROSPECTIVE JUROR:  I think that it was an attempt

10   for a society to assert a democratic form of government that

11   was subsequently impeded, and it is a less democratic

12   government than it was previously.

13              MS. JUNGHANS:  And do you have any opinions about

14   people who may have done work for the new government of

15   Ukraine, the successor to Ms. Tymoshenko?

16              PROSPECTIVE JUROR:  I think that lawyers are paid to

17   do the best research, present the best arguments, and advise

18   their clients as best that they're able.  And that goes for

19   whomever.

20              MS. JUNGHANS:  And one last --

21              THE COURT:  Could you be fair to this defendant, if

22   you understood that the case involved work done on behalf of

23   the government that came in after Ms. Tymoshenko?

24              PROSPECTIVE JUROR:  I believe so.

25              MS. JUNGHANS:  And from following the special counsel
```

1    matters, have you formed opinions about the activities of

2    Mr. Manafort or people who may have interacted with him?

3               PROSPECTIVE JUROR:  Yeah.

4               MS. JUNGHANS:  Can you tell us what they are?

5               PROSPECTIVE JUROR:  I don't think that he was doing

6    good things.  I don't think that he was requesting people help

7    him better the world.

8               MS. JUNGHANS:  Okay.  But would the mere fact that

9    somebody had done business with Mr. Manafort, would that --

10   would you be able to weigh the evidence about that person

11   fairly?

12              PROSPECTIVE JUROR:  Yes.  As I said, I believe that

13   lawyers are paid to do a job.

14              MS. JUNGHANS:  Okay.  Nothing further.

15              Thank you so much.

16              THE COURT:  All right.  You can step back into the

17   jury room.

18              PROSPECTIVE JUROR:  Thank you.

19              (Prospective juror exits courtroom.)

20              THE COURT:  Does anybody want to make a motion with

21   respect to this juror?

22              MS. JUNGHANS:  We do not, Your Honor.

23              MR. CAMPOAMOR-SANCHEZ:  No, Your Honor.

24              THE COURT:  All right.  Let's go on to the next one.

25              (Prospective juror enters courtroom.)

```
 1              THE COURTROOM DEPUTY:  This is Juror Number 0084.

 2              THE COURT:  All right.  Good afternoon.

 3              You wrote numbers 7, 8, 9, and 12 on your card.  And

 4    Question Number 7 was whether you or a close friend or family

 5    member had worked in law enforcement.

 6              Can you tell me about that connection?

 7              PROSPECTIVE JUROR:  Yes, ma'am.

 8              My uncle is a retired detective in Louisiana, my

 9    father was an MP in the U.S. Marine Corp, and my bother is in

10    the Secret Service.

11              THE COURT:  All right.  Is there anything about all

12    of those law enforcement associations that lead you to tend to

13    favor one side or the other in this trial?

14              PROSPECTIVE JUROR:  Not in this particular case, no.

15              THE COURT:  Do you have an opinion, one way or the

16    other, about whether law enforcement witnesses are more likely

17    or less likely to be truthful than other people?

18              PROSPECTIVE JUROR:  No.

19              THE COURT:  All right.  Now, I asked about work for

20    the federal government.  Is there other associations that you

21    have of people or you who work for the federal government?

22              PROSPECTIVE JUROR:  I have a close friend who is a

23    attorney for the government in the U.S. District Court of D.C.

24              THE COURT:  And so what do you mean by that?  They

25    work in the U.S. Attorney's Office?
```

```
1                    PROSPECTIVE JUROR:  He is a prosecuting attorney.

2                    THE COURT:  Okay.  And he tries criminal cases?

3                    PROSPECTIVE JUROR:  I'm not entirely sure what he

4        does.

5                    MS. JUNGHANS:  I'm sorry.  It's so hard to hear over

6        here.

7                    THE COURT:  Okay.  We need to get the microphone --

8                    PROSPECTIVE JUROR:  Oh, sorry.  Sorry.  Sorry.

9                    I'm not entirely sure what he does, but I'm fairly

10       certain it relates to immigration.  He doesn't talk about his

11       work much.

12                   THE COURT:  Okay.  These lawyers here work for the

13       U.S. Attorney's Office for the District of Columbia, or at

14       least some of them do.

15                   Is there anything about that that would lead you to

16       favor one side or the other in this case?

17                   PROSPECTIVE JUROR:  No.

18                   THE COURT:  Question Number 12 was about jury service

19       in the past.

20                   PROSPECTIVE JUROR:  Yes.

21                   THE COURT:  When have you had to do that?

22                   PROSPECTIVE JUROR:  I served on a petit jury in D.C.

23       Superior Court last August.

24                   THE COURT:  And what kind of case was that?

25                   PROSPECTIVE JUROR:  It was assault with a deadly
```

1    weapon, which was a dog.

2              THE COURT:  The dog was the deadly weapon?

3              PROSPECTIVE JUROR:  Yes.

4              THE COURT:  How did that case come out?

5              PROSPECTIVE JUROR:  We found the defendant guilty.

6              THE COURT:  Is there anything about that experience

7    that would give you a problem being fair and impartial in this

8    case?

9              PROSPECTIVE JUROR:  No.

10             THE COURT:  You understand that that case turned on

11   the evidence and the jury instructions in that case, and I'm

12   going to give you my own jury instructions that you're going to

13   have to follow in this case.

14             Can you put that whole experience aside and be open-

15   minded about this one?

16             PROSPECTIVE JUROR:  Yes.

17             THE COURT:  All right.  Anything from the

18   prosecution?

19             MR. CAMPOAMOR-SANCHEZ:  No questions.

20             THE COURT:  Anything from the defense?

21             MS. JUNGHANS:  No, Your Honor.

22             THE COURT:  Okay.  Thank you very much.

23             PROSPECTIVE JUROR:  Thank you.

24             THE COURT:  You can step back.

25             (Prospective juror exits courtroom.)

1          THE COURTROOM DEPUTY:  Your Honor, this is Juror

2     Number 0345.

3          THE COURT:  All right.  Good afternoon.

4          PROSPECTIVE JUROR:  Good afternoon.

5          THE COURT:  The back of your card has numbers 8, 12,

6     and 13.  So, I'm going to ask you about Number 8 first.

7          Do you or a close friend or family member work for

8     the federal government?

9          PROSPECTIVE JUROR:  I do, yes.

10          THE COURT:  What do you do there?

11          PROSPECTIVE JUROR:  I'm a human resources specialist

12     at the Department of Commerce.

13          THE COURT:  Is there anything about the fact that you

14     work for the government that leads you to tend to favor the

15     government as opposed to the defense in this trial?

16          PROSPECTIVE JUROR:  Not particularly, no.

17          THE COURT:  And you've served on a jury before,

18     apparently?

19          PROSPECTIVE JUROR:  Yes.

20          THE COURT:  Tell me about that.

21          PROSPECTIVE JUROR:  I served on a carjacking case

22     here in the District of Columbia.

23          THE COURT:  Do you know if it was in this building or

24     Superior Court?

25          PROSPECTIVE JUROR:  It was in the -- I believe it's

1    the Moultrie building up the street, yeah.

2              THE COURT:  Okay.  And did the jury reach a verdict

3    in that case?

4              PROSPECTIVE JUROR:  We found the defendant not

5    guilty.

6              THE COURT:  And is there anything about that

7    experience that leads you to feel that you favor one side or

8    the other, or be difficult for you to be completely impartial

9    in this case?

10             PROSPECTIVE JUROR:  No.

11             THE COURT:  And then I asked if you or a close friend

12   or family member had been accused of, a victim of, a witness to

13   a crime.

14             What was your answer to that?

15             PROSPECTIVE JUROR:  I've been a victim of a crime

16   twice.  Both were small thefts.  They were not significant

17   issues.

18             I'm not sure if that qualified, but I put it on the

19   card.

20             THE COURT:  I appreciate you putting it down.

21             Did it get investigated by the police?  Did anything

22   come of them?

23             PROSPECTIVE JUROR:  Both were investigated by the

24   police.  Nothing came of them.  Yeah.  Some items were stolen

25   from my home when we first bought our home, and then my bicycle

1        was stolen at another time.

2                THE COURT:  Is there anything about the fact that

3        that happened and how it was handled afterwards that makes you

4        feel you would favor the government over the defendant in this

5        case?

6                PROSPECTIVE JUROR:  No.

7                THE COURT:  Any follow-up questions?

8                MR. CAMPOAMOR-SANCHEZ:  No, Your Honor.

9                MS. JUNGHANS:  No, Your Honor.

10               THE COURT:  Okay.  All right.  Thank you, sir.

11               PROSPECTIVE JUROR:  Thank you.

12               THE COURT:  You can step back out.

13               (Prospective juror exits courtroom.)

14               (Prospective juror enters courtroom.)

15               THE COURTROOM DEPUTY:  Your Honor, this is Juror

16       Number 1128.

17               THE COURT:  All right.  Good afternoon.  You've got

18       one number on the back of your card.  That was Number 8, and

19       that was the question of whether I asked if you or a close

20       friend or family member had worked for the federal government?

21               PROSPECTIVE JUROR:  Yes.

22               THE COURT:  Can you tell me about that?

23               PROSPECTIVE JUROR:  Oh, I had a sister, she retired

24       about ten years ago.  She was at OPM.

25               THE COURT:  Do you know what she did at OPM?

```
 1                PROSPECTIVE JUROR:  Secretary.
 2                THE COURT:  Is there anything about the fact that she
 3      worked for the government that makes you favor the government
 4      versus the defendant in this case?
 5                PROSPECTIVE JUROR:  (Shakes head.)  No.
 6                THE COURT:  Okay.  For the record, after she shook
 7      her head, while I was talking, she said, "no," out loud, in
 8      case that didn't make it into the record.
 9                Anything from the government?
10                MR. CAMPOAMOR-SANCHEZ:  Yes, ma'am.
11                Our information didn't list any prior employment or
12      experience.  Can you tell us a little bit about what you did
13      before?
14                PROSPECTIVE JUROR:  I worked as an LPN.
15                MR. CAMPOAMOR-SANCHEZ:  I'm sorry.  What?
16                THE COURT:  As a nurse?
17                PROSPECTIVE JUROR:  Yes, licensed practical nurse.
18                THE COURT:  All right.
19                PROSPECTIVE JUROR:  Um-hum.
20                MR. CAMPOAMOR-SANCHEZ:  Thank you so much.
21                THE COURT:  And you're retired now?
22                PROSPECTIVE JUROR:  Yes.
23                THE COURT:  All right.
24                PROSPECTIVE JUROR:  Um-hum.
25                MR. CAMPOAMOR-SANCHEZ:  Thank you.
```

1          THE COURT:  Any questions from the defense?

2          MS. JUNGHANS:  No, Your Honor.

3          THE COURT:  Okay.  Thank you very much.  You can step

4     out.

5          (Prospective juror exits courtroom.)

6          THE COURT:  That's everybody?

7          THE COURTROOM DEPUTY:  Yes.

8          THE COURT:  Okay.  I think we should take a lunch

9     break as well.  We are better than halfway to the 32, so that's

10    exciting.  We'll return at 2 o'clock and keep going.  Once

11    we've qualified a sufficient number of people, we're going to

12    stop the voir dire.  I'll probably go to 33, just so we have a

13    cushion, and then we'll begin the process of exercising your

14    preemptory strikes.

15         If that takes us -- we're getting to 3, 3:30,

16    4 o'clock in the afternoon, I think everybody would be happiest

17    giving their opening statements in the morning.

18         Am I correct about that?  I'm going to have to give

19    them some --

20         MR. CAMPOAMOR-SANCHEZ:  Yes.

21         THE COURT:  -- preliminary instructions anyway.  So,

22    if we can accomplish having a jury selected and instructed and

23    then we can break and tomorrow morning I can swear them and you

24    can open, that would be my -- I would consider that a very good

25    day.

```
 1                    So, does everybody agree with that plan?

 2                    Mr. Taylor is nodding, so I'm thinking that means he

 3        agrees.

 4                    MR. TAYLOR:  Yes, Your Honor.

 5                    MR. CAMPOAMOR-SANCHEZ:  Yes.

 6                    THE COURT:  All righty.  Okay.  All right.  I'll see

 7        you at two, and you'll have 14 more lined up and ready to go.

 8        And these people, with the exception -- the people who have

 9        been excused can be excused, and everybody else needs to report

10        next door.

11                    THE COURTROOM DEPUTY:  Line 15, 1286.

12                    THE COURT:  Yes, correct.

13                    THE COURTROOM DEPUTY:  Thank you.

14                    THE COURT:  All right.

15                    All right.  Thank you, everybody.  I appreciate how

16        efficiently everybody is moving this morning.

17                                   *   *   *

18

19

20

21

22

23

24

25
```

1              CERTIFICATE OF OFFICIAL COURT REPORTER

2

3

4          I, JANICE DICKMAN, do hereby certify that the above

5     and foregoing constitutes a true and accurate transcript of my

6     stenograph notes and is a full, true and complete transcript of

7     the proceedings to the best of my ability.

8                    Dated this 12th day of August, 2019.

9

10

11                    /s/_____

12                    Janice E. Dickman, CRR, RMR, CRC
                      Official Court Reporter
13                    Room 6523
                      333 Constitution Avenue NW
14                    Washington, D.C. 20001

15

16

17

18

19

20

21

22

23

24

25