UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| *v.* | Case No. 1:19-cr-0125 (ABJ) |
| **GREGORY B. CRAIG**, | |
| *Defendant.* | |

**MOTION FOR RECONSIDERATION REGARDING
EXCLUSION OR REDACTION OF GOVERNMENT EXHIBIT 396**

On December 13, 2012 the Ministry of Justice released the Skadden Report, and simultaneously issued its press release (DX 241-002), drafted by Jonathan Hawker, which fundamentally mischaracterized the Report's conclusions, including its false assertions that the Report had "conclude[d]" that Ms. Tymoshenko's "claims that her prosecution was politically motivated" were "groundless"; and that the Report had found that Ms. Tymoshenko had "committed this crime." Meanwhile, Mr. Craig gave quotes or other statements to the *New York Times*, the *Los Angeles Times*, and the *Daily Telegraph* that directly contradicted the Ministry's desired spin as reflected in its press release.

In the face of the actual statements Mr. Craig gave to the *New York Times* and the other media outlets, the government has offered GX 396, an email from Paul Manafort to Mr. Craig on the afternoon of December 13, in which Mr. Manafort states:

> The pro has emerged again. The initial rollout has been very effective and your backgrounding has been key to it all. At least today, everyone in Kyiv is quite happy. They liked the Report and are especially happy with the way the media is playing it. In my conversations with the Europeans (and Bruce's too), the reaction has been very positive. Alex did a great job in his briefings in Warsaw. . . .

This email cannot be used to prove the implied assertion that Mr. Craig was acting according some plan for the release of the report (which is hearsay) or even that Mr. Manfort was actually happy with Mr. Craig's statements to the press (which is not relevant). Mr. Manafort surely *knew* that Mr. Craig's media contacts – which for some reason he called "backgrounding" even though Mr. Craig's statements were on the record – had undermined the Ministry's and FTI's attempted media plan. But Mr. Manafort was sophisticated, and he likely knew that complaining to Mr. Craig would be a waste of time; better to "make nice" and move on. If he were present to testify, that is what Mr. Craig believes Mr. Manafort would have to admit. But Mr. Manafort is unavailable. GX 396 is hearsay and should be excluded.

A. **The government intends to use GX 396 for the truth of the matter asserted on the theory that it is an adoptive admission.**

The Court has held that, to the extent the government intends to offer GX 396 for the truth of the matter asserted therein, it is inadmissible. ECF 93 at 4 n.1 (holding that the hearsay rule prohibits offering the exhibit to "show that defendant was in fact involved in 'backgrounding' or that defendant's 'backgrounding' was 'key.'"). The Court issued an order admitting GX 396 "only for the fact that the statements they contain were made (and responded to, if applicable), and the jury will be given a limiting instruction that they may not be considered for the truth of any matter asserted." ECF 93 at 4. But the government has never contended that GX 396 has any relevance *other* than for the truth of the matter asserted therein. GX396 cannot be admitted for the fact that the statements were made, because that is not relevant to any issue in this case, and, even it had some relevance, would be more prejudicial than probative.

At the pretrial conference, the government's sole theory of admissibility was that Mr. Craig's response ("I thought the piece in the Kyiv Post was terrific…") constituted an adoptive admission of the factual assertions in Mr. Manafort's email:

> I mean, Mr. Manafort is congratulating him because of his backgrounding and **Mr. Craig doesn't say, No, I didn't background anybody; what are you talking about? I didn't understand. He just says, No, this was terrific. I'm glad it went to so well**. And then he goes on to talk about perhaps having meetings with the President of Ukraine about this. That's important. This is -- whether what Manafort said is true or not, <u>*his reaction to this says a lot about the fact that he was knowledgeable about and participated in Ukraine's media rollout plan*</u>.
>
> . . . This is a statement of a party opponent that's responding to what's below. And if Mr. Craig decides to testify, and that's his right, great. If he doesn't, that's also fine. And I'm sure Mr. Murphy or Mr. Taylor would make great arguments about how to put this in context to the jury. But I get to make the arguments, too, and **I think it has a much different meaning**, when you put it all in context, as to what really is going on here.

Transcript of Pretrial Conference (Aug 7, 2019) ("8/7/19 Tr.") at 218-20 (emphases added).

It is the "*meaning*" – the alleged truth – of the facts stated in Mr. Manafort's email for which the government has offered GX 396. In other words, GX 396 cannot be admitted "only for the fact that the statements they contain were made," ECF 93 at 4, because "the fact that the statements" contained in GX 396 "were made" is not relevant to any fact of consequence in determining the action – and the government has never contended otherwise. Because the Court has already held that GX 396 *cannot* be admitted for the truth of the matter asserted therein, the Court should exclude GX 396 in its entirety or, at minimum, require that the third through seventh lines in Mr. Manafort's email ("The initial rollout . . ." through ". . . briefings in Warsaw") be redacted because they are offered only for the truth of the matter asserted.

**B.    GX 396 is not an adoptive admission.**

In seeking admission of the exhibit in its entirety, the government has invoked Rule 801(d)(2)(B), the adoptive admission rule. The government argues that Mr. Manafort's statements in GX 396 should be admitted, against Mr. Craig, for the truth of the matter asserted by Mr. Manafort because "Mr. Craig doesn't say, No, I didn't background anybody; what are

3

you talking about? I didn't understand. He just says, No, this was terrific. I'm glad it went to so well." 8/7/19 Tr. at 218-19. But GX 396 comes nowhere close to an adoptive admission under the Rule.

A party seeking admission under Rule 801(d)(2)(B), must establish, by a preponderance of the evidence, that the party (Mr. Craig) against whom the statement of a third party (Mr. Manafort) is offered (1) "adopted or believed" the third party's statement "to be true" and (2) "manifested" that "adopti[ion] or belie[f]" at or about the time the statement was made. Fed. R. Evid. 801(d)(2)(B). And in a criminal case, a third party's statement, like Mr. Manafort's, is admissible as an adoptive admission only "if it ***clearly appears*** that the accused understood and ***unambiguously assented*** to those statements." *Naples v. United States*, 344 F.2d 508, 511 (D.C. Cir. 1964) (emphases added), *overruled in part on other grounds by Fuller v. United States*, 407 F.2d 1199 (D.C. Cir. 1967). As the Advisory Committee itself has warned, courts must be wary of admitting a non-party's statement as a party admission, particularly in criminal cases, because "the inference" to be drawn from a party's "failure to deny" is "a fairly weak one." Advisory Comm. Note to Fed. R. Evid. 801(d)(2)(B).

Thus, under Rule 104(b), the Court must exclude GX 396 unless the government makes a threshold showing of "proof . . . sufficient to support a finding" that:

(1) It *clearly appears* that Mr. Craig *unambiguously* "adopted or believed" that Mr. Manafort's statements were true, namely that Mr. Craig's "backgrounding ha[d] been the key to it all"; <u>and</u>

(2) It *clearly appears* that Mr. Craig *unambiguously* "manifested" that "adopti[ion] or belie[f]" when he wrote in response, "I thought the piece in the Kyiv Post was terrific."

4

Without Mr. Manafort present in court to testify and be cross examined, the government cannot possibly satisfy either of those threshold requirements, let alone both of them.

Mr. Craig's response, "I thought the piece in the Kyiv Post was terrific," is not only far from a clear endorsement with Mr. Manafort; it drips with sarcasm. That line cannot possibly constitute an "adoption" of the "truth" of Mr. Manafort's assertion that Mr. Craig's supposed "backgrounding had been "key" – let alone "clearly" and "unambiguously." As the Court has heard, the *Kyiv Post* article – the one Mr. Craig touted to Mr. Haskell as "the best article by far," DX 248 – accurately reported that the Skadden Report's actual conclusions were devastating to the Yanukovych camp's interests:

- "The report, commissioned by the Justice Ministry this spring, was meant to give the government ammunition in the ongoing cases in the European Court for Human Rights in which Tymoshenko has disputed her conviction. But the report may, instead, bolster the position of Tymoshenko, who alleges that she is the victim of political persecution designed to eliminate her as President Viktor Yanukovych's main rival." (DX 248-2.)

- "[Skadden] found that the court proceedings against Tymoshenko violated Western standards for a fair trial. The firm found that, among other problems, the ex-premier was not given enough time to study her case, was sometimes deprived of adequate defense and was denied the right to call witnesses to properly represent her side." (DX 248-3.)

- "Skadden agrees that she had inadequate time to prepare for trials and was refused a jury trial." (DX 248-4.)

- "Tymoshenko was sent to prison for her behavior before the trial ended, which Skadden said did not have 'adequate justification or review.'" (DX 248-4.)

- "Witnesses for defense failed to be interviewed during both the pre-trial investigation, and during the hearing of her case, which Skadden believes did not allow Tymoshenko to present her case properly." (DX 248-4.)

- "Under Western standards, [Skadden concluded,] the decision to detain Tymoshenko for the entire balance of her trial and after the trial had concluded – until sentencing – without adequate justification or review raises concerns about whether she was inappropriately deprived of her liberty prior to her conviction." (DX 248-4.)

- "Under Western standards, [Skadden concluded,] the continued examination of witnesses without representation by counsel would almost certainly be viewed as a violation of the right to assistance of counsel." (DX 248-4.)

- "Under Western standards of fairness, [Skadden concluded] that the Court's decision not to call certain defense witnesses compromised Tymoshenko's ability to present a defense." (DX 248-5.)

The *Kyiv Post* article went so far as to point out that the Ministry of Justice's own press release had mischaracterized the Skadden Report's conclusions:

> Ukraine's Justice Ministry . . . said that the Skadden, Arps, Slate, Meagher & Flom report found no evidence that Tymoshenko's case was politically motivated. "**This report . . . concludes as groundless Yulia Tymoshenko's claims that her prosecution was politically motivated** and states that she has provided no factual evidence that would be sufficient to overturn her conviction under European or American standards" **the ministry said** in a statement on Dec. 13.
>
> **However, the report says that the consultants do not take a position on the political motivation of the charges.**
>
> **The actual text of the report says** . . .

DX 248-3 (emphases added).

Without Mr. Manafort to explain his meaning, the jury will never know what Mr. Manafort meant by claiming, "[Y]our backgrounding has been key to it all." What is clear, however, is that Mr. Craig's response cannot possibly be considered an "adopti[ion]" of the truth of that statement, and certainly not an "unambiguous" adoption thereof.

For GX 396 to be admissible in its entirety as an adoptive admission, Mr. Craig's response – "I thought the piece in the Kyiv Post was terrific" – must be synonymous with Manafort's statement such that Mr. Craig "clearly" and "unambiguously" meant "Yes, I agree, my backgrounding has been the 'key' to an 'effective' initial 'rollout.'" But the Ministry's desired message, and the message reported in the *Kyiv Post*, were in direct conflict. Mr. Craig's response simply cannot be read as an "adoption" of the truth of Mr. Manafort's statement.

Moreover, even if Mr. Craig's response could somehow be construed as a clear and unambiguous "adoption" of Mr. Manafort's "backgrounding" comment – which it cannot be – there remains the grievous ambiguity of the term "effective" in the email exchange. Effective to what ends? Mr. Manafort (and Mr. Gates, and FTI, and the Ministry) plainly considered an "effective" rollout one in which journalists fell for the bait dropped by the Ministry of Justice and FTI. They largely achieved an "effective" rollout in that sense in Europe, where many outlets did exactly that. *See, e.g.*, GX 402 (excluded) (quoting Italian news agency ANSA as reporting that Skadden had concluded "there is no evidence of 'political motivation' in the proceedings"). To Mr. Craig, an "effective" rollout was exactly the opposite, namely one in which media outlet *accurately* characterized the Report's conclusions that the prosecution and trial of Ms. Tymoshenko had been fundamentally unfair – as the *New York Times, L.A. Times* and *Telegraph* did, after speaking with Mr. Craig or Mr. Haskell, along with the *National Law Journal* but only after Mr. Craig and Mr. Sloan reached out to correct the troubling mischaracterizations in the version it initially published. Mr. Craig obviously did not "adopt" Mr. Manafort's claim that the rollout had been "effective" in the sense Mr. Manafort plainly intended, and certainly not "unambiguously" so.

For these reasons, Mr. Craig respectfully urges the Court to exclude GX 396 or at minimum to redact the portion from "The initial rollout…" through "…briefings in Warsaw."

Dated: August 19, 2019				Respectfully submitted,

				*/s/ William W. Taylor, III*
				William W. Taylor, III (D.C. Bar No. 84194)
				Paula M. Junghans (D.C. Bar No. 474419)
				Ezra B. Marcus (D.C. Bar No. 252685)
				ZUCKERMAN SPAEDER LLP
				1800 M Street N.W. Suite 1000
				Washington, D.C. 20036
				Tel: (202) 778-1800
				Fax: (202) 822-8106
				Email: wtaylor@zuckerman.com
				Email: pjunghans@zuckerman.com
				Email: emarcus@zuckerman.com

				William J. Murphy (D.C. Bar No. 350371)
				Adam B. Abelson (D.C. Bar No. 1011291)
				ZUCKERMAN SPAEDER LLP
				100 East Pratt Street, Suite 2440
				Baltimore, MD 21202
				Tel: (410) 332-0444
				Fax: (410) 659-0436
				Email: wmurphy@zuckerman.com
				Email: aabelson@zuckerman.com

				*Attorneys for Defendant Gregory B. Craig*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 19, 2019, the foregoing was served on counsel of record via the Court's CM/ECF service.

                                            /s/ *Adam B. Abelson*
                                            Adam B. Abelson