UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | No. 1:19-CR-00125 (ABJ) |
| | : | |
| **GREGORY B. CRAIG,** | : | |
| **Defendant.** | : | |

### NOTICE OF GOVERNMENT'S RESPONSE REGARDING FALSE STATEMENTS AND OMISSIONS

The United States hereby responds to the Court's direction of August 26, 2019, to prepare a list of the defendant's false statements and omissions, with reference to their source(s). The United States submits the attached chart based on a preliminary review of the trial evidence and in preparation for Rule 29 arguments, and respectfully reserves the right to amend or supplement this submission upon further consideration of these issues.

Respectfully submitted,
JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar Number 472845

By:   /s/ Molly Gaston
FERNANDO CAMPOAMOR-SÁNCHEZ (DC 451210)
MOLLY GASTON (VA 78506)
Assistant United States Attorneys
United States Attorney's Office
555 Fourth Street, N.W.
Washington, D.C.  20530
Telephone: 202-252-7698/202-252-7803
Fernando.Campoamor-Sanchez@usdoj.gov
Molly.Gaston@usdoj.gov

JOHN C. DEMERS
ASSISTANT ATTORNEY GENERAL

By:   /s/ Jason B.A. McCullough
JASON B.A. MCCULLOUGH (DC 998006; NY 4544953)
Trial Attorney
Department of Justice
National Security Division
950 Pennsylvania Ave NW
Washington, D.C.  20530
Telephone: 202-616-1051
Jason.McCullough@usdoj.gov

Dated:   August 27, 2019

## Certificate of Service

    I certify that, by virtue of the Court's ECF system, a copy of the foregoing Notice has been sent to counsel for the defendant on August 27, 2019.

                              /s/ Molly Gaston
                              Molly Gaston
                              Assistant United States Attorney

**Falsified Facts (False Statements)**

| # | False Statement | Source(s) |
|---|---|---|
| 1 | "The law firm did not advise the Ministry [of Justice]" on the issue of "the distribution of the report."<br><br>(GX 003—June 3, 2013 letter) | • Responsive to question first posed in GX 003—June 3, 2013 letter: "(5) What was your firm's understanding of what would happen to the report when it was released to the Ukrainian Ministry of Justice?"<br>• Duty to be truthful and complete arising from FARA inquiry and defendant's attempt to reverse FARA Unit determination |
| 2 | "As reported in earlier correspondence, this law firm provided a copy of the Tymoshenko Report ('the Report') to certain U.S. media outlets.  This was done in response to requests from the media."<br><br>(GX 012—October 10, 2013 letter) | • Responsive to question first posed in GX 003—June 3, 2013 letter: "(1) To whom, if anyone, did your firm release or distribute the report and when?"<br>• Duty to be truthful and complete arising from FARA inquiry and defendant's attempt to reverse FARA Unit determination |
| 3 | "In responding to inaccuracies in U.S. news reports . . . the law firm did not consult with Ukraine, did not inform Ukraine, did not act under instruction from Ukraine and was in no way serving as an agent for Ukraine."<br><br>(GX 012—October 10, 2013 letter) | • Duty to be truthful and complete arising from FARA inquiry and defendant's attempt to reverse FARA Unit determination |

**Concealed Facts (Omissions)**

| # | Fact | Source(s) |
|---|------|-----------|
| 1 | Defendant recommended and facilitated the hiring of FTI Consulting.<br><br>(GX 113; GX 117; GX 150) | • Duty to disclose from FARA<br>• Responsive to question first posed in GX 003—June 3, 2013 letter: "(5) What was your firm's understanding of what would happen to the report when it was released to the Ukrainian Ministry of Justice?" |
| 2 | Defendant requested from Paul Manafort, and received, multiple copies of the release plan for the Report.<br><br>(GX 221; GX 230; GX 250; GX 254) | • Responsive to question first posed in GX 003—June 3, 2013 letter: "(5) What was your firm's understanding of what would happen to the report when it was released to the Ukrainian Ministry of Justice?" |
| 3 | Defendant met with Manafort, Hawker, and others at the Harvard Club of New York on September 23, 2012 to discuss the media rollout of the Report and agreed to background interviews with journalists.<br><br>(Trial Tr. 8/19/19 at 1178:3-11; 1191:12-24; Trial Tr. 8/22/19 at 1847:5-8; 1854:20-1855:15) | • Duty to disclose from FARA<br>• Responsive to question first posed in GX 003—June 3, 2013 letter: "(5) What was your firm's understanding of what would happen to the report when it was released to the Ukrainian Ministry of Justice?" |
| 4 | Defendant recommended to Davis Manafort that David Sanger of the *New York Times* be the reporter to receive exclusive pre-publication copy of the Report.<br><br>(Trial Tr. 8/22/19 at 1839:14-22) | • Duty to disclose from FARA<br>• Responsive to question first posed in GX 003—June 3, 2013 letter: "(5) What was your firm's understanding of what would happen to the report when it was released to the Ukrainian Ministry of Justice?" |

| # | Fact | Source(s) |
|---|------|-----------|
| 5 | In October 2012, consistent with media strategy he had received, Defendant asked Sanger to speak with Mercury lobbyist Vin Weber about the Report; connected Sanger and Weber; and had a copy of the Report delivered to Weber's office.<br><br>(GX 302, GX 303, GX 304, GX 307) | • Duty to disclose from FARA<br>• Responsive to question first posed in GX 003—June 3, 2013 letter: "(1) To whom, if anyone, did your firm release or distribute the report and when?"<br>• Duty to be truthful and complete arising from FARA inquiry and defendant's attempt to reverse FARA Unit determination |
| 6 | On December 11, 2012, Defendant emailed David Sanger of the *New York Times* that "the Ukrainians have determined [Sanger] should be given first look" at the Report, and defendant offered Sanger a copy and to talk to him about it.<br><br>(GX 350) | • Duty to disclose from FARA<br>• Duty to be truthful and complete arising from FARA inquiry and defendant's attempt to reverse FARA Unit determination |
| 7 | On December 11, 2012, Defendant hand-delivered a pre-publication copy of the Report to Sanger's home.<br><br>(GX 357) | • Duty to disclose from FARA<br>• Responsive to question first posed in GX 003—June 3, 2013 letter: "(1) To whom, if anyone, did your firm release or distribute the report and when?"<br>• Duty to be truthful and complete arising from FARA inquiry and defendant's attempt to reverse FARA Unit determination |
| 8 | On December 11, 2012, Defendant communicated with FTI about his ongoing execution of media strategy.<br><br>(GX 351, GX 354, GX 357, GX 360) | • Duty to disclose from FARA<br>• Responsive to question first posed in GX 003—June 3, 2013 letter: "(5) What was your firm's understanding of what would happen to the report when it was released to the Ukrainian Ministry of Justice?"<br>• Duty to be truthful and complete arising from FARA inquiry and defendant's attempt to reverse FARA Unit determination |

| # | Fact | Source(s) |
|---|------|-----------|
| 9 | On December 12, 2012, Defendant gave an interview (arranged by FTI) to Tom Parfitt of the *Telegraph*.<br><br>(GX 364, GX 374) | • Responsive to question first posed in GX 003—June 3, 2013 letter: "(6) Did you or anyone in your firm have any media interviews or comments to the media…about the report and the findings of your firm?"<br>• Duty to be truthful and complete arising from FARA inquiry and defendant's attempt to reverse FARA Unit determination |
| 10 | On December 12, 2012, at direction of FTI, Davis Manafort, and Ukraine, Defendant informed Sanger as to when Ukraine would publicly release the Report.<br><br>(GX 375, GX 380) | • Duty to disclose from FARA<br>• Duty to be truthful and complete arising from FARA inquiry and defendant's attempt to reverse FARA Unit determination |