```
 1              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
 2

 3     United States of America,      ) Criminal
                                      ) No. 19-CR-125
 4                    Plaintiff,      )
                                      ) STATUS CONFERENCE
 5     vs.                            )
                                      ) Washington, DC
 6     Gregory B. Craig,              ) July 19, 2019
                                      ) Time:  11:00 a.m.
 7                    Defendant.      )
       _____
 8
                    TRANSCRIPT OF STATUS CONFERENCE
 9                         HELD BEFORE
             THE HONORABLE JUDGE AMY BERMAN JACKSON
10                 UNITED STATES DISTRICT JUDGE
       _____
11
                     A P P E A R A N C E S
12
       For the Plaintiff: Fernando Campoamor-Sanchez
13                        Molly Gulland Gaston
                          U.S. ATTORNEY'S OFFICE FOR THE
14                          DISTRICT OF COLUMBIA
                          555 Fourth Street, NW
15                        Washington, DC 20530
                          (202) 252-7698
16                        Email: Fernando.campoamor-sanchez@usdoj.gov
                          Email: Molly.gaston@usdoj.gov
17                        Jason Bradley Adam McCullough
                          U.S. Department of Justice
18                        950 Pennsylvania Avenue, NW
                          Washington, DC 20530
19                        (202) 233-0986
                          Email: Jason.mccullough@usdoj.gov
20
       For the Defendant: William James Murphy
21                        William W. Taylor, III
                          ZUCKERMAN SPAEDER, LLP
22                        100 East Pratt Street
                          Suite 2440
23                        Baltimore, MD 21202
                          (410) 949-1146
24                        Email: Wmurphy@zuckerman.com
                          Email: Wtaylor@zuckerman.com
25
```

**Paula M. Junghans**
ZUCKERMAN SPAEDER, LLP
1800 M Street, NW
Suite 1000
Washington, DC 20036
(202) 778-1814
Email: Pjunghans@zuckerman.com

_____

Court Reporter:          Janice E. Dickman, RMR, CRR, CRC
                         Official Court Reporter
                         United States Courthouse, Room 6523
                         333 Constitution Avenue, NW
                         Washington, DC  20001
                         202-354-3267

1          THE COURTROOM DEPUTY:  Your Honor, this morning we

2     have criminal case No. 19-125, the *United States of America v.*

3     *Gregory B. Craig*.  Mr. Craig is not present and has filed a

4     written waiver of his presence at this hearing.

5          Will counsel for the parties please approach the

6     lectern, identify yourself for the record.

7          MR. CAMPOAMOR-SANCHEZ:  Good morning, again.  For the

8     government, Molly Gaston, Jason McCullough, Fernando

9     Campoamor-Sanchez.

10          THE COURT:  Good morning.

11          MR. MURPHY:  Good morning, Your Honor.  For the

12     defense, William Murphy.  And with me is William Taylor, Ezra

13     Marcus, and Paula Junghans.

14          THE COURT:  All right.  Good morning.  I appreciate

15     the fact that you all gathered quickly.  I regret that all of

16     us are spending more time here, instead of at our desks doing

17     all the things that we all have to do.  But this was an

18     important matter.  And, I understand that I'd asked the defense

19     to give me its position by Monday, and it's already informed me

20     what its position is, but I do have some things I want to say

21     about the issue.

22          At the hearing on July 16, the defense informed me

23     about certain evidence it intends to introduce related to other

24     law firms that did similar work for foreign clients and didn't

25     register under FARA.  I learned for the first time on Tuesday

1    that that evidence includes information that lawyers at the law

2    firm with which I was associated before I took the bench, in

3    tandem with another larger law firm, prepared a report at the

4    behest of Ukraine or individuals from the Ukraine.  I don't

5    know the identity of the specific client or the terms of the

6    fee arrangement.  But, what the defense says is that the firms

7    did not register as foreign agents in connection with that

8    work.

9         The defense, apparently, hopes to utilize that

10   information several ways.  First, as part of the anticipated

11   cross-examination of the government's witness Heather Hunt, who

12   was involved in the written and oral communications with the

13   defendant that lie at the heart of the charges of this case.

14        Second, as part of the intended testimony of the

15   proposed expert, Amy Jeffress, concerning how practitioners

16   were interpreting FARA requirements at the time.  And, third,

17   possibly in other ways in the defendant's case-in-chief.

18        Counsel informed me Tuesday that the report that some

19   of my law partners worked on was circulated to the Skadden team

20   and that there was some public criticism of the report.  I'm

21   not sure if that means that the substance of the report or the

22   existence of the report will become relevant to any other

23   aspect of this case or not, but those things were said.

24        The mere fact that a partner at a firm with which I

25   was associated did work connected with or even paid for by

1    Ukraine, and did or did not register, does not, as I see it,

2    clearly give rise to a disqualifying conflict in this case or

3    any other.  But now there is a specific question upon which I

4    have to rule in this case that relates directly to that work.

5         I'm bound by certain canons of judicial conduct,

6    including Canon 10, which says, "A judge should avoid

7    impropriety and the appearance of impropriety in all

8    activities."  Subsection (A) of that cannon says, "A judge

9    should respect and comply with the law and should act at all

10    times in a manner that promotes public confidence in the

11    integrity and impartiality of the judiciary."

12         Canon 3(C)(1) says, "A judge shall disqualify himself

13    or herself in a proceeding in which the judge's impartiality

14    might reasonably be questioned."  And the canon sets out

15    situations where a judge must disqualify, but they are not

16    exclusive.  And it includes situations under section (C)(1)(b)

17    where a lawyer with whom the judge formerly practiced served as

18    a lawyer concerning, quote, the matter in controversy, close

19    quote -- which is not the case here -- but also if the lawyer's

20    been a material witness.

21         In thinking about this issue, I note that counsel has

22    repeatedly emphasized the centrality of this line of inquiry --

23    what did other law firms do at the time -- to the defense.  Not

24    only to questions of materiality and intent, but also to any

25    potential claim of selective prosecution.  This gives rise to a

1    particular need to be sensitive to the public perception of the

2    legitimacy of any order concerning the admissibility of the

3    evidence, particularly a ruling excluding the evidence, if the

4    upshot of the ruling would mean that evidence or expert

5    testimony about something that my law firm did at a time I was

6    there, even though I was not involved, is admitted or excluded.

7    And if the evidence is admitted, I can't foresee entirely how

8    it's going to play out.

9         As I understand it from the indictment and the

10   documents the parties have shared with me, the issue underlying

11   the possible need for FARA registration in this case was not

12   the preparation of the report, it appears to have been the

13   nature and extent of any alleged involvement by the defendant

14   or the firm and public relations associated with the release of

15   the report.

16        And so that gives rise to the threshold question of

17   whether the other situations are analogous.  Will testimony of

18   the participants in the other matters be required at trial or

19   at the hearings concerning the admissibility of the evidence to

20   establish the relevance or similarity of the work?  Also,

21   Mr. Murphy made some reference to the content of the other

22   report on Tuesday, so I don't know whether the substance of the

23   other law firm's work will be relevant in some way.

24        And that gives rise to the question of if there is a

25   live witness who has to testify concerning the project and it

1    is a former law partner of mine, will either counsel on either

2    side feel compelled to pull their punches?  Will there be any

3    appearance of impropriety concerning rulings on objections?

4    And how would Canon 3(C)(1)(b) apply at that point?

5          I recognize neither side is asking me to recuse

6    myself, and I appreciate the confidence that you have that I

7    will approach these matters in a fair and neutral manner.  I

8    think that's how I endeavor to do everything in this courtroom,

9    and your case is no exception.

10          So while you can waive your right to complain, my

11    personal obligation to adhere to the ethical standards

12    governing the judiciary can't be waived by the parties.  I

13    continue to have concerns, and I am persuaded, at the very

14    least, that I should not be the judge who rules on the

15    admissibility of the evidence.  But that may or may not mean

16    that I should not be the judge who tries the case.

17          I've consulted with the court's calendar committee

18    and we've concluded that one approach would be to deal with

19    this in a two-step process that could obviate the recusal

20    decision.  I could ask the committee to randomly reassign the

21    motions related to the admissibility of the proposed expert,

22    selective prosecution, and the admissibility of the evidence

23    concerning registration by other law firms.

24          If the evidence is excluded, there would be no reason

25    for me to recuse myself.  If it's admitted, or if the judge who

1    receives the assignment determines that the question should be

2    left open or revisited at a later point in the proceedings,

3    when the record of what's at issue and what the defense is is

4    more fully developed, then the exercise might not resolve the

5    problem as neatly.  I would have to think about the issue again

6    at that time.  And in that event, the recusal, if there was

7    one, would come at a later point in the proceedings, on the eve

8    of trial, and likely require some sort of continuance.  And

9    that could change the parties' point of view about what their

10   preferences are right now.

11          I seem to recall that a September, October trial date

12   was fine with everyone at the beginning, but I wasn't available

13   at that time, and I had a trial in November.  And you pressed

14   for August to avoid December.  But I don't know what your

15   positions are about the interim months in the fall.

16          Also, we have the problem that the government has not

17   yet moved in limine to exclude the evidence, since it just

18   learned about the defendant's intent to use it.  But it

19   certainly indicated its intent to do so, so we would need to

20   establish a briefing schedule, and I can't guarantee that the

21   judge who receives this assignment can or will complete it in

22   the timeframe I would be requesting, although my intent would

23   be to ask for a ruling by the Friday before our current trial

24   date.

25          So, with the understanding that I think right now

```
 1    what I'm asking for your views on is a decision between trying

 2    the two-step process or recusal at this point, I would like to

 3    hear from the parties.  And I recognize that Mr. Craig is not

 4    here and you may say to me, we need to talk to him before we

 5    talk to you.  And I certainly understand that.  But I do want

 6    to emphasize that I think, particularly if we do the two-step

 7    process, time is of the essence, in fairness to you to get the

 8    ruling in time, in fairness to the judge to have as much time

 9    as possible to rule on the issues.

10              So, start with the defense.

11              MR. MURPHY:  Your Honor, could we have a moment to

12    consult among yourselves?

13              THE COURT:  With each other, that would be fine.  And

14    the government can as well.

15              MR. CAMPOAMOR-SANCHEZ:  Thank you, Your Honor.

16              THE COURT:  Do you want to take a break?  I don't

17    know if Mr. Craig is available even by phone.  I know he's not

18    here.  Do you want to take a break and reconvene in 15 minutes

19    and just --

20              MR. MURPHY:  Yes.  Yes, Your Honor.

21              MR. CAMPOAMOR-SANCHEZ:  That's fine.

22              THE COURT:  All right.  Thank you.  I'll do that.

23              (Recess.)

24              THE COURTROOM DEPUTY:  Your Honor, recalling case

25    number 19-125, the *United States of America v. Gregory B.*
```

1    *Craig.*

2              THE COURT:  All right.  Mr. Murphy?

3              MR. MURPHY:  Thank you, Your Honor.  Your Honor, we

4    greatly appreciate the care and attention to which you've given

5    this issue, and on short notice, and the thoughtfulness of the

6    approach that you outlined.  I think that we are inclined to

7    attempt to use the two-step process that you mentioned.  I

8    think that the government is in general agreement with that, as

9    well.  We just have not been able to reach Mr. Craig.  He is at

10   a family reunion in Vermont.  He received permission from

11   pretrial services to make that trip.  He's on an airplane right

12   now, and it will be landing, I think, around noon.

13             What we would like to suggest is that we have a

14   chance to speak with him about this process sometime after he

15   lands, and then maybe reconvene by telephone with the Court

16   this afternoon, later, at 2 o'clock or 3 o'clock.

17             THE COURT:  That would be fine.

18             MR. MURPHY:  Would that be all right?

19             THE COURT:  Yes.  This is an important matter and he

20   has the right to weigh in.  And I wanted to hear what both

21   sides had to say before I made my decision.  So we don't yet

22   know what he has to say.

23             MR. MURPHY:  Right.

24             THE COURT:  What's the government's point of view?

25             MR. CAMPOAMOR-SANCHEZ:  Yes, Your Honor.  We believe

1    that in light of the available choices to the government, I

2    think that two-step process makes a lot of sense.

3             THE COURT:  All right.  Well, what I'll do is -- I've

4    already done it -- prepare whatever it is that the order would

5    have to say to get it done so that if everyone is in agreement

6    and I issue it this afternoon, I'll be able to just do it right

7    away.  To do that, I need to know how quickly can the

8    government file whatever it wants to file to seek to exclude

9    the information?

10            MR. CAMPOAMOR-SANCHEZ:  Your Honor, I think, as the

11   Court knows, we do have the joint pretrial statement due

12   Monday.  If it could be either -- I think Wednesday would be

13   preferable, but if it needs to be earlier, we'll do our best to

14   try to get something by Tuesday.  Certainly, I think similar

15   arguments are already in parts of the responses to the motions.

16            THE COURT:  I think there's pieces of it everyone,

17   but this one report, I think, will -- these pleadings will

18   place it squarely before the judge that has the case, and I

19   think the others don't actually tee up the specific issues

20   specifically, so I think it has to be briefed.

21            MR. CAMPOAMOR-SANCHEZ:  Right.

22            THE COURT:  How quickly can the defense respond?  I

23   mean, frankly, I think we could do simultaneous briefs, each

24   side, why it's inadmissible and had why it's admissible -- I

25   don't know that we need to do a motion, opposition, and

1    reply -- and then we can make them both Wednesday.  Can we do

2    that?

3                    MR. CAMPOAMOR-SANCHEZ:  Thursday --

4                    MR. MURPHY:  Thursday, Your Honor.

5                    THE COURT:  For both sides.

6                    MR. CAMPOAMOR-SANCHEZ:  For both sides.

7                    THE COURT:  I think that makes perfect sense.  I

8    don't think you need to say that case didn't say that, that

9    doesn't case doesn't say that.  The judge is going to read the

10   cases themselves anyway.

11                   All right.  So simultaneous submissions.

12                   MR. MURPHY:  I do think we probably want to have the

13   materials at issue -- there's a fair amount of material that

14   we've alluded to, that we have not presented to the Court.  And

15   probably whoever is ruling on this ought to see some of the

16   materials.

17                   THE COURT:  If I'm out, I'm out.  I'm going to let

18   you decide what has to be provided to the judge that has to

19   decide the matter.

20                   So you can designate yours as a motion, just so that

21   it's clear that there's a motion that needs to be decided on

22   the docket.  And you can designate yours as an opposition.  But

23   they'll both be due on the same day.

24                   All right.  I appreciate everybody's thoughtfulness

25   about all of this and your candor about all of this.  And what

1    time -- in an abundance of caution, should we make it 3 p.m.?

2              MR. MURPHY:  2:30.

3              THE COURTROOM DEPUTY:  I've got an antitrust hearing

4    at 3 with Leon, but I'll get it done.

5              THE COURT:  2:30?

6              MR. MURPHY:  2:30 we think will be all right.

7              MR. CAMPOAMOR-SANCHEZ:  That will be fine.

8              THE COURT:  So, Mr. Haley will give you all the

9    call-in information, it will be on the record, and we'll have a

10   phone call at 2:30.

11             Thank you very much, everybody.

12             (Recess.)

13             (The following discussion is by telephone:)

14             THE COURTROOM DEPUTY:  Good afternoon.  The United

15   States District Court for the District of Columbia is now in

16   session.  The Honorable Amy Berman Jackson presiding.

17             Your Honor, we have a telephone conference call this

18   afternoon.  This is criminal case number 19-125, the *United*

19   *States of America v. Gregory B. Craig.*

20             Mr. Craig is present and on the line.  Would you

21   please identify yourself for the record, sir?

22             THE DEFENDANT:  This is Greg Craig on the line.

23             THE COURTROOM DEPUTY:  Thank you, sir.

24             Would counsel for -- one of the counsel for the

25   defendants please identify himself and his colleagues?

```
 1              MR. MURPHY:  William Murphy for Mr. Craig, along with
 2     Mr. Marcus, Miss Junghans, and Mr. Taylor.
 3              THE COURT:  One counsel from the government, please.
 4              MR. CAMPOAMOR-SANCHEZ:  Yes.  For the government we
 5     have Molly Gaston, Jason McCullough, and Fernando Campoamor.
 6              THE COURT:  All right.  I've had the opportunity
 7     review docket 71, which is entitled Notice of Position
 8     Regarding Referral, in which the defendant has indicated that
 9     he is no longer seeking to introduce the evidence that has
10     prompted the last two hearings before the Court.
11              I want to first make sure the government's had an
12     opportunity to be advised of the defense position.
13              MR. CAMPOAMOR-SANCHEZ:  Yes, Your Honor.  We just
14     read the notice a few minutes ago.
15              THE COURT:  All right.  I want to note -- I think
16     everything we've said to each other is on the record, but I
17     guess I should note for the record that this is not a solution
18     that I advocated or even identified.  So I want to confirm,
19     first of all, that the defense is not going no argue later that
20     they were pressured in any way to withdraw this evidence by my
21     decision to have this matter -- either the case in its entirety
22     or the admissibility of the evidence heard by another judge.
23     Certainly would have had an opportunity to be tried with this
24     evidence, if you wanted to do so.  So is that clear to
25     everybody?
```

1      MR. MURPHY:  Yes, Your Honor.  Speaking for the

2  defense, that is clear.  We were not pressured to reach this

3  decision.  It is one that we made based on the complexity of

4  the procedures that would be necessary to solve the problem.

5  And we thought that a better solution, in light of all of the

6  facts that we are aware of, would be to agree not to introduce

7  any evidence regarding the Trout Cacheris report.

8      THE COURT:  All right.  I appreciate everybody's

9  creativity and flexibility and the fact that everyone has

10  thought long and hard about their obligations in this regard.

11  But at the end of the day, the defendant is facing criminal

12  charges and he should have the opportunity to at least endeavor

13  to introduce whatever evidence he chooses to introduce.  But

14  this is your decision.

15      And, Mr. Craig, you've made this decision with the

16  benefit of your counsel?

17      THE DEFENDANT:  I have, Your Honor.

18      THE COURT:  All right.  So, I'm going to accept your

19  decision.  We have a lot of knowledgeable people thinking about

20  these issues.

21      I also, I guess, just want to confirm that this means

22  that you're not seeking to introduce the information in the

23  defense case-in-chief, but also not on cross-examination of the

24  government witnesses, or in any other way, shape or form in the

25  trial?

1        MR. MURPHY:  That's correct, Your Honor.

2        THE COURT:  All right.  However, I -- is it fair to

3    say that the admissibility of other law firm reports that you

4    may want to use for the similar evidentiary purpose or the fact

5    that those reports existed, and whether or not those firms

6    registered, is still a fact that you want to introduce in your

7    case and in the cross-examination of Miss Hunt?

8        MR. MURPHY:  Yes, Your Honor.

9        THE COURT:  All right.  Well, then we still need the

10   submissions on the issue.  And given the number of issues I

11   have to resolve between now and the trial, I'm going to keep it

12   Wednesday, instead of Thursday, I'm sorry to say.

13       MR. CAMPOAMOR-SANCHEZ:  Your Honor, if -- could the

14   government be heard just one second?

15       THE COURT:  Yes.

16       MR. CAMPOAMOR-SANCHEZ:  So one question we have is

17   that the secondary report that Mr. Murphy just referred to that

18   the defendant would still like to introduce is, as we

19   understand it from Mr. Murphy's own description, a response to

20   the prior report by the Cacheris firm.  And so again, I want

21   to -- I want to make sure that this is not an issue that the

22   defense is going to bring in any way, shape, or form at trial

23   later on.

24           And I point out the fact that the second report seems

25   to be related, from the description we heard the other day, to

1    the first report; seems to be a response.  And so to the

2    extent that the defense -- we're still concerned that defense,

3    as they attempt to -- if they are succeeding in convincing the

4    Court that this is relevant evidence, that there's still going

5    to be a connection here.

6          MR. MURPHY:  Your Honor, I'll address that.  The

7    Covington report that Mr. Campoamor was referring to is not in

8    a written form that we've been able to find.  There was a press

9    conference that was recorded.  What we would intend to do, if

10   we attempt to use the video of the press conference, we would

11   redact any references to the Trout Cacheris name.  And we

12   would, to the extent that there's press coverage about it, I

13   think we can readily redact the name of the firm.

14         The -- as you know, the report was altered by Akin

15   Gump and Kroll Associates.  Some of the documents that refer to

16   it refer to it as the Kroll report or the Akin Gump report.

17   Some of them refer to it as the Trout Cacheris report.  But we

18   would remove that name of the Trout Cacheris firm from any

19   documents or any recordings with respect to the press

20   conference that was given by Covington.

21         THE COURT:  The issue that was prompting my recusal

22   was not the fact that the words "Trout Cacheris" might be said

23   out loud, it was the fact that something that my former law

24   partners were involved in could bear on this case, and that I

25   would be the one who would have to decide whether what they did

1     and whether they handled it properly and whether it bears on

2     this defendant's decision to register or not -- assuming that

3     decision is even relevant in this case -- would be left up to

4     me.

5          And, so, any discussion about the fact of -- whether

6     you call it the Kroll report or the X report -- about whether

7     the people that did that report registered or did not register,

8     if that's anything that you want to touch upon, then we're

9     right back where we were this morning.

10          MR. MURPHY:  Well, Your Honor, we're not focusing at

11    all on the failure of Trout Cacheris or the Akin Gump lawyers

12    or Kroll to register, that's not going to be the focus at all.

13          THE COURT:  All right.  You know, obviously

14    there's -- I'm just not sure that the substance of any of these

15    reports is relevant to anything.  I'm not even sure that the

16    substance of the Skadden report is going to be relevant to

17    anything.  I think what we're talking about is the fact that

18    the work was done and what was done in connection with the

19    rollout of these and what legal obligations that gave rise to.

20    And even that's not the issue that we're trying in the case;

21    the issue that we're trying in the case is the allegations that

22    the defendant's responses to questions about that were not

23    true.

24          So, I would be surprised, at the end of the day, if

25    the jury is going to get these reports.  And if they do, then I

1    think any reference to the other -- to the Kroll report or the

2    Akin Gump report, whatever you want to call it, are going to

3    have to be changed in some way.

4            But, the bottom line is that I determined this

5    morning that I should not be deciding whether this evidence is

6    relevant or not.  And what you've told me this afternoon is I

7    don't have to decide because you've decided you don't want to

8    put it before the jury.  And if that's your decision, then I

9    agree with you, that I don't need to recuse myself or refer the

10   evidentiary issues to another court.  But then we can't start

11   talking about the reports through the backdoor.  Because

12   then --

13           MR. MURPHY:  I think we can solve this problem, Your

14   Honor.  Any kind of a -- we're not going to make an effort to

15   bring it in through the backdoor.  I mean, when we focus on

16   what Covington did, we'll be focusing on what Covington did.

17   To the extent there are others -- and there are others -- other

18   major law firms that did other sorts of reports, our expert is

19   going to testify about those.  It's going to be part of her

20   testimony regarding what experienced, qualified lawyers and law

21   firms did during the relevant timeframe.

22           It's going to also, I think, be part of our

23   cross-examination of the folks from the FARA unit about what

24   they did in terms of determining, you know, who was required to

25   register, what was material to their decision-making process in

1    terms of seeking or requiring registration.

2           MR. CAMPOAMOR-SANCHEZ:  Your Honor, I mean, again,

3    you know, as the Court knows, the government did not think this

4    required a recusal.  And we appreciate that the defense is

5    attempting to at least take some issues off the table, to sort

6    of streamline this process.  It's just -- and again, with not

7    having had a lot of time to look at this, but I am concerned

8    that the line is being drawn too narrowly here.  And to the

9    extent that the defense is going to want to talk to him about

10    the so-called Covington report, I'm having a little hard time

11    visualizing how we're really separating that from what they

12    were responding to, which was the prior report.

13           And that's the concern that we have, is that there's

14    still either -- at trial, this is going to become an issue

15    somehow.  And, obviously, I had, in fact, communicated with the

16    defense before we got on the call and before I had seen the

17    notice, to let them know that we had to think that if the other

18    judge in the two-step process decided this was not admissible,

19    that we needed to make sure the defense was not going to bring

20    this up in some other form or fashion before Your Honor when we

21    were trying the case.  And so I'm concerned that this line is

22    just too narrowly drawn, and we might be in a similar situation

23    to this morning.

24           THE COURT:  Well, the way I understand it, this can

25    only come up now if I determine that any of them are

 1    admissible.

 2              MR. MURPHY:  Right.

 3              MR. CAMPOAMOR-SANCHEZ:  That's right, Your Honor.

 4              THE COURT:  And at that point, though, if I agreed

 5    that either Miss Hunt or Miss Jeffress could be questioned

 6    about Covington's obligation to register under the

 7    circumstances -- which sounds awfully like a legal issue and

 8    not a factual issue to me every time someone says it -- the

 9    circumstances would not relate to the subject matter of the

10    report.  So I think we ought to be able to handle this.

11              MR. CAMPOAMOR-SANCHEZ:  Okay.

12              MR. MURPHY:  We agree, Your Honor.

13              MR. CAMPOAMOR-SANCHEZ:  We agree, too.  It's just,

14    again, we have not had a lot of chance to think about it and we

15    just want to make sure that we consider the fact that it was

16    clear from this notice that there was still additional evidence

17    that the defense wanted to introduce.

18              THE COURT:  All right.  Well, given this -- since it

19    was the information that they were seeking to introduce, this

20    particular evidence, that prompted the whole discussion over

21    the course of the week about whether I should recuse myself or

22    whether we could devise a plan short of that, and now the

23    circumstance that was brought to my attention in a proceeding

24    on Tuesday is no longer operative, I don't think we need to

25    take any action at this time.  And obviously, as people

1    continue to think about it, if that changes, I need to be

2    informed as soon as possible.

3         MR. CAMPOAMOR-SANCHEZ:  Very well, Your Honor.  And

4    we will still proceed to file our simultaneous briefs on

5    Wednesday.

6         THE COURT:  All right.  All right.  Thank you very

7    much, everybody.  Have a good weekend.

8         MR. MURPHY:  Your Honor, so on Wednesday you're

9    anticipating a brief from us in terms of identifying the kinds

10   of information that we would seek to introduce through either

11   the cross-examination of Miss Hunt or through the direct

12   testimony of our expert?

13        THE COURT:  Yes, and why it's relevant.  And if you

14   need to accompany that by giving me details about what the

15   anticipated defense is going to be, and there's some concerns

16   about doing that and sharing it, we can figure out how to

17   resolve that.  But I think the more specificity I have about

18   why this is relevant will aid the ruling.

19        MR. MURPHY:  Understood, Your Honor.  Thank you.

20        MR. CAMPOAMOR-SANCHEZ:  Thank you, Your Honor.

21        THE COURT:  Thank you, everyone.

22                         *   *   *

23

24

25

CERTIFICATE OF OFFICIAL COURT REPORTER


I, JANICE DICKMAN, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenograph notes and is a full, true and complete transcript of the proceedings to the best of my ability.

Dated this 19th day of July, 2019.



/s/_____

Janice E. Dickman, CRR, RMR, CRC
Official Court Reporter
Room 6523
333 Constitution Avenue NW
Washington, D.C. 20001