<pre>
 1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2

 3   UNITED STATES OF AMERICA,      )
                                    )
 4        v.                        )   Criminal Action No. 19-CR-125
                                    )
 5   GREGORY B. CRAIG,              )   JURY TRIAL - DAY 3
                                    )   Afternoon Session
 6             Defendant.           )
     _____)   Washington, D.C.
 7                                      August 14, 2019

 8

 9         TRANSCRIPT OF JURY TRIAL - AFTERNOON SESSION
              BEFORE THE HONORABLE AMY BERMAN JACKSON
10                 UNITED STATES DISTRICT JUDGE

11
                   APPEARANCES:
12
          For the Government:    Fernando Campoamor-Sanchez, AUSA
13                               Molly Gulland Gaston, AUSA
                                 U.S. ATTORNEY'S OFFICE FOR THE
14                               DISTRICT OF COLUMBIA
                                 555 Fourth Street, NW
15                               Washington, DC 20530
                                    -and-
16                               Jason Bradley Adam McCullough
                                 U.S. DEPARTMENT OF JUSTICE
17                               950 Pennsylvania Avenue, NW
                                 Washington, DC 20530
18

19        For the Defendant:     Adam B. Abelson, Esq.
                                 William James Murphy, Esq.
20                               ZUCKERMAN SPAEDER, LLP
                                 100 East Pratt Street
21                               Suite 2440
                                 Baltimore, MD 21202
22                                  -and-
                                 William W. Taylor, III, Esq.
23                               Paula M. Junghans, Esq.
                                 ZUCKERMAN SPAEDER, LLP
24                               1800 M Street, NW
                                 Suite 1000
25                               Washington, DC 20036
</pre>

420

Court Reporter:              PATRICIA A. KANESHIRO-MILLER, RMR, CRR
                             U.S. Courthouse, Room 4700A
                             333 Constitution Avenue, NW
                             Washington, D.C.  20001
                             (202) 354-3243


     Proceedings reported by stenotype shorthand.
     Transcript produced by computer-aided transcription.

421

1                          AFTERNOON SESSION

2                             (2:44 p.m.)

3            THE COURT:  I have one just quick preliminary matter,

4      and then we will pick up with the juror that we spoke to

5      earlier, and then we'll continue down the path we have been

6      on this morning.

7            I have had an opportunity to look at the jury

8      summonses, and I have copies for you if you want to see them.

9      I believe they quite clearly give the jurors the option to

10     opt out based on age, and they have either done so or not

11     done so.  If they're here, it means they chose not to do so.

12     I don't believe we need to take the time to advise anybody of

13     their rights notwithstanding other judges' practices, which

14     may also be good for some reason or another.  So I'm not

15     going to do it.  I don't believe any consequences have flowed

16     from the two people who I did advise because they both did

17     not chose to excuse themselves and they're either here or not

18     here based on other answers.  We'll proceed, but I'm not

19     going to ask anybody else about their age.

20           The juror number of the person who we're about to

21     bring in is 968.

22           Is that correct?

23           THE DEPUTY CLERK:  Yes.

24           THE COURT:  All right.  Let's bring her in.

25           (Prospective juror enters courtroom)

1          THE COURT:  Good afternoon.

2          I understand that you had some additional information

3      that you gave to Mr. Haley that I just want to hear from you

4      personally about your answer to whether or not a trip that

5      you had scheduled could be changed.

6          THE PROSPECTIVE JUROR:  Sure.  So the trip that I had

7      scheduled to Cape Cod, Massachusetts, on the 2nd, the flight

8      has been purchased.  It is nonrefundable.  If I do need to

9      reschedule it, I will be losing about $300.  And I will be

10     traveling with my family, and my significant other will be

11     going with me.  If I do not go, that will alter his ability

12     to go as well.

13         THE COURT:  How many people would have to change

14     their flights if you don't go?

15         THE PROSPECTIVE JUROR:  Two.  Me and one other.

16         THE COURT:  Is his also prepaid?

17         THE PROSPECTIVE JUROR:  Yes.

18         THE COURT:  Does anybody else have any further

19     questions?

20         Let me just ask you this question.  And you should be

21     honest with your answer.  Would you consider it a hardship if

22     you have to change your plans in light of this trial?

23         THE PROSPECTIVE JUROR:  It would not be a hardship,

24     no.

25         THE COURT:  Thank you.

423

1          (Prospective juror exits courtroom)

2          THE COURT:  Well, I'm at a loss.

3          Does anybody have any thoughts about anything they

4    would like to do in this situation?  Should we just leave it

5    the way it is?

6          MS. JUNGHANS:  I think we do.

7          THE COURT:  All right.  The government thinks we

8    should leave it where it is right now.  Everybody can

9    exercise their own judgment about whether they think she is

10   going to be unhappy or not during the trial and what that

11   means.

12         All right.  Let's go on.

13         THE DEPUTY CLERK:  Your Honor, this is juror number

14   1749.

15         THE COURT:  Good afternoon.

16         THE PROSPECTIVE JUROR:  Good morning.

17         THE COURT:  We could try that, but I think it is not.

18         THE PROSPECTIVE JUROR:  Good afternoon.

19         THE COURT:  All right.  You wrote number 23 on the

20   back of your card, and that is the question when I asked

21   whether anything would make it difficult for you to sit on

22   this trial given the schedule that we have.

23         Why did you answer that question "yes"?

24         THE PROSPECTIVE JUROR:  I answered the question "yes"

25   because I have an important interview tomorrow for a

1    position, and I don't know if I will have follow-up

2    interviews later on.

3              THE COURT:  All right.  Do you know what time your

4    interview is scheduled?

5              THE PROSPECTIVE JUROR:  It is between 12 and 2.

6              THE COURT:  All right.  If you had to be here for

7    jury duty, do you think they would reschedule it?

8              THE PROSPECTIVE JUROR:  I requested a partial excusal

9    so that I could make that interview for tomorrow.  If things

10   go well and there is a later interview, they possibly could

11   reschedule.

12             THE COURT:  Does anybody have any additional

13   questions for her?

14             MS. JUNGHANS:  Ma'am, may I just ask you, the

15   information we have says you work in administration for the

16   Education Department in the D.C. Government.

17             THE PROSPECTIVE JUROR:  Yes.

18             MS. JUNGHANS:  Can you tell us what you do?

19             THE PROSPECTIVE JUROR:  Sure.  I'm the assistant

20   superintendent for postsecondary and career education.  I run

21   a division that manages a scholarship program for District

22   residents as well as college and career readiness programs

23   and activities.

24             THE COURT:  Is your interview within the District

25   government also?

1          THE PROSPECTIVE JUROR:  No, it is not.

2          THE COURT:  So it's a private company?

3          THE PROSPECTIVE JUROR:  Yes, it is.

4          MS. JUNGHANS:  Thank you.

5          THE COURT:  It is hard for us to predict right now

6     when this trial is going to start, whether we're going to be

7     picking jurors tomorrow and this will be completely fine or

8     whether we would be starting tomorrow.  So I can't really

9     give you more information, and I guess I would like to know

10    what your best sense is about whether this would be a

11    hardship for you if we told you actually we need you here

12    tomorrow.

13          THE PROSPECTIVE JUROR:  I think it would be a

14    hardship.  I think it is a group -- it's the board of

15    directors, and I think it would be hard to reschedule.

16          THE COURT:  Okay.  Thank you.

17          Any other questions?

18          MS. GASTON:  No.

19          THE COURT:  All right.  You can step back into the

20    jury room.

21          (Prospective juror exits courtroom)

22          MS. GASTON:  Your Honor, we would not object to

23    excusing her.

24          MS. JUNGHANS:  Nor do we.

25          THE COURT:  All right.  Well, that's two votes for

426

 1     excusing her.  She will be excused.

 2             And let's bring in the next juror.

 3             (Prospective juror enters courtroom)

 4             THE DEPUTY CLERK:  Your Honor, this is juror number

 5     1393.

 6             THE COURT:  All right.  This juror has numbers 5, 8,

 7     9, 12, and 13 on the back of her card.

 8             Let me start with question number 5, which asked you

 9     whether you read or heard anything about the case.

10             Can you tell me what you've heard about the case.

11             THE PROSPECTIVE JUROR:  I was reading *The Washington*

12     *Post* article this morning.

13             THE COURT:  Okay.  So prior to the article this

14     morning, have you read anything else in the *Post* or anywhere

15     else about this case?

16             THE PROSPECTIVE JUROR:  This particular case, no, but

17     in general, the Ukrainian situation and some of the politics

18     behind it.  Nothing in particular.

19             THE COURT:  All right.  Well, did you glean anything

20     about what the case is about from the article this morning?

21             THE PROSPECTIVE JUROR:  Yes.

22             THE COURT:  What did you learn this morning?

23             THE PROSPECTIVE JUROR:  That Mr. Craig is perhaps

24     being accused -- I don't know if that is the legal term -- of

25     lying about his influence with a foreign country, which is

1      against -- or -- I'm not very good at this.  I apologize.

2              THE COURT:  Let me ask you the bigger question.

3      Based on that, do you have an opinion sitting here right now

4      about whether he is guilty or innocent of the charges in this

5      case?

6              THE PROSPECTIVE JUROR:  I would hope I would be

7      open-minded.

8              THE COURT:  Do you have reason to be concerned about

9      whether you would be open-minded?

10             THE PROSPECTIVE JUROR:  Yes.  But I could be

11     persuaded otherwise if I were given all the information

12     perhaps.

13             THE COURT:  Can you tell me what gives you pause

14     about being open-minded from the start?

15             THE PROSPECTIVE JUROR:  I'm very concerned about this

16     country and undue influence from other countries.

17             THE COURT:  So --

18             THE PROSPECTIVE JUROR:  If he's being -- if he's

19     being influenced by Ukraine or any other country and then

20     coming back and playing a political role, it would concern

21     me.

22             THE COURT:  All right.  Can you decide this case

23     based on what this case is about and just what the evidence

24     is that you hear in this courtroom?  The allegations in this

25     case relate to whether, when answering questions posed by the

1    Department of Justice about whether he had to register and

2    disclose the fact that he was doing work on behalf of a

3    foreign country, he was truthful or not truthful in those

4    answers.

5           Do you know anything right now about whether he

6    did or --

7           THE PROSPECTIVE JUROR:  No.

8           THE COURT:  And do you understand that you would have

9    to decide this case just based solely on the evidence in the

10   case?

11          THE PROSPECTIVE JUROR:  Yes.

12          THE COURT:  You indicated that you or someone close

13   to you, a close friend or family member, had worked for the

14   federal government.

15          THE PROSPECTIVE JUROR:  Yes.

16          THE COURT:  Who would that be?

17          THE PROSPECTIVE JUROR:  My father, my sister, my

18   brother-in-law.  I sort of do.

19          THE COURT:  What do they do, and then tell us what

20   you "sort of do."

21          THE PROSPECTIVE JUROR:  All three of them work for

22   the State Department, and I work at the National Gallery of

23   Art.  While I'm technically a federal employee, I'm a trust

24   fund employee.

25          THE COURT:  Did the work at the State Department

1    involve the Ukraine in any way, do you know?

2              THE PROSPECTIVE JUROR:  No, it did not.

3              THE COURT:  Have you ever heard of Mr. Craig in

4    connection with any of your family members --

5              THE PROSPECTIVE JUROR:  No, I have not.

6              THE COURT:  -- working for the State Department?

7              Question number 12 was prior jury service.

8              THE PROSPECTIVE JUROR.  Yes.

9              THE COURT:  Tell me about that.

10             THE PROSPECTIVE JUROR:  I have been on a couple of

11   juries.  They were both at Moultrie Courthouse.  One was

12   petty theft.  I think it was petty theft from an office.  And

13   one was a drug case that was settled out of court

14   because -- in fact, they were settling it because it was

15   -- trying actually to get the murder case instead of the drug

16   case.  So we were dismissed.

17             THE COURT:  All right.  So is there anything about

18   those experiences and sitting on those juries that would make

19   it difficult --

20             THE PROSPECTIVE JUROR:  No.

21             THE COURT:  -- for you to be fair --

22             THE PROSPECTIVE JUROR:  No.

23             THE COURT:  -- in this case?

24             THE PROSPECTIVE JUROR:  No.

25             THE COURT:  Question 13 was whether you or anyone

1     close to you has been accused of, a victim of, or a witness

2     to a crime in the past 10 years.

3              THE PROSPECTIVE JUROR:  Yes.

4              THE COURT:  What about that?

5              THE PROSPECTIVE JUROR:  I had my purse stolen, and I

6     had to report it.

7              THE COURT:  In connection with that --

8              THE PROSPECTIVE JUROR:  No.

9              THE COURT:  -- were you satisfied with whatever the

10    police did to help you out with that?

11             THE PROSPECTIVE JUROR:  Yes, it was fine.  They

12    couldn't really do anything, so it was a moot point.

13             THE COURT:  I want to go back to your first answer.

14             THE PROSPECTIVE JUROR:  Uh-huh.

15             THE COURT:  You're aware that there is a case pending

16    right now --

17             THE PROSPECTIVE JUROR:  Yes.

18             THE COURT:  -- against Mr. Craig.  I guess my

19    question is, sitting here today, do you have a point of view

20    about whether he is guilty or innocent of the charges?

21             THE PROSPECTIVE JUROR:  I do not.

22             THE COURT:  Does the government have any questions?

23             MS. GASTON:  Very briefly.  You mentioned being on a

24    jury for the theft case.

25             THE PROSPECTIVE JUROR:  Yes.

1          MS. GASTON:  Did that jury come to a verdict?

2          THE PROSPECTIVE JUROR:  It did.  It was split.  We

3     did find him guilty on several counts but not all counts.

4          MS. GASTON:  Thank you.

5          THE COURT:  Any questions?

6          MS. JUNGHANS:  Good afternoon, ma'am.

7          If I wrote this correctly, you said that you would

8     hope that you could be open-minded and that you could be

9     persuaded otherwise.  Did I get that right?  I think that's

10    what you said.

11         THE COURT:  Why don't you just ask her a question.

12         MS. JUNGHANS:  Okay.  Well, what I'm trying to get to

13    is --

14         THE PROSPECTIVE JUROR:  I believe I could be

15    open-minded.  I believe what I meant to infer is that I could

16    be persuaded in either -- in both sides, though I was not

17    positive that I could be open-minded because I fear that I

18    have some judgment in the matter already.

19         MS. JUNGHANS:  Okay.  And that judgment is a negative

20    judgment as to Mr. Craig?

21         THE PROSPECTIVE JUROR:  Yes.

22         MS. JUNGHANS:  Okay.  Do you understand that in a

23    criminal case like this, the defendant doesn't have any

24    burden to prove anything?

25         THE PROSPECTIVE JUROR:  I do.

1          MS. JUNGHANS:  Okay.  And in spite of the

2     preconceptions that you have, you believe you could be fair?

3          THE PROSPECTIVE JUROR:  I believe I could be, yes.  I

4     do.

5          MS. JUNGHANS:  Thank you.

6          THE PROSPECTIVE JUROR:  Yes.

7          THE COURT:  All right.  You can step back to the jury

8     room.

9          THE PROSPECTIVE JUROR:  Thank you.

10          (Prospective juror exits courtroom)

11          THE COURT:  Does defense have a motion?

12          MS. JUNGHANS:  We do, Your Honor.  Your Honor, I

13     think in spite of the words that the juror uttered, her

14     entire demeanor and body language was that she was not -- she

15     was predisposed to the government.

16          THE COURT:  I agree.  I think she is problematical as

17     a juror.

18          MS. GASTON:  We don't oppose it.

19          THE COURT:  All right.  So she will be struck for

20     cause.

21          Ms. Junghans, I have to tell you, when you asked her,

22     do think you could still be fair, she said yes.  You made a

23     face expressing such disbelief that I could see it, and I'm

24     certain she could see it.  So we need your best poker face in

25     front of jurors.

1      MS. JUNGHANS:  I wasn't aware I was doing that.  I

2  will try very hard not to.  I apologize.  Maybe I should get

3  Botox.

4          THE COURT:  All right.  Not needed.

5          Okay.  Let's bring the next juror.

6          (Prospective juror enters courtroom)

7          THE DEPUTY CLERK:  Your Honor, this is juror 0805.

8          THE COURT:  Good afternoon, sir.

9          You have a number 9 on the back of your card.  That

10  was the question when I asked whether you or a close friend

11  or family member was involved in the legal profession.

12          THE PROSPECTIVE JUROR:  Correct.

13          THE COURT:  What is the answer to that question?

14          THE PROSPECTIVE JUROR:  My father is a semi-retired

15  attorney practicing in California.

16          THE COURT:  Do you know what kind of law he

17  practices?

18          THE PROSPECTIVE JUROR:  Civil law, injury cases,

19  wrongful termination.  Just things that come up, basically.

20          THE COURT:  But it sounds like he tries cases in

21  court?

22          THE PROSPECTIVE JUROR:  Yes, he does.

23          THE COURT:  All right.  Does anybody have any

24  questions?

25          MS. GASTON:  Good afternoon.

1          Would you mind telling us a little bit about what you

2     do.

3          THE PROSPECTIVE JUROR:  Sure.  I'm a commodities

4     broker and advisor for a small firm.

5          MS. GASTON:  Thank you.

6          MS. JUNGHANS:  Nothing further.  Thank you.

7          THE COURT:  Thank you.  You can step back out.

8          THE PROSPECTIVE JUROR:  Thank you.

9          (Prospective juror exits courtroom)

10         THE COURT:  Let's bring in the next one.

11         (Prospective juror enters courtroom)

12         THE DEPUTY CLERK:  Your Honor, this is juror number

13    1136.

14         THE COURT:  Good afternoon.

15         This juror has questions 8, 9, 14, and 26 on the back

16    of her card.

17         Question number 8 was when I asked you if you or a

18    close friend or family member worked for the federal

19    government.

20         THE PROSPECTIVE JUROR:  Yes.

21         THE COURT:  Can you tell me who that is and what they

22    do.

23         THE PROSPECTIVE JUROR:  I work for the federal

24    government.

25         THE COURT:  What do you do?

435

1          THE PROSPECTIVE JUROR:  I'm an analyst at the CIA.

2          THE COURT:  Has your work involved the Ukraine in any

3     way?

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  Based on that, do you have opinions about

6     the government of the Ukraine or any particular former

7     faction in the Ukraine?

8          THE PROSPECTIVE JUROR:  Yes.  I know a lot of

9     information about the Ukraine, I would say.

10         THE COURT:  And if this case related to the trial of

11    Ms. Tymoshenko and a report that was prepared about the

12    trial, do you think that you can separate just what you hear

13    in this courtroom from what you already know about those

14    circumstances?

15         THE PROSPECTIVE JUROR:  So I don't know anything

16    about the American angle on that, nothing about U.S. persons.

17    But Tymoshenko and like people in Ukraine, I would know a bit

18    about that.

19         THE COURT:  And your points of view about her and her

20    trial or the Yanukovych regime?

21         THE PROSPECTIVE JUROR:  Do I have opinions about

22    them?

23         THE COURT:  Yes.

24         THE PROSPECTIVE JUROR:  Yes.

25         THE COURT:  If this case involved being hired by the

1     government of the Ukraine that had prosecuted her to prepare

2     a report about that prosecution, would you be able to kind of

3     turn your CIA analyst brain off and segregate what you know

4     from what you hear in the courtroom?

5           THE PROSPECTIVE JUROR:  To be honest, I think it

6     would be very hard to do that.

7           THE COURT:  That's all we want, your honest answer,

8     and that's why I'm trying to probe here.

9           Question number 9 I think was about legal

10    professions.  Are you a lawyer also?

11          THE PROSPECTIVE JUROR:  No.

12          THE COURT:  Is a close friend or family member a

13    lawyer --

14          THE PROSPECTIVE JUROR:  A few of them, yeah.

15          THE COURT:  What kind of law do they practice?

16          THE PROSPECTIVE JUROR:  One was tax -- two were tax

17    attorneys, one was a patent attorney.

18          THE COURT:  Do you know if the tax attorneys do

19    criminal work?

20          THE PROSPECTIVE JUROR:  No, they have actually left

21    the company.

22          THE COURT:  Question number 6 I think was kind of my

23    catch-all question about whether there was any reason why you

24    thought it would be difficult for you to be fair and

25    impartial in this case.

437

1          THE PROSPECTIVE JUROR:  I guess it is kind of a weird

2     situation because I know large amounts of classified

3     information about Ukraine.  So I don't really know -- I

4     wouldn't be able to turn that part of my brain off.  I don't

5     know if that would be relevant or what.  But what if somebody

6     says something and I know something about it?  Obviously, I

7     can't say anything.

8          THE COURT:  All right.  I think what I would like you

9     to do is ask you to step out for a moment, and we may bring

10    you back in for more questions, and we may not.

11         THE PROSPECTIVE JUROR:  Okay.

12         THE COURT:  So I'm going to ask you to step back into

13    the jury room for a moment.

14         (Prospective juror exits courtroom)

15         MS. JUNGHANS:  Your Honor, we have no motion with

16    respect to this juror.

17         THE COURT:  All right.  Does the government?

18         MS. GASTON:  We do not.

19         THE COURT:  Okay.  Does anybody have further

20    questions they want to ask her?

21         MS. JUNGHANS:  No, Your Honor.

22         MS. GASTON:  No, Your Honor.

23         THE COURT:  All right.  We will bring in the next

24    juror, but she is not excused.

25         (Prospective juror enters courtroom)

438

1          THE DEPUTY CLERK:  Your Honor, this is juror number

2     1612.

3          THE COURT:  All right.  Good afternoon, sir.

4          This index card has the numbers 8, 9, 11, 14, 18, and

5     23 on the back.

6          Question number 8 is whether you or someone, your

7     close friend or family, work for the federal government.  Is

8     that you?

9          THE PROSPECTIVE JUROR:  That's me, yes.

10         THE COURT:  And where do you work?

11         THE PROSPECTIVE JUROR:  The Overseas Private

12    Investment Corporation, OPIC.

13         THE COURT:  Okay.  And are you still working there

14    now?

15         THE PROSPECTIVE JUROR:  Yes.

16         THE COURT:  In connection with that, have you done

17    work related to the Ukraine?

18         THE PROSPECTIVE JUROR:  I have.

19         THE COURT:  I think you also answered, when I asked

20    the question about the Ukraine, yes.  And so that question

21    was whether you had opinions about current or former

22    officials in the Ukraine that you bring with you to the

23    courtroom.

24         THE PROSPECTIVE JUROR:  I don't recall that question,

25    so I may have misunderstood that one.

439

1          THE COURT:  All right.

2          THE PROSPECTIVE JUROR:  Pardon me.

3          THE COURT:  Let me just read you -- because I just

4    paraphrased it possibly incorrectly, so let me read you

5    question 14 because I think something made you write it down.

6          I said, "You will hear testimony in this case about

7    work performed for the government of Ukraine.  Do you or any

8    close friend or family member have any connection to, or

9    involvement with, the country or the government of

10   Ukraine" -- and that may have been what you were referring

11   to -- "or do you have any strong feelings about the

12   government of Ukraine or any current or former government

13   officials in the Ukraine?"

14         THE PROSPECTIVE JUROR:  I was thinking because I work

15   at OPIC I have done work with Ukraine private equity funds

16   but I don't know anybody in the government.

17         THE COURT:  All right.

18         THE PROSPECTIVE JUROR:  Actually, I do.  I did.  I

19   just remembered.

20         THE COURT:  You did some work for the government?

21         THE PROSPECTIVE JUROR:  I did know somebody who was a

22   minister of finance of the government.

23         THE COURT:  Do you know who was the prime minister

24   when that person was minister of finance?

25         THE PROSPECTIVE JUROR:  I don't recall.

440

```
1              THE COURT:  I also asked if someone was a lawyer.
2       Are you a lawyer?
3              THE PROSPECTIVE JUROR:  No, I am not.  I work with
4       lawyers every day, but I'm not a lawyer.
5              THE COURT:  Okay.  Question number 11 was, working,
6       or a close friend or family member, working in PR or media
7       consulting.
8              THE PROSPECTIVE JUROR:  Yes.  My wife, years ago,
9       worked with Mark Malloch-Brown in PR.
10             THE COURT:  Was that one of the names that was named
11      in this case?
12             THE PROSPECTIVE JUROR:  Yes.
13             THE COURT:  And so if there was testimony about the
14      person or the person was a witness, would that affect your
15      ability to be fair in this case?
16             THE PROSPECTIVE JUROR:  I have met him a couple of
17      times -- actually, more than a couple of times -- through my
18      wife.  Probably the last time was 10 years ago.  I don't know
19      him well, but I know him.  And I know somebody who worked for
20      him at the UN quite well.
21             THE COURT:  Okay.
22             THE PROSPECTIVE JUROR:  But to answer your question,
23      would it affect me?  I don't know.  He's not a friend.  I
24      just know him.
25             THE COURT:  What was the name of where your wife
```

441

1    worked when she worked with him?

2          THE PROSPECTIVE JUROR:  I don't recall.  It was back

3    in the '90s.  It was a while ago.  I don't think it was FTI.

4    Is that the company he worked for?

5          THE COURT:  I think that's the name it came up in

6    connection with here.

7          THE PROSPECTIVE JUROR:  I don't know the name.  I

8    don't recall.

9          THE COURT:  So your wife, does she do public

10   relations work anymore?

11         THE PROSPECTIVE JUROR:  No, she does not.

12         THE COURT:  Question number 18, I asked about Paul

13   Manafort and Richard Gates and whether knowing they had some

14   involvement in this case could affect your ability to be fair

15   in this case.

16         THE PROSPECTIVE JUROR:  Well, I read the papers every

17   day, and so I know what happened.  I guess I felt justice was

18   served in his case.

19         THE COURT:  All right.  If you heard -- Mr. Manafort

20   is not going to testify in this case, but there may be

21   communications between him and Mr. Craig in this case.  And

22   you may hear that he has some involvement in some of the

23   activities described in this case.  If he were involved, does

24   that give you an opinion, without hearing more right now,

25   about this case one way or the other?

442

1              THE PROSPECTIVE JUROR:  It probably would, yes.

2              THE COURT:  And what does it lead you to think right

3       now?

4              THE PROSPECTIVE JUROR:  Just -- the only thing is

5       because it is all part -- I guess not part of -- but related

6       to, you know, FARA, the foreign agent act, and I guess he

7       was, I believe, indicted for that.  Well, many things, but it

8       sort of brings up memories and thoughts about the whole

9       process that has been going on under the Mueller -- when

10      Mr. Mueller did his work.

11             THE COURT:  But if Mr. Manafort was or wasn't

12      registered as a foreign agent or was involved in some

13      criminal offense in connection with that work, does that lead

14      you to believe that anybody else involved in --

15             THE PROSPECTIVE JUROR:  No, it does not.

16             THE COURT:  -- made the same mistake?

17             THE PROSPECTIVE JUROR:  No, it does not.

18             THE COURT:  So do you think that you could be fair

19      and impartial and judge the evidence in this case against

20      this defendant independent of any point of view about

21      Mr. Manafort?

22             THE PROSPECTIVE JUROR:  Yes.

23             THE COURT:  Question number 23 was about the trial

24      schedule and your ability to sit.

25             THE PROSPECTIVE JUROR:  Oh, yes.  My family and I had

1    planned to go on vacation the last week of August since my

2    job doesn't start until the day after Labor Day.  We don't

3    have anything firm but have been trying to make some time.

4    That's all.

5           THE COURT:  If you were told that you were going to

6    be a juror in this case, would you be able to take a vacation

7    at the conclusion of the trial?

8           THE PROSPECTIVE JUROR:  Yes.

9           THE COURT:  All right.  Any questions?

10          MS. GASTON:  Just a couple.

11          THE PROSPECTIVE JUROR:  Sure.

12          MS. GASTON:  How recent was your work with Ukraine

13   and that particular minister of finance?

14          THE PROSPECTIVE JUROR:  I did not -- it was not very

15   recent.  It was probably like 2008 or '09 -- Shevesko

16   (phonetic), who used to run the Western Enterprise -- no, the

17   NIS Enterprise Fund, the Horizon Fund, did due diligence on

18   the fund.  Also did due diligence on other Ukrainian funds.

19   We have two in our portfolio.  I don't work on them directly,

20   but I know them, and I follow them and I monitor them.

21          MS. GASTON:  And then if Rick Gates were to testify

22   in this trial, would you consider his testimony in the

23   courtroom or would you consider it based on other things you

24   know about him?

25          THE PROSPECTIVE JUROR:  I would try to focus on the

444

1      courtroom.

2              MS. GASTON:  Do you think you would be able to do

3      that?

4              THE PROSPECTIVE JUROR:  Yeah, I could.

5              MS. GASTON:  Thank you.

6              THE COURT:  Any questions?

7              MS. JUNGHANS:  No, Your Honor.

8              THE COURT:  Thank you, sir.  You can step back in the

9      jury room.

10             THE PROSPECTIVE JUROR:  Thank you.

11             (Prospective juror exits courtroom)

12             THE COURT:  Any motions with respect to this juror?

13             MS. JUNGHANS:  No, Your Honor.

14             MS. GASTON:  No, Your Honor.

15             THE COURT:  All right.  Let's bring in the next one.

16             (Prospective juror enters courtroom)

17             THE DEPUTY CLERK:  Your Honor, this is juror number

18     0351.

19             THE COURT:  Good afternoon, sir.

20             THE PROSPECTIVE JUROR:  Good afternoon.

21             THE COURT:  Your card only has the number 12 on the

22     back, and that was the question when I asked whether you had

23     ever been on a jury in the past 10 years.

24             THE PROSPECTIVE JUROR:  Two years ago for the

25     District, grand jury for a month and two days.

1          THE COURT:  You were over in the Moultrie Building in

2     that grand jury?

3          THE PROSPECTIVE JUROR:  Correct.

4          THE COURT:  So do you understand that the grand jury

5     decides who should get charged, and they only hear one side,

6     the government's side of the case, and they make that

7     decision based upon whether there is probable cause to

8     believe a crime was committed?  But when you sit in a petit

9     jury during a trial, the government has to prove the case to

10    you beyond a reasonable doubt, which is a different standard.

11         So can you follow that instruction and put aside your

12    grand jury experience and apply that tougher standard if you

13    were a juror in this case?

14         THE PROSPECTIVE JUROR:  I believe so.

15         THE COURT:  Any questions?

16         MS. GASTON:  Sir, our information is that you're

17    retired.

18         THE PROSPECTIVE JUROR:  Pardon?

19         MS. GASTON:  Our information is you're retired.

20         THE PROSPECTIVE JUROR:  Yes.

21         MS. GASTON:  Congratulations.

22         THE PROSPECTIVE JUROR:  I still have a part-time job.

23    I'm a barista at the Avalon Movie Theater and an usher, head

24    usher.

25         MS. GASTON:  Thank you.

1          THE COURT:  What did you do before you retired?

2          THE PROSPECTIVE JUROR:  I was an actor, stage actor

3     for the area.  Baltimore, Washington, D.C., theaters like

4     Arena Stage, Center Stage.

5          THE COURT:  All right.  Any questions?

6          MS. JUNGHANS:  No.

7          THE COURT:  We would love to talk to you more, but we

8     don't have time, so we're going to let you go back to the

9     jury room.

10          Thank you.

11          THE PROSPECTIVE JUROR:  Thank you.

12          (Prospective juror exits courtroom)

13          THE COURT:  All right.  Let's bring in the next

14     juror.

15          (Prospective juror enters courtroom)

16          THE DEPUTY CLERK:  Your Honor, this is juror number

17     1121.

18          THE COURT:  Good afternoon.

19          THE PROSPECTIVE JUROR:  Good afternoon.

20          THE COURT:  You have written numbers 8 and 23 on the

21     back of your card, so I want to follow up on those.

22          Question number 8 was whether you or a close friend

23     or family member work for the federal government.

24          Can you tell me who that is?  Is it you?

25          THE PROSPECTIVE JUROR:  I worked for the federal

1    government.  Plus my sister, she worked for OPM for years.

2          THE COURT:  All right.  I'm going to need you to lean

3    into the microphone a little bit there.

4          What do you do in the federal government?

5          THE PROSPECTIVE JUROR:  Well, I'm not in the federal

6    government now.  I used to work at FDIC.

7          THE COURT:  Okay.

8          THE PROSPECTIVE JUROR:  And my sister, like I said,

9    was at OPM until she passed away five years ago.

10         THE COURT:  I'm sorry for your loss.

11         Are you still working now, or are you retired?

12         THE PROSPECTIVE JUROR:  I retired about four months

13   ago.

14         THE COURT:  Okay.  All right.  Would the fact that

15   you worked for the federal government make you feel that you

16   would favor the government against the defendant in this

17   case, or can you be fair to both sides?

18         THE PROSPECTIVE JUROR:  I can be fair to both sides.

19         THE COURT:  All right.  Question number 23 was about

20   your ability to sit in this trial with our trial schedule,

21   and you answered that question that you had a concern about

22   that.  Can you tell me about that?

23         THE PROSPECTIVE JUROR:  Right now, I do have a

24   concern that I need to talk to you.  Tomorrow I have to go to

25   the Breast Cancer Awareness Center.  I had a problem from

1   last year, and she is sending me back tomorrow.  So I don't

2   know if that is going to affect my being able to sit.  I

3   won't know until after tomorrow.  The last year they had to

4   take a biopsy and put in a chip.  This year it is bothering

5   me.  So this is why she is sending me back tomorrow.

6          THE COURT:  When is your medical appointment

7   tomorrow?

8          THE PROSPECTIVE JUROR:  9:00 tomorrow morning.

9          THE COURT:  Okay.  All right.

10          THE PROSPECTIVE JUROR:  Otherwise, I'm fine.

11          THE COURT:  But you don't know what the decision is

12   going to be tomorrow.

13          THE PROSPECTIVE JUROR:  That's the only thing.  I

14   don't know exactly what the outcome is going to be.  Last

15   year, after going through so much back and forth, it was

16   determined that I was fine.  They had seen something, but

17   they said it wasn't anything.  But it's bothering me now.

18   I'm to the point where the decision is, it is beginning to

19   ache a little bit.  So that's why she is sending me back.

20          So I don't know what the outcome is going to be.  I

21   don't feel it's anything.  I do feel an ache.  But as a

22   precaution.

23          THE COURT:  We're, obviously, all very hopeful that

24   it turns out to be nothing.  One question I have for you is,

25   if we needed you to be back here tomorrow morning to finish

1      the jury selection process or to start the trial, would that

2      be a problem for you because of this appointment?

3              THE PROSPECTIVE JUROR:  Yes, it would.  Because I

4      would like to go ahead with this appointment tomorrow

5      morning.  I had asked -- when I sent my form back, I had put

6      on the form that I had this scheduled, and it has been

7      scheduled for about a month now.

8              THE COURT:  All right.

9              THE PROSPECTIVE JUROR:  I would like to go to this

10     appointment just to see what's up.

11             THE COURT:  Of course.

12             THE PROSPECTIVE JUROR:  But after that I'm fine.

13             THE COURT:  You will still be phoning in for next

14     week, I think, right?

15             THE PROSPECTIVE JUROR:  Oh, yes.  Yes.

16             THE COURT:  All right.  I'm going to ask you to step

17     out before I ask anybody if they have any further questions.

18     We may bring you back for more questions or we may not.

19             Thank you for being open with us.

20             THE PROSPECTIVE JUROR:  Thank you.

21             (Prospective juror exits courtroom)

22             MS. GASTON:  Your Honor, we don't want to get in the

23     way of her appointment tomorrow morning.  If we think we're

24     still going to be picking tomorrow morning, that might be

25     okay, but we don't know if she'll have follow-up

450

1    appointments.  So we would excuse her.

2            THE COURT:  All right.

3            MS. JUNGHANS:  She should be excused.

4            THE COURT:  All right.  She will.

5            Thank you, both of you.  I'm going to let her know

6    that.

7            Judge Chutkan is going to need a jury on Monday.

8    Hopefully, she will be a great candidate for that.

9            (Prospective juror enters courtroom)

10            THE DEPUTY CLERK:  Your Honor, this is juror number

11    0893.

12            THE COURT:  Good afternoon, sir.

13            You've written down a set of numbers.  I'm just going

14    to read them so the lawyers know, and then we'll talk about

15    them; 5, 8, 9, 10, 11, 13, 14, 15, 17, 18, 21, and 23.

16            Let me start with number 5, which is whether you had

17    heard or read anything about this case.

18            THE PROSPECTIVE JUROR:  I do recall I had.

19            THE COURT:  Can you tell me what you've read, what

20    you understand about the case right now.

21            THE PROSPECTIVE JUROR:  It was quite some time ago.

22    I can't recall.

23            THE COURT:  I'm going to ask you to speak more loudly

24    and clearly into the microphone.

25            You don't remember what you read?

1              THE PROSPECTIVE JUROR:  Not specifically, no.

2              THE COURT:  So sitting here right now, even though

3      you read something, do you actually think you know anything

4      about the case?

5              THE PROSPECTIVE JUROR:  No.

6              THE COURT:  Question number 8 was whether you or a

7      close friend or family member worked for the federal

8      government.

9              THE PROSPECTIVE JUROR:  Yes.

10             THE COURT:  Who would that be?

11             THE PROSPECTIVE JUROR:  My best friend works for the

12     government.

13             THE COURT:  Where does he work?

14             THE PROSPECTIVE JUROR:  He's a staffer for a senator.

15             THE COURT:  Okay.  And question number 9 was about

16     close friends or family members who are lawyers.  Is that the

17     same friend?

18             THE PROSPECTIVE JUROR:  My wife was a paralegal for

19     one of the houses -- the law firms that you've named.

20             THE COURT:  Which law firm?

21             THE PROSPECTIVE JUROR:  Covington.

22             THE COURT:  Okay.  And when was she there?

23             THE PROSPECTIVE JUROR:  I don't know.

24             THE COURT:  She's not working there now?

25             THE PROSPECTIVE JUROR:  No, she is not working there

452

1    now.

2            THE COURT:  Question number 10 was about lobbying

3    work.  Have you done that, or a close friend or family

4    member?

5            THE PROSPECTIVE JUROR:  My close friend I referred to

6    in the previous question.

7            THE COURT:  The one who is on the Hill now has also

8    been a lobbyist?

9            THE PROSPECTIVE JUROR:  Correct.

10           THE COURT:  Do you know what organization he or she

11   worked for?

12           THE PROSPECTIVE JUROR:  It was something related to

13   defense spending.

14           THE COURT:  Okay.  Question number 11 was about

15   public relations or media consulting.  Do you have a friend

16   that does that, or do you do that?

17           THE PROSPECTIVE JUROR:  Same friend.

18           THE COURT:  Okay.  So they have been involved in sort

19   of public relations, lobbying, and now they work on the Hill?

20           THE PROSPECTIVE JUROR:  Yes, the lobbying and the

21   public relations was a little bit tied.

22           THE COURT:  Tied together?

23           THE PROSPECTIVE JUROR:  Correct.

24           THE COURT:  Did that person work for any of the

25   organizations I mentioned, to your knowledge?

1           THE PROSPECTIVE JUROR:  No, not to my knowledge.

2           THE COURT:  Question number 13 was whether you or a

3      close friend or family member has ever been a witness to,

4      victim of, or accused of a crime?

5           THE PROSPECTIVE JUROR:  Yes.

6           THE COURT:  And who would that be?

7           THE PROSPECTIVE JUROR:  There have been several.

8      Like, my mother has been a witness to a crime.  I have been a

9      witness to a crime.  My brother has been witness to a crime.

10          THE COURT:  In connection with those experiences, did

11     you have to testify in court?

12          THE PROSPECTIVE JUROR:  No.

13          THE COURT:  Is there anything about the fact that

14     you've witnessed crimes, and people close to you have, that

15     makes you feel that you couldn't be fair and impartial to

16     both sides in this case?

17          THE PROSPECTIVE JUROR:  As it relates to being a

18     witness of a crime, no.

19          THE COURT:  Okay.  Was there any other reason why you

20     feel you can't be fair and impartial to both sides in this

21     case?

22          THE PROSPECTIVE JUROR:  I have a friend who had

23     worked for Paul Manafort, and so -- in regards to that --

24     they were let go ultimately.  I heard some things about that.

25     So I heard some things about whether registering as a foreign

454

1     agent would be appropriate and things like that.

2             THE COURT:  All right.  That's a question that we're

3     going to get to later, number 18, so let's talk about that

4     now.

5             What did your friend do for Mr. Manafort?

6             THE PROSPECTIVE JUROR:  I know that she was hired to

7     work for the Trump Campaign.  That's as much as I understand.

8             THE COURT:  So she worked for him when he was working

9     for the campaign, not when he was doing his work at Davis

10    Manafort?

11            THE PROSPECTIVE JUROR:  Correct.

12            THE COURT:  And then when all this news started

13    coming out about Mr. Manafort, is that when the question

14    about his registration became a topic between you and your

15    friend?

16            THE PROSPECTIVE JUROR:  Yes.

17            THE COURT:  Do you recall ever having the defendant's

18    name come up in any conversation that you've had with your

19    friend or anybody else?

20            THE PROSPECTIVE JUROR:  No, I do not recall that now.

21            THE COURT:  Did you form an opinion about

22    Mr. Manafort based on your conversations with your friend?

23            THE PROSPECTIVE JUROR:  Yes.

24            THE COURT:  And can you tell us a little bit about

25    what that is.

455

1          THE PROSPECTIVE JUROR:  It's a very negative opinion.

2          THE COURT:  Now, you may hear evidence in this case

3    that Mr. Manafort and people working for Mr. Manafort

4    communicated with Mr. Craig, and there may be some evidence

5    that he worked with him or talked with him about their work

6    or his work in this case or that they were involved in

7    activities that you're going to hear about in this case.

8          Would his involvement in any activities affect your

9    ability to be fair in considering whether Mr. Craig has -- it

10   has been proven that he did anything wrong?

11         THE PROSPECTIVE JUROR:  Yes, I think that would

12   affect me.

13         THE COURT:  Okay.  And you can't put aside what you

14   have heard about Mr. Manafort and just make your decision

15   based on -- about Mr. Craig based on the evidence in this

16   case?

17         THE PROSPECTIVE JUROR:  No, I think I would have an

18   issue with the presumption of innocence at this point.

19         THE COURT:  Even though you don't know exactly how

20   Mr. Manafort fits in?

21         THE PROSPECTIVE JUROR:  Correct.

22         THE COURT:  Question number 14 was about the Ukraine.

23   Do you have any involvement with or opinions about the

24   government of Ukraine?

25         THE PROSPECTIVE JUROR:  No.

1          THE COURT:  Question number 15, I think we've just

2     talked about that a little bit when I asked if the charges

3     alone made it difficult for you to be fair and impartial.

4          THE PROSPECTIVE JUROR:  Yes.  Correct.  I answered

5     "yes."

6          THE COURT:  And so what is it particularly about the

7     charges?  Is it something beyond just any potential

8     relationship to Mr. Manafort?  Is there something about the

9     charges themselves that gives you pause?

10          THE PROSPECTIVE JUROR:  No.  Well, actually -- no,

11     that's fine.

12          THE COURT:  Go ahead.

13          THE PROSPECTIVE JUROR:  No, that's fine.

14          THE COURT:  Well, I asked if the fact that the case

15     was originated out of the Special Counsel's Office gave you

16     an opinion one way or the other without knowing more

17     information.  So how does that affect your mind-set sitting

18     here today?

19          THE PROSPECTIVE JUROR:  Again, it would go back to

20     the presumption of innocence, and it would probably be

21     operating the opposite way, where I would assume that.

22          THE COURT:  You feel like that if they started this,

23     there is something to it?

24          THE PROSPECTIVE JUROR:  Absolutely.

25          THE COURT:  Question number 21 was your ability to

1    follow my instruction that the defendant is presumed to be

2    innocent, and that is the one that you said you would have a

3    problem with, which we talked about.

4         Finally, question number 23 was about your ability to

5    sit for the particular trial schedule that we have.  What was

6    your concern about that?

7         THE PROSPECTIVE JUROR:  May I speak to you in

8    private?

9         THE COURT:  Yes.  I'm going to bring one lawyer up

10   from each side.  You can come here, and we'll put a

11   noisemaker on that means nobody else can hear you but us.

12        (At the bench)

13   ███████████████████████████████████████████████████████

14   ███████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████

17   ██████████████████████████████████████████████

18   ████████████████████████████████████████████████

19   ██████████

20        ███████████████████████████████████

21        (In open court)

22        THE COURT:  All right.  Before we ask you any more

23   questions, I want to determine whether we need to ask you any

24   more questions.  So I'm going to ask you to step out for a

25   moment.

1              THE PROSPECTIVE JUROR:  Thank you.

2              THE COURT:  And then we may bring you back in or we

3      may not.

4              THE PROSPECTIVE JUROR:  Thank you.

5              (Prospective juror exits courtroom)

6              THE COURT:  I think we should excuse this gentleman

7      for a host of reasons.

8              MS. JUNGHANS:  A host of reasons, yes.

9              MS. GASTON:  We agree, Your Honor.

10             THE COURT:  All right.  Let's bring in the next

11     juror.

12             (Prospective juror enters courtroom)

13             THE DEPUTY CLERK:  Your Honor, this is juror number

14     0866.

15             THE COURT:  Good afternoon, sir.

16             THE PROSPECTIVE JUROR:  Good afternoon.

17             THE COURT:  You have got numbers 5, 8, 12, and 23 on

18     the back of your card, so I'm going to follow up on those.

19             Question number 5 was whether you have read or heard

20     anything about this case.

21             THE PROSPECTIVE JUROR:  I have.

22             THE COURT:  Tell me about that.

23             THE PROSPECTIVE JUROR:  Mostly on cable news, but the

24     major channels.  And I also read in the *New York Times* and

25     *Post* about the case.  The Mueller report, it's mentioned in

1    there as well.  I have read portions of it, not the whole

2    thing.

3              THE COURT:  Okay.  So based upon what you've read,

4    sitting here right now, do you have an opinion about whether

5    Mr. Craig committed the offense that he is charged with

6    committing?

7              THE PROSPECTIVE JUROR:  That's a tough question, it

8    really is.  Because I had presumed, reading the Mueller

9    Report, that he was guilty.  But having to "re go through it"

10   in my mind, saying to myself I have got to be fair, I'm only

11   hearing one side, so I am conflicted there.

12             THE COURT:  Well, if you were told -- as I'm sure you

13   predict you're going to be told -- that you can only decide

14   this case based upon the evidence that you hear in this

15   courtroom, and you're not going to get the Mueller Report as

16   evidence in this case.  People are going to have to testify

17   from their own personal knowledge.  You're going to have to

18   look at the exhibits.  The government is going to put on

19   witnesses.  The defendant doesn't have to put on any

20   witnesses, but he could choose to put on witnesses.  And it

21   is only after that process is done that you get to even think

22   about whether they have proven him guilty.  And you're going

23   to be told, just wall off what you've read before.  Do you

24   think you can do that?

25             THE PROSPECTIVE JUROR:  I believe I can.

1    THE COURT:  Do you have any specific recollection of

2    the facts or the details that you read in the newspaper

3    articles or in the report?

4    THE PROSPECTIVE JUROR:  No.  Nothing specific.

5    THE COURT:  Let me ask you about the other answers,

6    then.

7    Question number 8 was about working for the federal

8    government.  Was that you or a friend or family member?

9    THE PROSPECTIVE JUROR:  Yeah.  I was actually a

10   volunteer.  I was appointed by President Bush to the Homeland

11   Security Advisory Council, and I served on that Council for

12   three secretaries for 11 years.

13   THE COURT:  What was your job that you were coming

14   from that brought you to that job as a volunteer?

15   THE PROSPECTIVE JUROR:  I was the Provost at George

16   Washington University, and I'm a physician, and I did the

17   emergency preparedness drills with the National Guard.  And

18   that's how I was introduced to the Homeland Security Advisory

19   Council.

20   THE COURT:  Question number 12 related to prior jury

21   service.

22   THE PROSPECTIVE JUROR:  Yeah, I think it might have

23   been a little bit more than 10 years, but I served twice.

24   D.C. Court.  One was a murder trial, one was an assault

25   trial.

1          THE COURT:  And did they reach verdicts in either one

2     of those?

3          THE PROSPECTIVE JUROR:  Yes.  Both of them.

4          THE COURT:  Do you remember what the verdicts were?

5          THE PROSPECTIVE JUROR:  Both guilty.

6          THE COURT:  Question number 23 was my question about

7     your ability to sit and serve on this jury in this case.

8          THE PROSPECTIVE JUROR:  Yeah.  I have an issue.  I'm

9     supposed to go to settlement on September the 12th, and I

10    have to move, pack, do all of those things, talk to bankers

11    and so forth, and so it makes me a little bit nervous.

12         THE COURT:  All right.  But assuming that we may not

13    even still be in trial by the second week in September, we're

14    going to have those four days off over Labor Day Weekend, and

15    obviously you're going to have your evenings and weekends to

16    yourself, do you think if we are sitting that morning and we

17    needed to let you go to settlement, otherwise can you sit in

18    this case?

19         THE PROSPECTIVE JUROR:  To be honest, it will be a

20    stretch.  I'm very worried about, you know, getting the right

21    loans and getting all of that taken care of before I actually

22    go to settlement.

23         THE COURT:  Well, if we determine that you were

24    otherwise a well qualified juror and you were selected to

25    serve, would you be distracted by all of that, or would you

462

 1    be able to give this case your full attention?

 2          THE PROSPECTIVE JUROR:  In all honesty, I would be a

 3    little bit distracted, but I will serve if I am asked to

 4    serve.

 5          THE COURT:  Any questions?

 6          MS. GASTON:  No, Your Honor.

 7          MS. JUNGHANS:  No, Your Honor.

 8          THE COURT:  Thank you, sir.  You can step back into

 9    the jury room.

10          (Prospective juror exits courtroom)

11          THE COURT:  Does anyone have anything they would like

12    to say to me about this juror before we bring in the next

13    juror?

14          MS. JUNGHANS:  No, Your Honor.

15          MS. GASTON:  No, Your Honor.

16          THE COURT:  All right.  Let's bring in the next

17    juror.

18          (Prospective juror enters courtroom)

19          THE DEPUTY CLERK:  Your Honor, this is juror number

20    1114.

21          THE COURT:  All right.  Good afternoon.

22          THE PROSPECTIVE JUROR:  Good afternoon.

23          THE COURT:  This card has numbers 8 and 12 on the

24    back.

25          Question number 8 was when I asked if you or a close

1    friend or family member worked for the federal government.

2              THE PROSPECTIVE JUROR:  My answer was yes.

3              THE COURT:  Who is that?  Is that you or a family

4    member --

5              THE PROSPECTIVE JUROR:  Yes.  I worked for Department

6    of Defense and Department of Labor many years ago.

7              THE COURT:  What did you do for them?

8              THE PROSPECTIVE JUROR:  In both instances, I worked

9    as a secretary.

10             THE COURT:  Is there anything about the fact that you

11   worked for the federal government at one time that would lead

12   you to favor the federal government over the defendant or

13   vice versa in this case?

14             THE PROSPECTIVE JUROR:  No.

15             THE COURT:  Question number 12 was about having

16   served on a jury before.  Can you tell me about your prior

17   jury service.

18             THE PROSPECTIVE JUROR:  I worked -- I served

19   on -- let me back up.  In D.C. Superior Court, it is one jury

20   or one trial -- I mean one day or one trial.  The last time I

21   was there, I just had the one day and no trial.

22             THE COURT:  Okay.

23             THE PROSPECTIVE JUROR:  So I didn't actually serve on

24   the jury in that time frame.

25             THE COURT:  Have you ever, when you had to show up,

464

1     ended up in the jury box?

2              THE PROSPECTIVE JUROR:  Yes.

3              THE COURT:  When was that?

4              THE PROSPECTIVE JUROR:  Many years ago.

5              THE COURT:  Okay.  All right.  Anybody have any

6     questions for this juror?

7              Does the government have any questions?

8              MS. GASTON:  I know it was many years ago, but do you

9     remember what kind of trial that was?

10             THE PROSPECTIVE JUROR:  It had to do with property.

11             MS. GASTON:  So do you know if it was a criminal

12    trial or a --

13             THE PROSPECTIVE JUROR:  It was a criminal trial, and

14    it had to do with destruction of property.

15             MS. GASTON:  And was the jury able to reach a verdict

16    in that case?

17             THE PROSPECTIVE JUROR:  No.

18             MS. GASTON:  So what was the result?

19             THE PROSPECTIVE JUROR:  The result was a hung jury.

20             MS. GASTON:  Thank you.

21             MS. JUNGHANS:  Ma'am, you said that you had worked

22    for both the Department of Defense and the Department of

23    Labor some time ago.

24             THE PROSPECTIVE JUROR:  Yes.

25             MS. JUNGHANS:  But is that your most recent

1     employment?

2           THE PROSPECTIVE JUROR:  Oh, no.

3           MS. JUNGHANS:  Our list doesn't give an occupation

4     for you.  Are you currently retired?

5           THE PROSPECTIVE JUROR:  Yes.  I worked for D.C.

6     Schools, and I worked for Howard University.

7           MS. JUNGHANS:  Okay.  Prior to your retirement?

8           THE PROSPECTIVE JUROR:  Yes.

9           MS. JUNGHANS:  What kind of jobs did you hold at

10    those places?

11          THE PROSPECTIVE JUROR:  In D.C. Public Schools, I

12    worked as a teacher and administrator and a grants

13    manager -- grants coordinator.  And then for Howard

14    University, I provided that same service, grants coordinator.

15          MS. JUNGHANS:  Okay.  Thank you.

16          THE COURT:  Thank you very much.  You can step back

17    into the jury room.

18          THE PROSPECTIVE JUROR:  Thank you.

19          (Prospective juror exits courtroom)

20          THE COURT:  Let's bring in the next juror.

21          THE DEPUTY CLERK:  Your Honor, this is juror number

22    1073.

23          THE COURT:  Good afternoon, sir.

24          I've got numbers 9, 23, and 25 on the back of his

25    card.

1          Question number 9 was the question where I asked if

2    you or a close friend or family member worked in the legal

3    profession.  Is that you?

4          THE PROSPECTIVE JUROR:  No.  A friend.

5          THE COURT:  What kind of law does your friend

6    practice?

7          THE PROSPECTIVE JUROR:  They're with Morgan, Lewis.

8    I think it is more with corporate mergers.

9          THE COURT:  Okay.  And the next question you answered

10   was the one where I asked about your ability to sit for this

11   trial, either just physically sit through our schedule during

12   the day or the schedule of the trial this month.

13         Why did you answer that question "yes"?

14         THE PROSPECTIVE JUROR:  Oh, initially, because of my

15   wife's mother was diagnosed with breast cancer, so we might

16   have to fly to Colombia.  But that is not something that I

17   think will happen in the next two or three weeks.

18         THE COURT:  Okay.

19         THE PROSPECTIVE JUROR:  The other issue is simply

20   work related.  I work for myself.  If I'm here for two or

21   three weeks for a jury, then that's two or three weeks I'm

22   not getting paid.

23         THE COURT:  Okay.  And if that happened to you, if we

24   found you to be qualified and selected you to be a juror in

25   this case, would that make it difficult for you to sit here

1    and pay attention, or would you be quite worried about your

2    work?

3              THE PROSPECTIVE JUROR:  I think I could pay

4    attention, yeah.

5              THE COURT:  And so the economic hardship, you could

6    deal with that by missing a period of time and picking up

7    later?

8              THE PROSPECTIVE JUROR:  It is always a factor, but

9    sometimes these things happen.

10              THE COURT:  Okay.  Question number 25 was whether you

11    had any moral, religious, or ethical beliefs that would make

12    it difficult for you to sit in judgment of another human

13    being.

14              THE PROSPECTIVE JUROR:  It's more ethical.  In this

15    sense, I think from what I surmised from your analysis of the

16    case more likely it would involve some type of jail time, and

17    I just don't think from my ethical standpoint that the crime

18    would fit the sentence.

19              THE COURT:  Well, if I tell you that the jury is

20    going to be told that sentencing is not their function and

21    that they shouldn't even think about what the appropriate

22    sentence might be in the case, and that really shouldn't be a

23    factor, and it shouldn't be what you think about, would you

24    be able to make the decision whether the government has

25    proved its case beyond a reasonable doubt or it hasn't?

468

1              THE PROSPECTIVE JUROR:  I understand that

2      instruction, but I don't think ethically I could go along

3      with that.

4              THE COURT:  So you would feel -- if there's a risk

5      that he could be incarcerated if he was found guilty, how

6      would that affect your ability to be impartial in this case?

7              THE PROSPECTIVE JUROR:  I would absolutely not find

8      him guilty.

9              THE COURT:  All right.  Do you have any questions?

10             MS. GASTON:  I do not.

11             THE COURT:  Do you have any questions?

12             MS. JUNGHANS:  No, Your Honor.

13             THE COURT:  Thank you.  You can step back into the

14     jury room.

15             THE PROSPECTIVE JUROR:  Thank you.

16             (Prospective juror exits courtroom)

17             MS. GASTON:  Your Honor, we would ask that he be

18     struck for cause.

19             THE COURT:  Do you agree with that?

20             MS. JUNGHANS:  I think it is apparent.

21             THE COURT:  All right.  He will be released, and

22     we'll go on to the next juror.

23             (The Deputy Clerk confers with the Court)

24             THE COURT:  All right.  Mr. Haley has just informed

25     me that the CSO has informed him -- the Court Security

1    Officer -- that the second juror, on line 30, on the second

2    page, has some sort of gum infection and is taking

3    antibiotics and is uncomfortable at the moment and has asked

4    to go home.  So I'm sending Mr. Haley out to find out whether

5    she means for today or forever.  And if it is just a matter

6    of excusing her now, I was not thinking that we would get to

7    the peremptories anyway today.  My goal was just to qualify

8    the right number of jurors.  So I don't know yet whether we

9    would have to take her off the list, but if all she is asking

10   to do is go home now, I don't particularly have a problem

11   with that.  So I just wanted to let you know what's going on.

12   It is 0980, the second juror, it's our 17th qualified person,

13   line 30, on page 2 of your list.

14        So she is potentially a juror, and she is physically

15   uncomfortable right now.  I'm trying to get more information

16   about whether we're losing her permanently or for the rest of

17   the day, which I think would be fine given what time it is.

18        (Pause)

19        (The Deputy Clerk confers with the Court)

20        THE COURT:  We're going to bring her in to put her

21   information on the record.  We're going to end up probably

22   excusing her, and then we will be down one.  And then I guess

23   the question is whether we could just finish this line, the

24   four that are remaining on this row, before we take a break

25   because it takes a while to move people, so we'll take a

470

1       break while Mr. Haley is moving people.

2                   (Prospective juror enters courtroom)

3                   THE DEPUTY CLERK:  Your Honor, this is juror number

4       0980.

5                   THE COURT:  All right.  Hi.  I just wanted to bring

6       you back because I understand you're in some discomfort right

7       now.  If you could tell us a little bit about what is going

8       on.

9                   THE PROSPECTIVE JUROR:  I have an infection in my

10      gum.  I took medicine.  But it seems like it got worse after

11      I ate lunch.  It's throbbing really, really bad.  I'm in a

12      lot of pain.

13                  THE COURT:  I want you to be able to get to your

14      doctor or go home or deal with it right now.  And I guess the

15      question is whether you think you would be able to come back

16      tomorrow.

17                  THE PROSPECTIVE JUROR:  I can't say because I talked

18      to the dentist, and they said they have to wait until the

19      infection clears up and then they can do the root canal.  So

20      I have an infection in my gum.  I'm on antibiotics now for

21      that.  And once it clear out, then they can do the root

22      canal.

23                  THE COURT:  They're planning to do it immediately

24      after --

25                  THE PROSPECTIVE JUROR:  The infection.

471

1          THE COURT:  -- the infection is clear.  Right now,

2     you're in a lot of discomfort?

3          THE PROSPECTIVE JUROR:  It is throbbing really bad.

4          THE COURT:  All right.  Why don't you just step back

5     out for a minute with Mr. Haley, and we will give you some

6     more instructions in a minute.

7          (Prospective juror exits courtroom)

8          THE COURT:  Can we just excuse her?

9          MS. GASTON:  Yes.

10         MS. JUNGHANS:  Yes, Your Honor.

11         THE COURT:  All right.  That's what we're going to

12    do.

13         (Prospective juror enters courtroom)

14         THE DEPUTY CLERK:  Your Honor, this is juror number

15    1133.

16         THE COURT:  Good afternoon.

17         THE PROSPECTIVE JUROR:  Good afternoon.

18         THE COURT:  The number that is on the back of your

19    card is number 23, which was my question about the ability to

20    sit through the trial on the schedule that I had.

21         Can you tell me why you answered that question "yes"?

22         THE PROSPECTIVE JUROR:  I wasn't sure if I should or

23    not.  But I'm a teacher.  So the next three week involves

24    classroom prep, teacher orientation, and then the first week

25    of school.

1          THE COURT:  When does school start?

2          THE PROSPECTIVE JUROR:  The 23rd.

3          THE COURT:  Where do you teach?

4          THE PROSPECTIVE JUROR:  John Eaton Elementary.

5          THE COURT:  Well, obviously, the D.C. Public Schools

6     would have to let you serve.  But would it be a significant

7     problem for you if you missed your first week with your new

8     class?

9          THE PROSPECTIVE JUROR:  I don't think so.

10          THE COURT:  Okay.  So do you feel that if you were

11    picked to serve that you could serve and not be distracted by

12    that?

13          THE PROSPECTIVE JUROR:  Yeah.

14          THE COURT:  Okay.  Does anybody have any questions?

15          Do you have any hesitation about that?  Obviously, we

16    would love to have you.  We want all of the people that we're

17    meeting here from D.C. who can serve to serve, but we don't

18    want you to be here if you're going to be devoting your

19    attention to something else.

20          But you think you can do the job if we need you?

21          THE PROSPECTIVE JUROR:  I think so.

22          THE COURT:  Any questions?

23          MS. GASTON:  How long have you been at Eaton?

24          THE PROSPECTIVE JUROR:  For 15 years.

25          MS. GASTON:  And do you teach all of the grades

473

1      there?

2              THE PROSPECTIVE JUROR:  I'm a visual arts teacher for

3      K through 5.

4              MS. GASTON:  Thank you.

5              THE COURT:  Any questions from the defense?

6              MS. JUNGHANS:  No, Your Honor.

7              THE COURT:  Okay.  Thank you very much.  You can step

8      out.

9              (Prospective juror exits courtroom)

10             THE COURT:  Let's bring in the next juror.

11             (Prospective juror enters courtroom)

12             THE DEPUTY CLERK:  Your Honor, this is juror number

13     1398.

14             THE COURT:  Hi.  Good afternoon.

15             THE PROSPECTIVE JUROR:  Hi.

16             THE COURT:  I have your index card.  It doesn't have

17     any numbers on the back.  So I just wanted to make sure that

18     that is because you didn't have any questions to answer "yes"

19     to and not because we forgot to give you a pencil.

20             THE PROSPECTIVE JUROR:  Yes, that's correct.

21             THE COURT:  All right.  Any questions for this juror?

22             MS. GASTON:  Would you mind telling us about your

23     work?

24             THE PROSPECTIVE JUROR:  Sure.  I work for Booz Allen

25     Hamilton in their corporate finance team.

1           MS. GASTON:  And what does that entail?

2           THE PROSPECTIVE JUROR:  I do business analytics for

3      them, business intelligence.  I'm a data person.

4           MS. GASTON:  Do you travel, or are you mostly based

5      here?

6           THE PROSPECTIVE JUROR:  All based here.

7           MS. GASTON:  Thank you.

8           THE PROSPECTIVE JUROR:  Uh-huh.

9           MS. JUNGHANS:  I apologize.  I couldn't quite catch

10     what you said.  The list we have doesn't say, so you work

11     where?

12          THE PROSPECTIVE JUROR:  Booz Allen Hamilton.  They're

13     a federal consulting firm.

14          MS. JUNGHANS:  Oh, Booz Allen, sure.

15          THE PROSPECTIVE JUROR:  Data analytics.

16          MS. JUNGHANS:  In any particular subject matter?

17          THE PROSPECTIVE JUROR:  I work in their corporate

18     finance division doing data analytics.

19          MS. JUNGHANS:  Thank you.

20          THE COURT:  All right.  Thank you very much.  You can

21     step back into the jury room.

22          (Prospective juror exits courtroom)

23          THE COURT:  All right.  Let's bring in the next

24     juror.

25          (Prospective juror enters courtroom)

1          THE DEPUTY CLERK:  Your Honor, this is juror number

2    1688.

3          THE COURT:  All right.  Good afternoon.

4          This juror has numbers 2, 3, 5, 8, and 9 on her card.

5          So question number 2, I believe, was any association

6    with either these lawyers or the U.S. Attorney's Office, or

7    the Department of Justice?  So tell us about that.

8          THE PROSPECTIVE JUROR:  Sure.  Can I actually say

9    that in private to Your Honor and to counsel?

10         THE COURT:  Yes.  You're going to come here and stand

11   in front of this microphone, and we're going to turn on this

12   charming noise.

13         (At the bench)

14   ██████████████████████████████████████████████████████

15   ███████████████████████████████████████████████████████████

16   ███████████████████████████████████████████████████████████

17   ████████████

18   ████████████████████████████████████████████████████

19   █████████████████████████████████████████████████████

20   ███

21   ██████████████████████████████████████████████

22   ███████████████████████████████████████████████████

23   ████████

24   ███████████████████████████████

25   ████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████

██████████████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

      (In open court)

      THE COURT:  I think we have gotten your answer to question number 3.

      Question number 2 was just any association with the U.S. Attorney's Office or the Department of Justice.

      THE PROSPECTIVE JUROR:  My sister, who is a current law student at Emory Law, was an intern at the U.S. Attorney's Office in Philadelphia this summer.

      THE COURT:  Is there anything about that connection or your answer to question number 3 that would lead you to favor either the government or the defense in this case just sitting here today?

      THE PROSPECTIVE JUROR:  No.

      THE COURT:  Question number 5 was whether you had read or heard anything about the case.  Can you tell me about that.

      THE PROSPECTIVE JUROR:  Sure.  So I have been an avid reader of media and a watcher of network news.  For full disclosure, my boyfriend is a reporter at *The Times*, although

1    that would not affect my impartiality, I believe.  And so I

2    have been attuned to different proceedings, the Special

3    Counsel proceeding and reading about that.  So I have some

4    degree of familiarity with this matter.

5            THE COURT:  Can you tell me in particular what you've

6    read about this matter?  Do you know what the defendant is

7    charged with?

8            THE PROSPECTIVE JUROR:  I believe that there is an

9    issue with the work done in connection with -- sorry -- it is

10   a little bit hard to articulate -- with the FARA database and

11   defendant's characterization of work done with the FARA

12   database.

13           THE COURT:  Right.  Can you take whatever you think

14   you might know about the case and about the Special Counsel's

15   investigation and put it to one side and make your

16   determination about whether the government has proved its

17   case beyond a reasonable doubt just based on the evidence in

18   this case?

19           THE PROSPECTIVE JUROR:  Absolutely.

20           THE COURT:  Question number 8 was whether you or

21   someone close to you works in the federal government.

22           THE PROSPECTIVE JUROR:  Not currently, but I was an

23   intern, a law clerk, at the United States Equal Employment

24   Opportunity Commission.  My sister also served as an intern

25   for Senator Casey on the Hill.  And she may have had another

1     internship in federal government previously.

2          THE COURT:  And question number 9 was about working

3     in the legal profession.  Are you a lawyer also?

4          THE PROSPECTIVE JUROR:  I am a lawyer.  I'm licensed

5     in the District of Columbia as well as the State of

6     Minnesota.

7          That question also pertained to family.

8          THE COURT:  Yes.

9          THE PROSPECTIVE JUROR:  Both of my parents are

10    lawyers, and I mentioned that my sister is in law school.

11         THE COURT:  Have any of you had any involvement in

12    criminal law?

13         THE PROSPECTIVE JUROR:  My mother is a Legal Aid

14    attorney, and she represents domestic abuse clients.

15         My dad is a workers' compensation defense side

16    lawyer, and so that wouldn't be criminal.  And then I work

17    for Cooley, LLP, and I represent telecommunications companies

18    and other communications companies and FCC and previously

19    some state regulatory and transactional issues.

20         THE COURT:  All right.  So you bring some fair amount

21    of education or exposure to the law to the table.  If we get

22    to the end of the trial and I say, this is the law that

23    applies to this case, can you follow the law that I instruct

24    you to apply?

25         THE PROSPECTIVE JUROR:  Yes.

479

1          THE COURT:  All right.  Any questions?

2          MS. GASTON:  You mentioned that you are an avid

3     consumer of media.  What media do you consume?

4          THE PROSPECTIVE JUROR:  I'm generally

5     reading -- well, predominantly, I'm reading trade press in

6     the telecommunications industry every day multiple times a

7     day, coming from all different sources, just to stay apprised

8     in my field.  And then on top of that, I'm getting headlines

9     from *The New York Times*, I'm reading *The Washington Post*.

10    I'm tuning into cable news when I can late at night

11    occasionally.  And I grew up in a household that got hard

12    copy papers.  So I'm fairly plugged in.

13         THE COURT:  Let me ask you a question.  If we tell

14    you once this trial starts or really from this moment on

15    until you find out that you're not involved in this trial or

16    it's over can you not talk to your *New York Times* -- I forgot

17    whether you said boyfriend or husband now -- and not click on

18    any articles that relate to this case for the pendency of the

19    case?

20         THE PROSPECTIVE JUROR:  Yes, I could.

21         MS. GASTON:  And what issue area does your husband

22    cover for *The Times*?

23         THE PROSPECTIVE JUROR:  He's predominantly covered

24    the Special Counsel investigation.  He's looked a lot at how

25    the prosecutors have maybe worked in that investigation, and

1    he wrote about -- or helped write about Counsel Mueller's

2    testimony before Congress.

3           MS. GASTON:  Did you talk to him a lot about that as

4    it was going on?

5           THE PROSPECTIVE JUROR:  Just generally in that he was

6    busy and involved in doing that.  To the extent there were

7    articles published, I likely read those.

8           MS. GASTON:  Thank you.

9           THE COURT:  Does the fact that this case emanated

10   from the Special Counsel's investigation give you an opinion

11   sitting here right now about whether there is something to it

12   or whether it is likely to -- the charges will likely be true

13   or not true?

14          THE PROSPECTIVE JUROR:  No.

15          MS. JUNGHANS:  Can I have just a moment?

16          THE COURT:  Yes.

17          (Pause)

18          MS. JUNGHANS:  Do you mind if I ask you your

19   boyfriend's name?

20          THE PROSPECTIVE JUROR:  Sure.  It is Noah Weiland.

21   Noah Weiland.

22          MS. JUNGHANS:  Okay.  Great.  Thank you.

23          THE COURT:  All right.  Does anybody else have any

24   questions for this juror?

25          MS. GASTON:  No, Your Honor.

481

1          THE COURT:  Thank you.  You can step back out.

2          (Prospective juror exits courtroom)

3          THE COURT:  Any problems with this juror?

4          MS. JUNGHANS:  No, Your Honor.

5          THE COURT:  All right.  Let's go on to the next one.

6          (Prospective juror enters courtroom)

7          THE DEPUTY CLERK:  This is juror number 1622.

8          THE COURT:  All right.  Good afternoon.

9          This juror wrote numbers 2, 6, 8, 9, and 10 on the

10   back of her index card.

11         Question number 2 was the one where I asked if you

12   knew any of the attorneys from the government or had a

13   connection to the U.S. Attorney's Office at the Department of

14   Justice.

15         Why did you answer that question "yes"?

16         THE PROSPECTIVE JUROR:  Can I approach the bench on

17   this?  It is a confidential business matter.

18         THE COURT:  All right.  But I will have one lawyer

19   from each side listen to this conversation.  Okay?

20         (At the bench)

21   ████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████

25   █████████████████████████████████

482



10          (In open court)

11          THE COURT:  All right.  Question number 6 was the one

12     where I listed many names of people and organizations and

13     asked if you knew any of them.  What name sparked your answer

14     in this case?

15          THE PROSPECTIVE JUROR:  The firm Covington and

16     Burling.

17          THE COURT:  Is that a business relationship?

18          THE PROSPECTIVE JUROR:  The founders of my company

19     formerly worked at Covington & Burling.  Also, they're one of

20     my clients.  My company is called Fastcase.  It is a legal

21     research company.

22          THE COURT:  All right.  If there was some evidence

23     related to Covington & Burling in this case, do you believe

24     that you could listen to that evidence and treat it like any

25     other evidence in the case?

1      THE PROSPECTIVE JUROR:  Yes, I could.

2      THE COURT:  Question number 8 is working for the

3  federal government.  Is that you or is that someone else?

4      THE PROSPECTIVE JUROR:  My mother currently works for

5  the federal government, for the Navy in a civilian capacity,

6  like buying airplanes at Pax River Airbase.  My uncle also

7  formerly worked for the Navy in a similar capacity.

8      THE COURT:  Is there anything about that that would

9  make you favor one side or the other in this case?

10     THE PROSPECTIVE JUROR:  It would not.

11     THE COURT:  Question number 9 was working in the

12  legal profession.  Is that the work that you have talked

13  about earlier?

14     THE PROSPECTIVE JUROR:  So I, myself, am a lawyer.

15  My uncle is an attorney, my maternal uncle.  My maternal

16  cousin is an attorney.  And my paternal uncle is an attorney.

17     THE COURT:  Do any of them do criminal work,

18  prosecution or defense?

19     THE PROSPECTIVE JUROR:  My maternal uncle does.  He

20  was formerly the Deputy Public Defender for Maryland.

21     THE COURT:  And has your practice ever involved that

22  before you went into --

23     THE PROSPECTIVE JUROR:  Only when I was in law

24  school.  I worked for the Capital Defender's Office in

25  Richmond, Virginia.  Also, I worked at the Maryland Court of

1        Special Appeals.  This was before I was barred.

2               THE COURT:  So does any of that have you walking in

3        this room tending to favor one side or the other?

4               THE PROSPECTIVE JUROR:  It does not.

5               THE COURT:  Question number 10 was working in the

6        lobbying area.  Is that you or someone who is close to you?

7               THE PROSPECTIVE JUROR:  One of my close friends works

8        in lobbying related to the plastics industry.

9               THE COURT:  Any follow-up questions from the

10       government?

11              MS. GASTON:  No, Your Honor.

12              THE COURT:  Anything from the defense?

13              MS. JUNGHANS:  Yes.

14              I think I got this, but Fastcase, your employer, is a

15       legal research company?

16              THE PROSPECTIVE JUROR:  It is.

17              MS. JUNGHANS:  Like electronic research?

18              THE PROSPECTIVE JUROR:  Yes.  Similar to Westlaw or

19       Lexis.

20              MS. JUNGHANS:  Before you worked for that company,

21       where did you work?

22              THE PROSPECTIVE JUROR:  While I was in law school at

23       the University of Richmond, I worked at the Capital

24       Defender's Office for the Central Region of Virginia.

25              MS. JUNGHANS:  Okay.  Have you ever been in private

1     practice?

2              THE PROSPECTIVE JUROR:  I haven't.

3              MS. JUNGHANS:  Thank you.

4              THE COURT:  All right.  You can step back out.

5              (Prospective juror exits courtroom)

6              THE COURT:  Mr. Haley, let's have another row.  I

7     don't necessarily want to give up both of the two rows behind

8     it.  Let's just have another row and keep everybody else here

9     in the meantime.  Since we're almost done, we'll just keep

10    going.

11             All right.  Then counsel can take a short break and

12    be back in 10 minutes.  I really want to keep going.

13             All right.  Thank you.

14             (Recess)

15             THE COURT:  All right.  Let's bring in the next

16    juror.

17             (Prospective juror enters courtroom)

18             THE DEPUTY CLERK:  Your Honor, this is juror number

19    1323.

20             THE COURT:  All right.  Good afternoon, sir.  Thanks

21    for waiting for us.

22             THE PROSPECTIVE JUROR:  No problem.  Good afternoon.

23             THE COURT:  This juror has the numbers 8, 9, 11, 12,

24    and 23 written on the back of his card.

25             I'm going to start at the bottom.  Question number 23

486

1    was the question I asked about your ability to sit during our

2    schedule and through this trial.

3            Can you tell me why you answered that question?

4            THE PROSPECTIVE JUROR:  Yes.  I already had scheduled

5    leave to be out of town the week of the 25th.

6            THE COURT:  Of August?

7            THE PROSPECTIVE JUROR:  Of August, yes, ma'am.

8            THE COURT:  You're going to be out the whole week?

9            THE PROSPECTIVE JUROR:  Monday and Tuesday of that

10   week.

11           THE COURT:  And does this involve a vacation that

12   you've paid for?

13           THE PROSPECTIVE JUROR:  Yes.  Actually, I'm taking my

14   mother out of town.  She has some personal business that she

15   has to deal with in Raleigh, North Carolina.

16           THE COURT:  Is this something that if you were picked

17   to be on the jury that could possibly be handled another

18   time?

19           THE PROSPECTIVE JUROR:  I would have to check on

20   that.  She's trying to get her birth certificate.  They seem

21   to have lost all her records.  We're going through that

22   process again to make sure that she can find records that she

23   needs so she can get her birth certificate.

24           THE COURT:  Do you understand that to be -- I'm not

25   trying to pry, but I'm just trying to figure out -- is that

1      an emergency right now for her?

2              THE PROSPECTIVE JUROR:  Yes.  She is 72.  Her license

3      is coming up in the District, where they're requiring for her

4      to have the birth certificate and all those documentation, so

5      that she can . . .

6              THE COURT:  Right.  Do you know when her license

7      expires?

8              THE PROSPECTIVE JUROR:  I believe it may be October.

9      I'm not certain.

10             THE COURT:  All right.

11             THE PROSPECTIVE JUROR:  She has been trying to do

12     this for about a year now.

13             THE COURT:  I'm sure she is very frustrated.

14             THE PROSPECTIVE JUROR:  Yes.

15             THE COURT:  All right.  Let me go back to number 8,

16     which is whether you or a close friend or family member

17     worked for the federal government.

18             THE PROSPECTIVE JUROR:  I did at one point.

19             THE COURT:  Where did you work?

20             THE PROSPECTIVE JUROR:  I worked at NRC in Bethesda,

21     but that's been over 10 years.

22             THE COURT:  What did you do for them?

23             THE PROSPECTIVE JUROR:  I was in the payroll,

24     accounting department.

25             THE COURT:  Okay.  Question number 9 was whether you

1        or a close friend or family member are a lawyer.

2                  THE PROSPECTIVE JUROR:  No, not a lawyer.

3                  THE COURT:  Or worked in the legal profession.

4                  THE PROSPECTIVE JUROR:  I work in a legal firm, yes.

5                  THE COURT:  Okay.  Where do you work?

6                  THE PROSPECTIVE JUROR:  Presently, I work at Sughru

7        Mion, PLCC.  It's a patent and trademark firm.

8                  THE COURT:  Okay.  And what do you do for them?

9                  THE PROSPECTIVE JUROR:  I'm a paralegal.

10                 THE COURT:  Question number 11 was about work in PR

11       or media, either you or a close friend or family member.

12                 THE PROSPECTIVE JUROR:  No.  I'm sorry.  I must have

13       misunderstood that question at the time.

14                 THE COURT:  Okay.  Question number 12 was prior jury

15       experience.

16                 THE PROSPECTIVE JUROR:  Yes.

17                 THE COURT:  Tell me about that.

18                 THE PROSPECTIVE JUROR:  Most recently, I was on grand

19       jury in 2016.

20                 THE COURT:  In Superior Court here?

21                 THE PROSPECTIVE JUROR:  Yes.

22                 THE COURT:  You understand that the grand jury just

23       hears just the government's side of the case.

24                 THE PROSPECTIVE JUROR:  Right.

25                 THE COURT:  And they're asked, well, is there

489

1      probable cause to believe that this person committed a crime.

2      And in a trial in a courtroom, you're asked whether the

3      government has proved its case beyond a reasonable doubt.

4              THE PROSPECTIVE JUROR:  Exactly.

5              THE COURT:  So can you put aside your sort of grand

6      jury state of mind and apply the proper legal standard in

7      this case?

8              THE PROSPECTIVE JUROR:  Of course.  Yes, ma'am.

9              THE COURT:  Any questions?

10             MS. JUNGHANS:  No, Your Honor.

11             MS. GASTON:  Are you and your mother flying together

12     to Raleigh?

13             THE PROSPECTIVE JUROR:  No.  I'm driving.  I will be

14     driving her, yes, ma'am.

15             MS. GASTON:  Okay.  And do you have hotel

16     reservations or what are your plans?

17             THE PROSPECTIVE JUROR:  Planning to stay with a

18     family member.  Her sister lives in the area.

19             MS. GASTON:  Thank you.

20             THE PROSPECTIVE JUROR:  You're welcome.

21             MS. JUNGHANS:  No questions.

22             THE COURT:  All right.  Thank you very much, sir.

23     You can step out.

24             THE PROSPECTIVE JUROR:  Thank you.

25             (Prospective juror exits courtroom)

490

1          THE COURT:  I'm not inclined to strike him for cause

2     for that trip, so let's bring in the next juror.

3          (Prospective juror enters courtroom)

4          THE DEPUTY CLERK:  Your Honor, this is juror 0322.

5          THE COURT:  Good afternoon.

6          THE PROSPECTIVE JUROR:  Hello.

7          THE COURT:  There are three numbers on the back of

8     this card:  7, 8, and 13.

9          Question number 7 was when I asked whether you or a

10    close friend or family member worked in law enforcement.  Can

11    you tell me why you answered that question "yes"?

12         THE PROSPECTIVE JUROR:  My aunt, she works for the

13    CIA.

14         THE COURT:  Do you have any idea what she does for

15    them?

16         THE PROSPECTIVE JUROR:  No, not really, no.

17         THE COURT:  Question number 8 was whether you or a

18    close friend or family member worked for the federal

19    government.  Is that the same relative?

20         THE PROSPECTIVE JUROR:  Yes.

21         THE COURT:  Okay.  Question number 13 was whether you

22    or a close friend or family member had ever been accused of,

23    a victim of, or a witness to a crime.

24         THE PROSPECTIVE JUROR:  My sister.

25         THE COURT:  Tell me about that.

491

1           THE PROSPECTIVE JUROR:  My sister.  Her boyfriend.

2           THE COURT:  What happened with your sister and her

3    boyfriend?

4           THE PROSPECTIVE JUROR:  He is an ex-felon, but they

5    used to get into it a lot.  So she used to call the cops on

6    him.

7           THE COURT:  So he used to assault her?

8           THE PROSPECTIVE JUROR:  Yes.

9           THE COURT:  Were you ever a witness to any of that?

10          THE PROSPECTIVE JUROR:  Uh-huh.

11          THE COURT:  Is that a "yes"?

12          THE PROSPECTIVE JUROR:  Yes.

13          THE COURT:  And so did you ever testify in court in

14   connection with that?

15          THE PROSPECTIVE JUROR:  No.

16          THE COURT:  Is there anything about any of those

17   relationships or experiences that would make you feel that

18   you would favor the government or favor the defendant in this

19   case?

20          THE PROSPECTIVE JUROR:  No.

21          THE COURT:  Any questions?

22          MS. GASTON:  No, Your Honor.

23          THE COURT:  Any questions.

24          MS. JUNGHANS:  Yes, please.

25          Ma'am, our information sheet says that you're engaged

492

1    in daycare.

2            THE PROSPECTIVE JUROR:  Yes.

3            MS. JUNGHANS:  So you take care of little children?

4            THE PROSPECTIVE JUROR:  Yes.

5            MS. JUNGHANS:  What happens if you are absent for

6    jury duty?

7            THE PROSPECTIVE JUROR:  My boss, she already knows

8    I'm here.  So she gives me the time off that I need to be

9    here.

10           MS. JUNGHANS:  Okay.  And if you were off for two

11   weeks or more --

12           THE PROSPECTIVE JUROR:  She knows.  I already told

13   her about it.

14           MS. JUNGHANS:  Okay.  Thank you.

15           THE COURT:  Thank you very much.

16           THE PROSPECTIVE JUROR:  You're welcome.

17           THE COURT:  You can step back into the jury room.

18           (Prospective juror exits courtroom)

19           THE COURT:  Let's bring in the next juror.

20           (Prospective juror enters courtroom)

21           THE DEPUTY CLERK:  Your Honor, this is juror number

22   1207.

23           THE COURT:  Good afternoon, sir.

24           We've got numbers 8, 9, and 13 on this card.

25           Question number 8 was whether you or a close friend

493

1       or family member worked for the federal government.  Why did

2       you answer that question "yes"?

3                   THE PROSPECTIVE JUROR:  They don't currently work for

4       the government, but they have worked in the past.

5                   THE COURT:  Who is it and what did they do?

6                   THE PROSPECTIVE JUROR:  My brother worked, I believe,

7       for the NSF.

8                   THE COURT:  And question number 9 was lawyers or

9       working in the legal profession.  Is that you or a friend?

10                  THE PROSPECTIVE JUROR:  My spouse was an attorney.

11                  THE COURT:  Was?

12                  THE PROSPECTIVE JUROR:  Uh-huh.

13                  THE COURT:  The person doesn't practice law anymore?

14                  THE PROSPECTIVE JUROR:  No.

15                  THE COURT:  Do you know what kind of attorney they

16      were?

17                  THE PROSPECTIVE JUROR:  It was in another country a

18      long time ago.  I didn't really ask, no.

19                  THE COURT:  Okay.

20                  THE PROSPECTIVE JUROR:  She is a stay-at-home mom

21      now.

22                  THE COURT:  And question number 13 was whether you or

23      a close friend or family member had ever been accused of, a

24      victim of, or a witness to a crime.

25                  THE PROSPECTIVE JUROR:  I answered that one

494

 1        incorrectly.

 2                THE COURT:  Incorrectly?

 3                THE PROSPECTIVE JUROR:  Yes.

 4                THE COURT:  You don't have a "yes" answer to that

 5        question?

 6                THE PROSPECTIVE JUROR:  No.

 7                THE COURT:  Was there anything else, any other

 8        questions I asked that triggered a "yes" answer in your mind?

 9                THE PROSPECTIVE JUROR:  No.

10                THE COURT:  All right.  Is there anything about what

11        we talked about, just knowing a lawyer or somebody who worked

12        in the federal government, that makes you feel you couldn't

13        be fair to both sides in this case?

14                THE PROSPECTIVE JUROR:  I don't believe so.

15                THE COURT:  Okay.  Any questions?

16                MS. GASTON:  Could you tell us about what you do,

17        please.

18                THE PROSPECTIVE JUROR:  I manage a science education

19        business.

20                MS. GASTON:  And what does the business do?

21                THE PROSPECTIVE JUROR:  We make electrophoretic

22        hardware and PCR apparatus for use in schools.  DNA

23        fingerprinting technology for schools.

24                MS. GASTON:  And how is that technology used in

25        schools?

1             THE PROSPECTIVE JUROR:  Hands-on wet labs.  So maybe

2       you've had a trial in the past that had DNA fingerprinting as

3       a subject.  We actually make the hardware and the reagents to

4       be used in a classroom.

5             MS. GASTON:  Is this college and graduate --

6             THE PROSPECTIVE JUROR:  High school, even.

7             MS. GASTON:  High school?

8             THE PROSPECTIVE JUROR:  Yeah.

9             MS. GASTON:  Thank you.

10            THE PROSPECTIVE JUROR:  Uh-huh.

11            THE COURT:  Any questions?

12            MS. JUNGHANS:  Do you mind telling me what country

13       your wife was practicing law in?

14            THE PROSPECTIVE JUROR:  Paraguay.

15            MS. JUNGHANS:  Thank you.

16            THE COURT:  Thank you very much.  You can step back

17       into the jury room.

18             (Prospective juror exits courtroom)

19             (Prospective juror enters courtroom)

20            THE DEPUTY CLERK:  Your Honor, this is juror number

21       0420.

22            THE COURT:  All right.  Good afternoon.  Thanks for

23       your patience.

24            THE PROSPECTIVE JUROR:  Of course.

25            THE COURT:  We've got answers 8, 10, 11, 13, and 23

496

1      on the back of this card.

2              I'm going to start with 23, which was my question

3      about whether there would be any reason why you couldn't sit

4      for the trial given the trial schedule that I told you.

5              THE PROSPECTIVE JUROR:  Sure.

6              THE COURT:  Why did you answer that question "yes"?

7              THE PROSPECTIVE JUROR:  I have now become the primary

8      caregiver for my infant son.

9              THE COURT:  I guess --

10             THE PROSPECTIVE JUROR:  One year and coming up on one

11     month as well.

12             THE COURT:  Okay.  Do you have any other childcare

13     lined up if you were going to be --

14             THE PROSPECTIVE JUROR:  It's sort of a mismatch of

15     trying to scrape that together in a short amount of time, and

16     then of course paying for that.

17             THE COURT:  So if for other reasons it was determined

18     that otherwise you were a perfectly well qualified juror and

19     you were selected to sit, would that be a hardship for you?

20             THE PROSPECTIVE JUROR:  I would think that it would

21     be just given that the cost of childcare in D.C., which

22     frankly costs more than my college tuition and board did.

23             THE COURT:  You're preaching to the choir here, to

24     I'm sure many people in the room.

25             Would that be bothering you as you're sitting here,

1    or would you be able to say, well, okay, I've been picked for

2    this trial and I am going to do my duty and I am going to pay

3    attention?

4         THE PROSPECTIVE JUROR:  I would be able to divorce

5    myself from those hardships I think at least mentally, yes.

6         THE COURT:  Do you have other family members that can

7    help out on an interim basis?

8         THE PROSPECTIVE JUROR:  We would attempt to, but

9    everyone sort of lives, generally speaking, out of the area.

10   We have some sort of cousins that live within 45 miles, but

11   that could be up to two hours, of course.

12        THE COURT:  All right.  Let me go back to the other

13   questions.

14        THE PROSPECTIVE JUROR:  Of course.

15        THE COURT:  Number 8 was whether you or a close

16   friend or family member worked for the federal government.

17        THE PROSPECTIVE JUROR:  Yes.  My wife currently works

18   for the federal government.

19        THE COURT:  Where does she work?

20        THE PROSPECTIVE JUROR:  U.S. Department of Health and

21   Human Services.

22        THE COURT:  What does she do there?

23        THE PROSPECTIVE JUROR:  She is the Director of

24   External Affairs for the Assistant Secretary for Health.

25        THE COURT:  Does that involve public relations, which

1      I think also --

2              THE PROSPECTIVE JUROR:  Yes, it does.

3              THE COURT:  -- another question.

4              THE PROSPECTIVE JUROR:  It is an appointed position

5      in the government.

6              THE COURT:  And so she's working full-time right

7      now --

8              THE PROSPECTIVE JUROR:  She is.

9              THE COURT:  -- and that's what has put you in the

10     primary caregiver seat for now?

11             THE PROSPECTIVE JUROR:  I run a small business, so

12     that allows me some flexibility to be able to care for my son

13     as well as operate my business.

14             THE COURT:  Okay.  Is there anything about her work

15     for the federal government or her work in the public

16     relations sector that you think you would bring to the

17     courtroom that would make it hard for you to be fair to both

18     sides in this case?

19             THE PROSPECTIVE JUROR:  No, I don't think so from her

20     perspective.

21             THE COURT:  Is there anything from your perspective?

22             THE PROSPECTIVE JUROR:  Possibly.  My business is a

23     political consulting firm, and I am a Republican political

24     consultant that focuses on the federal government,

25     specifically with the U.S. House, U.S. Senate, and races and

499

```
 1          those running for the United States presidency.

 2               THE COURT:  How do you feel that bears on your

 3          ability to be impartial in this case?

 4               THE PROSPECTIVE JUROR:  It is not a question I don't

 5          think of impartiality.  Some might find it as sort of a

 6          conflicted interest only because this is certainly -- I think

 7          from what I have understood -- and of course, you see

 8          splashed around has been very much part of that national

 9          conversation for the past several years as things have sort

10          of come up through investigations.

11               THE COURT:  All right.  And has this particular

12          aspect of the Special Counsel's investigation been something

13          in front of your mind as opposed to part of the general

14          national conversation?

15               THE PROSPECTIVE JUROR:  It has not.

16               THE COURT:  Do you know anything about the charges in

17          this case and how they fit into the Mueller investigation or

18          the larger national conversation?

19               THE PROSPECTIVE JUROR:  Only from your description

20          and my understanding of those just in brief.

21               THE COURT:  Does the fact that this case may have

22          arisen out of the Mueller investigation lead you to feel

23          right now that one side or the other has a stronger case?

24               THE PROSPECTIVE JUROR:  It has no bearing on my

25          feeling or opinion on the case at all.
```

1          THE COURT:  What about the fact that the defendant,

2     as he was introduced -- you heard that he has had connections

3     to several prominent democratic figures; does that affect

4     your ability to give him a fair and impartial hearing in this

5     case?

6          THE PROSPECTIVE JUROR:  It does not.

7          THE COURT:  Question number 13 is the only one I

8     haven't asked about yet, and that was, have you or a close

9     friend or family member being a witness to, victim to, or

10    accused of a crime.

11         THE PROSPECTIVE JUROR:  Yes.

12         THE COURT:  Tell me about that.

13         THE PROSPECTIVE JUROR:  I live in Washington, D.C. in

14    the actual city.  Seeing crimes committed as a witness is

15    fairly common, whether it is common robbery, larceny, sort of

16    things of that nature.  You call the police and you try to

17    get them to investigate any number of sort of either

18    aggravated assaults or petty thefts that happen on a near

19    daily occurrence.

20         THE COURT:  You have been calling the police on a

21    near daily basis?

22         THE PROSPECTIVE JUROR:  Sometimes but not recently,

23    fortunately.

24         THE COURT:  And how have you felt about the police

25    response?

501

1           THE PROSPECTIVE JUROR:  I think that they do what

2    they can.  I think locally it is a prosecutorial sort of

3    problem that we just haven't had prosecutors willing to

4    prosecute the crimes that have been going on unless they

5    generally include murder.  I have found that a lot of things

6    just don't get actually prosecuted here even though all the

7    legwork is done by the police.

8           THE COURT:  And would you bring that point of view to

9    bear in considering the presence of members of the

10   U.S. Attorney's Office in the District of Columbia here as a

11   prosecution team?

12          THE PROSPECTIVE JUROR:  I would not, just because

13   this is a different level than local crimes in the District

14   of Columbia.

15          THE COURT:  So you're not going to be sitting here

16   thinking, why, aren't they prosecuting the robberies that I

17   see every day?

18          THE PROSPECTIVE JUROR:  No.  It is what it is.

19          THE COURT:  All right.  Do you have any questions?

20          MS. GASTON:  Would you mind telling us about your

21   business?

22          THE PROSPECTIVE JUROR:  Excuse me?

23          THE COURT:  Would you mind telling us about your

24   business?

25          THE PROSPECTIVE JUROR:  Sure.  So we provide

1    marketing services for members of Congress, U.S. Senators,

2    those running for those offices, and for the presidency, as

3    well, focusing on new technologies, primarily in AI, as well

4    as traditional services; mail, marketing, phones, etc.

5              MS. GASTON:  And so is it primarily sort of the way

6    of getting the message out, or do you also help them with

7    their messaging?

8              THE PROSPECTIVE JUROR:  It depends on the client and

9    what their sort of needs are.  Generally speaking, it is the

10   way of getting the message out, but it also involves crafting

11   of that message and being sure that everything across all

12   medium are sort of gibing together, so we have a sort of

13   united front in being able to bring that message out.

14             MS. GASTON:  Thank you.

15             THE PROSPECTIVE JUROR:  Of course.

16             MS. JUNGHANS:  Just so I'm clear, in the course of

17   your consulting, have you ever had any opportunity or

18   occasion to interact with either Paul Manafort or Rick Gates?

19             THE PROSPECTIVE JUROR:  I have not.

20             MS. JUNGHANS:  Thank you.

21             THE COURT:  All right.  You can step back out.

22             THE PROSPECTIVE JUROR:  Thank you, Your Honor.  Thank

23   you, counsel.

24             (Prospective juror exits courtroom)

25             THE COURT:  Any motions with respect to this juror?

503

1          MS. JUNGHANS:  No, Your Honor.

2          MS. GASTON:  Could we have one moment, please?

3          THE COURT:  Yes.

4              (Pause)

5          MS. GASTON:  Nothing, Your Honor.

6          THE COURT:  Thank you.  We'll go on to the next

7     juror.

8              (Prospective juror enters courtroom)

9          THE DEPUTY CLERK:  Your Honor, this is juror number

10    0655.

11         THE COURT:  All right.  Good afternoon.

12         THE PROSPECTIVE JUROR:  Good afternoon.

13         THE COURT:  This juror has numbers 8 and 12 on the

14    back of her card.

15         Question 8 was when I asked if you or a close friend

16    or family member was involved in law enforcement.

17         THE PROSPECTIVE JUROR:  Law enforcement or federal

18    government?

19         THE COURT:  You're right, federal government.  Sorry.

20    Long day.

21         Have you or a close friend or family member been

22    involved in the federal government?

23         THE PROSPECTIVE JUROR:  My son works for the federal

24    government.

25         THE COURT:  What does he do there?

1           THE PROSPECTIVE JUROR:  Smithsonian.  He works for

2      the Smithsonian Institute.  That's it.

3           THE COURT:  Do you know what he does there?

4           THE PROSPECTIVE JUROR:  Materials handler.

5           THE COURT:  Question number 12 was you sat on a jury

6      before.

7           THE PROSPECTIVE JUROR:  Yes, I have.

8           THE COURT:  Tell me about that.  Was it in Superior

9      Court or was it over here?

10          THE PROSPECTIVE JUROR:  I have been on -- I have been

11     on grand jury.  I have been in the District Court.  And I

12     believe I have been on a case in this court.  Not necessarily

13     this room.  But before.

14          THE COURT:  Okay.  Putting aside the grand jury for a

15     second, do you remember what kind of a trial you sat on?

16          THE PROSPECTIVE JUROR:  No.  It was awhile back.

17          THE COURT:  Do you remember if you reached a verdict

18     one way or the other?

19          THE PROSPECTIVE JUROR:  Yes, we did.

20          THE COURT:  Do you remember what it was?

21          THE PROSPECTIVE JUROR:  I believe it was not guilty.

22          THE COURT:  Okay.

23          THE PROSPECTIVE JUROR:  I believe so.  But it was a

24     while back.  Excuse me.

25          THE COURT:  Now, you sat on a grand jury both in this

1    building and across the street, is that what you said?

2              THE PROSPECTIVE JUROR:  In this building, grand jury.

3              THE COURT:  So you understand when you're in the

4    grand jury you hear just part of a case, just the part the

5    government wants you to hear, and they ask you whether there

6    is probable cause to believe somebody committed a crime.  And

7    if you're a juror in this case, you're going to have to hear

8    all the evidence and decide if the government proved its case

9    beyond a reasonable doubt.

10             Do you understand that is a different standard that

11   you would have to apply?

12             THE PROSPECTIVE JUROR:  Yes.  Yes.

13             THE COURT:  All right.  Any questions?

14             MS. GASTON:  Ma'am, could you tell us about your

15   work, please?

16             THE PROSPECTIVE JUROR:  My work?

17             MS. GASTON:  Yes.

18             THE PROSPECTIVE JUROR:  I do accounting work for a

19   hotel.

20             MS. GASTON:  Just for one hotel or for --

21             THE PROSPECTIVE JUROR:  No, one hotel.

22             MS. GASTON:  One hotel.  I'm sure that's plenty.

23   Thank you.

24             THE COURT:  Any questions?

25             MS. JUNGHANS:  No questions.

506

1          THE COURT:  Thank you very much.  You can go back

2     into the jury room.

3          THE PROSPECTIVE JUROR:  Thank you.

4          (Prospective juror exits courtroom)

5          THE COURT:  Let's bring the next juror.

6          (Prospective juror enters courtroom)

7          THE DEPUTY CLERK:  Your Honor, this is juror number

8     0615.

9          THE COURT:  Good afternoon.

10          THE PROSPECTIVE JUROR:  Good afternoon.

11          THE COURT:  I have your index card, and you don't

12     have any numbers written on the back, but I just wanted to

13     make sure that's because you didn't hear any question that

14     you had a "yes" answer to and not because we forgot to give

15     you a pencil or something.

16          THE PROSPECTIVE JUROR:  Oh, no, I had a pencil.  It

17     was nothing.

18          THE COURT:  You didn't have any "yes" answers?

19          THE PROSPECTIVE JUROR:  No.

20          THE COURT:  All right.  Any questions?

21          MS. GASTON:  Sir, I don't think we have employment

22     information for you.  Are you employed?

23          THE PROSPECTIVE JUROR:  Employed?

24          MS. GASTON:  Yes.

25          THE PROSPECTIVE JUROR:  Yeah.

507

```
 1              MS. GASTON:  And what do you do?

 2              THE PROSPECTIVE JUROR:  Do I work now?

 3              MS. GASTON:  Yes.

 4              THE PROSPECTIVE JUROR:  I don't work right now.

 5              MS. GASTON:  You're not working now?

 6              THE PROSPECTIVE JUROR:  No.

 7              MS. GASTON:  Thank you.

 8              MS. JUNGHANS:  Have you been employed before the

 9      period of not working?

10              THE PROSPECTIVE JUROR:  No.

11              MS. JUNGHANS:  Have you been in school?

12              THE PROSPECTIVE JUROR:  Yeah.  I graduated.

13              MS. JUNGHANS:  I'm sorry.  I can't hear you.  I

14      apologize.

15              THE PROSPECTIVE JUROR:  Yeah, I graduated.

16              MS. JUNGHANS:  From?

17              THE PROSPECTIVE JUROR:  H.D. Woodson High School.

18              MS. JUNGHANS:  How do you spend your time?

19              THE PROSPECTIVE JUROR:  Helping my father out in the

20      house.

21              MS. JUNGHANS:  I'm sorry.  I can't hear you.

22              THE PROSPECTIVE JUROR:  Helping my father out in the

23      house.

24              MS. JUNGHANS:  Okay.  All right.

25              THE COURT:  Does he have some kind of disability and
```

1    needs your help?

2         THE PROSPECTIVE JUROR:  He needed help after my

3    mother passed.

4         MS. JUNGHANS:  Okay.  Nothing further.

5         THE COURT:  All right.  Thank you very much, sir.

6    You can step back into the jury room.

7         (Prospective juror exits courtroom)

8         THE COURT:  Let's bring in the next.

9         (Prospective juror enters courtroom)

10        THE DEPUTY CLERK:  Your Honor, this is juror number

11   0564.

12        THE COURT:  All right.  Good afternoon.

13        THE PROSPECTIVE JUROR:  Hello.

14        THE COURT:  Thanks for your patience today.

15        You have got numbers 7, 8, and 12 on the back of your

16   card.

17        Question 7 was whether you or a close friend or

18   family worked in law enforcement.  Can you tell me about

19   that?

20        THE PROSPECTIVE JUROR:  My sister works at the FBI.

21        THE COURT:  Do you know what she does there?

22        THE PROSPECTIVE JUROR:  Budget.

23        THE COURT:  Is there anything about the fact that she

24   worked in the FBI and there may be FBI agents who are

25   witnesses in this case that would make you tend to favor the

509

1   government versus the defendant in this case?

2          THE PROSPECTIVE JUROR:  No.

3          THE COURT:  Okay.  Just so that the courtroom can

4   hear and the court reporter can hear you, I need you to talk

5   into the microphone.

6          Question number 8 was whether you or a close friend

7   or family member worked for the federal government.  Is that

8   the same family member?

9          THE PROSPECTIVE JUROR:  I work for the Smithsonian.

10          THE COURT:  We've had a lot of Smithsonian people

11   today.  What do you do there?

12          THE PROSPECTIVE JUROR:  I'm an anthropologist.

13          THE COURT:  And you served on a jury before?

14          THE PROSPECTIVE JUROR:  I did.  Three years ago.  It

15   was a homicide trial.

16          THE COURT:  Do you remember if you reached a verdict

17   in that case?

18          THE PROSPECTIVE JUROR:  We did.

19          THE COURT:  Do you remember what it was?

20          THE PROSPECTIVE JUROR:  Guilty.

21          THE COURT:  Is there anything about that experience

22   that would affect your ability to start from a blank slate

23   and be fair and impartial in this case?

24          THE PROSPECTIVE JUROR:  No.

25          THE COURT:  Questions?

510

1          MS. GASTON:  No.

2          THE COURT:  Anything from you?

3          MS. JUNGHANS:  No questions.

4          THE COURT:  Thank you.  You can step back into the

5     jury room.

6          (Prospective juror exits courtroom)

7          THE COURT:  My count at this point is 33.  Is that

8     correct?

9          MR. CAMPOAMOR-SANCHEZ:  That's correct.

10          THE COURT:  We have 33 people qualified.  So I was

11     going to go maybe to try to get 34 or possibly even 35 and

12     then stop, and then have the 35 come back in the morning, and

13     excuse the rest.

14          Does that work for everybody?

15          MR. CAMPOAMOR-SANCHEZ:  Yes, Your Honor.

16          THE COURT:  All right.

17          (Prospective juror enters courtroom)

18          THE DEPUTY CLERK:  Your Honor, this is juror number

19     1748.

20          THE COURT:  All right.  There's some handwriting, but

21     I think you were just taking notes.  The only number I have

22     on the back is question number 8, and that was when I asked

23     you whether you or a close friend or family member worked for

24     the federal government.  And you have a "yes" answer to that,

25     possibly.

511

1          THE PROSPECTIVE JUROR:  Well, State Department and a

2     lot of different agencies, but I was not a full-time, regular

3     employee; I was a contractor full-time.

4          THE COURT:  What kind of work did you do as a

5     contractor for the State Department and other agencies?

6          THE PROSPECTIVE JUROR:  Okay.  A lot of it had to do

7     with workforce planning.  But actually, it is State

8     Department.  It had more to do with helping out chief warrant

9     officers and other family members out like in Africa and

10     different parts of the world.

11          THE COURT:  It was more dealing with personnel and

12     logistical types of issues rather than foreign policy; would

13     that be fair?

14          THE PROSPECTIVE JUROR:  No, it had to do with money.

15     You know, the reds, yellow, and greens that you have to

16     have -- I mean that you would want to have all greens when

17     you have -- every quarter.  No?

18          Basically, let's just forget the State Department.

19     We'll go on to the rest of them.  The rest were like

20     workforce planning and personnel, etc.

21          THE COURT:  When you worked for the State Department,

22     were you involved in any sort of foreign relations or the

23     substance of our dealings with Ukraine?

24          THE PROSPECTIVE JUROR:  No.

25          THE COURT:  Is there anything about your work for the

1    State Department or any other agency that makes you feel you

2    couldn't be fair and impartial to both sides in this case?

3              THE PROSPECTIVE JUROR:  Sure.  No.

4              THE COURT:  Any questions?

5              MS. GASTON:  Ma'am, are you currently still doing

6    what you previously did for the government?

7              THE PROSPECTIVE JUROR:  Yes.  No.  I'm sorry.  I'm

8    now in a consultant role, but it was more like when I want to

9    work, I can go to work and do that type of work.

10             MS. GASTON:  Instead of being a contractor, you're a

11   consultant?

12             THE PROSPECTIVE JUROR:  Right.

13             MS. GASTON:  You started to talk about red, yellow,

14   green, or some sort of color chart.  Can you --

15             THE PROSPECTIVE JUROR:  Oh, yeah, it is with the

16   government.  Basically, it is with all the agencies, and they

17   want you to get all greens and don't have reds and yellows,

18   and it's a scoring system.

19             THE COURT:  Do those refer to -- who gets graded red,

20   yellow, or green?  People?  Countries?  Banks?

21             THE PROSPECTIVE JUROR:  Actually, certain departments

22   within a government, like State Department.  Even though I

23   was working with the foreign service officers and the

24   families, I wasn't there overseas, I was here, but I was

25   actually dealing with something totally different, which had

1    to do with a system that they were trying to create for

2    hospitals and for doctors and for nurses for when Americans

3    went into these places.  They had backup, and they were

4    trying to do something electronic.  It was called the

5    electronic -- sorry.  It's been a while.  It was a system

6    they were trying to develop, and they did develop, to

7    basically be able to inform anybody overseas who's a doctor

8    or nurse or whatever what this person's medical history is

9    about.

10            MS. GASTON:  And when was it that you did the work

11    with the State Department?

12            THE PROSPECTIVE JUROR:  I would say about '98.

13            MS. GASTON:  Okay.  Thank you.

14            MS. JUNGHANS:  Ma'am, our list says that you are

15    self-employed in the human resources area.

16            THE PROSPECTIVE JUROR:  Yes.

17            MS. JUNGHANS:  Do you own your own company?  Or

18    self-employed means it is just you?

19            THE PROSPECTIVE JUROR:  It is just me, but mainly it

20    is because of contacts.  It is just me.

21            MS. JUNGHANS:  Okay.  You get contracts with various

22    customers, both in the private sector and the government?

23            THE PROSPECTIVE JUROR:  Yes.

24            MS. JUNGHANS:  Okay.  Thank you.

25            THE COURT:  You can step back into the jury room.

514

1      Thank you.

2              THE PROSPECTIVE JUROR:  Okay.  Thank you.

3              (Prospective juror exits courtroom)

4              THE COURT:  All right.  Let's do one more.  I have

5      got 34.  Let's do one more.

6              (Prospective juror enters courtroom).

7              THE DEPUTY CLERK:  Your Honor, this is juror number

8      0114.

9              THE COURT:  Good afternoon.  Thank you for hanging in

10     there with us today.

11             I have your index card, and you didn't write any

12     numbers on the back.  I just want to make sure that's because

13     I didn't ask any questions that you had the answer "yes" to.

14             THE PROSPECTIVE JUROR:  That's correct.

15             THE COURT:  All right.  Any questions for this juror?

16             MS. GASTON:  Good afternoon.  Would you mind just

17     telling us about your work?

18             THE PROSPECTIVE JUROR:  Sure.  I'm a human resources

19     manager for GardaWorld Federal Services, which is a

20     government contractor for DoD and DOS.

21             MS. GASTON:  What does it do for those agencies?

22             THE PROSPECTIVE JUROR:  They do physical security for

23     those agencies over in Afghanistan.

24             MS. GASTON:  And is it limited to Afghanistan?

25             THE PROSPECTIVE JUROR:  They do have a few contracts

1      in, like, Africa but they're very small.

2              MS. GASTON:  Thank you.

3              THE COURT:  Any questions?

4              MS. JUNGHANS:  No, Your Honor.

5              THE COURT:  Okay.  Thank you very much.  You can go

6      back in the jury room.

7              (Prospective juror exits courtroom)

8              THE COURT:  All right.  I believe that we have enough

9      jurors that even with overnight attrition we should have

10     enough jurors to pick a jury tomorrow morning.  I don't think

11     we should make you exercise your peremptories at this moment.

12     So we'll do the same thing we were going to do -- it seems

13     like five years ago -- but it was only Monday, and we will

14     recess for the evening.

15              We will have the jurors who are listed on line 3, 4,

16     5, 6, 7, 9, 10, 11, 15, 18, 19, 20, 22, 25, 27, 28, 33, 34,

17     35, 36, 38, 39, 42 --

18              MS. CAMPOAMOR-SANCHEZ:  Your Honor --

19              THE COURT:  I'm sorry.  39 and 40.  That is what I

20     had circled.  42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53,

21     and 54 will all be instructed to return tomorrow.

22              And Mr. Haley, they need to be told to go to the jury

23     room and then the jury room will send them here?

24              THE DEPUTY CLERK:  Jury office at 8 a.m., Your Honor.

25              THE COURT:  Then, I want them here as close to 9:30

516

1     as possible, and counsel here at 9:30 to make their

2     selections, instruct them, and then we're going to open.  And

3     then as far as I'm concerned, everyone after that, number 55

4     to the end, if they haven't already been excused, can be

5     excused to not come back tomorrow if we're allowed to give

6     them that instructions.  Otherwise, the ones that were

7     supposed to go upstairs should go upstairs.

8             You can excuse them, and you'll let the jury office

9     know.

10            THE DEPUTY CLERK:  Yes, I will, Your Honor.

11            THE COURT:  All right.  I'm going to assume there is

12    nothing else I need to take up at this moment.

13            Mr. Taylor has something.

14            MR. TAYLOR:  No, it's a personal matter, Your Honor.

15    I found these headphones very useful.  May I use this during

16    the trial?

17            THE COURT:  I don't have any problem with that.  I

18    think if you're going to be the one handling the witness --

19            MR. TAYLOR:  No, not if I'm not handling the witness.

20            THE COURT:  Anybody else?

21            Ms. Junghans, Mr. Craig.  Anybody that wants them can

22    use them, but I think when you're handling the witness, that

23    would be too awkward.  We will pass them around in that

24    situation.

25            THE DEPUTY CLERK:  Three for that table and two for

517

1          that table.

2                    THE COURT:  Anybody at this table plan to use them

3          during the trial?

4                    MR. CAMPOAMOR-SANCHEZ:  Not unless there is a bench

5          conference.

6                    THE COURT:  Bench conferences without a juror

7          standing here, we may be able to let two of you come up.  I

8          think it gets crowded with everybody.

9                    So thank you again very much, everybody, for being

10         very efficient today.  I'm not -- well, I'm not going to say

11         anything further.  I will see you tomorrow morning.

12                   (The Deputy Clerk confers with the Court)

13                   I have already asked for updated exhibit lists.  I

14         haven't asked for witness lists and the thumb drives.

15                   THE DEPUTY CLERK:  We had talked about two copies of

16         the witness list, two copies of the exhibit list, and updated

17         thumb drives.

18                   THE COURT:  Tomorrow.

19                   THE DEPUTY CLERK:  Thank you.

20                   THE COURT:  All right.  Everybody have a good

21         evening.

22                        (Proceedings adjourned at 5:00 p.m.)

23

24

25

PATRICIA A. KANESHIRO-MILLER, RMR, CRR
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
202-354-3243

518

```
1                    CERTIFICATE OF OFFICIAL COURT REPORTER

2

3               I, Patricia A. Kaneshiro-Miller, certify that the

4       foregoing is a correct transcript from the record of

5       proceedings in the above-entitled matter.

6

7

8       /s/ Patricia A. Kaneshiro-Miller          August 14, 2019
        -----------------------------------       --------------------
9       PATRICIA A. KANESHIRO-MILLER                     DATE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

519

