1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA
2

3    United States of America,        )  Criminal Action
                                      )  No. 19-CR-125
4                        Plaintiff,   )
                                      )  JURY TRIAL - MOTIONS
5    vs.                              )  Day 12 - Morning
                                      )
6    Gregory B. Craig,                )  Washington, D.C.
                                      )  August 27, 2019
7                        Defendant.   )  Time:  10:00 a.m.
     _____
8
               TRANSCRIPT OF JURY TRIAL - DAY 12 - MORNING
9                          HELD BEFORE
            THE HONORABLE JUDGE AMY BERMAN JACKSON
10                 UNITED STATES DISTRICT JUDGE
     _____
11
                    A P P E A R A N C E S
12
     For Plaintiff:      **Fernando Campoamor-Sanchez**
13                       **Molly Gulland Gaston**
                         U.S. Attorney's Office FOR THE
14                          DISTRICT OF COLUMBIA
                         555 Fourth Street, NW
15                       Washington, D.C. 20530
                         (202) 252-7698
16                       Email: Fernando.campoamor-sanchez@usdoj.gov
                         Email: Molly.gaston@usdoj.gov
17                       **Jason Bradley Adam McCullough**
                         U.S. Department of Justice
18                       950 Pennsylvania Avenue, NW
                         Washington, D.C. 20530
19                       (202) 233-0986
                         Email: Jason.mccullough@usdoj.gov
20
     For Defendant:      **William James Murphy**
21                       **William W. Taylor, III**
                         **Adam B. Abelson**
22                       ZUCKERMAN SPAEDER, LLP
                         100 East Pratt Street
23                       Suite 2440
                         Baltimore, MD 21202
24                       (410) 949-1146
                         Email: Wmurphy@zuckerman.com
25                       Email: Wtaylor@zuckerman.com
                         Email: Aabelson@zuckerman.com

**Paula M. Junghans**
**Ezra B. Marcus**
ZUCKERMAN SPAEDER, LLP
1800 M Street, NW
Suite 1000
Washington, D.C. 20036
(202) 778-1814
Email: Pjunghans@zuckerman.com
Email: Emarcus@zuckerman.com

---

Court Reporter:      Janice E. Dickman, RMR, CRR, CRC
                     Official Court Reporter
                     United States Courthouse, Room 6523
                     333 Constitution Avenue, NW
                     Washington, D.C.  20001
                     202-354-3267

1          THE COURTROOM DEPUTY:  Your Honor, this is Criminal

2    Case 19-125, United States of America versus Gregory B. Craig.

3          I'm going to ask counsel, please, approach the

4    podium, state your appearance for the record, introduce the

5    parties at your table.

6          MR. CAMPOAMOR-SANCHEZ:  Good morning, Your Honor.

7          Molly Gaston, Jason McCullough, and Fernando

8    Campoamor for the United States.

9          THE COURT:  Good morning.

10         MR. MURPHY:  Good morning, Your Honor.

11         William Murphy for Mr. Craig.  Along with me is

12   Mr. Taylor, Ms. Junghans, Mr. Marcus, and Mr. Abelson; and

13   Mr. Craig is present as well.

14         THE COURT:  All right.  Good morning, everybody.  We

15   have a few matters to take up this morning.  Before I hear

16   argument on the Rule 29(b) motion, I want to return briefly to

17   the character witness issue, and then also try to address some,

18   if not all, of the defendant's questions about the jury

19   instructions, and then I want to hear from both sides.

20         There is actually a pending motion on the docket, the

21   Motion in Limine Docket Number 43.  And I think with my ruling

22   yesterday afternoon and my ruling this morning, essentially

23   it's been granted in part and denied in part, so, for purposes

24   of the docket.

25         But, I reviewed the pleadings and the case law that

1    the parties have provided, and I thought about it some more.

2    And I think it's important to note that pursuant to the Federal

3    Rules of Evidence, whether one is eliciting reputation

4    testimony or opinion testimony, the testimony is supposed to be

5    relatively streamlined to consist of how the person knows the

6    defendant, their basis for the opinion or their basis for the

7    knowledge of his reputation and the reputation or the opinion,

8    and not a long list of the many specific instances of his good

9    conduct.

10          Given the recitation of the defendant's résumé

11   yesterday, it seemed that the defense might be headed more into

12   a plan to offer up the history of his good works.  And I think

13   it's important to realize what the rules permit and what they

14   don't.  And also given the testimony on that point that's

15   already been elicited, and the fact that the defendant himself

16   will undoubtedly and appropriately delve into his résumé as

17   part of his own testimony, I have serious concerns about

18   repetition and the occupation of too much of the jurors' time

19   with matters that are not helpful and can turn out to be

20   cumulative.

21          And I have to balance those concerns against the

22   defendant's right to present his defense, and a recognition

23   that character testimony is a well-recognized, admissible, and

24   important aspect of that defense.

25          Therefore, while I authorized him to introduce up to

1    four character witnesses yesterday, I've determined that the

2    best approach would be to allow the defendant to proceed, but

3    to place the defense on notice of my intention to consider this

4    as the testimony unfolds, and possibly revisit it, based on

5    what actually transpires.

6           The parties don't dispute that the number of

7    character witnesses the defense may call is within the sound

8    discretion of the Court.  The government's motion points that

9    out at page 3, and the defense opposition, which is Docket 54,

10    at page 2, and it's also set out in *United States versus*

11    *Harris,* 491 F.3d 440, pages 446 to -47, out of the D.C. Circuit

12    in 2007.  Also, the *Michelson* case from the Supreme Court, 335

13    U.S. 469 from 1948.

14           Upon my review of the case law that everyone has

15    given me, it appears clear that upon hearing the testimony of

16    the first two or three character witnesses, I may then, in my

17    sound discretion and judicial management of the case, limit

18    further testimony if I find, once I know what these witnesses

19    are actually saying, that additional character witnesses would

20    provide merely cumulative evidence.

21           In *United States versus Jones*, 43 F.R.D. 511 to 515,

22    another Court in this District indicated that it's well

23    established that a trial judge may, within his discretion,

24    limit the number of character witnesses called by a defendant,

25    and sound judicial management would suggest that he do so.  And

1    *United States versus Johnson*, 730 F.2d 683, the Eleventh

2    Circuit said, "We agree with the district court, that the three

3    character witnesses called by the defense were given ample

4    opportunity to express" -- I don't think they meant the

5    defendant -- "their distress," I believe, "of the witness" --

6    "and that any further testimony would have not significantly

7    aided the jury in assessing the credibility."

8         So, at any rate, I'm not going to rule, as the

9    defense didn't want me to, in advance based on some arbitrary

10   number.  I'm going to rule, as we proceed, based on what's

11   actually happening and whether I have a basis to find that it's

12   getting cumulative.  So, the defense is on notice and should

13   keep that in mind when selecting the order of the witnesses.

14        I also note that the law, including the *Lewis* case

15   cited by the defendant, is quite clear that the opposing party

16   may cross-examine character witnesses with specific instances

17   of misconduct, if those instances are relevant to the trait at

18   issue and the time period at issue.

19        However, there are cases that indicate that there is

20   a restriction on hypothetical questions; Would it affect your

21   opinion if.  The hypotheticals are based on the essential

22   issues of guilt in the case.  In other words, if the

23   hypothetical assumes the truth of the events of which he is at

24   this moment presumed to be innocent.

25        I'm not sure that those cases go all the way to

1     prohibiting any questions based on the facts in this case.

2     But, I'm also not sure how one could frame an acceptable

3     hypothetical that has just some undisputed fact in the case, a

4     backdated invoice, for example, that won't present these issues

5     and won't result in a lengthy debate at the bench about a

6     matter that is relatively collateral to the character witness's

7     testimony.

8           And, therefore, any hypotheticals regarding events in

9     this case have to be pre-cleared before they're asked, so that

10    they're not said on the record before we have our discussion.

11    And I think they're likely to be disfavored.  I think the

12    larger point, in any event, is the fact that the witness has no

13    knowledge of the facts of this case.

14          And therefore, the cautionary note that I gave the

15    defense yesterday about the fact that our jurors are paying

16    close attention, and they seem to be quite attuned to the lack

17    of any need to tell them the same thing multiple times, is as

18    applicable to the government as it was to the defense

19    yesterday.

20          And the government should also assess, carefully,

21    whether it would be helpful to the jury, as opposed to merely

22    cumulative or argumentative, to devote time to the

23    cross-examination of individuals who hold the defendant in high

24    regard based on their interactions and associations with him,

25    but have no personal knowledge of the facts of the case.

1           So, I leave that for all of you to think about, and

2     the defense will call character witnesses in his case as he

3     deems appropriate, and I will assess it as it happens.

4           With respect to your Rule 29 discussion this morning

5     and Mr. Taylor's request that I give some preview of what the

6     jury instructions are likely to be in this case, I want to say,

7     first of all, that the jury instructions have to be based on

8     the evidence.  And, therefore, I can't possibly determine

9     exactly which jury instructions are going to be appropriate or

10    not because I have not yet heard all the evidence in the case.

11         However, I can certainly indicate that with respect

12    to willfulness, I have read the *Pomponio, Cheek, Ratzlaf,*

13    *Moore, Bryan, Judge Friedman's decision in Tri*e, and the *Burden*

14    case that was recently decided by the D.C. Circuit that was

15    provided to me in a defense supplement.

16         And I believe that having reviewed all of that, that

17    the willfulness instruction that comes out of the Supreme

18    Court's decision in *Bryan*, B-R-Y-A-N, is the willfulness

19    instruction that should be given, and that there is not legal

20    authority that would support a heightened specific intent,

21    willfulness, destruction, as has been requested, similar to the

22    one that was given in the *Trie* case.

23         I believe that was a very unique and limited

24    situation that involved the overlap of willfulness for aiding

25    and abetting purposes, and willfulness under the federal

1    election laws, and that doesn't apply here.

2            And the government -- the defense has pointed me to

3    Judge Kavanaugh's opinion in the *Moore* case.  And putting aside

4    the question of whether, you know, his dicta on the subject is

5    controlling on me or not, at the end of the day, what he was

6    advocating was the formulation in *Bryan* as the willfulness

7    instruction, to make sure that the false statement statute

8    doesn't catch people unaware.

9            And, so, I don't see that there is authority to give

10   it, and so that's where I'm headed.  So you should direct

11   yourself to whether they've met the lower standard in your

12   argument.

13           And I don't think that *Burden* is to the contrary.

14   Indeed, *Burden* also approved an instruction lifted straight

15   from *Bryan*, without the extra gloss, in dealing with the

16   statute that it was applying in that case.

17           With respect to materiality, I think both sides have

18   generally set out what the law of materiality is, and you're

19   not that different from each other.  And, so, within your jury

20   instructions can guide you there.

21           With respect to literal truth, I think that argument

22   is -- I don't want to spend this morning on it.  I think we'll

23   probably spend some time in the jury instruction conference on

24   it.  I think the government may have the better argument as to

25   whether it is a complete defense to a scheme allegation under

1    (a)1, as opposed to a doctrine that would be important in terms

2    of the consideration of whether any particular statement

3    alleged to be false can be considered to be the affirmative act

4    necessary to prove a scheme, which is slightly different.

5           But, why and how these should be considered literally

6    true, some of it was apparent from the submission you filed,

7    some of it I'm going to need further argument on.  But, I think

8    whether they're true or whether they are literally true, the

9    daylight between those two, there's not -- there's not much.

10          But, I think that gives you a sense of where the jury

11   instructions are headed.

12          I think the most important thing for the argument

13   that I want to tell you, and the reason I asked for -- I

14   assigned the government the homework assignment that I assigned

15   it is, having heard all the evidence, and having read all of

16   the pleadings and the supplemental pleadings and the proposed

17   jury instructions and the arguments for and against the

18   proposed jury instructions that relate to duty to disclose

19   within the context of what I now understand the evidence in

20   this case to be, I agree with the defendant, that if the fact

21   that they're saying the defendant failed to state is simply a

22   fact that has to be disclosed at the end of the day, if one

23   registers, if those facts were not volunteered in the course of

24   the interview, that that would not be an actionable omission in

25   this case.

1          The government can certainly argue that the purpose

2     of the scheme and defendant's intent in undertaking the alleged

3     scheme was to avoid the disclosure of the fact that he would

4     have had to disclose under FARA, for example, the $4 million,

5     as well as to avoid the career impact of registration itself.

6     The duty has to have been the duty to be truthful in answering

7     the questions asked, and in advancing assertions to the

8     government to get it to change its mind.

9          So, I went through what -- the reason I asked is what

10    are the omissions that you're going to say violated the statute

11    here, and are the affirmative acts this jury should consider

12    when it decides whether he undertook to engage in this scheme,

13    I wanted to know what you were talking about, and how were they

14    tied to the questions and answers that were given.

15         So, for instance -- and this is an easy one because

16    the government isn't relying on it -- if the government had

17    said to me, He didn't give the name of the individual.  I mean,

18    in that case, I actually think it was asked for and they

19    politely declined.  But -- so that's not a good example.

20         But I think you understand my point.  I agree with

21    the defense, that he didn't have to sit there and, basically,

22    orally complete a FARA registration form.  That was not his

23    duty at the meeting.  He was asked specific questions in

24    letters, he was allowed to not answer, he answered.  Once he

25    undertook to answer the questions, he had to answer the

1    questions truthfully, and he could not omit facts that left his

2    answers false or misleading in their absence.

3         And, so, that has to be the duty that gets argued at

4    this point and that gets argued at the close of the trial that

5    was violated.

6         Looking at Docket 119.1, the list of the false

7    statements that the government wants to argue are actionable

8    and the omissions that the government wants to argue are

9    actionable, all as the affirmative acts that the jury must

10   unanimously agree to one of in order to find him guilty of the

11   scheme.

12        With respect to the false statements, there's none of

13   those that, I believe, as a matter law, they can raise.  Those

14   are false statements.  We're not talking about duty to disclose

15   now.  We're talking about truth or falsehood, and those are

16   jury questions, and we'll get to that.  Within -- within the

17   Rule 29, you can argue to me why the law has -- the facts have

18   established it.  And I'm not going to say you can't argue any

19   of those as a matter of law because there's no duty to say

20   them.  There's a duty to be truthful.

21        With respect to the omissions, Fact Number 1:

22   Defendant recommended and facilitated the hiring of FTI

23   Consulting.  I'm not entirely sure that there was a question

24   asked to which that fact was actually responsive.  The

25   government says it's responsive to the question:  "What was

1    your firm's understanding of what would happen to the Report

2    when it was released to the Ukrainian Ministry of Justice?"

3              And I do think that this falls within the category of

4    suggesting that he volunteer something that really fell outside

5    what he was asked.  So, I don't believe that that is an

6    omission that you can say, He did not say this in the

7    interview, therefore, that is an omission that furthered the

8    scheme.

9              However, you can certainly bring out that fact and

10   argue that it is relevant to the truthfulness of his statements

11   about whether he consulted with Ukraine or informed the Ukraine

12   about what he was doing.

13             I'm not saying it's not relevant, but I don't think

14   it's actionable, if everybody understands what I mean by that

15   distinction.

16             Similarly, defendant requested from Paul Manafort and

17   received multiple copies of the release plan.  Again, the

18   question, "What was your firm's understanding of what would

19   happen to the Report when it was released to the Ukrainian

20   Ministry of Justice," I think was largely about what the

21   Ukraine was going to do.

22             And I'm not sure that his saying, Oh, by the way, I

23   received these plans -- I think that's pretty far afield from

24   being directly responsive to that question.

25             However, your numbers 3 and 4, that he met with

1    Manafort, Hawker, and others at the Harvard Club to discuss the

2    media rollout, and that he specifically identified Sanger as a

3    reporter to be used for the prepublication, exclusive receipt

4    of the Report, I think that has to be a factual question for

5    the jury to determine, whether that was or wasn't.

6         In other words, whether the seeding plan and his

7    knowledge of it was or wasn't responsive to the question, "What

8    was your firm's understanding of what would happen to the

9    Report when it was released to the Ukrainian Ministry of

10   Justice?"  There was a plan afoot to release it to preselected

11   journalist prior to its public release, I can't say, as a

12   matter law, that that's something he had no duty to reveal,

13   given the questions he was asked in the interview.  That's a

14   question of fact for the jury.

15        Question 5 -- Omission Number 5 in the chart, that

16   the defendant asked Mr. Sanger to speak with Vin Weber about

17   the Report, connected Sanger and Weber, and had a copy of the

18   Report delivered to Weber's office in early October, relatively

19   on the heels of the Harvard Club meeting, is plainly responsive

20   to the first question in the June 3rd letter:  "To whom, if

21   anyone, did your firm release or distribute the Report, and

22   when?"

23        So they can argue that he had a duty to disclose that

24   arising out of the fact that he undertook to answer that

25   question.

1          Similarly, 6 and 7, the fact that the defendant

2     emailed David Sanger on December 11, and said, "The Ukrainians

3     have determined that you get the first look," offered him a

4     copy, offered to talk about it, and had pre-delivered the

5     prepublication copy, and giving him this 24-hour period to let

6     them know whether he was going to do the pre-report story or he

7     wasn't, fall within the response to, "To whom, if anyone, did

8     your firm release or distribute the Report, and when," which

9     was part of the question.

10          So, they can certainly argue that the omission of

11     that information violated the duty to answer the questions

12     truthfully.

13          With respect to the December 11 communications with

14     FTI about his ongoing execution of the strategy, the government

15     says it's responsive to the question, "What was your firm's

16     understanding of what would happen to the Report when it was

17     released to the Ukrainian Ministry of Justice?"

18          Now, we are literally at the two-day before release

19     point.  And so what they are up to is a different question than

20     all the many iterations of what they planed they might be up to

21     but no one knew whether they were going to be up to.  Those are

22     plainly circumstances that the government could argue belie the

23     truth of what he did say, and they're relevant to its

24     consideration of whether he was truthful when he said, "I

25     didn't inform Ukraine at any time."

1          I'm not sure, though, about the question of whether

2     it's directly responsive to, "What was your firm's

3     understanding of what would happen to the Report when it was

4     released?"

5          But, again, I don't think I'm supposed to be making

6     factual determinations; I think that's an argument that you can

7     make to the jury, one way or the other.  But, the duty has to

8     arise out of the question when you argue it.

9          If you're going to say that that omission violated a

10     duty to disclose it, I think they can argue omissions that

11     rendered statements false as part of their argument that

12     statements were false.  It's kind of the flip side.  And that's

13     different than saying he had a duty that arose out of the FARA

14     statute in the abstract.  And that's what I'm saying they can't

15     do.

16          On December 12th, Fact Number 9 in the chart -- and I

17     have to tell you, I really appreciate the clarity of the chart.

18     I'm a chart person.

19          On December 12th, defendant gave an interview

20     arranged by FTI to Tom Parfitt of *The Telegraph*.  That is

21     plainly responsive to the first question posed in the

22     June 3rd, 2013 letter:  "Did you or your firm have any media

23     interviews or comments to the media?"

24          And then Number 10.  On December 12th, at the

25     direction of FTI, Davis Manafort and Ukraine, defendant

1    informed Sanger as to when Ukraine would publicly release the

2    Report.

3           I'm not sure that question was asked, and I don't see

4    it as an actionable omission, in and of itself, as being

5    something that he was asked that he didn't answer.  But, it's

6    certainly evidence that goes to the truthfulness of his other

7    statements.

8           So, I think that answers some of the questions that

9    the defense was asking me to rule on prior to the jury

10   instruction conference about what the jury would be told about

11   the duty to disclose.  And, so, I think at this point, I'm

12   prepared to hear your argument.

13          He speaks.

14          MS. MARCUS:  He does.

15          Good morning, Your Honor.

16          THE COURT:  Good morning.

17          MS. MARCUS:  The first thing to say, Your Honor, is,

18   I think we have an understanding with the government that but

19   for the one remaining stipulation, they're going to rest.  And,

20   so, we'll be presenting this on the assumption that the record

21   is what it is.  And, you know, Rule 29 is at the close of the

22   government's case.  We are treating this as though it's the

23   close of the government's case.

24          THE COURT:  Yes.  Because yesterday, they technically

25   moved the evidence in.  The stipulation has already been

1    stipulated to.  What has not yet happened is the publication of

2    those events to the jury.  So, if by some chance they present

3    three more witnesses this afternoon, you will have the

4    opportunity to make this argument again, but I don't think it's

5    going to happen.

6              MS. MARCUS:  Thank you, Your Honor.

7              Then, yes, with a motion under Rule 29.  We are

8    making a general motion as to each and every element.  And we,

9    in addition to making our general motion, and encourage you, as

10   you're allowed to do under the rule, to inquire on your own

11   motion as to each element.

12             And we want to make clear that that's our motion, and

13   we're preserving a challenge to each element.

14             But, in addition, we would like to draw your

15   attention to a few of them --

16             THE COURT:  All right.

17             MS. MARCUS:  -- in particular.

18             Before we get to specifics of the omissions the

19   government has identified, I think we need to take a run at you

20   on the duty that you've identified.

21             The duty -- the legal basis for a duty, as I

22   understand it, to supply any information that would be

23   necessary to make a statement that's made not misleading.

24             I think I hear you to be saying that if you respond

25   to a question, then there's a duty to supply -- you know, if

1    you say something -- you know, there's a question asked of you

2    and you answer it, then part of your duty to be truthful is to

3    say anything -- not to omit anything that would be necessary to

4    make that statement not misleading.  I think I've captured your

5    duty correctly.

6            THE COURT:  Well, my first duty is that you have to

7    be truthful, plain and simple.

8            MR. MARCUS:  Yes.

9            THE COURT:  And that you have to be truthful and

10   complete in your answers to the questions.  So, if they ask you

11   a question and something is responsive to that question and you

12   leave it out, I think they're allowed to argue that he had a

13   duty to say it.

14           Do you dispute either one of those?

15           MS. MARCUS:  We do.

16           THE COURT:  Do you dispute Number 1, that if they ask

17   you a question and you choose to answer it, that you have a

18   duty to answer it truthfully?

19           MS. MARCUS:  Not that you have a duty to answer it

20   truthfully.  There's always a duty to be truthful.  But the

21   question of whether you have a duty to say -- you know, a duty

22   not to omit a material fact, that question, the question of

23   whether you have to affirmatively say anything, irrespective of

24   whether you choose to speak or not, has --

25           THE COURT:  If you are asked the question, "Who did

1    you give the Report to and when," and you gave it to five

2    people and you answer, "Two," you're saying there's no duty

3    to -- if he had said, Some of the people I gave it to were,

4    this and this, clearly indicating that he's not telling you

5    all.

6                As, for example, he said with respect to, "Who was

7    the individual who funded the effort?"  "I choose not to tell

8    you that," you -- it's your legal position that if someone

9    says, "Who did you give it to?" that, clearly, asking who, that

10   you can say these two people, and not three people, if there

11   were three people?

12               MS. MARCUS:  I think there is --

13               THE COURT:  There's no duty to be complete?  There's

14   only a duty to have the words be literally true?

15               MS. MARCUS:  I think there's an argument that under

16   (a)2 there's a point at which the omission of a fact renders a

17   statement false.

18               THE COURT:  That's what I'm talking about right now.

19               MS. MARCUS:  Well, we're under (a)1.

20               THE COURT:  But what I've been saying is that under

21   (a)1, to find the existence of a scheme, you have to find --

22   they have to agree unanimously that there were affirmative

23   steps taken in furtherance of the scheme which could be a false

24   statement or an omission.

25               And I'm saying, for those false statements, if

1    somebody wants to find that X was a false statement or X was an

2    omission, that in that context, if it would have made -- if it

3    would have been responsive to a question you chose to answer,

4    it has to have been that to be an omission that could be

5    considered an omission that's an affirmative act in furtherance

6    of the scheme.

7         MS. MARCUS:  I think the problem with that theory --

8    and I understand -- I do, I understand the point that there's a

9    point at which if you answer a question, you're implicitly

10   making a representation that your answer is complete.  That,

11   you know, if you've talked to five reporters and they ask which

12   reporters did you talk to and you answer that question, there's

13   a point in which you're making an implicit representation that,

14   These are the ones.

15        The problem with the whole theory as a basis for a

16   duty to disclose a material fact is that it has to come from a

17   statute.  It has to come from a statute, regulation, or form.

18   And if --

19        THE COURT:  No.  I think I said in my opinion that

20   there are two sources of the duty.  One would be the statute.

21   And I am agreeing with you that the statute, in the abstract,

22   didn't require him to sit there and voluntarily bubble up every

23   fact that a registrant would have to disclose under FARA.

24        But, I disagree with you, because I found, based on a

25   lot of case law, that there's a separate duty.  If you choose

1    to respond to the letter that you had absolutely no duty to

2    respond to at all, and they ask you a question and you say the

3    answer to the question is X, that you have a duty to be

4    truthful and complete.

5          MS. MARCUS:  So, I think, a question, maybe, we would

6    have for you is, in the context of that duty -- because we --

7    you know, we read your opinion very carefully, and we take it

8    seriously -- it's not clear to us whether, in the context of an

9    inquiry, what's supplying the duty to disclose is the fact that

10   it's an inquiry about a statute.

11         In other words, that behind the inquiry there is a

12   possible statutory duty to disclose that may apply if the

13   inquiry heads in a certain direction.  Or is it really, truly

14   just the fact that a government official is asking questions,

15   that alone is enough to generate a duty to answer completely?

16         THE COURT:  I think the only case law you relied upon

17   for the fact that that alone is not enough was the *Safavian*

18   case.  And the Court was not particularly clear about why it

19   found the interviews with the agents problematical in that case

20   for omissions purposes.  But, it did emphasize the fact that

21   the defendant was being questioned about something that was

22   vague and unclear.

23         And this -- the fact that they were having a specific

24   inquiry about the possible obligation to register under FARA

25   and about the specific provisions of FARA meant that, unlike

1      the situation in *Safavian*, there was a shared understanding of

2      what they were talking about.

3              And, therefore, I do believe he had the obligation to

4      answer the questions, and that it doesn't run afoul of the

5      *Safavian* opinion, as other courts have found in multiple cases

6      since *Safavian*.

7              MS. MARCUS:  And I know I'm not telling you anything

8      you don't know because you quoted this segment in your opinion,

9      but, I do think that there were really two problems in

10     *Safavian*.  It wasn't just that there was vagueness or lack of

11     clarity as to what information was being asked about.  It

12     wasn't just that the ethical standards --

13             THE COURT:  The Court said, "Once he starts talking,

14     he doesn't have an obligation to keep talking."

15             Is that the sentence you're going to quote?

16             MR. MARCUS:  There's a second problem --

17             THE COURT:  Okay.

18             MR. MARCUS:  -- with the ethical standard.  It's

19     that -- so, I'm reading from *Safavian*, and it's quoted in your

20     opinion -- "The ethical principles, one, give no indication of

21     the particular facts or information an executive employee must

22     disclose."

23             And that's -- I take your point, those ethical

24     standards gave no indication of what information was at issue,

25     and you've concluded that this situation is different.

1          But, there's a second problem:  "Two, nor do they

2     suggest that they have any bearing on conduct during a GSA

3     investigation or a request for an ethics opinion."

4          The second problem was, the ethical standards at

5     issue in that case didn't, on their face, impose a duty on the

6     defendants to do anything or not do anything in the context of

7     an inquiry.

8          One, they didn't identify the facts that were

9     pertinent; and, two, they didn't actually impose a duty on him

10     to do anything in the context of a government inquiry.

11          And I think, as to that second problem, the situation

12     is really no different here.  Yes, FARA is in the background.

13     If you look at 611, you can see what facts --

14          THE COURT:  It was in the foreground.

15          MR. MARCUS:  Yes, in the foreground.  It was what the

16     agency officials were asking about, it supplied legal standards

17     and facts that would be material to those standards on the

18     question of who is obligated to register.  It identified, you

19     know, not just what you have to put in a registration

20     statement, but, also, you know, who is an agent.

21          And the questions that the agency officials asked

22     added more specificity to these legal requirements.  All of

23     that, it did.

24          THE COURT:  What is the difference, in your mind,

25     between answering a question, Who did you give it to and when,

1    and naming three people, if there were four, and the -- what

2    you've just said to me is the implicit representation in that,

3    that that's it, and omitting the fourth and having the

4    omission -- what is the difference?

5        MR. MARCUS:  I think if they believe it amounts to a

6    false statement, then they can prosecute it as a false

7    statement, if the alleged crime is that he schemed to conceal a

8    material fact, regardless of the means.

9        THE COURT:  He schemed to falsify, cover up, or

10   conceal material facts.  That's the allegation.

11       MR. MARCUS:  That's the language in the indictment.

12   And, so, I do think it's important to note that a key

13   difference between a scheme under (a)1 and a false statement

14   charge under (a)2 is the difference between a material fact and

15   a statement.

16       And in the pretrial statement, the government and

17   we -- we both proposed instructions to you that focused on a

18   material fact.  And if you look at both --

19       THE COURT:  They are very similar.

20       MR. MARCUS:  I agree.  And if you look at both of the

21   unanimity instructions, we agree with the government, that --

22   in the revised instruction, that the jury has to be unanimous

23   as to a -- at least one -- material fact.  We say the material

24   fact has to have been concealed.  They say it could have been

25   falsified or concealed.  But, there has to be a material fact

2662

1    that the jury has to be unanimous on.

2              And in looking at what's listed in the indictment,

3    and in looking at what they filed this morning, the material

4    facts at issue in this case are ones that are alleged to have

5    been concealed.  And that's why our reading of the indictment

6    and our reading of the case, as it's presented is, it's a

7    concealment scheme.

8              We understand they've identified false statements as

9    means -- they've identified both false statements and omission.

10   But, what were the material facts?  It's an element.  The jury

11   all has to agree on one of them.

12             THE COURT:  But, at this point, I would like you to

13   explain to me the difference between falsely stating, I did

14   this; implying, I did this, and this is all I did; and leaving

15   the rest of what you did out.

16             Aren't those the same thing?

17             MR. MARCUS:  I think --

18             THE COURT:  If you have a duty to answer fully a

19   question and you answer it three-quarters, what's the fourth

20   quarter?  Is it an omission?  Is it just something that

21   rendered the first three-quarters false?

22             And if there's a legal difference between those two,

23   tell me what it is.

24             MR. MARCUS:  If it rendered the first three-quarters

25   false, then you've got a false statement, and the government

1      can prosecute it under (a)2.  If the --

2            THE COURT:  They can also prosecute it under a

3      scheme.

4            MR. MARCUS:  A false statement alone cannot be a

5      scheme under (a)1.

6            THE COURT:  Not -- well, that's also addressed in my

7      report.  But, a series of them, they can prove a false

8      statement is the affirmative act in furtherance of this scheme.

9      Here, the false statements and what they're trying to cover up

10     go hand in hand, allegedly.

11            MR. MARCUS:  The difference -- the key difference is

12     that if they're going to prosecute under (a)1, there must

13     have -- and it's -- and the material fact is alleged to have

14     been disclosed -- alleged to have been concealed, then there

15     has to have been a duty.  And a nonstatutory duty to provide

16     complete responses to questions is not enough.

17            THE COURT:  Those responses have to have been tied to

18     some statutory imperative.  And if they're sitting in a room

19     talking about possible obligation to register under FARA and

20     asking about media contacts, and the question is, To whom did

21     you give it and when? and the allegation is that it was given

22     to a reporter two days before it was going to be public, for

23     the specific purpose of having a conversation, prepublication,

24     and providing statements to the press, prepublication, not in

25     response to anything that had already been said publicly,

1    because nothing had been said publicly yet.

2            If that's the allegation, that's what's being

3    falsified and concealed, what happened on the 11th and the 12th

4    with *The New York Times*, and there's a question that

5    specifically asked that, and that is statutorily relevant and

6    important, and it was clear that that was the focus of the

7    interview -- because that was what he continued to emphasize,

8    even in his own letters to the government -- why does that not

9    satisfy the statute as a matter of law, is what you're telling

10   me.

11           MR. MARCUS:  That's what I'm telling you.  I'm

12   telling you that there is a difference between whether

13   something is statutorily relevant and whether the statute

14   imposes a duty to disclose it.  And the impetus behind the rule

15   in the first place, that there has to be a statute,

16   regulation --

17           THE COURT:  So, I mean, what you're saying is, you

18   disagree entirely with the notion of a duty to answer your

19   questions truthfully and completely when asked.

20           MR. MARCUS:  We --

21           THE COURT:  You say that *Safavian* goes that far.

22   It's out the window.

23           MR. MARCUS:  We -- we disagree with the notion of a

24   duty to answer it completely when asked.

25           THE COURT:  All right.  I -- we can quibble about

1    whether that's new or not, or whether -- but, that's your

2    position.

3              And do you have anything other than those two

4    sentences in *Safavian* that supports that position?

5              MR. MARCUS:  Yes.  First, I mean -- so, taking a step

6    back from *Safavian* --

7              THE COURT:  And I think all the cases that I cited

8    said "truthfully and completely," not just "truthfully;" isn't

9    that right?

10             MR. MARCUS:  There are certainly case that said

11   "truthfully and completely."

12             THE COURT:  Okay.  Okay.

13             MR. MARCUS:  To take a step back from *Safavian*, and

14   just one point about the reason for that rule.

15             The reason for the rule, the fair notice concept

16   behind the rule, is not just about fair notice of what's of

17   interest to the agency; it's about fair notice of what the law

18   forbids.

19             And in order for a statute, regulation, or form to

20   give fair notice of what the law forbids, it must actually set

21   forth the legal duty to disclose it.  It's not enough for the

22   statute to say what information is material; it's got to tell

23   you, You have an obligation to disclose it.

24             And in terms of how this plays out in the context of

25   the agency --

1          THE COURT:  Well, and you can -- you could be charged

2     with a 1001 scheme for sitting down with a law enforcement

3     agent and lying --

4          MR. MARCUS:  Yes.

5          THE COURT:  -- absent some statutory disclosure

6     scheme in the background; is that correct?

7          MR. MARCUS:  Yes, that's -- that's a classic (a)2

8     case.

9          THE COURT:  Okay.  It can also be (a)1; isn't that

10    correct?  If you engaged in a scheme to cover up material facts

11    from that law enforcement investigation --

12         MR. MARCUS:  In order --

13         THE COURT:  -- there has to have been a statutory

14    duty?

15         MR. MARCUS:  I'm sorry?

16         THE COURT:  Does there have to have been some

17    underlying statutory duty for (a)1?

18         MR. MARCUS:  Yes.

19         THE COURT:  Okay.

20         MR. MARCUS:  And in terms of how that plays out in

21    the context of a back and forth with an agency official, I

22    think it's important to realize that not every agency wants to

23    engage with people at the same level of formality.  You know,

24    there are agencies that -- you know, and the FARA Unit actually

25    does this in some context:  There are agencies that require

1    that any submission on a particular issue has to be accompanied

2    by a certification, and you have to say, I certify everything.

3    You know, I've told you everything.

4          And that's -- you know, that's the situation in the

5    *Bowser* case.  That's what the FARA Unit does when people

6    request advisory opinions.  There's an actual -- there's a

7    regulation that specifically tells you --

8          THE COURT:  Okay.

9          MR. MARCUS:  -- if you're going to saying anything,

10    you got to certify that it's complete.  It's --

11          THE COURT:  Okay.  Well, let me ask you this:  I

12    understand, crisply, your argument now, that there is no duty,

13    if you're being questioned, to answer completely, unless every

14    material fact, there was some other preexisting statutory duty

15    to disclose it.

16          That's what you're telling me?

17          MR. MARCUS:  Yes.

18          THE COURT:  You do agree that there's a duty to

19    answer truthfully?

20          MR. MARCUS:  In the sense that answering untruthfully

21    is a false statement.

22          THE COURT:  You have to answer truthfully, correct?

23          MR. MARCUS:  Yes.  Yes.

24          THE COURT:  Okay.  So, if the omission -- alleged

25    omission renders what you did say false or misleading, do you

1    have a duty not to omit it?

2        MR. MARCUS:  Not the kind of duty that can support a

3    scheme offense under (a)1.

4        THE COURT:  And that's because of your literal truth

5    defense or, again, the *Safavian*?

6        MR. MARCUS:  No statute requires that.

7        THE COURT:  I'm sorry?

8        MR. MARCUS:  There's no statute that requires that.

9    There's no statute, regulation, or form that tells you the

10   thing you were required to disclose.  I understand that --

11       THE COURT:  Okay.  I just want to make sure I

12   understand your legal position.  Your legal position is, what

13   you say, the words have to be true.

14       MR. MARCUS:  Yes.

15       THE COURT:  You are allowed to leave out facts that

16   aren't statutorily required to be disclosed, and you're -- I

17   want to know, Point 3 of your position is that you're even

18   allowed to leave them out if the act of leaving them out

19   renders what you did say false?

20       MR. MARCUS:  Under (a)1, yes, that's our position.

21       THE COURT:  Okay.

22       MR. MARCUS:  And I think it's worth noting that in

23   other -- so, take what 618(a)2 requires, and I know what

24   618(a)2 requires for FARA filings, that statute -- it actually

25   says in the statute, You have a duty not to omit --

1      THE COURT:  Well, I was particularly intrigued by the

2  effort in your pleading to narrow 1001 to the exact contours of

3  618.  Because when I asked counsel that was arguing the 618

4  motion at the motion to dismiss stage, Well, then, what would

5  cover a false statement made to the FARA Unit?"  He said,

6  "There's always 1001."

7      So, please don't tell me now that you didn't actually

8  mean that.

9      MR. MARCUS:  There is always 1001.  And we're not

10  trying to tell you --

11      THE COURT:  Okay.  Okay.  Well, this is a 1001 case.

12      MR. MARCUS:  We're not trying to tell you that 1001

13  is limited to 618(a)2.

14      THE COURT:  Okay.  Well, that's where I thought you

15  were headed.

16      MR. MARCUS:  But, there are statutes that expressly

17  require -- you know, there's -- there's -- you know, SEC Rule

18  10b-5 is an example.  618(a)2 is an example.  There are

19  statutes, regulations, and forms that require that you supply

20  any facts necessary to make the statements you make not

21  misleading.

22      There's a separate point about --

23      THE COURT:  I just want to make sure I know that --

24  and whether there's any case besides *Safavian* -- well, let's

25  put it this way:  Your pleadings have every case that you're

1    relying on, if there are any additions to *Safavian* for the

2    proposition that for an omission to be part of a scheme --

3    actionable for scheme liability, it must not just be material

4    fact, but it has to be a material fact that is statutorily

5    required to be disclosed, even if it's a fact necessary to make

6    what they actually did say truthful, truthful?

7              MR. MARCUS:  That's right.  There must be a specific

8    preexisting requirement for disclosure of that information.

9              THE COURT:  All right.  All right.

10             MR. MARCUS:  One more point on that.

11             THE COURT:  All right.

12             MR. MARCUS:  If there were such a duty, if the act of

13   making a statement generated a duty to say anything necessary

14   to make that statement not misleading, that would eviscerate

15   the literal truth defense in the context of (a)2 cases.

16             THE COURT:  Right.  Well -- and I'm not sure, as I've

17   said -- and I'm not ruling on this right now -- that I found

18   your pleading more persuasive than the government's pleading on

19   the notion that literal truth, essentially, is a complete

20   defense to an (a)1 situation, as opposed to an (a)2 situation,

21   notwithstanding the fact that there are cases in which it came

22   up in (a)1 cases.  I think they were talking about the false

23   statements alleged to be in furtherance of the scheme.

24             And I don't think we're doing jury instructions right

25   now.  So, I'm not sure it goes all the way to the entire

1      scheme.  Because otherwise, what you're saying is that you have

2      a perfect legal right to wordsmith your way around pulling the

3      wool over the government's eyes, if you're just really cute and

4      really careful and really savvy and you thread the needle so

5      perfectly, that that's not a scheme to falsify, cover up, or

6      conceal, when that seems to be implicit in the use of the three

7      verbs together in the statute.

8              MR. MARCUS:  Let me also take one step back and say,

9      our position is, obviously, that Mr. Craig did not pull the

10     wool --

11             THE COURT:  I understand that.  But you're saying he

12     could have, legally.

13             MR. MARCUS:  That even putting aside the question of

14     whether there's such a thing as a literal truth defense under

15     (a)1, even just thinking about it as an (a)2 defense to a true

16     false statement case.  If it were really true that any time you

17     make an affirmative statement to an agency, you have a duty to

18     supply any facts that would be necessary to make that statement

19     not false or not misleading, if that were true, and that the

20     failure to supply those facts alone could constitute a scheme

21     under (a)1, if that were true, then anytime someone raised --

22     then, even in an (a)2 case, a false statement case, anytime

23     someone would possibly have a literal truth defense, the

24     government could just prosecute any case along those lines as a

25     (a)1 scheme.

1        If that were true, then the literal true defense, as

2   it exists under (a)2, would reduce to nothing.  There wouldn't

3   be situations in which it would really be a meaningful defense.

4        There's a background issue -- and this is a bit of a

5   transition.  So, if you have more questions about this specific

6   component of duty, I --

7        THE COURT:  All right.  Well, I understand your legal

8   argument.  I guess it's probably important, for purposes of

9   this argument, to test the sufficiency of the facts against the

10  law, as you've articulated it, as well as if that's not the law

11  that I ultimately apply to this case.

12        MR. MARCUS:  Understood.

13        And there's one point, just to complete the record.

14  And it's something we've raised in briefs and something that I

15  think may get raised in instructions.

16        But, it's pertinent to the applicability of a

17  statutory duty, or at least the relevance of FARA to a duty

18  arising from questions, to the extent that the possibility of

19  an ultimate duty to register or ultimate duty to disclose is

20  what is, in some sense, differentiating the questions in this

21  case from the questions in *Safavian*.

22        There is a D.C. Circuit case from 1987, *McGoff* --

23  that I know Your Honor is familiar with because you've

24  discussed it extensively in one of the Manafort opinions --

25  that the result of which is that there's -- there cannot be a

1    statutory duty to register or to disclose under FARA after the

2    last day that you act as an agent.

3          There's been no evidence in this case -- you know, we

4    dispute whether the evidence supports a finding that he was

5    required to register in 2012, but there certainly has been no

6    evidence that he did anything that might require him to

7    register in 2013, the time of the charged scheme.

8          And the holding of the *McGoff* case is that there can

9    be no duty to disclose under FARA to file a registration

10   statement after your last act as an agent.  The government

11   disputes that that's the holding of this case, and they

12   objected to our instruction along those lines.  But, we're

13   prepared to argue that that's what the case holds.

14         And, so, to the extent that any duty --

15         THE COURT:  If the duty has to arise out of the

16   statute, then you're staying the statute didn't apply the day

17   they were sitting in their office?

18         MR. MARCUS:  That's right.

19         THE COURT:  All right.

20         MR. MARCUS:  So, I think it's -- the reason why it's

21   important to draw a line there is that this duty arising from

22   questions, if that's what it is, it really, truly is just a

23   question-based duty, and not a duty that's somehow supported by

24   a predicated -- you know, that's somehow predicated on the

25   underlying statutory duty that might have applied.  And that's

1   why it's important for us to draw that -- draw that line.

2          I would like to transition to willfulness, if that's

3   all right with you.

4          THE COURT:  Okay.  Go ahead.

5          MR. MARCUS:  No.  No.  I aim to serve.

6          THE COURT:  What I'm saying is that this doesn't

7   quite sound like a Rule 29 argument right now; it sounds more

8   like a jury instruction argument or a legal argument.  You're

9   welcome to make all the legal points you want to make.  But, at

10   some point, I think, unless you just want to submit on the

11   record, you should be testing your facts against your legal

12   standards.  But, you can do it any order that you want, or you

13   can submit it on the record.

14          MR. MARCUS:  Well, I think it's worth going down this

15   list, then, in terms of the duty; you know, the list that the

16   government's submitted this morning.  Your Honor responded to a

17   couple of them, and there are a few that I do want to

18   specifically raise.

19          So, Number 5.

20          THE COURT:  Omission Number 5?

21          MR. MARCUS:  Omission Number 5.

22          THE COURT:  Okay.

23          MR. MARCUS:  So, there are two components to this.

24          "In October 2012, consistent with media strategy he

25   had received, defendant asked David Sanger to speak with

1    Mercury lobbyist Vin Weber about the Report; connected Sanger

2    and Weber."

3            That far is in the indictment.

4            Then, "And had a copy of the Report delivered to

5    Weber's office."  That's not in the indictment.  That, in

6    itself, is important.

7            But, it's additionally relevant to point out that the

8    answer to that question, the answer to the question, "To whom

9    did your firm release copies of the Report and when,"

10   referenced representatives of the government of Ukraine.  The

11   answer was, you know, "We released copies of the Report to

12   representatives of the government of Ukraine.  And on

13   December 12th to 13th, we released it to the following

14   individuals and entities."

15           THE COURT:  All right.

16           Can somebody pull up Government's Exhibit 3?

17           MR. MARCUS:  That's Government Exhibit 4.

18           THE COURT:  They say it's responsive to Question 3.

19   So, I want to see what the question was, not how he cabined his

20   answer.

21           MR. MARCUS:  John, can you go down to the next page?

22           THE COURT:  All right.  So the question was, "To

23   whom, if anyone, did your firm release or distribute the Report

24   and when?"

25           Okay.

1          MR. MARCUS:  So the -- our response is that it was

2     not omitted.  If you look at --

3          THE COURT:  Okay.  Are you saying it's not responsive

4     to the question?

5          MR. MARCUS:  No.  No.  It's -- we're saying that it's

6     not omitted, that this is a list of material facts.  They've

7     got to prove that it was omitted.  And the first line of this

8     answer is, "In addition to giving the Report to representatives

9     of the government of Ukraine, the law firm" -- etcetera,

10    etcetera.

11         THE COURT:  So it falls into "Representatives of the

12    government of Ukraine"?

13         MR. MARCUS:  Yes.

14         THE COURT:  All right.  I think that's a question of

15    fact for the jury, as to whether he omitted it or not by giving

16    this answer.  I don't think it's something that I can rule on

17    as a matter of law.

18         MR. MARCUS:  Okay.  I will say, though, I do think it

19    matters that it wasn't presented to the grand jury, voted on in

20    the indictment because, as we've agreed with the government, if

21    a material fact is an element on which the jury has to be

22    unanimous, there has to have been a grand jury finding that it

23    was omitted, that it was material, that there was a duty to

24    disclose it.

25         THE COURT:  Well, I would need to have that briefed,

1    because I think the indictment said "Didn't disclose material

2    facts, including."

3              And, so, if this one wasn't enumerated in the

4    indictment, if that means they can't tell the jury if they

5    proved it, I don't know the answer to that question without

6    that being briefed.

7              MR. MARCUS:  Fair enough.

8              And one more point, just to -- John, you can put it

9    down.

10              To back away from these specific questions, one more

11    point on the issue of what the evidence shows on the question

12    of whether questions were asked that were specifically -- you

13    know, were sufficiently directed at the information that's

14    alleged to have been omitted.

15              We've heard testimony from three witnesses, all of

16    whom testified about the meeting in October.  There was a

17    letter in February -- sorry.

18              There was a letter in December that had questions.

19    There was a letter in April that had questions.  Agency decided

20    on September 5th that there was an obligation to register.  And

21    then after that, the posture was that the law firm was coming

22    in to try to persuade them they were wrong.

23              We heard testimony that there were questions at the

24    meeting, but there was not a witness who gave testimony about

25    any question at the meeting.

1          THE COURT:  Well, they're not alleging that this was

2    omitted at the meeting.  They're alleging that it was

3    responsive to the question in the letter that preceded the

4    meeting and he didn't offer it up.  That's the allegation here.

5          I don't believe they're planning to say that he was

6    asked a question in the meeting and he didn't answer it.

7          MR. MARCUS:  Well, I think they would have to offer

8    evidence of -- if the duty is -- if the duty is a duty to

9    supply complete responses to questions, based on the questions

10   asked --

11         THE COURT:  Not just questions at the meeting.

12         MR. MARCUS:  I'm not sure there's been evidence

13   that -- essentially, that there were questions pending at the

14   meeting, that there were --

15         THE COURT:  I don't think they're alleging that he

16   didn't answer a question at the meeting.  They're saying he

17   didn't answer the question in the letter, that he had an

18   absolute right not to respond to at all, that he responded to.

19   Not a single one of these alleged omissions or false statements

20   is based on the meeting, as far as I can tell.

21         MR. MARCUS:  Well, if that's right, then they have a

22   statute of limitations problem, because our instruction and

23   theirs both point out that he has to have --

24         THE COURT:  Made at least one statement in the

25   period.  So they could find -- for example, they must find,

1  according to you, that something said in the post-meeting

2  letter was false for this to fall within the statute of

3  limitations?

4      MR. MARCUS:  If -- if the scheme -- if the alleged

5  scheme/crime relies on a duty that is based on questions, and

6  there isn't evidence of questions during the relevant period

7  that could have supported a duty, I think they've got a

8  problem.  It can't just be that there was an additional

9  statement during the period, if the -- if what the duty is is

10  to respond in a way that the questions themselves dictate.

11      So, I think that's -- I think the dates matter, if

12  the questions are the basis for the duty.

13      I'm also -- I've been passed a note here on the

14  Vin Weber --

15      THE COURT:  So, they ask him questions, We're trying

16  to decide if you should register, and he answers them,

17  allegedly, falsely.  Then they make their decision, Register.

18      And he says, No.  No.  I don't have to.  I want to

19  come and explain to you why not.

20      So he goes to a meeting within the statutory period.

21  And what they're saying is, this is still part of his ongoing

22  scheme to try to hide what he wants to hide, try to avoid

23  registration.

24      And goes to the meeting.  And he says -- we know the

25  gist of what he said from the Skadden witnesses and the

1    government witness.  And she says, Put it in writing, and he

2    puts it in writing.  And it is a statement for the purpose of

3    articulating why he does not have to register.  And he puts it

4    in writing, confirming and summarizing what he said at a

5    meeting.

6              And you're saying that he didn't have an obligation

7    to be truthful in that letter?

8              MR. MARCUS:  I'm not saying he did not have an

9    obligation to be truthful.  I'm saying, I don't think there's

10   evidence that what was expected to be in that letter or what

11   was in that letter purported to be answers to questions.

12             THE COURT:  Isn't it a continuance of the answers to

13   all these questions?  When did you disclose it?  Who did you

14   disclose it to?  What were your media contacts?

15             We decided, based on those media contacts, even the

16   limited information we have, you should register.

17             No.  That is wrong.  Let me really tell you what

18   really happened so you really understand why I really don't

19   have to register.

20             And he tells them in a meeting, orally, and then he

21   puts it in a letter.  And you're saying that if that letter

22   omitted facts or falsely characterized the facts, it's not

23   actionable?

24             MR. MARCUS:  And, again, we really do draw a line

25   between falsely characterizing the facts and omitting facts.

1          But, as to omissions, yes.  If there's no evidence

2     that that letter purported to be responsive to the questions in

3     June -- sorry -- responsive to the questions in April or --

4          THE COURT:  But he is now responding to an ongoing

5     inquiry.  He is trying to -- I mean, the definition of

6     materiality is whether it affects a decision.  He is seeking to

7     have a decision overturned, and he voluntarily writes this

8     letter.

9          Let's put aside the omissions for a second.  If they

10    find that on its face it's not true, that's not a false

11    statement in furtherance of the scheme within the time period,

12    if they agree, they're unanimous that that's it, and nobody

13    wants me to ask, in interrogatories, Is it a false statement?

14    Is it an omission?  Which statement?  Even though it seems to

15    me that information is essential to the Court of Appeals when

16    it responds to these arguments, if there's a conviction, and

17    you say that he couldn't be convicted because we don't know if

18    it was within the statute of limitations or it wasn't.  There's

19    a possibility that it wasn't.

20         So I don't understand why I don't have kind of an

21    obligation to find out.  Which then, if this motion is

22    revisited at the close of the trial, would answer the question

23    or wouldn't.

24         But, let's say we knew.  Let's say they said the

25    post-meeting letter was false.  We find that he did not meet

1    for the purpose of clarifying misstatements that had been made,

2    but it was in advance, and; that we find that it was false that

3    he wasn't informing the Ukraine about it, and; it wasn't for

4    and on behalf of the Ukraine because it was part of the plan,

5    the seeding and the scheming, and; no, he never actually

6    departed from what was supposed to happen as of the 23rd, and

7    they conclude that, if it's just false, can he be convicted of

8    (a)1?

9         MR. MARCUS:  If there was not a duty at the time --

10        THE COURT:  I thought duties and omissions come

11   up in -- duties are about omissions.

12        MR. MARCUS:  Duties are --

13        THE COURT:  I don't believe *Safavian* or anybody --

14   there's any case that says you can't be prosecuted for making a

15   false statement without a duty.

16        MR. MARCUS:  Well, you certainly can be prosecuted

17   under (a)2.  But, if the false statement is a means, along with

18   omissions, toward a scheme, a scheme to conceal material

19   facts --

20        THE COURT:  Akin to falsify, cover up, or conceal

21   material facts, a false statement could be that, yes?

22        MR. MARCUS:  Not a false statement alone.  And, I

23   mean, I think if you take the examples from *Bramblett* and

24   *Hubbell*, I mean, those are the examples in the D.C. Circuit of

25   the falsification schemes.

1          In *Bramblett* you have a phantom employee.   In

2     *Hubbell*, you have creating an extensive false paper trail for a

3     regulator.

4          THE COURT:   What I'm saying is, if they say that one

5     is false, you need one within the statutory period.   They say

6     that one is false, but then there's other earlier that are

7     either omissions or false, you don't just have one.

8          And I addressed in my opinion, I think, your

9     statement that you put, like, in a footnote somewhere, that

10    only a false statement isn't enough -- even though you didn't

11    move to dismiss on that ground -- and I addressed it.   And I'm

12    not prepared to address it now because I haven't gone back and

13    read all those cases, and I didn't know we were going to be

14    talking about that this morning.   But, now I understand that,

15    if and when I rule on this, I have to deal with that.

16         But, my point is, for statute of limitations purposes

17    only, if there is one either false statement or omission within

18    the period, doesn't that do it?

19         I know you disagreed with my application of *Hubbell*

20    and *Bramblett*, but that's what they say.

21         MR. MARCUS:   I think we understand -- we understand

22    your position.   And our position is just that there has to have

23    been -- it's not enough for there to be a false statement

24    within the period.   There has to have been concealment of a

25    material fact that there was a duty to disclose.   And I

1    understand --

2             THE COURT:  Okay.  So, what they're saying is, this

3    is the continuation of the ongoing scheme that began the day

4    they got the letter.

5             MR. MARCUS:  And I think maybe we have to leave it at

6    that.  We understand your --

7             THE COURT:  All right.

8             MR. MARCUS:  I'd like to talk for a moment about

9    willfulness.

10            THE COURT:  Okay.

11            MR. MARCUS:  We understand your ruling on the

12   instruction, which is that the *Bryan* instruction is what's

13   going to govern.  But, regardless of the instruction, in order

14   for there to be knowledge of unlawfulness, there has to have

15   been knowledge of the duty.

16            In other words, even if you don't intend to tell the

17   jury that what knowledge of unlawfulness means is, he must have

18   known of the duty, it still has to have been the case that he

19   knew he had a duty to disclose the facts he's alleged to have

20   omitted.  He doesn't have to have known the chapter and verse,

21   which statute.  But, he has to have known that there was a

22   legal requirement to disclose those facts, because otherwise,

23   omitting them isn't a crime.

24            And I think it's --

25            THE COURT:  Doesn't that -- seemed to me, in a lot of

1    the cases, particularly in *Moore*, that got melded into

2    materiality, because that was the question in *Moore*, whether

3    the defendant knew it was material.  And the concurring opinion

4    goes off a little bit about willfulness.

5              But, doesn't it come out in the wash, immateriality?

6              MR. MARCUS:  It doesn't.  Because in order to know

7    that omission of a fact is a crime, you have to know more than

8    just that the fact is material.  You also have to know that

9    there's a duty to disclose it.  And in *Moore,* the contract

10   itself said, You must disclose this fact.

11             And, so, I think in -- or at least in explaining

12   *Moore*, the D.C. Circuit's view was because the jury instruction

13   required that the duty arise from a statute, regulation, or

14   form.  And the contract in that case basically amounted to a

15   form.  And the contract said, You must disclose that there

16   was -- that she was on notice, not only of what it was --

17             THE COURT:  I was talking about the Judge Kavanaugh

18   *Moore*.  Wasn't that a guy that filled out a postal form?

19             MR. MARCUS:  I'm sorry.  I was talking about the

20   Seventh Circuit *Moore*.

21             THE COURT:  Okay.

22             MR. MARCUS:  So, on the issue of -- so -- but, to

23   your point, it's not enough to know what the agency wants to

24   know.  You have to know that there's a duty to disclose it.

25   And I -- and --

 1             THE COURT:  All right.  So, duty to disclose turns on

 2    duty to disclose and willfulness turns on duty to disclose.

 3             MR. MARCUS:  That's right.

 4             THE COURT:  All right.

 5             MR. MARCUS:  And I do think it's worth look -- I

 6    mean, it's worth thinking about that exchange with -- related

 7    to the third-party payer in, you know, between when they

 8    first -- when they first disclose that there is a third-party

 9    payer in the February letter, and then the agency asks

10    follow-up questions about it in the April letter.  And then in

11    the June letter, finally, they say, Respectfully, we don't

12    think we owe you this information.

13             THE COURT:  But, if you determine that we're going to

14    have to register, we'll tell you.

15             MR. MARCUS:  Says, If you determine that it's

16    material, we'll think about it.

17             THE COURT:  That's not quite what they said.  They

18    said, We don't -- We're not a registrant so we don't have to

19    tell you.  And if you determine that we have to register, then

20    we'll register and tell you.

21             Which didn't actually happen.

22             MR. MARCUS:  Yes.

23             THE COURT:  All right.

24             MR. MARCUS:  But, to the point of whether there was

25    any requirement in the context of the inquiry whether there was

1    any knowledge of a duty to supply information responsive to the

2    questions, you know, ultimately it's the government's burden.

3    But, that is powerful evidence in the opposite direction, of an

4    understanding that the FARA Unit didn't really --

5         THE COURT:  He didn't have an understanding that at

6    that point -- the evidence isn't sufficient to conclude that he

7    had an understanding that at that point the specific thing they

8    were discussing was his media contacts and who he gave it to

9    and when and whether it was at his initiation or not and

10   whether it was responsive to something, to correct something

11   that had happened publicly, or whether it was in advance of

12   anything having happened publicly.  He didn't know.

13        There's no evidence in the record from which a

14   reasonable juror could know that he knew he had to be truthful

15   about the specific facts that he was being asked about, and

16   that he went to great pains to differentiate and underscore?

17        MR. MARCUS:  Knowing what the agency -- so, I think

18   there's two --

19        THE COURT:  So, you're just back to, He knew they

20   were asking about it.  He knew it was material.  But, if he

21   didn't know he had a duty to answer in a statute, assuming

22   that's the law, then he wasn't willful either?

23        MR. MARCUS:  That's right.  I mean, in the normal

24   situation where the duty arise -- where a duty is clear on the

25   face of a statute or regulation or a form, the willfulness and

1        duty inquiries collapse.  Because, you know, it's pretty clear,

2        you know, at least from the perspective of sufficiency, there

3        isn't much of a question that there's knowledge of

4        unlawfulness.

5              If the agency is writing letters that say, Please, in

6        order to assist, it would be great if you could answer, there's

7        a real problem of proof as to whether he subjectively knew that

8        supply -- even knowing what information it was that the agency

9        was interested in, that supplying that information was required

10       on pain of criminal penalties.  Which I think is what the

11       willfulness standard, even under *Bryan,* requires.

12             If you look at the letters, you know, they draw a

13       very sharp contrast.  And I encourage you to look at --

14             THE COURT:  From the beginning, all of the internal

15       communications within the firm, and even his own initial

16       instincts before he asked for legal advice, seem to hinge on an

17       understanding of the public relations being the touchstone.

18             So, are you saying that he forgot that?  He was

19       unaware of that a year later, that public relations was a

20       critical aspect of this conversation?

21             MR. MARCUS:  The argument is not that there was

22       insufficient evidence of what the agency was asking about.

23             THE COURT:  I'm talking about that he knew what was

24       the factor.

25             MR. MARCUS:  The argument --

 1          THE COURT:  You think there's insufficient evidence

 2   that he knew that in his communications with the agency, the

 3   factor that was going to push it one way or the other was the

 4   nature and purpose of the public relations?

 5          MR. MARCUS:  The challenge is not to whether there's

 6   evidence of him knowing what piece of information or body of

 7   information was material, critical, going to make the

 8   difference.  We are arguing that that's not enough.

 9          THE COURT:  All right.  For the same reason that you

10   argued duty to disclose is not enough?

11          MR. MARCUS:  Because willfulness requires knowledge

12   of a duty.

13          THE COURT:  All right.

14          MR. MARCUS:  A few more points.

15          One, is -- and this is in response to something in

16   your opinion.  There was a question about whether (a)1 and (a)2

17   actually are separate offenses.  And we noticed that you had

18   expressed some concern about that.  And I did just want to

19   note --

20          THE COURT:  Well, it just got murky.  Because a lot

21   of the cases people were relying on were at a time before they

22   were differentiated.

23          MR. MARCUS:  Yes.

24          THE COURT:  I think there's no question in this case,

25   he was charged with (a)1.

1          MR. MARCUS:  Yes.  But, just by way of background, I

2     think there's quite clear legislative history in '95, when they

3     separated them out, that they did intend for them to be

4     separate offenses with separate elements.  The committee report

5     says something to the effect of separate but related offenses.

6          And I think, based on the case law existing at the

7     time, and based on the intention of separating them out at

8     all --

9          THE COURT:  They have to meet the elements of (a)1.

10    I don't think there's a dispute about that.

11         MR. MARCUS:  Understood.

12         I think that's all I have.  Let me check my list.

13         One other point.

14         So, on the specific list of omissions, returning to

15    the one I highlighted earlier, you made the point that they can

16    argue to the jury that -- whether or not Vin Weber is or isn't

17    encompassed within the representatives of the government of

18    Ukraine.  I think it's their burden to provide some evidence

19    that he isn't, and there's been no evidence to the contrary.

20         And that would be why -- that would be why we would

21    say they haven't met their burden on that point.

22         THE COURT:  Well, if he was, is Jonathan Hawker?

23         MR. MARCUS:  I think the reason why the omission of

24    Jonathan Hawker is not alleged to have been a material omission

25    is that, yes, he falls in that category.

1          THE COURT:  Well, I just -- there was a statement

2     that when he didn't inform Ukraine, that it was literally true.

3     And, so, I want to know, if Vin Weber is a representative of

4     the Ukraine and covered by, essentially, reference to Ukraine,

5     if Jonathan Hawker is covered by Ukraine?

6          MR. MARCUS:  The reason that that statement is

7     literally true is the clause at the beginning.  Clause at the

8     beginning says, "In responding to inaccuracies."

9          That is a statement about what he said to the

10    reporters.

11          THE COURT:  All of them?

12          MR. MARCUS:  Yes.

13          THE COURT:  Including David Sanger?

14          MR. MARCUS:  Including David Sanger.

15          THE COURT:  All right.

16          MR. MARCUS:  In terms of what he said with

17    David Sanger, he did not consult with Jonathan Hawker or any

18    other representatives of Ukraine, did not inform them as to

19    what he was going to say, did not act under instruction of what

20    he was going to say; that statement is true.

21          THE COURT:  All right.

22          MR. MARCUS:  Let me check with my kitchen cabinet.

23          THE COURT:  Please.

24          (Pause.)

25          MR. MARCUS:  One more point, Your Honor, about

1    willfulness.

2            The allegations about concealment of material facts

3    with respect to *The New York Times*, I think it's worth noting

4    that the state of the evidence in the record is that he told

5    them about *The New York Times*, and that it was clear on the

6    face of the article.  He told them the date of the article,

7    sent them to it, and included it in his October 10th letter.

8    And that it was clear on the face of the article that he had

9    spoken to them before the Report was a public document.  It was

10   clear that he had spoken to them --

11           THE COURT:  So, they should have known,

12   notwithstanding what he said, because they should have read the

13   article more carefully?

14           MR. MARCUS:  Well, I think it undercuts willfulness.

15   It undercuts the idea that there could be sufficient evidence

16   of a willful scheme to conceal those facts if he's giving it to

17   them.  He's telling them, "Here's the article.  Here's my

18   quote."

19           And it's quite clear from the --

20           THE COURT:  Which letter does he cite the article?

21           MR. MARCUS:  In the October 10th letter.

22           THE COURT:  Okay.  Anything else?

23           MR. MARCUS:  Well, he -- sorry.

24           He mentions it, he mentions having talked to Sanger

25   and mentions having given him a copy of the Report in the June

1    letter.  But it's in the October letter where he actually gives

2    the quotation from the article and cites it.

3                    THE COURT:  In the footnote?

4                    MR. MARCUS:  In the footnote, yes.

5                    THE COURT:  All right.

6                    MR. MARCUS:  All right.

7                    THE COURT:  Thank you.

8                    MR. MARCUS:  Thank you.

9                    MS. GASTON:  Good morning.

10                   THE COURT:  Good morning.  And I will let you address

11   anything that you intended to address.  But, I guess we should

12   start with what appears to be the linchpin of the Rule 29

13   motion, on both the question of whether any of the omissions

14   were actionable, whether the scheme itself is actionable, and

15   whether the elements of willfulness have been satisfied.  And

16   that is that whether you have a duty to answer law enforcement

17   completely exists, if the facts that would be complete answers

18   are not statutorily required to be disclosed.  And whether the

19   duty to not omit facts that would render what you did say false

20   exists, unless those facts were statutorily required to be

21   disclosed.

22                   So that would be a good place to start.

23                   MS. GASTON:  Yes, Your Honor.

24                   And I think the government agrees with your opinion,

25   and that your opinion decided this issue.  But, essentially,

1    there is case law in *White Eagle* in the Ninth Circuit, in

2    *Stuart* in the Second Circuit, and then cited approvingly in

3    *Safavian* at Footnote 7, which shows that if there is a law

4    enforcement inquiry -- a targeted law enforcement inquiry

5    flowing from a statute in the way that this flowed from FARA,

6    then, yes, there is a duty to answer truthfully and complete.

7         And I believe Footnote 7 of the *Safavian* cites the

8    *Moore* case, which had this targeted inquiry, as well as

9    *Cisneros*, in which the duty flowed from a form.

10        And I think Your Honor said all of that in your

11   opinion.

12        THE COURT:  Well, I mean, just because I said it

13   before doesn't necessarily mean I was right.  So, it's worth

14   talking about whether I was right.  All right.

15        But, those are the cases, once again, that you would

16   say respond to that issue?

17        MS. GASTON:  I would, Your Honor.

18        THE COURT:  All right.

19        MS. GASTON:  Okay.

20        Next, I would say --

21        THE COURT:  Is there some difference -- some legal

22   difference between a fact that was omitted that could have been

23   responsive to a request, and whether there's a duty to disclose

24   that, separate and apart from whether it is statutorily

25   required to be revealed at that moment, as opposed to

1   statutorily required to be revealed in some statute or

2   disclosure form down the road?

3              Is there a difference between that and omitting

4   something that, if you'd said it, it would have been clear that

5   what you did affirmatively state wasn't true or complete?

6              MS. GASTON:  Could you ask the question again?  I'm

7   sorry.

8              THE COURT:  All right.  We are -- and we haven't even

9   gotten to literal truth yet, and we're already dancing on the

10  head of a pin.

11             But, seems to me there's several kinds of omissions.

12  There's omitting something that FARA would require you to say

13  if you were a registrant, period.  Just offering them up.  And

14  I have said that that's not at issue in this case, and that

15  that wouldn't be an omission that you can argue is actionable

16  for this scheme.

17             I did start the morning by saying, "But, if they ask

18  you a question, and that omission was responsive to that

19  question, you have to answer it, because you have to answer

20  completely.

21             And it's the defense position, no, not unless you

22  were, at that moment, under statutory duty to say so.

23             That was the question about whether the law says that

24  or not, and I think you've just answered that question.

25             The defense has also said that if that fact is a fact

1      that by omitting it rendered what you did say false, even then

2      you don't have a duty to say it.

3              Is there any difference there, legally, in your point

4      of view?  Is that at least required, even if the others aren't?

5      I'm not even saying they're all required.

6              MS. GASTON:  Right.  I think, Your Honor, if I recall

7      correctly -- and it's been a while since I looked at the duty

8      case law -- I think the *Dale* case does say that in that

9      circumstance you just described, there is also a requirement to

10     be truthful and complete.  But, I would need to go check that.

11             THE COURT:  All right.  All right.

12             So, to the extent the duty arises out of the law

13     enforcement inquiry, then what's your answer to his statute of

14     limitations point:  Well, he wasn't answering questions

15     literally when he sent his letter summarizing the meeting.

16             MS. GASTON:  And to that, Your Honor, I would say,

17     first of all, it is a scheme.  That it is a jury question to

18     find one falsification or omission within -- or, after October

19     3rd of 2013; that the jury can make the determination that he

20     was continuing the scheme when he lied and concealed in the

21     meeting on October 9th, and in the letter that he sent on

22     October 11th.

23             I would note that the letter that he sent on October

24     11th refers back to his answers in the June 3rd letter.

25             So, the meeting and the letter on the -- the meeting

1      on October 9th and the letter on October 11th are essentially

2      building upon and capitalizing on the previous omissions.  And

3      he is -- he is on notice of exactly what the FARA Unit is

4      asking.

5              In fact, the FARA Unit, as of September 5th, 2013,

6      has told him, You have an obligation to register.  And he is

7      the one who convenes the meeting on October 9th, in order to

8      convince them not to register, and continues to omit and

9      conceal the material facts in that meeting, and then in the

10     letter on October 11th.

11             So, I think that's a question for the jury.

12             THE COURT:  Is there something different about, We

13     are conducting an inquiry, here are our questions, and he

14     chooses to answer them and he answers them, and We've made a

15     decision?  No, your decision is wrong.  And I am voluntarily

16     telling you why, for purposes of the duty to disclose?

17             MS. GASTON:  I think, as Your Honor noted in your

18     opinion, it is another source of the duty.  Because at that

19     point, on September 5th, 2013, they have told him, You are

20     obligated to register.  And that calls in -- that puts him on

21     further notice of all of the things that he is required to tell

22     them, and puts him on further notice of exactly what it is

23     that -- if you look at his draft response to the FARA Unit that

24     he sent to Mr. Spiegel on September 20th, which was

25     Government's Exhibit 468, he writes in that letter, "It seems

1    to us, reading your letter of September 5th, 2013, that the

2    critical issue for the department is the firm's conduct related

3    to the release of the Report."

4            He knows that this is the core issue.  And so he is

5    continuing to omit information that is material to that issue,

6    to that determination.

7            THE COURT:  Does that go to willfulness and

8    materiality?  Does it also go to the duty?

9            MS. GASTON:  Yes, Your Honor.  Because it -- the

10   whole -- the issue of the duty is whether he is on notice about

11   what the government is asking him.  And I think the record is

12   clear that he was very clearly on notice, based on the very

13   first letter, which provided the statute; the follow-up letter,

14   which had enumerated questions, or six or seven or however many

15   it is; the determination letter on September 5th; and then the

16   meeting on October 9th; and his follow-up letter.

17           THE COURT:  Are you asking the jury to conclude that

18   what he said at the meeting was false?

19           MS. GASTON:  We are not asking them to conclude that

20   he made false statements at the meeting.

21           THE COURT:  Just that the meeting was an act in

22   furtherance of the overall scheme?

23           MS. GASTON:  Yes.

24           THE COURT:  All right.

25           MS. GASTON:  Next, Your Honor, unless --

1          THE COURT:  I guess we've talked about a duty to

2     respond to an inquiry truthfully.

3          Is there a duty to be truthful when you take it upon

4     yourself to persuade the government that they're wrong about

5     something and they need to change their decision?  If an

6     individual submits a white paper to the U.S. Attorney's Office

7     saying, Don't prosecute me for this or that -- and that's

8     usually filtered through a lawyer -- but, if it was actually

9     signed by the CEO of the company, could that violate (a)1?

10          MS. GASTON:  So, in this case, Your Honor, I would

11     say that the duty flows from the disclosure statute that they

12     told him he was obligated to register under.  And then his --

13     his affirmative efforts to lie and mislead in order to get them

14     to change that determination.

15          THE COURT:  So, at that point it's their

16     determination?  Or are we still --

17          MS. GASTON:  It's their determination --

18          THE COURT:  Or are we still continuing the inquiry

19     that began with the first letter, and this is, he's kind of

20     continuing to supplement?

21          MS. GASTON:  Well, at that point, Your Honor, they

22     determine he was obligated to register.  He was required by

23     statute to file a restoration statement, and to provide

24     information about FTI, to provide information about the payment

25     of Skadden by Viktor Pinchuk, the amount of the payment.  He

1    was required to file a registration statement that listed all

2    of his activities on behalf of Ukraine.

3           So, at the point of the determination letter, the

4    statute says -- the statute is very clear in the forms that we

5    looked at with Heather Hunt yesterday, of exactly what

6    information he is obligated to provide.

7           THE COURT:  Then how do you deal with the *McGoff*

8    issue?  Obviously, when he was sitting there in 2014, I don't

9    think there's -- whatever it was, whenever he was sitting there

10   and all the time it took, no one is saying that on that day he

11   was still acting as an agent of the Ukraine.  He had acted, at

12   the very least, according to the government, from December

13   13th -- I mean, December 11th through the 13th, possibly from

14   the 24th through the 13th.  But, let's just say he acted as

15   their agent on the 11th.

16          If that's your argument, and they told him, Because

17   of what you did that day, you had to register, does he still

18   have that duty a year later?  Is it because what was due was a

19   belated registration that said, From X date to X date, I acted?

20   Or at that point, if it went by and they missed it and you

21   missed it, you never have that obligation again?

22          MS. GASTON:  I don't think that's what *McGoff* says at

23   all.  What *McGoff* says -- the holding in *McGoff* is that --

24          THE COURT:  Just when the statute of limitations

25   ends.

1          MS. GASTON:  Right.  It's just that if they had

2    waited five years after the activity on December 11th or 13th,

3    whenever you decide that was done, if they had waited more than

4    five years, he couldn't be prosecuted for willfully failing to

5    register for that activity.  It doesn't have anything to do

6    with whether he was obligated to register.

7          THE COURT:  I guess, is there such a thing -- what

8    she says to him in the letter clearly suggests that she thought

9    there was.  But, legally, if she says to him right now, You

10   need to register because of what you did back then, she's not

11   saying you're an agent today, is she?  She's saying you were an

12   agent then?

13         MS. GASTON:  Yes.  And my understanding, Your Honor,

14   but, I don't -- I'm not a FARA practitioner -- is that they

15   could have taken civil action to require him to register.

16         And, you know, the record also reflects that he was

17   concerned about this at the time.  He, for instance, sent

18   Larry Spiegel the email that we looked at yesterday, and

19   Mr. Spiegel's testimony saying, trying to avoid any

20   irreversible action on their part.  "I called and left a

21   message, and we're going to have the meeting."

22         He very much believed that they could force him to

23   register.

24         THE COURT:  All right.  Go ahead.

25         MS. GASTON:  So, the next point I would like to

1    address is willfulness.

2            And the government agrees with Your Honor that the

3    appropriate standard here is *Bryan* willfulness.  I don't think

4    that Mr. Marcus cited any case law for the proposition that the

5    appropriate willfulness standard here is somehow heightened

6    because of the duty.

7            I don't -- I'm just not aware of what the authority

8    is for there being some very special willfulness standard here

9    because of the duty, and I would submit that that's not the

10   case here.

11           I can then go through the -- sort of run through,

12   briefly, the sufficiency of the evidence.

13           THE COURT:  Well, I'm not sure they've argued it

14   specifically with respect to any of these, except, perhaps,

15   one.  I think they appear to be submitting on the record with

16   respect to that, reserving their objections as to all of it.

17           So if you would like to address it, you may.  But, I

18   don't know that I need to hear argument at this point about it.

19           MS. GASTON:  Okay.

20           THE COURT:  I mean, if there's something specific you

21   feel you want to address.

22           MS. GASTON:  One moment, Your Honor.

23           THE COURT:  All right.

24           (Off-the-record discussion between government

25   counsel.)

1          MS. GASTON:  Two other matters, Your Honor, rather

2     than running through --

3          THE COURT:  And if you want to talk about literal

4     truth a little bit, we'll talk about it again.  But, you're

5     welcome to talk about it.

6          MS. GASTON:  Sure.

7          First, in reference to what Mr. Marcus said about

8     Number 5 -- the fact that is Number 5, we would note that

9     paragraph 33 of the indictment does specifically allege that he

10    provided the Report to Weber's office.

11         Then -- and even, Your Honor, if the -- if, as they

12    say, question -- his response to Question 1 in the June 3rd

13    letter, "To whom, if anyone, did your firm release or

14    distribute their report and when," by saying it was provided to

15    agents of Ukraine, and then on X date the following people,

16    that, the government would submit, that that is still

17    misleading.

18         Because by separating agents of Ukraine from the date

19    and the list of enumerated people, including, for instance,

20    Mr. Pinchuk's agent and Ms. Tymoshenko's agent, who are in the

21    enumerated list, it is concealing the fact that he provided it

22    to Vin Weber.

23         And we would also submit that this activity of

24    setting Mr. Sanger up to speak to Mr. Weber, and then providing

25    the Report to Mr. Weber, is a roundabout way of providing it to

1    Mr. Sanger in October.

2              So, we think those are issues that the jury should

3    decide.

4              THE COURT:  All right.

5              MS. GASTON:  Okay.  We would also note that in the

6    chart that we made, we omitted to include giving an interview

7    to David Herszenhorn, which would also have been directly

8    responsive to the question of, "Did you or anyone in your firm

9    have any media interviews or comments to the media since the

10   defendant spoke with Mr. Herszenhorn on December 12th?"

11             So we would like to add that.

12             THE COURT:  All right.  All right.

13             MS. GASTON:  I think that --

14             THE COURT:  All right.  No, I want to give everybody

15   the chance to put on the record what they want to put on the

16   record.

17             Is there anything you want to say in response,

18   Mr. Marcus?

19             MR. MARCUS:  Just a few things, Your Honor.

20             Starting at the end, the point about Mr. Herszenhorn,

21   I think we would have a specific sufficiency argument about

22   whether naming Mr. Herszenhorn, in addition to Mr. Sanger, is

23   material.  And we would also have an objection -- or, argument

24   that it's not responsive.  The question was, "Did anyone in

25   your firm make statements or comments to the media?  And to

1    whom, if anyone, did you release copies of the Report, and

2    when?"

3            He did not give a copy of the Report -- he gave the

4    copy of the Report to David Sanger, and he -- the statement was

5    emailed to Mr. Sanger.

6            So, I think there's a question about responsiveness,

7    and I also think there's a question about materiality.

8            On the specific response on Vin Weber, the argument

9    isn't that they didn't allege that he gave it to him.  The

10   problem is that they didn't allege that as an omitted material

11   fact.

12           On the issue of what happened after the September 5th

13   letter, I think the government's argument is that by making --

14   simply by making a determination that he was required to

15   register, that that somehow reinvigorated statutory duty to do

16   what it is that a registered agent would be required to do.  Or

17   at least that that somehow gave more force, you know, that what

18   an agent would be required to disclose became more relevant

19   then than it was before.

20           The question of who has to disclose information as an

21   agent is defined by 612.  612 says, "If you become an agent of

22   a foreign principal, then you must file a registration

23   statement that includes the following things."

24           If an agency makes a determination that you're an

25   agent, that does empower them to take injunctive action.  There

1    was a question as to whether they can really do that after

2    you're no longer acting as an agent.  But, it doesn't change

3    the reality of whether you are, in fact -- are or aren't

4    subject to the duty to disclose.

5              THE COURT:  I understand your point.

6              MR. MARCUS:  On the specific *McGoff* point -- John,

7    could you pull it up briefly?

8              So, it is a statute of limitations case, and it

9    does -- the ultimate issue in that case is when the five-year

10   period begins to run.  And the holding of the case is, it

11   begins to run on the last day you act as agent.

12             But, the key interpretive question in the case that

13   the Court decided in order to get to that result was, "What is

14   the duration of your obligation under 612 to file a

15   registration statement?"

16             "What is the obligation under 612?"  And I'm reading

17   from the opinion:

18             "The decisive question in resolving the statute of

19   limitations issue is when the continuing offense terminates.

20   This question, we are satisfied, turns on the duration of the

21   registration obligation of Section 612(a)."

22             And then later, on that same page:

23             "From the manner in which FARA defines the status of

24   an agency relationship and mandates the contents of statements

25   and supplements which foreign agents must file, it appears that

1     the statutory obligation to file expires when the agent ceases

2     activities on behalf of the foreign principal."

3              So, it's not just about statute of limitations; it's

4     about the actual obligation imposed by 612.

5              And I know it can be counterintuitive, because the

6     FARA Unit is in the business of asking people to register

7     retroactively.  But --

8              THE COURT:  You're saying that's contrary to the

9     statute?

10             MR. MARCUS:  The statute does not impose a duty to do

11    it.

12             THE COURT:  I'm sorry?

13             MR. MARCUS:  The statute doesn't impose a duty to do

14    it.

15             THE COURT:  So, people are just doing it to

16    accommodate the government's request?

17             MR. MARCUS:  That's right.

18             THE COURT:  All right.

19             MR. MARCUS:  And that's it, Your Honor.

20             THE COURT:  All righty.

21             All right.  I appreciate all of this.  It's a lot to

22    think about.  Some of it I've thought about before.  I think

23    all of it has been easier to think about in the context of the

24    actual evidence and the case than it was in the context of the

25    anticipated case.  So, I don't have any quarrel with the fact

1    that arguments have been re-raised at the end that we raised in

2    motions to dismiss.  I think this is the appropriate time to

3    raise them again.

4           And I've read everything and I've thought about

5    everything and I'm going to continue to do so, because pursuant

6    to Rule 29(b), I'm going to reserve on this motion until after

7    the verdict.

8           So, I appreciate your argument.

9           MR. TAYLOR:  I'm sorry?

10          THE COURT:  I'm going to reserve, pursuant to Federal

11   Rule of Criminal Procedure 29(b).

12          MR. TAYLOR:  Until after the verdict or after the

13   close of evidence?

14          THE COURT:  Well, you can ask me, again, to make your

15   record at the close of evidence.  But, I am likely to make the

16   same point at that point, and make my determination after the

17   verdict, if necessary.  At which point, if people want to put

18   it in writing, they can put it in writing -- not that you

19   haven't put it in writing pretty thoroughly to this point.

20   But, we can cross that bridge, if we have to, at that time.

21          Therefore, right now, I believe that we can actually

22   have a lunch break that we don't have to run to, and that we're

23   going to return at 2 p.m. to let the government move in its

24   stipulation, advise the jury that other exhibits have been

25   moved in evidence, and rest.  And then I will call on the

1    defendant to begin its case, if it chooses -- if he chooses to

2    do so.

3              Is there any -- unless somebody thinks there's

4    something else we need to take up right now?

5              MR. CAMPOAMOR-SANCHEZ:  No, Your Honor.

6              THE COURT:  All right.  Thank you, everybody.

7                           *   *   *

1

2                    CERTIFICATE OF OFFICIAL COURT REPORTER

3

4

5            I, JANICE DICKMAN, do hereby certify that the above

6     and foregoing constitutes a true and accurate transcript of my

7     stenograph notes and is a full, true and complete transcript of

8     the proceedings to the best of my ability.

9                         Dated this 27th day of August, 2019.

10

11

12                         /s/_____

13                         Janice E. Dickman, CRR, RMR, CRC
                           Official Court Reporter
14                         Room 6523
                           333 Constitution Avenue NW
15                         Washington, D.C. 20001

16

17

18

19

20

21

22

23

24

25

**'**

**'95** [1] - 2690:2

**/**

**/s** [1] - 2710:12

**1**

**1** [3] - 2648:21, 2655:16, 2703:12
**10** [1] - 2652:24
**100** [1] - 2637:22
**1000** [1] - 2638:3
**1001** [6] - 2666:2, 2669:2, 2669:6, 2669:9, 2669:11, 2669:12
  **10:00** [1] - 2637:7
  **10b-5** [1] - 2669:18
  **10th** [2] - 2692:7, 2692:21
**11** [2] - 2651:2, 2651:13
**119.1** [1] - 2648:6
  **11th** [8] - 2664:3, 2696:22, 2696:24, 2697:1, 2697:10, 2700:13, 2700:15, 2701:2
**12** [2] - 2637:5, 2637:8
  **12th** [6] - 2652:16, 2652:19, 2652:24, 2664:3, 2675:13, 2704:10
  **13th** [5] - 2675:13, 2700:13, 2700:14, 2701:2
**1800** [1] - 2638:2
**19-125** [1] - 2639:2
**19-CR-125** [1] - 2637:3
**1948** [1] - 2641:13
**1987** [1] - 2672:22

**2**

**2** [2] - 2641:10, 2708:23
**20001** [2] - 2638:9, 2710:15
**20036** [1] - 2638:3
**2007** [1] - 2641:12
**2012** [2] - 2673:5, 2674:24
**2013** [6] - 2652:22, 2673:7, 2696:19, 2697:5, 2697:19, 2698:1
**2014** [1] - 2700:8
**2019** [2] - 2637:6, 2710:9
**202** [3] - 2637:15, 2637:19, 2638:4
**202-354-3267** [1] - 2638:9
**20530** [2] - 2637:15, 2637:18
**20th** [1] - 2697:24
**21202** [1] - 2637:23
**233-0986** [1] - 2637:19
**23rd** [1] - 2682:6
**24-hour** [1] - 2651:5
**2440** [1] - 2637:23

**24th** [1] - 2700:14
**252-7698** [1] - 2637:15
**27** [1] - 2637:6
**27th** [1] - 2710:9
**29** [6] - 2644:4, 2648:17, 2653:21, 2654:7, 2674:7, 2693:12
  **29(b** [2] - 2639:16, 2708:6
  **29(b)** [1] - 2708:11

**3**

**3** [5] - 2641:9, 2649:25, 2668:17, 2675:16, 2675:18
**33** [1] - 2703:9
**333** [2] - 2638:8, 2710:14
**335** [1] - 2641:12
**3rd** [5] - 2650:20, 2652:22, 2696:19, 2696:24, 2703:12

**4**

**4** [3] - 2647:4, 2649:25, 2675:17
**410** [1] - 2637:24
**43** [2] - 2639:21, 2641:21
**440** [1] - 2641:11
**446** [1] - 2641:11
**468** [1] - 2697:25
**469** [1] - 2641:13
**47** [1] - 2641:11
**491** [1] - 2641:11

**5**

**5** [7] - 2650:15, 2674:19, 2674:20, 2674:21, 2703:8
**511** [1] - 2641:21
**515** [1] - 2641:21
**54** [1] - 2641:9
**555** [1] - 2637:14
**5th** [6] - 2677:20, 2697:5, 2697:19, 2698:1, 2698:15, 2705:12

**6**

**6** [1] - 2651:1
**611** [1] - 2660:13
**612** [5] - 2705:21, 2706:14, 2706:16, 2707:4
  **612(a)** [1] - 2706:21
**618** [2] - 2669:3
**618(a)2** [4] - 2668:23, 2668:24, 2669:13, 2669:18
**6523** [2] - 2638:8, 2710:14
**683** [1] - 2642:1

**7**

**7** [3] - 2651:1, 2694:3, 2694:7

**730** [1] - 2642:1
**778-1814** [1] - 2638:4

**9**

**9** [1] - 2652:16
**949-1146** [1] - 2637:24
**950** [1] - 2637:18
**9th** [4] - 2696:21, 2697:1, 2697:7, 2698:16

**A**

**a)1** [20] - 2646:1, 2656:19, 2656:21, 2661:13, 2663:5, 2663:12, 2666:9, 2666:17, 2668:3, 2668:20, 2670:20, 2670:22, 2671:15, 2671:21, 2671:25, 2682:8, 2689:16, 2689:25, 2690:9, 2699:9
**a)2** [11] - 2656:16, 2661:14, 2663:1, 2666:7, 2670:15, 2670:20, 2671:15, 2671:22, 2672:2, 2682:17, 2689:16
**a.m** [1] - 2637:7
**Aabelson@zuckerman.com** [1] - 2637:25
**Abelson** [2] - 2637:21, 2639:12
**abetting** [1] - 2644:25
**ability** [1] - 2710:8
**absence** [1] - 2648:2
**absent** [1] - 2666:5
**absolute** [1] - 2678:18
**absolutely** [1] - 2658:1
**abstract** [2] - 2652:14, 2657:21
**acceptable** [1] - 2643:2
**accommodate** [1] - 2707:16
**accompanied** [1] - 2667:1
**according** [2] - 2679:1, 2700:12
**accurate** [1] - 2710:6
**act** [10] - 2646:3, 2657:5, 2663:8, 2668:18, 2670:12, 2673:2, 2673:10, 2691:19, 2698:21, 2706:11
**acted** [3] - 2700:11, 2700:14, 2700:19
**acting** [2] - 2700:11, 2706:2
**action** [3] - 2701:15, 2701:20, 2705:25
**Action** [1] - 2637:3
**actionable** [10] - 2646:24, 2648:7, 2648:9, 2649:14, 2653:4, 2670:3, 2680:23, 2693:14, 2695:15
**activities** [2] - 2700:2, 2707:2
**activity** [3] - 2701:2, 2701:5, 2703:23
**acts** [2] - 2647:11, 2648:9
**actual** [3] - 2667:6, 2707:4, 2707:24

**Adam** [2] - 2637:17, 2637:21
**add** [1] - 2704:11
**added** [1] - 2660:22
**addition** [4] - 2654:9, 2654:14, 2676:8, 2704:22
**additional** [2] - 2641:19, 2679:8
**additionally** [1] - 2675:7
**additions** [1] - 2670:1
**address** [7] - 2639:17, 2683:12, 2693:10, 2693:11, 2702:1, 2702:17, 2702:21
**addressed** [3] - 2663:6, 2683:8, 2683:11
**admissible** [1] - 2640:23
**advance** [3] - 2642:9, 2682:2, 2687:11
**advancing** [1] - 2647:7
**advice** [1] - 2688:16
**advise** [1] - 2708:24
**advisory** [1] - 2667:6
**advocating** [1] - 2645:6
**affect** [1] - 2642:20
**affects** [1] - 2681:6
**affirmatively** [2] - 2655:23, 2695:5
**afield** [1] - 2649:23
**afoot** [1] - 2650:10
**afoul** [1] - 2659:4
**afternoon** [2] - 2639:22, 2654:3
**agencies** [2] - 2666:24, 2666:25
**agency** [17] - 2660:16, 2660:21, 2665:17, 2665:25, 2666:21, 2666:22, 2671:17, 2677:19, 2685:23, 2686:9, 2687:17, 2688:5, 2688:8, 2688:22, 2689:2, 2705:24, 2706:24
**agent** [18] - 2660:20, 2666:3, 2673:2, 2673:10, 2700:11, 2700:15, 2701:11, 2701:12, 2703:20, 2705:16, 2705:18, 2705:21, 2705:25, 2706:2, 2706:11, 2707:1
**agents** [4] - 2658:19, 2703:15, 2703:18, 2706:25
**agree** [10] - 2642:2, 2646:20, 2647:20, 2648:10, 2656:22, 2661:20, 2661:21, 2662:11, 2667:18, 2681:12
**agreed** [1] - 2676:20
**agreeing** [1] - 2657:21
**agrees** [2] - 2693:24, 2702:2
**ahead** [2] - 2674:4, 2701:24
**aided** [1] - 2642:7
**aiding** [1] - 2644:24
**aim** [1] - 2674:5
**akin** [1] - 2682:20
**allegation** [5] - 2645:25, 2661:10, 2663:21, 2664:2, 2678:4
**allegations** [1] - 2692:2

**allege** [3] - 2703:9, 2705:9, 2705:10
**alleged** [13] - 2646:3, 2647:2, 2661:7, 2662:4, 2663:13, 2663:14, 2667:24, 2670:23, 2677:14, 2678:19, 2679:4, 2684:19, 2690:24
**allegedly** [2] - 2663:10, 2679:17
**alleging** [3] - 2678:1, 2678:2, 2678:15
**allow** [1] - 2641:2
**allowed** [5] - 2647:24, 2654:10, 2655:12, 2668:15, 2668:18
**alone** [5] - 2658:15, 2658:17, 2663:4, 2671:20, 2682:22
**America** [2] - 2637:3, 2639:2
**amount** [1] - 2699:25
**amounted** [1] - 2685:14
**amounts** [1] - 2661:5
**ample** [1] - 2642:3
**AMY** [1] - 2637:9
**answer** [44] - 2647:24, 2647:25, 2650:24, 2651:11, 2653:5, 2655:2, 2655:17, 2655:18, 2655:19, 2656:2, 2657:3, 2657:9, 2657:10, 2657:12, 2658:3, 2658:15, 2659:4, 2662:18, 2662:19, 2664:18, 2664:24, 2667:13, 2667:19, 2667:22, 2675:8, 2675:11, 2675:20, 2676:8, 2676:16, 2677:5, 2678:6, 2678:16, 2678:17, 2681:22, 2687:21, 2688:6, 2693:16, 2694:6, 2695:19, 2696:13, 2697:14
**answered** [2] - 2647:24, 2695:24
**answering** [4] - 2647:6, 2660:25, 2667:20, 2696:14
**answers** [10] - 2647:14, 2648:2, 2653:8, 2655:10, 2679:16, 2680:11, 2680:12, 2693:17, 2696:24, 2697:14
**anticipated** [1] - 2707:25
**anytime** [2] - 2671:21, 2671:22
**apart** [1] - 2694:24
**apparent** [1] - 2646:6
**Appeals** [1] - 2681:15
**appear** [1] - 2702:15
**appearance** [1] - 2639:4
**applicability** [1] - 2672:16
**applicable** [1] - 2643:18
**application** [1] - 2683:19
**applied** [1] - 2673:25
**apply** [4] - 2645:1, 2658:12, 2672:11, 2673:16
**applying** [1] - 2645:16
**appreciate** [3] - 2652:17, 2707:21, 2708:8
**approach** [2] - 2639:3, 2641:2

**appropriate** [5] - 2644:3, 2644:9, 2702:3, 2702:5, 2708:2
**appropriately** [1] - 2640:16
**approved** [1] - 2645:14
**approvingly** [1] - 2694:2
**April** [3] - 2677:19, 2681:3, 2686:10
**arbitrary** [1] - 2642:9
**argue** [15] - 2647:1, 2648:7, 2648:8, 2648:17, 2648:18, 2649:10, 2650:23, 2651:10, 2651:22, 2652:8, 2652:10, 2655:12, 2673:13, 2690:16, 2695:15
**argued** [4] - 2648:3, 2648:4, 2689:10, 2702:13
**arguing** [2] - 2669:3, 2689:8
**argument** [26] - 2639:16, 2645:12, 2645:21, 2645:24, 2646:7, 2646:12, 2652:6, 2652:11, 2653:12, 2654:4, 2656:15, 2667:12, 2672:8, 2672:9, 2674:7, 2674:8, 2688:21, 2688:25, 2700:16, 2702:18, 2704:21, 2704:23, 2705:8, 2705:13, 2708:8
**argumentative** [1] - 2643:22
**arguments** [3] - 2646:17, 2681:16, 2708:1
**arise** [4] - 2652:8, 2673:15, 2685:13, 2687:24
**arises** [1] - 2696:12
**arising** [3] - 2650:24, 2672:18, 2673:21
**arose** [1] - 2652:13
**arranged** [1] - 2652:20
**article** [7] - 2692:6, 2692:8, 2692:13, 2692:17, 2692:20, 2693:2
**articulated** [1] - 2672:10
**articulating** [1] - 2680:3
**aside** [3] - 2645:3, 2671:13, 2681:9
**aspect** [2] - 2640:24, 2688:20
**assertions** [1] - 2647:7
**assess** [2] - 2643:20, 2644:3
**assessing** [1] - 2642:7
**assigned** [2] - 2646:14
**assignment** [1] - 2646:14
**assist** [1] - 2688:6
**associations** [1] - 2643:24
**assumes** [1] - 2642:23
**assuming** [1] - 2687:21
**assumption** [1] - 2653:20
**attention** [2] - 2643:16, 2654:15
**Attorney's** [2] - 2637:13, 2699:6
**attuned** [1] - 2643:16
**August** [2] - 2637:6, 2710:9
**authority** [3] - 2644:20, 2645:9, 2702:7

authorized [1] - 2640:25
Avenue [3] - 2637:18, 2638:8, 2710:14
avoid [4] - 2647:3, 2647:5, 2679:22, 2701:19
aware [1] - 2702:7

## B

backdated [1] - 2643:4
background [4] - 2660:12, 2666:6, 2672:4, 2690:1
balance [1] - 2640:21
Baltimore [1] - 2637:23
based [16] - 2641:4, 2642:9, 2642:10, 2642:21, 2643:1, 2643:24, 2644:7, 2657:24, 2673:23, 2678:9, 2678:20, 2679:5, 2680:15, 2690:6, 2690:7, 2698:12
basis [6] - 2640:6, 2642:11, 2654:21, 2657:15, 2679:12
bearing [1] - 2660:2
became [1] - 2705:18
become [1] - 2705:21
BEFORE [1] - 2637:9
began [2] - 2684:3, 2699:19
begin [1] - 2709:1
beginning [3] - 2688:14, 2691:7, 2691:8
begins [2] - 2706:10, 2706:11
behalf [3] - 2682:4, 2700:2, 2707:2
behind [3] - 2658:11, 2664:14, 2665:16
belated [1] - 2700:19
belie [1] - 2651:22
bench [1] - 2643:5
BERMAN [1] - 2637:9
best [2] - 2641:2, 2710:8
better [1] - 2645:24
between [12] - 2646:9, 2660:25, 2661:13, 2661:14, 2662:13, 2662:22, 2664:12, 2680:25, 2686:7, 2694:22, 2695:3, 2702:24
bit [3] - 2672:4, 2685:4, 2703:4
body [1] - 2689:6
Bowser [1] - 2667:5
Bradley [1] - 2637:17
Bramblett [3] - 2682:23, 2683:1, 2683:20
break [1] - 2708:22
bridge [1] - 2708:20
briefed [2] - 2676:25, 2677:6
briefly [3] - 2639:16, 2702:12, 2706:7
briefs [1] - 2672:14
bring [1] - 2649:9
Bryan [7] - 2644:13, 2644:18,

2645:6, 2645:15, 2684:12, 2688:11, 2702:3
BRYAN [1] - 2644:18
bubble [1] - 2657:22
building [1] - 2697:2
burden [3] - 2687:2, 2690:18, 2690:21
Burden [3] - 2644:13, 2645:13, 2645:14
business [1] - 2707:6

## C

cabined [1] - 2675:19
cabinet [1] - 2691:22
Campoamor [2] - 2637:12, 2639:8
CAMPOAMOR [2] - 2639:6, 2709:5
Campoamor-Sanchez [1] - 2637:12
CAMPOAMOR-SANCHEZ [2] - 2639:6, 2709:5
cannot [2] - 2663:4, 2672:25
capitalizing [1] - 2697:2
captured [1] - 2655:4
career [1] - 2647:5
careful [1] - 2671:4
carefully [3] - 2643:20, 2658:7, 2692:13
Case [1] - 2639:2
case [67] - 2639:25, 2641:12, 2641:14, 2641:17, 2642:14, 2642:22, 2643:1, 2643:3, 2643:9, 2643:13, 2643:25, 2644:2, 2644:6, 2644:10, 2644:14, 2644:22, 2645:3, 2645:16, 2646:20, 2646:25, 2647:18, 2653:22, 2653:23, 2657:25, 2658:16, 2658:18, 2658:19, 2660:5, 2662:4, 2662:6, 2665:10, 2666:8, 2667:5, 2669:11, 2669:24, 2669:25, 2671:16, 2671:22, 2671:24, 2672:11, 2672:21, 2672:22, 2673:3, 2673:8, 2673:11, 2673:13, 2682:14, 2684:18, 2685:14, 2689:24, 2690:6, 2694:1, 2694:8, 2695:14, 2696:8, 2699:10, 2702:4, 2702:10, 2706:8, 2706:9, 2706:10, 2706:12, 2707:24, 2707:25, 2709:1
cases [11] - 2642:19, 2642:25, 2659:5, 2665:7, 2670:15, 2670:21, 2670:22, 2683:13, 2685:1, 2689:21, 2694:15
catch [1] - 2645:8
category [2] - 2649:3, 2690:25
cautionary [1] - 2643:14

ceases [1] - 2707:1
CEO [1] - 2699:9
certain [1] - 2658:13
certainly [8] - 2644:11, 2647:1, 2649:9, 2651:10, 2653:6, 2665:10, 2673:5, 2682:16
CERTIFICATE [1] - 2710:2
certification [1] - 2667:2
certify [3] - 2667:2, 2667:10, 2710:5
challenge [2] - 2654:13, 2689:5
chance [2] - 2654:2, 2704:15
change [4] - 2647:8, 2699:5, 2699:14, 2706:2
chapter [1] - 2684:20
character [11] - 2639:17, 2640:23, 2641:1, 2641:7, 2641:16, 2641:19, 2641:24, 2642:3, 2642:16, 2643:6, 2644:2
characterized [1] - 2680:22
characterizing [1] - 2680:25
charge [1] - 2661:14
charged [3] - 2666:1, 2673:7, 2689:25
chart [5] - 2650:15, 2652:16, 2652:17, 2652:18, 2704:6
check [3] - 2690:12, 2691:22, 2696:10
Cheek [1] - 2644:12
choose [4] - 2655:17, 2655:24, 2656:7, 2657:25
chooses [3] - 2697:14, 2709:1
chose [1] - 2657:3
Circuit [8] - 2641:11, 2642:2, 2644:14, 2672:22, 2682:24, 2685:20, 2694:1, 2694:2
Circuit's [1] - 2685:12
circumstance [1] - 2696:9
circumstances [1] - 2651:22
Cisneros [1] - 2694:9
cite [1] - 2692:20
cited [4] - 2642:15, 2665:7, 2694:2, 2702:4
cites [2] - 2693:2, 2694:7
civil [1] - 2701:15
clarifying [1] - 2682:1
clarity [2] - 2652:17, 2659:11
classic [1] - 2666:7
clause [2] - 2691:7
clear [16] - 2641:15, 2642:15, 2654:12, 2658:8, 2658:18, 2664:6, 2687:24, 2688:1, 2690:2, 2692:5, 2692:8, 2692:10, 2692:19, 2695:4, 2698:12, 2700:4
cleared [1] - 2643:9
clearly [4] - 2656:4, 2656:9, 2698:12, 2701:8
close [7] - 2643:16, 2648:4, 2653:21, 2653:23, 2681:22,

2708:13, 2708:15
**Club** [2] - 2650:1, 2650:19
**collapse** [1] - 2688:1
**collateral** [1] - 2643:6
**COLUMBIA** [2] - 2637:1, 2637:14
**coming** [1] - 2677:21
**comments** [3] - 2652:23, 2704:9, 2704:25
**committee** [1] - 2690:4
**communications** [3] - 2651:13, 2688:15, 2689:2
**company** [1] - 2699:9
**complete** [16] - 2645:25, 2647:22, 2655:10, 2656:13, 2657:10, 2658:4, 2663:16, 2667:10, 2670:19, 2672:13, 2678:9, 2693:17, 2694:6, 2695:5, 2696:10, 2710:7
**completely** [8] - 2658:15, 2664:19, 2664:24, 2665:8, 2665:11, 2667:13, 2693:17, 2695:20
**component** [1] - 2672:6
**components** [1] - 2674:23
**conceal** [7] - 2661:7, 2661:10, 2671:6, 2682:18, 2682:20, 2692:16, 2697:9
**concealed** [6] - 2661:24, 2661:25, 2662:5, 2663:14, 2664:3, 2696:20
**concealing** [1] - 2703:21
**concealment** [3] - 2662:7, 2683:24, 2692:2
**concept** [1] - 2665:15
**concern** [1] - 2689:18
**concerned** [1] - 2701:17
**concerns** [2] - 2640:17, 2640:21
**conclude** [4] - 2682:7, 2687:6, 2698:17, 2698:19
**concluded** [1] - 2659:25
**concurring** [1] - 2685:3
**conduct** [3] - 2640:9, 2660:2, 2698:2
**conducting** [1] - 2697:13
**conference** [2] - 2645:23, 2653:10
**confirming** [1] - 2680:4
**connected** [1] - 2650:17, 2675:1
**consider** [2] - 2641:3, 2647:11
**consideration** [2] - 2646:2, 2651:24
**considered** [3] - 2646:3, 2646:5, 2657:5
**consist** [1] - 2640:5
**consistent** [1] - 2674:24
**constitute** [1] - 2671:20
**constitutes** [1] - 2710:6

**Constitution** [2] - 2638:8, 2710:14
**consult** [1] - 2691:17
**consulted** [1] - 2649:11
**Consulting** [1] - 2648:23
**contacts** [4] - 2663:20, 2680:14, 2680:15, 2687:8
**contents** [1] - 2706:24
**context** [13] - 2646:19, 2657:2, 2658:6, 2658:8, 2660:6, 2660:10, 2665:24, 2666:21, 2666:25, 2670:15, 2686:25, 2707:23, 2707:24
**continuance** [1] - 2680:12
**continuation** [1] - 2684:3
**continue** [1] - 2708:5
**continued** [1] - 2664:7
**continues** [1] - 2697:8
**continuing** [5] - 2696:20, 2698:5, 2699:18, 2699:20, 2706:19
**contours** [1] - 2669:2
**contract** [2] - 2685:9, 2685:14, 2685:15
**contrary** [3] - 2645:13, 2690:19, 2707:8
**contrast** [1] - 2688:13
**controlling** [1] - 2645:5
**convenes** [1] - 2697:7
**conversation** [2] - 2663:23, 2688:20
**convicted** [2] - 2681:17, 2682:7
**conviction** [1] - 2681:16
**convince** [1] - 2697:8
**copies** [4] - 2649:17, 2675:9, 2675:11, 2705:11
**copy** [7] - 2650:17, 2651:4, 2651:5, 2675:4, 2692:25, 2705:3, 2705:4
**core** [1] - 2698:4
**correct** [4] - 2666:6, 2666:10, 2667:22, 2687:10
**correctly** [2] - 2655:5, 2696:7
**counsel** [3] - 2639:3, 2669:3, 2702:25
**counterintuitive** [1] - 2707:5
**couple** [1] - 2674:17
**course** [1] - 2646:23
**COURT** [149] - 2637:1, 2639:9, 2639:14, 2653:16, 2653:24, 2654:16, 2655:6, 2655:9, 2655:16, 2655:25, 2656:13, 2656:18, 2656:20, 2657:19, 2658:16, 2659:13, 2659:17, 2660:14, 2660:24, 2661:9, 2661:19, 2662:12, 2662:18, 2663:2, 2663:6, 2663:17, 2664:17, 2664:21, 2664:25, 2665:7, 2665:12, 2666:1, 2666:5, 2666:9, 2666:13,

2666:16, 2666:19, 2667:8, 2667:11, 2667:18, 2667:22, 2667:24, 2668:4, 2668:7, 2668:11, 2668:15, 2668:21, 2669:1, 2669:11, 2669:14, 2669:23, 2670:9, 2670:11, 2670:16, 2671:11, 2672:7, 2673:15, 2673:19, 2674:4, 2674:6, 2674:20, 2674:22, 2675:15, 2675:18, 2675:22, 2676:3, 2676:11, 2676:14, 2676:25, 2678:1, 2678:11, 2678:15, 2678:24, 2679:15, 2680:12, 2681:4, 2682:10, 2682:13, 2682:20, 2683:4, 2684:2, 2684:7, 2684:10, 2684:25, 2685:17, 2685:21, 2686:1, 2686:4, 2686:13, 2686:17, 2686:23, 2687:5, 2687:19, 2688:14, 2688:23, 2689:1, 2689:9, 2689:13, 2689:20, 2689:24, 2690:9, 2690:22, 2691:1, 2691:11, 2691:13, 2691:15, 2691:21, 2691:23, 2692:11, 2692:20, 2692:22, 2693:3, 2693:5, 2693:7, 2693:10, 2694:12, 2694:18, 2694:21, 2695:8, 2696:11, 2697:12, 2698:7, 2698:17, 2698:21, 2698:24, 2699:1, 2699:15, 2699:18, 2700:7, 2700:24, 2701:7, 2701:24, 2702:13, 2702:20, 2702:23, 2703:3, 2704:4, 2704:12, 2704:14, 2706:5, 2707:8, 2707:12, 2707:15, 2707:18, 2707:20, 2708:10, 2708:14, 2709:6, 2710:2
**court** [1] - 2642:2
**Court** [10] - 2638:7, 2638:7, 2641:8, 2641:12, 2641:22, 2658:18, 2659:13, 2681:15, 2706:13, 2710:13
**Court's** [1] - 2644:18
**Courthouse** [1] - 2638:8
**COURTROOM** [1] - 2639:1
**courts** [1] - 2659:5
**cover** [6] - 2661:9, 2663:9, 2666:10, 2669:5, 2671:5, 2682:20
**covered** [2] - 2691:4, 2691:5
**Craig** [5] - 2637:6, 2639:2, 2639:11, 2639:13, 2671:9
**CRC** [2] - 2638:7, 2710:13
**creating** [1] - 2683:2
**credibility** [1] - 2642:7
**crime** [3] - 2661:7, 2684:23, 2685:7
**criminal** [1] - 2688:10
**Criminal** [3] - 2637:3, 2639:1,

2708:11
**crisply** [1] - 2667:12
**critical** [3] - 2688:20, 2689:7, 2698:2
**cross** [3] - 2642:16, 2643:23, 2708:20
**cross-examination** [1] - 2643:23
**cross-examine** [1] - 2642:16
**CRR** [2] - 2638:7, 2710:13
**cumulative** [4] - 2640:20, 2641:20, 2642:12, 2643:22
**cute** [1] - 2671:3

## D

**D.C** [11] - 2637:6, 2637:15, 2637:18, 2638:3, 2638:9, 2641:11, 2644:14, 2672:22, 2682:24, 2685:12, 2710:15
**Dale** [1] - 2696:8
**dancing** [1] - 2695:9
**date** [5] - 2692:6, 2700:19, 2703:15, 2703:18
**Dated** [1] - 2710:9
**dates** [1] - 2679:11
**David** [7] - 2651:2, 2674:25, 2691:13, 2691:14, 2691:17, 2704:7, 2705:4
**Davis** [1] - 2652:25
**DAY** [1] - 2637:8
**daylight** [1] - 2646:9
**days** [1] - 2663:22
**deal** [2] - 2683:15, 2700:7
**dealing** [1] - 2645:15
**debate** [1] - 2643:5
**December** [11] - 2651:2, 2651:13, 2652:16, 2652:19, 2652:24, 2675:13, 2677:18, 2700:12, 2700:13, 2701:2, 2704:10
**decide** [3] - 2679:16, 2701:3, 2704:3
**decided** [5] - 2644:14, 2677:19, 2680:15, 2693:25, 2706:13
**decides** [1] - 2647:12
**decision** [8] - 2644:13, 2644:18, 2679:17, 2681:6, 2681:7, 2697:15, 2699:5
**decisive** [1] - 2706:18
**declined** [1] - 2647:19
**deems** [1] - 2644:3
**Defendant** [2] - 2637:7, 2637:20
**defendant** [20] - 2640:6, 2640:15, 2641:2, 2641:24, 2642:5, 2642:15, 2643:23, 2646:20, 2646:21, 2648:22, 2649:16, 2650:16, 2651:1, 2652:19, 2652:25, 2658:21, 2674:25, 2685:3, 2704:10,

2709:1
**defendant's** [4] - 2639:18, 2640:10, 2640:22, 2647:2
**defendants** [1] - 2660:6
**defense** [27] - 2640:11, 2640:22, 2640:24, 2641:3, 2641:7, 2641:9, 2642:3, 2642:9, 2642:12, 2643:15, 2643:18, 2644:2, 2644:15, 2645:2, 2645:25, 2647:21, 2653:9, 2668:5, 2670:15, 2670:20, 2671:14, 2671:15, 2671:23, 2672:1, 2672:3, 2695:21, 2695:25
**defined** [1] - 2705:21
**defines** [1] - 2706:23
**definition** [1] - 2681:5
**delivered** [3] - 2650:18, 2651:4, 2675:4
**delve** [1] - 2640:16
**denied** [1] - 2639:23
**departed** [1] - 2682:6
**department** [1] - 2698:2
**Department** [1] - 2637:17
**DEPUTY** [1] - 2639:1
**described** [1] - 2696:9
**destruction** [1] - 2644:21
**determination** [10] - 2696:19, 2698:6, 2698:15, 2699:14, 2699:16, 2699:17, 2700:3, 2705:14, 2705:24, 2708:16
**determinations** [1] - 2652:6
**determine** [6] - 2644:8, 2650:5, 2686:13, 2686:15, 2686:19, 2699:22
**determined** [2] - 2641:1, 2651:3
**devote** [1] - 2643:22
**DICKMAN** [1] - 2710:5
**Dickman** [2] - 2638:7, 2710:13
**dicta** [1] - 2645:4
**dictate** [1] - 2679:10
**difference** [14] - 2660:24, 2661:4, 2661:13, 2661:14, 2662:13, 2662:22, 2663:11, 2664:12, 2689:8, 2694:21, 2694:22, 2695:3, 2696:3
**different** [7] - 2645:19, 2646:4, 2651:19, 2652:13, 2659:25, 2660:12, 2697:12
**differentiate** [1] - 2687:16
**differentiated** [1] - 2689:22
**differentiating** [1] - 2672:20
**direct** [1] - 2645:10
**directed** [1] - 2677:13
**direction** [3] - 2652:25, 2658:13, 2687:3
**directly** [3] - 2649:24, 2652:2, 2704:7
**disagree** [3] - 2657:24, 2664:18, 2664:23

**disagreed** [1] - 2683:19
**disclose** [40] - 2646:18, 2647:4, 2648:14, 2650:23, 2652:10, 2653:11, 2657:16, 2657:23, 2658:9, 2658:12, 2659:22, 2664:14, 2665:21, 2665:23, 2667:15, 2668:10, 2672:19, 2673:1, 2673:9, 2676:24, 2677:1, 2680:13, 2680:14, 2683:25, 2684:19, 2684:22, 2685:9, 2685:10, 2685:15, 2685:24, 2686:1, 2686:2, 2686:8, 2689:10, 2694:23, 2697:16, 2705:18, 2705:20, 2706:4
**disclosed** [6] - 2646:22, 2663:14, 2668:16, 2670:5, 2693:18, 2693:21
**disclosure** [5] - 2647:3, 2666:5, 2670:8, 2695:2, 2699:11
**discretion** [3] - 2641:8, 2641:17, 2641:23
**discuss** [1] - 2650:1
**discussed** [1] - 2672:24
**discussing** [1] - 2687:8
**discussion** [3] - 2643:10, 2644:4, 2702:24
**disfavored** [1] - 2643:11
**dismiss** [3] - 2669:4, 2683:11, 2708:2
**dispute** [5] - 2641:6, 2655:14, 2655:16, 2673:4, 2690:10
**disputes** [1] - 2673:11
**distinction** [1] - 2649:15
**distress** [1] - 2642:5
**distribute** [4] - 2650:21, 2651:8, 2675:23, 2703:14
**District** [1] - 2641:22
**DISTRICT** [4] - 2637:1, 2637:1, 2637:10, 2637:14
**district** [1] - 2642:2
**docket** [2] - 2639:20, 2639:24
**Docket** [3] - 2639:21, 2641:9, 2648:6
**doctrine** [1] - 2646:1
**document** [1] - 2692:9
**done** [1] - 2701:3
**down** [5] - 2666:2, 2674:14, 2675:21, 2677:9, 2695:2
**draft** [1] - 2697:23
**draw** [6] - 2654:14, 2673:21, 2674:1, 2680:24, 2688:12
**due** [1] - 2700:18
**duration** [2] - 2706:14, 2706:20
**during** [3] - 2660:2, 2679:6, 2679:9
**duties** [3] - 2682:10, 2682:11, 2682:12
**duty** [124] - 2646:18, 2647:6, 2647:23, 2648:3, 2648:14,

2648:19, 2648:20, 2650:12,
2650:23, 2651:11, 2652:7,
2652:10, 2652:13, 2653:11,
2654:20, 2654:21, 2654:25,
2655:2, 2655:5, 2655:6,
2655:13, 2655:18, 2655:19,
2655:20, 2655:21, 2656:2,
2656:13, 2656:14, 2657:16,
2657:20, 2657:25, 2658:1,
2658:3, 2658:6, 2658:9,
2658:12, 2658:15, 2660:5,
2660:9, 2662:18, 2663:15,
2664:14, 2664:18, 2664:24,
2665:21, 2666:14, 2666:17,
2667:12, 2667:14, 2667:18,
2668:1, 2668:2, 2668:25,
2670:12, 2670:13, 2671:17,
2672:6, 2672:17, 2672:19,
2673:1, 2673:9, 2673:14,
2673:15, 2673:21, 2673:23,
2673:25, 2674:15, 2676:23,
2678:8, 2679:5, 2679:7, 2679:9,
2679:12, 2682:9, 2682:15,
2683:25, 2684:15, 2684:18,
2684:19, 2685:9, 2685:13,
2685:24, 2686:1, 2686:2,
2687:1, 2687:21, 2687:24,
2688:1, 2689:10, 2689:12,
2693:16, 2693:19, 2694:6,
2694:9, 2694:23, 2695:22,
2696:2, 2696:7, 2696:12,
2697:16, 2697:18, 2698:8,
2698:10, 2699:1, 2699:3,
2699:11, 2700:18, 2702:6,
2702:9, 2705:15, 2706:4,
2707:10, 2707:13

### E

**Eagle** [1] - 2694:1
**early** [1] - 2650:18
**easier** [1] - 2707:23
**East** [1] - 2637:22
**easy** [1] - 2647:15
**effect** [1] - 2690:5
**effort** [2] - 2656:7, 2669:2
**efforts** [1] - 2699:13
**either** [4] - 2655:14, 2683:7,
2683:17, 2687:22
**election** [1] - 2645:1
**element** [5] - 2654:8, 2654:11,
2654:13, 2662:10, 2676:21
**elements** [3] - 2690:4, 2690:9,
2693:15
**Eleventh** [1] - 2642:1
**elicited** [1] - 2640:15
**eliciting** [1] - 2640:3
**email** [1] - 2701:18
**Email** [8] - 2637:16, 2637:16,
2637:19, 2637:24, 2637:25,

2637:25, 2638:4, 2638:5
**emailed** [2] - 2651:2, 2705:5
**emarcus@zuckerman.com** [1]
- 2638:5
**emphasize** [2] - 2658:20,
2664:7
**employee** [2] - 2659:21, 2683:1
**empower** [1] - 2705:25
**encompassed** [1] - 2690:17
**encourage** [2] - 2654:9,
2688:13
**end** [4] - 2645:5, 2646:22,
2704:20, 2708:1
**ends** [1] - 2700:25
**enforcement** [6] - 2666:2,
2666:11, 2693:16, 2694:4,
2696:13
**engage** [2] - 2647:12, 2666:23
**engaged** [1] - 2666:10
**entire** [1] - 2670:25
**entirely** [2] - 2648:23, 2664:18
**entities** [1] - 2675:14
**enumerated** [4] - 2677:3,
2698:14, 2703:19, 2703:21
**essential** [2] - 2642:21, 2681:15
**essentially** [6] - 2639:22,
2670:19, 2678:13, 2691:4,
2693:25, 2697:1
**established** [2] - 2641:23,
2648:18
**etcetera** [2] - 2676:9, 2676:10
**ethical** [5] - 2659:12, 2659:18,
2659:20, 2659:23, 2660:4
**ethics** [1] - 2660:3
**event** [1] - 2643:12
**events** [3] - 2642:23, 2643:8,
2654:2
**evidence** [31] - 2641:20,
2644:8, 2644:10, 2646:15,
2646:19, 2653:6, 2653:25,
2673:3, 2673:4, 2673:6,
2677:11, 2678:8, 2678:12,
2679:6, 2680:10, 2681:1,
2687:3, 2687:6, 2687:13,
2688:22, 2689:1, 2689:6,
2690:18, 2690:19, 2692:4,
2692:15, 2702:12, 2707:24,
2708:13, 2708:15, 2708:25
**Evidence** [1] - 2640:3
**eviscerate** [1] - 2670:14
**exact** [1] - 2669:2
**exactly** [4] - 2644:9, 2697:3,
2697:22, 2700:5
**examination** [1] - 2643:23
**examine** [1] - 2642:16
**example** [7] - 2643:4, 2647:4,
2647:19, 2656:6, 2669:18,
2678:25
**examples** [2] - 2682:23,
2682:24

**except** [1] - 2702:14
**exchange** [1] - 2686:6
**exclusive** [1] - 2650:3
**execution** [1] - 2651:14
**executive** [1] - 2659:21
**Exhibit** [3] - 2675:16, 2675:17,
2697:25
**exhibits** [1] - 2708:24
**existence** [1] - 2656:21
**existing** [1] - 2690:6
**exists** [3] - 2672:2, 2693:17,
2693:20
**expected** [1] - 2680:10
**expires** [1] - 2707:1
**explain** [2] - 2662:13, 2679:19
**explaining** [1] - 2685:11
**express** [1] - 2642:4
**expressed** [1] - 2689:18
**expressly** [1] - 2669:16
**extensive** [1] - 2683:2
**extensively** [1] - 2672:24
**extent** [2] - 2672:18, 2673:14,
2696:12
**extra** [1] - 2645:15
**eyes** [1] - 2671:3
**Ezra** [1] - 2638:1

### F

**F.2d** [1] - 2642:1
**F.3d** [1] - 2641:11
**F.R.D** [1] - 2641:21
**face** [5] - 2660:5, 2681:10,
2687:25, 2692:6, 2692:8
**facilitated** [1] - 2648:22
**fact** [48] - 2640:15, 2643:3,
2643:12, 2643:15, 2646:20,
2646:22, 2647:3, 2648:24,
2649:9, 2650:14, 2650:24,
2651:1, 2655:22, 2656:16,
2657:16, 2657:23, 2658:9,
2658:14, 2658:17, 2658:20,
2658:23, 2661:8, 2661:14,
2661:18, 2661:23, 2661:24,
2661:25, 2663:13, 2667:14,
2670:4, 2670:5, 2670:21,
2676:15, 2676:21, 2683:25,
2685:7, 2685:8, 2685:10,
2694:22, 2695:25, 2697:5,
2703:8, 2703:21, 2705:11,
2706:3, 2707:25
**Fact** [2] - 2648:21, 2652:16
**factor** [2] - 2688:24, 2689:3
**facts** [37] - 2643:1, 2643:13,
2643:25, 2646:23, 2648:1,
2648:17, 2659:21, 2660:8,
2660:13, 2660:17, 2661:10,
2662:4, 2662:10, 2666:10,
2668:15, 2669:20, 2671:18,
2671:20, 2672:9, 2674:11,

2676:6, 2677:2, 2680:22,
2680:25, 2682:19, 2682:21,
2684:19, 2684:22, 2687:15,
2692:2, 2692:16, 2693:17,
2693:19, 2693:20, 2697:9
  **factual** [2] - 2650:4, 2652:6
  **failed** [1] - 2646:21
  **failing** [1] - 2701:4
  **failure** [1] - 2671:20
  **fair** [5] - 2665:15, 2665:16,
2665:17, 2665:20, 2677:7
  **fall** [2] - 2651:7, 2679:2
  **falls** [3] - 2649:3, 2676:11,
2690:25
  **false** [53] - 2645:7, 2646:3,
2648:2, 2648:6, 2648:12,
2648:14, 2652:11, 2652:12,
2656:17, 2656:23, 2656:25,
2657:1, 2661:6, 2661:13,
2662:8, 2662:9, 2662:21,
2662:25, 2663:4, 2663:7,
2663:9, 2667:21, 2667:25,
2668:19, 2669:5, 2670:22,
2671:16, 2671:19, 2671:22,
2678:19, 2679:2, 2681:10,
2681:13, 2681:25, 2682:2,
2682:7, 2682:15, 2682:17,
2682:21, 2682:22, 2683:2,
2683:5, 2683:6, 2683:7,
2683:10, 2683:17, 2683:23,
2693:19, 2696:1, 2698:18,
2698:20
  **falsehood** [1] - 2648:15
  **falsely** [4] - 2662:13, 2679:17,
2680:22, 2680:25
  **falsification** [2] - 2682:25,
2696:18
  **falsified** [2] - 2661:25, 2664:3
  **falsify** [3] - 2661:9, 2671:5,
2682:20
  **familiar** [1] - 2672:23
  **far** [4] - 2649:23, 2664:21,
2675:3, 2678:20
  **FARA** [24] - 2647:4, 2647:22,
2652:13, 2657:23, 2658:24,
2658:25, 2660:12, 2663:19,
2666:24, 2667:5, 2668:24,
2669:5, 2672:17, 2673:1,
2673:9, 2687:4, 2694:5,
2695:12, 2697:3, 2697:5,
2697:23, 2701:14, 2706:23,
2707:6
  **February** [2] - 2677:17, 2686:9
  **Federal** [2] - 2640:2, 2708:10
  **federal** [1] - 2644:25
  **fell** [1] - 2649:4
  **Fernando** [2] - 2637:12, 2639:7
  **fernando.campoamor** [1] -
2637:16
  **fernando.campoamor-**

sanchez@usdoj.gov [1] -
2637:16
  **few** [5] - 2639:15, 2654:15,
2674:17, 2689:14, 2704:19
  **file** [7] - 2673:9, 2699:23,
2700:1, 2705:22, 2706:14,
2706:25, 2707:1
  **filed** [2] - 2646:6, 2662:3
  **filings** [1] - 2668:24
  **filled** [1] - 2685:18
  **filtered** [1] - 2699:8
  **finally** [1] - 2686:11
  **firm** [11] - 2650:21, 2651:8,
2652:22, 2675:9, 2675:23,
2676:9, 2677:21, 2688:15,
2703:13, 2704:8, 2704:25
  **firm's** [6] - 2649:1, 2649:18,
2650:8, 2651:15, 2652:2, 2698:2
  **first** [18] - 2641:16, 2644:7,
2650:20, 2651:3, 2652:21,
2653:17, 2655:6, 2661:21,
2662:24, 2664:15, 2665:5,
2676:7, 2686:8, 2696:17,
2698:13, 2699:19, 2703:7
  **five** [5] - 2656:1, 2657:11,
2701:2, 2701:4, 2706:9
  **five-year** [1] - 2706:9
  **flip** [1] - 2652:12
  **flowed** [2] - 2694:5, 2694:9
  **flowing** [1] - 2694:5
  **flows** [1] - 2699:11
  **focus** [1] - 2664:6
  **focused** [1] - 2661:17
  **follow** [3] - 2686:10, 2698:13,
2698:16
  **follow-up** [3] - 2686:10,
2698:13, 2698:16
  **following** [3] - 2675:13,
2703:15, 2705:23
  **Footnote** [2] - 2694:3, 2694:7
  **footnote** [3] - 2683:9, 2693:3,
2693:4
  **FOR** [2] - 2637:1, 2637:13
  **forbids** [2] - 2665:18, 2665:20
  **force** [2] - 2701:22, 2705:17
  **foregoing** [1] - 2710:6
  **foreground** [2] - 2660:14,
2660:15
  **foreign** [3] - 2705:22, 2706:25,
2707:2
  **forgot** [1] - 2688:18
  **form** [10] - 2647:22, 2657:17,
2665:19, 2668:9, 2685:14,
2685:15, 2685:18, 2687:25,
2694:9, 2695:2
  **formality** [1] - 2666:23
  **forms** [2] - 2669:19, 2700:4
  **formulation** [1] - 2645:6
  **forth** [2] - 2665:21, 2666:21
  **four** [2] - 2641:1, 2661:1

  **fourth** [1] - 2637:14
  **fourth** [2] - 2661:3, 2662:19
  **frame** [1] - 2643:2
  **Friedman's** [1] - 2644:13
  **FTI** [5] - 2648:22, 2651:14,
2652:20, 2652:25, 2699:24
  **full** [1] - 2710:7
  **fully** [1] - 2662:18
  **funded** [1] - 2656:7
  **furtherance** [6] - 2656:23,
2657:5, 2663:8, 2670:23,
2681:11, 2698:22
  **furthered** [1] - 2649:7

## G

  **GASTON** [25] - 2693:9,
2693:23, 2694:17, 2694:19,
2695:6, 2696:6, 2696:16,
2697:17, 2698:9, 2698:19,
2698:23, 2698:25, 2699:10,
2699:17, 2699:21, 2700:22,
2701:1, 2701:13, 2701:25,
2702:19, 2702:22, 2703:1,
2703:6, 2704:5, 2704:13
  **Gaston** [2] - 2637:13, 2639:7
  **general** [2] - 2654:8, 2654:9
  **generally** [1] - 2645:18
  **generate** [1] - 2658:15
  **generated** [1] - 2670:13
  **gist** [1] - 2679:25
  **given** [10] - 2640:10, 2640:14,
2641:15, 2642:3, 2644:19,
2644:22, 2647:14, 2650:13,
2663:21, 2692:25
  **gloss** [1] - 2645:15
  **govern** [1] - 2684:13
  **government** [39] - 2643:18,
2643:20, 2645:2, 2645:24,
2646:14, 2647:1, 2647:8,
2647:16, 2648:7, 2648:8,
2648:25, 2651:14, 2651:22,
2653:18, 2654:19, 2658:14,
2660:10, 2661:16, 2661:21,
2662:25, 2664:8, 2671:24,
2673:10, 2675:10, 2675:12,
2676:9, 2676:12, 2676:20,
2680:1, 2690:17, 2693:24,
2698:11, 2699:4, 2700:12,
2702:2, 2702:24, 2703:16,
2708:23
  **Government** [1] - 2675:17
  **Government's** [2] - 2675:16,
2697:25
  **government's** [9] - 2641:8,
2653:22, 2653:23, 2670:18,
2671:3, 2674:16, 2687:2,
2705:13, 2707:16
  **grand** [2] - 2676:19, 2676:22
  **granted** [1] - 2639:23

2718

**great** [2] - 2687:16, 2688:6
**Gregory** [2] - 2637:6, 2639:2
**ground** [1] - 2683:11
**GSA** [1] - 2660:2
**guess** [4] - 2672:8, 2693:11, 2699:1, 2701:7
**guide** [1] - 2645:20
**guilt** [1] - 2642:22
**guilty** [1] - 2648:10
**Gulland** [1] - 2637:13
**guy** [1] - 2685:18

## H

**hand** [2] - 2663:10
**Harris** [1] - 2641:11
**Harvard** [2] - 2650:1, 2650:19
**Hawker** [5] - 2650:1, 2690:22, 2690:24, 2691:5, 2691:17
**head** [1] - 2695:10
**headed** [4] - 2640:11, 2645:10, 2646:11, 2669:15
**heads** [1] - 2658:13
**hear** [5] - 2639:15, 2639:19, 2653:12, 2654:24, 2702:18
**heard** [4] - 2644:10, 2646:15, 2677:15, 2677:23
**hearing** [1] - 2641:15
**Heather** [1] - 2700:5
**heels** [1] - 2650:19
**heightened** [2] - 2644:20, 2702:5
**HELD** [1] - 2637:9
**helpful** [2] - 2640:19, 2643:21
**hereby** [1] - 2710:5
**Herszenhorn** [4] - 2704:7, 2704:10, 2704:20, 2704:22
**hide** [1] - 2679:22
**high** [1] - 2643:23
**highlighted** [1] - 2690:15
**himself** [1] - 2640:15
**hinge** [1] - 2688:16
**hiring** [1] - 2648:22
**history** [2] - 2640:12, 2690:2
**hold** [1] - 2643:23
**holding** [4] - 2673:8, 2673:11, 2700:23, 2706:10
**holds** [1] - 2673:13
**homework** [1] - 2646:14
**Honor** [27] - 2639:1, 2639:6, 2639:10, 2653:15, 2653:17, 2654:6, 2672:23, 2674:16, 2691:25, 2693:23, 2694:10, 2694:17, 2696:6, 2696:16, 2697:17, 2698:9, 2698:25, 2699:10, 2699:21, 2701:13, 2702:2, 2702:22, 2703:1, 2703:11, 2704:19, 2707:19, 2709:5
**HONORABLE** [1] - 2637:9

**Hubbell** [3] - 2682:24, 2683:2, 2683:19
**Hunt** [1] - 2700:5
**hypothetical** [3] - 2642:20, 2642:23, 2643:3
**hypotheticals** [2] - 2642:21, 2643:8

## I

**idea** [1] - 2692:15
**identified** [6] - 2650:2, 2654:19, 2654:20, 2660:18, 2662:8, 2662:9
**identify** [1] - 2660:8
**III** [1] - 2637:21
**immateriality** [1] - 2685:5
**impact** [1] - 2647:5
**imperative** [1] - 2663:18
**impetus** [1] - 2664:14
**implicit** [3] - 2657:13, 2661:2, 2671:6
**implicitly** [1] - 2657:9
**implying** [1] - 2662:14
**important** [12] - 2640:2, 2640:13, 2640:24, 2646:1, 2646:12, 2661:12, 2664:6, 2666:22, 2672:8, 2673:21, 2674:1, 2675:6
**impose** [4] - 2660:5, 2660:9, 2707:10, 2707:13
**imposed** [1] - 2707:4
**imposes** [1] - 2664:14
**IN** [1] - 2637:1
**inaccuracies** [1] - 2691:8
**include** [1] - 2704:6
**included** [1] - 2692:7
**includes** [1] - 2705:23
**including** [5] - 2642:14, 2677:2, 2691:13, 2691:14, 2703:19
**indeed** [1] - 2645:14
**indicate** [2] - 2642:19, 2644:11
**indicated** [1] - 2641:22
**indicating** [1] - 2656:4
**indication** [2] - 2659:20, 2659:24
**indictment** [9] - 2661:11, 2662:2, 2662:5, 2675:3, 2675:5, 2676:20, 2677:1, 2677:4, 2703:9
**individual** [3] - 2647:17, 2656:7, 2699:6
**individuals** [2] - 2643:23, 2675:14
**inform** [3] - 2651:25, 2691:2, 2691:18
**information** [21] - 2651:11, 2654:22, 2659:11, 2659:21, 2659:24, 2665:22, 2670:8, 2677:13, 2680:16, 2681:15, 2686:12, 2687:1, 2688:8,

2688:9, 2689:6, 2689:7, 2698:5, 2699:24, 2700:6, 2705:20
**informed** [2] - 2649:11, 2653:1
**informing** [1] - 2682:3
**initial** [1] - 2688:15
**initiation** [1] - 2687:9
**injunctive** [1] - 2705:25
**innocent** [1] - 2642:24
**inquire** [1] - 2654:10
**inquiries** [1] - 2688:1
**inquiry** [16] - 2658:9, 2658:10, 2658:11, 2658:13, 2658:24, 2660:7, 2660:10, 2681:5, 2686:25, 2694:4, 2694:8, 2696:13, 2697:13, 2699:2, 2699:18
**instance** [3] - 2647:15, 2701:17, 2703:19
**instances** [3] - 2640:8, 2642:16, 2642:17
**instincts** [1] - 2688:16
**instruction** [15] - 2644:17, 2644:19, 2645:7, 2645:14, 2645:23, 2653:10, 2661:22, 2673:12, 2674:8, 2678:22, 2684:12, 2684:13, 2685:12, 2691:19
**instructions** [12] - 2639:19, 2644:6, 2644:7, 2644:9, 2645:20, 2646:11, 2646:17, 2646:18, 2661:17, 2661:21, 2670:24, 2672:15
**insufficient** [2] - 2688:22, 2689:1
**intend** [2] - 2684:16, 2690:3
**intended** [1] - 2693:11
**intent** [2] - 2644:20, 2647:2
**intention** [2] - 2641:3, 2690:7
**interactions** [1] - 2643:24
**interest** [1] - 2665:17
**interested** [1] - 2688:9
**internal** [1] - 2688:14
**interpretive** [1] - 2706:12
**interrogatories** [1] - 2681:13
**interview** [6] - 2646:24, 2649:7, 2650:13, 2652:19, 2664:7, 2704:6
**interviews** [3] - 2652:23, 2658:19, 2704:9
**intrigued** [1] - 2669:1
**introduce** [2] - 2639:4, 2640:25
**investigation** [3] - 2660:3, 2666:11
**invoice** [1] - 2643:4
**involved** [1] - 2644:24
**irrespective** [1] - 2655:23
**irreversible** [1] - 2701:20
**issue** [21] - 2639:17, 2642:18, 2659:24, 2660:5, 2662:4, 2667:1, 2672:4, 2677:11,

2685:22, 2693:25, 2694:16, 2695:14, 2698:2, 2698:4, 2698:5, 2698:10, 2700:8, 2705:12, 2706:9, 2706:19
**issues** [3] - 2642:22, 2643:4, 2704:2
**iterations** [1] - 2651:20
**itself** [5] - 2647:5, 2653:4, 2675:6, 2685:10, 2693:14

## J

**JACKSON** [1] - 2637:9
**James** [1] - 2637:20
**JANICE** [1] - 2710:5
**Janice** [2] - 2638:7, 2710:13
**Jason** [2] - 2637:17, 2639:7
**jason.mccullough@usdoj. gov** [1] - 2637:19
**John** [3] - 2675:21, 2677:8, 2706:6
**Johnson** [1] - 2642:1
**Jonathan** [4] - 2690:22, 2690:24, 2691:5, 2691:17
**Jones** [1] - 2641:21
**journalist** [1] - 2650:11
**Judge** [3] - 2644:13, 2645:3, 2685:17
**JUDGE** [2] - 2637:9, 2637:10
**judge** [2] - 2641:23
**judicial** [2] - 2641:17, 2641:25
**June** [7] - 2650:20, 2652:22, 2681:3, 2686:11, 2692:25, 2696:24, 2703:12
**Junghans** [2] - 2638:1, 2639:12
**juror** [1] - 2687:14
**jurors** [1] - 2643:15
**jurors'** [1] - 2640:18
**JURY** [2] - 2637:4, 2637:8
**jury** [39] - 2639:18, 2642:7, 2643:21, 2644:6, 2644:7, 2644:9, 2645:19, 2645:23, 2646:10, 2646:17, 2646:18, 2647:11, 2648:9, 2648:16, 2650:5, 2650:14, 2652:7, 2653:9, 2653:10, 2654:2, 2661:22, 2662:1, 2662:10, 2670:24, 2674:8, 2676:15, 2676:19, 2676:21, 2676:22, 2677:4, 2684:17, 2685:12, 2690:16, 2696:17, 2696:19, 2697:11, 2698:17, 2704:2, 2708:24
**Justice** [5] - 2637:17, 2649:2, 2649:20, 2650:10, 2651:17

## K

**Kavanaugh** [1] - 2685:17
**Kavanaugh's** [1] - 2645:3

**keep** [2] - 2642:13, 2659:14
**key** [3] - 2661:12, 2663:11, 2706:12
**kind** [4] - 2652:12, 2668:2, 2681:20, 2699:19
**kinds** [1] - 2695:11
**kitchen** [1] - 2691:22
**knowing** [3] - 2687:17, 2688:8, 2689:6
**knowledge** [10] - 2640:7, 2643:13, 2643:25, 2650:7, 2684:14, 2684:15, 2684:17, 2687:1, 2688:3, 2689:11
**known** [4] - 2684:18, 2684:20, 2684:21, 2692:11
**knows** [2] - 2640:5, 2698:4

## L

**lack** [2] - 2643:16, 2659:10
**language** [1] - 2661:11
**largely** [1] - 2649:20
**larger** [1] - 2643:12
**Larry** [1] - 2701:18
**last** [3] - 2673:2, 2673:10, 2706:11
**law** [30] - 2639:25, 2641:14, 2642:14, 2645:18, 2648:13, 2648:17, 2648:19, 2650:12, 2657:25, 2658:16, 2664:9, 2665:17, 2665:20, 2666:2, 2666:11, 2672:10, 2676:9, 2676:17, 2677:21, 2687:22, 2690:6, 2693:16, 2694:1, 2694:3, 2694:4, 2695:23, 2696:8, 2696:12, 2702:4
**laws** [1] - 2645:1
**lawyer** [1] - 2699:8
**least** [8] - 2661:23, 2672:17, 2678:24, 2685:11, 2688:2, 2696:4, 2700:12, 2705:17
**leave** [5] - 2644:1, 2655:12, 2668:15, 2668:18, 2684:5
**leaving** [2] - 2662:14, 2668:18
**left** [2] - 2648:1, 2701:20
**legal** [17] - 2644:19, 2654:21, 2656:8, 2660:16, 2660:22, 2662:22, 2665:21, 2668:12, 2671:2, 2672:7, 2674:8, 2674:9, 2674:11, 2684:22, 2688:16, 2694:21
**legally** [3] - 2671:12, 2696:3, 2701:9
**legislative** [1] - 2690:2
**lengthy** [1] - 2643:5
**letter** [44] - 2650:20, 2652:22, 2658:1, 2677:17, 2677:18, 2677:19, 2678:3, 2678:17, 2679:2, 2680:7, 2680:10, 2680:11, 2680:21, 2681:2,

2681:8, 2681:25, 2684:4, 2686:9, 2686:10, 2686:11, 2692:7, 2692:20, 2692:21, 2693:1, 2696:15, 2696:21, 2696:23, 2696:24, 2696:25, 2697:1, 2697:10, 2697:25, 2698:1, 2698:13, 2698:15, 2698:16, 2699:19, 2700:3, 2701:8, 2703:13, 2705:13
**letters** [4] - 2647:24, 2664:8, 2688:5, 2688:12
**level** [1] - 2666:23
**Lewis** [1] - 2642:14
**liability** [1] - 2670:3
**lie** [1] - 2699:13
**lied** [1] - 2696:20
**lifted** [1] - 2645:14
**likely** [3] - 2643:11, 2644:6, 2708:15
**Limine** [1] - 2639:21
**limit** [2] - 2641:17, 2641:24
**limitations** [9] - 2678:22, 2679:3, 2681:18, 2683:16, 2696:14, 2700:24, 2706:8, 2706:19, 2707:3
**limited** [3] - 2644:23, 2669:13, 2680:16
**linchpin** [1] - 2693:12
**line** [4] - 2673:21, 2674:1, 2676:7, 2680:24
**lines** [2] - 2671:24, 2673:12
**list** [9] - 2640:8, 2648:6, 2674:15, 2676:6, 2690:12, 2690:14, 2703:19, 2703:21
**listed** [2] - 2662:2, 2700:1
**literal** [9] - 2645:21, 2668:4, 2670:15, 2670:19, 2671:14, 2671:23, 2672:1, 2695:9, 2703:3
**literally** [7] - 2646:5, 2646:8, 2651:18, 2656:14, 2691:2, 2691:7, 2696:15
**LLP** [2] - 2637:22, 2638:2
**lobbyist** [1] - 2675:1
**look** [9] - 2651:3, 2660:13, 2661:18, 2661:20, 2676:2, 2686:5, 2688:12, 2688:13, 2697:23
**looked** [3] - 2696:7, 2700:5, 2701:18
**looking** [3] - 2648:6, 2662:2, 2662:3
**lower** [1] - 2645:11
**lunch** [1] - 2708:22
**lying** [1] - 2666:3

## M

**Manafort** [4] - 2649:16, 2650:1, 2652:25, 2672:24
**management** [2] - 2641:17,

2641:25
  **mandates** [1] - 2706:24
  **manner** [1] - 2706:23
  **MARCUS** [118] - 2653:14,
2653:17, 2654:6, 2654:17,
2655:8, 2655:15, 2655:19,
2656:12, 2656:15, 2656:19,
2657:7, 2658:5, 2659:7,
2659:16, 2659:18, 2660:15,
2661:5, 2661:11, 2661:20,
2662:17, 2662:24, 2663:4,
2663:11, 2664:11, 2664:20,
2664:23, 2665:5, 2665:10,
2665:13, 2666:4, 2666:7,
2666:12, 2666:15, 2666:18,
2666:20, 2667:9, 2667:17,
2667:20, 2667:23, 2668:2,
2668:6, 2668:8, 2668:14,
2668:20, 2668:22, 2669:9,
2669:12, 2669:16, 2670:7,
2670:10, 2670:12, 2671:8,
2671:13, 2672:12, 2673:18,
2673:20, 2674:5, 2674:14,
2674:21, 2674:23, 2675:17,
2675:21, 2676:1, 2676:5,
2676:13, 2676:18, 2677:7,
2678:7, 2678:12, 2678:21,
2679:4, 2680:8, 2680:24,
2682:9, 2682:12, 2682:16,
2682:22, 2683:21, 2684:5,
2684:8, 2684:11, 2685:6,
2685:19, 2685:22, 2686:3,
2686:5, 2686:15, 2686:22,
2686:24, 2687:17, 2687:23,
2688:21, 2688:25, 2689:5,
2689:11, 2689:14, 2689:23,
2690:1, 2690:11, 2690:23,
2691:6, 2691:12, 2691:14,
2691:16, 2691:22, 2691:25,
2692:14, 2692:21, 2692:23,
2693:4, 2693:6, 2693:8,
2704:19, 2706:6, 2707:10,
2707:13, 2707:17, 2707:19
  **Marcus** [3] - 2638:1, 2639:12,
2703:7
  **marcus** [2] - 2702:4, 2704:18
  **material** [36] - 2655:22,
2657:16, 2660:17, 2661:8,
2661:10, 2661:14, 2661:18,
2661:23, 2661:25, 2662:3,
2662:10, 2663:13, 2665:22,
2666:10, 2667:14, 2670:3,
2670:4, 2676:6, 2676:21,
2676:23, 2677:1, 2682:18,
2682:21, 2683:25, 2685:3,
2685:8, 2686:16, 2687:20,
2689:7, 2690:24, 2692:2,
2697:9, 2698:5, 2704:23,
2705:10
  **materiality** [6] - 2645:17,

2645:18, 2681:6, 2685:2,
2698:8, 2705:7
  **matter** [7] - 2643:6, 2648:13,
2648:19, 2650:12, 2664:9,
2676:17, 2679:11
  **matters** [4] - 2639:15, 2640:19,
2676:19, 2703:1
  **McCullough** [2] - 2637:17,
2639:7
  **McGoff** [7] - 2672:22, 2673:8,
2700:7, 2700:22, 2700:23,
2706:6
  **MD** [1] - 2637:23
  **mean** [14] - 2647:17, 2649:14,
2664:17, 2665:5, 2669:8,
2681:5, 2682:23, 2682:24,
2686:6, 2687:23, 2694:12,
2694:13, 2700:13, 2702:20
  **meaningful** [1] - 2672:3
  **means** [5] - 2661:8, 2662:9,
2677:4, 2682:17, 2684:17
  **meant** [2] - 2642:4, 2658:25
  **media** [11] - 2650:2, 2652:22,
2652:23, 2663:20, 2674:24,
2680:14, 2680:15, 2687:8,
2704:9, 2704:25
  **meet** [2] - 2681:25, 2690:9
  **meeting** [29] - 2647:23,
2650:19, 2677:16, 2677:24,
2677:25, 2678:2, 2678:4,
2678:6, 2678:11, 2678:14,
2678:16, 2678:20, 2679:1,
2679:20, 2679:24, 2680:5,
2680:20, 2681:25, 2696:15,
2696:21, 2696:25, 2697:7,
2697:9, 2698:16, 2698:18,
2698:20, 2698:21, 2701:21
  **melded** [1] - 2685:1
  **mentions** [3] - 2692:24,
2692:25
  **Mercury** [1] - 2675:1
  **merely** [2] - 2641:20, 2643:21
  **message** [1] - 2701:21
  **met** [3] - 2645:11, 2649:25,
2690:21
  **Michelson** [1] - 2641:12
  **might** [4] - 2640:11, 2651:20,
2673:6, 2673:25
  **million** [1] - 2647:4
  **mind** [3] - 2642:13, 2647:8,
2660:24
  **Ministry** [4] - 2649:2, 2649:20,
2650:9, 2651:17
  **misconduct** [1] - 2642:17
  **mislead** [1] - 2699:13
  **misleading** [8] - 2648:2,
2654:23, 2655:4, 2667:25,
2669:21, 2670:14, 2671:19,
2703:17
  **missed** [2] - 2700:20, 2700:21

  **misstatements** [1] - 2682:1
  **Molly** [2] - 2637:13, 2639:7
  **molly.gaston@usdoj.gov** [1] -
2637:16
  **moment** [5] - 2642:24, 2684:8,
2694:25, 2695:22, 2702:22
  **Moore** [9] - 2644:13, 2645:3,
2685:1, 2685:2, 2685:9,
2685:12, 2685:18, 2685:20,
2694:8
  **morning** [16] - 2639:6, 2639:9,
2639:10, 2639:14, 2639:15,
2639:22, 2644:4, 2645:22,
2653:15, 2653:16, 2662:3,
2674:16, 2683:14, 2693:9,
2693:10, 2695:17
  **Morning** [1] - 2637:5
  **MORNING** [1] - 2637:8
  **most** [1] - 2646:12
  **motion** [13] - 2639:16, 2639:20,
2641:8, 2654:7, 2654:8, 2654:9,
2654:11, 2654:12, 2669:4,
2681:21, 2693:13, 2708:6
  **Motion** [1] - 2639:21
  **motions** [1] - 2708:2
  **MOTIONS** [1] - 2637:4
  **move** [2] - 2683:11, 2708:23
  **moved** [2] - 2653:25, 2708:25
  **MR** [111] - 2639:6, 2639:10,
2655:8, 2659:16, 2659:18,
2660:15, 2661:5, 2661:11,
2661:20, 2662:17, 2662:24,
2663:4, 2663:11, 2664:11,
2664:20, 2664:23, 2665:5,
2665:10, 2665:13, 2666:4,
2666:7, 2666:12, 2666:15,
2666:18, 2666:20, 2667:9,
2667:17, 2667:20, 2667:23,
2668:2, 2668:6, 2668:8,
2668:14, 2668:20, 2668:22,
2669:9, 2669:12, 2669:16,
2670:7, 2670:10, 2670:12,
2671:8, 2671:13, 2672:12,
2673:18, 2673:20, 2674:5,
2674:14, 2674:21, 2674:23,
2675:17, 2675:21, 2676:1,
2676:5, 2676:13, 2676:18,
2677:7, 2678:7, 2678:12,
2678:21, 2679:4, 2680:8,
2680:24, 2682:9, 2682:12,
2682:16, 2682:22, 2683:21,
2684:5, 2684:8, 2684:11,
2685:6, 2685:19, 2685:22,
2686:3, 2686:5, 2686:15,
2686:22, 2686:24, 2687:17,
2687:23, 2688:21, 2688:25,
2689:5, 2689:11, 2689:14,
2689:23, 2690:1, 2690:11,
2690:23, 2691:6, 2691:12,
2691:14, 2691:16, 2691:22,

2691:25, 2692:14, 2692:21,
2692:23, 2693:4, 2693:6,
2693:8, 2704:19, 2706:6,
2707:10, 2707:13, 2707:17,
2707:19, 2708:9, 2708:12,
2709:5
  **MS** [37] - 2653:14, 2653:17,
2654:6, 2654:17, 2655:15,
2655:19, 2656:12, 2656:15,
2656:19, 2657:7, 2658:5,
2659:7, 2693:9, 2693:23,
2694:17, 2694:19, 2695:6,
2696:6, 2696:16, 2697:17,
2698:9, 2698:19, 2698:23,
2698:25, 2699:10, 2699:17,
2699:21, 2700:22, 2701:1,
2701:13, 2701:25, 2702:19,
2702:22, 2703:1, 2703:6,
2704:5, 2704:13
  **multiple** [3] - 2643:17, 2649:17,
2659:5
  **murky** [1] - 2689:20
  **Murphy** [2] - 2637:20, 2639:11
  **MURPHY** [1] - 2639:10
  **must** [12] - 2648:9, 2659:21,
2663:12, 2665:20, 2670:3,
2670:7, 2678:25, 2684:17,
2685:10, 2685:15, 2705:22,
2706:25

## N

  **name** [1] - 2647:17
  **naming** [2] - 2661:1, 2704:22
  **narrow** [1] - 2669:2
  **nature** [1] - 2689:4
  **necessarily** [1] - 2694:13
  **necessary** [8] - 2646:4,
2654:23, 2655:3, 2669:20,
2670:5, 2670:13, 2671:18,
2708:17
  **need** [10] - 2643:17, 2646:7,
2654:19, 2676:25, 2683:5,
2696:10, 2699:5, 2701:10,
2702:18, 2709:4
  **needle** [1] - 2671:4
  **never** [2] - 2682:5, 2700:21
  **New** [3] - 2664:4, 2692:3,
2692:5
  **new** [1] - 2665:1
  **next** [4] - 2675:21, 2694:20,
2698:25, 2701:25
  **Ninth** [1] - 2694:1
  **nobody** [1] - 2681:12
  **none** [1] - 2648:12
  **nonstatutory** [1] - 2663:15
  **normal** [1] - 2687:23
  **note** [9] - 2640:2, 2642:14,
2643:14, 2661:12, 2679:13,
2689:19, 2696:23, 2703:8,

2704:5
  **noted** [1] - 2697:17
  **notes** [1] - 2710:7
  **nothing** [2] - 2664:1, 2672:2
  **notice** [12] - 2641:3, 2642:12,
2665:15, 2665:16, 2665:17,
2665:20, 2685:16, 2697:3,
2697:21, 2697:22, 2698:10,
2698:12
  **noticed** [1] - 2689:17
  **noting** [2] - 2668:22, 2692:3
  **notion** [3] - 2664:18, 2664:23,
2670:19
  **notwithstanding** [2] - 2670:21,
2692:12
  **Number** [11] - 2639:21,
2648:21, 2650:15, 2652:16,
2652:24, 2655:16, 2674:19,
2674:20, 2674:21, 2703:8
  **number** [3] - 2641:6, 2641:24,
2642:10
  **numbers** [1] - 2649:25
  **NW** [5] - 2637:14, 2637:18,
2638:2, 2638:8, 2710:14

## O

  **objected** [1] - 2673:12
  **objection** [1] - 2704:23
  **objections** [1] - 2702:16
  **obligated** [6] - 2660:18,
2697:20, 2699:12, 2699:22,
2700:6, 2701:6
  **obligation** [16] - 2658:24,
2659:3, 2659:14, 2663:19,
2665:23, 2677:20, 2680:6,
2680:9, 2681:21, 2697:6,
2700:21, 2706:14, 2706:16,
2706:21, 2707:1, 2707:4
  **obviously** [2] - 2671:9, 2700:8
  **occupation** [1] - 2640:18
  **October** [16] - 2650:18,
2674:24, 2677:16, 2692:7,
2692:21, 2693:1, 2696:18,
2696:21, 2696:22, 2696:23,
2697:1, 2697:7, 2697:10,
2698:16, 2704:1
  **OF** [4] - 2637:1, 2637:8,
2637:14, 2710:2
  **off-the-record** [1] - 2702:24
  **offense** [2] - 2668:3, 2706:19
  **offenses** [3] - 2689:17, 2690:4,
2690:5
  **offer** [3] - 2640:12, 2678:4,
2678:7
  **offered** [2] - 2651:3, 2651:4
  **offering** [1] - 2695:13
  **Office** [2] - 2637:13, 2699:6
  **office** [4] - 2650:18, 2673:17,
2675:5, 2703:10

  **OFFICIAL** [1] - 2710:2
  **official** [2] - 2658:14, 2666:21
  **Official** [2] - 2638:7, 2710:13
  **officials** [2] - 2660:16, 2660:21
  **Omission** [1] - 2650:15
  **omission** [27] - 2646:24,
2649:6, 2649:7, 2651:10,
2652:9, 2653:4, 2656:16,
2656:24, 2657:2, 2657:4,
2657:5, 2661:4, 2662:9,
2662:20, 2667:24, 2667:25,
2670:2, 2674:20, 2674:21,
2681:14, 2683:17, 2685:7,
2690:23, 2690:24, 2695:15,
2695:18, 2696:18
  **omissions** [17] - 2647:10,
2648:8, 2648:21, 2652:10,
2654:18, 2658:20, 2678:19,
2681:1, 2681:9, 2682:10,
2682:11, 2682:18, 2683:7,
2690:14, 2693:13, 2695:11,
2697:2
  **omit** [8] - 2648:1, 2655:3,
2655:22, 2668:1, 2668:25,
2693:19, 2697:8, 2698:5
  **omitted** [12] - 2676:2, 2676:6,
2676:7, 2676:15, 2676:23,
2677:14, 2678:2, 2680:22,
2684:20, 2694:22, 2704:6,
2705:10
  **omitting** [6] - 2661:3, 2680:25,
2684:23, 2695:3, 2695:12,
2696:1
  **once** [3] - 2641:18, 2647:24,
2694:15
  **Once** [1] - 2659:13
  **one** [40] - 2640:3, 2643:2,
2644:22, 2646:22, 2647:15,
2648:10, 2651:21, 2652:7,
2653:19, 2655:14, 2657:20,
2659:20, 2660:8, 2661:23,
2662:11, 2665:14, 2670:10,
2671:8, 2672:13, 2672:24,
2677:3, 2677:8, 2677:10,
2678:19, 2678:24, 2683:4,
2683:5, 2683:6, 2683:7,
2683:17, 2689:3, 2689:15,
2690:13, 2690:15, 2691:25,
2696:18, 2697:7, 2700:10,
2702:15, 2702:22
  **ones** [2] - 2657:14, 2662:4
  **ongoing** [4] - 2651:14, 2679:21,
2681:4, 2684:3
  **opinion** [19] - 2640:4, 2640:6,
2640:7, 2642:21, 2645:3,
2657:19, 2658:7, 2659:5,
2659:8, 2659:20, 2660:3,
2683:8, 2683:9, 2689:16,
2693:24, 2693:25, 2694:11,
2697:18, 2706:17

**opinions** [2] - 2667:6, 2672:24
**opportunity** [2] - 2642:4, 2654:4
**opposed** [4] - 2643:21, 2646:1, 2670:20, 2694:25
**opposing** [1] - 2642:15
**opposite** [1] - 2687:3
**opposition** [1] - 2641:9
**orally** [2] - 2647:22, 2680:20
**order** [11] - 2642:13, 2648:10, 2665:19, 2666:12, 2674:12, 2684:13, 2685:6, 2688:6, 2697:7, 2699:13, 2706:13
**otherwise** [2] - 2671:1, 2684:22
**outside** [1] - 2649:4
**overall** [1] - 2698:22
**overlap** [1] - 2644:24
**overturned** [1] - 2681:7
**owe** [1] - 2686:12
**own** [4] - 2640:17, 2654:10, 2664:8, 2688:15

## P

**p.m** [1] - 2708:23
**page** [4] - 2641:9, 2641:10, 2675:21, 2706:22
**pages** [1] - 2641:11
**pain** [1] - 2688:10
**pains** [1] - 2687:16
**paper** [2] - 2683:2, 2699:6
**paragraph** [1] - 2703:9
**Parfitt** [1] - 2652:20
**part** [10] - 2639:23, 2640:17, 2651:9, 2652:11, 2655:2, 2670:2, 2679:21, 2682:4, 2701:20
**particular** [4] - 2646:2, 2654:17, 2659:21, 2667:1
**particularly** [3] - 2658:18, 2669:1, 2685:1
**parties** [3] - 2639:5, 2640:1, 2641:6
**party** [3] - 2642:15, 2686:7, 2686:8
**passed** [1] - 2679:13
**Paul** [1] - 2649:16
**Paula** [1] - 2638:1
**pause** [1] - 2691:24
**payer** [2] - 2686:7, 2686:9
**paying** [1] - 2643:15
**payment** [2] - 2699:24, 2699:25
**penalties** [1] - 2688:10
**pending** [2] - 2639:20, 2678:13
**Pennsylvania** [1] - 2637:18
**people** [15] - 2645:8, 2656:2, 2656:3, 2656:10, 2656:11, 2661:1, 2666:23, 2667:5, 2689:21, 2703:15, 2703:19, 2707:6, 2707:15, 2708:17

**perfect** [1] - 2671:2
**perfectly** [1] - 2671:5
**perhaps** [1] - 2702:14
**period** [12] - 2642:18, 2651:5, 2678:25, 2679:6, 2679:9, 2679:20, 2681:11, 2683:5, 2683:18, 2683:24, 2695:13, 2706:10
**permit** [1] - 2640:13
**person** [2] - 2640:5, 2652:18
**personal** [1] - 2643:25
**perspective** [1] - 2688:2
**persuade** [2] - 2677:22, 2699:4
**persuasive** [1] - 2670:18
**pertinent** [2] - 2660:9, 2672:16
**phantom** [1] - 2683:1
**piece** [1] - 2689:6
**pin** [1] - 2695:10
**Pinchuk** [1] - 2699:25
**Pinchuk's** [1] - 2703:20
**pjunghans@zuckerman.com** [1] - 2638:4
**place** [3] - 2641:3, 2664:15, 2693:22
**plain** [1] - 2655:7
**plainly** [3] - 2650:19, 2651:22, 2652:21
**Plaintiff** [2] - 2637:4, 2637:12
**plan** [5] - 2640:12, 2649:17, 2650:6, 2650:10, 2682:4
**planed** [1] - 2651:20
**planning** [1] - 2678:5
**plans** [1] - 2649:23
**plays** [2] - 2665:24, 2666:20
**pleading** [3] - 2669:2, 2670:18
**pleadings** [4] - 2639:25, 2646:16, 2669:25
**podium** [1] - 2639:4
**point** [46] - 2640:14, 2643:12, 2647:20, 2648:4, 2651:19, 2653:11, 2656:16, 2657:8, 2657:9, 2657:13, 2659:23, 2662:12, 2665:14, 2669:22, 2670:10, 2672:13, 2674:10, 2675:7, 2677:8, 2677:11, 2678:23, 2683:16, 2685:23, 2686:24, 2687:6, 2687:7, 2690:13, 2690:15, 2690:21, 2691:25, 2696:3, 2696:14, 2697:19, 2699:15, 2699:21, 2700:3, 2700:20, 2701:25, 2702:18, 2704:20, 2706:5, 2706:6, 2708:16, 2708:17, 2708:19
**Point** [1] - 2668:17
**pointed** [1] - 2645:2
**points** [3] - 2641:8, 2674:9, 2689:14
**politely** [1] - 2647:19
**Pomponio** [1] - 2644:12

**posed** [1] - 2652:21
**position** [11] - 2656:8, 2665:2, 2665:4, 2668:12, 2668:17, 2668:20, 2671:9, 2683:22, 2695:21
**possibility** [2] - 2672:18, 2681:19
**possible** [3] - 2658:12, 2658:24, 2663:19
**possibly** [4] - 2641:4, 2644:8, 2671:23, 2700:13
**post** [2] - 2679:1, 2681:25
**post-meeting** [2] - 2679:1, 2681:25
**postal** [1] - 2685:18
**posture** [1] - 2677:21
**powerful** [1] - 2687:3
**practitioner** [1] - 2701:14
**Pratt** [1] - 2637:22
**pre** [3] - 2643:9, 2651:4, 2651:6
**pre-cleared** [1] - 2643:9
**pre-delivered** [1] - 2651:4
**pre-report** [1] - 2651:6
**preceded** [1] - 2678:3
**predicated** [2] - 2673:24
**preexisting** [2] - 2667:14, 2670:8
**prepared** [3] - 2653:12, 2673:13, 2683:12
**prepublication** [4] - 2650:3, 2651:5, 2663:23, 2663:24
**preselected** [1] - 2650:10
**present** [4] - 2639:13, 2640:22, 2643:4, 2654:2
**presented** [2] - 2662:6, 2676:19
**presenting** [1] - 2653:20
**preserving** [1] - 2654:13
**press** [1] - 2663:24
**presumed** [1] - 2642:24
**pretrial** [1] - 2661:16
**pretty** [3] - 2649:23, 2688:1, 2708:19
**preview** [1] - 2644:5
**previous** [1] - 2697:2
**principal** [2] - 2705:22, 2707:2
**principles** [1] - 2659:20
**problem** [10] - 2657:7, 2657:15, 2659:16, 2660:1, 2660:4, 2660:11, 2678:22, 2679:8, 2688:7, 2705:10
**problematical** [1] - 2658:19
**problems** [1] - 2659:9
**Procedure** [1] - 2708:11
**proceed** [2] - 2641:2, 2642:10
**proceedings** [1] - 2710:8
**prohibiting** [1] - 2643:1
**proof** [1] - 2688:7
**proposed** [3] - 2646:16, 2646:18, 2661:17

**proposition** [2] - 2670:2, 2702:4
**prosecute** [6] - 2661:6, 2663:1, 2663:2, 2663:12, 2671:24, 2699:7
**prosecuted** [3] - 2682:14, 2682:16, 2701:4
**prove** [3] - 2646:4, 2663:7, 2676:7
**proved** [1] - 2677:5
**provide** [6] - 2641:20, 2663:15, 2690:18, 2699:23, 2699:24, 2700:6
**provided** [6] - 2640:1, 2644:15, 2698:13, 2703:10, 2703:14, 2703:21
**providing** [3] - 2663:24, 2703:24, 2703:25
**provisions** [1] - 2658:25
**public** [6] - 2650:11, 2663:22, 2688:17, 2688:19, 2689:4, 2692:9
**publication** [1] - 2654:1
**publicly** [5] - 2653:1, 2663:25, 2664:1, 2687:11, 2687:12
**pull** [3] - 2671:9, 2675:16, 2706:7
**pulling** [1] - 2671:2
**purported** [2] - 2680:11, 2681:2
**purpose** [5] - 2647:1, 2663:23, 2680:2, 2682:1, 2689:4
**purposes** [6] - 2639:23, 2644:25, 2658:20, 2672:8, 2683:16, 2697:16
**pursuant** [3] - 2640:2, 2708:5, 2708:10
**push** [1] - 2689:3
**put** [10] - 2660:19, 2669:25, 2677:8, 2681:9, 2683:9, 2704:15, 2708:17, 2708:18, 2708:19
**Put** [1] - 2680:1
**puts** [5] - 2680:2, 2680:3, 2680:21, 2697:20, 2697:22
**putting** [2] - 2645:3, 2671:13

## Q

**quarrel** [1] - 2707:25
**quarter** [1] - 2662:20
**quarters** [3] - 2662:19, 2662:21, 2662:24
**question-based** [1] - 2673:23
**questioned** [2] - 2658:21, 2667:13
**questions** [46] - 2639:18, 2642:20, 2643:1, 2647:7, 2647:14, 2647:23, 2647:25, 2648:1, 2648:16, 2650:13, 2651:11, 2653:8, 2655:10,

2658:14, 2659:4, 2660:21, 2663:16, 2664:19, 2672:5, 2672:18, 2672:20, 2672:21, 2673:22, 2677:10, 2677:12, 2677:18, 2677:19, 2677:23, 2678:9, 2678:11, 2678:13, 2679:5, 2679:6, 2679:10, 2679:12, 2679:15, 2680:11, 2680:13, 2681:2, 2681:3, 2686:10, 2687:2, 2696:14, 2697:13, 2698:14
**quibble** [1] - 2664:25
**quite** [6] - 2642:15, 2643:16, 2674:7, 2686:17, 2690:2, 2692:19
**quotation** [1] - 2693:2
**quote** [2] - 2659:15, 2692:18
**quoted** [2] - 2659:8, 2659:19

## R

**raise** [3] - 2648:13, 2674:18, 2708:3
**raised** [5] - 2671:21, 2672:14, 2672:15, 2708:1
**rate** [1] - 2642:8
**rather** [1] - 2703:1
**Ratzlaf** [1] - 2644:12
**re** [1] - 2708:1
**re-raised** [1] - 2708:1
**read** [6] - 2644:12, 2646:15, 2658:7, 2683:13, 2692:12, 2708:4
**reading** [5] - 2659:19, 2662:5, 2662:6, 2698:1, 2706:16
**real** [1] - 2688:7
**reality** [1] - 2706:3
**realize** [2] - 2640:13, 2666:22
**really** [18] - 2649:4, 2652:17, 2658:13, 2659:9, 2660:12, 2671:3, 2671:4, 2671:16, 2672:3, 2673:22, 2680:17, 2680:18, 2680:24, 2687:4, 2706:1
**reason** [8] - 2646:13, 2647:9, 2665:14, 2665:15, 2673:20, 2689:9, 2690:23, 2691:6
**reasonable** [1] - 2687:14
**receipt** [1] - 2650:3
**received** [3] - 2649:17, 2649:23, 2674:25
**recently** [1] - 2644:14
**recitation** [1] - 2640:10
**recognition** [1] - 2640:22
**recognized** [1] - 2640:23
**recommended** [1] - 2648:22
**record** [15] - 2639:4, 2643:10, 2653:20, 2672:13, 2674:11, 2674:13, 2687:13, 2692:4, 2698:11, 2701:16, 2702:15,

2702:24, 2704:15, 2704:16, 2708:15
**reduce** [1] - 2672:2
**reference** [2] - 2691:4, 2703:7
**referenced** [1] - 2675:10
**refers** [1] - 2696:24
**reflects** [1] - 2701:16
**regard** [1] - 2643:24
**regarding** [1] - 2643:8
**regardless** [2] - 2661:8, 2684:13
**register** [28] - 2658:24, 2660:18, 2663:19, 2672:19, 2673:1, 2673:5, 2673:7, 2677:20, 2679:16, 2680:3, 2680:16, 2680:19, 2686:14, 2686:19, 2686:20, 2697:6, 2697:8, 2697:20, 2699:12, 2699:22, 2700:17, 2701:5, 2701:6, 2701:10, 2701:15, 2701:23, 2705:15, 2707:6
**Register** [1] - 2679:17
**registered** [1] - 2705:16
**registers** [1] - 2646:23
**registrant** [3] - 2657:23, 2686:18, 2695:13
**registration** [10] - 2647:5, 2647:22, 2660:19, 2673:9, 2679:23, 2700:1, 2700:19, 2705:22, 2706:15, 2706:21
**regulation** [7] - 2657:17, 2664:16, 2665:19, 2667:7, 2668:9, 2685:13, 2687:25
**regulations** [1] - 2669:19
**regulator** [1] - 2683:3
**reinvigorated** [1] - 2705:15
**relate** [1] - 2646:18
**related** [3] - 2686:6, 2690:5, 2698:2
**relations** [3] - 2688:17, 2688:19, 2689:4
**relationship** [1] - 2706:24
**relatively** [3] - 2640:5, 2643:6, 2650:18
**release** [12] - 2649:17, 2650:10, 2650:11, 2650:21, 2651:8, 2651:18, 2653:1, 2675:9, 2675:23, 2698:3, 2703:13, 2705:1
**released** [7] - 2649:2, 2649:19, 2650:9, 2651:17, 2652:4, 2675:11, 2675:13
**relevance** [1] - 2672:17
**relevant** [9] - 2642:17, 2649:10, 2649:13, 2651:23, 2664:5, 2664:13, 2675:7, 2679:6, 2705:18
**relied** [1] - 2658:16
**relies** [1] - 2679:5
**relying** [3] - 2647:16, 2670:1,

2689:21
**remaining** [1] - 2653:19
**render** [1] - 2693:19
**rendered** [4] - 2652:11, 2662:21, 2662:24, 2696:1
**renders** [3] - 2656:16, 2667:25, 2668:19
**repetition** [1] - 2640:18
**report** [4] - 2651:6, 2663:7, 2690:4, 2703:14
**Report** [26] - 2649:1, 2649:19, 2650:4, 2650:9, 2650:17, 2650:18, 2650:21, 2651:8, 2651:16, 2652:3, 2653:2, 2656:1, 2675:1, 2675:4, 2675:9, 2675:11, 2675:23, 2676:8, 2692:9, 2692:25, 2698:3, 2703:10, 2703:25, 2705:1, 2705:3, 2705:4
**Reporter** [3] - 2638:7, 2638:7, 2710:13
**REPORTER** [1] - 2710:2
**reporter** [2] - 2650:3, 2663:22
**reporters** [3] - 2657:11, 2657:12, 2691:10
**representation** [3] - 2657:10, 2657:13, 2661:2
**representative** [1] - 2691:3
**Representatives** [1] - 2676:11
**representatives** [5] - 2675:10, 2675:12, 2676:8, 2690:17, 2691:18
**reputation** [3] - 2640:3, 2640:7
**request** [5] - 2644:5, 2660:3, 2667:6, 2694:23, 2707:16
**requested** [2] - 2644:21, 2649:16
**require** [7] - 2657:22, 2666:25, 2669:17, 2669:19, 2673:6, 2695:12, 2701:15
**required** [18] - 2668:10, 2668:16, 2670:5, 2673:5, 2685:13, 2688:9, 2693:18, 2693:20, 2694:25, 2695:1, 2696:4, 2696:5, 2697:21, 2699:22, 2700:1, 2705:14, 2705:16, 2705:18
**requirement** [4] - 2670:8, 2684:22, 2686:25, 2696:9
**requirements** [1] - 2660:22
**requires** [6] - 2668:6, 2668:8, 2668:23, 2668:24, 2688:11, 2689:11
**reserve** [2] - 2708:6, 2708:10
**reserving** [1] - 2702:16
**resolving** [1] - 2706:18
**respect** [11] - 2644:4, 2644:11, 2645:17, 2645:21, 2648:12, 2648:21, 2651:13, 2656:6, 2692:3, 2702:14, 2702:16

**Respectfully** [1] - 2686:11
**respond** [7] - 2654:24, 2658:1, 2658:2, 2678:18, 2679:10, 2694:16, 2699:2
**responded** [2] - 2674:16, 2678:18
**responding** [2] - 2681:4, 2691:8
**responds** [1] - 2681:16
**response** [8] - 2651:7, 2663:25, 2676:1, 2689:15, 2697:23, 2703:12, 2704:17, 2705:8
**responses** [3] - 2663:16, 2663:17, 2678:9
**responsive** [21] - 2648:24, 2648:25, 2649:24, 2650:7, 2650:19, 2651:15, 2652:2, 2652:21, 2655:11, 2657:3, 2675:18, 2676:3, 2678:3, 2681:2, 2681:3, 2687:1, 2687:10, 2694:23, 2695:18, 2704:8, 2704:24
**responsiveness** [1] - 2705:6
**rest** [3] - 2653:19, 2662:15, 2708:25
**restoration** [1] - 2699:23
**restriction** [1] - 2642:20
**result** [3] - 2643:5, 2672:25, 2706:13
**retroactively** [1] - 2707:7
**return** [2] - 2639:16, 2708:23
**returning** [1] - 2690:14
**reveal** [1] - 2650:12
**revealed** [2] - 2694:25, 2695:1
**review** [1] - 2641:14
**reviewed** [2] - 2639:25, 2644:16
**revised** [1] - 2661:22
**revisit** [1] - 2641:4
**revisited** [1] - 2681:22
**righty** [1] - 2707:20
**RMR** [2] - 2638:7, 2710:13
**road** [1] - 2695:2
**rollout** [1] - 2650:2
**room** [1] - 2663:18
**Room** [1] - 2638:8, 2710:14
**roundabout** [1] - 2703:25
**rule** [10] - 2642:8, 2642:10, 2653:9, 2654:10, 2664:14, 2665:14, 2665:15, 2665:16, 2676:16, 2683:15
**Rule** [10] - 2639:16, 2644:4, 2648:17, 2653:21, 2654:7, 2669:17, 2674:7, 2693:12, 2708:6, 2708:11
**rules** [1] - 2640:13
**Rules** [1] - 2640:3
**ruling** [4] - 2639:21, 2639:22, 2670:17, 2684:11
**run** [6] - 2654:19, 2659:4, 2702:11, 2706:10, 2706:11, 2708:22

**running** [1] - 2703:2
**résumé** [2] - 2640:10, 2640:16

## S

**Safavian** [17] - 2658:17, 2659:1, 2659:5, 2659:6, 2659:10, 2659:19, 2664:21, 2665:4, 2665:6, 2665:13, 2668:5, 2669:24, 2670:1, 2672:21, 2682:13, 2694:3, 2694:7
**SANCHEZ** [2] - 2639:6, 2709:5
**Sanchez** [1] - 2637:12
**sanchez@usdoj.gov** [1] - 2637:16
**Sanger** [16] - 2650:2, 2650:16, 2650:17, 2651:2, 2653:1, 2674:25, 2675:1, 2691:13, 2691:14, 2691:17, 2692:24, 2703:24, 2704:1, 2704:22, 2705:4, 2705:5
**satisfied** [2] - 2693:15, 2706:20
**satisfy** [1] - 2664:9
**savvy** [1] - 2671:4
**scheme** [39] - 2645:25, 2646:4, 2647:2, 2647:3, 2647:12, 2648:11, 2649:8, 2656:21, 2656:23, 2657:6, 2661:13, 2662:7, 2663:3, 2663:5, 2663:8, 2666:2, 2666:6, 2666:10, 2668:3, 2670:2, 2670:3, 2670:23, 2671:1, 2671:5, 2671:20, 2671:25, 2673:7, 2679:4, 2679:22, 2681:11, 2682:18, 2684:3, 2692:16, 2693:14, 2695:16, 2696:17, 2696:20, 2698:22
**scheme/crime** [1] - 2679:5
**schemed** [2] - 2661:7, 2661:9
**schemes** [1] - 2682:25
**scheming** [1] - 2682:5
**SEC** [1] - 2669:17
**Second** [1] - 2694:2
**second** [5] - 2659:16, 2660:1, 2660:4, 2660:11, 2681:9
**Section** [1] - 2706:21
**see** [4] - 2645:9, 2653:3, 2660:13, 2675:19
**seeding** [2] - 2650:6, 2682:5
**seeking** [1] - 2681:6
**seem** [2] - 2643:16, 2688:16
**segment** [1] - 2659:8
**selecting** [1] - 2642:13
**sense** [3] - 2646:10, 2667:20, 2672:20
**sent** [6] - 2692:7, 2696:15, 2696:21, 2696:23, 2697:24, 2701:17
**sentence** [1] - 2659:15
**sentences** [1] - 2665:4

**separate** [7] - 2657:25, 2669:22, 2689:17, 2690:4, 2690:5, 2694:24
**separated** [1] - 2690:3
**separating** [2] - 2690:7, 2703:18
**September** [7] - 2677:20, 2697:5, 2697:19, 2697:24, 2698:1, 2698:15, 2705:12
**series** [1] - 2663:7
**serious** [1] - 2640:17
**seriously** [1] - 2658:8
**serve** [1] - 2674:5
**set** [3] - 2641:10, 2645:18, 2665:20
**setting** [1] - 2703:24
**seven** [1] - 2698:14
**Seventh** [1] - 2685:20
**several** [1] - 2695:11
**shared** [1] - 2659:1
**sharp** [1] - 2688:13
**shows** [2] - 2677:11, 2694:3
**side** [1] - 2652:12
**sides** [2] - 2639:19, 2645:17
**signed** [1] - 2699:9
**significantly** [1] - 2642:6
**similar** [2] - 2644:21, 2661:19
**similarly** [2] - 2649:16, 2651:1
**simple** [1] - 2655:7
**simply** [2] - 2646:21, 2705:14
**single** [1] - 2678:19
**sit** [2] - 2647:21, 2657:22
**sitting** [5] - 2663:18, 2666:2, 2673:17, 2700:8, 2700:9
**situation** [8] - 2644:24, 2659:1, 2659:25, 2660:11, 2667:4, 2670:20, 2687:24
**situations** [1] - 2672:3
**six** [1] - 2698:14
**Skadden** [2] - 2679:25, 2699:25
**slightly** [1] - 2646:4
**someone** [3] - 2656:8, 2671:21, 2671:23
**somewhere** [1] - 2683:9
**sorry** [9] - 2666:15, 2668:7, 2677:17, 2681:3, 2685:19, 2692:23, 2695:7, 2707:12, 2708:9
**sort** [1] - 2702:11
**sound** [4] - 2641:7, 2641:17, 2641:25, 2674:7
**sounds** [1] - 2674:7
**source** [1] - 2697:18
**sources** [1] - 2657:20
**SPAEDER** [2] - 2637:22, 2638:2
**speaks** [1] - 2653:13
**special** [1] - 2702:8
**specific** [17] - 2640:8, 2642:16, 2644:20, 2647:23, 2658:23,

2658:25, 2663:23, 2670:7, 2672:5, 2677:10, 2687:7, 2687:15, 2690:14, 2702:20, 2704:21, 2705:8, 2706:6
**specifically** [7] - 2650:2, 2664:5, 2667:7, 2674:18, 2677:12, 2702:14, 2703:9
**specificity** [1] - 2660:22
**specifics** [1] - 2654:18
**spend** [2] - 2645:22, 2645:23
**Spiegel** [2] - 2697:24, 2701:18
**Spiegel's** [1] - 2701:19
**spoken** [2] - 2692:9, 2692:10
**stage** [1] - 2669:4
**standard** [6] - 2645:11, 2659:18, 2688:11, 2702:3, 2702:5, 2702:8
**standards** [6] - 2659:12, 2659:24, 2660:4, 2660:16, 2660:17, 2674:12
**start** [3] - 2693:12, 2693:22, 2695:17
**starting** [1] - 2704:20
**starts** [1] - 2659:13
**state** [4] - 2639:4, 2646:21, 2692:4, 2695:5
**statement** [48] - 2645:7, 2646:2, 2654:23, 2655:4, 2656:17, 2656:24, 2657:1, 2660:20, 2661:6, 2661:7, 2661:13, 2661:15, 2661:16, 2662:25, 2663:4, 2663:8, 2667:21, 2669:5, 2670:13, 2670:14, 2671:16, 2671:17, 2671:18, 2671:22, 2673:10, 2678:24, 2679:9, 2680:2, 2681:11, 2681:13, 2681:14, 2682:15, 2682:17, 2682:21, 2682:22, 2683:9, 2683:10, 2683:17, 2683:23, 2691:1, 2691:6, 2691:9, 2691:20, 2699:23, 2700:1, 2705:4, 2705:23, 2706:15
**statements** [18] - 2648:7, 2648:12, 2648:14, 2649:10, 2652:11, 2652:12, 2653:7, 2656:25, 2662:8, 2662:9, 2663:9, 2663:24, 2669:20, 2670:23, 2678:19, 2698:20, 2704:25, 2706:24
**STATES** [2] - 2637:1, 2637:10
**States** [7] - 2637:3, 2638:8, 2639:2, 2639:8, 2641:10, 2641:21, 2642:1
**stating** [1] - 2662:13
**status** [1] - 2706:23
**statute** [45] - 2645:7, 2645:16, 2647:10, 2652:14, 2657:17, 2657:20, 2657:21, 2658:10, 2664:9, 2664:13, 2664:15,

2665:19, 2665:22, 2668:6, 2668:8, 2668:9, 2668:24, 2668:25, 2671:7, 2673:16, 2678:22, 2679:2, 2681:18, 2683:16, 2684:21, 2685:13, 2687:21, 2687:25, 2694:5, 2695:1, 2696:13, 2698:13, 2699:11, 2699:23, 2700:4, 2700:24, 2706:8, 2706:18, 2707:3, 2707:9, 2707:10, 2707:13
**statutes** [2] - 2669:16, 2669:19
**statutorily** [8] - 2664:5, 2664:13, 2668:16, 2670:4, 2693:18, 2693:20, 2694:24, 2695:1
**statutory** [14] - 2658:12, 2663:18, 2666:5, 2666:13, 2666:17, 2667:14, 2672:17, 2673:1, 2673:25, 2679:20, 2683:5, 2695:22, 2705:15, 2707:1
**staying** [1] - 2673:16
**stenograph** [1] - 2710:7
**step** [3] - 2665:5, 2665:13, 2671:8
**steps** [1] - 2656:23
**still** [7] - 2679:21, 2684:18, 2699:16, 2699:18, 2700:11, 2700:17, 2703:16
**stipulated** [1] - 2654:1
**stipulation** [3] - 2653:19, 2653:25, 2708:24
**story** [1] - 2651:6
**straight** [1] - 2645:14
**strategy** [2] - 2651:14, 2674:24
**streamlined** [1] - 2640:5
**Street** [3] - 2637:14, 2637:22, 2638:2
**Stuart** [1] - 2694:2
**subject** [2] - 2645:4, 2706:4
**subjectively** [1] - 2688:7
**submission** [2] - 2646:6, 2667:1
**submit** [5] - 2674:10, 2674:13, 2702:9, 2703:16, 2703:23
**submits** [1] - 2699:6
**submitted** [1] - 2674:16
**submitting** [1] - 2702:15
**sufficiency** [4] - 2672:9, 2688:2, 2702:12, 2704:21
**sufficient** [2] - 2687:6, 2692:15
**sufficiently** [1] - 2677:13
**suggest** [2] - 2641:25, 2660:2
**suggesting** [1] - 2649:4
**suggests** [1] - 2701:8
**Suite** [2] - 2637:23, 2638:3
**summarizing** [2] - 2680:4, 2696:15
**supplement** [2] - 2644:15,

2699:20
**supplemental** [1] - 2646:16
**supplements** [1] - 2706:25
**supplied** [1] - 2660:16
**supply** [8] - 2654:22, 2654:25,
2669:19, 2671:18, 2671:20,
2678:9, 2687:1, 2688:8
**supplying** [2] - 2658:9, 2688:9
**support** [2] - 2644:20, 2668:2
**supported** [2] - 2673:23, 2679:7
**supports** [2] - 2665:4, 2673:4
**supposed** [3] - 2640:4, 2652:5,
2682:6
**Supreme** [2] - 2641:12, 2644:17

## T

**table** [1] - 2639:5
**targeted** [2] - 2694:4, 2694:8
**Taylor** [2] - 2637:21, 2639:12
**TAYLOR** [2] - 2708:9, 2708:12
**Taylor's** [1] - 2644:5
**technically** [1] - 2653:24
**Telegraph** [1] - 2652:20
**terminates** [1] - 2706:19
**terms** [5] - 2646:1, 2665:24,
2666:20, 2674:15, 2691:16
**test** [1] - 2672:9
**testified** [1] - 2677:16
**testimony** [15] - 2640:4,
2640:14, 2640:17, 2640:23,
2641:4, 2641:15, 2641:18,
2642:6, 2643:7, 2677:15,
2677:23, 2677:24, 2701:19
**testing** [1] - 2674:11
**THE** [152] - 2637:1, 2637:1,
2637:9, 2637:13, 2639:1,
2639:9, 2639:14, 2653:16,
2653:24, 2654:16, 2655:6,
2655:9, 2655:16, 2655:25,
2656:13, 2656:18, 2656:20,
2657:19, 2658:16, 2659:13,
2659:17, 2660:14, 2660:24,
2661:9, 2661:19, 2662:12,
2662:18, 2663:2, 2663:6,
2663:17, 2664:17, 2664:21,
2664:25, 2665:7, 2665:12,
2666:1, 2666:5, 2666:9,
2666:13, 2666:16, 2666:19,
2667:8, 2667:11, 2667:18,
2667:22, 2667:24, 2668:4,
2668:7, 2668:11, 2668:15,
2668:21, 2669:1, 2669:11,
2669:14, 2669:23, 2670:9,
2670:11, 2670:16, 2671:11,
2672:7, 2673:15, 2673:19,
2674:4, 2674:6, 2674:20,
2674:22, 2675:15, 2675:18,
2675:22, 2676:3, 2676:11,
2676:14, 2676:25, 2678:1,

2678:11, 2678:15, 2678:24,
2679:15, 2680:12, 2681:4,
2682:10, 2682:13, 2682:20,
2683:4, 2684:2, 2684:7,
2684:10, 2684:25, 2685:17,
2685:21, 2686:1, 2686:4,
2686:13, 2686:17, 2686:23,
2687:5, 2687:19, 2688:14,
2688:23, 2689:1, 2689:9,
2689:13, 2689:20, 2689:24,
2690:9, 2690:22, 2691:1,
2691:11, 2691:13, 2691:15,
2691:21, 2691:23, 2692:11,
2692:20, 2692:22, 2693:3,
2693:5, 2693:7, 2693:10,
2694:12, 2694:18, 2694:21,
2695:8, 2696:11, 2697:12,
2698:7, 2698:17, 2698:21,
2698:24, 2699:1, 2699:15,
2699:18, 2700:7, 2700:24,
2701:7, 2701:24, 2702:13,
2702:20, 2702:23, 2703:3,
2704:4, 2704:12, 2704:14,
2706:5, 2707:8, 2707:12,
2707:15, 2707:18, 2707:20,
2708:10, 2708:14, 2709:6
**theirs** [1] - 2678:23
**themselves** [1] - 2679:10
**theory** [2] - 2657:7, 2657:15
**therefore** [7] - 2640:25, 2643:8,
2643:14, 2644:8, 2649:7,
2659:3, 2708:21
**they've** [6] - 2645:11, 2662:8,
2662:9, 2676:6, 2679:7, 2702:13
**thinking** [2] - 2671:15, 2686:6
**thinks** [1] - 2709:3
**third** [2] - 2686:7, 2686:8
**third-party** [2] - 2686:7, 2686:8
**thoroughly** [1] - 2708:19
**thread** [1] - 2671:4
**three** [11] - 2641:16, 2642:2,
2654:3, 2656:10, 2656:11,
2661:1, 2662:19, 2662:21,
2662:24, 2671:6, 2677:15
**three-quarters** [3] - 2662:19,
2662:21, 2662:24
**tied** [2] - 2647:14, 2663:17
**today** [1] - 2701:11
**together** [1] - 2671:7
**Tom** [1] - 2652:20
**took** [1] - 2700:10
**touchstone** [1] - 2688:17
**toward** [1] - 2682:18
**trail** [1] - 2683:2
**trait** [1] - 2642:17
**TRANSCRIPT** [1] - 2637:8
**transcript** [2] - 2710:6, 2710:7
**transition** [2] - 2672:5, 2674:2
**transpires** [1] - 2641:5
**treating** [1] - 2653:22

**TRIAL** [2] - 2637:4, 2637:8
**trial** [3] - 2641:23, 2648:4,
2681:22
**Trie** [2] - 2644:13, 2644:22
**true** [18] - 2646:6, 2646:8,
2656:14, 2668:13, 2671:15,
2671:16, 2671:19, 2671:21,
2672:1, 2681:10, 2691:2,
2691:7, 2691:20, 2695:5,
2710:6, 2710:7
**truly** [2] - 2658:13, 2673:22
**truth** [11] - 2642:23, 2645:21,
2648:15, 2651:23, 2668:4,
2670:15, 2670:19, 2671:14,
2671:23, 2695:9, 2703:4
**truthful** [15] - 2647:6, 2648:20,
2651:24, 2655:2, 2655:7,
2655:9, 2655:20, 2658:4,
2670:6, 2680:7, 2680:9,
2687:14, 2696:10, 2699:3
**truthfully** [12] - 2648:1,
2651:12, 2655:18, 2655:20,
2664:19, 2665:8, 2665:11,
2667:19, 2667:22, 2694:6,
2699:2
**truthfulness** [2] - 2649:10,
2653:6
**try** [4] - 2639:17, 2677:22,
2679:22
**trying** [6] - 2663:9, 2669:10,
2669:12, 2679:15, 2681:5,
2701:19
**turn** [1] - 2640:19
**turns** [3] - 2686:1, 2686:2,
2706:20
**two** [14] - 2641:16, 2646:9,
2651:18, 2656:10, 2657:20,
2659:9, 2660:1, 2660:9,
2662:22, 2663:22, 2665:3,
2674:23, 2687:18, 2703:1
**Two** [1] - 2656:2
**two-day** [1] - 2651:18
**Tymoshenko's** [1] - 2703:20

## U

**U.S** [4] - 2637:13, 2637:17,
2641:13, 2699:6
**Ukraine** [22] - 2649:11, 2649:21,
2651:25, 2652:25, 2653:1,
2675:10, 2675:12, 2676:9,
2676:12, 2682:3, 2682:4,
2690:18, 2691:2, 2691:4,
2691:5, 2691:18, 2700:2,
2700:11, 2703:15, 2703:18
**Ukrainian** [4] - 2649:2, 2649:19,
2650:9, 2651:17
**Ukrainians** [1] - 2651:2
**ultimate** [3] - 2672:19, 2706:9
**ultimately** [2] - 2672:11, 2687:2

**unanimity** [1] - 2661:21
**unanimous** [4] - 2661:22, 2662:1, 2676:22, 2681:12
**unanimously** [2] - 2648:10, 2656:22
**unaware** [2] - 2645:8, 2688:19
**unclear** [1] - 2658:22
**under** [31] - 2644:25, 2645:25, 2647:4, 2654:7, 2654:10, 2656:15, 2656:19, 2656:20, 2657:23, 2658:24, 2661:13, 2661:14, 2663:1, 2663:2, 2663:5, 2663:12, 2663:19, 2668:3, 2668:20, 2671:14, 2671:21, 2672:2, 2673:1, 2673:9, 2682:17, 2688:11, 2691:19, 2695:22, 2699:12, 2706:14, 2706:16
**undercuts** [2] - 2692:14, 2692:15
**underlying** [2] - 2666:17, 2673:25
**underscore** [1] - 2687:16
**understood** [2] - 2672:12, 2690:11
**undertaking** [1] - 2647:2
**undertook** [3] - 2647:12, 2647:25, 2650:24
**undisputed** [1] - 2643:3
**undoubtedly** [1] - 2640:16
**unfolds** [1] - 2641:4
**unique** [1] - 2644:23
**Unit** [8] - 2666:24, 2667:5, 2669:5, 2687:4, 2697:3, 2697:5, 2697:23, 2707:6
**UNITED** [2] - 2637:1, 2637:10
**United** [7] - 2637:3, 2638:8, 2639:2, 2639:8, 2641:10, 2641:21, 2642:1
**unlawfulness** [3] - 2684:14, 2684:17, 2688:4
**unless** [6] - 2667:13, 2674:10, 2693:20, 2695:21, 2698:25, 2709:3
**unlike** [1] - 2658:25
**untruthfully** [1] - 2667:20
**up** [23] - 2639:15, 2640:12, 2640:25, 2651:19, 2651:20, 2651:21, 2657:22, 2661:9, 2663:9, 2666:10, 2670:22, 2671:5, 2675:16, 2678:4, 2682:11, 2682:20, 2686:10, 2695:13, 2698:13, 2698:16, 2703:24, 2706:7, 2709:4

**V**

**vague** [1] - 2658:22
**vagueness** [1] - 2659:10
**verbs** [1] - 2671:7

**verdict** [3] - 2708:7, 2708:12, 2708:17
**verse** [1] - 2684:20
**versus** [4] - 2639:2, 2641:10, 2641:21, 2642:1
**view** [2] - 2685:12, 2696:4
**Viktor** [1] - 2699:25
**Vin** [7] - 2650:16, 2675:1, 2679:14, 2690:16, 2691:3, 2703:22, 2705:8
**violate** [1] - 2699:9
**violated** [4] - 2647:10, 2648:5, 2651:11, 2652:9
**voluntarily** [3] - 2657:22, 2681:7, 2697:15
**volunteer** [1] - 2649:4
**volunteered** [1] - 2646:23
**voted** [1] - 2676:19
**vs** [1] - 2637:5

**W**

**waited** [2] - 2701:2, 2701:3
**wants** [7] - 2648:7, 2648:8, 2657:1, 2666:22, 2679:22, 2681:13, 2685:23
**wash** [1] - 2685:5
**Washington** [6] - 2637:6, 2637:15, 2637:18, 2638:3, 2638:9, 2710:15
**weber** [1] - 2703:25
**Weber** [10] - 2650:16, 2650:17, 2675:1, 2675:2, 2679:14, 2690:16, 2691:3, 2703:22, 2703:24, 2705:8
**Weber's** [3] - 2650:18, 2675:5, 2703:10
**welcome** [2] - 2674:9, 2703:5
**well-recognized** [1] - 2640:23
**white** [1] - 2699:6
**White** [1] - 2694:1
**whole** [2] - 2657:15, 2698:10
**willful** [2] - 2687:22, 2692:16
**willfully** [1] - 2701:4
**willfulness** [22] - 2644:12, 2644:17, 2644:18, 2644:21, 2644:24, 2644:25, 2645:6, 2674:2, 2684:9, 2685:4, 2686:2, 2687:25, 2688:11, 2689:11, 2692:1, 2692:14, 2693:15, 2698:7, 2702:1, 2702:3, 2702:5, 2702:8
**William** [3] - 2637:20, 2637:21, 2639:11
**window** [1] - 2664:22
**witness** [5] - 2639:17, 2642:5, 2643:12, 2677:24, 2680:1
**witness's** [1] - 2643:6
**witnesses** [13] - 2641:1, 2641:7, 2641:16, 2641:18,

2641:19, 2641:24, 2642:3, 2642:13, 2642:16, 2644:2, 2654:3, 2677:15, 2679:25
**wmurphy@zuckerman.com** [1] - 2637:24
**wool** [2] - 2671:3, 2671:10
**words** [6] - 2642:22, 2650:6, 2656:14, 2658:11, 2668:13, 2684:16
**wordsmith** [1] - 2671:2
**works** [1] - 2640:12
**worth** [6] - 2668:22, 2674:14, 2686:5, 2686:6, 2692:3, 2694:13
**writes** [2] - 2681:7, 2697:25
**writing** [7] - 2680:1, 2680:2, 2680:4, 2688:5, 2708:18, 2708:19
**wtaylor@zuckerman.com** [1] - 2637:25

**Y**

**year** [3] - 2688:19, 2700:18, 2706:9
**years** [2] - 2701:2, 2701:4
**yesterday** [8] - 2639:22, 2640:11, 2641:1, 2643:15, 2643:19, 2653:24, 2700:5, 2701:18
**York** [3] - 2664:4, 2692:3, 2692:5
**yourself** [2] - 2645:11, 2699:4

**Z**

**ZUCKERMAN** [2] - 2637:22, 2638:2