```
1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA
2

3    United States of America,      ) Criminal Action
                                    ) No. 19-CR-125
4                   Plaintiff,      )
                                    ) JURY TRIAL
5    vs.                            ) Day 15 - Morning
                                    )
6    Gregory B. Craig,              ) Washington, DC
                                    ) September 3, 2019
7                   Defendant.      ) Time:  9:45 a.m.
     _____
8
             TRANSCRIPT OF JURY TRIAL - DAY 15 - MORNING
9                        HELD BEFORE
            THE HONORABLE JUDGE AMY BERMAN JACKSON
10                 UNITED STATES DISTRICT JUDGE

11   _____

                    A P P E A R A N C E S
12
     For Plaintiff:     Fernando Campoamor-Sanchez
13                      Molly Gulland Gaston
                        U.S. ATTORNEY'S OFFICE FOR THE
14                       DISTRICT OF COLUMBIA
                        555 Fourth Street, NW
15                      Washington, DC 20530
                        (202) 252-7698
16                      Email: Fernando.campoamor-sanchez@usdoj.gov
                        Email: Molly.gaston@usdoj.gov
17                      Jason Bradley Adam McCullough
                        U.S. Department of Justice
18                      950 Pennsylvania Avenue, NW
                        Washington, DC 20530
19                      (202) 233-0986
                        Email: Jason.mccullough@usdoj.gov
20
     For Defendant:     William James Murphy
21                      William W. Taylor, III
                        Adam B. Abelson
22                      ZUCKERMAN SPAEDER, LLP
                        100 East Pratt Street
23                      Suite 2440
                        Baltimore, MD 21202
24                      (410) 949-1146
                        Email: Wmurphy@zuckerman.com
25                      Email: Wtaylor@zuckerman.com
                        Email: Aabelson@zuckerman.com
```

1        **Paula M. Junghans**
         **Ezra B. Marcus**
2        ZUCKERMAN SPAEDER, LLP
         1800 M Street, NW
3        Suite 1000
         Washington, DC 20036
4        (202) 778-1814
         Email: Pjunghans@zuckerman.com
5        Email: Emarcus@zuckerman.com

6    _____

7    Court Reporter:   Janice E. Dickman, RMR, CRR, CRC
                       Official Court Reporter
8                      United States Courthouse, Room 6523
                       333 Constitution Avenue, NW
9                      Washington, DC  20001
                       202-354-3267

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURTROOM DEPUTY:  Good morning.  We have

2    =criminal case 19-125, United States of America v. Gregory B.

3    Craig.  Mr. Craig is present in the courtroom.

4          MR. CAMPOAMOR-SANCHEZ:  Good morning, Your Honor.

5    Molly Gaston, Jason McCullough and Fernando Campoamor for the

6    United States.

7          THE COURT:  Good morning.

8          MR. TAYLOR:  Good morning, Your Honor.  William

9    Taylor, William Murphy, Paula Junghans, Adam Abelson, and Ezra

10   Marcus for Mr. Craig.

11         THE COURT:  All right.  Good morning.  I hope

12   everybody had a good weekend.  I know everybody had a lot of

13   work to do.  I'm still suffering from whatever it was, but I

14   determined that it was allergies and, therefore, it was good

15   that I was inside in front of my computer the whole weekend,

16   instead of being outside, in the sun.

17         I have several motions to rule on.  When we spoke at

18   the close of the government's case, I was giving you a preview

19   of what I anticipated my rulings were going to be with respect

20   to instructions, but I actually have to tell you what those

21   rulings are officially.  I also want to give you the legal

22   reasoning for why the instructions are written the way they are

23   written.

24         There are a few things here and there that we can

25   discuss, and you certainly are going to have the opportunity to

1    place your objections on the record to everything that you

2    object to.  But I think that the instructions that we have

3    accurately arise out of the facts and reflect the legal

4    landscape that's going to govern this case.

5            I've given you a new copy of the instructions that

6    have them more in the order that I would intend to give them

7    and -- John has them -- and the instructions that we would give

8    at the end are added.  And I think, with the exception of the

9    elements of the offense instruction, we'll be able to go

10   through the rest of them pretty quickly.  They're all

11   consistent with what you all gave me.  There were some where

12   you gave me dueling versions, where I either incorporated

13   something from both versions or I stuck with the Red Book.

14           There is first, though, a motion in limine, docket

15   121.  The defendant has moved in limine for a ruling that the

16   government cannot use the two emails from Paul Manafort,

17   Government's Exhibits 396 and 402, quote, Beyond the limited

18   purpose for which they were admitted.  But I believe that part

19   of that request seeks to preclude precisely the non-hearsay

20   purpose for which they were admitted and, therefore, it goes

21   too far.

22           What the defense has asked me to do is -- it says,

23   The government should not be permitted to argue to the jury

24   that they are evidence that Mr. Manafort and the Ukranian

25   government were in fact pleased with Mr. Craig's media contacts

1    or the Skadden Report itself; that Mr. Manafort asked Mr. Craig

2    to contact reporters as part of the media rollout of the

3    report; that Mr. Craig corrected reporters because Mr. Manafort

4    asked him to; or that he contacted reporters because he

5    believed it would please Mr. Manafort or Ukraine.

6              And that's on page 3 of their motion.  So that's

7    their request.

8              I don't believe there is any evidence, other than, I

9    believe, a statement to Hawker by Manafort that he would speak

10   to Mr. Craig, or to Gates, that he would speak to Mr. Craig,

11   that he in fact spoke to Mr. Craig again after the Harvard Club

12   meeting and prevailed upon him in that conversation to stick

13   with the plan.

14             If there is, and I don't recall it, I agree that the

15   two emails aren't it.  But, the two emails, just like the ones

16   from Gates and Hawker in the first wave of publicity after the

17   report, congratulating themselves on the seeding strategy, and

18   particularly the use of a well-regarded, straight-shooting

19   journalist and, it's important to note, a reputable journalist

20   who would be provided with access to Craig himself to explain

21   the report to the world for the first time, reflect that after

22   the release of the report Mr. Manafort thanked, praised and

23   congratulated the defendant.

24             In other words, the fact that he said what he said

25   supports an inference or argument that he was pleased.  That's

1    not a hearsay use of a fact asserted, that's an inference drawn

2    simply from the fact of what he said.  "The Ukranians are

3    happy" was an assertion of fact about how they felt, and that

4    was redacted out on hearsay grounds.

5            Also, whether its weak or strong, there's nothing

6    wrong with the government asking the jury to draw an inference

7    from the fact that the defendant didn't respond, What are you

8    talking about?  Or, Don't thank me, I quit the team and I've

9    been out there talking behind your client's back.

10           The defendant is free to argue that what he did say,

11   "I like the *Kyiv Post* article," was actually a veiled way of

12   saying that.  But the emails can be fairly said to support the

13   notion that contrary to the defendant's testimony, that he'd

14   essentially abandoned his client and was acting on his own

15   behalf, that he was indeed carrying out the team's PR rollout

16   plan.

17           The defendant's testimony advanced a black and white

18   view.  The report was either good for the Ukraine or bad.

19   Making sure that the reporters got it right was bad for the

20   Ukraine.  And having advanced that defense, the jurors now have

21   the opportunity to accept it or reject it.  And the government

22   is absolutely permitted to point to the evidence in the record

23   that contradicts it.

24           The report is in evidence.  The defendant can argue

25   that it was not a vindication for the Ministry of Justice.  As

1    the defense has emphasized, several key conclusions agreed with

2    Tymoshenko concerning significant violations of her due process

3    rights.  But there's also evidence to support the argument that

4    it was not a vindication for Tymoshenko either.  And the

5    defendant's emails with Bruce Jackson reflect Jackson's and,

6    arguably, the defendant's recognition of that.

7            The government can argue that there were, in fact,

8    things in it that provided fodder for those acting in Ukraine's

9    behalf, led by Mr. Manafort.

10           A number of the conclusions rejected Tymoshenko's

11   objections to the trial on one basis or another, and there's

12   language that paints her in-court behavior in a negative light.

13   It is true that Skadden did not find, as Ukraine may have

14   hoped, that the prosecution was not politically motivated.  But

15   there is evidence from which one could conclude there was value

16   to the Ukraine in the fact that it didn't find that it was, and

17   that it said that she produced insufficient evidence of

18   selective prosecution, which is a legal concept related to the

19   motivation behind the charges.

20           There is also evidence that Mr. Craig massaged that

21   language in particular, in response to comments that Skadden

22   received.  There is testimony in the record, not just from

23   Gates and Hawker, but also Kedem and the defendant, that there

24   was value to the Ukraine in the mere fact the report was

25   prepared at all.  And especially that it was prepared by a

1   reputable, independent law firm and a lawyer of Mr. Craig's

2   background and reputation.  This was true even if it turned out

3   that there was nothing good in it for Ukraine because their

4   reputation was already bad and the Ukraine could say to the

5   world, look, we gave this international law firm, we gave Greg

6   Craig access to all the facts and independence and we are

7   releasing what he said; we are learning from our mistakes.  We

8   will do better in the future.

9        Yes, there was a chance for a prolonged period of

10   time that they might not publish it at all.  But as of

11   December, they decided that they would.  There's actually no

12   evidence in the record regarding the reason for the delays, and

13   whether it was the content of the report or timing of other

14   events that drove the decision.  I had seen some emails to that

15   effect, but I don't believe they actually ended up being

16   introduced.

17        So the government can ask the jury to find that

18   Craig's willingness to make sure the journalists got it right

19   was an aspect of the Manafort strategy to make lemonade out of

20   the lemons in the report, and that the fact that he said what

21   he said in the email shows that he was pleased at the end of

22   the day.

23        There is evidence that Mr. Craig agreed to do it at

24   the Harvard Club meeting.  Even his email the next day saying

25   he wouldn't because of a law firm policy, specifically says

1   that he had been happy to do it; same words that he used with

2   Mr. Sanger.  The September 24th email doesn't say I told you

3   all along I wasn't going to cross a FARA line.  It talks about

4   a law firm policy about talking on background.  It could be a

5   reversal, that's how Mr. Hawker took it.  It could be he just

6   wanted to write it.

7          In any event, it's up to the jury to decide if he

8   stuck with the reversal or whether by early October he was

9   already advancing the plan by connecting Mr. Sanger and Vin

10  Weber.  And more important, whether that was what he was doing

11  in December when both Mr. Sanger and Tom Parfitt each got early

12  access to both the report and its author.

13         So the motion in limine is granted in part and denied

14  in part.  The government may argue inferences from the tone and

15  mood of the Manafort emails and the fact that they were sent

16  consistent with my original ruling.  But no, they don't show or

17  prove that after the Harvard Club, Manafort in fact talked to

18  the defendant and twisted his arm.

19         The defense has asked for a literal truth instruction

20  in Dockets 97 and 120.  The defense has been underscoring

21  throughout this case that this is a concealment scheme; the

22  government did not charge false statements.  I understand that

23  argument.  And while the indictment tracks the statutory

24  language that says falsify, conceal, and cover up, at the end

25  of the day, I agree.

1          The charge is a single scheme to falsify, conceal or

2     cover up a material fact.  The jury has to be unanimous that

3     the government has proved the existence of such a scheme to

4     cover up at least one material fact.  And, yes, as the

5     defendant has emphasized since the beginning, the law requires

6     that it be a fact that the defendant had a duty to disclose.

7          For example, the government may argue to the jury

8     that it has proved the defendant's knowing and willful

9     participation in a scheme to cover up the fact that he

10    participated in the media rollout of the report by, among other

11    things, giving David Sanger exclusive embargoed access to the

12    report on December 11th.

13         I also agree with the defendant that the existence of

14    the duty to disclose is a question of law that I have to

15    determine.  But as the government pointed out, it is the jury

16    that must determine that the concealment of the particular fact

17    that they agree was concealed, was in fact a violation of the

18    duty that I instructed them exists as a matter of law.  So they

19    need to be instructed about that.

20         I agree with the defendant, as I advised I would at

21    the end of the government's case, that as a matter of law, in

22    his dealings with the FARA unit, defendant did not at that time

23    have the duty to disclose or volunteer every fact that the

24    statute requires a registrant to disclose, or to offer up or

25    volunteer every fact that might have been relevant to the unit.

1    He is not charged with failure to register, and I have resisted

2    the introduction of evidence or argument regarding his legal

3    obligation at that time.  And while the motivation for the

4    alleged scheme to conceal may have been a desire to keep the

5    details that he would have had a duty to disclose if he had to

6    register secret, such as who paid and how much, I don't think

7    the conviction here can be predicated on the failure to

8    disclose those facts.

9           The case is about the failure to disclose facts

10   material to the FARA unit's inquiry into whether he had engaged

11   in activities that would trigger a requirement to register;

12   facts that were specifically asked about in the questions he

13   undertook to answer and the facts that he knew were material to

14   the decision he was asking them to make when he took it upon

15   himself to ask them to reverse a decision that had been made.

16          Thus, the statute underlies and informs these

17   conversations, and it bears on the materiality determination.

18   The law is clear that there's a duty to be truthful and not

19   mislead, either by an out and out misstatement or by

20   concealment when responding to specific questions about a

21   specific known regulatory or statutory regime and when

22   undertaking to influence an agency determination.

23          For instance in *United States versus Moore*, 446 F.3d

24   671, in the Seventh Circuit in 2006, which was cited with

25   approval at many points in *Safavian*, the Court said, quote, The

1     evidence before the jury easily permitted it to conclude that

2     Moore, who signed this contract to obtain HUD Block Grant

3     funds, knew what the standards were and deliberately avoided

4     disclosing the conflict to the city, even when she was directly

5     asked about it.

6          Yes, she was bound by a contractual provision that

7     laid out the conflict of interest rules.  Those were the rules

8     underlying the conversation with the city.  The problem

9     identified with the Court wasn't merely her signing the

10    contract and violating its terms.  It said, quote, Moore

11    continued to stonewall the city and, on occasion, to lie, long

12    after she signed the contracts.  Even if she had the right to

13    remain silent, she did not have the right to affirmatively

14    mislead city officials or to lie, close quote.

15         Quote, Once the city explicitly asked for the

16    information, the failure to respond honestly is something far

17    greater than a failure to volunteer information, close quote.

18         The *Moore* court noted that its decision was

19    consistent with *United States versus Calhoun*, 87 F.3d 518,

20    Eleventh Circuit, 1996, also cited in *Safavian*.  That defendant

21    was charged with making false statements or concealment under

22    the old version of the 1001 statute when claiming reimbursable

23    costs under Medicare.  The defendant took the position that the

24    government had to negate any possibility that his assertion of

25    reimbursabiliy was reasonable, but the Court didn't buy that.

1            The Court explained while it's perfectly okay to say

2       straight out, I think those costs were reimbursable, it's

3       reasonable, it said, at page 529, quote, One must do so openly

4       and honestly, describing them accurately, while challenging the

5       presumption and seeking reimbursement.  Nothing less is

6       required if the Medicare reimbursement system is not to be

7       turned into a cat-and-mouse game in which clever providers

8       could, with impunity, practice fraud on the government.

9            The Court specifically found that Calhoun's omission

10      of a key fact, quote, Critical to the determination, close

11      quote, of whether his expenses were reimbursable, which was who

12      he paid the money to, was concealment in violation of §1001.

13      And his inaccurate description of the nature of the services he

14      paid for, what the Court described as, quote, Concealing the

15      true nature, close quote, of the costs he claimed were found to

16      be violations of 1001.

17           Quote, Calhoun's arguments mix the crux of his

18      offense, the filing of reports intended and designed to deceive

19      and mislead, close quote.  And the decision-makers in that case

20      were the auditors who were making the determination of

21      reimbursement or not.

22           So as in Calhoun, the alleged crime is not disputing

23      the applicability of a FARA provision or regulation or

24      statutory provision, it is crafting submissions designed to

25      deceive and mislead.  Yes, it's true that Calhoun did it on

1    forms he was required to submit, and Craig wasn't required to

2    write a letter to the unit.  But that isn't the basis for the

3    Calhoun decision.  The basis is the use of deception to affect

4    a governmental decision, and that's what it is alleged that

5    Craig undertook to do here.

6            As I signaled I would at the close of the

7    government's case, my instructions limit the duty to disclose

8    to those facts that were the subject of the specific inquiry

9    the agency was conducting under the statute.

10           And for all those reasons, I will instruct the jury,

11   consistent with *Moore*, *Calhoun*, and *United States versus*

12   *Stewart*, 433 F.3d 273, at 318, out of the Second Circuit in

13   2006, which was cited in *United States versus White Eagle*, 731

14   F.3d 1108 and 1117, where the Court said, the *White Eagle* Court

15   said, As other circuits have recognized, a conviction under

16   1001(a)(1) is proper where a statute or government regulation

17   requires the defendant to disclose specific information to a

18   particular person or entity.

19           So, for example, when a defendant submits a report

20   that omits particular information that by law must appear in

21   the report, a conviction for concealment is proper.  The same

22   holds true when a defendant responds to specific questions on a

23   particular topic, citing *Stewart*.  The Court said, In these

24   situations the defendant's failure to disclose is akin to an

25   affirmative misrepresentation.  And that's the principle that's

1   applicable here.

2          I note that *White Eagle* came after *Safavian* and the

3   Court seemed to feel no need to distinguish it.  The government

4   can argue here that the defendant could have, as the Court

5   suggested in *Calhoun*, laid out for the agency the facts he laid

6   out for the jury and argue that those facts didn't give rise to

7   a registration obligation, but that, instead, he based his

8   submission on a misrepresentation, and that the fact he did so

9   bears on his intent.

10          The defendant can argue that the facts are all there,

11  see the footnote, I attached a link to the article.  If you

12  read the article, you'll see the date that I must have talked

13  to David Sanger.  So he can argue that he left clues from which

14  the agency could have divined what happened if it dug deeper

15  and didn't accept his word for it.  And the government can

16  argue that deliberately leaving a false impression and turning

17  it into a puzzle is an affirmative act of concealment.

18          I believe that these instructions are not

19  inconsistent with *United States versus Safavian*.  Here the duty

20  to be truthful and complete in responding to the inquiry and

21  attempting to reverse the decision that had been made was

22  informed by, and structured by, the statute, and that is what

23  gave the defendant fair notice of what was material in

24  accordance with the constitutional guarantee of due process.

25  And that's what distinguishes this case from the interview that

1    troubled the Court in *Safavian*.  And the statute bears directly

2    on the materiality of the information alleged to have been

3    disclosed.

4         But, I agree that the statute alone did not impose an

5    obligation on that date to volunteer pieces of information that

6    weren't responsive or material to the questions and the

7    specific inquiry at hand.

8         It is this analysis and, in particular, the

9    defendant's insistence that this case is about the scheme to

10   conceal and not making false statements, that leads me to

11   conclude that the literal truth defense has no applicability

12   here, and that the jury should not be instructed that literal

13   truth of any particular statement could negate the existence of

14   the scheme.

15        Indeed, both the defendant and the government agree

16   that a literal truth instruction is not appropriate in

17   connection with the concealment scheme.  The defendant said

18   that in his supplemental memorandum regarding literal truth,

19   Docket 97.  The government memorandum, Docket 101, says it.

20   And there is no case that stands for the proposition that the

21   instruction has any bearing on a scheme to conceal, not even

22   *Safavian*, because that case addressed the point only because

23   there were no admissions left after its ruling on duty, and all

24   that was left was a single false statement.

25        And there is one case that specifically finds that

1    literal truth defense doesn't apply to a 1001(a)(1) scheme.

2    That's *United States versus Stephenson*, 895 F.2d 867, Second

3    Circuit, 990.  So that instruction is not in my instructions.

4         The defense requested a heightened specific-intent-

5    like standard for willfulness as was utilized in *United States*

6    *versus Trie*, T-R-I-E, 21 F.Supp.2d 7.  And that request will be

7    denied based on my review of *Cheek versus United States*, 498

8    U.S. 192, 1991.  *United States versus Pomponio*, 429 U.S. 10,

9    1976, *Ratzlaf versus United States*, 510 U.S. 135.  *Bryan versus*

10   *United States*, 524 U.S. 184, and the cases the defendant cited

11   to me, *Moore versus United States*, 612 F.3d 698, from the D.C.

12   Circuit in 2010, and *United States versus Burden*, from the

13   Court of Appeals case number 17-3018, 2017 Westlaw 3917651.

14        *Moore* involved the appeal of the sufficiency of the

15   evidence to uphold a §1001(a)(2) false statement conviction on

16   the grounds that the evidence was insufficient to establish

17   materially false -- they were materially false.  It stands for

18   the proposition that a statement is material if it has a

19   natural tendency to influence or is capable of influencing

20   either a discrete decision or any other function of the agency

21   to which it was addressed.  It's a very short opinion.  The

22   Court found the evidence was sufficient.

23        But the defendant places great emphasis on the

24   concurring opinion.  Putting aside whether it's dicta, whether

25   it's binding, or whether it's germane, it doesn't demand more

1    than the government proposes.   Judge Kavanaugh was concerned

2    about 1001 prosecutions in general and the mens rea

3    requirements in particular, and he was concerned about the risk

4    of injustice that, as Chief Justice Rehnquist had noted in a

5    dissent that he wrote, that the statute, quote, Can be used to

6    punish the most casual false statements as long as they turned

7    out, unbeknownst to their maker, to be material to some federal

8    agency function.

9         I don't think that's an issue here.   The government

10   is going to have to prove materiality and the defendant hasn't

11   conceded anything.   But I don't think anyone is making a

12   serious argument that it was unknown to the defendant that the

13   dates and times and nature of his media communications were

14   important to the decision maker.   Defendant's arguments relate

15   to the legal consequences of those activities.

16        Judge Kavanaugh went on to say, Proper application of

17   statutory mens rea requirements and background mens rea

18   principles can mitigate the risk of abuse and unfair lack of

19   notice in prosecutions under §1001.   In §1001 cases, that means

20   proof that the defendant knew that making the false

21   statement -- making the false statement would be a crime.

22        In *Bryan*, the Supreme Court summarized the rule quite

23   clearly:   In order to establish a willful violation of the

24   statute, the government must prove that the defendant acted

25   with knowledge that his conduct was unlawful.

1     So, the concurring opinion doesn't go all the way to

2     say that every case requires a *Ratzlaf*- or a *Cheek*-specific

3     knowledge instruction, just a *Bryan* instruction.  And to the

4     extent the D.C. Circuit has weighed in at all, it seems to also

5     have the clear view that *Ratzlaf* and *Cheek* are limited to their

6     particular statutory regime.

7     In the *United States versus Burden* case the Court

8     found an instruction to be problematical, but not for a failure

9     to find willfulness properly.  And the problem it did find

10    doesn't seem to have any bearing on this case.  Notably, the

11    Court in *Burden* specifically rejected the defendant's

12    suggestion that the willfulness instruction that he received in

13    an Arms Export Control Act case should have included a specific

14    knowledge requirement.  It said for purposes of the AECA, a

15    requirement of proof that defendants knew the proscribed

16    conduct was unlawful, adequately protects against the danger of

17    ensnaring individuals engaged in apparently innocent conduct.

18    In other words, in a situation that is more highly

19    regulated and complicated than §1001, and even FARA combined

20    with §1001, the Court of Appeals was still perfectly satisfied

21    with the *Bryan* formulation.  I don't see any danger of

22    ensnaring individuals engaged in apparently innocent conduct

23    here.  The issue is whether the defendant accurately reported

24    what he did, not whether he fairly argued that what he did

25    didn't matter under the FARA statute.

1          The *Burden* case went on to discuss *Cheek* and *Ratzlaf*

2     and it said that the Supreme Court has required proof that

3     defendants know which law he was breaking in only two contexts;

4     criminal tax evasion and currency structuring, and it went

5     through *Cheek* and *Ratzlaf*.  It notes that in *Cheek*, the Supreme

6     Court had explained that Congress's inclusion of a willfulness

7     requirement for felony tax evasion recognized the proliferation

8     of statutes and regulations that make it difficult for the

9     average citizen to know and comprehend the extent of the duties

10    and obligations imposed by the tax laws.  And the problem in

11    *Ratzlaf* was that the currency structuring statute was

12    particularly complex.

13          In *Bryan*, which concerned unlicensed firearms

14    dealing, the Court concluded that requiring only knowledge that

15    the conduct was unlawful was fully consistent with Congress's

16    purpose in adding a willfulness requirement to the firearms

17    statute to protect law-abiding citizens who might inadvertently

18    violate the law.  The D.C. Circuit said in *Burden*, *Bryan*

19    distinguished the firearms law before it from the highly

20    technical statutes at issue in *Cheek* and *Ratzlaf*, which had

21    justified carving out an exception to the traditional rule that

22    ignorance of the law is no excuse and requiring that the

23    defendant have knowledge of the law; that is, the specific law

24    that he violated.

25          So nothing about that discussion or that case signals

1  the D.C. Circuit's concern that *Moore* is needed in a 1001

2  context, even if the duty to disclose arises out of a statutory

3  regime. *Burden* held that the jury instruction was correct

4  insofar as it rejected the defendant's position that the

5  willfulness requirement in the AECA is akin to those in *Cheek*

6  and *Ratzlaf*.

7          Another Court in this District has found the federal

8  elections statute, FECA, to be similar. But again, that wasn't

9  a pure 1001 case. *Trie* was an aiding and abetting case, aiding

10  and abetting a false statement made by someone else to the

11  Federal Elections Commission. And the Court concluded that the

12  overlay of the willfulness requirement of aiding and abetting

13  over the FECA required specific knowledge.

14          It's notable, though, that the Eighth Circuit has

15  decided that the same statute is not so complicated to require

16  anything more than a *Bryan* instruction, and there's no law on

17  FARA one way or the other, and -- this is the most important

18  thing -- the defendant is not charged with a willful violation

19  of FARA. He is charged with willfully making a false

20  statement.

21          What cased the problem in *Benton* was quite unique to

22  *Benton*, and the defendant's memo doesn't really explain how it

23  could possibly be applicable here.

24          The Court said, in *Benton*, that finding that a

25  heightened instruction is not necessary doesn't quite resolve

1    the issue because of the ambiguity in the meaning of conduct --

2    knowing that your conduct was unlawful -- in the instruction.

3    More is required where, as here -- that is, in the *Burden*

4    case -- there is evidence of willfully unlawful conduct apart

5    from the charged offenses creating a risk that the jury may

6    consider any and all evidence of the defendant's guilty mind,

7    whatever its object, as supporting willful commission of the

8    charged offense.

9            I don't understand the applicability of that in this

10   instance at all, but I can assure the defendant that it will

11   not be a problem in this case because we can define the conduct

12   when we say, If you find -- you must find that he knew his

13   conduct was against the law to engage in a scheme to falsify,

14   conceal or cover up.

15           Even the *Cheek* case in 2001 -- at page 201, said that

16   the *Bishop* and *Pomponio* precedents conclusively establish that

17   the standard for statutory willfulness requirement is the

18   voluntary, intentional violation of a known duty.  And, so,

19   that is what I'm going to say.

20           So that's that with respect to the specific

21   willfulness instruction.

22           We now have some questions about the unanimity issue.

23   There is, as the defendant has pointed out over and over again,

24   one charge, one scheme; scheme to conceal material facts.  So I

25   don't actually see the problem that you had in the *Oliver North*

1    case or the *Mangieri* case of a risk that the jury would not be

2    unanimous as to which crime he committed; it's only being

3    presented with one.

4           It is a scheme to conceal material facts, though, and

5    both sides have agreed and asked for an instruction that tells

6    the jury it must be unanimous as to at least one fact.  I am

7    not entirely sure that's necessary, but it seems prudent, and

8    so I will instruct the jury in this matter as both parties have

9    asked me to do.

10          But the defendant has also offered up specific

11   unanimity language for the affirmative act that took place

12   after October 3rd.  And they absolutely must be told that they

13   must be unanimous that affirmative act took place after October

14   3rd.  But I'm not sure whether it's necessary to say, And you

15   all must be in agreement as to what that act is, given the fact

16   that there's only one scheme here.

17          So, I don't see that you run into the *Mangieri*

18   problem.  But I am happy to hear from the defendant, if you

19   believe that we need the specific unanimity language twice in

20   the jury instructions.

21          MR. TAYLOR:  Should I come to the lectern?

22          THE COURT:  Sure, it's easier to hear you that way.

23          MR. TAYLOR:  First of all, I'm operating off last

24   night's draft of instructions, which I assume are the same as

25   the one you circulated this morning.

1          THE COURT:  Yes, in content.  And we will go through

2     the elements of the offense instruction.  I jiggered around

3     with the order of the instructions, and I've pasted now that

4     one into the others.  But right now I'm just talking about that

5     part of it where I tell them that the timing is important, and

6     they must unanimously agree that an act occurred after October

7     3rd.  You had proposed that I also say there, And you must be

8     unanimous as to which one, and you cited *Mangieri* and that line

9     of cases.

10          MR. TAYLOR:  Yes.  Yes.

11          THE COURT:  And you and the government both put that

12     in with respect to a material fact that he had the intent to

13     conceal by scheme.

14          MR. TAYLOR:  Yes.

15          THE COURT:  And so, my question is just specifically

16     whether it's necessary as to the affirmative act?

17          MR. TAYLOR:  It is.  Proof must be that he committed

18     an offense after October 3rd.  And that means the concealment

19     of a material fact by trick, scheme, or device.  And,

20     therefore, the same obligation to be unanimous on the fact --

21     on the material fact omitted would apply post-October, as it

22     would have if the statute didn't bar pre-October.

23          THE COURT:  The fact --

24          MR. TAYLOR:  The material fact concealed.  They must

25     be unanimous that he -- as the instruction says --

1          THE COURT:  I thought you were saying they had to be

2     unanimous as to what the affirmative act was.

3          MR. TAYLOR:  No.

4          THE COURT:  So you're talking about the fact?

5          MR. TAYLOR:  The instruction as drafted and as you

6     sent it to us last night is that the defendant -- the

7     government must prove that on at least one occasion after

8     October -- this is on the nature of the offense.

9          THE COURT:  Um-hum, I got it.

10          MR. TAYLOR:  That on at least one occasion after

11     October 3rd he concealed or covered up a fact that he had a

12     legal duty to disclose.  That's -- we agree.

13          THE COURT:  Okay.

14          MR. TAYLOR:  When you come back on the next page

15     to -- this brings me back to the first element I just -- brings

16     me back to the first element I discussed.

17          THE COURT:  It's on the top of page 15 of your

18     current draft.

19          MR. TAYLOR:  You must unanimously agree that he

20     engaged in at least one affirmative act.  We disagree with

21     that.  I think that's inconsistent with what you just told

22     them, and that the proper instruction would be:  You must be

23     unanimous as to the material fact concealed after October 3rd

24     of 2013.

25          THE COURT:  All right.  I think you actually had

1    language in your proposed instruction about the act.  But now

2    you're saying it's about the fact, and I understand that.

3            What's the government's position about that?

4            MS. GASTON:  The government agrees, so that should

5    make it easy.

6            THE COURT:  Okay.  All right.  I will make a change

7    consistent with that.

8            Finally, I agree, and the instructions will

9    incorporate the defendant's argument that the scheme allegation

10   requires more than simple proof that a false statement was

11   made; the government must prove affirmative acts of

12   concealment.  But even though it is a concealment scheme,

13   affirmative acts of concealment could include affirmative

14   misrepresentations, false or misleading statements or omissions

15   that advance the scheme, and the jury must be unanimous --

16   wait, never mind.

17           That advance that scheme.  Going to the meeting could

18   be an affirmative act.  No, we don't have the questions and

19   answers, so we don't know if any particular answer was false or

20   misleading or incompletely answered, but the defendant has

21   testified that what he said was correctly characterized in the

22   government 's letter reversing its decision and reciting what

23   he told them.

24           So, there is evidence in the record that the jury can

25   consider with respect to the points he emphasized, the

1    conclusion he emphasized -- and the conclusion he conveyed, if

2    not his exact words at the meeting.  Writing his follow-up

3    letter and/or crafting allegedly misleading sentences in it

4    could also be an affirmative act.  And all this is embodied in

5    the instructions.

6           The *Safavian* footnote that a scheme can't be based on

7    a false statement alone does not mean that acts of

8    falsification, false or misleading statements can't be

9    affirmative acts in furtherance of the scheme, or a misleading

10   statement rendered false by an omission can't be an affirmative

11   act.  Defendant points to *Safavian* and *United States versus St.*

12   *Michael's Credit Union*, 880 F.2d 579, to argue that

13   misrepresentation can't be a scheme.

14          And I have to tell you, it was a tough weekend

15   because many of these precedents are contradictory and say an

16   omission can't be a scheme, a false statement can't be a

17   scheme, leaving one to scratch one's head as what is left.

18   But, I believe that when you read the instructions carefully,

19   it starts to become clear.  There are several cases, even in

20   the wake of *St. Michael's*, that support the notion that a false

21   statement can be an affirmative act.

22          In *United States versus Mubayyid*, M-U-B-A-Y-Y-I-D,

23   658 F.3d 35, at pages 70-71, the Court, the First Circuit,

24   found that filling out a form he was required to fill out

25   falsely qualified.

1          The Court recognized that simple omissions, according

2     to *St. Michael's Credit Union*, fall short of constituting

3     affirmative acts of concealment, which are key to prove a

4     scheme, trick, or device under 1001(a)(1).

5          But, the Court also said *Mubayyid* fails to

6     acknowledge that one has a legal duty to disclose information

7     when a response is required by statute, government regulation,

8     or government form.  Moreover, they said, by filing the false

9     form, which he signed under penalty of perjury, Mubayyid did

10    not passively fail to disclose material facts, he engaged in an

11    affirmative act of concealment.  And they distinguish that from

12    *St. Michael's*.  And they say his conduct is, therefore,

13    sufficient grounds for a conviction under 1001(a)(1).

14         *United States versus Henderson*, 318 F.Supp.3d 1221,

15    at 1234, from the Eastern District of Washington in 2018, also

16    emphasizes that a simple omission cannot be a scheme, but

17    citing *Mubayyid* and *White Eagle* specifically contrasts that to

18    a situation involving an omission in a situation where

19    defendant had a duty to disclose.  Also, *Hubbell* included false

20    statements made to an investigating agent among the affirmative

21    acts deemed to be sufficient to state a scheme offense.

22         So, all of that, I think, is captured in the

23    instructions that it can't just be a mere omission, it has to

24    be an omission that rendered something deceptive, and it's in

25    there.

 1                 That's the end of my lecture and summary.  I think

 2     what I would like to do -- and I can certainly say that the

 3     defendant's objections to not giving the specific innocent

 4     instruction on willfulness is noted and on the record.

 5                 With respect to literal truth, the defense told me

 6     that the literal truth instruction would not be required if

 7     it's just a concealment scheme.  So I'm not sure that you

 8     object to my not giving it anymore.  But your request to give

 9     it has been denied and that's noted for the record.

10                 I think if we want to be expeditious about this, that

11     maybe what we should do first is go through the rest of the

12     instructions and figure out which -- the ones that are

13     questionable, about whether they're in or out, whether they're

14     in or out, and then we'll focus on the elements of the offense

15     instruction.

16                 Function of the Court; Furnishing the Jury With a

17     Copy of the Instructions; Function of the Jury; Jury

18     Recollection Controls; Note-Taking by Jurors; Evidence in the

19     Case, I believe are all Red Book instructions.

20                 The bottom of page 2, the Evidence in the Case

21     instruction talks about stipulations.  Obviously we can take

22     the word "depositions" out of the title.  We can just call it

23     Evidence in the Case.

24                 But, did I take judicial notice of any facts?  I

25     don't believe I did, although I might have in connection with

1    Gates and his pending case, I'm not entirely certain.  No?

2              MR. CAMPOAMOR-SANCHEZ:  I don't believe so as to Mr.

3    Gates.  I do recall, at the end of the case, that I -- because

4    we weren't sure about the defense position, that I asked the

5    Court to take judicial notice of the statute, but that was

6    really for purposes, I think, of the Rule 29 arguments that we

7    were having.

8              THE COURT:  Okay.  The statute is going to be

9    described as a legal thing and not something that they're going

10   to take judicial notice of.  So I took note of it, I'm not

11   going to ask them to take note of it.  So that bracketed

12   portion will come out on the bottom of page 2.

13             Page 3, Statements of Counsel, Indictment not

14   Evidence, we don't need to say "or Information."

15             Inadmissible and Stricken Evidence, I think that

16   happened once or twice.  So, I think we need to say that.  I

17   don't know, at the top of page 4, if I ordered an exhibit

18   stricken?  Only a question and answer, I believe.

19             MR. CAMPOAMOR-SANCHEZ:  I don't believe any exhibits

20   were stricken.

21             THE COURT:  Okay.  So I'm going to not give the

22   bracketed portion at the top of page 4.

23             Redacted Documents -- not tapes -- but there were

24   documents that have redactions, so I think that's important.

25             Burden of Proof and Presumption of Innocence,

1    Reasonable Doubt.  Are there any objections to those?

2              MR. TAYLOR:  No.

3              MR. CAMPOAMOR-SANCHEZ:  (Shakes head.)

4              THE COURT:  I believe they're largely Red Book.

5    There may have been a little tweak here and there in response

6    to someone's request, but I think they're standard.

7              Direct and Circumstantial Evidence, Credibility of

8    Witnesses come from the Red Book.

9              Witness With a Plea Agreement is on page 8.  Both

10   sides gave me some different suggestions about what to say,

11   this incorporates the two.  I also took the separate

12   instruction about a person awaiting sentence and made that the

13   last paragraph of this instruction.  I don't know that it's

14   separately needed, but I've added it anyway, so there can't be

15   any concern that I left that issue out.

16             MR. TAYLOR:  Your Honor, do you want me to come --

17             THE COURT:  Yes, if you have something about one as

18   I'm going through, tell me.

19             MR. TAYLOR:  Yes.  Witness With a Plea Agreement, the

20   last sentence, the last clause we ask that you not give; that

21   you delete the clause beginning with, "The plea agreement does

22   not protect him."

23             THE COURT:  All right.  Is there any particular

24   reason we need it?  I mean, the plea agreement -- there's

25   evidence that the plea agreement could be revoked if he lies

1    under oath, and we talked about that.  But, I think this is in

2    the standard jury instruction.

3              MS. GASTON:  It is, and that's why we would request

4    it, Your Honor.

5              MR. TAYLOR:  That -- I'm sure that our focus on it

6    will give us some enlightenment, even if it's in the standard

7    instruction.  We do not think the Court should instruct the

8    jury that the plea agreement doesn't protect him against the

9    prosecution for perjury.

10             THE COURT:  Use the microphone.

11             MR. TAYLOR:  We do not believe the Court should give

12   the phrase or clause:  The plea agreement does not protect him

13   against a prosecution for perjury or false statements, should

14   he lie under oath.

15             THE COURT:  Well, what if I say:  A witness who has

16   entered into a plea agreement is under this same obligation to

17   tell the truth under penalty of perjury as any other

18   statement -- as any other witness.

19             MR. TAYLOR:  Yes.

20             THE COURT:  Everyone had to say that.

21             MS. GASTON:  Your Honor, we would request the Red

22   Book instruction as it's stated.

23             THE COURT:  I'm willing to make that change, but

24   mention perjury with respect to all witnesses.

25             All right.  The defendant, I take it, wants me to

1    give the Defendant as a Witness instruction.

2              MR. TAYLOR:  You skipped over the Witness With a Plea

3    Agreement.

4              THE COURT:  I thought we just talked about that and I

5    changed the sentence at your request.

6              MR. TAYLOR:  Oh, sorry.

7              THE COURT:  All right.

8              MR. TAYLOR:  Well, at the end of that we also wanted

9    you to strike:  You all so heard evidence that Mr. Gates is

10   awaiting -- that last paragraph.

11             THE COURT:  You had proposed A Witness Awaiting

12   Sentence instruction.  I think it's redundant, but since you

13   had proposed both, I put them both in.  You want me to take it

14   out?

15             MR. TAYLOR:  Yes.

16             THE COURT:  All right.  Any objection?

17             MR. TAYLOR:  In both sentences.

18             THE COURT:  So the final paragraph:  "You have also

19   heard evidence that," essentially reiterates what I've said

20   above, and it will be taken out.

21             MS. GASTON:  (Nods head.)

22             MR. TAYLOR:  Thank you.

23             THE COURT:  Defendant as a Witness will be given.

24             MR. TAYLOR:  We request you take out the second

25   sentence.

1          MS. GASTON:  Your Honor, this is the Red Book

2   instruction.

3          THE COURT:  I'll say, "Believed or."

4          The Character Evidence instruction I believe is

5   appropriate.

6          MR. TAYLOR:  Your Honor, I'm sorry.  What's your

7   ruling on --

8          THE COURT:  I'm going to say, "His testimony should

9   be believed or disbelieved merely because he is a defendant."

10          MR. TAYLOR:  On the character, we do have some

11   disagreements with the way the Court has phrased it.

12          Mr. Craig introduced testimony from witnesses that

13   those witnesses have a high opinion of his character, and that

14   he has --

15          THE COURT:  Yeah, I think this is what you all

16   submitted before we knew that only opinion evidence was going

17   to come in.

18          MR. TAYLOR:  I'm not sure why -- why it is --

19   whatever it is that we said, but, this seems to me, needs to be

20   corrected.  And I would suggest the following language:  Mr. --

21          THE COURT:  Go ahead.

22          MR. TAYLOR:  Mr. Craig has introduced testimony from

23   witnesses that he has good character for honesty and

24   truthfulness and that he has such a reputation in the

25   community.

 1          THE COURT:  All right.  I'm not sure that's

 2     particularly different from the first sentence, but --

 3          MS. GASTON:  It's not.  And, Your Honor, this is the

 4     Red Book instruction that we agreed to in what we submitted to

 5     the Court.

 6          THE COURT:  Well, I mean, the sentence suggests that

 7     he has a good reputation in the witnesses' opinion.  And I

 8     think what the witnesses said is he is truthful and honest and

 9     law abiding, in my opinion, and that he has a good reputation

10     in the community.  I think that's what they were trying to get

11     at and stress.

12          MR. TAYLOR:  That's my point.

13          THE COURT:  I believe that's accurate.  They didn't

14     offer their opinion on his reputation, they offered their

15     opinion on his character.  So, I think the reformulation is

16     accurate.

17          So read me your version again.

18          MR. TAYLOR:  Instead of the first sentence as it now

19     reads, it would read:  Mr. Craig has introduced testimony from

20     witnesses that he has a good character for honesty and

21     truthfulness and that he has such a reputation in the

22     community.

23          MS. GASTON:  Your Honor, may I suggest that we go

24     back to the Red Book instruction, which would provide that this

25     would say --

1          MR. TAYLOR:  I'm sorry.  I'm having a little trouble

2     hearing Miss Gaston.

3          MS. GASTON:  May I suggest -- does that help.

4          MR. TAYLOR:  I think so.

5          MS. GASTON:  May I suggest that we go back to the Red

6     Book instruction, which would provide that -- it would say:

7     Mr. Craig has introduced testimony that he has a good

8     reputation in the community for -- character trait -- and in

9     the witness's opinion, Mr. Craig is a -- character trait --

10    person.

11         THE COURT:  I think that's what it is, that there was

12    testimony from witnesses that he is truthful and honest and, I

13    think, law abiding, and that he has a reputation in the

14    community for truthfulness and honesty.

15         MR. TAYLOR:  That's correct.

16         THE COURT:  All right.  So that's what I'll say:

17    Gregory Craig has introduced testimony from witnesses that in

18    their opinion he is truthful, honest, and law abiding, and that

19    he has a good reputation in the community for truthfulness and

20    honesty.

21         MS. GASTON:  And, Your Honor, since some witnesses

22    testified about reputation in the community, and the testimony

23    of one of them was struck, we would ask that it be qualified to

24    say "some witnesses."

25         THE COURT:  All right.

1          MR. TAYLOR:  We can grudgingly accommodate that, Your

2     Honor.

3          THE COURT:  All right.  I'll say he introduced

4     testimony from witnesses that in their opinion he is truthful,

5     honest, and law abiding and there was evidence from some

6     witnesses that he has a good reputation in the community for

7     truthfulness and honesty.

8          All right.

9          MR. TAYLOR:  On the next page, Your Honor.

10          THE COURT:  Yes.

11          MR. TAYLOR:  Top paragraph, the third line, it says,

12     "him or her."

13          THE COURT:  Right.  We don't need that.  Thank you.

14     We tried to catch a lot of those.

15          MR. TAYLOR:  And we do not think the next two

16     instructions should be given.

17          THE COURT:  I didn't think that we really went into

18     prior bad acts with any character witness, so I don't think

19     that one is necessary.

20          MS. GASTON:  We would agree.

21          THE COURT:  That's why I put it in brackets.

22          Prior inconsistent statement.  There wasn't a lot of

23     that.  I'm not sure -- does anybody think -- does the

24     government think we need the Prior Inconsistent Statement

25     instruction?

```
 1            MS. GASTON:  No, Your Honor.

 2            THE COURT:  Okay.  Then that means that the Prior

 3   Consistent Statement instruction is not needed either.

 4            Statements of the Defendant I think does not relate

 5   to this case; that's when you get arrested and say something

 6   about the offense.

 7            MR. TAYLOR:  That's right.

 8            THE COURT:  But since someone had listed it, I just

 9   wanted to put it in, and so I'll take it out.  I think that

10   might have applied to the interview, but we didn't really get

11   into that.

12            MR. TAYLOR:  So the two instructions on page 11 we

13   request not be given.  I think I just heard you say that you

14   agree.

15            THE COURT:  Yes.  The one on page 10, Cross-

16   Examination of a character witness.

17            MR. TAYLOR:  Right.

18            THE COURT:  Evaluation of a Prior Inconsistent

19   Statement of a Witness.  Moving to 11, Evaluation of a Prior

20   Consistent Statement and Statement of the Defendant on 11 are

21   all omitted.

22            On or About, we will read.

23            MR. TAYLOR:  Except that the date is wrong.

24            THE COURT:  Okay.

25            MS. GASTON:  The scheme is alleged to begin on June
```

1    3rd, 2012 -- or, June 3rd, 2013.

2              THE COURT:  June 3rd, 2013.  Through January -- what

3    date is it?  14?

4              MR. TAYLOR:  16.  January 16.

5              THE COURT:  Okay.  Thank you.  I don't quite know how

6    that happened.

7              All right.  Let's skip over for a minute pages 11,

8    12, 13, 14, 15, 16 and go to the rest of the standard

9    instructions.

10              Proof of State of Mind.  The defendant asked me to

11    omit the part about intending the natural and probable

12    consequence of what you did.  But I think that's part of the

13    standard instruction and I'm going to include it.

14              MR. TAYLOR:  May I be heard?

15              THE COURT:  Yes.

16              MR. TAYLOR:  That might be standard in a general

17    intent crime.  This is a specific intent crime and it does

18    not -- it shouldn't be given here.  It's really not relevant to

19    an issue in the case.  It's not -- no one is claiming there's a

20    mistake or an accident.  So the -- it simply doesn't address

21    any issue in the case as a matter of fact, and as a legal

22    matter it doesn't belong here because this is not a crime where

23    the question is did he -- did he intend to do something?  We

24    haven't made a claim about that.

25              THE COURT:  Well, I think he has to have

1    intentionally, willfully, knowingly engaged in a scheme to

2    conceal.  And, so, I think this language is appropriate.

3             What is your position about the possible punishment

4    instruction?  Bottom of page 17.

5             MR. TAYLOR:  Page 17.

6             THE COURT:  Is the government requesting it?

7             MS. GASTON:  Yes, Your Honor.

8             MR. TAYLOR:  I don't think we object.

9             THE COURT:  All right.

10            Unanimity, the verdict form --

11            MR. TAYLOR:  I'm sorry, Your Honor.  I have not seen

12   the verdict form that you --

13            THE COURT:  Well, we need to talk about it.

14            MR. TAYLOR:  Okay.

15            THE COURT:  Because I realized this morning that all

16   of them were based on previous iterations of what was

17   happening.  So I figure we'll talk through the instruction and

18   then I'll read you what I think it should say.

19            But this is an instruction that just says you're

20   getting one and it's not evidence.  That they're getting the

21   exhibits.  Selection of a foreperson.  Another cautionary

22   instruction about publicity, which I think is important.

23   Communications Between the Court and Jury During the Jury

24   Deliberations.  The Attitude and Conduct of Jurors in

25   Deliberation is -- it's in the Red Book, I'm happy to give it,

1    I kind of feel like it tells them how to go about their

2    business in a way that maybe is a little condescending, so I

3    don't know whether we have to give it or not.  I don't know if

4    people have a strong point of view about it.

5              MR. TAYLOR:  We request that you not give it.

6              THE COURT:  All right.  And then we have to excuse

7    alternate jurors at the end of the --

8              MR. TAYLOR:  We understand.

9              THE COURT:  Have to give that instruction.

10             With respect to that instruction, before we get to

11   the substantive instruction, can I see counsel at the bench?

12             (Bench discussion:)

13             THE COURT:  I appreciate the fact that the government

14   shared with the defense and with me the communication that came

15   from the Office of the Government Ethics of an agency at which

16   Juror 7 is employed.  And we don't know the substance of her

17   concern.  And we understand that the person to whom she was

18   going to speak was not going to speak about the case.

19             I am concerned that given the fact that she didn't go

20   to the inter-bar, but she went to Government Ethics --

21             MR. CAMPOAMOR-SANCHEZ:  General Counsel's office.

22             THE COURT:  General Counsel's, okay.  That the

23   concern isn't actually in scheduling, and that she may continue

24   to harbor the concern that she voiced in jury selection that

25   she knows too much and that it's hard to separate in her mind

1    what she knows from the trial and what she doesn't know from

2    the trial -- this is speculation on my part.  But it gives rise

3    to a concern.  No one asked me to strike her for cause, so she

4    was not; That wasn't my place to interpose my thinking about it

5    on whatever strategy anyone had in thinking that she should say

6    in the venire.

7           I guess the question is, since we don't know what

8    sent her off to her general counsel, do we want to substitute

9    her for an alternate and make 7 and 14 the new alternates,

10   instead of 13 and 14 the alternates?  And this is really a

11   question I'm not suggesting that I have the answers to what you

12   should do, but I thought we should think about that.

13          MR. TAYLOR:  Let us think about it.

14          THE COURT:  All right.  Okay.

15          MR. TAYLOR:  I don't think that the record, as it

16   exists right now, gives us much information to make a decision

17   about any of that.

18          THE COURT:  No.  And we have what she said initially,

19   which was troubling to me, and it's been troubling to me

20   throughout the entire trial, but she was seated with the

21   concurrence with both parties.  So, I'm just putting this out

22   there for you to think about and you can let me know if you're

23   in accord about to do something, then we'll do something.  And

24   if you're not, then I don't think we should do anything.

25          MS. JUNGHANS:  Are you considering inquiring of her

1   in any way?  And I'm not sure I think that's a good idea, but

2   I'm just floating it.

3            THE COURT:  Since we really don't know what happened

4   and we don't even know if the communication has even taken

5   place -- you haven't heard anything further?

6            MR. CAMPOAMOR-SANCHEZ:  No, we have not heard

7   anything back.

8            THE COURT:  So it just was kind of a little bit of a

9   flag that was raised.  I don't know what it means, I don't

10  pretend to know what it means.  But, I thought there's a

11  solution, if we are anticipating a problem, that is easier

12  solved now than once the jury starts to deliberate.

13           MR. TAYLOR:  I just don't know if it's broke, so I

14  don't know whether we should try to fix it.

15           THE COURT:  Okay.  That's totally fine.  I just

16  wanted to -- I haven't had a lot of time to think over the

17  weekend.

18           MR. CAMPOAMOR-SANCHEZ:  So you know, we did not want

19  to call back and try to find out whether anything took place or

20  what happened or concerns, that that would be seen as we were,

21  obviously, interfering with a jury.

22           THE COURT:  I think everybody has acted completely

23  appropriate in this situation.

24           MR. CAMPOAMOR-SANCHEZ:  But, I think -- it certainly

25  raised concerns to us when we learned, which is why we

 1   immediately shared it.

 2           THE COURT:  Right.  And I think it's up to her if she

 3   feels she can't do her duty as a juror to tell Mr. Haley she

 4   wants to talk to me, and she has not done that.  So, we have

 5   that.

 6           MR. TAYLOR:  I think we're -- let's wait and see.

 7   We'll talk to our client among ourselves, but my instinct is

 8   not to do anything unless there is more in the record than

 9   there is right now.

10           THE COURT:  Okay.  And you can let me know that

11   later, after the next break.  Let's talk about the remaining

12   jury instructions and then we'll break and hopefully we really

13   will be able to start argument at one and possibly get

14   instructions completed today, so they have a full day tomorrow.

15           MR. TAYLOR:  We would like to do that.

16           THE COURT:  All right.  That's my goal.

17           (Open court:)

18           THE COURT:  All right.  So on page 12, I would just

19   call this instruction the Elements of the Offense, not "and

20   FARA."  I changed it from Count 1 to the indictment charges.

21           The elements, everyone was largely consistent about.

22   But, I had a question, since I'm going to say that he was not

23   sitting there under a duty to disclose what's required to be

24   disclosed under the FARA statute, that we don't need the

25   bracketed language in 2.  I will give much more explanation

1     below about what the legal duty was to disclose or not.

2             So I would propose to omit the bracketed portion of

3     number 2 at the top of page 13.

4             MR. TAYLOR:  We request that you not delete it.

5             THE COURT:  Not delete it?

6             MR. TAYLOR:  Yes.

7             THE COURT:  Well, I'm then going to say:  With

8     respect to the second element, the concealment of something the

9     defendant had a duty to disclose, there is a legal duty to

10    disclose where a statute, government regulation, or form

11    requires someone to disclose specific information, but that is

12    not the duty at issue in this case.  A person also has the duty

13    to disclose that arises, etcetera.

14            Now, I can leave the bracketed portion out and they

15    can still argue that he has a duty to disclose from the second

16    portion.  But, I'm not sure why we don't want to make it

17    consistent with what I'm telling people they can argue and they

18    can't argue and what he can be convicted of and what he can't.

19    I don't want them to be confused that he had a duty to say

20    something that's in the FARA form after I assured you that I

21    don't think omitting things just because they're in the form is

22    actionable here.

23            MR. TAYLOR:  So, I'm not quite sure I understand

24    where we are here.

25            Your numbered paragraph 2, which includes the

 1     bracketed language, you are proposing or telling -- advising us

 2     that you do not intend to give that language, the bracketed

 3     language?

 4             THE COURT:  I was suggesting --

 5             MR. TAYLOR:  Suggesting that.

 6             THE COURT:  -- that I don't need to or shouldn't,

 7     given the way the case has now been narrowed.

 8             MR. TAYLOR:  So if that's the case, I did not -- did

 9     not want to be in the position of telling the jury that's not

10     the duty at issue in this case.  I mean, so it seems to me --

11     of course, Your Honor, you understand that we object to any --

12     any instruction on duty for reasons we've discussed at length

13     in this case.

14             But as to what more specifically you're going to tell

15     them, it strikes me that if you --

16             THE COURT:  I don't think I need --

17             MR. TAYLOR:  If you struck the bracketed language and

18     then you struck the language in the first full paragraph --

19             THE COURT:  The brackets?

20             MR. TAYLOR:  No, that you would strike the language

21     beginning, "There is a legal duty to disclose where a statute,

22     government regulation, or form requires someone to disclose,

23     and then the bracket.  And then --

24             THE COURT:  You mean, I would just say, for number 2:

25     The defendant concealed or covered up the fact that he had a

1      legal duty to disclose, and then you get down to the paragraph

2      and I say:  With respect to the second element, the concealment

3      of something the defendant had a duty to disclose, there is a

4      legal duty -- a person has a duty to disclose that arises if

5      and when he responds to specific questions posed by the

6      government about a particular topic that is the subject of a

7      statute, regulation, or government form, and leave out the

8      other part?  That's your suggestion?

9              MS. GASTON:  That's the government's position.

10             THE COURT:  That's the government's position.

11             Do you agree?

12             MR. TAYLOR:  I think so.

13             THE COURT:  I think that's what you just asked me to

14     do.  I just want to make sure I got it right.

15             MR. TAYLOR:  I think so.

16             THE COURT:  Just hearing that Miss Gaston wants me to

17     do it, too, does that trouble you?

18             MR. TAYLOR:  She and I have had one agreement this

19     morning already.

20             THE COURT:  I think that's fair.  If people thought I

21     had to lay out the other duty, then I felt that it was

22     important to explain to the jury that -- but, I think you're

23     right, I don't need to tell them about a principle of law that

24     doesn't apply.

25             MR. TAYLOR:  Right.

1          May I consult for just a moment with better minds?

2          THE COURT:  Yes.

3          (Pause.)

4          MR. TAYLOR:  I think we're down to the grammar.

5          THE COURT:  Okay.

6          MR. TAYLOR:  We'd request, without waiving any other

7     objections, that as to the full paragraph, it would read:  With

8     respect to the second element, the concealment of something the

9     defendant had a duty to disclose -- strike the next three --

10    two and a half lines, and it would then follow with:  A person

11    also has a -- strike the word "also."

12         THE COURT:  Correct.

13         MR. TAYLOR:  Strike the word "also."

14         THE COURT:  Right.

15         MR. TAYLOR:  A person has a duty.

16         THE COURT:  I think we can take out "that arises."

17    It could just say:  A person has a duty to disclose if and when

18    he responds to specific questions posed by the government.  I

19    think that "arises," is not necessarily, just makes it fancy.

20         MR. TAYLOR:  I think that's okay.  Subject to the

21    other objections.

22         THE COURT:  All right.

23         All right.  What about the rest of page 13?

24         MR. TAYLOR:  We request you strike, in numbered

25    paragraph 4, the word "falsified."

1          THE COURT:  I think that's correct.  I am -- I

2     believe that there are falsifications and false statements and

3     misrepresentations that are acts in furtherance of the

4     concealment scheme, but that that comes out.

5          MS. GASTON:  And, Your Honor, we just want to put on

6     the record to the striking of falsification and of the false

7     statements component of the scheme as the government has argued

8     in its papers.

9          THE COURT:  I understand that.

10         I think the more I looked at cases that involved

11    falsification by scheme, they really were like filling out a

12    form falsely, backdating -- you know, checks that were fake,

13    and not so much as making false statements.  Making false

14    statements were seen as acts of concealment or acts as a

15    falsification, concealment, or cover-up scheme.  And if you get

16    into a falsification, concealment, or cover-up scheme, then you

17    run into a lot of complexity with literal truth, which doesn't

18    seem to apply to a concealment scheme.  And I think this is

19    more true to what the case is about, that he didn't want to --

20    did not endeavor by scheme to conceal facts related to the

21    media activities and he had a duty to answer the questions

22    about those and he either concealed them by omitting facts,

23    crafting them in a way that's misleading, etcetera.

24         So I will take that out in number 4.

25         Anything else on page 13?

 1              MR. TAYLOR:  No.  The next language I wanted to

 2      discuss is on page 14.

 3              THE COURT:  Okay.

 4              MR. TAYLOR:  The paragraph beginning, "But if a

 5      person chooses to respond."

 6              THE COURT:  Yes.  That one has a lot of brackets in

 7      it.

 8              MR. TAYLOR:  We obviously object to that, pursuant to

 9      our earlier objections based on *Safavian*.  But we would like,

10      more specifically, you to delete the bracketed language in the

11      last sentence.

12              THE COURT:  All right.  Well, we've got several

13      brackets going here.  There was a point in the day when I

14      decided you had to have it.  And so the first bracket, it says:

15      If a person chooses to respond to specific questions about a

16      particular topic that is the subject of a statute, regulation,

17      or government form, I don't know that that needs to be in

18      there.  That is part of my legal ruling for why there is a

19      duty.  I don't think that the jury needs to have that in there.

20              Does everybody agree with that?  Ezra is shaking his

21      head yes.  Does that count as a yes from the defendant?

22              MR. TAYLOR:  Well, you know why we don't like this

23      language.  But, having said that -- so, I'm not sure that we

24      are in a position to be constructive about this paragraph.

25      We've asked that you not give it and we -- to the extent that

1    you want our opinion on whether it would be better or worse if

2    you removed the bracketed language in the first one or two

3    lines, we don't -- I don't think we have a position.  We do

4    have a position on the last -- the bracketed language in the

5    last line.

6                THE COURT:  All right.  What's the government's point

7    of view?

8                I think I can skip, "that is the subject of a

9    statute, regulation, or government form," because that is the

10   basis for my legal ruling, it's not a jury problem.

11               MS. GASTON:  The government agrees with that.

12               THE COURT:  All right.  I think that when you get to

13   the next bracket, he has a legal duty to be truthful and

14   complete.  It's the "and complete" that is the primary subject

15   of the defendant's objection.  I'm not sure it's necessary.  I

16   think it's a fair statement of the law, but I think when we say

17   he has a legal duty to be truthful and he has a duty not to

18   omit facts that leave his answers false or misleading, that

19   covers it.

20               MR. TAYLOR:  We agree.

21               MS. GASTON:  The government agrees.

22               THE COURT:  All right.  And while I recognize the

23   defendant's decision to abstain from the discussion of this

24   issue because it doesn't want to give any indication that it

25   agrees that this duty exists, I believe that I have made a

1    concerted effort in these instructions to reflect what is also

2    the defendant's position, that a scheme must be affirmative.

3    And, so, there's language in there that underscores that.

4           I don't know that we need, in essence, an affirmative

5    misrepresentation.

6           MS. GASTON:  We don't think it's necessary, Your

7    Honor.

8           THE COURT:  Okay.  All right.  Let's talk about the

9    last sentence.  What's your objection?  Which part?

10          MR. TAYLOR:  Well, we object to it for the same

11   reasons that we have stated previously.  We think that the law

12   is that he cannot make false statements under any

13   circumstances, and that's as far as you should go.

14          THE COURT:  Well, one of the reasons I read at length

15   from *Calhoun* and other cases this morning, is that my review of

16   all the cases that everyone has -- both sides have been citing

17   to me and that *Safavian* cites, seems to indicate that the

18   essence of a scheme is deceiving or misleading the person

19   you're talking to.  And in -- I think it was *Calhoun*, it was

20   particularly phrased in terms of the decision-makers.  So I

21   think this is a correct statement of the law.

22          MR. TAYLOR:  We would --

23          THE COURT:  I think it's fine to say that if a person

24   chooses to undertake to persuade the government to make or

25   change a particular determination, and I don't think they need

1      "being made with respect to a statute or regulation," because I

2      think that's the legal hook.  He cannot make statements

3      designed to deceive or mislead the decision-makers, and I can

4      put a period after that.

5                  MS. GASTON:  We're fine with that, Your Honor.

6                  MR. TAYLOR:  Then are you striking the language in

7      the last bracket?

8                  THE COURT:  That begins with "because," yes, until

9      the end.

10                 The materiality one, I believe, is the government's

11     plus part of what the defendant wanted to add.  But I think

12     that's not inconsistent with -- that's not a new creation of

13     mine, it just came out of the proposed instructions.  Is there

14     any objection to the materiality paragraph?

15                 MR. TAYLOR:  Your Honor, we believe that you should

16     restrict the government to material facts which are in

17     paragraph 63, and only a small subset of those which survive

18     the Court's earlier rulings.  We would like to address you on

19     which ones of those the government should be permitted to argue

20     or list or put to the jury as examples of material facts.  63

21     is the only paragraph in the indictment which reflects an

22     allegation from the grand jury that he made omissions of

23     material facts after October.

24                 THE COURT:  Well --

25                 MR. TAYLOR:  Mr. Marcus is --

1           THE COURT:  The indictment said -- and I wish

2    somebody had put this in the proposed jury instructions so I

3    could have thought about it before this minute.  But, the

4    indictment said "including."

5           I guess let's start with the question of:  Are there

6    any that aren't in there that you're planning to argue?

7           MS. GASTON:  Your Honor, I -- I don't believe so,

8    Your Honor.  With the exception of the addition of David

9    Herszenhorn that we flagged on the day of the Rule 29

10   arguments, as well as the -- I believe that the contention by

11   the defense is that the -- giving the reports to Mr. Weber is

12   not one of the facts that is alleged in the indictment.  We

13   disagree because it's alleged in the factual basis that is

14   incorporated into the charged count, as well as paragraph 63.

15          But, I don't think we're alleging anything outside of

16   that.  We're going by the chart that we prepared with -- and

17   we've removed the things that you indicated in the conference

18   last week should not be argued as concealed facts, and then

19   we've added Mr. Herszenhorn.  Those are the facts that we are

20   going to allege were concealed.

21          THE COURT:  Is there anything in the chart that

22   you -- as it was revised at the conference, that you say falls

23   outside of the indictment?

24          MS. MARCUS:  The only one, I believe, that is wholly

25   outside of the indictment, as far as an allegation of a

1    concealed material fact, is providing the copy of the report to

2    Vin Weber.  There's an allegation that it was done, but no

3    allegation that that fact was concealed.  And in fact, in the

4    reference to the June letter, there is a -- you know, the

5    language that the copies of the report were given to the

6    representatives of the government of Ukraine, we're not sure

7    there's been any evidence that would support giving to the jury

8    the option of finding that that fact had been concealed.

9         THE COURT:  Well, I think one could argue whether

10   that is a straight answer to, To whom did you give it and when?

11   And I don't believe there's any lack of notice that that's

12   something the government planned to prove that he did.  And I

13   think they've argued all along that his answer to, To whom did

14   you give it and when? was incomplete.

15        MS. MARCUS:  I think our position would be that it's

16   a variance.

17        MS. GASTON:  Your Honor, the very first bullet point

18   on page 21 of the indictment is that the defendant, consistent

19   with the media strategy, connected Mr. Sanger with Mr. Weber in

20   October 2012, and that also incorporates -- I believe it's

21   paragraph -- the paragraph earlier in the indictment that

22   specifically alleges that he provided a copy of the report to

23   Mr. Weber.

24        THE COURT:  I need to look at the indictment again.

25   Do you have a case that I need to look at on variance?

1          MS. MARCUS:  I don't have the case in front of me,

2     Your Honor.  I think there's -- paragraph 63, you know, it's a

3     notice issue and it's an issue of the grand jury's findings.

4          MR. TAYLOR:  Page 20, 21.

5          MS. GASTON:  So, Your Honor, paragraph 33 of the

6     indictment specifically states that Mr. Craig emailed

7     Mr. Sanger and asked him if he would take a call from

8     Mr. Weber, that Mr. Sanger replied affirmatively, that on

9     October 3rd Mr. Craig connected them, and that Mr. Craig had

10    his assistant deliver a hard copy to Mr. Weber's office.  And

11    then paragraph 63 of the indictment specifically lists that

12    material facts that he omitted included connecting Mr. Sanger

13    with Mr. Weber in October 2012.

14         MS. MARCUS:  Your Honor, I think that it's important

15    to point out the distinction between connecting them and

16    providing a copy, because if the duty arises from questions,

17    the only question to which any of this is argued to be

18    responsive is a question about, To whom, if anyone, did you

19    provide a copy of the report and when?

20         That's what the government, on their chart, has

21    argued that this omission is responsive to.  And if it's the

22    part about providing a copy of the report that's new, and

23    that's the only part to which, you know, any arguable duty

24    arising from questions runs, then there's -- it's both a

25    variance problem and a problem of whether there's sufficient

1    evidence of a duty as to that omitted fact -- allegedly omitted

2    fact.

3            MS. GASTON:  And there's nothing new because all of

4    those facts are provided and alleged in the indictment.  And in

5    addition, the specific question was:  To whom did you provide

6    the report and when? and the answer to that was misleading

7    because when it groups Mr. Weber in agents of Ukraine, it also

8    does not say when he was provided with it, which was

9    significantly earlier than the other people listed in that

10   paragraph.

11           THE COURT:  All right.  I'm going to take this under

12   advisement.  I would appreciate, if there's some key authority

13   that you think I should look at, that tells me that that's a

14   variance when it's in the indictment and the paragraph says

15   "including" and they can't make that argument that that's a

16   fact among the facts, I would like to know what case you're

17   relying on for that proposition.

18           MS. MARCUS:  Yes, Your Honor.  And if you wouldn't

19   mind, while we're on the chart, I agree with you that it's a

20   very helpful chart.  When the government provides a helpful

21   chart, you tip your cap and use it.

22           Numbers 3 and 4 on their chart -- and I believe the

23   list was compiled before Your Honor had let us know that the

24   duty in this case is one not imposed by the statute, but simply

25   by the questions and by approaching the agency.

1          THE COURT:  Right.  And I don't have the chart in

2    front of me, but I walked through it and I said some would not

3    be argued as the actionable omissions.

4          MS. MARCUS:  I understand, Your Honor.  And I think

5    we have a few points as to additional ones where we would argue

6    that the government should not be allowed to put them to the

7    jury as actionable omissions.

8          THE COURT:  All right.  Why don't we do this, if you

9    don't mind.  Let me finish this instruction and then we'll take

10   a break and I'll retrieve my chart and I'll be in a better

11   position.  But I have notes all over it.

12         MS. GASTON:  Okay.

13         THE COURT:  I'll be in a better position to answer

14   these questions and maybe by then you will have also retrieved

15   a case.

16         So, there's still a separate question of whether I

17   have to list them to the jury, or the restriction is on what

18   they get to argue and what the jury gets to find.  So what's

19   the position about why I have to list them in my jury

20   instructions --

21         MR. TAYLOR:  Because --

22         THE COURT:  -- especially since no one provided me

23   with a jury instruction in which I would do that.  This is

24   brand new.

25         MR. TAYLOR:  The -- what we're asking the Court to do

1    is cabin the material facts omitted to those which you have

2    approved.  And although we disagree with some of your

3    decisions, it, nevertheless, is a question whether the

4    government would be able to argue that there are other

5    omissions, omissions other than those in paragraph 63 and those

6    which you have excluded based on their charge, that they should

7    be permitted to argue.

8         And so we are asking that you do list the material

9    facts that are alleged to be concealed or withheld after you --

10   after you define materiality.

11        THE COURT:  I have also said that they can bring

12   those out because they may reflect on his intent.  So, the fact

13   that they happened, I didn't say they couldn't bring out, it's

14   just whether they argued that they are actionable or not.

15        So what is your position about whether I should tell

16   them which ones?

17        MR. CAMPOAMOR-SANCHEZ:  I don't think it's necessary.

18   But, so, maybe we'll give some comfort to the defense, but

19   we've structured our closing argument along the eight specific

20   omissions that the Court approved, and they will be -- we are

21   listing them as eight and going one by one over them.  So we

22   will be making clear which are the material omissions, and

23   those are the ones that the Court has approved.

24        THE COURT:  I mean, one thing I think the defendant

25   needs to think about is while you don't want the jury to go off

```
 1    and come up with its own, am I unduly highlighting them by
 2    pointing them out:  You could find that this is false, you
 3    could find that that is false.  Do you really want me doing
 4    that?
 5             MR. TAYLOR:  That's a good point, which we need to
 6    think about.  I do take some comfort from what Mr. Campoamor
 7    said.  But, it's not a question of what they can argue, it's a
 8    question of what the jury can consider to be allegations of
 9    concealment in determining guilt or innocence.
10             THE COURT:  I understand.  And --
11             MR. TAYLOR:  They've got to -- you're telling them
12    that they've got to be unanimous on the material --
13             THE COURT:  One.
14             MR. TAYLOR:  But it has to be a material fact, and
15    the only material facts alleged are those in paragraph 63.
16             THE COURT:  Well, let's think about it.  If you don't
17    want it at the end of the day, then I won't do it.  If you
18    think I should do it, then I need to figure out if I have to do
19    it, and then there's the notice variance issue about which one
20    would be included.
21             So, I want to put, whether there will be an insert
22    between the second and third paragraphs on page 14, that issue
23    aside for the moment and keep walking through the text of the
24    rest.
25             So we're into the scheme, trick, or device.
```

1           MR. TAYLOR:  We object to the language in the fourth

2      line, "Omitting facts needed to make a statement not

3      misleading," and we request that you delete that.

4           THE COURT:  Okay.  I'm not going to do that.

5           MR. TAYLOR:  In the next paragraph, I think we

6      discussed that in connection with element two.

7           THE COURT:  Yes.  So, at the top of page 15, where it

8      says you are instructed that while you may find that the

9      defendant engaged in affirmative -- all right.  So I'm taking

10     out -- I don't know that we need it at all.  Then I think --

11     they have to be unanimous, don't you agree, that the scheme

12     continued after October 3rd?  That is something you've all

13     emphasized to me, is that correct?

14          MR. TAYLOR:  Not only is it a --

15          THE COURT:  They took an act.

16          MR. TAYLOR:  That a crime occurred after October 3rd.

17          THE COURT:  Okay.  Okay.  So --

18          MR. TAYLOR:  I think you could take the whole

19     paragraph out, frankly.

20          THE COURT:  Well, it's certainly a sufficiency

21     question, whether they proved an affirmative act for the

22     statute of limitations purposes.  You had specifically asked

23     for an instruction that they must be unanimous that he acted on

24     at least one occasion after October 3rd, 2013.

25          MR. TAYLOR:  And you have said that.  And when you go

1    through the numbered elements, you said exactly that.

2            MS. GASTON:  And then at the end of the middle

3    paragraph on page 14, you instructed them that they have to be

4    unanimous as to one fact.

5            THE COURT:  All right.  So what if I just say:  This

6    requirement of an affirmative act brings me back to the first

7    element I listed, that you must unanimously find that the

8    defendant acted on at least one occasion after October 3rd,

9    2013, period, end of paragraph.

10           MR. TAYLOR:  That the defendant acted?  No.

11           THE COURT:  That defendant engaged in an affirmative

12   act?

13           MR. TAYLOR:  It's not an -- an affirmative act is not

14   sufficient.  It's a -- it's an actual concealment must occur

15   after October --

16           THE COURT:  An affirmative act of concealment, it's a

17   scheme.  That he acted in furtherance of the concealment

18   scheme.  This requirement -- all right.  This requirement of an

19   affirmative act brings me back to the first element I listed,

20   that you must unanimously find that the defendant engaged in an

21   affirmative act of concealment on at least one occasion after

22   October 3rd, 2013, period.

23           MR. TAYLOR:  Yes.

24           THE COURT:  And I've already talked, before we

25   started, about things that happened that the government can

1     fairly argue fall within that category.

2          All right.  Knowingly and willfully.  Your objection

3     to a higher standard for willfully is noted.  But there is a

4     bracketed portion that he acted with the knowledge that his

5     conduct, and I put in the bracketed portion to deal with the

6     issue and burden, in the event people think it's an issue here,

7     that otherwise this is ambiguous.  I don't know any other

8     unlawful conduct anyone suggested in this case that he

9     committed, but I'm happy to include that, if you think it's

10    necessary.

11         MR. TAYLOR:  No.  We would request that you include

12    the bracketed language, but that you add theses words:  That he

13    knew he had a duty to disclose.  That is, concealing or

14    covering up a fact that he knew he had a duty to disclose.

15         MS. GASTON:  And, Your Honor, that is imposing a

16    higher burden.  So I think -- I don't think that this bracketed

17    language is necessary at all, but if the defendant is concerned

18    about the issue "and burden," then the bracketed text that you

19    have should take care of it.

20         MR. TAYLOR:  Well, respectfully, Your Honor, what he

21    has to know is that that his conduct is unlawful and in order

22    to know that his conduct is unlawful, he's got to know that he

23    is violating a duty.

24         THE COURT:  No, I think what he had to know is that

25    his answers were responsive -- were not responsive to the

1    questions, or there were deliberate omissions in the answers,

2    that that's what he had to know.  And that's what he had to

3    willfully do, deceive or mislead, or conceal.

4              MR. TAYLOR:  In violation --

5              THE COURT:  All right.  And on the page before, where

6    I said he cannot make statements designed to deceive or mislead

7    the decision-makers because they are false or they omit facts

8    he knows to be material to the determination, you asked me to

9    take that out.

10             MR. TAYLOR:  Yes.

11             THE COURT:  All right.  Well, I don't think -- I

12   think what you are trying to do is import the language of a

13   specific intent instruction here.  I think the crime, as we've

14   said all along, is engaging in a concealment scheme.  That's

15   the crime.  That's the crime he has to know he did.  Doesn't

16   have to know what specifically made it illegal or not illegal.

17   He had to be well aware of the fact which is alleged, that he

18   said something that wasn't true or misled or omitted to conceal

19   the facts that were material.

20             MR. TAYLOR:  Your Honor, concealment requires a duty.

21   Failure to disclose or to conceal requires a duty, and we

22   believe that the law would require that the jury be told that

23   he -- in your bracketed language, concealing or covering up a

24   fact, that you should add the words "that he knew he had a duty

25   to disclose."  That is not a -- that's not a stretch.  It

1     simply describes --

2              THE COURT:  I'm willing to say, "Concealing or

3     covering up a fact that he had a duty to disclose."

4              MR. TAYLOR:  He has to know --

5              THE COURT:  I think you're adding a different layer

6     of knowledge here.  All he has to know is that what he was

7     saying wasn't answering the questions.  This is 1001.  Did he

8     answer -- was he truthful or did he scheme to conceal and

9     defraud?  That's it.  You said all along it's up or down, yes

10    or no.  And so, I think trying to say that he knew he had the

11    duty is trying to get into the specific intent.  It's almost

12    verbatim from the specific intent instruction that you asked me

13    to give, and it's what all these case law says, I don't have to

14    be that specific.

15             MR. TAYLOR:  Well, you'll -- we understand that

16    you've ruled, or you've almost ruled, and we stand on our

17    request that he must -- the jury should be told that he

18    knowingly violated a duty in a concealment.  Saying something

19    is false is one thing, but because this is a concealment scheme

20    and he is -- this relates to concealing or covering up a fact,

21    it's essential the jury know that when he did that, he knew he

22    was violating --

23             THE COURT:  The duty we're talking about is the duty

24    to tell the truth when you talk to the government.

25             MR. TAYLOR:  Except --

1          THE COURT:  There's some higher standard of intent

2     that needs to be told that you have a duty that -- I mean, I

3     just --

4          MR. TAYLOR:  Well, this language relates -- it

5     doesn't relate to telling the truth, it relates to concealing

6     or covering up a fact.

7          MS. GASTON:  Right, because this language is intended

8     to cure the issue.

9          MR. TAYLOR:  Sorry, Miss Gaston, you're --

10         THE COURT:  I don't think there is a burden issue.

11    Okay?  So as far as I'm concerned, we don't have to say it at

12    all.  We could just finish that -- to prove the defendant acted

13    willfully -- this is the *Bryan* instruction -- the government

14    must prove that he acted with the knowledge that his conduct

15    was unlawful, period.

16         MS. GASTON:  That's what the government would

17    request, Your Honor.

18         MR. TAYLOR:  Note our objection.

19         THE COURT:  All right.

20         Now, the sixth one was what everyone proposed.  So

21    that's not a change.

22         The question is, then, whether I need to tell them

23    about FARA, or not.  If I tell them about FARA, I'm going to

24    tell them about FARA verbatim and not FARA paraphrased, and

25    that's what this is intended to do.

1           The reason I think it might be necessary is, it is a

2      jury question and not a question of law, whether the facts were

3      material.  And this conversation was about whether FARA applied

4      or it didn't.  So it seems to me what it is, is something that

5      informs whether the facts were material and, therefore, with

6      that, I would be willing to tell them what it is.  So --

7           MR. TAYLOR:  We're okay with that.  We only had a

8      couple of small points that we wanted you to consider in

9      connection with this language.

10          THE COURT:  All right.  Well, the government had not

11     wanted me to give a Foreign Agents Registration Act instruction

12     at all, so I just want to make sure that we're now all okay

13     that I'm going to say something about it.

14          MS. GASTON:  Yes, Your Honor, we're fine with it, as

15     long as it is like this, taken from the statute.

16          THE COURT:  All right.  Mr. Taylor?

17          MR. TAYLOR:  About halfway down the discussion, it

18     should be --

19          THE COURT:  Which page am I on?

20          MR. TAYLOR:  I'm sorry.  I'm going back and forth.

21     16.

22          THE COURT:  Okay.  All right.

23          MR. TAYLOR:  This we request that you make either/or.

24     Strike the word -- to the two bullets that are indented, strike

25     the word "and" and strike the words "information service

 1   employee or political consultant" because that's not relevant

 2   here.

 3            THE COURT:  All right.  Let me just go back to the

 4   beginning.  So, Whose activities, dah, dah, dah, are financed

 5   by a foreign principal, and either who engages within the

 6   United States in political activities, or who acts -- now,

 7   that's not in the statute, but I think it's clarifying, that's

 8   fine.

 9            MR. TAYLOR:  And you could say, "and who either,"

10   after the word "principal."

11            THE COURT:  And who either engages or acts.

12            MR. TAYLOR:  Right.  Yes.

13            THE COURT:  And you want me to take out, "Information

14   service employee or political consultant"?

15            MR. TAYLOR:  Yes, Your Honor.

16            THE COURT:  Is that agreeable to the government?

17            MR. CAMPOAMOR-SANCHEZ:  May we have one second here,

18   Your Honor?

19            MS. GASTON:  One moment, Your Honor.

20            THE COURT:  All right.

21            (Pause.)

22            MR. TAYLOR:  While they're consulting, you could

23   strike the first line, which says Count 1 is the only charge in

24   this case.

25            THE COURT:  Okay.  I was going to change it to the

1    alleged scheme to conceal material facts is the only charge in

2    this case.   The defendant is not charged.   But it's not

3    necessary to do the contrast.

4            But, they're trying to think about their answer to

5    the other question.   Let's let them tell me before we make them

6    do something else.

7            Yes?

8            MS. GASTON:   So, Your Honor, we would be fine with

9    striking "or political consultant," but the letter that is

10   Government's Exhibit 5 does use the phrase "Information service

11   employee," so we would think they should receive that.

12           THE COURT:   All right.   So I'll say, "Or within the

13   United States as a public relations counsel, publicity agent,

14   information service employee."   I'll take out "or political

15   consultant."

16           Going back to page 15, do we need a statement saying

17   that the scheme is the only charge?   Or do we just go straight

18   to the defendant is not charged.

19           MS. GASTON:   We can go right to the defendant is not

20   charged.

21           THE COURT:   Okay.   All right.   Anything else on page

22   16?

23           MR. TAYLOR:   Yes, Your Honor.   We request that you

24   add, at the end, after the paragraph that begins, "The term

25   publicity agent."

1            THE COURT:  Um-hum.

2            MR. TAYLOR:  You add the words, quote:  A person has

3     no obligation to register if he or she is acting on his own

4     behalf or for his own interests, as opposed to acting for or in

5     the interest --

6            THE COURT:  No.  I'm going to tell them what FARA

7     says.  And what FARA says is -- we've got all over the place --

8     at the order, request, or under the direction or control for

9     or -- I'm quoting the language of the statute here.  Your

10    objection is noted.

11           MR. TAYLOR:  Thank you.

12           MS. GASTON:  And then, Your Honor, because we list

13    public relations counsel, publicity agent, and information

14    service employee, and then give the definition for public

15    relations counsel or publicity agent, we would submit that we

16    should also give the definition for information service

17    employee from the statute.

18           THE COURT:  All right.

19           MR. TAYLOR:  Since we object to the whole idea, we

20    object to that, too.

21           THE COURT:  All right.  What does it say that person

22    does?

23           MS. GASTON:  It includes any person who's engaged in

24    furnishing, disseminating, or publishing accounts,

25    descriptions, information or data with respect to the

1      political, industrial employment, economic, social, cultural --

2              Oh, are you actually writing it down now?

3              THE COURT:  No, I was listening, but there is a court

4      reporter typing what you say.

5              MS. GASTON:  Or data with respect to the political,

6      industrial, employment, economic, social, cultural, or other

7      benefits, advantages, facts, or conditions of any country other

8      than the United States, or of any government of a foreign

9      country, or of a foreign political party, I think that part can

10     be --

11             THE COURT:  Started with the "or any data," I think

12     is gone.

13             MS. GASTON:  Yes.

14             THE COURT:  Read me the first part again.

15             MS. GASTON:  The term information service employee

16     includes any person who is engaged in furnishing,

17     disseminating, or publishing accounts, descriptions,

18     information, or data with respect to those things.

19             THE COURT:  All right.  I'll do that much.  I'm not

20     sure it really bears on this very much.

21             MR. TAYLOR:  This doesn't apply, Your Honor.

22             MS. GASTON:  Well, it's cited in the determination

23     letter.

24             THE COURT:  All right.  I'll just -- we're not

25     arguing whether the determination is correct, we're arguing

1    whether these facts were important to a reasonable agency.

2              Now, I added the last -- the second to the last

3    paragraph, or the last paragraph on page 16.  The defendant, I

4    think, fairly raised concerns about activities outside the

5    United States and so I think it's important to clarify that and

6    so I've added that.

7              And the final sentence is just to avoid any concern

8    that there's some suggestion that there was something illegal

9    about being an agent at all, or of being paid by the Ukraine or

10   anything like that.  So I don't have to give that, but I think

11   it's appropriate to give that.  The top of page 17.

12             MR. TAYLOR:  We don't object.

13             THE COURT:  All right.  So --

14             MR. TAYLOR:  Your Honor?

15             THE COURT:  Yes.

16             MR. TAYLOR:  I wanted to be sure that my -- the

17   language we were requesting was fully in the record, and you

18   advised that you were not going to give it, but I'm not sure I

19   got to the end of my sentence.

20             THE COURT:  Go ahead.

21             MR. TAYLOR:  The language we're requesting is, quote,

22   A person has no obligation to register if he or she is acting

23   on his own behalf or for his own interest, as opposed to acting

24   for or in the interest of a foreign principal, close quote.

25   That's the language we'd requested that you give.  And I

1    understand you said you're not going to do it.

2         THE COURT:  Right.  And it was in your written

3    submission, too.  But that's fine to put on the record.

4         MR. TAYLOR:  All right.  Thank you.

5         THE COURT:  Okay.  I believe that we have now been

6    through every instruction, we know what the changes are we're

7    going to make to the instructions.  The only issue I haven't

8    ruled on is whether I should include an instruction

9    specifically identifying the material facts they may consider.

10        One thing we were going to do is have the defense

11   confer about whether they want me to do that or not,

12   notwithstanding legal reasons why they think I should.  There

13   may be strategic reasons why I shouldn't.  So you need to think

14   about that and I need to look at the variance issue with

15   respect to whether Vin Weber is an actionable omission, or not.

16   I will do that.

17        It is ten of 12, we told the jury to come at one.  It

18   seems to me to be eminently possible and highly desirable to

19   begin your closing arguments at one.  So what I suggest we do

20   is to return at 12:45 and deal with those final questions and

21   then bring the jury in.

22        MR. TAYLOR:  Very well, Your Honor.

23        THE COURT:  The problem is that there might be a

24   little time gap then for inserting the list.

25        MR. TAYLOR:  Your Honor, there is one other request.

1   We had, in response to a request from you, given you a proposed

2   instruction on mens rea, which included a good faith

3   instruction.  You have indicated you don't intend to give an

4   instruction on good -- or, you haven't included one.  We

5   request that you include one.  And I've excerpted this from the

6   pleading that we filed.  I would like to hand it up, if I may.

7          THE COURT:  All right.

8          When was the evidence that he acted under a good

9   faith belief that he didn't have to tell them those facts?  I

10  thought the evidence was that he acted under the good faith

11  belief that he told them what they needed to know, and that

12  his -- it's all in there, if you look.  He said in making those

13  characterizations I was not acting at the behest of, informing,

14  etcetera, and so that told them what they needed to do.  Where

15  did he say he didn't think he had to answer the questions or

16  disclose these meetings?

17         He said, when he said he gave it out between the 12th

18  and the 13th, and he listed all the important newspapers that

19  he did disclose it, that putting it in a footnote he did

20  disclose it.  I don't recall that he testified:  I went in

21  there and thought about these facts and truly believed that I

22  didn't have to tell them those.  Why is this an appropriate

23  instruction?

24         MR. TAYLOR:  Well, it's an instruction on the defense

25  theory of the case and it's a standard instruction on good

1     faith.

2            Let me also hand you a citation called *United States*

3     *versus Hurt*.

4            THE COURT:  But, and instruction has to be supported

5     by evidence.  And it's one thing to say he said at various

6     times that he reasonably believed that what he did did not

7     cross the FARA registration line.  He made that point.  But

8     what testimony is there that he didn't reasonably think that

9     those facts were the facts they were asking for and that he was

10    supposed to disclose?  He --

11           MR. TAYLOR:  I very specifically asked him, Did you

12    believe that you were concealing anything from the FARA unit

13    that it was asking you to disclose?  I asked him that question

14    on repeated occasions and he said, No.

15           THE COURT:  But he explained that the reason he

16    didn't believe he was concealing it was because he didn't

17    conceal it.  He never said, I didn't think that I had any

18    obligation to disclose it.  He said, I told them, it's there.

19           MR. TAYLOR:  I actually believe the transcript will

20    reflect that I asked him, Did you believe you were concealing

21    anything you thought you had an obligation to disclose?

22           And, frankly, of course, the October meeting is very

23    different from the other part of the government's case.  A good

24    faith instruction is -- is mandated, strikes me, from the

25    Court's decision in *Hurt* and others, that if it is -- if it is

```
 1    a correct -- if it's correct, and it is, about what his good

 2    faith -- what the relevance of his good faith belief is, then

 3    the Court should give it.

 4          THE COURT:  All right.  I'll look at the case.  Does

 5    the government have a point of view?

 6          MS. GASTON:  Yes, Your Honor.  This is -- this

 7    instruction is basically proposing, in another way, that the

 8    mens rea that is relevant here is whether he knew that he had a

 9    legal -- this basically is, again, trying to go around the

10    appropriate willfulness standard in this case.  And --

11          THE COURT:  That's what Cheek was all about, was the

12    interplay of willfulness and good faith.  And so, I think I

13    need to look at that case as well.

14          Go ahead.

15          MS. GASTON:  Yes.  But, the good faith -- it's not

16    whether he believed he had a legal duty to disclose the facts,

17    it's whether he, you know, thought he was answering the

18    questions, and that was not -- that was not the evidence that

19    is in the record here.

20          MR. TAYLOR:  Your Honor.

21          THE COURT:  I'm going to say what the legal duty is

22    and that they have to find that he violated it.  And I think he

23    may be entitled to an instruction that if he believed in good

24    faith that his actions complied with the law, that good faith

25    is a defense.  But I think the question is, comply with the
```

1    law.  With respect to willfully, the law is 1001(a)(1), that's

2    the law.

3                    MR. TAYLOR:  May I read you a couple of lines from

4    the transcript?

5                    THE COURT:  Yes.

6                    MR. TAYLOR:  At the end of his direct examination I

7    asked him, quote, on page 2992:

8                    "Did you leave anything out of the letter that you

9    thought FARA was asking for?

10                   "No.

11                   And then, "Did you ever intentionally leave something

12   out of a letter or a meeting that you thought they had asked

13   you to provide?

14                   "No."

15                   So I do think the evidence is in the record of --

16   that supports the good -- such a good faith instruction, Your

17   Honor.

18                   THE COURT:  All right.  Well, you know, I do believe

19   that at the time those answers seemed to be that nothing was

20   concealed, as opposed to I concealed it because I didn't think

21   I had to say it, which is different.  That doesn't mean that

22   you're not entitled to some kind of good faith instruction,

23   since there is a requirement that the jury find that he

24   willfully acted in violation of the law.  But narrowly defining

25   the law as the legal duty to disclose facts to the FARA unit, I

1    think that this instruction has to parallel the willfulness

2    instruction and what he's accused of doing, which is engaging

3    in a scheme to conceal material facts.

4            So, I might want to tweak this instruction.  At the

5    time, I believe it was woven in with your willfulness

6    instruction, which is why I need to address that separately.

7    But, it's a fair request for me to address it separately, so I

8    will.  And I think you need to know what I'm going to say

9    before you argue.

10           So, I think we should come back in 45 minutes.

11           MR. TAYLOR:  All right.

12           THE COURT:  Do you know now, have you talked among

13   yourselves about whether you want me to list the material

14   facts, or you don't?

15           MR. TAYLOR:  Not yet.

16           THE COURT:  All right.  If you decide, if you could

17   send Mr. Haley an email, or send the ECF inbox an email so that

18   we could stop worrying about it, that would be helpful.

19           All right.

20           MR. TAYLOR:  Oh, Your Honor, we -- pursuant to Rule

21   29, we asked the Court to dismiss the case at the close of all

22   the evidence, and we renew our motion that the Court dismiss

23   the case based upon the insufficiency of the government's proof

24   in its own case.  We understand you have reserved.

25           THE COURT:  I have reserved and I'm going to continue

1          to do so.  But your motion is noted.

2                    MR. TAYLOR:  Thank you, Your Honor.

3                              *   *   *

```
 1

 2                  CERTIFICATE OF OFFICIAL COURT REPORTER

 3

 4

 5           I, JANICE DICKMAN, do hereby certify that the above

 6      and foregoing constitutes a true and accurate transcript of my

 7      stenograph notes and is a full, true and complete transcript of

 8      the proceedings to the best of my ability.

 9                          Dated this 3rd day of September, 2019.

10

11

12                          /s/_____

13                          Janice E. Dickman, CRR, RMR, CRC
                            Official Court Reporter
14                          Room 6523
                            333 Constitution Avenue NW
15                          Washington, D.C. 20001

16

17

18

19

20

21

22

23

24

25
```

## /

**/s** [1] - 3346:12

## 1

**1** [2] - 3310:20, 3334:23
**10** [2] - 3283:8, 3304:15
**100** [1] - 3267:22
**1000** [1] - 3268:3
**1001** [6] - 3278:22, 3279:16, 3284:2, 3287:1, 3287:9, 3331:7
**1001(a)(1** [3] - 3280:16, 3283:1, 3343:1
**1001(a)(1)** [2] - 3294:4, 3294:13
**101** [1] - 3282:19
**11** [4] - 3304:12, 3304:19, 3304:20, 3305:7
**1108** [1] - 3280:14
**1117** [1] - 3280:14
**11th** [1] - 3276:12
**12** [3] - 3305:8, 3310:18, 3339:17
**120** [1] - 3275:20
**121** [1] - 3270:15
**1221** [1] - 3294:14
**1234** [1] - 3294:15
**12:45** [1] - 3339:20
**12th** [1] - 3340:17
**13** [5] - 3305:8, 3308:10, 3311:3, 3314:23, 3315:25
**135** [1] - 3283:9
**13th** [1] - 3340:18
**14** [7] - 3305:3, 3305:8, 3308:9, 3308:10, 3316:2, 3326:22, 3328:3
**15** [6] - 3267:5, 3267:8, 3291:17, 3305:8, 3327:7, 3335:16
**16** [6] - 3305:4, 3305:8, 3333:21, 3335:22, 3338:3
**17** [3] - 3306:4, 3306:5, 3338:11
**17-3018** [1] - 3283:13
**1800** [1] - 3268:2
**184** [1] - 3283:10
**19-125** [1] - 3269:2
**19-CR-125** [1] - 3267:3
**192** [1] - 3283:8
**1976** [1] - 3283:9
**1991** [1] - 3283:8
**1996** [1] - 3278:20

## 2

**2** [6] - 3295:20, 3296:12, 3310:25, 3311:3, 3311:25, 3312:24
**20** [1] - 3322:4
**20001** [2] - 3268:9, 3346:15
**2001** [1] - 3288:15

**20036** [1] - 3268:3
**2006** [2] - 3277:24, 3280:13
**201** [1] - 3288:15
**2010** [1] - 3283:12
**2012** [3] - 3305:1, 3321:20, 3322:13
**2013** [6] - 3291:24, 3305:1, 3305:2, 3327:24, 3328:9, 3328:22
**2017** [1] - 3283:13
**2018** [1] - 3294:15
**2019** [2] - 3267:6, 3346:9
**202** [3] - 3267:15, 3267:19, 3268:4
**202-354-3267** [1] - 3268:9
**20530** [2] - 3267:15, 3267:18
**21** [3] - 3283:6, 3321:18, 3322:4
**21202** [1] - 3267:23
**233-0986** [1] - 3267:19
**2440** [1] - 3267:23
**24th** [1] - 3275:2
**252-7698** [1] - 3267:15
**273** [1] - 3280:12
**29** [3] - 3296:6, 3320:9, 3344:21
**2992** [1] - 3343:7

## 3

**3** [4] - 3267:6, 3271:6, 3296:13, 3323:22
**318** [2] - 3280:12, 3294:14
**33** [1] - 3322:5
**333** [2] - 3268:8, 3346:14
**35** [1] - 3293:23
**3917651** [1] - 3283:13
**396** [1] - 3270:17
**3rd** [16] - 3289:12, 3289:14, 3290:7, 3290:18, 3291:11, 3291:23, 3305:1, 3305:2, 3322:9, 3327:12, 3327:16, 3327:24, 3328:8, 3328:22, 3346:9

## 4

**4** [5] - 3296:17, 3296:22, 3314:25, 3315:24, 3323:22
**402** [1] - 3270:17
**410** [1] - 3267:24
**429** [1] - 3283:8
**433** [1] - 3280:12
**446** [1] - 3277:23
**45** [1] - 3344:10
**498** [1] - 3283:7

## 5

**5** [1] - 3335:10
**510** [1] - 3283:9
**518** [1] - 3278:19

**524** [1] - 3283:10
**529** [1] - 3279:3
**555** [1] - 3267:14
**579** [1] - 3293:12

## 6

**612** [1] - 3283:11
**63** [7] - 3319:17, 3319:20, 3320:14, 3322:2, 3322:11, 3325:5, 3326:15
**6523** [2] - 3268:8, 3346:14
**658** [1] - 3293:23
**671** [1] - 3277:24
**698** [1] - 3283:11

## 7

**7** [3] - 3283:6, 3307:16, 3308:9
**70-71** [1] - 3293:23
**731** [1] - 3280:13
**778-1814** [1] - 3268:4

## 8

**8** [1] - 3297:9
**867** [1] - 3283:2
**87** [1] - 3278:19
**880** [1] - 3293:12
**895** [1] - 3283:2

## 9

**949-1146** [1] - 3267:24
**950** [1] - 3267:18
**97** [2] - 3275:20, 3282:19
**990** [1] - 3283:3
**9:45** [1] - 3267:7

## A

**a.m** [1] - 3267:7
**Aabelson@zuckerman.com** [1] - 3267:25
**abandoned** [1] - 3272:14
**Abelson** [2] - 3267:21, 3269:9
**abetting** [3] - 3287:9, 3287:10, 3287:12
**abiding** [5] - 3286:17, 3301:9, 3302:13, 3302:18, 3303:5
**ability** [1] - 3346:8
**able** [3] - 3270:9, 3310:13, 3325:4
**absolutely** [2] - 3272:22, 3289:12
**abstain** [1] - 3317:23
**abuse** [1] - 3284:18
**accept** [2] - 3272:21, 3281:15
**access** [4] - 3271:20, 3274:6, 3275:12, 3276:11

accident [1] - 3305:20
accommodate [1] - 3303:1
accord [1] - 3308:23
accordance [1] - 3281:24
according [1] - 3294:1
accounts [2] - 3336:24,
3337:17
accurate [3] - 3301:13,
3301:16, 3346:6
accurately [3] - 3270:3, 3279:4,
3285:23
accused [1] - 3344:2
acknowledge [1] - 3294:6
act [22] - 3281:17, 3289:11,
3289:13, 3289:15, 3290:6,
3290:16, 3291:2, 3291:20,
3292:1, 3292:18, 3293:4,
3293:11, 3293:21, 3294:11,
3327:15, 3327:21, 3328:6,
3328:12, 3328:13, 3328:16,
3328:19, 3328:21
Act [2] - 3285:13, 3333:11
acted [12] - 3284:24, 3309:22,
3327:23, 3328:8, 3328:10,
3328:17, 3329:4, 3332:12,
3332:14, 3340:8, 3340:10,
3343:24
acting [7] - 3272:14, 3273:8,
3336:3, 3336:4, 3338:22,
3338:23, 3340:13
Action [1] - 3267:3
actionable [5] - 3311:22,
3324:3, 3324:7, 3325:14,
3339:15
actions [1] - 3342:24
activities [6] - 3277:11,
3284:15, 3315:21, 3334:4,
3334:6, 3338:4
acts [12] - 3292:11, 3292:13,
3293:7, 3293:9, 3294:3,
3294:21, 3303:18, 3315:3,
3315:14, 3334:6, 3334:11
actual [1] - 3328:14
Adam [3] - 3267:17, 3267:21,
3269:9
add [5] - 3319:11, 3329:12,
3330:24, 3335:24, 3336:2
added [5] - 3270:8, 3297:14,
3320:19, 3338:2, 3338:6
adding [2] - 3286:16, 3331:5
addition [2] - 3320:8, 3323:5
additional [1] - 3324:5
address [3] - 3305:20, 3319:18,
3344:6, 3344:7
addressed [2] - 3282:22,
3283:21
adequately [1] - 3285:16
admissions [1] - 3282:23
admitted [2] - 3270:18, 3270:20
advance [2] - 3292:15, 3292:17

advanced [2] - 3272:17,
3272:20
advancing [1] - 3275:9
advantages [1] - 3337:7
advised [2] - 3276:20, 3338:18
advisement [1] - 3323:12
advising [1] - 3312:1
AECA [2] - 3285:14, 3287:5
affect [1] - 3280:3
affirmatively [2] - 3278:13,
3322:8
agency [9] - 3277:22, 3280:9,
3281:5, 3281:14, 3283:20,
3284:8, 3307:15, 3323:25,
3338:1
agent [6] - 3294:20, 3335:13,
3335:25, 3336:13, 3336:15,
3338:9
agents [1] - 3323:7
Agents [1] - 3333:11
agree [18] - 3271:14, 3275:25,
3276:13, 3276:17, 3276:20,
3282:4, 3282:15, 3290:6,
3291:12, 3291:19, 3292:8,
3303:20, 3304:14, 3313:11,
3316:20, 3317:20, 3323:19,
3327:11
agreeable [1] - 3334:16
agreed [4] - 3273:1, 3274:23,
3289:5, 3301:4
agreement [8] - 3289:15,
3297:21, 3297:24, 3297:25,
3298:8, 3298:12, 3298:16,
3313:18
Agreement [3] - 3297:9,
3297:19, 3299:3
agrees [4] - 3292:4, 3317:11,
3317:21, 3317:25
ahead [3] - 3300:21, 3338:20,
3342:14
aiding [3] - 3287:9, 3287:12
akin [2] - 3280:24, 3287:5
allegation [5] - 3292:9,
3319:22, 3320:25, 3321:2,
3321:3
allegations [1] - 3326:8
allege [1] - 3320:20
alleged [12] - 3277:4, 3279:22,
3280:4, 3282:2, 3304:25,
3320:12, 3320:13, 3323:4,
3325:9, 3326:15, 3330:17,
3335:1
allegedly [2] - 3293:3, 3323:1
alleges [1] - 3321:22
alleging [1] - 3320:15
allergies [1] - 3269:14
allowed [1] - 3324:6
almost [2] - 3331:11, 3331:16
alone [2] - 3282:4, 3293:7
alternate [2] - 3307:7, 3308:9

alternates [2] - 3308:9, 3308:10
ambiguity [1] - 3288:1
ambiguous [1] - 3329:7
America [2] - 3267:3, 3269:2
AMY [1] - 3267:9
analysis [1] - 3282:8
answer [11] - 3277:13, 3292:19,
3296:18, 3315:21, 3321:10,
3321:13, 3323:6, 3324:13,
3331:8, 3335:4, 3340:15
answered [1] - 3292:20
answering [2] - 3331:7,
3342:17
answers [6] - 3292:19, 3308:11,
3317:18, 3329:25, 3330:1,
3343:19
anticipated [1] - 3269:19
anticipating [1] - 3309:11
anyway [1] - 3297:14
apart [1] - 3288:4
appeal [1] - 3283:14
Appeals [1] - 3283:13, 3285:20
appear [1] - 3280:20
applicability [3] - 3279:23,
3282:11, 3288:9
applicable [2] - 3281:1, 3287:23
application [1] - 3284:16
applied [2] - 3304:10, 3333:3
apply [5] - 3283:1, 3290:21,
3313:24, 3315:18, 3337:21
appreciate [2] - 3307:13,
3323:12
approaching [1] - 3323:25
appropriate [7] - 3282:16,
3300:5, 3306:2, 3309:23,
3338:11, 3340:22, 3342:10
approval [1] - 3277:25
approved [3] - 3325:2, 3325:20,
3325:23
arguable [1] - 3322:23
arguably [1] - 3273:6
argue [25] - 3270:23, 3272:10,
3272:24, 3273:7, 3275:14,
3276:7, 3281:4, 3281:6,
3281:10, 3281:13, 3281:16,
3293:12, 3311:15, 3311:17,
3311:18, 3319:19, 3320:6,
3321:9, 3324:5, 3324:18,
3325:4, 3325:7, 3326:7, 3329:1,
3344:9
argued [8] - 3285:24, 3315:7,
3320:18, 3321:13, 3322:17,
3322:21, 3324:3, 3325:14
arguing [2] - 3337:25
argument [9] - 3271:25, 3273:3,
3275:23, 3277:2, 3284:12,
3292:9, 3310:13, 3323:15,
3325:19
arguments [5] - 3279:17,
3284:14, 3296:6, 3320:10,

3339:19
**arise** [1] - 3270:3
**arises** [6] - 3287:2, 3311:13, 3313:4, 3314:16, 3314:19, 3322:16
**arising** [1] - 3322:24
**arm** [1] - 3275:18
**Arms** [1] - 3285:13
**arrested** [1] - 3304:5
**article** [3] - 3272:11, 3281:11, 3281:12
**aside** [2] - 3283:24, 3326:23
**aspect** [1] - 3274:19
**asserted** [1] - 3272:1
**assertion** [2] - 3272:3, 3278:24
**assistant** [1] - 3322:10
**assume** [1] - 3289:24
**assure** [1] - 3288:10
**assured** [1] - 3311:20
**attached** [1] - 3281:11
**attempting** [1] - 3281:21
**Attitude** [1] - 3306:24
**ATTORNEY'S** [1] - 3267:13
**auditors** [1] - 3279:20
**author** [1] - 3275:12
**authority** [1] - 3323:12
**Avenue** [3] - 3267:18, 3268:8, 3346:14
**average** [1] - 3286:9
**avoid** [1] - 3338:7
**avoided** [1] - 3278:3
**Awaiting** [1] - 3299:11
**awaiting** [2] - 3297:12, 3299:10
**aware** [1] - 3330:17

## B

**backdating** [1] - 3315:12
**background** [3] - 3274:2, 3275:4, 3284:17
**bad** [4] - 3272:18, 3272:19, 3274:4, 3303:18
**Baltimore** [1] - 3267:23
**bar** [2] - 3290:22, 3307:20
**based** [7] - 3281:7, 3283:7, 3293:6, 3306:16, 3316:9, 3325:6, 3344:23
**basis** [5] - 3273:11, 3280:2, 3280:3, 3317:10, 3320:13
**bearing** [2] - 3282:21, 3285:10
**bears** [4] - 3277:17, 3281:9, 3282:1, 3337:20
**become** [1] - 3293:19
**BEFORE** [1] - 3267:9
**begin** [2] - 3304:25, 3339:19
**beginning** [5] - 3276:5, 3297:21, 3312:21, 3316:4, 3334:4
**begins** [2] - 3319:8, 3335:24

**behalf** [4] - 3272:15, 3273:9, 3336:4, 3338:23
**behavior** [1] - 3273:12
**behest** [1] - 3340:13
**behind** [2] - 3272:9, 3273:19
**belief** [3] - 3340:9, 3340:11, 3342:2
**belong** [1] - 3305:22
**below** [1] - 3311:1
**bench** [2] - 3307:11, 3307:12
**benefits** [1] - 3337:7
**Benton** [3] - 3287:21, 3287:22, 3287:24
**BERMAN** [1] - 3267:9
**best** [5] - 3346:8
**better** [5] - 3274:8, 3314:1, 3317:1, 3324:10, 3324:13
**between** [3] - 3322:15, 3326:22, 3340:17
**Between** [1] - 3306:23
**Beyond** [1] - 3270:17
**binding** [1] - 3283:25
**Bishop** [1] - 3288:16
**bit** [1] - 3309:8
**black** [1] - 3272:17
**Block** [1] - 3278:2
**Book** [10] - 3270:13, 3295:19, 3297:4, 3297:8, 3298:22, 3300:1, 3301:4, 3301:24, 3302:6, 3306:25
**bottom** [3] - 3295:20, 3296:12, 3306:4
**bound** [1] - 3278:6
**bracket** [4] - 3312:23, 3316:14, 3317:13, 3319:7
**bracketed** [17] - 3296:11, 3296:22, 3310:25, 3311:2, 3311:14, 3312:1, 3312:2, 3312:17, 3316:10, 3317:2, 3317:4, 3329:4, 3329:5, 3329:12, 3329:16, 3329:18, 3330:23
**brackets** [4] - 3303:21, 3312:19, 3316:6, 3316:13
**Bradley** [1] - 3267:17
**brand** [1] - 3324:24
**break** [3] - 3310:11, 3310:12, 3324:10
**breaking** [1] - 3286:3
**bring** [3] - 3325:11, 3325:13, 3339:21
**brings** [4] - 3291:15, 3328:6, 3328:19
**broke** [1] - 3309:13
**Bruce** [1] - 3273:5
**bryan** [1] - 3283:9
**Bryan** [7] - 3284:22, 3285:3, 3285:21, 3286:13, 3286:18, 3287:16, 3332:13
**bullet** [1] - 3321:17

**bullets** [1] - 3333:24
**Burden** [6] - 3283:12, 3285:7, 3285:11, 3286:1, 3286:18, 3288:3
**burden** [6] - 3287:3, 3296:25, 3329:6, 3329:16, 3329:18, 3332:10
**business** [1] - 3307:2
**buy** [1] - 3278:25

## C

**cabin** [1] - 3325:1
**Calhoun** [8] - 3278:19, 3279:22, 3279:25, 3280:3, 3280:11, 3281:5, 3318:15, 3318:19
**Calhoun's** [2] - 3279:9, 3279:17
**Campoamor** [3] - 3267:12, 3269:5, 3326:6
**CAMPOAMOR** [10] - 3269:4, 3296:2, 3296:19, 3297:3, 3307:21, 3309:6, 3309:18, 3309:24, 3325:17, 3334:17
**Campoamor-Sanchez** [1] - 3267:12
**CAMPOAMOR-SANCHEZ** [10] - 3269:4, 3296:2, 3296:19, 3297:3, 3307:21, 3309:6, 3309:18, 3309:24, 3325:17, 3334:17
**cannot** [5] - 3270:16, 3294:16, 3318:12, 3319:2, 3330:6
**cap** [1] - 3323:21
**capable** [1] - 3283:19
**captured** [1] - 3294:22
**care** [1] - 3329:19
**carefully** [1] - 3293:18
**carrying** [1] - 3272:15
**carving** [1] - 3286:21
**case** [56] - 3269:2, 3269:18, 3270:4, 3275:21, 3276:21, 3277:9, 3279:19, 3280:7, 3281:25, 3282:9, 3282:20, 3282:22, 3282:25, 3283:13, 3285:2, 3285:7, 3285:10, 3285:13, 3286:1, 3286:25, 3287:9, 3288:4, 3288:11, 3288:15, 3289:1, 3296:1, 3296:3, 3304:5, 3305:19, 3305:21, 3307:18, 3311:12, 3312:7, 3312:8, 3312:10, 3312:13, 3315:19, 3321:25, 3322:1, 3323:16, 3323:24, 3324:15, 3329:8, 3331:13, 3334:24, 3335:2, 3340:25, 3341:23, 3342:4, 3342:10, 3342:13, 3344:21, 3344:23, 3344:24
**Case** [3] - 3295:19, 3295:20, 3295:23

**cased** [1] - 3287:21
**cases** [7] - 3283:10, 3284:19, 3290:9, 3293:19, 3315:10, 3318:15, 3318:16
**casual** [1] - 3284:6
**cat** [1] - 3279:7
**cat-and-mouse** [1] - 3279:7
**catch** [1] - 3303:14
**category** [1] - 3329:1
**cautionary** [1] - 3306:21
**certain** [1] - 3296:1
**certainly** [4] - 3269:25, 3295:2, 3309:24, 3327:20
**CERTIFICATE** [1] - 3346:2
**certify** [1] - 3346:5
**challenging** [1] - 3279:4
**chance** [1] - 3274:9
**change** [5] - 3292:6, 3298:23, 3318:25, 3332:21, 3334:25
**changed** [2] - 3299:5, 3310:20
**changes** [1] - 3339:6
**Character** [1] - 3300:4
**character** [9] - 3300:10, 3300:13, 3300:23, 3301:15, 3301:20, 3302:8, 3302:9, 3303:18, 3304:16
**characterizations** [1] - 3340:13
**characterized** [1] - 3292:21
**charge** [7] - 3275:22, 3276:1, 3288:24, 3325:6, 3334:23, 3335:1, 3335:17
**charged** [10] - 3277:1, 3278:21, 3287:18, 3287:19, 3288:5, 3288:8, 3320:14, 3335:2, 3335:18, 3335:20
**charges** [2] - 3273:19, 3310:20
**chart** [9] - 3320:16, 3320:21, 3322:20, 3323:19, 3323:20, 3323:21, 3323:22, 3324:1, 3324:10
**checks** [1] - 3315:12
**Cheek** [10] - 3283:7, 3285:2, 3285:5, 3286:1, 3286:5, 3286:20, 3287:5, 3288:15, 3342:11
**Cheek-specific** [1] - 3285:2
**Chief** [1] - 3284:4
**chooses** [3] - 3316:5, 3316:15, 3318:24
**Circuit** [9] - 3277:24, 3278:20, 3280:12, 3283:3, 3283:12, 3285:4, 3286:18, 3287:14, 3293:23
**Circuit's** [1] - 3287:1
**circuits** [1] - 3280:15
**circulated** [1] - 3289:25
**circumstances** [1] - 3318:13
**Circumstantial** [1] - 3297:7
**citation** [1] - 3341:2
**cited** [6] - 3277:24, 3278:20,

3280:13, 3283:10, 3290:8, 3337:22
**cites** [1] - 3318:17
**citing** [3] - 3280:23, 3294:17, 3318:16
**citizen** [1] - 3286:9
**citizens** [1] - 3286:17
**city** [5] - 3278:4, 3278:8, 3278:11, 3278:14, 3278:15
**claim** [1] - 3305:24
**claimed** [1] - 3279:15
**claiming** [2] - 3278:22, 3305:19
**clarify** [1] - 3338:5
**clarifying** [1] - 3334:7
**clause** [3] - 3297:20, 3297:21, 3298:12
**clear** [4] - 3277:18, 3285:5, 3293:19, 3325:22
**clearly** [1] - 3284:23
**clever** [1] - 3279:7
**client** [2] - 3272:14, 3310:7
**client's** [1] - 3272:9
**close** [9] - 3269:18, 3278:14, 3278:17, 3279:10, 3279:15, 3279:19, 3280:6, 3338:24, 3344:21
**closing** [2] - 3325:19, 3339:19
**Club** [3] - 3271:11, 3274:24, 3275:17
**clues** [1] - 3281:13
**COLUMBIA** [2] - 3267:1, 3267:14
**combined** [1] - 3285:19
**comfort** [2] - 3325:18, 3326:6
**comments** [1] - 3273:21
**commission** [1] - 3288:7
**Commission** [1] - 3287:11
**committed** [3] - 3289:2, 3290:17, 3329:9
**communication** [2] - 3307:14, 3309:4
**communications** [2] - 3284:13, 3306:23
**community** [8] - 3300:25, 3301:10, 3301:22, 3302:8, 3302:14, 3302:19, 3302:22, 3303:6
**compiled** [1] - 3323:23
**complete** [4] - 3281:20, 3317:14, 3346:7
**completed** [1] - 3310:14
**completely** [1] - 3309:22
**complex** [1] - 3286:12
**complexity** [1] - 3315:17
**complicated** [2] - 3285:19, 3287:15
**complied** [1] - 3342:24
**comply** [1] - 3342:25
**component** [1] - 3315:7

**comprehend** [1] - 3286:9
**computer** [1] - 3269:15
**conceal** [18] - 3275:24, 3276:1, 3277:4, 3282:10, 3282:21, 3288:14, 3288:24, 3289:4, 3290:13, 3306:2, 3315:20, 3330:3, 3330:18, 3330:21, 3331:8, 3335:1, 3341:17, 3344:3
**concealed** [14] - 3276:17, 3290:24, 3291:11, 3291:23, 3312:25, 3315:22, 3320:18, 3320:20, 3321:1, 3321:3, 3321:8, 3325:9, 3343:20
**Concealing** [2] - 3279:14, 3331:2
**concealing** [7] - 3329:13, 3330:23, 3331:20, 3332:5, 3341:12, 3341:16, 3341:20
**concealment** [32] - 3275:21, 3276:16, 3277:20, 3278:21, 3279:12, 3280:21, 3281:17, 3282:17, 3290:18, 3292:12, 3292:13, 3294:3, 3294:11, 3295:7, 3311:8, 3313:2, 3314:8, 3315:4, 3315:14, 3315:15, 3315:16, 3315:18, 3326:9, 3328:14, 3328:16, 3328:17, 3328:21, 3330:14, 3330:20, 3331:18, 3331:19
**conceded** [1] - 3284:11
**concept** [1] - 3273:18
**concern** [7] - 3287:1, 3297:15, 3307:17, 3307:23, 3307:24, 3308:3, 3338:7
**concerned** [6] - 3284:1, 3284:3, 3286:13, 3307:19, 3329:17, 3332:11
**concerning** [1] - 3273:2
**concerns** [3] - 3309:20, 3309:25, 3338:4
**concerted** [1] - 3318:1
**conclude** [3] - 3273:15, 3278:1, 3282:11
**concluded** [2] - 3286:14, 3287:11
**conclusion** [1] - 3293:1
**conclusions** [2] - 3273:1, 3273:10
**conclusively** [1] - 3288:16
**concurrence** [1] - 3308:21
**concurring** [2] - 3283:24, 3285:1
**condescending** [1] - 3307:2
**conditions** [1] - 3337:7
**conduct** [16] - 3284:25, 3285:16, 3285:17, 3285:22, 3286:15, 3288:1, 3288:2, 3288:4, 3288:11, 3288:13, 3294:12, 3329:5, 3329:8, 3329:21, 3329:22, 3332:14

**Conduct** [1] - 3306:24
**conducting** [1] - 3280:9
**confer** [1] - 3339:11
**conference** [2] - 3320:17, 3320:22
**conflict** [2] - 3278:4, 3278:7
**confused** [1] - 3311:19
**congratulated** [1] - 3271:23
**congratulating** [1] - 3271:17
**Congress's** [2] - 3286:6, 3286:15
**connected** [2] - 3321:19, 3322:9
**connecting** [3] - 3275:9, 3322:12, 3322:15
**connection** [4] - 3282:17, 3295:25, 3327:6, 3333:9
**consequence** [1] - 3305:12
**consequences** [1] - 3284:15
**consider** [5] - 3288:6, 3292:25, 3326:8, 3333:8, 3339:9
**considering** [1] - 3308:25
**Consistent** [1] - 3304:3, 3304:20
**consistent** [9] - 3270:11, 3275:16, 3278:19, 3280:11, 3286:15, 3292:7, 3310:21, 3311:17, 3321:18
**constitutes** [1] - 3346:6
**constituting** [1] - 3294:2
**Constitution** [2] - 3268:8, 3346:14
**constitutional** [1] - 3281:24
**constructive** [1] - 3316:24
**consult** [1] - 3314:1
**consultant** [4] - 3334:1, 3334:14, 3335:9, 3335:15
**consulting** [1] - 3334:22
**contact** [1] - 3271:2
**contacted** [1] - 3271:4
**contacts** [1] - 3270:25
**content** [2] - 3274:13, 3290:1
**contention** [1] - 3320:10
**context** [1] - 3287:2
**contexts** [1] - 3286:3
**continue** [2] - 3307:23, 3344:25
**continued** [2] - 3278:11, 3327:12
**contract** [2] - 3278:2, 3278:10
**contracts** [1] - 3278:12
**contractual** [1] - 3278:6
**contradictory** [1] - 3293:15
**contradicts** [1] - 3272:23
**contrary** [1] - 3272:13
**contrast** [1] - 3335:3
**contrasts** [1] - 3294:17
**Control** [1] - 3285:13
**control** [1] - 3336:8
**Controls** [1] - 3295:18

**conversation** [3] - 3271:12, 3278:8, 3333:3
**conversations** [1] - 3277:17
**conveyed** [1] - 3293:1
**convicted** [1] - 3311:18
**conviction** [5] - 3277:7, 3280:15, 3280:21, 3283:15, 3294:13
**copies** [1] - 3321:5
**copy** [7] - 3270:5, 3321:1, 3321:22, 3322:10, 3322:16, 3322:19, 3322:22
**Copy** [1] - 3295:17
**correct** [9] - 3287:3, 3302:15, 3314:12, 3315:1, 3318:21, 3327:13, 3337:25, 3342:1
**corrected** [2] - 3271:3, 3300:20
**correctly** [1] - 3292:21
**costs** [3] - 3278:23, 3279:2, 3279:15
**Counsel** [1] - 3296:13
**counsel** [5] - 3307:11, 3308:8, 3335:13, 3336:13, 3336:15
**Counsel's** [2] - 3307:21, 3307:22
**Count** [2] - 3310:20, 3334:23
**count** [2] - 3316:21, 3320:14
**country** [2] - 3337:7, 3337:9
**couple** [2] - 3333:8, 3343:3
**course** [2] - 3312:11, 3341:22
**court** [4] - 3273:12, 3278:18, 3310:17, 3337:3
**Court** [43] - 3268:7, 3268:7, 3277:25, 3278:9, 3278:25, 3279:1, 3279:9, 3279:14, 3280:14, 3280:23, 3281:3, 3281:4, 3282:1, 3283:13, 3283:22, 3284:22, 3285:7, 3285:11, 3285:20, 3286:2, 3286:6, 3286:14, 3287:7, 3287:11, 3287:24, 3293:23, 3294:1, 3294:5, 3295:16, 3296:5, 3298:7, 3298:11, 3300:11, 3301:5, 3306:23, 3324:25, 3325:20, 3325:23, 3342:3, 3344:21, 3344:22, 3346:13
**COURT** [173] - 3267:1, 3269:7, 3269:11, 3289:22, 3290:1, 3290:11, 3290:15, 3290:23, 3291:1, 3291:4, 3291:9, 3291:13, 3291:17, 3291:25, 3292:6, 3296:8, 3296:21, 3297:4, 3297:17, 3297:23, 3298:10, 3298:15, 3298:20, 3298:23, 3299:4, 3299:7, 3299:11, 3299:16, 3299:18, 3299:23, 3300:3, 3300:8, 3300:15, 3300:21, 3301:1, 3301:6, 3301:13, 3302:11,

3302:16, 3302:25, 3303:3, 3303:10, 3303:13, 3303:17, 3303:21, 3304:2, 3304:8, 3304:15, 3304:18, 3304:24, 3305:2, 3305:5, 3305:15, 3305:25, 3306:6, 3306:9, 3306:13, 3306:15, 3307:6, 3307:9, 3307:13, 3307:22, 3308:14, 3308:18, 3309:3, 3309:8, 3309:15, 3309:22, 3310:2, 3310:10, 3310:16, 3310:18, 3311:5, 3311:7, 3312:4, 3312:6, 3312:16, 3312:19, 3312:24, 3313:10, 3313:13, 3313:16, 3313:20, 3314:2, 3314:5, 3314:12, 3314:14, 3314:16, 3314:22, 3315:1, 3315:9, 3316:3, 3316:6, 3316:12, 3317:6, 3317:12, 3317:22, 3318:8, 3318:14, 3318:23, 3319:8, 3319:24, 3320:1, 3320:21, 3321:9, 3321:24, 3323:11, 3324:1, 3324:8, 3324:13, 3324:22, 3325:11, 3325:24, 3326:10, 3326:13, 3326:16, 3327:4, 3327:7, 3327:15, 3327:17, 3327:20, 3328:5, 3328:11, 3328:16, 3328:24, 3329:24, 3330:5, 3330:11, 3331:2, 3331:5, 3331:23, 3332:1, 3332:10, 3332:19, 3333:10, 3333:16, 3333:19, 3333:22, 3334:3, 3334:11, 3334:13, 3334:16, 3334:20, 3334:25, 3335:12, 3335:21, 3336:1, 3336:6, 3336:18, 3336:21, 3337:3, 3337:11, 3337:14, 3337:19, 3337:24, 3338:13, 3338:15, 3338:20, 3339:2, 3339:5, 3339:23, 3340:7, 3341:4, 3341:15, 3342:4, 3342:11, 3342:21, 3343:5, 3343:18, 3344:12, 3344:16, 3344:25, 3346:2
**Court's** [2] - 3319:18, 3341:25
**Courthouse** [1] - 3268:8
**courtroom** [1] - 3269:3
**COURTROOM** [1] - 3269:1
**cover** [7] - 3275:24, 3276:2, 3276:4, 3276:9, 3288:14, 3315:15, 3315:16
**cover-up** [2] - 3315:15, 3315:16
**covered** [2] - 3291:11, 3312:25
**covering** [5] - 3329:14, 3330:23, 3331:3, 3331:20, 3332:6
**covers** [1] - 3317:19
**crafting** [3] - 3279:24, 3293:3, 3315:23

**Craig** [23] - 3267:6, 3269:3,
3269:10, 3271:1, 3271:3,
3271:10, 3271:11, 3271:20,
3273:20, 3274:6, 3274:23,
3280:1, 3280:5, 3300:12,
3300:22, 3301:19, 3302:7,
3302:9, 3302:17, 3322:6, 3322:9
**craig** [1] - 3269:3
**Craig's** [3] - 3270:25, 3274:1,
3274:18
**CRC** [2] - 3268:7, 3346:13
**creating** [1] - 3288:5
**creation** [1] - 3319:12
**Credibility** [1] - 3297:7
**Credit** [2] - 3293:12, 3294:2
**crime** [10] - 3279:22, 3284:21,
3289:2, 3305:17, 3305:22,
3327:16, 3330:13, 3330:15
**criminal** [2] - 3269:2, 3286:4
**Criminal** [1] - 3267:3
**Critical** [1] - 3279:10
**cross** - 3275:3, 3341:7
**Cross** [1] - 3304:15
**CRR** [2] - 3268:7, 3346:13
**crux** [1] - 3279:17
**cultural** [2] - 3337:1, 3337:6
**cure** [1] - 3332:8
**currency** [2] - 3286:4, 3286:11
**current** [1] - 3291:18

## D

**D.C** [5] - 3283:11, 3285:4,
3286:18, 3287:1, 3346:15
**dah** [3] - 3334:4
**danger** [2] - 3285:16, 3285:21
**data** [4] - 3336:25, 3337:5,
3337:11, 3337:18
**date** [4] - 3281:12, 3282:5,
3304:23, 3305:3
**Dated** [1] - 3346:9
**dates** [1] - 3284:13
**David** [3] - 3276:11, 3281:13,
3320:8
**DAY** [1] - 3267:8
**DC** [5] - 3267:6, 3267:15,
3267:18, 3268:3, 3268:9
**deal** [2] - 3329:5, 3339:20
**dealing** [1] - 3286:14
**dealings** [1] - 3276:22
**deceive** [5] - 3279:18, 3279:25,
3319:3, 3330:3, 3330:6
**deceiving** [1] - 3318:18
**December** [3] - 3274:11,
3275:11, 3276:12
**deception** [1] - 3280:3
**deceptive** [1] - 3294:24
**decide** [2] - 3275:7, 3344:16
**decided** [3] - 3274:11, 3287:15,
3316:14

**decision** [17] - 3274:14,
3277:14, 3277:15, 3278:18,
3279:19, 3280:3, 3280:4,
3281:21, 3283:20, 3284:14,
3292:22, 3308:16, 3317:23,
3318:20, 3319:3, 3330:7,
3341:25
**decision-makers** [4] - 3279:19,
3318:20, 3319:3, 3330:7
**decisions** [1] - 3325:3
**deemed** [1] - 3294:21
**deeper** [1] - 3281:14
**defendant** [62] - 3270:15,
3271:23, 3272:7, 3272:10,
3272:24, 3273:23, 3275:18,
3276:5, 3276:6, 3276:13,
3276:20, 3276:22, 3278:20,
3278:23, 3280:17, 3280:19,
3280:22, 3281:4, 3281:10,
3281:23, 3282:15, 3282:17,
3283:10, 3283:23, 3284:10,
3284:12, 3284:20, 3284:24,
3285:23, 3286:23, 3287:18,
3288:10, 3288:23, 3289:10,
3289:18, 3291:6, 3292:20,
3293:11, 3294:19, 3298:25,
3299:23, 3300:9, 3305:10,
3311:9, 3312:25, 3313:3,
3314:9, 3316:21, 3319:11,
3321:18, 3325:24, 3327:9,
3328:8, 3328:10, 3328:11,
3328:20, 3329:17, 3332:12,
3335:2, 3335:18, 3335:19,
3338:3
  **Defendant** [5] - 3267:7,
3267:20, 3299:1, 3304:4,
3304:20
  **defendant's** [17] - 3272:2,
3272:17, 3273:5, 3273:6,
3276:8, 3280:24, 3282:9,
3284:14, 3285:11, 3287:4,
3287:22, 3288:6, 3292:9,
3295:3, 3317:15, 3317:23,
3318:2
  **defendants** [2] - 3285:15,
3286:3
  **defense** [16] - 3270:22,
3272:20, 3273:1, 3275:19,
3275:20, 3282:11, 3283:1,
3283:4, 3295:5, 3296:4,
3307:14, 3320:11, 3325:18,
3339:10, 3340:24, 3342:25
  **define** [2] - 3288:11, 3325:10
  **defining** [1] - 3343:24
  **definition** [2] - 3336:14,
3336:16
  **defraud** [1] - 3331:9
  **delays** [1] - 3274:12
  **delete** [5] - 3297:21, 3311:4,
3311:5, 3316:10, 3327:3

**deliberate** [2] - 3309:12, 3330:1
**deliberately** [2] - 3278:3,
3281:16
**Deliberation** [1] - 3306:25
**Deliberations** [1] - 3306:24
**deliver** [1] - 3322:10
**demand** [1] - 3283:25
**denied** [3] - 3275:13, 3283:7,
3295:9
**Department** [1] - 3267:17
**depositions** [1] - 3295:22
**DEPUTY** [1] - 3269:1
**described** [2] - 3279:14, 3296:9
**describes** [1] - 3331:1
**describing** [1] - 3279:4
**description** [1] - 3279:13
**descriptions** [2] - 3336:25,
3337:17
**designed** [4] - 3279:18,
3279:24, 3319:3, 3330:6
**desirable** [1] - 3339:18
**desire** [1] - 3277:4
**details** [1] - 3277:5
**determination** [8] - 3277:17,
3277:22, 3279:10, 3279:20,
3318:25, 3330:8, 3337:22,
3337:25
**determine** [2] - 3276:15,
3276:16
**determined** [1] - 3269:14
**determining** [1] - 3326:9
**device** [3] - 3290:19, 3294:4,
3326:25
**DICKMAN** [1] - 3346:5
**Dickman** [2] - 3268:7, 3346:13
**dicta** [1] - 3283:24
**different** [5] - 3297:10, 3301:2,
3331:5, 3341:23, 3343:21
**difficult** [1] - 3286:8
**direct** [2] - 3297:7, 3343:6
**direction** [1] - 3336:8
**directly** [2] - 3278:4, 3282:1
**disagree** [3] - 3291:20,
3320:13, 3325:2
**disagreements** [1] - 3300:11
**disbelieved** [1] - 3300:9
**disclose** [43] - 3276:6, 3276:14,
3276:23, 3276:24, 3277:5,
3277:8, 3277:9, 3280:7,
3280:17, 3280:24, 3287:2,
3291:12, 3294:6, 3294:10,
3294:19, 3310:23, 3311:1,
3311:9, 3311:10, 3311:11,
3311:13, 3311:15, 3312:21,
3312:22, 3313:1, 3313:3,
3313:4, 3314:9, 3314:17,
3329:13, 3329:14, 3330:21,
3330:25, 3331:3, 3340:16,
3340:19, 3340:20, 3341:10,
3341:13, 3341:18, 3341:21,

3342:16, 3343:25
  **disclosed** [2] - 3282:3, 3310:24
  **disclosing** [1] - 3278:4
  **discrete** [1] - 3283:20
  **discuss** [3] - 3269:25, 3286:1, 3316:2
  **discussed** [3] - 3291:16, 3312:12, 3327:6
  **discussion** [4] - 3286:25, 3307:12, 3317:23, 3333:17
  **dismiss** [2] - 3344:21, 3344:22
  **disputing** [1] - 3279:22
  **disseminating** [2] - 3336:24, 3337:17
  **dissent** [1] - 3284:5
  **distinction** [1] - 3322:15
  **distinguish** [2] - 3281:3, 3294:11
  **distinguished** [1] - 3286:19
  **distinguishes** [1] - 3281:25
  **DISTRICT** [4] - 3267:1, 3267:1, 3267:10, 3267:14
  **District** [2] - 3287:7, 3294:15
  **divined** [1] - 3281:14
  **Docket** [2] - 3282:19
  **docket** [1] - 3270:14
  **Dockets** [1] - 3275:20
  **Documents** [1] - 3296:23
  **documents** [1] - 3296:24
  **done** [2] - 3310:4, 3321:2
  **Doubt** [1] - 3297:1
  **down** [5] - 3313:1, 3314:4, 3331:9, 3333:17, 3337:2
  **draft** [2] - 3289:24, 3291:18
  **drafted** [1] - 3291:5
  **draw** [1] - 3272:6
  **drawn** [1] - 3272:1
  **drove** [1] - 3274:14
  **due** [2] - 3273:2, 3281:24
  **dueling** [1] - 3270:12
  **dug** [1] - 3281:14
  **During** [1] - 3306:23
  **duties** [1] - 3286:9
  **duty** [59] - 3276:6, 3276:14, 3276:18, 3276:23, 3277:5, 3277:18, 3280:7, 3281:19, 3282:23, 3287:2, 3288:18, 3291:12, 3294:6, 3294:19, 3310:3, 3310:23, 3311:1, 3311:9, 3311:12, 3311:15, 3311:19, 3312:10, 3312:12, 3312:21, 3313:1, 3313:3, 3313:4, 3313:21, 3314:9, 3314:15, 3314:17, 3315:21, 3316:19, 3317:13, 3317:17, 3317:25, 3322:16, 3322:23, 3323:1, 3323:24, 3329:13, 3329:14, 3329:23, 3330:20, 3330:21, 3330:24, 3331:3, 3331:11, 3331:18, 3331:23,

3332:2, 3342:16, 3342:21, 3343:25

---

# E

  **Eagle** [4] - 3280:13, 3280:14, 3281:2, 3294:17
  **early** [2] - 3275:8, 3275:11
  **easier** [2] - 3289:22, 3309:11
  **easily** [1] - 3278:1
  **East** [1] - 3267:22
  **Eastern** [1] - 3294:15
  **easy** [1] - 3292:5
  **ECF** [1] - 3344:17
  **economic** [2] - 3337:1, 3337:6
  **effect** [1] - 3274:15
  **effort** [1] - 3318:1
  **eight** [2] - 3325:19, 3325:21
  **Eighth** [1] - 3287:14
  **either** [10] - 3270:12, 3272:18, 3273:4, 3277:19, 3283:20, 3304:3, 3315:22, 3334:5, 3334:9, 3334:11
  **either/or** [1] - 3333:23
  **elections** [1] - 3287:8
  **Elections** [1] - 3287:11
  **element** [8] - 3291:15, 3291:16, 3311:8, 3313:2, 3314:8, 3327:6, 3328:7, 3328:19
  **Elements** [1] - 3310:19
  **elements** [5] - 3270:9, 3290:2, 3295:14, 3310:21, 3328:1
  **Eleventh** [1] - 3278:20
  **email** [5] - 3274:21, 3274:24, 3275:2, 3344:17
  **Email** [8] - 3267:16, 3267:16, 3267:19, 3267:24, 3267:25, 3267:25, 3268:4, 3268:5
  **emailed** [1] - 3322:6
  **emails** [7] - 3270:16, 3271:15, 3272:12, 3273:5, 3274:14, 3275:15
  **emarcus@zuckerman.com** [1] - 3268:5
  **embargoed** [1] - 3276:11
  **embodied** [1] - 3293:4
  **eminently** [1] - 3339:18
  **emphasis** [1] - 3283:23
  **emphasized** [5] - 3273:1, 3276:5, 3292:25, 3293:1, 3327:13
  **emphasizes** [1] - 3294:16
  **employed** [1] - 3307:16
  **employee** [7] - 3334:1, 3334:14, 3335:11, 3335:14, 3336:14, 3336:17, 3337:15
  **employment** [2] - 3337:1, 3337:6
  **end** [15] - 3270:8, 3274:21, 3275:24, 3276:21, 3295:1,

3296:3, 3299:8, 3307:7, 3319:9, 3326:17, 3328:2, 3328:9, 3335:24, 3338:19, 3343:6
  **endeavor** [1] - 3315:20
  **ended** [1] - 3274:15
  **engage** [1] - 3288:13
  **engaged** [11] - 3277:10, 3285:17, 3285:22, 3291:20, 3294:10, 3306:1, 3327:9, 3328:11, 3328:20, 3336:23, 3337:16
  **engages** [2] - 3334:5, 3334:11
  **engaging** [2] - 3330:14, 3344:2
  **enlightenment** [1] - 3298:6
  **ensnaring** [2] - 3285:17, 3285:22
  **entered** [1] - 3298:16
  **entire** [1] - 3308:20
  **entirely** [2] - 3289:7, 3296:1
  **entitled** [2] - 3342:23, 3343:22
  **entity** [1] - 3280:18
  **especially** [2] - 3273:25, 3324:22
  **essence** [2] - 3318:4, 3318:18
  **essential** [1] - 3331:21
  **essentially** [2] - 3272:14, 3299:19
  **establish** [3] - 3283:16, 3284:23, 3288:16
  **etcetera** [3] - 3311:13, 3315:23, 3340:14
  **Ethics** [2] - 3307:15, 3307:20
  **evaluation** [1] - 3304:18
  **Evaluation** [1] - 3304:19
  **evasion** [2] - 3286:4, 3286:7
  **event** [2] - 3275:7, 3329:6
  **events** [1] - 3274:14
  **Evidence** [7] - 3295:18, 3295:20, 3295:23, 3296:14, 3296:15, 3297:7, 3300:4
  **evidence** [32] - 3270:24, 3271:8, 3272:22, 3272:24, 3273:3, 3273:15, 3273:17, 3273:20, 3274:12, 3274:23, 3277:2, 3278:1, 3283:15, 3283:16, 3283:22, 3288:4, 3288:6, 3292:24, 3297:25, 3299:9, 3299:19, 3300:16, 3303:5, 3306:20, 3321:7, 3323:1, 3340:8, 3340:10, 3341:5, 3342:18, 3343:15, 3344:22
  **exact** [1] - 3293:2
  **exactly** [1] - 3328:1
  **examination** [1] - 3343:6
  **Examination** [1] - 3304:16
  **example** [2] - 3276:7, 3280:19
  **examples** [1] - 3319:20
  **except** [2] - 3304:23, 3331:25
  **exception** [3] - 3270:8,

3286:21, 3320:8
**excerpted** [1] - 3340:5
**excluded** [1] - 3325:6
**exclusive** [1] - 3276:11
**excuse** [2] - 3286:22, 3307:6
**Exhibit** [1] - 3335:10
**exhibit** [1] - 3296:17
**Exhibits** [1] - 3270:17
**exhibits** [2] - 3296:19, 3306:21
**existence** [3] - 3276:3, 3276:13, 3282:13
**exists** [3] - 3276:18, 3308:16, 3317:25
**expeditious** [1] - 3295:10
**expenses** [1] - 3279:11
**explain** [3] - 3271:20, 3287:22, 3313:22
**explained** [3] - 3279:1, 3286:6, 3341:15
**explanation** [1] - 3310:25
**explicitly** [1] - 3278:15
**Export** [1] - 3285:13
**extent** [3] - 3285:4, 3286:9, 3316:25
**Ezra** [3] - 3268:1, 3269:9, 3316:20

# F

**F.2d** [2] - 3283:2, 3293:12
**F.3d** [6] - 3277:23, 3278:19, 3280:12, 3280:14, 3283:11, 3293:23
**F.Supp.2d** [1] - 3283:6
**F.Supp.3d** [1] - 3294:14
**fact** [55] - 3270:25, 3271:11, 3271:24, 3272:1, 3272:2, 3272:3, 3272:7, 3273:7, 3273:16, 3273:24, 3274:20, 3275:15, 3275:17, 3276:2, 3276:4, 3276:6, 3276:9, 3276:16, 3276:17, 3276:23, 3276:25, 3279:10, 3281:8, 3289:6, 3289:15, 3290:12, 3290:19, 3290:20, 3290:21, 3290:23, 3290:24, 3291:4, 3291:11, 3291:23, 3292:2, 3305:21, 3307:13, 3307:19, 3312:25, 3321:1, 3321:3, 3321:8, 3323:1, 3323:2, 3323:16, 3325:12, 3326:14, 3328:4, 3329:14, 3330:17, 3330:24, 3331:3, 3331:20, 3332:6
**facts** [46] - 3270:3, 3274:6, 3277:8, 3277:9, 3277:12, 3277:13, 3280:8, 3281:5, 3281:6, 3281:10, 3288:24, 3289:4, 3294:10, 3295:24, 3315:20, 3315:22, 3317:18,

3319:16, 3319:20, 3319:23, 3320:12, 3320:18, 3320:19, 3322:12, 3323:4, 3323:16, 3325:1, 3325:9, 3326:15, 3327:2, 3330:7, 3330:19, 3333:2, 3333:5, 3335:1, 3337:7, 3338:1, 3339:9, 3340:9, 3340:21, 3341:9, 3342:16, 3343:25, 3344:3, 3344:14
**factual** [1] - 3320:13
**fail** [1] - 3294:10
**fails** [1] - 3294:5
**failure** [8] - 3277:1, 3277:7, 3277:9, 3278:16, 3278:17, 3280:24, 3285:8, 3330:21
**fair** [4] - 3281:23, 3313:20, 3317:16, 3344:7
**fairly** [4] - 3272:12, 3285:24, 3329:1, 3338:4
**faith** [13] - 3340:2, 3340:9, 3340:10, 3341:1, 3341:24, 3342:2, 3342:12, 3342:15, 3342:24, 3343:16, 3343:22
**fake** [1] - 3315:12
**fall** [2] - 3294:2, 3329:1
**falls** [1] - 3320:22
**false** [34] - 3275:22, 3278:21, 3281:16, 3282:10, 3282:24, 3283:15, 3283:17, 3284:6, 3284:20, 3284:21, 3287:10, 3287:19, 3292:10, 3292:14, 3292:19, 3293:7, 3293:8, 3293:10, 3293:16, 3293:20, 3294:8, 3294:19, 3298:13, 3315:2, 3315:6, 3315:13, 3317:18, 3318:12, 3326:2, 3326:3, 3330:7, 3331:19
**falsely** [2] - 3293:25, 3315:12
**falsification** [5] - 3293:8, 3315:6, 3315:11, 3315:15, 3315:16
**falsifications** [1] - 3315:2
**falsified** [1] - 3314:25
**falsify** [3] - 3275:24, 3276:1, 3288:13
**fancy** [1] - 3314:19
**far** [5] - 3270:21, 3278:16, 3318:13, 3320:25, 3332:11
**FARA** [22] - 3275:3, 3276:22, 3277:10, 3279:23, 3285:19, 3285:25, 3287:17, 3287:19, 3310:20, 3310:24, 3311:20, 3332:23, 3332:24, 3333:3, 3336:6, 3336:7, 3341:7, 3341:12, 3343:9, 3343:25
**FECA** [2] - 3287:8, 3287:13
**federal** [2] - 3284:7, 3287:7
**Federal** [1] - 3287:11
**felony** [1] - 3286:7
**felt** [2] - 3272:3, 3313:21

**Fernando** [2] - 3267:12, 3269:5
**fernando.campoamor** [1] - 3267:16
**fernando.campoamor-sanchez@usdoj.gov** [1] - 3267:16
**few** [2] - 3269:24, 3324:5
**figure** [3] - 3295:12, 3306:17, 3326:18
**filed** [1] - 3340:6
**filing** [2] - 3279:18, 3294:8
**fill** [1] - 3293:24
**filling** [2] - 3293:24, 3315:11
**final** [3] - 3299:18, 3338:7, 3339:20
**finally** [1] - 3292:8
**financed** [1] - 3334:4
**findings** [1] - 3322:3
**fine** [7] - 3309:15, 3318:23, 3319:5, 3333:14, 3334:8, 3335:8, 3339:3
**finish** [2] - 3324:9, 3332:12
**firearms** [3] - 3286:13, 3286:16, 3286:19
**firm** [4] - 3274:1, 3274:5, 3274:25, 3275:4
**First** [1] - 3293:23
**first** [17] - 3270:14, 3271:16, 3271:21, 3289:23, 3291:15, 3291:16, 3295:11, 3301:2, 3301:18, 3312:18, 3316:14, 3317:2, 3321:17, 3328:6, 3328:19, 3334:23, 3337:14
**fix** [1] - 3309:14
**flag** [1] - 3309:9
**flagged** [1] - 3320:9
**floating** [1] - 3309:2
**focus** [2] - 3295:14, 3298:5
**fodder** [1] - 3273:8
**follow** [2] - 3293:2, 3314:10
**follow-up** [1] - 3293:2
**following** [1] - 3300:20
**footnote** [3] - 3281:11, 3293:6, 3340:19
**FOR** [2] - 3267:1, 3267:13
**foregoing** [1] - 3346:6
**Foreign** [1] - 3333:11
**foreign** [4] - 3334:5, 3337:8, 3337:9, 3338:24
**foreperson** [1] - 3306:21
**form** [13] - 3293:24, 3294:8, 3294:9, 3306:10, 3306:12, 3311:10, 3311:20, 3311:21, 3312:22, 3313:7, 3315:12, 3316:17, 3317:9
**forms** [1] - 3280:1
**formulation** [1] - 3285:21
**forth** [1] - 3333:20
**fourth** [1] - 3327:1

**Fourth** [1] - 3267:14
**frankly** [2] - 3327:19, 3341:22
**fraud** [1] - 3279:8
**free** [1] - 3272:10
**front** [3] - 3269:15, 3322:1, 3324:2
**full** [4] - 3310:14, 3312:18, 3314:7, 3346:7
**fully** [2] - 3286:15, 3338:17
**function** [3] - 3283:20, 3284:8, 3295:16
**Function** [1] - 3295:17
**funds** [1] - 3278:3
**furnishing** [2] - 3336:24, 3337:16
**Furnishing** [1] - 3295:16
**furtherance** [3] - 3293:9, 3315:3, 3328:17
**future** [1] - 3274:8

## G

**game** [1] - 3279:7
**gap** [1] - 3339:24
**GASTON** [41] - 3292:4, 3298:3, 3298:21, 3299:21, 3300:1, 3301:3, 3301:23, 3302:3, 3302:5, 3302:21, 3303:20, 3304:1, 3304:25, 3306:7, 3313:9, 3315:5, 3317:11, 3317:21, 3318:6, 3319:5, 3320:7, 3321:17, 3322:5, 3323:3, 3324:12, 3328:2, 3329:15, 3332:7, 3332:16, 3333:14, 3334:19, 3335:8, 3335:19, 3336:12, 3336:23, 3337:5, 3337:13, 3337:15, 3337:22, 3342:6, 3342:15
**Gaston** [5] - 3267:13, 3269:5, 3302:2, 3313:16, 3332:9
**Gates** [6] - 3271:10, 3271:16, 3273:23, 3296:1, 3296:3, 3299:9
**General** [1] - 3307:21
**general** [4] - 3284:2, 3305:16, 3307:22, 3308:8
**germane** [1] - 3283:25
**given** [10] - 3270:5, 3289:15, 3299:23, 3303:16, 3304:13, 3305:18, 3307:19, 3312:7, 3321:5, 3340:1
**goal** [1] - 3310:16
**govern** [1] - 3270:4
**government** [59] - 3270:16, 3270:23, 3270:25, 3272:6, 3272:21, 3273:7, 3274:17, 3275:14, 3275:22, 3276:3, 3276:7, 3276:15, 3278:24, 3279:8, 3280:16, 3281:3, 3281:15, 3282:15, 3282:19, 3284:1, 3284:9, 3284:24,

3290:11, 3291:7, 3292:4, 3292:11, 3292:22, 3294:7, 3294:8, 3303:24, 3306:6, 3307:13, 3311:10, 3312:22, 3313:6, 3313:7, 3314:18, 3315:7, 3316:17, 3317:9, 3317:11, 3317:21, 3318:24, 3319:16, 3319:19, 3321:6, 3321:12, 3322:20, 3323:20, 3324:6, 3325:4, 3328:25, 3331:24, 3332:13, 3332:16, 3333:10, 3334:16, 3337:8, 3342:5
**Government** [2] - 3307:15, 3307:20
**government's** [10] - 3269:18, 3276:21, 3280:7, 3292:3, 3313:9, 3313:10, 3317:6, 3319:10, 3341:23, 3344:23
**Government's** [2] - 3270:17, 3335:10
**governmental** [1] - 3280:4
**grammar** [1] - 3314:4
**grand** [2] - 3319:22, 3322:3
**Grant** [1] - 3278:2
**granted** [1] - 3275:13
**great** [1] - 3283:23
**greater** [1] - 3278:17
**Greg** [1] - 3274:5
**Gregory** [3] - 3267:6, 3269:2, 3302:17
**grounds** [3] - 3272:4, 3283:16, 3294:13
**groups** [1] - 3323:7
**grudgingly** [1] - 3303:1
**guarantee** [1] - 3281:24
**guess** [2] - 3308:7, 3320:5
**guilt** [1] - 3326:9
**guilty** [1] - 3288:6
**Gulland** [1] - 3267:13

## H

**Haley** [2] - 3310:3, 3344:17
**half** [1] - 3314:10
**halfway** [1] - 3333:17
**hand** [3] - 3282:7, 3340:6, 3341:2
**happy** [5] - 3272:3, 3275:1, 3289:18, 3306:25, 3329:9
**harbor** [1] - 3307:24
**hard** [2] - 3307:25, 3322:10
**Harvard** [3] - 3271:11, 3274:24, 3275:17
**Hawker** [4] - 3271:9, 3271:16, 3273:23, 3275:5
**head** [4] - 3293:17, 3297:3, 3299:21, 3316:21
**hear** [2] - 3289:18, 3289:22
**heard** [6] - 3299:9, 3299:19,

3304:13, 3305:14, 3309:5, 3309:6
**hearing** [2] - 3302:2, 3313:16
**hearsay** [3] - 3270:19, 3272:1, 3272:4
**heightened** [2] - 3283:4, 3287:25
**HELD** [1] - 3267:9
**held** [1] - 3287:3
**help** [1] - 3302:3
**helpful** [3] - 3323:20, 3344:18
**Henderson** [1] - 3294:14
**hereby** [1] - 3346:5
**Herszenhorn** [2] - 3320:9, 3320:19
**high** [1] - 3300:13
**higher** [3] - 3329:3, 3329:16, 3332:1
**highlighting** [1] - 3326:1
**highly** [3] - 3285:18, 3286:19, 3339:18
**himself** [2] - 3271:20, 3277:15
**holds** [1] - 3280:22
**honest** [4] - 3301:8, 3302:12, 3302:18, 3303:5
**honestly** [2] - 3278:16, 3279:4
**honesty** [5] - 3300:23, 3301:20, 3302:14, 3302:20, 3303:7
**Honor** [49] - 3269:4, 3269:8, 3297:16, 3298:4, 3298:21, 3300:1, 3300:6, 3301:3, 3301:23, 3302:21, 3303:2, 3303:9, 3304:1, 3306:7, 3306:11, 3312:11, 3315:5, 3318:7, 3319:5, 3319:15, 3320:7, 3320:8, 3321:17, 3322:2, 3322:5, 3322:14, 3323:18, 3323:23, 3324:4, 3329:15, 3329:20, 3330:20, 3332:17, 3333:14, 3334:15, 3334:18, 3334:19, 3335:8, 3335:23, 3336:12, 3337:21, 3338:14, 3339:22, 3339:25, 3342:6, 3342:20, 3343:17, 3344:20, 3345:2
**HONORABLE** [1] - 3267:9
**hook** [1] - 3319:2
**hope** [1] - 3269:11
**hoped** [1] - 3273:14
**hopefully** [1] - 3310:12
**Hubbell** [1] - 3294:19
**HUD** [1] - 3278:2
**hum** [2] - 3291:9, 3336:1
**Hurt** [3] - 3341:3, 3341:25

## I

**idea** [2] - 3309:1, 3336:19
**identified** [1] - 3278:9
**identifying** [1] - 3339:9

ignorance [1] - 3286:22
Ill [1] - 3267:21
illegal [3] - 3330:16, 3338:8
immediately [1] - 3310:1
import [1] - 3330:12
important [12] - 3271:19, 3275:10, 3284:14, 3287:17, 3290:5, 3296:24, 3306:22, 3313:22, 3322:14, 3338:1, 3338:5, 3340:18
impose [1] - 3282:4
imposed [2] - 3286:10, 3323:24
imposing [1] - 3329:15
impression [1] - 3281:16
impunity [1] - 3279:8
IN [1] - 3267:1
in-court [1] - 3273:12
inaccurate [1] - 3279:13
inadmissible [1] - 3296:15
inadvertently [1] - 3286:17
inbox [1] - 3344:17
include [6] - 3292:13, 3305:13, 3329:9, 3329:11, 3339:8, 3340:5
included [6] - 3285:13, 3294:19, 3322:12, 3326:20, 3340:2, 3340:4
includes [3] - 3311:25, 3336:23, 3337:16
including [2] - 3320:4, 3323:15
inclusion [1] - 3286:6
incomplete [1] - 3321:14
incompletely [1] - 3292:20
Inconsistent [2] - 3303:24, 3304:18
inconsistent [4] - 3281:19, 3291:21, 3303:22, 3319:12
incorporate [1] - 3292:9
incorporated [2] - 3270:12, 3320:14
incorporates [2] - 3297:11, 3321:20
indeed [2] - 3272:15, 3282:15
indented [1] - 3333:24
independence [1] - 3274:6
independent [1] - 3274:1
indicate [1] - 3318:17
indicated [2] - 3320:17, 3340:3
indication [1] - 3317:24
Indictment [1] - 3296:13
indictment [15] - 3275:23, 3310:20, 3319:21, 3320:1, 3320:4, 3320:12, 3320:23, 3320:25, 3321:18, 3321:21, 3321:24, 3322:6, 3322:11, 3323:4, 3323:14
individuals [2] - 3285:17, 3285:22
industrial [2] - 3337:1, 3337:6
inference [3] - 3271:25, 3272:1,

3272:6
inferences [1] - 3275:14
influence [2] - 3277:22, 3283:19
influencing [1] - 3283:19
information [16] - 3278:16, 3278:17, 3280:17, 3280:20, 3282:2, 3282:5, 3294:6, 3308:16, 3311:11, 3333:25, 3335:14, 3336:13, 3336:16, 3336:25, 3337:15, 3337:18
Information [3] - 3296:14, 3334:13, 3335:10
informed [1] - 3281:22
informing [1] - 3340:13
informs [2] - 3277:16, 3333:5
injustice [1] - 3284:4
innocence [1] - 3326:9
Innocence [1] - 3296:25
innocent [3] - 3285:17, 3285:22, 3295:3
inquiring [1] - 3308:25
inquiry [4] - 3277:10, 3280:8, 3281:20, 3282:7
insert [1] - 3326:21
inserting [1] - 3339:24
inside [1] - 3269:15
insistence [1] - 3282:9
insofar [1] - 3287:4
instance [2] - 3277:23, 3288:10
instead [4] - 3269:16, 3281:7, 3301:18, 3308:10
instinct [1] - 3310:7
instruct [3] - 3280:10, 3289:8, 3298:7
instructed [5] - 3276:18, 3276:19, 3282:12, 3327:8, 3328:3
instruction [73] - 3270:9, 3275:19, 3282:16, 3282:21, 3283:3, 3285:3, 3285:8, 3285:12, 3287:3, 3287:16, 3287:25, 3288:2, 3288:21, 3289:5, 3290:2, 3290:25, 3291:5, 3291:22, 3292:1, 3295:4, 3295:6, 3295:15, 3295:21, 3297:12, 3297:13, 3298:2, 3298:7, 3298:22, 3299:1, 3299:12, 3300:2, 3300:4, 3301:4, 3301:24, 3302:6, 3303:25, 3304:3, 3305:13, 3306:4, 3306:17, 3306:19, 3306:22, 3307:9, 3307:10, 3307:11, 3310:19, 3312:12, 3324:9, 3324:23, 3327:23, 3330:13, 3331:12, 3332:13, 3333:11, 3339:6, 3339:8, 3340:2, 3340:3, 3340:4, 3340:23, 3340:24, 3340:25, 3341:4, 3341:24, 3342:7,

3342:23, 3343:16, 3343:22, 3344:1, 3344:2, 3344:4, 3344:6
Instructions [1] - 3295:17
instructions [27] - 3269:20, 3269:22, 3270:2, 3270:5, 3270:7, 3280:7, 3281:18, 3283:3, 3289:20, 3289:24, 3290:3, 3292:8, 3293:5, 3293:18, 3294:23, 3295:12, 3295:19, 3303:16, 3304:12, 3305:9, 3310:12, 3310:14, 3318:1, 3319:13, 3320:2, 3324:20, 3339:7
insufficiency [1] - 3344:23
insufficient [2] - 3273:17, 3283:16
intend [4] - 3270:6, 3305:23, 3312:2, 3340:3
intended [3] - 3279:18, 3332:7, 3332:25
intending [1] - 3305:11
intent [10] - 3281:9, 3283:4, 3290:12, 3305:17, 3325:12, 3330:13, 3331:11, 3331:12, 3332:1
intentional [1] - 3288:18
intentionally [2] - 3306:1, 3343:11
inter [1] - 3307:20
inter-bar [1] - 3307:20
interest [4] - 3278:7, 3336:5, 3338:23, 3338:24
interests [1] - 3336:4
interfering [1] - 3309:21
international [1] - 3274:5
interplay [1] - 3342:12
interpose [1] - 3308:4
interview [2] - 3281:25, 3304:10
introduced [7] - 3274:16, 3300:12, 3300:22, 3301:19, 3302:7, 3302:17, 3303:3
introduction [1] - 3277:2
investigating [1] - 3294:20
involved [2] - 3283:14, 3315:10
involving [1] - 3294:18
issue [22] - 3284:9, 3285:23, 3286:20, 3288:1, 3288:22, 3297:15, 3305:19, 3305:21, 3311:12, 3312:10, 3317:24, 3322:3, 3326:19, 3326:22, 3329:6, 3329:18, 3332:8, 3332:10, 3339:7, 3339:14
iterations [1] - 3306:16
itself [1] - 3271:1

## J

Jackson [1] - 3273:5
JACKSON [1] - 3267:9
Jackson's [1] - 3273:5

**James** [1] - 3267:20
**JANICE** [1] - 3346:5
**Janice** [2] - 3268:7, 3346:13
**January** [2] - 3305:2, 3305:4
**Jason** [2] - 3267:17, 3269:5
**jason.mccullough@usdoj.gov** [1] - 3267:19
**jiggered** [1] - 3290:2
**John** [1] - 3270:7
**journalist** [2] - 3271:19
**journalists** [1] - 3274:18
**Judge** [1] - 3284:16
**judge** [1] - 3284:1
**JUDGE** [2] - 3267:9, 3267:10
**judicial** [3] - 3295:24, 3296:5, 3296:10
**June** [4] - 3304:25, 3305:1, 3305:2, 3321:4
**JUNGHANS** [1] - 3308:25
**Junghans** [2] - 3268:1, 3269:9
**Juror** [1] - 3307:16
**juror** [1] - 3310:3
**jurors** [2] - 3272:20, 3307:7
**Jurors** [2] - 3295:18, 3306:24
**jury** [47] - 3270:23, 3272:6, 3274:17, 3275:7, 3276:2, 3276:7, 3276:15, 3278:1, 3280:10, 3281:6, 3282:12, 3287:3, 3288:5, 3289:1, 3289:6, 3289:8, 3289:20, 3292:15, 3292:24, 3298:2, 3298:8, 3307:24, 3309:12, 3309:21, 3310:12, 3312:9, 3313:22, 3316:19, 3317:10, 3319:20, 3319:22, 3320:2, 3321:7, 3324:7, 3324:17, 3324:18, 3324:19, 3324:23, 3325:25, 3326:8, 3330:22, 3331:17, 3331:21, 3333:2, 3339:17, 3339:21, 3343:23
**Jury** [5] - 3295:16, 3295:17, 3306:23
**JURY** [2] - 3267:4, 3267:8
**jury's** [1] - 3322:3
**Justice** [3] - 3267:17, 3272:25, 3284:4
**justified** [1] - 3286:21

## K

**Kavanaugh** [2] - 3284:1, 3284:16
**Kedem** [1] - 3273:23
**keep** [2] - 3277:4, 3326:23
**key** [4] - 3273:1, 3279:10, 3294:3, 3323:12
**kind** [3] - 3307:1, 3309:8, 3343:22
**knowing** [2] - 3276:8, 3288:2
**knowingly** [3] - 3306:1, 3329:2,

3331:18
**knowledge** [9] - 3284:25, 3285:3, 3285:14, 3286:14, 3286:23, 3287:13, 3329:4, 3331:6, 3332:14
**known** [2] - 3277:21, 3288:18
**knows** [3] - 3307:25, 3308:1, 3330:8
**Kyiv** [1] - 3272:11

## L

**lack** [2] - 3284:18, 3321:11
**laid** [3] - 3278:7, 3281:5
**landscape** [1] - 3270:4
**language** [35] - 3273:12, 3273:21, 3275:24, 3289:11, 3289:19, 3292:1, 3300:20, 3306:2, 3310:25, 3312:1, 3312:2, 3312:3, 3312:17, 3312:18, 3312:20, 3316:1, 3316:10, 3316:23, 3317:2, 3317:4, 3318:3, 3319:6, 3321:5, 3327:1, 3329:12, 3329:17, 3330:12, 3330:23, 3332:4, 3332:7, 3333:9, 3336:9, 3338:17, 3338:21, 3338:25
**largely** [2] - 3297:4, 3310:21
**last** [15] - 3289:23, 3291:6, 3297:13, 3297:20, 3299:10, 3316:11, 3317:4, 3317:5, 3318:9, 3319:7, 3320:18, 3338:2, 3338:3
**law** [36] - 3274:1, 3274:5, 3274:25, 3275:4, 3276:5, 3276:14, 3276:18, 3276:21, 3277:18, 3280:20, 3286:3, 3286:17, 3286:18, 3286:19, 3286:22, 3286:23, 3287:16, 3288:13, 3301:9, 3302:13, 3302:18, 3303:5, 3313:23, 3317:16, 3318:11, 3318:21, 3330:22, 3331:13, 3333:2, 3342:24, 3343:1, 3343:2, 3343:24, 3343:25
**law-abiding** [1] - 3286:17
**laws** [1] - 3286:10
**lawyer** [1] - 3274:1
**lay** [1] - 3313:21
**layer** [1] - 3331:5
**leads** [1] - 3282:10
**learned** [1] - 3309:25
**learning** [1] - 3274:7
**least** [8] - 3276:4, 3289:6, 3291:7, 3291:10, 3291:20, 3327:24, 3328:8, 3328:21
**leave** [5] - 3311:14, 3313:7, 3317:18, 3343:8, 3343:11
**leaving** [2] - 3281:16, 3293:17
**lectern** [1] - 3289:21

**lecture** [1] - 3295:1
**led** [1] - 3273:9
**left** [5] - 3281:13, 3282:23, 3282:24, 3293:17, 3297:15
**legal** [24] - 3269:21, 3270:3, 3273:18, 3277:2, 3284:15, 3291:12, 3294:6, 3296:9, 3305:21, 3311:1, 3311:9, 3312:21, 3313:1, 3313:4, 3316:18, 3317:10, 3317:13, 3317:17, 3319:2, 3339:12, 3342:9, 3342:16, 3342:21, 3343:25
**lemonade** [1] - 3274:19
**lemons** [1] - 3274:20
**length** [2] - 3312:12, 3318:14
**less** [1] - 3279:5
**letter** [8] - 3280:2, 3292:22, 3293:3, 3321:4, 3335:9, 3337:23, 3343:8, 3343:12
**lie** [3] - 3278:11, 3278:14, 3298:14
**lies** [1] - 3297:25
**light** [1] - 3273:12
**limine** [3] - 3270:14, 3270:15, 3275:13
**limit** [1] - 3280:7
**limitations** [1] - 3327:22
**limited** [2] - 3270:17, 3285:5
**line** [7] - 3275:3, 3290:8, 3303:11, 3317:5, 3327:2, 3334:23, 3341:7
**lines** [3] - 3314:10, 3317:3, 3343:3
**link** [1] - 3281:11
**list** [8] - 3319:20, 3323:23, 3324:17, 3324:19, 3325:8, 3336:12, 3339:24, 3344:13
**listed** [5] - 3304:8, 3323:9, 3328:7, 3328:19, 3340:18
**listening** [1] - 3337:3
**listing** [1] - 3325:21
**lists** [1] - 3322:11
**literal** [9] - 3275:19, 3282:11, 3282:12, 3282:16, 3282:18, 3283:1, 3295:5, 3295:6, 3315:17
**LLP** [2] - 3267:22, 3268:2
**look** [8] - 3274:5, 3321:24, 3321:25, 3323:13, 3339:14, 3340:12, 3342:4, 3342:13
**looked** [1] - 3315:10

## M

**maker** [2] - 3284:7, 3284:14
**makers** [4] - 3279:19, 3318:20, 3319:3, 3330:7
**Manafort** [11] - 3270:16, 3270:24, 3271:1, 3271:3, 3271:5, 3271:9, 3271:22,

3273:9, 3274:19, 3275:15, 3275:17
   **mandated** [1] - 3341:24
   **Mangieri** [3] - 3289:1, 3289:17, 3290:8
   **MARCUS** [6] - 3320:24, 3321:15, 3322:1, 3322:14, 3323:18, 3324:4
   **Marcus** [3] - 3268:1, 3269:10, 3319:25
   **massaged** [1] - 3273:20
   **material** [35] - 3276:2, 3276:4, 3277:10, 3277:13, 3281:23, 3282:6, 3283:18, 3284:7, 3288:24, 3289:4, 3290:12, 3290:19, 3290:21, 3290:24, 3291:23, 3294:10, 3319:16, 3319:20, 3319:23, 3321:1, 3322:12, 3325:1, 3325:8, 3325:22, 3326:12, 3326:14, 3326:15, 3330:8, 3330:19, 3333:3, 3333:5, 3335:1, 3339:9, 3344:3, 3344:13
   **materiality** [6] - 3277:17, 3282:2, 3284:10, 3319:10, 3319:14, 3325:10
   **materially** [2] - 3283:17
   **matter** [6] - 3276:18, 3276:21, 3285:25, 3289:8, 3305:21, 3305:22
   **McCullough** [2] - 3267:17, 3269:5
   **MD** [1] - 3267:23
   **mean** [8] - 3293:7, 3297:24, 3301:6, 3312:10, 3312:24, 3325:24, 3332:2, 3343:21
   **meaning** [1] - 3288:1
   **means** [5] - 3284:19, 3290:18, 3304:2, 3309:9, 3309:10
   **media** [6] - 3270:25, 3271:2, 3276:10, 3284:13, 3315:21, 3321:19
   **Medicare** [2] - 3278:23, 3279:6
   **meeting** [6] - 3271:12, 3274:24, 3292:17, 3293:2, 3341:22, 3343:12
   **meetings** [1] - 3340:16
   **memo** [1] - 3287:22
   **memorandum** [2] - 3282:18, 3282:19
   **mens** [5] - 3284:2, 3284:17, 3340:2, 3342:8
   **mention** [1] - 3298:24
   **mere** [2] - 3273:24, 3294:23
   **merely** [2] - 3278:9, 3300:9
   **Michael's** [4] - 3293:12, 3293:20, 3294:2, 3294:12
   **microphone** [1] - 3289:10
   **middle** [1] - 3328:2
   **might** [9] - 3274:10, 3276:25,

3286:17, 3295:25, 3304:10, 3305:16, 3333:1, 3339:23, 3344:4
   **Mind** [1] - 3305:10
   **mind** [5] - 3288:6, 3292:16, 3307:25, 3323:19, 3324:9
   **minds** [1] - 3314:1
   **mine** [1] - 3319:13
   **Ministry** [1] - 3272:25
   **minute** [2] - 3305:7, 3320:3
   **minutes** [1] - 3344:10
   **mislead** [7] - 3277:19, 3278:14, 3279:19, 3279:25, 3319:3, 3330:3, 3330:6
   **misleading** [10] - 3292:14, 3292:20, 3293:3, 3293:8, 3293:9, 3315:23, 3317:18, 3318:18, 3323:6, 3327:3
   **misled** [1] - 3330:18
   **misrepresentation** [4] - 3280:25, 3281:8, 3293:13, 3318:5
   **misrepresentations** [2] - 3292:14, 3315:3
   **Miss** [3] - 3302:2, 3313:16, 3332:9
   **misstatement** [1] - 3277:19
   **mistake** [1] - 3305:20
   **mistakes** [1] - 3274:7
   **mitigate** [1] - 3284:18
   **mix** [1] - 3279:17
   **Molly** [2] - 3267:13, 3269:5
   **molly.gaston@usdoj.gov** [1] - 3267:16
   **moment** [3] - 3314:1, 3326:23, 3334:19
   **money** [1] - 3279:12
   **mood** [1] - 3275:15
   **Moore** [8] - 3277:23, 3278:2, 3278:10, 3278:18, 3280:11, 3283:11, 3283:14, 3287:1
   **moreover** [1] - 3294:8
   **morning** [9] - 3269:1, 3269:4, 3269:7, 3269:8, 3269:11, 3289:25, 3306:15, 3313:19, 3318:15
   **Morning** [1] - 3267:5
   **MORNING** [1] - 3267:8
   **most** [2] - 3284:6, 3287:17
   **motion** [5] - 3270:14, 3271:6, 3275:13, 3344:22, 3345:1
   **motions** [1] - 3269:17
   **motivated** [1] - 3273:14
   **motivation** [2] - 3273:19, 3277:3
   **mouse** [1] - 3279:7
   **moved** [1] - 3270:15
   **moving** [1] - 3304:19
   **MR** [149] - 3269:4, 3269:8, 3289:21, 3289:23, 3290:10,

3290:14, 3290:17, 3290:24, 3291:3, 3291:5, 3291:10, 3291:14, 3291:19, 3296:2, 3296:19, 3297:2, 3297:3, 3297:16, 3297:19, 3298:5, 3298:11, 3298:19, 3299:2, 3299:6, 3299:8, 3299:15, 3299:17, 3299:22, 3299:24, 3300:6, 3300:10, 3300:18, 3300:22, 3301:12, 3301:18, 3302:1, 3302:4, 3302:15, 3303:1, 3303:9, 3303:11, 3303:15, 3304:7, 3304:12, 3304:17, 3304:23, 3305:4, 3305:14, 3305:16, 3306:5, 3306:8, 3306:11, 3306:14, 3307:5, 3307:8, 3307:21, 3308:13, 3308:15, 3309:6, 3309:13, 3309:18, 3309:24, 3310:6, 3310:15, 3311:4, 3311:6, 3311:23, 3312:5, 3312:8, 3312:17, 3312:20, 3313:12, 3313:15, 3313:18, 3313:25, 3314:4, 3314:6, 3314:13, 3314:15, 3314:20, 3314:24, 3316:1, 3316:4, 3316:8, 3316:22, 3317:20, 3318:10, 3318:22, 3319:6, 3319:15, 3319:25, 3322:4, 3324:21, 3324:25, 3325:17, 3326:5, 3326:11, 3326:14, 3327:1, 3327:5, 3327:14, 3327:16, 3327:18, 3327:25, 3328:10, 3328:13, 3328:23, 3329:11, 3329:20, 3330:4, 3330:10, 3330:20, 3331:4, 3331:15, 3331:25, 3332:4, 3332:9, 3332:18, 3333:7, 3333:17, 3333:20, 3333:23, 3334:9, 3334:12, 3334:15, 3334:17, 3334:22, 3335:23, 3336:2, 3336:11, 3336:19, 3337:21, 3338:12, 3338:14, 3338:16, 3338:21, 3339:4, 3339:22, 3339:25, 3340:24, 3341:11, 3341:19, 3342:20, 3343:3, 3343:6, 3344:11, 3344:15, 3344:20, 3345:2
   **MS** [48] - 3292:4, 3298:3, 3298:21, 3299:21, 3300:1, 3301:3, 3301:23, 3302:3, 3302:5, 3302:21, 3303:20, 3304:1, 3304:25, 3306:7, 3308:25, 3313:9, 3315:5, 3317:11, 3317:21, 3318:6, 3319:5, 3320:7, 3320:24, 3321:15, 3321:17, 3322:1, 3322:5, 3322:14, 3323:3, 3323:18, 3324:4, 3324:12, 3328:2, 3329:15, 3332:7, 3332:16, 3333:14, 3334:19,

3335:8, 3335:19, 3336:12,
3336:23, 3337:5, 3337:13,
3337:15, 3337:22, 3342:6,
3342:15
**Mubayyid** [4] - 3293:22, 3294:5,
3294:9, 3294:17
**MUBAYYID** [1] - 3293:22
**Murphy** [2] - 3267:20, 3269:9
**must** [26] - 3276:16, 3279:3,
3280:20, 3281:12, 3284:24,
3288:12, 3289:6, 3289:12,
3289:13, 3289:15, 3290:6,
3290:7, 3290:17, 3290:24,
3291:7, 3291:19, 3291:22,
3292:11, 3292:15, 3318:2,
3327:23, 3328:7, 3328:14,
3328:20, 3331:17, 3332:14

# N

**narrowed** [1] - 3312:7
**narrowly** [1] - 3343:24
**natural** [2] - 3283:19, 3305:11
**nature** [4] - 3279:13, 3279:15,
3284:13, 3291:8
**necessarily** [1] - 3314:19
**necessary** [12] - 3287:25,
3289:7, 3289:14, 3290:16,
3303:19, 3317:15, 3318:6,
3325:17, 3329:10, 3329:17,
3333:1, 3335:3
**need** [27] - 3276:19, 3281:3,
3289:19, 3296:14, 3296:16,
3297:24, 3303:13, 3303:24,
3306:13, 3310:24, 3312:6,
3312:16, 3313:23, 3318:4,
3318:25, 3321:24, 3321:25,
3326:5, 3326:18, 3327:10,
3332:22, 3335:16, 3339:13,
3339:14, 3342:13, 3344:6,
3344:8
**needed** [6] - 3287:1, 3297:14,
3304:3, 3327:2, 3340:11,
3340:14
**needs** [5] - 3300:19, 3316:17,
3316:19, 3325:25, 3332:2
**negate** [2] - 3278:24, 3282:13
**negative** [1] - 3273:12
**never** [2] - 3292:16, 3341:17
**nevertheless** [1] - 3325:3
**new** [6] - 3270:5, 3308:9,
3319:12, 3322:22, 3323:3,
3324:24
**newspapers** [1] - 3340:18
**next** [9] - 3274:24, 3291:14,
3303:9, 3303:15, 3310:11,
3314:9, 3316:1, 3317:13, 3327:5
**ngton** [1] - 3268:9
**night** [1] - 3291:6
**night's** [1] - 3289:24

**non** [1] - 3270:19
**non-hearsay** [1] - 3270:19
**North** [1] - 3288:25
**notable** [1] - 3287:14
**notably** [1] - 3285:10
**Note** [1] - 3295:18
**note** [5] - 3271:19, 3281:2,
3296:10, 3296:11, 3332:18
**Note-Taking** [1] - 3295:18
**noted** [7] - 3278:18, 3284:4,
3295:4, 3295:9, 3329:3,
3336:10, 3345:1
**notes** [3] - 3286:5, 3324:11,
3346:7
**nothing** [6] - 3272:5, 3274:3,
3279:5, 3286:25, 3323:3,
3343:19
**notice** [8] - 3281:23, 3284:19,
3295:24, 3296:5, 3296:10,
3321:11, 3322:3, 3326:19
**notion** [2] - 3272:13, 3293:20
**notwithstanding** [1] - 3339:12
**number** [6] - 3273:10, 3283:13,
3311:3, 3312:24, 3315:24
**numbered** [3] - 3311:25,
3314:24, 3328:1
**numbers** [1] - 3323:22
**NW** [5] - 3267:14, 3267:18,
3268:2, 3268:8, 3346:14

# O

**oath** [2] - 3298:1, 3298:14
**object** [11] - 3270:2, 3288:7,
3295:8, 3306:8, 3312:11,
3316:8, 3318:10, 3327:1,
3336:19, 3336:20, 3338:12
**objection** [7] - 3299:16,
3317:15, 3318:9, 3319:14,
3329:2, 3332:18, 3336:10
**objections** [5] - 3270:1,
3273:11, 3295:3, 3297:1,
3314:7, 3314:21, 3316:9
**obligation** [9] - 3277:3, 3281:7,
3282:5, 3290:20, 3298:16,
3336:3, 3338:22, 3341:18,
3341:21
**obligations** [1] - 3286:10
**obtain** [1] - 3278:2
**obviously** [3] - 3295:21,
3309:21, 3316:8
**occasion** [6] - 3278:11, 3291:7,
3291:10, 3327:24, 3328:8,
3328:21
**occasions** [1] - 3341:14
**occur** [1] - 3328:14
**occurred** [2] - 3290:6, 3327:16
**October** [21] - 3275:8, 3289:12,
3289:13, 3290:6, 3290:18,
3290:21, 3290:22, 3291:8,

3291:11, 3291:23, 3319:23,
3321:20, 3322:9, 3322:13,
3327:12, 3327:16, 3327:24,
3328:8, 3328:15, 3328:22,
3341:22
**OF** [4] - 3267:1, 3267:8,
3267:14, 3346:2
**Offense** [1] - 3310:19
**offense** [9] - 3270:9, 3279:18,
3288:8, 3290:2, 3290:18,
3291:8, 3294:21, 3295:14,
3304:6
**offenses** [1] - 3288:5
**offer** [2] - 3276:24, 3301:14
**offered** [2] - 3289:10, 3301:14
**Office** [1] - 3307:15
**OFFICE** [1] - 3267:13
**office** [2] - 3307:21, 3322:10
**Official** [2] - 3268:7, 3346:13
**OFFICIAL** [1] - 3346:2
**officially** [1] - 3269:21
**officials** [1] - 3278:14
**old** [1] - 3278:22
**Oliver** [1] - 3288:25
**omission** [9] - 3279:9, 3293:10,
3293:16, 3294:16, 3294:18,
3294:23, 3294:24, 3322:21,
3339:15
**omissions** [10] - 3292:14,
3294:1, 3319:22, 3324:3,
3324:7, 3325:5, 3325:20,
3325:22, 3330:1
**omit** [4] - 3305:11, 3311:2,
3317:18, 3330:7
**omits** [1] - 3280:20
**omitted** [7] - 3290:21, 3304:21,
3322:12, 3323:1, 3325:1,
3330:18
**omitting** [2] - 3311:21, 3315:22
**Omitting** [1] - 3327:2
**once** [2] - 3296:16, 3309:12
**Once** [1] - 3278:15
**one** [56] - 3273:11, 3273:15,
3276:4, 3282:25, 3287:17,
3288:24, 3289:3, 3289:6,
3289:16, 3289:25, 3290:4,
3290:8, 3291:7, 3291:10,
3291:20, 3293:17, 3294:6,
3297:17, 3302:23, 3303:19,
3304:15, 3305:19, 3306:20,
3308:3, 3310:13, 3313:18,
3316:6, 3317:2, 3318:14,
3319:10, 3320:12, 3320:24,
3321:9, 3323:24, 3324:22,
3325:21, 3325:24, 3326:13,
3326:19, 3327:24, 3328:4,
3328:8, 3328:21, 3331:19,
3332:20, 3334:17, 3334:19,
3339:10, 3339:17, 3339:19,
3339:25, 3340:4, 3340:5, 3341:5

**One** [1] - 3279:3
**one's** [1] - 3293:17
**ones** [6] - 3271:15, 3295:12, 3319:19, 3324:5, 3325:16, 3325:23
**open** [1] - 3310:17
**openly** [1] - 3279:3
**operating** [1] - 3289:23
**opinion** [13] - 3283:21, 3283:24, 3285:1, 3300:13, 3300:16, 3301:7, 3301:9, 3301:14, 3301:15, 3302:9, 3302:18, 3303:4, 3317:1
**opportunity** [2] - 3269:25, 3272:21
**opposed** [3] - 3336:4, 3338:23, 3343:20
**option** [1] - 3321:8
**order** [5] - 3270:6, 3284:23, 3290:3, 3329:21, 3336:8
**ordered** [1] - 3296:17
**original** [1] - 3275:16
**otherwise** [1] - 3329:7
**ourselves** [1] - 3310:7
**outside** [5] - 3269:16, 3320:15, 3320:23, 3320:25, 3338:4
**overlay** [1] - 3287:12
**own** [7] - 3272:14, 3326:1, 3336:3, 3336:4, 3338:23, 3344:24

### P

**Page** [1] - 3306:5
**page** [32] - 3271:6, 3279:3, 3288:15, 3291:14, 3291:17, 3295:20, 3296:12, 3296:13, 3296:17, 3296:22, 3297:9, 3303:9, 3304:12, 3304:15, 3306:4, 3310:18, 3311:3, 3314:23, 3315:25, 3316:2, 3321:18, 3322:4, 3326:22, 3327:7, 3328:3, 3330:5, 3333:19, 3335:16, 3335:21, 3338:3, 3338:11, 3343:7
**pages** [2] - 3293:23, 3305:7
**paid** [4] - 3277:6, 3279:12, 3279:14, 3338:9
**paints** [1] - 3273:12
**papers** [1] - 3315:8
**paragraph** [31] - 3297:13, 3299:10, 3299:18, 3303:11, 3311:25, 3312:18, 3313:1, 3314:7, 3314:25, 3316:4, 3316:24, 3319:14, 3319:17, 3319:21, 3320:14, 3321:21, 3322:2, 3322:5, 3322:11, 3323:10, 3323:14, 3325:5, 3326:15, 3327:5, 3327:19, 3328:3, 3328:9, 3335:24, 3338:3

**paragraphs** [1] - 3326:22
**parallel** [1] - 3344:1
**paraphrased** [1] - 3332:24
**Parfitt** [1] - 3275:11
**part** [17] - 3270:18, 3271:2, 3275:13, 3275:14, 3290:5, 3305:11, 3305:12, 3308:2, 3313:8, 3316:18, 3318:9, 3319:11, 3322:22, 3322:23, 3337:9, 3337:14, 3341:23
**participated** [1] - 3276:10
**participation** [1] - 3276:9
**particular** [14] - 3273:21, 3276:16, 3280:18, 3280:20, 3280:23, 3282:8, 3282:13, 3284:3, 3285:6, 3292:19, 3297:23, 3313:6, 3316:16, 3318:25
**particularly** [4] - 3271:18, 3286:12, 3301:2, 3318:20
**parties** [2] - 3289:8, 3308:21
**party** [1] - 3337:9
**passively** [1] - 3294:10
**pasted** [1] - 3290:3
**Paul** [1] - 3270:16
**Paula** [2] - 3268:1, 3269:9
**pause** [2] - 3314:3, 3334:21
**penalty** [2] - 3294:9, 3298:17
**pending** [1] - 3296:1
**Pennsylvania** [1] - 3267:18
**people** [5] - 3307:4, 3311:17, 3313:20, 3323:9, 3329:6
**perfectly** [2] - 3279:1, 3285:20
**period** [5] - 3274:9, 3319:4, 3328:9, 3328:22, 3332:15
**perjury** [5] - 3294:9, 3298:9, 3298:13, 3298:17, 3298:24
**permitted** [5] - 3270:23, 3272:22, 3278:1, 3319:19, 3325:7
**person** [18] - 3280:18, 3297:12, 3302:10, 3307:17, 3311:12, 3313:4, 3314:10, 3314:15, 3314:17, 3316:5, 3316:15, 3318:18, 3318:23, 3336:2, 3336:21, 3336:23, 3337:16, 3338:22
**persuade** [1] - 3318:24
**phrase** [2] - 3298:12, 3335:10
**phrased** [2] - 3300:11, 3318:20
**pieces** [1] - 3282:5
**pjunghans@zuckerman.com** [1] - 3268:4
**place** [7] - 3270:1, 3289:11, 3289:13, 3308:4, 3309:5, 3309:19, 3336:7
**places** [1] - 3283:23
**Plaintiff** [2] - 3267:4, 3267:12
**plan** [3] - 3271:13, 3272:16, 3275:9

**planned** [1] - 3321:12
**planning** [1] - 3320:6
**Plea** [3] - 3297:9, 3297:19, 3299:2
**plea** [6] - 3297:21, 3297:24, 3297:25, 3298:8, 3298:12, 3298:16
**pleading** [1] - 3340:6
**pleased** [3] - 3270:25, 3271:25, 3274:21
**plus** [1] - 3319:11
**point** [11] - 3272:22, 3282:22, 3301:12, 3307:4, 3316:13, 3317:6, 3321:17, 3322:15, 3326:5, 3341:7, 3342:5
**pointed** [2] - 3276:15, 3288:23
**pointing** [1] - 3326:2
**points** [5] - 3277:25, 3292:25, 3293:11, 3324:5, 3333:8
**policy** [2] - 3274:25, 3275:4
**political** [8] - 3334:1, 3334:6, 3334:14, 3335:9, 3335:14, 3337:1, 3337:5, 3337:9
**politically** [1] - 3273:14
**Pomponio** [2] - 3283:8, 3288:16
**portion** [7] - 3296:12, 3296:22, 3311:2, 3311:14, 3311:16, 3329:4, 3329:5
**posed** [2] - 3313:5, 3314:18
**position** [17] - 3278:23, 3287:4, 3292:3, 3296:4, 3306:3, 3312:9, 3313:9, 3313:10, 3316:24, 3317:3, 3317:4, 3318:2, 3321:15, 3324:11, 3324:13, 3324:19, 3325:15
**possibility** [1] - 3278:24
**possible** [2] - 3306:3, 3339:18
**possibly** [2] - 3287:23, 3310:13
**Post** [1] - 3272:11
**post** [1] - 3290:21
**post-October** [1] - 3290:21
**PR** [1] - 3272:15
**practice** [1] - 3279:8
**praised** [1] - 3271:22
**Pratt** [1] - 3267:22
**pre** [1] - 3290:22
**pre-October** [1] - 3290:22
**precedents** [2] - 3288:16, 3293:15
**precisely** [1] - 3270:19
**preclude** [1] - 3270:19
**predicated** [1] - 3277:7
**prepared** [3] - 3273:25, 3320:16
**present** [1] - 3269:3
**presented** [1] - 3289:3
**Presumption** [1] - 3296:25
**presumption** [1] - 3279:5
**pretend** [1] - 3309:10
**pretty** [1] - 3270:10

**prevailed** [1] - 3271:12
**preview** [1] - 3269:18
**previous** [1] - 3306:16
**previously** [1] - 3318:11
**primary** [1] - 3317:14
**principal** [3] - 3334:5, 3334:10, 3338:24
**principle** [2] - 3280:25, 3313:23
**principles** [1] - 3284:18
**probable** [1] - 3305:11
**problem** [12] - 3278:8, 3285:9, 3286:10, 3287:21, 3288:11, 3288:25, 3289:18, 3309:11, 3317:10, 3322:25, 3339:23
**problematical** [1] - 3285:8
**proceedings** [1] - 3346:8
**process** [2] - 3273:2, 3281:24
**produced** [1] - 3273:17
**proliferation** [1] - 3286:7
**prolonged** [1] - 3274:9
**proof** [7] - 3284:20, 3285:15, 3286:2, 3290:17, 3292:10, 3305:10, 3344:23
**Proof** [1] - 3296:25
**proper** [3] - 3280:16, 3280:21, 3291:22
**Proper** [1] - 3284:16
**properly** [1] - 3285:9
**propose** [1] - 3311:2
**proposed** [8] - 3290:7, 3292:1, 3299:11, 3299:13, 3319:13, 3320:2, 3332:20, 3340:1
**proposes** [1] - 3284:1
**proposing** [2] - 3312:1, 3342:7
**proposition** [3] - 3282:20, 3283:18, 3323:17
**proscribed** [1] - 3285:15
**prosecution** [4] - 3273:14, 3273:18, 3298:9, 3298:13
**prosecutions** [2] - 3284:2, 3284:19
**protect** [4] - 3286:17, 3297:22, 3298:8, 3298:12
**protects** [1] - 3285:16
**prove** [9] - 3275:17, 3284:10, 3284:24, 3291:7, 3292:11, 3294:3, 3321:12, 3332:12, 3332:14
**proved** [3] - 3276:3, 3276:8, 3327:21
**provide** [5] - 3301:24, 3302:6, 3322:19, 3323:5, 3343:13
**provided** [6] - 3271:20, 3273:8, 3321:22, 3323:4, 3323:8, 3324:22
**providers** [1] - 3279:7
**provides** [1] - 3323:20
**providing** [3] - 3321:1, 3322:16, 3322:22
**provision** [3] - 3278:6, 3279:23,

3279:24
**prudent** [1] - 3289:7
**public** [3] - 3335:13, 3336:13, 3336:14
**publicity** [6] - 3271:16, 3306:22, 3335:13, 3335:25, 3336:13, 3336:15
**publish** [1] - 3274:10
**publishing** [2] - 3336:24, 3337:17
**punish** [1] - 3284:6
**punishment** [1] - 3306:3
**pure** [1] - 3287:9
**purpose** [3] - 3270:18, 3270:20, 3286:16
**purposes** [3] - 3285:14, 3296:6, 3327:22
**pursuant** [2] - 3316:8, 3344:20
**put** [12] - 3290:11, 3299:13, 3303:21, 3304:9, 3315:5, 3319:4, 3319:20, 3320:2, 3324:6, 3326:21, 3329:5, 3339:3
**putting** [3] - 3283:24, 3308:21, 3340:19
**puzzle** [1] - 3281:17

## Q

**qualified** [3] - 3293:25, 3302:23
**questionable** [1] - 3295:13
**questions** [19] - 3277:12, 3277:20, 3280:22, 3282:6, 3288:22, 3292:18, 3313:5, 3314:18, 3315:21, 3316:15, 3322:16, 3322:24, 3323:25, 3324:14, 3330:1, 3331:7, 3339:20, 3340:15, 3342:18
**quickly** [1] - 3270:10
**quit** [1] - 3272:8
**quite** [5] - 3284:22, 3287:21, 3287:25, 3305:5, 3311:23
**quote** [18] - 3270:17, 3277:25, 3278:10, 3278:14, 3278:15, 3278:17, 3279:3, 3279:10, 3279:11, 3279:14, 3279:15, 3279:17, 3279:19, 3284:5, 3336:2, 3338:21, 3338:24, 3343:7
**quoting** [1] - 3336:9

## R

**raised** [3] - 3309:9, 3309:25, 3338:4
**Ratzlaf** [8] - 3283:9, 3285:2, 3285:5, 3286:1, 3286:5, 3286:11, 3286:20, 3287:6
**rea** [5] - 3284:2, 3284:17, 3340:2, 3342:8
**read** [10] - 3281:12, 3293:18,

3301:17, 3301:19, 3304:22, 3306:18, 3314:7, 3318:14, 3337:14, 3343:3
**reads** [1] - 3301:19
**realized** [1] - 3306:15
**really** [11] - 3287:22, 3296:6, 3303:17, 3304:10, 3305:18, 3308:10, 3309:3, 3310:12, 3315:11, 3326:3, 3337:20
**reason** [4] - 3274:12, 3297:24, 3333:1, 3341:15
**reasonable** [3] - 3278:25, 3279:3, 3338:1
**Reasonable** [1] - 3297:1
**reasonably** [2] - 3341:6, 3341:8
**reasoning** [1] - 3269:22
**reasons** [6] - 3280:10, 3312:12, 3318:11, 3318:14, 3339:12, 3339:13
**receive** [1] - 3335:11
**received** [2] - 3273:22, 3285:12
**reciting** [1] - 3292:22
**recognition** [1] - 3273:6
**recognize** [1] - 3317:22
**recognized** [3] - 3280:15, 3286:7, 3294:1
**Recollection** [1] - 3295:18
**record** [14] - 3270:1, 3272:22, 3273:22, 3274:12, 3292:24, 3295:4, 3295:9, 3308:15, 3310:8, 3315:6, 3338:17, 3339:3, 3342:19, 3343:15
**Red** [10] - 3270:13, 3295:19, 3297:4, 3297:8, 3298:21, 3300:1, 3301:4, 3301:24, 3302:5, 3306:25
**redacted** [2] - 3272:4, 3296:23
**redactions** [1] - 3296:24
**redundant** [1] - 3299:12
**reference** [1] - 3321:4
**reflect** [6] - 3270:3, 3271:21, 3273:5, 3318:1, 3325:12, 3341:20
**reflects** [1] - 3319:21
**reformulation** [1] - 3301:15
**regarded** [1] - 3271:18
**regarding** [3] - 3274:12, 3277:2, 3282:18
**regime** [3] - 3277:21, 3285:6, 3287:3
**register** [5] - 3277:1, 3277:6, 3277:11, 3336:3, 3338:22
**registrant** [1] - 3276:24
**Registration** [1] - 3333:11
**registration** [2] - 3281:7, 3341:7
**regulated** [1] - 3285:19
**regulation** [9] - 3279:23, 3280:16, 3294:7, 3311:10, 3312:22, 3313:7, 3316:16,

3317:9, 3319:1
  **regulations** [1] - 3286:8
  **regulatory** [1] - 3277:21
  **Rehnquist** [1] - 3284:4
  **reimbursabiliy** [1] - 3278:25
  **reimbursable** [3] - 3278:22,
3279:2, 3279:11
  **reimbursement** [3] - 3279:5,
3279:6, 3279:21
  **reiterates** [1] - 3299:19
  **reject** [1] - 3272:21
  **rejected** [3] - 3273:10, 3285:11,
3287:4
  **relate** [3] - 3284:14, 3304:4,
3332:5
  **related** [2] - 3273:18, 3315:20
  **relates** [3] - 3331:20, 3332:4,
3332:5
  **relations** [3] - 3335:13,
3336:13, 3336:15
  **release** [1] - 3271:22
  **releasing** [1] - 3274:7
  **relevance** [1] - 3342:2
  **relevant** [4] - 3276:25, 3305:18,
3334:1, 3342:8
  **relying** [1] - 3323:17
  **remain** [1] - 3278:13
  **remaining** [1] - 3310:11
  **removed** [2] - 3317:2, 3320:17
  **rendered** [2] - 3293:10, 3294:24
  **renew** [1] - 3344:22
  **repeated** [1] - 3341:14
  **replied** [1] - 3322:8
  **Report** [1] - 3271:1
  **report** [20] - 3271:3, 3271:17,
3271:21, 3271:22, 3272:18,
3272:24, 3273:24, 3274:13,
3274:20, 3275:12, 3276:10,
3276:12, 3280:19, 3280:21,
3321:1, 3321:5, 3321:22,
3322:19, 3322:22, 3323:6
  **reported** [1] - 3285:23
  **Reporter** [3] - 3268:7, 3268:7,
3346:13
  **REPORTER** [1] - 3346:2
  **reporter** [1] - 3337:4
  **reporters** [4] - 3271:2, 3271:3,
3271:4, 3272:19
  **reports** [2] - 3279:18, 3320:11
  **representatives** [1] - 3321:6
  **reputable** [2] - 3271:19, 3274:1
  **reputation** [12] - 3274:2,
3274:4, 3300:24, 3301:7,
3301:9, 3301:14, 3301:21,
3302:8, 3302:13, 3302:19,
3302:22, 3303:6
  **request** [25] - 3270:19, 3271:7,
3283:6, 3295:8, 3297:6, 3298:3,
3298:21, 3299:5, 3299:24,
3304:13, 3307:5, 3311:4,

3314:6, 3314:24, 3327:3,
3329:11, 3331:17, 3332:17,
3333:23, 3335:23, 3336:8,
3339:25, 3340:1, 3340:5, 3344:7
  **requested** [2] - 3283:4, 3338:25
  **requesting** [3] - 3306:6,
3338:17, 3338:21
  **require** [2] - 3287:15, 3330:22
  **required** [10] - 3279:6, 3280:1,
3286:2, 3287:13, 3288:3,
3293:24, 3294:7, 3295:6,
3310:23
  **requirement** [12] - 3277:11,
3285:14, 3285:15, 3286:7,
3286:16, 3287:5, 3287:12,
3288:17, 3328:6, 3328:18,
3343:23
  **requirements** [2] - 3284:3,
3284:17
  **requires** [9] - 3276:5, 3276:24,
3280:17, 3285:2, 3292:10,
3311:11, 3312:22, 3330:20,
3330:21
  **requiring** [2] - 3286:14, 3286:22
  **reserved** [2] - 3344:24, 3344:25
  **resisted** [1] - 3277:1
  **resolve** [1] - 3287:25
  **respect** [16] - 3269:19, 3288:20,
3290:12, 3292:25, 3295:5,
3298:24, 3307:10, 3311:8,
3313:2, 3314:8, 3319:1,
3336:25, 3337:5, 3337:18,
3339:15, 3343:1
  **respectfully** [1] - 3329:20
  **respond** [4] - 3272:7, 3278:16,
3316:5, 3316:15
  **responding** [2] - 3277:20,
3281:20
  **responds** [3] - 3280:22, 3313:5,
3314:18
  **response** [4] - 3273:21, 3294:7,
3297:5, 3340:1
  **responsive** [5] - 3282:6,
3322:18, 3322:21, 3329:25
  **rest** [5] - 3270:10, 3295:11,
3305:8, 3314:23, 3326:24
  **restrict** [1] - 3319:16
  **restriction** [1] - 3324:17
  **retrieve** [1] - 3324:10
  **retrieved** [1] - 3324:14
  **return** [1] - 3339:20
  **reversal** [2] - 3275:5, 3275:8
  **reverse** [2] - 3277:15, 3281:21
  **reversing** [1] - 3292:22
  **review** [2] - 3283:7, 3318:15
  **revised** [1] - 3320:22
  **revoked** [1] - 3297:25
  **rights** [1] - 3273:3
  **rise** [2] - 3281:6, 3308:2
  **risk** [4] - 3284:3, 3284:18,

3288:5, 3289:1
  **RMR** [2] - 3268:7, 3346:13
  **rollout** [3] - 3271:2, 3272:15,
3276:10
  **Room** [2] - 3268:8, 3346:14
  **rule** [3] - 3269:17, 3284:22,
3286:21
  **Rule** [3] - 3296:6, 3320:9,
3344:20
  **ruled** [3] - 3331:16, 3339:8
  **rules** [2] - 3267:8
  **ruling** [6] - 3270:15, 3275:16,
3282:23, 3300:7, 3316:18,
3317:10
  **rulings** [3] - 3269:19, 3269:21,
3319:18
  **run** [2] - 3289:17, 3315:17
  **runs** [1] - 3322:24

**S**

  **Safavian** [10] - 3277:25,
3278:20, 3281:2, 3281:19,
3282:1, 3282:22, 3293:6,
3293:11, 3316:9, 3318:17
  **SANCHEZ** [10] - 3269:4,
3296:2, 3296:19, 3297:3,
3307:21, 3309:6, 3309:18,
3309:24, 3325:17, 3334:17
  **Sanchez** [1] - 3267:12
  **sanchez@usdoj.gov** [1] -
3267:16
  **Sanger** [8] - 3275:2, 3275:11,
3276:11, 3281:13, 3321:19,
3322:7, 3322:8, 3322:12
  **sanger** [1] - 3275:9
  **satisfied** [1] - 3285:20
  **scheduling** [1] - 3307:23
  **scheme** [51] - 3275:21, 3276:1,
3276:3, 3276:9, 3277:4, 3282:9,
3282:14, 3282:17, 3282:21,
3283:1, 3288:13, 3288:24,
3289:4, 3289:16, 3290:13,
3290:19, 3292:9, 3292:12,
3292:15, 3292:17, 3293:6,
3293:9, 3293:13, 3293:16,
3293:17, 3294:4, 3294:16,
3294:21, 3295:7, 3304:25,
3306:1, 3315:4, 3315:7,
3315:11, 3315:15, 3315:16,
3315:18, 3315:20, 3318:2,
3318:18, 3326:25, 3327:11,
3328:17, 3328:18, 3330:14,
3331:8, 3331:19, 3335:1,
3335:17, 3344:3
  **scratch** [1] - 3293:17
  **seated** [1] - 3308:20
  **second** [8] - 3299:24, 3311:8,
3311:15, 3313:2, 3314:8,
3326:22, 3334:17, 3338:2

**Second** [2] - 3280:12, 3283:2
**secret** [1] - 3277:6
**see** [7] - 3281:11, 3281:12, 3285:21, 3288:25, 3289:17, 3307:11, 3310:6
**seeding** [1] - 3271:17
**seeking** [1] - 3279:5
**seeks** [1] - 3270:19
**seem** [2] - 3285:10, 3315:18
**selection** [2] - 3306:21, 3307:24
**selective** [1] - 3273:18
**send** [2] - 3344:17
**sent** [3] - 3275:15, 3291:6, 3308:8
**sentence** [11] - 3297:12, 3297:20, 3299:5, 3299:25, 3301:2, 3301:6, 3301:18, 3316:11, 3318:9, 3338:7, 3338:19
**Sentence** [1] - 3299:12
**sentences** [2] - 3293:3, 3299:17
**separate** [3] - 3297:11, 3307:25, 3324:16
**separately** [3] - 3297:14, 3344:6, 3344:7
**September** [3] - 3267:6, 3275:2, 3346:9
**serious** [1] - 3284:12
**service** [7] - 3333:25, 3334:14, 3335:10, 3335:14, 3336:14, 3336:16, 3337:15
**services** [1] - 3279:13
**Seventh** [1] - 3277:24
**several** [4] - 3269:17, 3273:1, 3293:19, 3316:12
**Shakes** [1] - 3297:3
**shaking** [1] - 3316:20
**shared** [2] - 3307:14, 3310:1
**shooting** [1] - 3271:18
**short** [2] - 3283:21, 3294:2
**show** [1] - 3275:16
**shows** [1] - 3274:21
**sides** [3] - 3289:5, 3297:10, 3318:16
**signaled** [1] - 3280:6
**signals** [1] - 3286:25
**signed** [3] - 3278:2, 3278:12, 3294:9
**significant** [1] - 3273:2
**significantly** [1] - 3323:9
**signing** [1] - 3278:9
**silent** [1] - 3278:13
**similar** [1] - 3287:8
**simple** [3] - 3292:10, 3294:1, 3294:16
**simply** [4] - 3272:2, 3305:20, 3323:24, 3331:1
**single** [2] - 3276:1, 3282:24
**sitting** [1] - 3310:23

**situation** [4] - 3285:18, 3294:18, 3309:23
**situations** [1] - 3280:24
**sixth** [1] - 3332:20
**Skadden** [3] - 3271:1, 3273:13, 3273:21
**skip** [2] - 3305:7, 3317:8
**skipped** [1] - 3299:2
**small** [2] - 3319:17, 3333:8
**social** [2] - 3337:1, 3337:6
**solution** [1] - 3309:11
**solved** [1] - 3309:12
**someone** [4] - 3287:10, 3304:8, 3311:11, 3312:22
**sorry** [6] - 3299:6, 3300:6, 3302:1, 3306:11, 3332:9, 3333:20
**SPAEDER** [2] - 3267:22, 3268:2
**specific** [26] - 3277:20, 3277:21, 3280:8, 3280:17, 3280:22, 3282:7, 3283:4, 3285:2, 3285:13, 3286:23, 3287:13, 3288:20, 3289:10, 3289:19, 3295:3, 3305:17, 3311:11, 3313:5, 3314:18, 3316:15, 3323:5, 3325:19, 3330:13, 3331:11, 3331:12, 3331:14
**specific-intent** [1] - 3283:4
**specifically** [16] - 3274:25, 3277:12, 3279:9, 3282:25, 3285:11, 3290:15, 3294:17, 3312:14, 3316:10, 3321:22, 3322:6, 3322:11, 3327:22, 3330:16, 3339:9, 3341:11
**speculation** [1] - 3308:2
**St** [4] - 3293:11, 3293:20, 3294:2, 3294:12
**stand** [1] - 3331:16
**standard** [12] - 3283:5, 3288:17, 3297:6, 3298:2, 3298:6, 3305:8, 3305:13, 3305:16, 3329:3, 3332:1, 3340:25, 3342:10
**standards** [1] - 3278:3
**stands** [2] - 3282:20, 3283:17
**start** [2] - 3310:13, 3320:5
**started** [2] - 3328:25, 3337:11
**starts** [2] - 3293:19, 3309:12
**State** [1] - 3305:10
**state** [1] - 3294:21
**statement** [20] - 3271:9, 3282:13, 3282:24, 3283:15, 3283:18, 3284:21, 3287:10, 3287:20, 3292:10, 3293:7, 3293:10, 3293:16, 3293:21, 3298:18, 3303:22, 3317:16, 3318:21, 3327:2, 3335:16
**Statement** [5] - 3303:24, 3304:3, 3304:19, 3304:20
**statements** [16] - 3275:22,

3278:21, 3282:10, 3284:6, 3292:14, 3293:8, 3294:20, 3298:13, 3304:4, 3315:2, 3315:7, 3315:13, 3315:14, 3318:12, 3319:2, 3330:6
**Statements** [1] - 3296:13
**states** [1] - 3322:6
**STATES** [2] - 3267:1, 3267:10
**States** [26] - 3267:3, 3268:8, 3269:2, 3269:6, 3277:23, 3278:19, 3280:11, 3280:13, 3281:19, 3283:2, 3283:5, 3283:7, 3283:8, 3283:9, 3283:10, 3283:11, 3283:12, 3285:7, 3293:11, 3293:22, 3294:14, 3334:6, 3335:13, 3337:8, 3338:5, 3341:2
**statute** [32] - 3276:24, 3277:16, 3278:22, 3280:9, 3280:16, 3281:22, 3282:1, 3282:4, 3284:5, 3284:24, 3285:25, 3286:11, 3286:17, 3287:8, 3287:15, 3290:22, 3294:7, 3296:5, 3296:8, 3310:24, 3311:10, 3312:21, 3313:7, 3316:16, 3317:9, 3319:1, 3323:24, 3327:22, 3333:15, 3334:7, 3336:9, 3336:17
**statutes** [2] - 3286:8, 3286:20
**statutory** [7] - 3275:23, 3277:21, 3279:24, 3284:17, 3285:6, 3287:2, 3288:17
**stenograph** [1] - 3346:7
**Stephenson** [1] - 3283:2
**Stewart** [2] - 3280:12, 3280:23
**stick** [1] - 3271:12
**still** [4] - 3269:13, 3285:20, 3311:15, 3324:16
**stipulations** [1] - 3295:21
**stonewall** [1] - 3278:11
**stop** [1] - 3344:18
**straight** [4] - 3271:18, 3279:2, 3321:10, 3335:17
**straight-shooting** [1] - 3271:18
**strategic** [1] - 3339:13
**strategy** [4] - 3271:17, 3274:19, 3308:5, 3321:19
**Street** [3] - 3267:14, 3267:22, 3268:2
**stress** [1] - 3301:11
**stretch** [1] - 3330:25
**Stricken** [1] - 3296:15
**stricken** [2] - 3296:18, 3296:20
**strike** [11] - 3299:9, 3308:3, 3312:20, 3314:9, 3314:11, 3314:13, 3314:24, 3333:24, 3333:25, 3334:23
**strikes** [2] - 3312:15, 3341:24
**striking** [3] - 3315:6, 3319:6, 3335:9

**strong** [2] - 3272:5, 3307:4

**struck** [3] - 3302:23, 3312:17, 3312:18

**structured** [2] - 3281:22, 3325:19

**structuring** [2] - 3286:4, 3286:11

**stuck** [2] - 3270:13, 3275:8

**subject** [6] - 3280:8, 3313:6, 3314:20, 3316:16, 3317:8, 3317:14

**submission** [2] - 3281:8, 3339:3

**submissions** [1] - 3279:24

**submit** [2] - 3280:1, 3336:15

**submits** [1] - 3280:19

**submitted** [2] - 3300:16, 3301:4

**subset** [1] - 3319:17

**substance** [1] - 3307:16

**substantive** [1] - 3307:11

**substitute** [1] - 3308:8

**suffering** [1] - 3269:13

**sufficiency** [2] - 3283:14, 3327:20

**sufficient** [5] - 3283:22, 3294:13, 3294:21, 3322:25, 3328:14

**suggest** [5] - 3300:20, 3301:23, 3302:3, 3302:5, 3339:19

**suggested** [2] - 3281:5, 3329:8

**suggesting** [3] - 3308:11, 3312:4, 3312:5

**suggestion** [3] - 3285:12, 3313:8, 3338:8

**suggestions** [1] - 3297:10

**suggests** [1] - 3301:6

**Suite** [2] - 3267:23, 3268:3

**summarized** [1] - 3284:22

**summary** [1] - 3295:1

**sun** [1] - 3269:16

**supplemental** [1] - 3282:18

**support** [4] - 3272:12, 3273:3, 3293:20, 3321:7

**supported** [1] - 3341:4

**supporting** [1] - 3288:7

**supports** [2] - 3271:25, 3343:16

**supposed** [1] - 3341:10

**Supreme** [3] - 3284:22, 3286:2, 3286:5

**survive** [1] - 3319:17

**system** [1] - 3279:6

# T

**talks** [2] - 3275:3, 3295:21

**tapes** [1] - 3296:23

**tax** [3] - 3286:4, 3286:7, 3286:10

**Taylor** [3] - 3267:21, 3269:9, 3333:16

**TAYLOR** [139] - 3269:8, 3289:21, 3289:23, 3290:10, 3290:14, 3290:17, 3290:24, 3291:3, 3291:5, 3291:10, 3291:14, 3291:19, 3297:2, 3297:16, 3297:19, 3298:5, 3298:11, 3298:19, 3299:2, 3299:6, 3299:8, 3299:15, 3299:17, 3299:22, 3299:24, 3300:6, 3300:10, 3300:18, 3300:22, 3301:12, 3301:18, 3302:1, 3302:4, 3302:15, 3303:1, 3303:9, 3303:11, 3303:15, 3304:7, 3304:12, 3304:17, 3304:23, 3305:4, 3305:14, 3305:16, 3306:5, 3306:8, 3306:11, 3306:14, 3307:5, 3307:8, 3308:13, 3308:15, 3309:13, 3310:6, 3310:15, 3311:4, 3311:6, 3311:23, 3312:5, 3312:8, 3312:17, 3312:20, 3313:12, 3313:15, 3313:18, 3313:25, 3314:4, 3314:6, 3314:13, 3314:15, 3314:20, 3314:24, 3316:1, 3316:4, 3316:8, 3316:22, 3317:20, 3318:10, 3318:22, 3319:6, 3319:15, 3319:25, 3322:4, 3324:21, 3324:25, 3326:5, 3326:11, 3326:14, 3327:1, 3327:5, 3327:14, 3327:16, 3327:18, 3327:25, 3328:10, 3328:13, 3328:23, 3329:11, 3329:20, 3330:4, 3330:10, 3330:20, 3331:4, 3331:15, 3331:25, 3332:4, 3332:9, 3332:18, 3333:7, 3333:17, 3333:20, 3333:23, 3334:9, 3334:12, 3334:15, 3334:22, 3335:23, 3336:2, 3336:11, 3336:19, 3337:21, 3338:12, 3338:14, 3338:16, 3338:21, 3339:4, 3339:22, 3339:25, 3340:24, 3341:11, 3341:19, 3342:20, 3343:3, 3343:6, 3344:11, 3344:15, 3344:20, 3345:2

**team** [1] - 3272:8

**team's** [1] - 3272:15

**technical** [1] - 3286:20

**ten** [1] - 3339:17

**tendency** [1] - 3283:19

**term** [2] - 3335:24, 3337:15

**terms** [2] - 3278:10, 3318:20

**testified** [3] - 3292:21, 3302:22, 3340:20

**testimony** [13] - 3272:13, 3272:17, 3273:22, 3300:8, 3300:12, 3300:22, 3301:19, 3302:7, 3302:12, 3302:17,

3302:22, 3303:4, 3341:8

**text** [2] - 3326:23, 3329:18

**thanked** [1] - 3271:22

**THE** [176] - 3267:1, 3267:1, 3267:9, 3267:13, 3269:1, 3269:7, 3269:11, 3289:22, 3290:1, 3290:11, 3290:15, 3290:23, 3291:1, 3291:4, 3291:9, 3291:13, 3291:17, 3291:25, 3292:6, 3296:8, 3296:21, 3297:4, 3297:17, 3297:23, 3298:10, 3298:15, 3298:20, 3298:23, 3299:4, 3299:7, 3299:11, 3299:16, 3299:18, 3299:23, 3300:3, 3300:8, 3300:15, 3300:21, 3301:1, 3301:6, 3301:13, 3302:11, 3302:16, 3302:25, 3303:3, 3303:10, 3303:13, 3303:17, 3303:21, 3304:2, 3304:8, 3304:15, 3304:18, 3304:24, 3305:2, 3305:5, 3305:15, 3305:25, 3306:6, 3306:9, 3306:13, 3306:15, 3307:6, 3307:9, 3307:13, 3307:22, 3308:14, 3308:18, 3309:3, 3309:8, 3309:15, 3309:22, 3310:2, 3310:10, 3310:16, 3310:18, 3311:5, 3311:7, 3312:4, 3312:6, 3312:16, 3312:19, 3312:24, 3313:10, 3313:13, 3313:16, 3313:20, 3314:2, 3314:5, 3314:12, 3314:14, 3314:16, 3314:22, 3315:1, 3315:9, 3316:3, 3316:6, 3316:12, 3317:6, 3317:12, 3317:22, 3318:8, 3318:14, 3318:23, 3319:8, 3319:24, 3320:1, 3320:21, 3321:9, 3321:24, 3323:11, 3324:1, 3324:8, 3324:13, 3324:22, 3325:11, 3325:24, 3326:10, 3326:13, 3326:16, 3327:4, 3327:7, 3327:15, 3327:17, 3327:20, 3328:5, 3328:11, 3328:16, 3328:24, 3329:24, 3330:5, 3330:11, 3331:2, 3331:5, 3331:23, 3332:1, 3332:10, 3332:19, 3333:10, 3333:16, 3333:19, 3333:22, 3334:3, 3334:11, 3334:13, 3334:16, 3334:20, 3334:25, 3335:12, 3335:21, 3336:1, 3336:6, 3336:18, 3336:21, 3337:3, 3337:11, 3337:14, 3337:19, 3337:24, 3338:13, 3338:15, 3338:20, 3339:2, 3339:5, 3339:23, 3340:7, 3341:4, 3341:15, 3342:4, 3342:11, 3342:21, 3343:5, 3343:18,

3344:12, 3344:16, 3344:25
**themselves** [1] - 3271:17
**theory** [1] - 3340:25
**therefore** [5] - 3269:14, 3270:20, 3290:20, 3294:12, 3333:5
**theses** [1] - 3329:12
**they've** [3] - 3321:13, 3326:11, 3326:12
**thinking** [2] - 3308:4, 3308:5
**third** [2] - 3303:11, 3326:22
**three** [1] - 3314:9
**throughout** [2] - 3275:21, 3308:20
**timing** [2] - 3274:13, 3290:5
**tip** [1] - 3323:21
**title** [1] - 3295:22
**today** [1] - 3310:14
**Tom** [1] - 3275:11
**tomorrow** [1] - 3310:14
**tone** [1] - 3275:14
**took** [9] - 3275:5, 3277:14, 3278:23, 3289:11, 3289:13, 3296:10, 3297:11, 3309:19, 3327:15
**top** [7] - 3291:17, 3296:17, 3296:22, 3303:11, 3311:3, 3327:7, 3338:11
**topic** [3] - 3280:23, 3313:6, 3316:16
**totally** [1] - 3309:15
**tough** [1] - 3293:14
**tracks** [1] - 3275:23
**traditional** [1] - 3286:21
**trait** [2] - 3302:8, 3302:9
**transcript** [4] - 3341:19, 3343:4, 3346:6, 3346:7
**TRANSCRIPT** [1] - 3267:8
**trial** [4] - 3273:11, 3308:1, 3308:2, 3308:20
**TRIAL** [2] - 3267:4, 3267:8
**trick** [3] - 3290:19, 3294:4, 3326:25
**Trie** [2] - 3283:6, 3287:9
**TRIE** [1] - 3283:6
**tried** [1] - 3303:14
**trigger** [1] - 3277:11
**trouble** [2] - 3302:1, 3313:17
**troubled** [1] - 3282:1
**troubling** [2] - 3308:19
**true** [9] - 3273:13, 3274:2, 3279:15, 3279:25, 3280:22, 3315:19, 3330:18, 3346:6, 3346:7
**truly** [1] - 3340:21
**truth** [12] - 3275:19, 3282:11, 3282:13, 3282:16, 3282:18, 3283:1, 3295:5, 3295:6, 3298:17, 3315:17, 3331:24, 3332:5

**truthful** [9] - 3277:18, 3281:20, 3301:8, 3302:12, 3302:18, 3303:4, 3317:13, 3317:17, 3331:8
**truthfulness** [5] - 3300:24, 3301:21, 3302:14, 3302:19, 3303:7
**try** [2] - 3309:14, 3309:19
**trying** [6] - 3301:10, 3330:12, 3331:10, 3331:11, 3335:4, 3342:9
**turned** [3] - 3274:2, 3279:7, 3284:6
**turning** [1] - 3281:16
**tweak** [2] - 3297:5, 3344:4
**twice** [2] - 3289:19, 3296:16
**twisted** [1] - 3275:18
**two** [11] - 3270:16, 3271:15, 3286:3, 3297:11, 3303:15, 3304:12, 3314:10, 3317:2, 3327:6, 3333:24
**Tymoshenko** [2] - 3273:2, 3273:4
**Tymoshenko's** [1] - 3273:10
**typing** [1] - 3337:4

## U

**U.S** [6] - 3267:13, 3267:17, 3283:8, 3283:9, 3283:10
**Ukraine** [11] - 3271:5, 3272:18, 3272:20, 3273:13, 3273:16, 3273:24, 3274:3, 3274:4, 3321:6, 3323:7, 3338:9
**Ukraine's** [1] - 3273:8
**Ukranian** [1] - 3270:24
**Ukranians** [1] - 3272:2
**um-hum** [2] - 3291:9, 3336:1
**unanimity** [4] - 3288:22, 3289:11, 3289:19, 3306:10
**unanimous** [14] - 3276:2, 3289:2, 3289:6, 3289:13, 3290:8, 3290:20, 3290:25, 3291:2, 3291:23, 3292:15, 3326:12, 3327:11, 3327:23, 3328:4
**unanimously** [4] - 3290:6, 3291:19, 3328:7, 3328:20
**unbeknownst** [1] - 3284:7
**under** [12] - 3278:21, 3278:23, 3280:9, 3280:15, 3284:19, 3285:25, 3294:4, 3294:9, 3294:13, 3298:1, 3298:14, 3298:16, 3298:17, 3310:23, 3310:24, 3318:12, 3323:11, 3336:8, 3340:8, 3340:10
**underlies** [1] - 3277:16
**underlying** [1] - 3278:8
**underscores** [1] - 3318:3
**underscoring** [1] - 3275:20

**undertake** [1] - 3318:24
**undertaking** [1] - 3277:22
**undertook** [2] - 3277:13, 3280:5
**unduly** [1] - 3326:1
**unfair** [1] - 3284:18
**Union** [2] - 3293:12, 3294:2
**unique** [1] - 3287:21
**unit** [5] - 3276:22, 3276:25, 3280:2, 3341:12, 3343:25
**unit's** [1] - 3277:10
**UNITED** [2] - 3267:1, 3267:10
**United** [26] - 3267:3, 3268:8, 3269:2, 3269:6, 3277:23, 3278:19, 3280:11, 3280:13, 3281:19, 3283:2, 3283:5, 3283:7, 3283:8, 3283:9, 3283:10, 3283:11, 3283:12, 3285:7, 3293:11, 3293:22, 3294:14, 3334:6, 3335:13, 3337:8, 3338:5, 3341:2
**unknown** [1] - 3284:12
**unlawful** [9] - 3284:25, 3285:16, 3286:15, 3288:2, 3288:4, 3329:8, 3329:21, 3329:22, 3332:15
**unless** [1] - 3310:8
**unlicensed** [1] - 3286:13
**up** [23] - 3274:15, 3275:7, 3275:24, 3276:2, 3276:4, 3276:9, 3276:24, 3288:14, 3289:10, 3291:11, 3293:2, 3310:2, 3312:25, 3315:15, 3315:16, 3326:1, 3329:14, 3330:23, 3331:3, 3331:9, 3331:20, 3332:6, 3340:6
**uphold** [1] - 3283:15
**utilized** [1] - 3283:5

## V

**value** [2] - 3273:15, 3273:24
**variance** [6] - 3321:16, 3321:25, 3322:25, 3323:14, 3326:19, 3339:14
**various** [1] - 3341:5
**veiled** [1] - 3272:11
**venire** [1] - 3308:6
**verbatim** [2] - 3331:12, 3332:24
**verdict** [2] - 3306:10, 3306:12
**version** [2] - 3278:22, 3301:17
**versions** [2] - 3270:12, 3270:13
**versus** [18] - 3277:23, 3278:19, 3280:11, 3280:13, 3281:19, 3283:2, 3283:6, 3283:7, 3283:8, 3283:9, 3283:11, 3283:12, 3285:7, 3293:11, 3293:22, 3294:14, 3341:3
**view** [5] - 3272:18, 3285:5, 3307:4, 3317:7, 3342:5
**Vin** [3] - 3275:9, 3321:2,

3339:15
  **vindication** [2] - 3272:25, 3273:4
  **violate** [1] - 3286:18
  **violated** [3] - 3286:24, 3331:18, 3342:22
  **violating** [3] - 3278:10, 3329:23, 3331:22
  **violation** [7] - 3276:17, 3279:12, 3284:23, 3287:18, 3288:18, 3330:4, 3343:24
  **violations** [2] - 3273:2, 3279:16
  **voiced** [1] - 3307:24
  **voluntary** [1] - 3288:18
  **volunteer** [4] - 3276:23, 3276:25, 3278:17, 3282:5
  **vs** [1] - 3267:5

## W

  **wait** [2] - 3292:16, 3310:6
  **waiving** [1] - 3314:6
  **wake** [1] - 3293:20
  **walked** [1] - 3324:2
  **walking** [1] - 3326:23
  **wants** [3] - 3298:25, 3310:4, 3313:16
  **Washi** [1] - 3268:9
  **Washington** [6] - 3267:6, 3267:15, 3267:18, 3268:3, 3294:15, 3346:15
  **wave** [1] - 3271:16
  **weak** [1] - 3272:5
  **Weber** [8] - 3275:10, 3321:2, 3321:19, 3321:23, 3322:8, 3322:13, 3323:7, 3339:15
  **weber** [1] - 3320:11
  **Weber's** [1] - 3322:10
  **week** [1] - 3320:18
  **weekend** [4] - 3269:12, 3269:15, 3293:14, 3309:17
  **weighed** [1] - 3285:4
  **well-regarded** [1] - 3271:18
  **Westlaw** [1] - 3283:13
  **White** [4] - 3280:13, 3280:14, 3281:2, 3294:17
  **white** [1] - 3272:17
  **whole** [3] - 3269:15, 3327:18, 3336:19
  **wholly** [1] - 3320:24
  **willful** [4] - 3276:8, 3284:23, 3287:18, 3288:7
  **willfully** [9] - 3287:19, 3288:4, 3306:1, 3329:2, 3329:3, 3330:3, 3332:13, 3343:1, 3343:24
  **willfulness** [14] - 3283:5, 3285:9, 3285:12, 3286:6, 3286:16, 3287:5, 3287:12, 3288:17, 3288:21, 3295:4, 3342:10, 3342:12, 3344:1,

3344:5
  **William** [4] - 3267:20, 3267:21, 3269:8, 3269:9
  **willing** [3] - 3298:23, 3331:2, 3333:6
  **willingness** [1] - 3274:18
  **wish** [1] - 3320:1
  **withheld** [1] - 3325:9
  **witness** [5] - 3297:9, 3298:15, 3298:18, 3303:18, 3304:16
  **Witness** [6] - 3297:19, 3299:1, 3299:2, 3299:11, 3299:23, 3304:19
  **witness's** [1] - 3302:9
  **Witnesses** [1] - 3297:8
  **witnesses** [12] - 3298:24, 3300:12, 3300:13, 3300:23, 3301:8, 3301:20, 3302:12, 3302:17, 3302:21, 3302:24, 3303:4, 3303:6
  **witnesses'** [1] - 3301:7
  **wmurphy@zuckerman.com** [1] - 3267:24
  **word** [8] - 3281:15, 3295:22, 3314:11, 3314:13, 3314:25, 3333:24, 3333:25, 3334:10
  **words** [8] - 3271:24, 3275:1, 3285:18, 3293:2, 3329:12, 3330:24, 3333:25, 3336:2
  **world** [2] - 3271:21, 3274:5
  **worrying** [1] - 3344:18
  **worse** [1] - 3317:1
  **woven** [1] - 3344:5
  **write** [2] - 3275:6, 3280:2
  **writing** [2] - 3293:2, 3337:2
  **written** [3] - 3269:22, 3269:23, 3339:2
  **wrote** [1] - 3284:5
  **wtaylor@zuckerman.com** [1] - 3267:25

## Y

  **yourselves** [1] - 3344:13

## Z

  **ZUCKERMAN** [2] - 3267:22, 3268:2

## §

  **§1001** [5] - 3279:12, 3284:19, 3285:19, 3285:20
  **§1001(a)(2** [1] - 3283:15